# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| Boy Scouts of America and Delaware BSA, LLC, | Bankruptcy Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| National Union Fire Insurance Co. of Pittsburgh, PA, *et al.*, | |
| Appellants, | |
| v. | Case No. 22-cv-01237-RGA |
| Boy Scouts of America and Delaware BSA, LLC, | |
| Appellees. | |

## OPENING BRIEF ON APPEAL OF
## THE LIBERTY INSURERS AND THE ALLIANZ INSURERS
## REGARDING TREATMENT OF CLASS 9 CLAIMS AND RELATED
## MATTERS

*(Counsel Listed on Following Pages)*

SEITZ, VAN OGTROP & GREEN, P.A.
R. Karl Hill (DE Bar No. 2747)
222 Delaware Avenue
Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-0600
Email: khill@svglaw.com

-and-

CHOATE, HALL & STEWART LLP
Douglas R. Gooding (*pro hac vice*)
Jonathan D. Marshall (*pro hac vice*)
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

-and-

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
Kim V. Marrkand (*pro hac vice*)
Laura Bange Stephens (*pro hac vice* forthcoming)
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
kvmarrkand@mintz.com
lbstephens@mintz.com

*Counsel to Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation*

TROUTMAN PEPPER HAMILTON SANDERS LLP
David M. Fournier (DE Bar No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184) Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 404.885.3000

-and-

PARKER, HUDSON, RAINER & DOBBS LLP
Harris B. Winsberg (*pro hac vice*)
Matthew G. Roberts (*pro hac vice*)
303 Peachtree Street NE
Suite 3600
Atlanta, GA  30308
Telephone: 404.420.4313
Facsimile: 404.522.8409

-and-

McDERMOTT WILL & EMERY LLP
Margaret H. Warner
(*pro hac vice*)
Ryan S. Smethurst
(*pro hac vice*)
Alex M. Spisak
(*pro hac vice*)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone: 202.756.8228
Facsimile: 202.756.8087

*Attorneys for Allianz Global Risks US Insurance Company*

TROUTMAN PEPPER HAMILTON
SANDERS LLP
David M. Fournier (DE Bar No. 2812)
Marcy J. McLaughlin Smith (DE No.
6184)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 302.777.6500
Facsimile: 302.421.8390

-and-

PARKER, HUDSON, RAINER &
DOBBS LLP
Harris B. Winsberg (*pro hac vice*)
Matthew G. Roberts (*pro hac vice*)
303 Peachtree Street NE
Suite 3600
Atlanta, GA  30308
Telephone: 404.420.4313
Facsimile: 404.522.8409

-and-

BRADLEY RILEY JACOBS PC
Todd C. Jacobs (*pro hac vice*)
John E. Bucheit (*pro hac vice*)
Paul J. Esker (*pro hac vice*)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone: 312.281.0295

*Attorneys for National Surety
Corporation and Interstate Fire &
Casualty Company*

## CORPORATE DISCLOSURE AND STATEMENT OF INTEREST

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, the undersigned make the following disclosures:

The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc., and Liberty Surplus Insurance Corporation state that 100% of the stock of each entity is owned by Liberty Mutual Insurance Company.  Liberty Mutual Group Inc. owns 100% of the stock of Liberty Mutual Insurance Company.  No public company owns 10% or more of the stock of The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc., Liberty Surplus Insurance Corporation, or Liberty Mutual Insurance Company.

Allianz Global Risks US Insurance Company f/k/a Allianz Insurance Company ("AGR US") is an Illinois corporation.  Eighty percent (80%) of the voting common stock of AGR US is held by Allianz of America, Inc., which is a wholly-owned subsidiary of Allianz Europe B.V., which, in turn, is a wholly-owned subsidiary of Allianz SE.  Twenty percent (20%) of the voting common stock and one hundred percent (100%) of the non-voting preferred stock of AGR US is held by AGCS International Holding B.V., which is a wholly-owned subsidiary of Allianz Global Corporate & Specialty SE, which, in turn, is a wholly-owned subsidiary of Allianz SE.  Allianz SE is publicly held.

Interstate Fire & Casualty Company and National Surety Corporation are Illinois corporations and wholly-owned subsidiaries of Fireman's Fund Insurance Company ("Fireman's Fund"), an Illinois corporation.  Fireman's Fund, in turn, is a wholly-owned subsidiary of AGR US, an Illinois corporation.  Eighty percent (80%) of the voting common stock of AGR US is held by Allianz of America, Inc., which is a wholly-owned subsidiary of Allianz Europe B.V., a wholly-owned subsidiary of Allianz SE.  Twenty percent (20%) of the voting common stock and one hundred percent (100%) of the non-voting preferred stock of AGR US is held by AGCS International Holding B.V., a wholly-owned subsidiary of Allianz Global Corporate & Specialty SE, which, in turn, is a wholly-owned subsidiary of Allianz SE.  Allianz SE is publicly held.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................2

JURISDICTIONAL STATEMENT ..............................................................5

ISSUES PRESENTED...................................................................................6

STATEMENT OF THE CASE.......................................................................6

I.      CLASS 9 CLAIMS............................................................................7

II.     JUDGMENT REDUCTION...........................................................10

SUMMARY OF ARGUMENT ....................................................................13

ARGUMENT ...............................................................................................14

I.      THE BANKRUPTCY COURT ERRED IN FINDING THAT THE CLAIM
        ALLOWANCE PROCESS FOR INDIRECT ABUSE CLAIMS
        CONSTITUTES "TREATMENT" UNDER THE PLAN. ...........................14

        A.      The Claim Allowance Provision Violates the Bankruptcy Code and
                the Bankruptcy Rules ...........................................................14

        B.      The Insurer Proposed Changes Do Not Constitute An Issue of "Claim
                Treatment" and Should Not Have Been Deemed Overruled Due to
                Class 9 Acceptance.................................................................21

II.     THE BANKRUPTCY COURT ERRED BY APPROVING THE
        DEBTORS' JUDGMENT REDUCTION LANGUAGE...............................25

        A.      The Confirmation Order Was Error Because the Judgment Reduction
                Clause Does Not Fairly Compensate the Insurers for the Loss of
                Affirmative Recovery Claims ............................................27

        B.      The Confirmation Order Also Must Be Reversed Because the
                Judgment Reduction Clause's Finality Requirement Is Improper and
                Prejudicial.............................................................................37

CONCLUSION ............................................................................................41

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Allegheny Int'l, Inc.*,
  954 F.2d 167 (3d Cir. 1992) ..............................................................16

*In re Asarco LLC*,
  420 B.R. 314 (S.D. Tex. 2009) ......................................................37, 38

*Blonder-Tongue Labs. v. Univ. of Ill. Found.*,
  402 U.S. 313 (1971) ...........................................................................27

*In re Butcher*,
  459 B.R. 115 (Bankr. D. Colo. 2011) .................................................24

*Carr v Jacobs (In re New Century TRS Holdings, Inc.)*,
  No. 12-288-SLR, 2013 U.S. Dist. LEXIS 40919 (D. Del. Mar. 25,
  2013) ....................................................................................................6

*City of San Antonio v. Hotels.com, L.P.*,
  141 S. Ct. 1628 (2021) .......................................................................40

*Eichenholtz v. Brennan*,
  52 F.3d 478 (3d Cir. 1995) .....................................................28, 29, 38

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ............................................................29

*In re Fraser's Boiler Service, Inc.*,
  No. 3:18-CV-05637-RBL, 2019 U.S. Dist. LEXIS 37840 (W.D.
  Wash. Mar. 8, 2019) ...............................................................31, 32, 33

*Gerber v. MTC Elec. Techs. Co.*,
  329 F.3d 297 (2d Cir. 2003) ...................................................30, 31, 34

*Homestead Partners v. Condor One (In re Homestead Partners)*,
  200 B.R. 274 (Bankr. N.D. Ga. 1996) ................................................16

*In re Insilco Techs., Inc.*,
  480 F.3d 212 (3d Cir. 2007) ...............................................................23

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ...............................................................................29

*In re Johns*,
   37 F.3d 1021 (3d Cir. 1994) ...............................................................................23

*Judd v. Wolfe (In re Judd)*,
   78 F.3d 110 (3d Cir. 1996) ...............................................................................15

*In re Kincaid*,
   388 B.R. 610, 614 (Bankr. E.D. Pa. 2008) ......................................................16

*Law Debenture Tr. Co. of N.Y. v. Trib. Media Co. (In re Trib. Media
   Co.)*,
   587 B.R. 606 (D. Del. 2018) ...............................................................................6

*Lawyer v. Dep't of Justice*,
   521 U.S. 567 (1997)...........................................................................................28

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
   478 U.S. 501 (1986)...........................................................................................28

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982)...........................................................................................27

*Love v. State*,
   583 N.E.2d 1296 (N.Y.1991) ...........................................................................39

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*,
   945 F.2d 635 (3d Cir. 1991) ...............................................................................6

*Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe
   Insulation Co.)*,
   671 F.3d 980 (9th Cir. 2012) ...........................................................................37

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)...........................................................................................27

*Ne. Gas Generation, LLC*,
   639 B.R. 914 (Bankr. D. Del. 2022) .................................................................23

*Olin Corp. v. Lamorak Ins. Co.*,
    No. 84-cv-1968 (JSR), 2018 U.S. Dist. LEXIS 65446 (S.D.N.Y.
    Apr. 17, 2018) ................................................................................39, 40

*Papas v. Buchwald Cap. Advisors, LLC (In re Greektown Holdings,*
    *LLC)*,
    728 F.3d 567 (6th Cir. 2013) ..........................................29, 30, 31, 36

*Pariseau v. Asset Acceptance, LLC (In re Pariseau)*,
    395 B.R. 492 (Bankr. M.D. Fla. 2008) ............................................15

*Plymouth Park Tax Servs. LLC v. Princeton Off. Park, LLC (In re*
    *Princeton Off. Park, L.P.)*,
    No. 14-2125 (MAS), 2015 U.S. Dist. LEXIS 10992 (D.N.J. Jan.
    30, 2015) ..............................................................................................16

*Samson Energy Res. Co. v. Semcrude, L.P. (In re Semcrude, L.P.)*,
    728 F.3d 314 (3d Cir. 2013) .................................................................5

*In re Samson Res. Corp.*,
    No. 15-11934 (BLS), 2017 Bankr. LEXIS 4294 (Bankr. D. Del.
    Dec. 13, 2017) .....................................................................................15

*Schweigert v. Schweigert*,
    519 F. Supp. 3d 803 (D. Mont. 2021) ..............................................23

*Scott v. Aegis Mortg. Corp. (In re Aegis Mortg. Corp.)*,
    No. 07-11119 (BLS), 2008 Bankr. LEXIS 1519 (Bankr. D. Del.
    May 22, 2008) .....................................................................................15

*TBG, Inc. v. Bendis*,
    36 F.3d 916 (10th Cir. 1994) .............................................................29

*In re Trib. Co.*,
    506 B.R. 613 (Bankr. D. Del. 2013) .................................................22

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ..........................................................28

*United States v. Neff*,
    787 F. App'x 81 (3d Cir. 2019) ........................................................27

*In re Wegscheid*,
    361 B.R. 144 (Bankr. D. Ariz. 2007)....................................................................22

*Wells Fargo Bank, N.A. v. Hertz Corp. (In re Hertz Corp.)*,
    637 B.R. 781 (Bankr. D. Del. 2021) ..................................................................22

**Statutes**

11 U.S.C. § 502 ...........................................................................................*passim*

11 U.S.C. § 509 .................................................................................................8, 17

11 U.S.C. § 510 .................................................................................................8, 17

11 U.S.C. § 1126 ...................................................................................................10

11 U.S.C. § 1129 .........................................................................................*passim*

28 U.S.C. § 157 ......................................................................................................5

28 U.S.C. § 158 ......................................................................................................6

28 U.S.C. § 1334 ....................................................................................................5

**Other Authorities**

Federal Rule of Bankruptcy Procedure 3001(f)..................................7, 8, 14, 15, 21

Federal Rule of Bankruptcy Procedure 8002(a) .......................................................6

U.S. Const. amend. V ...........................................................................................27

The Liberty Insurers[1] and the Allianz Insurers[2] (collectively, the "<u>Insurers</u>") hereby file this opening brief (the "<u>Opening Brief</u>")[3] pursuant to the *Order Granting Motion on Stipulation Regarding Appeals from Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC* (Dkt. No. 22) (the "<u>Stipulation Order</u>").[4]  Each of the Insurers filed one or more proofs of claim in the Bankruptcy Court, or, with respect to those insurers who join in this Opening Brief, intend to assert claims in the future to the extent payments are made in respect of Direct Abuse Claims.[5]  The Debtors have classified the Insurers' claims as Class 9 Indirect Abuse Claims.[6]  The Insurers therefore file this Opening Brief as creditors of BSA to address two erroneous rulings made by the Bankruptcy Court that involve

---

[1] "<u>Liberty Insurers</u>" means, collectively, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc., Liberty Surplus Insurance Corporation, and Liberty Mutual Insurance Company.  The Liberty Insurers may also be referred to herein as "<u>Liberty Mutual</u>" or "<u>Liberty</u>."

[2] "<u>Allianz Insurers</u>" means, collectively, Allianz Global Risks US Insurance Company, National Surety Corporation, and Interstate Fire & Casualty Company. The Allianz Insurers may also be referred to herein as "<u>Allianz</u>."

[3] The Insurers are signatories to the Opening Brief of Certain Insurers (the "<u>Principal Brief</u>"), filed contemporaneously herewith.

[4] The Stipulation Order approved that certain *Stipulation Regarding Appeals from Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC* (Dkt. No. 13-1).

[5] A. 11533-85.  Citations to "A. X" are to the Certain Insurers' Appendix to Opening Brief, submitted to the Court contemporaneously herewith.

[6] *See* A. 10897-99 Art. III.F.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.  *See generally* A. 351-848.

the allowance process for Class 9 claims and the ability to mitigate the size of such claims through the application of appropriate judgment reduction provisions.

## PRELIMINARY STATEMENT

The Bankruptcy Court erred when it confirmed a plan that was designed to violate the Bankruptcy Code and applicable state law, as well as strip away rights that, absent the bankruptcy, the Insurers would be entitled to assert in any coverage litigation.  The Principal Brief explains at length the process by which the Plan was proposed and solicited.  The culmination of that process ensured that, in exchange for the Claimant Representatives delivering a supermajority in support of the Plan that would permit the issuance of broad third-party releases and the Debtors' exit from bankruptcy, the Claimant Representatives would be allowed to dictate the terms of the decidedly insurance-prejudicial Plan.  When viewed in their totality, the facts surrounding the construction and confirmation of the Plan prove that it was not proposed in good faith, thus violating Section 1129(a)(3) of the Bankruptcy Code.

Putting aside the issue of bad faith that permeates the construction and confirmation of the Plan, there is an entirely independent reason why it was error to confirm the Plan: it violates the Bankruptcy Code and applicable state law and thus fails to satisfy Section 1129(a)(1) of the Bankruptcy Code.  While this concept is also discussed in the Principal Brief, the Liberty Insurers and the Allianz Insurers raised two independent issues in their respective objections to confirmation that

highlight how the Plan fails to comply with Section 1129(a)(1),[7] each of which the Bankruptcy Court overruled.[8]  This Opening Brief asks that the Court reverse the Bankruptcy Court on each of those holdings.

First, the Insurers are or will be entitled under the Insurance Policies and applicable law to assert claims against one or more of the Protected Parties, such as the Debtors and Settling Insurance Companies.  Known as "Indirect Abuse Claims," these claims that the Insurers are entitled to assert may be for, among other things, defense costs, deductibles, or indemnification obligations that, absent the bankruptcy, would be owed to the Insurers by the Debtors or another Protected Party. Under the Plan, such Indirect Abuse Claims are channeled to the Settlement Trust.[9] The Debtors have represented to the Bankruptcy Court that both Indirect Abuse Claims and Direct Abuse Claims of individuals will be paid in full.[10] Understandably, the Insurers do not object to such treatment.  But "payment in full" of Indirect Abuse Claims is illusory here.  Only "allowed" claims receive payment; and the Debtors acceded to the Claimant Representatives' demand to institute

---

[7] *See* A. 8599-607 ¶¶ 29-42; A. 8396-401 ¶¶ 15-25; A. 8995-99 ¶¶ 4-9.

[8] The independent issues that the Liberty Insurers and the Allianz Insurers raised below and are now discussed in this Opening Brief are not directly addressed in the Principal Brief.

[9] A. 421-22.

[10] *See* A. 12496 ¶ 294 n.445 ("Class 8 ***and Class 9*** will receive payment in full.") (emphasis added).

procedures that effectively prohibit any Indirect Abuse Claim from ever being allowed. The procedures for determining the allowance of the Insurers' Indirect Abuse Claims (the "TDPs") shift the burden onto the Insurers to satisfy requirements in a manner not contemplated by, and wholly contrary to, Section 502 of the Bankruptcy Code. As discussed below, this is the exact result that the Debtors and Claimant Representatives have always intended with respect to Indirect Abuse Claims. In a clear error, the Bankruptcy Court overruled the Insurers' objection on this point, concluding that such objection was effectively moot because it related to *treatment* of the Insurers' claims and not, as the Insurers submit, the process for *allowance* of such claims.

Second, the Bankruptcy Court declined the Insurers' request to modify the Plan to include appropriate—and fully compensatory—judgment reduction language. A properly drafted judgment reduction would compensate the Insurers for the loss of their claims (*e.g.*, contribution or reimbursement) against the Settling Insurance Companies as a result of the Releases and Injunctions. To do so, judgment reduction at a minimum must provide for the decrease of any judgment entered against an Insurer by the amount the Insurer—but for the Releases and Injunctions—would have recovered on its claim against the applicable Settling Insurance Companies. This mechanism, however, is sufficiently compensatory only if the Insurer's claim is less than the underlying judgment. To the extent that the amount

of the Insurer's claim exceeds the underlying judgment, full compensation requires an affirmative recovery for the difference. Without this backstop, judgment reduction falls short, which is a distinct possibility here since Allianz has **pending claims** against certain Settling Insurance Companies. Nevertheless, the Bankruptcy Court declined the Insurers' request to include an affirmative recovery backstop within the judgment reduction. Making matters worse, the Bankruptcy Court also declined the Insurers' request to excise from the judgment reduction language an improper and asymmetrical finality-of-judgment requirement. This requirement applies to the Insurers and Settlement Trust unfairly, by (among other things) restricting an Insurer's application of any reduction until expiration or exhaustion of all appeals with respect to such offset while no such burden was imposed upon the Settlement Trust. The language that the Bankruptcy Court ultimately chose further proves that the Plan violates not only applicable law, but also the Insurers' rights under their Insurance Policies.

## JURISDICTIONAL STATEMENT

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334 and confirmed the bankruptcy plan on September 8, 2022.[11] The Liberty Insurers and Allianz Insurers appealed that final judgment on September 21, 2022.[12]

---

[11] A. 349.

[12] *See* A. 10195-228; A. 10101-27; *Samson Energy Res. Co. v. Semcrude, L.P. (In re Semcrude, L.P.)*, 728 F.3d 314, 317-18 (3d Cir. 2013).

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8002(a).

## ISSUES PRESENTED

The Insurers identify the following issues on appeal without waiver of the more detailed Statement of Issues filed with this Court on October 3, 2022.

1.      Whether the Bankruptcy Court erred in confirming a plan that provides for a claims allowance process that violates 11 U.S.C. § 502 and related Federal Rules of Bankruptcy Procedure.

2.      Whether the Bankruptcy Court erred in confirming a plan that impermissibly impairs the Appellants' rights under the judgment reduction clause.

Both questions present pure issues of law, which this Court reviews *de novo*.[13]

## STATEMENT OF THE CASE

This Opening Brief adopts the Statement of the Case as set forth in the Principal Brief for general background information regarding this case.[14]   The

---

[13] *Law Debenture Tr. Co. of N.Y. v. Trib. Media Co. (In re Trib. Media Co.)*, 587 B.R. 606, 612 (D. Del. 2018) ("The court reviews . . . *de novo* the Bankruptcy Court's construction of Section 1129 and relevant provisions of the Bankruptcy Code."), *aff'd*, 972 F.3d 228 (3d Cir. 2020); *see Carr v Jacobs (In re New Century TRS Holdings, Inc.)*, No. 12-288-SLR, 2013 U.S. Dist. LEXIS 40919, at *1-2 (D. Del. Mar. 25, 2013) (citing *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991)) ("[The court] exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'").

[14] Principal Brief, Statement of the Case.

Statement of the Case in this Opening Brief provides additional details on Class 9 claims and judgment reduction.

## I.   CLASS 9 CLAIMS

On April 21, 2022, Liberty filed the *Statement Regarding Closing Argument of Liberty Mutual Insurance Company in Support of its Joinder and Objection to the Third Modified Fifth Amended Chapter 11 Plan of Reorganization*[15] (the "Liberty Post-Trial Brief") identifying Liberty's independent confirmation objections that had not been resolved to date.  Principal among them was that the claim allowance process for Indirect Abuse Claims in Article IV.B of the TDPs (the "Claim Allowance Provision") violates Section 502 of the Bankruptcy Code and Bankruptcy Rule 3001(f).[16]  The Insurers jointly proposed changes (the "Insurer Proposed Changes") that would reconcile the Claim Allowance Provision with the Bankruptcy Code and Bankruptcy Rules.[17]

---

[15] A. 8993-9009.

[16] *See, e.g.*, *id.* ¶¶ 4-5.

[17] Prior to Liberty filing its Post-Trial Brief, the Insurers submitted the Insurer Proposed Changes to the Debtors and Claimant Representatives as a means for resolving the Insurers' objection to Article IV.B of the TDPs.  *See* A. 9004.  The Debtors and Claimant Representatives rejected the Insurer Proposed Changes and provided a draft of their own proposed revisions to Article IV.B of the TDPs.  *See* A. 9005-06.  A redline reflecting the Insurer Proposed Changes as compared to the Claim Allowance Provision that was proposed by the Debtors and Claimant Representatives and ultimately approved in material part by the Bankruptcy Court reflects the difference in the parties' positions.  *See* A. 9007-08.  The changes noted

Among other requirements, the Claim Allowance Provision in Article IV.B of the TDPs requires each Indirect Abuse Claimant to prove that its Indirect Abuse Claim is *not* subject to disallowance under Section 502 of the Bankruptcy Code and is *not* subject to subordination under Sections 509(c) or 510 of the Bankruptcy Code.[18]  If an Indirect Abuse Claimant fails to convince the Settlement Trustee that its claim satisfies these and other requirements of the Claim Allowance Provision, such claim will be disallowed and not entitled to payment under the Plan even if it is valid under state law and the parties' contracts.[19]  In essence, the Claim Allowance Provision requires the Insurers to prove a negative to the satisfaction of the Settlement Trustee, and flips the normal claim allowance procedure—pursuant to which a claim is deemed allowed absent an objection by a party in interest—on its head.

In its July 29, 2022 opinion (the "Opinion"), the Bankruptcy Court concluded, among other things, that to the extent that any party objected to the *treatment* of Indirect Abuse Claims, such objections were overruled because Class 9 had voted to accept the Plan.[20]  The Insurers agree that any objection by a Class 9 creditor to the

---

in the redline, *see id.*, to the Insurer Proposed Changes are those that the Insurers submit violate Section 502 of the Bankruptcy Code and Bankruptcy Rule 3001(f).

[18] A. 509 Art. IV.B.

[19] *See id.*

[20] A. 265 ("Class 9 accepted its treatment and insurers are, therefore, bound by the class vote.").

*treatment* of Class 9 claims should be overruled because Class 9 voted to accept the Plan.  The Insurers' objection does not relate to treatment.

Also in its Opinion, the Bankruptcy Court separately concluded that "[t]he allowance of a claim is distinct from treatment of a claim and the [Class 9] vote does not bind a dissenting creditor with respect to whether its claim is allowed."[21]  The Bankruptcy Court went on to hold that Indirect Abuse Claimants would be entitled to judicial review of their claims to the extent the Settlement Trustee disallowed any such claims.[22]  Notably, the Bankruptcy Court did not explicitly state whether the Opinion was intended to overrule the Insurer Proposed Changes.

On September 1, 2022, the Bankruptcy Court held a hearing (the "September 1 Hearing") to consider the *Debtors' Motion to Amend and Supplement the Findings of Fact and Conclusions of Law in the Confirmation Opinion Pursuant to Fed. R. Bankr. P. 7052 and Fed. R. Civ. P. 52* and to resolve certain pending objections to the Plan and the TDPs.[23]  At that hearing, counsel for Liberty requested clarification as to whether the Bankruptcy Court had intended for the Opinion to overrule the

---

[21] *Id.*

[22] *Id.*  Allowing for post-disallowance judicial review does not remedy the infirmity in the Claim Allowance Provision.  As discussed more fully below, the Claim Allowance Provision impermissibly shifts the burdens of proof and turns on its head the protections of the Bankruptcy Code and Bankruptcy Rules.

[23] *See* A. 9260-375.

Insurer Proposed Changes.[24]  Counsel for the Future Claimants Representative (the

"FCR") stated that it was the FCR's position that the Insurer Proposed Changes had

in fact been overruled.  The FCR's counsel stated that the Bankruptcy Court had

"overruled objections with respect to treatment" and that counsel was "not sure what

this is if not treatment of indirect abuse claims."[25]  The Bankruptcy Court agreed,

noting without elaboration that it believed the Insurer Proposed Changes concerned

treatment, stating "I think it's treatment, it was voted on."[26]  By implication, because

Class 9 had accepted the Plan pursuant to Section 1126 of the Bankruptcy Code, and

because the Insurer Proposed Changes were deemed to address an issue of claim

treatment (not allowance), the Insurer Proposed Changes were deemed overruled.

## II.    JUDGMENT REDUCTION

Following a long and hard-fought contest, beginning with the Insurers'

objections to Confirmation[27] and continuing through post-trial submissions[28] and

hearings,[29] the Debtors agreed in principle to the Insurers' request for a judgment

---

[24] A. 9342-43.

[25] A. 9347.

[26] *Id.*  The Bankruptcy Court did not elaborate on its brief remark that claim allowance is synonymous with claim treatment, nor at any time prior to the September 1 Hearing did the Bankruptcy Court request that the parties brief the issue.

[27] *See, e.g.*, A. 8587 ¶ 23 & n.31, A. 8603 ¶ 36 & n.62.

[28] *See* A. 9022 ¶ 2.

[29] A. 9324-32; A. 9999-10006.

reduction provision; and the parties worked in earnest to find mutually satisfactory language to accomplish the task.  These efforts bore fruit, including the Enabling Clause (set forth and defined below).[30]  But the parties ultimately were unable to agree upon the judgment reduction provision itself and presented dueling proposals to the Bankruptcy Court.[31]  The Bankruptcy Court selected the Debtors' proposed language (with one change not relevant here)[32] and entered the Confirmation Order[33] containing the Judgment Reduction Clause (set forth and defined below).[34]

The judgment reduction provisions of the Confirmation Order begin with the following "Enabling Clause":

> Notwithstanding any terms or provisions in the Plan, Plan Documents, Insurance Settlements, Settlement Trust Documents (including the Trust Distribution Procedures), this Order, any finding of fact and/or conclusion of law with respect to Confirmation of the Plan (including any other provision that purports to be preemptory or supervening), any right, claim or cause of action for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement or offset relating to one or more Abuse Claims that a Non-Settling Insurance Company is or may have been entitled to assert against any Settling Insurance Company but for the Channeling Injunction, the Insurance Entity Injunction or other protections in the Plan shall be channeled to and

---

[30] *Compare* A. 9185-87, *with* A. 337-38 ¶ 51(a); *see also* A. 10003.

[31] A. 9376-77.

[32] *Id.*

[33] *See* A. 282-848 (the "Confirmation Order").

[34] A. 337-38.

> become a right, claim or cause of action solely against the
> Settlement Trust . . . and not against the Settling Insurance
> Company in question, and the sole recourse of the Non-
> Settling Insurance Company asserting such claim against
> the Settlement Trust . . . shall be by means of judgment
> reduction as provided herein.[35]

The Confirmation Order then provides (as follows, the "Judgment Reduction

Clause"):

> If a Non-Settling Insurance Company obtains a final and
> non-appealable judicial determination or binding
> arbitration award in any Insurance Action, that it would
> have been entitled to recover a sum certain on its right,
> claim or cause of action against a Settling Insurance
> Company for contribution, subrogation, indemnification,
> allocation, reimbursement or offset relating to one or more
> Abuse Claims, or the Settlement Trustee . . . agrees to such
> entitlement to such sum certain, upon such determination
> or award in the Insurance Action, the liability for such sum
> certain or such agreement shall be satisfied solely by the
> Settlement Trust . . . reducing or limiting any claim, cause
> of action or judgment it has against the Non-Settling
> Insurance Company for recovery on any Abuse Claim that
> gave rise to such right, claim or cause of action for
> contribution, subrogation, equitable subrogation,
> indemnification, allocation, reimbursement or offset.  The
> Settlement Trust . . . shall not seek to enforce any judicial
> determination or binding arbitration award it has obtained
> against a Non-Settling Insurance Company that is seeking
> such reduction until the Settlement Trust's . . . judgment
> or award becomes final and non-appealable.   Post-
> judgment interest shall not accrue with respect to the
> portion of any such claim that is so reduced by a Final
> Order as a result of a claim for contribution, subrogation,
> equitable subrogation, indemnification, allocation,

---

[35] *Id.* ¶ 51(a).

reimbursement or offset relating to one or more Abuse Claims.[36]

## SUMMARY OF ARGUMENT

The Bankruptcy Court erred in two ways when it confirmed a plan that deprived the Insurers of certain rights afforded to them under the Bankruptcy Code, state law, and their Insurance Policies.

First, under the Plan, all Indirect Abuse Claims, including any claims the Insurers would be entitled to assert against one or more Protected Parties under their respective Insurance Policies, are to be channeled to the Settlement Trust. Although the Debtors have represented that such claims will be paid in full, the allowance process for such claims effectively ensures that Indirect Abuse Claims uniformly will be disallowed and thus never will be entitled to a recovery. The TDPs impermissibly shift the burden of the claim allowance process onto the Insurers in direct contradiction of Section 502 of the Bankruptcy Code and related Bankruptcy Rules. In overruling the Insurers' objection to the Plan as to this issue, the Bankruptcy Court erroneously conflated claim treatment with claim allowance.

Second, the Bankruptcy Court erred when it declined the Insurers' request to modify the Plan to enhance the language related to judgment reduction. The judgment reduction language included in the Plan mandates only that any judgment

---

[36] A. 338-39 ¶ 51(b).

against an Insurer be reduced by the amount such Insurer would have recovered in an action against the applicable Settling Insurance Company(ies) now protected by the Releases and Injunctions under the Plan.  This language fails to compensate the Insurers in the event their respective claim(s) exceed the underlying judgment against such Insurer.  The judgment reduction language, moreover, includes an imbalanced finality-of-judgment requirement that is improper and prejudicial. Under this scheme, any reduction to which an Insurer is entitled may not be offset from the underlying judgment until expiration or exhaustion of the appeal from such reduction, while entry of the *full* (unreduced) underlying judgment itself is not so restricted.  The Bankruptcy Court therefore also erroneously confirmed the Plan without modifying the judgment reduction language to (i) remove the finality-of-judgment requirement and (ii) include supplementary judgment reduction language entitling the Insurers to affirmatively recover the difference between their claim and the underlying judgment.

## **ARGUMENT**

I.   **THE BANKRUPTCY COURT ERRED IN FINDING THAT THE CLAIM ALLOWANCE PROCESS FOR INDIRECT ABUSE CLAIMS CONSTITUTES "TREATMENT" UNDER THE PLAN.**

A.   **The Claim Allowance Provision Violates the Bankruptcy Code and the Bankruptcy Rules.**

The Claim Allowance Provision violates the requirements and creditor-protections of Section 502 of the Bankruptcy Code and Bankruptcy Rule 3001(f).

- 14 -

As a result, the Plan fails to comply with Section 1129(a)(1) of the Bankruptcy Code and confirming it was error.

Section 502(a) states that a claim that is properly filed is *deemed allowed* unless and until a party in interest objects.[37]  "For most creditors, the fundamental right enjoyed in bankruptcy is the right to file a proof of claim . . . ."[38]  The proof of claim "is presumed to be *prima facie* valid until an objection is filed.  It is an efficient process that gives all sides an opportunity to assert their position."[39]  Furthermore, "Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure, i.e., includes the facts and documents necessary to support the claim, constitutes *prima facie* evidence of the validity and amount of the claim."[40]  When a party properly files a proof of claim, as each of the Insurers has done, the claim is presumptively valid, and "[t]he objecting party carries the burden of going forward with the evidence in support of its objection which

---

[37] 11 U.S.C. § 502(a); *see Scott v. Aegis Mortg. Corp. (In re Aegis Mortg. Corp.)*, No. 07-11119 (BLS), 2008 Bankr. LEXIS 1519, at *17-18 (Bankr. D. Del. May 22, 2008) ("A proof of claim is deemed allowed unless a party in interest objects in a timely fashion.  11 U.S.C. § 502(a).  Pursuant to 11 U.S.C. § 502(b), if a party makes such an objection, the court must determine the allowed amount of the contested claim after notice and a hearing. 11 U.S.C. § 502(b).").

[38] *Judd v. Wolfe (In re Judd)*, 78 F.3d 110, 114 (3d Cir. 1996).

[39] *Pariseau v. Asset Acceptance, LLC (In re Pariseau)*, 395 B.R. 492, 495 (Bankr. M.D. Fla. 2008).

[40] *In re Samson Res. Corp.*, No. 15-11934 (BLS), 2017 Bankr. LEXIS 4294, at *5 (Bankr. D. Del. Dec. 13, 2017).

mu[st] be of a probative force equal to that of the allegations of the creditor's proof of claim."[41]  The party opposing the claim must come forward with one or more of the nine exceptions to allowance under Section 502(b); otherwise, the court "shall allow" the claim.[42]

The Claim Allowance Provision turns this concept on its head.  The Debtors recognized that "[t]o the extent that non-Debtor third parties have rights under the Insurance Policies, those non-Debtors can assert their rights against the Settlement Trust as Indirect Abuse Claims."[43]  Under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, proofs of claim are *prima facie* evidence

---

[41] *Id.* (citing *In re Kincaid*, 388 B.R. 610, 614 (Bankr. E.D. Pa. 2008)); *see In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) ("[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.  The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim.").

[42] *Plymouth Park Tax Servs. LLC v. Princeton Off. Park, LLC (In re Princeton Off. Park, L.P.)*, No. 14-2125 (MAS), 2015 U.S. Dist. LEXIS 10992, at *13 (D.N.J. Jan. 30, 2015) ("Even where a party objects, however, the court 'shall allow' the claim unless one of the nine exceptions enumerated in § 502(b) applies."), *aff'd*, 649 F. App'x 137, 2016 U.S. App. LEXIS 8343 (3d Cir. 2016) (unpublished); *Homestead Partners v. Condor One (In re Homestead Partners)*, 200 B.R. 274, 277 & n.2 (Bankr. N.D. Ga. 1996) ("Claims enjoy a presumption of validity under the Bankruptcy Code.  *See* 11 U.S.C. § 502(a).  When a party in interest objects to a proof of claim, the Code specifically directs that the claim 'shall be allowed' unless one of nine exceptions, such as that for unmatured interest, should happen to apply.  *See* 11 U.S.C. § 502(b).").

[43] A. 10897-99 Art. III.F.

of the validity and amount of such Indirect Abuse Claims.  However, the TDPs shift the burden away from the Settlement Trustee (to object) and on to the Indirect Abuse Claimant (to affirmatively prove the validity of its claim).[44]  To meet this unjustified burden, the Indirect Abuse Claimant must traverse a gauntlet of requirements, including proving, among other things, that its Indirect Abuse Claim is not subject to disallowance under Section 502 or subordination under Sections 509(c) or 510.[45]  As applied to Indirect Abuse Claims, the Claim Allowance Provision improperly shifts the burdens under, and imposes additional requirements for allowance that violate, the Bankruptcy Code and Bankruptcy Rules.

The roadblocks to claim allowance imposed by the TDPs underscore the extent of the Debtors' and Claimant Representatives' efforts to effectively disallow all Indirect Abuse Claims.  Prior drafts of the TDPs provided that the payment of Indirect Abuse Claims was to be subordinated to payment in full of Direct Abuse Claims, making it highly unlikely Indirect Abuse Claims would ever receive a recovery under the Plan.[46]  In response to Liberty Mutual's objection to the Debtors'

---

[44] A. 509 Art. IV.B.

[45] *Id.*

[46] *See* A. 13148 Art. XI.A ("Indirect Abuse Claims that become Allowed Indirect Abuse Claims shall receive distributions in accordance with Article IX hereof, *provided*, *however*, that **any Indirect Abuse Claim shall be subordinate and junior in right to the prior payment in full of all Allowed Abuse Claims**

Disclosure Statement,[47] the TDPs were revised to remove this concept.  However, the intent remains clear—to construct as many obstacles as the Bankruptcy Court may permit to prevent Indirect Abuse Claims from being allowed and paid *pari passu* with Direct Abuse Claims.    That is because, from the Claimant Representatives' perspective, affording Indirect Abuse Claims *pari passu* treatment with Direct Abuse Claims will dilute recoveries on Direct Abuse Claims and, by extension, the sizeable contingency fees that the Direct Abuse Claimants' attorneys will collect.

Perhaps in recognition of the infirmities in the claims allowance process, the Bankruptcy Court ruled in its Opinion that the Insurers "are entitled to judicial review of their claims *once* the Settlement Trustee has made her determinations."[48] But *subsequent* judicial review does not, and cannot, remedy the deficiencies inherent in the Claim Allowance Provision.  As an initial matter, it is unclear what the focus of any judicial review will be.  If a court subsequently reviews whether the Insurers complied with the terms of the TDPs such that their claim should have been allowed by the Settlement Trustee, instead of whether the Insurers have a presumptively allowed claim pursuant to the Bankruptcy Code and Bankruptcy

---

that are **Direct Abuse Claims as liquidated under these TDP**.") (second emphasis added).

[47] *See* A. 10814.

[48] A. 258 (emphasis added).

Rules, then such judicial review simply swaps the identity of the reviewer without rectifying the underlying problems of the Claim Allowance Provision.  The Insurers still effectively would be foreclosed from asserting their Indirect Abuse Claims if they were required to prove a negative—that is, that their claims are not subject to disallowance or subordination—to a judge as opposed to the Settlement Trustee.

If, on the other hand, the purpose of subsequent judicial review is to assess compliance with the Bankruptcy Code, then the review merely highlights the very problem with the Claim Allowance Provision.  It was error to approve TDPs with a claims allowance process that fundamentally violates the Bankruptcy Code and Bankruptcy Rules.  Moreover, limiting the Insurers to a subsequent judicial review, where the protections of the Bankruptcy Code and Bankruptcy Rules presumably would apply, is inequitable and impractical.  Each Indirect Abuse Claimant whose claim is never allowed by the Settlement Trustee, or whose claim is allowed at an amount that the Indirect Abuse Claimant disputes, must expend the time and resources to have its claim reviewed by a court of competent jurisdiction.

Making matters worse, a party asserting an Indirect Abuse Claim "must establish to the satisfaction of the Settlement Trustee" that each and every element of the Claim Allowance Provision is satisfied.[49]  As more fully set forth in the

---

[49] A. 509 Art. IV.B.

Principal Brief,[50] there is a "mismatch [of] fiduciary duties"[51] requiring the Settlement Trustee to oversee the allowance of *all* Abuse Claims but remain beholden to the members of the Settlement Trust Advisory Committee ("STAC"), which is comprised of members of the plaintiffs' law firms whose clients are asserting Direct Abuse Claims. The STAC members are focused on payment of their clients' Direct Abuse Claims, notwithstanding that the STAC is required to "serve in a fiduciary capacity representing current holders of Abuse Claims" (*i.e.*, both Direct and Indirect Abuse Claims).[52] But the composition of the STAC proves that there is an irreconcilable difference between treatment of the Class 8 Direct Abuse Claimants—who are the clients of the STAC members—and Class 9 Indirect Abuse Claimants.

The TDPs should have been modified in one of two ways: by either (i) eliminating the requirements that violate the Bankruptcy Code and Bankruptcy Rules (as the Insurers requested through the Insurer Proposed Changes); or (ii) permitting holders of Indirect Abuse Claims to elect a judicial review of their claims in the first instance, rather than restricting such judicial review to a post-hoc assessment conducted after the Settlement Trustee's determination. But the

---

[50] Principal Brief, Statement of the Case pt. II.A.4.(d).

[51] *See* A. 3781-82 (Williams).

[52] A. 612 § 6.2.

Bankruptcy Court rejected the Insurers' request to modify the Claim Allowance Provision. Consequently, the now-approved claims allowance process under the TDPs violates Section 502 of the Bankruptcy Code and Bankruptcy Rule 3001(f), rendering the Plan unconfirmable because it fails to comply with Section 1129(a)(1) of the Bankruptcy Code.

### B. The Insurer Proposed Changes Do Not Constitute An Issue of "Claim Treatment" and Should Not Have Been Deemed Overruled Due to Class 9 Acceptance.

Claim allowance and claim treatment are distinct issues.[53] Although the Bankruptcy Court ultimately ruled that the claims allowance procedures in Article IV.B of the TDPs constituted treatment, which the Insurers submit was error, the Bankruptcy Court nevertheless recognized that "[t]he allowance of a claim is distinct from treatment of a claim . . . ."[54] This distinction was even recognized by the drafters of the TDPs, who separately provided for allowance of an Indirect Abuse Claim (Article IV.B) and treatment of such claims (Article XI).[55] To be clear, the

---

[53] *Compare* 11 U.S.C. § 502 (governing allowance of claims), *with* 11 U.S.C. § 1129 (governing claim treatment in a chapter 11 reorganization).

[54] A. 265.

[55] *See* A. 527 Art. XI.A ("To be eligible to receive compensation from the Settlement Trust, the holder of an Indirect Abuse Claim must satisfy Article IV.B hereof. Indirect Abuse Claims that become Allowed Indirect Abuse Claims shall receive distributions in accordance with Article IX hereof and shall be subject to the same liquidation and payment procedures as the Settlement Trust would have afforded the holders of the underlying valid Direct Abuse Claims pursuant to Articles VIII and IX hereof.").

Insurers do not object to the proposed treatment of their allowed Indirect Abuse Claims set forth in Article XI of the TDPs.[56]  The Debtors confirmed in their brief in support of confirmation that "Class 8 *and Class 9* will receive payment in full."[57] Recognizing that there is no basis to treat Indirect Abuse Claims separately—let alone, less favorably—than Direct Abuse Claims, the Debtors and Claimant Representatives have pivoted to ensuring that Indirect Abuse Claims will never be allowed.  That is why the Insurers' objection before the Bankruptcy Court, which issue is now on appeal, is whether the conditions for *allowance* of Indirect Abuse Claims under Article IV.B of the TDPs violate the requirements and creditor-protections of the Bankruptcy Code and Bankruptcy Rules.

Courts have consistently held that the claim allowance process is "entirely distinct from confirmation of a plan that determines how an allowed claim is to be treated."[58]  The claim allowance process is a standalone analysis that asks "what is

---

[56] As noted above, *id.*, an *allowed* Indirect Abuse Claim is subject to the same liquidation and payment procedures afforded to Direct Abuse Claims.

[57] A. 12496 ¶ 294 n.445 (emphasis added).

[58] *In re Wegscheid*, 361 B.R. 144, 148 (Bankr. D. Ariz. 2007); *see also Wells Fargo Bank, N.A. v. Hertz Corp. (In re Hertz Corp.)*, 637 B.R. 781, 793 (Bankr. D. Del. 2021) (cautioning against "conflating the allowance of claims with the treatment of claims."); *In re Trib. Co.*, 506 B.R. 613, 618 (Bankr. D. Del. 2013) ("[T]he best interests of creditors test is applied in chapter 11 when considering a plan's treatment of allowed claims, but this does not answer the question of whether a claim should be allowed.  Claims allowance is governed by Bankruptcy Code §502.").

the maximum dollar amount of a creditor's claim that the Bankruptcy Code will recognize for the purpose of a pending bankruptcy case?"[59]   In contrast, claim treatment is the separate process that follows only after a claim has become an allowed claim.[60]   Indeed, bankruptcy plan distribution schemes are wholly premised on claims being allowed in the first place.[61]   In short, a claim is allowed, and then treatment is addressed separately.

This distinct two-step process is underscored by Section 1129(b)'s cram-down treatment requirements.   Section 1129(b)(2) sets minimum treatment standards that are based solely on a creditor's *allowed* claim amount.   The standards for cram-down treatment (and any treatment of creditors more generally) presuppose that the creditors have allowable claims.   To the extent such creditors lack allowable claims, they are not entitled to any treatment whatsoever.

---

[59] *Schweigert v. Schweigert*, 519 F. Supp. 3d 803, 810 (D. Mont. 2021).

[60] *See In re Insilco Techs., Inc.*, 480 F.3d 212, 216 (3d Cir. 2007) (quoting *In re Johns*, 37 F.3d 1021, 1023 n.1 (3d Cir. 1994)) ("An 'allowed claim' is one that will serve as the basis for distribution.").

[61] *See Ne. Gas Generation, LLC*, 639 B.R. 914, 923 (Bankr. D. Del. 2022) ("The Plan is clear and unambiguous about the allowance, and treatment, of the First Lien Claims.   They are allowed in full ($539 million) and receive their pro rata share of the equity in the reorganized debtor and $200 million of Reinstated First Lien Debt.").

The court in *In re Butcher* examined the dichotomy between claim allowance and claim treatment.[62]  The court first held that if a creditor's claim treatment "is not to its liking, the creditor must object or risk being bound by the plan's provisions."[63]  However, the court held that because objections concerning the "validity and amount" of a creditor's claim raise issues separate from claim treatment, such objections were not constrained by objection deadlines dictated by the plan confirmation process.[64]  The court ruled that requiring a creditor to resolve issues concerning claim allowance as part of the plan confirmation and treatment process would wrongly "collapse[] claim allowance and confirmation of a plan's treatment of claims into a single process."[65]

The Bankruptcy Court's oral ruling at the September 1 Hearing effectively collapsed the separate issues of claim allowance and treatment into a single process.[66]  The Insurers recognize that Class 9 did, in fact, vote to accept its *treatment*, which is why the Insurers are not contesting the treatment of Class 9 creditors set forth in Article XI of the TDPs (nor is there any incentive to, as such claims are to be paid in full).[67]  But the Insurers respectfully submit that,

---

[62] 459 B.R. 115, 130-32 (Bankr. D. Colo. 2011).

[63] *Id.* at 132.

[64] *Id.*

[65] *Id.*

[66] *See* A. 9347.

[67] *See supra* n.10.

notwithstanding the outcome of the Class 9 vote, they should not have been foreclosed from arguing that the *allowance* provisions for Indirect Abuse Claims are improper under applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

## II.   THE BANKRUPTCY COURT ERRED BY APPROVING THE DEBTORS' JUDGMENT REDUCTION LANGUAGE.

The Judgment Reduction Clause fails to fully and fairly compensate the Insurers for the value of their Recovery Claims (defined below) impaired by the Plan.   As a result, the Plan is noncompliant with Sections 1129(a)(1)[68] and 1129(a)(3)[69] of the Bankruptcy Code, and confirming it was in error.

The Enabling Clause and Judgment Reduction Clause, set forth in full above,[70] work together to administer and partially satisfy certain inter-insurer claims. The Enabling Clause is a supervening provision that channels to the Settlement Trust a Non-Settling Insurance Company's "right, claim or cause of action" against a Settling Insurance Company "for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement or offset relating to one or more Abuse

---

[68] Providing, in relevant part, that a plan must "compl[y] with the applicable provisions of [Title 11]."  11 U.S.C. § 1129(a)(1).

[69] Providing, in relevant part, that a plan must "ha[ve] been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).

[70] *See supra* Statement of the Case pt. II.

Claims"[71] (herein, a "<u>Recovery Claim</u>").   The Judgment Reduction Clause then controls how—or, more accurately, whether—the Settlement Trust satisfies these channeled Recovery Claims.[72]   If a court determines that a Recovery Claim in respect of a certain Abuse Claim would have entitled a Non-Settling Insurance Company to a sum-certain from a Settling Insurance Company (but for the Releases and Injunctions), then the Settlement Trustee will offset the amount of the Recovery Claim from any judgment the Settlement Trustee obtains against the Insurer for the same Abuse Claim.[73]

At first blush, these provisions may seem unobjectionable.  But the Judgment Reduction Clause suffers from two flaws that render it legally deficient.  ***First***, it permits a judgment offset ***only*** and does not contemplate any possibility of an affirmative recovery from the Settlement Trust.[74]  This deficiency, coupled with the Enabling Clause and the remainder of the Confirmation Order as it relates to Recovery Claims (*e.g.*, the Releases and Injunctions), impermissibly strips the Insurers of the value of any Recovery Claim exceeding the underlying judgment.  ***Second***, the Judgment Reduction Clause contains a finality-of-judgment

---

[71] A. 338 ¶ 51(a).

[72] *See generally* A. 338-39 ¶ 51(b).

[73] *See id.*

[74] *See id.*

requirement that applies exclusively to Recovery Claims—and not to the Settlement Trust's underlying judgment[75]—which is both unnecessary and prejudicial.   For these reasons, and as set forth in greater detail below, the Insurers respectfully submit that the Confirmation Order constitutes error and must be reversed.

## A.   The Confirmation Order Was Error Because the Judgment Reduction Clause Does Not Fairly Compensate the Insurers for the Loss of Affirmative Recovery Claims.

It is a cornerstone of American law[76] that there be no deprivation of "life, liberty or property by adjudication" without due process.[77]   And as the Supreme Court has long held, "a cause of action is a species of property protected by the . . . Due Process Clause."[78]   Courts therefore typically must afford litigants a full and fair opportunity to litigate their claims before extinguishing them.[79]   This is equally true with respect to court-approved settlements that affect the legal rights of nonconsenting litigants.[80]   As such, "a settlement agreement subject to court

---

[75] *See id.*

[76] *See* U.S. Const. amend. V.

[77] *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950).

[78] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) (citing *Mullane*, 339 U.S. at 311, 313, 315); *see also United States v. Neff*, 787 F. App'x 81, 91 (3d Cir. 2019) (unpublished) ("An entitlement to a remedy is like an entitlement to money (the most common remedy).").

[79] *See Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971).

[80] *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties

approval . . . may not impose duties or obligations on an unconsenting [*sic*] party or 'dispose' of his claims . . . in the forbidden sense of cutting him off from a remedy to which he was entitled."[81]

But the practical realities of complex, multiparty litigation—or, more specifically, the partial ***settlement*** of multiparty litigation—often are at odds with these due process principles. Defendants in multiparty litigation, for example, may face claims derivative of the underlying litigation, such as indemnity, contribution, or other related causes, brought (or held) by their co-defendants (generically, a "Derivative Claim").[82] These defendants are understandably unlikely to settle without some form of protection from such Derivative Claims.[83] To resolve the issue, partial settlements in multiparty litigation often involve a bar order, which

---

or obligations on a third party, without that party's agreement."); *see also id.* ("A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors . . . .").

[81] *Lawyer v. Dep't of Justice*, 521 U.S. 567, 579 (1997) (citing *Local No. 93*, 478 U.S. at 529).

[82] *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 494 (11th Cir. 1992)).

[83] *See id.* ("Defendants, who are willing to settle, 'buy little peace through settlement unless they are assured that they will be protected against co-defendants' efforts to shift their losses . . . .'") (internal citations omitted).

extinguishes a non-settling defendant's right to recover its Derivative Claims from a settling defendant.[84]

There is, however, an obvious tension between a settling defendant's desire for finality through a bar order and a non-settling defendant's legally protected interest in its Derivative Claims. To harmonize these competing objectives, the Third Circuit, joined by many others, has held that a bar order must provide for adequate compensation when extinguishing a non-settling defendant's Derivative Claims.[85]

This compensation often takes the form of judgment reduction.[86] Judgment reduction generally provides for any judgment entered against a non-settling defendant to be decreased by the amount such defendant would have recovered on its Derivative Claims (were they still extant).[87] Put differently, judgment reduction affords each non-settling defendant a judgment credit worth $X in return for eliminating its Derivative Claim worth $X—an even exchange. A defensive

---

[84] *See, e.g.*, *TBG, Inc. v. Bendis*, 36 F.3d 916, 923 (10th Cir. 1994) ("[C]ourts often have barred claims for contribution . . . when the parties to a partial settlement have requested a bar order.").

[85] *Eichenholtz*, 52 F.3d at 486-87; *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 160 (4th Cir. 1991); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1231 (9th Cir. 1989).

[86] *E.g.*, *Papas v. Buchwald Cap. Advisors, LLC (In re Greektown Holdings, LLC)*, 728 F.3d 567, 579 (6th Cir. 2013).

[87] *See id.*

(offsetting) judgment reduction therefore typically is sufficient to adequately compensate the litigants whose Derivative Claims simply allocate proportional fault.[88]

But not ***all*** Derivative Claims are so constrained.  A non-settling defendant may have a Derivative Claim for relief beyond apportionment of relative fault (*e.g.*, a claim for reimbursement).  Put differently, a non-settling defendant may have a Derivative Claim for which the damages sought do not consist solely of "the non-settling defendant[][']s liability to the plaintiff[]."[89]  And the value of that Derivative Claim may exceed such non-settling defendant's share of the underlying judgment—assuming the non-settling defendant suffers an adverse judgment to begin with.  In either scenario, purely defensive judgment reduction cannot compensate the non-settling defendant for the (full) value of her extinguished claim: it is only possible to set-off if (or to the extent that) the amount of the underlying judgment against such non-settling defendant is not less than the value of her Derivative Claim.[90]

---

[88] *See id.*

[89] *Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 307 (2d Cir. 2003).

[90] *Cf. Papas*, 728 F.3d at 579 ("Ordinarily, the potential harshness of a bar order is mitigated by a judgment credit provision that protects a nonsettling party from paying damages exceeding its own liability.") (internal citations and quotations omitted).

Otherwise, an offsetting judgment reduction shortchanges the non-settling defendant for the amount by which the latter exceeds the former.

As courts have held repeatedly, claims left uncompensated by a judgment reduction clause should not be extinguished.[91]   In *In re Fraser's Boiler Service, Inc.*,[92] for example, the District Court for the Western District of Washington reversed a bankruptcy court order that, among other things, included an insufficiently compensatory judgment reduction clause.  The *Fraser's Boiler* appeal arose out of a prebankruptcy settlement agreement (the "FBS Settlement") between a defunct manufacturer ("FBS") and some of its insurers (the "Settling FBS Insurers").[93]   The FBS Settlement provided for, among other things, a permanent injunction against claims related to the Settling FBS Insurers' policies, including

---

[91] *See Gerber*, 329 F.3d at 306 ("If, however, [the non-settling defendant] . . . has not been compensated for those losses by the judgment credit . . . such claims should not be extinguished."); *see also id.* (citing cases from the 10th and 11th Circuits); *Papas*, 728 F.3d at 579 ("[C]ourts that have allowed bar orders have only barred claims in which the damages are measured by the defendant's liability to the plaintiff. . . .  This limitation makes sense because when the scope of a bar order is limited to claims for contribution or indemnity, the court can compensate the non-settling defendants for the loss of those claims by reducing any future judgment against them.  A bar order that enjoins independent claims and provides no compensation is problematic to say the least.") (internal citations and quotations omitted).

[92] No. 3:18-CV-05637-RBL, 2019 U.S. Dist. LEXIS 37840 (W.D. Wash. Mar. 8, 2019).

[93] *Id.* at *6-7.

- 31 -

certain claims that FBS' remaining (non-settling) insurers (the "Remaining FBS Insurers") held against the Settling FBS Insurers (the "FBS Claims").[94]   After reaching the FBS Settlement with the Settling FBS Insurers, FBS filed a voluntary petition for relief under Chapter 11 and sought approval of the FBS Settlement and related injunction-in-aid.[95]

The bankruptcy court thereafter approved the FBS Settlement over the Remaining FBS Insurers' objections and entered an order (the "Buyback Order") authorizing the transaction.[96]   As particularly relevant here, the Buyback Order also (i) permanently enjoined the FBS Claims and (ii) included judgment reduction language.[97]   This language (as follows, the "FBS Reduction") provided: "any judgment on any [FBS] Claim against one or more [Remaining FBS] Insurers shall be reduced by the adjudicated amount of any [FBS] Claim such [Remaining FBS] Insurer would have been able to successfully assert against the [FBS] Insurers."[98] On appeal, FBS claimed that the Buyback Order should be affirmed because the FBS Reduction adequately protected the Remaining FBS Insurers' interests.[99]

---

[94] *See id.* at *7.

[95] *See id.*

[96] *See id.*

[97] *Id.* at *7-8.

[98] *Id.* at *28.

[99] *See id.*

Judge Leighton disagreed.[100]   In his opinion reversing the Buyback Order, Judge Leighton analyzed the suitability of the FBS Reduction and found it wanting, holding that it "provide[d] almost no protection."[101]   He based this decision, in part, on the defensive-only (offsetting) nature of the FBS Reduction, which "only offset[] costs . . . [in the event of] a judgment against one of [the Remaining FBS Insurers]."[102]   As a result of this structure, "if the [Remaining FBS] Insurers were to ***successfully*** defend against a claim, there would be no way for them to offset such costs under the [FBS Reduction]."[103]   The operative judgment reduction, in other words, lacked any mechanism by which the non-settling defendants (the Remaining FBS Insurers) could recover on their Derivative Claims (the FBS Claims) that exceeded the underlying judgment.

That is precisely the problem here.   The Judgment Reduction Clause, much like the FBS Reduction at issue in *Fraser's Boiler*, lacks any provision for the satisfaction of Recovery Claims that exceed the Insurer's share of the underlying judgment.[104]   Instead, the Judgment Reduction Clause permits defensive offsets (*i.e.*,

---

[100] *See id.* at *29.

[101] *Id.* at *31.

[102] *Id.*

[103] *Id.* at *30 (emphasis in original).

[104] *Compare id.*, *with* A. 338-39 ¶ 51(b).

a credit up to the amount of the underlying judgment) only[105]—and even then, only if the Recovery Claim and underlying judgment arose out of the same Abuse Claim.[106]  After giving effect to the Injunctions and Releases, the upshot is that any amount of a Recovery Claim greater than the underlying judgment (if any) against the Insurer is extinguished without just compensation in return.[107]

This is fundamentally inconsistent with the purpose of judgment reduction and the constitutional imperative on which it is based.[108]  A payment less than the value of the property taken in exchange—or worse, no payment at all—is not just compensation.[109]  The harm, moreover, is not academic.  The record shows that up to 90% of the aggregate liability for Abuse Claims can be allocated to the Settling Insurance Companies' policies,[110] which increases the likelihood of inter-insurer Recovery Claims against the Settling Insurance Companies should the Settlement Trust achieve a litigated recovery from an Insurer that—but for the Releases and

---

[105] *See* A. 338-39 ¶ 51(b).

[106] *Id.*

[107] *Compare* A. 325 ¶ 36(b) ("[A]ll Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any claim or cause of action . . . against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Abuse Insurance Policy or other insurance policy issued by a Setting Insurance Company covering Abuse Claims . . . shall be stayed, restrained, and enjoined . . . ."), *and* A. 330-31 ¶ 41(Release), *with* A. 337-39 ¶ 51.

[108] *Cf. Gerber*, 329 F.3d at 306.

[109] *Cf. id.*

[110] A. 5872; A. 10511 at 259:25-260:25.

Injunctions—would have been a Settling Insurance Company's obligation to pay. This is compounded by the Settling Insurance Companies' participation in the Debtors' insurance program vis-à-vis the Insurers. Specifically, many of Insurers' policies are excess to one or more of the Settling Insurance Companies' policies (including, *e.g.*, Allianz as excess to INA in 1980).[111]

Rulings in Insurance Actions will determine whether or to what extent an Abuse Claim even reaches an Insurer's excess policy—which in turn dictates the amount, if any, of a judgment against the Insurer in the Insurance Action. If, for example, Allianz were to obtain a favorable coverage ruling in an Insurance Action, indicating that the applicable Abuse Claim implicates only INA's underlying primary policy, Allianz would not suffer any adverse judgment against it; but Allianz may have (and succeed upon) a Recovery Claim against INA[112] for reimbursement of defense costs associated with the Insurance Action and/or Abuse Claim. The Confirmation Order, however, restrains Allianz from seeking satisfaction of its Recovery Claim from INA, a Settling Insurance Company.[113] Allianz's sole remedy would be to set off its Recovery Claim, under the Judgment Reduction Clause,

---

[111] A. 12730-34.

[112] For clarity, under the Channeling Injunction and the Enabling Clause, the Settlement Trustee (as successor to INA) would be the named defendant.

[113] *See* A. 325-26 ¶ 36(b), 337-38 ¶ 51(b).

against a judgment that does not exist.[114]  Allianz would lose 100% of the value of its Recovery Claim as a result.  The possibility of such an outcome is not simply hypothetical: A state-court action involving, among other things, an Allianz Insurer's Recovery Claim(s) against INA (among other Settling Insurance Companies) has been pending since 2017.[115]

This is at best unfair, and at worst unconstitutional.[116]  But either way, neither Allianz nor any other Insurer should be stripped of valuable property rights—here, Recovery Claims—without just compensation.  To prevent that outcome, any Recovery Claim (or the portion thereof) exceeding the underlying judgment against the Insurer should be assertable against the Settlement Trust as an Indirect Abuse Claim and paid out as such under the TDPs.[117]  Indeed, several courts have afforded

---

[114] *See* A. 338-39 ¶ 51(b).

[115] *See* A. 10304-05 ¶ 2; A. 10384 ¶ 2.  For clarity, the underlying state-court action was filed in 2017, and certain claims for, *e.g.*, contribution or indemnity followed in later years.

[116] *Papas*, 728 F.3d at 579 ("A bar order that enjoins independent claims and provides no compensation is problematic to say the least.").

[117] Treating these Recovery Claims (or the applicable portion thereof) as Indirect Abuse Claims under the TDPs provides for compensation to the Insurers without prejudice to the Direct Abuse Claimants because, according to the Debtors and the Bankruptcy Court, "Direct Abuse Claims will be paid in full."  A. 79; *see also supra* n.10.  In other words, this treatment will not prioritize payment to the Insurers at the expense of the Direct Abuse Claimants.

similar protections to non-settling insurers in similar situations.[118]   Without a

comparable mechanism here, entry of the Confirmation Order was error and must be

reversed.

**B.     The Confirmation Order Also Must Be Reversed Because the Judgment Reduction Clause's Finality Requirement Is Improper and Prejudicial.**

The Confirmation Order also must be reversed because the Judgment

Reduction Clause contains an inappropriate and imbalanced finality-of-judgment

requirement.  The Judgment Reduction Clause provides, in pertinent part, that an

Insurer's entitlement to a Recovery Claim must be adjudged "final and non-

appealable" before application of the resulting setoff against the underlying

judgment.[119]   But the underlying judgment itself need not be "final and non-

---

[118] *See, e.g.*, *In re Asarco LLC*, 420 B.R. 314, 377 (S.D. Tex. 2009) ("If judgment reduction is unavailable . . . and the Non-Settling Asbestos Insurance Company incurred attorneys' fees and expenses in connection with defending . . . the Non-Settling Asbestos Insurance Company may seek reimbursement of such attorneys' fees and expenses . . . by bringing an action against the Section 524(g) Trust . . . ."); *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 980, 997 (9th Cir. 2012) (noting that "[t]he order further provides that in direct action litigation, if the non-settling insurer is found to have a claim against a settling insurer for litigation costs, and they are unable to recover those costs through a judgment reduction, then the non-settling insurer can bring an action against the Trust for that amount.").

[119] A. 338-39 ¶ 51(b) ("If a Non-Settling Insurance Company obtains a final and non-appealable judicial determination or binding arbitration award in any Insurance Action, that it would have been entitled to recover a sum certain on its [Recovery Claim] . . . upon such determination or award in the Insurance Action,

- 37 -

appealable" before entry against the Insurer, nor is it automatically stayed pending exhaustion of appeal.[120]   There are at least two problems with this asymmetry.

*First*, it is completely unnecessary.[121]   The only reason offered for the imbalance was that the Settlement Trust may have to "un-reduce [its] judgment or further reduce [its] judgment based on the outcome of any appeal" which purportedly will create "a whole host of procedural complexities" and "all sorts of difficulties for the trust in terms of reserves, accounting, reporting, [and] potential taxes . . . ."[122] But this argument is unavailing.  As a threshold matter, it was unaccompanied by any evidence—or even an explanation—of the "procedural complexities" and/or "difficulties" implicated.[123]   More to the point, the finality-of-judgment requirement does not prevent a "reduc[tion] [of the Settlement Trust's] judgment based on the

---

the liability for such sum certain . . . shall be satisfied solely by the Settlement Trust . . . reducing or limiting . . . .").

[120] *See id.*

[121] Indeed, it is not even common.  Neither *Eichenholtz* nor *Asarco*, for example, involved lopsided language.  *See Eichenholtz*, 52 F.3d at 481 ("The proposed final agreement also expressly barred the plaintiffs 'from seeking from the non-settling defendants any amount greater than the proportionate liability, if any, of the non-settling defendants for any damages, if any, determined at trial . . . .'"); *Asarco*, 420 B.R. at 378 ("If any Contribution Claim . . . is determined to be valid under applicable non-bankruptcy law . . . by the court presiding over the Insurance Action or the Defense Cost Action then . . . the amount of any judgment . . . shall be reduced by the full amount so determined of such Contribution Claim . . . .").

[122] A. 10008.

[123] *See id.*

outcome of any appeal."[124]  Unless (i) no party ever appeals a Recovery Claim or (ii) the Settlement Trust successfully defeats every appealed Recovery Claim in its entirety, the Settlement Trust necessarily will have to "reduce [its] judgment based on the outcome of [the] appeal"[125] because the Judgment Reduction Clause would have prevented an earlier reduction.  The Judgment Reduction Clause's finality requirement, in other words, does not even serve the manufactured purpose for which it was proposed.

*Second*, the lopsided language in the Judgment Reduction Clause leads to absurd—and prejudicial—results.  For example, the asymmetrical language permits (or, at least, does not proscribe) the accrual of prejudgment interest on the entirety of any underlying judgment against an Insurer, even though the full amount may be reduced pending resolution of an offsetting Recovery Claim.[126]  This makes little sense as a practical matter and is clearly prejudicial to the affected Insurer.  It is also contrary to the purpose of prejudgment interest, which is compensatory in nature.[127]

---

[124] *Id.*

[125] *Id.*

[126] *See generally* A. 338-39 ¶ 51(b).  While the Judgment Reduction Clause prevents the accrual of ***post***-judgment interest "with respect to the portion of any such claim that is so reduced," it fails to address pre-judgment interest.  A. 339.

[127] *See, e.g.*, *Olin Corp. v. Lamorak Ins. Co.*, No. 84-cv-1968 (JSR), 2018 U.S. Dist. LEXIS 65446, at *45 (S.D.N.Y. Apr. 17, 2018) (quoting *Love v. State*, 583 N.E.2d 1296, 1298 (N.Y. 1991) ("[Prejudgment] interest is not a penalty.  Rather, it is simply the cost of having the use of another person's money for a specified

In addition to permitting unwarranted prejudgment interest, the asymmetrical finality language in the Judgment Reduction Clause enables the Settlement Trust to attempt to execute on the entire underlying judgment pending appeal.[128]   And while there is an effort in the Judgment Reduction Clause to circumscribe that outcome, by providing that the Settlement Trust "shall not seek to enforce" the underlying judgment until it "becomes final and non-appealable,"[129] this language is cold comfort.   It lacks both an enforcement mechanism and a remedy for its violation.[130] Therefore, without application of the setoff amount (if any) at the time of the underlying judgment, the Insurers are left with the Hobson's choice of either moving for a stay pending appeal—on *every* Insurance Action involving a disputed Recovery Claim—or risking the possibility of an attempt to execute on the full amount of the underlying judgment, the remedy for which is unspecified.

---

period . . . and is not meant to punish defendants for delaying the final resolution of the litigation."). *Olin Corp.* is particularly instructive.   It involved, among other things, a dispute as to whether prejudgment interest on a judgment—which was subject to reduction on account of an offsetting contribution claim—should be applied before or after the offset. *See id.* at *12.   According to Judge Rakoff, "pre-judgment interest is properly calculated on the damages amount that [defendant] is ordered to pay *after* application of a set-off or judgment reduction." *Id.* at *46 (emphasis added).

[128] *Cf. City of San* Antonio *v. Hotels.com, L.P.*, 141 S. Ct. 1628, 1632 (2021) ("Unless a . . . stay is granted, the prevailing party can attempt to execute on [its] judgment while an appeal is pending.").

[129] A. 338-39 ¶ 51(b).

[130] *See id.*

Saddling the Insurers with the risk of any of these outcomes is inappropriate and inequitable.  It is also entirely avoidable.  Instead of attempting to treat the symptoms of asymmetrical finality language (*e.g.*, accrual of postjudgment interest), the better approach is to cure the disease.  To that end, the Confirmation Order should be reversed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse.

Dated: November 7, 2022

Respectfully Submitted,

SEITZ, VAN OGTROP & GREEN, P.A.

*/s/ R. Karl Hill*
R. Karl Hill (DE Bar No. 2747)
222 Delaware Avenue
Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-0600
Email: khill@svglaw.com

-and-

CHOATE, HALL & STEWART LLP
Douglas R. Gooding (*pro hac vice*)
Jonathan D. Marshall (*pro hac vice*)
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

-and-

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
Kim V. Marrkand (*pro hac vice*)
Laura Bange Stephens (*pro hac vice* forthcoming)
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
kvmarrkand@mintz.com
lbstephens@mintz.com

*Counsel to Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation*

TROUTMAN PEPPER HAMILTON SANDERS LLP

*/s/ David M. Fournier*
David M. Fournier (DE Bar No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184) Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 404.885.3000

-and-

PARKER, HUDSON, RAINER & DOBBS LLP
Harris B. Winsberg (*pro hac vice*)
Matthew G. Roberts (*pro hac vice*)
303 Peachtree Street NE
Suite 3600
Atlanta, GA 30308
Telephone: 404.420.4313
Facsimile: 404.522.8409

-and-

McDERMOTT WILL & EMERY LLP
Margaret H. Warner
(*pro hac vice*)
Ryan S. Smethurst
(*pro hac vice*)
Alex M. Spisak
(*pro hac vice*)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone: 202.756.8228
Facsimile: 202.756.8087

*Attorneys for Allianz Global Risks US Insurance Company*

- 42 -

TROUTMAN PEPPER HAMILTON
SANDERS LLP

*/s/ David M. Fournier*
David M. Fournier (DE Bar No. 2812)
Marcy J. McLaughlin Smith (DE No.
6184)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 302.777.6500
Facsimile: 302.421.8390

-and-

PARKER, HUDSON, RAINER &
DOBBS LLP
Harris B. Winsberg (*pro hac vice*)
Matthew G. Roberts (*pro hac vice*)
303 Peachtree Street NE
Suite 3600
Atlanta, GA  30308
Telephone: 404.420.4313
Facsimile: 404.522.8409

-and-

BRADLEY RILEY JACOBS PC
Todd C. Jacobs (*pro hac vice*)
John E. Bucheit (*pro hac vice*)
Paul J. Esker (*pro hac vice*)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone: 312.281.0295

*Attorneys for National Surety
Corporation and Interstate Fire &
Casualty Company*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing brief was prepared on a computer using Microsoft Word.   A proportionally spaced typeface was used, as follows:

> Name of typeface:  Times New Roman
> Point size:  14
> Line spacing:  Double

The total number of words in the brief, excluding the items set forth in Federal Rule of Bankruptcy Procedure 8015(g), is 9909.


*/s/ R. Karl Hill*
R. Karl Hill (DE Bar No. 2747)
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue
Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-0600
Email: khill@svglaw.com

Date: November 7, 2022