# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> Boy Scouts of America and Delaware BSA, LLC,[1] <br><br>          Debtors. | Chapter 11 <br><br> Bankruptcy Case No. 20-10343 (LSS) (Jointly Administered) |
| National Union Fire Insurance Co. of Pittsburgh, PA, *et al.*, <br><br>          Appellants. <br>  v. <br> Boy Scouts of America and Delaware BSA, LLC, *et al.*, <br><br>          Appellees. | Lead Case No. 22-cv-01237-RGA <br><br> Consolidated Case Nos. <br> 22-cv-01238-RGA; <br> 22-cv-01239-RGA; <br> 22-cv-01240-RGA; <br> 22-cv-01241-RGA; <br> 22-cv-01242-RGA; <br> 22-cv-01243-RGA; <br> 22-cv-01244-RGA; <br> 22-cv-01245-RGA; <br> 22-cv-01246-RGA; <br> 22-cv-01247-RGA; <br> 22-cv-01249-RGA; <br> 22-cv-01250-RGA; <br> 22-cv-01251-RGA; <br> 22-cv-01252-RGA; <br> 22-cv-01258-RGA; <br> 22-cv-01263-RGA |

## DEBTORS-APPELLEES' APPENDIX TO CONSOLIDATED ANSWERING BRIEF: VOLUME 4 (SA 0437 THROUGH SA 0887)

Dated: December 7, 2022

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
Glenn M. Kurtz (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
jessica.lauria@whitecase.com
gkurtz@whitecase.com

WHITE & CASE LLP
Michael C. Andolina
Matthew E. Linder
Laura E. Baccash
Blair M. Warner
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
mandolina@whitecase.com
mlinder@whitecase.com
laura.baccash@whitecase.com
blair.warner@whitecase.com

WHITE & CASE LLP
Ronald K. Gorsich
Doah Kim
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone:  (213) 620-7700
rgorsich@whitecase.com
doah.kim@whitecase.com

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
dabbott@morrisnichols.com
aremming@morrisnichols.com
ptopper@morrisnichols.com

*Counsel for Debtors-Appellees and Debtors in Possession*

2

## INDEX OF SUPPLEMENTAL DOCUMENTS

| BSA Records | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| List of Current Members of the NEB (Exhibit B to Desai Declaration) | 1-191 | SA 0001 – SA 0004 |
| List of Current Members of the NEC (Exhibit E to Desai Declaration) | 1-192 | SA 0005 – SA 0007 |
| BSA Charter and Bylaws (as amended through May 2021) | 468 | SA 0008 – SA 0035 |
| Rules and Regulations of the Boy Scouts of America (September 2020) | 291 | SA 0036 – SA 0059 |
| Local Council Charter Renewals (Excerpt) | 7-3 | SA 0060 – SA 0063 |
| 2010 Articles of Incorporation Template (Mobile Area Council Articles of Incorporation, Art. II. Duration) | 187 | SA 0064 – SA 0067 |
| Form of Annual Unit Charter Agreement (2020) | 264 | SA 0068 – SA 0069 |
| BSA Bylaws (June 1, 2019) | 234 | SA 0070 – SA 0095 |
| Local Council Charter Renewal for Greenwich NR A2 (January 15, 2020) | 2976 | SA 0096 |
| Troop Roster for Troop 172 (Patriots Path Council) (Redacted) | 17 | SA 0097 – SA 0106 |
| Troop Roster for Sanford Troop 37 (Abraham Lincoln Council) (Redacted) | 23 | SA 0107 – SA 0108 |

| | | |
|---|---|---|
| Examples and Templates of Local Council Articles & Bylaws | 7-2 | SA 0109 – SA 0373 |
| Troop Roster for Pack C-3210 (Cape Fear Council) (Redacted) | 43 | SA 0374 – SA 0377 |

| Proofs of Claim | Appendix Page Nos. |
|---|---|
| Proof of Claim No. 8174 | SA 0378 – SA 0387 |
| Proof of Claim No. 639 | SA 0388 – SA 0390 |
| Proof of Claim No. 4971 | SA 0391 – SA 0405 |
| Proof of Claim No. 9558 | SA 0406 – SA 0408 |
| Proof of Claim No. 9430 | SA 0409 – SA 0412 |
| Proof of Claim No. 9511 | SA 0413 – SA 0416 |
| Proof of Claim No. 12203 | SA 0417 – SA 0424 |
| Proof of Claim No. 5113 | SA 0425 – SA 0428 |
| Proof of Claim No. 10390 | SA 0429 – SA 0433 |
| Proof of Claim No. 12530 | SA 0434 – SA 0449 |
| Proof of Claim No. 1248 | SA 0450 – SA 0452 |
| Proof of Claim No. 9123 | SA 0453 – SA 0462 |
| Proof of Claim No. 7826 | SA 0463 – SA 0466 |

| | |
|---|---|
| Proof of Claim No. 343-13 | SA 0467 – SA 0469 |
| Proof of Claim No. 343-26 | SA 0470 – SA 0472 |
| Proof of Claim No. 6346 | SA 0473 – SA 0477 |

| State and Federal Litigation Documents | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| Illinois Complaint filed by National Surety | 162 | SA 0478 – SA 0493 |
| Texas Complaint against Century, National Surety and Allianz | 185 | SA 0494 – SA 0515 |
| Texas Complaint against Hartford | 181 | SA 0516 – SA 0528 |
| Third Amended Complaint: *John Does I-XIX v. Boy Scouts of America, Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, et al.* (District Court for the District of Idaho, No. 1:13-cv-00275-BLW) | 2912 | SA 0529 – SA 0587 |
| Trial by Jury Demand: *Plaintiffs v. Boy Scouts of America Corporation, Mobile Area Council Boy Scouts of America, et al.* (Circuit Court of Mobile County, Alabama, No. CV-2016) | 2920 | SA 0588 – SA 0617 |
| Notice of Removal: *A.A. v. the Boy Scouts of America, North Florida Council, Inc., Boy Scouts of America, et al.* (District Court for the Middle of District of Florida Ocala Division) | 2921 | SA 0618 – SA 1601 |
| Verified Complaint for Damages and Equitable Relief: *Plaintiff v. Roman Catholic Archbishop, et al.* (Superior Court of Guam, No. CV 0207-17) | 2910 | SA 1602 – SA 1613 |
| Complaint: *John Doe v. Boy Scouts of America; and Central Minnesota Council, Boy Scouts of America* (State of Minnesota County of Stearns, District Court, Seventh Judicial District, No. []) | 2913 | SA 1614 – SA 1638 |

| Documents filed in *In re Archbishop of Agana* ("AOA"), Case No. 19-00010 (Bankr. D. Guam) | AOA Docket No. | Appendix Page Nos. |
|---|---|---|
| Motion for Derivative Standing to Enforce the Automatic Stay and Take Other Actions | 616 | SA 1639 – SA 1659 |

| | | |
|---|---|---|
| Transcript of Hearing Held September 10, 2021 | 693 | SA 1660 – SA 1681 |
| Third Amended Chapter 11 Plan | 920 | SA 1682 – SA 1818 |
| BSA's Objection and Reservation of Rights to Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization for the Archbishop of Agana | 948 | SA 1819 – SA 1836 |
| BSA's Objection to and Reservation of Rights to Debtors Motion Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order (1) Approving Settlement Agreement Among the Archdiocese, the AOA Entities, the Official Committee of Unsecured Creditors, and AIG Insurers Entities, (2) Approving the Archdiocese Sale of the Policies Issued to the Debtor Back to AIG Insurers Entities Free and Clear of Claims and Interests, and (3) Enjoining Assertion Of Claims Against AIG Insurers Entities | 989 | SA 1837 – SA 1866 |
| Order Granting 218 Stipulated Motion for Order Directing Mediation and Appointing the Honorable Robert J. Faris to Serve as Mediator | 227 | SA 1867 – SA 1868 |
| Transcript of Hearing Held October 4, 2022 | 1092 | SA 1869 – SA 1924 |
| Fifth Amended Chapter 11 Plan | 1044 | SA 1925 – SA 2116 |
| Order Approving Stipulation By and Between Debtor, Official Committee of Unsecured Creditors and Boy Scouts of America Regarding the BSA Plan Objection and Claim Objection | 1048 | SA 2117 – SA 2126 |
| Order Confirming Fifth Amended Joint Chapter 11 Plan of Reorganization | 1093 | SA 2127 – SA 2139 |
| Minute Entry Regarding September 10 Hearing | 690 | SA 2140 |

| Other Exhibits Admitted at Trial | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| Email from Jeff Hunt to Wendy Kurten, et al. | 725 | SA 2141 – SA 2145 |
| Attachment to email: Change-Pro Redline of Claims Allowance Procedures | 502 | SA 2146 – SA 2175 |

| | | |
|---|---|---|
| Attachment to email: Claims Allowance Procedures | 527 | SA 2176 – SA 2195 |
| Email from Debtors regarding BSA - Preliminary Comments on Draft CAP sent to Coalition, FCR, and Mediator | 529 | SA 2196 |
| Attachment to email: BSA Redline of Claims Allowance Procedures (comparing June 8, 2021 version to June 6, 2021 version) | 533 | SA 2197 – SA 2245 |
| Attachment to email: Change-Pro Redline of Claims Allowance Procedures (comparing version 3 and version 4) | 537 | SA 2246 – SA 2466 |
| Attachment to email: Change-Pro Redline of Claims Allowance Procedures (comparing version 3 and version 1) | 539 | SA 2267 – SA 2290 |
| Plaintiff John Doe 4's First Amended Complaint: *John Doe 4 v. Boy Scouts of America, Chicago Area Council, et al.* (Circuit Court of Cook County, Illinois, No. 2018 L 211) | 2911 | SA 2291 – SA 2356 |
| Complaint Fraud and Constructive Fraud: *John Doe XX, et al. v. Boy Scouts of America, Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, et al.* (District Court for the District of Idaho) | 2914 | SA 2357 – SA 2380 |
| Redacted Second Revised Complaint: *John Doe #1, et al. v. Boy Scouts of America Corporation, Fairfield County Council of the Boy Scouts of America, et al.* (Superior Court, Connecticut, J.D. of Stamford/Norwalk at Stamford, No. FST-cv-15-5015023-S) | 2916 | SA 2381 – SA 2456 |

| **Insurance Policies** | **Joint Trial Exhibit No.** | **Appendix Page Nos.** |
|---|---|---|
| Hartford Pine Tree Council Casualty Insurance Policy No. 04C157992 | 1154 | SA 2457 – SA 2491 |
| Hartford Fire Insurance Co. Policy No. 12CCP500098 | 1155 | SA 2492 – SA 2547 |
| INA Policy No. 15-12-11 | 4000-1 | SA 2548 – SA 2599 |
| Allianz 1980 Umbrella Policy No. UMB 599346 | 10-1 | SA 2600 – SA 2620 |

| | | |
|---|---|---|
| Old Republic Insurance Company Commercial Excess Liability Insurance Policy for period of March 1, 2017 to March 1, 2018 | 10-7 | SA 2621 – SA 2664 |
| INA Policy No. 70-64-52 | 4000-2 | SA 2665 – SA 2700 |
| Hartford Insurance Policy | 4000-10 | SA 2701 – SA 3081 |
| INA Policy No. 07-54-09-4 | 4000-4 | SA 3082 – SA 3164 |
| INA Policy No. 4-84-03 | 4000-6 | SA 3165 – SA 3188 |
| Hartford Insurance Policy No. 10 C A43303 | 4000-8 | SA 3189 – SA 3332 |
| Hartford Insurance Policy | 4000-9 | SA 3333 – SA 3571 |
| Hartford Insurance Policy No. CBP 109170 | 4000-11 | SA 3572 – SA 3644 |
| Hartford Insurance Policy No. 54 C 990478 | 4000-12 | SA 3645 – SA 3673 |
| Hartford Insurance Policy No. 32 HU 380257 | 4000-13 | SA 3674 – SA 3684 |

| Appendix Documents Filed Under Seal | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| Initial Hartford Settlement Agreement | 1481 | SA 3685 – SA 3696 |
| Proof of Claim No. 87715 | N/A | SA 3697 – SA 3789 |

| Illinois Century Answer | 202 | SA 3790 – SA 3821 |
| --- | --- | --- |

| Multimedia Documents to be Lodged with the Court[2] | Joint Trial Exhibit No. | Appendix Page Nos. |
| --- | --- | --- |
| BSA and Local Council Insurance Policies | 10 | SA 3822 |
| All Proofs of Claim | 14 | SA 3823 |
| Settled and Unsettled Local Council Policy Information (Excel Format) | 2961 | SA 3824 |

---

[2] The following documents cannot be filed on the Court's docket due to their size or file format. The Appellees will make these documents available to the Court and the parties. For purposes of citing these documents in the Debtors-Appellees' Consolidated Answering Brief, the Appellees have assigned these documents appendix page numbers in accordance with the "SA___" convention.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC

Debtors.[1]

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

### ADDENDUM TO PROOF OF CLAIM

The proof of claim ("Proof of Claim") to which this *Addendum* is attached is being filed by Corporation of the President of the Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, and on behalf of all predecessor, successor, and affiliated entities (collectively, the "Church" or "Claimant") pursuant to Federal Rules of Bankruptcy Procedure 3001, 3002, 3003 and section 501 of 11 U.S.C. §§ 101 *et seq.* (as amended and modified, the "Bankruptcy Code") in order to assert the Church's claims (the "Claims") as of February 18, 2020 (the "Petition Date") and to preserve and assert the Church's rights and remedies, as described herein.

In this Proof of Claim, the Church is asserting multiple Claims, with separate legal and factual bases, as described below.

### BACKGROUND

1.    From 1913 to December 2019, the Church was a charter organization of the Boy Scouts of America ("BSA"). In that time, the Church sent hundreds of thousands of Latter-day Saint boys and young men into the BSA's scouting program ("Scouting") to gain skills, values, and spiritual strength through outdoor activities and programs.

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1

US-DOCS\118988532.1

**SA 0437**

2.      In the course of this relationship, the Church and the BSA have entered into certain contractual arrangements whereby the BSA has agreed to indemnify the Church for losses and include the Church as an additional, shared, and/or co-insured party under certain insurance policies issued to the BSA.  Specifically, the BSA agreed to indemnify, hold harmless, assume, and defend the Church, its employees, officers, and directors (collectively, "Indemnitees") regarding any and all costs (including, but not limited to, attorneys' fees, reasonable investigative and discovery costs, and court costs) on account of claims arising or alleged to have arisen out of the BSA activities or the acts or omissions of the BSA and/or its local councils, chartered organizations, or other affiliates in the use of real or personal property belonging to the Indemnitees on various separate occasions (the "Indemnification Agreements").[2]  In addition, the Church and/or individuals affiliated with the Church are named or otherwise qualify as additional, shared, and/or co-insured(s) under multiple liability insurance policies issued to the BSA broadly covering activities in connection with the Scouting program (the "Shared Policies").

3.      As widely reported, the BSA is currently a defendant in numerous lawsuits related to historical acts of sexual abuse in its programs (the "Abuse Actions").  Certain of these and related lawsuits have named certain BSA-affiliated third parties and/or chartered organizations, including the Church and/or its officers, agents, or other personnel, relating to the historical acts of sexual abuse in the Scouting program.  In addition to at least three pending lawsuits naming the Church as a co-defendant,[3] the Church understands that additional lawsuits and/or claims may be

---

[2]   The summaries contained in this Proof of Claim are qualified in their entirety by the provisions of the documents referenced, including the Indemnification Agreements and Shared Policies.

[3]   These lawsuits are subject to the Standstill Period established under the *Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Granting the BSA's Motion For a Preliminary Injunction* [A.D.I. 54], which Standstill Period is subject to extension through March 19, 2021 by the *Third Stipulation By and Among the Boy Scouts of America, the Official Committee of Survivors of Abuse, and the Official Committee of Unsecured Creditors Modifying the Consent Order Granting the BSA's Motion for a Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(a) and 362 and Further Extending the Termination Date of the Standstill Period* [A.D.I. 107].

2

SA 0438

asserted in the tort system and/or in the bankruptcy cases that may involve claims against the Church, Indemnitees, or other persons affiliated with the Church (the "Abuse Demands" and together with the Abuse Actions, the "Abuse Claims").

<div align="center">

**STATEMENT OF CLAIMS UNDER THIS ADDENDUM**

</div>

4.     Each of the Claims herein is made without limiting: (a) Claimant's right or ability to amend such Claims; (b) the exact causes of action or theories of recovery that Claimant may pursue; (c) Claimant's right or ability to file liquidated claims in the future; and/or (d) Claimant's rights under or objections to any proposed plan or trust distribution procedures.

5.     The Church files this Addendum in a consolidated manner for purposes of administrative convenience and efficiency; *however,* each Claim arising from or related to the Abuse Claims and/or any non-abuse related claims (the "Non-Abuse Claims") is a stand-alone "Claim" consistent with the definition of that term in the Bankruptcy Code.

    **A.**    **Unliquidated Subrogation Claims and Unliquidated Indemnity, Contribution, Reimbursement, and Other Claims Relating to the Abuse Claims and/or Non-Abuse Claims**

6.     Claimant hereby makes and asserts the following Claims:

    a.    Subrogation Claims Relating to Unliquidated Abuse Claims and/or Non-Abuse Claims. Any and all claims against the Debtors in amounts to be determined for subrogation (including, for the avoidance of doubt, claims for equitable subrogation under applicable nonbankruptcy law) related to in any way to Claimant's alleged or determined liability relating to or arising from liabilities the Debtors (i) expressly agreed to indemnify, assume, and defend under the Indemnification Agreements, or (ii) are otherwise responsible for under applicable law (such claims, collectively, "Subrogation Claims"). Any and all Subrogation Claims will be amended

<div align="center">3</div>

and filed by Claimant upon liquidation of such Subrogation Claims, as applicable.

b.  Indemnity, Contribution, Reimbursement, and Other Claims Relating to Unliquidated Abuse Claims and/or Non-Abuse Claims.  Any and all claims against the Debtors in amounts to be determined, including claims for indemnity, contribution, reimbursement, or otherwise under any theory of law or equity, based in any way upon Claimant's alleged or determined liability relating to or arising from liabilities that Debtors (i) expressly agreed to indemnify, assume, and defend under the Indemnification Agreements or, (ii) are otherwise responsible for under applicable law (such claims, collectively, "Indemnity Claims").  Any and all Indemnity Claims will be amended and filed by Claimant upon liquidation of such Indemnity Claims, as applicable.

7.  Claimant further asserts Subrogation Claims and Indemnity Claims against the Debtors in amounts to be determined on behalf of all Indemnitees and other individuals who are or were affiliated with Claimant, and their respective estates (if applicable), and may incur liabilities arising from or in connection with their services with the Debtors, local councils, chartered organizations, or other entities affiliated with the Debtors (such individuals, collectively, "Affiliated Individuals").  The assertion of Subrogation Claims and Indemnity Claims on behalf of Affiliated Individuals in no way limits or waives any of Claimant's rights against Affiliated Individuals or the Debtors, which are all fully preserved.

8.  Claimant expressly reserves its rights to file amended proofs of claim or supplements to this Addendum, including as new Abuse Claims and/or Non-Abuse Claims are

4

SA 0440

filed or as any related Claims become liquidated, including claims on behalf of Affiliated Individuals. Claimant further reserves all rights under Bankruptcy Rule 3005 to file and assert additional claims relating to the Abuse Claims and/or Non-Abuse Claims, including claims on behalf of Affiliated Individuals.

**B.    Liquidated Claims for Payments Made Relating to Settled Abuse Claims Since the Petition Date**

9.     Claimant hereby asserts non-contingent and liquidated Claims against the Debtors for subrogation, contribution, and reimbursement based upon Claimant's payment of claims relating to liabilities that Debtors (i) expressly agreed to indemnify, assume, and defend under the Indemnification Agreements or, (ii) are otherwise responsible for under applicable law. Specifically, Claimant asserts aggregate Claims of not less than $▮▮▮▮▮▮ as of the Petition Date relating to the compromise and release of claims against Claimant by the plaintiffs in certain Abuse Actions in exchange for settlement amounts (the "Settled Abuse Actions").[4]

10.    Claimant also expressly reserves the right to file and assert amended proofs of claim or supplements to this Addendum, including to quantify its liquidated Claims for any additional Settled Abuse Actions.

**C.    Liquidated and Unliquidated Claims for Defense Costs and Bankruptcy Costs**

11.    Claimant hereby makes and asserts the following Claims on behalf of itself and Affiliated Individuals:

a.     Liquidated Claims arising from the Debtors' obligations that arise out of or relate to the Indemnification Agreements for fees, costs, or expenses,

---

[4]    The terms of the settlements including the amount of asserted Claims relating to Settled Abuse Actions are confidential. Upon the Debtors' request, Claimant will provide appropriately redacted versions of such settlements, subject to prior consultation with the affected plaintiffs, through their counsel to the extent required, and subject to the Debtors' entry into an appropriate confidentiality and non-disclosure agreement.

5

SA 0441

including: (i) Claims for all legal and other professional fees and expenses incurred by Claimant in connection with any Abuse Claims and/or Non-Abuse Claims (the "<u>Defense Costs</u>")—the Church's liquidated Defense Costs, as of November 12, 2020, for Abuse Claims is no less than $██████████[5] and for Non-Abuse Claims is no less than $107,565.98; and (ii) Claims for all legal and other professional fees and expenses incurred by Claimant in connection with the Debtors' chapter 11 cases (the "<u>Chapter 11 Cases</u>"), including any related adversary proceedings (the "<u>Bankruptcy Costs</u>")—the Church's liquidated Bankruptcy Costs, as of November 12, 2020, are no less than $806,112.77.

12.     Claimant expressly reserves the right to file and assert additional liquidated claims for Defense Costs and/or Bankruptcy Costs, including on behalf of Affiliated Individuals, for periods before or after the Petition Date.

### D.     <u>Insurance Coverage-Related Claims</u>

13.     Claimant hereby makes and asserts Claims on behalf of itself and Affiliated Individuals against the Debtors relating to or arising from any (a) coverage disputes and/or (b) coverage defenses asserted or assertable by any insurer under or with respect to any of the Shared Policies (i) resulting from any action, inaction, omission, or otherwise by the Debtors, either alone or in concert with any parties-in-interest in the Chapter 11 Cases, including the Official Committee of Tort Claimants (or any members thereof) and/or the Future Claimants' Representative appointed in the Chapter 11 Cases; (ii) resulting from Claimant or any Affiliated Individual defending itself and/or protecting its interests in connection with any Abuse Claims

---

[5]   Claimed amounts relating to Settled Abuse Actions are redacted for purposes of confidentiality.

and/or Non-Abuse Claims within or outside of the Chapter 11 Cases; or (iii) otherwise resulting from or in any way relating to or arising out of the Chapter 11 Cases.  Claimant, including on behalf of Affiliated Individuals, expressly reserves the right to file, amend, and assert additional Insurance Coverage-Related Claims for any periods before or after the Petition Date.

14.     Claimant and/or Affiliated Individuals, as additional, shared, and/or co-insured(s), maintain that their interests in, or rights arising from, the Shared Policies, including the right to any proceeds thereof, are not property of the Debtors' estates.  Nevertheless, out of an abundance of caution, Claimant hereby makes and asserts Claims on behalf of itself and Affiliated Individuals for all amounts it is entitled to recover as an additional, shared, and/or co-insured under the Shared Policies to the extent the proceeds of the Shared Policies are deemed to constitute property of the Debtors' estates.  Nothing in the Proof of Claim or Addendum should be construed as a waiver with respect to the Claimant's and/or Affiliated Individuals' interest in, or rights arising from, any of the Shared Policies as an additional, shared, and/or co-insured, including, for the avoidance of doubt, the Claimant's right to the proceeds of any Shared Policies as an additional, shared, and/or co-insured.

E.      **Counterclaims and Cross-Claims**

15.     Claimant hereby makes and asserts on behalf of itself and Affiliated Individuals any and all Claims and causes of action asserted or assertable by Claimant or Affiliated Individuals as counterclaims or cross-claims against the Debtors in any previous, current, or future Abuse Claims and/or Non-Abuse Claims.  Claimant, including on behalf of Affiliated Individuals, expressly reserves the right to amend counterclaim and cross-claim amounts for periods before or after the Petition Date.

7

**SA 0443**

## NATURE OF CLAIMS

16. This Proof of Claim asserts unsecured claims against the Debtors.

## SEPARATE CLAIMS

17. For all purposes in the Chapter 11 Cases, and consistent with Paragraph 5, each Claim asserted herein is separate and constitutes a stand-alone "Claim" consistent with the definition of that term in the Bankruptcy Code.

## COUNTERCLAIMS AND SETOFFS

18. Upon information and belief, no portions of the Claims are subject to any setoffs or counterclaims by the Debtors.

## PROOF OF CLAIM TIMELY

19. The Proof of Claim is timely submitted by the Claimant in accordance with the Bar Date Order establishing 5:00 p.m. (prevailing Eastern Time) on November 16, 2020 as the General Bar Date and the Abuse Claims Bar Date (each as defined in the Bar Date Order).[6]

## RESERVATIONS OF RIGHTS REGARDING TREATMENT AND CLASSIFICATION

20. Claimant reserves all rights regarding the treatment and classification of its Claims and related issues in the Chapter 11 Cases, including under any plan of reorganization (and any related trust distribution procedures) or any liquidating plan proposed in the Chapter 11 Cases or in any proceeding following conversion of the cases to one under chapter 7 of the Bankruptcy Code.

---

[6] The "Bar Date Order" means that certain *Order, Pursuant to 11 U.S.C. § 502(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* [Docket No. 695].

8

SA 0444

## OTHER RIGHTS

21.     In addition to the rights asserted or reserved above, Claimant reserves all rights to adjust, revise, supplement, modify, or amend this Proof of Claim and this Addendum, including as a result of future events, the liquidation of certain of the Claims, the discovery and analysis of additional information, the correction of any errors, the resolution of any disputes, or modifications or supplements in respect of any plan of reorganization filed in the Chapter 11 Cases.  Specifically, but without limitation, Claimant reserves the right to amend and supplement this Proof of Claim and Addendum to, among other things, (a) specify and quantify any Claims if and when Claimant obtains additional information with respect to any such Claims; (b) specify and quantify any damages, losses, costs, charges, fees, and other expenses incurred by or owed to Claimant, and/or otherwise set forth such amounts with more particularity; and/or (c) amend and supplement this Proof of Claim and Addendum in any other manner, including to the extent that additional facts or theories become known or apparent.

22.     Claimant specifically reserves the right to conduct discovery with respect to the Claims or any other matter relating to or in connection with the Debtors in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

23.     The setting forth of Claims and classification of Claims by Claimant herein is not a concession or admission by Claimant or any Affiliated Individual as to the correct characterization, classification, valuation, or treatment of any such Claims, nor is it a waiver of any of Claimant's or any Affiliated Individual's rights or remedies, including under the Bankruptcy Code, other applicable law, or any proposed trust distribution procedures.  The execution and filing of this Proof of Claim and Addendum is not: (a) a waiver or release of any of Claimant's or any Affiliated Individual's rights or remedies against any other person or entity liable for all or any part of the Claims asserted herein; (b) a consent by Claimant or any Affiliated

9

SA 0445

Individual to the jurisdiction of the Bankruptcy Court with respect to any proceeding commenced in these Chapter 11 Cases or any other case against or otherwise involving Claimant; (c) a consent by Claimant or any Affiliated Individual to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to withdraw the reference with respect to the subject matter of the Claims asserted herein or of any claims asserted by the Debtors or any other entity against Claimant or any Affiliated Individual; (e) a waiver of any right to have any claims constitutionally required to be determined by the District Court be determined therein; (f) a waiver of any right to the subordination, in favor of the Claimant or any Affiliated Individual, of indebtedness or liens held by other creditors of the Debtors; (g) an election of any remedy that waives or otherwise affects any other remedy, including any right to pursue or assert alternative or simultaneous rights or remedies; (h) a waiver of any right to arbitration or other alternative dispute resolution mechanism that is otherwise applicable; (i) a waiver of any right with respect to property of the Claimant or any Affiliated Individual held by a Debtor; or (j) a waiver or relinquishment of any other defenses, counterclaims, cross-claims, third party claims, or any other matter or thing whatsoever.

24.     Nothing in this Proof of Claim or Addendum shall constitute a waiver or an election of rights in relation to section 509 of the Bankruptcy Code.

25.     Claimant hereby expressly preserves, on behalf of itself and each Affiliated Individual, any and all rights, claims, causes of action, defenses, counterclaims, rights of setoff, recoupment, and/or offset, objections, and any and all similar rights, remedies, and defenses against all persons or entities, whether in this Court or elsewhere, whether currently existing or arising in the future, against which it determines it has claims.

26.     To the extent any of the Claims set forth herein, in whole or in part, or any component thereof, arise or relate in any manner to the period on or after the Petition Date, the

10

SA 0446

Claimant asserts that such Claims (or any portions thereof) are entitled to priority pursuant to sections 503 and 507 of the Bankruptcy Code. The Claimant reserves the right to file one or more requests for payment of administrative expenses pursuant to section 503(a) of the Bankruptcy Code, with respect to any administrative expense claim that the Claimant may now have or hereafter have, hold, or acquire against the Debtors or their estates.

## DISCLOSURE

27.    To the best of the Claimant's knowledge, information, and belief, no judgment has been rendered on the Claims, no security interest on any property of the Debtors is held for the Claims, the Claimant has not assigned any portion of the Claims, and the above statements are true and accurate based upon the information currently available to the Claimant.

28.    The documents in support of the Claims are voluminous and, in certain instances, may be subject to confidentiality or legal privilege. Moreover, Claimant believes that the Debtors are already in possession of all or a substantial portion of such documents. Accordingly, such documents are not attached to this Addendum. Claimant will provide such documents to the Debtors upon request, subject to any confidentiality or legal privilege redactions or other appropriate reservations and/or protections.

11

## **NOTICES**

29.    All notices regarding this Proof of Claim and Addendum and regarding any

objection thereto or any request to estimate or disallow the same shall be directed to:

Jeffery E. Bjork
Deniz A. Irgi
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Telephone: (213) 485-1234
E-mail: jeff.bjork@lw.com
deniz.irgi@lw.com

-and-

Adam J. Goldberg
Madeleine C. Parish
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: (212) 906-1200
E-mail: adam.goldberg@lw.com

*[Remainder of page intentionally left blank]*

12

SA 0448

355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Tel: +1.213.485.1234  Fax: +1.213.891.8763
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

November 13, 2020

Boy Scouts of America Claims Processing
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

**RE: Confirmation of Claim Filing**

To Omni Agent Solutions:

Please find enclosed the Proof of Claim form and Addendum (together, the "Claim") for filing in the Debtor's chapter 11 case captioned *In re Boy Scouts of America and Delaware BSA, LLC* under case number 20-10343.

We would kindly request confirmation that the Claim has been filed. As such, we have included a stamped and self-addressed envelope as well as a copy of the Claim.

Please let us know if you have any questions.

Best regards,

Deniz A. Irgi

| | |
|---|---|
| Debtor: Boy Scouts of America | |
| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE | |
| Case Number: 20-10343 | |

**FILED**

Claim No. 1248

**October 30, 2020**

By Omni Claims Agent
For U.S. Bankruptcy Court
District of Delaware

Official Form 410
## Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

Carefully read instructions included with this Proof of Claim before completing.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Meridian Street United Methodist Church

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

[X] No
[ ] Yes    From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Philip L McAlister

5500 N. Meridian Street

Indianapolis, Indiana  46208

Contact Phone (317) 253-3237
Contact email phil.mcalister@gmail.com

Where should payments to the creditor be sent? (if different)

Contact Phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

**4. Does this claim amend one already filed?**

[X] No
[ ] Yes    Claim Number on court claims registry (if known) _____  Filed On _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

[X] No
[ ] Yes    Who made the earlier filing? _____

Official Form 410                    **Proof of Claim**

**SA 0450**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

[X] No

[ ] Yes   Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**   $ _____   **Does this amount include interest or other charges?**

[X] No

[ ] Yes   Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information

See supplementary information

**9. Is all or part of the claim secured?**

[X] No

[ ] Yes   The claim is secured by a lien on property

**Nature of property:**

[ ] Real Estate   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*

[ ] Motor Vehicle

[ ] Other   Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.

**Value of Property:**   $ _____

**Amount of the claim that is secured:**   $ _____

**Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7).

**Amount necessary to cure any default as of the date of the petition:**   $ _____

**Annual Interest Rate:**   (when case was filed)   _____%

[X] Fixed

[ ] Variable

**10. Is this claim based on a lease?**

[X] No

[ ] Yes   **Amount necessary to cure any default as of the date of the petition.**   $ _____

**11. Is this claim subject to a right of setoff?**

[X] No

[ ] Yes   Identify the property: _____

**12. Is this claim for the value of goods received by the debtor within 20 days before the commencement date of this case (11 U.S.C. § 503(b)(9)).?**

[X] No

[ ] Yes   Amount of 503(b)(9) Claim: $ _____

**13. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority.  For example, in some categories, the law limits the amount entitled to priority.

[X] No
[ ] Yes      *Check all that apply*

**Amount entitled to priority**

[ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                $_____

[ ] Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use.  11 U.S.C. § 507(a)(7).                $_____

[ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.  11 U.S.C. § 507(a)(4).                $_____

[ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).                $_____

[ ] Contributions to an employee benefit plan 11 U.S.C. § 507(a)(5).                $_____

[ ] Other.  Specify subsection of 11 U.S.C. § 507(a)(___) that applies.                $_____

*  Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

**The person completing this proof of claim must sign and date it.**
**FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

[X] I am the creditor.

[ ] I am the creditor's attorney or authorized agent.

[ ] I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004.

[ ] I am the guarantor, surety, endorser, or other codebtor.  Bankruptcy Rule 3005.

I understand that an authorized signature on this  *Proof of Claim*  serves as an acknowlegment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this  *Proof of Claim*  and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    10/30/2020
_____
MM  /  DD  /  YYYY

Philip L. McAlister
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name          Philip LeRoy McAlister
_____
First Name                    Middle Name                    Last Name

Title          Trustee Chair
_____

Company       Meridian Street United Methodist Church
_____
Identify the corporate servicer as the company if the authorized agent is a servicer.

              5500 N. Meridian Street

Address

              Indianapolis, Indiana  46208

Contact Phone    (317) 966-7777                      Email       phil.mcalister@gmail.com
_____                _____

Official Form 410                          **Proof of Claim**

**SA 0452**

Debtor: Boy Scouts of America

UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE

Case Number: 20-10343

---

**FILED**

Claim No. 9123

**November 16, 2020**

By Omni Claims Agent
For U.S. Bankruptcy Court
District of Delaware

---

Official Form 410

## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

Carefully read instructions included with this Proof of Claim before completing.

---

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Coast Episcopal Schools, Inc. (formerly C

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

[X] No
[ ] Yes   From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Marcus M Wilson

190 E Capitol St., Suite 650

Jackson, MS 39201

Contact Phone 601-944-0466
Contact email mwilson@blswlaw.com

Where should payments to the creditor be sent? (if different)

George Riviere

912 South Beach Blvd.

Bay St. Louis, MS 39520

Contact Phone 985-778-8102
Contact email georgeriviere@bellsouth.net

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

**4. Does this claim amend one already filed?**

[X] No
[ ] Yes   Claim Number on court claims registry (if known) _____   Filed On _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

[X] No
[ ] Yes   Who made the earlier filing? _____

---

Official Form 410                    Proof of Claim

**SA 0453**

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

**6.** **Do you have any number you use to identify the debtor?**

[X] No

[ ] Yes    Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7.** **How much is the claim?**   $ _____   **Does this amount include interest or other charges?**

[X] No

[ ] Yes    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information

See Addendum to Proof of Claim

**9.** **Is all or part of the claim secured?**

[X] No

[ ] Yes    The claim is secured by a lien on property

**Nature of property:**

[ ] Real Estate    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*

[ ] Motor Vehicle

[ ] Other    Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.

**Value of Property:**    $ _____

**Amount of the claim that is secured:**    $ _____

**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7).

**Amount necessary to cure any default as of the date of the petition:**    $ _____

**Annual Interest Rate:**   (when case was filed)   _____ %

[X] Fixed

[ ] Variable

**10.** **Is this claim based on a lease?**

[X] No

[ ] Yes    **Amount necessary to cure any default as of the date of the petition.**    $ _____

**11.** **Is this claim subject to a right of setoff?**

[X] No

[ ] Yes    Identify the property: _____

**12.** **Is this claim for the value of goods received by the debtor within 20 days before the commencement  date of this case (11 U.S.C. § 503(b)(9)).?**

[X] No

[ ] Yes    Amount of 503(b)(9) Claim:   $ _____

**13. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority.  For example, in some categories, the law limits the amount entitled to priority.

[X] No

[ ] Yes    *Check all that apply*

**Amount entitled to priority**

[ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

[ ] Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use.  11 U.S.C. § 507(a)(7).

$_____

[ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.  11 U.S.C. § 507(a)(4).

$_____

[ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

[ ] Contributions to an employee benefit plan 11 U.S.C. § 507(a)(5).

$_____

[ ] Other.  Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$_____

*  Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

### Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

[ ] I am the creditor.

[X] I am the creditor's attorney or authorized agent.

[ ] I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004.

[ ] I am the guarantor, surety, endorser, or other codebtor.  Bankruptcy Rule 3005.

I understand that an authorized signature on this  *Proof of Claim*  serves as an acknowlegment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this  *Proof of Claim*  and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   11/16/2020
_____
MM / DD / YYYY

George Riviere
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name            George Riviere
_____
First Name              Middle Name              Last Name

Title            Senior Warden
_____

Company         Coast Episcopal Schools, Inc. (formerly Christ Episcopal Day
_____
Identify the corporate servicer as the company if the authorized agent is a servicer.

912 South Beach Blvd.

Address

Bay St. Louis , MS 39520

Contact Phone   985-778-8102        Email    georgeriviere@bellsouth.net
_____        _____

---

**UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE**

| Fill in the information to identify the case (Select only one Debtor per form): |
|---|
| ☑ In re Boy Scouts of America, Case No. 20-10343 (LSS) |
| ☐ In re Delaware BSA, LLC, Case No. 20-10342 (LSS) |

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. With the exception of claims under section 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503. This form should **not** be used if you have a claim arising from sexual abuse and you were under the age of eighteen (18) at the time the sexual abuse began. If you have such a claim, you must file a Sexual Abuse Survivor Proof of Claim. For more information on how to file a Sexual Abuse Survivor Proof of Claim, go to: www.officialbsaclaims.com.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Coast Episcopal Schools, Inc. (formerly Christ Episcopal Day School)
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes    From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Marcus M Wilson
Name

190    E Capitol St., Suite 650
Number    Street

Jackson          MS          39201
City          State          ZIP Code

Contact Phone _____

Contact email  mwilson@blswlaw.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one)
_____

Where should payments to the creditor be sent? (if different)

George Riviere
Name

912    South Beach Blvd.
Number    Street

Bay St. Louis          MS          39520
City          State          ZIP Code

Contact Phone  985-778-8102

Contact email  georgerriviere@bellsouth.net

**4. Does this claim amend one already filed?**

☑ No
☐ Yes    Claim Number on court claims registry (if known) _____    Filed On _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes    Who made the earlier filing? _____

Official Form 410                    Proof of Claim                    Page 1

**SA 0456**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes        Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ _____

**Does this amount include interest or other charges?**

☐ No

☐ Yes        Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information

See Addendum to Proof of Claim

**9. Is all or part of the claim secured?**

☑ No

☐ Yes        The claim is secured by a lien on property

**Nature of property:**

☐ Real Estate    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*

☐ Motor Vehicle

☐ Other  Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.

**Value of Property:**                         $ _____

**Amount of the claim that is secured:**       $ _____

**Amount of the claim that is unsecured:**     $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7).

**Amount necessary to cure any default as of the date of the petition:**       $ _____

**Annual Interest Rate:**    (when case was filed)  _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes    **Amount necessary to cure any default as of the date of the petition.**   $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes    Identify the property: _____

**12. Is this claim for the value of goods received by the debtor within 20 days before the commencement date of this case (11 U.S.C. §503(b)(9)).?**

☑ No

☐ Yes    Amount of 503(b)(9) Claim:  $ _____

SA 0457

13. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

☑ No
☐ Yes    *Check all that apply*

A claim may be partly priority and partly nonpriority.  For example, in some categories, the law limits the amount entitled to priority.

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use.  11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.  11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan 11 U.S.C. § 507(a)(5).

$ _____

☐ Other.  Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$ _____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

| Part 3: | Sign Below |
|---|---|

The person completing this proof of claim must sign and date it.
**FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004.

☐ I am the guarantor, surety, endorser, or other codebtor.  Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  11 / 16 / 2020
                   MM / DD / YYYY

*Signature*

Print the name of the person who is completing and signing this claim:

| Name | George | | Riviere |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Title | Senior Warden |
|---|---|

| Company | Coast Episcopal Schools, Inc. (formerly Christ Episcopal Day School) |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 912 | South Beach Blvd. |
|---|---|---|
| | Number | Street |
| | Bay St. Louis | MS | 39520 |
| | City | State | ZIP Code |

| Contact Phone | 985-778-8102 | Email | georgerriviere@bellsouth.net |
|---|---|---|---|

---

Official Form 410                          Proof of Claim                          Page 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,

               Debtors.

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

## <u>ADDENDUM TO PROOF OF CLAIM</u>

1.    **Claimant.**  Coast Episcopal Schools, Inc. f/k/a Christ Episcopal Day School ("<u>Claimant</u>") is a religious entity or organization located in the geographical area served by the Episcopal Diocese of Mississippi, 118 N. Congress Street, Jackson, Mississippi 39201, and hereby files this Proof of Claim and asserts claims against the above-captioned debtors, Boy Scouts of America and Delaware BSA, LLC (collectively, the "<u>Debtors</u>"), for any and all present and future actions, damages, and liabilities arising out of or in any way relating to Claimant's delivery of Scouting activities as a Chartered Organization or local council of the Debtors.

2.    **Basis for Claims.** Prior to the commencement of these bankruptcy cases, Claimant was a Chartered Organization or local council that provided official Scouting activities. The Debtors provided a general liability insurance program to Chartered Organizations and local councils to protect their interests in connection with the delivery of Scouting activities. Additionally, the Debtors agreed to defend and indemnify and hold harmless Chartered Organizations and their employees, directors, officers, members, and volunteers from and against any and all claims arising out of or relating to the delivery of Scouting activities or Scouting programs. Claimant therefore hereby asserts claims against the Debtors and the Debtors' general liability insurance program covering Chartered Organizations for any and all present and future claims, demands, suits, liabilities, and actions arising out of or in any way relating to Claimant's delivery of Scouting activities, including but not limited to for any and all sexual-abuse or third-

party claims asserted against any employee, officer, volunteer, or member of Claimant. Claimant is not presently aware of any occurrence that may give rise to a legal action against the Debtors or Claimant or any of their employees, officers, volunteers, or members, but files this Proof of Claim to preserve all rights and remedies it has against the Debtors' and the Debtors' insurance program to Chartered Organizations and local councils for any and all such legal claims or actions that may hereafter be filed or asserted against Claimant.

3.    **Amount of Claims**. The total amount of the claims asserted by Claimant as of the date these bankruptcy cases were commenced is not known at this time. Claimant asserts claims against the Debtors for all present and future claims, demands, damages, actions, liabilities, and suits, of any kind or nature whatsoever, asserted against Claimant or Claimant's employees, officers, volunteers, clergy, parishioners, or members arising out of or in any way relating to Claimant's delivery of the Scouting program or Scouting activities, including but not limited to any and all abuse-related claims. Claimant also asserts claims against the Debtors for coverage, contribution, indemnification, and reimbursement under all insurance policies issued to the Debtors under which Claimant may be entitled to coverage, contribution, indemnification, reimbursement, or any other benefit, whether as a named or additional insured or otherwise, and Claimant reserves all rights with respect to all such insurance claims. Additionally, Claimant asserts claims against the Debtors and the Debtors' applicable insurance policies for interest and reimbursable fees and charges accrued or incurred before or after the date these bankruptcy cases were commenced, including but not limited to attorneys' fees, costs, and expenses. In executing and filing this Proof of Claim, Claimant is not waiving any right to any sums, amounts, benefits, or obligations owed to it by either of the Debtors or under any insurance policy of either Debtor. Further, Claimant is not waiving any right to any sums, benefits, or obligations owed to it by the Debtors or any insurance company by not stating a specific figure therefor at this time. Claimant reserves the right to amend or supplement this Proof of Claim for any reason, including if additional information becomes available.

4.    **Supporting Documents.** Parties seeking documentary evidence or other

SA 0460

information in connection with Claimant's Proof of Claim should contact counsel for Claimant.

5. **<u>Additional Claims</u>.** Claimant may also have claims against the Debtors or the Debtors' insurers, or both, for other amounts, liabilities, or obligations arising out of or connected to Scouting activities or otherwise, and reserves the right to amend or supplement this Proof of Claim to include such other amounts, liabilities, or obligations. Claimant further reserves all available rights to file an administrative expense claim under § 503 or § 507 of the Bankruptcy Code concerning any claim it may have against the Debtors or the Debtors' insurers.

6. **<u>No Judgment</u>.** No judgment has been rendered on the claims set forth in this Proof of Claim.

7. **<u>Setoff; Counterclaim</u>.** The amounts due and owing as set forth in this Proof of Claim are not subject to any valid setoff or counterclaim.

8. **<u>No Admission or Waiver</u>.** In executing and filing this Proof of Claim, Claimant is not admitting or acknowledging any liability, wrongdoing, or other actionable conduct for any acts or omissions related to claims that have been or that in the future may be asserted against Claimant, nor is Claimant waiving the priest-penitent or clergy-communicant privilege.

9. **<u>Filing</u>.** This Proof of Claim is filed pursuant to Bankruptcy Rule 3002 and is filed to assert and preserve Claimant's claims against the Debtors and the Debtors' insurers and to protect Claimant from forfeiture of those claims. Nothing contained in this Proof of Claim is intended to create or constitute a waiver, modification, or relinquishment of any of Claimant's rights or remedies under any policy, agreement, or contract, or applicable law, all of which rights and remedies are hereby expressly reserved. The filing of this Proof of Claim is not and should be not be construed to be, among other things:  (a) a consent by Claimant to the jurisdiction of this Court or any other court with respect to the subject matter of this Proof of Claim, any objection, or other proceeding, if any, commenced in any case against or otherwise involving Claimant; (b) a waiver or release of, or any limitation on, Claimant's right to trial by jury in the Bankruptcy Court or any other court in any proceeding; (c) a consent by Claimant to trial by jury as to any matters so triable herein or in any case, controversy, or proceeding related hereto; (d) a waiver or

SA 0461

release of, or any other limitation on, Claimant's right to have orders entered in noncore matters only after de-novo review by the United States District Court; (e) a waiver of, or any other limitation on, Claimant's right to (i) move to withdraw the reference or otherwise challenge the jurisdiction of the Bankruptcy Court with respect to any matter, including, but not limited to, any matter relating to this Proof of Claim, any objection, or any other proceeding commenced in this case against or otherwise involving Claimant, or (ii) assert that the reference has already been withdrawn with respect to the subject matter of this Proof of Claim, any objection, or other proceeding commenced in this case against or otherwise involving Claimant; (f) a waiver of the rights and remedies against any person or entity who may be liable for all or any part of the claims set forth herein; (g) an admission by Claimant that any property held by the Debtors (or any subsidiary or affiliate of the Debtors) is property of the Debtor's bankruptcy estate; or (h) a waiver or release of, or any other limitation on, Claimant's right to assert that any portion of the claims asserted herein or any other claims are entitled to treatment as priority claims, including under § 503 or § 507 of the Bankruptcy Code.

- 4 -

| | |
|---|---|
| Debtor: Boy Scouts of America | |

UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE

Case Number: 20-10343

**FILED**

Claim No. 7826
**November 16, 2020**

By Omni Claims Agent
For U.S. Bankruptcy Court
District of Delaware

Official Form 410
**Proof of Claim**

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

Carefully read instructions included with this Proof of Claim before completing.

| Part 1: | Identify the Claim |
|---|---|

1. **Who is the current creditor?**
Allegheny Evangelical Lutheran Church
Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor _____

2. **Has this claim been acquired from someone else?**
[X] No
[ ] Yes   From whom? _____

3. **Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Allegheny Evangelical Lutheran Church
1327 Alleghenyville Road
Mohnton, PA  19540

Contact Phone 610-777-2520
Contact email mforrer511@gmail.com

Where should payments to the creditor be sent? (if different)
Contact Phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

4. **Does this claim amend one already filed?**
[X] No
[ ] Yes   Claim Number on court claims registry (if known) _____ Filed On _____ MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**
[X] No
[ ] Yes   Who made the earlier filing? _____

Official Form 410             **Proof of Claim**

**SA 0463**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6.** Do you have any number you use to identify the debtor?

[X] No
[ ] Yes    Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7.** How much is the claim?

$ _____

**Does this amount include interest or other charges?**

[X] No
[ ] Yes    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information

Amount unknown. See attached.

**9.** Is all or part of the claim secured?

[X] No
[ ] Yes    The claim is secured by a lien on property

**Nature of property:**

[ ] Real Estate    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*

[ ] Motor Vehicle

[ ] Other    Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.

**Value of Property:**    $ _____

**Amount of the claim that is secured:**    $ _____

**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7).

**Amount necessary to cure any default as of the date of the petition:**    $ _____

**Annual Interest Rate:**    (when case was filed)    _____%

[X] Fixed
[ ] Variable

**10.** Is this claim based on a lease?

[X] No
[ ] Yes    **Amount necessary to cure any default as of the date of the petition.**    $ _____

**11.** Is this claim subject to a right of setoff?

[X] No
[ ] Yes    Identify the property: _____

**12.** Is this claim for the value of goods received by the debtor within 20 days before the commencement date of this case (11 U.S.C. § 503(b)(9)).?

[X] No
[ ] Yes    Amount of 503(b)(9) Claim: $ _____

**SA 0464**

**13. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority.  For example, in some categories, the law limits the amount entitled to priority.

[X] No

[ ] Yes

*Check all that apply*

| | Amount entitled to priority |
|---|---|
| [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| [ ] Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use.  11 U.S.C. § 507(a)(7). | $_____ |
| [ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.  11 U.S.C. § 507(a)(4). | $_____ |
| [ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| [ ] Contributions to an employee benefit plan 11 U.S.C. § 507(a)(5). | $_____ |
| [ ] Other.  Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:**   **Sign Below**

**The person completing this proof of claim must sign and date it.
FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

[ ] I am the creditor.

[X] I am the creditor's attorney or authorized agent.

[ ] I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004.

[ ] I am the guarantor, surety, endorser, or other codebtor.  Bankruptcy Rule 3005.

I understand that an authorized signature on this  *Proof of Claim*  serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this  *Proof of Claim*  and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   11/16/2020
_____
MM / DD / YYYY

Eden R. Bucher
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name        Eden R. Bucher
_____
First Name                    Middle Name                    Last Name

Title        Esquire
_____

Company    Leisawitz Heller Abramowitch Phillips, PC
_____
Identify the corporate servicer as the company if the authorized agent is a servicer.

            2755 Century Boulevard

Address

            Wyomissing, PA  19610

Contact Phone   610-372-3500                    Email    ebucher@leisawitzheller.com

## **Attachment to Proof of Claim**

8.    What is the basis of the claim?

BSA's obligation to provide insurance coverage, indemnification and contribution to the claimant/creditor under BSA's policies of general liability insurance and all other agreements, documents, and laws in place that provide such rights to claimant/creditor.

SA 0466



**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Boy Scouts of America |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of Delaware |
| Case number | 20-10343 |

FILED
2020 MAR -2  AM 10: 25
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

## Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

Hartford Fire Insurance Company as Assignee of Hartford Specialty Company
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Hartford Fire Insurance Company
Name

Bankruptcy Unit, HO2-R, Home Office
Number        Street

Hartford              CT        06155
City                  State     ZIP Code

Contact phone _____

Contact email _____

Where should payments to the creditor be sent? (if different)

The Hartford
Name

PO Box 660916
Number        Street

Dallas               TX        75266
City                  State     ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____    Filed on ___ / ___ / _____
                                                                      MM   /  DD  /  YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

---

SA 0467

**Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __6__ __1__ __5__ __2__

BS076152  (not exclusive)

**7. How much is the claim?**

$ Contingent/Unliquidated

**Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Insurance Coverage

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☑ Motor vehicle

☑ Other. Describe:   Letter of Credit

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $ 600,000.00

**Amount of the claim that is secured:**  $ _____

**Amount of the claim that is unsecured:**  $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.  $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

SA 0468

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  02/25/2020
                  MM  / DD  / YYYY

Hartford Fire Insurance Company
By:

8 _____
   Signature    Hank Hoffman, Assistant Vice President

Print the name of the person who is completing and signing this claim:

| Name | Hank | | Hoffman |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Assistant Vice President | | |
| Company | Hartford Fire Insurance Company | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | One Hartford Plaza | | |
| | Number        Street | | |
| | Hartford | CT | 06155 |
| | City | State | ZIP Code |
| Contact phone | _____ | Email | _____ |

Official Form 410               Proof of Claim               page 3

SA 0469

Fill in this information to identify the case:

Debtor 1 Boy Scouts of America

Debtor 2 (Spouse, if filing)

United States Bankruptcy Court for the District of Delaware

Case number 20-10343




COPY

FILED

MAR 10 2020

By Omni Management Group, Claims Agent For U.S. Bankruptcy Court District of Delaware

Official Form 410

# Proof of Claim

12/15

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense Make such a request according to 11 U.S.C § 503**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements **Do not send original documents,** they may be destroyed after scanning If the documents are not available, explain in an attachment

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both 18 U S C §§ 152, 157, and 3571

**Fill in all the information about the claim as of the date the case was filed That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

**1 Who is the current creditor?**

Hartford Fire Insurance Company as Assignee of Hartford Specialty Company
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2 Has this claim been acquired from someone else?**

☑ No
☐ Yes From whom?

**3 Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name: Hartford Fire Insurance Company | Name: The Hartford |
| Number Street: Bankruptcy Unit, HO2-R, Home Office | Number Street: PO Box 660916 |
| City: Hartford State: CT ZIP Code: 06155 | City: Dallas State: TX ZIP Code: 75266 |
| Contact phone | Contact phone |
| Contact email | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

**4 Does this claim amend one already filed?**

☑ No
☐ Yes Claim number on court claims registry (if known) _____ Filed on MM / DD / YYYY

**5 Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes Who made the earlier filing?



343-26

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6.  Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  <u>6</u>  <u>1</u>  <u>5</u>  <u>2</u><br>BS076152 (not exclusive) |
| 7.  How much is the claim? | Contingent/Unliquidated<br>Does this amount include interest or other charges?<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8.  What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Insurance Coverage |
| 9.  Is all or part of the claim secured? | ☐ No<br>☑ Yes.  The claim is secured by a lien on property.<br><br>Nature of property:<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☑ Other. Describe  <u>Letter of Credit</u><br><br>Basis for perfection: _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:  $ <u>600,000.00</u><br>Amount of the claim that is secured:  $ _____<br>Amount of the claim that is unsecured:  $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:  $ _____<br><br>Annual Interest Rate (when case was filed) _____ %<br>☐ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.  $ _____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                                           Proof of Claim                                                              page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4) | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | *Check the appropriate box:*<br><br>☑ I am the creditor.<br>☐ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  07/25/2020<br>　　　　　　　　　 MM / DD / YYYY<br><br>Hartford Fire Insurance Company<br>By:<br>8 _____<br>　Signature   Hank Hoffman, Assistant Vice President<br><br>Print the name of the person who is completing and signing this claim: |

| | | |
|---|---|---|
| Name | Hank<br>First name | Hoffman<br>Last name |
| | | Middle name |
| Title | Assistant Vice President | |
| Company | Hartford Fire Insurance Company<br>Identify the corporate servicer as the company if the authorized agent is a servicer. | |
| Address | One Hartford Plaza<br>Number　　　Street | |
| | Hartford<br>City | CT　　　06155<br>State　　ZIP Code |
| Contact phone | _____ | Email _____ |

Official Form 410                     Proof of Claim                          page 3

SA 0472

Debtor: Boy Scouts of America

UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE

Case Number: 20-10343

**FILED**

Claim No. 6346

**November 13, 2020**

By Omni Claims Agent

For U.S. Bankruptcy Court

District of Delaware

Official Form 410

**Proof of Claim**

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

Carefully read instructions included with this Proof of Claim before completing.

| Part 1: | Identify the Claim |
| --- | --- |

| 1. | **Who is the current creditor?** | Trinity United Methodist Church of Orange |
| --- | --- | --- |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

**2. Has this claim been acquired from someone else?**
[X] No
[ ] Yes   From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Patricia B. Lott

755 Five Chop Road

Orangeburg, SC 29115

Contact Phone (803) 534-7484

Contact email lott6813@carolina.rr.com

Where should payments to the creditor be sent? (if different)

Contact Phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

**4. Does this claim amend one already filed?**
[X] No
[ ] Yes   Claim Number on court claims registry (if known) _____   Filed On _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
[X] No
[ ] Yes   Who made the earlier filing? _____

Official Form 410                                   **Proof of Claim**

**SA 0473**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

[X] No

[ ] Yes     Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**     $ _____     **Does this amount include interest or other charges?**

[X] No

[ ] Yes     Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information

Debtor's insurance and indemnification obligations

**9. Is all or part of the claim secured?**

[X] No

[ ] Yes     The claim is secured by a lien on property

**Nature of property:**

[ ] Real Estate     If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*

[ ] Motor Vehicle

[ ] Other     Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.

**Value of Property:**     $ _____

**Amount of the claim that is secured:**     $ _____

**Amount of the claim that is unsecured:**     $ _____     (The sum of the secured and unsecured amounts should match the amount in line 7).

**Amount necessary to cure any default as of the date of the petition:**     $ _____

**Annual Interest Rate:**     (when case was filed)     _____ %

[X] Fixed

[ ] Variable

**10. Is this claim based on a lease?**

[X] No

[ ] Yes     **Amount necessary to cure any default as of the date of the petition.**     $ _____

**11. Is this claim subject to a right of setoff?**

[X] No

[ ] Yes     Identify the property: _____

**12. Is this claim for the value of goods received by the debtor within 20 days before the commencement date of this case (11 U.S.C. § 503(b)(9)).?**

[X] No

[ ] Yes     Amount of 503(b)(9) Claim: $ _____

**SA 0474**

**13. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

[X] No
[ ] Yes    *Check all that apply*

| | Amount entitled to priority |
|---|---|
| [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| [ ] Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| [ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| [ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| [ ] Contributions to an employee benefit plan 11 U.S.C. § 507(a)(5). | $_____ |
| [ ] Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

[ ] I am the creditor.

[X] I am the creditor's attorney or authorized agent.

[ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

[ ] I am the guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowlegment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    11/13/2020
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
MM / DD / YYYY

Patricia B. Lott
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Signature

**Print the name of the person who is completing and signing this claim:**

Name          Patricia B. Lott
              ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
              First Name          Middle Name          Last Name

Title         Trustee Chairperson
              ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

Company       Trinity United Methodist Church of Orangeburg South Carolina
              ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
              Identify the corporate servicer as the company if the authorized agent is a servicer.

              185 Boulevard Street NE

Address

              Orangeburg, SC 29115

Contact Phone    (803) 534-7759          Email    lott6813@carolina.rr.com

---

Official Form 410                    **Proof of Claim**                    **SA 0475**

**BOY SCOUTS OF AMERICA**

**RESOLUTION REGARDING INSURANCE AND INDEMNIFICATION
OF CHARTERED ORGANIZATIONS AND USE OF CHARTER AGREEMENT
IN CIVIL LITIGATION**

WHEREAS Chartered Organizations and local councils play a critical role in the delivery of the Scouting program; and

WHEREAS the Corporation (The Boy Scouts of America) and its Chartered Organizations have experienced litigation trends and issues arising out of the interdependent relationships that have caused potential legal conflicts; and

WHEREAS the Corporation provides a general liability insurance program to Chartered Organizations so as to protect their interests in connection with the delivery of the Scouting program; and

WHEREAS it is in the best interests of the Corporation, Chartered Organizations to avoid some of the predictable and inherent conflicts arising out of their interdependent roles and obligations so as to strengthen the relationships and deliver the Scouting program without the uncertainty of potential conflicts;

NOW THEREFORE, it is hereby

RESOLVED, as follows:

I.     That the Corporation will endeavor to continue to maintain and provide primary general liability insurance for Chartered Organizations for those organizations in connection with covered claims made as a result of the delivery in connection with official scouting activities.

II.     That in addition to maintaining and providing the aforesaid liability insurance, the Corporation shall defend and indemnify Chartered Organizations, and their employees, directors, officers, members and volunteers, who act in good faith and against whom claims are asserted based upon the Corporation's membership standards.

III.     That the Corporation will indemnify to the fullest extent permitted by the law of the state where the Chartered Organization is domiciled against an award of punitive damages against any Chartered Organization, its employees, directors, officers members and volunteers who act in "Good Faith". This provision would not apply to any conduct or occurrences prior to the adoption date of this Resolution.

IV.     "Good Faith" as used herein shall require: (i) the Chartered Organization Representative take steps to remove from any involvement in the Scouting program any employee, officer, member or other person known or suspected of engaging in conduct that poses a risk of harm to others, including, but not limited to, actual or alleged acts of criminal conduct, violence,

SA 0476

substance abuse, or reckless conduct involving motor vehicles or firearms. Reasonable inquiry shall include at a minimum determining whether the religious and chief officers of the Chartered Organization have any such knowledge or information of the conduct described above. The Chartered Organization shall timely disclose to the local council, and the BSA upon request any such knowledge or information it obtains; (ii) prompt disclosure of any occurrence which may give rise to a legal action against the Corporation, Chartered Organization, local council or any of their employees, officers, volunteers or members; (iii) prompt written notice to the Corporation and an opportunity to participate in any settlement discussions related to claims for damages which arise in the course of the delivery of the Scouting program and (iv) adherence to applicable laws and the Rules and Regulations of the Boy Scouts of America.

     V.    This Resolution shall not be construed to require the Corporation or any insurance provided for the benefit of Chartered Organizations to indemnify any Chartered Organization or its employees, officers or members for acts intended or expected to result in harm or actions which are not in Good Faith as defined by this Resolution.

     VI.    In civil actions filed or threatened against a Chartered Organization after the date of this Resolution, the Corporation's legal counsel, or his or her designee, shall confer with the Chartered Organization over the selection of legal counsel to defend the Chartered Organization, its employees, officers, members and volunteers. The Corporation and the Chartered Organization shall make a good faith effort to mutually agree upon legal counsel to represent the Chartered Organization and its employees, officers, members and volunteers. This good faith discussion shall include the question of whether or not separate counsel should be retained to represent the interests of the Chartered Organization, its employees, officers, members or volunteer.

     VII.    In civil actions pending or filed against a Chartered Organization, the Corporation's legal counsel will not use the language of the Charter Agreement or the Charter Renewal Agreement, or any similar document outlining the responsibilities of the parties, to shift liability from the Corporation to the Chartered Organization.

     VIII.    The Corporation shall give not less than nine (9) months' notice to Chartered Organizations of any action to be taken to change the words or effect of this Resolution. Provided, however, that should general liability insurance become unavailable or unaffordable, the Corporation shall be required to provide such notice as is reasonably possible.

Provided, however, that this Resolution shall become effective only after financial institutions to whom the Corporation is obligated agree that the indemnification requirements in this Resolution do not violate any loan covenants or other agreements.

The undersigned, being duly elected and qualified Secretary of the Corporation, hereby certifies that the foregoing Resolution was duly adopted by the Board of Directors of the Corporation effective October 30, 2013.

*Wayne Brock*

Wayne Brock, Chief Scout Executive and Secretary

2

SA 0477

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
CALENDAR: 04
PAGE 1 of 16
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| NATIONAL SURETY CORPORATION, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| BOY SCOUTS OF AMERICA; CHICAGO | ) |
| AREA COUNCIL, INC. BOY SCOUTS OF | )   No. _____ |
| AMERICA; CHICAGO AREA COUNCIL, | ) |
| BOY SCOUTS OF AMERICA, INC.; | ) |
| ALLIANZ INSURANCE COMPANY n/k/a | ) |
| ALLIANZ GLOBAL RISKS US INSURANCE | ) |
| COMPANY; INSURANCE COMPANY OF | ) |
| NORTH AMERICA; TRAVELERS | ) |
| CASUALTY AND SURETY COMPANY, | ) |
| INC. f/n/a AETNA CASUALTY & SURETY | ) |
| COMPANY; FIRST STATE INSURANCE | ) |
| COMPANY; TWIN CITY FIRE INSURANCE | ) |
| CO.; DANIELSON NATIONAL INSURANCE | ) |
| COMPANY f/n/a MISSION NATIONAL | ) |
| INSURANCE COMPANY; LANDMARK | ) |
| INSURANCE COMPANY; COLUMBIA | ) |
| CASUALTY COMPANY; INTERNATIONAL | ) |
| INSURANCE GROUP, INC.; ARROWOOD | ) |
| INDEMNITY COMPANY f/n/a ROYAL | ) |
| INDEMNITY COMPANY; FEDERAL | ) |
| INSURANCE COMPANY; UNITED STATES | ) |
| FIRE INSURANCE COMPANY, INC.; UTICA | ) |
| MUTUAL INSURANCE COMPANY; | ) |
| NATIONAL UNION FIRE INSURANCE | ) |
| COMPANY OF PITTSBURGH, PA; PACIFIC | ) |
| EMPLOYERS INSURANCE COMPANY; | ) |
| HARBOR INSURANCE COMPANY; ST. | ) |
| PAUL FIRE AND MARINE INSURANCE | ) |
| COMPANY; CHUBB CUSTOM INSURANCE | ) |
| COMPANY; ST. PAUL SURPLUS LINES | ) |
| INSURANCE COMPANY; LEXINGTON | ) |
| INSURANCE COMPANY; JOHN DOE | ) |
| INSURERS 1-50; JOHN DOE; JOHN DOE 2; | ) |
| JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; | ) |
| JOHN DOE 6; JOHN DOE 7; JOHN DOE 8; | ) |
| JOHN DOE 9; JOHN DOE 10; JOHN DOE 11; | ) |
| JOHN DOE 12; JOHN DOE 13; JOHN DOE | ) |

**JTX-162**

14; JOHN DOE 15; JOHN DOE 16; JOHN )
DOE 17; AND JOHN DOE 18, )
 )

  Defendants.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 2 of 16

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff National Surety Corporation ("National Surety") alleges the following:

### INTRODUCTION AND SUMMARY

1. National Surety issued excess liability policies to Defendant Boy Scouts of America for the policy periods January 1, 1983 to January 1, 1984, and January 1, 1984 to January 1, 1985. Defendants Chicago Area Council, Inc. Boy Scouts of America and Chicago Area Council, Boy Scouts of America, Inc. (collectively, "Chicago Area Council") are additional named insureds under the policies. Boy Scouts of America and Chicago Area Council assert rights under National Surety's policies and are referred to, together, herein as the "Insured."

2. The Insured has been sued by individuals alleging that the Insured intentionally permitted, failed to prevent, and concealed alleged sexual abuse by scout leader Thomas Hacker ("Hacker"), in the lawsuit styled *John Doe et al. v. Thomas Hacker et al.*, pending in the Circuit Court of Cook County, Illinois, Law Division, originally as Case No. 2012-L-013569, and since assigned the new Case No. 2017-L-007900 (the "Underlying Lawsuits").

3. The sexual abuse in the Underlying Lawsuits is alleged to have occurred between 1980 and 1988 with respect to a scout troop located in Burbank, Illinois.

4. Boy Scouts of America is alleged to have intentionally concealed information relating to the widespread problem of sexual abuse by scout leaders since as early as 1919.

5. National Surety brings this action to obtain declaratory relief on coverage issues related to its excess liability policies with respect to the Underlying Lawsuits. National Surety seeks a declaration that no coverage exists under its policies with respect to the Underlying

SA 0479

Lawsuits, and that National Surety owes no duty to defend, pay defense costs, or indemnify the Insured, and for other relief outlined herein.

6.      The Insured has demanded payment from National Surety on the policies.  On information and belief, the Insured disagrees with National Surety regarding coverage interpretations on these issues.

7.      For this reason, National Surety requests coverage interpretations by this Court in a declaratory judgment action.

## PARTIES

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 3 of 16

8.      Plaintiff National Surety is a corporation organized under the laws of the State of Delaware with its principal place of business and statutory home office in Illinois.  It is now and was at all times relevant to this Complaint licensed or authorized to issue insurance policies in the State of Illinois.

9.      On information and belief, Defendant Boy Scouts of America is a congressionally chartered corporation authorized to do business in Illinois.  Boy Scouts of America asserts rights under policies issued by National Surety and other Insurer Defendants in this action.

10.     On information and belief, Defendant Chicago Area Council is a not-for-profit corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.  Chicago Area Council asserts rights under policies issued by National Surety and other Insurer Defendants in this action.

11.     On information and belief, a number of other liability insurers issued policies to the Insured during the 1980 to 1988 time period.  These insurers are listed below.

12.     On information and belief, Allianz Insurance Company, now known as Allianz Global Risks US Insurance Company ("Allianz"), is a corporation organized under the laws of

3

the State of Illinois with its principal place of business in Chicago, Illinois. On information and

belief, Allianz issued a liability policy to the Insured covering the time period January 1, 1980 to

January 1, 1981.

13.    On information and belief, Defendant Insurance Company of North America

("INA") is a corporation organized under the laws of the State of Pennsylvania with its principal

place of business in Philadelphia, Pennsylvania. On information and belief, INA issued liability

policies to the Insured covering the time period January 1, 1980 to March 1, 1988.

14.    On information and belief, Travelers Casualty and Surety Company, Inc. (f/n/a

Aetna Casualty & Surety Company) ("Travelers") is a corporation organized under the laws of

the State of Connecticut with its principal place of business in Hartford, Connecticut. On

information and belief, Travelers issued a liability policy to the Insured covering the time period

January 1, 1980 to January 1, 1981.

15.    On information and belief, Transit Casualty Insurance Co. ("Transit") was a

corporation organized under the laws of the State of Missouri with its principal place of business

in Los Angeles, California. On information and belief, Transit was declared insolvent and the

subsequent receivership has been closed. Accordingly, Transit is not named as a party herein.

16.    On information and belief, First State Insurance Company ("First State") is a

corporation organized under the laws of the State of Connecticut with its principal place of

business in Hartford, Connecticut. On information and belief, First State issued a liability policy

to the Insured covering the time period January 1, 1981 to January 1, 1983.

17.    On information and belief, Twin City Fire Insurance Co. ("TC Fire") is a

corporation organized under the laws of the State of Indiana with its principal place of business

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 4 of 16

4

in Hartford, Connecticut. On information and belief, TC Fire issued a liability policy to the Insured covering the time period January 1, 1982 to January 1, 1983.

18.     On information and belief, Danielson National Insurance Company (f/n/a Mission National Insurance Company) ("Danielson") is a corporation organized under the laws of the State of California with its principal place of business in San Diego, California. On information and belief, Danielson issued a liability policy to the Insured covering the time period January 1, 1984 to January 1, 1985.

19.     On information and belief, Landmark Insurance Company ("Landmark") was a corporation organized under the laws of the State of California with its principal place of business in Boston, Massachusetts. On information and belief, Landmark has merged with National Union Fire Insurance Company of Pittsburgh, PA, the latter being the surviving entity. On information and belief, Landmark issued a liability policy to the Insured covering the time period January 1, 1985 to March 1, 1986.

20.     On information and belief, Columbia Casualty Company ("Columbia") is a corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. On information and belief, Columbia issued a liability policy to the Insured covering the time period January 1, 1985 to March 1, 1986.

21.     On information and belief, Highlands Insurance Company ("Highlands") was a corporation organized under the laws of the State of Texas with its principal place of business in Lawrenceville, New Jersey. On information and belief, Highlands is currently in receivership. Accordingly, it is not named as a party herein.

22.     On information and belief, International Insurance Group, Inc. ("IIG"), is a corporation organized under the laws of the State of Delaware. On information and belief, IIG

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 5 of 16

5

issued a liability policy to the Insured covering the time period January 1, 1985 to March 1, 1986.

23.    On information and belief, Arrowood Indemnity Company (f/n/a Royal Indemnity Company) ("Arrowood") is a corporation organized under the laws of the State of Delaware with its principal place of business in Charlotte, North Carolina. On information and belief, Arrowood issued a liability policy to the Insured covering the time period January 1, 1985 to March 1, 1986.

24.    On information and belief, Federal Insurance Company ("Federal") is a corporation organized under the laws of the State of Pennsylvania. On information and belief, Federal issued a liability policy to the Insured covering the time period January 1, 1985 to March 1, 1986.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 6 of 16

25.    On information and belief, United States Fire Insurance Company, Inc. ("U.S. Fire") is a corporation organized under the laws of the State of Delaware with its principal place of business in Morristown, New Jersey. On information and belief, U.S. Fire issued liability policies to the Insured covering the time period March 1, 1986 to March 1, 1987 and March 1, 1987 to March 1, 1988.

26.    On information and belief, Utica Mutual Insurance Company ("Utica") is a corporation organized under the laws of the State of New York with its principal place of business in New Hartford, New York. On information and belief, Utica issued a liability policy to the Insured covering the time period March 1, 1986 to March 1, 1987.

27.    On information and belief, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in New York, New York. On information and belief,

SA 0483

National Union issued liability policies to the Insured covering the time periods March 1, 1986 to March 1, 1987, June 3, 1986 to March 1, 1987, and March 1, 1987 to March 1, 1988.

28.    On information and belief, Pacific Employers Insurance Company ("Pacific Employers") is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.  On information and belief, Pacific Employers issued a liability policy to the Insured covering the time period March 1, 1986 to March 1, 1987.

29.    On information and belief, Harbor Insurance Company ("Harbor") is a corporation organized under the laws of the State of Oklahoma with its principal place of business in Tulsa, Oklahoma.  On information and belief, Harbor issued a liability policy to the Insured covering the time period May 20, 1986 to March 1, 1987.

30.    On information and belief, St. Paul Fire and Marine Insurance Company ("St. Paul Fire") is a corporation organized under the laws of the State of Minnesota with its principal place of business in St. Paul, Minnesota.  On information and belief, St. Paul Fire issued a liability policy to the Insured covering the time period May 28, 1986 to March 1, 1987.

31.    On information and belief, Chubb Custom Insurance Company ("Chubb") is a corporation organized under the laws of the State of Delaware with its principal place of business in Warren, New Jersey.  On information and belief, Chubb issued a liability policy to the Insured covering the time period June 3, 1986 to March 1, 1987.

32.    On information and belief, St. Paul Surplus Lines Insurance Company ("St. Paul Surplus") is a corporation organized under the laws of State of Delaware with its principal place of business in St. Paul, Minnesota.  On information and belief, St. Paul Surplus issued a liability policy to the Insured covering the time period March 1, 1987 to March 1, 1988.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 7 of 16

7

SA 0484

33.     On information and belief, Lexington Insurance Company ("Lexington") is a corporation organized under the laws of the State of Delaware with its principal place of business in Boston, Massachusetts.  On information and belief, Lexington issued a liability policy to the Insured covering the time period March 1, 1987 to March 1, 1988.

34.     Defendants John Doe Insurers 1-50 are insurers, unknown by name to Plaintiff at this time, that issued liability insurance policies to the Insured.  Plaintiff names these John Doe Insurers insofar as they may be alleged to be necessary parties, for the purpose of binding them to the relief sought herein.  Plaintiff will dismiss this action as to any John Doe Insurer that is not necessary to the relief sought herein.

35.     The declarations National Surety seeks in this case may impact the coverage obligations of the Insured's liability insurers other than National Surety.  For this reason, National Surety has joined to this action the Insured's other liability insurers for the years in which the sexual abuse is alleged to have occurred, 1980 to 1988.

36.     Defendants John Doe – John Doe 18 are plaintiffs in the Underlying Lawsuits. On information and belief, John Doe – John Doe 18 are domiciled in the State of Illinois. Defendants John Doe – John Doe 18 are joined to bind them to the judgment in this case.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 8 of 16

## **JURISDICTION AND VENUE**

37.     The Court has personal jurisdiction over defendants pursuant to 735 ILCS 5/2-209 because they are domiciled and/or licensed to do business and/or are doing business in the State of Illinois.  In addition, the Court has personal jurisdiction over the out-of-state insurer defendants pursuant to 735 ILCS 5/2-209 because each such defendant is or was transacting business in the State of Illinois within the time periods relevant to the causes of action stated herein and contracted to insure persons, property, or risks located in the State of Illinois.

8

SA 0485

38.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 to 103 because it is a county in which multiple defendants are "doing business." Further, Plaintiff's causes of action arise out of events that occurred in Cook County with respect to a Boy Scout troop located in Cook County, and the Underlying Lawsuits are all filed in the Circuit Court of Cook County, Law Division.

## NATIONAL SURETY POLICIES

39.     National Surety issued to Boy Scouts of America a Blanket Excess Liability Policy, No. XLX1484309, in effect for the policy period January 1, 1983 to January 1, 1984 (hereinafter, the "1983-1984 Policy"). A copy of the 1983-1984 Policy is attached hereto as **Exhibit A**.

40.     National Surety issued to Boy Scouts of America a Blanket Excess Liability Policy, No. XLX1484392, in effect for the policy period January 1, 1984 to January 1, 1985 (hereinafter, the "1984-1985 Policy"). A copy of the 1984-1985 Policy is attached hereto as **Exhibit B**. Together, the 1983-1984 Policy and the 1984-1985 Policy are referred to herein as the "National Surety Policies."

41.     The National Surety Policies are "follow form" excess policies that incorporate, with certain listed exceptions, the terms, conditions, and exclusions of underlying policies issued by INA to Boy Scouts of America for the 1983-1984 and 1984-1985 years, respectively.

42.     Subject to the stated limits of liability, terms, conditions, and exclusions, the National Surety Policies provide indemnity coverage for "occurrence[s]" which take place during the policy period. An "occurrence" is defined in pertinent part as an "accident . . . which results in Personal Injury . . . neither expected nor intended from the standpoint of the insured."

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 9 of 16

9

43.     The National Surety Policies do not provide for a duty to defend, but defense costs may be reimbursable if incurred with the consent of National Surety, but only in the proportion that the Insured and National Surety are responsible for the loss.

### UNDERLYING LAWSUITS ALLEGATIONS

44.     John Doe – John Doe 18 assert claims against the Insured in the Underlying Lawsuits arising out of the alleged sexual abuse of John Doe – John Doe 18 by Thomas Hacker ("Hacker"). A copy of the Third Amended Complaint in the Underlying Lawsuits is attached hereto as **Exhibit C**.

45.     John Doe – John Doe 18 allege that the Insured knew of Hacker's predatory tendencies, and of the widespread problem of sexual abuse by scout masters, prior to Hacker's alleged abuse of John Doe – John Doe 18. (Third Amended Complaint pp. 12-35.)

46.     John Doe – John Doe 18 allege that, despite this knowledge, the Insured, through various acts and omissions, permitted, failed to take steps to prevent, and concealed Hacker's alleged sexual abuse of John Doe – John Doe 18. (Third Amended Complaint pp. 35-499.)

47.     By way of summary, John Doe – John Doe 18 allege as follows:

(a) "Since approximately 1919, BOY SCOUTS OF AMERICA has maintained a group of files known variously as the red files, perversion files, or ineligible volunteer files (IV Files)." (Third Amended Complaint p. 27, ¶ 6.)

(b) "The IV Files . . . document multiple instances of child molesters volunteering with scouting, molesting a child, being reported to BSA, but then re-gaining entry into scouting." (Third Amended Complaint p. 20, ¶ 72.)

(c) "BSA's 'Ineligible Volunteer Files' contained a file for Mr. Hacker opened in 1970, yet he was able and permitted by BSA to register with the Chicago Area Council in

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 10 of 16

10

SA 0487

the 1980s and was able to participate in Scouting." (Third Amended Complaint p. 36, ¶ 124.)

      (d) "BSA knew or should have known that its 'ineligible volunteers' system of keeping track of pedophiles infiltrating its ranks and attempting to eliminate them did not function as it was intended, was flawed, and in many cases ineffective. . . . BSA did nothing to educate or inform Scouts and their parents of the enormity of the pedophile problem, nor did BSA take action to correct its screening and/or education system." (Third Amended Complaint p. 36, ¶ 125.)

      (e) "Instead of addressing the problem by informing parents and scouts of the issue, or by implementing safety programs to prevent abuse, BSA instead concealed the problem by employing a public relations department to combat negative stories about sexual abuse in Scouting." (Third Amended Complaint pp. 23-24, ¶ 101.)

      (f) "After the BOY SCOUTS OF AMERICA learned that Thomas Hacker molested Chicago Area Council scouts, the BOY SCOUTS OF AMERICA concealed the fact, in the 1970s, it had previously identified Hacker as a child molester and/or abuser but still allowed him to register with the Chicago Area Council." (Third Amended Complaint pp. 43-44, ¶ 151.)

48.    John Doe – John Doe 18 seek punitive damages against the Insured as a result of the Insured's alleged intentional conduct and fraudulent concealment. (Third Amended Complaint pp. 23-26.)

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 11 of 16

SA 0488

**FIRST CAUSE OF ACTION**

**Declaration That No Coverage Exists Under National Surety's Policies, And That National Surety Has No Duty To Indemnify The Insured, Because The Insured's Alleged Conduct Is Not An "Accident."**

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 12 of 16

49.     National Surety incorporates by reference in this First Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

50.     An "occurrence" covered under National Surety's Policies is defined to require an "accident."

51.     The Underlying Lawsuits allege that the Insured knew that Hacker was a predator, and of the widespread problem of sexual abuse by scout masters, and, despite this knowledge, permitted, failed to take steps to prevent, and concealed Hacker's sexual abuse of John Doe – John Doe 18.

52.     The alleged conduct of the Insured in the Underlying Lawsuits does not constitute an "accident."

53.     Accordingly, no coverage exists for the Underlying Lawsuits under National Surety's Policies, and National Surety owes no duty to indemnify the Insured.

WHEREFORE, Plaintiff prays for a declaration that no coverage exists under National Surety's Policies, and that National Surety owes no duty to indemnify the Insured, because the Insured's alleged conduct is not an accident.

**SECOND CAUSE OF ACTION**

**Declaration That No Coverage Exists Under National Surety's Policies, And That National Surety Has No Duty To Indemnify The Insured, Because The Insured's Alleged Conduct Was Expected Or Intended.**

54.     National Surety incorporates by reference in this Second Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

12

SA 0489

55.     An "occurrence" covered under National Surety's Policies does not include acts that are expected or intended from the standpoint of the insured.

56.     The Underlying Lawsuits allege that the Insured knew that Hacker was a predator, and of the widespread problem of sexual abuse by scout masters, and, despite this knowledge, permitted, failed to take steps to prevent, and concealed Hacker's alleged sexual abuse of John Doe – John Doe 18.

57.     The alleged conduct of the Insured in the Underlying Lawsuits was expected or intended.

58.     Accordingly, no coverage exists for the Underlying Lawsuits under National Surety's Policies, and National Surety owes no duty to indemnify the Insured.

WHEREFORE, Plaintiff prays for a declaration that no coverage exists under National Surety's Policies, and that National Surety owes no duty indemnify the Insured, because the Insured's alleged conduct was expected or intended.

### THIRD CAUSE OF ACTION

**Declaration That No Coverage Exists Under National Surety's Policies For Punitive Damages, And That National Surety Has No Duty To Indemnify The Insured With Respect To Punitive Damages.**

59.     National Surety incorporates by reference in this Third Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

60.     The Underlying Lawsuits seek punitive damages for the Insured's conduct.

61.     Punitive damages are not insurable.

62.     Accordingly, no coverage exists for punitive damages sought in the Underlying Lawsuits, and National Surety owes no duty to indemnify the Insured with respect to punitive damages.

13

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 13 of 16

WHEREFORE, Plaintiff prays for a declaration that no coverage exists under National Surety's Policies for punitive damages, and that National Surety owes no duty to indemnify the Insured with respect to punitive damages.

## FOURTH CAUSE OF ACTION

### Declaration That Coverage Is Not Available For Underlying Lawsuits In Which Personal Injury Does Not Take Place During The Policy Period.

63.   National Surety incorporates by reference in this Fourth Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

64.   The National Surety Policies require – for there to be coverage – that Personal Injury occur during the applicable policy period.  There is, accordingly, no coverage under National Surety's Policies for Personal Injury which takes place outside of the applicable policy periods.



ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 14 of 16

WHEREFORE, Plaintiff prays for a declaration that no coverage exists for the Underlying Lawsuits in which there is no personal injury during the policy period, and that National Surety has no duty to indemnify the Insured with respect to the Underlying Lawsuits in which there is no personal injury during the policy periods.

## FIFTH CAUSE OF ACTION

### Declaration That National Surety Has No Duty To Provide Coverage Or Indemnify The Insured Until Underlying Insurance Is Exhausted.

65.   National Surety incorporates by reference in this Fifth Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

66.   The National Surety Policies are excess policies that respond only when underlying insurance is exhausted.

67.   On information and belief, underlying insurance is not exhausted.

14

SA 0491

68. On information and belief, certain of the Insured's other insurers are insolvent, and National Surety's policies would not respond until payments are made exhausting such underlying policies.

WHEREFORE, Plaintiff prays for a declaration that it has no duty to provide coverage or indemnify the Insured unless and until underlying insurance is exhausted.

### SIXTH CAUSE OF ACTION

**Declaration That National Surety Has No Duty To Defend Or Reimburse Defense Costs.**

69. National Surety incorporates by reference in this Sixth Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

70. The National Surety Policies do not provide for a duty to defend.

71. No coverage exists under National Surety's Policies because the Insured's conduct was not an "accident," as set forth in National Surety's First Cause of Action.

72. No coverage exists under National Surety's Policies because the Insured's conduct was expected or intended, as set forth in National Surety's Second Cause of Action.

73. No coverage exists under National Surety's Policies with respect to punitive damages, as set forth in National Surety's Third Cause of Action.

74. No coverage exists under National Surety's Policies with respect to occurrences taking place outside the policy period, as set forth in National Surety's Fourth Cause of Action.

75. National Surety has no duty to provide coverage unless and until underlying insurance is exhausted, as set forth in National Surety's Fifth Cause of Action.

76. Because no coverage exists under National Surety's Policies, National Surety has no obligation to reimburse defense costs.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 15 of 16

15

SA 0492

WHEREFORE, Plaintiff prays for a declaration that National Surety has no duty to defend the Insured or reimburse defense costs, consistent with the relief sought in the First through Fifth Causes of Action set forth above.

## SEVENTH CAUSE OF ACTION

### Declaration Of National Surety's Rights And Obligations Under The Policies.

77.     National Surety incorporates by reference in this Seventh Cause of Action all allegations in this Complaint, including Exhibits attached thereto.

78.     To the extent not addressed in the preceding Causes of Action, National Surety seeks a declaration concerning its rights and obligations under policies it issued to Boy Scouts of America and/or Chicago Area Council.

WHEREFORE, Plaintiff prays for a declaration establishing its rights and obligations under policies it issued to Boy Scouts of America and/or Chicago Area Council.

Dated:  November 9, 2017

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 16 of 16

Respectfully submitted,

/s/ Todd C. Jacobs
Todd C. Jacobs (#6201358)
Melissa A. Carrington (#6305591)
Jeremiah D. Junker (*pro hac* pending)
BRADLEY RILEY JACOBS PC
Firm No. 61684
320 W. Ohio Street, Suite 3W
Chicago, IL 60654
Phone: (312) 281-0295
Fax:    (319) 363-9824
Email: tjacobs@bradleyriley.com
           mcarrington@bradleyriley.com
           jjunker@bradleyriley.com

ATTORNEYS FOR THE PLAINTIFF

16

SA 0493

1 CIT ES

FILED
DALLAS COUNTY
8/24/2018 11:41 AM
FELICIA PITRE
DISTRICT CLERK

Angie Avina

CAUSE NO. <u>DC-18-11896</u>

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, ALOHA COUNCIL, NEW BIRTH OF FREEDOM COUNCIL, CHICAGO AREA COUNCIL | § § § § | IN THE DISTRICT COURT OF |
| PLAINTIFFS | § § | |
| VS. | § § § | DALLAS COUNTY, TEXAS |
| INSURANCE COMPANY OF NORTH AMERICA, CENTURY INDEMNITY COMPANY, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, NATIONAL SURETY CORPORATION | § § § § § § | |
| DEFENDANTS | § § § | k-192 nd JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiff Boy Scouts of America ("BSA"), Plaintiff Aloha Council ("AC"), Plaintiff New Birth of Freedom Council ("NBC") and Plaintiff Chicago Area Council ("CAC") (collectively, the "Plaintiffs") hereby file this Original Petition against Defendants Insurance Company of North America ("INA"), Century Indemnity Company ("Century Indemnity"), Allianz Global Risks US Insurance Company ("Allianz"), and National Surety Corporation ("National Surety")and would respectfully show the Court as follows:

## I.   DISCOVERY CONTROL PLAN

1.     Discovery in this matter is intended to be conducted under Level 2, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

## II.   PARTIES

**JTX-185**

2.     Plaintiff BSA is a congressionally chartered organization authorized to do business in Texas, and has its headquarters at 1325 Walnut Hill Lane, Irving, Texas 75015.

3.    Plaintiff Aloha Council is a non-profit corporation organized under the laws of the State of Hawaii, and has its headquarters at 42 Puiwa Road, Honolulu, Hawaii 96817.

4.    Plaintiff New Birth of Freedom Council is a non-profit corporation organized under the laws of the State of Pennsylvania, and has its headquarters at 1 Baden Powell Lane, Mechanicsburg, Pennsylvania 17050.

5.    Plaintiff Chicago Area Council is a non-profit corporation organized under the laws of the State of Illinois, and has its headquarters at 1218 West Adams Street, Chicago, Illinois 60607.

6.    Defendant Insurance Company of North America is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania. Defendant INA may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

7.    Defendant Century Indemnity Company is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.  Defendant Century Indemnity may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

8.    Defendant Allianz Global Risks US Insurance Company is a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois.  Defendant Allianz may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

9.    Defendant National Surety Corporation is a corporation organized under the laws of the State of Delaware with its principal place of business in Illinois.  Defendant National Surety

may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

### III.    JURISDICTION & VENUE

10.    The foregoing allegations are incorporated herein by reference.

11.    This Court has jurisdiction over this matter because the amount in controversy, exclusive of interest and costs, is within the jurisdictional limits of the Court.

12.    Plaintiff seeks monetary relief over $1,000,000.

13.    Venue is proper in Dallas County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claims occurred in Dallas County at the time the cause of actions accrued.

### IV.    FACTUAL BACKGROUND

**A.    BSA and its Insurance Coverage Program**

14.    The Boy Scouts of America is one of the nation's largest and most prominent values-based youth development organizations, with more than 2.4 million youth participants and nearly one million adult volunteers.  BSA was founded in 1910, and since then, more than 110 million Americans have been participants in BSA programs at some time.

15.    The BSA program is delivered through local chartering organizations, such as churches, clubs, civic associations, or educational organizations, to implement the scouting program for youth within their communities.  Units are led entirely by volunteers appointed by the chartering organization, who are supported by local councils like AC, NBC and CAC.

16.    To insure its many activities and local councils throughout the country, Plaintiffs maintain a comprehensive, broad insurance program.  From approximately 1962 to present,

SA 0496

Plaintiffs purchased several general liability and umbrella and/or excess liability insurance policies.

**B.     The Lawsuits**

   **(i)     The Underlying Lawsuits**

17.     Over the past several years, Plaintiffs have been subject to numerous claims and lawsuits in which the underlying plaintiffs allege they were sexually abused while a participant in various BSA programs (the "Underlying Lawsuits").

18.     The Underlying Lawsuits allege abuse during various and multiple periods of time, in various and multiple geographic locations, and based on the conduct of various alleged perpetrators.

19.     The Underlying Lawsuits generally allege personal injury due to sexual abuse and allege, *inter alia*, that BSA and BSA local councils, including AC, NBC, and CAC, were negligent in failing to prevent the sexual abuse.

20.     The Underlying Lawsuits contain allegations that underlying plaintiffs suffered and continue to suffer from bodily injury, including but not limited to severe and debilitating physical, mental and emotional injury, pain and suffering, physical and emotional trauma, and present psychological damage.

21.     As a result of the Underlying Lawsuits, BSA and BSA local councils have incurred and will continue to incur significant defense fees and costs.  Many of the defendants have breached and continue to breach their contractual obligations by failing to pay BSA's and BSA local council's defense fees and costs.  This includes BSA's retained national coordinating counsel.

22.     In addition, certain insurers have failed to fund settlements reached by BSA with underlying plaintiffs.  These insurers either contend improperly that coverage is not available or

challenge the reasonableness of the settlements entered by BSA and BSA local councils; two such circumstances are below.

(ii)     **The John Doe 2 and John Doe 3 Lawsuits**

23.     In December of 2012, BSA and CAC, among others, were named defendants in a case styled *John Doe, et al. v. BSA*, *et al.*, No. 2012-L-013569 in the Circuit Court of Cook County in Chicago, Illinois (the "Hacker Lawsuit").   The Hacker Lawsuit was originally brought by eighteen plaintiffs, but the Circuit Court bifurcated the Hacker Lawsuit into individual cases for each of the plaintiffs, including for John Doe 2 whose case is styled *John Doe 2 v. BSA*, *et al.*, No. 2017-L-9365 (the "John Doe 2 Lawsuit") and John Doe 3 whose case is styled *John Doe 3 v. BSA*, *et al.*, No. 2017-L-7900 (the "John Doe 3 Lawsuit").

24.     The John Doe 2 Lawsuit alleged that John Doe 2 was sexually abused by Thomas Hacker ("Hacker"), an alleged BSA scoutmaster, while he was a member of Troop 1600 in Oak Lawn, Illinois between 1983 and 1986.

25.     The John Doe 3 Lawsuit likewise alleged that John Doe 3 was sexually abused by Hacker while he was a member of Troop 1600 in Oak Lawn, Illinois between 1984 and 1986.

26.     Both the John Doe 2 Lawsuit and John Doe 3 Lawsuit contain allegations that BSA and CAC were negligent in not preventing the sexual abuse, even though Hacker admits to manipulating BSA's registration system to continue in scouting after he had supposedly been barred from volunteering by BSA.

27.     The John Doe 2 Lawsuit and John Doe 3 Lawsuit allege that both John Doe 2 and John Doe 3 have suffered permanent bodily injury, will continue to be damaged psychologically, and will continue to experience mental anguish, humiliation and emotional and physical pain, suffering and distress.

**PLAINTIFFS' ORIGINAL PETITION**                                                    Page 5

28.     The John Doe 2 Lawsuit was set for trial on July 9, 2018.

29.     The John Doe 2 Lawsuit settled prior to the July 9, 2018 trial.

30.     The John Doe 3 Lawsuit was set for trial on September 7, 2018.

31.     The John Doe 3 Lawsuit settled prior to the September 7, 2018 trial.

**(iii)     The Roe 90 Lawsuit**

32.     On April 21, 2016, BSA and AC, among others, were named defendants in a case styled *John Roe No. 90 v. Boy Scouts of America, Aloha Council et al.*, Case No. 16-1-0764-04 in the Circuit Court of the First Circuit, Hawaii (the "Roe 90 Lawsuit").

33.     The Roe 90 Lawsuit alleged John Roe No. 90 ("John Roe") was sexually abused by an individual who was allegedly associated with BSA, either as an alleged troop leader and/or scoutmaster for BSA and/or AC.

34.     The Roe 90 Lawsuit alleged the abuse from the individual began in 1980 in Honolulu, Hawaii.

35.     The Roe 90 Lawsuit asserted claims against BSA and AC for gross negligence, grossly negligent infliction of emotional distress, grossly negligent misrepresentation, and punitive damages.

36.     The Roe 90 Lawsuit settled prior to trial.

**C.     Coverage Disputes with Plaintiffs' Insurers Regarding the Underlying Lawsuits**

37.     The significant increase in sexual abuse claims over the last several years has resulted in an increase in disputes with Plaintiffs' insurers.  This action addresses Plaintiffs' disputes with: (1) INA and Century Indemnity regarding application of the FEA (defined below) to the Underlying Lawsuits; (2) INA regarding unpaid defense costs relating to the Underlying Lawsuits; (3) National Surety and INA regarding the John Doe 2 Lawsuit; (4) National Surety

SA 0499

regarding the John Doe 3 Lawsuit and (5) Allianz regarding the Roe 90 Lawsuit.

**(i)** **Plaintiffs' Coverage Dispute with INA and Century Indemnity Regarding Application of the First Encounter Agreement to the Underlying Lawsuits.**

38.     Certain INA and Century Indemnity entities issued a significant amount of primary, general-liability policies to Plaintiffs from approximately 1962 through 1996.  In certain years, certain INA and Century Indemnity entities also issued several excess/umbrella policies to Plaintiffs (collectively, the "INA Policies").

39.     In 1996, Plaintiffs approached INA and Century Indemnity in an effort to minimize disputes regarding coverage.  As a result of those discussions, on or about May 24, 1996, Plaintiffs and certain INA/Century Indemnity entities executed the "Settlement Agreement Regarding Sexual Molestation Claims."  This settlement agreement is often referred to as the "First Encounter Agreement" ("FEA").

40.     Pursuant to the FEA, Plaintiffs and certain INA/Century Indemnity entities agreed that "the date of 'occurrence' pertaining to any Sexual Molestation Claim shall be the date when the first act of Sexual Molestation took place, even if additional acts of Sexual Molestation or additional Personal Injuries arising therefrom also occurred in subsequent policy periods; and all damages arising out of such additional acts of Sexual Molestation or additional Personal Injuries shall be deemed to have been incurred during the policy year when the first act of Sexual Molestation took place."

41.     Plaintiffs and certain INA and Century Indemnity entities were the *only* parties to the FEA,[1] and the terms and conditions of the FEA bind only the parties to the FEA (Plaintiffs,

---

[1] INA is defined in the FEA as Insurance Company of North America, including its predecessors, successors, affiliates, subsidiaries, its past, present and future assigns, parents, and the officers, directors, employees, and agents of any of them.  Century Indemnity is defined in the FEA as Century Indemnity Company, including its predecessors, successors, affiliates, subsidiaries, its past, present and future assigns, parents, and the officers, directors, employees,

**SA 0500**

INA and Century Indemnity), and only with regard to the INA Policies.  Specifically, the FEA provides that the FEA is "not intended to be, nor shall it be construed as, an interpretation of any [non-INA] policy….[and]it shall not be used…against [Plaintiffs], whether directly or indirectly, to create, prove, or interpret the obligations, if any of INA or Century Indemnity under any [non-INA] policy other than an [INA Policy]."

42.     The FEA likewise contains a Merger Clause which provides that the FEA "memorializes and constitutes the entire agreement and understanding between [INA, Century Indemnity, and BSA] and supersedes and replaces all prior negotiations, proposed agreements, express or implied, and agreements whether written or unwritten."

43.     Notwithstanding the clear language in the FEA, INA presently is breaching the FEA through at least two contentions:  (1) that it may allocate liability to all years of abuse; and (2) that other insurers are bound by the FEA, despite not being signatories.

44.     First, the FEA specifically provides that the only policy triggered is the policy where "the first act of Sexual Molestation took place."  Despite this clear language, INA contends that it may allocate its liability for sexual abuse claims to all of the policy years where abuse occurred.  This constitutes a breach of the FEA.

45.     Second, notwithstanding the Merger Clause and the terms of the FEA, INA has taken the position that the FEA not only binds the INA Policies, but also applies to any policies underlying an INA Policy.  INA contends that any policy underlying an excess INA Policy must be exhausted in accordance with the first encounter rule.  As such, INA has refused to indemnify Plaintiffs for certain of the Underlying Lawsuits because INA asserts the underlying policies have

---

and agents of any of them.  Therefore, the FEA was only between the INA and Century Indemnity entities that existed as of May 24, 1996.

not been exhausted in accordance with the protocols of the FEA.  This too constitutes a breach of the FEA.

**(ii)     Plaintiffs' Dispute with INA Regarding Defense Fees and Costs Related to the Underlying Lawsuits.**

46.     Certain of the INA Policies require INA to either defend or reimburse Plaintiffs for any defense costs it incurs in connection with the Underlying Lawsuits.

47.     Despite this obligation, INA has either refused to fund, has delayed payment, or has only partially funded the defense costs Plaintiffs have incurred in connection with the Underlying Lawsuits.

48.     INA has also refused to pay defense costs relating to Plaintiffs' National Coordinating Counsel – Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree").  Ogletree is instrumental in coordinating the defense of all of the Underlying Lawsuits, which as noted above, are located all over the United States.  As such, INA is obligated to pay these defense costs.

**(iii)    BSA's and CAC's Coverage Dispute with National Surety and INA Regarding the John Doe 2 Lawsuit.**

49.     National Surety issued Blanket Excess Liability Policy No. XLX1484309 to Plaintiffs for the policy period January 1, 1983 to January 1, 1984 (the "NS 1983 Policy").

50.     The NS 1983 Policy provides that National Surety "shall indemnify [BSA and CAC] for [BSA and CAC]'s 'ultimate net loss' in excess of [BSA and CAC]'s underlying insurance policies."

51.     The NS 1983 Policy defines "ultimate net loss" as "all sums actually paid, or which [BSA and CAC] are legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by the [NS 1983 Policy]." INA issued Excess Liability Policy

**SA 0502**

No. XCP-144961 to Plaintiffs for the policy period November 17, 1982 to January 1, 1984 (the "INA 1983 Policy").

52.     Because the alleged dates of abuse in the complaint trigger coverage under the NS 1983 Policy and the INA 1983 Policy, BSA and CAC provided timely notice to National Surety and INA of the John Doe 2 Lawsuit.

53.     On January 18, 2018, BSA and CAC received a time-sensitive demand from John Doe 2 that would fully and finally resolve the John Doe 2 Lawsuit.  BSA and CAC tendered this demand to National Surety and demanded that it fund the settlement up to its remaining limits. National Surety, however, refused to fund the settlement demand prior to the April 2, 2018 deadline.

54.     On June 25, 2018, BSA and CAC received another demand from John Doe 2 that would fully and finally resolve the John Doe 2 Lawsuit.  The settlement demand received from John Doe 2 in June of 2018 had increased from John Doe 2's previous January 18, 2018 settlement demand.  BSA and CAC again tendered this demand to National Surety and demanded that it fund the settlement up to its remaining limits.  National Surety, however, refused to satisfy its coverage obligations and denied that it had an obligation to fund the settlement with its remaining limits.

55.     Faced with this denial, BSA and CAC obligated themselves to pay that portion of the settlement demand that would have exhausted the NS 1983 Policy.  As the payment of the settlement demand is a sum that BSA and CAC are "legally obligated to pay," National Surety is obligated to indemnify BSA and CAC for these sums to settle the John Doe 2 Lawsuit.

56.     As the amount of the settlement demand was in excess of the NS 1983 Policy, BSA and CAC tendered the remainder of the demand to INA and demanded that it fund it.

57.    INA, however, refused to fund in full the remaining settlement demand, instead only funded a portion of the settlement it deemed appropriate.

58.    BSA and CAC, therefore, paid the remainder of the settlement amount that INA improperly refused to pay, thereby settling in full its dispute with John Doe 2, and such amount is due and owing from INA.

**(iv)    BSA's and CAC's Coverage Dispute with National Surety Regarding the John Doe 3 Lawsuit.**

59.    National Surety issued Blanket Excess Liability Policy No. XLX1484392 to Plaintiffs for the policy period January 1, 1984 to January 1, 1985 (the "NS 1984 Policy").

60.    The NS 1984 Policy provides that National Surety "shall indemnify [BSA and CAC] for [BSA and CAC]'s 'ultimate net loss' in excess of [BSA and CAC]'s underlying insurance policies."

61.    The NS 1984 Policy defines "ultimate net loss" as "all sums actually paid, or which [BSA and CAC] are legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by the [NS 1984 Policy]." The NS 1984 Policy was excess to INA Policy No. XCP 145365 (the "INA 1984 Policy").

62.    Because the alleged dates of abuse in the complaint trigger coverage under the NS 1984 Policy and the INA 1984 Policy, BSA and CAC provided timely notice to National Surety and INA of the John Doe 3 Lawsuit.

63.    On January 18, 2018, BSA and CAC received a time-sensitive demand from John Doe 3 that would fully and finally resolve the John Doe 3 Lawsuit.  BSA and CAC tendered this demand to National Surety and demanded that, after INA funded its remaining limits under the INA 1984 Policy, it fund the remainder of the settlement.  National Surety, however, refused to fund the settlement demand prior to the April 2, 2018 deadline.

**PLAINTIFFS' ORIGINAL PETITION**                                                    **Page 11**

64.     On July 23, 2018, BSA and CAC received another demand from John Doe 3 that would fully and finally resolve the John Doe 3 Lawsuit.  The settlement demand received from John Doe 3 in July of 2018 had increased from John Doe 3's previous January 18, 2018 settlement demand.  BSA and CAC again tendered this demand to INA and National Surety and demanded INA and National Surety fund the settlement.

65.     On August 2, 2018, INA agreed to tender its remaining limits under the INA 1984 Policy to contribute its portion of the John Doe 3 settlement.  National Surety, however, refused to satisfy its coverage obligations and denied it had an obligation to fund the remainder of the John Doe 3 settlement.

66.     Faced with this denial, BSA and CAC obligated themselves to pay that remainder of the John Doe 3 settlement demand.  As the payment of the settlement demand is a sum that BSA and CAC are "legally obligated to pay," National Surety is obligated to indemnify BSA and CAC for these sums to settle the John Doe 3 Lawsuit.

**(v)     BSA's and AC's Coverage Dispute with Allianz Regarding the Roe 90 Lawsuit.**

67.     Allianz issued Umbrella Liability Policy No. UMB 599346 to BSA and AC for the time period January 1, 1980 to January 1, 1981 (the "Allianz Policy").

68.     Because Roe 90 alleged physical abuse during the Allianz Policy period, BSA and AC provided timely notice of the Roe 90 Lawsuit to Allianz.

69.     In September 2017, BSA and AC received an offer to fully and finally settle the Roe 90 Lawsuit.  Plaintiffs' primary insurer, INA, tendered its limits under its general liability policy to effectuate a settlement.  And while the remainder of the settlement was well within the Allianz Policy's limits of liability, Allianz refused to fund in full the remainder of the proposed settlement amount.

70.     On January 18, 2018, BSA and AC again received a settlement demand from Roe 90 that would fully and finally settle the Roe 90 Lawsuit.  Again, BSA and AC tendered the settlement demand to Allianz, but Allianz refused to fund in full the settlement demand, instead only funding a portion of the settlement it deemed appropriate.

71.     BSA and AC, therefore, paid the remainder of the settlement amount that Allianz improperly refused to pay, thereby settling in full its dispute with Roe 90 and such amount is due and owing from Allianz.

## V.     CAUSES OF ACTION

### COUNT ONE
### Declaratory Judgment (Against INA)

72.     The foregoing allegations are incorporated herein by reference.

73.     Plaintiffs bring this action pursuant to TEX. CIV. PRAC. & REM. CODE §37.004.

74.     Plaintiffs seek a declaration that the (1) the FEA bars INA and Century Indemnity from allocating liability for the Underlying Lawsuits to insurance policies for each year of abuse; and (2) the terms and conditions of the FEA do not apply to other policies which are not subject to the FEA.

75.     An actual and justiciable controversy exists between Plaintiffs, INA and Century Indemnity regarding the rights and obligations of Plaintiffs, INA and Century Indemnity and each parties' obligations under the FEA, and a judicial declaration is necessary to determine Plaintiffs', INA's and Century Indemnity's obligations under the FEA.

### COUNT TWO
### Breach of Contract (Against INA)

76.     The foregoing allegations are incorporated herein by reference.

77.     The INA Policies are each valid and enforceable contracts.

78.     Plaintiffs have standing to pursue claims under the INA Policies.

79.     Plaintiffs have satisfied all conditions precedent under the INA Policies.

80.     The Underlying Lawsuits allege bodily injury/personal injury occurring in whole or in part during the policy period of the INA Policies.

81.     The terms of the INA Policies unambiguously require INA to defend or reimburse Plaintiffs for any defense costs incurred in connection with the Underlying Lawsuits.

82.     Alternatively, the terms of the INA Policies are ambiguous and must be construed in favor of coverage for Plaintiffs.

83.     INA has breached its contractual obligations under the INA Policies by, among other things, refusing and failing to defend and/or delaying payment and/or refusing to fully pay Plaintiffs' defense costs in connection with the Underlying Lawsuits in accordance with the express terms of the INA Policies.

84.     As a result of INA's breach, Plaintiffs have sustained substantial damages.

## COUNT THREE
### Breach of Contract (Against National Surety and INA)

85.     The foregoing allegations are incorporated herein by reference.

86.     The NS 1983 Policy and the INA 1983 Policy are each valid and enforceable contracts.

87.     BSA and CAC have standing to pursue claims under the NS 1983 Policy and the INA 1983 Policy.

88.     BSA and CAC have satisfied all conditions precedent under the NS 1983 Policy and the INA 1983 Policy.

89.     The John Doe 2 Lawsuit alleges bodily injury/personal injury occurring in whole or in part during the policy periods of the NS 1983 Policy and the INA 1983 Policy.

**PLAINTIFFS' ORIGINAL PETITION**                                    **Page 14**

90.     The terms of the NS 1983 Policy and INA 1983 Policy unambiguously require National Surety and INA to indemnify BSA and CAC in the John Doe 2 Lawsuit.

91.     Alternatively, the terms of the NS 1983 Policy and INA 1983 Policy are ambiguous and must be construed in favor of coverage for BSA and CAC.

92.     National Surety and INA have breached their contractual obligations under the their respective policies by, among other things, refusing and failing to indemnify BSA and CAC in the John Doe 2 Lawsuit in accordance with the express terms of the NS 1983 Policy and INA 1983 Policy.

93.     As a result of National Surety's and INA's breach, BSA and CAC have sustained substantial damages.

## COUNT FOUR
## Breach of Contract (Against National Surety)

94.     The foregoing allegations are incorporated herein by reference.

95.     The NS 1984 Policy is a valid and enforceable contract.

96.     BSA and CAC have standing to pursue claims under the NS 1984 Policy.

97.     BSA and CAC have satisfied all conditions precedent under the NS 1984 Policy.

98.     The John Doe 3 Lawsuit alleges bodily injury/personal injury occurring in whole or in part during the policy periods of the NS 1984 Policy.

99.     The terms of the NS 1984 Policy unambiguously require National Surety to indemnify BSA and CAC in the John Doe 3 Lawsuit.

100.    Alternatively, the terms of the NS 1984 Policy are ambiguous and must be construed in favor of coverage for BSA and CAC.

101.    National Surety has breached its contractual obligations under the NS 1984 Policy by, among other things, refusing and failing to indemnify BSA and CAC in the John Doe 3 Lawsuit in accordance with the express terms of the NS 1984 Policy.

102.    As a result of National Surety's breach, BSA and CAC have sustained substantial damages.

## COUNT FIVE
## Breach of Contract (Against Allianz)

103.    The foregoing allegations are incorporated herein by reference.

104.    The Allianz Policy is a valid and enforceable contract.

105.    BSA and AC have standing to pursue claims under the Allianz Policy.

106.    BSA and AC have satisfied all conditions precedent under the Allianz Policy.

107.    The Roe 90 Lawsuit alleges bodily injury/personal injury occurring in whole or in part during the policy period of the Allianz Policy.

108.    The terms of the Allianz Policy unambiguously require Allianz to indemnify BSA and AC in the Roe 90 Lawsuit.

109.    Alternatively, the terms of the Allianz Policy are ambiguous and must be construed in favor of coverage for BSA and AC.

110.    Allianz has breached its contractual obligations under the Allianz Policy by, among other things, refusing and failing to indemnify BSA and AC in accordance with the express terms of the Allianz Policy.

111.    As a result of Allianz's breach, BSA and AC have sustained substantial damages.

## COUNT SIX
## Violations of Chapter 542 of the
## TEXAS INSURANCE CODE (Against INA)

112.    The foregoing allegations are incorporated herein by reference.

**SA 0509**

113.     Plaintiffs' claim for coverage includes a first-party claim.

114.     INA's delays and/or denials of coverage violate the Prompt Payment of Claims statute in Chapter 542 of the Texas Insurance Code.

115.     Chapter 542 provides that "if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim,. . . the insurer shall pay damages and other items as provided by Section 542.060." TEX. INS. CODE § 542.058.

116.     INA has received all items, statements and forms reasonably requested and required under Section 542.055 or, alternatively, in light of INA's denial of coverage, Plaintiffs were not required to submit such items, statements and forms.

117.     INA has nonetheless refused to pay and/or delayed payment of amounts that are clearly covered under the INA Policies.

118.     In refusing, failing and/or delaying payment of Plaintiffs' defense costs in connection with the Underlying Lawsuits, INA has violated Chapter 542 of the Texas Insurance Code.

119.     As a consequence of its statutory violation, INA is liable to pay Plaintiffs, in addition to the amount of its insurance claim, interest on the amount of its claim at the rate of 18 percent per annum, together with reasonable attorneys' fees. *See* TEX. INS. CODE Sec. 542.060.

## COUNT SEVEN
### Attorneys' Fees (All Defendants)

120.     The foregoing allegations are incorporated herein by reference.

121.     Due to the actions of the Defendants, Plaintiffs have been required to retain the services of the law firm of Haynes and Boone, LLP of Dallas, Texas. Plaintiffs have agreed to pay

Haynes and Boone, LLP a reasonable fee for its services necessarily rendered and to be rendered in this action.

122.    Pursuant to § 37.009 of the Texas Civil Practices & Remedies Code, Plaintiffs are entitled to an award of reasonable and necessary attorneys' fees against the Defendants in an amount to be established at trial.  Pursuant to § 38.001 of the Texas Civil Practices & Remedies Code and Chapter 541 of the Texas Insurance Code, Plaintiffs are also entitled to an award of reasonable attorneys' fees against National Surety, Allianz and INA.  Plaintiffs are likewise entitled to an award of reasonable attorneys' fees under Chapter 542 of the Texas Insurance Code against INA.

<u>**NOTICE OF INTENT TO PURSUE CLAIM UNDER**</u>
<u>**CHAPTER 541 OF THE TEXAS INSURANCE CODE**</u>
<u>**(Against National Surety )**</u>

123.    The foregoing allegations are incorporated herein by reference.

124.    Pursuant to § 541.154 of the Texas Insurance Code, BSA and CAC hereby provide notice of their intent to pursue a claim against National Surety under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

125.    By, among other things, taking the actions outlined in ¶¶ 53-56, 63-66, National Surety has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

126.    National Surety has violated Section 541.060(1) of the Texas Insurance Cody by misrepresenting to BSA and CAC a material fact or policy provision relating to coverage.

127.    National Surety has violated Section 541.060(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the John

**SA 0511**

Doe 2 Lawsuit and John Doe 3 Lawsuit with respect to which BSA's and CAC's liability had become reasonably clear.

128.     National Surety has violated Section 541.060(7) of the Texas Insurance Code by refusing to pay claims associated with the John Doe 2 Lawsuit and John Doe 3 Lawsuit without conducting a reasonable investigation with respect to those claims.

129.     As a result of National Surety's conduct, BSA and CAC have suffered substantial damages. The amounts of these damages are confidential, but BSA and CAC will provide the amount of damages and expenses, including attorney's fees reasonably incurred to National Surety, separately outside this petition.

130.     National Surety knowingly committed one or more of the violations referenced above, and thus BSA and CAC seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

## NOTICE OF INTENT TO PURSUE CLAIM UNDER CHAPTER 541 OF THE TEXAS INSURANCE CODE
### (Against Allianz )

131.     The foregoing allegations are incorporated herein by reference.

132.     Pursuant to § 541.154 of the Texas Insurance Code, BSA and AC hereby provide notice of their intent to pursue a claim against Allianz under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

133.     By, among other things, taking the actions outlined in ¶¶ 69-71, Allianz has engaged in unfair or deceptive acts or practices as defined by Section 541.060(1) of the Texas Insurance Code.

134.    Allianz has violated Section 541.060(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Roe Lawsuit with respect to which BSA's and AC's liability had become reasonably clear.

135.    Allianz has violated Section 541.060(7) of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

136.    As a result of Allianz's conduct, BSA and AC have suffered substantial damages. The amounts of these damages are confidential, but BSA and AC will provide the amount of damages and expenses, including attorney's fees reasonably incurred to Allianz, separately outside this petition.

137.    Allianz knowingly committed one or more of the violations referenced above, and thus BSA and AC seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

## NOTICE OF INTENT TO PURSUE CLAIM UNDER CHAPTER 541 OF THE TEXAS INSURANCE CODE
### (Against INA)

138.    The foregoing allegations are incorporated herein by reference.

139.    Pursuant to § 541.154 of the Texas Insurance Code, BSA and CAC hereby provide notice of their intent to pursue a claim against INA under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

140.    By, among other things, taking the actions outlined in ¶¶ 47-48, 56-58, INA has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

141.    INA has violated Section 541.060(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect

PLAINTIFFS' ORIGINAL PETITION                                    Page 20

to which the insurer's liability has become reasonably clear, including refusing to pay the settlement of the John Doe 2 Lawsuit and refusing/delaying defense payments.

142.    As a result of INA's conduct, BSA and CAC have suffered substantial damages. The amounts of these damages are confidential, but BSA and CAC will provide the amount of damages and expenses, including attorney's fees reasonably incurred to INA, separately outside this petition.

143.    INA knowingly committed one or more of the violations referenced above and thus BSA and CAC seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

## VI.    JURY DEMAND

144.    Plaintiffs hereby request a jury trial pursuant to Tex. R. Civ. P. 216(a).

## VII.    PRAYER

WHEREFORE, Plaintiffs respectfully pray that this Court grant them the following relief:

a.    Declaratory Judgment that the FEA bars INA and Century Indemnity from allocating liability for the Underlying Lawsuits to insurance policies for each year of abuse; and (2) the terms and conditions of the FEA do not apply to other policies which are not subject to the FEA;

b.    Judgment awarding BSA and CAC all damages sustained as a result of National Surety's breach of contract;

c.    Judgment awarding BSA and CAC all damages sustained as a result of INA's breach of contract;

d.    Judgment awarding BSA and AC all damages sustained as a result of Allianz's breach of contract;

e.    Judgment awarding BSA and CAC actual and treble damages resulting from National Surety's violations of Chapter 541 of the Texas Insurance Code;

f.    Judgment awarding BSA and AC actual and treble damages resulting from Allianz's violations of Chapter 541 of the Texas Insurance Code;

SA 0514

g.    Judgment awarding BSA and CAC actual and treble damages resulting from INA's violations of Chapters 541 and/or 542 of the Texas Insurance Code;

h.    Judgment awarding Plaintiffs all reasonable and necessary attorneys' fees and expenses incurred in this matter against all defendants under Chapter 37 of the Texas Civil Practice & Remedies, Chapter 38 of the Texas Civil Practice & Remedies Code, Chapter 542, and/or Chapters 541 of the Texas Insurance Code;

i.    Judgment awarding Plaintiffs pre-judgment and post-judgment interest as allowed by law;

j.    Judgment awarding Plaintiffs all costs of court; and

k.    Any and all other relief to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ *Ernest Martin, Jr.*
Ernest Martin, Jr.
State Bar No. 13063300
ernest.martin@haynesboone.com
Adrian Azer
State Bar No. 24048332
adrian.azer@haynesboone.com
Carla Green
State Bar No. 24097762
carla.green@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:      (214) 651-5000
Telecopier:     (214) 651-5940

ATTORNEYS FOR PLAINTIFFS

SA 0515

FILED
DALLAS COUNTY
6/5/2018 3:51 PM
FELICIA PITRE
DISTRICT CLERK

Marissa Pittman

CAUSE NO. _DC-18-07313_

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, | § | IN THE DISTRICT COURT OF |
| CONNECTICUT YANKEE COUNCIL, | § | |
| SPIRIT OF ADVENTURE COUNCIL, | § | |
| ALOHA COUNCIL, CASCADE PACIFIC | § | |
| COUNCIL | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | |
| VS. | § | DALLAS COUNTY, TEXAS |
| | § | |
| THE HARTFORD ACCIDENT | § | |
| AND INDEMNITY CO., FIRST | § | |
| STATE INSURANCE CO. | § | |
| | § | |
| DEFENDANTS | § | 95TH_ JUDICIAL DISTRICT |

## <u>PLAINTIFFS' ORIGINAL PETITION</u>

Plaintiffs Boy Scouts of America, Connecticut Yankee Council, Spirit of Adventure Council, Aloha Council, and Cascade Pacific Council (collectively, "BSA" or "Plaintiffs") hereby file this Original Petition against Defendants The Hartford Accident and Indemnity Company and First State Insurance Co. (collectively, "Hartford" or "Defendants") and would respectfully show the Court as follows:

### I.     DISCOVERY CONTROL PLAN

1.     Discovery in this matter is intended to be conducted under Level 2, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

### II.     PARTIES

2.     Plaintiff BSA is a congressionally chartered organization authorized to do business in Texas, and has its headquarters at 1325 Walnut Hill Lane, Irving, Texas 75015.

JTX-181

3.     Plaintiff Connecticut Yankee Council is a non-profit corporation organized under the laws of the State of Connecticut, and has its headquarters at 60 Wellington Road, Milford, Connecticut 06460.

4.     Plaintiff Spirit of Adventure Council is a non-profit corporation organized under the laws of the State of Massachusetts, and has its headquarters at 600 W. Cummings Park, Suite 275, Woburn, Massachusetts 01801.

5.     Plaintiff Aloha Council is a non-profit corporation organized under the laws of the State of Hawaii, and has its headquarters at 42 Puiwa Road, Honolulu, Hawaii 96817.

6.     Plaintiff Cascade Pacific Council is a non-profit corporation organized under the laws of the State of Oregon, and has its headquarters at 2145 SW Natio Pkwy, Portland, Oregon 97201.

7.     Defendant The Hartford Accident and Indemnity Company is a corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut. Defendant Hartford Accident and Indemnity Company may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

8.     Defendant First State Insurance Company is a corporation organized under the laws of the State of Delaware with its principal place of business in Massachusetts. Defendant First State Insurance Company may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

### III.     JURISDICTION & VENUE

9.     The foregoing allegations are incorporated herein by reference.

10.     This Court has jurisdiction over this matter because the amount in controversy, exclusive of interest and costs, is within the jurisdictional limits of the Court.

**PLAINTIFFS' ORIGINAL PETITION**                                                                  Page 2

**SA 0517**

11.     Plaintiff seeks monetary relief over $1,000,000.

12.     Venue is proper in Dallas County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claims occurred in Dallas County at the time the cause of actions accrued.

## IV.     BACKGROUND FACTS

### A.     BSA and its Insurance Coverage Program

13.     The Boy Scouts of America is one of the nation's largest and most prominent values-based youth development organizations, with more than 2.4 million youth participants and nearly one million adult volunteers.  BSA was founded in 1910, and since then, more than 110 million Americans have been participants in BSA programs at some time.

14.     BSA operates traditional scouting by chartering local organizations, such as churches, clubs, civic associations, or educational organizations, to implement the scouting program for youth within their communities.  Units are led entirely by volunteers appointed by the chartering organization, who are supported by local councils.

15.     To insure its many activities and local councils throughout the country, BSA maintains a comprehensive, broad insurance program.  From approximately 1970 to 1988, BSA purchased several general liability and umbrella and/or excess liability insurance policies from Hartford.

### B.     The Underlying Lawsuits

16.     Over the past several years, BSA has been subject to numerous claims and lawsuits in which the plaintiffs allege they had been sexually abused while a participant in various BSA programs (the "Underlying Lawsuits").

17.     The Underlying Lawsuits allege abuse during various and multiple periods of time and in various and multiple geographic locations.

18.     The Underlying Lawsuits generally allege personal injury due to sexual abuse and allege, *inter alia*, that BSA and BSA local councils were negligent in failing to prevent the sexual abuse.

19.     The Underlying Lawsuits contain allegations that plaintiffs suffered and continue to suffer from bodily injury, including but not limited to severe and debilitating physical, mental and emotional injury, pain and suffering, physical and emotional trauma, and present psychological damage.

**C.     BSA's Coverage Dispute with Hartford Regarding the Underlying Lawsuits**

20.     Hartford issued several general liability and umbrella and/or excess liability insurance policies to BSA in the schedule attached hereto as <u>Exhibit A</u> (collectively, the "Hartford Policies").

21.     The Hartford primary insurance policies provide that Hartford will pay "all sums that BSA is obligated to pay as damages because of personal injury [which includes bodily injury] to which the insurance applies, caused by an occurrence."

22.     The Hartford primary insurance policies also provide that Hartford has a duty to defend BSA in any suit alleging personal injury, and any defense costs incurred do not reduce the limits of liability under the Hartford primary insurance policies.

23.     The Harford excess policies similarly provide that Hartford will indemnify BSA for all sums which BSA shall become legally obligated to pay as damages and expenses by reason of liability because of personal injury (which includes bodily injury) caused by an occurrence which takes place during the policy period anywhere in the world.

24.     The Hartford excess policies also provide that Hartford has an obligation to reimburse BSA for any defense costs in connection with any suit alleging personal injury.

25.     Several of the Underlying Lawsuits implicate coverage for years that Hartford issued insurance coverage.

26.     BSA timely provided Hartford with notice of each of the Underlying Lawsuits that implicated a Hartford Policy.

27.     Hartford has nevertheless refused and continues to refuse to satisfy its coverage obligations, including by denying coverage for both defense costs and indemnity payments associated with certain of the Underlying Lawsuits.  Hartford has asserted several coverage positions to BSA to deny that it owes an obligation to pay defense and indemnity payments for the Underlying Lawsuits.

28.     First, Hartford has taken the position that all the claims for sexual abuse alleged in the multitude of Underlying Lawsuits throughout the country involving various victims are the result of a single occurrence.  Hartford asserts the injuries alleged in the Underlying Lawsuits were caused by BSA's failure to warn parents and guardians that Scouts might be abused.  Based on this one "occurrence" theory, Hartford contends that once a policy's per-occurrence limits are exhausted by any claim, it has no further responsibility under those policies for claims relating to sexual abuse.  Hartford has taken this position despite the fact that it is contrary to its policy language and well-settled law.

29.     Second, despite issuing certain policies of insurance to BSA and despite Hartford having produced to BSA copies of said policies, Hartford has also taken the position that certain policies have no force and effect, and do not exist. The policies, however, contain declarations

pages showing policy periods and limits of insurance, as well as policy jackets showing the policy terms, conditions, and exclusions.

30.     Third, several of the Hartford Policies either do not contain aggregate limits of liability or contain aggregate limits of liability that are applicable *only* to products completed operations liability or occupational diseases of employees of BSA.   Harford nevertheless contends these policies that include only aggregate limits for products completed operations or occupational disease claims also contain aggregate limits for sexual abuse claims.  Despite the plain language of the policies, Hartford has taken the position that several of the policies with no aggregate limits are exhausted.

31.     Fourth, BSA renewed several of the Hartford Policies[1]  so that the policies covered two, separate years.  Despite the payment of substantial premiums for those renewals, Hartford has taken the position that only a single per occurrence limit of liability is available to BSA for the two-year period.

32.     Due to Hartford's failure to pay amounts owed under the Hartford Policies, BSA has incurred and will continue to incur defense costs to defend itself in the Underlying Lawsuits, and BSA has made and will continue to make indemnity payments to settle the Underlying Lawsuits, all while Hartford is obligated to provide coverage under its policies.

## V.     CAUSES OF ACTION

### COUNT ONE
### Declaratory Judgment

33.     The foregoing allegations are incorporated herein by reference.

---

[1]  Hartford primary policy, No. 10-CA-43303, policy period January 1, 1972 – January 1, 1973 was renewed to extend through January 1, 1974; Hartford primary policy, No. 10-CA-43304, policy period January 1, 1972 – January 1, 1973 was renewed to extend through January 1, 1974; Hartford primary policy, No. 10-CA-43324, policy period January 1, 1974 – January 1, 1975 was renewed to extend through January 1, 1976; Hartford excess policy, No. 10-HUA-43302, policy period January 1, 1972 – January 1, 1973 was renewed to extend through January 1, 1974.

34.     BSA brings this action pursuant to TEX. CIV. PRAC. & REM. CODE §37.004.

35.     BSA seeks a declaration that each sexual abuse claim against BSA constitutes an "occurrence" under the Hartford Policies.

36.     BSA seeks a declaration that each of the Hartford Policies are in full force and effect.

37.     BSA seeks a declaration that BSA's renewal of certain Hartford Policies entitles it to separate per-occurrence limits of liability for each year covered by the relevant Hartford Policy.

38.     BSA seeks a declaration that the Hartford Policies that do not contain an aggregate limit or aggregate limits applicable only to products completed operations liability or occupational disease are not and cannot be exhausted due to the payment of loss arising from claims alleging personal injury.

39.     BSA seeks a declaration that, pursuant to the terms of the Hartford Policies, Hartford is obligated to pay and/or reimburse BSA for any ongoing defense costs incurred on those Underlying Lawsuits that are pending.

40.     An actual and justiciable controversy exists between BSA and Hartford regarding the rights and obligations of BSA and Hartford and Hartford's obligations under the Hartford Policies, and a judicial declaration is necessary to determine BSA's rights and Hartford's duties under the Hartford Policies.

## COUNT TWO
## Breach of Contract

41.     The foregoing allegations are incorporated herein by reference.

42.     The Hartford Policies are valid and enforceable contracts.

43.     BSA has standing to pursue claims under the Hartford Policies.

44.    BSA has satisfied all conditions precedent under the Hartford Policies.

45.    The Underlying Lawsuits allege bodily injury/personal injury occurring in whole or in part during the periods of the Hartford Policies.

46.    The terms of the Hartford Policies unambiguously require Hartford to defend and indemnify BSA in the Underlying Lawsuits.

47.    Alternatively, the terms of the Hartford Policies are ambiguous and must be construed in favor of coverage for BSA.

48.    Hartford has breached its contractual obligations under the Hartford Policies by, among other things, refusing and failing to: (a) defend BSA and/or reimburse BSA for defense costs it has incurred defending itself against the Underlying Lawsuits; and (b) indemnify BSA for those settlement payments it has incurred for the Underlying Lawsuits in accordance with the express terms of the Hartford Policies.

49.    As a result of Hartford's breach, BSA has sustained substantial damages.

**COUNT THREE**
**Violations of Chapter 542 of the TEXAS INSURANCE CODE**

50.    The foregoing allegations are incorporated herein by reference.

51.    BSA's claim for coverage includes a first-party claim.

52.    Hartford's delays and/or denials of coverage violate the Prompt Payment of Claims statute in Chapter 542 of the Texas Insurance Code.

53.    Chapter 542 provides that "if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim,. . . the insurer shall pay damages and other items as provided by Section 542.060." TEX. INS. CODE § 542.058.

54.     Hartford has received all items, statements and forms reasonably requested and required under Section 542.055 or, alternatively, in light of Hartford's denial of coverage, BSA was not required to submit such items, statements and forms.

55.     Hartford has nonetheless refused to pay amounts that are clearly covered under the Hartford Policies.

56.     In refusing, failing and delaying payment of BSA's defense costs in connection with the Underlying Lawsuits, Hartford has violated Chapter 542 of the Texas Insurance Code.

57.     As a consequence of its statutory violation, Hartford is liable to pay BSA, in addition to the amount of its insurance claim, interest on the amount of its claim at the rate of 18 percent per annum, together with reasonable attorneys' fees.   *See* TEX. INS. CODE Sec. 542.060.

## COUNT FOUR
### Attorneys' Fees

58.     The foregoing allegations are incorporated herein by reference.

59.     Due to the actions of the Hartford, BSA has been required to retain the services of the law firm of Haynes and Boone, LLP of Dallas, Texas. BSA has agreed to pay Haynes and Boone, LLP a reasonable fee for its services necessarily rendered and to be rendered in this action.

60.     Pursuant to §§ 37.009 and 38.001 of the Texas Civil Practices & Remedies Code and Chapters 541 and 542 of the Texas Insurance Code, BSA is entitled to an award of reasonable attorneys' fees against Hartford in an amount to be established at trial.

## NOTICE OF INTENT TO PURSUE CLAIM UNDER
## CHAPTER 541 OF THE TEXAS INSURANCE CODE

61.     The foregoing allegations are incorporated herein by reference.

**PLAINTIFFS' ORIGINAL PETITION**                                        **Page 9**

62.     Pursuant to § 541.154 of the Texas Insurance Code, BSA hereby provides notice of its intent to pursue a claim against Hartford under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

63.     By, among other things, taking positions as outlined in ¶¶ 29-31, Hartford has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.  Hartford has violated Section 541.061 of the Texas Insurance Code by making misrepresentations of the insurance policy through one or more of the following acts: (1) making untrue statements of material fact, (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made, (3) making a statement in a manner that would mislead a reasonably prudent person to the false conclusion of material fact, and (4) making a material misstatement of law.

64.     By, among other things, taking positions as outlined in ¶¶ 29-31, Hartford has violated Section 541.060(1) of the Texas Insurance Code by misrepresenting a material fact or policy provision relating to coverage at issue.

65.     Hartford has violated Section 541.060(2) of the Texas Insurance Code by refusing coverage for the Underlying Lawsuits when its liability was reasonably clear.

66.     Hartford has violated Section 541.060(3) of the Texas Insurance Code by denying coverage for the Underlying Lawsuits without providing any factual or legal basis for such an assertion.

67.     Hartford has violated Section 541.060(7) of the Texas Insurance Code by refusing coverage for the Underlying Lawsuits without conducting a reasonable investigation with respect to the Underlying Lawsuits.

68.     As a result of Hartford's conduct, BSA has suffered substantial damages in an amount not less than $13.5 million, as well as attorneys' fees in an amount not less than $100,000.

69.     Hartford knowingly committed one or more of the violations referenced above and thus BSA seeks, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

## VI.     JURY DEMAND

70.     BSA hereby requests a jury trial pursuant to Tex. R. Civ. P. 216(a).

## VII.     PRAYER

WHEREFORE, BSA respectfully prays that this Court grant it the following relief:

a.     Declaratory Judgment that each sexual abuse claim against BSA constitutes an "occurrence" under the Hartford Policies;

b.     Declaratory Judgment that each of the Hartford Policies are in full force and effect;

c.     Declaratory Judgment that each Hartford Policy has a separate per-occurrence limit of liability available for each policy period;

d.     Declaratory Judgment that the Hartford Policies that do not contain an aggregate limit or aggregate limits applicable only to products completed operations liability or occupational disease are not and cannot be exhausted due to the payment of loss arising from claims alleging personal injury;

e.     Declaratory Judgment that Hartford is obligated to pay and/or reimburse BSA for any defense costs incurred on those Underlying Lawsuits that are ongoing pursuant to the terms of the Hartford Policies;

f.     Judgment awarding BSA all damages sustained as a result of Hartford's breach of contract;

g.     Judgment awarding BSA actual and treble damages resulting from Hartford's violations of Chapters 541 and/or 542 of the Texas Insurance Code;

h.     Judgment awarding BSA all reasonable and necessary attorneys' fees and expenses incurred in this matter against Hartford under Chapter 37 of the Texas

Civil Practice & Remedies, Chapter 38 of the Texas Civil Practice & Remedies Code, Chapter 542, and/or Chapters 541 of the Texas Insurance Code;

i.      Judgment awarding BSA pre-judgment and post-judgment interest as allowed by law;

j.      Judgment awarding BSA all costs of court; and

k.      Any and all other relief to which BSA may be entitled.

Respectfully submitted,

/s/ *Ernest Martin, Jr.*_____
Ernest Martin, Jr.
State Bar No. 13063300
ernestmartin@haynesboone.com
Carla Green
State Bar No. 24097762
carlagreen@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:    (214) 651-5000
Telecopier:    (214) 651-5940

Adrian Azer*
*pro hac vice application pending*

ATTORNEYS FOR PLAINTIFFS BOY SCOUTS OF AMERICA, CONNECTICUT YANKEE COUNCIL, SPIRIT OF ADVENTURE COUNCIL, ALOHA COUNCIL, CASCADE PACIFIC COUNCIL

SA 0527

**Exhibit A**
**The Hartford Policies**

| Insurer | Policy No. | Effective Dates |
|---|---|---|
| **1971-72** | | |
| The Hartford Accident and Indemnity Co. | 10CA43315 (primary) | 09/01/1972 - 01/01/1972 |
| The Hartford Accident and Indemnity Co. | 10HUA43300 (excess) | 05/01/1971 - 05/01/1972 |
| **1972-73** | | |
| The Hartford Accident and Indemnity Co. | 10CA43303 (primary) | 01/01/1972 - 01/01/1973 (extended an additional year) |
| The Hartford Accident and Indemnity Co. | 10CA43304 (primary) | 01/01/1972 - 01/01/1973 (extended an additional year) |
| The Hartford Accident and Indemnity Co. | 10HUA43301 (excess) | 01/01/1972 - 01/01/1973 |
| The Hartford Accident and Indemnity Co. | 10HUA43302 (excess) | 01/01/1972 - 01/01/1973 (extended an additional year) |
| The Hartford Accident and Indemnity Co. | 10HUA43303 (excess) | 05/01/1972 - 05/01/1973 (extended an additional year) |
| **1973-74** | | |
| The Hartford Accident and Indemnity Co. | 10CA43303 (primary) | 01/01/1973 - 01/01/1974 |
| The Hartford Accident and Indemnity Co. | 10CA43304 (primary) | 01/01/1973 - 01/01/1974 |
| The Hartford Accident and Indemnity Co. | 10HUA43302 (excess) | 01/01/1973 - 01/01/1974 |
| The Hartford Accident and Indemnity Co. | 10HUA43303 (excess) | 05/01/1973 - 05/01/1974 |
| **1974-75** | | |
| The Hartford Accident and Indemnity Co. | 10CA43329 (primary) | 01/01/1974 - 01/01/1975 |
| The Hartford Accident and Indemnity Co. | 10CA43324 (primary) | 01/01/1974 - 01/01/1975 |
| The Hartford Accident and Indemnity Co. | 10HUA43331 (excess) | 01/01/1974 - 01/01/1975 |
| The Hartford Accident and Indemnity Co. | 10HUA43335 (excess) | 05/01/1974 - 05/01/1975 |
| **1975-76** | | |
| The Hartford Accident and Indemnity Co. | 10CA43342E (primary) | 01/01/1975 - 01/01/1976 |
| **1978-79** | | |
| First State Insurance Co. | 908954 (excess) | 01/01/1978 – 01/01/1979 |
| **1979-80** | | |
| First State Insurance Co. | 927616 (excess) | 01/01/1979 – 01/01/1980 |

**CHASAN & WALTON, LLC**
ANDREW M. CHASAN, ISB #2100
E-mail: andrew.chasan@chasanwalton.com
TIMOTHY C. WALTON, ISB #2170
E-mail: timwalton2000@hotmail.com
P.O. Box 1069
Boise, Idaho 83701
Phone: 208-345-3760
Fax: 208-345-0288

**DUMAS LAW GROUP, LLC**
GILION C. DUMAS, ISB #8176
E-mail: gilion@dumaslawgroup.com
ASHLEY L. VAUGHN, admitted *pro hac vice*
E-mail: ashley@dumaslawgroup.com
516 SE Morrison St., Suite 309
Portland, OR 97214
Phone:  503-952-6789

                    *Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOES I-XIX, and ████████ | Case No. 1:13-cv-00275-BLW |
| Plaintiffs, | |
| v. | **THIRD AMENDED COMPLAINT** |
| BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to do business in Idaho, | |
| Defendants. | |

**JTX-2912**

Page 1    **THIRD AMENDED COMPLAINT**

Pursuant to Fed. R. of Civ. Proc. 15(a), Plaintiffs hereby amend their Complaint and allege:

**IDENTITY OF THE PARTIES**

1.

Plaintiffs JOHN DOES I-XIX's true names are not stated in this Complaint in order to protect them from further emotional harm because this Complaint makes allegations involving child sexual abuse.  Their true names will be provided to the Court as may be required by law.

2.

Plaintiff JOHN DOE I is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE I was a resident of Idaho.  Plaintiff JOHN DOE I is now a resident of Washington.

3.

Plaintiff JOHN DOE II is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE II was a resident of Idaho.  Plaintiff JOHN DOE II is now a resident of Idaho.

4.

Plaintiff JOHN DOE III is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this

Highly Confidential

BSA-PLAN_01096648

**SA 0530**

Complaint, Plaintiff JOHN DOE III was a resident of Idaho.  Plaintiff JOHN DOE III is now a resident of Idaho.

<div align="center">5.</div>

Plaintiff JOHN DOE IV is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BOY SCOUTS OF AMERICA's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE IV was a resident of Idaho.  Plaintiff JOHN DOE IV is now a resident of Washington.

<div align="center">6.</div>

Plaintiff JOHN DOE V is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE V was a resident of Idaho.  Plaintiff JOHN DOE V is now a resident of Arizona.

<div align="center">7.</div>

Plaintiff JOHN DOE VI is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE VI was a resident of Idaho.  Plaintiff JOHN DOE VI is now a resident of Idaho.

/ / /

/ / /

Page 3     **THIRD AMENDED COMPLAINT**

BSA-PLAN_01096649

SA 0531

8.

Plaintiff JOHN DOE VII is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BOY SCOUTS OF AMERICA's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE VII was a resident of Idaho.  Plaintiff JOHN DOE VII is now a resident of Idaho.

9.

Plaintiff JOHN DOE VIII is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE VIII was a resident of Idaho.  Plaintiff JOHN DOE VIII is now a resident of Hawaii.

10.

Plaintiff JOHN DOE IX is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BOY SCOUTS OF AMERICA's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE IX was a resident of Idaho.  Plaintiff JOHN DOE IX is now a resident of Idaho.

11.

Plaintiff JOHN DOE X is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BOY SCOUTS OF AMERICA's wrongful conduct.  At all times

Page 4     **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096650

SA 0532

relevant to this Complaint, Plaintiff JOHN DOE X was a resident of Idaho.  Plaintiff JOHN DOE X is now a resident of Idaho.

<div align="center">12.</div>

Plaintiff JOHN DOE XI is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BOY SCOUTS OF AMERICA's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE XI was a resident of Idaho.  Plaintiff JOHN DOE XI is now a resident of Idaho.

<div align="center">13.</div>

Plaintiff JOHN DOE XII is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE XII was a resident of Idaho.  Plaintiff JOHN DOE XII is now a resident of Idaho.

<div align="center">14.</div>

Plaintiff JOHN DOE XIII is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE XIII was a resident of Idaho.  Plaintiff JOHN DOE XIII is now a resident of South Dakota.

/ / /

/ / /

Page 5     **THIRD AMENDED COMPLAINT**

Highly Confidential

15.

Plaintiff JOHN DOE XIV is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BOY SCOUTS OF AMERICA's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE XIV was a resident of Idaho.  Plaintiff JOHN DOE XIV is now a resident of Idaho.

16.

Plaintiff JOHN DOE XV is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BOY SCOUTS OF AMERICA's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE XV was a resident of Idaho.  Plaintiff JOHN DOE XV is now a resident of Idaho.

17.

Plaintiff JOHN DOE XVI is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendants' wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE XVI was a resident of Idaho.  Plaintiff JOHN DOE XVI is now a resident of Idaho.

18.

Plaintiff JOHN DOE XVII is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendants' wrongful conduct.  At all times relevant to this Complaint,

Page 6      **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096652

SA 0534

Plaintiff JOHN DOE XVII was a resident of Idaho.  Plaintiff JOHN DOE XVII is now a resident of Florida.

19.

Plaintiff JOHN DOE XVIII is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BOY SCOUTS OF AMERICA's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE XVIII was a resident of Idaho.  Plaintiff JOHN DOE XVIII is now a resident of Idaho.

20.

Plaintiff JOHN DOE XIX is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE VIII was a resident of Idaho.  Plaintiff JOHN DOE VIII is now a resident of Idaho.

21.

Plaintiff ███████ is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BOY SCOUTS OF AMERICA's wrongful conduct.  At all times relevant to this Complaint, Plaintiff ███████ was a resident of Idaho.  Plaintiff ███████ is now a resident of Idaho.

///

///

Page 7    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096653

SA 0535

22.

At all times relevant to this Complaint, Defendant BOY SCOUTS OF AMERICA

("Defendant BSA") was a congressionally chartered foreign corporation incorporated and with

its principal place of business in Texas, and operating in Idaho.  At all times relevant to this

Complaint, Defendant BSA operated various outdoor, citizenship, service, and character

building training programs ("Scouting") for boys in Idaho, including Plaintiffs in this case.

23.

At all times relevant to this Complaint, Defendant CORPORATION OF THE PRESIDING

BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS was a foreign religious

corporation sole of the Church of Jesus Christ of Latter-day Saints ("LDS Church") incorporated

and with its principal place of business in Utah, and operating in Idaho.

24.

At all times relevant to this Complaint, Defendant CORPORATION OF THE PRESIDENT

OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS was a foreign

religious corporation of the LDS Church incorporated and with its principal place of business

in Utah, and operating in Idaho.  The Defendant CORPORATION OF THE PRESIDING BISHOP

and Defendant CORPORATION OF THE PRESIDENT will be referred to collectively throughout

this Complaint as "LDS Defendants." Defendant BSA and LDS Defendants will be referred to

collectively throughout this Complaint as "Defendants."

25.

The amount in controversy exceeds $75,000 for each Plaintiff, with the exact

amounts to be determined by a jury at trial.

Page 8      **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096654

SA 0536

26.

At all times relevant to this Complaint, Scouting was an integral part of the LDS Defendants' program for raising, teaching, and guiding boys and men within the LDS Church. Scouting was the official program for boys in the LDS Church, and many boys growing up in the LDS Church were required or strongly encouraged to join Scouting.  On information and belief, Scouting was an official part of the Aaronic Priesthood for young men under 21 in the LDS Church.  Men within the LDS Church were also either required or strongly encouraged to be Scout leaders as part of their religious growth and experience in the LDS Church.  Wards were the basic ecclesiastical unit of the LDS Church, and each ward was presided over by a Bishop. The Bishop had many tasks including, on information and belief, selecting and supervising Scout leaders within the LDS Church.  On information and belief, every ward was supposed to maintain a Scout troop.

27.

At all material times to this Complaint, BSA was a vertically-integrated organization. The national BSA organization was at the top of the structure.  BSA national established goals, standards, and rules for leaders at the lower levels to follow, and BSA national relied upon local employees and volunteers to implement its goals, standards, and rules.  The lower levels of BSA included sponsoring organizations, local councils, troop committees, and troops. Defendant BSA and LDS Defendants jointly agreed to control and operate Scout troops, such as those troops Plaintiffs were members of, in Idaho.  Troops operated at the lowest level of Scouting, and many Scout troops were "sponsored" by the LDS Defendants through individual wards in the LDS Church.  Defendant BSA and LDS Defendants jointly selected, approved,

Page 9      **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096655

SA 0537

and/or retained adult volunteers to lead Scout troops, in positions such as Assistant

Scoutmasters or Scoutmasters ("Scout leaders").  Defendant BSA possessed the right of final

approval of adult volunteers as Scout leaders, including adult volunteers that were also

members of the LDS Church.  In the course of operating Scout troops, Defendants also had

the right to control the physical details of Scout leaders' performance of their duties on behalf

of Defendants.  In performing these duties for Defendants, Scout leaders were acting in the

time and space limits of their agency with Defendants, were motivated at least in part by a

desire to serve Defendants, and these actions were of a type that they were required to do

on behalf of the Defendants.

### FACTS SPECIFIC TO JOHN DOE I

28.

Plaintiff JOHN DOE I realleges and incorporates by reference paragraphs 1-27.

29.

JOHN DOE I was born in 1973.

30.

At all times relevant to this Complaint, JOHN DOE I was a child involved in Scouting and

participated in a Scout troop that was sponsored by the LDS Defendants.  JOHN DOE I was under

the care, custody, protection, and/or responsibility of each Defendant during the time he was

involved in Scouting.

31.

When JOHN DOE I was approximately 9 years old, in or around the spring and summer

of 1982, JAMES SCHMIDT ("SCHMIDT"), a Scout leader, began sexually abusing him.  SCHMIDT'S

Page 10    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096656
**SA 0538**

sexual abuse of JOHN DOE I included sodomy and other acts of physical, sexual, and emotional abuse.  SCHMIDT also abused JOHN DOE I's cousin, a member of SCHMIDT's Scout troop.  Their abuse occurred during a time when JOHN DOE I's parents were briefly living in Alaska, and JOHN DOE I was living with his cousin's family.  SCHMIDT forced JOHN DOE I to watch SCHMIDT's sexual abuse of JOHN DOE I's cousin, and SCHMIDT forced JOHN DOE I and his cousin to perform sexual acts on each other while SCHMIDT watched.   This abuse occurred multiple times and lasted for approximately 6 months.  The abuse occurred on BSA camping trips, at a ward building owned and operated by LDS Defendants, and in the attic of Defendant BSA's Council Headquarters, located in Boise, Idaho.

32.

All Defendants had notice beginning in 1979 that SCHMIDT—abuser of Plaintiffs JOHN DOES I, II, V, VII, IX, X, XI, and XV, and ██████████ was a pedophile and was abusing Scouts. In 1983 SCHMIDT was arrested by Caldwell, Idaho police after the police interviewed 16 Scouts and their parents who documented an undisclosed number of cases in which SCHMIDT had sexually abused minors.  After the investigation, he was court-ordered to complete treatment for "severe pedophilia" at John Hopkins Hospital in Baltimore, Maryland.

**FACTS SPECIFIC TO JOHN DOE II**

33.

Plaintiff JOHN DOE II realleges and incorporates by reference paragraphs 1-32.

34.

JOHN DOE II was born in 1970.

/ / /

Page 11   **THIRD AMENDED COMPLAINT**

BSA-PLAN_01096657

SA 0539

35.

At all times relevant to this Complaint, JOHN DOE II was a child involved in Scouting, in the BSA Caldwell 5th Ward, that was sponsored by the LDS Defendants.  JOHN DOE II was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

36.

JOHN DOE II's Scout leader, SCHMIDT, began abusing him when he was 12 years old, in or around 1982. SCHMIDT's sexual abuse included fondling of JOHN DOE II's penis, testicles, and anus, and other physical, sexual, and emotional abuse.  This abuse continued for approximately 2 years, until JOHN DOE II was 14 years old.  The abuse occurred on BSA camping trips.

**FACTS SPECIFIC TO JOHN DOE III**

37.

Plaintiff JOHN DOE III realleges and incorporates by reference paragraphs 1-36.

38.

JOHN DOE III was born in 1967.

39.

At all times relevant to this Complaint, JOHN DOE III was a child involved in Scouting in a Scout troop sponsored by LDS Defendants.  JOHN DOE III was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

/ / /

Page 12    **THIRD AMENDED COMPLAINT**

Highly Confidential

40.

During the summer of 1981, when JOHN DOE III was approximately 14 years old, JOHN

DOE III's Scout troop went to Camp Morrison.  JOHN DOE III was sexually abused by DENNIS

EMPEY ("EMPEY") for a week at Camp Morrison, and the abuse occurred approximately 4 times.

The abuse included sexual fondling, and other types of physical, sexual, and emotional abuse.

41.

Defendant BSA placed EMPEY in its Ineligible Volunteer Files ("IV Files"), as described

in paragraph 72, for molesting Scouts in 1988.  Letters in EMPEY'S IV File document that one

of the victims—a member of the LDS Church—told his father in 1987 that Empey had

abused him in 1981 at an LDS Chapel in Idaho Falls.  No one from BSA reported this incident

to the police. In 1991, EMPEY was convicted for molesting children in Provo, Utah.  In 1991,

EMPEY moved back to Idaho and was hired by the Teton Council of BSA to do graphic design

work.  In association with another case in Idaho in 2005, a man filed an affidavit stating that

EMPEY had molested him in 1983 at the Island Park Scout Camp.

**FACTS SPECIFIC TO JOHN DOE IV**

42.

Plaintiff JOHN DOE IV realleges and incorporates by reference paragraphs 1-41.

43.

JOHN DOE IV was born in 1960.

44.

At all times relevant to this Complaint, JOHN DOE IV was a child involved in Scouting,

in Scout Troop 176 in Lewiston, Idaho, that met at the Orchards Baptist Church and, on

Page 13    **THIRD AMENDED COMPLAINT**

Highly Confidential

information and belief, was sponsored by the Elk Club. JOHN DOE IV was under the care,

custody, protection, and/or responsibility of Defendant BSA during the time he was involved

in Scouting.

45.

When JOHN DOE IV was approximately 12 years old in or around 1972, his

Scoutmaster LAWRENCE LIBEY ("LIBEY") began sexually abusing him. LIBEY'S sexual abuse of

JOHN DOE IV included fondling, oral sex, sodomy, forcing JOHN DOE IV to have sex with

another boy, and other acts of physical, sexual, and emotional abuse. This abuse occurred

hundreds of times and lasted for approximately 6 years.

### FACTS SPECIFIC TO JOHN DOE V

46.

Plaintiff JOHN DOE V realleges and incorporates by reference paragraphs 1-45.

47.

Plaintiff JOHN DOE V was born in 1966.

48.

At all times relevant to this Complaint, JOHN DOE V was a child involved in Scouting

and participated in the BSA Nampa 9th Ward Troop that was sponsored by the LDS

Defendant. JOHN DOE V was under the care, custody, protection and/or responsibility of

each Defendant during the time he was involved in Scouting.

49.

When JOHN DOE V was approximately 13 years old, in or around the spring and

summer of 1979 or 1980, he was abused by SCHMIDT. SCHMIDT took JOHN DOE V on several

Page 14    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096660

**SA 0542**

outings with SCHMIDT as the only adult.  At the end of one particular Scout outing SCHMIDT,

under the guise of giving him a "ride home," drove JOHN DOE V instead to SCHMIDT's house

in Nampa, Idaho.  SCHMIDT took JOHN DOE V to SCHMIDT's bedroom, had him lie with

SCHMIDT on SCHMIDT's bed.  SCHMIDT then grabbed JOHN DOE V's crotch.  JOHN DOE V

pushed SCHMIDT's hand away and told him to stop; but SCHMIDT persisted, and grabbed

JOHN DOE V's crotch at least several more times.  JOHN DOE V finally kneed SCHMIDT in the

groin and told him to take him home, which SCHMIDT finally did.

### FACTS SPECIFIC TO JOHN DOE VI

50.

Plaintiff JOHN DOE VI realleges and incorporates by reference paragraphs 1-49.

51.

Plaintiff JOHN DOE VI was born in 1966.

52.

At all times relevant to this Complaint, JOHN DOE VI was a child involved in Scouting

and participated in Scout Troup 33 that was sponsored by the Presbyterian Church.  JOHN

DOE VI was under the care, custody, protection, and/or responsibility of Defendant BSA

during all times relevant.

53.

When JOHN DOE VI was approximately 13 years old, during the summer of 1980,

JOHN DOE VI was attending Camp Morrison in McCall, Idaho, as part of his involvement with

the Order of the Arrow.  While at camp, JOHN DOE VI was sexually abused by LARREN

ARNOLD ("ARNOLD").  The abuse included sexual fondling and other types of physical, sexual,

Page 15    **THIRD AMENDED COMPLAINT**

Highly Confidential

and emotional abuse.  Within a day or two of the abuse, JOHN DOE VI reported it to his Assistant Scout Master who was also attending Camp Morrison as part of the Order of the Arrow activity.

Later in 1980, JOHN DOE VI attended an Order of the Arrow conference in Boise, Idaho, and stayed in the barracks at Gowan Field.   ARNOLD had JOHN DOE VI sleep in bed with him where ARNOLD fondled and then sodomized JOHN DOE VI and otherwise abused JOHN DOE VI including other types of physical, sexual, and emotional abuse.

In 1982, while approximately 14 years old and attending Camp Tapawingo, JOHN DOE VI was abused by EMPEY, who was the waterfront director.  EMPEY chose JOHN DOE VI to room in his cabin where he sexually fondled, then raped and sodomized JOHN DOE VI during his stay. The abuse suffered by John Doe VI included other types of physical, sexual, and emotional abuse.

Each Defendant had been advised as early as 1964 that ARNOLD was a pedophile abusing boys.  Defendant BSA placed ARNOLD in its Ineligible Volunteer files as described in paragraph 72 for molesting Scouts in 1991.  He had been involved in Scouting from 1963-1989 and had been accused of molesting Scouts in the 1960's, the 1970's, and the 1980's.

## FACTS SPECIFIC TO JOHN DOE VII

### 54.

Plaintiff JOHN DOE VII realleges and incorporates by reference paragraphs 1-53.

### 55.

JOHN DOE VII was born in 1964.

/ / /

Page 16    **THIRD AMENDED COMPLAINT**

Highly Confidential

56.

At all times relevant to this Complaint, JOHN DOE VII was a child involved in Scouting in Troop 99 sponsored by the Southminster Presbyterian Church, Boise, Idaho.  JOHN DOE VII was under the care, custody, protection and/or responsibility of Defendant BSA during the time he was involved in Scouting.

57.

When JOHN DOE VII was approximately 13 years old, during the summer of 1977, he attended Camp Tapawingo in McCall, Idaho.  While on an overnight hike, SCHMIDT had JOHN DOE VII sleep in his tent, where SCHMIDT had JOHN DOE VII undress in front of him, then put his hands down his underwear, then sexually touched and fondled JOHN DOE VII's penis, and otherwise physically, sexually, and emotionally abused JOHN DOE VII.   The next day JOHN DOE VII told his Scoutmaster, who said he would report the incident.

**FACTS SPECIFIC TO PLAINTIFF ▇▇▇▇▇▇▇**

58.

Plaintiff ▇▇▇▇▇▇▇ realleges and incorporates by reference paragraphs 1-57.

59.

▇▇▇▇ was born in 1965.

60.

At all times relevant to this Complaint, ▇▇▇▇ was a child involved in Scouting in Troop 99 sponsored by Southminster Presbyterian Church, Boise, Idaho.  ▇▇▇▇ was under the care, custody, protection, and/or responsibility of Defendant BSA during the time he was involved in Scouting.

Page 17   **THIRD AMENDED COMPLAINT**

Highly Confidential

61.

When ▮▮▮▮ was approximately 12 years old, during the summer of 1977, he

attended either Camp Tapawingo or Camp Morrison in McCall, Idaho.  While on an overnight

hike, SCHMIDT had ▮▮▮▮ sleep in his tent, where SCHMIDT had ▮▮▮▮ undress in front of

him, then put his hands down his underwear, then sexually touched and fondled ▮▮▮▮

penis, and otherwise physically, sexually, and emotionally abused ▮▮▮▮

**FACTS SPECIFIC TO JOHN DOE VIII**

62.

Plaintiff JOHN DOE VIII realleges and incorporates by reference paragraphs 1-61.

63.

JOHN DOE VIII was born in 1965.

64.

At all times relevant to this Complaint, JOHN DOE VIII was a child involved in Scouting

and participated in Scout Troop 411, and was a member of the Caldwell 2nd Ward of the LDS

Church.  JOHN DOE VIII was under the care, custody, protection, and/or responsibility of each

Defendant during the time he was involved in Scouting.

65.

When JOHN DOE VIII was approximately 11 or 12 years old, in or around the summer

of 1976 or 1977, he attended Scout camp at Camp Morrison in McCall, Idaho.  He went on an

overnight nature hike with other Scouts, led by ARNOLD.  That evening ARNOLD told scary

stories to the Scouts and convinced Scouts, including JOHN DOE VIII, to sleep in his tent with

/ / /

Page 18    **THIRD AMENDED COMPLAINT**

Highly Confidential

him.  During the night, he sexually abused JOHN DOE VIII several times by fondling him and practicing oral sex on him.

### FACTS SPECIFIC TO JOHN DOE IX

66.

Plaintiff JOHN DOE IX realleges and incorporates by reference paragraphs 1-65.

67.

JOHN DOE IX was born in 1965.

68.

At all times relevant to this Complaint, JOHN DOE IX was a child involved in Scouting and participated in Scout Troop 99.  JOHN DOE IX was under the care, custody, protection, and/or responsibility of Defendant BSA during the time he was involved in Scouting.

69.

When JOHN DOE IX was approximately 12 years old, in or around the summer of 1977, he attended Scout camp at Camp Tapawingo or Camp Morrison in McCall, Idaho.  He went on an overnight nature hike with other Scouts, including Plaintiffs JOHN DOES VII and XI and ██████ led by SCHMIDT.  That evening SCHMIDT told scary stories to the Scouts and convinced JOHN DOES VII and IX and ██████ to sleep in his tent with him.  During the night, he sexually abused JOHN DOE IX by fondling him and otherwise sexually and emotionally abusing him.

/ / /

/ / /

/ / /

Page 19   **THIRD AMENDED COMPLAINT**

Highly Confidential

**FACTS SPECIFIC TO JOHN DOE X**

70.

Plaintiff JOHN DOE X realleges and incorporates by reference paragraphs 1-69.

71.

JOHN DOE X was born in 1966.

72.

At all times relevant to this Complaint, JOHN DOE X was a child involved in Scouting. JOHN DOE X was under the care, custody, protection, and/or responsibility of Defendant BSA during the time he was involved in Scouting.

73.

When JOHN DOE X was approximately 10 or 11 years old, in or around the summer of 1976 or 1977, he attended Scout camp at Camp Morrison in McCall, Idaho. He went on 3-day backpacking trip with other Scouts, led by SCHMIDT. SCHMIDT sexually abused JOHN DOE X during that backpacking trip by fondling him and otherwise sexually and emotionally abusing him.

**FACTS SPECIFIC TO JOHN DOE XI**

74.

Plaintiff JOHN DOE XI realleges and incorporates by reference paragraphs 1-73.

75.

JOHN DOE XI was born in 1964.

/ / /

/ / /

Page 20   **THIRD AMENDED COMPLAINT**

Highly Confidential

76.

At all times relevant to this Complaint, JOHN DOE XI was a child involved in Scouting. JOHN DOE I was under the care, custody, protection, and/or responsibility of Defendant BSA during the time he was involved in Scouting.

77.

When JOHN DOE XI was approximately 13 years old, in or around the summer of 1977, he attended Scout camp at Camp Morrison in McCall, Idaho.  He went on an overnight nature hike with other Scouts, including Plaintiffs JOHN DOES VII and IX and ▓▓▓▓ led by SCHMIDT. That evening SCHMIDT told scary stories to the Scouts and convinced several Scouts, including JOHN DOES VII, IX, and XI and ▓▓▓▓ to sleep in his tent with him.  During the night, he sexually abused JOHN DOE XI by fondling him and otherwise sexually and emotionally abusing him.

**FACTS SPECIFIC TO JOHN DOE XII**

78.

Plaintiff JOHN DOE XII realleges and incorporates by reference paragraphs 1-77.

79.

JOHN DOE XII was born in 1962.

80.

At all times relevant to this Complaint, JOHN DOE XII was a child involved in Scouting and participated in a Scout troop sponsored by the Nampa 2nd Ward of the LDS Church. JOHN DOE XII was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

Page 21   **THIRD AMENDED COMPLAINT**

81.

When JOHN DOE XII was approximately eight years old, in or around 1970, ARNOLD was an adult volunteer with JOHN DOE XII's Scout Troop.  ARNOLD began sexually abusing JOHN DOE XII in or around 1973 for a period of six months, always in a group setting with other Scouts and usually during Scouting events.

**FACTS SPECIFIC TO JOHN DOE XIII**

82.

Plaintiff JOHN DOE XIII realleges and incorporates by reference paragraphs 1-81.

83.

JOHN DOE XIII was born in 1967.

84.

At all times relevant to this Complaint, JOHN DOE XIII was a child involved in Scouting and participated in a Cub Scout troop sponsored by the Twin Falls Stake of the LDS Church in Kimberly, Idaho.  He was also a child in a foster child placement program operated by the LDS Church.  JOHN DOE XIII was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

85.

When JOHN DOE XIII was approximately nine or ten years old, in or around the summer of 1976 or 1977, his Cub Scout leader and foster parent RONALD JENKINS began sexually abusing him.  He abused him before and after Cub Scout meetings and activities and during Cub Scout overnight events such as camping trips.  His sexual abuse included fondling, mutual masturbation, and sodomy.

Page 22    **THIRD AMENDED COMPLAINT**

BSA-PLAN_01096668

SA 0550

**FACTS SPECIFIC TO JOHN DOE XIV**

86.

Plaintiff JOHN DOE XIV realleges and incorporates by reference paragraphs 1-85.

87.

JOHN DOE XIV was born in 1958.

88.

At all times relevant to this Complaint, JOHN DOE XIV was a child involved in Scout Troop 49, sponsored by the Whitney United Methodist Church in Boise, Idaho. JOHN DOE XIV was under the care, custody, protection, and/or responsibility of Defendant BSA during the time he was involved in Scouting.

89.

When JOHN DOE XIV was involved in Scouting in the early 1970s, his Assistant Scoutmaster was ART KRIGBAUM. From the early 1970s-1974, KRIGBAUM sexually abused JOHN DOE XIV before and after troop meetings, and during Scouting activities such as camping trips. His sexual abuse include fondling, oral sex, and masturbation.

**FACTS SPECIFIC TO JOHN DOE XV**

90.

Plaintiff JOHN DOE XV realleges and incorporates by reference paragraphs 1-89.

91.

JOHN DOE XV was born in 1965.

/ / /

/ / /

Page 23   **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096669

SA 0551

92.

At all times relevant to this Complaint, JOHN DOE XV was a child involved in a Scout troop sponsored by the Christian Faith Center of the First Assembly of God in Nampa, Idaho. JOHN DOE XV was under the care, custody, protection, and/or responsibility of Defendant BSA during the time he was involved in Scouting.

93.

When JOHN DOE XV was approximately 11 or 12 years old, in or around the summer of 1976 or 1977, he attended Scout camp at Camp Morrison in McCall, Idaho.  He went on an overnight hike with other Scouts, led by SCHMIDT.  He slept in SCHMIDT'S tent, and during the night, he sexually abused JOHN DOE XV by fondling him and otherwise sexually and emotionally abusing him.

**FACTS SPECIFIC TO JOHN DOE XVI**

94.

Plaintiff JOHN DOE XVI realleges and incorporates by reference paragraphs 1-93.

95.

JOHN DOE XVI was born in 1968.

96.

At all times relevant to this Complaint, JOHN DOE XVI was a child involved in Scouting and participated in the Scout troop associated with the Nampa 2nd Ward of the LDS Church, of which he was also a member.  JOHN DOE XVI was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

///

Page 24    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096670

SA 0552

97.

When JOHN DOE XVI was approximately 11 or 12 years old, in or around 1979 and/or 1980, he was molested by his Scout leader, ARNOLD.  ARNOLD molested him at the Ward building and at his home under the pretense of completing Scouting activities.

### FACTS SPECIFIC TO JOHN DOE XVII

98.

Plaintiff JOHN DOE XVII realleges and incorporates by reference paragraphs 1-97.

99.

JOHN DOE XVII was born in 1963.

100.

At all times relevant to this Complaint, JOHN DOE XVII was a child involved in Scouting and participated in the "Blazer B" troop and Scout troop associated with the Nampa 5th Ward West of the LDS Church in Boise, Idaho, of which he was also a member.  JOHN DOE XVII was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

101.

When JOHN DOE XVII was approximately 10-12 years old, DOUG BOWEN was the "Blazer B Advisor" of his "Blazer B" Scout troop in the Nampa 5th Ward West.  BOWEN sexually abused JOHN DOE XVII many times, at BOWEN's house under the pretense of working on merit badges, at pool parties with other Scouts present, and during a camping trip at the Pinetop Resort, owned and/or operated by the LDS Church.  BOWEN would give JOHN DOE XVII drugs and/or alcohol to induce him to fall asleep and then proceed to molest

Page 25   **THIRD AMENDED COMPLAINT**

him.  JOHN DOE XVII's abuse included but is not limited to fondling, oral sex, and anal

penetration.  Bowen was convicted in 1997 for Attempted Aggravated Sexual Abuse of a

Child in Utah for his sexual abuse of another Scout.

### FACTS SPECIFIC TO JOHN DOE XVIII

102.

Plaintiff JOHN DOE XVIII realleges and incorporates by reference paragraphs 1-101.

103.

JOHN DOE XVIII was born in 1955.

104.

At all times relevant to this Complaint, JOHN DOE XVIII was a child involved in

Scouting and, to the best of his memory at this time, participated in Troop 176.  JOHN DOE

XVIII was under the care, custody, protection, and/or responsibility of DEFENDANT BSA

during the time he was involved in Scouting.

105.

When JOHN DOE XVIII was approximately 12-13 years old, he was molested by his

Scout leader LIBEY.  LIBEY groped and fondled him in LIBEY's car to and from Scouting

activities and fondled him during a camping trip at Camp Grizzley.

### FACTS SPECIFIC TO JOHN DOE XIX

106.

Plaintiff JOHN DOE XIX realleges and incorporates by reference paragraphs 1-105.

/ / /

/ / /

Page 26    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096672

SA 0554

107.

JOHN DOE XIX was born in 1962.

108.

At all times relevant to this Complaint, JOHN DOE XIX was a child involved in Scouting and participated in the Scout Troop sponsored by the Nampa 2nd Ward of the LDS Church. JOHN DOE XIX was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

109.

When JOHN DOE XIX was approximately 10 ten years old, his older brother dieed, and his brother's friends in the Order of the Arrow invited him to participate, even though he was too young. Arnold was the Order of the Arrow leader, and that is how JOHN DOE XIX first met Arnold and started being abused by him. Arnold continued to abuse him through Scouts, until he was approximately 12 years old. Arnold fondled him and engaged in other sexual acts with him many times, sometimes in group settings with other Scouts during Scouting activities, and other times alone at Arnold's house or during other Scouting activities, such as hiking or camping. John Doe XIX reported the abuse to Bishop Elvin Hegstrom, who did not believe him and told him not to say anything to anyone else about the abuse.

**DEFENDANTS' KNOWLEDGE OF SEXUAL ABUSE IN SCOUTING**

110.

Plaintiffs reallege and incorporate by reference paragraphs 1-109.

/ / /

/ / /

Page 27    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096673

SA 0555

111.

Not later than 1965, Defendant BSA knew that Scouting posed a danger to minor boys because there had been a concrete, longstanding, consistent, and widespread problem with Scout leaders sexually abusing Scouts.  Defendant BSA knew that Scouting was being used and exploited by child molesters to gain access to and gain the trust of Scouts, including Plaintiffs. Yet, Defendant BSA did nothing significant to alter the program, to ameliorate the sexual abuse problem, or to warn Scouts, Scouts' parents, other troop-level leaders, or the general public prior to and even after the time of Plaintiffs' abuse.

112.

Beginning in or around 1920, Defendant BSA started tracking incidences of child molestation by adult volunteers in Scouting.  Defendant BSA created a file system then known as the "Red Flag" files—now the "Ineligible Volunteer" files ("IV files")— to track a variety of transgressions by adult volunteers, including child abuse.  The IV Files are categorized according to the type of transgression committed, for example, Amoral" or "financial" transgressions.  IV Files that reflect child sexual abuse allegations against adult volunteers are categorized as "Perversion" files. On information and belief, the Perversion IV Files have predominantly constituted a majority or plurality of the total IV Files.  Between 1920 and 1935, at least 1,000 child molesters—between 50-60 per year—were discovered and subsequently excluded from Scouting.  Now, at least 1,365 IV Perversion files still exist that were created between 1960 and 1985, with 25-96 IV Perversion files created per year during that time frame.  However, the number of IV Perversion Files still existing significantly underrepresents the actual number of adult volunteers that molested Scouts, because

Page 28    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096674

SA 0556

Defendant BSA has destroyed many IV Files for a variety of reasons, and because many children do not report their abuse.

113.

In Idaho alone, at least seven Scout leaders were accused of molesting Scouts or other youth between 1962 and 1977.  Between 1978 and 1983, at least three additional Idaho Scout leaders were accused of molesting Scouts or other youth. All of these Scout leaders operated in various councils in Idaho; at least six of them operated within the Ore-Ida Council.  In addition to knowing about the decades of sexual abuse by Scout leaders in Scouts prior to or during Plaintiffs' abuse, Defendant BSA became aware of all or most of the accusations regarding these specific Scout leaders by 1982.

114.

Prior to or during Plaintiffs' abuse, on information and belief, LDS Defendants were also aware of the risk that Scouts could be molested by Scout leaders, including by LDS Scout leaders and Scout leaders in LDS-sponsored troops.  In Idaho, LDS Defendants had notice prior to Plaintiffs' abuse that at least one LDS Scout leader in an LDS-sponsored troop within the Ore- Ida Council of Defendant BSA had been accused of molesting Scouts.

115.

Prior to Plaintiffs' abuse, Defendants knew to a moral certainty that at least some significant number of Scouts—including Scouts such as Plaintiffs—would be molested each and every year if Scouting remained structured as it was.

/ / /

/ / /

Page 29    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096675

SA 0557

**CLAIM FOR RELIEF**
**(Constructive Fraud)**

**COUNT I**
**Plaintiffs JOHN DOES I, II, III, V, VI, VIII, XII, XIII, XVI, XVII, and XIX against all Defendants**

116.

Plaintiffs reallege and incorporate by reference paragraphs 1-115.

117.

At all times relevant to this Complaint, Defendants invited and encouraged Plaintiffs to participate in the Scouting program they jointly administered and controlled.  Their invitation created a special, fiduciary relationship, wherein these Plaintiffs and their parents relied upon Defendants' years of expertise and judgment in selecting morally upright and trustworthy men to lead Scouting activities.  These Plaintiffs and their parents gave Defendants authority to act *in loco parentis* over Plaintiffs at BSA meetings, camping trips, hiking trips, and in private social situations during Scouting activities.  Defendant BSA also invited Plaintiffs to enter into a commercial relationship by requiring Scouts to pay yearly dues and other assorted fees and required purchases, in exchange for participating in Scouting.

118.

Defendants represented that the Scout leaders they selected, controlled, and/or approved were appropriate and trustworthy mentors and leaders for young boys, merely by selecting, approving, and/or retaining certain men as Scout leaders.  They also promoted Scouting as being safe and beneficial for boys—physically, emotionally, and spiritually.  Defendants claimed Scouting was a wholesome institution and emphasized the friendly and paternalistic role a Scout leader should play in a young boy's life.  As examples Defendant

Page 30    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096676

SA 0558

BSA made specific statements in various editions of the Boy Scout Handbook—the handbook that every Scout is given and uses as a guide to his Scouting experience. The Scout Oath was and remains: "On my honor I will do my best to do my duty to God and my country and to obey the Scout law; To help other people at all times; To keep myself physically strong, mentally awake, and morally straight." The Scout law then describes the characteristics a Scout should have: a Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent. These were ideals that both Scouts and Scout leaders were expected to follow. In the 1965-1972 *Boy Scout Handbook*, the Scoutmaster is referred to as "a wonderful man" who goes on hikes and goes camping with the Troop, and who "is the friend to whom you can always turn for advice." Defendant BSA, *Boy Scout Handbook*, at 94 (7th ed., 3rd printing, 1967). The 1972-1978 *Boy Scout Handbook*, BSA stated, "[o]ver there watching things is your Scoutmaster. He's a great guy. He gives hours of his time to you and the troop. And do you know why? Mostly because he knows Scouting is important to his city and nation. Besides, he is interested in boys." Defendant BSA, *Boy Scout Handbook*, at 9 (8th ed., 2nd printing, 1973). This edition also told Scouts: "Your Scoutmaster is interested in and wants to know about you. Only then can he help you to have fun in Scouting. . . . . [Y]our Scoutmaster wants to know you better. He wants to see what you have to bring to the troop. Soon after joining you will have your first personal growth agreement conference. Here you and your Scoutmaster will sit down for a talk. Tell him about yourself. . . . Your Scoutmaster will probably ask about the things you like to do. . . . Your Scoutmaster will also want to know what things you do well." *Id*. at 82-83. In the 1978-1990 *Boy Scout Handbook*, BSA tells Scouts that "First, there's your Scoutmaster.

Page 31   **THIRD AMENDED COMPLAINT**

Highly Confidential

He spends hours planning the fun and adventure you will have in your troop.  He is present at every troop meeting and goes hiking and camping with the troop. He is the friend to whom you can always turn for advice.  He coaches the patrol leaders. He gives his time and effort without pay. Why does he do all this?  Because he believes in scouting. Because he likes boys and wants to help them become real men." Defendant BSA, *Boy Scout Handbook*, at 20-21 (9th ed., 1st printing, 1979).  This list of representations is not exhaustive.

119.

Defendants knew that, historically and increasingly, a significant number of Scout leaders had abused Scouts; therefore, Defendants knew that not all Scout leaders were trustworthy, morally upright, role models, and mentors.

120.

LDS Defendants also promoted Scouting as a wholesome, safe, and beneficial program for boys, by sanctioning Scouting as the official program for boys within the LDS Church.  By selecting men within the LDS Church to serve as Scout leaders, LDS Defendants represented that those men were trustworthy and morally upright leaders and mentors.  Young boys that were members of the LDS Church were required or strongly encouraged to join Scouting as part of their growth and development within the Church.  For example, in 1978, the president of the LDS Church said that "This [BSA] is not an optional program...Scouting is no longer on trial.  It is an economically, socially, and spiritually sound program." The LDS Church also was the first chartering organization within BSA.  In 1928, the LDS Church named Scouting as the activity program for Deacons and teachers (boys ages 12-16 years old) in the LDS Church.  The LDS Church and BSA continue to be closely integrated organizations—for example, the LDS Church is

Page 32     **THIRD AMENDED COMPLAINT**

Highly Confidential

the largest sponsor of Boy Scout troops in BSA, BSA has an entire LDS-BSA Relationships

department, and many key leaders within the LDS Church serve on BSA boards and in other

leadership positions in BSA.

121.

Defendants fraudulently misrepresented, failed to disclose, and/or actively

concealed the dangers and prevalence of child molesters in Scouting.  Defendants'

representations regarding the wholesomeness, trustworthiness, and mortal integrity of

Scouting and Scout leaders were, at best, partial representations of the facts, which should

have been corrected or supplemented by the additional contrary information regarding the

propensity of sexual abuse in Scouting that was in Defendants' possession.

122.

Plaintiffs read, digested, and integrated one or more of the *Boy Scout Handbook* versions

into their Scouting experience during their time in Scouting, and similar information and

propaganda promulgated by Defendants.  Plaintiffs also digested the LDS Defendants'

misrepresentations about the benefits and nature of Scouting and Scout leaders within the LDS

Church.  Plaintiffs relied upon Defendants' misrepresentations regarding Scouting and Scout

leaders in deciding whether to join and continue to participate in Scouting.

123.

Defendants had a duty to disclose known threats to the health and safety of the

minors involved with their organizations because Defendants had a special relationship of

trust and confidence with Plaintiffs, and Defendants exercised *in loco parentis* responsibilities

over Scouts, including Plaintiffs.  Alternatively or in addition to the duty arising from a special

Page 33    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096679

SA 0561

relationship, Defendant BSA's invitation to Plaintiffs to participate in Scouting upon payment of fees required Defendant BSA to disclose all matters vital to entering into a commercial transaction. The relative incidence of child molestation by Scout Leaders was vital and material information relevant to Plaintiffs entering into the transaction and maintaining their membership with Defendant BSA. Further, alternatively or in addition to the aforementioned duties, Defendants actively concealed the problem of child molestation by Scout leaders, and Plaintiffs did not and could not obtain access to this information. Due to Plaintiffs' inability to discover the truth and Defendants' full knowledge of it, Defendants were thus required to disclose the prevalence of molestation by Scout leaders.

124.

Defendants' knowledge of the dangers and prevalence of child molesters in Scouting constituted a material fact because Plaintiffs would not have entered into a relationship with or continued a relationship with Defendants and the Scouting program, including their individual abusers or other volunteers, employees, and agents of Defendants, had Plaintiffs and their parents been aware of such dangers.

125.

Despite the special relationship that Defendants maintained with Plaintiffs, prior to and during Plaintiffs' time in Scouting, Defendant BSA never made any warnings or issued any warnings in the *Boy Scout Handbook*, in materials to Plaintiffs' parents, in the Scout application and registration materials, or elsewhere in BSA materials that Scout leaders were not always safe and trustworthy, that they might make sexual demands or advances, or that significant numbers of Scout leaders had abused boys in the past. Similarly, LDS Defendants did not warn

Page 34    **THIRD AMENDED COMPLAINT**

Highly Confidential

Scouts that Scout leaders—even those involved in the LDS Church—were not always safe,

trustworthy, and spiritually sound leaders, that these Scout leaders may make sexual demands

or advances, or that a significant number of Scout leaders had abused boys in the past.  This list

of omissions is not exclusive.  Despite their knowledge of the use of Scouting by child molesters

as described in paragraphs 110-115, Defendants knowingly failed to change the Scouting

program in any meaningful way to attempt to reduce the number of Scouts abused by Scout

leaders until after Plaintiffs' time in Scouting, and nonetheless concealed this material fact.

These failures to disclose the known danger of abuse by Scout leaders will be referred to in this

Complaint as "constructive fraud."

126.

Defendants knew that their constructive fraud consisted of false representations, or

Defendants made their constructive fraud with reckless disregard for the truth.  Defendants

made their constructive fraud with the intent of inducing Plaintiffs (and other children similarly

situated), Plaintiffs' parents or guardians (and other parents and guardians similarly situated),

and the community at large to rely on their constructive fraud; continue to trust Scouting and

Scout leaders; and continue to participate in Scouting.  Defendants also intended their

constructive fraud to shield Scouting from scrutiny to ensure that children continued to join,

for both a financial and reputational benefit.

127.

Plaintiffs and their parents justifiably and reasonably relied on their constructive fraud

in allowing Plaintiffs to join Scouting, remain in Scouting, and engage in a trust relationship

with their various Scout leaders.  The reliance of Plaintiffs and their parents was justified

Page 35     **THIRD AMENDED COMPLAINT**

Highly Confidential

because they did not know, nor could they have known, that Defendant BSA had a known, decades-long history of child molesters using Scouting to obtain victims. Plaintiffs and their parents similarly did not know, nor could they have known, that the LDS Defendants also had a history of Scout leaders within the LDS Church abusing Scouts. Plaintiffs and their parents justifiably and reasonably relied on Defendants' constructive fraud, as well as Defendants' conduct in maintaining the same rules for the Scouting program over time, and to believe that Scouting did not pose a known danger to Scouts. This reliance was justified because Plaintiffs and their parents could not hope to conduct an investigation of Defendants' claims that Scoutmasters were safe and trustworthy, given that the records that would disprove the constructive fraud—*e.g.,* Defendant BSA's IV Files—were not available to the public until decades later.

128.

Within the past three years Plaintiffs JOHN DOES I, II, III, V, VI, VIII, XII, XIII, XVI, XVII, and XIX have discovered that throughout the time they were involved in the Scouting program and until at least 2010, Defendants perpetrated a fraud related to the dangers of Scout leaders molesting children in the Scouting program. Prior to each Plaintiff's discovery of Defendants' fraud, each Plaintiff did not know and could not know that Defendants' representations, or lack thereof, regarding the trustworthiness of Scout leaders and the safety of the Scouting program were false, and that Defendants knew the Scouting program was structured in such a way that molestation of Scouts by Scout leaders was certain to occur to some degree within the Scouting program. Relying on Defendants' representations, each Plaintiff joined Scouting and trusted his Scout leaders.

Highly Confidential                                          BSA-PLAN_01096682

SA 0564

129.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE I was seriously injured and damaged.  Plaintiff JOHN DOE I's injuries prevail and will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiff JOHN DOE I has incurred and will likely continue to incur damages.  These damages include both physical and emotional injury.  These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE I's general damages in an amount now unknown.  Plaintiff JOHN DOE I's damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

130.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE II was seriously injured and damaged.  Plaintiff JOHN DOE II's injuries prevail and will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiff JOHN DOE II has incurred and will likely continue to incur damages.  These damages include both physical and emotional injury.  These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE II's general damages in an amount now unknown.  Plaintiff JOHN DOE II's claimed damages include,

Highly Confidential

BSA-PLAN_01096683

**SA 0565**

but are not limited to, emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

131.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE III was seriously injured and damaged.  Plaintiff JOHN DOE III's injuries prevail and will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiff JOHN DOE III has incurred and will likely continue to incur damages.  These damages include both physical and emotional injury.  These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE III's general damages in an amount now unknown.  Plaintiff JOHN DOE III's claimed damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

132.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE V was seriously injured and damaged.  Plaintiff JOHN DOE V's injuries prevail and will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiff JOHN DOE V has incurred and will likely continue to incur

Page 38    **THIRD AMENDED COMPLAINT**

BSA-PLAN_01096684

SA 0566

damages. These damages include both physical and emotional injury. These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE V's general damages in an amount now unknown. Plaintiff JOHN DOE V's claimed damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

133.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE VI was seriously injured and damaged. Plaintiff JOHN DOE VI's injuries prevail and will continue to prevail for an indefinite time into the future. It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling. Plaintiff JOHN DOE VI has incurred and will likely continue to incur damages. These damages include both physical and emotional injury. These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE VI's general damages in an amount now unknown. Plaintiff JOHN DOE VI's claimed damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

134.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE VIII was seriously injured and damaged. Plaintiff JOHN DOE VIII's injuries prevail and

Page 39     **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096685

SA 0567

will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiff JOHN DOE VIII has incurred and will likely continue to incur damages.  These damages include both physical and emotional injury.  These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE VIII's general damages in an amount now unknown.  Plaintiff JOHN DOE VIII's claimed damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

135.

   As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE XII was seriously injured and damaged.  Plaintiff JOHN DOE XII's injuries prevail and will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiff JOHN DOE XII has incurred and will likely continue to incur damages.  These damages include both physical and emotional injury.  These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE XII's general damages in an amount now unknown.  Plaintiff JOHN DOE XII's claimed damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

/ / /

/ / /

Page 40    **THIRD AMENDED COMPLAINT**

BSA-PLAN_01096686

SA 0568

136.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE XIII was seriously injured and damaged.  Plaintiff JOHN DOE XIII's injuries prevail and will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiff JOHN DOE XIII has incurred and will likely continue to incur damages.  These damages include both physical and emotional injury.  These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE XIII's general damages in an amount now unknown. Plaintiff JOHN DOE XIII's claimed damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

137.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE XVI was seriously injured and damaged.  Plaintiff JOHN DOE XVI's injuries prevail and will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiff JOHN DOE XVI has incurred and will likely continue to incur damages.  These damages include both physical and emotional injury.  These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE XVI's general damages in an amount now unknown.  Plaintiff JOHN

Page 41    **THIRD AMENDED COMPLAINT**

Highly Confidential

DOE XVI's damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

138.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE XVII was seriously injured and damaged.  Plaintiff JOHN DOE XVII's injuries prevail and will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiff JOHN DOE XVII has incurred and will likely continue to incur damages.  These damages include both physical and emotional injury.  These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE XVII's general damages in an amount now unknown. Plaintiff JOHN DOE XVII's damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

139.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE XIX was seriously injured and damaged.  Plaintiff JOHN DOE XIX's injuries prevail and will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiff JOHN DOE XIX has incurred and will likely continue to incur damages.  These damages include both physical and emotional

Highly Confidential

BSA-PLAN_01096688
**SA 0570**

injury.  These damages include special and general damages to be proved at the time of trial,

all to Plaintiff JOHN DOE XIX's general damages in an amount now unknown.  Plaintiff JOHN

DOE XIX's damages include but are not limited to emotional and physical pain and suffering,

mental anguish, disability, and expenses for past and future therapy.

**COUNT II**
**Plaintiffs JOHN DOES IV, VII, IX, X, XI, XIV, XV, XVIII and ████████ against Defendant BSA**

140.

Plaintiffs JOHN DOES IV, VII, IX, X, XI, XIV, XV, XVIII, and ████████ reallege and

incorporate by reference paragraphs 1-139.

141.

At all times relevant to this Complaint, Defendant BSA invited and encouraged

Plaintiffs to participate in the Scouting program it administered and controlled.  Its invitation

created a special, fiduciary relationship, wherein Plaintiffs and their parents relied upon

Defendant BSA's years of expertise and judgment in selecting morally upright and trustworthy

men to lead Scout troops and other Scouting activities, such as BSA Camps.  Plaintiffs and

their parents gave Defendant BSA authority to act *in loco parentis* over Plaintiffs at BSA

meetings, camping trips, hiking trips, and in private social situations during Scouting activities.

Defendant BSA also invited Plaintiffs to enter into a commercial relationship by requiring him

to pay yearly dues and other fees and required purchases, in exchange for participating in

Scouting.

142.

Defendant BSA represented that the Scout leaders it selected, controlled, and/or

approved were appropriate and trustworthy mentors and leaders for young boys.  It also

Page 43    **THIRD AMENDED COMPLAINT**

Highly Confidential

promoted Scouting as being safe and beneficial for boys—physically, emotionally, and spiritually.  Defendant BSA claimed Scouting was a wholesome institution and emphasized the friendly and paternalistic role a Scout leader should play in a young boy's life.  As examples, Defendant BSA made specific statements in various editions of the *Boy Scout Handbook*—the handbook that every Scout is given and uses as a guide to his Scouting experience.  The Scout Oath was and remains: "On my honor I will do my best to do my duty to God and my country and to obey the Scout law; To help other people at all times; To keep myself physically strong, mentally awake, and morally straight."  The Scout law then describes the characteristics a Scout should have: a Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent.  These were ideals that both Scouts and Scout leaders were expected to follow.  In the 1965-1972 *Boy Scout Handbook*, the Scoutmaster is referred to as "a wonderful man" who goes on hikes and goes camping with the Troop, and who "is the friend to whom you can always turn for advice."  Defendant BSA, *Boy Scout Handbook*, at 94 (7th ed., 3rd printing, 1967).  In the 1972-1978 *Boy Scout Handbook*, BSA stated, "[o]ver there watching things is your Scoutmaster.  He's a great guy.  He gives hours of his time to you and the troop. And do you know why?  Mostly because he knows Scouting is important to his city and nation. Besides, he is interested in boys." Defendant BSA, *Boy Scout Handbook*, at 9 (8th ed., 2nd printing, 1973).  This edition also told Scouts: "Your Scoutmaster is interested in and wants to know about you.  Only then can he help you to have fun in Scouting.  [Y]our Scoutmaster wants to know you better.  He wants to see what you have to bring to the troop.  Soon after joining you will have your first personal growth agreement conference.  Here you and your Scoutmaster will sit down for a talk.  Tell him about yourself.  Your Scoutmaster will

Page 44    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096690

**SA 0572**

probably ask about the things you like to do.  Your Scoutmaster will also want to know what things you do well." Id. at 82-83.  In the 1978-1990 *Boy Scout Handbook*, BSA tells Scouts that "First, there's your Scoutmaster.  He spends hours planning the fun and adventure you will have in your troop. He is present at every troop meeting and goes hiking and camping with the troop. He is the friend to whom you can always turn for advice.  He coaches the patrol leaders. He gives his time and effort without pay. Why does he do all this?  Because he believes in scouting. Because he likes boys and wants to help them become real men." Defendant BSA, *Boy Scout Handbook*, at 20-21 (9th ed., 1st printing, 1979).  This list of Defendant BSA's representations is not exhaustive.  Plaintiff read, digested, and integrated one or more of the *Boy Scout Handbook* editions, as well as other BSA materials, into his Scouting experience during his time in Scouting.

143.

Defendant BSA knew that, historically and increasingly, a significant number of Scout leaders had abused Scouts; therefore, Defendant BSA knew that not all Scout leaders were trustworthy and morally upright, and appropriate role models and mentors.

144.

Defendant BSA fraudulently misrepresented, failed to disclose, and/or actively concealed the dangers and prevalence of child abuse in Scouting.   Defendant BSA's representations regarding the trustworthiness and mortal integrity of Scout leaders were, at best, partial representations of the facts, which should have been corrected or supplemented by the contrary information of the propensity of sexual abuse in Scouting in Defendant BSA's possession.

Page 45      **THIRD AMENDED COMPLAINT**

Highly Confidential

145.

Defendant BSA had a duty to disclose known threats to the health and safety of the minors involved with its organization because Defendant BSA had a special relationship of trust and confidence with Plaintiffs and exercised *in loco parentis* responsibilities over Scouts, including Plaintiffs.  Alternatively or in addition to the duty arising from *in loco parentis* status, Defendant BSA's invitation to Plaintiffs to participate in Scouting upon payment of fees required Defendant BSA to disclose all matters vital to entering into a commercial transaction. The relative incidence of child molestation by Scout Leaders was vital and material information relevant to Plaintiffs entering into the transaction with Defendant BSA.  Further, alternatively or in addition to the aforementioned duties, Defendant BSA actively concealed the problem of child molestation by Scout leaders, and Plaintiffs and their parents did not and could not obtain access to this information.  Due to their inability to discover the truth and Defendant BSA' full knowledge of it, Defendant BSA was required to disclose the prevalence of molestation by Scout leaders.

146.

Defendant BSA's knowledge of the dangers and prevalence of child molesters in Scouting as described in paragraphs 110-115 constituted a material fact because Plaintiffs would not have entered into a relationship with or continued a relationship with Defendant BSA and the Scouting program, including the individual abusers or other volunteers, employees, and agents of Defendant BSA, had Plaintiffs and their parents been aware of such dangers.

/ / /

Page 46     **THIRD AMENDED COMPLAINT**

Highly Confidential

147.

Despite the special relationship that Defendant BSA maintained with Plaintiffs prior to and during their time in Scouting, Defendant BSA never made any warnings or issued any warning in the *Boy Scout Handbook*, in materials to Plaintiffs' parents, in the Scout application and registration materials, or elsewhere in BSA materials that Scout leaders were not always safe and trustworthy, that they might make sexual demands or advances, or that significant numbers of Scout leaders had abused boys in the past.  This list of omissions is not exclusive. Despite its knowledge of the use of Scouting by child molesters, Defendant BSA knowingly failed to change the Scouting program in any meaningful way to attempt to reduce the number of Scouts abused by Scout leaders until after Plaintiffs' time in Scouting, and nonetheless concealed this material fact.

148.

Defendant BSA knew that its constructive fraud consisted of false representations, or Defendant BSA made its constructive fraud with reckless disregard for the truth. Defendant BSA made its constructive fraud with the intent of inducing Plaintiffs (and other children similarly situated), their parents or guardians (and other parents and guardians similarly situated), and the community at large to rely on its constructive fraud; continue to trust Scouting and Scout leaders; and continue to participate in Scouting.  Defendant BSA also intended its constructive fraud to shield Scouting from scrutiny to ensure that children continued to join, for both a financial and reputational benefit.

/ / /

/ / /

Page 47    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096693

SA 0575

149.

Plaintiffs and their parents justifiably and reasonably relied on Defendant BSA's constructive fraud in allowing them to join Scouting, remain in Scouting, and engage in a trust relationship with their various Scout leaders. The reliance of Plaintiffs and their parents was justified because they did not know, nor could they have known, that Defendant BSA had a known, decades-long history of child molesters using Scouting to obtain victims. Plaintiffs and their parents justifiably and reasonably relied on Defendant BSA's constructive fraud, as well as Defendant BSA's conduct in maintaining the same rules for the Scouting program over time, and to believe that Scouting did not pose a known danger to Scouts. This reliance was justified because Plaintiffs and their parents could not hope to conduct an investigation of Defendants' claims that Scoutmasters were safe and trustworthy, given that the records that would disprove the constructive fraud—*e.g.*, Defendant BSA's IV Files—were not available to the public until decades later.

150.

Within the past three years, Plaintiffs JOHN DOES IV, VII, IX, X, XI, XIV, XV, XVIII, and ███████████ have discovered that throughout the time they were involved in the Scouting program and until at least 2010, Defendant BSA perpetrated a fraud related to the dangers of Scout leaders molesting children in the Scouting program. Prior to their discovery of Defendant BSA's fraud, Plaintiffs did not know and could not know that Defendant BSA's representations, or lack thereof, regarding the trustworthiness of Scout leaders and the safety of the Scouting program were false, and that Defendant BSA knew the Scouting program was

/ / /

Page 48   **THIRD AMENDED COMPLAINT**

Highly Confidential

structured in such a way that molestation of Scouts by Scout leaders was certain to occur to some degree within the Scouting program.

151.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, JOHN DOE IV was seriously injured and damaged. JOHN DOE IV's injuries prevail and will continue to prevail for an indefinite time into the future. It is impossible at this time to fix the full nature, extent, severity and duration of said injuries, but they are alleged to be permanent, progressive, and disabling. JOHN DOE IV has incurred and will likely continue to incur damages. These damages include both physical and emotional injury. These damages include special and general damages to be proved at the time of trial, all to JOHN DOE IV's general damages in an amount now unknown. JOHN DOE IV's claimed damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

152.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, JOHN DOE VII was seriously injured and damaged. JOHN DOE VII's injuries prevail and will continue to prevail for an indefinite time into the future. It is impossible at this time to fix the full nature, extent, severity and duration of said injuries, but they are alleged to be permanent, progressive, and disabling. JOHN DOE VII has incurred and will likely continue to incur damages. These damages include both physical and emotional injury. These damages

Page 49    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096695

SA 0577

include special and general damages to be proved at the time of trial, all to JOHN DOE VII's

general damages in an amount now unknown.  JOHN DOE VII's claimed damages include but

are not limited to emotional and physical pain and suffering, mental anguish, disability, and

expenses for past and future therapy.

153.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious,

and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, ██████

██████ was seriously injured and damaged.  ██████ injuries prevail and will continue to

prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature,

extent, severity and duration of said injuries, but they are alleged to be permanent,

progressive, and disabling.  ██████ has incurred and will likely continue to incur damages.

These damages include both physical and emotional injury.  These damages include special

and general damages to be proved at the time of trial, all to ██████ general damages in an

amount now unknown.  ██████ claimed damages include but are not limited to emotional

and physical pain and suffering, mental anguish, disability, and expenses for past and future

therapy.

154.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious,

and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, JOHN

DOE IX was seriously injured and damaged.  JOHN DOE IX's injuries prevail and will continue to

prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature,

extent, severity and duration of said injuries, but they are alleged to be permanent,

Page 50     **THIRD AMENDED COMPLAINT**

progressive, and disabling.  JOHN DOE IX has incurred and will likely continue to incur

damages. These damages include both physical and emotional injury.  These damages include

special and general damages to be proved at the time of trial, all to JOHN DOE IX's general

damages in an amount now unknown.  JOHN DOE IX's claimed damages include but are not

limited to emotional and physical pain and suffering, mental anguish, disability, and expenses

for past and future therapy.

155.

As a direct and proximate result of each Defendant's oppressive, fraudulent,

malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-

1604, JOHN DOE X was seriously injured and damaged.  JOHN DOE X's injuries prevail and

will continue to prevail for an indefinite time into the future.  It is impossible at this time to

fix the full nature, extent, severity and duration of said injuries, but they are alleged to be

permanent, progressive, and disabling.  JOHN DOE X has incurred and will likely continue to

incur damages. These damages include both physical and emotional injury.  These damages

include special and general damages to be proved at the time of trial, all to JOHN DOE X's

general damages in an amount now unknown.  JOHN DOE X's claimed damages include but

are not limited to emotional and physical pain and suffering, mental anguish, disability, and

expenses for past and future therapy.

156.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious,

and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, JOHN

DOE XI was seriously injured and damaged.  JOHN DOE XI's injuries prevail and will continue to

Page 51     **THIRD AMENDED COMPLAINT**

Highly Confidential

prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature,

extent, severity and duration of said injuries, but they are alleged to be permanent,

progressive, and disabling.  JOHN DOE XI has incurred and will likely continue to incur

damages. These damages include both physical and emotional injury.  These damages include

special and general damages to be proved at the time of trial, all to JOHN DOE XI's general

damages in an amount now unknown.  JOHN DOE XI's claimed damages include but are not

limited to emotional and physical pain and suffering, mental anguish, disability, and expenses

for past and future therapy.

157.

As a direct and proximate result of each Defendant's oppressive, fraudulent,

malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-

1604, JOHN DOE XIV was seriously injured and damaged.  JOHN DOE XIV's injuries prevail and

will continue to prevail for an indefinite time into the future.  It is impossible at this time to

fix the full nature, extent, severity and duration of said injuries, but they are alleged to be

permanent, progressive, and disabling.  JOHN DOE XIV has incurred and will likely continue

to incur damages.  These damages include both physical and emotional injury.  These

damages include special and general damages to be proved at the time of trial, all to JOHN

DOE XIV's general damages in an amount now unknown. JOHN DOE XIV's claimed damages

include but are not limited to emotional and physical pain and suffering, mental anguish,

disability, and expenses for past and future therapy.

/ / /

/ / /

Page 52    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096698

SA 0580

158.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, JOHN DOE XV was seriously injured and damaged. JOHN DOE XV's injuries prevail and will continue to prevail for an indefinite time into the future. It is impossible at this time to fix the full nature, extent, severity and duration of said injuries, but they are alleged to be permanent, progressive, and disabling. JOHN DOE XV has incurred and will likely continue to incur damages. These damages include both physical and emotional injury. These damages include special and general damages to be proved at the time of trial, all to JOHN DOE XV's general damages in an amount now unknown. JOHN DOE XV's claimed damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

159.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, JOHN DOE XVIII was seriously injured and damaged. JOHN DOE XVIII's injuries prevail and will continue to prevail for an indefinite time into the future. It is impossible at this time to fix the full nature, extent, severity and duration of said injuries, but they are alleged to be permanent,  progressive, and disabling. JOHN DOE XVIII has incurred and will likely continue to incur damages. These damages include both physical and emotional injury. These damages include special and general damages to be proved at the time of trial, all to JOHN DOE XVIII's general damages in an amount now unknown. JOHN DOE XVIII's claimed damages

Page 53    **THIRD AMENDED COMPLAINT**

Highly Confidential

BSA-PLAN_01096699

SA 0581

include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1. Non-economic damages by all Defendants for Plaintiff JOHN DOE I, the exact amount to be determined by the jury at the time of trial;

2. Economic damages by all Defendants for Plaintiff JOHN DOE I, the exact amount to be determined by the jury at the time of trial;

3. Non-economic damages by all Defendants for Plaintiff JOHN DOE II, the exact amount to be determined by the jury at the time of trial;

4. Economic damages by all Defendants for Plaintiff JOHN DOE II, the exact amount to be determined by the jury at the time of trial;

5. Non-economic damages by all Defendants for Plaintiff JOHN DOE III, the exact amount to be determined by the jury at the time of trial;

6. Economic damages by all Defendants for Plaintiff JOHN DOE III, the exact amount to be determined by the jury at the time of trial;

7. Non-economic damages by Defendant BSA for Plaintiff JOHN DOE IV, the exact amount to be determined by the jury at the time of trial;

8. Economic damages by Defendant BSA for Plaintiff JOHN DOE IV, the exact amount to be determined by the jury at the time of trial;

9. Non-economic damages by all Defendants for Plaintiff JOHN DOE V, the exact amount to be determined by the jury at the time of trial;

Highly Confidential

10.     Economic damages by all Defendants for Plaintiff JOHN DOE V, the exact amount to be determined by the jury at the time of trial;

11.     Non-economic damages by all Defendants for Plaintiff JOHN DOE VI, the exact amount to be determined by the jury at the time of trial;

12.     Economic damages by all Defendants for Plaintiff JOHN DOE VI, the exact amount to be determined by the jury at the time of trial;

13.     Non-economic damages by Defendant BSA for Plaintiff JOHN DOE VII, the exact amount to be determined by the jury at the time of trial;

14.     Economic damages by Defendant BSA for Plaintiff JOHN DOE VII, the exact amount to be determined by the jury at the time of trial;

15.     Non-economic damages by Defendant BSA for Plaintiff JOHN DOE VIII, the exact amount to be determined by the jury at the time of trial;

16.     Economic damages by Defendant BSA for Plaintiff JOHN DOE VIII, the exact amount to be determined by the jury at the time of trial;

17.     Non-economic damages by Defendant BSA for Plaintiff JOHN DOE IX, the exact amount to be determined by the jury at the time of trial;

18.     Economic damages by Defendant BSA for Plaintiff JOHN DOE IX, the exact amount to be determined by the jury at the time of trial;

19.     Non-economic damages by Defendant BSA for Plaintiff JOHN DOE X, the exact amount to be determined by the jury at the time of trial;

20.     Economic damages by Defendant BSA for Plaintiff JOHN DOE X, the exact amount to be determined by the jury at the time of trial;

Page 55     **THIRD AMENDED COMPLAINT**

Highly Confidential

21.     Non-economic damages by Defendant BSA for Plaintiff JOHN DOE XI, the exact amount to be determined by the jury at the time of trial;

22.     Economic damages by Defendant BSA for Plaintiff JOHN DOE XI, the exact amount to be determined by the jury at the time of trial;

23.     Non-economic damages by all Defendants for Plaintiff JOHN DOE XII, the exact amount to be determined by the jury at the time of trial;

24.     Economic damages by all Defendants for Plaintiff JOHN DOE XII, the exact amount to be determined by the jury at the time of trial;

25.     Non-economic damages by all Defendants for Plaintiff JOHN DOE XIII, the exact amount to be determined by the jury at the time of trial;

26.     Economic damages by all Defendants for Plaintiff JOHN DOE XIII, the exact amount to be determined by the jury at the time of trial;

27.     Non-economic damages by Defendant BSA for Plaintiff JOHN DOE XIV, the exact amount to be determined by the jury at the time of trial;

28.     Economic damages by Defendant BSA for Plaintiff JOHN DOE XIV, the exact amount to be determined by the jury at the time of trial;

29.     Non-economic damages by Defendant BSA for Plaintiff JOHN DOE XV, the exact amount to be determined by the jury at the time of trial;

30.     Economic damages by Defendant BSA for Plaintiff JOHN DOE XV, the exact amount to be determined by the jury at the time of trial;

31.     Non-economic damages by Defendant BSA for Plaintiff ███████ the exact amount to be determined by the jury at the time of trial; and

Page 56     **THIRD AMENDED COMPLAINT**

Highly Confidential

32.     Economic damages by Defendant BSA for Plaintiff ███████ the exact
amount to be determined by the jury at the time of trial;

33.     Non-economic damages by all Defendants for Plaintiff JOHN DOE XVI, the
exact amount to be determined by the jury at the time of trial;

34.     Economic damages by all Defendants for Plaintiff JOHN DOE XVI, the exact
amount to be determined by the jury at the time of trial;

35.     Non-economic damages by all Defendants for Plaintiff JOHN DOE XVII, the
exact amount to be determined by the jury at the time of trial;

36.     Economic damages by all Defendants for Plaintiff JOHN DOE XVII, the
exact amount to be determined by the jury at the time of trial;

37.     Non-economic damages by all Defendants for Plaintiff JOHN DOE XVIII, the
exact amount to be determined by the jury at the time of trial;

38.     Economic damages by all Defendants for Plaintiff JOHN DOE XVIII, the
exact amount to be determined by the jury at the time of trial;

39.     Non-economic damages by all Defendants for Plaintiff JOHN DOE XIX, the
exact amount to be determined by the jury at the time of trial;

40.     Economic damages by all Defendants for Plaintiff JOHN DOE XIX, the exact
amount to be determine by the jury at the time of trial;

41.     For Plaintiffs' disbursements and incurred costs;

42.     Attorney fees; and

43.     For any other relief this Court deems just and equitable.

/ / /

Highly Confidential

BSA-PLAN_01096703

SA 0585

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

DATED this 7th day of October, 2015.

CHASAN AND WALTON, LLC

/ s / Andrew M. Chasan
Andrew M. Chasan, ISB #2100
Timothy C. Walton, ISB #2170

*Of Attorneys for Plaintiffs*

Highly Confidential

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of October, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Stephen R. Thomas | srt@moffatt.com |
| Tyler J.  Anderson | tya@moffatt.com |
| Mindy M. Muller | mmw@moffatt.com, cih@moffatt.com |

*Attorneys for Defendant Boy Scouts of America*

| | |
|---|---|
| Thomas A. Banducci | tab@andersenbanducci.com |
| Brent Sidney Bastian | bsb@andersenbanducci.com |
| Wade L. Woodard | wlw@andersenbanducci.com |
| Alexander Dushku | adushku@kmclaw.com |
| Justin W. Starr | jstarr@kmclaw.com |

*Attorneys for Defendant Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-Day Saints and Defendant Corporation of the President of The Church of Jesus Christ of Latter-Day Saints and Successors*

_____/s/_____
Andrew M. Chasan, Attorney for Plaintiffs

Page 59    **THIRD AMENDED COMPLAINT**

Highly Confidential

DOCUMENT 2



ELECTRONICALLY FILED
12/26/2016 7:42 AM
02-CV-2016-902751.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY,

████████████████ a minor suing by and through his mother and next friend, ████████, and ████████████████ individually,

     PLAINTIFFS,          *     Case No. CV-2016-_____

vs.                     **TRIAL BY JURY DEMANDED**

BOY SCOUTS OF AMERICA CORPORATION, MOBILE AREA COUNCIL BOY SCOUTS OF AMERICA; BOY SCOUTS OF AMERICA TROOP 5082, a/k/a as TROOP 82; DAPHNE UNITED METHODIST CHURCH; SHANNON MILLER; STANETTE MILLER; STANLEY MILLER; DARYL EVANS; DAVID LADNIER; JACKIE LOMAX; STEVEN L. DAY, a/k/a STEVE DAY; DAN MORRIS; HARRY CHARLES BARTLE, a/k/a CHUCK BARTLE; TAMMY MILLER; CHARLES DUANE STEWART a/k/a CHIP STEWART, TERESA McCOY, COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; JONAS DUNAWAY, and

FICTITIOUS DEFENDANTS 1, 2, 3, 4, 5, THOSE PERSONS, FIRMS OR CORPORATIONS OR OTHER LEGAL ENTITIES RESPONSIBLE FOR THE INJURIES SUSTAINED BY ████████████ WHICH ARE THE SUBJECT MATTER OF THIS LAWSUIT, ALL OF SAID FICTITIOUS PARTIES ARE UNKNOWN TO PLAINTIFFS AT THIS TIME AND WILL BE ADDED BY AMENDMENT WHEN ASCERTAINED; FICTITIOUS DEFENDANTS 6, 7, 8, 9, 10 THOSE PERSONS, FIRMS OR CORPORATIONS OR OTHER LEGAL ENTITIES WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ████████ ████████ FICTITIOUS DEFENDANTS 11, 12, 13 INTENDED TO REFER TO THAT PERSON, FIRM, CORPORATION OR OTHER LEGAL ENTITY COMMONLY KNOWN AS **BOY SCOUTS OF AMERICA CORPORATION** WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ████████ ████████; FICTITIOUS DEFENDANTS 14, 15, 16 INTENDED TO REFER TO THAT PERSON, FIRM, CORPORATION OR OTHER LEGAL ENTITY COMMONLY KNOWN AS **MOBILE AREA COUNCIL BOY SCOUTS OF AMERICA** WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ████████; FICTITIOUS DEFENDANTS 17, 18, 19 INTENDED TO REFER TO THAT PERSON, FIRM, CORPORATION OR OTHER LEGAL ENTITY COMMONLY KNOWN AS **BOY SCOUTS OF AMERICA TROOP 5082** WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ████████████; FICTITIOUS DEFENDANTS 20, 21, 22 INTENDED TO REFER TO THAT PERSON, FIRM, CORPORATION OR OTHER LEGAL ENTITY COMMONLY KNOWN AS

**JTX-2920**

DOCUMENT 2

**DAPHNE UNITED METHODIST CHURCH** WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ███████████; AND FICTITIOUS DEFENDANTS 23, 24, 25 INTENDED TO REFER TO THAT PERSON, FIRM, CORPORATION OR OTHER LEGAL ENTITY **RESPONSIBLE FOR OVERSEEING THE IMPLEMENTATION AND ADHERENCE TO THE BOY SCOUT POLICIES ESTABLISHED TO PREVENT ABUSE OF CHILDREN** WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ███████████; ALL OF SAID FICTITIOUS PARTIES ARE UNKNOWN TO PLAINTIFFS AT THIS TIME AND WILL BE ADDED BY AMENDMENT WHEN ASCERTAINED

DEFENDANTS.                          *

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs, ████████████, a minor, by and through his next friend, ██████████████, and ████████████, in her individual capacity, and sue Defendants, BOY SCOUTS OF AMERICA, MOBILE AREA COUNCIL BOY SCOUTS OF AMERICA; BOY SCOUTS OF AMERICA TROOP 5082 a/k/a TROOP 82; DAPHNE UNITED METHODIST CHURCH; SHANNON MILLER; STANETTE MILLER; STANLEY MILLER; DARYL EVANS; DAVID LADNIER; JACKIE LOMAX; STEVEN L. DAY, a/k/a STEVE DAY (hereinafter referred to as STEVE DAY); DAN MORRIS; HARRY CHARLES BARTLE a/k/a CHUCK BARTLE (hereinafter referred to as CHUCK BARTLE); TAMMY MILLER; CHARLES DUANE STEWART a/k/a CHIP STEWART (hereinafter referred to as CHIP STEWART), TERESA McCOY, COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY, and allege:

2

BSA-PLAN_01099344
**SA 0589**

DOCUMENT 2

## **ALLEGATIONS CONCERNING PARTIES, JURISDICTION AND VENUE**

1.    This is an action for money damages in excess of the jurisdictional threshold over which this Court has subject matter jurisdiction.

2.    ████████████████ is the custodial parent of the Plaintiff ████████████, ████████, who is a minor.  She brings this action both on behalf of ████████, as his parent and next friend, and in her individual capacity. ████████████ and ████████████████ are both residents of Baldwin County, Alabama.

3.    Defendant BOY SCOUTS OF AMERICA CORPORATION (hereinafter referred to as "BSA") is a foreign corporation which at all times material conducted business operations in Mobile County, Alabama.  It is the highest authority in the Boy Scouts of America organizational hierarchy.

4.    Defendant MOBILE AREA COUNCIL BOY SCOUTS OF AMERICA (hereinafter "MAC") is a non-profit corporation organized and existing under Alabama law, which at all times material had its principal place of business in Mobile County, Alabama.

5.    Defendant BOY SCOUTS OF AMERICA TROOP 5082, a/k/a TROOP 82 (hereinafter "BSA TROOP 5082") is a local unit of the Boy Scouts of America organization, which exists pursuant to a Charter granted by BSA and/or MAC to the Defendant DAPHNE UNITED METHODIST CHURCH as hereinafter alleged. However, upon information and belief, BSA TROOP 5082 has never been organized as a separate corporation or other legal entity.

6.    Defendant DAPHNE UNITED METHODIST CHURCH (hereinafter "DAPHNE UNITED") is a non-profit corporation organized and existing under Alabama

3

BSA-PLAN_01099345
**SA 0590**

DOCUMENT 2

law, which at all times material had its principal place of business in Baldwin County, Alabama. Defendant DAPHNE UNITED was at all times material the sponsoring organization for Defendant BSA TROOP 5082, pursuant to a Charter issued to it by Defendants BSA and/or MAC.

7.      Defendants SHANNON MILLER; STANETTE MILLER; STANLEY MILLER; DARYL EVANS; DAVID LADNIER; JACKIE LOMAX; STEVE DAY; DAN MORRIS; CHUCK BARTLE; TAMMY MILLER; TERESA McCOY, and CHIP STEWART are all *sui juris* and residents of Baldwin County, Alabama, with the exception of DAN MORRIS, who is a resident of Santa Rosa County, Florida. Said Defendants are sued in their capacity as agents and/or members of the Troop Committee for BSA TROOP 5082 whose negligence, wantonness, recklessness, willfulness or other wrongful conduct caused injury to Plaintiff ███████████.

8.      Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY are residents of Baldwin County, Alabama. Said Defendants are minors whose negligence, wantonness, recklessness, willfulness or other wrongful conduct caused injury to Plaintiff ███████ ██████. *Plaintiff requests appointment of guardians ad litem to represent said Defendants in this action.*

9.      FICTITIOUS DEFENDANTS 1, 2, 3, 4, 5, THOSE PERSONS, FIRMS OR CORPORATIONS OR OTHER LEGAL ENTITIES RESPONSIBLE FOR THE INJURIES SUSTAINED BY ████████████ WHICH ARE THE SUBJECT MATTER OF THIS LAWSUIT, ALL OF SAID FICTITIOUS PARTIES ARE UNKNOWN TO PLAINTIFFS AT THIS TIME AND WILL BE ADDED BY AMENDMENT WHEN ASCERTAINED who are unknown as this time.

10.      FICTITIOUS DEFENDANTS 6, 7, 8, 9, 10 THOSE PERSONS, FIRMS OR CORPORATIONS OR OTHER LEGAL ENTITIES WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL

4

Highly Confidential



CONDUCT CAUSED THE INJURIES TO ██████████, who are unknown as this time.

11.     FICTITIOUS DEFENDANTS 11, 12, 13 INTENDED TO REFER TO THAT PERSON, FIRM, CORPORATION OR OTHER LEGAL ENTITY COMMONLY KNOWN AS **BOY SCOUTS OF AMERICA CORPORATION** WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ██████, who are unknown as this time.

12.     FICTITIOUS DEFENDANTS 14, 15, 16 INTENDED TO REFER TO THAT PERSON, FIRM, CORPORATION OR OTHER LEGAL ENTITY COMMONLY KNOWN AS **MOBILE AREA COUNCIL BOY SCOUTS OF AMERICA** WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ██████████, who are unknown as this time.

13.     FICTITIOUS DEFENDANTS 17, 18, 19 INTENDED TO REFER TO THAT PERSON, FIRM, CORPORATION OR OTHER LEGAL ENTITY COMMONLY KNOWN AS **BOY SCOUTS OF AMERICA TROOP 5082** WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ██████████, who are unknown as this time.

14.     FICTITIOUS DEFENDANTS 20, 21, 22 INTENDED TO REFER TO THAT PERSON, FIRM, CORPORATION OR OTHER LEGAL ENTITY COMMONLY KNOWN AS **DAPHNE UNITED METHODIST CHURCH** WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ██████████, who are unknown as this time.

15.     FICTITIOUS DEFENDANTS 23, 24, 25 INTENDED TO REFER TO THAT PERSON, FIRM, CORPORATION OR OTHER LEGAL ENTITY **RESPONSIBLE FOR OVERSEEING THE IMPLEMENTATION AND ADHERENCE TO THE BOY SCOUT POLICIES ESTABLISHED TO PREVENT ABUSE OF CHILDREN** WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS, WILLFULLNESS, OR OTHER WRONGFUL CONDUCT CAUSED THE INJURIES TO ██████████; ALL OF SAID FICTITIOUS PARTIES ARE UNKNOWN TO PLAINTIFFS AT THIS TIME AND WILL BE ADDED BY AMENDMENT WHEN ASCERTAINED, who are unknown as this time.

16.     Venue over this action is proper in this Court because the principal office of MAC is located in Mobile County, Alabama.

Highly Confidential

BSA-PLAN_01099347
**SA 0592**

DOCUMENT 2

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

17.     Defendant BSA is a non-profit organization chartered by the United States Congress.  It is the highest authority in the Boy Scouts of America organizational hierarchy.  In its exercise of such authority, BSA has formed a group of regional councils which issue charters to organize and operate local troops of the Boy Scouts to religious organizations and other civic entities which desire to sponsor such troops.

18.     Defendant MAC is the regional council of the BSA for the Southwest portion of the State of Alabama, having authority and jurisdiction over Boy Scout organizations and activities in such area, which includes Mobile, Baldwin, Washington and Clarke Counties.

19.     Defendants BSA and/or MAC issued a charter to Defendant DAPHNE UNITED to sponsor a Boy Scout Troop, and pursuant to such charter, DAPHNE UNITED formed BSA TROOP 5082.  DAPHNE UNITED thereafter recruited boys in the community to join BSA TROOP 5082, and designated certain individuals as agents and/or the Troop Committee of BSA TROOP 5082, although upon information and belief, BSA TROOP 5082 was never formally organized as a separate corporation or other legal entity.

20.     Plaintiff ████████████ was among the boys who joined BSA TROOP 5082 after Defendant DAPHNE UNITED obtained a charter to sponsor said troop and recruited boys to join it.

21.     In addition to exercising primary authority and jurisdiction over all BSA troops located within its jurisdictional territory, Defendant MAC is also the owner of

6

BSA-PLAN_01099348
SA 0593

DOCUMENT 2

Camp Maubila, which is located in Clarke County, Alabama. Camp Maubila is a parcel of mostly undeveloped land which MAC allows Boy Scout troops within its jurisdictional territory to use for purposes of camp-outs and other officially sanctioned scouting activities on a regular and recurring basis.

22.     On or about December 26, 2014 through December 29, 2014, Defendant MAC sponsored a multi-troop Boy Scout Winter Camp event at Camp Maubila, which the scouts of BSA TROOP 5082 were invited to attend, along with members of other Boy Scout Troops within the jurisdictional territory of Defendant MAC. In response to this invitation, several members of BSA TROOP 5082, including Plaintiff ████████, decided to attend the Winter Camp at Camp Maubila on these dates.

23.     On December 27, 2014, Plaintiff ████████████ was in attendance at the above-referenced scouting event at Camp Maubila. At approximately 8:00 p.m., Plaintiff and other members of BSA TROOP 5082 were around a campfire, along with the Scoutmaster and Assistant Scoutmasters of BSA TROOP 5082, who had come along on the camping event as supervisors, Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER; TERESA McCOY and CHIP STEWART. At that time and place, some of the Boy Scouts members expressed an interest in conducting what is known as a "Bear Call," which involves older scouts scaring other younger scouts by making unidentified sounds from concealed locations in the woods. "Bear Calls" are a form of initiation ritual which is frequently engaged in by boy scouts at BSA and MAC sanctioned events.

24.     After discussion of the matter, some of the scouts of BSA TROOP 5082, including Plaintiff ████████████, decided to go on a "Bear Call." Plaintiff

7

BSA-PLAN_01099349
SA 0594

DOCUMENT 2

████████████████ then departed the campfire area with six of the other boy scouts in

BSA TROOP 5082, Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE;

COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY.  What Plaintiff

████████████████ did not know at that time was that during the "Bear Call" events,

the older scouts of BSA Troop 5082 physically assault, haze, and bully younger members

of the Troop in a separate initiation process described as "lumps and stripes".  The

Plaintiff ████████████████ had no knowledge of this initiation process and did not

consent to the physical assault, hazing and bullying.  None of the adults who were present

around the campfire when the "Bear Call" was discussed accompanied the scouts as they

left the area where the rest of BSA TROOP 5082 remained.

25.    After Plaintiff and the other six scouts had left the campfire area, one of

the scouts gave a verbal signal to the others, following which the other six scouts who

were present proceeded to assault, batter and unlawfully imprison Plaintiff.  In addition to

physically striking Plaintiff and verbally belittling and threatening him, the other scouts

removed all of Plaintiff's clothing except for his underwear, and then bound him with

rope and tied him to a tree.  They then beat Plaintiff and made verbal taunts and threats of

additional beatings toward him while he was tied to the tree, following which they left

Plaintiff alone and tied to the tree for an extended period of time, in inclement weather

conditions of near-freezing temperatures and rain.  After being abandoned while tied to

the tree in this fashion, Plaintiff called out for help repeatedly but received no response,

before eventually freeing himself from his bondage.

26.    As a direct and proximate result of the above-referenced acts of

negligence, wantonness, recklessness, willfulness or other wrongful conduct by

8

BSA-PLAN_01099350
SA 0595

DOCUMENT 2

Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL;
CHARLIE STEWART; and JONAS DUNAWAY, Plaintiff ███████████ was
injured in and about his body and extremities, including aggravation of a pre-existing
condition, suffered pain therefrom, and will incur future medical expenses in the
treatment of the injuries after he attains the age of majority. In addition to said physical
injuries, Plaintiff ███████████ also suffered mental and/or emotional injuries,
including but not limited to post traumatic stress disorder and major depressive disorder.
As a result of said physical, mental, and emotional injuries, Plaintiff's ability to work was
impaired and his future earning capacity diminished. Plaintiff's injuries are either
permanent or continuing in nature and Plaintiff will suffer the losses and impairment in
the future.

### COUNT I

### CLAIM OF ███████████ AGAINST DEFENDANTS COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY

Plaintiff ███████████ sues Defendants COLE PHILLIPS; KEITH
McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS
DUNAWAY and alleges:

27.     Plaintiffs reallege Paragraphs 1 through 26 above.

28.     Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE;
COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY committed acts of
negligence, wantonness, recklessness, willfulness or other wrongful conduct against
Plaintiff ███████████, including but not limited to verbally assaulting and

9

BSA-PLAN_01099351
SA 0596

physically battering him, falsely imprisoning him, and intentionally inflicting emotional distress upon him by socially outrageous conduct calculated to cause such distress.

29.    As a direct and proximate result of the wrongful conduct of Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY as alleged, Plaintiff ████████████ was injured as alleged in Paragraph 26 above.

30.    Plaintiff ████████████ claims punitive damages against Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY due to said Defendants' wanton conduct as alleged.

WHEREFORE, Plaintiff ████████████ demands judgment against Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY, jointly and severally, for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

## COUNT II

### CLAIM OF ████████████ AGAINST DEFENDANTS COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY

Plaintiff ████████████ sues Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY and alleges:

31.    Plaintiffs reallege Paragraphs 1 through 30 above.

10

Highly Confidential

DOCUMENT 3



ELECTRONICALLY FILED
12/26/2016 7:42 AM
02-CV-2016-902751.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

32.     Plaintiff ███████████████ is the natural p███████████████

███████████████

33.     As a proximate result of the negligence, wantonness, recklessness, willfulness or other wrongful conduct of Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY as alleged, Plaintiff ███████████████ was caused to lose the society and services of ███████████████ Plaintiff ███████████████ has also been injured as a result of having incurred medical expenses for the care and treatment of ███████████████, and Plaintiff ███████████████ will continue to incur such expenses in the future until ███████████████ attains the age of majority.

WHEREFORE, Plaintiff ███████████████ demands judgment against Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY, jointly and severally, for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

## COUNT III

### CLAIM OF ███████████████ AGAINST BSA

Plaintiff ███████████████ sues BSA and alleges:

34.     Plaintiffs reallege Paragraphs 1 through 33 above.

35.     Defendant BSA possesses the authority and power to supervise and control the activities of regional councils in the Boy Scouts organization such as MAC, as well as local troops such as BSA TROOP 5082.

11

BSA-PLAN_01099353

SA 0598

DOCUMENT 3

36.     As a result of its authority and power to supervise and control activities of regional and local units of the Boy Scouts organization, as well as a special relationship between BSA and boys who choose to become members of the Boy Scouts, BSA owed a duty of care to Plaintiff ███████████ and other scouts to exercise reasonable care to protect such scouts from foreseeable injury due to negligence, wantonness, recklessness, willfulness or other wrongful conduct of other scouts or other third parties associated with the Boy Scouts organization.

37.     Defendant BSA failed to exercise reasonable care to protect ███████ ███████ from foreseeable injury due to negligent, willful, wanton, reckless or other wrongful conduct by other scouts. Its failures in this respect included, but were not limited to, failing to insure that all scouts were subject to direct adult supervision at all times, and that the formal BSA rules prohibiting "hazing" and "bullying" were implemented and enforced at scouting-sponsored events.

38.     As a direct, foreseeable and proximate result of the negligence, wantonness, recklessness, willfulness or other wrongful conduct of BSA as alleged, Plaintiff ███████████ was subjected to the criminal acts of Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY as alleged above, and suffered injuries resulting therefrom as alleged in Paragraph 26 above.

39.     Plaintiff ███████████ claims punitive damages against Defendant BSA due to said Defendant's wanton conduct as alleged.

WHEREFORE, Plaintiff ███████████ demands judgment against Defendant BSA for both compensatory and punitive damages in excess of the

12

Highly Confidential

DOCUMENT 3

jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

<div align="center">

**COUNT IV**

</div>



**CLAIM OF** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **AGAINST DEFENDANT BSA**

Plaintiff ▓▓▓▓▓▓▓▓▓▓▓▓ sues Defendant BSA and alleges:

40.     Plaintiffs reallege Paragraphs 1 through 39 above.

41.     Plaintiff ▓▓▓▓▓▓▓▓▓▓▓▓▓ is the natural parent and next friend of ▓▓▓▓▓▓▓▓▓▓.

42.     As a proximate result of the negligence, wantonness, recklessness, willfulness or other wrongful conduct of Defendant BSA as alleged, Plaintiff ▓▓▓▓ ▓▓▓▓▓▓▓ was caused to lose the society and services of ▓▓▓▓▓▓▓▓▓▓▓▓. Plaintiff ▓▓▓▓▓▓▓▓ has also been injured as a result of having incurred medical expenses for the care and treatment of ▓▓▓▓▓▓▓▓▓▓, and Plaintiff ▓▓▓▓▓▓▓▓▓▓ will continue to incur such expenses in the future until ▓▓▓▓▓▓▓▓ ▓▓▓▓ attains the age of majority.

WHEREFORE, Plaintiff ▓▓▓▓▓▓▓▓▓▓▓ demands judgment against Defendant BSA for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

<div align="center">

**COUNT V**

**CLAIM OF** ▓▓▓▓▓▓▓▓▓▓▓▓▓ **AGAINST MAC**

</div>

Plaintiff ▓▓▓▓▓▓▓▓▓▓ sues BSA and alleges:

43.     Plaintiffs reallege Paragraphs 1 through 26 above.

<div align="center">13</div>

BSA-PLAN_01099355
**SA 0600**

DOCUMENT 3

44.   Defendant MAC possesses the authority and power to supervise and control the activities of local troops in the Boy Scouts organization within its geographic area, including BSA TROOP 5082.

45.   As a result of its authority and power to supervise and control the activities of Boy Scout troops in the Southwest Alabama region, including BSA TROOP 5082, as well as a special relationship between MAC and boys who choose to become members of Boy Scout troops within the geographic area within MAC's jurisdiction, MAC owed a duty of care to Plaintiff ███████████ and other members of BSA TROOP 5082 to exercise reasonable care to protect such scouts from foreseeable injury due to negligence, wantonness, recklessness, willfulness or other wrongful conduct of other scouts or other third parties associated with the Boy Scouts organization.

46.   Defendant MAC also owed a duty of care to Plaintiff ███████ ███████, as a result of MAC's status as the owner of Camp Maubila, which gave it the authority and power to control the use of such property by persons to whom MAC chose to allow access to Camp Maubila.  As a result of such right of control, Defendant MAC owed a duty of care to Plaintiff ███████████ and other persons attending the Winter Camp at Camp Maubila on December 26, 2014 to December 29, 2014, to exercise reasonable care to control and supervise the actions of persons at the camp in order to prevent such persons from injuring others.  Defendant MAC was subject to such duty of control and supervision because it knew or should have known that criminal "hazing" incidents similar in nature to that inflicted upon Plaintiff ███████████ had previously occurred at other scouting-sponsored events.

14

BSA-PLAN_01099356
SA 0601

DOCUMENT 3

47.   Defendant MAC failed to exercise reasonable to protect the Plaintiff ██████████████ from foreseeable injury due to negligent, willful, wanton, reckless or other wrongful conduct by other scouts. Its failures in this respect included, but were not limited to, failing to insure that all scouts were subject to direct adult supervision at all times, and that the formal BSA rules prohibiting "hazing" and "bullying" were implemented and enforced at scouting-sponsored events.

48.   As a direct, foreseeable and proximate result of the negligence, wantonness, recklessness, willfulness or other wrongful conduct of MAC as alleged, Plaintiff ██████████████ was subjected to the criminal acts of Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY as alleged above, and suffered injuries resulting therefrom as alleged in Paragraph 26 above.

49.   Plaintiff ██████████████ claims punitive damages against Defendant MAC due to said Defendant's wanton conduct as alleged.

WHEREFORE, Plaintiff ██████████████ demands judgment against Defendant MAC for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

## COUNT VI

### CLAIM OF ██████████████ AGAINST DEFENDANT MAC

Plaintiff ██████████████ sues Defendant MAC and alleges:

50.   Plaintiffs reallege Paragraphs 1 through 49 above.

15

BSA-PLAN_01099357
SA 0602

DOCUMENT 3

51.     Plaintiff ███████████ is the natural parent and next friend of ████████████.

52.     As a proximate result of the negligence, wantonness, recklessness, willfulness or other wrongful conduct of Defendant MAC as alleged, Plaintiff ████████ ████████ was caused to lose the society and services of ████████████. Plaintiff ████████████ has also been injured as a result of having incurred medical expenses for the care and treatment of ████████████, and Plaintiff ████████████ will continue to incur such expenses in the future until ████████ ████████ attains the age of majority.

WHEREFORE, Plaintiff ████████████ demands judgment against Defendant MAC for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

### COUNT VII

### CLAIM OF ████████████ AGAINST DEFENDANTS SHANNON MILLER; STANETTE MILLER; STANLEY MILLER; DARYL EVANS; DAVID LADNIER; JACKIE LOMAX; STEVE DAY; AND DAN MORRIS

████████████ sues Defendants SHANNON MILLER; STANETTE MILLER; STANLEY MILLER; DARYL EVANS; DAVID LADNIER; JACKIE LOMAX; STEVE DAY; and DAN MORRIS, and alleges:

53.     Plaintiffs reallege Paragraphs 1 through 26 above.

54.     Defendants SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, and

16

Highly Confidential

DAN MORRIS, with the consent and authority of Defendant DAPHNE UNITED, the organization with the charter to form and operate BSA TROOP 5082, undertook to act as the Troop Committee for BSA TROOP 5082. As the Troop Committee for BSA TROOP 5082, said Defendants had the power and authority to set rules concerning the conduct of Boy Scouts at scouting-related events or activities in which BSA TROOP 5082 was involved.

55.     Due to the power and authority resulting from their status as members of the Troop Committee for BSA TROOP 5082, as well as a special relationship between BSA TROOP 5082 and boys who choose to become members of BSA TROOP 5082, Defendants SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, and DAN MORRIS each owed a duty of care to Plaintiff ███████████ and other members of BSA TROOP 5082 to exercise reasonable care to protect such scouts from foreseeable injury due to negligence, wantonness, recklessness, willfulness or other wrongful conduct of other scouts or other third parties associated with the Boy Scouts organization.

56.     Defendants SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, and DAN MORRIS failed to exercise reasonable to protect ███████████ from foreseeable injury due to negligent, willful, wanton, reckless or other wrongful conduct by other scouts. Their failures in this respect included, but were not limited to, failing to insure that all scouts were subject to direct adult supervision at all times, and that the formal BSA rules prohibiting "hazing" and "bullying" were implemented and enforced at scouting-related events and activities in which BSA TROOP 5082 was participating.

17

BSA-PLAN_01099359

SA 0604

DOCUMENT 3

57.     As a direct, foreseeable and proximate result of the negligence, wantonness, recklessness, willfulness or other wrongful conduct of Defendants SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, and DAN MORRIS as alleged, Plaintiff ████████████ was subjected to the criminal acts of Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE; COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY as alleged above, and suffered injuries resulting therefrom as alleged in Paragraph 26 above.

58.     Plaintiff ████████████ claims punitive damages against Defendants SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, and DAN MORRIS due to said Defendants' wanton conduct as alleged.

WHEREFORE, Plaintiff ████████████ demands judgment against Defendants SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, and DAN MORRIS, jointly and severally, for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

18

Highly Confidential

DOCUMENT 3



## COUNT VIII

### CLAIM OF ███████████ AGAINST DEFENDANTS SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, AND DAN MORRIS

Plaintiff ███████████ sues Defendants SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, and DAN MORRIS and alleges:

59.     Plaintiffs reallege Paragraphs 1 through 58 above.

60.     Plaintiff ███████████ is the natural parent and next friend of ███████████.

61.     As a proximate result of the negligence, wantonness, recklessness, willfulness or other wrongful conduct of Defendants SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, and DAN MORRIS as alleged, Plaintiff JENNY OPAL WHITE was caused to lose the society and services of ███████████ Plaintiff ███████████ has also been injured as a result of having incurred medical expenses for the care and treatment of ███████████, and Plaintiff ███████████ will continue to incur such expenses in the future until ███████████ attains the age of majority.

WHEREFORE, Plaintiff ███████████ demands judgment against Defendants SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, and DAN MORRIS for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

19

BSA-PLAN_01099361
SA 0606

DOCUMENT 3

## COUNT IX

### CLAIM OF ███████ AGAINST DEFENDANTS SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA McCOY AND CHIP STEWART

Plaintiff ███████ sues Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA McCOY and CHIP STEWART, and alleges:

62.     Plaintiffs reallege Paragraphs 1 through 19 above.

63.     Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA McCOY, and CHIP STEWART, with the consent and authority of Defendant DAPHNE UNITED, the organization with the charter to form and operate BSA TROOP 5082, undertook to act as agents of BSA TROOP 5082. Specifically, SHANNON MILLER acted as Scoutmaster for BSA TROOP 5082 and Winter Camp Director; Defendant CHUCK BARTLE acted as Scout Master and Winter Camp Leader, while Defendant CHIP STEWART was an Assistant Scout Master and Winter Camp Leader; TAMMY MILLER was an Assistant Scoutmaster; and TERESA McCoy was an Assistant Leader. As the Scoutmaster, Assistant Scoutmasters, Leaders and Assistant Leader for BSA TROOP 5082, respectively, said Defendants had the power and authority to control and supervise the conduct of members of BSA TROOP 5082 at scouting-related events or activities in which BSA TROOP 5082 was involved.

64.     Due to their status as the Scoutmaster and Assistant Scoutmasters for BSA TROOP 5082 and authority resulting from such status, as well as a special relationship between BSA TROOP 5082 and boys who choose to become members of BSA TROOP 5082, Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER,

20

BSA-PLAN_01099362
**SA 0607**

DOCUMENT 4

ELECTRONICALLY FILED
12/26/2016 7:42 AM
02-CV-2016-902751.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

TERESA McCOY, and CHIP STEWART each owed a duty of c███ ███████ and other members of BSA TROOP 5082 to exercise reasonable care to protect such scouts from foreseeable injury due to negligence, wantonness, recklessness, willfulness or other wrongful conduct of other scouts or other third parties associated with the Boy Scouts organization.

65.    Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA McCOY ,and CHIP STEWART failed to exercise reasonable care to protect ███████████████ from foreseeable injury due to negligent, willful, wanton, reckless or other wrongful conduct by other scouts.   Their failures in this respect included, but were not limited to, failing to insure that all scouts were subject to direct adult supervision at all times, and that the formal BSA rules prohibiting "hazing" and "bullying" were implemented and enforced at scouting-related events and activities in which BSA TROOP 5082 was participating.   In addition, although Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA McCOY and CHIP STEWART were all present around the campfire at Camp Maubila on December 27, 2014, at the time when Plaintiff ███████████ and other scouts left the area to go on a "Bear Call," none of said Defendants prevented the boys from leaving the campfire area, nor did any of said Defendants accompany the boys when they left the campfire area.

66.    As a direct, foreseeable and proximate result of the negligence, wantonness, recklessness, willfulness or other wrongful conduct of Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA McCOY, and CHIP STEWART as alleged, Plaintiff ███████████ was subjected to the

21

Highly Confidential

BSA-PLAN_01099363
SA 0608

DOCUMENT 4

criminal acts of Defendants COLE PHILLIPS; KEITH McCOY; JESSE BARTLE;

COLBY DANIEL; CHARLIE STEWART; and JONAS DUNAWAY as alleged above,

and suffered injuries resulting therefrom as alleged in paragraph 19 above.

    67.    Plaintiff ████████████ claims punitive damages against

Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA

McCOY , and CHIP STEWART due to said Defendants' wanton conduct as alleged.

    WHEREFORE, Plaintiff ████████████ demands judgment against

Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA

McCOY, and CHIP STEWART jointly and severally, for both compensatory and

punitive damages in excess of the jurisdictional threshold of this Honorable Court as

determined by a jury, plus interest and costs.

## COUNT X

### CLAIM OF ███████████ AGAINST DEFENDANTS SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA McCOY AND CHIP STEWART

Plaintiff ███████████ sues Defendants SHANNON MILLER, CHUCK

BARTLE, TAMMY MILLER, TERESA McCOY, and CHIP STEWART and alleges:

    68.    Plaintiffs reallege paragraphs 62 through 67 above.

    69.    Plaintiff ████████████ is the natural parent and next friend of

████████████.

    70.    As a proximate result of the negligence, wantonness, recklessness,

willfulness or other wrongful conduct of Defendants SHANNON MILLER, CHUCK

BARTLE, TAMMY MILLER, TERESA McCOY, and CHIP STEWART as alleged,

Plaintiff ████████████ was caused to lose the society and services of ██████

22

BSA-PLAN_01099364
SA 0609

DOCUMENT 4

███████, Plaintiff ████████████ has also been injured as a result of having incurred medical expenses for the care and treatment of ████████████, and Plaintiff ██████████ will continue to incur such expenses in the future until ████████████ attains the age of majority.

WHEREFORE, Plaintiff ████████████ demands judgment against Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA McCOY, and CHIP STEWART, jointly and severally, for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

<div align="center">

### COUNT XI

### CLAIM OF ████████████ AGAINST BSA TROOP 5082

</div>

Plaintiff ████████████ sues Defendant BSA TROOP 5082 and alleges:

71.    Plaintiffs reallege Paragraphs 53 through 58 and 62 through 67 above.

72.    The negligence, wantonness, recklessness, willfulness or other wrongful conduct of Defendants SHANNON MILLER, STANETTE MILLER, STANLEY MILLER, DARYL EVANS, DAVID LADNIER, JACKIE LOMAX, STEVE DAY, and DAN MORRIS as alleged above in Count VII occurred within the scope of authority of such Defendants as agents of BSA TROOP 5082, as a result of which BSA TROOP 5082 is liable for damages resulting from such wrongful conduct under the doctrine of *respondeat superior.*

73.    In addition, the negligence, wantonness, recklessness, willfulness or other wrongful conduct of Defendants SHANNON MILLER, CHUCK BARTLE, TAMMY MILLER, TERESA McCOY, and CHIP STEWART as alleged in Count IX above

<div align="center">23</div>

BSA-PLAN_01099365
**SA 0610**

DOCUMENT 4

occurred within the scope of authority of such Defendants as agents of BSA TROOP 5082, as a result of which BSA TROOP 5082 is liable for damages resulting from such wrongful conduct under the doctrine of *respondeat superior.*

WHEREFORE, Plaintiff ████████████ demands judgment against Defendant BSA TROOP 5082 for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

## COUNT XII

### CLAIM OF ███████████ AGAINST DEFENDANT BSA TROOP 5082

Plaintiff ██████████ sues Defendant BSA TROOP 5082 and alleges:

74.    Plaintiffs reallege Paragraphs 71 through 73 above.

75.    Plaintiff ████████████ is the natural parent and next friend of ███████████.

76.    As a proximate result of the negligence, wantonness, recklessness, willfulness or other wrongful conduct of agents of Defendant BSA TROOP 5082, as alleged, Plaintiff ███████████ was caused to lose the society and services of ███████████. Plaintiff ███████████ has also been injured as a result of having incurred medical expenses for the care and treatment of ███████████, and Plaintiff ███████████ will continue to incur such expenses in the future until ███████████ attains the age of majority.

24

Highly Confidential

DOCUMENT 4

WHEREFORE, Plaintiff ███████████ demands judgment against Defendant BSA TROOP 5082 for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

## COUNT XIII

### CLAIM OF  AGAINST DAPHNE UNITED

Plaintiff ███████████ sues Defendant DAPHNE UNITED and alleges:

77.     Plaintiffs reallege Paragraphs 71 through 73 above.

78.     Defendant DAPHNE UNITED, having received a charter to form and operate BSA TROOP 5082, undertook to organize and operate such Troop, and invited Plaintiff ███████████ and other boys to join BSA TROOP 5082. However, DAPHNE UNITED never formed or organized a separate corporation or other legal entity to act as BSA TROOP 5082, as a result of which BSA TROOP 5082 constitutes part of DAPHNE UNITED's own activities. Accordingly, DAPHNE UNITED is vicariously liable for negligence, wantonness, recklessness, willfulness or other wrongful conduct of agents of BSA TROOP 5082 within the scope of their authority as agents, because such persons also are agents of DAPHNE UNITED.

WHEREFORE, Plaintiff ███████████ demands judgment against Defendant DAPHNE UNITED for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

25

BSA-PLAN_01099367
SA 0612



### COUNT XIV

__CLAIM OF__ ▆▆▆▆▆▆▆ __AGAINST DEFENDANT DAPHNE UNITED__

Plaintiff ▆▆▆▆▆▆▆ sues Defendant DAPHNE UNITED and alleges:

79.     Plaintiffs reallege Paragraphs 77 through 78 above.

80.     Plaintiff ▆▆▆▆▆▆▆ is the natural parent and next friend of ▆▆▆▆▆▆▆.

81.     As a proximate result of the negligence, wantonness, recklessness, willfulness or other wrongful conduct of agents of Defendant DAPHNE UNITED, as alleged, Plaintiff ▆▆▆▆▆▆▆ was caused to lose the society and services of ▆▆▆▆▆▆▆. Plaintiff ▆▆▆▆▆▆▆ has also been injured as a result of having incurred medical expenses for the care and treatment of ▆▆▆▆▆▆▆, and Plaintiff ▆▆▆▆▆▆▆ will continue to incur such expenses in the future until ▆▆▆▆▆▆▆ attains the age of majority.

WHEREFORE, Plaintiff ▆▆▆▆▆▆▆ demands judgment against Defendant DAPHNE UNITED for both compensatory and punitive damages in excess of the jurisdictional threshold of this Honorable Court as determined by a jury, plus interest and costs.

26

BSA-PLAN_01099368
SA 0613

DOCUMENT 4

### DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all issues so triable.



Respectfully submitted,

███████████████████, as Mother and
Next Friend of ███████████
Plaintiff

███████████████████, Individually

Plaintiff

HAROLD A. KOONS, III (KOO001)
Attorney for Plaintiff
Post Office Box 1234
Bay Minette, Alabama  36507
(251) 239-5550
hkoonsiii@aol.com

STATE OF ALABAMA

COUNTY OF BALDWIN

Before me, the undersigned authority, personally appeared ███████████, as Mother and Next Friend of ███████████, and Individually, who is known to me, and who being by me first duly and legally sworn, deposed and stated that the facts contained in the foregoing Complaint are true and correct to the best of her knowledge, information and belief.

SWORN to and subscribed before me this 23RD day of December, 2016.

NOTARY PUBLIC
My Commission Expires: 02/10/2020

27

Highly Confidential

DOCUMENT 4

**PLEASE SERVE THE FOLLOWING DEFENDANTS BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, AS FOLLOWS:**

Boy Scouts of America Corporation
c/o Ms. Linda Hill
516 Liberty Parkway
Birmingham, Alabama  35242

Mobile Area Council Boy Scouts of America
Dr. Monte L. Moorer Service Center
2587 Government Boulevard
Mobile, Alabama   36606

Boy Scouts of America Troop 5082, a/k/a as Troop 82
c/o Daphne United Methodist Church
2401 Main Street
Daphne, Alabama   36526

Daphne United Methodist Church
2401 Main Street
Daphne, Alabama   36526

Dan Morris
75 Fairpoint Drive
Gulf Breeze, Florida  32561

THE FOLLOWING DEFENDANTS ARE TO BE SERVED BY PRIVATE PROCESS SERVER AS FOLLOWS:

Shannon Miller
25881 Kensington Way
Daphne, Alabama  36526

Stanette Miller
25881 Kensington Way
Daphne, Alabama  36526

Stanley Miller
25881 Kensington Way

28

BSA-PLAN_01099370

SA 0615

DOCUMENT 4

Daphne, Alabama  36526

Daryl Evans
105 Rainer Circle
Daphne, Alabama  36526

David Ladnier
119 Fairway Drive
Daphne, Alabama  36526

Jackie Lomax
7930 Eagle Creek Drive
Daphne, Alabama  36526

Steven L. Day, a/k/a Steve Day
27300 Parker Lane
Daphne, Alabama  36526

Harry Charles Bartle
153 Rolling Hill Drive
Daphne, Alabama

Tammy Miller
c/o Infirmary Health
7101 U. S. Highway 90
Daphne, Alabama  36526

Teresa McCoy
32589 Buzbee Road
Spanish Fort, Alabama  36527

Charles Duane Stewart, a/k/a Chip Stewart
7816 Cliffs Landing Road
Apartment A
Bay Minette, Alabama  36507

Cole Phillips
4 General Canby Drive
Spanish Fort, AL 36527

Keith McCoy
32589 Buzbee Road
Spanish Fort, Alabama  36527

Jesse Bartle
153 Rolling Hill Drive

29

DOCUMENT 4

Daphne, Alabama

Colby Daniel
8254 County Road 64
Unit 3102
Daphne, Alabama   36526

Charlie Stewart
7816 Cliffs Landing Road
Apartment A
Bay Minette, Alabama   36507

Jonas Dunaway
111 Sweetbriar Circle
Daphne, Alabama   36526

30

BSA-PLAN_01099372

SA 0617

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to do
business in and SILVER SPRINGS
SHORES PRESBYTERIAN CHURCH,
INC. a corporation authorized to do
business in Florida,

      Defendant

_____ /

Case No. _____

(Removal from: Circuit Court,
Fifth  Judicial Circuit in
and for Marion County, Florida)

**JTX-2921**

## NOTICE OF REMOVAL

      Pursuant to 28 U.S.C. §§ 1334 and 1452(a), Defendant, Boy Scouts of America (the

"BSA"), hereby remove this action, which has been pending as  Case No. 2016-CA-000167 in

the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida (the

"Action") to the United States District Court for the Southern District of Florida, pursuant to 28

U.S.C. § 1334 and 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and in support thereof, state as follows:

### BACKGROUND

      1.     The BSA is a non-profit corporation founded in 1910 and chartered by an act of

Congress in 1916.  The BSA is one of the largest youth organizations in the United States and

one of the largest Scouting organizations in the world, with approximately 2.2 million registered

Highly Confidential

youth participants and approximately 800,000 adult volunteers as of December 2019.  The BSA's mission is to train youth in responsible citizenship, character development, and self-reliance through participation in a wide range of outdoor activities, educational programs, and, at older age levels, career-oriented programs in partnership with community organizations.

2.      On January 27, 2016 Plaintiff commenced the Action by filing a complaint (the "Complaint") in the Circuit Court of the Fifth Judicial Circuit for Marion County, Florida (the "State Court") against the Defendants.  In the Complaint, Plaintiff alleges, among other things, that the BSA is liable in connection with certain personal injury tort claims stemming from abuse suffered by Plaintiff.  The Action is one of approximately 290 similar civil actions currently pending in state and federal courts across the country that assert personal injury tort claims against the BSA and various non-debtor co-defendants arising from the abuse of a former youth or adult member of the BSA either by an adult scouting leader, an adult volunteer, or by another youth member (such cases and claims together, the "Pending Abuse Actions").[1]

3.      On February 18, 2020, the BSA and Delaware BSA, LLC, an affiliated non-profit corporation, each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").  The chapter 11 cases are being jointly administered under the caption *In re: Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-[x] (collectively, the "Chapter 11 Cases").

4.      In connection with the filing of this Notice of Removal, the BSA is filing its Motion to Transfer Venue (the "Nationwide Transfer Motion") pursuant to 28 U.S.C §§ 157(b)(5) and 1334(b), in the United States District Court for the District of Delaware (the

---

[1] A complete list of the Pending Abuse Actions that are sought to be transferred pursuant to the Nationwide Transfer Motion (as defined and discussed below) will be set forth in an exhibit thereto.

Highly Confidential

BSA-PLAN_01422365
**SA 0619**

"Delaware District Court").  The Nationwide Transfer Motion seeks to consolidate the Pending

Abuse Actions into the Delaware District Court.

5.       Pursuant to section 157(b)(5), the Delaware District Court has the exclusive

authority to fix venue of personal injury tort claims, including the Pending Abuse Actions, that

are related to the Chapter 11 Cases.  *See* 28 U.S.C. § 157(b)(5) ("The district court shall order

that personal injury tort and wrongful death claims shall be tried in the district court in which the

bankruptcy case is pending, or in the district court in the district in which the claim arose, *as*

*determined by the district court in which the bankruptcy case is pending*." (emphasis added));

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) ("Section 157(b)(5) . . .

expressly confers on the district court sitting in bankruptcy and having jurisdiction of the

bankruptcy proceedings the power to fix the venue of any tort case against the debtor in other

districts."); *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 708 (D. Del. 2006) ("Because the

Flintkote bankruptcy is pending in the United States Bankruptcy Court for the District of

Delaware, [the Delaware District Court] has the sole authority to determine the appropriate

venue for the California Action which alleges personal injury tort and wrongful death claims

against, among others, the non-debtor ITCAN."); *see also* 1 COLLIER ON BANKRUPTCY ¶ 3.06

(Richard Levin & Henry J. Sommer eds., 16 ed.) ("Section 157(b)(5) provides that the venue of

the PITWD trial is to be determined by the district court in which the title 11 case is pending.

This unusual, perhaps unique, provision empowers a court other than that in which the litigation

is pending to decide where the trial is to take place.").

6.       Through the Nationwide Transfer Motion, and consistent with the purpose of

section 157(b)(5), the BSA seeks to consolidate the Pending Abuse Actions in a single

centralized forum in Delaware, where the Chapter 11 Cases are pending, to allow for an efficient

Highly Confidential

and equitable resolution of all Pending Abuse Actions. *See Coker v. Pan Am. Corp. (In re Pan Am. Corp.)*, 950 F.2d 839, 845 (2d Cir. 1991) ("[T]he manifest purpose of section 157(b)(5) was 'to centralize the administration of the estate and to eliminate the multiplicity of forums for the adjudication of parts of a bankruptcy case.'" (quoting *A.H. Robins Co.*, 788 F.2d at 1011)); *Hopkins*, 342 B.R. at 716 ("The purpose of Section 157(b)(5) is to centralize the administration of the bankruptcy estate and eliminate having multiple forums adjudicate different parts of the bankruptcy case.").

7.       By this Notice of Removal, the BSA removes the Action from the State Court to this Court.  Such removal will facilitate the transfer of the Action to the Delaware District Court, as part of the broader transfer and consolidation of all Pending Abuse Actions pursuant to the Nationwide Transfer Motion.   Because the Delaware District Court, in considering the Nationwide Transfer Motion, will have the exclusive authority to fix the venue for the trial of the Pending Abuse Actions (including the Action), the BSA respectfully submits that this Court should refrain from taking any further action in this case, including any decisions with respect to any motions to remand or abstain therefrom, pending the decision of the Delaware District Court as to the appropriate venue for this Action.  *See, e.g., A.A. v. Society of Jesus*, No. C09-00262 (MJP), 2009 WL 10676663, at *2 (W.D. Wash. May 7, 2009) (reserving ruling on motion to remand abuse related claims against non-debtor defendant pending decision on 157(b)(5) transfer motion by district court in which co-defendant's bankruptcy was pending); *George Junior Republic in Penn. v. Williams*, 2008 WL 763304, at *5 (E.D. Pa. Mar. 19, 2008) (transferring removed action to district court where bankruptcy case was pending because that court was in the best position to evaluate whether remand was appropriate); *Whittingham v. CLC of Laurel, LLC*, No. 2:06cv11-KS-MTP, 2006 WL 2423104, at *1 (S.D. Miss. Aug. 22, 2006) (denying

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza • Suite 900 • Miami, FL 33131 • Phone 305.377.0700 • Fax 305.377.3001 • www.cspalaw.com

Highly Confidential                                                                    BSA-PLAN_01422367

SA 0621

motion for remand and/or abstention because "[o]ne venue needs to manage the legal issues" and district court where bankruptcy case was pending should consider such issues); *Wise v. Cypress Manor Care Center Inc.*, No. Civ. A. 05-1555, 2006 WL 149032, at *2 (W.D. La. Jan 19. 2006) ("Whether to abstain or proceed, however, as with transfer under section 157(b)(5), is a question for the district court in which the bankruptcy is pending, not this Court."); *In re Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 123 (N.D. Ind. 1995) (staying all proceedings to allow 157(b)(5) motion to be presented to and decided by district court where bankruptcy was pending).

## GROUNDS FOR REMOVAL

8.      Removal of the Action is proper pursuant to 28 U.S.C. §§ 1334 and 1452(a).

9.      Section 1452(a), which governs the removal of civil actions related to a bankruptcy case, such as the Action, provides:

> A party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

10.     Section 1334(b), in turn, provides in relevant part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b).  In enacting section 1334(b), "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).  Jurisdiction over a proceeding that is "related to" a bankruptcy case, such as the Action is to the Chapter 11 Cases, is the "broadest of the potential paths to bankruptcy jurisdiction." *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 163 (3d Cir. 2004); *see also SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333,

Highly Confidential

BSA-PLAN_01422368
SA 0622

340 (2d Cir. 2018) ("While 'related-to' jurisdiction is not limitless, it is fairly capacious … ." (internal citations omitted)); *Coen v. Stutz (In re CDC Corp.)*, 610 F. App'x 918, 921 (11th Cir. 2015) ("This 'related to' jurisdiction is 'extremely broad.'" (quotation omitted)); *Boston Regional Med. Ctr., Inc. v. Reynolds (In re Boston Regional Med. Ctr., Inc.)*, 410 F.3d 100, 106 (1st Cir. 2005) ("The statutory grant of 'related to' jurisdiction is quite broad."); *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005) ("A bankruptcy court's 'related to' jurisdiction is very broad, including nearly every matter directly or indirectly related to the bankruptcy." (internal quotations omitted)); *Internal Revenue Serv. v. Prescription Home Health Care, Inc. (In re Prescription Home Health Care, Inc.)*, 316 F.3d 542, 547 (5th Cir. 2002) ("'Related to' jurisdiction has been defined quite broadly."); *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning)*, 86 F.3d 482, 489 (6th Cir. 1996) ("[T]he emphatic terms in which the jurisdictional grant is described in the legislative history, and extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant district courts broad jurisdiction in bankruptcy cases."); *Coffey v. Anderson (In re PSLJ, Inc.)*, 873 F.2d 1440 (table) (4th Cir. 1989) ("We have recognized that a bankruptcy court has broad jurisdiction over proceedings arising in or related to a title 11 case.").

11.     An action is "related to" a bankruptcy case where its outcome "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir 1994). An action satisfies the "conceivable effect" test "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* The Third Circuit has further clarified that such effects on the bankruptcy estate must be the product of the related action itself, "without the intervention of yet another lawsuit."

Highly Confidential

*See In re Federal-Mogul Glob., Inc.*, 300 F.3d 368, 382 (3d Cir. 2002). The jurisdictional analysis for related-to jurisdiction "must be assessed at the outset of the dispute, and it is satisfied when the resolution has a potential effect on other creditors." *Bush v. United States*, 939 F.3d 839, 846 (7th Cir. 2019).[2]

      12.    Plaintiff's Complaint arises in, arises under, or is otherwise related to the BSA's Chapter 11 Cases and is therefore removable under 28 U.S.C. § 1452(a) because, *inter alia*:

- In the Complaint, the Plaintiff asserts claims to recover monetary damages from the BSA, which constitute "claims" within the meaning of § 101(5) of the Bankruptcy Code. Specifically, the Complaint seeks damages based upon tortious actions or omissions allegedly committed by the BSA and its officers, employees, agents or otherwise related parties. Any recovery of such damages would necessarily diminish the BSA's estate.[3]

- The BSA and the non-debtor co-defendants named in the Complaint share an identity of interest such that a claim against the non-debtor co-defendants is, in effect, a claim against the BSA's estate. *See A.H. Robins Co. v. Picinnin*, 788 F.2d 994, 999 (4th Cir. 1986).

- The BSA and the non-debtor co-defendants, in many instances, are parties to shared insurance.

- The claims and allegations in the Complaint against the non-debtor co-defendants are inextricably intertwined with the claims and allegations against the BSA such that the entire Action is "related to" the Debtors' Chapter 11 Cases. The claims and allegations in the Complaint arise out of a common nucleus of operative facts and raise substantially similar questions of law. As one consequence, the BSA

---

[2] Because the BSA's bankruptcy case is currently pending before the Delaware Bankruptcy Court, the BSA relies principally on the Third Circuit's interpretation of section 1334(b)'s analysis of "related to" jurisdiction. However, the "any conceivable effect" test developed by the Third Circuit in *Pacor* has been endorsed by the United States Supreme Court and adopted by the vast majority of circuits "with little or no variation." *Celotex*, 514 U.S. at 308 n.6 (collecting cases); *see also, e.g., SPV OSUS, Ltd.*, 882 F.3d at 340; *Estate of Jackson v. Schron (In re Fundamental Long Term Care, Inc.)*, 873 F.3d 1325, 1336-37 (11th Cir. 2017); *Fire Eagle L.L.C. v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 304 (5th Cir. 2013); *Waldman v. Stone*, 698 F.3d 910, 916 (6th Cir. 2012); *Love v. Federal Deposit Ins. Corp. (In re George Love Farming, LC)*, 420 F. App'x 788, 792 n.2 (10th Cir. 2011); *GAF Holdings, LLC v. Rinaldi (In re Farmland Indus., Inc.)*, 567 F.3d 1010, 1019 (8th Cir. 2009); *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836 (4th Cir. 2007); *Boston Regional Med. Ctr., Inc.*, 410 F.3d at 106; *Dunmore v. United States*, 358 F.3d 1107, 1113 (9th Cir. 2004). The Seventh Circuit has articulated a slightly different test for "related to" jurisdiction; however, a recent decision from that circuit indicates close alignment with the *Pacor* test. *See Bush*, 939 F.3d at 846.

Highly Confidential

BSA-PLAN_01422370
SA 0624

may be compelled to participate in the litigation, notwithstanding the automatic stay, to protect its own interests. *See Union Tr. Phila., LLC v. Singer Equip. Co. (In re Union Tr. Phila., LLC)*, 490 B.R. 644, 657 (E.D. Pa. 2011) (finding related to jurisdiction over state law claims against non-debtors where the debtor was at risk of being "bound to critical factual and legal issues determined in those proceedings by operation of collateral estoppel"). Moreover, the continuation of the Action, even if stayed against the BSA, would likely require the BSA or its employees to expend time and resources in responding to discovery requests and participating in depositions. *See Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 412 (S.D.N.Y. 2007) (enjoining actions against a non-debtor where the debtor "would suffer irreparable harm if [a key employee] were distracted from his responsibilities in order to participate" in ongoing litigation).

13.     Accordingly, the entire Action, and not just the claims against the BSA, is appropriately removed.

## PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

14.     Removal of the Action is timely pursuant to Bankruptcy Rule 9027(a)(2). This Notice of Removal is being filed within ninety (90) days of the entry of the order for relief in the Chapter 11 Cases under the Code. No order has been entered in the Chapter 11 Cases terminating the automatic stay with respect to any claim against the BSA.

15.     Venue in this Court is proper pursuant to Bankruptcy Rule 9027(a)(1). The State Court is located in the district and division of this Court.

16.     For purposes of Bankruptcy Rule 9027(a)(1), upon removal of the Action to the District Court, the BSA does not consent to the entry of final orders or judgment by any bankruptcy court. Through the Nationwide Transfer Motion, the BSA will move for the Delaware District Court to fix the venue for the Action, and all Pending Abuse Actions, in the Delaware District Court.

17.     In accordance with Bankruptcy Rule 9027(a)(1), attached to this Notice of Removal as Exhibits 1-5 are copies of the State Court docket sheet and case file for the above

Highly Confidential

BSA-PLAN_01422371
SA 0625

action, including all process, pleadings, and orders that have been filed, or entered by the State

Court, in the Action.

18.     Promptly after the filing of this Notice of Removal, the BSA will serve on all

parties to the Action and file with the clerk of the State Court a copy of this Notice of Removal

in accordance with Bankruptcy Rules 9027(b) and (c).

19.     The BSA reserves the right to amend or supplement this Notice of Removal or to

present additional arguments in support of their entitlement to remove the Action.

Respectfully submitted this 18th day of February, 2020.


<div style="text-align:center">

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900
Miami, Florida 33131
Telephone: (305) 377-0700

   */s/ Spencer H. Silverglate*
Spencer H. Silverglate
Florida Bar No. 769223
ssilverglate@cspalaw.com
mpedraza@cspalaw.com
Francisco Ramos, Jr.
Florida Bar No. 114766
framos@cspalaw.com
acastro@cspalaw.com
Shannon P. McKenna
Florida Bar No. 385158
smckenna@cspalaw.com
socd@cspalaw.com


*Attorneys for Defendant Boy Scouts of America*

</div>

Highly Confidential

BSA-PLAN_01422372

**SA 0626**

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on February 18, 2020, a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing on all counsel or parties of record listed below:

Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail: PSangi@forthepeople.com
Counsel for Plaintiff

Raychel Garcia
Wicker Smith O'Hara McCoy & Ford P.A.
390 North Orange Avenue, Suite 1000
Orlando, Florida 32801
Counsel for Defendant,
Silver Springs Shores Presbyterian Church, Inc.

CLARKE SILVERGLATE, P.A.

By: /s/ *Spencer H. Silverglate*
    Spencer H. Silverglate

Highly Confidential

BSA-PLAN_01422373
SA 0627

# EXHIBIT 1

## Second Amended Complaint

Highly Confidential

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

       Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL,
INC., BOY SCOUTS OF
AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

       Defendants.

_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiff, A.A, by and through his undersigned counsel, files this Complaint against Defendants, THE BOY SCOUTS OF AMERICA, a foreign corporation authorized to do business in Florida (hereinafter referred to as the "BSA"), the NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, a corporation authorized to do business in Florida (hereinafter referred to as the "NORTH FLORIDA COUNCIL"), and the SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., a corporation authorized to do business in Florida (hereinafter referred to as the "SILVER SPRINGS SHORES") and for good cause, states:

## INTRODUCTION

1. **General Statement of Claims:** This Complaint is based on the childhood sexual abuse of Plaintiff, A.A. caused by the negligent, willful, wanton, reckless and tortious acts and omissions of BSA, NORTH FLORIDA COUNCIL, SILVER SPRINGS SHORES, Scoutmaster Steve Fout and other agents of the BSA, and George Fout, formerly an Assistant Scoutmaster.

Highly Confidential

BSA-PLAN_01422375
SA 0629

2.        At all relevant times, George Fout was the agent of Defendant BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.  These claims relate to acts of sexual battery as described in Section 794.011, Florida Statutes suffered by the Plaintiff, A.A., while he was a participant in the programs operated by the Defendants, and each of them.

3.        As more particularly described herein, the Plaintiff suffered the sexual battery described herein as a result of the neglect of the BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES and their respective agents to, among other things, exercise due care in the administration, management and operation of its scouting program, their breach of their fiduciary duties and their vicarious liability for the acts of their agents.

4.        **Jurisdiction and Venue**:        This is an action for damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorneys' fees.

5.        Venue is proper in Marion County, Florida because the events giving rise to this action occurred in Marion County, Florida. .

6.        **The Parties:**        A.A. is currently an adult residing in Marion County, Florida. The initials "A.A." are used to protect the identity of Plaintiff from public disclosure. The identity and further relevant details shall be disclosed to the Defendants off record and confidentially.

7.        At all relevant times, A.A. resided in Marion County, Florida.

8.        A.A. was a member of the Boy Scouts of America Troup 448.

9.        Plaintiff met his abuser, George Fout, due to George Fout's role as the Assistant Scoutmaster of Troup 448.

2

BSA-PLAN_01422376

SA 0630

10.     SILVER SPRINGS SHORES was the chartering organization for Troop 448, or such other Boy Scout Troop as A.A. was a member (herein collectively referred to as "Troop 448").

11.     The BSA is a foreign corporation authorized to do business in the state of Florida.

12.     At all relevant times, BSA controlled or had the right to control the NORTH FLORIDA COUNCIL and the sponsoring organizations, which implemented BSA's scouting program, including, without limitation, SILVER SPRINGS SHORES.

13.     The NORTH FLORIDA COUNCIL is a corporation authorized to do business in the State of Florida and is located in Duval County, Florida.

14.     At all relevant times, the NORTH FLORIDA COUNCIL was an agent of BSA, subject to BSA's control or right to control.

15.     As Defendant BSA's agent, the NORTH FLORIDA COUNCIL controlled or had the right to control local troops directly, or through their sponsoring organizations, including, without limitation, SILVER SPRINGS SHORES.

16.     SILVER SPRINGS SHORES is a corporation authorized to do business in the State of Florida and is located in Marion County, Florida. At all relevant times, SILVER SPRINGS SHORES was an agent of BSA and the COUNCIL, subject to their control or right to control.

17.     As Defendant BSA and NORTH FLORIDA COUNCIL' agent, SILVER SPRINGS SHORES controlled or had the right to control the programs and troops that it sponsored, including its Scoutmaster and Assistant Scoutmasters.

3

BSA-PLAN_01422377

SA 0631

18.     The BSA, NORTH FLORIDA COUNCIL and SILVERS SPRINGS SHORES will be collectively referred to herein as the Boy Scout Defendants.  When so used, the term references each in their respective individual capacities.

19.     Steve Fout was the Scoutmaster and leader of Troop 448.

20.     George Fout was Steve's son and was an Assistant Scoutmaster of Troop 448.

**The BSA**

21.     The BSA is a large youth-serving organization which promotes, markets, and encourages parents to enroll their children in the BSA. Enrollment in the BSA requires parents to entrust their children's health and safety to the BSA and requires children to engage in activities that expose them to adults and others. Much of the BSA's activities include over-night outings, camping trips, and trips away from parents.

**The Hierarchy of the BSA and the BSA's Control Over Its Agent Scouting Organizations**

22.     The BSA has established its presence through the use of a hierarchical system, whereby local Councils and chartering organizations implement and maintain the BSA's program at a local level under the BSA's guidance and control.

23.     Organizationally, the BSA is separately incorporated from local councils, but the BSA and the BSA's local councils comprise a tightly integrated, hierarchal organizational structure under the BSA's control at the top.

24.     The BSA issues the Boy Scouts of America name, emblems, badges, markings, and youth programs to the Councils and chartering organizations. The BSA requires the local

4

Council and troops within a local Council to strictly adhere to the BSA's organizational charter and standards of leadership.

25.     For example, all members of scout troops chartered through a local council must be registered and pay dues to the BSA. The BSA oversees and controls all professional staffing of local councils. Local councils may not employ any professional scouts who are not drawn from a BSA approved candidate list that the BSA compiled and maintained. Local councils are not permitted to use any programs or materials that the BSA has not supplied or approved.

26.     Unless the BSA has selected and approved them, no adult scout leader, whether paid or volunteer, may serve in a local troop or council.

27.     The BSA asserts First Amendment associational rights to exclude Scoutmasters and volunteers who do not share their values or beliefs and anyone else it chooses from participating in scouting.  Indeed the BSA has *successfully* asserted these associational rights in trial, appellate and over their volunteer and are judicially estopped from asserting that they do not have control or a special relationship with their Scoutmasters and volunteers. *See*, for example, *Boy Scouts of American vs. Dale*, 530 U.S. 640 (2004).  The BSA is similarly judicially estopped from arguing that these Scoutleaders and volunteers are not their agents.

28.     The BSA provides a wide variety of management services to locals councils and troops, including insurance and risk management, marketing, education, training, scout camps, facilities, media relations, and human resources. Duplicate personnel files on local council employees are maintained at the local council and at the BSA's national headquarters.

29.     The BSA creates the bylaws, rules and regulations that every chartering organization must adhere to in implementing and running the BSA's scouting program. Significantly, the BSA's bylaws obligate a chartering organization to provide adequate facilities,

Highly Confidential

BSA-PLAN_01422379

SA 0633

supervision, and leadership for the troop in exchange for the granting of a charter to run a local scouting troop.

30.     A local scouting troop cannot exist without the support of a chartering organization that has received a charter from the BSA authorizing the chartering organization to implement and run the BSA's scouting program.

31.     Under the BSA bylaws, each chartering organization is required to select at least three people over the age of 21 to serve as the Troop Committee. The Troop Committee then selects the Troop Scoutmaster. The BSA must approve scout leaders, whether paid or volunteer, to serve in a local troop or council.

32.     Together, the Troop Committee and the Scoutmaster are responsible for the general program and supervision of the troop.

33.     Further, each chartering organization is required to appoint a representative other than the Scoutmaster or Assistant Scoutmaster to serve as its institutional representative on the local Council.

34.     A chartering organization must reapply to the BSA every year for a renewed charter in order to continue to operate a local troop. The BSA may revoke a chartering organization's charter at any time should the chartering organization be found to deviate from the BSA's charter and bylaws.

35.     This chartering system reveals the BSA's consent to allow local chartering organizations to operate the scouting program on its behalf and the chartering organizations' consent to operate the local troops subject to the BSA's control or right to control.  Accordingly, the chartering organizations, such as SILVER SPRINGS SHORES, are the agents of the BSA.

6

BSA-PLAN_01422380

SA 0634

36.     The BSA uses a similar structure in relation to its local Councils, such as the NORTH FLORIDA COUNCIL. The BSA issues a charter to an approved local Council authorizing the local Council to administer the scouting program to the local scout troops within the region on behalf of the BSA.

37.     The local Councils are subject to the same bylaws, rules and regulations as the chartering organizations. If a local Council deviates from the rules and regulations established by the BSA, then the local Council may have its charter revoked.

38.     All local Councils must apply to the BSA for renewal of their charters annually.

39.     It is the duty of the local Council to promote, support, and maintain the BSA scouting regime amongst all local troops within the local Councils area.

40.     The chartering system shows the BSA's consent to allow local Councils to operate the scouting program on its behalf within a specific geographic region, and the local Councils consent to operate the scouting program subject to the BSA's control or right to control. Thus, the local Councils are agents of the BSA.

41.     The BSA cannot operate its scouting program without the consent and cooperation of the local Councils and chartering organizations.   Conversely, the chartering organizations and local Councils cannot operate and supervise local scouting troops without the consent of the BSA.

42.     At all relevant times, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES were serving as Defendant the BSA's agents by implementing and maintaining the BSA's scouting program on a local level.

7

Highly Confidential

BSA-PLAN_01422381

SA 0635

### The BSA, NORTH FLORIDA COUNCIL's and
### SILVER SPRINGS SHORES Special Relationship with A.A.

43.     The Boy Scout Defendants have a special relationship with A.A., for reasons which included, without limitation, the following:

a.     A.A. and his family imposed confidence in The Boy Scout Defendants through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things, learn the values and characteristics that Defendants promote through involvement with the BSA, and ultimately would be safe from harm in doing so;

b.     It is through A.A.'s involvement with The Boy Scout Defendants, and George Fout's relationship with The Boy Scout Defendants that A.A. was abused by George Fout;

c.     The Boy Scout Defendants had a direct and special relationship with scouts who participated in its programs. A.A. was a child at the time of the abuse. The abuse began and often occurred when A.A. was placed in the care and custody of Defendants The Boy Scout Defendants, with the resulting loss of control to protect himself;

d.     A.A. was a child at the time of the abuse. He was raped and molested at locations and under circumstances where he was unable to protect himself or was otherwise unable to avail himself of his legal guardian for their ordinary source of protection or were otherwise relying entirely on the Boy Scout Defendants and their agents, including Scoutmaster Steve Fout, for his protection, and

e.     The Boy Scout Defendants, were substituting for A.A.'s parents during the relevant times.

### BSA, NORTH FLORIDA COUNCIL's and SILVER SPRINGS SHORES Special
### Relationship with, and Constructive Control
### over Scoutmaster Steve Fout, and his Agency for them.

44.     At all relevant times, A.A. was enrolled in the Boy Scouts of America scouting program.

45.     At all relevant times, A.A. was a member of Boy Scouts of America Troop 448 in Ocala, Florida. Troop 448 was chartered by Defendant SILVER SPRINGS SHORES,

8

46.     Troop 448 was under the jurisdiction of Defendant NORTH FLORIDA COUNCIL.

47.     Each of SILVER SPRINGS SHORES and the NORTH FLORIDA COUNCIL were under the ultimate control and authority of the BSA.

48.     But for the BSA's consent, neither SILVER SPRINGS SHORES, nor the NORTH FLORIDA COUNCIL would have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

49.     As the chartering organization of Troop 448, Defendant SILVER SPRINGS SHORES was responsible for providing adequate facilities, supervision, and leadership for the troop, subject to the approval of the Council and the BSA and consistent with their direction and policies.

50.     The troop meetings were held in facilities owned or operated by Defendant SILVER SPRINGS SHORES.  Certain activities were held in facilities owned or operated by the Council and the BSA.

51.     At all times material hereto, the Boy Scout Defendants installed Steve Fout as the Scoutmaster (a/k/a Troop Leader) for Troop 448.

52.     As the Scoutmaster of Troop 448, Steve Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

53.     At all times relevant, Steve Fout was subject to the approval, direction, control and authority of the Boy Scout Defendants.

9

54.     Steve Fout had the specific authorization from the Boy Scout Defendants to wear the BSA badge and insignia and other indicia and brands of the BSA, to hold himself out as a leader for the BSA and to lead meeting and events on the premises of the BSA and Silver Springs Shores.

55.     In fact, Steve Fout did hold himself out as such, lead meetings and took the scouts, including A.A. on events, including overnight campouts, on the premises of the Boy Scout Defendants.

56.     Steve Fout's activities, and each of them, were specifically sanctioned by the Boy Scout Defendants.  At all times relevant, the Boy Scout Defendants had the control or the ability to control, Steve Fout's display of his the BSA badge and insignia and other indicia and brands of the BSA.

57.     But for the Boy Scout Defendants' consent, neither Steve Fout would have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

58.     The subject authorization was designed to instill, and did instill, trust and confidence in Steve Fout by the parents, guardians and scouts and further served to promote the BSA brand.

59.     But for Steve Fout's position with the Boy Scout Defendants, A.A. would not have been permitted to spend overnights at his home.  There is a causal connection between Steve Fout's position with the Boy Scout Defendants and A.A.'s abuse.

60.     A.A. and his guardians each perceived Steve Fout to be a representative of the BSA, the Council and Silver Springs Shores and to be a person whom they could entrust with A.A.

10

BSA-PLAN_01422384

SA 0638

61.     At all times relevant hereto, Steve Fout was an Assistant Scoutmaster for Troop 448 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including A.A. in morality, patriotism and various life skills.

62.     At all times relevant hereto, Steve Fout served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

63.     Steve Fout had actual or apparent authority to act on behalf of the BSA, the Council and Silver Springs Shores, and each of them.

64.     As a result there was, at all relevant times, a special relationship and agency between Steve Fout and Boy Scout Defendants.

### BSA, NORTH FLORIDA COUNCIL's and SILVER SPRINGS SHORES Special Relationship with, and Constructive Control over perpetrator and assistant Scoutmaster, George Fout, and his Agency for them.

65.     At all times material hereto, the Boy Scout Defendants installed George Fout, as an Assistant Scoutmaster (a/k/a Assistant Troop Leader) for Troop 448.  George Fout was Steve Fout's son.

66.     At all times material hereto, Assistant Scoutmaster George Fout was under the direct supervision of Scoutmaster Steve Fout.

67.     As the Assistant Scoutmaster of Troop 448, George Fout assisted Steve Fout in his activities.

68.     As the Assistant Scoutmaster of Troop 448, George Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members

Highly Confidential

BSA-PLAN_01422385

SA 0639

to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

69.     At all times relevant, George Fout was subject to the approval, direction, control and authority of The Boy Scout Defendants.

70.     George Fout had the specific authorization from the Boy Scout Defendants to wear the BSA badge and insignia and other indicia and brands of the BSA, to hold himself out as a leader for the BSA and to lead meeting and events on the premises of the BSA and Silver Springs Shores.

71.     In fact, George Fout did hold himself out as such, lead meetings and took the scouts, including A.A. on events, including overnight campouts, on the premises of the Boy Scout Defendants.

72.     George Fout's activities, and each of them, were specifically sanctioned by the Boy Scout Defendants.  At all times relevant, Boy Scout Defendants had the control or the ability to control, George Fout's display of his the BSA badge and insignia and other indicia and brands of the BSA.

73.     But for the Boy Scout Defendants consent, George Fout would not have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

74.     The subject authorization was designed to instill, and did instill, trust and confidence in George Fout by the parents, guardians and scouts and further served to promote the BSA brand.

Highly Confidential

BSA-PLAN_01422386

SA 0640

75.    But for George Fout's position with the Boy Scout Defendants, A.A. would not have been permitted to spend overnights at his home.  There is a causal connection between Steve Fout's position with the Boy Scout Defendants and A.A.'s abuse.

76.    A.A. and his guardians each perceived George Fout to be a representative of the Boy Scout Defendants and to be a person whom they could entrust with A.A.

77.    At all times relevant hereto, Steve Fout was an Assistant Scoutmaster for Troop 448 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including A.A. in morality, patriotism and various life skills.

78.    At all times relevant hereto, Steve Fout served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

79.    George Fout had actual or apparent authority to act on behalf of the Boy Scout Defendants, and each of them.

80.    As a result there was, at all relevant times, a special relationship and agency between George Fout and The Boy Scout Defendants.

13

Highly Confidential

BSA-PLAN_01422387

SA 0641

### George Fout's Grooming and Preparation of A.A. and
### Three (3) Other Scouts from Troop 448 for Abuse.

81.    Perpetrators of sexual abuse against children often "groom" the victim for the abuse.  This grooming is a process of mental, emotional, psychological and physical manipulation by which the perpetrator prepares a child, significant others, and the environment for the abuse of the child.  Specific goals include gaining access to the child, gaining the child's compliance, and maintaining the child's secrecy to avoid disclosure. This process serves to strengthen the offender's abusive pattern, as it may be used as a means of justifying or denying their actions.

82.    The grooming process consists of a series of stages.  These include the stages of selecting a vulnerable victim, gaining access to the child, developing trust, and desensitizing the victim to touch.

83.    As to the first stage, when selecting a victim, offenders often target children based on family situations, such as those living in single family households as often in these cases children may have less adult supervision or the custodial parent may rely upon others to help with childcare responsibilities.

84.    This pattern of grooming and its specific stages are discernable to supervising adults, including Scoutmasters, particularly if they are properly trained to recognize the behavior. This "grooming" results in its own resulting psychological and emotional abuse and damage, separate from the impending physical sexual abuse.

85.    George Fout engaged in exactly these stages of grooming A.A. prior to and during his abuse of A.A.  George Fout often showered Plaintiff with special attention and otherwise engaged in the grooming process described.

14

BSA-PLAN_01422388

SA 0642

86.     A.A. met the profile of a particularly vulnerable child, as he was being raised by a single non-parent adult with no strong male role model.

87.     At the time that George Fout grooming A.A., he was simultaneously grooming at least three (3) other child scouts in Troop 448 for sexual abuse, for a total of four (4) scouts in a single troop undergoing grooming for impending sexual abuse.

88.     As a result of George Fout's grooming of A.A., it was foreseeable that George Fout would ultimately consummate the grooming in its goal of sexual abuse.

89.     Indeed, ultimately, George Fout's grooming of each of these four (4) scouts did result in them suffering his continuous and ongoing sexual abuse.

90.     This grooming frequently occurred on the premises of SILVER SPRINGS SHORES and during events sponsored by the BSA.

91.     Upon information and belief, Troop 448 Scoutmasters knew or should have known that George Fout was grooming A.A. for abuse and that abuse of A.A. was foreseeable, impending and ongoing.

92.     In addition, it is a reasonable inference that, while George Fout was grooming four (4) scouts under their care, adult supervisors of Troop 448, including Steve Fout, observed actions and behavior by George Fout by which they knew or should have known that George Fout was grooming the scouts, including A.A. for abuse and that abuse of A.A. was foreseeable, impending and ongoing.

93.     Further, if the Boy Scout Defendants had properly trained adult leaders and Scoutmasters to identify grooming behavior, they would have identified George Fout as being actively engaged in grooming four (4) child scouts in their troop and would have been trained to

Highly Confidential

BSA-PLAN_01422389

SA 0643

warn A.A. and his parents of the impending abuse and prevent the abuse and the resulting injuries and damage.

## George Fout's Abuse of A.A. was Foreseeable and Immanent.

94.     George Fout's sexual abuse of A.A. was foreseeable, as the Boy Scout Defendants each had actual and constructive notice of George Fout's grooming of A.A., and actual and constructive notice of the impending and immanent and actual abuse of A.A. and the abuse, in fact, of A.A.

95.     This notice included, without limitation:

a.      That George Fout would engage in a pattern of grooming of A.A. in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

b.      That George Fout would engage in a pattern of grooming of three (3) other scouts. in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

c.      Upon information and belief and upon reasonable inference, the adult troop leaders should have known that George Fout engaging in grooming of four (4) minor scouts in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

d.      On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on the BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, providing notice to The Boy Scout Defendants of grooming, sexual abuse, and the ongoing process of grooming, including that George Fout's propensity to engage in sexual abuse is foreseeable and immanent;

e.      At times, A.A, would leave scouting events held on Defendants' premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of the BSA policy;

16

f.    Adult scout leaders of Troop 448 knew or should have known that A.A. and other scouts of Troop 448 would visit the home of George Fout and would often spend the night in the bedroom of George Fout, in violation of BSA policy;

g.    Steve Fout, as agent for the BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES was personally present over the course of many years as George Fout, his adult son, took four (4) minor child scouts to his room, each on a series of separate occasions, for hours of "game play" and overnight sleep-overs behind closed doors;

h.    Steve Fout should have known or was willfully ignorant of the fact that his son was abusing minor children under his roof;

i.    Steve Fout, as a troop leader and an agent for the BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES knew, should have known or was willfully ignorant that George Fout was actively abusing or posed a threat of sexual abuse to minor scouts under his care.

96.    During all relevant times hereto, George Fout was conducting himself in such a manner and fashion that the Boy Scout Defendants knew or should have known that George Fout had a propensity to commit and engage in sexual misconduct.

97.    If the Boy Scout Defendants had properly and adequately supervised the conduct and the activities of George Fout, they would have known or should have known of the misconduct of George Fout, so as to prevent the sexual abuse and infliction of emotional distress on A.A.

98.    Had the Boy Scout Defendants not acted in such a careless, negligent, and/or reckless manner, they would have known and/or should have known of the conduct of George Fout, as described herein, and of his propensity to engage in such activities, such that the Boy Scout Defendants could and/or should have prevented the sexual abuse and the infliction of physical and emotional distress on A.A.

99.    As agents for the Boy Scout Defendants, actual or constructive knowledge to Steve Fout and to adult troop leaders that George Fout posed a risk to the scouts and had a

Highly Confidential

BSA-PLAN_01422391

SA 0645

propensity to engage in the grooming and sexual abuse is imputed to the BSA, the NORTH FLORIDA COUNSEL, jointly and severally.

### The BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES Had Constructive Control of the Premises upon which George Fout's Behavior Provided Notice of the Impending Abuse.

100.    On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at the BSA administrated event on the BSA property.

101.    George Fout's grooming and resulting psychological and emotional damage relating to A.A.'s sexual abuse often occurred on property owned and controlled by the BSA and Silver Shores and during events sanctioned and administrated by the Boy Scout Defendants.

102.    Similarly, on multiple and continuing occasions, notice of George Fout's propensity to commit abuse, including without limitation, his grooming of A.A. and at least four (4) other scouts occurred on property owned and controlled by Boy Scout Defendants and during events sanctioned and administrated by the BSA, the Council and Silver Shores.

### George Fout's Abuse of A.A.

103.    A.A. was introduced to his abuser, George Fout through his membership in the BSA Troop 448.

104.    At all times material hereto, George Fout was an adult.  At all times material hereto, A.A. was a minor.

105.    At all times relevant hereto, for the purpose of furthering his duties as an Assistant Scoutmaster, George Fout sought and gained the then minor A.A.'s trust, friendship, admiration and obedience. As a result, A.A. was conditioned to comply with George Fout's direction and to look to him as an authority figure.

18

BSA-PLAN_01422392

SA 0646

106.    At all relevant times hereto, using the power, authority and trust of his position as an Assistant Scoutmaster, and availing himself of the Boy Scout Defendants' representations to parents and scouts that tire BSA was a moral and safe place for young boys, George Fout groomed, enticed, induced, directed, coerced and forced A.A. to engage in deviant sexual acts with him.

107.    As the foreseeable extension of the grooming process, George Fout committed a sexual abuse, sexual touching, penetration, oral and anal sodomy and other acts of sexual battery constituting violations of Section 794.011, Florida Statutes, upon A.A.

108.    Eventually, George Fout escalated the frequency of the sexual battery to the point where he was sexually abusing A.A. approximately once a month.

109.    At all times relevant hereto, George Fout utilized physical, emotional and spiritual force and persuasion to impose his moral will upon the then minor A.A. in order to commit grievous, unspeakable acts of sexual abuse upon the person of then minor A.A. all of which acts constitute flagrant abuse of the symbolism, power and authority of his position as an Assistant Scoutmaster.

110.    The grooming and other notice of George Fout's propensity for abuse would frequently occur on the premises of SILVER SPRINGS SHORES and during sanctioned the BSA events on the BSA property.

111.    The sexual battery would often take place at George Fout's home after scouting events, in which he resided with Steve Fout, his father and the Scoutmaster of Troop 448. Steve Fout was often present in the home during George Fout's sexual battery of A.A.

19

BSA-PLAN_01422393

SA 0647

112.     At times, A.A. would leave scouting events held on Defendants' premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of the BSA policy.

113.     As the sexual battery would continue, without limitation, A.A. would spend the night at the home of Scoutmaster Steve Fout.  This is a clear violation of the BSA policy. During those occasions, A.A. would be abused by Assistant Scoutmaster George Fout. Steve Fout was often in the home often when the incidents of sexual battery occurred.

114.     At no time did the BSA, NORTH FLORIDA COUNCIL, or SILVER SPRINGS SHORES take steps to ensure the non-sleepover between volunteer leaders and youth in the BSA's policy was being implemented and followed by their scoutmasters or scout leaders, and at no time did the BSA, NORTH FLORIDA COUNCIL, or SILVER SPRINGS SHORES take steps to ensure that no one-on-one contact between volunteer leaders and youth were being followed according to the BSA's polices.

115.     A.A. was repeatedly abused under circumstances where he was unable to protect himself or was otherwise unable to avail himself of his legal guardians for their ordinary source of protection or was otherwise relying entirely on The Boy Scout Defendants, and its agents for his protection.

### The BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES Had Actual or Constructive Control of the Premises upon which Sexual Abuse and related Grooming was committed.

116.     On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at a the BSA administrated event on the BSA property.

117.     George Fout's grooming and resulting psychological and emotional damage relating to A.A.'s sexual abuse often occurred on property owned and controlled by the BSA and

20

BSA-PLAN_01422394

SA 0648

Silver Shores and during events sanctioned and administrated by the BSA, the Council and Silver Shores.

118.    Similarly, on multiple and continuing occasions, notice of George Fout's propensity to commit abuse, including without limitation, his grooming of A.A. and at least three (3) other scouts occurred on property owned and controlled by the BSA and Silver Shores and during events sanctioned and administrated by the BSA, the Council and Silver Shores.

## The BSA's History of Pedophilia

119.    The BSA has known for decades of the high degree of risk that adult Scoutmasters and volunteers may sexually abuse minor scout members.

120.    Since the early 1900s, the BSA has maintained a system of "Ineligible Volunteer Files" to track incidents wherein adult Scoutmasters sexually abused scouts. The Ineligible Volunteer Files contain internal memoranda demonstrating the BSA's awareness of the ongoing pedophilia within the BSA, and demonstrated concerns about pedophiles within the BSA harming their reputation and economic interests.

121.    These Ineligible Volunteer Files demonstrate the BSA's vulnerabilities when it comes to pedophilia within the BSA and includes pedophiles' techniques used to enter scouting, their techniques for grooming victims and more.

122.    In approximately 1972, the BSA implemented a system requiring local Council's scouting executives to complete and send in a form with any available supporting information about known or alleged sexual abuse committed by adult Scoutmasters in the executives' jurisdiction. Upon receipt of this information from the local Council, the BSA created an Ineligible Volunteer File for the abuser and added it to the BSA's database.

21

123.    By 1977, the BSA was advising all sponsoring organizations to maintain "two deep leadership" for all scouting activities, wherein two adult Scoutmasters were required to be present at all times. Ostensibly, this precaution was implemented to help prevent sexual abuse in scouting.

124.    Despite the BSA's extensive and long-standing knowledge of the high degree of risk of pedophilia in scouting, the BSA did not implement a sexual abuse-prevention education program until approximately 1988. This program, the Youth Protection Program, was the BSA's first effort to educate scouts and their family members about the risk of sexual abuse in scouting, a risk that continues today.

125.    The BSA has overwhelming evidence that scouting has particular characteristics that make the organization vulnerable to pedophiles, including but limited to:

    a.    Joining the BSA provides pedophiles access to boys alone and away from their families in secluded settings like camp-outs and overnight hikes;

    b.    The BSA repeatedly encourages young boys to strictly obey their scout leaders and masters, allowing pedophiles to groom their victims;

    c.    The BSA encourages overnight stays, camping trips and other activities for scouts and scout leaders and masters to be alone together;

    d.    Scouting provides opportunities for a pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him;

    e.    A pedophile scout leader can, depending on the pedophile's preferred victim age, volunteer for and be sure to have access only to boys of a certain age;

    f.    The BSA conditions boys to the concept of strict obedience to the scout leader and a bonding mechanism that pedophiles crave;

    g.    The BSA promotes the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a pedophile's efforts to keep his victims silent and compliant;

Highly Confidential

BSA-PLAN_01422396

SA 0650

h.     The BSA conducted no criminal background checks on its volunteers;

i.     The BSA did not prohibit adults from sleeping in tents with boys overnight;

j.     The BSA did not prohibit adult leaders from spending time alone with individual scouts; i. The BSA did not prohibit adult scout leaders from having contact with scouts outside of authorized scouting activities;

k.     For decades, the BSA re-admitted pedophiles it had previously removed for child abuse after a period of the BSA "probation," thereby exposing unsuspecting children to sexual abuse;

l.     The BSA had a practice of not reporting scout abuse incidents to law enforcement;

m.     The BSA had a pattern of reaching an accommodation with a pedophile, in which the pedophile would resign from scouting and the BSA would agree not to report the child sexual abuse to civil authorities;

n.     The BSA refused requests to share its list of known abusers with other youth organizations, knowing that pedophiles it had ejected often joined other youth-serving organizations;

o.     The BSA refused to produce its I.V. files to its review board and scout safety consultants, who were endeavoring to develop and implement meaningful safeguards and barriers to pedophile infiltration;

p.     The BSA refused to fingerprint, photograph or perform background checks on its adult volunteers, allowing removed pedophiles using an alias to sneak back in to scouting through another troop;

q.     The BSA refused to utilize widely accepted organizational best practices that would establish reasonable barriers to intrusion by pedophiles;

r.     The BSA refused to educate local councils, staff, and troop leaders regarding the true risks posed by pedophiles to scouts; and

s.     The BSA refused to effectively monitor local councils and troops to ensure that appropriate safeguards were being used in the selection and retention of adult scout leaders.

23

BSA-PLAN_01422397

SA 0651

126.    The BSA's internal records, known as the "Ineligible Volunteer" files (hereinafter "the I.V. files"), are a unique repository of documents the BSA secretly began amassing shortly after the BSA's founding in 1910.

127.    The I.V. files reveal that the BSA, far from being safe and wholesome, has long attracted and been a sanctuary for pedophiles.

128.    The I.V. files contain internal memoranda demonstrating the BSA's awareness and concern about the threat that pedophiles in the BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community.

129.    The IV Files contain internal memoranda demonstrating BSA's awareness and concern about the threat that pedophiles in BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community. See Exhibit "A" (The Ernst Memorandum evidencing the BSA and the local council's ongoing conspiracy to suppress from the public its certain knowledge of its pedophile infiltration problem), BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that have successfully infiltrated scouting. The I.V. files highlight BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles' patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

130.    The BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that had successfully infiltrated scouting. The I.V. files highlight the BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles

24

BSA-PLAN_01422398

SA 0652

patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

131.    The overwhelming evidence the I.V. files present shows that for a century the BSA has known of the BSA's distinctive characteristics that render scouts particularly prone to pedophiles' abuse.

132.    By 1935, the BSA had accumulated approximately 2,000 files on pedophiles that had successfully infiltrated or attempted to infiltrate its program.

133.    In the 1970s, the BSA recognized the potential liabilities represented by possessing and maintaining the I.V. files. By 2005, the BSA's secret cache of files on pedophiles exceeded 20,000.

134.    Over the course of two years in the early 1970s, three the BSA executives reviewed and permanently destroyed thousands of I.V. files

135.    The BSA executives kept no retention logs showing which or how many of the files the BSA destroyed. The BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save.

136.    Approximately 6,000 files survived the BSA's file-purge and are in the BSA's possession. Approximately 1900 of those files are now in the public domain.

137.    The files demonstrate that the BSA opened a new I.V. file on a pedophile every other day for fifty years.

138.    The I.V. files demonstrate that the BSA had overwhelming evidence (1) that scouting attracts pedophiles at an alarming rate and (2) of scouting's distinctive characteristics that make it attractive to pedophiles:

25

139.    Between 1987 and 2005, the BSA settled sixty-one lawsuits in which the BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders. Since 1987, the BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by the BSA to prevent the abuse's facts and circumstances from becoming public.

140.    As between the Boy Scout Defendants and A.A., the Boy Scout Defendants had superior knowledge of the risk of sexual abuse to A.A. by participating in the BSA program, yet failed to warn or otherwise advise A.A. or his guardians of their superior knowledge.

**Negligence of The Boy Scout Defendants – Failure of Policy and Training.**

141.    BSA and its agents knew from long experience based on information contained in its Ineligible Volunteer Files that pedophiles had for nearly a century been exploiting vulnerabilities within it organization to gain access to and sexually abuse boys.

142.    BSA and its agents had certain knowledge that pedophiles like George Fout could exploit BSA's vulnerabilities. BSA knew that failure to adopt and implement certain policies and practices to protect scouts would cause scouts, including A.A, to be at heightened risk of pedophilic grooming and sexual abuse.

143.    The BSA's failure to adopt and effectively implement policies and practices to protect scouts in its custody and control included, without limitation:

144.    Permitting fathers to act as Scoutmasters, in a supervisory position over their adult sons, as Assistant Scoutmasters, effectively eliminating certain protections afforded by a two-deep policy;

26

BSA-PLAN_01422400

SA 0654

145.    Failing to educate scouts and other adult scout leaders about the grooming behaviors they knew that pedophile scout leaders engaged so that that scouts could recognize, resist, and report the inappropriate behaviors;

146.    Failing to monitor or evaluate scout staff to prevent them from using its program and facilities to gain access, groom, and sexually abuse scouts;

147.    Further, to the extent that the BSA undertook to adopt any such policies, they were insufficient for the foreseeable risk presented and were not properly implemented or enforced.

### Negligence of The Boy Scout Defendants – Failure to Protect A.A. from foreseeable abuse by George Fout.

148.    The Boy Scout Defendants, each having a special relationship with A.A. and over Steve Fout and George Fout.

149.    The actual or constructive knowledge that The Boy Scout Defendants and Steve Fout possessed of George Fout's grooming of A.A. and other scouts in Troop 448 rendered the abuse of A.A. not only foreseeable, but highly likely.

150.    In addition, the access that George Fout had to vulnerable children like A.A., the potential to take advantage of the special relationship with potential victims and the failures of BSA policy which George Fout used to gain access to, groom, and to sexually abuse A.A., were precisely the same foreseeable vulnerabilities that BSA had documented in tens of thousands of ineligible volunteer files it had been keeping for nearly a century.

27

BSA-PLAN_01422401

SA 0655

## ACTIONS AGAINST SILVER SPRINGS SHORES

### Count I: Negligence of Defendant SILVER SPRINGS SHORES

151.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

152.    Defendant, SILVER SPRINGS SHORES undertook to promote and provide a scouting program for children and minor boys.

153.    Having undertaken this activity, SILVER SPRINGS SHORES had duty to act with reasonable care and to take precautions so that persons may not be injured.

154.    In addition, Defendant SILVER SPRINGS SHORES had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

155.    This special relationship between Defendant SILVER SPRINGS SHORES and A.A. gave rise to a right of protection for A.A.

156.    Based on the special protective relationship with A.A., Defendant SILVER SPRINGS SHORES had a duty to protect A.A. from reasonably foreseeable harm.

157.    In addition, Defendant, SILVER SPRINGS SHORES had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives SILVER SPRINGS SHORES a duty to control the actions of George Fout.

158.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of SILVER SPRINGS SHORES.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

Highly Confidential

BSA-PLAN_01422402

SA 0656

159.     The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to SILVER SPRINGS SHORES that sexual abuse is not only foreseeable, but likely.

160.     SILVER SPRINGS SHORES and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

161.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by SILVER SPRINGS SHORES.

162.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

163.     Defendant SILVER SPRINGS SHORES breached the duty it owed A.A., by acts or omissions which included, without limitation:

a.     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

b.     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c.     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

Highly Confidential

BSA-PLAN_01422403

SA 0657

    d.     Failing to advise or warn A.A. or his guardian of the history of pedophilia in the BSA and to affirmatively educate A.A. and guardian to identify and avoid abuse.

    e.     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

164.    As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

165.    Further, as a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

166.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

BSA-PLAN_01422404

SA 0658

### Count II: Breach of Fiduciary Duty of Defendant SILVER SPRINGS SHORES

167.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

168.    As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and SILVER SPRINGS SHORES, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in SILVER SPRINGS SHORES and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

169.    As a result, SILVER SPRINGS SHORES owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

170.    In addition, Defendant, SILVER SPRINGS SHORES had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives SILVER SPRINGS SHORES a duty to control the actions of George Fout.

171.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of SILVER SPRINGS SHORES.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

172.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to SILVER SPRINGS SHORES that sexual abuse is not only foreseeable, but likely.

173.    SILVER SPRINGS SHORES and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

31

BSA-PLAN_01422405

SA 0659

174.    George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by SILVER SPRINGS SHORES.

175.    In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

176.    Defendant SILVER SPRINGS SHORES breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

   a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

   b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

   c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

   d.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

177.    As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

178.    Further, as a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional,

32

Highly Confidential

BSA-PLAN_01422406

SA 0660

psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

179.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## ACTIONS AGAINST NORTH FLORIDA COUNCIL

### Count III: Negligence of Defendant NORTH FLORIDA COUNCIL

180.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

181.    Defendant, NORTH FLORIDA COUNCIL undertook to promote and provide a scouting program for children and minor boys

182.    Having undertaken this activity, NORTH FLORIDA COUNCIL had duty to act with reasonable care and to take precautions so that persons may not be injured.

183.    In addition, Defendant NORTH FLORIDA COUNCIL had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

33

Highly Confidential

184.    This special relationship between Defendant NORTH FLORIDA COUNCIL and A.A. gave rise to a right of protection for A.A.

185.    Based on the special protective relationship with A.A., Defendant NORTH FLORIDA COUNCIL had a duty to protect A.A. from reasonably foreseeable harm.

186.    In addition, Defendant, NORTH FLORIDA COUNCIL had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives NORTH FLORIDA COUNCIL a duty to control the actions of George Fout.

187.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of NORTH FLORIDA COUNCIL.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

188.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to NORTH FLORIDA COUNCIL that sexual abuse is not only foreseeable, but likely.

189.    NORTH FLORIDA COUNCIL and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

190.    George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by NORTH FLORIDA COUNCIL.

191.    In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by The Boy Scout Defendants.

34

BSA-PLAN_01422408

SA 0662

192.    Defendant, NORTH FLORIDA COUNCIL breached the duty it owed A.A., by acts or omissions which included, without limitation:

    a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

    d.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

193.    As a direct and proximate cause of Defendant, NORTH FLORIDA COUNCIL's negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

194.    Further, as a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

195.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and

35

Highly Confidential

BSA-PLAN_01422409

SA 0663

bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## Count IV: Breach of Fiduciary Duty of Defendant NORTH FLORIDA COUNCIL

196.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

197.    As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and NORTH FLORIDA COUNCIL, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in NORTH FLORIDA COUNCIL and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

198.    As a result, NORTH FLORIDA COUNCIL owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

199.    In addition, Defendant, NORTH FLORIDA COUNCIL had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives NORTH FLORIDA COUNCIL a duty to control the actions of George Fout.

200.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of NORTH FLORIDA COUNCIL.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

36

BSA-PLAN_01422410

SA 0664

201.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to NORTH FLORIDA COUNCIL that sexual abuse is not only foreseeable, but likely.

202.    NORTH FLORIDA COUNCIL and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

203.    George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by NORTH FLORIDA COUNCIL.

204.    In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

205.    Defendant NORTH FLORIDA COUNCIL breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

    a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

37

BSA-PLAN_01422411

SA 0665

    d.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

206.    As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

207.    Further, as a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

208.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## ACTIONS AGAINST BSA

### Count V: Negligence of Defendant BSA

209.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

<center>38</center>

Highly Confidential

BSA-PLAN_01422412

SA 0666

210.   Defendant, BSA undertook to promote and provide a scouting program for children and minor boys.

211.   Having undertaken this activity, BSA had duty to act with reasonable care and to take precautions so that persons may not be injured.

212.   Defendant BSA had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

213.   This special relationship between Defendant BSA and A.A. gave rise to a right of protection for A.A.

214.   Based on the special protective relationship with A.A., Defendant BSA had a duty to protect A.A. from reasonably foreseeable harm.

215.   In addition, Defendant, BSA had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives BSA a duty to control the actions of George Fout.

216.   George Fout engaged in a process of grooming of A.A. and three other scouts under the care of BSA.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

217.   The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to BSA that sexual abuse is not only foreseeable, but likely.

218.   BSA and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

39

Highly Confidential

219.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by BSA.

220.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

221.     Defendant BSA breached the duty it owed A.A., by acts or omissions which included, without limitation:

a.   Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

b.   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c.   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

d.   Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

222.     As a direct and proximate cause of Defendant BSA' negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

223.     Further, as a direct and proximate cause of Defendant BSA' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical

40

BSA-PLAN_01422414

SA 0668

manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

224.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## Count VI: Breach of Fiduciary Duty of Defendant BSA

225.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

226.    As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and BSA, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in BSA and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

227.    As a result, BSA owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

228.    In addition, Defendant, BSA had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives BSA a duty to control the actions of George Fout.

41

BSA-PLAN_01422415

SA 0669

Case 1:22-cv-01237-RGA   Document 72   Filed 12/07/22   Page 243 of 460 PageID #: 4643

Case 5:20-cv-00069   Document 1-1   Filed 02/18/20   Page 43 of 65 PageID 53

229.     George Fout engaged in a process of grooming of A.A. and three other scouts under the care of BSA.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

230.     The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to BSA that sexual abuse is not only foreseeable, but likely.

231.     BSA and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

232.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by BSA.

233.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

234.     Defendant BSA breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

a.     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

b.     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c.     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise

42

Highly Confidential                                                                                          BSA-PLAN_01422416

SA 0670

conduct the activities of the Troop pursuant to the required and due standards of care.

d.   Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

235.   As a direct and proximate cause of Defendant BSA' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

236.   Further, as a direct and proximate cause of Defendant BSA' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

237.   As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

BSA-PLAN_01422417

SA 0671

## VICARIOUS LIABILITY COUNTS

### Count VII: Vicarious Liability of Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for the Sexual Battery by George Fout

238.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

239.    At all relevant times, George Fout, as Assistant Scoutmaster, was acting as agent for the Boy Scout Defendants by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

240.    Accordingly, the Boy Scout Defendants are vicariously liable for the acts and omissions and breaches of fiduciary duties of George Fout.

241.    George Fout's acts and omissions and breaches of fiduciary duties include, without limitation, committing acts of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93 and performing sexual battery upon A.A.

242.    As a result of acts, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial, for which such damages, the Boy Scout Defendants are vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court

44

deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count VIII: Vicarious Liability of Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for the Negligence and Breach of Fiduciary Duty of Steve Fout

243.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

244.     At all relevant times, Steve Fout, as Scoutmaster, was acting as agent for Defendants the Boy Scout Defendants by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

245.     Accordingly, Boy Scout Defendants are vicariously liable for the acts and omissions and breaches of fiduciary duties of Steve Fout.

246.     Steve Fout's acts and omissions and breaches of fiduciary duties include, without limitation,

a)     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

b)     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

d)     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

45

BSA-PLAN_01422419

SA 0673

     e)     Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

247.     As a direct and proximate cause of Steve Fout's negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

248.     Further, as a direct and proximate cause of Defendant Steve Fout's negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

249.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count IX: Vicarious Liability of Defendants NORTH FLORIDA COUNCIL and BSA for the Negligence and Breach of Fiduciary Duty of SILVER SPRINGS SHORES**

250.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

46

BSA-PLAN_01422420

SA 0674

251.    At all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendants NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

252.    Accordingly, Defendants NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of SILVER SPRINGS SHORES.

253.    SILVER SPRINGS SHORES acts and omissions and breaches of fiduciary duties include, without limitation,

    f)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    g)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    h)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

    i)    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

    j)    Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

254.    As a direct and proximate cause of SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

47

BSA-PLAN_01422421

SA 0675

255.    Further, as a direct and proximate cause of SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

256.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count X: Vicarious Liability of Defendant BSA for the Negligence and Breach of Fiduciary Duty of NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES**

257.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

258.    At all relevant times, NORTH FLORIDA COUNCIL was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

259.    In addition, at all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

48

BSA-PLAN_01422422

SA 0676

260.    Accordingly, Defendant BSA is vicariously liable for the acts and omissions and breaches of fiduciary duties of NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

261.    NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES acts and omissions and breaches of fiduciary duties include, without limitation,

> k)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

> l)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

> m)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

> n)    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

> o)    Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

262.    As a direct and proximate cause of NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

263.    Further, as a direct and proximate cause of NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES negligent acts and omissions and breach of fiduciary duty,

49

Highly Confidential

BSA-PLAN_01422423

SA 0677

A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

264.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## Count XI Fraud, Misrepresentation and Fraudulent Concealment

265.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

266.    Congress founded BSA in the United States in 1910.

267.    Throughout its history, the BSA has consistently held itself out to the public as a "moral and safe" environment for boys to participate in healthy outdoor activities and to be given proper guidance and instruction. Millions of parents and scouts have placed then- trust in the BSA.

268.    Since 1910, hundreds of millions of parents have entrusted their sons to BSA's care, guidance and instruction. Since its inception, BSA aggressively marketed the wholesomeness and safety of its programs to the American Public.

Highly Confidential

BSA-PLAN_01422424

SA 0678

269.    The BSA engages in affirmative commercial efforts which sophisticatedly use powerful American symbols and modern advertising techniques to sell a national belief that the BSA could best mold the proper expression of American boyhood.

270.    The BSA promotes itself as a vehicle for boys to be instructed in good citizenship patriotism, and efficient social organization. Its brand consistently promotes an image of providing a safe environment in which they can develop "patriotism, self-reliance and kindred virtues." For example, a copy of "BSA Mission" is attached as Exhibit "B".

271.    Paradoxically, the BSA promotes the wholesomeness of its program while knowing that since the 1940s, it has been secretly removing Scoutmasters for child sexual abuse at an alarming rate, which in the 1970s reached an average of one every three days. Its own records demonstrate that it has long known that scouting attracts pedophiles in large numbers and that scouts, far from being safe, are at the heightened risk of sexual abuse by child molesters

272.    The BSA fraudulently concealed from Congress, scouts, their parents and the American taxpayer BSA's certain knowledge that pedophiles had been infiltrating BSA in large numbers for many years, as more particularly described in Paragraphs 119 - 140

273.    The BSA, pursuant to its Congressional Charter in 1916, later codified by 36 U.S.C. Chapter 309 is required to file an annual report to Congress.

274.    The BSA fraudulently concealed the said information from A.A and his guardian. BSA also misrepresented to scouts, their parents and the American taxpayer that the scouts were safe in scouting programs when, in fact, scouts were at an unreasonably heightened risk of sexual abuse by adult scout leaders, BSA made said misrepresentations to A.A and his guardian.

51

BSA-PLAN_01422425

SA 0679

275.    BSA's internal records known as the "Ineligible Volunteer" files (hereinafter referred to as "The IV Files") are a unique repository of documents BSA secretly began amassing shortly after its founding in 1910.

276.    Between 1987 and 2005, BSA settled sixty-one lawsuits in which BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders.

277.    Since 1987, BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by BSA to prevent the facts and circumstances of the abuse from becoming public.

278.    BSA continues to make false and misleading public statements regarding the risks of sexual abuse in scouting; continues to minimize and downplay the harm of sexual abuse to children in scouting; fails to reach out to provide support and assistance to boys it knows were sexually abused by adult scout leaders; and continues to deny the truth about its historical knowledge of the nature and extent of sexual abuse of scouts by adult scout leaders.

279.    BSA failed to establish reasonable safeguards to prevent pedophiles from entering its programs.

280.    A.A. and his guardians trusted the BSA and reasonably relied upon the BSA's representations that it presented a moral and safe place for boys.

281.    BSA deliberately withheld information from Congress in its annual report from scouts and their parents, including A.A and his guardian.

282.    It withheld information about the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA was aware; and the methods pedophiles had been using to gain access to scouts, to groom them for abuse, and to keep them silent. BSA's

52

BSA-PLAN_01422426

SA 0680

timely communication of this information would have enabled scouts, including A.A., to protect himself from sexual abuse by pedophiles in scouting. It would have enabled Congress to perform its constitutional oversight function over a congressionally-chartered, tax-payer funded and tax-exempt youth organization which brings unscreened, unvetted adults into contact with tens of millions of children annually.

283.    BSA had a financial incentive to withhold facts and information about predatory and pedophilic Scoutmasters and/or Assistant Scoutmasters.

284.    Since 1910, BSA has derived millions of dollars per year licensing the rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise to affiliated scouting organizations throughout the United States and abroad (See 36 U.S.C, § 30905). BSA has realized income from these federally-protected assets by marketing them to parents and their children, including A.A.

285.    BSA's marketing includes encouraging parents to enroll their children in BSA. Enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to BSA. This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others. This system includes overnight outings, camping events, and trips away from parents. The system is reward based, obligating the child to purchase emblems, badges, and other Scouting paraphernalia, which in turn creates profit for the federally charted organization.

286.    In addition to being federally created, federally chartered, and endowed by Congress with exclusive economic rights, BSA is funded by the federal government, private donations, membership dues, corporate sponsors, and special events

<center>53</center>

BSA-PLAN_01422427

SA 0681

287.    BSA is the 18th largest nonprofit in the United States, with income exceeding $780 million dollars a year.

288.    Upon information and belief, the Boy Scout Defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by Scoutmasters and Assistant Scoutmasters and prevent disclosure, prosecution and civil litigation including, but not limited to:

    a.    Failure to report incidents of abuse to law enforcement or child protection agencies;

    b.    Concealment of abuse they had substantiated and failure to seek out and redress the injuries its Scoutmasters and leaders had caused; and

    c.    Failure to advise local scouting agencies of the rampant problem of sexual abuse of scouts by Scoutmasters and leaders and that BSA's system of "Ineligible Volunteer Files" was ineffective at curbing the problem.

289.    Based on these actions, the Boy Scout Defendants engaged in fraudulent concealment and are estopped from asserting the defense of statute of limitations and/or laches.

290.    A.A. alleges that had the BSA notified A.A., his guardian, civil authorities, or the scouting public of the pervasiveness of sexual abuse by the BSA's adult scout leaders, A.A. would either not have joined the BSA or not been allowed by his guardian to join the BSA.

291.    Alternately, if the BSA had educated A.A. and his guardian of the nature of risks of abuse by adult scout leaders, that he would have taken steps to protect himself from the grooming and sexual abuse to which his adult scout leader subjected him.

292.    BSA had notified or educated A.A. and his guardian of the nature of risks of abuse by adult scout leaders, he would not have, and would not have been permitted continuous sleep-overs at the home of Steve Fout in the bedroom of George Fout.

54

BSA-PLAN_01422428

SA 0682

293.    The above described conduct of the Boy Scout Defendants was willful and outrageous, was committed in reckless disregard of the probability of causing A.A.'s severe emotional distress, mental anguish, humiliation, and psychological, spiritual, and physical injury and illness of A.A.

294.    Additionally, in doing the acts as described herein, the Boy Scout Defendants were guilty of fraud, oppression, or malice.  As a direct and proximate result of the practice of deceit, deception, concealment and fraud by the Boy Scout Defendants and George Fout, A.A. was victimized by George Fout and sustained the profound injuries, losses and damages as set forth therein

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Dated: August 30, 2019.

MORGAN & MORGAN, P.A.
Business Trial Group

*s/Paul L. SanGiovanni*
Paul L. SanGiovanni, Attorney at Law
Florida Bar No. 0513164
Cari Whitmire, Attorney at Law
Florida Bar Number 1015584
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone:  (407)418-6041
Facsimile:  (407)245-3394
Primary E-mail:  PSangi@forthepeople.com
Primary E-mail:  CWhitmire@forthepeople.com
Secondary E-mail: MTodd@forthepeople.com

55

BSA-PLAN_01422429
SA 0683

1972



**BOY SCOUTS OF AMERICA**
North Brunswick · New Jersey 08902 · 201 249-6000

INTRAORGANIZATION COMMUNICATION

December 4, 1972

PERSONAL AND CONFIDENTIAL

TO ALL SCOUT EXECUTIVES:

SUBJECT:  Maintaining Standards of Leadership

The attached information on Maintaining the Standards of Leadership of the
Boy Scouts of America has been carefully developed as a guideline for
Scout Executives.

This is the first time such information has been printed, and because of
the misunderstandings which could develop if it were widely distributed,
we suggest that after you have read it, you file it with other policy
statements without making photocopies or sharing it beyond the top
management of your council.

If you have any questions, please do not hesitate to write or call us.

Sincerely,

Paul Ernst

Paul I. Ernst, Executive
Registration and Subscription

cm
cc:  Regional Directors
     Management Staff
Attachment

BSA 02205

**Exhibit "A" to Second Amended Complaint**

e ID: 190800135

Highly Confidential

BSA-PLAN_01422430

SA 0684

## MAINTAINING STANDARDS OF LEADERSHIP

Since its inception, the BSA has maintained its right to set standards of leadership in the areas of age, citizenship, sex, education, morals and emotional stability. This position is set forth in the Bylaws:

> Article II, Section 2, Clause 3 "No person shall be approved as a leader unless, in the judgment of Boy Scouts of America, he possesses the moral, educational, and emotional qualities deemed necessary for leadership and satisfies such other leadership qualifications as it may from time to time require."

> Other supporting Articles are listed in Appendex A.

The local council and the National Council must approve all applications (Bylaws Article XVIII, Section I, Clause 3).

These standards were developed solely to protect the youth of America and their enforcement in no way infringes on the rights of any individuals, nor is refusal of registration to be construed as persecution or defamation of character. All leaders register for a limited term (usually one year) and reregistration at the end of that period is also subject to approval (Bylaws, Article XV, Section 4).

When a registered leader commits an act or conducts himself in a manner that would seem to cause him to be unfit as a leader or an associate of boys, the Scout Executive should take the following steps:

1) Inform the Registration and Subscription Executive at the National Office of the general nature of the allegations.

2) Secure hard evidence about the situation (signed statements by principals, police reports, court records, newspaper clippings, etc.).

3) Submit evidence and the confidential record sheet to Registration and Subscription.

4) Upon notification from Registration, write a letter to the individual (Appendix B) and hand deliver it along with a volunteer.

5) After the letter has been read, verbally tell the person the reasons for refusal to register. Make no accusations -- say we have evidence to convince us that your --(financial affairs) (moral life) (lack of leadership ability) do not meet the standards for leadership in the BSA. Indicate that the BSA is not sharing this information with anyone and only wish him to stop all Scouting activity.

   After this visit, write down the main parts of the conversation, who was present and the date, and mail this to Registration and Subscription.

BSA 02206

Case ID: 190800135

-2-

6) If the individual persists, the following review steps are to be taken as required:

A) Initial Step -- The president of the local council will appoint three volunteers to act as a committee to review the case.

B) (If Step A does not resolve matter) -- The Regional President will appoint a review committee if the person is not satisfied with the council's decision.

C) (If Step B does not resolve matter) -- The President of the BSA will appoint a review committee if the individual is not satisfied with the Region's decision.

When a Scout Executive receives a confidential inquiry from Registration and Subscription about a person attempting to register, he should take the following steps:

1) Secure as rapidly as possible the necessary answers on the questionnaire and return to Registration and Subscription.

2) If it is not the same person, the registration certificate will be sent to the council.

3) If it is the same person, Registration and Subscription will write to the Scout Executive, indicating that the BSA is unwilling to register that person because information we have indicates that he fails to meet our standards of leadership. If the individual questions the statement the Scout Executive may ask him if he has ever been in Scouting in the past and been refused membership.

If the answer is yes, the Scout Executive may say the reasons remain the same.

If the answer is no, and the individual insists there has been a mistake, the Scout Executive should instruct him to send a complete statement covering his adult years, including address and dates lived there, occupations and dates, and names of spouse and children to the Registration and Subscription Executive.

In certain cases, an individual who failed to meet the standards of leadership in the past wishes to register and the circumstances are changed sufficiently that the BSA is willing to accept the registration on a trial basis. The Scout Executive will be notified in this situation, and requested to keep a close watch on the individual for one year and then give a brief report to Registration and Subscription.

All cases are reviewed periodically in reference to the seriousness of the offense and the passage of time, and when the standards of leadership seem to be satisfactorily met, cases are cancelled.

BSA 02207

Case ID: 190800135

BSA-PLAN_01422432
SA 0686

-3-

Many times an individual comes to a council seeking registration with the
BSA and something unusual causes concern that further checking should be
done before registration is completed.

When you find yourself in this situation, we ask that you write or phone
directly to Registration and Subscription, asking that we check for any
information that might be on file concerning the individual in question.
This will immediately help you in your relationships with the individual
and give you information as to whether registration should be completed
before you do a lot of unnecessary work and make any commitments which
could prove embarrassing.

dw-11/15/72

BSA 02208

Case ID: 190800135

Highly Confidential

BSA-PLAN_01422433

**SA 0687**

-4-

Appendix A

Article III, Section 2, Clause 1
Article X, Section 5, Clause 1
Article XII, Section 2
Article XII, Section 3
Article XII, Section 4
Article XV, Section 2, Clause 2, 3, 4, 6, 7
Article XVI, Section 6, Clause 4
Article XVIII, Section 2, Clause 1
Article XVIII, Section 3, Clause 2
Article XVIII, Section 4, Clause 1 - 7
Article XVIII, Section 5, Clause 1 - 2
Article XVIII, Section 7, Clause 1 - 2
Article XVIII, Section 9, 10, 11, 12

dw-11/27/72

BSA 02209

Case ID: 190800135

Highly Confidential

BSA-PLAN_01422434

SA 0688

-5-

Appendix - B

Dear

After a review of your past history with the Boy Scouts, it has been
decided not to accept your registration.  Registration with the Boy
Scouts of America is not automatically granted to everyone.  It is a
privilege and we reserve the right to refuse registration whenever
there is any reason for concern related to the person's association
with members or leaders of the Boy Scouts of America.

We, therefore, at this time desire to have you sever your relationship
with the Boy Scouts of America.  We are making no accusations and will
not release this information to anyone, so our action in no way will
affect your standing in the community.

Very truly yours,


Scout Executive


dw

BSA 02210

Case ID: 190800135

Highly Confidential

BSA-PLAN_01422435

SA 0689

# The BSA Mission

## MISSION STATEMENT AND PURPOSE

*The mission of the Boy Scouts of America is to prepare young people to make ethical and moral choices over their lifetimes by instilling in them the values of the Scout Oath and Law.*

## SCOUT OATH

*On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight.*

## SCOUT LAW

*A Scout is*

- Trustworthy
- Loyal
- Helpful
- Friendly
- Courteous
- Kind
- Obedient
- Cheerful
- Thrifty
- Brave
- Clean
- Reverent

## Purpose of the BSA

The purpose of this corporation shall be to promote, through organization, and cooperation with other agencies, the ability of boys to do things for themselves and others, to train them in Scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues, using the methods which are now in common use by Boy Scouts.

—Federal Charter, sec. 3.

One of the goals of the Boy Scouts of America is to provide, through chartered organizations, a program for boys, young men, and young women designed to encourage them to be faithful in their religious duties, build desirable qualities of character, train and involve them in the responsibilities of participating citizenship, and develop in them personal fitness.

> ## *Exhibit "B to Second Amended Complaint*

Highly Confidential

Special emphasis will be placed in assisting the home, religious groups, and schools in achieving success in the development of abiding values in the lives of young people.

All programs will be directed toward helping to develop the full potential of each member.

## The Council's Purpose

The purpose of the council is to guide and support its districts for the achievement of the movement's purpose. (A successful district meets Quality District requirements.) The end result of effective district support is continued growth in membership, with those members receiving a quality program.

## The Function of the Districts

All districts are responsible for carrying out functions in four areas:

1. Membership
2. Finance
3. Program
4. Camp promotion
5. Training
6. Activities and civic service
7. Advancement and recognition
8. Unit service (commissioner service)

The order in which the functions are listed is not meant to suggest the order of their importance, but the natural interrelationship and flow of the functions. The movement cannot achieve its purpose without first organizing units and enrolling members. The district cannot support its units without the funds to do it. Unit programs are supported by the district through its program functions and unit service. All four functions are equally important and necessary. If one suffers from lack of attention, all the work of the district suffers.

The functions of the district include

- Extending opportunities for youth to join a pack, troop, team, or crew
- Helping existing units provide a quality program for their youth
- Marshaling the resources of the territory in terms of volunteers and money

BSA-PLAN_01422437

SA 0691

Its specific duties are selling the use of Scouting and providing the essential services. The district committee sells the use of the program to community organizations and helps to organize new units. It provides those things essential to successful Scouting that the chartered organization cannot easily provide, including

- Guidance in the selection of unit leadership
- Training for unit personnel in the techniques of good program
- Interunit activities that stimulate good unit program through participation and competition
- Promotion of the BSA camping and outdoor program
- Promotion of the BSA advancement program by providing merit badge counselors and coaching unit committees on advancement procedures
- Giving guidance to units through effective commissioner service

The district serves as a vehicle by which Scouting services and programs are carried to the chartered organization and units. It serves as a sounding board for chartered organization and unit needs and thus enables the consideration of those needs as the council program is planned. It also participates in determining the council budget and fund-raising for the financing of its program.

BSA-PLAN_01422438

SA 0692

# EXHIBIT 2

# Pending Motions

Highly Confidential

Filing # 96346768 E-Filed 09/26/2019 01:38:19 PM

81910-5

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.,                                              CIRCUIT CIVIL DIVISION

      Plaintiff,                                  CASE NO. 2016-CA-000167

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

      Defendant.

_____/

## DEFENDANT'S, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC. ("Silver Springs"), by and through the undersigned counsel and pursuant to the applicable Florida Rules of Civil Procedure, hereby files this Motion to Dismiss Plaintiff's Second Amended Complaint and Motion to Strike Prejudgment Interest, and in support thereof states as follows:

1.      On March 9, 2016, Plaintiff filed his original Complaint in this matter.

2.      Soon after, this Defendant indicated intention to file a Motion to Dismiss Plaintiff's Original Complaint. However, this Defendant agreed with Plaintiff to withhold filing its Motion to Dismiss in exchange for Plaintiff counsel's agreement to amend the original complaint.

3.      As such, on December 14, 2018, Plaintiff filed an Amended Complaint.

CASE NO. 2016-CA-000167

4.      On August 20, 2018, this Defendant filed its Motion to Dismiss and Motion to Strike Prejudgment Interest.

5.      On July 24, 2019, this honorable court granted this Defendant's Motion to Dismiss Plaintiff's Amended Complaint without prejudice.

6.      On August 30, 2019, Plaintiff filed a Second Amended Complaint.

7.      Plaintiff asserts a negligence action arising out of the alleged sexual battery of A.A. by George Fout at various unknown times in the private bedroom of George Fout. ***See Plaintiff's Second Amended Complaint at Paragraph 107, a copy of which is attached hereto as Exhibit A***.

8.      Plaintiff claims that this Defendant was negligent for failing to prevent A.A. from participating in sleepovers with BSA volunteers.

9.      Plaintiff goes on to allege that Defendant breached its duties to A.A., to whom the Second Amended Complaint alleges Defendant had a special relationship. Plaintiff also alleges that Defendant is vicariously liable for the actions of George Fout and Steve Fout.

10.     There are no allegations to support any of Plaintiff's claims contained in Plaintiff's Second Amended Complaint.

11.     As such, this Defendant now moves to dismiss all counts of Plaintiff's Second Amended Complaint on the following grounds:

    a.   Counts I and II should be dismissed because Plaintiff has failed to sufficiently allege a special relationship existed between this Defendant and A.A.

    b.   Alleging a "special relationship" between this Defendant and A.A. is a legal conclusion, which is not supported by any of the facts alleged by Plaintiff.

- 2 -

BSA-PLAN_01422441
SA 0695

CASE NO. 2016-CA-000167

Moreover, Plaintiff fails to allege that a special relationship existed at the time of the sexual abuse as Plaintiff does not provide any dates to indicate when the abuse occurred.

    c.   Plaintiff fails to satisfy Florida's pleading requirements.

    d.   Counts VII and VIII of Plaintiff's Amended Complaint should be dismissed because Plaintiff has not alleged any facts that establish vicarious liability on Silver Springs for the actions of either George Fout or Steve Fout.

    e.   Defendant moves to dismiss Count XI because it fails Florida's Pleading requirements pursuant to Florida Rule of Civil Procedure 1.120.

    f.   Plaintiff's claims against this Defendant are time-barred by the statute of limitations.

    g.   Plaintiff improperly commingles counts and defendants.

12.    Dismissal with prejudice is appropriate at this time because Plaintiff has had three opportunities to sufficiently allege viable causes of action against this Defendant, and has failed each time.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**I.**    **Plaintiff Fails To Plead Facts Sufficient To Support A Single Viable Cause Of Action Against or Duty Attributable to Silver Springs**

Plaintiffs' Second Amended Complaint should be dismissed in its entirety because it fails to state a single viable cause of action against Silver Springs. Florida is a fact pleading jurisdiction. Horowitz v. Laske, 855 So.2d 169 (Fla. 5th DCA 2003). In order to state a cause of action, Florida Rule of Civil Procedure 1.110(b)(2) requires that a pleading contain "a short

- 3 -

Highly Confidential

BSA-PLAN_01422442

**SA 0696**

CASE NO. 2016-CA-000167

and plain statement of the ultimate facts showing that the pleader is entitled to relief." Florida's

pleading rules force counsel to recognize the elements of their causes of action and determine

whether they have, or can develop, the facts necessary to support them, which avoids a great deal

of wasted expense to the litigants and unnecessary judicial effort. Continental Banking Co. v.

Vincent, 634 So.2d 242, 244 (Fla. 5th DCA 1994). Moreover, at the outset, litigants must state

their pleadings with sufficient particularity for a defense to be prepared. Arky, Freed, Stearns,

Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561 (Fla.1988).

Mere conclusions are insufficient. Clark v. Boeing Co., 295 So.2d 1225 (Fla. 2d DCA 1981).

Plaintiffs' Second Amended Complaint does not contain a short and plain statement of

the ultimate facts showing that Plaintiffs are entitled to relief nor does it allege facts that can

support each element of Plaintiffs' causes of action with sufficient particularity to enable Silver

Springs to prepare its response.

Counts I and IV of Plaintiff's Complaint should be dismissed because they fail to

establish a duty owed to A.A. by Silver Springs for the actions of George Fout and Steve Fout.

The general rule in Florida is that a party has no legal duty to "prevent the misconduct of third

persons." Michael & Philip, Inc. v. Sierra, 776 So.2d 294, 297 (Fla. 4th DCA 2000). As the court

noted in Boynton v. Burglass, 590 So.2d 446, 448 (Fla. 3d DCA 1991), "Florida courts have long

been loathe to impose liability based on a defendant's failure to control the conduct of a third

party." K.M. ex rel. D.M. v. Publix Super Markets, Inc., 895 So. 2d 1114, 1117 (Fla. 4th DCA

2005). Florida recognizes the special relationship exception to the general rule of non-liability

for third-party misconduct. The existence of a special relationship, however, may give rise to a

duty to control the conduct of third persons so as to prevent them from harming others. *Id.*

- 4 -

BSA-PLAN_01422443

SA 0697

CASE NO. 2016-CA-000167

Florida has adopted the "special relationship" test set forth in the Restatement (Second) of Torts,

Section 315, which states:

> § 315 General Principle
> There is no duty so to control the conduct of a third person as to prevent him
> from causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which imposes
> a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the
> other a right to protection.

Plaintiff has attempted to establish a duty on this Defendant based on the special

relationship exception. Plaintiff, however, has cited to no facts to support his contention that

Silver Springs owed a special duty to A.A. Plaintiff maintains the position that Silver Springs

controlled or had the right to control local troops directly, or through its sponsoring

organizations. However, Plaintiff's Second Amended Complaint is deficient of any dates to

establish when or how a special relationship arose. Further, it does not identify the parties to

which the special relationship arose to indicate whether § 315 subsection (a) or (b) is applicable.

Consequently, Plaintiff's Second Amended Complaint fails to provide sufficient information and

ultimate facts to allow this Defendant to prepare a defense, thus warranting dismissal for failing

to satisfy Florida's pleading requirements as discussed in more detail below.

## II.    Plaintiff's Second Amended Complaint Fails to meet Florida's Pleading Requirements

Plaintiffs' Second Amended Complaint is filled with nothing more than vague and

conclusory allegations.    More specifically, Plaintiffs' Second Amended Complaint is

insufficiently pled in the following ways:

- 5 -

BSA-PLAN_01422444
SA 0698

CASE NO. 2016-CA-000167

First, "for the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter." *Fla. R. Civ. P.* 1.120(f). Nowhere in Plaintiff's Second Amended Complaint does Plaintiff identify a time-period for when the subject abuse occurred.

Moreover, Plaintiff fails to allege that a special relationship existed at the time of the sexual abuse because of the fact that Plaintiff does not provide any dates to indicate when the subject abuse occurred. Without greater information, Silver Springs cannot conceivably owe a duty to A.A. or be liable for the alleged incidents of sexual abuse. Consequently, Plaintiff's Second Amended Complaint fails to satisfy Florida requirements for pleading special matters and should be dismissed in its entirety.

**III.    Plaintiff fails to Plead Facts Sufficient to Support a Claim for Vicarious Liability – Actual Agency**

In Counts VII and VIII, Plaintiff alleges that Silver Springs is vicariously liable for the sexual battery by George Fout and the breach of fiduciary duty of Steve Fout, respectively. Plaintiff alleges that, at all relevant times, George Fout and Steve Fout were acting as agents on behalf of Silver Springs. The essential elements to establish actual agency are: (1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent. Villazon v. Prudential Health Care Plan, Inc., 843 So. 2d 842 (Fla. 2003). Plaintiff's Second Amended Complaint is deficient with regard to this argument as it does not allege any ultimate facts showing that a principal (someone in a supervisory role at Silver Springs) acknowledged that

- 6 -

CASE NO. 2016-CA-000167

either George Fout or Steve Fout would act for Silver Springs; how and when either of the Fouts accepted that undertaking; nor the ways in which Silver Springs controlled the Fouts actions.

## IV.   Plaintiff fails to Plead Facts Sufficient to Support a Claim for Vicarious Liability – Apparent Agency

Similarly, agency was not established through the doctrine of apparent agency. In order to determine the existence of apparent agency, it must be determined that (1) there was a representation by the principal; (2) the injured party relied on that representation; and (3) the injured party changed position in reliance upon the representation and suffered detriment. Amstar Inc. Co. v. Cadet, 862 So. 2d 736, 742 (Fla. 5th DCA 2003). Nowhere in Plaintiff's Complaint does Plaintiff allege that Silver Springs made a representation regarding the existence of an agency relationship between Silver Springs and either of the Fouts. Plaintiff's Complaint does not establish the existence of an agency relationship because it fails to allege any ultimate facts supporting that claim. Additionally, "the injured party *did not* change position in reliance upon any representations" because the information concerning the history of sexual abuse in the Boy Scouts was equally available to the Plaintiff. Even, taking Plaintiff's assertions as true, Plaintiff was not prevented from learning any information about sexual abuse in the Boy Scouts, and therefore, did not change position in reliance upon a representation from any of the "Boy Scout Defendants."

Even if this Court accepted the bold assertions that the Fouts were agents of Silver Springs, ("Silver Springs" - included in the term "Boy Scout Defendants" scattered throughout Plaintiff's Second Amended Complaint) the alleged sexual abuse described in the Complaint would fall outside the scope of any agency relationship. "An employee's conduct is within the

- 7 -

CASE NO. 2016-CA-000167

scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." Iglesia Cristiana La Casa Del Senor, Inc. v. L.M., 783 So. 2d 353, 357 (Fla. 3d DCA 2001).

Courts have previously held that a volunteer is not acting within the scope of agency at the time of an incident in which the volunteer was a perpetrator of sexual abuse. See Special Olympics Fla., Inc. v. Showalter, 6 So. 3d 662, 665 (Fla. 5th DCA 2009). "Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer." Nazareth v. Herndon Ambulance Serv., Inc., 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985). Unless it can be established that the abuse occurred in furtherance of the employer's business or principal's activities, the type of misconduct which is alleged in the subject Complaint is not within the scope of the purported agency relationship. See Showalter, 6. So. 3d at 665–66. In L.M., supra, the court found that the Defendant church was not vicariously liable for the sexual molestation of a youth who was being counseled/ministered, noting that although the pastor may have had access to the girl through his position as the Church pastor, he was not engaging in authorized acts or serving the interests of the Church during the time he sexually abused the minor child. Iglesia Cristiana La Casa Del Senor, Inc. v. L.M., 783 So. 2d 353, 358 (Fla. 3d DCA 2001).

"As a matter of common sense, having sexual relations with a counselee is not part of the job responsibilities of a minister." Elders v. United Methodist Church, 793 So. 2d 1038, 1041 (Fla. 3d DCA 2001).

- 8 -

BSA-PLAN_01422447
SA 0701

CASE NO. 2016-CA-000167

That rationale is equally applicable here, where Plaintiff is attempting to hold Silver Springs vicariously liable for the acts of George Fout and Steve Fout, an assistant scoutmaster and scoutmaster, respectively. The duties of the Fouts included leading troop meetings, training troop members in craft/survival skills, planning troop activities, and coordinating troop fundraising. Because the sexual abuse alleged by Plaintiff was driven by the personal motives of George Fout and not designed to further the interests of Silver Springs, Counts VII and VIII of the Complaint should be dismissed.

**V.   Plaintiff Does Not State a Claim for Fraud/Fraudulent Concealment**

Plaintiff fails to plead how Silver Springs concealed its knowledge of George Fout's propensities.   Plaintiffs' Second Amended Complaint is replete with conclusory and unsubstantiated allegations that Silver Springs fraudulently concealed its knowledge of George's propensities, which Silver Springs vehemently denies, yet Plaintiff provides no details as to what Silver Springs allegedly did to conceal its knowledge of George's propensities.   Allegations of fraud presume that Silver Springs committed an intentional bad act, which is more than a mere failure to disclose.   Plaintiff cannot simply allege that fraudulent concealment occurred, in an attempt to overcome the statute of limitations, without having any factual basis for doing so.

Florida Rule of Civil Procedure 1.120(b) states that fraud is a special matter that must be pled with particularity.   Additionally, Florida Courts have reiterated this requirement and held that allegations of fraud must specifically identify the misrepresentations or omissions of fact, as well as, the time, place, and manner in which they were made.   Blue Supply Corp. v. Novos Electro Mech., Inc., 990 So.2d 1157, 1159-60 (Fla. 3d DCA 2008); See also Hembd v. Dauria,

- 9 -

Highly Confidential

BSA-PLAN_01422448

**SA 0702**

CASE NO. 2016-CA-000167

859 So.2d 1238, 1240 (Fla. 4th DCA 2003) (fraud must not be "flung into [a] case willy-nilly" by stating "legal conclusions."). In fraudulent concealment cases, the plaintiff must show (1) successful concealment of the cause of action; (2) fraudulent means to achieve that concealment and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim. *See* Berisford v. Jack Eckerd Corp., 667 So. 2d 809, 811-12 (Fla. 4th DCA 1995).

The Eleventh Circuit has explained that "fraudulent concealment requires the defendants to engage in the willful concealment of the cause of action using fraudulent means to achieve that concealment." Raie v. Cheminova, Inc., 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (citing Berisford, 667 So. 2d at 811)

"Fraudulent concealment goes beyond mere non-disclosure, and must constitute active and willful concealment." Licul v. Volkswagen Group of Am., Inc., No. 13-61686-CIV, 2013 WL 6328734, at * 6 (S.D. Fla. Dec. 5, 2013); *see also* Nardone v. Reynolds, 333 So. 2d 25, 39 (Fla. 1976), ("generally the fraud must be of such a nature as to constitute active concealment to prevent inquiry or elude investigation or to mislead a person who could claim a cause of action"); Vargas By and Through Vargas v. Glades General Hosp., 566 So. 2d 282, 285 (Fla. 4th DCA 1990).

Here, Paragraphs 265-287 of Plaintiff's Second Amended Complaint discuss how Defendant BSA has affirmatively withheld information related to instances of child sexual abuse from Congress and parents of Boy Scouts. **See Plaintiff's Second Amended Complaint at Paragraphs 265-287**. The Complaint goes on to allege that BSA's marketing campaign has affirmatively misrepresented the Boy Scout environment and the nature of each scouts'

- 10 -

CASE NO. 2016-CA-000167

enrollment. *Id*. However, nowhere in Paragraphs 265-287 does Plaintiff mention Defendant, Silver Springs. The first mention of Defendant, Silver Springs occurs in Paragraph 288 and its' subparts whereby Plaintiff alleges the "Boy Scout Defendants":

    a.  "Failure to report incidents of abuse to law enforcement or child protection agencies;

    b.  Concealment of abuse they had substantiated and failure to seek out and redress the injuries its Scoutmasters and leaders had caused; and

    c.  Failure to advise local scouting agencies of the rampant problem of sexual abuse of scouts by Scoutmasters and leaders and that BSA's system of "Ineligible Volunteer Files" was ineffective at curbing the problem."

As you can see, nowhere in Paragraph 288 does Plaintiff allege "active and willful concealment" on the part of Silver Springs. Moreover, neither Paragraph 288, nor its subparts, allege that Silver Springs ***actively concealed*** information "to prevent inquiry or elude investigation or to mislead a person who could claim a cause of action." *See* <u>Vargas</u> at 285 (Fla. 4th DCA 1990).

Later, in Paragraph 293, Plaintiff alleges "the above described conduct of the 'Boy Scout Defendants' was willful and outrageous, was committed in reckless disregard of the probability of causing A.A.'s severe emotional distress, mental anguish, humiliation, and psychological, spiritual, and physical injury and illness of A.A." However, Plaintiff asserts no facts in Count XI to substantiate a claim of active and willful concealment against Silver Springs. As a result, Plaintiff's Second Amended Complaint fails to state a cause of action for Fraud against this Defendant, and therefore, should be dismissed.

## VI.  <u>Comingling Of Counts</u>

- 11 -

BSA-PLAN_01422450
**SA 0704**

CASE NO. 2016-CA-000167

Plaintiff's Second Amended Complaint should be dismissed in its entirety because it improperly comingles counts and defendants.  Florida Rule of Civil Procedure 1.110(f) states that each claim "shall be stated in a separate count." See also K.R. Exchange Services, Inc. v. Fuerst, Humphrey, Ittleman, PL, 48 So.3d 889 (Fla. 3d DCA 1020) ("A party should plead each distinct claim in a separate count rather than plead the various claims against all of the defendants together."); Pratus v. City of Naples 807 So.2d 795 (Fla. 2d DCA 2002) ("...each claim should be plead in a separate count instead of lumping all defendants together.") Throughout numerous counts, Plaintiff impermissibly pleads counts that lump multiple Defendants together in one count as opposed to correctly pleading each count against each Defendant separately. Notably, Counts VII, VIII, and XI commingle multiple Defendants into the same count making it indiscernible which paragraphs contained in each count apply to Silver Springs. As such, Plaintiff's Second Amended Complaint fails Florida's pleading requirements should be dismissed in its entirety.

Moreover, to the extent that Silver Springs is being sued vicariously for the acts of George or Steve Fout, which is unclear from the four corners of Plaintiff's Second Amended Complaint, then Plaintiff's Second Amended Complaint should also be dismissed because claims for vicarious liability must be specifically plead as separate and distinct counts. Goldschmidt v. Holman, 571 So.2d 433 (Fla. 1990).

VII.   **Plaintiff's Claims against Silver Springs are Time-Barred by the Statute of Limitations**

- 12 -

BSA-PLAN_01422451
SA 0705

CASE NO. 2016-CA-000167

Plaintiffs have attempted to avoid the statute of limitation by arguing delayed discovery and fraudulent concealment by Defendants. However, these arguments fail. The delayed discovery doctrine does not apply to negligence causes of action arising out of sexual abuse. Cisko v. Diocese of Steubenville, 123 So.3d 83 (Fla. 3d DCA 2013. Additionally, concealment of knowledge of other instances of alleged abuse does not avoid the statute of limitations in negligence claims arising from sexual abuse. Rubio v. Archdiocese of Miami, Inc., 114 So.3d 279 (Fla. 3d DCA 2013); John Doe No. 23 v. Archdiocese of Miami, Inc.. Furthermore, as explained in great detail above, Plaintiffs have not pled facts sufficient to support a claim for delayed discovery or fraudulent concealment.

Normally, a claim for injuries based on another party's negligent conduct must be filed within four years of the incident under the applicable statute of limitations. Rubio v. Archdiocese of Miami, Inc., 114 So. 3d 279, 281 (Fla. 3d DCA 2013). In more than ten years since enacting section 95.11(7), the legislature has not extended the limitations period to causes of action other than intentional torts. Cisko v. Diocese of Steubenville, 123 So. 3d 83, 85 (Fla. 3d DCA 2013). Plaintiff's claims against Silver Springs are all premised on negligence and there are no allegations of Silver Springs committing any intentional torts. The running of the statute of limitations is an absolute defense in a negligence case such as this. Rubio, 114 So. 3d 279. In *Rubio*, the defendant church's Motion to Dismiss was granted, despite allegations that it knew that one of its priests was molesting the plaintiff, because there were no allegations that the church caused the plaintiff to wait to file suit. *Id*. As such, Plaintiff's claims related to any abuse that occurred prior to January 27, 2012 are time-barred by the four-year statute of limitations and should be dismissed with prejudice.

- 13 -

BSA-PLAN_01422452
SA 0706

CASE NO. 2016-CA-000167

This Defendant has also established that it is not vicariously liable for the actions of George Fout or Steve Fout. In sum, this Defendant contends that Section 95.11(9) is inapplicable as to all Counts against this Defendant. Specifically, Section 95.11(9) states, "an action related to an act constituting a violation of section 794.011 involving a victim who was under the age of 16 at the time of the act may be commenced at any time. This subsection applies to any such action other than one which would have been time barred on or before July 1, 2010." Here, Plaintiff does not allege anywhere in the Second Amended Complaint that Silver Springs "committed an act constituting a violation of section 794.011." Further, it is impossible for an organization to commit an act of sexual abuse thereby making section 95.11(9) inapplicable to Silver Springs. Consequently, the claims against Silver Springs are not "related to an act constituting a violation of Section 794.011." *See* Fla. Stat. § 95.11(9). Plaintiff must comply with the 4-year statute of limitations for any and all claims set forth against Silver Springs.

Regardless, if this Court accepts the applicability of Section 95.11(9), Plaintiff's claims against Silver Springs are still time-barred. The statute states, in pertinent part, "[t]his subsection applies to any such action other than one which would have been time barred on or before July 1, 2010." Fla. Stat. § 95.11(9). Prior to the enactment of this subsection, all actions founded in negligence, regardless of whether the actions were related to crimes of sexual battery, were to comply with the necessary 4-year statute of limitations.

Here, Plaintiff asserts that the sexual abuse began in or about 2004. ***See* Plaintiff's Original Complaint at Paragraph 46. See also, Plaintiff's Amended Complaint at Paragraph 49.** All negligence actions related to sexual abuse incidents, where the incidents in question occurred on or before July 1, 2006, are time-barred by the statute of limitations, per the

- 14 -

BSA-PLAN_01422453
**SA 0707**

CASE NO. 2016-CA-000167

language of Section 95.11(9).  Here, Plaintiff concedes that the abuse did, in fact, take place on or before July 1, 2006.

**VIII.**   **Dismissal With Prejudice Is Appropriate Where Plaintiff Has Had Three Opportunities To Properly Plead A Cause Of Action**

"Although there is no magical number of amendments which are allowed, dismissal of a complaint that is before the court on a third attempt at proper pleading is generally not an abuse of discretion." Barrett v. City of Margate, 743 So.2d 1160, 1162 (Fla. 4th DCA 1999) (The court affirmed dismissal with prejudice where trial court provided the Plaintiff with reasonable opportunities to cure the deficiencies in their pleadings).

Here, Plaintiff has had three opportunities to properly plead a cause of action against Silver Springs, and has failed to do so. Plaintiff's Second Amended Complaint should be dismissed with prejudice as any further grant of leave to amend would be futile.

WHEREFORE, Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., respectfully requests that this Court enter an Order dismissing all allegations against it, specifically Counts I, II, VII, VIII, and XI of Plaintiff's Second Amended Complaint, for the reasons set forth herein, and additionally requests that this Court strike Plaintiff's various claims for prejudgment interest.

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, mtodd@forthepeople.com; Spencer H. Silverglate, Esquire, ssilverglate@cspalaw.com; mpedraza@cspalaw.com; Francisco

- 15 -

Highly Confidential

BSA-PLAN_01422454
SA 0708

CASE NO. 2016-CA-000167

Ramos, Jr., Esquire, framos@cspalaw.com; Shannon P. McKenna, Esquire,

smckenna@cspalaw.com; on this 26th day of September 2019.

/s/ Raychel A. Garcia
Raychel A. Garcia, Esquire
Florida Bar No. 091096
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Silver Springs Shores Presbyterian
Church, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

- 16 -

Highly Confidential

Case 1:22-cv-01237-RGA    Document 72    Filed 12/07/22    Page 283 of 460 PageID #: 4683

Filing # 95075605 E-Filed 08/30/2019 06:55:17 PM
Case 5:20-cv-00068-2 Document 1-2 Filed 02/18/20    Page 18 of 98 PageID 93

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

   Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL,
INC., BOY SCOUTS OF
AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

   Defendants.

_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES

   Plaintiff, A.A, by and through his undersigned counsel, files this Complaint against Defendants, THE BOY SCOUTS OF AMERICA, a foreign corporation authorized to do business in Florida (hereinafter referred to as the "BSA"), the NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, a corporation authorized to do business in Florida (hereinafter referred to as the "NORTH FLORIDA COUNCIL"), and the SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., a corporation authorized to do business in Florida (hereinafter referred to as the "SILVER SPRINGS SHORES") and for good cause, states:

## INTRODUCTION

   1.  __General Statement of Claims:__ This Complaint is based on the childhood sexual abuse of Plaintiff, A.A. caused by the negligent, willful, wanton, reckless and tortious acts and omissions of BSA, NORTH FLORIDA COUNCIL, SILVER SPRINGS SHORES, Scoutmaster Steve Fout and other agents of the BSA, and George Fout, formerly an Assistant Scoutmaster.



EXHIBIT
A

BSA-PLAN_01422456

2.      At all relevant times, George Fout was the agent of Defendant BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.  These claims relate to acts of sexual battery as described in Section 794.011, Florida Statutes suffered by the Plaintiff, A.A., while he was a participant in the programs operated by the Defendants, and each of them.

3.      As more particularly described herein, the Plaintiff suffered the sexual battery described herein as a result of the neglect of the BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES and their respective agents to, among other things, exercise due care in the administration, management and operation of its scouting program, their breach of their fiduciary duties and their vicarious liability for the acts of their agents.

4.      **Jurisdiction and Venue**:      This is an action for damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorneys' fees.

5.      Venue is proper in Marion County, Florida because the events giving rise to this action occurred in Marion County, Florida. .

6.      **The Parties**:      A.A. is currently an adult residing in Marion County, Florida. The initials "A.A." are used to protect the identity of Plaintiff from public disclosure. The identity and further relevant details shall be disclosed to the Defendants off record and confidentially.

7.      At all relevant times, A.A. resided in Marion County, Florida.

8.      A.A. was a member of the Boy Scouts of America Troup 448.

9.      Plaintiff met his abuser, George Fout, due to George Fout's role as the Assistant Scoutmaster of Troup 448.

2

BSA-PLAN_01422457

**SA 0711**

10.     SILVER SPRINGS SHORES was the chartering organization for Troop 448, or such other Boy Scout Troop as A.A. was a member (herein collectively referred to as "Troop 448").

11.     The BSA is a foreign corporation authorized to do business in the state of Florida.

12.     At all relevant times, BSA controlled or had the right to control the NORTH FLORIDA COUNCIL and the sponsoring organizations, which implemented BSA's scouting program, including, without limitation, SILVER SPRINGS SHORES.

13.     The NORTH FLORIDA COUNCIL is a corporation authorized to do business in the State of Florida and is located in Duval County, Florida.

14.     At all relevant times, the NORTH FLORIDA COUNCIL was an agent of BSA, subject to BSA's control or right to control.

15.     As Defendant BSA's agent, the NORTH FLORIDA COUNCIL controlled or had the right to control local troops directly, or through their sponsoring organizations, including, without limitation, SILVER SPRINGS SHORES.

16.     SILVER SPRINGS SHORES is a corporation authorized to do business in the State of Florida and is located in Marion County, Florida. At all relevant times, SILVER SPRINGS SHORES was an agent of BSA and the COUNCIL, subject to their control or right to control.

17.     As Defendant BSA and NORTH FLORIDA COUNCIL' agent, SILVER SPRINGS SHORES controlled or had the right to control the programs and troops that it sponsored, including its Scoutmaster and Assistant Scoutmasters.

3

BSA-PLAN_01422458

SA 0712

18.     The BSA, NORTH FLORIDA COUNCIL and SILVERS SPRINGS SHORES will be collectively referred to herein as the Boy Scout Defendants.  When so used, the term references each in their respective individual capacities.

19.     Steve Fout was the Scoutmaster and leader of Troop 448.

20.     George Fout was Steve's son and was an Assistant Scoutmaster of Troop 448.

## The BSA

21.     The BSA is a large youth-serving organization which promotes, markets, and encourages parents to enroll their children in the BSA. Enrollment in the BSA requires parents to entrust their children's health and safety to the BSA and requires children to engage in activities that expose them to adults and others. Much of the BSA's activities include over-night outings, camping trips, and trips away from parents.

## The Hierarchy of the BSA and the BSA's Control Over Its Agent Scouting Organizations

22.     The BSA has established its presence through the use of a hierarchical system, whereby local Councils and chartering organizations implement and maintain the BSA's program at a local level under the BSA's guidance and control.

23.     Organizationally, the BSA is separately incorporated from local councils, but the BSA and the BSA's local councils comprise a tightly integrated, hierarchal organizational structure under the BSA's control at the top.

24.     The BSA issues the Boy Scouts of America name, emblems, badges, markings, and youth programs to the Councils and chartering organizations. The BSA requires the local

4

Highly Confidential

Council and troops within a local Council to strictly adhere to the BSA's organizational charter and standards of leadership.

25.    For example, all members of scout troops chartered through a local council must be registered and pay dues to the BSA. The BSA oversees and controls all professional staffing of local councils. Local councils may not employ any professional scouts who are not drawn from a BSA approved candidate list that the BSA compiled and maintained. Local councils are not permitted to use any programs or materials that the BSA has not supplied or approved.

26.    Unless the BSA has selected and approved them, no adult scout leader, whether paid or volunteer, may serve in a local troop or council.

27.    The BSA asserts First Amendment associational rights to exclude Scoutmasters and volunteers who do not share their values or beliefs and anyone else it chooses from participating in scouting.  Indeed the BSA has *successfully* asserted these associational rights in trial, appellate and over their volunteer and are judicially estopped from asserting that they do not have control or a special relationship with their Scoutmasters and volunteers. *See*, for example, *Boy Scouts of American vs. Dale*, 530 U.S. 640 (2004).  The BSA is similarly judicially estopped from arguing that these Scoutleaders and volunteers are not their agents.

28.    The BSA provides a wide variety of management services to locals councils and troops, including insurance and risk management, marketing, education, training, scout camps, facilities, media relations, and human resources. Duplicate personnel files on local council employees are maintained at the local council and at the BSA's national headquarters.

29.    The BSA creates the bylaws, rules and regulations that every chartering organization must adhere to in implementing and running the BSA's scouting program. Significantly, the BSA's bylaws obligate a chartering organization to provide adequate facilities,

Highly Confidential                                        BSA-PLAN_01422460
                                                                          **SA 0714**

supervision, and leadership for the troop in exchange for the granting of a charter to run a local scouting troop.

30.     A local scouting troop cannot exist without the support of a chartering organization that has received a charter from the BSA authorizing the chartering organization to implement and run the BSA's scouting program.

31.     Under the BSA bylaws, each chartering organization is required to select at least three people over the age of 21 to serve as the Troop Committee. The Troop Committee then selects the Troop Scoutmaster. The BSA must approve scout leaders, whether paid or volunteer, to serve in a local troop or council.

32.     Together, the Troop Committee and the Scoutmaster are responsible for the general program and supervision of the troop.

33.     Further, each chartering organization is required to appoint a representative other than the Scoutmaster or Assistant Scoutmaster to serve as its institutional representative on the local Council.

34.     A chartering organization must reapply to the BSA every year for a renewed charter in order to continue to operate a local troop. The BSA may revoke a chartering organization's charter at any time should the chartering organization be found to deviate from the BSA's charter and bylaws.

35.     This chartering system reveals the BSA's consent to allow local chartering organizations to operate the scouting program on its behalf and the chartering organizations' consent to operate the local troops subject to the BSA's control or right to control.  Accordingly, the chartering organizations, such as SILVER SPRINGS SHORES, are the agents of the BSA.

Highly Confidential

BSA-PLAN_01422461

SA 0715

36.     The BSA uses a similar structure in relation to its local Councils, such as the NORTH FLORIDA COUNCIL. The BSA issues a charter to an approved local Council authorizing the local Council to administer the scouting program to the local scout troops within the region on behalf of the BSA.

37.     The local Councils are subject to the same bylaws, rules and regulations as the chartering organizations. If a local Council deviates from the rules and regulations established by the BSA, then the local Council may have its charter revoked.

38.     All local Councils must apply to the BSA for renewal of their charters annually.

39.     It is the duty of the local Council to promote, support, and maintain the BSA scouting regime amongst all local troops within the local Councils area.

40.     The chartering system shows the BSA's consent to allow local Councils to operate the scouting program on its behalf within a specific geographic region, and the local Councils consent to operate the scouting program subject to the BSA's control or right to control. Thus, the local Councils are agents of the BSA.

41.     The BSA cannot operate its scouting program without the consent and cooperation of the local Councils and chartering organizations.  Conversely, the chartering organizations and local Councils cannot operate and supervise local scouting troops without the consent of the BSA.

42.     At all relevant times, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES were serving as Defendant the BSA's agents by implementing and maintaining the BSA's scouting program on a local level.

7

Highly Confidential

BSA-PLAN_01422462

**SA 0716**

### The BSA, NORTH FLORIDA COUNCIL's and
### SILVER SPRINGS SHORES Special Relationship with A.A.

43.     The Boy Scout Defendants have a special relationship with A.A., for reasons which included, without limitation, the following:

      a.    A.A. and his family imposed confidence in The Boy Scout Defendants through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things, learn the values and characteristics that Defendants promote through involvement with the BSA, and ultimately would be safe from harm in doing so;

      b.    It is through A.A.'s involvement with The Boy Scout Defendants, and George Fout's relationship with The Boy Scout Defendants that A.A. was abused by George Fout;

      c.    The Boy Scout Defendants had a direct and special relationship with scouts who participated in its programs. A.A. was a child at the time of the abuse. The abuse began and often occurred when A.A. was placed in the care and custody of Defendants The Boy Scout Defendants, with the resulting loss of control to protect himself;

      d.    A.A. was a child at the time of the abuse. He was raped and molested at locations and under circumstances where he was unable to protect himself or was otherwise unable to avail himself of his legal guardian for their ordinary source of protection or were otherwise relying entirely on the Boy Scout Defendants and their agents, including Scoutmaster Steve Fout, for his protection, and

      e.    The Boy Scout Defendants, were substituting for A.A.'s parents during the relevant times.

### BSA, NORTH FLORIDA COUNCIL's and SILVER SPRINGS SHORES Special
### Relationship with, and Constructive Control
### over Scoutmaster Steve Fout, and his Agency for them.

44.     At all relevant times, A.A. was enrolled in the Boy Scouts of America scouting program.

45.     At all relevant times, A.A. was a member of Boy Scouts of America Troop 448 in Ocala, Florida. Troop 448 was chartered by Defendant SILVER SPRINGS SHORES,

8

BSA-PLAN_01422463
**SA 0717**

46.     Troop 448 was under the jurisdiction of Defendant NORTH FLORIDA COUNCIL.

47.     Each of SILVER SPRINGS SHORES and the NORTH FLORIDA COUNCIL were under the ultimate control and authority of the BSA.

48.     But for the BSA's consent, neither SILVER SPRINGS SHORES, nor the NORTH FLORIDA COUNCIL would have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

49.     As the chartering organization of Troop 448, Defendant SILVER SPRINGS SHORES was responsible for providing adequate facilities, supervision, and leadership for the troop, subject to the approval of the Council and the BSA and consistent with their direction and policies.

50.     The troop meetings were held in facilities owned or operated by Defendant SILVER SPRINGS SHORES.  Certain activities were held in facilities owned or operated by the Council and the BSA.

51.     At all times material hereto, the Boy Scout Defendants installed Steve Fout as the Scoutmaster (a/k/a Troop Leader) for Troop 448.

52.     As the Scoutmaster of Troop 448, Steve Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

53.     At all times relevant, Steve Fout was subject to the approval, direction, control and authority of the Boy Scout Defendants.

9

54.     Steve Fout had the specific authorization from the Boy Scout Defendants to wear the BSA badge and insignia and other indicia and brands of the BSA, to hold himself out as a leader for the BSA and to lead meeting and events on the premises of the BSA and Silver Springs Shores.

55.     In fact, Steve Fout did hold himself out as such, lead meetings and took the scouts, including A.A. on events, including overnight campouts, on the premises of the Boy Scout Defendants.

56.     Steve Fout's activities, and each of them, were specifically sanctioned by the Boy Scout Defendants.  At all times relevant, the Boy Scout Defendants had the control or the ability to control, Steve Fout's display of his the BSA badge and insignia and other indicia and brands of the BSA.

57.     But for the Boy Scout Defendants' consent, neither Steve Fout would have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

58.     The subject authorization was designed to instill, and did instill, trust and confidence in Steve Fout by the parents, guardians and scouts and further served to promote the BSA brand.

59.     But for Steve Fout's position with the Boy Scout Defendants, A.A. would not have been permitted to spend overnights at his home.  There is a causal connection between Steve Fout's position with the Boy Scout Defendants and A.A.'s abuse.

60.     A.A. and his guardians each perceived Steve Fout to be a representative of the BSA, the Council and Silver Springs Shores and to be a person whom they could entrust with A.A.

10

BSA-PLAN_01422465

SA 0719

61.     At all times relevant hereto, Steve Fout was an Assistant Scoutmaster for Troop 448 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including A.A. in morality, patriotism and various life skills.

62.     At all times relevant hereto, Steve Fout served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

63.     Steve Fout had actual or apparent authority to act on behalf of the BSA, the Council and Silver Springs Shores, and each of them.

64.     As a result there was, at all relevant times, a special relationship and agency between Steve Fout and Boy Scout Defendants.

**BSA, NORTH FLORIDA COUNCIL's and SILVER SPRINGS SHORES
Special Relationship with, and Constructive Control over perpetrator and assistant
Scoutmaster, George Fout, and his Agency for them.**

65.     At all times material hereto, the Boy Scout Defendants installed George Fout, as an Assistant Scoutmaster (a/k/a Assistant Troop Leader) for Troop 448.  George Fout was Steve Fout's son.

66.     At all times material hereto, Assistant Scoutmaster George Fout was under the direct supervision of Scoutmaster Steve Fout.

67.     As the Assistant Scoutmaster of Troop 448, George Fout assisted Steve Fout in his activities.

68.     As the Assistant Scoutmaster of Troop 448, George Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members

Highly Confidential

BSA-PLAN_01422466
**SA 0720**

to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

69.     At all times relevant, George Fout was subject to the approval, direction, control and authority of The Boy Scout Defendants.

70.     George Fout had the specific authorization from the Boy Scout Defendants to wear the BSA badge and insignia and other indicia and brands of the BSA, to hold himself out as a leader for the BSA and to lead meeting and events on the premises of the BSA and Silver Springs Shores.

71.     In fact, George Fout did hold himself out as such, lead meetings and took the scouts, including A.A. on events, including overnight campouts, on the premises of the Boy Scout Defendants.

72.     George Fout's activities, and each of them, were specifically sanctioned by the Boy Scout Defendants.  At all times relevant, Boy Scout Defendants had the control or the ability to control, George Fout's display of his the BSA badge and insignia and other indicia and brands of the BSA.

73.     But for the Boy Scout Defendants consent, George Fout would not have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

74.     The subject authorization was designed to instill, and did instill, trust and confidence in George Fout by the parents, guardians and scouts and further served to promote the BSA brand.

Highly Confidential

BSA-PLAN_01422467

SA 0721

75.     But for George Fout's position with the Boy Scout Defendants, A.A. would not have been permitted to spend overnights at his home.  There is a causal connection between Steve Fout's position with the Boy Scout Defendants and A.A.'s abuse.

76.     A.A. and his guardians each perceived George Fout to be a representative of the Boy Scout Defendants and to be a person whom they could entrust with A.A.

77.     At all times relevant hereto, Steve Fout was an Assistant Scoutmaster for Troop 448 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including A.A. in morality, patriotism and various life skills.

78.     At all times relevant hereto, Steve Fout served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

79.     George Fout had actual or apparent authority to act on behalf of the Boy Scout Defendants, and each of them.

80.     As a result there was, at all relevant times, a special relationship and agency between George Fout and The Boy Scout Defendants.

13

BSA-PLAN_01422468

SA 0722

### George Fout's Grooming and Preparation of A.A. and
### Three (3) Other Scouts from Troop 448 for Abuse.

81.      Perpetrators of sexual abuse against children often "groom" the victim for the abuse.   This grooming is a process of mental, emotional, psychological and physical manipulation by which the perpetrator prepares a child, significant others, and the environment for the abuse of the child.  Specific goals include gaining access to the child, gaining the child's compliance, and maintaining the child's secrecy to avoid disclosure. This process serves to strengthen the offender's abusive pattern, as it may be used as a means of justifying or denying their actions.

82.      The grooming process consists of a series of stages.  These include the stages of selecting a vulnerable victim, gaining access to the child, developing trust, and desensitizing the victim to touch.

83.      As to the first stage, when selecting a victim, offenders often target children based on family situations, such as those living in single family households as often in these cases children may have less adult supervision or the custodial parent may rely upon others to help with childcare responsibilities.

84.      This pattern of grooming and its specific stages are discernable to supervising adults, including Scoutmasters, particularly if they are properly trained to recognize the behavior. This "grooming" results in its own resulting psychological and emotional abuse and damage, separate from the impending physical sexual abuse.

85.      George Fout engaged in exactly these stages of grooming A.A. prior to and during his abuse of A.A.  George Fout often showered Plaintiff with special attention and otherwise engaged in the grooming process described.

14

BSA-PLAN_01422469
SA 0723

86.    A.A. met the profile of a particularly vulnerable child, as he was being raised by a single non-parent adult with no strong male role model.

87.    At the time that George Fout grooming A.A., he was simultaneously grooming at least three (3) other child scouts in Troop 448 for sexual abuse, for a total of four (4) scouts in a single troop undergoing grooming for impending sexual abuse.

88.    As a result of George Fout's grooming of A.A., it was foreseeable that George Fout would ultimately consummate the grooming in its goal of sexual abuse.

89.    Indeed, ultimately, George Fout's grooming of each of these four (4) scouts did result in them suffering his continuous and ongoing sexual abuse.

90.    This grooming frequently occurred on the premises of SILVER SPRINGS SHORES and during events sponsored by the BSA.

91.    Upon information and belief, Troop 448 Scoutmasters knew or should have known that George Fout was grooming A.A. for abuse and that abuse of A.A. was foreseeable, impending and ongoing.

92.    In addition, it is a reasonable inference that, while George Fout was grooming four (4) scouts under their care, adult supervisors of Troop 448, including Steve Fout, observed actions and behavior by George Fout by which they knew or should have known that George Fout was grooming the scouts, including A.A. for abuse and that abuse of A.A. was foreseeable, impending and ongoing.

93.    Further, if the Boy Scout Defendants had properly trained adult leaders and Scoutmasters to identify grooming behavior, they would have identified George Fout as being actively engaged in grooming four (4) child scouts in their troop and would have been trained to

15

BSA-PLAN_01422470

SA 0724

warn A.A. and his parents of the impending abuse and prevent the abuse and the resulting injuries and damage.

## George Fout's Abuse of A.A. was Foreseeable and Immanent.

94.   George Fout's sexual abuse of A.A. was foreseeable, as the Boy Scout Defendants each had actual and constructive notice of George Fout's grooming of A.A., and actual and constructive notice of the impending and immanent and actual abuse of A.A. and the abuse, in fact, of A.A.

95.   This notice included, without limitation:

    a.   That George Fout would engage in a pattern of grooming of A.A. in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

    b.   That George Fout would engage in a pattern of grooming of three (3) other scouts. in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

    c.   Upon information and belief and upon reasonable inference, the adult troop leaders should have known that George Fout engaging in grooming of four (4) minor scouts in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

    d.   On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on the BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, providing notice to The Boy Scout Defendants of grooming, sexual abuse, and the ongoing process of grooming, including that George Fout's propensity to engage in sexual abuse is foreseeable and immanent;

    e.   At times, A.A, would leave scouting events held on Defendants' premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of the BSA policy;

16

Highly Confidential

BSA-PLAN_01422471

SA 0725

f.   Adult scout leaders of Troop 448 knew or should have known that A.A. and other scouts of Troop 448 would visit the home of George Fout and would often spend the night in the bedroom of George Fout, in violation of BSA policy;

g.   Steve Fout, as agent for the BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES was personally present over the course of many years as George Fout, his adult son, took four (4) minor child scouts to his room, each on a series of separate occasions, for hours of "game play" and overnight sleep-overs behind closed doors;

h.   Steve Fout should have known or was willfully ignorant of the fact that his son was abusing minor children under his roof;

i.   Steve Fout, as a troop leader and an agent for the BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES knew, should have known or was willfully ignorant that George Fout was actively abusing or posed a threat of sexual abuse to minor scouts under his care.

96.   During all relevant times hereto, George Fout was conducting himself in such a manner and fashion that the Boy Scout Defendants knew or should have known that George Fout had a propensity to commit and engage in sexual misconduct.

97.   If the Boy Scout Defendants had properly and adequately supervised the conduct and the activities of George Fout, they would have known or should have known of the misconduct of George Fout, so as to prevent the sexual abuse and infliction of emotional distress on A.A.

98.   Had the Boy Scout Defendants not acted in such a careless, negligent, and/or reckless manner, they would have known and/or should have known of the conduct of George Fout, as described herein, and of his propensity to engage in such activities, such that the Boy Scout Defendants could and/or should have prevented the sexual abuse and the infliction of physical and emotional distress on A.A.

99.   As agents for the Boy Scout Defendants, actual or constructive knowledge to Steve Fout and to adult troop leaders that George Fout posed a risk to the scouts and had a

17

propensity to engage in the grooming and sexual abuse is imputed to the BSA, the NORTH FLORIDA COUNSEL, jointly and severally.

### The BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES Had Constructive Control of the Premises upon which George Fout's Behavior Provided Notice of the Impending Abuse.

100.   On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at the BSA administrated event on the BSA property.

101.   George Fout's grooming and resulting psychological and emotional damage relating to A.A.'s sexual abuse often occurred on property owned and controlled by the BSA and Silver Shores and during events sanctioned and administrated by the Boy Scout Defendants.

102.   Similarly, on multiple and continuing occasions, notice of George Fout's propensity to commit abuse, including without limitation, his grooming of A.A. and at least four (4) other scouts occurred on property owned and controlled by Boy Scout Defendants and during events sanctioned and administrated by the BSA, the Council and Silver Shores.

### George Fout's Abuse of A.A.

103.   A.A. was introduced to his abuser, George Fout through his membership in the BSA Troop 448.

104.   At all times material hereto, George Fout was an adult.  At all times material hereto, A.A. was a minor.

105.   At all times relevant hereto, for the purpose of furthering his duties as an Assistant Scoutmaster, George Fout sought and gained the then minor A.A.'s trust, friendship, admiration and obedience. As a result, A.A. was conditioned to comply with George Fout's direction and to look to him as an authority figure.

18

106.    At all relevant times hereto, using the power, authority and trust of his position as an Assistant Scoutmaster, and availing himself of the Boy Scout Defendants' representations to parents and scouts that tire BSA was a moral and safe place for young boys, George Fout groomed, enticed, induced, directed, coerced and forced A.A. to engage in deviant sexual acts with him.

107.    As the foreseeable extension of the grooming process, George Fout committed a sexual abuse, sexual touching, penetration, oral and anal sodomy and other acts of sexual battery constituting violations of Section 794.011, Florida Statutes, upon A.A.

108.    Eventually, George Fout escalated the frequency of the sexual battery to the point where he was sexually abusing A.A. approximately once a month.

109.    At all times relevant hereto, George Fout utilized physical, emotional and spiritual force and persuasion to impose his moral will upon the then minor A.A. in order to commit grievous, unspeakable acts of sexual abuse upon the person of then minor A.A. all of which acts constitute flagrant abuse of the symbolism, power and authority of his position as an Assistant Scoutmaster.

110.    The grooming and other notice of George Fout's propensity for abuse would frequently occur on the premises of SILVER SPRINGS SHORES and during sanctioned the BSA events on the BSA property.

111.    The sexual battery would often take place at George Fout's home after scouting events, in which he resided with Steve Fout, his father and the Scoutmaster of Troop 448. Steve Fout was often present in the home during George Fout's sexual battery of A.A.

19

BSA-PLAN_01422474

SA 0728

112.    At times, A.A. would leave scouting events held on Defendants' premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of the BSA policy.

113.    As the sexual battery would continue, without limitation, A.A. would spend the night at the home of Scoutmaster Steve Fout.  This is a clear violation of the BSA policy. During those occasions, A.A. would be abused by Assistant Scoutmaster George Fout. Steve Fout was often in the home often when the incidents of sexual battery occurred.

114.    At no time did the BSA, NORTH FLORIDA COUNCIL, or SILVER SPRINGS SHORES take steps to ensure the non-sleepover between volunteer leaders and youth in the BSA's policy was being implemented and followed by their scoutmasters or scout leaders, and at no time did the BSA, NORTH FLORIDA COUNCIL, or SILVER SPRINGS SHORES take steps to ensure that no one-on-one contact between volunteer leaders and youth were being followed according to the BSA's polices.

115.    A.A. was repeatedly abused under circumstances where he was unable to protect himself or was otherwise unable to avail himself of his legal guardians for their ordinary source of protection or was otherwise relying entirely on The Boy Scout Defendants, and its agents for his protection.

**The BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES Had Actual or Constructive Control of the Premises upon which Sexual Abuse and related Grooming was committed.**

116.    On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at a the BSA administrated event on the BSA property.

117.    George Fout's grooming and resulting psychological and emotional damage relating to A.A.'s sexual abuse often occurred on property owned and controlled by the BSA and

20

BSA-PLAN_01422475

SA 0729

Silver Shores and during events sanctioned and administrated by the BSA, the Council and Silver Shores.

118.    Similarly, on multiple and continuing occasions, notice of George Fout's propensity to commit abuse, including without limitation, his grooming of A.A. and at least three (3) other scouts occurred on property owned and controlled by the BSA and Silver Shores and during events sanctioned and administrated by the BSA, the Council and Silver Shores.

### The BSA's History of Pedophilia

119.    The BSA has known for decades of the high degree of risk that adult Scoutmasters and volunteers may sexually abuse minor scout members.

120.    Since the early 1900s, the BSA has maintained a system of "Ineligible Volunteer Files" to track incidents wherein adult Scoutmasters sexually abused scouts. The Ineligible Volunteer Files contain internal memoranda demonstrating the BSA's awareness of the ongoing pedophilia within the BSA, and demonstrated concerns about pedophiles within the BSA harming their reputation and economic interests.

121.    These Ineligible Volunteer Files demonstrate the BSA's vulnerabilities when it comes to pedophilia within the BSA and includes pedophiles' techniques used to enter scouting, their techniques for grooming victims and more.

122.    In approximately 1972, the BSA implemented a system requiring local Council's scouting executives to complete and send in a form with any available supporting information about known or alleged sexual abuse committed by adult Scoutmasters in the executives' jurisdiction. Upon receipt of this information from the local Council, the BSA created an Ineligible Volunteer File for the abuser and added it to the BSA's database.

Highly Confidential

BSA-PLAN_01422476

SA 0730

123.   By 1977, the BSA was advising all sponsoring organizations to maintain "two deep leadership" for all scouting activities, wherein two adult Scoutmasters were required to be present at all times. Ostensibly, this precaution was implemented to help prevent sexual abuse in scouting.

124.   Despite the BSA's extensive and long-standing knowledge of the high degree of risk of pedophilia in scouting, the BSA did not implement a sexual abuse-prevention education program until approximately 1988. This program, the Youth Protection Program, was the BSA's first effort to educate scouts and their family members about the risk of sexual abuse in scouting, a risk that continues today.

125.   The BSA has overwhelming evidence that scouting has particular characteristics that make the organization vulnerable to pedophiles, including but limited to:

    a.    Joining the BSA provides pedophiles access to boys alone and away from their families in secluded settings like camp-outs and overnight hikes;

    b.    The BSA repeatedly encourages young boys to strictly obey their scout leaders and masters, allowing pedophiles to groom their victims;

    c.    The BSA encourages overnight stays, camping trips and other activities for scouts and scout leaders and masters to be alone together;

    d.    Scouting provides opportunities for a pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him;

    e.    A pedophile scout leader can, depending on the pedophile's preferred victim age, volunteer for and be sure to have access only to boys of a certain age;

    f.    The BSA conditions boys to the concept of strict obedience to the scout leader and a bonding mechanism that pedophiles crave;

    g.    The BSA promotes the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a pedophile's efforts to keep his victims silent and compliant;

Highly Confidential

BSA-PLAN_01422477

SA 0731

h.      The BSA conducted no criminal background checks on its volunteers;

i.      The BSA did not prohibit adults from sleeping in tents with boys overnight;

j.      The BSA did not prohibit adult leaders from spending time alone with individual scouts; i. The BSA did not prohibit adult scout leaders from having contact with scouts outside of authorized scouting activities;

k.      For decades, the BSA re-admitted pedophiles it had previously removed for child abuse after a period of the BSA "probation," thereby exposing unsuspecting children to sexual abuse;

l.      The BSA had a practice of not reporting scout abuse incidents to law enforcement;

m.      The BSA had a pattern of reaching an accommodation with a pedophile, in which the pedophile would resign from scouting and the BSA would agree not to report the child sexual abuse to civil authorities;

n.      The BSA refused requests to share its list of known abusers with other youth organizations, knowing that pedophiles it had ejected often joined other youth-serving organizations;

o.      The BSA refused to produce its I.V. files to its review board and scout safety consultants, who were endeavoring to develop and implement meaningful safeguards and barriers to pedophile infiltration;

p.      The BSA refused to fingerprint, photograph or perform background checks on its adult volunteers, allowing removed pedophiles using an alias to sneak back in to scouting through another troop;

q.      The BSA refused to utilize widely accepted organizational best practices that would establish reasonable barriers to intrusion by pedophiles;

r.      The BSA refused to educate local councils, staff, and troop leaders regarding the true risks posed by pedophiles to scouts; and

s.      The BSA refused to effectively monitor local councils and troops to ensure that appropriate safeguards were being used in the selection and retention of adult scout leaders.

23

BSA-PLAN_01422478

SA 0732

126.     The BSA's internal records, known as the "Ineligible Volunteer" files (hereinafter "the I.V. files"), are a unique repository of documents the BSA secretly began amassing shortly after the BSA's founding in 1910.

127.     The I.V. files reveal that the BSA, far from being safe and wholesome, has long attracted and been a sanctuary for pedophiles.

128.     The I.V. files contain internal memoranda demonstrating the BSA's awareness and concern about the threat that pedophiles in the BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community.

129.     The IV Files contain internal memoranda demonstrating BSA's awareness and concern about the threat that pedophiles in BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community. See Exhibit "A" (The Ernst Memorandum evidencing the BSA and the local council's ongoing conspiracy to suppress from the public its certain knowledge of its pedophile infiltration problem), BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that have successfully infiltrated scouting. The I.V. files highlight BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles' patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

130.     The BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that had successfully infiltrated scouting. The I.V. files highlight the BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles

24

BSA-PLAN_01422479

SA 0733

patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

131.   The overwhelming evidence the I.V. files present shows that for a century the BSA has known of the BSA's distinctive characteristics that render scouts particularly prone to pedophiles' abuse.

132.   By 1935, the BSA had accumulated approximately 2,000 files on pedophiles that had successfully infiltrated or attempted to infiltrate its program.

133.   In the 1970s, the BSA recognized the potential liabilities represented by possessing and maintaining the I.V. files. By 2005, the BSA's secret cache of files on pedophiles exceeded 20,000.

134.   Over the course of two years in the early 1970s, three the BSA executives reviewed and permanently destroyed thousands of I.V. files

135.   The BSA executives kept no retention logs showing which or how many of the files the BSA destroyed. The BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save.

136.   Approximately 6,000 files survived the BSA's file-purge and are in the BSA's possession. Approximately 1900 of those files are now in the public domain.

137.   The files demonstrate that the BSA opened a new I.V. file on a pedophile every other day for fifty years.

138.   The I.V. files demonstrate that the BSA had overwhelming evidence (1) that scouting attracts pedophiles at an alarming rate and (2) of scouting's distinctive characteristics that make it attractive to pedophiles:

Highly Confidential

BSA-PLAN_01422480

SA 0734

139.    Between 1987 and 2005, the BSA settled sixty-one lawsuits in which the BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders. Since 1987, the BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by the BSA to prevent the abuse's facts and circumstances from becoming public.

140.    As between the Boy Scout Defendants and A.A., the Boy Scout Defendants had superior knowledge of the risk of sexual abuse to A.A. by participating in the BSA program, yet failed to warn or otherwise advise A.A. or his guardians of their superior knowledge.

**Negligence of The Boy Scout Defendants – Failure of Policy and Training.**

141.    BSA and its agents knew from long experience based on information contained in its Ineligible Volunteer Files that pedophiles had for nearly a century been exploiting vulnerabilities within it organization to gain access to and sexually abuse boys.

142.    BSA and its agents had certain knowledge that pedophiles like George Fout could exploit BSA's vulnerabilities. BSA knew that failure to adopt and implement certain policies and practices to protect scouts would cause scouts, including A.A, to be at heightened risk of pedophilic grooming and sexual abuse.

143.    The BSA's failure to adopt and effectively implement policies and practices to protect scouts in its custody and control included, without limitation:

144.    Permitting fathers to act as Scoutmasters, in a supervisory position over their adult sons, as Assistant Scoutmasters, effectively eliminating certain protections afforded by a two-deep policy;

26

BSA-PLAN_01422481

SA 0735

145.    Failing to educate scouts and other adult scout leaders about the grooming behaviors they knew that pedophile scout leaders engaged so that that scouts could recognize, resist, and report the inappropriate behaviors;

146.    Failing to monitor or evaluate scout staff to prevent them from using its program and facilities to gain access, groom, and sexually abuse scouts;

147.    Further, to the extent that the BSA undertook to adopt any such policies, they were insufficient for the foreseeable risk presented and were not properly implemented or enforced.

### Negligence of The Boy Scout Defendants – Failure to Protect A.A. from foreseeable abuse by George Fout.

148.    The Boy Scout Defendants, each having a special relationship with A.A. and over Steve Fout and George Fout.

149.    The actual or constructive knowledge that The Boy Scout Defendants and Steve Fout possessed of George Fout's grooming of A.A. and other scouts in Troop 448 rendered the abuse of A.A. not only foreseeable, but highly likely.

150.    In addition, the access that George Fout had to vulnerable children like A.A., the potential to take advantage of the special relationship with potential victims and the failures of BSA policy which George Fout used to gain access to, groom, and to sexually abuse A.A., were precisely the same foreseeable vulnerabilities that BSA had documented in tens of thousands of ineligible volunteer files it had been keeping for nearly a century.

27

Highly Confidential

## ACTIONS AGAINST SILVER SPRINGS SHORES

### Count I: Negligence of Defendant SILVER SPRINGS SHORES

151.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

152.    Defendant, SILVER SPRINGS SHORES undertook to promote and provide a scouting program for children and minor boys.

153.    Having undertaken this activity, SILVER SPRINGS SHORES had duty to act with reasonable care and to take precautions so that persons may not be injured.

154.    In addition, Defendant SILVER SPRINGS SHORES had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

155.    This special relationship between Defendant SILVER SPRINGS SHORES and A.A. gave rise to a right of protection for A.A.

156.    Based on the special protective relationship with A.A., Defendant SILVER SPRINGS SHORES had a duty to protect A.A. from reasonably foreseeable harm.

157.    In addition, Defendant, SILVER SPRINGS SHORES had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives SILVER SPRINGS SHORES a duty to control the actions of George Fout.

158.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of SILVER SPRINGS SHORES.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

28

BSA-PLAN_01422483
SA 0737

159.   The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to SILVER SPRINGS SHORES that sexual abuse is not only foreseeable, but likely.

160.   SILVER SPRINGS SHORES and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

161.   George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by SILVER SPRINGS SHORES.

162.   In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

163.   Defendant SILVER SPRINGS SHORES breached the duty it owed A.A., by acts or omissions which included, without limitation:

a.   Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

b.   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c.   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

Highly Confidential

BSA-PLAN_01422484

SA 0738

    d.    Failing to advise or warn A.A. or his guardian of the history of pedophilia in the BSA and to affirmatively educate A.A. and guardian to identify and avoid abuse.

    e.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

164.    As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

165.    Further, as a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

166.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

BSA-PLAN_01422485

SA 0739

**Count II: Breach of Fiduciary Duty of Defendant SILVER SPRINGS SHORES**

167.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

168.    As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and SILVER SPRINGS SHORES, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in SILVER SPRINGS SHORES and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

169.    As a result, SILVER SPRINGS SHORES owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

170.    In addition, Defendant, SILVER SPRINGS SHORES had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives SILVER SPRINGS SHORES a duty to control the actions of George Fout.

171.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of SILVER SPRINGS SHORES.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

172.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to SILVER SPRINGS SHORES that sexual abuse is not only foreseeable, but likely.

173.    SILVER SPRINGS SHORES and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

31

BSA-PLAN_01422486

SA 0740

174.    George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by SILVER SPRINGS SHORES.

175.    In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

176.    Defendant SILVER SPRINGS SHORES breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

d.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

177.    As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

178.    Further, as a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional,

32

Highly Confidential

psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

179.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## ACTIONS AGAINST NORTH FLORIDA COUNCIL

### Count III: Negligence of Defendant NORTH FLORIDA COUNCIL

180.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

181.    Defendant, NORTH FLORIDA COUNCIL undertook to promote and provide a scouting program for children and minor boys

182.    Having undertaken this activity, NORTH FLORIDA COUNCIL had duty to act with reasonable care and to take precautions so that persons may not be injured.

183.    In addition, Defendant NORTH FLORIDA COUNCIL had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

33

BSA-PLAN_01422488
SA 0742

184.    This special relationship between Defendant NORTH FLORIDA COUNCIL and A.A. gave rise to a right of protection for A.A.

185.    Based on the special protective relationship with A.A., Defendant NORTH FLORIDA COUNCIL had a duty to protect A.A. from reasonably foreseeable harm.

186.    In addition, Defendant, NORTH FLORIDA COUNCIL had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives NORTH FLORIDA COUNCIL a duty to control the actions of George Fout.

187.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of NORTH FLORIDA COUNCIL.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

188.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to NORTH FLORIDA COUNCIL that sexual abuse is not only foreseeable, but likely.

189.    NORTH FLORIDA COUNCIL and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

190.    George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by NORTH FLORIDA COUNCIL.

191.    In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by The Boy Scout Defendants.

34

Highly Confidential

BSA-PLAN_01422489

SA 0743

192.     Defendant, NORTH FLORIDA COUNCIL breached the duty it owed A.A., by acts or omissions which included, without limitation:

    a.     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

    d.     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

193.     As a direct and proximate cause of Defendant, NORTH FLORIDA COUNCIL's negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

194.     Further, as a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

195.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and

35

BSA-PLAN_01422490

SA 0744

bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count IV: Breach of Fiduciary Duty of Defendant NORTH FLORIDA COUNCIL

196.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

197.     As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and NORTH FLORIDA COUNCIL, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in NORTH FLORIDA COUNCIL and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

198.     As a result, NORTH FLORIDA COUNCIL owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

199.     In addition, Defendant, NORTH FLORIDA COUNCIL had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives NORTH FLORIDA COUNCIL a duty to control the actions of George Fout.

200.     George Fout engaged in a process of grooming of A.A. and three other scouts under the care of NORTH FLORIDA COUNCIL.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

36

BSA-PLAN_01422491
SA 0745

201.     The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to NORTH FLORIDA COUNCIL that sexual abuse is not only foreseeable, but likely.

202.     NORTH FLORIDA COUNCIL and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

203.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by NORTH FLORIDA COUNCIL.

204.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

205.     Defendant NORTH FLORIDA COUNCIL breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

   a.     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

   b.     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

   c.     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

37

BSA-PLAN_01422492

SA 0746

      d.     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

206.     As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

207.     Further, as a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

208.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## ACTIONS AGAINST BSA

### Count V: Negligence of Defendant BSA

209.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

Highly Confidential

BSA-PLAN_01422493

SA 0747

210.    Defendant, BSA undertook to promote and provide a scouting program for children and minor boys.

211.    Having undertaken this activity, BSA had duty to act with reasonable care and to take precautions so that persons may not be injured.

212.    Defendant BSA had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

213.    This special relationship between Defendant BSA and A.A. gave rise to a right of protection for A.A.

214.    Based on the special protective relationship with A.A., Defendant BSA had a duty to protect A.A. from reasonably foreseeable harm.

215.    In addition, Defendant, BSA had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives BSA a duty to control the actions of George Fout.

216.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of BSA.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

217.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to BSA that sexual abuse is not only foreseeable, but likely.

218.    BSA and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

39

Highly Confidential

BSA-PLAN_01422494

SA 0748

219.    George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by BSA.

220.    In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

221.    Defendant BSA breached the duty it owed A.A., by acts or omissions which included, without limitation:

    a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

    d.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

222.    As a direct and proximate cause of Defendant BSA' negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

223.    Further, as a direct and proximate cause of Defendant BSA' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical

40

BSA-PLAN_01422495

SA 0749

manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

224.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## Count VI: Breach of Fiduciary Duty of Defendant BSA

225.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

226.     As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and BSA, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in BSA and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

227.     As a result, BSA owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

228.     In addition, Defendant, BSA had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives BSA a duty to control the actions of George Fout.

41

BSA-PLAN_01422496

SA 0750

229.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of BSA.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

230.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to BSA that sexual abuse is not only foreseeable, but likely.

231.    BSA and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

232.    George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by BSA.

233.    In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

234.    Defendant BSA breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

    a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise

42

BSA-PLAN_01422497

SA 0751

> conduct the activities of the Troop pursuant to the required and due standards of care.
>
> d.  Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

235.    As a direct and proximate cause of Defendant BSA' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

236.    Further, as a direct and proximate cause of Defendant BSA' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

237.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

BSA-PLAN_01422498

SA 0752

## VICARIOUS LIABILITY COUNTS

### Count VII: Vicarious Liability of Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for the Sexual Battery by George Fout

238.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

239.    At all relevant times, George Fout, as Assistant Scoutmaster, was acting as agent for the Boy Scout Defendants by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

240.    Accordingly, the Boy Scout Defendants are vicariously liable for the acts and omissions and breaches of fiduciary duties of George Fout.

241.    George Fout's acts and omissions and breaches of fiduciary duties include, without limitation, committing acts of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93 and performing sexual battery upon A.A.

242.    As a result of acts, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial, for which such damages, the Boy Scout Defendants are vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court

44

Highly Confidential

BSA-PLAN_01422499

SA 0753

deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive

damages. A.A. further requests trial by jury of all issues so triable.

<u>Count VIII: Vicarious Liability of Defendants SILVER SPRINGS SHORES,</u>
<u>NORTH FLORIDA COUNCIL and BSA</u>
<u>for the Negligence and Breach of Fiduciary Duty of Steve Fout</u>

243.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under

this count and further alleges as follows:

244.    At all relevant times, Steve Fout, as Scoutmaster, was acting as agent for

Defendants the Boy Scout Defendants by implementing and maintaining a scouting program at

the local level with the consent and oversight of Defendant BSA.

245.    Accordingly, Boy Scout Defendants are vicariously liable for the acts and

omissions and breaches of fiduciary duties of Steve Fout.

246.    Steve Fout's acts and omissions and breaches of fiduciary duties include, without

limitation,

    a)    Failing to protect A.A. from reasonably foreseeable harm, including,
          without limitation, the reasonably foreseeable harm that A.A. would be
          sexually abused by George Fout, and other negligence more particularly
          described in Paragraphs 103 - 115.

    b)    Allowing George Fout to have unsupervised contact with A.A. during
          Troop 448 scouting activities and spend time at the home of Steve Fout
          and George Fout, which allowed George Fout to isolate and sexually
          abuse A.A.

    c)    Failing to otherwise oversee the appointment of Scoutmasters and
          Assistant Scoutmasters, otherwise properly oversee the activities of
          Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and
          otherwise conduct the activities of the Troop pursuant to the required and
          due standards of care.

    d)    Failing to implement proper training and policies to identify and prevent
          the sexual abuse of scouts as more particularly alleged in Paragraphs 141
          - 147.

Highly Confidential                                                      BSA-PLAN_01422500

                                                                                 SA 0754

e)     Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

247.     As a direct and proximate cause of Steve Fout's negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

248.     Further, as a direct and proximate cause of Defendant Steve Fout's negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

249.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count IX: Vicarious Liability of Defendants NORTH FLORIDA COUNCIL and BSA for the Negligence and Breach of Fiduciary Duty of SILVER SPRINGS SHORES**

250.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

46

BSA-PLAN_01422501

SA 0755

251.     At all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendants NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

252.     Accordingly, Defendants NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of SILVER SPRINGS SHORES.

253.     SILVER SPRINGS SHORES acts and omissions and breaches of fiduciary duties include, without limitation,

    f)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    g)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    h)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

    i)    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

    j)    Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

254.     As a direct and proximate cause of SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

47

BSA-PLAN_01422502

SA 0756

255.    Further, as a direct and proximate cause of SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

256.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count X: Vicarious Liability of Defendant BSA for the Negligence and Breach of Fiduciary Duty of NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES**

257.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

258.    At all relevant times, NORTH FLORIDA COUNCIL was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

259.    In addition, at all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

48

BSA-PLAN_01422503
SA 0757

260.     Accordingly, Defendant BSA is vicariously liable for the acts and omissions and breaches of fiduciary duties of NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

261.     NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES acts and omissions and breaches of fiduciary duties include, without limitation,

k)     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

l)     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

m)     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

n)     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

o)     Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

262.     As a direct and proximate cause of NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

263.     Further, as a direct and proximate cause of NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES negligent acts and omissions and breach of fiduciary duty,

49

BSA-PLAN_01422504
SA 0758

A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

264.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count XI Fraud, Misrepresentation and Fraudulent Concealment

265.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

266.    Congress founded BSA in the United States in 1910.

267.    Throughout its history, the BSA has consistently held itself out to the public as a "moral and safe" environment for boys to participate in healthy outdoor activities and to be given proper guidance and instruction. Millions of parents and scouts have placed then- trust in the BSA.

268.    Since 1910, hundreds of millions of parents have entrusted their sons to BSA's care, guidance and instruction. Since its inception, BSA aggressively marketed the wholesomeness and safety of its programs to the American Public.

Highly Confidential

BSA-PLAN_01422505

SA 0759

269.    The BSA engages in affirmative commercial efforts which sophisticatedly use powerful American symbols and modern advertising techniques to sell a national belief that the BSA could best mold the proper expression of American boyhood.

270.    The BSA promotes itself as a vehicle for boys to be instructed in good citizenship patriotism, and efficient social organization. Its brand consistently promotes an image of providing a safe environment in which they can develop "patriotism, self-reliance and kindred virtues."  For example, a copy of "BSA Mission" is attached as Exhibit "B".

271.    Paradoxically, the BSA promotes the wholesomeness of its program while knowing that since the 1940s, it has been secretly removing Scoutmasters for child sexual abuse at an alarming rate, which in the 1970s reached an average of one every three days. Its own records demonstrate that it has long known that scouting attracts pedophiles in large numbers and that scouts, far from being safe, are at the heightened risk of sexual abuse by child molesters

272.    The BSA fraudulently concealed from Congress, scouts, their parents and the American taxpayer BSA's certain knowledge that pedophiles had been infiltrating BSA in large numbers for many years, as more particularly described in Paragraphs 119 - 140

273.    The BSA, pursuant to its Congressional Charter in 1916, later codified by 36 U.S.C. Chapter 309 is required to file an annual report to Congress.

274.    The BSA fraudulently concealed the said information from A.A and his guardian. BSA also misrepresented to scouts, their parents and the American taxpayer that the scouts were safe in scouting programs when, in fact, scouts were at an unreasonably heightened risk of sexual abuse by adult scout leaders, BSA made said misrepresentations to A.A and his guardian.

51

BSA-PLAN_01422506
SA 0760

275.    BSA's internal records known as the "Ineligible Volunteer" files (hereinafter referred to as "The IV Files") are a unique repository of documents BSA secretly began amassing shortly after its founding in 1910.

276.    Between 1987 and 2005, BSA settled sixty-one lawsuits in which BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders.

277.    Since 1987, BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by BSA to prevent the facts and circumstances of the abuse from becoming public.

278.    BSA continues to make false and misleading public statements regarding the risks of sexual abuse in scouting; continues to minimize and downplay the harm of sexual abuse to children in scouting; fails to reach out to provide support and assistance to boys it knows were sexually abused by adult scout leaders; and continues to deny the truth about its historical knowledge of the nature and extent of sexual abuse of scouts by adult scout leaders.

279.    BSA failed to establish reasonable safeguards to prevent pedophiles from entering its programs.

280.    A.A. and his guardians trusted the BSA and reasonably relied upon the BSA's representations that it presented a moral and safe place for boys.

281.    BSA deliberately withheld information from Congress in its annual report from scouts and their parents, including A.A and his guardian.

282.    It withheld information about the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA was aware; and the methods pedophiles had been using to gain access to scouts, to groom them for abuse, and to keep them silent. BSA's

52

BSA-PLAN_01422507

SA 0761

timely communication of this information would have enabled scouts, including A.A., to protect himself from sexual abuse by pedophiles in scouting. It would have enabled Congress to perform its constitutional oversight function over a congressionally-chartered, tax-payer funded and tax-exempt youth organization which brings unscreened, unvetted adults into contact with tens of millions of children annually.

283.    BSA had a financial incentive to withhold facts and information about predatory and pedophilic Scoutmasters and/or Assistant Scoutmasters.

284.    Since 1910, BSA has derived millions of dollars per year licensing the rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise to affiliated scouting organizations throughout the United States and abroad (See 36 U.S.C, § 30905). BSA has realized income from these federally-protected assets by marketing them to parents and their children, including A.A.

285.    BSA's marketing includes encouraging parents to enroll their children in BSA. Enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to BSA. This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others. This system includes overnight outings, camping events, and trips away from parents. The system is reward based, obligating the child to purchase emblems, badges, and other Scouting paraphernalia, which in turn creates profit for the federally charted organization.

286.    In addition to being federally created, federally chartered, and endowed by Congress with exclusive economic rights, BSA is funded by the federal government, private donations, membership dues, corporate sponsors, and special events

<center>53</center>

BSA-PLAN_01422508

SA 0762

287.    BSA is the 18th largest nonprofit in the United States, with income exceeding $780 million dollars a year.

288.    Upon information and belief, the Boy Scout Defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by Scoutmasters and Assistant Scoutmasters and prevent disclosure, prosecution and civil litigation including, but not limited to:

    a.    Failure to report incidents of abuse to law enforcement or child protection agencies;

    b.    Concealment of abuse they had substantiated and failure to seek out and redress the injuries its Scoutmasters and leaders had caused; and

    c.    Failure to advise local scouting agencies of the rampant problem of sexual abuse of scouts by Scoutmasters and leaders and that BSA's system of "Ineligible Volunteer Files" was ineffective at curbing the problem.

289.    Based on these actions, the Boy Scout Defendants engaged in fraudulent concealment and are estopped from asserting the defense of statute of limitations and/or laches.

290.    A.A. alleges that had the BSA notified A.A., his guardian, civil authorities, or the scouting public of the pervasiveness of sexual abuse by the BSA's adult scout leaders, A.A. would either not have joined the BSA or not been allowed by his guardian to join the BSA.

291.    Alternately, if the BSA had educated A.A. and his guardian of the nature of risks of abuse by adult scout leaders, that he would have taken steps to protect himself from the grooming and sexual abuse to which his adult scout leader subjected him.

292.    BSA had notified or educated A.A. and his guardian of the nature of risks of abuse by adult scout leaders, he would not have, and would not have been permitted continuous sleep-overs at the home of Steve Fout in the bedroom of George Fout.

54

BSA-PLAN_01422509

SA 0763

293.    The above described conduct of the Boy Scout Defendants was willful and outrageous, was committed in reckless disregard of the probability of causing A.A.'s severe emotional distress, mental anguish, humiliation, and psychological, spiritual, and physical injury and illness of A.A.

294.    Additionally, in doing the acts as described herein, the Boy Scout Defendants were guilty of fraud, oppression, or malice.  As a direct and proximate result of the practice of deceit, deception, concealment and fraud by the Boy Scout Defendants and George Fout, A.A. was victimized by George Fout and sustained the profound injuries, losses and damages as set forth therein

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Dated: August 30, 2019.

MORGAN & MORGAN, P.A.
Business Trial Group

*s/Paul L. SanGiovanni*
Paul L. SanGiovanni, Attorney at Law
Florida Bar No. 0513164
Cari Whitmire, Attorney at Law
Florida Bar Number 1015584
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone:  (407)418-6041
Facsimile:  (407)245-3394
Primary E-mail:  PSangi@forthepeople.com
Primary E-mail:  CWhitmire@forthepeople.com
Secondary E-mail: MTodd@forthepeople.com

55

Highly Confidential

1972



**BOY SCOUTS OF AMERICA**
North Brunswick • New Jersey 08902 • 201 249-6000

INTRAORGANIZATION COMMUNICATION

December 4, 1972

PERSONAL AND CONFIDENTIAL

TO ALL SCOUT EXECUTIVES:

SUBJECT:   Maintaining Standards of Leadership

The attached information on Maintaining the Standards of Leadership of the
Boy Scouts of America has been carefully developed as a guideline for
Scout Executives.

This is the first time such information has been printed, and because of
the misunderstandings which could develop if it were widely distributed,
we suggest that after you have read it, you file it with other policy
statements without making photocopies or sharing it beyond the top
management of your council.

If you have any questions, please do not hesitate to write or call us.

Sincerely,

Paul Ernst

Paul I. Ernst, Executive
Registration and Subscription

cm
cc:  Regional Directors
     Management Staff
Attachment

BSA 02205

**Exhibit "A" to Second Amended Complaint**

e ID: 190800135

## MAINTAINING STANDARDS OF LEADERSHIP

Since its inception, the BSA has maintained its right to set standards of leadership in the areas of age, citizenship, sex, education, morals and emotional stability. This position is set forth in the Bylaws:

> Article II, Section 2, Clause 3 "No person shall be approved as a leader unless, in the judgment of Boy Scouts of America, he possesses the moral, educational, and emotional qualities deemed necessary for leadership and satisfies such other leadership qualifications as it may from time to time require."

> Other supporting Articles are listed in Appendex A.

The local council and the National Council must approve all applications (Bylaws Article XVIII, Section I, Clause 3).

These standards were developed solely to protect the youth of America and their enforcement in no way infringes on the rights of any individuals, nor is refusal of registration to be construed as persecution or defamation of character. All leaders register for a limited term (usually one year) and reregistration at the end of that period is also subject to approval (Bylaws, Article XV, Section 4).

When a registered leader commits an act or conducts himself in a manner that would seem to cause him to be unfit as a leader or an associate of boys, the Scout Executive should take the following steps:

1) Inform the Registration and Subscription Executive at the National Office of the general nature of the allegations.

2) Secure hard evidence about the situation (signed statements by principals, police reports, court records, newspaper clippings, etc.).

3) Submit evidence and the confidential record sheet to Registration and Subscription.

4) Upon notification from Registration, write a letter to the individual (Appendix B) and hand deliver it along with a volunteer.

5) After the letter has been read, verbally tell the person the reasons for refusal to register. Make no accusations -- say we have evidence to convince us that your --(financial affairs) (moral life) (lack of leadership ability) do not meet the standards for leadership in the BSA. Indicate that the BSA is not sharing this information with anyone and only wish him to stop all Scouting activity.

   After this visit, write down the main parts of the conversation, who was present and the date, and mail this to Registration and Subscription.

BSA 02206

Case ID: 190800135

Highly Confidential

BSA-PLAN_01422512

SA 0766

–2–

6) If the individual persists, the following review steps are to be taken as required:

    A) Initial Step -- The president of the local council will appoint three volunteers to act as a committee to review the case.

    B) (If Step A does not resolve matter) -- The Regional President will appoint a review committee if the person is not satisfied with the council's decision.

    C) (If Step B does not resolve matter) -- The President of the BSA will appoint a review committee if the individual is not satisfied with the Region's decision.

When a Scout Executive receives a confidential inquiry from Registration and Subscription about a person attempting to register, he should take the following steps:

1) Secure as rapidly as possible the necessary answers on the questionnaire and return to Registration and Subscription.

2) If it is not the same person, the registration certificate will be sent to the council.

3) If it is the same person, Registration and Subscription will write to the Scout Executive, indicating that the BSA is unwilling to register that person because information we have indicates that he fails to meet our standards of leadership. If the individual questions the statement the Scout Executive may ask him if he has ever been in Scouting in the past and been refused membership.

If the answer is yes, the Scout Executive may say the reasons remain the same.

If the answer is no, and the individual insists there has been a mistake, the Scout Executive should instruct him to send a complete statement covering his adult years, including address and dates lived there, occupations and dates, and names of spouse and children to the Registration and Subscription Executive.

In certain cases, an individual who failed to meet the standards of leadership in the past wishes to register and the circumstances are changed sufficiently that the BSA is willing to accept the registration on a trial basis. The Scout Executive will be notified in this situation, and requested to keep a close watch on the individual for one year and then give a brief report to Registration and Subscription.

All cases are reviewed periodically in reference to the seriousness of the offense and the passage of time, and when the standards of leadership seem to be satisfactorily met, cases are cancelled.

BSA 02207

Case ID: 190800135

-3-

Many times an individual comes to a council seeking registration with the BSA and something unusual causes concern that further checking should be done before registration is completed.

When you find yourself in this situation, we ask that you write or phone directly to Registration and Subscription, asking that we check for any information that might be on file concerning the individual in question. This will immediately help you in your relationships with the individual and give you information as to whether registration should be completed before you do a lot of unnecessary work and make any commitments which could prove embarrassing.

dw-11/15/72

BSA 02208

Case ID: 190800135

Highly Confidential

BSA-PLAN_01422514

**SA 0768**

-4-

Appendix A

Article III, Section 2, Clause 1
Article X, Section 5, Clause 1
Article XII, Section 2
Article XII, Section 3
Article XII, Section 4
Article XV, Section 2, Clause 2, 3, 4, 6, 7
Article XVI, Section 6, Clause 4
Article XVIII, Section 2, Clause 1
Article XVIII, Section 3, Clause 2
Article XVIII, Section 4, Clause 1 - 7
Article XVIII, Section 5, Clause 1 - 2
Article XVIII, Section 7, Clause 1 - 2
Article XVIII, Section 9, 10, 11, 12

dw-11/27/72

BSA 02209

Case ID: 190800135

Highly Confidential

BSA-PLAN_01422515

SA 0769

-5-

Appendix - B

Dear

After a review of your past history with the Boy Scouts, it has been
decided not to accept your registration.  Registration with the Boy
Scouts of America is not automatically granted to everyone.  It is a
privilege and we reserve the right to refuse registration whenever
there is any reason for concern related to the person's association
with members or leaders of the Boy Scouts of America.

We, therefore, at this time desire to have you sever your relationship
with the Boy Scouts of America.  We are making no accusations and will
not release this information to anyone, so our action in no way will
affect your standing in the community.

Very truly yours,

Scout Executive

dw

BSA 02210

Case ID: 190800135

Highly Confidential

BSA-PLAN_01422516

**SA 0770**

# The BSA Mission

## MISSION STATEMENT AND PURPOSE

*The mission of the Boy Scouts of America is to prepare young people to make ethical and moral choices over their lifetimes by instilling in them the values of the Scout Oath and Law.*

## SCOUT OATH

*On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight.*

## SCOUT LAW

*A Scout is*

- Trustworthy
- Loyal
- Helpful
- Friendly
- Courteous
- Kind
- Obedient
- Cheerful
- Thrifty
- Brave
- Clean
- Reverent

## Purpose of the BSA

The purpose of this corporation shall be to promote, through organization, and cooperation with other agencies, the ability of boys to do things for themselves and others, to train them in Scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues, using the methods which are now in common use by Boy Scouts.

—Federal Charter, sec. 3.

One of the goals of the Boy Scouts of America is to provide, through chartered organizations, a program for boys, young men, and young women designed to encourage them to be faithful in their religious duties, build desirable qualities of character, train and involve them in the responsibilities of participating citizenship, and develop in them personal fitness.

> ## *Exhibit "B to Second Amended Complaint*

Special emphasis will be placed in assisting the home, religious groups, and schools in achieving success in the development of abiding values in the lives of young people.

All programs will be directed toward helping to develop the full potential of each member.

## The Council's Purpose

The purpose of the council is to guide and support its districts for the achievement of the movement's purpose. (A successful district meets Quality District requirements.) The end result of effective district support is continued growth in membership, with those members receiving a quality program.

## The Function of the Districts

All districts are responsible for carrying out functions in four areas:

1. Membership
2. Finance
3. Program
4. Camp promotion
5. Training
6. Activities and civic service
7. Advancement and recognition
8. Unit service (commissioner service)

The order in which the functions are listed is not meant to suggest the order of their importance, but the natural interrelationship and flow of the functions. The movement cannot achieve its purpose without first organizing units and enrolling members. The district cannot support its units without the funds to do it. Unit programs are supported by the district through its program functions and unit service. All four functions are equally important and necessary. If one suffers from lack of attention, all the work of the district suffers.

The functions of the district include

- Extending opportunities for youth to join a pack, troop, team, or crew
- Helping existing units provide a quality program for their youth
- Marshaling the resources of the territory in terms of volunteers and money

BSA-PLAN_01422518

SA 0772

Its specific duties are selling the use of Scouting and providing the essential services. The district committee sells the use of the program to community organizations and helps to organize new units. It provides those things essential to successful Scouting that the chartered organization cannot easily provide, including

- Guidance in the selection of unit leadership
- Training for unit personnel in the techniques of good program
- Interunit activities that stimulate good unit program through participation and competition
- Promotion of the BSA camping and outdoor program
- Promotion of the BSA advancement program by providing merit badge counselors and coaching unit committees on advancement procedures
- Giving guidance to units through effective commissioner service

The district serves as a vehicle by which Scouting services and programs are carried to the chartered organization and units. It serves as a sounding board for chartered organization and unit needs and thus enables the consideration of those needs as the council program is planned. It also participates in determining the council budget and fund-raising for the financing of its program.

BSA-PLAN_01422519

SA 0773

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,

        Plaintiff,

v.

THE BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, the
NORTH FLORIDA COUNCIL,
INC., BOYS SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, and
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,
a corporation authorized to do
business in Florida,

        Defendants.

_____/

CASE NO. 2016-CA-000167

## BSA AND COUNCIL'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

      Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc.

("Council"), pursuant to Florida Rule of Civil Procedure 1.110(b), hereby move to dismiss the

Second Amended Complaint with prejudice for failure to state a cause of action.

### Introduction

      Plaintiff claims that neighbor and family friend George Fout ("Fout") sexually abused

him during sleepovers at Fout's parents' house.  But, as in the first two iterations of his Second

Amended Complaint, Plaintiff does not sue Fout.  Instead, he sues entities unconnected to the

alleged abuse: the national and local Scouting organizations, respectively BSA and Council, and

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza • Suite 900 • Miami, FL 33131 • Phone 305.377.0700 • Fax 305.377.3001 • www.cspalaw.com

Highly Confidential

BSA-PLAN_01422520

**SA 0774**

the chartered organization that sponsored the Boy Scout Troop, Silver Spring Shores Presbyterian Church, Inc. ("Silver Springs") (collectively "Defendants").

As demonstrated in BSA and Council's previous two motions to dismiss, Defendants—as a matter of law—are not responsible for a local volunteer's conduct unrelated to Scouting activities.  Moreover, Plaintiff fails to allege that a special relationship existed at the time of the sexual abuse.  Indeed, the Second Amended Complaint provides no dates to indicate when the alleged abuse occurred.  Accordingly, the entire action is now ripe for dismissal with prejudice.

## Discussion

### I.  Plaintiff's allegations fall outside the statutory definition of "sexual battery."

First and foremost, Plaintiff previously testified that Fout never touched him in any Scouting activity.   Rather, he originally testified that all abuse occurred on non-Scouting sleepovers at Fout's parents' house.  Faced with Defendants' prior motion to dismiss, Plaintiff changed his testimony and now claims one incident of touching occurred on a camping trip.

Under Count VII, Plaintiff asserts that BSA and Council are vicariously liable for the sexual battery committed by George Fout.  (Second Amend. Compl. ¶¶ 238-42).  The Second Amended Complaint, like the First Amended Complaint, fails to assert any allegation of "sexual battery" in connection with Scouting activity to withstand a motion to dismiss.  Plaintiff's only (and just recently asserted) allegation of sexual abuse connected to Scouting activity—that "George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on the BSA property" administered by BSA and Council—falls outside the statutory definition of "sexual battery" under section 95.11(9).  (Second Amend. Compl. ¶¶ 95, 100).  Accordingly, Count VII should be dismissed.

Highly Confidential

BSA-PLAN_01422521
**SA 0775**

Plaintiff's purported one-and-only Scouting related incident of abuse, though convenient, falls squarely outside the statutory definition of "sexual battery." *See* § 794.011(1)(h) (defining sexual battery as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any object.").

In *Green v. State*, the Second District Court of Appeal deciphered section 794.011(1)(h) and articulated the four ways by which a sexual battery can be committed:

> The statute prohibits:
>
> (1) "Oral, anal, or vaginal penetration by the sexual organ of another." **Translation: *It is illegal for a man to place his penis inside the* mouth, anus, or *vagina of a victim.***
>
> (2) "Oral, anal, or vaginal union with the sexual organ of [the defendant]." **Translation: It is illegal for a man to touch the mouth, anus or vagina of the victim with his penis, and it is illegal for a woman to touch the mouth, anus or vagina of the victim with her "sexual organ."**
>
> (3) "Oral, anal, or vaginal union with the sexual organ of [the victim]." **Translation: It is illegal for a man to touch the sexual organ of the victim with his mouth or anus, and *it is illegal for a woman to touch the sexual organ of the victim with her* mouth, anus, or *vagina.***
>
> (4) "The anal or vaginal penetration of another by any other object." **Translation: It is illegal for a man or a woman to place any object inside the anus or vagina of the victim.**

765 So. 2d 910, 913 (Fla. 2d DCA 2000) (bold emphasis added; italics emphasis in original) (citing *Richards v. State*, 738 So. 2d 415 (Fla. 2d DCA 1999)).

The union of an individual's hand or finger with another's penis—as alleged in the Second Amended Complaint—is not a "sexual battery" as defined under section 794.011. *See Richards*, 738 So. 2d at 418 ("[I]t is clear that a defendant's finger is an 'other object,' which must penetrate and not merely have union with the relevant part."); *see also Watkins v. State*, 48

Highly Confidential

BSA-PLAN_01422522
**SA 0776**

So. 3d 883, 884 (Fla. 1st DCA 2010) (explaining that section 794.011 "is not violated by proof of union with an object in the absence of penetration" and that Florida "[c]ase law has made it clear that evidence of union ('on') cannot suffice to prove penetration ('in')."); *Wallis v. State*, 548 So. 2d 808, 810 (Fla. 5th DCA 1989) ("[T]he mere 'union' of the defendant's hand or finger "with" the victim's vagina does not violate [section 794.011].").

      Because the newly asserted camping-related allegation does not qualify as "sexual battery" under section 794.011(1)(h), Count VII should be dismissed.

**II.     Plaintiff's negligence claims must be dismissed because no legally sufficient "special relationship" existed between Defendants and Plaintiff.**

      Plaintiff alleges that BSA and Council had a legal duty to protect him from Fout's sexual abuse based on a "special relationship" arising from their care and custody of Plaintiff while he participated in Troop activities. (Second Amend. Compl. ¶ 43). There is no allegation that any Defendant knew or had actual notice of Fout's alleged wrongful conduct. All but one instance of alleged sexual misconduct (discussed above) ***admittedly*** took place ***outside*** of Scouting. (Second Amend. Compl. ¶¶ 103-14). A negligence action must establish the four elements of duty, breach, proximate causation and damages. *Limones v. Sch. Dist. Of Lee County*, 161 So. 3d 384 (Fla. 2015); *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003). The existence of a legal duty is a question of law for the court. *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992). Generally, a party does not have a duty to protect another absent a special relationship. *Limones*, 161 So. 3d at 390. A duty does not arise merely because harm is foreseeable. *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004).

      The presence of a legal duty is a question of law which the court can decide on a motion to dismiss. *See Knight v. Merhige*, 133 So. 3d 1140, 1145 (Fla. 4th DCA 2014) (***motion to***

Highly Confidential

BSA-PLAN_01422523
**SA 0777**

*dismiss* properly granted because "there is no duty to control the conduct of a third person to prevent [that person] from causing physical harm to another.").  The rule is no different in the context of alleged sexual abuse and, as a matter of law, no special relationship exists when the harm arises from a personal relationship that is outside the context of the parties' legal relationship. *See KM. ex rel D.M. v. Publix Super Markets, Inc*., 895 So. 2d 1114, 1117-18 (Fla. 4th DCA 2005) (***motion to dismiss*** properly granted where grocery store owed no duty to employee's child who was sexually abused by co-employee who babysat the child at his home because the incident arose from a personal relationship outside the employment context).

In *K.M.*, a grocery store employee asked a co-employee to babysit her child at the co-employee's home, during which the co-employee sexually abused the child.  The court held that the grocery store owed no duty to the child because the incident arose from a personal relationship that was also outside the employment context.  Similarly, in *Archbishop Coleman F. Carroll High School, Inc. v. Maynoldi*, 30 So. 3d 533 (Fla. 3d DCA 2010), the court held that a school did not owe a duty to a student who was injured in an automobile accident after consuming alcohol at a private graduation party.  No duty was owed because the accident took place off-campus, following an off-campus party that was not a school-sponsored event.

Here, as in *K.M.* and *Archbishop Coleman*, no special relationship arises because Fout's sexual misconduct *admittedly* took place during Plaintiff's *personal* visits and overnight sleepovers in a private bedroom in Fout's home.  These visits and overnight sleepovers were unrelated to any Scouting activity and were *admittedly* against Scouting rules.  Because Fout perpetrated the alleged sexual abuse *outside* of the Scouting relationship, no special relationship existed. Defendants thus had no legal duty to protect Plaintiff from Fout's sexual misconduct. *Id.*

Highly Confidential

BSA-PLAN_01422524

**SA 0778**

BSA and the Council do not operate the day-to-day activities of the Scouting Program. Nor do they retain supervisory day-to-day control of the thousands of troops across the nation. Rather, day-to-day activities of the Scouting program are *admittedly* run at the **local level** by parents and volunteers.   At best, this connection only sets forth an indirect, tangential relationship between Defendants and Plaintiff—a relationship insufficient to impose a legal duty on the Defendants.  *See K.M.*, 895 So. 2d at 1117-1118 (no special relationship exists outside the scope of the parties' relationships).

Plaintiff also raises the peculiar argument that Defendants owed him a duty based on Fout's knowledge of his *own* abusive acts and his father Steve Fout's **constructive knowledge** of same.  "It is axiomatic that knowledge of the agent constitutes knowledge of the principal [only] as long as the agent received such knowledge while acting within the scope of his authority." *Brooks Tropicals, Inc. v. Acosta,* 959 So. 2d 288, 295 (Fla. 3d DCA 2007) (quoting *Bertram Yacht Yard, Inc. v. Florida Wire & Rigging Works, Inc., 177* So. 2d 365 (Fla. 3d DCA 1965)). Here, no duty can be imposed based on George Fout's knowledge of his own alleged abusive acts, which furthered only his own prurient interest and were unrelated to the Scouting program. *See Agriturf Mgmt., Inc. v. Roe,* 656 So. 2d 954, 955 (Fla. 2d DCA 1995); *First Bond & Mortgage Co. v. Yancey,* 139 So. 597, 600 (Fla. 1932).  Similarly, no duty can be imposed based on Steve Fout's alleged constructive knowledge of his son's acts; only an agent's actual knowledge may be imputed to a principal.  *Id.*

Lacking any ability or right to control the Fouts' non-Scouting activities and the location of the incidents, there is no special relationship upon which a legal duty may be imposed on Defendants.  *Id. See also K.M.*, 895 So. 2d at 1120 ("An employer does not owe a duty to persons who are injured by its employees while the employees are off duty, not then acting for

Highly Confidential

the employer's benefit, not on the employer's premises, and not using the employer's equipment."). *Cf. Nova Southeastern v Gross*, 758 So. 2d 86, 89-90 (Fla. 2000) (finding duty on part of university for student's off-campus injuries because the incident took place at a school-related activity).

Not even a school (which has a direct relationship with its students, unlike BSA and Council who only have an indirect relationship) owes a duty to supervise its students all of the time. *See Concepcion v. Archdiocese of Miami,* 693 So.2d 1103, 1105 (Fla. 3d DCA 1997); *see also Matallana v. Sch. Bd. of Miami-Dade Cty*, 838 So. 2d 1191, 1192 (Fla. 3d DCA 2003) (school did not owe duty to supervise students who engaged in fight off campus where one student shot and killed the other student even though school should have known the student had violent tendencies, previously threatened to harm the other student, and brought the gun to school).

Plaintiff further claims that Defendants had a duty to warn. But Plaintiff fails to allege (nor could he do so in good-faith) that Defendants knew or had notice of Fout's alleged sexual proclivities. Absent knowledge of the alleged **wrongful conduct**, there is no duty to warn. *See T.W. v. Regal Trace, Ltd.*, 908 So. 2d 499, 505 (Fla. 4th DCA 2005) (by virtue of its special relationship with tenant, landlord had duty to warn tenant about past criminal activity on its premises); *see also Sunshine Birds & Supplies, Inc. v. U.S. Fidelity & Guar. Co.*, 696 So. 2d 907, 911 (Fla. 3d DCA 1997) (employers subject to potential liability because they failed to act when they had actual or constructive knowledge of their employees' past child molestations). Mere knowledge that **unrelated** persons have engaged in **unrelated events** is insufficient to impose a duty. *See Archbishop Coleman*, 30 So. 3d at 542 (holding mere knowledge of an off-campus event was insufficient to impose liability). As such, Plaintiff's allegations that Defendants knew

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza • Suite 900 • Miami, FL 33131 • Phone 305.377.0700 • Fax 305.377.3001 • www.cspalaw.com

Highly Confidential

BSA-PLAN_01422526
**SA 0780**

or should have known that Plaintiff was visiting and spending the night at Fout's home are insufficient to impose any legal duty to warn.

Accordingly, Plaintiff's negligence claims against BSA and Council under Counts III and V should be dismissed.

### III.   The breach of fiduciary claims must also be dismissed because no legal fiduciary relationship existed between Defendants and Plaintiff.

Counts IV and VI allege breach of fiduciary duty claims against BSA and Council based on the mistaken belief that a special relationship existed between Defendants and Plaintiff.  "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."  *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).  To succeed on a fiduciary duty claim, one must first establish the existence of a fiduciary duty.  *See Crusselle v. Mong*, 59 So. 3d 1178, 1180 (Fla. 5th DCA 2011).  "A fiduciary owes to its beneficiary the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts."  *Cap.Bank v. MVB, Inc.*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994).

A fiduciary obligation may be express or implied.  Express relationships are created by contract (principal/agent) or by legal proceedings (guardian/ward).  *Maxwell v. First Union Bank*, 782 So. 2d 931, 933-934 (Fla. 4th DCA 2001).  An implied fiduciary relationship requires that confidence is reposed on one side and superiority and influence are on the other or where one side undertakes an obligation to benefit a dependent party on the other.  *See, respectively, The Florida Bar v. Adorno*, 60 So. 3d 1016, 1027-28 (Fla. 2011); *see also Crusselle*, 59 So. 3d at 1181. Implied fiduciary obligations usually arise from well-recognized relationships of trust

Highly Confidential

BSA-PLAN_01422527
**SA 0781**

or confidentiality, including an attorney and client, a trustee and beneficiary, a physician and patient, a mental health professional and patient, and a corporate director and a corporation and its shareholders. *See, e.g., Gracey*, 837 So. 2d at 353-354 (psychotherapist/patient); *Doe v. Evans*, 814 So. 2d 370, 374-375 (Fla. 2002) (marital counseler/counselee); *Cohen v. Hattaway*, 595 So. 2d 105, 107 (Fla. 5th DCA) (directors and officers/corporation and shareholders).

To prove the existence of a fiduciary duty, a plaintiff must establish that a relationship existed in which the plaintiff put his trust in the defendant to protect the plaintiff's financial or property interests, secrets, confidence, or private information and that the defendant accepted that trust. *See* Fla. Std. Jury Instruction 451.4; s*ee also In re Standard Jury Instructions in Civil Cases*, SC18-1672, 2018 WL 6696160 (Fla. Dec. 20, 2018) (authorizing publication and use of standard jury instructions on fiduciary duty).

Plaintiff has not pled, and cannot plead, either an express or an implied fiduciary relationship. The fiduciary duty allegations mirror the allegations in his negligence claims. In fact, Plaintiff claims that a fiduciary duty arises because of the (nonexistent) special relationship between Defendants and Plaintiff. (*See* Second Amend. Compl. ¶¶ 196-208, 225-37). Even assuming that such a special relationship exists (which it does not), a legal duty of care in the negligence sense does not in itself constitute a fiduciary obligation. More is needed: a plaintiff must plead ***facts*** establishing the existence of a ***fiduciary*** relationship. It is not enough to merely mimic the buzzwords of an "imposed confidence" and "fiduciary duty." (Second Amend. Compl. ¶¶ 196-208, 225-37).

The alleged misconduct must also arise out of the fiduciary relationship. *See Doe*, 814 So. 2d at 375. In *Doe*, the Florida Supreme Court found liability based on an implied fiduciary relationship that arose between a priest providing marital counseling and his counselee. In so

Page **9** of **17**
CLARKE SILVERGLATE, P.A.
799 Brickell Plaza • Suite 900 • Miami, FL 33131 • Phone 305.377.0700 • Fax 305.377.3001 • www.cspalaw.com

Highly Confidential

doing, the Court "stress[ed] that the liability in this case rests on the assertion of an abuse of a marital counseling relationship through an inappropriate sexual relationship." *Doe*, 814 So. 2d at 375. In stark contrast to *Doe* (where the inappropriate conduct took place in connection with the marital counseling relationship), Fout's alleged abuse did not take place at any Scouting activity.

Rather, the alleged sexual misconduct arose from Plaintiff's personal visits and admittedly unsanctioned sleepovers at Fout's home. Indeed, no authority supports the imposition of a fiduciary obligation on an institutional defendant, such as Defendants, with a local troop member, such as Plaintiff. *See Roe v. Boy Scouts of Am., Corp.*, 2012 WL 3933184, at *7 (Conn. Super. Ct. Aug. 16, 2012), *aff'd sub nom.*, *Roe No. 1 v. Boy Scouts of Am. Corp.*, 84 A.3d 443 (Conn. App. Ct. 2014). As the *Roe* court explained:

> There is no "unique degree of trust and confidence between the parties[,]" [citation omitted] who may not even know each other. Further, this case is not one involving matters such as fraud, self-dealing, conflict of interest, or dishonesty by the corporate defendants. Rather, it is a question of whether the corporate defendants had a duty of care to keep the plaintiff safe from criminal acts. It is, in short, a traditional negligence case. [Citation omitted].

*Id*.

Plaintiff's conclusory allegations that a fiduciary obligation exists do not state a cause of action for breach of fiduciary duty.

### IV. The vicarious liability claims against BSA and Council must be dismissed.

Counts VII-X set forth vicarious liability claims. (Second Amend. Compl. ¶¶ 238-64). Defendants are not liable for Fout's alleged criminal sexual batteries which, as a matter of law, fall outside the scope of any alleged agency. Responsibility for another party's tortious or criminal acts may be imputed only if (1) an agency relationship exists between the defendant and the party who acted wrongfully and (2) the party's wrongful actions fall within the scope of the

Highly Confidential

BSA-PLAN_01422529
SA 0783

agency.  *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 467–68 (Fla. 2005).

Vicarious liability may not be imposed on a principal unless the agent was acting within the scope of the agency when the wrong was committed.  *See Special Olympics Florida, Inc. v. Showalter*, 6 So. 3d 662, 665-666 (Fla. 5th DCA 2009).  An agent's criminal acts, including sexual assaults and batteries, fall outside the scope of the agency as a matter of law.  *Id.* (Special Olympics not vicariously liable for sexual molestation committed by volunteer); *see also Goss v. Human Services Associates, Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012) (granting motion to dismiss vicarious liability claims based on counselor's sexual assault of minor child at residential facility because the assault was not committed for any therapeutic purpose and it was not aided by the agency relationship); *Elders v. United Methodist Church*, 793 So. 2d 1038, 1041 (Fla. 3d DCA 2001) (church defendants were not vicariously liable for pastor's sexual abuse of counselee because as "a matter of common sense, having sexual relations with a counselee is not part of the job responsibilities of a minister."); *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 355 (Fla. 3d DCA 2001) (even though the pastor may have been counseling the minor, the assault was an independent, self-serving act for which the church could was not vicariously liable); *Mason v. Fla. Sheriffs' Self-Ins. Fund,* 699 So. 2d 268 (Fla. 5th DCA 1997) (officer's sexual assault not within course and scope even though the officer was on duty, in uniform, and serving warrant on the woman he raped); *Agriturf Mgmt., Inc. v. Rose*, 656 So.2d 954, 955 (Fla. 2d DCA 1995) (company president's sexual fondling of six-year old child not within the course and scope even though the touching occurred on the business's property during a time when the perpetrator was cleaning up, putting away equipment, and closing out the day's business).

Highly Confidential

BSA-PLAN_01422530

**SA 0784**

Vicarious liability cannot be imposed on Defendants because Fout's alleged sexual assaults were outside the scope of any alleged agency relationship he may have had with Defendants. Similarly, vicarious liability cannot be imposed based on the alleged actions of Fout's father because they were not committed within the scope of his volunteer position as scoutmaster.  The sexual misconduct took place at his private home during Plaintiff's visits or sleepovers, which were ***admittedly*** against Scouting rules. (Second Amend. Compl. ¶¶ 103-14). Additionally, a parent does not have any duty to control the conduct of an emancipated adult child living in the parent's home.  *See Knight v. Merhige*, 133 So. 3d 1140 (Fla. 4th DCA 2014); *see also Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999).

Based on the foregoing, Counts VII-X should dismissed.

**V.      Even if a "special relationship" existed, Defendants owed Plaintiff no legal duty because *all* abuse allegations—save one camping allegation—happened outside of Scouting activity.**

Assuming arguendo that a special relationship did exist, BSA and Council owed Plaintiff no legal duty of protection against sexual abuse that occurred—as Plaintiff concedes—unrelated to Scouting activity.  (Second Amend. Compl. ¶¶ 103-14).  Indeed, *all* allegations of abuse throughout the Second Amended Complaint, except for a singular camping incident, occurred "at George Fout's home after scouting events."  (Second Amend. Compl. ¶ 111).  As a matter of law, BSA and Council are not liable for Fout's criminal acts outside of BSA events, activities, and premises.  *See, e.g., KM ex rel D.M.,* 895 So. 2d at 1114.

Taking the allegations of the Second Amended Complaint as true, Defendants owed Plaintiff no legal duty of protection grounded in a special relationship because the alleged sexual abuse was unrelated to Scouting activity.  *See Archbishop Coleman F. Carroll High School, Inc. v. Maynoldi,* 30 So. 3d 533 (Fla. 3d DCA 2010) (holding that school owed no duty to student

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza • Suite 900 • Miami, FL 33131 • Phone 305.377.0700 • Fax 305.377.3001 • www.cspalaw.com

Highly Confidential

injured in car accident after consuming alcohol at private graduation party because accident took place off-campus after non-school sponsored event).   While George Fout may have had access to Plaintiff because of his position as an unpaid BSA volunteer, every sexual abuse allegation raised here—with one, undated exception—occurred in the confines of George Fout's personal residence.   George Fout's alleged, self-serving abuse of his neighbor (Plaintiff) does not trigger a legal duty by BSA or Council.   *See Iglesia Cristiana La Casa Del Senor, Inc.*, 783 So. 2d at 358. In *Iglesia Cristiana La Casa Del Senor, Inc.*, the Third District explained why the abusive pastor's conduct was insufficient to impute liability to the church:

> While Pacheco may have had access to L.M. because of his position as the Church pastor, whom L.M. and her family had become friends with over time, he was not engaging in authorized acts or serving the interests of the Church during the time he tried to seduce her or on the day he raped her. The sexual assault was an independent, self-serving act by Pacheco; an act that he knew was wrong to commit and that the Church would surely have tried to prevent had it known of his plans.

> *Id.*

Accordingly, BSA and Council owed no legal duty to Plaintiff for the alleged conduct that the Second Amended Complaint concedes primarily occurred unrelated to Scouting activities. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995) ("[I]f the agent cannot be held liable, neither can the principal, because there is nothing to impute.").

Based on the foregoing, the negligence, breach of fiduciary duty, and vicarious liability claims should be dismissed.

### VI.   Plaintiff's new allegation of fraud and misrepresentation must be dismissed as time barred and for failure to state a cause of action.

Plaintiff's Second Amended Complaint raises a new claim for "Fraud, Misrepresentation and Fraudulent Concealment" under a single count.   (Second Amend. Compl. ¶¶ 265-94).

Highly Confidential

BSA-PLAN_01422532
**SA 0786**

Specifically, Plaintiff alleges that "BSA fraudulently concealed from Congress, scouts . . . A.A. and his guardian" that "pedophiles had been infiltrating BSA in large numbers for many years." (Second Amend. Compl. ¶¶ 272-74).

Under Florida law, fraudulent misrepresentation and negligent misrepresentation involve different elements, particularly with respect to justifiable reliance. "There are four elements necessary to establish fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representer's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. 1st DCA 2011). Justifiable reliance is not a necessary element of fraudulent misrepresentation. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Because justifiable reliance is not an element of fraudulent misrepresentation, "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had [the recipient] made an investigation, unless [the recipient] knows the representation to be false or its falsity is obvious." *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 336 (Fla. 1997).

In contrast, a claim for negligent misrepresentation under Florida law requires a showing that the recipient of the information justifiably relied on the erroneous information. *Specialty Marine & Indus. Supplies, Inc.*, 66 So. 3d at 310. Moreover, the elements necessary for fraudulent concealment claim are: (1) a party concealed or failed to disclose a material fact; (2) the party knew or should have known the material fact should be disclosed; (3) the party knew their concealment of or failure to disclose the material fact would induce the plaintiff to act; (4) the party had a duty to disclose the material fact; and (5) the plaintiffs detrimentally relied on the misinformation. *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015).

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza • Suite 900 • Miami, FL 33131 • Phone 305.377.0700 • Fax 305.377.3001 • www.cspalaw.com

Highly Confidential

Here, the Second Amended Complaint does not make clear what cause of action plaintiff specifically seeks to pursue under Count XI.  Without a more particularized pleading, BSA and Council cannot construct a cogent defense to Count XI.  Further, BSA was under no duty to disclose to Plaintiff unproven allegations of abuse, and Plaintiff does articulate any such obligation in the Second Amended Complaint.  Nor can Plaintiff argue that such allegations were fraudulently concealed, as they have included a detailed history of such allegations throughout the Second Amended Complaint.

Moreover, Plaintiff's ambiguous fraud claim is barred by the applicable four-year statute of limitations under section 95.11(3).  *Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F. Supp. 2d 1347, 1357 (M.D. Fla. 2003) ("Florida Statutes section 95.11(3) provides a statute limitation period of four years for actions founded on fraud, negligent misrepresentation, or breach of fiduciary duty.").  Plaintiff cites various settlements between BSA and non-parties between 1987 and 2005 as the basis for its fraudulent concealment and/or misrepresentation allegations.  (*See* Second Amend. Compl. ¶ 276).  In fraud cases, however, the statute of limitations begins running either at the time that plaintiff learned of the fraud or when the plaintiff reasonably should have learned about the facts supporting the fraud claim.  *Moneyhun v. Vital Indus., Inc.*, 611 So. 2d 1316, 1322 (Fla. 1st DCA 1993).

Here, Plaintiff cites various examples of unproven, abuse-related settlements dating back to 1987.  A settlement is no admission of liability.  And, Plaintiff cannot claim that this information was not readily discoverable.  The Second Amended Complaint itself alleges that the information has been known for decades.  Accordingly, Plaintiff's claim is barred by the applicable four-year statute of limitations.

Highly Confidential

VII.    **Conclusion**

Based on the foregoing reasons, BSA and Council respectfully request that the Second Amended Complaint be dismissed with prejudice.

Respectfully submitted by,

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
Telephone: (305) 377-0700
Facsimile:  (305) 377-3001

By: /s/Spencer H. Silverglate
       Spencer H. Silverglate
       Florida Bar No. 769223
       ssilverglate@cspalaw.com
       mpedraza@cspalaw.com
       Francisco Ramos, Jr.
       Florida Bar No. 114766
       framos@cspalaw.com
       Shannon P. McKenna
       Florida Bar No. 385158
       smckenna@cspalaw.com
       aford@cspalaw.com

Highly Confidential

BSA-PLAN_01422535
**SA 0789**

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the

Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 25th day of October,

2019 to all counsel of record.


CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
Spencer H. Silverglate

Highly Confidential

BSA-PLAN_01422536
**SA 0790**

# EXHIBIT 3

## State Court Docket Sheet

Highly Confidential



# DAVID R. ELLSPERMANN

**CLERK** of the **CIRCUIT COURT**
and **COMPTROLLER**
MARION COUNTY, FLORIDA

New Search    Expand All

| Case Number | Filed Date | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|
| 422016CA000167CAAXXX [16CA000167AX] | 01/27/2016 | Circuit Civil 3-D | OPEN | NO | YES |

| Filing Date | Description | Active | Contested | Judgment Date |
|---|---|---|---|---|
| 01/27/2016 | OTHER NEGLIGENCE | YES | NO | - |

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| SCOTT, EDWARD LEON | JUDGE | | |
| A, A    Search This Party | PLAINTIFF | SANGIOVANNI, PAUL LOUIS | 513164 |
| THE BOY SCOUTS OF AMERICA    Search This Party | DEFENDANT | | 18718 |
| NORTH FLORIDA COUNCIL INC BOY    Search This Party | DEFENDANT | SILVERGLATE, SPENCER HAL | 769223 |
| SILVER SPRINGS SHORES PRESBYTE    Search This Party | DEFENDANT | | |

**Dockets**

Page : 1                                       ALL ▼

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | 89 | 12/13/2019 | ANSWER/RESPONSE-REPLY IN SUPPORT OF MOTION TO DISMISS PLTFS SECOND AMENDED COMPLAINT FILED BY DEFTS BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL INC | 10 |
| | 88 | 12/04/2019 | ANSWER/RESPONSE-REPLY TO PLTFS RESPONSE CONT SEE DOC FILED BY DEFT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC | 98 |
| | 87 | 11/27/2019 | MOTION-MOTION FOR EXTENSION OF TIME TO REPLY TO PLAINTIFFS CONSOLIDATED RESPONSE CONT SEE DOC FILED BY DEFTS BOYS SCOUTS OF AMERICA | 5 |
| | 86 | 11/26/2019 | ORDER ON MOTION-ON UNOPPOSED MOTION FOR EXTENSIONS OF TIME, CONT SEE DOC | 3 |
| | 85 | 11/25/2019 | ANSWER/RESPONSE-RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFTS MOTION TO DISMISS CONT SEE DOC FILED BY PLTF AA | 96 |
| | 84 | 11/22/2019 | MOTION-MOTION FOR EXTENSIONS OF TIME TO RESPOND TO DEFTS MOTIONS AND TO FILE REPLIES TO THE RESPONSE FILED BY PLTF | 5 |
| | 83 | 11/21/2019 | AGREED ORDER GRANTING BSA AND COUNCIL UNOPPOSED MOTION FOR EXTENSION OF TIME CONT SEE DOC | 3 |
| | 82 | 11/18/2019 | MOTION-MOTION FOR EXTENSION OF TIME MOTION FOR EXTENSION OF TIME TO REPLY TO PLTFS CONSOLIDATED RESPONSE IN OPPOSITION TO DEFTS MOTION TO DISMISS SECOND AMENDED COMPLAINT | 3 |
| | 81 | 11/15/2019 | ORDER GRANTING MOTION TO CONSOLIDATE PLTFS RESPONSE TO DEFTS MOTION TO DISMISS CONT SEE DOC. | 3 |
| | 80 | 11/11/2019 | MOTION-MOTION TO CONSOLIDATE | 2 |
| | 79 | 10/25/2019 | ORDER GRANTING BSA AND COUNCILS UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO PLTF SECOND AMENDED MOTION | 2 |
| | 78 | 10/25/2019 | AGREED ORDER GRANTING DEFTS MOTION FOR EXTENSION OF TIME TO RESPOND TO SECOND AMENDED COMPLAINT | 2 |
| | 77 | 10/25/2019 | MOTION-MOTION TO DISMISS PLTFS SECOND AMENDED COMPLAINT FILED BY PLTF DEFTS BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL | 17 |
| | 76 | 10/16/2019 | MOTION-MOTION FOR EXTENSION OF TIME TO RESPOND TO PLTFS SECOND AMENDED COMPLAINT FILED BY DEFTS | 3 |
| | 75 | 09/26/2019 | MOTION-MOTION TO DISMISS PLTFS SECOND AMENDED COMPLAINT FILED BY DEFT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC | 80 |
| | 74 | 09/24/2019 | AGREED ORDER-GRANTING DEFTS' UNOPPOSED MOTION FOR EXTENSION OF TIME, CONT SEE DOC | 2 |
| | 73 | 09/18/2019 | MOTION-MOTION FOR EXTENSION OF TIME TO RESPOND TO PLTFS SECOND AMENDED COMPLAINT FILED BY DEFTS' | 3 |
| | 72 | 08/30/2019 | AMENDED PETITION/COMPLAINT SECOND FOR DAMAGES FILED BY PLTF AA | 64 |
| | 71 | 08/13/2019 | ORDER ON MOTION JOINT MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT AND RESPONSE | 2 |
| | 70 | 08/09/2019 | MOTION-MOTION FOR EXTENSION OF TIME JOINT MOTION TO FILE SECOND AMENDED COMPLAINT AND RESPONSES | 5 |
| | 69 | 07/24/2019 | AMENDED ORDER ON DEFTS MOTION TO DISMISS PLTFS AMENDED COMPLAINT AND MOTION TO STRIKE CONT - SEE DOC | 8 |
| | 68 | 07/17/2019 | ORDER ON MOTION DEFT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INCS MOTION TO DISMISS PLTFS AMENDED COMPLAINT CONT - SEE DOC | 8 |
| | 67 | 04/16/2019 | NOTICE OF HEARING FILED BY DEFTS THE BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL INC | 3 |
| | 66 | 03/21/2019 | REQUEST FOR JUDICIAL NOTICE CONT SEE DOC FILED BY DEFTS THE BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL INC | 6 |
| | 65 | 03/21/2019 | ANSWER/RESPONSE-REPLY IN SUPPORT OF MOTION TO DISMISS FILED BY DEFTS THE BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL INC | 13 |
| | 64 | 03/14/2019 | ORDER ON MOTION PLTFS UNOPPOSED MOTION LEAVE TO FILE CONSOLIDATED RESPONSE TO MOTION TO DISMISS CONT SEE DOC | 2 |
| | 63 | 03/11/2019 | AGREED ORDER GRANTING AND SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT | 2 |
| | 62 | 03/11/2019 | AGREED ORDER GRANTING BSA AND NORTH FLORIDA COUNCIL UNOPPOSED MOTION FOR EXTENSION CONT SEE DOC | 2 |
| | 61 | 03/07/2019 | ANSWER/RESPONSE-REPLY TO PLTFS RESPONSE IN OPPOSITION TO DEFTS MOTIONS TO DISMISS FILED BY DEFT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC | 6 |
| | 60 | 03/05/2019 | MOTION-MOTION FOR EXTENSION OF TIME TO FILE REPLY CONT SEE DOC FILED BY DEFT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC | 4 |

Highly Confidential                                        BSA-PLAN_01422538

**SA 0792**

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | 59 | 03/04/2019 | MOTION-MOTION FOR EXTENSION OF TIME UNOPPOSED CONT SEE DOC FILED BY DEFTS BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL INC | 5 |
| | 58 | 03/01/2019 | ANSWER/RESPONSE-RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFTS MOTION TO DISMISS FIRST AMENDED COMPLAINT CONT SEE DOC FILED BY PLTF AA | 55 |
| | 57 | 03/01/2019 | MOTION-MOTION FOR LEAVE TO FILE CONSOLIDATED RESPONSE ON MARCH 1 2019 FILED BY PLTF AA | 3 |
| | 56 | 02/28/2019 | NOTICE OF UNAVAILABILITY | 2 |
| | 55 | 01/30/2019 | ORDER GRANTING MOTION FOR LEAVE TO RESPOND | 2 |
| | 54 | 01/23/2019 | MOTION-MOTION FOR LEAVE TO RESPOND CONT SEE DOC FILED BY PLTF A A | 5 |
| | 53 | 01/23/2019 | REQUEST FOR ORAL ARGUMENT ON THEIR MOTION TO DISMISS AMENDED COMPLAINT FILED BY DEFTS BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL INC | 2 |
| | 52 | 01/11/2019 | MOTION-MOTION TO DISMISS AMENDED COMPLAINT FILED BY DEFTS BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL INC | 18 |
| | 51 | 01/02/2019 | MOTION-MOTION TO DISMISS PLTFS AMENDED COMPLAINT AND MOTION TO STRIKE PREJUDGMENT INTEREST FILED BY DEFT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC | 11 |
| | 50 | 12/14/2018 | PETITION/COMPLAINT FOR DAMAGES FILED BY PLTF AA | 27 |
| | 49 | 12/04/2018 | AGREED ORDER ON MOTION FOR EXTENSION OF TIME TO AMEND COMPLAINT AND TO FILE AND SERVE RESPONSES | 2 |
| | 48 | 11/30/2018 | AGREED ORDER ON MOTION FOR EXTENSION OF TIME TO AMEND COMPLAINT AND TO FILE AND SERVE RESPONSES | 2 |
| | 47 | 11/20/2018 | MOTION-MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT FILED BY PLTF A A | 3 |
| | 46 | 11/03/2018 | ORDER ON MOTION- DEFTS MOTION TO DISMISS. CONT. SEE DOC. | 2 |
| | 45 | 10/29/2018 | ANSWER/RESPONSE-REPLY ON THEIR MOTION TO DISMISS FILED BY DEFTS BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL INC | 10 |
| | 44 | 10/29/2018 | ANSWER/RESPONSE-REPLY TO PLTFS RESPONSE IN OPPOSITION TO DEFTS MOTIONS TO DISMISS FILED BY DEFT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC | 5 |
| | 43 | 10/10/2018 | AGREED ORDER GRANTING BSA AND NORTH FLORIDA COUNCIL'S AGREED MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLIES TO PLAINTIFF'S RESPONSES TO THEIR MOTIONS TO DISMISS | 2 |
| | 42 | 10/10/2018 | CORR/MEMO TO JUDGES OFFICE | 1 |
| | 41 | 10/09/2018 | AGREED ORDER ON MOTION FOR ONE DAY EXTENSION OF TIME CONT SEE DOC | 3 |
| | 40 | 10/08/2018 | ANSWER/RESPONSE-RESPONSE TO MOTION TO DISMISS CONT SEE DOC FILED BY PLTF AA | 23 |
| | 39 | 10/05/2018 | MOTION-MOTION FOR ONE DAY EXTENSION CONT SEE DOC FILED BY PLTF A A | 7 |
| | 38 | 10/04/2018 | AGREED ORDER GRANTING BSA AND NORTH FLORIDA COUNCILS AGREED MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLY TO PLTFS RESPONSE TO THEIR MOTION TO DISMISS | 2 |
| | 37 | 10/02/2018 | AGREED ORDER ON MOTION FOR EXTENSION OF TIME TO REPLY TO DEFTS MOTIONS TO DISMISS | 2 |
| | 36 | 09/27/2018 | MOTION-MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLY TO PLTFS RESPONSE TO THEIR MOTION TO DISMISS FILED BY DEFTS | 2 |
| | 35 | 09/17/2018 | AGREED ORDER ON MOTION FOR EXTENSION OF TIME TO REPLY TO DEFTS MOTIONS TO DISMISS | 2 |
| | 34 | 09/14/2018 | MOTION-MOTION FOR EXTENSION OF TIME TO REPLY TO DEFTS MOTIONS TO DISMISS FILED BY PLTF A A | 5 |
| | 33 | 08/28/2018 | ORDER TO RESPOND-AND ORDER ESTABLISHING MOTION PRACTICE PROCEDURE | 5 |
| | 32 | 08/20/2018 | MOTION-MOTION TO DISMISS AND MOTION TO STRIKE PREJUDGMENT INTEREST FILED BY DEFT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC | 12 |
| | 31 | 08/02/2018 | REQUEST FOR ORAL ARGUMENT ON THEIR MOTION TO DISMISS | 2 |
| | 30 | 08/02/2018 | MOTION-MOTION TO DISMISS FILED BY DEFTS BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL INC | 14 |
| | 29 | 07/02/2018 | STIPULATION FOR SUBSTITUTION | 2 |
| | 28 | 06/29/2018 | NOTICE OF APPEARANCE AND DESIGNATION OF TEMAIL ADDRESSES FILED BY DEFTS BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL INC | 2 |
| | 27 | 06/18/2018 | CERTIFICATE OF NON OBJECTION FILED BY DEFT THE BOYS SCOUTS OF AMERICA | 2 |
| | 26 | 05/29/2018 | NOTICE OF PRODUCTION NON-PARTY | 2 |
| | 25 | 04/02/2018 | NOTICE OF UNAVAILABILITY | 2 |
| | 24 | 03/13/2018 | AGREED ORDER GRANTING 90 DAY STAY | 2 |
| | 23 | 02/28/2018 | STIPULATION FOR ORDER STAYING CASE FOR 90 DAYS | 2 |
| | 22 | 02/22/2018 | NOTICE OF UNAVAILABILITY - FILED BY DEFT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC | 2 |
| | 21 | 01/09/2018 | ORDER SETTING CASE MANAGEMENT CONFERENCE AND MEDIATION ORDER | 4 |
| | 20 | 01/08/2018 | NOTICE OF APPEARANCE - FILED BY DEFT THE BOY SCOUTS OF AMERICA | 1 |
| | 19 | 12/27/2017 | REQUEST TO PRODUCE FILED BY PLTF A.A. | 5 |
| | 18 | 12/27/2017 | REQUEST TO PRODUCE FILED BY PLTF A.A. | 5 |
| | 17 | 12/27/2017 | REQUEST TO PRODUCE FILED BY PLTF A.A. | 5 |
| | 16 | 12/27/2017 | MOTION-REQUEST FOR CASE MANAGEMENT CONFERENCE FILED BY PLTF A.A. | 2 |
| | 15 | 11/06/2017 | NOTICE OF LACK OF PROSECUTION - FILED BY DEFT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH | 3 |
| | 14 | 03/29/2016 | SUMMONS RETURNED SERVED ON NORTH FLORIDA COUNSEL INC BOY SCOUTS OF AMERICA | 5 |
| | 13 | 03/28/2016 | SUMMONS RETURNED SERVED FOR DEFT THE BOY SCOUTS OF AMERICA | 6 |
| | 12 | 03/10/2016 | SUMMONS ISSUED | 12 |
| | 11 | 03/09/2016 | EFILED SUMMONS | 4 |
| | 10 | 03/09/2016 | EFILED SUMMONS | 4 |
| | 9 | 03/09/2016 | EFILED SUMMONS | 4 |
| | 8 | 03/09/2016 | Payment received: $30.00 Receipt Number XX 91210 | |
| | 7 | 03/09/2016 | Assessment 2 assessed al sum $30.00 | |
| | 4 | 01/28/2016 | Payment received: $400.00 Receipt Number XX 76963 | |
| | 2 | 01/28/2016 | Judge: Assigned | |
| | 6 | 01/27/2016 | PETITION/COMPLAINT | 26 |

Highly Confidential                                                        BSA-PLAN_01422539

**SA 0793**

2/18/2020                    Case 5:20-cv-00069   Document 1-3   Filed 02/18/20   Page 4 of 4 PageID 177

| Image | Doc # | Action Date | Description | Pages |
|-------|-------|-------------|-------------|-------|
|  | 5 | 01/27/2016 | CIVIL COVER SHEET | 2 |
|  | 3 | 01/27/2016 | Assessment 1 assessed at sum $400.00 |  |
|  | 1 | 01/27/2016 | Case 422016CA000167CAAXXX Filed with Clerk on 1/27/2016 |  |

### Judge Assignment History

| Assigned Date | Withdraw Date | Judicial Officer | Type |
|---------------|---------------|------------------|------|
| No records found. | | | |

### Court Events

| Event Date | Judge | Docket Type | Location | Prosecutor | Defendant Attorney |
|------------|-------|-------------|----------|------------|--------------------|
| No records found. | | | | | |

### Financial Summary

| | Financial Summary | | |
|---|---|---|---|
| Assessment | Total: $430.00 | Paid to Date: $430.00 | Balance Due: $0.00 |
| Restitution | Total: $0.00 | Paid to Date: $0.00 | Balance Due: $0.00 |

| | Financial Details | | | | |
|---|---|---|---|---|---|
| Count | Assessment Due | Assessment Paid to Date | Restitution Due | Restitution Paid to Date | Last Payment Date |
|  | $430.00 | $430.00 | $0.00 | $0.00 | - |

### Reopen History

| Reopen Date | Reopen Close Date | Reopen Reason |
|-------------|-------------------|---------------|
| No records found. | | |

** Pursuant to Florida Statutes and Florida Rules of Court Procedure, records that have been designated as expunged, sealed or confidential may not be available through this service. For additional information on specific records please contact the Clerk of Court.

Highly Confidential                                                              BSA-PLAN_01422540

**SA 0794**

# EXHIBIT 4

# All Remaining State Court Documents

Highly Confidential

Case 1:22-cv-01237-RGA   Document 72   Filed 12/07/22   Page 369 of 460 PageID #: 4769

Filing # 37078339 E-Filed 01/27/2016 03:33:11 PM
Case 5:20-cv-00069  Document 1-4  Filed 02/18/20   Page 2 of 805 PageID 179

# FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

**I.      CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>FIFTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MARION</u>   COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>A. A.</u>
Plaintiff

vs.

<u>The Boy Scouts of America, North Florida Council Inc. Boy Scouts of America, Silver Springs Shores Presbyterian Church Inc</u>
Defendant

**II.      TYPE OF CASE**

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☒ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000
  - ☐ Non-homestead residential foreclosure $50,001 - $249,999

- ☐ Non-homestead residential foreclosure $250,00 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☐ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

Electronically Filed Marion Case #  16CA000167AX 01/27/2016 03:33:11 PM

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.   **REMEDIES SOUGHT** (check all that apply):
   ☒   Monetary;
   ☐   Non-monetary
   ☐   Non-monetary declaratory or injunctive relief;
   ☐   Punitive

IV.   **NUMBER OF CAUSES OF ACTION: (    )**
   (Specify)

   <u>10</u>

V.   **IS THIS CASE A CLASS ACTION LAWSUIT?**
   ☐   Yes
   ☒   No

VI.   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
   ☒   No
   ☐   Yes – If "yes" list all related cases by name, case number and court:

VII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
   ☒   Yes
   ☐   No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature <u>s/ Paul L. Sangiovanni</u>       FL Bar No.: <u>513164</u>
   Attorney or party                                         (Bar number, if attorney)

<u>Paul L. Sangiovanni</u>     <u>01/27/2016</u>
   (Type or print name)             Date

Highly Confidential

BSA-PLAN_01422543

**SA 0797**

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

A.A,

        **Plaintiff,**

vs.                                  CASE NO: <u>**2016-CA-000167**</u>

**THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business
in Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,**

        **Defendants.**

_____ /

## COMPLAINT FOR DAMAGES

Plaintiff, A.A, by and through his undersigned council, files this Complaint against Defendants, THE BOY SCOUTS OF AMERICA, a foreign corporation authorized to do business in Florida (hereinafter referred to as the "BSA"), the NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, a corporation authorized to do business in Florida (hereinafter referred to as the "NORTH FLORIDA COUNCIL"), and the SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., a corporation authorized to do business in Florida (hereinafter referred to as the "SILVER SPRINGS SHORES") and for good cause, states:

BSA-PLAN_01422544
SA 0798

## INTRODUCTION

1.    **General Statement of Claims:** These claims relate to acts of sexual battery as described in Section 794.011, Florida Statutes suffered by the Plaintiff, A.A., while he was a participant in the programs operated by the Defendants.  A.A. was the victim of these acts, and each of them occurred, prior to the age of sixteen (16).

2.    As more particularly described herein, the Plaintiff suffered the sexual battery described herein as a result of the neglect of the BSA and its agents to, among other things, exercise due care in the administration, management and operation of its scouting program, their breach of their fiduciary duties and their vicarious liability for the acts of their agents.

3.    **Jurisdiction and Venue**:    This is an action for damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorneys' fees.

4.    Venue is proper in Marion County, Florida because the events giving rise to this action occurred in Marion County, Florida. .

5.    **The Parties:**    A.A. is currently an adult residing in Marion County, Florida.  The actions described herein occurred when A.A. was under sixteen (16) years of age.  The initials "A.A." are used to protect the identity of Plaintiff from public disclosure.  The identity and further relevant details shall be disclosed to the Defendants off record and confidentially.

6.    At all relevant times, A.A. resided in Marion County, Florida.

7.    The BSA is a foreign corporation authorized to do business in the state of Florida.  At all relevant times, BSA controlled or had the right to control the NORTH

FLORIDA COUNCIL's and the sponsoring organizations, which implemented BSA's scouting program.

8.      The NORTH FLORIDA COUNCIL is a corporation authorized to do business in the State of Florida and is located in Duval County, Florida.  At all relevant times, the NORTH FLORIDA COUNCIL was an agent of BSA, subject to BSA's control or right to control.  As Defendant BSA's agent, the NORTH FLORIDA COUNCIL controlled or had the right to control local troops directly, or through their sponsoring organizations.

9.      SILVER SPRINGS SHORES is a corporation authorized to do business in the State of Florida and is located in Marion County, Florida.  At all relevant times, the SILVER SPRINGS SHORES was an agent of BSA, subject to BSA's control or right to control.  As Defendant BSA's agent, the SILVER SPRINGS SHORES controlled or had the right to control local troops directly, or through their sponsoring organizations.

10.     Upon information and belief, SILVER SPRINGS SHORES was the chartering organization for Troop 448, or such other Troop as A.A. was a member (herein collectively referred to as "Troop 448").

11.     George Fout was an Assistant Scoutmaster of Troop 448.

12.     Steve Fout, George Fout's father, was the Scoutmaster of Troop 448.

## STATEMENT OF FACTS

### Scouting is a Hierarchical System

13.     BSA is a large youth-serving organization.  BSA has established its presence through the use of a hierarchical system, whereby local COUNCIL's and

BSA-PLAN_01422546

SA 0800

chartering organizations implement and maintain BSA's program at a local level under BSA's guidance and control.

14. A local scouting troop cannot exist without the support of a chartering organization that has received a charter from BSA authorizing the chartering organization to implement and run BSA's scouting program.

15. BSA creates the bylaws, rules and regulations that every chartering organization must adhere to in implementing and running BSA's scouting program. Significantly, BSA's bylaws obligate a chartering organization to provide adequate facilities, supervision, and leadership for the troop in exchange for the granting of a charter to run a local scouting troop.

16. Under the BSA bylaws, each chartering organization is required to select at least three people over the age of 21 to serve as the Troop Committee. The Troop Committee then selects the Troop Scoutmaster.

17. Together, the Troop Committee and the Scoutmaster are responsible for the general program and supervision of the troop.

18. Further, each chartering organization is required to appoint a representative other than the Scoutmaster or Assistant Scoutmaster to serve as its institutional representative on the local COUNCIL.

19. A chartering organization must reapply to BSA every year for a renewed charter in order to continue to operate a local troop. BSA may revoke a chartering organization's charter at any time should the chartering organization be found to deviate from BSA's charter and bylaws.

20.    This chartering system reveals BSA's consent to allow local chartering organizations to operate the scouting program on its behalf and the chartering organizations' consent to operate the local troops subject to BSA's control or right to control.  Accordingly, the chartering organizations are the agents of BSA.

21.    BSA uses a similar structure in relation to its local COUNCIL's.  BSA issues a charter to an approved local COUNCIL authorizing the local COUNCIL to administer the scouting program to the local scout troops within the region on behalf of BSA.

22.    The local COUNCIL's are subject to the same bylaws, rules and regulations as the chartering organizations.  If a local COUNCIL deviates from the rules and regulations established by BSA, then the local COUNCIL may have its charter revoked.

23.    All local COUNCIL's must apply to BSA for renewal of their charters annually.

24.    It is the duty of the local COUNCIL to promote, support, and maintain the BSA scouting regime amongst all local troops within the local COUNCIL's area.

25.    Here too, the chartering system shows BSA's consent to allow local COUNCIL's to operate the scouting program on its behalf within a specific geographic region, and the local COUNCIL's consent to operate the scouting program subject to BSA's control or right to control.  Thus, the local COUNCIL's are agents of BSA.

26.    BSA cannot operate its scouting program without the consent and cooperation of the local COUNCIL's and chartering organizations.  Conversely, the

BSA-PLAN_01422548

SA 0802

chartering organizations and local COUNCIL's cannot operate and supervise local scouting troops without the consent of BSA.

**The History of Pedophilia in Scouting**

27.    BSA has known for decades of the high degree of risk that adult Scoutmasters and volunteers may sexually abuse minor scout members.

28.    Since the early 1900s, BSA has maintained a system of "Ineligible Volunteer Files" to track incidents wherein adult Scoutmasters sexually abused scouts.

29.    In approximately 1972, BSA implemented a system requiring local COUNCIL's' scouting executives to complete and send in a form with any available supporting information about known or alleged sexual abuse committed by adult Scoutmasters in the executives' jurisdiction.  Upon receipt of this information from the local COUNCIL, BSA created an Ineligible Volunteer File for the abuser and added it to BSA's database.

30.    By 1977, BSA was advising all sponsoring organizations to maintain "two deep leadership" for all scouting activities, wherein two adult Scoutmasters were required to be present at all times.  Ostensibly, this precaution was implemented to help prevent sexual abuse in scouting.

31.    Despite BSA's extensive and long-standing knowledge of the high degree of risk of pedophilia in scouting, BSA did not implement a sexual abuse-prevention education program until approximately 1988.  This program, the Youth Protection Program, was BSA's first effort to educate scouts and their family members about the risk of sexual abuse in scouting, a risk that continues today.

### George Fout's Sexual Battery of A.A.

32.     A.A. is an adult male. At all relevant times, A.A. was a minor residing in Marion County, Florida and was under the age of sixteen (16).

33.     At all relevant times, A.A. was enrolled in the Boy Scouts of America scouting program.

34.     At all relevant times, A.A. was a member of Boy Scouts of America Troop 448 in Ocala, Florida.   Troop 448 was chartered by Defendant SILVER SPRINGS SHORES.

35.     As the chartering organization of Troop 448, Defendant SILVER SPRINGS SHORES was responsible for providing adequate facilities, supervision, and leadership for the troop.

36.     The troop meetings were held in facilities owned or operated by Defendant SILVER SPRINGS SHORES.

37.     At all times material hereto, Steve Fout was installed as the Scoutmaster (a/k/a Troop Leader) for Troop 448.

38.     At all times material hereto, Steve Foot's son, George Fout, was an Assistant Scoutmaster (a/k/a Assistant Troop Leader) for Troop 448.

39.     Troop 448 was under the jurisdiction of Defendant NORTH FLORIDA COUNCIL.

40.     As the Scoutmaster of Troop 448, Steve Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

41.    As the Assistant Scoutmaster of Troop 448, George Fout assisted Steve Fout in these activities.

42.    At all times material hereto, Assistant Scoutmaster George Fout was under the direct supervision of Scoutmaster Steve Fout.

43.    In or about 2004, A.A. became a member of Troop 448.  It was through his membership in Troop 448 that Plaintiff was introduced to his abuser, George Fout.

44.    George Fout often showered Plaintiff with special attention.

45.    George Fout groomed Plaintiff for sexual abuse by gaining Plaintiff's trust and admiration.

46.    In or about 2004, when A.A. was eight (8) years old, George Fout began to commit sexually battery upon A.A.

47.    Specifically, George Fout committed oral and anal sodomy and other acts of sexual battery constituting violations of Section 794.011, Florida Statutes upon A.A.

48.    Each of these acts occurred prior to the Plaintiff's sixteenth (16th) birthday.

49.    Eventually, George Fout escalated the frequency of the sexual battery to the point where he was sexually abusing Plaintiff approximately once a month.

50.    The abuse continued until 2012, until just prior to A.A.'s sixteenth (16th) birthday.

51.    The locations of the sexual battery included George Fout's home, in which he resided with Steve Fout, his father and the Scoutmaster of Troop 448.

52.    Without limitation, A.A. would spend the night at the home of Scoutmaster Steve Fout.  This is a clear violation of BSA policy.  During those occasions,

A.A. would be abused by Assistant Scoutmaster George Fout.  Steve Fout was often in the home often when the incidents of sexual battery occurred.

53.    These abuses occurred when A.A. was placed in the care and custody of Defendants BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, with the resulting loss of control to protect himself.

54.    Defendants BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, were substituting for A.A.'s parents when they had custody of A.A.

55.    At all relevant times, George Fout and Steve Fout were acting as the agents of Defendant BSA, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES by leading Boy Scouts of America Troop 448.

56.    At all relevant times, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES were serving as Defendant BSA's agents by implementing and maintaining BSA's scouting program on a local level.

## CAUSES OF ACTION

### Count I: Negligence of Defendant SILVER SPRINGS SHORES

57.    Plaintiff incorporates Paragraphs 1 through 56 above as fully set forth under this count and further alleges as follows:

58.    Defendant SILVER SPRINGS SHORES had a special relationship with A.A. because Defendant SILVER SPRINGS SHORES had care and custody of A.A. while A.A. was participating in Troop 448 activities.

59.    This special relationship between Defendant SILVER SPRINGS SHORES and A.A. gave rise to a right of protection for A.A.

Highly Confidential

60.     Based on the special protective relationship with A.A., Defendant SILVER SPRINGS SHORES had a duty to protect A.A. from reasonably foreseeable harm.

61.     Defendant SILVER SPRINGS SHORES breached the duty it owed A.A., by acts or omissions which included, without limitation:

a)      Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed.  Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed.  These included, without limitation, that Defendant SILVER SPRINGS SHORES knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)      Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)      Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

62.     As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes.  A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

63.     As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to

Highly Confidential

experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count II: Negligence of Defendant NORTH FLORIDA COUNCIL

64.     Plaintiff incorporates Paragraphs 1 through 56 above as fully set forth under this count and further alleges as follows:

65.     Defendant NORTH FLORIDA COUNCIL had a special relationship with A.A. because Defendant NORTH FLORIDA COUNCIL had care and custody of A.A. while A.A. was participating in Troop 448 activities. This special relationship between Defendant NORTH FLORIDA COUNCIL and A.A. gave rise to a right of protection for A.A.

66.     Based on the special protective relationship with A.A., Defendant NORTH FLORIDA COUNCIL had a duty to protect A.A. from reasonably foreseeable harm.

67.     Defendant NORTH FLORIDA COUNCIL breached the duty it owed A.A., by acts or omissions which included, without limitation:

      a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant NORTH FLORIDA COUNCIL knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant NORTH FLORIDA COUNCIL knew or should have known of the

BSA-PLAN_01422554
SA 0808

special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

68.   As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL's negligent acts and omissions, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes.  A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

69.   As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper.  A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

## Count III – Negligence of Defendant BSA

70.     Plaintiff incorporates Paragraphs 1 through 56 above as fully set forth under this count and further alleges as follows:

71.     Defendant BSA had a special relationship with A.A. because Defendant BSA had care and custody of A.A. while A.A. was participating in Troop 448 activities. This special relationship between Defendant BSA and A.A. gave rise to a right of protection for A.A.

72.     Based on the special protective relationship with A.A., Defendant BSA had a duty to protect A.A. from reasonably foreseeable harm.

73.     Defendant BSA breached the duty it owed A.A., by acts or omissions which included, without limitation:

    a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed.  Upon information and belief, Defendant BSA knew or should have known that proper precautions and procedures were not followed.  These included, without limitation, that Defendant BSA knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

    b)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

BSA-PLAN_01422556

SA 0810

74.     As a direct and proximate cause of Defendant BSA's negligent acts and omissions, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes.  A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

75.     As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper.  A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count IV: Breach of Fiduciary Duty of Defendant SILVER SPRINGS SHORES

76.     Plaintiff incorporates Paragraphs 1 through 56 above as fully set forth under this count and further alleges as follows:

77.     At all relevant times, A.A. was a minor for whom Defendant SILVER SPRINGS SHORES was entrusted with caring.

78.     Upon information and belief, Defendant SILVER SPRINGS SHORES had a special relationship with A.A. because Defendant SILVER SPRINGS SHORES took charge of and/or exercised control over A.A.

BSA-PLAN_01422557

SA 0811

79.     As a result of this relationship, at all relevant times, Defendant SILVER SPRINGS SHORES had a fiduciary duty toward A.A. that included the obligation to protect him from sexual battery and sexual predators.

80.     Defendant SILVER SPRINGS SHORES breached its fiduciary duty to protect A.A. by, among other things,

a)  Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed.  Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed.  These included, without limitation, that Defendant SILVER SPRINGS SHORES knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)  Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)  Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

81.     As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes.  A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

82.     As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional,

Highly Confidential

psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper.  A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count V: Breach of Fiduciary Duty of Defendant NORTH FLORIDA COUNCIL**

83.     Plaintiff incorporates Paragraphs 1 through 56 above as fully set forth under this count and further alleges as follows:

84.     At all relevant times, A.A. was a minor for whom Defendant NORTH FLORIDA COUNCIL was entrusted with caring.

85.     Upon information and belief, Defendant NORTH FLORIDA COUNCIL had a special relationship with A.A. because Defendant NORTH FLORIDA COUNCIL took charge of and/or exercised control over A.A.

86.     As a result of this relationship, at all relevant times, Defendant NORTH FLORIDA COUNCIL had a fiduciary duty toward A.A. that included the obligation to protect him from sexual battery and sexual predators.

87.     Defendant NORTH FLORIDA COUNCIL breached its fiduciary duty to protect A.A. by, among other things,

　　　　a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed.  Upon information and

belief, Defendant NORTH FLORIDA COUNCIL knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant NORTH FLORIDA COUNCIL knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

88.   As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL's breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

89.   As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court

BSA-PLAN_01422560

SA 0814

deems just and proper.  A.A. reserves the right to amend this Complaint to assert punitive

damages. A.A. further requests trial by jury of all issues so triable.

<u>**Count VI: Breach of Fiduciary Duty of Defendant BSA**</u>

90.     Plaintiff incorporates Paragraphs 1 through 56 above as fully set forth

under this count and further alleges as follows:

91.     At all relevant times, A.A. was a minor for whom Defendant BSA was

entrusted with caring.

92.     Upon information and belief, Defendant BSA had a special relationship

with A.A. because Defendant BSA took charge of and/or exercised control over A.A.

93.     As a result of this relationship, at all relevant times, Defendant BSA had a

fiduciary duty toward A.A. that included the obligation to protect him from sexual battery

and sexual predators.

94.     Defendant BSA breached its fiduciary duty to protect A.A. by, among

other things,

    a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed.  Upon information and belief, Defendant BSA knew or should have known that proper precautions and procedures were not followed.  These included, without limitation, that Defendant BSA knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

    b)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

95.   As a direct and proximate cause of Defendant BSA's breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes.  A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

96.   As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper.  A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count VII: Vicarious Liability of Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for the Sexual Battery by George Fout**

97.   Plaintiff incorporates Paragraphs 1 through 56 above as fully set forth under this count and further alleges as follows:

98.   At all relevant times, George Fout, as Assistant Scoutmaster, was acting as agent for Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and

BSA-PLAN_01422562

SA 0816

BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

99.     Accordingly, Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of George Fout.

100.    George Fout's acts and omissions and breaches of fiduciary duties include, without limitation, committing acts of sexual battery upon A.A.  A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

101.    As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial, for which such damages, SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA are vicariously liable.

102.    WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper.  A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

BSA-PLAN_01422563

SA 0817

**Count VIII: Vicarious Liability of Defendants SILVER SPRINGS SHORES,
NORTH FLORIDA COUNCIL and BSA for the Negligence and
Breach of Fiduciary Duty of Steve Fout**

103.    Plaintiff incorporates Paragraphs 1 through 56 above as fully set forth under this count and further alleges as follows:

104.    At all relevant times, Steve Fout, as Scoutmaster, was acting as agent for Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

105.    Accordingly, Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of Steve Fout.

106.    Steve Fout's acts and omissions and breaches of fiduciary duties include, without limitation,

    a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his son and Assistant Scoutmaster if proper precautions were not followed.  Steve Fout knew that proper precautions and procedures were not followed.  These included, without limitation, that Steve Fout knew or should have known of the special relationship between George Fout and A.A. and that A.A. would leave the meetings held on its premises to spend the evening at the Fout's residence, in violation of Boy Scout policy.

    b)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at his home, which allowed George Fout to isolate and sexually abuse A.A.

    c)    Failing to otherwise properly oversee the activities of Troop 448, its scouts, and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

Highly Confidential

107.   As a result of this negligence and breach of fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes.  A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

108.   As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial, for which such damages, SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA are vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper.  A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count IX: Vicarious Liability of Defendants NORTH FLORIDA COUNCIL and BSA for the Negligence and Breach of Fiduciary Duty of SILVER SPRINGS SHORES

109.   Plaintiff incorporates Paragraphs 1 through 56 above as fully set forth under this count and further alleges as follows:

110.   At all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendants NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

111.    Accordingly, Defendants NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of SILVER SPRINGS SHORES.

112.    SILVER SPRINGS SHORES acts and omissions and breaches of fiduciary duties include, without limitation,

a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed.  Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed.  These included, without limitation, that Defendant SILVER SPRINGS SHORES knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

113.    As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligence and breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes.  A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

114.    As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional,

psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial for which NORTH FLORIDA COUNCIL and BSA are vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper.  A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count X: Vicarious Liability of Defendant BSA for the Negligence and Breach of Fiduciary Duty of NORTH FLORIDA COUNCIL

115.    Plaintiff incorporates Paragraphs 1 through 56 above as fully set forth under this count and further alleges as follows:

116.    At all relevant times, NORTH FLORIDA COUNCIL was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

117.    Accordingly, Defendant BSA is vicariously liable for the acts and omissions and breaches of fiduciary duties of NORTH FLORIDA COUNCIL.

118.    NORTH FLORIDA COUNCIL acts and omissions and breaches of fiduciary duties include, without limitation,

       a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed.  Upon information and belief, Defendant NORTH FLORIDA COUNCIL knew or should have known that proper precautions and procedures were not followed.  These included, without limitation, that Defendant

BSA-PLAN_01422567
SA 0821

NORTH FLORIDA COUNCIL knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

119.   As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL's negligence and breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

120.   As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial for which BSA is vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

DATED this 27st day of January, 2016.

**MORGAN & MORGAN, P.A.**
**Business Trial Group**

*/s/ Paul L. SanGiovanni*
**Paul L. SanGiovanni, Attorney at law**
Florida Bar Number 0513164
**Morgan & Morgan, P.A.**
**Business Trial Group**
20 N. Orange Ave., Suite 1500
Orlando, FL  32801
Telephone:     (407)418-6041
Facsimile:     (407)245-3394
Primary:       psangi@forthepeople.com
Secondary:     sheath@forthepeople.com
*Attorney for Plaintiff*

Highly Confidential

**IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA**

**CASE NO: 2016-CA-000167**

A.A.,

        Plaintiffs,

vs.

**THE BOY SCOUTS OF AMERICA,
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,**

        Defendants.

_____ /

**SUMMONS**

THE STATE OF FLORIDA:

To all and singular sheriffs of said state:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in the above-styled cause upon the Defendant:

      **The Boy Scouts of America
c/o Registered Agent:  Paul Beal
73800 Overseas Hwy.
Islamorada, FL  33036**

      Each Defendant is hereby required to serve written defenses to said Complaint on PAUL L. SANGIOVANNI, ESQUIRE, **Morgan & Morgan, P.A.**, 20 North Orange Avenue, Suite 1600, P.O. Box 4979, Orlando, Florida 32802-4979, Telephone: (407) 420-1414, within twenty (20) days after service of this Summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter.  If you fail to do so, a default will be entered against you for the relief demanded in the Complaint or Petition.

**REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES**

Electronically Filed Marion Case #  16CA000167AX 03/09/2016 11:46:09 AM

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact the ADA Coordinator, Human Resources, **MARION COUNTY COURTHOUSE, 110 N.W. FIRST AVENUE, OCALA, FLORIDA 34475, (904) 620-3582**, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

WITNESS my hand and the seal of this Court on this the _____ day of March, 2016
.

Clerk of the Circuit Court

By_____

As Deputy Clerk

BSA-PLAN_01422571

## IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court.  There are other legal requirements. You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los numbres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su centa, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted inviar por correo o entregar una copia de su respuesta a la persona denuminada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

"De acuerdo con el Acto o' Decreto de los Americanos con Impedimentos Inhabilitados, personas en necesidad del servicio especial para particpar en estee procedimiento deberan, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la oficina Administrativa de la Corte, Telefono (TDD) 1-800-955-8771 o Voice (V) 1-800-955-8770, via Florida Relay Service.

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger' vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Highly Confidential

BSA-PLAN_01422572

SA 0826

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities".   Les personnes en besoin d'une accomodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre demarche, contracter l'office administrative de la Court situe au le telephone ou Telefono (TDD) 1-800-955-8771 ou Voice (V) 1-800-955-8770, via Florida Relay Service.

**MORGAN & MORGAN, P.A.**
**POST OFFICE BOX 4979**
**20 NORTH ORANGE AVENUE, SUITE 1600**
**ORLANDO, FLORIDA 32802-4979**

BSA-PLAN_01422573
SA 0827

# IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

## CASE NO:  2016-CA-000167

A.A.,

        Plaintiffs,

vs.

**THE BOY SCOUTS OF AMERICA,
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,**

        Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA:

To all and singular sheriffs of said state:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in the above-styled cause upon the Defendant:

      **North Florida Council, Inc., Boy Scouts of America
c/o Registered Agent:  Jack L. Sears, Jr.
521 S. Edgewood Avenue
Jacksonville, FL  32205**

      Each Defendant is hereby required to serve written defenses to said Complaint on PAUL L. SANGIOVANNI, ESQUIRE, **Morgan & Morgan, P.A.,** 20 North Orange Avenue, Suite 1600, P.O. Box 4979, Orlando, Florida 32802-4979, Telephone: (407) 420-1414, within twenty (20) days after service of this Summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter.  If you fail to do so, a default will be entered against you for the relief demanded in the Complaint or Petition.

## REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

Electronically Filed Marion Case #  16CA000167AX 03/09/2016 11:46:09 AM

Highly Confidential

BSA-PLAN_01422574

SA 0828

      If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact the ADA Coordinator, Human Resources, **MARION COUNTY COURTHOUSE, 110 N.W. FIRST AVENUE, OCALA, FLORIDA 34475, (904) 620-3582**, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

      WITNESS my hand and the seal of this Court on this the _____ day of March, 2016
.

                        Clerk of the Circuit Court

                        By_____
                              As Deputy Clerk

UNOFFICIAL DOCUMENT

## IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los numbres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su centa, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted inviar por correo o entregar una copia de su respuesta a la persona denuminada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

"De acuerdo con el Acto o' Decreto de los Americanos con Impedimentos Inhabilitados, personas en necesidad del servicio especial para particpar en estee procedimiento deberan, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la oficina Administrativa de la Corte, Telefono (TDD) 1-800-955-8771 o Voice (V) 1-800-955-8770, via Florida Relay Service.

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger' vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Highly Confidential

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities".  Les personnes en besoin d'une accomodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre demarche, contracter l'office administrative de la Court situe au le telephone ou Telefono (TDD) 1-800-955-8771 ou Voice (V) 1-800-955-8770, via Florida Relay Service.

**MORGAN & MORGAN, P.A.**
**POST OFFICE BOX 4979**
**20 NORTH ORANGE AVENUE, SUITE 1600**
**ORLANDO, FLORIDA 32802-4979**

UNOFFICIAL DOCUMENT

Case 5:20-cv-00068   Document 1-4   Filed 02/18/20   Page 38 of 805 PageID 215

IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA

CASE NO:  2016-CA-000167

A.A.,

      Plaintiffs,

vs.

THE BOY SCOUTS OF AMERICA,
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

**SUMMONS**

THE STATE OF FLORIDA:

To all and singular sheriffs of said state:

     YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in the above-styled cause upon the Defendant:

**Silver Springs Shores Presbyterian Church, Inc.**
**c/o Registered Agent:  Rev. Alan L. Cummings**
**574 Silver Course Loop**
**Ocala, FL  34472**

     Each Defendant is hereby required to serve written defenses to said Complaint on PAUL L. SANGIOVANNI, ESQUIRE, **Morgan & Morgan, P.A.**, 20 North Orange Avenue, Suite 1600, P.O. Box 4979, Orlando, Florida 32802-4979, Telephone: (407) 420-1414, within twenty (20) days after service of this Summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter.  If you fail to do so, a default will be entered against you for the relief demanded in the Complaint or Petition.

**REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES**

Electronically Filed Marion Case #  16CA000167AX 03/09/2016 11:46:09 AM

Highly Confidential

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact the ADA Coordinator, Human Resources, **MARION COUNTY COURTHOUSE, 110 N.W. FIRST AVENUE, OCALA, FLORIDA 34475, (904) 620-3582**, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

WITNESS my hand and the seal of this Court on this the _____ day of March, 2016.

Clerk of the Circuit Court

By_____

As Deputy Clerk

UNOFFICIAL DOCUMENT

## IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los numbres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su centa, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted inviar por correo o entregar una copia de su respuesta a la persona denuminada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

"De acuerdo con el Acto o' Decreto de los Americanos con Impedimentos Inhabilitados, personas en necesidad del servicio especial para particpar en estee procedimiento deberan, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la oficina Administrativa de la Corte, Telefono (TDD) 1-800-955-8771 o Voice (V) 1-800-955-8770, via Florida Relay Service.

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger' vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Highly Confidential

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities".  Les personnes en besoin d'une accomodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre demarche, contracter l'office administrative de la Court situe au le telephone ou Telefono (TDD) 1-800-955-8771 ou Voice (V) 1-800-955-8770, via Florida Relay Service.

**MORGAN & MORGAN, P.A.**
**POST OFFICE BOX 4979**
**20 NORTH ORANGE AVENUE, SUITE 1600**
**ORLANDO, FLORIDA 32802-4979**

UNOFFICIAL DOCUMENT

Filing # 38794695 E-Filed 03/09/2016 11:46:09 AM

## IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

### CASE NO: 2016-CA-000167

A.A.,

        **Plaintiffs,**

vs.

**THE BOY SCOUTS OF AMERICA,
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,**

        **Defendants.**

_____/

### SUMMONS

THE STATE OF FLORIDA:

To all and singular sheriffs of said state:

       YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in the above-styled cause upon the Defendant:

**The Boy Scouts of America
c/o Registered Agent: Paul Beal
73800 Overseas Hwy.
Islamorada, FL 33036**

       Each Defendant is hereby required to serve written defenses to said Complaint on PAUL L. SANGIOVANNI, ESQUIRE, **Morgan & Morgan, P.A.,** 20 North Orange Avenue, Suite 1600, P.O. Box 4979, Orlando, Florida 32802-4979, Telephone: (407) 420-1414, within twenty (20) days after service of this Summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter. If you fail to do so, a default will be entered against you for the relief demanded in the Complaint or Petition.

### REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

Electronically Filed Marion Case # 16CA000167AX 03/09/2016 11:46:09 AM

Highly Confidential

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact the ADA Coordinator, Human Resources, **MARION COUNTY COURTHOUSE, 110 N.W. FIRST AVENUE, OCALA, FLORIDA 34475, (904) 620-3582,** at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

WITNESS my hand and the seal of this Court on this the 10 day of March, 2016

DAVID R. ELLSPERMANN

Clerk of the Circuit Court

By _____

As Deputy Clerk

UNOFFICIAL DOCUMENT

# IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court.  There are other legal requirements. You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

# IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) días, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los numbres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su centa, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted inviar por correo o entregar una copia de su respuesta a la persona denuminada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demandante).

"De acuerdo con el Acto o' Decreto de los Americanos con Impedimentos Inhabilitados, personas en necesidad del servicio especial para particpar en estee procedimiento deberan, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la oficina Administrativa de la Corte, Telefono (TDD) 1-800-955-8771 o Voice (V) J-800-955-8770, via Florida Relay Service.

# IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger' vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Highly Confidential

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities".  Les personnes en besoin d'une accomodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre demarche, contracter l'office administrative de la Court situe au le telephone ou Telefono (TDD) 1-800-955-8771 ou Voice (V) 1-800-955-8770, via Florida Relay Service.

**MORGAN & MORGAN, P.A.**
**POST OFFICE BOX 4979**
**20 NORTH ORANGE AVENUE, SUITE 1600**
**ORLANDO, FLORIDA 32802-4979**

UNOFFICIAL DOCUMENT

Highly Confidential

BSA-PLAN_01422585

**SA 0839**

Filing # 38794695 E-Filed 03/09/2016 11:46:09 AM

**IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA**

**CASE NO: 2016-CA-000167**

A.A.,

      **Plaintiffs,**

vs.

**THE BOY SCOUTS OF AMERICA,
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,**

      **Defendants.**

_____/

**SUMMONS**

THE STATE OF FLORIDA:

To all and singular sheriffs of said state:

     YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in the above-styled cause upon the Defendant:

**North Florida Council, Inc., Boy Scouts of America
c/o Registered Agent: Jack L. Sears, Jr.
521 S. Edgewood Avenue
Jacksonville, FL 32205**

     Each Defendant is hereby required to serve written defenses to said Complaint on PAUL L. SANGIOVANNI, ESQUIRE, **Morgan & Morgan, P.A.,** 20 North Orange Avenue, Suite 1600, P.O. Box 4979, Orlando, Florida 32802-4979, Telephone: (407) 420-1414, within twenty (20) days after service of this Summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter. If you fail to do so, a default will be entered against you for the relief demanded in the Complaint or Petition.

**REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES**

Electronically Filed Marion Case # 16CA000167AX 03/09/2016 11:46:09 AM

Highly Confidential

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Human Resources, **MARION COUNTY COURTHOUSE, 110 N.W. FIRST AVENUE, OCALA, FLORIDA 34475, (904) 620-3582**, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

WITNESS my hand and the seal of this Court on this the ___10___ day of March, 2016

**DAVID R. ELLSPERMANN**         Clerk of the Circuit Court

                                By _____

                                As Deputy Clerk

UNOFFICIAL DOCUMENT

Highly Confidential

BSA-PLAN_01422587

**SA 0841**

## IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los numbres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su centa, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted inviar por correo o entregar una copia de su respuesta a la persona denuminada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demandante).

"De acuerdo con el Acto o' Decreto de los Americanos con Impedimentos Inhabilitados, personas en necesidad del servicio especial para particpar en estee procedimiento deberan, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la oficina Administrativa de la Corte, Telefono (TDD) 1-800-955-8771 o Voice (V) 1-800-955-8770, via Florida Relay Service.

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger' vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Highly Confidential

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities".  Les personnes en besoin d'une accomodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre demarche, contracter l'office administrative de la Court situe au le telephone ou Telefono (TDD) 1-800-955-8771 ou Voice (V) 1-800-955-8770, via Florida Relay Service.

**MORGAN & MORGAN, P.A.**
**POST OFFICE BOX 4979**
**20 NORTH ORANGE AVENUE, SUITE 1600**
**ORLANDO, FLORIDA 32802-4979**

UNOFFICIAL DOCUMENT

BSA-PLAN_01422589

SA 0843

Filing # 38794695 E-Filed 03/09/2016 11:46:09 AM

IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA

CASE NO: 2016-CA-000167

A.A.,

        Plaintiffs,

vs.

THE BOY SCOUTS OF AMERICA,
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

        Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA:

To all and singular sheriffs of said state:

    YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in the above-styled cause upon the Defendant:

**Silver Springs Shores Presbyterian Church, Inc.**
**c/o Registered Agent:  Rev. Alan L. Cummings**
**574 Silver Course Loop**
**Ocala, FL  34472**

    Each Defendant is hereby required to serve written defenses to said Complaint on PAUL L. SANGIOVANNI, ESQUIRE, **Morgan & Morgan, P.A.**, 20 North Orange Avenue, Suite 1600, P.O. Box 4979, Orlando, Florida 32802-4979, Telephone: (407) 420-1414, within twenty (20) days after service of this Summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter.  If you fail to do so, a default will be entered against you for the relief demanded in the Complaint or Petition.

## REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

Electronically Filed Marion Case #  16CA000167AX 03/09/2016 11:46:09 AM

Highly Confidential

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Human Resources, **MARION COUNTY COURTHOUSE, 110 N.W. FIRST AVENUE, OCALA, FLORIDA 34475, (904) 620-3582**, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

WITNESS my hand and the seal of this Court on this the ___10___ day of March, 2016.

DAVID R. ELLSPERMANN

Clerk of the Circuit Court

By _____

As Deputy Clerk

UNOFFICIAL DOCUMENT

Highly Confidential

BSA-PLAN_01422591

**SA 0845**

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los numbres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su centa, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted inviar por correo o entregar una copia de su respuesta a la persona denuminada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demandante).

"De acuerdo con el Acto o' Decreto de los Americanos con Impedimentos Inhabilitados, personas en necesidad del servicio especial para particpar en estee procedimiento deberan, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la oficina Administrativa de la Corte, Telefono (TDD) 1-800-955-8771 o Voice (V) 1-800-955-8770, via Florida Relay Service.

## IMPORTANT

Des poursuites judiciaires ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger' vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

BSA-PLAN_01422592

SA 0846

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities". Les personnes en besoin d'une accomodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre demarche, contracter l'office administrative de la Court situe au le telephone ou Telefono (TDD) 1-800-955-8771 ou Voice (V) 1-800-955-8770, via Florida Relay Service.

**MORGAN & MORGAN, P.A.**
**POST OFFICE BOX 4979**
**20 NORTH ORANGE AVENUE, SUITE 1600**
**ORLANDO, FLORIDA 32802-4979**

UNOFFICIAL DOCUMENT

Case 1:22-cv-01237-RGA   Document 72   Filed 12/07/22   Page 421 of 460 PageID #: 4821

Filing # 39511206 E-Filed 03/28/2016 12:16:53 PM
Case 5:20-cv-00069   Document 1-43   Filed 02/18/20   Page 54 of 805 PageID 231

## VERIFIED RETURN OF SERVICE

| | | |
|---|---|---|
| State of Florida | County of Marion | Circuit Court |

Case Number: 2016-CA-167

Plaintiff:
**A.A.,**

vs.

Defendant:
**THE BOY SCOUTS OF AMERICA, et al.,**

For:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 South Orange Ave.
Suite 1500
Orlando, FL 32801

Received by ATTORNEYS LEGAL SERVICES, INC. on the 16th day of March, 2016 at 4:23 pm to be served on **THE BOY SCOUTS OF AMERICA C/O PAUL BEAL, REGISTERED AGENT, 73800 Overseas Hwy., Islamorada, FL 33036.**

I, Steve Frahlich, do hereby affirm that on the **18th day of March, 2016** at **1:45 pm, I:**

served a **CORPORATION** by delivering a true copy of the **SUMMONS AND COMPLAINT FOR DAMAGES WITH EXHIBITS** with the date and hour of service endorsed thereon by me, to: **NANCY WELLS** as **ADMINISTRATIVE ASSISTANT** for **THE BOY SCOUTS OF AMERICA,** at the address of: **73800 Overseas Hwy., Islamorada, FL 33036,** and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
NANCY ADVISED PAUL BEAL NOT IN THIS DATE, BUT, SHE IS AUTHORIZED TO ACCEPT FOR PAUL WHEN HE IS NOT AVAILABLE.

Electronically Filed Marion Case #  16CA000167AX 03/28/2016 12:16:53 PM

Highly Confidential

## <u>VERIFIED RETURN OF SERVICE For 2016-CA-167</u>

I certify that I am over the age of 18 & have no interest in the above action, am a Special Process Server, in good standing, in the 16th Judicial Circuit in and for Monroe County; that service was made in accordance with Florida Statutes 48.031. Under penalty of perjury, I declare that I have read the foregoing & that the facts stated in it are true.  Notary not required pursuant to F.S.92.525(2).



**Steve Frahlich**
MCSO Appt. #144

**ATTORNEYS LEGAL SERVICES, INC.**
**617 East Washington St. #2**
**Orlando, FL 32801**
**(800) 275-8908**

Our Job Serial Number: ALS-2016001973
Ref: 1535377

Copyright © 1992-2016 Database Services, Inc. - Process Server's Toolbox V7.1e

BSA-PLAN_01422595

SA 0849

Filing # 38794695 E-Filed 03/09/2016 11:46:09 AM

## IN THE CIRCUIT COURT OF THE FIFTH
## JUDICIAL CIRCUIT IN AND FOR MARION
## COUNTY, FLORIDA

### CASE NO:  2016-CA-000167

A.A.,

      Plaintiffs,

vs.

THE BOY SCOUTS OF AMERICA,
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

### SUMMONS

THE STATE OF FLORIDA:

To all and singular sheriffs of said state:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in the above-styled cause upon the Defendant:

**The Boy Scouts of America**
**c/o Registered Agent:  Paul Beal**
**73800 Overseas Hwy.**
**Islamorada, FL  33036**

      Each Defendant is hereby required to serve written defenses to said Complaint on PAUL L. SANGIOVANNI, ESQUIRE, **Morgan & Morgan, P.A.**, 20 North Orange Avenue, Suite 1600, P.O. Box 4979, Orlando, Florida 32802-4979, Telephone: (407) 420-1414, within twenty (20) days after service of this Summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter.  If you fail to do so, a default will be entered against you for the relief demanded in the Complaint or Petition.

### REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

Electronically Filed Marion Case #  16CA000167AX 03/09/2016 11:46:09 AM

Highly Confidential

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Human Resources, **MARION COUNTY COURTHOUSE, 110 N.W. FIRST AVENUE, OCALA, FLORIDA 34475, (904) 620-3582,** at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

WITNESS my hand and the seal of this Court on this the ⎵10⎵ day of March, 2016

DAVID R. ELLSPERMANN

Clerk of the Circuit Court

By

As Deputy Clerk

UNOFFICIAL DOCUMENT

Highly Confidential

BSA-PLAN_01422597

SA 0851

## IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los numbres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su centa, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted inviar por correo o entregar una copia de su respuesta a la persona denuminada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demandante).

"De acuerdo con el Acto o' Decreto de los Americanos con Impedimentos Inhabilitados, personas en necesidad del servicio especial para particpar en estee procedimiento deberan, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la oficina Administrativa de la Corte, Telefono (TDD) 1-800-955-8771 o Voice (V) 1-800-955-8770, via Florida Relay Service.

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger' vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immedits d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Highly Confidential

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities".  Les personnes en besoin d'une accomodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre demarche, contracter l'office administrative de la Court situe au le telephone ou Telefono (TDD) 1-800-955-8771 ou Voice (V) 1-800-955-8770, via Florida Relay Service.

**MORGAN & MORGAN, P.A.**
**POST OFFICE BOX 4979**
**20 NORTH ORANGE AVENUE, SUITE 1600**
**ORLANDO, FLORIDA 32802-4979**

UNOFFICIAL DOCUMENT

Case 5:20-cv-00069   Document 1-4   Filed 02/18/20   Page 60 of 805 PageID 237

## <u>RETURN OF SERVICE</u>

| | | |
|---|---|---|
| State of Florida | County of Marion | Circuit Court |

Case Number: 2016-CA-167



ALS2016001974

Plaintiff:
A.A.,

vs.

Defendant
THE BOY SCOUTS OF AMERICA, et al.,

For:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 South Orange Ave.
Suite 1500
Orlando, FL 32801

Received by Attorney's Legal Services, Inc on the 16th day of March, 2016 at 6:58 pm to be served on **NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA C/O JACK L. SEARS, JR., REGISTERED AGENT, 521 S. Edgewood Avenue, Jacksonville, FL 32205**.

I, James Hendon, do hereby affirm that on the **21st day of March, 2016 at 11:00 am, I:**

served a CORPORATION by delivering a true copy of the **SUMMONS AND COMPLAINT FOR DAMAGES WITH EXHIBITS** with the date and hour of service endorsed thereon by me, to: **Jack Sears, Jr.** as Registered Agent for **NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA**, at the address of: **521 S. Edgewood Avenue, Jacksonville, FL 32205**, and informed said person of the contents therein, in compliance with state statutes.

Description of Person Served: Age: 60, Sex: M, Race/Skin Color: White, Height: 5'6, Weight: 190, Hair: Grey, Glasses: Y

I certify I am over the age of 18, have no interest in the above action, and am a Special Process Server in good standing in the judicial circuit in which the process was served and/or am otherwise duly authorized to have served process in the jurisdiciton where process was served. Notary Not Required Pursuant to FS. 92.525.

_____

**James Hendon**
Special Process Server# 409

**Attorney's Legal Services, Inc**
617 E Washington Street #2
Orlando, FL 32801
**(407) 839-4644**

Our Job Serial Number: ALS-2016001974
Ref: 1535377

Electronically Filed Marion Case # 16CA000167AX 03/29/2016 03:45:40 PM
Copyright © 1992-2016 Database Services, Inc. - Process Server's Toolbox V7.1d

Highly Confidential

BSA-PLAN_01422600

**SA 0854**

Filing # 38794695 E-Filed 03/09/2016 11:46:09 AM

## IN THE CIRCUIT COURT OF THE FIFTH
## JUDICIAL CIRCUIT IN AND FOR MARION
## COUNTY, FLORIDA

### CASE NO:  2016-CA-000167

A.A.,

        **Plaintiffs,**

vs.

THE BOY SCOUTS OF AMERICA,
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

        **Defendants.**

_____/

### SUMMONS

THE STATE OF FLORIDA:

To all and singular sheriffs of said state:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in the above-styled cause upon the Defendant:

**North Florida Council, Inc., Boy Scouts of America
c/o Registered Agent:  Jack L. Sears, Jr.
521 S. Edgewood Avenue
Jacksonville, FL  32205**

      Each Defendant is hereby required to serve written defenses to said Complaint on PAUL L. SANGIOVANNI, ESQUIRE, **Morgan & Morgan, P.A.,** 20 North Orange Avenue, Suite 1600, P.O. Box 4979, Orlando, Florida 32802-4979, Telephone: (407) 420-1414, within twenty (20) days after service of this Summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter.  If you fail to do so, a default will be entered against you for the relief demanded in the Complaint or Petition.

### REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

Electronically Filed Marion Case #  16CA000167AX 03/09/2016 11:46:09 AM

Highly Confidential

BSA-PLAN_01422601

**SA 0855**

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Human Resources, **MARION COUNTY COURTHOUSE, 110 N.W. FIRST AVENUE, OCALA, FLORIDA 34475, (904) 620-3582**, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

WITNESS my hand and the seal of this Court on this the _10_ day of March, 2016

DAVID R. ELLSPERMANN

Clerk of the Circuit Court

By _____
As Deputy Clerk

UNOFFICIAL DOCUMENT

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los numbres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su centa, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted inviar por correo o entregar una copia de su respuesta a la persona denuminada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demandante).

"De acuerdo con el Acto o' Decreto de los Americanos con Impedimentos Inhabilitados, personas en necesidad del servicio especial para particpar en este procedimiento deberan, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la oficina Administrativa de la Corte, Telefono (TDD) 1-800-955-8771 o Voice (V) 1-800-955-8770, via Florida Relay Service.

**IMPORTANT**

Des poursuites judiciaries ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger' vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities".  Les personnes en besoin d'une accomodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre demarche, contracter l'office administrative de la Court situe au le telephone ou Telefono (TDD) 1-800-955-8771 ou Voice (V) 1-800-955-8770, via Florida Relay Service.

**MORGAN & MORGAN, P.A.**
**POST OFFICE BOX 4979**
**20 NORTH ORANGE AVENUE, SUITE 1600**
**ORLANDO, FLORIDA 32802-4979**

BSA-PLAN_01422604
SA 0858

81910-5/RAG/61276276

<div align="center">

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

</div>

A.A.                                           CASE NO. 2016-CA-000167

    Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

    Defendant.
_____/

<div align="center">

**<u>NOTICE OF LACK OF PROSECUTION</u>**

</div>

    Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC, by and through the undersigned counsel and pursuant to Florida Rules of Civil Procedure 1.420(e), hereby files this Notice of Lack of Prosecution, stating as follows:

    1.    It appears on the face of the record that no activity by filing of pleadings, order of Court, or otherwise has occurred for a period of over ten (10) months immediately preceding service of this Notice, and no stay has been issued or approved by the court.

    2.    A review of the Court's docket indicates that the last record activity of any kind was the filing of the returned Summons on March 29, 2016. As such, there has been no record activity on this case since March 29, 2016. (See attached docket.)

    3.    Pursuant to Fla. R. Civ. P. 1.420(e), if no such record activity occurs within 60 days following the service of this Notice, and if no stay is issued or approved during such 60–day

Highly Confidential

CASE NO. 2016-CA-000167

period, this action may be dismissed by the court on its own motion or on the motion of any

interested person, whether a party to the action or not, after reasonable notice to the parties,

unless a party shows good cause in writing at least five (5) days before the hearing on any such

motion why the action should remain pending.

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, sheath@forthepeople.com; on this 6th day of November, 2017.

*/s/ Richards H. Ford*

Richards H. Ford, Esquire
Florida Bar No. 288391
Raychel A. Garcia, Esquire
Florida Bar No. 091096
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Silver Springs Shores Presbyterian
Church, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

- 2 -

Highly Confidential

BSA-PLAN_01422606
SA 0860



DAVID R. ELLSPERMANN
CLERK of the CIRCUIT COURT
and COMPTROLLER
MARION COUNTY, FLORIDA

New Search   Expand All

| Case Number | Filed Date | County | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|---|
| 422016CA000167CAAXXX [16CA000167AX] | 01/27/2016 | MARION | Circuit Civil 3-D | OPEN | No | Yes |

| Filing Date | Description | Active | Contested | Judgment Date |
|---|---|---|---|---|
| 01/27/2016 | OTHER NEGLIGENCE | YES | NO | - |

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| SCOTT, EDWARD L | JUDGE | | |
| A. A | PLAINTIFF | SANGIOVANNI, PAUL LOUIS | 513184 |
| THE BOY SCOUTS OF AMERICA | DEFENDANT | | |
| NORTH FLORIDA COUNCIL INC BOY | DEFENDANT | | |
| SILVER SPRINGS SHORES PRESBYTE | DEFENDANT | | |

**Dockets**

Page : 1    ALL ▾

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | 14 | 03/29/2016 | SUMMONS RETURNED SERVED ON NORTH FLORIDA COUNSEL INC BOY SCOUTS OF AMERICA | 5 |
| | 13 | 03/28/2016 | SUMMONS RETURNED SERVED FOR DEFT THE BOY SCOUTS OF AMERICA | 8 |
| | 12 | 03/10/2016 | SUMMONS ISSUED | 12 |
| | 7 | 03/09/2016 | Assessment 2 assessed at sum $30.00 | |
| | 8 | 03/09/2016 | Payment received: $30.00 Receipt Number XX 91210 | |
| | 9 | 03/09/2016 | EFILED SUMMONS | 4 |
| | 10 | 03/09/2016 | EFILED SUMMONS | 4 |
| | 11 | 03/09/2016 | EFILED SUMMONS | 4 |
| | 2 | 01/28/2016 | Judge: Assigned | |
| | 4 | 01/28/2016 | Payment received: $400.00 Receipt Number XX 76963 | |
| | 1 | 01/27/2016 | Case 422016CA000167CAAXXX Filed with Clerk on 1/27/2016 | |
| | 3 | 01/27/2016 | Assessment 1 assessed at sum $400.00 | |
| | 5 | 01/27/2016 | CIVIL COVER SHEET | 2 |
| | 6 | 01/27/2016 | PETITION/COMPLAINT | 26 |

**Judge Assignment History**

**Court Events**

**Financial Summary**

**Reopen History**

BSA-PLAN_01422607

SA 0861

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

### REQUEST FOR CASE MANAGEMENT CONFERENCE

      Plaintiff, A.A. ("Plaintiff"), by and through his undersigned counsel, pursuant to Florida

Rule of Civil Procedure 1.200(a), requests this Honorable Court schedule a Case Management

Conference in the above matter, and states as follows:

      1.     This is a cause of action arising out of the Defendants' negligence and breach of

fiduciary duty to Plaintiff.

      2.     It would be beneficial for all parties and the Court to conduct a Case Management

Conference to accomplish the following:

           A.  Coordinate and outline deadlines;

           B.  Schedule, order, expedite or limit discovery;

           C.  Require filing of preliminary stipulations if issues can be narrowed;

Electronically Filed Marion Case #  16CA000167AX 12/27/2017 02:42:45 PM

D.   Schedule other conferences or determine other matters that may aid in the disposition of this action.

WHEREFORE, Plaintiff, by and through his undersigned counsel, respectfully requests this Court schedule a Case Management Conference for the reasons set forth above.

Dated: December 27, 2017.        **MORGAN & MORGAN, P.A.**
                                 **Business Trial Group**

                                 _s/Paul L. SanGiovanni_
                                 **Paul L. SanGiovanni**
                                 Florida Bar No. 0513164
                                 20 North Orange Avenue, Suite 1600
                                 Orlando, Florida 32801
                                 Telephone: (407)418-6041
                                 Facsimile: (407)245-3394
                                 Primary E-mail: psangi@forthepeople.com
                                 Secondary E-mail sheath@forthepeople.com
                                 _Attorneys for Plaintiff_

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the December 27, 2017, I electronically filed the foregoing with the Clerk of the Court by using the Court's E-portal filing system, which will serve a notice of the electronic filing via e-mail to all counsel of record.

                                 _s/Paul L. SanGiovanni_
                                 **Paul L. SanGiovanni**

2

BSA-PLAN_01422609
SA 0863

IN THE CIRCUIT COURT OF THE 5TH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.

Plaintiff, A.A. ("Plaintiff"), pursuant to Florida Rule of Civil Procedure 1.350, propounds the following First Request for Production of Documents ("Request"), to Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC. ("Defendant"), and requests Defendant identify, produce, and permit inspection and copying of the documents and things requested within thirty (30) days from the date of service of this Request.

### I.    DEFINITIONS & INSTRUCTIONS

1.    All capitalized terms not otherwise defined in this Request shall have the meaning ascribed to them in the Complaint filed in this action.

2.    The term "Plaintiff" refers to Plaintiff, A.A.

Highly Confidential

3.   The terms "Defendant" or "you" or "your" refer to the Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., including, agents, or employees, all other persons acting or purporting to act on its behalf, experts, persons consulted concerning any factual matter or matters of opinion relating to any of the facts or issues involved in this action, and unless privileged, the party's attorney.

4.   The terms "document" or "documents" mean the original and all drafts or copies thereof which are different in any way from the original (whether by interlineation, receipt stamps notation, indication of copies sent or received, or otherwise) and all attached or annexed materials to any written, typewritten, handwritten, printed, graphic, photographic or recorded material, correspondence, telegrams, facsimiles, telexes, emails, memoranda, records of meetings, conferences, telephone or other communications, pamphlets, books, notes, reports, studies, transcripts, indexes, records, charts, tabulations, lists, analyses, graphs, diagrams, estimates, minutes, tapes, photographs and photographic films, sound recordings, phonograph records, video tapes, data compilations from which information can be obtained or can be translated into a form reasonably usable, computer data files, tapes, electronic media, inputs or outputs, and other computer-readable records or programs, all electronically stored or created data, whether written, typed, printed, punched, filmed, marked in any way, data or information stored in any form readable or accessible by computer including, but not limited to, magnetic tape storage media, hard disks, hard drives, floppy disks, compact disks, computer tapes, memory and magnetic tapes of any kind, backup copies and "deleted" files on any computer storage device or media, including the printed output of any such electronic data/communications processing equipment or magnetically stored information, computer memory, optical media, magneto media, and other physical media on which notations or making

2

BSA-PLAN_01422611
SA 0865

of any kind can be affixed whether located on-site or off-site.  All drafts, copies or preliminary materials which are different in any way from the executed or final documents shall be considered to be additional documents as the terms are used herein.

5.     The term "communication(s)" shall mean every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or face-to-face, or by telephone, mail, e-mail, computer disk, telecopy or facsimile, personal delivery, documents, or otherwise.

6.     The term "person" means any natural person, any business entity (whether a corporation, partnership, or other business association), any government or political subdivision thereof, or governmental body, commission board, agency, bureau, or department.

7.     The phrase "reflecting or relating to" or any variant thereof means constitutes, embodies, comprises, reflects, discusses, identifies, states, comments on, responds to, describes, analyzes, contains information concerning, or is any way related, connected, associated, or pertinent to the stated subject matter.

8.     THIS DOCUMENT REQUEST ENCOMPASSES ALL COMPUTER RECORDS OR FILES ON ANY COMPUTERS, EQUIPMENT, MACHINERY, OR FILES IN YOUR ACTUAL OR CONSTRUCTIVE POSSESSION, CUSTODY, CARE, OR CONTROL (COLLECTIVELY "ELECTRONICALLY STORED INFORMATION" OR "ESI"). ACCORDINGLY, EVEN IF A PARTICULAR DOCUMENT WAS DELETED, PURGED, OR ARCHIVED, THIS DOCUMENT REQUEST REQUIRES A DILIGENT SEARCH OF ANY AND ALL COMPUTER RECORDS, HARD DRIVES, DISKS, DISKETTES, FLOPPY DISKS, OR OTHER STORAGE MEDIUM ON WHICH ANY DOCUMENT OR ANY INFORMATION REQUESTED HEREIN MIGHT RESIDE OR BE FOUND, SPECIFICALLY

3

BSA-PLAN_01422612
SA 0866

INCLUDING ALL BACKUP FILES OR ANY DRIVE CONTAINING ANY BACKUP OR COPY OF ANY DOCUMENTS REQUESTED HEREIN.

9.      The form of production of any ESI shall be in its native file format with metadata intact or in an equally useable format.  If you intend to produce any ESI in a format other than native file format with metadata intact, please contact counsel for Plaintiff prior to production of the ESI to discuss an acceptable format for production.

10.     To the extent that you consider any of the following requests objectionable, respond to so much of each, and each part thereof, which is not objectionable in your view, and separately state that part of each which is objectionable and the ground for each objection.

11.     If you object to any request or part thereof on the basis of a claim of attorney-client, work product, or any other privilege(s), identify the privilege claimed as well and provide the following with respect to each such document statement or communication:

    a.   the date thereof;

    b.   identify all persons present, if an oral communication, or all persons who received a copy of such communication if written; and

    c.   the basis on which the privilege is claimed.

## II.      DOCUMENT REQUESTS

1.      All documents and communications between you and Plaintiff.

2.      All documents and communications reflecting or relating to Plaintiff.

3.      All documents reflecting or relating to complaints made against George Fout.

4.      All documents reflecting or relating to complaints of sexual abuse against George Fout.

<p style="text-align:center">4</p>

BSA-PLAN_01422613
SA 0867

5. All documents reflecting or relating to any background report performed on George Fout.

6. All documents and communications reflecting or relating to any of the issues described in the Complaint filed in this action.

Dated: December 27, 2017.

**MORGAN & MORGAN, P.A.**
**Business Trial Group**

*/s/ Paul L. SanGiovanni*
**Paul L. SanGiovanni**
Florida Bar Number 0513164
Morgan & Morgan, P.A.
20 N. Orange Ave., 15th Floor
Orlando, FL 32801
Telephone: (407) 418-6041
Facsimile: (407) 245-3394
Primary: psangi@forthepeople.com
Primary: jrmoore@forthepeople.com
Secondary: sheath@forthepeople.com
*Attorney for Plaintiff*

UNOFFICIAL DOCUMENT

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 20, 2017, I electronically filed the foregoing with the Clerk of the Courts by using the Florida Courts eFiling Portal which will send electronic notification to: Richards H. Ford, Esq. and Rachel A. Garcia, Esq. (ORLcrtpleadings@wickersmith.com).

*/s/ Paul L. SanGiovanni*
Paul L. SanGiovanni

Filing # 65859618 E-Filed 12/27/2017 02:42:45 PM

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

     Defendants.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO
## DEFENDANT NORTH FLORIDA COUNCIL, INC.

    Plaintiff, A.A. ("Plaintiff"), pursuant to Florida Rule of Civil Procedure 1.350, propounds the following First Request for Production of Documents ("Request"), to Defendant, NORTH FLORIDA COUNCIL, INC. ("Defendant"), and requests Defendant identify, produce, and permit inspection and copying of the documents and things requested within thirty (30) days from the date of service of this Request.

### I.    DEFINITIONS & INSTRUCTIONS

    1.    All capitalized terms not otherwise defined in this Request shall have the meaning ascribed to them in the Complaint filed in this action.

    2.    The term "Plaintiff" refers to Plaintiff, A.A.

Electronically Filed Marion Case #  16CA000167AX 12/27/2017 02:42:45 PM

Highly Confidential

3.     The terms "Defendant" or "you" or "your" refer to the Defendant, NORTH FLORIDA COUNCIL, INC., including, agents, or employees, all other persons acting or purporting to act on its behalf, experts, persons consulted concerning any factual matter or matters of opinion relating to any of the facts or issues involved in this action, and unless privileged, the party's attorney.

4.     The terms "document" or "documents" mean the original and all drafts or copies thereof which are different in any way from the original (whether by interlineation, receipt stamps notation, indication of copies sent or received, or otherwise) and all attached or annexed materials to any written, typewritten, handwritten, printed, graphic, photographic or recorded material, correspondence, telegrams, facsimiles, telexes, emails, memoranda, records of meetings, conferences, telephone or other communications, pamphlets, books, notes, reports, studies, transcripts, indexes, records, charts, tabulations, lists, analyses, graphs, diagrams, estimates, minutes, tapes, photographs and photographic films, sound recordings, phonograph records, video tapes, data compilations from which information can be obtained or can be translated into a form reasonably usable, computer data files, tapes, electronic media, inputs or outputs, and other computer-readable records or programs, all electronically stored or created data, whether written, typed, printed, punched, filmed, marked in any way, data or information stored in any form readable or accessible by computer including, but not limited to, magnetic tape storage media, hard disks, hard drives, floppy disks, compact disks, computer tapes, memory and magnetic tapes of any kind, backup copies and "deleted" files on any computer storage device or media, including the printed output of any such electronic data/communications processing equipment or magnetically stored information, computer memory, optical media, magneto media, and other physical media on which notations or making

2

BSA-PLAN_01422616

SA 0870

of any kind can be affixed whether located on-site or off-site.  All drafts, copies or preliminary materials which are different in any way from the executed or final documents shall be considered to be additional documents as the terms are used herein.

5.      The term "communication(s)" shall mean every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or face-to-face, or by telephone, mail, e-mail, computer disk, telecopy or facsimile, personal delivery, documents, or otherwise.

6.      The term "person" means any natural person, any business entity (whether a corporation, partnership, or other business association), any government or political subdivision thereof, or governmental body, commission board, agency, bureau, or department.

7.      The phrase "reflecting or relating to" or any variant thereof means constitutes, embodies, comprises, reflects, discusses, identifies, states, comments on, responds to, describes, analyzes, contains information concerning, or is any way related, connected, associated, or pertinent to the stated subject matter.

8.      THIS DOCUMENT REQUEST ENCOMPASSES ALL COMPUTER RECORDS OR FILES ON ANY COMPUTERS, EQUIPMENT, MACHINERY, OR FILES IN YOUR ACTUAL OR CONSTRUCTIVE POSSESSION, CUSTODY, CARE, OR CONTROL (COLLECTIVELY "ELECTRONICALLY STORED INFORMATION" OR "ESI"). ACCORDINGLY, EVEN IF A PARTICULAR DOCUMENT WAS DELETED, PURGED, OR ARCHIVED, THIS DOCUMENT REQUEST REQUIRES A DILIGENT SEARCH OF ANY AND ALL COMPUTER RECORDS, HARD DRIVES, DISKS, DISKETTES, FLOPPY DISKS, OR OTHER STORAGE MEDIUM ON WHICH ANY DOCUMENT OR ANY INFORMATION REQUESTED HEREIN MIGHT RESIDE OR BE FOUND, SPECIFICALLY

3

Highly Confidential

BSA-PLAN_01422617

SA 0871

INCLUDING ALL BACKUP FILES OR ANY DRIVE CONTAINING ANY BACKUP OR COPY OF ANY DOCUMENTS REQUESTED HEREIN.

9.      The form of production of any ESI shall be in its native file format with metadata intact or in an equally useable format.  If you intend to produce any ESI in a format other than native file format with metadata intact, please contact counsel for Plaintiff prior to production of the ESI to discuss an acceptable format for production.

10.      To the extent that you consider any of the following requests objectionable, respond to so much of each, and each part thereof, which is not objectionable in your view, and separately state that part of each which is objectionable and the ground for each objection.

11.      If you object to any request or part thereof on the basis of a claim of attorney-client, work product, or any other privilege(s), identify the privilege claimed as well and provide the following with respect to each such document statement or communication:

    a.   the date thereof;

    b.   identify all persons present, if an oral communication, or all persons who received a copy of such communication if written; and

    c.   the basis on which the privilege is claimed.

## II.      DOCUMENT REQUESTS

1.      All documents and communications between you and Plaintiff.

2.      All documents and communications reflecting or relating to Plaintiff.

3.      All documents reflecting or relating to complaints made against George Fout.

4.      All documents reflecting or relating to complaints of sexual abuse against George Fout.

4

BSA-PLAN_01422618

SA 0872

5.      All documents reflecting or relating to any background report performed on George Fout.

6.      All documents and communications reflecting or relating to any of the issues described in the Complaint filed in this action.

Dated: December 27, 2017.

**MORGAN & MORGAN, P.A.**
**Business Trial Group**

*/s/ Paul L. SanGiovanni*
**Paul L. SanGiovanni**
Florida Bar Number 0513164
Morgan & Morgan, P.A.
20 N. Orange Ave., 15th Floor
Orlando, FL 32801
Telephone: (407) 418-6041
Facsimile: (407) 245-3394
Primary:  psangi@forthepeople.com
Primary:  jrmoore@forthepeople.com
Secondary:  sheath@forthepeople.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 20, 2017, I electronically filed the foregoing with the Clerk of the Courts by using the Florida Courts eFiling Portal which will send electronic notification to: Richards H. Ford, Esq. and Rachel A. Garcia, Esq. (ORLcrtpleadings@wickersmith.com).

*/s/ Paul L. SanGiovanni*
Paul L. SanGiovanni

5

Highly Confidential

BSA-PLAN_01422619
**SA 0873**

IN THE CIRCUIT COURT OF THE 5TH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT THE BOY SCOUTS OF AMERICA

Plaintiff, A.A. ("Plaintiff"), pursuant to Florida Rule of Civil Procedure 1.350, propounds the following First Request for Production of Documents ("Request"), to Defendant, BOY SCOUTS OF AMERICA ("Defendant"), and requests Defendant identify, produce, and permit inspection and copying of the documents and things requested within thirty (30) days from the date of service of this Request.

### I.    DEFINITIONS & INSTRUCTIONS

1.    All capitalized terms not otherwise defined in this Request shall have the meaning ascribed to them in the Complaint filed in this action.

2.    The term "Plaintiff" refers to Plaintiff, A.A.

Highly Confidential

3.      The terms "Defendant" or "you" or "your" refer to the Defendant, BOY SCOUTS OF AMERICA, including, agents, or employees, all other persons acting or purporting to act on its behalf, experts, persons consulted concerning any factual matter or matters of opinion relating to any of the facts or issues involved in this action, and unless privileged, the party's attorney.

4.      The terms "document" or "documents" mean the original and all drafts or copies thereof which are different in any way from the original (whether by interlineation, receipt stamps notation, indication of copies sent or received, or otherwise) and all attached or annexed materials to any written, typewritten, handwritten, printed, graphic, photographic or recorded material, correspondence, telegrams, facsimiles, telexes, emails, memoranda, records of meetings, conferences, telephone or other communications, pamphlets, books, notes, reports, studies, transcripts, indexes, records, charts, tabulations, lists, analyses, graphs, diagrams, estimates, minutes, tapes, photographs and photographic films, sound recordings, phonograph records, video tapes, data compilations from which information can be obtained or can be translated into a form reasonably usable, computer data files, tapes, electronic media, inputs or outputs, and other computer-readable records or programs, all electronically stored or created data, whether written, typed, printed, punched, filmed, marked in any way, data or information stored in any form readable or accessible by computer including, but not limited to, magnetic tape storage media, hard disks, hard drives, floppy disks, compact disks, computer tapes, memory and magnetic tapes of any kind, backup copies and "deleted" files on any computer storage device or media, including the printed output of any such electronic data/communications processing equipment or magnetically stored information, computer memory, optical media, magneto media, and other physical media on which notations or making of any kind can be affixed whether located on-site or off-site.  All drafts, copies or preliminary

2

Highly Confidential

BSA-PLAN_01422621

SA 0875

materials which are different in any way from the executed or final documents shall be considered to be additional documents as the terms are used herein.

5.     The term "communication(s)" shall mean every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or face-to-face, or by telephone, mail, e-mail, computer disk, telecopy or facsimile, personal delivery, documents, or otherwise.

6.     The term "person" means any natural person, any business entity (whether a corporation, partnership, or other business association), any government or political subdivision thereof, or governmental body, commission board, agency, bureau, or department.

7.     The phrase "reflecting or relating to" or any variant thereof means constitutes, embodies, comprises, reflects, discusses, identifies, states, comments on, responds to, describes, analyzes, contains information concerning, or is any way related, connected, associated, or pertinent to the stated subject matter.

8.     THIS DOCUMENT REQUEST ENCOMPASSES ALL COMPUTER RECORDS OR FILES ON ANY COMPUTERS, EQUIPMENT, MACHINERY, OR FILES IN YOUR ACTUAL OR CONSTRUCTIVE POSSESSION, CUSTODY, CARE, OR CONTROL (COLLECTIVELY "ELECTRONICALLY STORED INFORMATION" OR "ESI"). ACCORDINGLY, EVEN IF A PARTICULAR DOCUMENT WAS DELETED, PURGED, OR ARCHIVED, THIS DOCUMENT REQUEST REQUIRES A DILIGENT SEARCH OF ANY AND ALL COMPUTER RECORDS, HARD DRIVES, DISKS, DISKETTES, FLOPPY DISKS, OR OTHER STORAGE MEDIUM ON WHICH ANY DOCUMENT OR ANY INFORMATION REQUESTED HEREIN MIGHT RESIDE OR BE FOUND, SPECIFICALLY

3

BSA-PLAN_01422622

SA 0876

INCLUDING ALL BACKUP FILES OR ANY DRIVE CONTAINING ANY BACKUP OR COPY OF ANY DOCUMENTS REQUESTED HEREIN.

9.      The form of production of any ESI shall be in its native file format with metadata intact or in an equally useable format.  If you intend to produce any ESI in a format other than native file format with metadata intact, please contact counsel for Plaintiff prior to production of the ESI to discuss an acceptable format for production.

10.      To the extent that you consider any of the following requests objectionable, respond to so much of each, and each part thereof, which is not objectionable in your view, and separately state that part of each which is objectionable and the ground for each objection.

11.      If you object to any request or part thereof on the basis of a claim of attorney-client, work product, or any other privilege(s), identify the privilege claimed as well and provide the following with respect to each such document statement or communication:

    a.   the date thereof;

    b.   identify all persons present, if an oral communication, or all persons who received a copy of such communication if written; and

    c.   the basis on which the privilege is claimed.

## II.      DOCUMENT REQUESTS

1.      All documents and communications between you and Plaintiff.

2.      All documents and communications reflecting or relating to Plaintiff.

3.      All documents reflecting or relating to complaints made against George Fout.

4.      All documents reflecting or relating to complaints of sexual abuse against George Fout.

Highly Confidential

BSA-PLAN_01422623

SA 0877

5.     All documents reflecting or relating to any background report performed on George Fout.

6.     All documents and communications reflecting or relating to any of the issues described in the Complaint filed in this action.

Dated: December 27, 2017.

                                         **MORGAN & MORGAN, P.A.**
                                         **Business Trial Group**

                                         */s/ Paul L. SanGiovanni*
                                         **Paul L. SanGiovanni**
                                         Florida Bar Number 0513164
                                         Morgan & Morgan, P.A.
                                         20 N. Orange Ave., 15th Floor
                                         Orlando, FL  32801
                                         Telephone: (407) 418-6041
                                         Facsimile: (407) 245-3394
                                         Primary:  psangi@forthepeople.com
                                         Primary:  jrmoore@forthepeople.com
                                         Secondary:  sheath@forthepeople.com
                                         *Attorney for Plaintiff*

                         <u>**CERTIFICATE OF SERVICE**</u>

    I HEREBY CERTIFY that on December 20, 2017, I electronically filed the foregoing with the Clerk of the Courts by using the Florida Courts eFiling Portal which will send electronic notification to:   Richards   H.   Ford,   Esq.   and   Rachel   A.   Garcia,   Esq. (ORLcrtpleadings@wickersmith.com).

                                         */s/ Paul L. SanGiovanni*
                                         Paul L. SanGiovanni

5

Highly Confidential

BSA-PLAN_01422624
**SA 0878**

Filing # 66217946 E-Filed 01/08/2018 11:36:47 AM

42104

IN THE CIRCUIT OF THE 5TH JUDICIAL
CIRCUIT COURT IN AND FOR MARION
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A. A.,

    Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business
in Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation authorized
to do business in Florida,

    Defendants.
_____/

## NOTICE OF APPEARANCE

    Please take notice that WILLIAM S. REESE of the law firm of LANE, REESE & SUMMERS, P.A. enters an appearance as counsel in the above styled case on behalf of Defendant, THE BOY SCOUTS OF AMERICA.

## CERTIFICATE OF SERVICE

    WE HEREBY CERTIFY that a true copy of the foregoing was e-mailed January 8, 2016 to: Paul L. SanGiovanni, Morgan & Morgan, P. A., 20 North Orange Avenue, 15th Floor Orlando, FL, 32801; psangi@forthepeople.com; jrmoore@forthepeople.com; Richard H. Ford, Esq; and Rachel A. Garcia, Esq; ORL.crtpleadings@wichersmith.com.

LANE, REESE, & SUMMERS, P.A.
2600 Douglas Road
Douglas Centre, Suite 401
Coral Gables, FL 33134
(305) 444-4418
Wreese@lanereese.com

By: _____
William S. Reese, Esq.
Florida Bar No. 18718

LANE, REESE & SUMMERS, P.A.
2600 Douglas Road, Suite 401, Coral Gables, Florida 33134 • (305) 444-4418

Highly Confidential

BSA-PLAN_01422625

SA 0879

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND
FOR MARION COUNTY, FLORIDA

CASE NO.: 16CA00167

A.A.,

      Plaintiff,

v.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

## ORDER SETTING CASE MANAGEMENT CONFERENCE AND MEDIATION ORDER

THIS CAUSE, having come before the court on the Plaintiff's Notice that Action is at Issue and Ready to be set for Trial, filed on or about January 3, 2018, and pursuant to Florida Rule of Civil Procedure 1.200(a)(2) (2013), therefore

It is ORDERED that:

1. A Case Management Conference shall be held on February 12, 2018, at 3:00 p.m. in Courtroom 2D, Marion County Judicial Center, 110 NW First Avenue, Ocala, Florida before the Honorable Edward L. Scott.

2. However, no later than **five (5) calendar days** prior to the scheduled hearing date, and after reviewing the attached 2016 Trial Weeks Calendar, the Parties may file a stipulation regarding the desired trial term and submit a copy to the Court. Upon the filing of this stipulation, the Case Management Conference will be deemed cancelled without further order of the Court.

**Page 1 of 3**

Electronically Filed Marion Case #  16CA000167AX 01/09/2018 01:26:06 PM

IT IS FURTHER ORDERED that, in accordance with the <u>Florida Rules of Civil</u> <u>Procedure</u> 1.700-1.730 (2013), this case is hereby referred to mediation.  The mediation shall take place prior to any scheduled Pretrial Conference.

1.      The parties shall immediately confer to select a mediator and to agree on the date, time and location of the mediation conference.  Plaintiff shall have ten (10) days from the date of this order to file a "Notice of Mediation Conference" with the clerk, indicating the date/time of the mediation and the selected mediator.

2.      It is preferred the parties agree upon the selection of a mediator.  If the parties are unable to agree on a mediator, Plaintiff's counsel shall submit a proposed order (with appropriate blanks) and a mediator will be selected by the Court from a list of certified mediators maintained by the Court Administrator's Office.

3.      THE GENERAL RULES GOVERNING MEDIATION ARE AS FOLLOWS:

   a.      The personal appearance of counsel who will try the case, and their clients (a management representative if a corporate party) with full authority to enter into a full and complete compromise and settlement, is <u>mandatory</u> unless excused by prior order of the Court.  An insured party must have a fully authorized representative (not the attorney) of the insurance company attend the mediation conference.

   b.      The Court will impose sanctions against any party who fails to attend or participate in good-faith settlement negotiations.  The parties shall devote such time as is necessary to settle or until an impasse is declared by the mediator.

   c.      The parties shall adhere to any/all instructions of the designated mediator regarding presenting summations to the mediator prior to the scheduled mediation.

Page 2 of 3

d.     All communications, discussions, representations and statements made at the conference shall be privileged settlement negotiations and nothing related to the conference shall be discoverable or admissible at trial.

e.     The parties are advised that nothing in this Order shall be construed as a continuance of any matter in this case.

per hour, or such other amount as agreed to by all parties for each hour of mediation, which cost shall be borne equally by the parties unless otherwise ordered.

5.     *The parties are advised that any mediation completed more than one calendar year from the date of a scheduled pretrial conference shall no longer be considered as a valid mediation and the parties will be required to attend another mediation prior to this court assigning a trial date.*

Dated this _____ day of _____, 2018.

EDWARD L. SCOTT
Circuit Court Judge

Cc:    All parties listed on e-portal

Page 3 of 3

Highly Confidential

BSA-PLAN_01422628

SA 0882

JUDGE EDWARD L. SCOTT'S

SECOND AMENDED 2018 PRETRIAL AND TRIAL SCHEDULE

| PRETRIAL | TRIAL TERM |
|---|---|
| | |
| NOVEMBER 21, 2017 @ 3:00 P.M. | JANUARY 8, 2018-JANUARY 12, 2018 |
| DECEMBER 18, 2017 @ 3:00 P.M. | FEBRUARY 5, 2018-FEBRUARY 9, 2018 |
| JANUARY 25, 2018 @ 3:00 P.M. | MARCH 5, 2018-MARCH 16, 2018 (2 WEEK TRIAL) |
| FEBRUARY 22, 2018 @ 3:00 P.M. | APRIL 9, 2018-APRIL 13, 2018 |
| MARCH 22, 2018 @ 3:00 P.M. | MAY 7, 2018-MAY11, 2018 |
| APRIL 26, 2018 @ 3:00 P.M. | JUNE 4, 2018-JUNE 15, 2018 (2 WEEK TRIAL) |
| MAY 24, 2018 @ 3:00 P.M. | JULY 9, 2018-JULY 13, 2018 |
| JUNE 21, 2018 @ 3:00 P.M. | JULY 30, 2018-AUGUST 3, 2018 |
| NO PRETRIALS IN JULY | NO TRIALS IN SEPTEMBER |
| AUGUST 23, 2018 @ 3:00 P.M. | OCTOBER 1, 2018-OCTOBER 12, 2018 |
| SEPTEMBER 27, 2018 @ 3:00 P.M. | NOVEMBER 5, 2018-NOVEMBER 9, 2018 |
| OCTOBER 25, 2018 @ 3:00 P.M. | DECEMBER 3, 2018-DECEMBER 14, 2018 |
| | |

***ALL TRIALS WILL BE SCHEDULED TO GO FOR THE FIRST TRIAL OF THE TRIAL TERM. IF THAT TRIAL TERM IS FULL, THEN YOUR CASE MAY BE BUMPED TO THE NEXT TRIAL TERM IN THE SAME MONTH OR BUMPED TO ANOTHER MONTH ENTIRELY. ALL DATES ARE SUBJECT TO CHANGE. ALL COUNSEL ARE TO KEEP THE COURT INFORMED IF YOUR CASE SHOULD SETTLE AT ANY TIME BY EMAILING BKNIPE@CIRCUIT5.ORG

Highly Confidential

Filing # 68328877 E-Filed 02/22/2018 01:59:56 PM

81910-5/nmd/61391182

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.                                    CASE NO. 2016-CA-000167

     Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

     Defendant.

_____/

## NOTICE OF UNAVAILABILITY

    NOTICE IS HEREBY GIVEN that the undersigned will be absent from the jurisdiction

and unavailable during these dates:

**July 22-29, 2018**

**September 20-October 4, 2018**

    The undersigned respectfully requests that no Motions, hearings, mediations, depositions,

or trials be scheduled and/or set during these time periods.

    The filing and service of this Notice shall constitute a notice to all parties that the

undersigned will move forward for appropriate relief, including a motion to be excused or

continue, as appropriate.

Electronically Filed Marion Case #  16CA000167AX 02/22/2018 01:59:56 PM

Highly Confidential

CASE NO. 2016-CA-000167

     WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, jrmoore@forthepeople.com; William S. Reese, Esquire,; on this 22nd day of February, 2018.

                  /s/ Richards H. Ford
                  Richards H. Ford, Esquire
                  Florida Bar No. 288391
                  WICKER SMITH O'HARA MCCOY & FORD, P.A.
                  Attorneys for Silver Springs Shores Presbyterian Church, Inc.
                  390 N. Orange Ave., Suite 1000
                  Orlando, FL 32801
                  Phone: (407) 843-3939
                  Fax: (407) 649-8118
                  ORLcrtpleadings@wickersmith.com

UNOFFICIAL DOCUMENT

2

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

A.A.                                       CIRCUIT CIVIL DIVISION

    Plaintiff,                          CASE NO. 2016-CA-000167

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

    Defendant.
_____/

## JOINT STIPULATION FOR ORDER STAYING CASE FOR 90 DAYS

    IT IS HEREBY STIPULATED that this case will be stayed for 90 days from the date of

the Order Granting the Stay and that the case shall not be set for trial, as the case is not at issue.

When the case is at issue, either party may notice the case for trial. Any applicable deadlines or

limitations shall be extended for the period of the stay.

    The parties further agree that Plaintiff will serve the Defendants responses to the pending

pre-suit discovery requests within 10 days of the signing of this stipulation.

    DATED: **February 28**, 20 **18**

WICKER SMITH O'HARA MCCOY          MORGAN & MORGAN, P.A. - ORLANDO
& FORD, P.A.                       Post Office Box 4979
390 N. Orange Ave., Suite 1000     Orlando, FL 32802
Orlando, FL 32801                  Phone: (407) 420-1414
Phone: (407) 843-3939              Fax:    (407) 245-3394
Fax:   (407) 649-8118

By: _____        By: _____
    Richards H. Ford, Esquire              Paul L. SanGiovanni, Esquire
    Florida Bar No. 288391                 Florida Bar No. 313164

Highly Confidential

CASE NO. 2016-CA-000167

LANE, REESE & SUMMERS, P.A.
Douglas Centre, Suite 401
2600 Douglas Road
Coral Gables, FL 33134
Phone: (305) 444-4418
Fax:   (305) 444-5504

By: _____
       William S. Reese, Esquire
       Florida Bar No. 0187183

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, jrmoore@forthepeople.com; William S. Reese, Esquire, Wreese@lanereese.com; on this _28th_ day of _February_, 2018.

/s/ Richards H. Ford
Richards H. Ford, Esquire
Florida Bar No. 288391
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Silver Springs Shores Presbyterian
Church, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

2

Highly Confidential

BSA-PLAN_01422633
**SA 0887**