# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| Boy Scouts of America and Delaware BSA, LLC,[1] | Bankruptcy Case No. 20-10343 (LSS) (Jointly Administered) |
| Debtors. | |
| National Union Fire Insurance Co. of Pittsburgh, PA, *et al*., | Lead Case No. 22-cv-01237-RGA |
| Appellants. | Consolidated Case Nos. 22-cv-01238-RGA; |
| v. | 22-cv-01239-RGA; 22-cv-01240-RGA; |
| Boy Scouts of America and Delaware BSA, LLC, *et al*., | 22-cv-01241-RGA; 22-cv-01242-RGA; 22-cv-01243-RGA; |
| Appellees. | 22-cv-01244-RGA; 22-cv-01245-RGA; 22-cv-01246-RGA; 22-cv-01247-RGA; 22-cv-01249-RGA; 22-cv-01250-RGA; 22-cv-01251-RGA; 22-cv-01252-RGA; 22-cv-01258-RGA; 22-cv-01263-RGA |

## DEBTORS-APPELLEES' APPENDIX TO CONSOLIDATED ANSWERING BRIEF: VOLUME 5 (SA 0888 THROUGH SA 1360)

Dated: December 7, 2022

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
Glenn M. Kurtz (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
jessica.lauria@whitecase.com
gkurtz@whitecase.com

WHITE & CASE LLP
Michael C. Andolina
Matthew E. Linder
Laura E. Baccash
Blair M. Warner
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
mandolina@whitecase.com
mlinder@whitecase.com
laura.baccash@whitecase.com
blair.warner@whitecase.com

WHITE & CASE LLP
Ronald K. Gorsich
Doah Kim
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone:  (213) 620-7700
rgorsich@whitecase.com
doah.kim@whitecase.com

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
dabbott@morrisnichols.com
aremming@morrisnichols.com
ptopper@morrisnichols.com

*Counsel for Debtors-Appellees and Debtors in Possession*

## INDEX OF SUPPLEMENTAL DOCUMENTS

| BSA Records | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| List of Current Members of the NEB (Exhibit B to Desai Declaration) | 1-191 | SA 0001 – SA 0004 |
| List of Current Members of the NEC (Exhibit E to Desai Declaration) | 1-192 | SA 0005 – SA 0007 |
| BSA Charter and Bylaws (as amended through May 2021) | 468 | SA 0008 – SA 0035 |
| Rules and Regulations of the Boy Scouts of America (September 2020) | 291 | SA 0036 – SA 0059 |
| Local Council Charter Renewals (Excerpt) | 7-3 | SA 0060 – SA 0063 |
| 2010 Articles of Incorporation Template (Mobile Area Council Articles of Incorporation, Art. II. Duration) | 187 | SA 0064 – SA 0067 |
| Form of Annual Unit Charter Agreement (2020) | 264 | SA 0068 – SA 0069 |
| BSA Bylaws (June 1, 2019) | 234 | SA 0070 – SA 0095 |
| Local Council Charter Renewal for Greenwich NR A2 (January 15, 2020) | 2976 | SA 0096 |
| Troop Roster for Troop 172 (Patriots Path Council) (Redacted) | 17 | SA 0097 – SA 0106 |
| Troop Roster for Sanford Troop 37 (Abraham Lincoln Council) (Redacted) | 23 | SA 0107 – SA 0108 |

| | | |
|---|---|---|
| Examples and Templates of Local Council Articles & Bylaws | 7-2 | SA 0109 – SA 0373 |
| Troop Roster for Pack C-3210 (Cape Fear Council) (Redacted) | 43 | SA 0374 – SA 0377 |

| Proofs of Claim | Appendix Page Nos. |
|---|---|
| Proof of Claim No. 8174 | SA 0378 – SA 0387 |
| Proof of Claim No. 639 | SA 0388 – SA 0390 |
| Proof of Claim No. 4971 | SA 0391 – SA 0405 |
| Proof of Claim No. 9558 | SA 0406 – SA 0408 |
| Proof of Claim No. 9430 | SA 0409 – SA 0412 |
| Proof of Claim No. 9511 | SA 0413 – SA 0416 |
| Proof of Claim No. 12203 | SA 0417 – SA 0424 |
| Proof of Claim No. 5113 | SA 0425 – SA 0428 |
| Proof of Claim No. 10390 | SA 0429 – SA 0433 |
| Proof of Claim No. 12530 | SA 0434 – SA 0449 |
| Proof of Claim No. 1248 | SA 0450 – SA 0452 |
| Proof of Claim No. 9123 | SA 0453 – SA 0462 |
| Proof of Claim No. 7826 | SA 0463 – SA 0466 |

| | |
|---|---|
| Proof of Claim No. 343-13 | SA 0467 – SA 0469 |
| Proof of Claim No. 343-26 | SA 0470 – SA 0472 |
| Proof of Claim No. 6346 | SA 0473 – SA 0477 |

| State and Federal Litigation Documents | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| Illinois Complaint filed by National Surety | 162 | SA 0478 – SA 0493 |
| Texas Complaint against Century, National Surety and Allianz | 185 | SA 0494 – SA 0515 |
| Texas Complaint against Hartford | 181 | SA 0516 – SA 0528 |
| Third Amended Complaint: *John Does I-XIX v. Boy Scouts of America, Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, et al.* (District Court for the District of Idaho, No. 1:13-cv-00275-BLW) | 2912 | SA 0529 – SA 0587 |
| Trial by Jury Demand: *Plaintiffs v. Boy Scouts of America Corporation, Mobile Area Council Boy Scouts of America, et al.* (Circuit Court of Mobile County, Alabama, No. CV-2016) | 2920 | SA 0588 – SA 0617 |
| Notice of Removal: *A.A. v. the Boy Scouts of America, North Florida Council, Inc., Boy Scouts of America, et al.* (District Court for the Middle of District of Florida Ocala Division) | 2921 | SA 0618 – SA 1601 |
| Verified Complaint for Damages and Equitable Relief: *Plaintiff v. Roman Catholic Archbishop, et al.* (Superior Court of Guam, No. CV 0207-17) | 2910 | SA 1602 – SA 1613 |
| Complaint: *John Doe v. Boy Scouts of America; and Central Minnesota Council, Boy Scouts of America* (State of Minnesota County of Stearns, District Court, Seventh Judicial District, No. []) | 2913 | SA 1614 – SA 1638 |

| Documents filed in *In re Archbishop of Agana* ("AOA"), Case No. 19-00010 (Bankr. D. Guam) | AOA Docket No. | Appendix Page Nos. |
|---|---|---|
| Motion for Derivative Standing to Enforce the Automatic Stay and Take Other Actions | 616 | SA 1639 – SA 1659 |

| | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| Transcript of Hearing Held September 10, 2021 | 693 | SA 1660 – SA 1681 |
| Third Amended Chapter 11 Plan | 920 | SA 1682 – SA 1818 |
| BSA's Objection and Reservation of Rights to Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization for the Archbishop of Agana | 948 | SA 1819 – SA 1836 |
| BSA's Objection to and Reservation of Rights to Debtors Motion Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order (1) Approving Settlement Agreement Among the Archdiocese, the AOA Entities, the Official Committee of Unsecured Creditors, and AIG Insurers Entities, (2) Approving the Archdioceses Sale of the Policies Issued to the Debtor Back to AIG Insurers Entities Free and Clear of Claims and Interests, and (3) Enjoining Assertion Of Claims Against AIG Insurers Entities | 989 | SA 1837 – SA 1866 |
| Order Granting 218 Stipulated Motion for Order Directing Mediation and Appointing the Honorable Robert J. Faris to Serve as Mediator | 227 | SA 1867 – SA 1868 |
| Transcript of Hearing Held October 4, 2022 | 1092 | SA 1869 – SA 1924 |
| Fifth Amended Chapter 11 Plan | 1044 | SA 1925 – SA 2116 |
| Order Approving Stipulation By and Between Debtor, Official Committee of Unsecured Creditors and Boy Scouts of America Regarding the BSA Plan Objection and Claim Objection | 1048 | SA 2117 – SA 2126 |
| Order Confirming Fifth Amended Joint Chapter 11 Plan of Reorganization | 1093 | SA 2127 – SA 2139 |
| Minute Entry Regarding September 10 Hearing | 690 | SA 2140 |

| Other Exhibits Admitted at Trial | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| Email from Jeff Hunt to Wendy Kurten, et al. | 725 | SA 2141 – SA 2145 |
| Attachment to email: Change-Pro Redline of Claims Allowance Procedures | 502 | SA 2146 – SA 2175 |

6

| | | |
|---|---|---|
| Attachment to email: Claims Allowance Procedures | 527 | SA 2176 – SA 2195 |
| Email from Debtors regarding BSA - Preliminary Comments on Draft CAP sent to Coalition, FCR, and Mediator | 529 | SA 2196 |
| Attachment to email: BSA Redline of Claims Allowance Procedures (comparing June 8, 2021 version to June 6, 2021 version) | 533 | SA 2197 – SA 2245 |
| Attachment to email: Change-Pro Redline of Claims Allowance Procedures (comparing version 3 and version 4) | 537 | SA 2246 – SA 2466 |
| Attachment to email: Change-Pro Redline of Claims Allowance Procedures (comparing version 3 and version 1) | 539 | SA 2267 – SA 2290 |
| Plaintiff John Doe 4's First Amended Complaint: *John Doe 4 v. Boy Scouts of America, Chicago Area Council, et al.* (Circuit Court of Cook County, Illinois, No. 2018 L 211) | 2911 | SA 2291 – SA 2356 |
| Complaint Fraud and Constructive Fraud: *John Doe XX, et al. v. Boy Scouts of America, Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, et al.* (District Court for the District of Idaho) | 2914 | SA 2357 – SA 2380 |
| Redacted Second Revised Complaint: *John Doe #1, et al. v. Boy Scouts of America Corporation, Fairfield County Council of the Boy Scouts of America, et al.* (Superior Court, Connecticut, J.D. of Stamford/Norwalk at Stamford, No. FST-cv-15-5015023-S) | 2916 | SA 2381 – SA 2456 |

| Insurance Policies | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| Hartford Pine Tree Council Casualty Insurance Policy No. 04C157992 | 1154 | SA 2457 – SA 2491 |
| Hartford Fire Insurance Co. Policy No. 12CCP500098 | 1155 | SA 2492 – SA 2547 |
| INA Policy No. 15-12-11 | 4000-1 | SA 2548 – SA 2599 |
| Allianz 1980 Umbrella Policy No. UMB 599346 | 10-1 | SA 2600 – SA 2620 |

| | | |
|---|---|---|
| Old Republic Insurance Company Commercial Excess Liability Insurance Policy for period of March 1, 2017 to March 1, 2018 | 10-7 | SA 2621 – SA 2664 |
| INA Policy No. 70-64-52 | 4000-2 | SA 2665 – SA 2700 |
| Hartford Insurance Policy | 4000-10 | SA 2701 – SA 3081 |
| INA Policy No. 07-54-09-4 | 4000-4 | SA 3082 – SA 3164 |
| INA Policy No. 4-84-03 | 4000-6 | SA 3165 – SA 3188 |
| Hartford Insurance Policy No. 10 C A43303 | 4000-8 | SA 3189 – SA 3332 |
| Hartford Insurance Policy | 4000-9 | SA 3333 – SA 3571 |
| Hartford Insurance Policy No. CBP 109170 | 4000-11 | SA 3572 – SA 3644 |
| Hartford Insurance Policy No. 54 C 990478 | 4000-12 | SA 3645 – SA 3673 |
| Hartford Insurance Policy No. 32 HU 380257 | 4000-13 | SA 3674 – SA 3684 |

| Appendix Documents Filed Under Seal | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| Initial Hartford Settlement Agreement | 1481 | SA 3685 – SA 3696 |
| Proof of Claim No. 87715 | N/A | SA 3697 – SA 3789 |

| Illinois Century Answer | 202 | SA 3790 – SA 3821 |
|---|---|---|

| Multimedia Documents to be Lodged with the Court[2] | Joint Trial Exhibit No. | Appendix Page Nos. |
|---|---|---|
| BSA and Local Council Insurance Policies | 10 | SA 3822 |
| All Proofs of Claim | 14 | SA 3823 |
| Settled and Unsettled Local Council Policy Information (Excel Format) | 2961 | SA 3824 |

---

[2] The following documents cannot be filed on the Court's docket due to their size or file format. The Appellees will make these documents available to the Court and the parties. For purposes of citing these documents in the Debtors-Appellees' Consolidated Answering Brief, the Appellees have assigned these documents appendix page numbers in accordance with the "SA___" convention.

81910-5

## IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
## IN AND FOR MARION COUNTY, FLORIDA

A.A.                                          CIRCUIT CIVIL DIVISION

     Plaintiff,                          CASE NO. 2016-CA-000167

vs.

THE BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, the
NORTH FLORIDA COUNCIL,
INC., BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, and
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC,
a corporation authorized to do
business in Florida,

     Defendant.

_____/

### AGREED ORDER GRANTING 90 DAY STAY

    THIS CAUSE came on before the Court upon the parties' Joint Stipulation for Order

Granting 90 Day Stay, and the Court being otherwise fully advised in the premises, it is

    CONSIDERED, ORDERED and ADJUDGED that the case is stayed for 90 days from

the date of this Order. The case will not be set for trial at this time as it is not currently at issue.

Once the case is at issue, the parties may notice the case for trial.

    FURTHER ADJUDGED that any applicable deadlines or limitations shall be stayed

pending for the period of the stay.

    DONE AND ORDERED at Ocala, Marion County, Florida, this _12_ day of

_March_, 20_18_.

_Edward L. Scott_

Honorable Edward L. Scott

Highly Confidential

BSA-PLAN_01422634

**SA 0888**

CASE NO. 2016-CA-000167

COPIES FURNISHED TO:

Paul L. SanGiovanni, Esquire
Morgan & Morgan, P.A. - Orlando
Post Office Box 4979
Orlando, FL  32802-4979

William S. Reese, Esquire
LANE, REESE & SUMMERS, P.A.
Douglas Centre, Suite 401
2600 Douglas Road
Coral Gables, FL  33134

Richards H. Ford, Esquire
WICKER SMITH O'HARA McCOY & FORD, P.A.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801

*A.A. v. Silver Springs Shores Presbyterian Church, Inc.*
Case No.:  2016-CA-000167
**AGREED ORDER GRANTING 90 DAY STAY OF DISCOVERY**
Page 2 of 2

Highly Confidential

BSA-PLAN_01422635

SA 0889

Case 5:20-cv-00068   Document 1-4   Filed 02/18/20   Page 96 of 805 PageID 273

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

     Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, et al.,

     Defendants.

_____/

## NOTICE OF UNAVAILBILITY

**PLEASE TAKE NOTICE** the undersigned counsel, Paul L. SanGiovanni
("SanGiovanni"), will be unavailable from May 31, 2018 through and including June 11, 2018.
During this time, SanGiovanni will be out of the country on a mission trip in the Dominican
Republic with no regular access to communication, including email or telephone.

SanGiovanni respectfully requests that no proceedings, including hearings, depositions or
court appearances be set or scheduled during this period which would require his presence.

Dated: April 2, 2018.


_/s/ Paul L. SanGiovanni_____
Paul L. SanGiovanni, Attorney at law
Florida Bar Number 0513164
**MORGAN & MORGAN, P.A.**
**Business Trial Group**
20 North Orange Ave., 15th Floor


Electronically Filed Marion Case #  16CA000167AX 04/02/2018 09:53:40 AM

Highly Confidential

BSA-PLAN_01422636

**SA 0890**

Orlando, FL  32801
Telephone:   (407) 420-1414
Facsimile:   (407) 245-3394
Primary:    psangi@forthepeople.com
Secondary:   mtodd@forthepeople.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2018, I electronically filed the foregoing with the Clerk of the Court using the Court's E-Portal filing system, which will serve a notice of the electronic filing via e-mail to all counsel of record.

*/s/Paul L. SanGiovanni*
Paul L. SanGiovanni, Esq.

BSA-PLAN_01422637
SA 0891

42104

IN THE CIRCUIT OF THE 5TH JUDICIAL
CIRCUIT COURT IN AND FOR MARION
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A. A.,

    Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business
in Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation authorized
to do business in Florida,

    Defendants.

_____/

## NOTICE OF PRODUCTION FROM NON-PARTY

YOU ARE NOTIFIED that after fifteen (15) days from the date of service of this notice

the undersigned will issue the attached subpoena(s) directed to:

1. Dr. Frank Fusco
2. The Centers (Minor)
3. The Centers (Adult)
4. Kimberly Cottage Centers
5. Urban Counseling Southwood Medical Center

who is not a party and whose address is indicated on the attached subpoena(s), to produce the items
listed at the time and place specified in the subpoena.

### Certificate of Service

WE HEREBY CERTIFY that a true copy of the forgoing was emailed May 29, 2018 to:

Paul L. SanGiovanni, Esq; Morgan & Morgan, P.A.; 20 North Orange Avenue, Suite 1600,

Orlando, FL 32801; Raychel Garcia, Esq.; Richards H. Ford, Esq; Wicker, Smith, O'Hara McCoy

LANE, REESE & SUMMERS, P.A.

Highly Confidential

BSA-PLAN_01422638
SA 0892

& Ford, P.A., 390 North Orange Avenue, Suite 1000, Orlando, FL 32801;

RGarcia@wickersmith.com; RGarcia@wickersmith.com

> LANE, REESE, & SUMMERS, P.A.
> 2600 Douglas Road,
> Douglas Centre, Suite 401
> Coral Gables, FL 33134
> (305) 444-4418
> Wreese@lanereese.com
>
> By: _____
> William S. Reese, Esq.
> Florida Bar No. 187183

UNOFFICIAL DOCUMENT

Highly Confidential

BSA-PLAN_01422639

SA 0893

42104

IN THE CIRCUIT OF THE 5TH JUDICIAL
CIRCUIT COURT IN AND FOR MARION
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.2016-CA-000167

A. A.,

    Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business
in Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation authorized
to do business in Florida,

    Defendants.

_____/

### CERTICATE OF NON-OBJECTION

TO: The Clerk of Court

    The Defendant, THE BOY SCOUTS OF AMERICA, by and through the undersigned attorneys,

certifies that no objections were filed to Notices of Production from Non-Parties field by this Defendant

and directed to:

1. Dr. Frank Fusco
2. The Centers (Minor)
3. The Centers (Adult)
4. Kimberly Cottage Centers
5. Urban Counseling Southwood Medical Center

### Certificate of Service

    WE HEREBY CERTIFY that a true copy of the forgoing was emailed June 18, 2018 to:

Paul L. SanGiovanni, Esq; Morgan & Morgan, P.A.; 20 North Orange Avenue, Suite 1600,

LANE, REESE & SUMMERS, P.A.
2600 Douglas Road, Suite 901, Coral Gables, Florida 33134 (305) 444-4418

Orlando, FL 32801; Raychel Garcia, Esq.; Richards H. Ford, Esq; Wicker, Smith, O'Hara McCoy & Ford, P.A., 390 North Orange Avenue, Suite 1000, Orlando, FL 32801; RGarcia@wickersmith.com; RGarcia@wickersmith.com

> LANE, REESE, & SUMMERS, P.A.
> 2600 Douglas Road,
> Douglas Centre, Suite 401
> Coral Gables, FL 33134
> (305) 444-4418
> Wreese@lanereese.com
>
> By: _____
> William S. Reese, Esq.
> Florida Bar No. 187183

Highly Confidential

BSA-PLAN_01422641
**SA 0895**

Case 1:22-cv-01237-RGA   Document 73   Filed 12/07/22   Page 18 of 482 PageID #: 4878

Filing # 74284091 E-Filed 06/29/2018 09:06:57 AM
Case 5:20-cv-00069 Document 1-5 Filed 02/18/20   Page 102 of 805 PageID 279

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                                    CASE NO. 2016-CA-000167

      Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

      Defendants.
_____/

## NOTICE OF APPEARANCE AND
## DESIGNATION OF E-MAIL ADDRESSES

      NOTICE IS HEREBY GIVEN of the appearance of Spencer H. Silverglate, Francisco

Ramos, Jr. and Shannon P. McKenna of the law firm of Clarke Silverglate, P.A. as counsel for

Defendants, The Boy Scouts of America and North Florida Council, Inc.   All parties are

requested to forward copies of all pleadings, orders, and other communications that are filed or

served in this case on the undersigned.

      Spencer H. Silverglate, Francisco Ramos, Jr. and Shannon P. McKenna hereby designate,

pursuant to *Fla. R. Jud. Admin.* 2.516, the following e-mail addresses for the purpose of service

of all documents required to be served pursuant to Rule 2.516 in this proceeding:

      **For Spencer H. Silverglate:**

| | |
|---|---|
| Primary E-Mail Address: | ssilverglate@cspalaw.com |
| Secondary E-mail Addresses: | mpedraza@cspalaw.com |

Page 1 of 2

BSA-PLAN_01422642
**SA 0896**

CASE NO. 2016-CA-000167

**For Francisco Ramos, Jr.:**

Primary E-Mail Address:         framos@cspalaw.com
Secondary E-mail Address:     cdeleon@cspalaw.com

**For Shannon P. McKenna:**

Primary E-Mail Address:         smckenna@cspalaw.com
Secondary E-mail Addresses:   aford@cspalaw.com

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida  33131
Telephone:  (305) 377-0700
Facsimile:   (305) 377-3001

By: /s/Spencer H. Silverglate
    Spencer H. Silverglate
    Florida Bar No. 769223
    ssilverglate@cspalaw.com
    mpedraza@cspalaw.com
    Francisco Ramos, Jr.
    Florida Bar No. 114766
    framos@cspalaw.com
    cdeleon@cspalaw.com
    Shannon P. McKenna
    Florida Bar No. 385158
    smckenna@cspalaw.com
    aford@cspalaw.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the

Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 29th day of June 2018,

to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
    Spencer H. Silverglate

441592

Highly Confidential

BSA-PLAN_01422643

SA 0897

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                                    CASE NO. 2016-CA-000167

      Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

      Defendants.

_____/

## STIPULATION FOR SUBSTITUTION OF COUNSEL

      Undersigned counsel with the consent of Defendants, The Boy Scouts of America and

North Florida Council, Inc., stipulate and agree that the law firm of Clarke Silverglate, P.A. shall

be substituted as counsel of record in the above-styled cause for The Boy Scouts of America and

North Florida Council, Inc., and that Lane, Reese & Summers, P.A. shall be discharged from

further responsibility in the above-styled cause.

      DATED this 2nd day of July, 2018.

CLARKE SILVERGLATE, P.A.               LANE, REESE & SUMMERS, P.A.
799 Brickell Plaza, 9th Floor          2600 Douglas Road, Suite 401
Miami, Florida 33131                   Coral Gables, Florida 33134
Telephone: (305) 377-0700              Telephone: (305) 444-4418
Facsimile: (305) 377-3001              Facsimile: (305) 444-5504

By: /s/Spencer H. Silverglate         By: /s/William S. Reese
    Spencer H. Silverglate                William S. Reese
    Florida Bar No. 769223                Florida Bar No. 0187183
    ssilverglate@cspalaw.com              Wreese@lanereese.com
    Francisco Ramos, Jr.
    Florida Bar No. 114766
    framos@cspalaw.com

Page 1 of 2

Highly Confidential                                      BSA-PLAN_01422644
SA 0898

CASE NO. 2016-CA-000167

**<u>CERTIFICATE OF SERVICE</u>**

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the

Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 2nd day of July 2018,

to all counsel of record.

CLARKE SILVERGLATE, P.A.

<u>/s/Spencer H. Silverglate</u>
Spencer H. Silverglate

441521

Page 2 of 2

Highly Confidential

BSA-PLAN_01422645

**SA 0899**

Case 1:22-cv-01237-RGA   Document 73   Filed 12/07/22   Page 22 of 482 PageID #: 4882

Filing # 75890862 E-Filed 08/02/2018 01:35:09 PM
Case 5:20-cv-00069-ECM   Document 1-4   Filed 02/18/20   Page 106 of 805 PageID 283

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                         CASE NO. 2016-CA-000167

　　　Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

　　　Defendants.

_____/

## BSA AND COUNCIL'S MOTION TO DISMISS
## AND MEMORANDUM OF LAW

　　　Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc. ("Council"),

pursuant to Florida Rules of Civil Procedure 1.110(b), hereby move to dismiss the Complaint

with prejudice for failure to state a cause of action.

### Introduction

　　　Plaintiff was allegedly sexually abused by George Fout ("Fout").[1]  In this civil case,

Plaintiff seeks damages for injuries he sustained as a result of Fout's sexual abuse. Plaintiff,

however, is not suing Fout, the perpetrator of the sexual abuse. Instead, Plaintiff brings this case

against the national and local Scouting organizations, respectively BSA and Council, as well as

_____

[1]　　Fout was found guilty of sexual battery and sexual molestation and is currently serving a
life sentence in prison. *See Fout v. State*, 119 So. 3d 455 (Fla. 5th DCA 2013) (affirming
sentence and conviction).

1

CASE NO. 2016-CA-000167

the Boy Scout troop chartered organization, Silver Spring Shores Presbyterian Church, Inc. ("Silver Springs") (collectively "Defendants").

Plaintiff's ten-count complaint sets forth causes of action for negligence, breach of fiduciary duty, and vicarious liability against each Defendant. These causes of action are based on the allegations, which we must take as true for purposes of this motion to dismiss, that Fout was a volunteer Assistant Scoutmaster and his father, Steve Fout ("Fout's father"), was a volunteer Scoutmaster of Troop 448, the troop to which Plaintiff belonged. The central issue in this case is whether the Defendants may be held liable for a volunteer assistant scoutmaster's criminal acts that were committed solely in the confines of the volunteer's bedroom, during Plaintiff's visits and overnight sleepovers, unrelated to any Scouting activity and which were *admittedly* against Scouting rules.

The Complaint should be dismissed with prejudice because it fails to state a cause of action under any of its ten counts. As a matter of law, the Defendants may not be held liable for Fout's criminal acts. Defendants are ***not insurers*** of a local troop member's safety.

Defendants cannot be held liable for negligence because no special relationship existed between the Defendants and Plaintiff. This is especially so because ***none of the abuse*** took place during any Scouting-related activity or event; none of the abuse took place on Boy Scout property; none of the abuse took place while Plaintiff was in the Defendants' custody or control; and no allegations exist that any of the Defendants had knowledge of Fout's sexual misconduct. (Comp. ¶¶ 51, 52, 61, 67, 73, 80, 87, 94, 106, 112, 117). Rather, all of the abuse ***admittedly*** took place in Fout's bedroom within his parent's home, which Plaintiff often visited and spent the night—against Scouting youth protection rules. (Comp. ¶¶ 51, 52, 61, 67, 73, 80, 87, 94, 106, 112, 117).

2

BSA-PLAN_01422647

SA 0901

CASE NO. 2016-CA-000167

Defendants cannot be liable for a <u>breach of fiduciary duty</u> either. As a matter of law, no fiduciary relationship existed between Plaintiff and the Defendants. Neither did the Defendants have any fiduciary obligation to protect Plaintiff during his personal visits and sleepovers at Fout's residence, which were admittedly against Scouting youth protection rules.

Further, as a matter of law, there is no possible basis under which BSA and the Council can be held <u>vicariously liable</u>. Liability cannot be imputed to BSA or the Council because Fout's criminal acts clearly fall outside the scope of any possible agency.[2]  Similarly, liability cannot be imputed to BSA or the Council for the alleged wrongful acts of Fout's father which also fall outside the scope of any possible agency. Finally, liability could not possibly be imputed to BSA for the actions of either the Council or Silver Springs, even if the alleged agency relationships existed (which they do not), because neither entity acted negligently or breached a fiduciary duty.

### The Complaint

In his Complaint, Plaintiff alleges that he was a member of the Troop, Fout volunteered as the Troop's assistant scoutmaster, and Fout's father volunteered as the Troop's scoutmaster. (Comp. ¶¶ 40-43). Plaintiff alleges that Fout sexually abused him during his visits and sleepovers inside the bedroom of Fout's home, where Fout lived with his parents. (Comp. ¶¶ 46-52).

Plaintiff alleges that the Defendants failed to exercise due care in the administration, management, and operation of the Scouting program; breached their fiduciary duties; and are vicariously liable for the acts of their alleged agents, including Fout, and Fout's father. (Comp. ¶¶ 57-120). In support of these claims, Plaintiff generally alleges that the Defendants had care and custody of Plaintiff ***while he participated*** in Troop activities and that the Defendants were substituting for his parents ***while he was in their custody.*** (Comp. ¶¶ 53, 54). Plaintiff further

---

[2]     As noted, *infra,* Defendants dispute the existence of any purported agency relationship. But, Defendants focus this motion on the admitted fact that any alleged abuse occurred outside any arguable agency.

3

BSA-PLAN_01422648

SA 0902

CASE NO. 2016-CA-000167

alleges that the Defendants' custody of Plaintiff created a duty to protect him from reasonably foreseeable harm. (Comp. ¶¶ 58-60, 65-66, 71-72).

Plaintiff additionally alleges that Council was an agent of BSA subject to BSA's control or right of control and that Silver Springs, Fout, and Fout's father were the agents of both BSA and Council subject to BSA and Council's control or right to control.[3] (Comp. ¶¶ 7-9, 55, 56, 98, 104). And that each of the Defendants controlled or had the right to control the Troop directly or through the national, local, or chartered organizations. (Comp. ¶¶ 20).

On the negligence counts, Plaintiff specifically alleges that each Defendant had a special relationship with Plaintiff which arose from their care and custody of him while he participated in Troop activities and that this special relationship created a duty to protect Plaintiff from reasonably foreseeable harm. (Comp. ¶¶ 58-60, 65-66, 71-72). On the breach of fiduciary duty counts, Plaintiff alleges that as a result of their special relationship with him each Defendant had a fiduciary duty to protect him from sexual battery and sexual predators. (Comp. ¶¶ 79, 86, 93). On the vicarious liability counts, Plaintiff additionally alleges that BSA and Council were vicariously liable for the tortious actions of their alleged respective agents. (Comp. ¶¶ 99, 105, 111, 117).

---

[3]    BSA and Council strongly dispute any alleged agency relationship between and among BSA, Council, and Silver Springs as well as any alleged agency relationship between and among the Defendants and Fout and his father.  While factual averments must be taken as true for purposes of a motion to dismiss, the alleged agency relationships is a legal conclusion that need not be accepted by this Court.  For purposes of this motion, however, dismissal is legally warranted even if Plaintiff's legal conclusion were accepted as true.  In other words, even if agency were established or accepted at the pleading stage, any alleged abuse outside of Scouting activities and in violation of Scouting youth protection requirements cannot as a matter of law be within any arguable scope of agency.

4

CASE NO. 2016-CA-000167

Within each of the Complaint's ten counts, Plaintiff alleges that each of the Defendants, in addition to Fout and Fout's father,  breached a duty or breached a fiduciary obligation by acting or failing to act as follows:

    o    Failing to protect Plaintiff from the reasonably foreseeable harm that Plaintiff may be sexually abused by Fout if proper precautions were not followed and they knew or should have known that (1) that proper precautions were not followed because of a special relationship between Fout and Mr. Fout with Plaintiff and (2) that Plaintiff would leave Scout meetings with Fout and Mr. Fout to spend time at their home in violation of BSA policy;

    o    Allowing Fout to have unsupervised contact with Plaintiff during Scouting activities and allowing Plaintiff to spend time at Fout's home; and,

    o    Failing to oversee the appointment of Scoutmasters and Asst. Scoutmasters; the activities of Troop 448, its Scouts and Scoutmasters; and otherwise conduct activities pursuant to the standard of care.

(Comp. ¶¶ 61, 67, 73, 80, 87, 94).

## Legal Memorandum

### *Standard of Review*

Under Rule 1.110(b), Florida Rules of Civil Procedure, a complaint must include ultimate facts showing that the plaintiff is entitled to relief. In deciding a motion to dismiss, a court must assume all allegations in the complaint are true and draw all reasonable inferences in favor of the plaintiff. *Jordan v. Nienhuis*, 203 So. 3d 974, 976 (Fla. 5th DCA 2016). General, vague and conclusory allegations, however, are insufficient to satisfy pleading requirements. *Id.* (citing *Beckler v. Hoffman*, 550 So. 2d 68, 70 (Fla. 5th DCA 1989)).

A motion to dismiss tests the legal sufficiency of the complaint's allegations and the court must make its decision solely on questions of law. *Black Point Assets, Inv. v. Fed. Nat'l Mortgage Ass'n (Fannie Mae)*, 220 So. 3d 566, 568 (Fla. 5th DCA 2017). The existence of a legal duty is a question of law. *McCain v. Florida Power Corp.* 593 So. 2d 500, 503 (Fla. 1992).

5

BSA-PLAN_01422650

SA 0904

CASE NO. 2016-CA-000167

As is the question of whether a fiduciary duty exists. *Building Education Corp. v. Ocean Bank*, 982 So. 2d 37, 41 (Fla. 3d DCA 2009). Similarly, where there are no factual disputes, the existence of an agency relationship and whether a tortfeasor's actions are within the course and scope of the relationship present pure questions of law. *See Domino's Pizza, LLC v. Wiederhold*, 2018 WL 2165224 (Fla. 5th DCA May 11, 2018) (existence of agency) *Adams v. Mitchell G. Hancock, Inc.*, (74 So. 3d 1113 (Fla. 5th DCA 2011) (course and scope of relationship).

### I.   The Negligence Counts Should Be Dismissed Because There is No Legally Special Relationship Between Plaintiff and the Defendants.

A negligence action must establish the four elements of duty, breach, proximate causation and damages. *Limones v. Sch. Dist. of Lee County*, 161 So. 3d 384 (Fla. 2015); *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003). The existence of a legal duty is a question of law for the court. *McCain*, 593 So. 2d at 503. Generally, a party does not have a duty to protect another absent a special relationship. *Limones*, 161 So. 3d at 390. A legal duty does not arise merely because harm is foreseeable. *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004).

In support of his negligence claims, Plaintiff alleges that the Defendants had a duty to protect him from Fout's sexual abuse based on a special relationship arising from their care and custody of Plaintiff while he participated in Troop activities. (Comp. ¶¶ 58-60, 65-66, 71-72). Plaintiff's negligence claims should be dismissed because the Defendants did not have any special relationship under which a duty arose to protect Plaintiff from being sexually abused during Plaintiff's visits and overnight sleepovers, that were unrelated to any Scouting activity

6

BSA-PLAN_01422651
SA 0905

CASE NO. 2016-CA-000167

and which were *admittedly* against Scouting youth protection rules.[4] (Comp. ¶¶ 51, 52, 61, 67, 73, 80, 87, 94, 106, 112, 117).

As a matter of law, no special relationship exists such that the Defendants had a duty to protect Plaintiff from Fout's sexual misconduct, which was perpetrated in a private bedroom when Plaintiff and Fout were not engaged in activity related to their Scouting relationship. *See KM. ex rel D.M. v. Publix Super Markets, Inc.*, 895 So. 2d 1114, 1117-18 (Fla. 4th DCA 2005). In *K.M.*, a grocery store employee asked a co-employee to babysit her child at the co-employee's home, during which the co-employee sexually abused the child. The court held that the grocery store owed no duty to the child because the incident arose from a personal relationship that was also outside the employment context. Similarly, in *Archbishop Coleman F. Carroll High School, Inc. v. Maynoldi*, 30 So. 3d 533 (Fla. 3d DCA 2010), the court held that a school did not owe a duty to a student who was injured in an automobile accident after consuming alcohol at a private graduation party. No duty was owed because the accident took place off-campus, following an off-campus party that was not a school-sponsored event.

Here, as in *K.M.* and *Archbishop Coleman*, no duty arises because Fout perpetrated the sexual abuse outside of the Scouting relationship because the misconduct took place during Plaintiff's visits and overnight sleepovers, which were unrelated to any Scouting activity and which were *admittedly* against Scouting rules. Also similar to *K.M.*, where the grocery store did not have a direct relationship with the child who was molested, the Defendants only had an indirect relationship, based on their program offered to and run locally by parents and volunteers.

---

[4]    As Plaintiff's Complaint admits, local troops are overseen by local volunteers including a committee and the leaders selected by the committee—most often all of which are parents. While the BSA and Council do not retain supervisory day-to-day control of the thousands of troop across the nation, they do retain the ultimate right to revoke the charter authorizing use the of Boy Scout program.  That right includes youth protection requirements such as two-deep leadership and no one-on-one contact between volunteer leaders and youth.

7

CASE NO. 2016-CA-000167

Plaintiff does not contend that Defendants knew that Fout was a sexual predator and therefore cannot allege that any purported duty to warn existed by virtue of a special relationship. A duty to warn only arises when the defendant has knowledge of the alleged wrongful conduct. *See T.W. v. Regal Trace, Ltd.*, 908 So. 2d 499, 505 (Fla. 4th DCA 2005) (by virtue of its special relationship with tenant, landlord had duty to warn tenant about past criminal activity on its premises); *Sunshine Birds & Supplies, Inc. v. U.S. Fidelity & Guar. Co.*, 696 So. 2d 907, 911 (Fla. 3d DCA 1997) (employers subject to potential liability because they failed to act when they had actual or constructive knowledge of their employees' past child molestations).

Mere knowledge that persons are engaging in ***unrelated events*** is insufficient to impose a duty. *See Archbishop Coleman*, 30 So. 3d at 542 (holding mere knowledge of an off-campus event was insufficient to impose liability). As such, Plaintiff's allegations that Defendants knew or should have known that Plaintiff was visiting and spending the night at Fout's home are insufficient to impose liability. Liability could only be imposed based on good-faith allegations (of which there are none) that Defendants knew or should have known that Fout had previously engaged in sexual misconduct.

Based on the foregoing, Plaintiff's negligence claims against the Defendants should be dismissed for failure to state a cause of action.

II.     **The Breach of Fiduciary Duty Counts Must Also Be Dismissed As No Fiduciary Duty Exists Under the Circumstances.**

Counts V-VII allege breach of fiduciary duty claims against Defendants. "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). To succeed on a fiduciary duty claim, one must first establish the existence of a fiduciary duty. *Crusselle v. Mong*, 59 So. 3d 1178, 1180 (Fla. 5th DCA 2011). "A

8

BSA-PLAN_01422653

SA 0907

fiduciary owes to its beneficiary the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts." *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994).

A fiduciary obligation may be express or implied. Express relationships are created by contract (principal/agent) or by legal proceedings (guardian/ward). *Maxwell v. First Union Bank*, 782 So. 2d 931, 933-934 (Fla. 4th DCA 2001). Implied fiduciary obligations usually arise from well-recognized relationships of trust of confidentiality, including an attorney and client, a trustee and beneficiary, a physician and patient, a mental health professional and patient, and a corporate director and a corporation and its shareholders. *See, e.g., Gracey*, 837 So. 2d at 353-354 (psychotherapist/patient); *Doe v. Evans*, 814 So. 2d 370, 374-375 (Fla. 2002) (marital counselor/counselee); *Cohen v. Hattaway*, 595 So. 2d 105, 107 (Fla. 5th DCA) (directors and officers/corporation and shareholders). An implied fiduciary relationship exists where confidence is reposed on one side and superiority and influence are on the other or where one side undertakes an obligation to benefit a dependent party on the other. *See, respectively, The Florida Bar v. Adorno*, 60 So. 3d 1016, 1027-1028 (Fla. 2011); *Crusselle*, 59 So. 3d at 1181.

Plaintiff has not pled, and cannot plead, either an express or an implied fiduciary relationship. The Plaintiff's fiduciary duty allegations merely reiterate the allegations in his negligence claims. In fact, Plaintiff claims that a fiduciary duty arises because of the special relationship between the Defendants and Plaintiff. (Comp. ¶¶ 79, 86, 93). Even assuming that such a special relationship exists (which it does not), a legal duty of care does not in itself constitute a fiduciary obligation. More is needed: a plaintiff must plead facts establishing the existence of a *fiduciary* relationship.

9

BSA-PLAN_01422654

SA 0908

CASE NO. 2016-CA-000167

The alleged misconduct must also arise out of the fiduciary relationship. *See Doe*, 814 So. 2d at 375. In *Doe*, the Florida Supreme Court found liability based on an implied fiduciary relationship that arose between a priest providing marital counseling and his counselee. In so doing, the Court "stress[ed] that the liability in this case rests on the assertion of an abuse of a marital counseling relationship through an inappropriate sexual relationship." *Doe*, 814 So. 2d at 375. In contrast, Fout's sexual misconduct did not arise out of the relationship because the misconduct did not take place during a Scouting activity. The activities from which the sexual misconduct arose—Plaintiff's visits and sleepovers at George Fout's home—were ***admittedly*** against Scouting's rules.

There is no authority otherwise supporting the imposition of a fiduciary obligation on an institutional defendant, such as the Defendants, with a local troop member, such as Plaintiff. *See Roe v. Boy Scouts of Am., Corp.*, 2012 WL 3933184, at *7 (Conn. Super. Ct. Aug. 16, 2012), *aff'd sub nom.*, *Roe No. 1 v. Boy Scouts of Am. Corp.*, 84 A.3d 443 (Conn. App. Ct. 2014). As the *Roe* court explained:

> There is no "unique degree of trust and confidence between the parties[,]" [citation omitted] who may not even know each other. Further, this case is not one involving matters such as fraud, self-dealing, conflict of interest, or honesty by the corporate defendants. Rather, it is a question of whether the corporate defendants had a duty of care to keep the plaintiff safe from criminal acts. It is, in short, a traditional negligence case. [Citation omitted]. The plaintiff supplies no authority holding that an institutional defendant such as the Boy Scouts can have a fiduciary relationship with a member of one its local troops.

*Id.* Plaintiff's conclusory allegations that a fiduciary obligation exists do not state a cause of action for the breach of fiduciary duty. The breach of fiduciary duty claims should be dismissed with prejudice.

10

BSA-PLAN_01422655

SA 0909

CASE NO. 2016-CA-000167

### III.     The Vicarious Liability Counts Must Also Be Dismissed.

Counts VII-X set forth vicarious liability claims against Defendants. Vicarious liability is not based on the defendant's own liability but rather it imputes responsibility on the defendant for another party's tortious acts. *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 467–68 (Fla. 2005). Responsibility may not be imputed, however, unless (1) an agency relationship exists between the defendant and the party who acted wrongfully and (2) the party's wrongful actions fall within the scope of the agency. While Defendants dispute any alleged agency relationship, at this dismissal stage of the proceedings, BSA and Council only challenge Plaintiff's inability to satisfy the second requirement that the party's wrongful actions fall within the scope of a purported agency.   The Defendants are not liable for Fout's criminal sexual batteries which, as a matter of law, fall outside the scope of any alleged agency. (Comp. ¶ 100). An employer or agent is not the insurer of the independent, illegal actions of its employees. *See Agriturf Mgmt., Inc. v. Roe,* 656 So. 2d 954, 955 (Fla. 2d DCA 1995). Vicarious liability may not be imposed on a principal unless it is shown that the agent was acting within the scope of the agency when the wrong was committed. *See Special Olympics Florida, Inc. v. Showalter*, 6 So. 3d 662, 665-666 (Fla. 5th DCA 2009). An agent's sexual assaults and batteries fall outside the scope of the agency. *Id.* (citing *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985)).

In *Special Olympics,* a volunteer sexually molested two developmentally disabled adult athletes in the parking lot of a bowling center. The athletes arrived for bowling practice scheduled later in the day. The athletes arrived early for socializing. The Special Olympics had scheduled physicals for other athletes earlier in the day and an organization official arrived to the bowling center around 10 a.m. with a volunteer physician to perform the physicals. A current volunteer, and former employee who was dismissed for prior sexual molestation allegations, also

11

BSA-PLAN_01422656
SA 0910

CASE NO. 2016-CA-000167

arrived early to the bowling center. The volunteer lured the athletes outside of the bowling center to his van where he molested them. The court found as a matter of law that the volunteer was not acting within the scope of his agency when he molested the two athletes.

The general rule applies, not the exception, even if the criminal acts occur at the work location. *See Goss v. Human Services Associates, Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012) (granting motion to dismiss vicarious liability claims based on counselor's sexual assault of minor child at residential facility because the assault was not committed for any therapeutic purpose and it was not aided by the agency relationship). The rule also applies if the criminal act takes place while the employee performs other work for his employer. *See Mason v. Fla. Sheriffs' Self–Ins. Fund,* 699 So. 2d 268 (Fla. 5th DCA 1997) (officer's sexual assault not within course and scope even though the officer was on duty, in uniform, and serving warrant on the woman he raped); *Agriturf Mgmt., Inc. v. Roe*, 656 So.2d 954 (Fla. 2d DCA 1995) (company president's sexual fondling of six-year old child not within the course and scope even though the touching occurred on the business's property during a time when the perpetrator was cleaning up, putting away equipment, and closing out the day's business).

The general rule applies even if the criminal actor gains access to the minor child through his employment/agency. This is so because the employee's criminal acts do not further the employer objectives; they serve the employee's own personal interests. *See Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 355 (Fla. 3d DCA 2001). In *Iglesia Cristiana*, a pastor picked up a minor from work, ostensibly to discuss her parent's marital problems.  He took her to a motel room where he sexually assaulted her. The court found that even though the pastor may have been counseling the minor, his assault was an independent self-serving act for which the church could not be held vicariously liable as a matter of law. *See also Elders v.*

12

BSA-PLAN_01422657

SA 0911

CASE NO. 2016-CA-000167

*United Methodist Church*, 793 So. 2d 1038, 1041 (Fla. 3d DCA 2001) (church defendants could not be held vicariously liable for pastor's alleged sexual misconduct with counselee because as "a matter of common sense, having sexual relations with a counselee is not part of the job responsibilities of a minister.").

Based on all of the above, Fout's alleged sexual batteries were outside the scope of any alleged agency relationship he may have had with Defendants as a matter of law.

Similarly, even assuming that Fout's father acted wrongfully as alleged, liability still cannot be imputed to the Defendants because Fout's father's wrongful acts were not committed within the scope of his volunteer position as scoutmaster. The sexual misconduct took place at the private home of Fout's father during Plaintiff's visits or sleepovers, which were ***admittedly*** against Scouting rules. (Comp. ¶¶ 51, 52, 61, 67, 73, 80, 87, 94, 106, 112, 117). Additionally, a parent does not have any duty to control the conduct of an emancipated adult child living in the parent's home. *See Knight v. Merhige*, 133 So. 3d 1140 (Fla. 4th DCA 2014); *Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999).

Finally, even taking as true the fiction of the alleged agency relationships for purposes of this motion, no liability on the part of either Council or Silver Springs could possibly be imputed to BSA because, as demonstrated above, neither entity acted negligent or breached a fiduciary duty as matter of law. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995) ("[I]f the agent cannot be held liable, neither can the principal, because there is nothing to impute.").

**Request for Oral Argument**

Pursuant to this Court's Motion Practice Procedure, Defendants respectfully request oral argument on this Motion to Dismiss.   The estimated time required for argument is 30 minutes.

13

CASE NO. 2016-CA-000167

### Conclusion

For the foregoing reasons, BSA and Council respectfully request that the Second Amended Complaint be dismissed with prejudice.

Respectfully submitted by,

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida  33131
Telephone:  (305) 377-0700
Facsimile:   (305) 377-3001

By: /s/Spencer H. Silverglate
        Spencer H. Silverglate
        Florida Bar No. 769223
        ssilverglate@cspalaw.com
        mpedraza@cspalaw.com
        Francisco Ramos, Jr.
        Florida Bar No. 114766
        framos@cspalaw.com
        cdeleon@cspalaw.com
        Shannon P. McKenna
        Florida Bar No. 385158
        smckenna@cspalaw.com
        aford@cspalaw.com

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 2nd day of August, 2018, to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
        Spencer H. Silverglate

14

Highly Confidential

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                           CASE NO. 2016-CA-000167

     Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

     Defendants.

_____/

## BSA AND COUNCIL'S REQUEST FOR ORAL ARGUMENT
## ON THEIR MOTION TO DISMISS

     Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc. ("Council"),

pursuant to the Court's Order Establishing Motion Practice Procedure, hereby request oral

argument on their Motion to Dismiss.  Oral argument will assist the Court in understanding the

issues raised in the parties' briefs and provide an opportunity for the Court to ask any questions

relating thereto.  The estimated time for oral argument is 30 minutes.

                Respectfully submitted by,

                CLARKE SILVERGLATE, P.A.
                799 Brickell Plaza, 9th Floor
                Miami, Florida  33131
                Telephone:  (305) 377-0700
                Facsimile:   (305) 377-3001

                By: /s/Spencer H. Silverglate
                    Spencer H. Silverglate
                    Florida Bar No. 769223

CASE NO. 2016-CA-000167

ssilverglate@cspalaw.com
mpedraza@cspalaw.com
Francisco Ramos, Jr.
Florida Bar No. 114766
framos@cspalaw.com
cdeleon@cspalaw.com
Shannon P. McKenna
Florida Bar No. 385158
smckenna@cspalaw.com
aford@cspalaw.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the

Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 2nd day of August,

2018, to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
      Spencer H. Silverglate

2

81910-5/DWH/61598892

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.                                           CASE NO. 2016-CA-000167

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

      Defendant.

_____/

**DEFENDANT'S, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.,
MOTION TO DISMISS AND MOTION TO STRIKE PREJUDGMENT INTEREST**

      Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC. ("Silver

Springs"), by and through the undersigned counsel and pursuant to the applicable Florida Rules

of Civil Procedure, hereby files this Motion to Dismiss and Motion to Strike Prejudgment

Interest, and in support thereof states as follows:

      1.     This is a negligence action arising out of the sexual assault of A.A. by George

Fout at various times between 2004 and 2012 at the residence of George Fout. *See* Pl.'s Compl.

¶¶ 46–51.

Highly Confidential

BSA-PLAN_01422662

**SA 0916**

CASE NO. 2016-CA-000167

2.     More specifically, Plaintiff alleges that George Fout committed oral and anal sodomy and other acts of sexual battery, which constituted violations of Fla. Stat. § 794.011. *Id.* at ¶ 47.

3.     Plaintiff claims that this Defendant had a special relationship with A.A., which purportedly gave rise to a duty for this Defendant to protect A.A. from reasonably foreseeable harm. Plaintiff asserts that this Defendant breached the aforementioned duty by failing to protect A.A. from the criminal acts of George Fout, which ultimately constituted negligence. *Id.* at ¶¶ 58–63.

4.     In other Counts within Plaintiff's Complaint, Plaintiff alleges that this Defendant breached its fiduciary duty to Plaintiff, and should be vicariously liable for the actions and omissions of George Fout and Steve Fout. *Id.* at ¶¶ 77–82, 98–102, 104–108.

5.     There are no allegations that the alleged abuse took place on this Defendant's premises, nor are there any allegations that the abuse took place during an event associated with this Defendant. Rather, Plaintiff explicitly stated in the Complaint that "[t]he locations of the sexual battery included George Fout's home, in which he resided with Steve Fout, his father and the Scoutmaster of Troop 448." *Id.* at ¶ 51. Plaintiff further asserted that the alleged abuse took place when A.A. would spend the night at the Fout residence. *Id.* at ¶ 52. There are no allegations that these visits to, and sleepovers at, the Fout residence were in any way associated with Silver Springs.

6.     Silver Springs now moves to dismiss Counts I and IV of Plaintiff's Complaint because Plaintiff has not alleged any facts that establish a duty on the part of this Defendant as outlined in the incorporated Memorandum of Law.

- 2 -

BSA-PLAN_01422663

SA 0917

CASE NO. 2016-CA-000167

7.     Silver Springs also moves to dismiss Counts VII and VIII of Plaintiff's Complaint because Plaintiff has not alleged any facts that that establish vicarious liability on Silver Springs for the actions of either George Fout or Steve Fout.

8.     Additionally, this Defendant contends that all of Plaintiff's claims against Silver Springs are time-barred by the statute of limitations.

9.     Last, this Defendant moves to strike all of Plaintiff's demands for prejudgment interest, as such demands are improper for a case such as the one at bar.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

**I.     Failure to Plead Facts Sufficient to Support a Legal Duty to Prevent the Misconduct of a Third Party**

Counts I and IV of Plaintiff's Complaint should be dismissed because they fail to establish a duty owed to A.A. by Silver Springs for the actions of George Fout and Steve Fout. The general rule in Florida is that a party has no legal duty to "prevent the misconduct of third persons." *Michael & Philip, Inc. v. Sierra*, 776 So.2d 294, 297 (Fla. 4th DCA 2000). As the court noted in *Boynton v. Burglass*, 590 So.2d 446, 448 (Fla. 3d DCA 1991), "Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third party." *K.M. ex rel. D.M. v. Publix Super Markets, Inc.,* 895 So. 2d 1114, 1117 (Fla. 4th DCA 2005). Florida recognizes the special relationship exception to the general rule of non-liability for third-party misconduct. The existence of a special relationship, however, may give rise to a duty to control the conduct of third persons so as to prevent them from harming others. *Id.* Florida has adopted the "special relationship" test set forth in the Restatement (Second) of Torts, Section 315, which states:

- 3 -

Highly Confidential

BSA-PLAN_01422664

**SA 0918**

CASE NO. 2016-CA-000167

> § 315 General Principle
> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Plaintiff has attempted to establish a duty incumbent on this Defendant based on the special relationship exception. Plaintiff, however, has cited to no facts to support his contention that Silver Springs owed a special duty to A.A. Plaintiff maintains the position that Silver Springs controlled or had the right to control local troops directly, or through its sponsoring organizations. *See* Pl.'s Compl. ¶ 9. Later in the Complaint, Plaintiff more specifically defines Silver Springs' scope of responsibility: "As the chartering organization of Troop 448, Defendant [Silver Springs] was responsible for providing adequate facilities, supervision, and leadership for the troop." *Id.* at ¶ 35. The extent of Silver Springs' involvement with A.A. and Troop 448 was limited to providing A.A. and the rest of Troop 448 with a facility to be used for troop meetings, a point which Plaintiff concedes. *Id.* at ¶ 36 ("The troop meetings were held in facilities owned or operated by Defendant [Silver Springs]."). The Complaint is devoid of any allegations that alleged abuse of any kind took place in facilities owned or operated by Silver Springs.

Florida courts have made it clear that at the outset, litigants must state their pleadings with sufficient particularity for a defense to be prepared. *Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A.* Mere conclusions are insufficient. *Clark v. Boeing Co.*, 395 So.2d 1226 (Fla. 2d DCA 1981). Although Plaintiff concludes that there is a "special relationship," a review of the four corners of the Complaint does not establish any facts to support this conclusion. As such, Plaintiff's Complaint should be dismissed.

- 4 -

Highly Confidential

CASE NO. 2016-CA-000167

Additionally, a review of the applicable Florida law demonstrates that a special relationship has not been shown to exist in cases such as this. In *Concepcion By and Through Concepcion v. Archdiocese of Miami By and Through McCarthy*, 693 So. 2d 1103, 1103 (Fla. 3d DCA 1997), the court determined that as a matter of law, a school owed no duty to its students during non-school hours when the students are not on the school's premises and not otherwise involved in school related or sponsored activities. Similarly, in *John Doe No. 77 v. Boy Scouts of America, Inc.*, 2015 WL 10000265 (Fla. 13th Cir. Ct. 2015), the court found that there was no legal duty owed by the Boy Scouts to prevent its volunteers from causing physical harm outside of their work for the Boy Scouts. In *John Doe No. 77*, a mother claimed that she trusted her neighbor, an unpaid volunteer assistant scout master for the Boy Scouts, because of his active involvement in the Boy Scouts. *Id*. The court granted final summary judgement for the Boy Scouts because there was "no special relationship" between the Boy Scouts and the assistant scout master or the Boy Scouts and the minor plaintiffs because the alleged abuse took place at a non-Boy Scout setting. *Id*. The facts and allegations in the case at bar are strikingly similar to the facts and allegations in *John Doe No. 77*. Here, A.A.'s alleged injuries did not occur in the course of a special relationship, but, rather, occurred in the Fout residence during sleepovers that were not associated in any way with this Defendant.

Counts I and IV of Plaintiff's Complaint, which allege negligence and breach of fiduciary duty, respectively, are founded in the theory that a special relationship existed between Silver Springs and A.A. As set forth above, no such relationship existed and Plaintiff's conclusory assertions, which argue the contrary, are insufficient. As such, Plaintiff's Motion to Dismiss as to Counts I and IV of Plaintiff's Complaint should be granted.

- 5 -

Highly Confidential

CASE NO. 2016-CA-000167

II.        **Failure to Plead Facts Sufficient to Support a Claim for Vicarious Liability**

In Counts VII and VIII, Plaintiff alleges that Silver Springs is vicariously liable for the sexual battery by George Fout and the breach of fiduciary duty of Steve Fout, respectively. Plaintiff alleges that, at all relevant times, George Fout and Steve Fout were acting as agents on behalf of Silver Springs. *See* Pl.'s Compl. ¶¶ 98, 104. The essential elements to establish actual agency are: (1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842 (Fla. 2003). Plaintiff's Complaint is deficient with regard to this argument, as it does not allege any ultimate facts showing that a principal (someone in a supervisory role at Silver Springs) acknowledged that either George Fout or Steve Fout would act for Silver Springs; how and when either of the Fouts accepted that undertaking; nor the ways in which Silver Springs controlled the Fouts actions. Similarly, agency was not established through the doctrine of apparent agency. In order to determine the existence of apparent agency, it must be determined that (1) there was a representation by the principal; (2) the injured party relied on that representation; and (3) the injured party changed position in reliance upon the representation and suffered detriment. *Amstar Inc. Co. v. Cadet*, 862 So. 2d 736, 742 (Fla. 5th DCA 2003). Nowhere in Plaintiff's Complaint does Plaintiff allege that Silver Springs made a representation regarding the existence of an agency relationship between Silver Springs and either of the Fouts. Plaintiff's Complaint does not establish the existence of an agency relationship because it fails to allege any ultimate facts supporting that claim.

Further, the structure of Counts VII and VIII are vague and ambiguous as Plaintiff directed these Counts to all three of the named Defendants. As such, when Plaintiff attempts to

- 6 -

Highly Confidential

CASE NO. 2016-CA-000167

assert that the Fouts were acting as agents for Silver Springs, Plaintiff states that the agency relationship was created by virtue of "implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA." *See* Pl.'s Compl. ¶¶ 98, 104. Silver Springs is an entity that is separate and distinct from Defendant BSA; whether the Fouts maintained the scouting program with the consent and oversight of BSA is irrelevant to the issue of whether an agency relationship existed between Silver Springs and the Fouts.

Even if this Court accepted the bald assertion that the Fouts were agents of Silver Springs, the alleged sexual abuse described in the Complaint would fall outside the scope of any agency relationship. "An employee's conduct is within the scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 357 (Fla. 3d DCA 2001).

Courts have previously held that a volunteer is not acting within the scope of agency at the time of an incident in which the volunteer was a perpetrator of sexual abuse. *See Special Olympics Fla., Inc. v. Showalter*, 6 So. 3d 662, 665 (Fla. 5th DCA 2009). "Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer." *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985). Unless it can be established that the abuse occurred in furtherance of the employer's business or principal's activities, the type of misconduct which is alleged in the subject Complaint is not within the scope of the purported agency relationship. *See Showalter*, 6. So. 3d at 665–66. In *L.M.*, *supra*,

- 7 -

Highly Confidential

CASE NO. 2016-CA-000167

the court found that the Defendant church was not vicariously liable for the sexual molestation of a youth who was being counseled/ministered, noting that although the pastor may have had access to the girl though his position as the Church pastor, he was not engaging in authorized acts or serving the interests of the Church during the time he sexually abused the minor child. *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 358 (Fla. 3d DCA 2001).

"As a matter of common sense, having sexual relations with a counselee is not part of the job responsibilities of a minister." *Elders v. United Methodist Church*, 793 So. 2d 1038, 1041 (Fla. 3d DCA 2001). That rationale is equally applicable here, where Plaintiff is attempting to hold Silver Springs vicariously liable for the acts of George Fout and Steve Fout, an assistant scoutmaster and scoutmaster, respectively. *See* Pl.'s Compl. ¶¶ 11–12. The duties of the Fouts included leading troop meetings, training troop members in craft/survival skills, planning troop activities, and coordinating troop fundraising. *Id.* at ¶¶ 40–41. Because the sexual abuse alleged by Plaintiff was driven by the personal motives of George Fout and not designed to further the interests of Silver Springs, Counts VII and VIII of the Complaint should be dismissed.

## III.     Plaintiff's Claims against Silver Springs are Time-Barred by the Statute of Limitations

Plaintiff's Complaint was filed with this Court on January 27, 2016. In the Complaint, Plaintiff asserted that the sexual abuse by George Fout began in or about 2004 and continued to occur until 2012. *See* Pl.'s Compl. ¶¶ 46, 50. This Defendant moves to dismiss all claims against it as the claims are time-barred by the applicable Statute of Limitations.

There are no allegations that Plaintiff was sexually abused after 2012. Although Plaintiff alleges that sexual abuse occurred in 2012, he does not specify the dates of the abuse that occurred in 2012. All claims against Silver Springs are founded on negligence; Plaintiff does not

- 8 -

BSA-PLAN_01422669
SA 0923

CASE NO. 2016-CA-000167

assert any intentional tort claims against this Defendant. The statute of limitations for negligence actions is 4 years.  Fla. Stat. § 95.11.  Therefore, any and all of Plaintiff's claims that accrued before January 27, 2016, when the Complaint was filed, are time-barred.

Normally, a claim for injuries based on another party's negligent conduct must be filed within four years of the incident under the applicable statute of limitations. *Rubio v. Archdiocese of Miami, Inc.,* 114 So. 3d 279, 281 (Fla. 3d DCA 2013). In more than ten years since enacting section 95.11(7), the legislature has not extended the limitations period to causes of action other than intentional torts.  *Cisko v. Diocese of Steubenville*, 123 So. 3d 83, 85 (Fla. 3d DCA 2013). Plaintiff's claims against Silver Springs are all premised on negligence and there are no allegations of Silver Springs committing any intentional torts. The running of the statute of limitations is an absolute defense in a negligence case such as this. *Rubio,* 114 So. 3d 279. In *Rubio*, the defendant church's Motion to Dismiss was granted, despite allegations that it knew that one of its priests was molesting the plaintiff, because there were no allegations that the church caused the plaintiff to wait to file suit. *Id*. As such, Plaintiff's claims related to any abuse that occurred prior to January 27, 2012 are time-barred by the four-year statute of limitations and should be dismissed with prejudice.

Plaintiff was diligent in tracking the language of Fla. Stat. § 95.11(9), which states: "An action related to an act constituting a violation of s. 794.011 involving a victim who was under the age of 16 at the time of the act may be commenced at any time." Section 794.011 is the criminal statute pertaining to acts constituting sexual battery. *See* Fla. Stat. § 794.011. Plaintiff contends that each act of sexual abuse alleged in the Complaint occurred prior to Plaintiff's sixteenth birthday. *See* Pl.'s Compl. ¶ 48.

- 9 -

CASE NO. 2016-CA-000167

As discussed in Sections I and II of this Memorandum, *supra*, Plaintiff does not allege that any sexual abuse took place at any premises owned or operated by Silver Springs. In fact, Plaintiff asserts that "[t]he locations of the sexual battery included George Fout's home." *Id.* at ¶ 51. Because of the nature and location of the alleged sexual abuses, this Defendant has established that no special relationship existed between Silver Springs and Plaintiff at the time of the alleged abuses and, as such, no duty was breached by this Defendant. This Defendant has also established that it is not vicariously liable for the actions of George Fout or Steve Fout. In sum, this Defendant contends that Section 95.11(9) is inapplicable as to all Counts against this Defendant. The claims against Silver Springs are not "related to an act constituting a violation of Section 794.011." *See* Fla. Stat. § 95.11(9). Plaintiff must comply with the 4-year statute of limitations for any and all claims set forth against Silver Springs.

In any event, if this Court accepts the applicability of Section 95.11(9), Plaintiff's claims against Silver Springs are still time-barred. The statute states, in pertinent part, "[t]his subsection applies to any such action other than one which would have been time barred on or before July 1, 2010." Fla. Stat. § 95.11(9). Prior to the enactment of this subsection, all actions founded in negligence, regardless of whether the actions were related to crimes of sexual battery, were to comply with the necessary 4-year statute of limitations. Here, Plaintiff asserts that the sexual abuse began in or about 2004. *See* Pl.'s Compl. ¶ 46. All negligence actions related to sexual abuse incidents, where the incidents in question occurred on or before July 1, 2006, are time-barred by the statute of limitations, per the language of Section 95.11(9).   Here, Plaintiff concedes that abuse did, in fact, take place on or before July 1, 2006.

- 10 -

BSA-PLAN_01422671
SA 0925

CASE NO. 2016-CA-000167

The Florida Supreme Court has stated that "[a] statute of limitations 'runs from the time the cause of action accrues' which, in turn, is generally determined by the date 'when the last element constituting the cause of action occurs.'" *Hearndon v. Graham*, 767 So. 2d 1179, 1184–85 (Fla. 2000) (quoting Fla. Stat. § 95.031 (1987)). Plaintiff's claims against Silver Springs are founded in negligence and Plaintiff attempts to relate this negligence to the alleged acts of sexual abuse perpetrated by George Fout. A cause of action against Silver Springs would have started accruing when the last element constituting the cause of action occurred. *See Hearndon* at 1184–85. In this instance, the last element constituting the cause of action would have been the first act of sexual misconduct perpetrated by George Fout, which occurred in or about 2004. "The last element constituting a cause of action for negligence is legally cognizable injury to the plaintiff." *D.H. by and through R.H. v. Adept Cmty. Servs., Inc.*, 217 So. 3d 1072, 1078 (Fla. 2d DCA 2017). Plaintiff's claims against Silver Springs are time-barred by the statute of limitations. Further, Plaintiff does not escape the 4-year statute of limitations period by relying on Section 95.11(9), as all negligence actions related to abuse which occurred on or before July 1, 2006, are time-barred, per the statute.

**IV.      Plaintiff's Claims for Prejudgment Interest Should be Stricken**

In the *ad damnum* clause within Counts I, IV, VII, and VIII of the Complaint, Plaintiff demands the recovery of prejudgment interest. However, it is well established that Florida law provides that prejudgment interest is not a recoverable element of damages in a claim for unliquidated damages, such as is being sought in this matter. *Air Ambulance Professionals, Inc. v. Thin Air*, 809 So. 2d 28, 31 (Fla. 4th DCA 2002) ("Prejudgment interest is allowed on only liquidated claims, that is, sums which are certain, but which the defendant refuses to surrender.")

- 11 -

Highly Confidential

BSA-PLAN_01422672

SA 0926

CASE NO. 2016-CA-000167

The basis for this rule is that such damage claims are too speculative. *Zorn v. Britton*, 162 So.

879 (Fla. 1935); *Parker v. Brinson Const. Co.*, 78 So. 2d 873 (Fla. 1955).

To the extent that the Plaintiff's Complaint includes requests for the award of

prejudgment interest, this Defendant states that such claims should be stricken, as this is not a

case which concerns a dispute regarding liquidated damages or other facts which would allow for

recovery of prejudgment interest.

WHEREFORE, Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH,

INC., respectfully requests that this Court enter an Order dismissing all allegations against it,

specifically Counts I, IV, VII, and VIII of Plaintiff's Complaint, for the reasons set forth herein,

and additionally requests that this Court strike Plaintiff's various claims for prejudgment interest.

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida
ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, mtodd@forthepeople.com,
mdyenson@forthepeople.com; Spencer H. Silverglate, Esquire, ssilverglate@cspalaw.com;
mpedraza@cspalaw.com; Francisco Ramos, Jr., Esquire, framos@cspalaw.com;
cdeleon@cspalaw.com; Shannon P. McKenna, smckenna@cspalaw.com, aford@cspalaw.com;
on this 20th day of August, 2018.

/s/ Richards H. Ford
Richards H. Ford, Esquire
Florida Bar No. 288391
Raychel A. Garcia, Esquire
Florida Bar No. 091096
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Silver Springs Shores Presbyterian
Church, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

- 12 -

BSA-PLAN_01422673

SA 0927

## IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT IN
## AND FOR MARION COUNTY, FLORIDA

A.A.,

      Plaintiff,              Case No: 2016-CA-0167

vs.

**THE BOY SCOUTS OF AMERICA; NORTH FLORIDA COUNCIL, INC, BOY SCOUTS
OF AMERICA; and SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC.,**

      Defendants.

_____/

## ORDER TO RESPOND
## AND
## ORDER ESTABLISHING MOTION PRACTICE PROCEDURE

    **THIS CAUSE** came before the Court on Defendants Boy Scouts of America and North

Florida Council, Inc. Boy Scouts of America's Motion to Dismiss, filed on Thursday, August

2, 2018.

    The Court has considered said motion, reviewed the court file, and is otherwise duly

advised in the premises.

    It is therefore **ORDERED and ADJUDGED** as follows:

    1.    Plaintiff shall file a response to the instant motion within **twenty (20) days**

from the date of this order.

    2.    Defendants shall then have **five (5) days** in which to file a reply, should they

so choose.

    **It is further ORDERED** that to facilitate an orderly progression of this matter and

better-informed decisions by the Court, all future motions shall be filed with the Clerk of

the Court pursuant to Rule 2.516, *Fla. R. Jud. Admin.*, and handled in the following

manner:

    1.    Legal memorandum required.  In making any written motion or other

application to the Court for the entry of an order of any kind, the moving party shall file and

Highly Confidential

BSA-PLAN_01422674

**SA 0928**

serve with such motion or application a legal memorandum with citations to authority in support of the relief requested.  A supporting memorandum may be incorporated into the body of the motion but should be clearly titled, "Motion to/for------------and Memorandum of Law."

The following motions need not be accompanied by a memorandum of law:

a.    motion for continuance;

b.    motion for default addressed to the Court;

c.    motion for confirmation of sale;

d.    motion to withdraw or substitute exhibits;

e.    motion to proceed informa pauperis;

f.    motion for extension of time in which to complete discovery, provided good cause is set forth in the motion; and

g.    motion to withdraw or substitute counsel.

2.    Timely opposing memoranda.  Each party opposing any written motion or other application shall file and serve, within twenty (20) days after being served with such motion or application, a legal memorandum with citations to authority in opposition to the relief requested.  Failure to respond within the time allowed may be deemed sufficient cause for granting the motion by default or for the Court to construe that there is no objection to the motion.  If a party has no objection to a motion and does not intend to file a responsive memorandum, counsel should file a written notice with the Clerk of the Court so indicating.

3.    Replies.  If upon receipt of an opposing memorandum, counsel determines further argument of his client's position is required, counsel shall file a reply within five (5) days of the receipt of opposing memorandum.

4.    Discovery motions accompanied by good faith certification.  Before filing a motion to compel pursuant to Rule 1.380, *Fla. R. Civ. P.*, or a motion for protective order

Page 2 of 5

Highly Confidential

BSA-PLAN_01422675

**SA 0929**

pursuant to Rule 1.280(c), counsel shall confer and correspond with counsel for the opposing party in a good faith effort to resolve by agreement the issues raised, and shall certify to the Court at the time of filing the motion that s/he has conferred with opposing counsel and has been unable to resolve the dispute and <u>shall</u> attach to the motion a copy of the correspondence with opposing counsel of the good faith effort to resolve the discovery dispute. The failure to comply with this paragraph may result in the Court entering an order striking, without prejudice, the discovery motion.

5.     Content of discovery motions. Except for motions grounded upon a complete failure to respond to discovery, discovery motions shall: (1) quote in full each interrogatory, question on deposition, request for admission, or request for production to which the motion is addressed; (2) quote in full the objection and grounds given therefore; and (3) state (with citations to authority) the reasons such objection should be overruled or sustained. If there is an allegation in the motion to compel of a complete failure to respond or object to discovery and there has been no request for an extension of time, then the Court may enter an ex parte order compelling discovery. *See Waters v. American General Corporation*, 770 So. 2d 1275 (Fla. 4th DCA 2000).

6.     Oral argument. Motions and other applications will ordinarily be determined by the Court on the basis of motion papers and legal memoranda unless a hearing is required by rule or law. (For example, under Rule 1.510, *Fla. R. Civ. P.*, **summary judgment motions must be set for hearing**. This would not, however, extinguish the requirement that the motion be accompanied by and responded to with memoranda taking into consideration the time frame under Rule 1.510, *Fla. R. Civ. P.*, for filing supporting and opposing affidavits, etc.)

The Court may permit oral argument upon the written request of any interested party or upon the Court's own motion. Requests for oral argument must accompany the motion or

Highly Confidential

BSA-PLAN_01422676
**SA 0930**

opposing legal memorandum and must estimate the time required for argument.  When a request for hearing is granted, counsel for the requesting party will be asked to coordinate the calendars of the Court and counsel or the Court, on its own, may schedule the hearing.

ORAL ARGUMENT FOR DISPOSITIVE MOTIONS (including but not limited to motions for summary judgment) MUST BE HELD NO LESS THAN SIXTY (60) DAYS PRIOR TO THE PRETRIAL CONFERENCE.

7.    Page limitation.  Absent prior permission of the Court, no party shall file a legal memorandum in excess of fifteen (15) pages in length.

8.    Motions to be filed with the Clerk.  All original pleadings and papers shall be filed with the Clerk of the Court.

9.    Form of motions.  All applications to the Court requesting relief in any form, or citing authorities or presenting argument with respect to any matter awaiting decision, shall be made in writing in accordance with this order and in appropriate form pursuant to the Florida Rules of Civil Procedure, and unless invited or directed by the Court, should not be addressed or presented to the Court in the form of a letter or the like. Ex parte letters will be returned by the court.

10.    Time calculations.  All time calculations herein shall be subject to Rule 1.090, *Fla. R. Civ. P.*

11.    In limine motions.   Unless oral argument is requested and granted, or otherwise ordered by the Court, in limine motions will be resolved without a hearing.  All motions in limine must be filed no later than 15 days before the start of the trial term or the Court may deny the motion as being untimely. The parties shall confer and attempt to reach an agreement to as many issues as possible as are raised by Motions in Limine.

12.    Emergency motions.  Motions of an emergency nature may be considered and determined by the Court at any time in its discretion.

Highly Confidential

BSA-PLAN_01422677

SA 0931

13.     Proposed Orders. IN THE EVENT ONE PARTY IS DRAFTING A PROPOSED ORDER AT THE REQUEST OF THE COURT, THE PARTY SHALL PRESENT THE PROPOSED ORDER TO THE OTHER PARTY OR PARTIES AND ADVISE THE COURT WHETHER THERE IS AGREEMENT TO THE FORM OF THE CONTENTS OF THE PROPOSED ORDER. IF THERE IS NO AGREEMENT, EACH PARTY SHALL SUBMIT A PROPOSED ORDER TO THE COURT NO LATER THAN 20 DAYS OF THE HEARING.

FAILURE OF EITHER PARTY TO COMPLY WITH THE TERMS OF THIS ORDER MAY RESULT IN THE STRIKING OF PLEADINGS AND/OR THE MOTION(S) OR PARTS OF THEM OR STAYING FURTHER PROCEEDINGS UNTIL THIS ORDER IS COMPLIED WITH OR DISMISSING THE ACTION OR RENDERING JUDGMENT BY DEFAULT AGAINST THE NONCOMPLIANT PARTY.

**IT IS SO ORDERED** in chambers, Marion County Judicial Center, Ocala, Florida, on this 28th day of August 2018.

_____
Edward L. Scott
Circuit Judge

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been furnished by the Florida Court's e-filing portal to the following this 28th day of August 2018.

Paul L. San Giovanni, Esquire
Morgan & Morgan, P.A.
Counsel for Plaintiff

Spenser H. Silverglate, Esquire
Clarke Silverglate, P.A.
Counsel for Defendants Boy Scouts of America and North Florida Council, Inc. Boy Scouts of America

Richards H. Ford, Esquire
Wicker Smith, et al.
Counsel for Defendant Silver Spring Shores Presbyterian Church

_____
Becky Knipe, Judicial Assistant

Page 5 of 5

Highly Confidential

Case 1:22-cv-01237-RGA   Document 73   Filed 12/07/22   Page 55 of 482 PageID #: 4915

Filing # 77928654 E-Filed 09/14/2018 05:21:20 PM   Case 5:20-cv-00069   Document 1-4   Filed 02/18/20   Page 139 of 805 PageID 316

IN THE CIRCUIT COURT OF THE 5TH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

## AGREED MOTION FOR EXTENSION OF TIME TO REPLY TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiff, A.A. ("Plaintiff"), by and through his undersigned counsel, pursuant to Florida Rule of Civil Procedure 1.200(a), requests this Honorable Court for an extension of time to respond to Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc.'s ("Council"), Motion to Dismiss filed on August 2, 2018 and Defendant's Silver Springs Shore's Presbyterian Church, Inc.'s Motion to Dismiss filed on August 20, 2018, and as grounds in support advises the Court of opposing counsels' agreement to the same and otherwise states as follows:

1.     Defendants' filed their respective Motions to Dismiss on August 2, 2018 and August 20, 2018.

Highly Confidential

2.      Pursuant to the Order rendered by the Court on August 28, 2018, the Plaintiff's Response to Defendants' Motion to Dismiss is due to be filed and served on or before September 17, 2018.

3.      The Plaintiff respectfully requests additional time to prepare a response to the Motion for reasons which include the following:

a.   <u>Extended Complex Construction Jury Trial Recently Completed</u>. Plaintiff's counsel recently completed a three (3) week jury trial of a complex construction matter on August 30, 2018, which occupied most of the past 5 months.  Since that time, counsel has been engaged in post-trial tasks and in tasks addressing a substantial number of responses, hearings, motions and attention on other matters that were delayed.  Counsel continues to manage these tasks through the current due date for the response.

b.   <u>Surgery on September 7, 2018</u>.  During the trial, Plaintiff's counsel tore his left bicep, which required surgery on Friday, September 7, 2018.  Counsel's tasks are currently impacted by a splint and limited time in the office, with a post-surgery appointment on the current due date for the response.  As a result, counsel's productivity has been impacted substantially.

4.      For these reasons, and others, Plaintiff's counsel requires additional time through and including October 5, 2018, to respond to the subject motions.

5.      Plaintiff's counsel has discussed the requested extension with counsel for the Defendants' and Defendants' counsel has no objection to the requested extension through October 5, 2018.  All counsel are agreed to the proposed order attached hereto as Exhibit "A".

6.      The undersigned certifies that this Motion is made in good faith and not for the purpose of delay.

2

Highly Confidential

BSA-PLAN_01422680

SA 0934

**WHEREFORE,** Plaintiff, A.A., respectfully request this Court to enter an Order granting Plaintiff through and including October 5, 2018 to file and serve a response to the Defendants' Motions to Dismiss.

Dated: September 14, 2018.

**MORGAN & MORGAN, P.A.**
**Business Trial Group**

*s/Paul L. SanGiovanni*
**Paul L. SanGiovanni**
Florida Bar No. 0513164
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone:  (407)418-6041
Facsimile:  (407)245-3394
Primary E-mail:  PSangi@forthepeople.com
Secondary E-mail MTodd@forthepeople.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the September 14, 2018, I electronically filed the foregoing with the Clerk of the Court by using the Court's E-portal filing system, which will serve a notice of the electronic filing via e-mail to all counsel of record.

*s/Paul L. SanGiovanni*
**Paul L. SanGiovanni**

3

BSA-PLAN_01422681
SA 0935

IN THE CIRCUIT COURT OF THE
5TH JUDICIAL CIRCUIT IN AND
FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

     Plaintiff,

vs.

THE BOY SCOUTS OF
AMERICA NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS
OF AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH,
INC.,

     Defendants.

_____/

## AGREED ORDER ON MOTION FOR EXTENSION OF TIME TO REPLY TO DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE having come on before the Court on Defendant's Motion for

Extension of Time to Respond to Defendants' Motions to Dismiss and the Court

having been advised of agreement by and between counsel for parties, it is hereby

ORDERED AND ADJUDGED that:

1.    Plaintiff's Motion for Extension of Time is granted;

---

*EXHIBIT "A" TO AGREED MOTION FOR EXTENSION OF TIME TO RESPOND TO MOTIONS TO DISMISS*

Highly Confidential

BSA-PLAN_01422682

SA 0936

2.      The deadline for Plaintiff's response shall be extended through and

including October 5, 2018 within which to file and serve a response to Defendants'

Motions to Dismiss served August 2, 2018 and August 20, 2018, respectively.

DONE AND ORDERED in Chambers, in Marion County, Florida this _____

day of September, 2018.

*Specimen Exhibit - do not execute*
_____
EDWARD L. SCOTT
JUDGE OF THE CIRCUIT COURT

Copies furnished to:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail:  PSangi@forthepeople.com
**Counsel for Plaintiff**

Spencer H. Silverglate
Francisco Ramos, Jr.
Shannon P. McKenna
Clarke Silvergate, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
E-mail: ssilverglate@cspalaw.com
E-mail: framos@cspalaw.com
E-mail: smckenna@cspalaw.com
**Counsel for Defendants, Boy Scouts of America and North Florida Council, Inc.**

Raychel Garcia
Wicker Smith O'Hara McCoy & Ford P.A.
390 North Orange Avenue, Suite 1000
Orlando, Florida 32801
**Counsel for Defendant, Silver Springs Shores Presbyterian Church, Inc.**

Highly Confidential

IN THE CIRCUIT COURT OF THE 5TH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, AND SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

## AGREED ORDER ON MOTION FOR EXTENSION OF TIME TO REPLY TO DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE having come on before the Court on Defendant's Motion for Extension of Time to Respond to Defendants' Motions to Dismiss and the Court having been advised of agreement by and between counsel for parties, it is hereby

ORDERED AND ADJUDGED that:

1.     Plaintiff's Motion for Extension of Time is granted;

BSA-PLAN_01422684
SA 0938

2.     The deadline for Plaintiff's response shall be extended through and
including October 5, 2018 within which to file and serve a response to Defendants'
Motions to Dismiss served August 2, 2018 and August 20, 2018, respectively.

DONE AND ORDERED in Chambers, in Marion County, Florida this 17th
day of September, 2018.

_____
EDWARD L. SCOTT
JUDGE OF THE CIRCUIT COURT

Copies furnished to:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail:  PSangi@forthepeople.com
**Counsel for Plaintiff**

Spencer H. Silverglate
Francisco Ramos, Jr.
Shannon P. McKenna
Clarke Silvergate, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
E-mail: ssilverglate@cspalaw.com
E-mail: framos@cspalaw.com
E-mail: smckenna@cspalaw.com
**Counsel for Defendants, Boy Scouts of America and North Florida Council,
Inc.**

Raychel Garcia
Wicker Smith O'Hara McCoy & Ford P.A.
390 North Orange Avenue, Suite 1000
Orlando, Florida 32801
**Counsel for Defendant, Silver Springs Shores Presbyterian Church, Inc.**

Highly Confidential

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                              CASE NO. 2016-CA-000167

     Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

     Defendants.
_____/

**BSA AND NORTH FLORIDA COUNCIL'S AGREED MOTION FOR EXTENSION
OF TIME TO FILE THEIR REPLY TO PLAINTIFF'S
RESPONSE TO THEIR MOTION TO DISMISS**

     Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc. ("North

Florida Council"), submit this agreed motion for an extension of time to file their reply to

Plaintiff's response to their Motion to Dismiss.  In support, BSA and North Florida Council state

the following:

     1.    BSA and North Florida Council filed their Motion to Dismiss ("Motion") on

August 2, 2018.

     2.    Pursuant to the Court's Order dated August 28, 2012, Plaintiff's response to the

Motion was due on or before September 17, 2018 and Defendants' reply is due five days later.

Page 1
CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131  Phone: 305.377.0700   Fax: 305.377.3001   www.cspalaw.com

Highly Confidential

BSA-PLAN_01422686
**SA 0940**

CASE NO. 2016-CA-000167

3.      On September 14, Plaintiff requested an 18-day extension to respond to the Motion.  Defendants agreed to the extension.

4.      On September 17, 2018, the Court entered an Agreed Order extending Plaintiff's deadline to respond to the Motion through and including October 5, 2018.  In total, Plaintiff will have had 64 days to respond to Defendants' Motion.

5.      Under the Court's Order allowing five days for a reply, BSA and North Florida Council's reply to Plaintiff's response will be due on or before October 10, 2018.

6.      The Motions raised significant legal issues regarding Plaintiff's 26-page, 120-paragraph, 10-count Complaint and its failure to state causes of action under its negligence, breach of fiduciary duty, and vicarious liability claims.

7.      Defendants will be in need of additional time to analyze and evaluate Plaintiff's response and to prepare a reasoned reply on the significant issues raised in the Motions.

8.      BSA and North Florida Council respectfully request an extension through and including October 26, 2018 in which to file their reply to Plaintiff's response to the Motion.

9.      This Motion is made in good faith and not for the purposes of delay.

10.     Counsel for Plaintiff agrees to the requested extension through and including October 26, 2018, and has agreed to the language in the attached proposed Order.

11.     No prejudice will result because the case is in its infancy and the motion is agreed.

Wherefore, BSA and North Florida Council respectfully request entry of the attached Order granting them the requested extension of time in which to file their replies to Plaintiff's response to the Motion.

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131  Phone: 305.377.0700   Fax: 305.377.3001   www.cspalaw.com

Highly Confidential

BSA-PLAN_01422687

**SA 0941**

CASE NO. 2016-CA-000167

Respectfully submitted by,

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida  33131
Telephone:  (305) 377-0700
Facsimile:   (305) 377-3001

By: /s/Spencer H. Silverglate
        Spencer H. Silverglate
        Florida Bar No. 769223
        ssilverglate@cspalaw.com
        mpedraza@cspalaw.com
        Francisco Ramos, Jr.
        Florida Bar No. 114766
        framos@cspalaw.com
        sdelosreyes@cspalaw.com
        Shannon P. McKenna
        Florida Bar No. 385158
        smckenna@cspalaw.com
        aford@cspalaw.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the

Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 27th day of September,

2018, to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
        Spencer H. Silverglate

444174

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131  Phone: 305.377.0700  Fax: 305.377.3001  www.cspalaw.com

Highly Confidential

BSA-PLAN_01422688
SA 0942

Case 1:22-cv-01237-RGA   Document 73   Filed 12/07/22   Page 65 of 482 PageID #: 4925

Filing # 78730631 E-Filed 10/02/2018 09:41:12 PM
Case 5:20-cv-00069   Document 4-1   Filed 02/18/20   Page 149 of 805 PageID 326

IN THE CIRCUIT COURT OF THE 5TH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, AND SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

## AGREED ORDER ON MOTION FOR EXTENSION OF TIME TO REPLY TO DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE having come on before the Court on Defendant's Motion for Extension of Time to Respond to Defendants' Motions to Dismiss and the Court having been advised of agreement by and between counsel for parties, it is hereby

ORDERED AND ADJUDGED that:

1.    Plaintiff's Motion for Extension of Time is granted;

Highly Confidential

2.      The deadline for Plaintiff's response shall be extended through and including October 5, 2018 within which to file and serve a response to Defendants' Motions to Dismiss served August 2, 2018 and August 20, 2018, respectively.

DONE AND ORDERED in Chambers, in Marion County, Florida this 2 day of ~~September~~ *Oct.*, 2018.

_____
EDWARD L. SCOTT
JUDGE OF THE CIRCUIT COURT

Copies furnished to:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail:  PSangi@forthepeople.com
**Counsel for Plaintiff**

Spencer H. Silverglate
Francisco Ramos, Jr.
Shannon P. McKenna
Clarke Silvergate, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
E-mail: ssilverglate@cspalaw.com
E-mail: framos@cspalaw.com
E-mail: smckenna@cspalaw.com
**Counsel for Defendants, Boy Scouts of America and North Florida Council, Inc.**

Raychel Garcia
Wicker Smith O'Hara McCoy & Ford P.A.
390 North Orange Avenue, Suite 1000
Orlando, Florida 32801
**Counsel for Defendant, Silver Springs Shores Presbyterian Church, Inc.**

BSA-PLAN_01422690
**SA 0944**

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                                    CASE NO. 2016-CA-000167

      Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

      Defendants.
_____/

**AGREED ORDER GRANTING BSA AND NORTH FLORIDA COUNCIL'S AGREED
MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLY TO PLAINTIFF'S
RESPONSE TO THEIR MOTION TO DISMISS**

      THIS CAUSE having come before the Court upon Defendants', Boy Scouts of America

("BSA") and North Florida Council, Inc. ("North Florida Council"), Agreed Motion for

Extension of Time to File Their Reply to Plaintiff's Response to Their Motion to Dismiss, and

the Court having reviewed the Agreed Motion, having been advised of agreement by and

between counsel for parties, and being otherwise duly advised in the premises, it is hereby

Highly Confidential

BSA-PLAN_01422691
**SA 0945**

CASE NO. 2016-CA-000167

ORDERED AND ADJUDGED that BSA and North Florida Council's Motion is GRANTED.  BSA and North Florida Council shall file their reply to Plaintiff's response to their Motion to Dismiss on or before October 26, 2018.

DONE AND ORDERED in Chambers in Marion County, Florida this ___ day of October, 2018.

EDWARD L. SCOTT
CIRCUIT COURT JUDGE

cc:     Counsel for Plaintiff:
        Paul L. SanGiovanni,  psangi@forthepeople.com, mtodd@forthepeople.com

        Counsel for BSA and Council:
        Spencer H. Silverglate, ssilverglate@cspalaw.com, mpedraza@cspalaw.com
        Francisco Ramos, Jr., framos@cspalaw.com, sdelosreyes@cspalaw.com
        Shannon P. McKenna, smckenna@cspalaw.com, aford@cspalaw.com

        Counsel for Silver Springs Shores Presbyterian Church, Inc.:
        Rachel Garcia, rgarcia@wickersmith.com, ndurham@wickersmith.com

Highly Confidential

IN THE CIRCUIT COURT OF THE 5TH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

### AGREED MOTION FOR ONE (1) DAY EXTENSION OF TIME TO RESPOND TO DEFENDANTS' MOTIONS TO DISMISS AND TO A CONSOLIDATE RESPONSE

Plaintiff, A.A. ("Plaintiff"), by and through his undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.200(a), requests this Honorable Court for an extension of time to respond to Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc.'s ("Council"), Motion to Dismiss filed on August 2, 2018 and Defendant's Silver Springs Shore's Presbyterian Church, Inc.'s Motion to Dismiss filed on August 20, 2018, and as grounds in support advises the Court of opposing counsels' agreement to the same and otherwise states as follows:

1.     Defendants' filed their respective Motions to Dismiss on August 2, 2018 and August 20, 2018.

BSA-PLAN_01422693

SA 0947

2.      Pursuant to the Order rendered by the Court on August 28, 2018, the Plaintiff's Response to Defendants' Motion to Dismiss is due to be filed and served on or before September 17, 2018.  By subsequent Order and agreement, the response date was extended to October 5, 2018 due to the impact of several enumerated circumstances described in that motion, including the Plaintiff's counsel's involvement in an extended three-week trial and immediately subsequent surgery.

3.      Pursuant to the Order rendered by the Court on August 28, 2018, the Defendants' Response to Plaintiff's response was due to be filed and served on or before September 28, 2018. By subsequent Order and agreement, the response date was extended to October 26, 2018.

4.      The Plaintiff respectfully requests additional time of one (1) business day, over the weekend to finalize the response, due to continuing impacts of the described matters, and an additional unforeseen matter of today.

5.      Plaintiff's counsel has discussed the requested extension with counsel for the Defendants' counsel and Defendants' counsel have no objection to the requested extension through October 8, 2018.

6.      In exchange, Defendants have requested and Plaintiffs' counsel has agreed, that Defendants may have an additional one (1) business day/over the weekend extension on their respective responses, from the extension already provided by Order, to through and including October 29, 2018.

7.      Further, as Plaintiff's counsel continues to finalize the response, including addressing several overlapping issues raised by both Defendants, it has occurred to the Plaintiff that judicial economy may be served by filing a single consolidated reply, rather than to repeat issues in two separate responses.

2

BSA-PLAN_01422694

SA 0948

8.      The Court's rules provide that the Plaintiff may respond to the Motions with two (2) separate fifteen (15) page memoranda.   Plaintiff has proposed responding with one (1) twenty-five (25) page memorandum.   All counsel are agreed to a consolidated reply. The Plaintiff's counsel's work to consolidate these responses is, in part, also a ground for the requested extension of one (1) business day.

9.      Plaintiff proposes the order attached hereto as Exhibit "A" to implement the counsel's agreements.

10.      The undersigned certifies that this Motion is made in good faith and not for the purpose of delay.

**WHEREFORE,** Plaintiff, A.A., respectfully request this Court enter an Order granting Plaintiff through and including October 8, 2018 to file and serve a response to the Defendants' Motions to Dismiss, granting the Defendants through and including October 29 to file an serve a reply to the Plaintiff's response and providing that the Plaintiff may respond to the Motions with a single responsive brief not to exceed twenty-five (25) pages.

Dated: October 5, 2018.

**MORGAN & MORGAN, P.A.**
**Business Trial Group**

*s/Paul L. SanGiovanni*
**Paul L. SanGiovanni**
Florida Bar No. 0513164
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone:  (407)418-6041
Facsimile:  (407)245-3394
Primary E-mail:  PSangi@forthepeople.com
Secondary E-mail MTodd@forthepeople.com
*Attorneys for Plaintiff*

3

BSA-PLAN_01422695
SA 0949

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the October 5, 2018, I electronically filed the foregoing with the Clerk of the Court by using the Court's E-portal filing system, which will serve a notice of the electronic filing via e-mail to all counsel of record.

<div align="right">

<u>*s/Paul L. SanGiovanni*</u>
**Paul L. SanGiovanni**

</div>

4

IN THE CIRCUIT COURT OF THE
5TH JUDICIAL CIRCUIT IN AND
FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF
AMERICA NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS
OF AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH,
INC.,

      Defendants.

_____/

## AGREED ORDER ON MOTION FOR ONE (1) DAY EXTENSION OF TIME TO RESPOND TO DEFENDANTS' MOTIONS TO DISMISS AND TO A CONSOLIDATE RESPONSE

THIS CAUSE having come before the Court on Plaintiff's Motion for One (1) Day Extension of Time to Respond to Defendants' Motions to Dismiss and to Consolidate a Response, and the Court having been advised of agreement by and between counsel for parties, it is hereby

ORDERED AND ADJUDGED that:

1.    Plaintiff's Agreed Motion is granted;

*Exhibit "A" to Motion for Extension*

BSA-PLAN_01422697
SA 0951

2.      The deadline for Plaintiff's response shall be extended through and including October 8, 2018 within which to file and serve a response to Defendants' Motions to Dismiss served August 2, 2018 and August 20, 2018, respectively.

3.      The Plaintiff may respond by filing a single consolidated memorandum not to exceed twenty-five (25) pages.

4.      The deadline for each Defendant to file and serve a reply to the Plaintiff's response shall be extended through and including October 29, 2018.

DONE AND ORDERED in Chambers, in Marion County, Florida this _____ day of October, 2018.

| Specimen Exhibit - Not for Rendition |
| --- |

EDWARD L. SCOTT
JUDGE OF THE CIRCUIT COURT

Copies furnished to:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail:  PSangi@forthepeople.com
**Counsel for Plaintiff**

Spencer H. Silverglate
Francisco Ramos, Jr.
Shannon P. McKenna
Clarke Silverglate, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
E-mail: ssilverglate@cspalaw.com
E-mail: framos@cspalaw.com
E-mail: smckenna@cspalaw.com
**Counsel for Defendants, Boy Scouts of America and North Florida Council, Inc.**

Raychel Garcia

Wicker Smith O'Hara McCoy & Ford P.A.

390 North Orange Avenue, Suite 1000

Orlando, Florida 32801

**Counsel for Defendant, Silver Springs Shores Presbyterian Church, Inc.**

Highly Confidential

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

### PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND INITIAL COMPLAINT

Plaintiff, A.A. ("Plaintiff"), files this Response and Incorporated Memorandum of Law in Opposition to the Motions to Dismiss served by Defendants, BOY SCOUTS OF AMERICA, NORTH FLORIDA COUNCIL, INC. and SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.

### INTRODUCTION

### The Complaint

On January 27, 2016, the Plaintiff, A.A., filed his initial Complaint against THE BOY SCOUTS OF AMERICA, (hereinafter referred to as the "BSA"), the NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, (hereinafter referred to as the "NORTH FLORIDA COUNCIL"), and the SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., (hereinafter referred to as the "SILVER SPRINGS SHORES"). BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES herein shall be collectively referred to as "Defendants".

Highly Confidential

BSA-PLAN_01422700
**SA 0954**

The preliminary allegations of the Complaint summarized the complex Hierarchical organization of the BSA, including how the BSA performs it mission through Councils (like the NORTH FLORIDA COUNCIL) and through Troops administrated by a chartering organization (like SILVER SPRINGS SHORES).   See, Paragraphs 13 – 26 of the Complaint (hereinafter referred to as "¶").

The Hierarchical organization of the BSA is complex and fact specific.  The allegations in the Complaint were intended to summarize the relationship of the parties for the purposes of notice pleading.

Among other allegations, the Complaint includes the following allegations (emphasis added):

> 20.   This chartering system reveals BSA's consent to allow local chartering organizations to operate the scouting program on its behalf and the chartering organizations' consent to operate the local troops subject to BSA's control or right to control.   Accordingly, the chartering organizations are the agents of BSA.

> . . . . .

> 24.   Here too, the chartering system shows BSA's consent to allow local COUNCIL's to operate the scouting program on its behalf within a specific geographic region, and the local COUNCIL's consent to operate the scouting program subject to BSA's control or right to control.   Thus, the local COUNCIL's are agents of BSA.

> 25.   BSA cannot operate its scouting program without the consent and cooperation of the local COUNCIL's and chartering organizations. Conversely, the chartering organizations and local COUNCIL's cannot operate and supervise local scouting troops without the consent of BSA.

> . . . . . .

> 55.   At all relevant times, George Fout [the Scoutmaster for A.A.'s troop in whose home much of the abuse occurred] and Steve Fout [the assistant Scoutmaster and son of George Fout] were acting as the agents of Defendant BSA, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES by leading Boy Scouts of America Troop 448.

2

BSA-PLAN_01422701
SA 0955

If required, the Plaintiff is able to supplement the allegations to provide additional information regarding the organization of the BSA and the respective agency relationships among the Defendants and the troop leadership, including Steve Fout, A.A.'s Scoutmaster and father of George Fout, the perpetrator of the sexual abuse and the Assistant Scoutmaster.

As to the specific, and unique, facts in this case, the Complaint alleges that Steve Fout, was the Scoutmaster of A.A.'s Scout Troup 448.  ¶12.  George Fout, Steve's son, was the Assistant Scoutmaster of the same Troop. ¶11.  At all material times, George Fout, the son, was under the direct supervision of Steve Fout, the father.  ¶42.  The Complaint asserts that George Fout often showered Plaintiff with special attention and groomed Plaintiff for sexual abuse by gaining A.A's trust and admiration.  ¶¶s 44 and 45.  The Complaint alleges that A.A. would leave the meetings "held on its premises" with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.[1] The Complaint alleges that the BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, knew or should have known that A.A. was spending time at the Fout's residence.  Id. The Complaint alleges that A.A. would "spend the night" at the Fout's home. ¶ 52.

Moreover, particularly unique to this case, the Complaint alleges that Steve Fout, the father, and the Scoutmaster for the BSA, knew or should have known that his son, the Assistant Scoutmaster, was abusing scouts under Steve Fout's own roof.  ¶104 - 106.  In the case of A.A., in particular, the Complaint asserts that this abuse, under Steve Fout's roof continued for eight (8) years. ¶¶ 46 – 50.

---

[1] Though not specifically alleged, it is a reasonable inference that these activities occurred during Scout meetings on the property of Scouting activities.

3

BSA-PLAN_01422702

SA 0956

In addition, the Complaint summarized the history of pedophilia in scouting and in the BSA specifically (¶¶s 27 – 30) to generally describe the degree of notice that the BSA has of the substantial risk that the mission presents to youth, particularly at risk youth, and the consequent duties, including special and fiduciary duties arising therefrom to protect the children in their care.

Without limitation, the Complaint includes the allegation that "BSA has known for decades of the high degree of risk that adult Scoutmasters and volunteers may sexually abuse minor scout members." ¶ 26.

Having alleged agency among the Defendants, and notice to the principal and agents of the risk of exposure to pedophilia to youth in scouting, the Complaint alleges that the failure of the BSA and its agents to properly manage the risk, and otherwise protect the Plaintiff from the risk resulted in sexual abuse of the Plaintiff and resulting damages.

Specifically, the Complaint sounds in ten (10) Counts as follow:

    Negligence Counts:

        Count I.        Negligence against Silver Springs Shores

        Count II        Negligence of North Florida Council

        Count III       Negligence of BSA

    Breach of Fiduciary Duty Counts:

        Count IV       Breach of Fiduciary Duty of Silver Springs Shores

        Count V.       Breach of Fiduciary Duty of North Florida Council

        Count VI       Breach of Fiduciary Duty of BSA

Highly Confidential

BSA-PLAN_01422703

SA 0957

<u>Vicarious Liability Counts</u>:

| | |
|---|---|
| Count VII | Vicarious Liability of Silver Springs, North Florida Council and BSA for Sexual Batter by George Fout [The Perpetrator if the sexual abuse against A.A.] |
| Count VIII | Vicarious Liability of Silver Springs, North Florida Council and BSA for Negligence and Breach of Fiduciary Duty by Steve Fout [Scoutmaster] |
| Count IX | Vicarious Liability of North Florida Council and BSA for Negligence and Breach of Fiduciary Duty of Silver Springs Shores |
| Count X | Vicarious Liability of BSA for Negligence and Breach of Fiduciary Duty of North Florida Council |

### **Summary of the Litigation**

Subsequent to the filing of the Complaint, the parties stipulated to stay the case for 90 days on February 28, 2018, with a subsequent order rendered thereupon on March 12, 2018. The intent of the stay was to provide the parties with the opportunity to participate in confidential pre-litigation discovery and mediation. Pursuant to the stipulation, the Plaintiff provided the Defendants with the confidential pre-suit discovery requests. However, due to difficulties in securing documents from third parties and the Plaintiff's counsel's participation in a substantial trial, the statement of the Plaintiff and the mediation could not be scheduled within the 90 days.

In addition, the BSA and NORTH FLORIDA COUNCIL substituted counsel on July 2, 2018.

At the conclusion of the 90 day stay, the Defendants' filed their respective Motions to Dismiss on August 2, 2018 and August 20, 2018. Although the motions were directed to the initial Complaint, all Defendants have moved to have the Complaint dismissed "with prejudice."

5

BSA-PLAN_01422704

**SA 0958**

Defendants have advised the Plaintiff that they are no longer agreeable to participating in pre-litigation mediation at this time.[2]

Relative to the Complaint, additional details of the relationship among the BSA, NORTH FLORIDA COUNCIL, SILVER SPRINGS SHORES and the Scoutmasters and troop leaders which were not incorporated into the Complaint are available which may supplement the current allegations of the Complaint.  In addition, supplemental information supporting these details has been identified.  Further, since the time of the filing of the Complaint, additional facts pertaining to the abuse have been identified.  These include, without limitation:

- The perpetrator, George Fout, was convicted for the abuse of at least three (3) other scouts.  Each of these scouts was in the same troop as A.A.  Each scout was groomed by George Fout for abuse in this troop and each scout was abused, in fact, by George Fout.  George Fout's relationship with A.A. and these scouts, including his behavior during scouting activities at Silver Springs and during other scouting activities, had qualities which should have put Scoutmasters and other agents and representatives of the Defendants on notice that these scouts were being groomed for abuse by Fout, or were being abused in fact.  The Scoutmasters were either negligently trained to observe these relationships, or were negligent in observing the relationship and taking action to protect the youth.

- Incidents of abuse, of notice of a relationship which was abusive occurred between George Fout and A.A., during scouting events.

  These are in addition to the allegation currently in the Complaint that "the Defendants knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on [Silver Springs] premises with Scoutmasters Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of Boy Scout Policy."  ¶¶s 61(a), 67(a), 73(a), 80(a), 87(a), 94(a), 106(a), 112(a), and 117(a).  Without limitation, these include abuse during a scouting campout in July of 2009, when A.A. was 13.  George Fout came into A.A.'s room at the campout and touched his genitals through his pants.  This was soon after Fout's abuse had escalated to include penetration.

---

[2] The Plaintiff has contemporaneously moved the Court to order mediation as was contemplated at the time of the Stipulation.  Among other things, mediation provides the possibility that substantial judicial resources, the finances of the parties and the emotional toll on the victim of the sexual assault may be spared.

Highly Confidential

BSA-PLAN_01422705

**SA 0959**

- For the purposes of confidentiality, A.A.'s date of birth has been disclosed privately to the Defendants, but is not included in the public record.  For the purpose of this response, the Plaintiff asserts that A.A. turned 16 years old after January 27, 2012.  As such, all instances of abuse which occurred prior to January 27, 2012 would have occurred while A.A. was under 16 years old.  Any instance of abuse which occurred after January 27, 2012, would have occurred within four (4) years of the filing of the litigation.[3]

- Prejudgment interest does not appear to be applicable in this matter and to that extent, an Amended Complaint would eliminate that element of the prayer for relief.

The Plaintiff has incorporated sufficient facts and grounds in the Complaint to require an answer from the Defendants.  However, if required by the Court, the Plaintiff is able to supplement the allegations to provide additional information to supplement the Complaint.

The Plaintiff respectfully requests that the Court deny motions to dismiss.  The Complaint includes sufficient allegations to put the Defendants on notice of the claims against them, satisfies the essential elements for each claim and provides sufficient grounds for the causes of action to proceed to discovery.

In the interest of judicial economy and by agreement of the party and agreed motion, A.A., files this consolidated response to the motions, inasmuch of many of the grounds for the Defendants' motions overlap.

The matters raised by the Defendants are not matters to be addressed at the pleading stage. Indeed, most of the cases cited by the Defendants in support of their arguments are appeals from summary judgment or verdicts in the trial court.

---

[3] Even then, as asserted below, a motion to dismiss in not the appropriate vehicle to assert or determine the statute of limitations, particularly in the complex and factually intensive area of sexual abuse.  By way of full disclosure, upon additional information one of the incidents of abuse may have occurred subsequent to A.A.'s sixteenth (16) birthday.  However, as noted, the incident would have occurred within four (4) years of the filing of this action.

7

Alternatively, A.A. respectfully requests that the Court grant the Plaintiff leave to amend the initial Complaint to address the issues raised by the Defendants and to incorporate additional allegations identified subsequent to the filing of the initial Complaint.

<u>**Standard of Review for a Motion to Dismiss**</u>

In evaluating a motion to dismiss, the trial court determines whether a claim states a cause of action upon which relief can be granted based upon the factual allegations contained within the four corners of the Complaint, drawing all inferences in favor of the pleader, and accepting all material allegations as true. *See, Sobi v. Fairfield Resorts, Inc.*, 846 So.2d 1204, 1204 (Fla. 5th DCA 2003); *Davis By & Through Davis v. Bell*, 705 So. 2d 108, 109 (Fla. 2d DCA 1998). Importantly, "a Complaint which states a cause of action on <u>any</u> ground should not be dismissed for failure to state a cause of action." *Nicholson v. Kellin*, 481 So.2d 931, 936 (Fla. 5th DCA 1985) (emphasis in original).

Stated differently, a Complaint should not be dismissed "unless the movant can establish beyond any doubt that the claimant could prove no set of facts whatsoever in support of his claim." *Morris v. Fla. Power & Light Co.*, 753 So.2d 153, 154 (Fla. 4th DCA 2000).

In this case, drawing all inferences in favor of the A.A., the Plaintiff has stated causes of action against each Defendant.  The Defendants should be required to answer the Complaint and the matter should advance.

8

BSA-PLAN_01422707

SA 0961

## ARGUMENT

The consolidated arguments of the Defendants generally address the issue of whether the Complaint sufficiently alleges a "duty" upon which liability may be asserted; with other ancillary issues also addressed.

### THE DUTY OF THE DEFENDANTS TOWARD THEIR SCOUTS

In summary, the Defendants argue that there is not alleged in the Complaint, <u>and cannot be alleged between these parties</u>, that the BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES have any duties toward individual scouts, including any general or fiduciary duty to warn or protect them from serial sexual abuse by one of its Assistant Scoutmasters when those activities occur under the roof of the Scoutmaster or during scouting activities.[4]

At first blush, that is a remarkable argument to be made by an national youth organization which specifically undertakes as its purpose "to provide, <u>through chartered organizations,</u> a program for boys, young men, and young women designed to encourage them to be faithful in their religious duties, build desirable qualities of character, train and involve them in the responsibilities of participating citizenship, and develop in them personal fitness" and represents that "all programs will be directed toward helping to develop the full potential of each member." The Purpose of the BSA. www.scouting.org/commissioners/bsa-mission/ (October 8, 2018).

---

[4] Throughout its brief, the BSA erroneously argues that are no allegations in the Complaint that the inappropriate activities of George Fout occurred during scouting activities. That is not correct. The Complaint clearly references that A.A. would leave scouting activities with the Fouts, against Boy Scout regulations. In addition, it can be inferred through the Complaint that Fout identified and groomed A.A. for the sexual abuse during scouting activities. Further, the Complaint alleges that the abuse occurred under circumstances by which the <u>Scoutmaster, not the perpetrator,</u> was aware of the abuse occurring under his own roof. In addition, as referenced above, A.A. is able to allege that abusive activities occurred during a scouting camp out.

9

BSA-PLAN_01422708

SA 0962

Moreover, on its face, as a matter of law, it is not consistent with the law or with the allegations of the Complaint.

**The Defendants had a general duty to act with reasonable care.**
**The Defendants had constructive knowledge of George Fout's abuse of A.A.**

The Florida Supreme Court has spoken on issues of general duty toward others, when an organization has undertaken an obligation or action.

Specifically, in *Nova Southeastern University vs. Gross*, 758 So 2d 86 (Fla., 2000), a university student was injured during an off-campus, school related activity.  She was assigned to an internship in a dangerous location and was sexually assaulted at the location.

There, as here, the University attempted to use the argument that the absence of a "special relationship" between the adult student and the University was a shield from liability for its neglect.

The Supreme Court rejected the defense.  Finding that a "special relationship" existed in that case, the Court went further holding that "fundamental principles of tort law" would also support liability in that case.  Quoting *Union Park Chappel vs. Hutt*, 670 So 2d. 64 (Fla, 1996), the Court stated:

> It is clearly established that one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care. *See Slemp v. City of North Miami*, 545 So.2d 256 (Fla.1989) (holding that even if city had no general duty to protect property owners from flooding due to natural causes, once city has undertaken to provide such protection, it assumes the responsibility to do so with reasonable care); *Banfield v. Addington*, 104 Fla. 661, 667, 140 So. 893, 896 (1932) (holding that one who undertakes to act is under an implied legal duty to act with reasonable care to ensure that the person or property of others will not be injured as a result of the undertaking); *Kowkabany v. Home Depot, Inc.*, 606 So.2d 716, 721 (Fla. 1st DCA 1992) (holding that by undertaking to safely load landscaping timbers into vehicle, defendant owed duty of reasonable care to bicyclist who was struck by timbers protruding from vehicle window); *Garrison Retirement Home v. Hancock*, 484 So.2d 1257, 1262 (Fla. 4th DCA 1985) (holding that

Highly Confidential

BSA-PLAN_01422709
**SA 0963**

retirement home that assumed and undertook care and supervision of retirement home resident owed duty to third party to exercise reasonable care in supervision of resident's activities). As this Court recognized over sixty years ago in *Banfield v. Addington,* "[i]n every situation where a man undertakes to act, ... he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured."

*Id.; see also Pate v. Threlkel,* 661 So.2d 278, 280 (Fla.1995)("A duty is thus established when the acts of a defendant in a particular case create a foreseeable zone of risk."). We find this fundamental principle of tort law is equally applicable in this case. There is no reason why a university may act without regard to the consequences of its actions while every other legal entity is charged with acting as a reasonably prudent person would in like or similar circumstances.

*Nova* at 89.  See also, *Shurben vs. Dollar Rent-A-Car,* 676 So 467 (Fla. 3rd DCA, 1996).

Similarly, as here, without the finding of any "special relationship", the BSA, NORTH FLORIDA COUNCIL, SILVER SPRINGS SHORES and Steve Fout, as their agent, each undertook to conduct a scouting program and solicited youth to participate.  Simply put, having undertaken to act, each Defendant individually, and collectively as agents for the other, had a duty to act as a reasonably prudent person would act in like or similar circumstances.

Clearly, the Complaint alleges that each Defendant failed to so act.  Repeated throughout the Complaint are the allegations at Paragraph 61, revised for each respective Defendant, and Steve Fout, that:

61    Defendant SILVER SPRINGS SHORES breached the duty it owed A.A., by acts or omissions which included, without limitation:

a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed. These included, without limitation that Defendant SILVER SPRINGS SHORES knew or should have known of the

11

BSA-PLAN_01422710
SA 0964

special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

The Complaint further includes allegations that the Defendants, through their agents acted unreasonably. The Complaint alleges that Steve Fout, the Scoutmaster of Boy Scout Troop 448, was an agent of SILVER SPRINGS SHORES, which is an agent of NORTH FLORIDA COUNCIL and the BSA. ¶55. The Complaint alleges that Steve Fout, as the Scoutmaster of Boy Scout Troop 448, knew or should have known of the abuse of a scout in his Boy Scout Troop. ¶106(a). The Complaint alleges that Steve Fout allowed the abuse to continue nevertheless.

Even without the "special" or "fiduciary" relationship discussed, below, this knowledge of a known danger creates in the principals the duty to protect the youth and liability in the principals for the failure to do so.

This duty, alleged together with breach, causation and damages support each negligence claim against the BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES as alleged in Counts I, II and III. The Motions to dismiss these counts should be denied and the matter should proceed to a jury's determination of the scope of the agency, degree of knowledge of the agent and the breach of the principals' related duties.

12

BSA-PLAN_01422711

SA 0965

**Special Relationship**
**The Sexual Abuse of George Fout was known to an agent of the Defendants**

In addition, the Complaint alleges a "special relationship" between the Defendants, and each of them and A.A.  ¶ 58 (SILVER SPRINGS), 65 (NORTH FLORIDA COUNCIL) and 71 (BSA)  When there is such a "special relationship", the institution not only has a duty to warn and protect against known dangers, but also has a duty to warn and protect against reasonably foreseeable dangers.

That there can be such a relationship between and institutional party and an individual member is well recognized.  See, *Nova*, supra, *Gross vs. Family Service Agency, Inc.* 716 So 2d 337 (Fla 4th DCA, 1998)

A review of the cases results in the conclusion that each case is particularly fact specific. There are no cases directly on point in the state of Florida, other than to generally state the principal that under certain "special relationships" the liability asserted by A.A., in this case can be imposed on institutional parties, such as the Defendants.

The Complaint includes several well recognized bases for the formation of the special relationship, including, that the abuse occurred while Plaintiff was in the care and custody of Defendants. (Comp. ¶ 53) and that the Defendants were substituting for Plaintiff's parents and George and Steve Fout were acting as agents of Defendants (in loco parentis). (Comp.  ¶¶ 54, 55, 56).

Further, institutional organizations, such as churches, are routinely held to have a "special relationship" toward minors who are sexually abused.  For example, in *C.J.C vs Corporation of the Catholic Bishop of Yakima*, 985 P.2d 262, (Wash. 1999), en banc, the Supreme Court of Washington considered the claims of sexual abuse victims molested as children by a deacon. The claims were dismissed on summary judgment.  On appeal, the Supreme Court reversed and

13

Highly Confidential

BSA-PLAN_01422712
SA 0966

remanded the case, finding that there existed disputed issues of fact whether a "special relationship" existed between the Catholic Church, as an institutional entity, and the children, even though the acts of the Deacon were criminal and even though they occurred off of church property.

The extended opinion of the Court, included the following:

> In particular, we find the conjunction of four factors present in the case before us decisive to finding the existence of a duty is not foreclosed as a matter of law: (1) the special relationship between the Church and deacon Wilson; (2) the special relationship between the Church and the plaintiffs; (3) the alleged knowledge of the risk of harm possessed by the Church; and (4) the alleged causal connection between Wilson's position in the Church and the resulting harm. Under these circumstances, we simply do not agree with the Church that its duty to take protective action was arbitrarily relieved at the church door. Where a protective special relationship exists, a principal is not free to ignore the risk posed by its agents, place such agents into association with vulnerable persons it would otherwise be required to protect, and then escape liability simply because the harm was accomplished off premises or after-hours. Under these facts, the focus is not on where or when the harm occurred, but on whether the Church or its individual officials negligently caused the harm by placing its agent into association with the plaintiffs when the risk was, or should have been, known.
>
> This approach is consistent with our cases recognizing a duty to prevent intentionally inflicted harm where the defendant is in a special relationship with either the tortfeasor or the victim, and where the defendant is or should be aware of the risk. [String citations omitted]
>
> Viewing the facts in the light most favorable to the plaintiffs, a jury could reasonably find Wilson's position in the Church was a causal factor in the resulting harm. Wilson was a prominent member of the Church, placed into positions of trust over children.  This position not only brought him into close connection with the children of the congregation, it allegedly inspired confidence to place the plaintiffs into his care. In addition, there is evidence that Wilson baby-sat the victims in order that their father could travel on Church business and that the Church was aware of this arrangement. Given the Church's specific and superior knowledge of the facts, a jury could reasonably find the Church knew or should have known the children of its congregation, and specifically these particular plaintiffs, were exposed to an unreasonable risk of harm at the hands of Wilson.

14

BSA-PLAN_01422713

SA 0967

> Our decision not to foreclose the imposition of a duty as a matter of law under these facts is supported by the strong public policy in favor of protecting children against acts of sexual abuse.

*Id*. at 726.

In general, the Complaint alleges generally, and it can be inferred that, in light of the history of pedophilia in the Boy Scouts, the risk of sexual abuse of its scouts was particularly great. ¶¶ 27 – 31. As a result, the BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES had a duty to warn and protect scouts in its care from sexual abuse by Scoutmasters and other volunteers including Assistant Scoutmasters.

Notably, this case also dismisses the Defendants' argument that the occurrence of some of the sexual abuse off premises of scouting activities – though under the roof of the Troop Scoutmaster – is relevant to the existence of the duty.

In this case, specifically, Steve Fout, as a Scoutmaster and agent of the Defendants knew or should have known that his Assistant Scoutmaster was sexually abusing his scouts and should have taken action to prevent George Fout's exposure to his scouts, to A.A. and to further abuse. Instead, he allowed it to continue.

In light of the highly fact specific nature of a finding of a "special relationship", it is also notable to consider the procedural posture of the cases cited by the Defendants. Specifically, in addition to each being factually distinguishable from the instant case, particularly with respect to Steve Fout's involvement, in most of the cases substantively relied upon by Defendants in their motions, the Plaintiff was provided with the opportunity to factually discover, develop and establish its allegations, either in opposition to a motion for summary judgment or to a jury.

- *Archbishop Coleman F. Carroll High School Inc. v. Maynoldi*, 30 So. 3d 533 (Fla. 2d DCA 2010)-Appeal from a jury verdict against school and diocese;

<center>15</center>

- *Roe v. Boy Scouts of America Corp.* 2012 WL 3933184- Appeal from a motion for <u>summary judgment</u>;

- *Special Olympics Florida, Inc. v. Showalter*, 6 So.3d 662 (Fla. 5th DCA 2009)- Appeal from a <u>jury verdict</u>;

- *Goss v. Human Services Associates, Inc.,* 79 So.3d 127 (Fla. 5th DCA 2012)- Appeal form a <u>summary judgment</u>;

- *Iglesia Cristina La Casa Del Senor, Inc. v. L.M.*, 783 So.2d 353 (Fla. 3d DCA 2001)- Appeal from a <u>jury verdict</u>;

- *Conception By and Through Concepcion v. Archdiocese of Miami By and Through McCarthy*, 693 So.2d 1103 (Fla. 3d DCA 1997)- Appeal from a <u>summary judgment</u>;

- *John Doe No. 77 v. Boy Scouts of America, Inc.*, 2015 WL 10000265 (Fla. 13th Cir. Ct. 2015)- Appeal from a <u>summary judgment.</u>

In summary, A.A. has sufficiently alleged the necessary elements to assert a duty of general negligence and a duty arising out of a "special relationship", such as would impose liability upon the Defendant for a breach of ordinary care, or a duty to protect or warn.  The Motions to Dismiss on these grounds should be denied.  To the extent that this Court would be inclined to dismiss the current Complaint, the Plaintiff respectfully requests leave to amend the Complaint.

<u>**Fiduciary Duty**</u>
<u>**The Sexual Abuse of George Fout was known to an agent of the Defendants**</u>

Similar to a "special relationship", a fiduciary duty extends "to every possible case ... in which there is confidence reposed on one side and the resulting superiority and influence on the other. .... The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another.  (citations omitted)." *Quinn v. Phipps,* 93 Fla. 805, 113 So. 419, 421 (1927)

16

BSA-PLAN_01422715
**SA 0969**

Said another way, "The law implies a fiduciary relationship "based on the circumstances surrounding [a] transaction and the relationship of the parties." *Maxwell v. First United Bank,* 782 So.2d 931, 933 (Fla. 4th DCA 2001). An implied fiduciary relationship will lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party. *Id.* at 934. " *Masztal vs. City of Miami*, 971 So 2d 803 (Fla 3rd DCA, 2007)

On point in Florida is the case of *Doe v. Evans*, 814 So.2d 370 (Fla. 2002). In *Doe*, the Florida Supreme Court found liability based on an implied fiduciary relationship that arose between a priest providing martial counseling and his counselee. The *Doe* Court "stressed that the liability in this case rests on the assertion of an abuse of a marital counseling relationship through an inappropriate sexual relationship." *Id* at 375. Similarly, Fout's sexual misconduct arose out of the relationship between Fout as the Assistant Scoutmaster for Plaintiff's Troop and Fout's involvement with the Defendant's organization.  As alleged in the Complaint, it is through this Assistant Scoutmaster and Boy Scouts Troop Member relationship, that Fout was able to select and groom Plaintiff for sexual abuse and battery. *See* (Complaint ¶¶ 43-46). Through this relationship, Plaintiff would leave Boy Scout Troop meetings and activities with George Fout in order for Fout to continue with his abuse upon Plaintiff.

Simply put, the Plaintiff has alleged specifically this type of relationship between the Defendant, and Steve Fout, and A.A.

Defendants cite to a Connecticut case for their authority to not impose a fiduciary obligation on an institutional defendant. *Roe v. Boy Scouts of Am., Corp.*, 2012 WL 3933184. Not only was *Roe* decided on a motion for summary judgment, not at the motion to dismiss phase, but the facts that allowed for the court to not hold the Boy Scouts of America liable for

17

the sexual abuse and battery that occurred on Boy Scout trips, was the fact that the abuser was the victim's stepfather. This is clearly not the case for Plaintiff. Unlike *Roe*, Plaintiff only knew his abuser because of the Defendants, and had no familial relationship with the abuser.

In summary, A.A. has sufficiently alleged the necessary elements to assert a fiduciary duty against the Defendants and each of them, such as would impose liability upon the Defendant for a breach of ordinary care, or a duty to protect or warn. The Motions to Dismiss on these grounds should be denied. To the extent that this Court would be inclined to dismiss the current Complaint, the Plaintiff respectfully requests leave to amend the Complaint.

<div align="center"><b>Vicarious Liability of Agents and Volunteers</b>
<b>The Sexual Abuse of George Fout was known to an agent of the Defendants</b></div>

Vicarious liability is founded upon imputed liability for the defendant for another party's tortious acts. *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So.2d 459, 467 (Fla. 2005). Liability is imputed when (1) an agency relationship exists between the defendant and the party who acted wrongfully and (2) the wrongful actions by the third party fall within the scope of agency. Generally, sexual assault and batteries by employees are held to be outside the scope of an employee's employment, and therefore insufficient to impose vicarious liability on the employer. *See Nazareth v. Herndon Ambulance Serv., Inc.,* 467 So.2d 1076, 1078 (Fla. 5th DCA 1985).

However, an exception exists where the tortfeasor was assisted in accomplishing the tort by virtue of the relationship. *See id.*; compare *Hennagan v. Dep't of High Saf. & Motor Veh.*, 467 So.2d 748 (Fla. 1st DCA 1985), with *Argriturf Mgmt., Inc. v. Roe*, 656 So.2d 954 (Fla. 2d DCA 1995). In *Hennagan*, the court was asked to determine whether the allegations in the Complaint were sufficient to survive a motion to dismiss. 467 So.2d at 749. The court found that the allegations in the Complaint were sufficient because it could not be said, as a matter of law,

<div align="center">18</div>

BSA-PLAN_01422717

SA 0971

that the allegations did not support a finding that the tortfeasor was assisted in accomplishing the tort by virtue of the employer/employee relationship he had with his employer.

As alleged in the Complaint, at all relevant times, George Fout, as Assistant Scoutmaster, was acting as agent for Defendants by implementing and maintain a scouting program at the local level with the consent an oversight of Defendants. (Comp. ¶¶ 98, 104, 110, 116).

Also alleged in the Complaint, at all relevant times, Steve Fout, as Scoutmaster, was acting as agent for Defendants by implementing and maintain a scouting program at the local level with the consent an oversight of Defendants. (Comp. ¶¶ 98, 104, 110, 116).  Steve Fout is alleged to have actual or constructive knowledge of the activities and abuse of George Fout. This knowledge and the liability arising from that knowledge are imputed upon the Defendants in the described Hierarchy.

Based upon the factual allegations contained within the four corners of the Complaint, drawing all inferences in favor of the Plaintiff, and accepting all material allegations as true, the Complaint states a cause of action upon which relief can be granted. Defendant's motion to dismiss should be denied. *See, Sobi v. Fairfield Resorts, Inc.*, 846 So.2d 1204, 1204 (Fla. 5th DCA 2003); *Davis By & Through Davis v. Bell*, 705 So. 2d 108, 109 (Fla. 2d DCA 1998). Defendant's motion to dismiss should be denied.

## OTHER ISSUES RAISED IN THE MOTION TO DISMISS

### The Statute of Limitations

Defendant SILVER SPRINGS SHORES raises the argument in the Motion to Dismiss that the Complaint is barred by the applicable four year statute of limitations.  Plaintiff initially filed his Complaint with this Court on January 27, 2016.  In the Complaint, Plaintiff asserted that

Highly Confidential

George Fout committed sexual abuse upon Plaintiff beginning in or about 2004 and continued to occur until 2012. (Comp. ¶¶ 46, 50).

The statute of limitations is an affirmative defense. Florida law is clear that an affirmative defense may not be considered on motion to dismiss a Complaint unless on the face of the Complaint there are allegations which demonstrate the existence of an affirmative defense. *Frank v. Campbell Prop. Mgmt., Inc.*, 351 So.2d 364 (Fla. 4th DCA 1977) (citation omitted); *see also* Fla. R. Civ. P. 1.110 (d). If there is additional information required to support a fatal defense, the recourse would be a motion for summary judgment or trial. *Minor v. Brunetti*, 43 So.3d 178, 179 (Fla. 3d DCA 2010)(holding that the "issue would be better addressed on a summary judgment motion or at trial, not on a motion to dismiss," where the trial court went beyond the four corners of the Complaint in granting a motion to dismiss).

Indeed, the crux of the SILVER SPRINGS SHORE's argument is that there is NOT enough information in the Complaint to assert the statute of limitations as a conclusive defense. On the basis alone, the ground for dismissal should be denied.

Substantively, the Defendant asserts that the statute of limitations would have commenced to run upon the *first* act of sexual misconduct perpetrated by George Fout.

That is actually the *opposite* of the law in Florida. George Fout's sexual abuse of A.A. is alleged throughout the Complaint to be continuing, and was continuing in fact. In a continuing tort, the statute of limitations runs from the time of the *last* tortious act. *DEI Quarry vs. Gateway Estates*, 249 So 3d 1287 (Fla 1ˢᵗ DCA, 2018), See also, *Clements vs. Sheffield* 626 So 2d 272 (1993). Also, in applicable is Section 95.11(9), which permits an action involving a minor under the age of 16, to commence the action *at any time*.

SILVER SPRINGS SHORE's motion to dismiss on this ground should be denied.

20

BSA-PLAN_01422719

SA 0973

Based upon the factual allegations contained within the four corners of the Complaint, drawing all inferences in favor of the Plaintiff, and accepting all material allegations as true, the Complaint states a cause of action upon which relief can be granted. Defendant's motion to dismiss should be denied.

### Knowledge of Steve Fout, Scoutmaster and Agent of the Defendants

Throughout the Complaint, Steve Fout, as the assigned Scoutmaster and an agent of the Defendants, is alleged to have knowledge of the sexual abuse of A.A. by his Assistant Scoutmaster. This fact distinguishes this case from the each of the cases cited by the Defendants.

This notice to Steve Fout, as agent of the Defendants, is notice to the principals, BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

The Complaint alleges that A.A. would leave the meetings "held on its premises" with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy. ¶¶ 61(a), 67(a), 73(a), 80(a), 87(a), 94(a), 106(a), 112(a), and 117(a).

The Complaint alleges that A.A. would "spend the night" at the Fout's home. ¶ 52. The Complaint alleges that Steve Fout, the father, and the Scoutmaster for the BSA, knew or should have known that his son, the Assistant Scoutmaster, was abusing scouts under Steve Fout's own roof. ¶104 - 106. In the case of A.A., in particular, the Complaint asserts that this abuse, under Steve Fout's roof continued for eight (8) years. ¶¶ 46 – 50.

From these alleged facts, it is an easy inference that the Scoutmaster of the Boy Scouts knows or should know abuse is occurring, or is likely to occur, when his adult son spends the night under his roof behind a closed door in his room with an 8 year old. When A.A. leaves the Scout meetings with the Fouts; and when the overnight activity continues for eight (8) years, as it

21

alleged in the Complaint, an inference is hardly required to reach the conclusion that Steve Fout, the father and the Scoutmaster of Troop 448 knew that his Assistant Scoutmaster was abusing the Boy Scout in his care.  It is also an easy inference that other leaders in the Scout Troop knew or should have known of George Fout's abuse.

<div align="center">**The BSA Policy**</div>

In addition, the BSA and the NORTH FLORIDA COUNCIL assert that the fact this activity falls outside of the applicable policy is determinative of the case.  In fact, the allegations would allow for an inference and a finding of liability on the grounds that the policy, in its drafting, implementation and application is insufficient for the danger posed.  The existence and breach of the BSA policy is not a ground upon which the Complaint may be dismissed.

<div align="center">**ALTERNATIVE MOTION TO AMEND THE COMPLAINT**</div>

To the extent this Court is inclined to dismiss any of A.A.'s claims, the Plaintiff requests that it be without prejudice to allow for leave to amend under Florida Rule of Civil Procedure 1.190(e). It is well established that a court's finding that a Complaint fails to state a cause of action, by itself, is not a sufficient ground on which to base an order of dismissal with prejudice. *Bouldin v. Okaloosa County*, 580 So. 2d 205, 207 (Fla. 1st DCA 1991); *Drakeford v. Barnett Bank of Tampa*, 694 So. 2d 822, 824 (Fla. 2d DCA 1997).  Instead, dismissal with prejudice should only be imposed when it conclusively appears from the face of the Complaint that there is no possible way to amend to state a cause of action, or when the privilege to amend has been abused.  *Obenschain v. Williams*, 750 So. 2d 771, 773 (Fla. 1st DCA 2000).

In other words, a court should not dismiss a Complaint with prejudice if it is actionable on any ground.  *Id*.  Dismissal with prejudice is an abuse of discretion where the party may be

<div align="center">22</div>

able to allege additional facts to support its causes of action or support another cause of action under a different legal theory.  *Id; Fla. Nat'l Org. of Women, Inc. v. State*, 832 So. 2d 911, 915 (Fla. 1st DCA 2002).

A.A has stated viable claims against the Defendants and the Motions should be denied. However, in the alternative, A.A. requests leave to amend in order to allege additional facts or a different legal theory of relief.  *Obenschain*, 750 So. 2d at 773.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to this Court's Motion Practice Procedure, Plaintiff respectfully request oral argument on this Motion to Dismiss. The estimated time required for argument is 1 hour.

Dated: October 8, 2018                    **MORGAN & MORGAN, P.A.**
                                          **Business Trial Group**

                                          */s/Paul L. SanGiovanni*
                                          Paul L. SanGiovanni, Esq.
                                          FBN 0513164
                                          20 N. Orange Avenue, Suite 1500
                                          Orlando, FL 32801
                                          Telephone:    (407)418-6041
                                          Facsimile:    (407)245-3394
                                          Primary email: PSangi@ForThePeople.com
                                          Secondary email: MTodd@ForThePeople.com
                                          *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 8, 2018, I electronically filed the foregoing with the Clerk of the Courts by using the Florida Courts eFiling Portal which will send electronic notification to all counsel of record.

                                          */s/ Paul L. SanGiovanni*
                                          Paul L. SanGiovanni

Highly Confidential                                          BSA-PLAN_01422722

**SA 0976**

IN THE CIRCUIT COURT OF THE
5TH JUDICIAL CIRCUIT IN AND
FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

     Plaintiff,

vs.

THE BOY SCOUTS OF
AMERICA NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS
OF AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH,
INC.,

     Defendants.

_____/

## AGREED ORDER ON MOTION FOR ONE (1) DAY EXTENSION OF TIME TO RESPOND TO DEFENDANTS' MOTIONS TO DISMISS AND TO A CONSOLIDATE RESPONSE

THIS CAUSE having come before the Court on Plaintiff's Motion for One (1) Day Extension of Time to Respond to Defendants' Motions to Dismiss and to Consolidate a Response, and the Court having been advised of agreement by and between counsel for parties, it is hereby

ORDERED AND ADJUDGED that:

1.    Plaintiff's Agreed Motion is granted;

BSA-PLAN_01422723
**SA 0977**

2.      The deadline for Plaintiff's response shall be extended through and including October 8, 2018 within which to file and serve a response to Defendants' Motions to Dismiss served August 2, 2018 and August 20, 2018, respectively.

3.      The Plaintiff may respond by filing a single consolidated memorandum not to exceed twenty-five (25) pages.

4.      The deadline for each Defendant to file and serve a reply to the Plaintiff's response shall be extended through and including October 29, 2018.

DONE AND ORDERED in Chambers, in Marion County, Florida this 9 day of October, 2018.

EDWARD L. SCOTT
JUDGE OF THE CIRCUIT COURT

Copies furnished to:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail: PSangi@forthepeople.com
**Counsel for Plaintiff**

Spencer H. Silverglate
Francisco Ramos, Jr.
Shannon P. McKenna
Clarke Silverglate, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
E-mail: ssilverglate@cspalaw.com
E-mail: framos@cspalaw.com
E-mail: smckenna@cspalaw.com
**Counsel for Defendants, Boy Scouts of America and North Florida Council, Inc.**

BSA-PLAN_01422724
**SA 0978**

Raychel Garcia
Wicker Smith O'Hara McCoy & Ford P.A.
390 North Orange Avenue, Suite 1000
Orlando, Florida 32801
**Counsel for Defendant, Silver Springs Shores Presbyterian Church, Inc.**

BSA-PLAN_01422725

SA 0979



**Clarke Silverglate**
A T T O R N E Y S   A T   L A W

Writer's e-mail  framos@cspalaw.com
Writer's Direct Telephone  305 347 1544

September 27, 2018

Honorable Edward  L. Scott
Marion County Courthouse
110 Northwest 1st Avenue
Ocala, FL  34475

> **Re:**   ***A.A. v. The Boy Scots of America et al.***
> **Case No. 2016 CA 000167**

Dear Judge Scott:

This firm represents The Boy Scouts of America and North Florida Council, Inc. in the above-referenced matter. Enclosed please find a copy of an Agreed Motion for Extension of Time to File Their Reply to Plaintiff's Response to Their Motion to Dismiss which was filed through the E-Portal, and a proposed Order. Upon review of same, if it meets with Your Honor's approval, please sign it and have your judicial assistant mail conformed copies to all counsel of record in the stamped, addressed envelopes provided herewith.

Respectfully,

Francisco Ramos, Jr.

Enclosure

cc:   Francisco Ramos, Jr., Esq.
      Paul L SanGiovanni, Esq.
      Richards H. Ford, Esq.

444278

Clarke Silverglate, P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131  Phone: 305.377.0700  Fax: 305.377.3001  cspalaw.com

Highly Confidential

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                                    CASE NO. 2016-CA-000167

      Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

      Defendants.
_____/

## AGREED ORDER GRANTING BSA AND NORTH FLORIDA COUNCIL'S AGREED MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLIES TO PLAINTIFF'S RESPONSES TO THEIR MOTIONS TO DISMISS

THIS CAUSE having come before the Court upon Defendants', Boy Scouts of America

("BSA") and North Florida Council, Inc. ("North Florida Council"), Agreed Motion for

Extension of Time to File Their Replies to Plaintiff's Response to Their Motions to Dismiss, and

the Court having reviewed the Agreed Motion, having been advised of agreement by and

between counsel for parties, and being otherwise duly advised in the premises, it is hereby

1

Highly Confidential

BSA-PLAN_01422727

SA 0981

CASE NO. 2016-CA-000167

ORDERED AND ADJUDGED that BSA and Council's Motion is GRANTED.  BSA and

Council shall file their replies to Plaintiff's responses to their Motions to Dismiss on or before

October 26, 2018.

DONE AND ORDERED in Chambers in Marion County, Florida this _10_ day of

October, 2018.

_____
EDWARD L. SCOTT
CIRCUIT COURT JUDGE


cc:     Counsel for Plaintiff:
        Paul L. SanGiovanni,  psangi@forthepeople.com, mtodd@forthepeople.com

        Counsel for BSA and Council:
        Spencer H. Silverglate, ssilverglate@cspalaw.com, mpedraza@cspalaw.com
        Francisco Ramos, Jr., framos@cspalaw.com, sdelosreyes@cspalaw.com
        Shannon P. McKenna, smckenna@cspalaw.com, aford@cspalaw.com

        Counsel for Silver Springs Shores Presbyterian Church, Inc.:
        Rachel Garcia, rgarcia@wickersmith.com, ndurham@wickersmith.com

BSA-PLAN_01422728
SA 0982

Case 1:22-cv-01237-RGA   Document 73   Filed 12/07/22   Page 105 of 482 PageID #: 4965

Filing # 79984067 E-Filed 10/29/2018 11:32:15 AM
Case 5:20-cv-00069-9 Document 1-4 Filed 02/18/20   Page 189 of 805 PageID 366

81910-5/61666537

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.                                              CASE NO. 2016-CA-000167

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

      Defendant.

_____/

## DEFENDANT'S, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

      Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC. ("Silver

Springs"), by and through the undersigned counsel and pursuant to the applicable Florida Rules

of Civil Procedure, hereby files this Reply to Plaintiff's Response in Opposition to Defendants'

Motions to Dismiss, and in support thereof states as follows:

      1.      This is a negligence action arising out of the alleged sexual assault of A.A. by

George Fout at various times between 2004 and 2012 at the residence of George Fout. *See* Pl.'s

Compl. ¶¶ 46–51.

      2.      Plaintiff argued that this Defendant, Silver Springs, had a special relationship with

A.A., which purportedly gave rise to a duty for this Defendant to protect A.A. from reasonably

foreseeable harm. Plaintiff asserts that this Defendant breached the aforementioned duty by

Electronically Filed Marion Case #  16CA000167AX 10/29/2018 11:32:15 AM

Highly Confidential

BSA-PLAN_01422729

SA 0983

CASE NO. 2016-CA-000167

failing to protect A.A. from the criminal acts of George Fout, which ultimately constituted negligence. *Id.* at ¶¶ 58–63.

3.      Plaintiff concludes that this Defendant breached its fiduciary duty to Plaintiff, and should be vicariously liable for the actions and omissions of George Fout and Steve Fout without providing a factual basis to support this improper legal conclusion. *Id.* at ¶¶ 77–82, 98–102, 104–108.

4.      On August 20, 2018, Silver Springs filed a Motion to Dismiss stating Plaintiff had not alleged any facts that establish a duty on the part of Silver Springs nor had Plaintiff alleged any facts that establish vicarious liability on Silver Springs for the actions of either George Fout or Steve Fout.

5.      On October 8, 2018, Plaintiff filed a Response and Incorporated Memorandum of the Law in Opposition to Defendant's Motion to Dismiss (hereinafter referred to as the "Response").

6.      As provided in Silver Springs' Motion to Dismiss, there are no allegations in Plaintiff's complaint that the alleged abuse took place on this Defendant's premises, nor are there any allegations that the abuse took place during an event associated with this Defendant.

7.      In Plaintiff's Response, Plaintiff fails to point to any factual allegations within the four corners of the Complaint that would save the case from dismissal. Instead, Plaintiff stated twice that "if required, Plaintiff is able to supplement the allegations" by providing additional information to supplement the Complaint. *See* Pl.'s Resp. pp. 3 and 7. Plaintiff has yet to supplement these allegations, however, the standard at the Motion to Dismiss stage is what is alleged in the Complaint.

- 2 -

BSA-PLAN_01422730

SA 0984

CASE NO. 2016-CA-000167

8.      Plaintiff asserts that the matters raised by the Defendants are not matters to be addressed at the pleading stage. *See* Pl.'s Resp. pp. 7. However, Florida courts have made it clear that litigants must state their pleadings with sufficient particularity for a defense to be prepared. Plaintiff has failed to provide facts to support the contention that Silver Springs owed a special duty to A.A. based on a special relationship and, as such, has failed to state their pleading with sufficient particularity.

9.      In Plaintiff's Response, Plaintiff cites to *Nova Southeastern University vs. Gross* to demonstrate that a special relationship between an institutional party and an individual member is well recognized. *Nova Southeastern University vs. Gross*, 758 So. 2d 86 (Fla. 2000); *also see* Pl.'s Resp. pp. 13. Yet, in *Nova*, the university student was injured during a school related activity that was assigned to her by the university. Therefore, the facts in *Nova* that led to a finding of a special relationship are entirely different from the facts in the present matter. Here, the extent of Silver Springs' involvement with A.A. and Troop 448 was limited to providing A.A. and the rest of Troop 448 with a facility to be used for troop meetings, Silver Springs did not assign A.A. to any Troop or troop activity. Moreover, the Complaint fails to allege any facts that would establish the requisite special relationship.

10.      Plaintiff also cites to *C.J.C. v. Corp. of Catholic Bishop of Yakima* and states that churches are routinely held to have a "special relationship" toward minors who are sexually abused. *C.J.C. v. Corp. of Catholic Bishop of Yakima,* 985 P.2d 262 (Wash. 1999); Pl.'s Resp. pp. 13. Although the Court in *C.J.C.* did find a "special relationship" between the church and the children, the facts in *C.J.C* are significantly different that those alleged in the Complaint. In *C.J.C.*, the abuser was a deacon of the church. As a prominent member of the church, the Court stated a jury could reasonably find his position in the Church was a casual factor in the resulting

- 3 -

BSA-PLAN_01422731
SA 0985

CASE NO. 2016-CA-000167

harm. *Id.* Here, the Fouts were not leaders, employees, or even individuals holding positions in Silver Springs Shores Presbyterian Church, nor is this alleged in the Complaint. Their presence at the church was solely due to their position as scoutmaster and assistant scoutmaster, respectively. Therefore, Plaintiff's argument that merely because Silver Springs is a church, they hold a special relationship with all children who are present on the church premises, even for reasons completely unrelated to the church itself, is unsound.

11.     In Plaintiff's Complaint and Plaintiff's Response, Plaintiff alleges that the Defendants are vicariously liable for the sexual battery by George Fout and the breach of fiduciary duty of Steve Fout, respectively. Plaintiff further alleges that George Fout and Steve Fout were acting as agents on behalf of the Defendants. *See* Pl.'s Compl. ¶¶ 98, 104; Pl.'s Resp. pp. 19. This Defendant, Silver Springs, is an entity that is separate and distinct from Defendant, BSA, and as such, Plaintiff's allegations should have been directed at each Defendant individually. Irrespective of this inaccuracy, Plaintiff's Complaint and Response fails to allege any facts to establish an agency relationship between this specific Defendant, Silver Springs, and the Fouts. The Fouts were not members, employees, or even volunteers at the church. The Fouts were not acting on the church's behalf nor was the church authorized to accept or control any of their actions, as required to establish agency. Therefore, Silver Springs is not vicariously liable for the Fouts actions.

12.     Overall, both Plaintiff's Complaint and Plaintiff's Response to fail to address each Defendant's respective duties, relationships and wrongdoings individually. Instead, Plaintiff joins all three Defendant's into one consolidated party and makes arguments against other Defendants in their Response filed in Opposition to Silver Springs' Motion. For instance, in the Response, Plaintiff refers to arguments made by Boy Scouts of America, a different Defendant,

- 4 -

Highly Confidential

BSA-PLAN_01422732

SA 0986

CASE NO. 2016-CA-000167

and quotes the purpose of Boy Scouts of America to refute those arguments, even though such arguments are irrelevant in Plaintiff's claims against this specific Defendant, Silver Springs.

13.     Finally, Plaintiff's claims are barred by the statute of limitations. Plaintiff's Complaint was filed with this Court on January 27, 2016. All claims against Silver Springs are founded on negligence and the statute of limitations for negligence actions is 4 years. Fla. Stat. § 95.11. Plaintiff alleges that sexual abuse occurred in 2012, but fails to provide specific dates or instances of the alleged abuse in neither Plaintiff's Complaint nor Plaintiff's Response.

14.     Plaintiff also asserts the statutes of limitations runs from the time of the last tortious act. *See DEI Quarry vs. Gateway Estates*, 249 So. 3d 1287 (Fla. 1st DCA 2018); *see also* Pl.'s Resp. pp. 20. Even if this is true, it is ineffective in providing support for Plaintiff's claims because Plaintiff has not alleged any specific instances of sexual abuse occurring in 2012.

WHEREFORE, Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., respectfully requests that this Court enter an Order dismissing all allegations against it.

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, mtodd@forthepeople.com, mdyenson@forthepeople.com; Spencer H. Silverglate, Esquire, ssilverglate@cspalaw.com; mpedraza@cspalaw.com; Francisco Ramos, Jr., Esquire, framos@cspalaw.com; cdeleon@cspalaw.com; Shannon P. McKenna, smckenna@cspalaw.com, aford@cspalaw.com; on this 29th day of October, 2018.

/s/ Richards H. Ford
Richards H. Ford, Esquire
Florida Bar No. 288391
Raychel A. Garcia, Esquire
Florida Bar No. 091096
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Silver Springs Shores Presbyterian
Church, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

- 5 -

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                           CASE NO. 2016-CA-000167

     Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

     Defendants.

_____/

## BSA AND COUNCIL'S REPLY ON THEIR MOTION TO DISMISS

Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc. ("Council"), reply to Plaintiff's Response ("Response") to BSA and Council's Motion to Dismiss the Complaint with prejudice for failure to state a cause of action.

Plaintiff cannot, with any legitimacy, allege facts to survive dismissal of the claims against BSA and the Council. The Complaint does not allege that the sexual abuse took place in connection with Scouting activities. (Response at 3, n.1, and at 9, n.4). This fact warrants dismissal of Plaintiff's claims with prejudice.

Recognizing this glaring deficiency, Plaintiff now urges the Court to "infer" that the alleged abuse took place during "Scout meetings on the property of Scouting activities." (Response at 3, n. 1). These allegations are contained nowhere in the 125-paragraph, 10-count,

Highly Confidential

BSA-PLAN_01422734
**SA 0988**

CASE NO. 2016-CA-000167

26-page Complaint.  Alternatively, Plaintiff claims that since the filing of the Complaint, a new

fact has been "discovered": During a Scouting campout in July of 2009, George Fout allegedly

touched Plaintiff's genitalia through his pants.  Plaintiff argues that, at a minimum, he should be

given the opportunity to assert this new allegation in an amended complaint.

The problem is that these new contentions are belied by Plaintiff's own allegations that

**all of the alleged abuse** took place inside the home of his neighbor, George Fout, **not** in

connection with a Scouting activity.  More importantly, the new allegations are belied by

Plaintiff's **own testimony** in George Fout's criminal proceeding (which resulted in a conviction):

Q.   Where did all of these events that we've talked about—what county were you in when they happened?

A.   Marion.

Q.   Where were you at; whose house?

A.   The Fouts'.

Q.   Did anything happen at your house with you and George—

A.   Yes.

Q.   --Sexually?

A.   Yes.

Q.   Is that also in Marion County?

A.   Yes.

Q.   **Other than your house, George's house, were there any other locations that things happened?**

A.   **No.**

(AA's Trial Test. at 63-64, State of Fla. v. Fout, Nov. 1, 2012, attached as Ex. A) (emphasis

added).

Highly Confidential

CASE NO. 2016-CA-000167

In truth, the only new fact is the filing of Defendants' Motion to Dismiss.  The

Complaint does not allege that the abuse took place in connection with Scouting activity.  And

Plaintiff's offer to amend the Complaint with inconsistent allegations to avoid dismissal would

be a futile sham pleading and a fraud on the Court.  *See Destiny Const. Co. v. Martin K. Eby*

*Const.*, 662 So. 2d 388, 390 (Fla. 5th DCA 1995) (sham pleadings are mere pretense, lack good

faith, and are without color in fact); *Wenwei Sun v. Aviles*, 53 So. 3d 1075, 1077-1078 (Fla. 5th

DCA 2010) (trial courts have inherent authority to dismiss an action when plaintiff perpetrates a

fraud on the court).

The Court need go no further than this is granting dismissal with prejudice.  Plaintiff has

not alleged that the abuse took place in connection with Scouting activity, and he cannot in good

faith make that allegation.  Without a material connection to Scouting, Defendants' cannot be

held liable as matter of law.

Plaintiff's other arguments are equally meritless.  Defendants owed Plaintiff no legal duty

of protection grounded in a special relationship because the alleged sexual abuse was unrelated

to Scouting activity and admittedly against Scouting youth protection rules.  (Comp. ¶¶ 51, 52,

61, 67, 73, 80, 87, 94, 106, 112, 117). This conclusion is well-supported by the cases discussed at

length in the Motion to Dismiss. *See, e.g., KM. ex rel D.M. v. Publix Super Markets, Inc.*, 895 So.

2d 1114 (Fla. 4th DCA 2005) (holding that a grocery store owed no duty to employee's child

who was sexually abused by co-employee who babysat the child at his home because the

incident arose from a personal relationship that was outside the employment context);

*Archbishop Coleman F. Carroll High School, Inc. v. Maynoldi*, 30 So. 3d 533 (Fla. 3d DCA

2010) (holding that a school owed no duty to a student who was injured in a car accident after

Highly Confidential                                                                        BSA-PLAN_01422736
SA 0990

consuming alcohol at a private graduation party because the accident took place took place off-campus, following an off-campus non-school sponsored event).

Plaintiff fails to distinguish this well-established law. Instead, he asserts, without authority, that Defendants owed a general duty to act or a special relationship because they conducted a Scouting program and solicited youth to participate. The case law cited in Defendant's Motion to Dismiss directly contradicts this argument. *Id.*

Plaintiff also grasps for a duty in the undertaker's doctrine, which has no application here. Plaintiff misplaces reliance on *Nova Southeastern University v Gross*, 758 So. 2d 86, 89-90 (Fla. 2000), which held that liability could be imposed on a university for a student's off-campus injuries because the incident occurred *at a school-related activity*. *Id.* at 89-90. Again, Plaintiff here does not and cannot allege that the abuse occurred in connection with a Scouting activity.

Plaintiff next seeks a duty by analogizing school cases. Unlike a school and its students, however, Defendants do not have a direct relationship with the individual troop members. Moreover, even a school has no generalized duty to supervise its students all of the time. *See Concepcion v. Archdiocese of Miami*, 693 So.2d 1103, 1105 (Fla. 3d DCA 1997). *See also Matallana v. Sch. Bd. of Miami-Dade County*, 838 So. 2d 1191, 1192 (Fla. 3d DCA 2003) (school did not owe duty to supervise students who engaged in fight off campus where one student shot and killed the other student even though school should have known the student had violent tendencies, previously threatened to harm the other student, and brought the gun to school).

Plaintiff's reliance on *C.J.C. v. Corporation of the Catholic Bishop of Yakima*, 985 P.2d 262 (Wash. 1999), is similarly misplaced. In *C.J.C.*, unlike here and unlike *K.M.* and *Archbishop Coleman*, a church deacon babysat the victims so that their father could travel *on*

Highly Confidential

*church business*.  The church knew that the deacon was babysitting the victims off-site, and, most importantly, the church had prior warning of the deacon's alleged propensity to molest children. *Id.* at 275-277.  Under these circumstances, none of which are present here, the court held that the church owed a duty to prevent harm. *Id.* at 276 & n.14.

Plaintiff also makes the outlandish argument that Defendants owed him a duty based on George Fout's knowledge of his *own* abusive acts and his father Steve Fout's *constructive knowledge* of same.  First, as previously explained, George and Steve Fout are not agents of BSA or Council.  Second, "It is axiomatic that knowledge of the agent constitutes knowledge of the principal [only] as long as the agent received such knowledge while acting within the scope of his authority."  *Brooks Tropicals, Inc. v. Acosta*, 959 So. 2d 288, 295 (Fla. 3d DCA 2007) (quoting *Bertram Yacht Yard, Inc. v. Florida Wire & Rigging Works, Inc.*, 177 So. 2d 365 (Fla. 3d DCA 1965)).  Here, no duty can be imposed based on George Fout's knowledge of his own alleged abusive acts, which furthered only his own prurient interest and were unrelated to the Scouting program.  *See Agriturf Mgmt., Inc. v. Roe*, 656 So. 2d 954, 955 (Fla. 2d DCA 1995); *First Bond & Mortgage Co. v. Yancey*, 139 So. 597, 600 (Fla. 1932).  Similarly, no duty can be imposed based on Steve Fout's alleged constructive knowledge of his son's acts; only an agent's actual knowledge may be imputed to a principal. *Id*

Also as a matter of law, no fiduciary duty existed between Plaintiff and Defendants.  Unlike *Doe v. Evans*, 814 So. 2d 370 (Fla. 2002), on which Plaintiff relies, this case does not involve a marital counseling relationship or any other fiduciary relationship.  And in stark contrast to *Doe* where the inappropriate conduct took place in connection with the marital counseling relationship, Fout's alleged abuse did not take place at any Scouting activity.  Rather,

Highly Confidential

BSA-PLAN_01422738
SA 0992

the alleged sexual misconduct arose from Plaintiff's personal visits and admittedly unsanctioned sleepovers at Fout's home.

Plaintiff's attempt to distinguish *Roe v. Boy Scouts of Am., Corp.*, 2012 WL 3933184, at *7 (Conn. Super. Ct. Aug. 16, 2012), *aff'd sub nom.*, *Roe No. 1 v. Boy Scouts of Am. Corp.*, 84 A.3d 443 (Conn. App. Ct. 2014), is similarly unavailing. *Roe* held that a fiduciary relationship **does not exist** between BSA and Council, on the one hand, and an individual troop member, on the other. That the perpetrator in *Roe* was the victim's stepfather had no bearing on the court's decision. Plaintiff offers no explanation as to why the lack of a familial relationship between himself and George Fout creates a fiduciary duty.

Finally, Plaintiff fails to distinguish the numerous cases discussed in the Motion to Dismiss regarding Defendants' lack of vicarious liability. The cases universally hold that a principal is not liable for the independent, criminal acts of an agent. *See Goss v. Human Services Associates, Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012); *Special Olympics Florida, Inc. v. Showalter*, 6 So. 3d 662, 665-666 (Fla. 5th DCA 2009); *Elders v. United Methodist Church*, 793 So. 2d 1038, 1041 (Fla. 3d DCA 2001); *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 355 (Fla. 3d DCA 2001); *Mason v. Fla. Sheriffs' Self–Ins. Fund*, 699 So. 2d 268 (Fla. 5th DCA 1997); *Agriturf Mgmt., Inc. v. Roe*, 656 So. 2d 954, 955 (Fla. 2d DCA 1995).

## Conclusion

For the foregoing reasons and those asserted in the Motion to Dismiss, BSA and Council respectfully request that the Complaint be dismissed with prejudice.

Highly Confidential

CASE NO. 2016-CA-000167

Respectfully submitted by,

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
Telephone: (305) 377-0700
Facsimile: (305) 377-3001

By: /s/Spencer H. Silverglate
      Spencer H. Silverglate
      Florida Bar No. 769223
      ssilverglate@cspalaw.com
      mpedraza@cspalaw.com
      Francisco Ramos, Jr.
      Florida Bar No. 114766
      framos@cspalaw.com
      cdeleon@cspalaw.com
      Shannon P. McKenna
      Florida Bar No. 385158
      smckenna@cspalaw.com
      aford@cspalaw.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 29th day of October, 2018 to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
      Spencer H. Silverglate

Highly Confidential

BSA-PLAN_01422740
SA 0994

IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

CASE NO.   42-2012-CF-000621-A-Y

STATE OF FLORIDA,

     Plaintiff,

vs.                                          VOLUME I of II

GEORGE ROBERT FOUT,

     Defendant.

- - - - - - - - - - - - - - - - /

*** TRANSCRIBED FROM ECR RECORDING ***

RECEIVED
2013 JAN 10 AM 10: 12
DAVID R. ELLSPERMANN
CLERK CIRCUIT COURT
MARION COUNTY, FL

ORIGINAL

| | |
|---|---|
| PROCEEDINGS: | Jury Trial |
| BEFORE: | HONORABLE BRIAN LAMBERT |
| TRANSCRIBED BY: | Frances L. Moehle |
| DATE AND TIME: | November 1, 2012, 10:09 a.m. |
| PLACE: | Marion County Courthouse<br>110 Northwest First Avenue<br>Ocala, Florida |

EXHIBIT
A

Joy Hayes Court Reporting
(352) 726-4



1    Q.   When you say, his room, who are we talking about?

2    A.   George.

3    Q.   Is this George's camera?

4    A.   Yes.

5    Q.   Is this the same camera that George used to take

6  pictures of you while you were naked?

7    A.   Yes.

8        MR. AVEN:  Your Honor, at this time the State would

9    move what's been marked as State's Exhibit B into

10   evidence as State's Exhibit 2.

11       THE COURT:  Any objection?

12       MR. POLAK:  No, Your Honor.

13       THE COURT:  Admitted without objection, State's

14   Exhibit Number 2.

15       MR. AVEN:  And, Your Honor, at this time the State

16   would request permission to publish.

17       THE COURT:  Permission granted.

18  BY MR. AVEN:

19   Q.   Where did all of these events that we've talked

20  about -- what county were you in when they happened?

21   A.   Marion.

22   Q.   Where were you at; whose house?

23   A.   The Fouts'.

24   Q.   Did anything happen at your house with you and

25  George --

Highly Confidential

BSA-PLAN_01422742

SA 0996

1    A.   Yes.

2    Q.   -- sexually?

3    A.   Yes.

4    Q.   Is that also in Marion County?

5    A.   Yes.

6    Q.   Other than your house, George's house, were there

7  any other locations that things happened?

8    A.   No.

9    Q.   Why didn't you go to someone and tell them that

10 this was happening?

11   A.   'Cause he told me not to tell anyone, so I kept my

12 mouth shut.

13   Q.   Did George give you any gifts?

14   A.   Yes.

15   Q.   What gifts did George give you?

16   A.   Christmas presents.

17   Q.   Did he give you any -- did you give George any

18 gifts?

19   A.   Yes.

20   Q.   What presents did you give him?

21   A.   A shirt.

22   Q.   Prior to you speaking with law enforcement, what

23 was your relationship with George?

24   A.   A friend.

25   Q.   Was he your scout leader?

Joy Hayes Court Reporting
(352) 726-4451

Highly Confidential

BSA-PLAN_01422743

SA 0997

**IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT IN
AND FOR MARION COUNTY, FLORIDA**

A.A.,

        Plaintiff,

    Case No: 2016-CA-0167

vs.

**THE BOY SCOUTS OF AMERICA; NORTH FLORIDA COUNCIL, INC, BOY SCOUTS
OF AMERICA; and SILVER SPRINGS SHORES PRESBYTERIAN CHURCH INC.,**

        Defendants.

_____/

<u>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**</u>
<u>**AND**</u>
<u>**ORDER ON DEFENDANTS' REQUEST FOR ORAL ARGUMENT**</u>
<u>**AND**</u>
<u>**ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND INITIAL**</u>
<u>**COMPLAINT**</u>

**THIS COURT** having considered Defendants Boy Scouts of America and North

Florida Council, Inc. Boy Scouts of America's Motion to Dismiss, filed on August 2, 2018;

Defendants Boy Scouts of America and North Florida Council, Inc. Boy Scouts of America's

Request for Oral Argument on their Motion to Dismiss, filed on August 2, 2018; Defendant

Silver Springs Shores Presbyterian Church, Inc.'s Motion to Dismiss and Motion to Strike

Prejudgment Interest, filed on August 20, 2018; Plaintiff's Response and Incorporated

Memorandum of Law in Opposition to Defendants' Motion to Dismiss, and in the alternative,

Motion for Leave to Amend Initial Complaint, filed on October 8, 2018; Defendants Boy

Scouts of America and North Florida Council, Inc. Boy Scouts of America's Reply on their

Motion to Dismiss, filed on October 29, 2018; Defendant Silver Springs Shores Presbyterian

Church, Inc.'s Reply to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss,

filed on October 29, 2018; having reviewed the court file, and being otherwise duly advised

in the premises, it is hereby;

**ORDERED and ADJUDGED** as follows:

Page 1 of 2

Highly Confidential

BSA-PLAN_01422744
**SA 0998**

1.      Defendants Boy Scouts of America and North Florida Council, Inc. Boy Scouts of America's Motion to Dismiss is **DENIED**.

2.      Defendants Boy Scouts of America and North Florida Council, Inc. Boy Scouts of America's Request for Oral Argument on their Motion to Dismiss is **DENIED**.

3.      Defendant Silver Springs Shores Presbyterian Church, Inc.'s Motion to Dismiss and Motion to Strike Prejudgment Interest is **DENIED**.

4.      Plaintiff's Motion for Leave to Amend Initial Complaint is **GRANTED**.

5.      Plaintiff has **twenty (20) days** from the date of this order to file an Amended Complaint.

**IT IS SO ORDERED** in chambers, Marion County Judicial Center, Ocala, Florida, on this 3rd day of November 2018.

_Edward L. Scott_
Edward L. Scott
Circuit Judge

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been furnished by the Florida Court's e-filing portal to the following this 3rd day of November 2018.

Paul L. San Giovanni, Esquire
Morgan & Morgan, P.A.
Counsel for Plaintiff

Spenser H. Silverglate, Esquire
Clarke Silverglate, P.A.
Counsel for Defendants Boy Scouts of America and North Florida Council, Inc. Boy Scouts of America

Richards H. Ford, Esquire
Wicker Smith, et al.
Counsel for Defendant Silver Spring Shores Presbyterian Church

_Becky Knipe_
Becky Knipe, Judicial Assistant

Highly Confidential

BSA-PLAN_01422745
**SA 0999**

Filing # 81081913 E-Filed 11/20/2018 04:18:57 PM

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

       Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

       Defendants.

_____/

## AGREED MOTION FOR EXTENSION OF TIME FOR PLAINTIFF TO FILE AMENDED COMPLAINT AND FOR DEFENDANTS' RESPONSES

Plaintiff, A.A. ("Plaintiff"), by and through his undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.200(a), requests this Honorable Court for an extension of time to file Plaintiff's Amended Complaint, and as grounds in support advises the Court of opposing counsels' agreement to the same and otherwise states as follows:

1.     Pursuant to the Order rendered by the Court on November 3, 2018, the Plaintiff's Amended Complaint is due to be filed and served on or before November 23, 2018.

2.     Counsel for the Plaintiff has undergone several recent medical procedures, including surgeries on September 7, 2018, October 24 and will undergo a surgery on November 21.

Electronically Filed Marion Case #  16CA000167AX 11/20/2018 04:18:57 PM

Highly Confidential

3.     These procedures have impacted counsel's ability to comply with the subject deadline for the filing of an Amended Complaint.

4.     The Plaintiff respectfully requests an extension of time within which the Amended Complaint must be filed and served through and including December 14, 2018.

5.     In addition, Defendants counsel have requested through and including January 11, 2019 to file and serve their respective responses to the Amended Complaint.

6.     Counsel have discussed the requested extension among themselves and have no objection to the subject extensions.

7.     The undersigned certifies that this Motion is made in good faith and not for the purpose of delay.

**WHEREFORE,** Plaintiff, A.A., respectfully request this Court enter an Order granting Plaintiff through and including December 14, 2018 to file and serve Plaintiff's Amended Complaint and providing that the Defendants shall file and serve their respective responses on or before January 11, 2019.

Dated: November 20, 2018.

                                        **MORGAN & MORGAN, P.A.**
                                        **Business Trial Group**

                                         *s/Paul L. SanGiovanni*
                                        **Paul L. SanGiovanni**
                                        Florida Bar No. 0513164
                                        20 North Orange Avenue, Suite 1600
                                        Orlando, Florida 32801
                                        Telephone:  (407)418-6041
                                        Facsimile:   (407)245-3394
                                        Primary E-mail:  PSangi@forthepeople.com
                                        Secondary E-mail MTodd@forthepeople.com
                                        *Attorneys for Plaintiff*

2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the November 20, 2018, I electronically filed the foregoing with the Clerk of the Court by using the Court's E-portal filing system, which will serve a notice of the electronic filing via e-mail to all counsel of record.

<div align="right">

_s/Paul L. SanGiovanni_
**Paul L. SanGiovanni**

</div>



3

BSA-PLAN_01422748
**SA 1002**

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

     Plaintiff,

vs.

THE BOY SCOUTS OF
AMERICA NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS
OF AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH,
INC.,

     Defendants.

_____/

## AGREED ORDER ON MOTION FOR EXTENSION OF
## TIME TO AMEND COMPLAINT AND TO FILE AND SERVE RESPONSES

THIS CAUSE having come before the Court on Plaintiff's Motion for

Extension of Time to file Amended Complaint, and the Court having been advised

of agreement by and between counsel for parties, it is hereby

ORDERED AND ADJUDGED that:

1.    Plaintiff's Agreed Motion is granted;

2.    The deadline for Plaintiff to file and serve an Amended Complaint

shall be extended through and including December 14, 2018.

Highly Confidential

BSA-PLAN_01422749

SA 1003

3.      The deadline for Defendants' to file and serve their respective

responses to the Amended Complaint shall be on or before January 11, 2019.

DONE AND ORDERED in Chambers, in Marion County, Florida this 30th

day of November, 2018.

_Edward L. Scott_

EDWARD L. SCOTT
JUDGE OF THE CIRCUIT COURT

Copies furnished to:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail:  PSangi@forthepeople.com
**Counsel for Plaintiff**

Spencer H. Silverglate
Francisco Ramos, Jr.
Shannon P. McKenna
Clarke Silverglate, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
E-mail: ssilverglate@cspalaw.com
E-mail: framos@cspalaw.com
E-mail: smckenna@cspalaw.com
**Counsel for Defendants, Boy Scouts of America and North Florida Council, Inc.**

Raychel Garcia
Wicker Smith O'Hara McCoy & Ford P.A.
390 North Orange Avenue, Suite 1000
Orlando, Florida 32801
E-mail: RGarcia@wickersmith.com
**Counsel for Defendant, Silver Springs Shores Presbyterian Church, Inc.**

IN THE CIRCUIT COURT OF THE 5TH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, AND SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

## AGREED ORDER ON MOTION FOR EXTENSION OF TIME TO AMEND COMPLAINT AND TO FILE AND SERVE RESPONSES

THIS CAUSE having come before the Court on Plaintiff's Motion for Extension of Time to file Amended Complaint, and the Court having been advised of agreement by and between counsel for parties, it is hereby

ORDERED AND ADJUDGED that:

1.    Plaintiff's Agreed Motion is granted;

2.    The deadline for Plaintiff to file and serve an Amended Complaint shall be extended through and including December 14, 2018.

Electronically Filed Marion Case #  16CA000167AX 12/04/2018 02:08:56 PM

Highly Confidential

3.     The deadline for Defendants' to file and serve their respective

responses to the Amended Complaint shall be on or before January 11, 2019.

DONE AND ORDERED in Chambers, in Marion County, Florida this 30th

day of November, 2018.

_____
EDWARD L. SCOTT
JUDGE OF THE CIRCUIT COURT

Copies furnished to:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail:  PSangi@forthepeople.com
**Counsel for Plaintiff**

Spencer H. Silverglate
Francisco Ramos, Jr.
Shannon P. McKenna
Clarke Silverglate, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
E-mail: ssilverglate@cspalaw.com
E-mail: framos@cspalaw.com
E-mail: smckenna@cspalaw.com
**Counsel for Defendants, Boy Scouts of America and North Florida Council, Inc.**

Raychel Garcia
Wicker Smith O'Hara McCoy & Ford P.A.
390 North Orange Avenue, Suite 1000
Orlando, Florida 32801
E-mail: RGarcia@wickersmith.com
**Counsel for Defendant, Silver Springs Shores Presbyterian Church, Inc.**

BSA-PLAN_01422752
SA 1006

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

       Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL,
INC., BOY SCOUTS OF
AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

       Defendants.

_____/

## **COMPLAINT FOR DAMAGES**

      Plaintiff, A.A, by and through his undersigned counsel, files this Complaint against Defendants, THE BOY SCOUTS OF AMERICA, a foreign corporation authorized to do business in Florida (hereinafter referred to as the "BSA"), the NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, a corporation authorized to do business in Florida (hereinafter referred to as the "NORTH FLORIDA COUNCIL"), and the SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., a corporation authorized to do business in Florida (hereinafter referred to as the "SILVER SPRINGS SHORES") and for good cause, states:

## INTRODUCTION

1.     **General Statement of Claims:** These claims relate to acts of sexual battery as described in Section 794.011, Florida Statutes suffered by the Plaintiff, A.A., while he was a participant in the programs operated by the Defendants. A.A. was the victim of these acts and each of them occurred prior to the age of sixteen (16).

2.     As more particularly described herein, the Plaintiff suffered the sexual battery described herein as a result of the neglect of the BSA and its agents to, among other things, exercise due care in the administration, management and operation of its scouting program, their breach of their fiduciary duties and their vicarious liability for the acts of their agents.

3.     **Jurisdiction and Venue:**     This is an action for damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorneys' fees.

4.     Venue is proper in Marion County, Florida because the events giving rise to this action occurred in Marion County, Florida. .

5.     **The Parties:**   A.A. is currently an adult residing in Marion County, Florida. The actions described herein occurred when A.A. was under sixteen (16) years of age. The initials "A.A." are used to protect the identity of Plaintiff from public disclosure. The identity and further relevant details shall be disclosed to the Defendants off record and confidentially.

6.     At all relevant times, A.A. resided in Marion County, Florida.

7.     The BSA is a foreign corporation authorized to do business in the state of Florida. At all relevant times, BSA controlled or had the right to control  the NORTH

Highly Confidential

FLORIDA COUNCIL's and the sponsoring organizations, which implemented BSA's scouting program.

8.     The NORTH FLORIDA COUNCIL is a corporation authorized to do business in the State of Florida and is located in Duval County, Florida. At all relevant times, the NORTH FLORIDA COUNCIL was an agent of BSA, subject to BSA's control or right to control. As Defendant BSA's agent, the NORTH FLORIDA COUNCIL controlled or had the right to control local troops directly, or through their sponsoring organizations.

9.     SILVER SPRINGS SHORES is a corporation authorized to do business in the State of Florida and is located in Marion County, Florida. At all relevant times, the SILVER SPRINGS SHORES was an agent of BSA, subject to BSA's control or right to control. As Defendant BSA's agent, the SILVER SPRINGS SHORES controlled or had the right to control local troops directly, or through their sponsoring organizations.

10.     Upon information and belief, SILVER SPRINGS SHORES was the chartering organization for Troop 448, or such other Troop as A.A. was a member (herein collectively referred to as "Troop 448").

11.     George Fout was an Assistant Scoutmaster of Troop 448.

12.     Steve Fout, George Fout's father, was the Scoutmaster of Troop 448.

### STATEMENT OF FACTS

### Scouting is a Hierarchical System

13.     BSA is a large y o u t h -serving organization. who promotes, markets, and encourages parents to enroll their children in BSA. Enrollment in BSA requires parents to entrust their children's health and safety to BSA and requires children to engage in activities that expose them to adults and others. Much of BSA's activities

include over-night outings, camping trips, and trips away from parents.

14.     BSA has established its presence through the use of a hierarchical system, whereby local COUNCILS and chartering organizations implement and maintain BSA's program at a local level under BSA's guidance and control. BSA issues the Boy Scouts of America name, emblems, badges, markings, and youth programs to the COUNCILS and chartering organizations. BSA requires the local COUNCIL and troops within a local COUNCIL to strictly adhere to BSA's organizational charter and standards of leadership.

15.     A local scouting troop cannot exist without the support of a chartering organization that has received a charter from BSA authorizing the chartering organization to implement and run BSA's scouting program.

16.     BSA creates the bylaws, rules and regulations that every chartering organization must adhere to in implementing and running BSA's scouting program. Significantly, BSA's bylaws obligate a chartering organization to provide adequate facilities, supervision, and leadership for the troop in exchange for the granting of a charter to run a local scouting troop.

17.     Under the BSA bylaws, each chartering organization is required to select at least three people over the age of 21 to serve as the Troop Committee. The Troop Committee then selects the Troop Scoutmaster. BSA must approve scout leaders, whether paid or volunteer, to serve in a local troop or council.

18.     Together, the Troop Committee and the Scoutmaster are responsible for the general program and supervision of the troop.

19.     Further, each chartering organization is required to appoint a representative other than the Scoutmaster or Assistant Scoutmaster to serve as its institutional representative on the local COUNCIL.

20.     A chartering organization must reapply to BSA every year for a renewed charter in order to continue to operate a local troop. BSA may revoke a chartering organization's charter at any time should the chartering organization be found to deviate from BSA's charter and bylaws.

21.     This chartering system reveals BSA's consent to allow local chartering organizations to operate the scouting program on its behalf and the chartering organizations' consent to operate the local troops subject to BSA's control or right to control. Accordingly, the chartering organizations are the agents of BSA.

22.     BSA uses a similar structure in relation to its local COUNCIL's. BSA issues a charter to an approved local COUNCIL authorizing the local COUNCIL to administer the scouting program to the local scout troops within the region on behalf of BSA.

23.     The local COUNCIL's are subject to the same bylaws, rules and regulations as the chartering organizations. If a local COUNCIL deviates from the rules and regulations established by BSA, then the local COUNCIL may have its charter revoked.

24.     All local COUNCIL's must apply to BSA for renewal of their charters annually.

25.     It is the duty of the local COUNCIL to promote, support, and maintain the BSA scouting regime amongst all local troops within the local COUNCIL's area.

26.     The chartering system shows BSA's consent to allow local COUNCIL's to operate the scouting program on its behalf within a specific geographic region, and the local COUNCIL's consent to operate the scouting program subject to BSA's control or right to control. Thus, the local COUNCIL's are agents of BSA.

27.     BSA cannot operate its scouting program without the consent and

cooperation of the local COUNCIL's and chartering organizations.    Conversely, the chartering organizations and local COUNCIL's cannot operate and supervise local scouting troops without the consent of BSA.

### The History of Pedophilia in Scouting

28.    BSA has known for decades of the high degree of risk that adult Scoutmasters and volunteers may sexually abuse minor scout members.

29.    Since the early 1900s, BSA has maintained a system of "Ineligible Volunteer Files" to track incidents wherein adult Scoutmasters sexually abused scouts. The Ineligible Volunteer Files contain internal memoranda demonstrating BSA's awareness of the ongoing pedophilia within BSA, and demonstrated concerns about pedophiles within BSA harming their reputation and economic interests.

30.    These Ineligible Volunteer Files demonstrate BSA's vulnerabilities when it comes to pedophilia within BSA and includes pedophiles' techniques used to enter scouting, their techniques for grooming victims and more.

31.    In approximately 1972, BSA implemented a system requiring local COUNCIL's' scouting executives to complete and send in a form with any available supporting information about known or alleged sexual abuse committed by adult Scoutmasters in the executives' jurisdiction. Upon receipt of this information from the local COUNCIL, BSA created an Ineligible Volunteer File for the abuser and added it to BSA's database.

32.    By 1977, BSA was advising all sponsoring organizations to maintain "two deep leadership" for all scouting activities, wherein two adult Scoutmasters were required to be present at all times. Ostensibly, this precaution was implemented to help prevent sexual abuse in scouting.

Highly Confidential

33.     Despite BSA's extensive and long-standing knowledge of the high degree of risk of pedophilia in scouting, BSA did not implement a sexual abuse-prevention education program until approximately 1988. This program, the Youth Protection Program, was BSA's first effort to educate scouts and their family members about the risk of sexual abuse in scouting, a risk that continues today.

34.     BSA has overwhelming evidence that scouting has particular characteristics that make the organization vulnerable to pedophiles, including but limited to:

> a.  Joining BSA provides pedophiles access to boys alone and away from their families.
>
> b.  BSA repeatedly encourages young boys to strictly obey their scout leaders and masters, allowing pedophiles to groom their victims.
>
> c.  BSA encourages overnight stays, camping trips and other activities for scouts and scout leaders and masters to be alone together.

**<u>George Fout's Sexual Battery of A.A.</u>**

35.     A.A. is an adult male. At all relevant times, A.A. was a minor residing in Marion County, Florida and was under the age of sixteen (16).

36.     At all relevant times, A.A. was enrolled in the Boy Scouts of America scouting program.

37.     At all relevant times, A.A. was a member of Boy Scouts of America Troop 448 in Ocala, Florida. Troop 448 was chartered by Defendant SILVER SPRINGS SHORES.

38.     As the chartering organization of Troop 448, Defendant SILVER SPRINGS SHORES was responsible for providing adequate facilities, supervision, and leadership for the troop.

Highly Confidential

39.     The troop meetings were held in facilities owned or operated by Defendant SILVER SPRINGS SHORES.

40.     At all times material hereto, Steve Fout was installed as the Scoutmaster (a/k/a Troop Leader) for Troop 448.

41.     At all times material hereto, Steve Foot's son, George Fout, was an Assistant Scoutmaster (a/k/a Assistant Troop Leader) for Troop 448.

42.     Troop 448 was under the jurisdiction of Defendant NORTH FLORIDA COUNCIL.

43.     As the Scoutmaster of Troop 448, Steve Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

44.     As the Assistant Scoutmaster of Troop 448, George Fout assisted Steve Fout in these activities.

45.     At all times material hereto, Assistant Scoutmaster George Fout was under the direct supervision of Scoutmaster Steve Fout.

46.     In or about 2004, A.A. became a member of Troop 448.  It was through his membership in Troop 448 that Plaintiff was introduced to his abuser, George Fout.

47.     George Fout often showered Plaintiff with special attention.

48.     George Fout groomed Plaintiff for sexual abuse by gaining Plaintiff's trust and admiration.

49.     In or about 2004, when A.A. was eight (8) years old, George Fout began to commit sexually battery upon A.A.

50.     Specifically, George Fout committed oral and anal sodomy and other acts of sexual battery constituting violations of Section 794.011, Florida Statutes upon A.A.

BSA-PLAN_01422760

SA 1014

51.     On or about July 2009, A.A. was attending a scouting event sponsored by BSA, administrated by the BSA and on the BSA property. During that campout week, George Fout approached A.A. in his bedroom. During this encounter George Fout touched A.A.'s penis. This was soon after George Fout's abuse had escalated to include penetration.

52.     Each of these acts occurred prior to the Plaintiff's sixteenth (16th) birthday.

53.     Eventually, George Fout escalated the frequency of the sexual battery to the point where he was sexually abusing Plaintiff approximately once a month.

54.     The sexual battery would often take place at George Fout's home after scouting events, in which he resided with Steve Fout, his father and the Scoutmaster of Troop 448. Steve Fout was often present in the home during George Fout's sexual battery of A.A.

55.     At times, A.A, would leave scouting events held on Defendants' premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of BSA policy.

56.     As the sexual battery would continue, without limitation, A.A. would spend the night at the home of Scoutmaster Steve Fout.  This is a clear violation of BSA policy.  During those occasions, A.A. would be abused by Assistant Scoutmaster George Fout. Steve Fout was often in the home often when the incidents of sexual battery occurred.

57.     At no time did BSA, NORTH FLORIDA COUNCIL, or SILVER SPRINGS SHORES take steps to ensure the non-sleepover between volunteer leaders and youth in BSA's policy was being implemented and followed by their scoutmasters or scout leaders, and at no time did BSA, NORTH FLORIDA COUNCIL, OR SILVER

BSA-PLAN_01422761

SA 1015

SPRINGS SHORES take steps to ensure that no one-on-one contact between volunteer leaders and youth were being followed according to BSA's polices.

58.     A.A. was repeatedly abused under circumstances where he was unable to protect himself or was otherwise unable to avail himself of his legal guardians for their ordinary source of protection or was otherwise relying entirely on BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, and its agents for his protection.

59.     A.A. and his family imposed confidence in BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things, learn the values and characteristics that Defendants promote through involvement with BSA, and ultimately would be safe from harm in doing so.

60.     It is through A.A.'s involvement with BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, and George Fout's relationship with BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES that A.A. was abused by George Fout.

61.     BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES had a direct and special relationship with scouts who participated in its programs. A.A. was a child at the time of the abuse. The abuse began and often occurred when A.A. was placed in the care and custody of Defendants BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, with the resulting loss of control to protect himself.

62.     BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES had a direct and special relationship with adult scout leaders and masters they utilized to work with children, including A.A., whose family entrusted him to Defendants care.

63.     Defendants BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS

BSA-PLAN_01422762

SA 1016

SHORES, were substituting for A.A.'s parents during the relevant times.

64.     At all relevant times, George Fout and Steve Fout were acting as the agents of Defendant BSA, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES by leading Boy Scouts of America Troop 448.

65.     At all relevant times, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES were serving as Defendant BSA's agents by implementing and maintaining BSA's scouting program on a local level.

## CAUSES OF ACTION

### Count I: Negligence of Defendant SILVER SPRINGS SHORES

66.     Plaintiff incorporates Paragraphs 1 through 64 above as fully set forth under this count and further alleges as follows:

67.     Defendant SILVER SPRINGS SHORES had a special relationship with A.A. because among other things, A.A. was a child at the time of the abuse, the abuse began and often occurred when A.A. was placed in the care and custody of Defendant SILVER SPRINGS SHORES, with the resulting loss of control to protect himself, and Defendant SILVER SPRINGS SHORES was substituting for A.A.'s parents during the relevant times.

68.     This special relationship between Defendant SILVER SPRINGS SHORES and A.A. gave rise to a right of protection for A.A.

69.     Based on the special protective relationship with A.A., Defendant SILVER SPRINGS SHORES had a duty to protect A.A. from reasonably foreseeable harm.

70.     Defendant SILVER SPRINGS SHORES breached the duty it owed A.A., by acts or omissions which included, without limitation:

a)     Failing to protect A.A. from reasonably foreseeable harm, including,

without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed. These included, without limitation that Defendant SILVER SPRINGS SHORES knew or should have known of the special relationship between the Fouts and A.A. and that A.A.  would leave the meetings held on its premises with  Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

71.   As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

72.   As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

BSA-PLAN_01422764

SA 1018

## Count II: Negligence of Defendant NORTH FLORIDA COUNCIL

73.     Plaintiff incorporates Paragraphs 1 through 64 above as fully set forth under this count and further alleges as follows:

74.     Defendant NORTH FLORIDA COUNCIL had a special relationship  with A.A. because among other things, A.A. was a child at the time of the abuse, the abuse began and often occurred when A.A. was placed in the care and custody of Defendant NORTH FLORIDA COUNCIL, with the resulting loss of control to protect himself, and Defendant NORTH FLORIDA COUNCIL was substituting for A.A.'s parents during the relevant times.

75.     This special relationship between Defendant NORTH FLORIDA COUNCIL and A.A. gave rise to a right of protection for A.A.

76.     Based on the special protective relationship with A.A., Defendant NORTH FLORIDA COUNCIL had a duty to protect A.A. from reasonably foreseeable harm.

77.     Defendant NORTH FLORIDA COUNCIL breached the duty it owed A.A., by acts or omissions which included, without limitation:

    a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant NORTH FLORIDA COUNCIL knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant NORTH FLORIDA COUNCIL knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

    b)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to

BSA-PLAN_01422765

SA 1019

isolate and sexually abuse A.A.

    c)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

78.    As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL's negligent acts and omissions, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

79.    As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count III – Negligence of Defendant BSA

80.    Plaintiff incorporates Paragraphs 1 through 64 above as fully set forth under this count and further alleges as follows:

81.    Defendant BSA had a special relationship with A.A. because among other things, A.A. was a child at the time of the abuse, the abuse began and often occurred when A.A. was placed in the care and custody of Defendant BSA, with the resulting loss of control to protect himself, and Defendant BSA was substituting for A.A.'s parents

during the relevant times.

82.     This special relationship between Defendant BSA and A.A. gave rise to a right of protection for A.A.

83.     Based on the special protective relationship with A.A., Defendant BSA had a duty to protect A.A. from reasonably foreseeable harm.

84.     Defendant BSA breached the duty it owed A.A., by acts or omissions which included, without limitation:

    a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant BSA knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant BSA knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

    b)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

85.     As a direct and proximate cause of Defendant BSA's negligent acts and omissions, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

86.     As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to

experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count IV: Breach of Fiduciary Duty of Defendant SILVER SPRINGS SHORES

87.     Plaintiff incorporates Paragraphs 1 through 64 above as fully set forth under this count and further alleges as follows:

88.     At all relevant times, A.A. was a minor for whom Defendant SILVER SPRINGS SHORES was entrusted with caring.

89.     Upon information and belief, Defendant SILVER SPRINGS SHORES had a special relationship with A.A. because among other things, Defendant SILVER SPRINGS SHORES took charge of and/or exercised control over A.A,  and A.A. and his family imposed confidence in SILVER SPRINGS SHORES through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things, learn the values and characteristics that SILVER SPRINGS SHORES promotes through involvement with BSA, and ultimately would be safe from harm in doing so.

90.     As a result of this relationship, at all relevant times, Defendant SILVER SPRINGS SHORES had a fiduciary duty toward A.A. that included the obligation to protect him from sexual battery and sexual predators.

91.     Defendant SILVER SPRINGS SHORES breached its fiduciary duty to protect A.A. by, among other things,

a) Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant SILVER SPRINGS SHORES knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b) Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c) Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

92.     As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

93.     As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

BSA-PLAN_01422769

SA 1023

## Count V: Breach of Fiduciary Duty of Defendant NORTH FLORIDA COUNCIL

94.     Plaintiff incorporates Paragraphs 1 through 64 above as fully set forth under this count and further alleges as follows:

95.     At all relevant times, A.A. was a minor for whom Defendant NORTH FLORIDA COUNCIL was entrusted with caring.

96.     Upon information and belief, Defendant NORTH FLORIDA COUNCIL had a special relationship with A.A. because among other things, Defendant NORTH FLORIDA COUNCIL took control of and/or exercised control over A.A,  and A.A. and his family imposed confidence in NORTH FLORIDA COUNCIL through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things, learn the values and characteristics that NORTH FLORIDA COUNCIL promotes through involvement with BSA, and ultimately would be safe from harm in doing so.

97.     As a result of this relationship, at all relevant times, Defendant NORTH FLORIDA COUNCIL had a fiduciary duty toward A.A. that included the obligation to protect him from sexual battery and sexual predators.

98.     Defendant NORTH FLORIDA COUNCIL breached its fiduciary duty to protect A.A. by, among other things,

    a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant NORTH FLORIDA COUNCIL knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant NORTH FLORIDA COUNCIL knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

    b)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to

BSA-PLAN_01422770

SA 1024

isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

99.   As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL's breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

100.   As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count VI: Breach of Fiduciary Duty of Defendant BSA**

101.   Plaintiff incorporates Paragraphs 1 through 64 above as fully set forth under this count and further alleges as follows:

102.   At all relevant times, A.A. was a minor for whom Defendant BSA was entrusted with caring.

103.   Upon information and belief, Defendant BSA had a special relationship with A.A. because among other things, Defendant BSA took charge of and/or exercised

BSA-PLAN_01422771

SA 1025

control over A.A, and A.A. and his family imposed confidence in BSA through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things, learn the values and characteristics that BSA promotes through involvement with BSA, and ultimately would be safe from harm in doing so.

104.  As a result of this relationship, at all relevant times, Defendant BSA had a fiduciary duty toward A.A. that included the obligation to protect him from sexual battery and sexual predators.

105.  Defendant BSA breached its fiduciary duty to protect A.A. by, among other things,

a)  Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant BSA knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant BSA knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)  Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)  Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

106.  As a direct and proximate cause of Defendant BSA's breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

107.  As a result of this sexual battery, A.A. suffered at the time of the abuse

and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count VII: Vicarious Liability of Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for the Sexual Battery by George Fout

108.    Plaintiff incorporates Paragraphs 1 through 64 above as fully set forth under this count and further alleges as follows:

109.    At all relevant times, George Fout, as Assistant Scoutmaster, was acting as agent for Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL  and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

110.    Accordingly, Defendants  SILVER  SPRINGS  SHORES,  NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of George Fout.

111.    George Fout's acts and omissions and breaches of fiduciary duties include, without limitation, committing acts of sexual battery upon A.A. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

112.    As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional,

BSA-PLAN_01422773

SA 1027

psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial, for which such damages, SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA are vicariously liable.

113.    WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count VIII: Vicarious Liability of Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for the Negligence and Breach of Fiduciary Duty of Steve Fout**

114.    Plaintiff incorporates Paragraphs 1 through 64 above as fully set forth under this count and further alleges as follows:

115.    At all relevant times, Steve Fout, as Scoutmaster, was acting as agent for Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

116.    Accordingly, Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of Steve Fout.

117.    Steve Fout's acts and omissions and breaches of fiduciary duties include, without limitation,

a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his son and Assistant

BSA-PLAN_01422774
SA 1028

Scoutmaster if proper precautions were not followed. Steve Fout knew that proper precautions and procedures were not followed. These included, without limitation, that Steve Fout knew or should have known of the special relationship between George Fout and A.A. and that A.A. would leave the meetings held on its premises to spend the evening at the Fout's residence, in violation of Boy Scout policy.

b)      Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at his home, which allowed George Fout to isolate and sexually abuse A.A.

c)      Failing to otherwise properly oversee the activities of Troop 448, its scouts, and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

118.    As a result of this negligence and breach of fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

119.    As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial, for which such damages, SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA are vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

**Count IX: Vicarious Liability of Defendants NORTH FLORIDA COUNCIL
and BSA for the Negligence and Breach of Fiduciary Duty of
SILVER SPRINGS SHORES**

120.    Plaintiff incorporates Paragraphs 1 through 64 above as fully set forth under this count and further alleges as follows:

121.    At all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendants NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

122.    Accordingly, Defendants NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of SILVER SPRINGS SHORES.

123.    SILVER SPRINGS SHORES acts and omissions and breaches of fiduciary duties include, without limitation,

a)      Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant SILVER SPRINGS SHORES knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)      Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)      Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

BSA-PLAN_01422776

SA 1030

124.    As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligence and breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

125.    As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial for which NORTH FLORIDA COUNCIL and BSA are vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count X: Vicarious Liability of Defendant BSA for the Negligence and Breach of Fiduciary Duty of NORTH FLORIDA COUNCIL

126.    Plaintiff incorporates Paragraphs 1 through 64 above as fully set forth under this count and further alleges as follows:

127.    At all relevant times, NORTH FLORIDA COUNCIL was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

128.    Accordingly, Defendant BSA is vicariously liable for the acts and omissions and breaches of fiduciary duties of NORTH FLORIDA COUNCIL.

129.    NORTH FLORIDA COUNCIL acts and omissions and breaches of

BSA-PLAN_01422777
SA 1031

fiduciary duties include, without limitation,

a) Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant NORTH FLORIDA COUNCIL knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant NORTH FLORIDA COUNCIL knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b) Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c) Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

130.    As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL's negligence and breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

131.    As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial for which BSA is vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further

BSA-PLAN_01422778

SA 1032

requests trial by jury of all issues so triable.

Dated: December 14, 2018.

MORGAN & MORGAN, P.A.
Business Trial Group

*s/Paul L. SanGiovanni*
Paul L. SanGiovanni
Florida Bar No. 0513164
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone:  (407)418-6041
Facsimile:  (407)245-3394
Primary E-mail:  PSangi@forthepeople.com
Secondary E-mail MTodd@forthepeople.com
*Attorneys for Plaintiff*

BSA-PLAN_01422779
SA 1033

81910-5/RAG/61732650

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.                                                CASE NO. 2016-CA-000167

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

      Defendant.

_____/

## DEFENDANT'S, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND MOTION TO STRIKE PREJUDGMENT INTEREST

    Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC. ("Silver

Springs"), by and through the undersigned counsel and pursuant to the applicable Florida Rules

of Civil Procedure, hereby files this Motion to Dismiss Plaintiff's Amended Complaint and

Motion to Strike Prejudgment Interest, and in support thereof states as follows:

    1.    Plaintiff initially filed a Complaint initiating this cause of action on January 27,

2016. He subsequently filed a Motion for Leave to Amend the Complaint in order to address

pleading deficiencies in the original Complaint.

    2.    Defendant now moves to Dismiss the Amended Complaint as the Amended

Complaint fails to establish a viable cause of action against this Defendant.

Electronically Filed Marion Case #  16CA000167AX 01/02/2019 04:43:23 PM

Highly Confidential

BSA-PLAN_01422780

SA 1034

CASE NO. 2016-CA-000167

3.      This is a negligence action arising out of the alleged sexual battery of A.A. by George Fout at various times between 2004 and 2012 in the private bedroom of George Fout. *See* Pl.'s Compl. ¶¶ 46–56.

4.      Plaintiff claims that this Defendant was negligent for failing to prevent A.A. from participating in sleepovers with BSA volunteers. *Id.* at ¶¶57. Plaintiff goes on to allege that Defendant breached its duties to A.A., to whom the Amended Complaint alleges Defendant had a special relationship. Plaintiff also alleges that Defendant is vicariously liable for the actions of George Fout and Steve Fout.

5.      There are no allegations that the alleged abuse took place on this Defendant's premises. Further, there are no factual allegations that George Fout was an employee of this Defendant. Nor are there any allegations that the abuse took place during an event associated with this Defendant. Rather, Plaintiff explicitly stated in the Complaint that the abuse "would often take place at George Fout's home after scouting events." *Id.* at ¶ 54. Plaintiff further asserted that the alleged abuse took place when A.A. "would spend time at the Fout residence in violation of BSA policy. *Id.* at ¶ 55. There are no allegations that these visits to, and sleepovers at, the Fout residence were in any way associated with Silver Springs.

6.      Silver Springs now moves to dismiss Counts I and IV of Plaintiff's Amended Complaint because Plaintiff has not alleged any facts that establish a duty on the part of this Defendant as outlined in the incorporated Memorandum of Law.

7.      Silver Springs also moves to dismiss Counts VII and VIII of Plaintiff's Amended Complaint because Plaintiff has not alleged any facts that establish vicarious liability on Silver Springs for the actions of either George Fout or Steve Fout.

- 2 -

Highly Confidential

BSA-PLAN_01422781

**SA 1035**

CASE NO. 2016-CA-000167

8.      Additionally, this Defendant contends that all of Plaintiff's claims against Silver Springs are time-barred by the statute of limitations.

9.      Lastly, this Defendant moves to strike all of Plaintiff's demands for prejudgment interest, as such demands are improper for a case such as the one at bar.

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE**</u>

**I.      Failure to Plead Facts Sufficient to Support a Legal Duty to Prevent the Misconduct of a Third Party**

Counts I and IV of Plaintiff's Complaint should be dismissed because they fail to establish a duty owed to A.A. by Silver Springs for the actions of George Fout and Steve Fout. The general rule in Florida is that a party has no legal duty to "prevent the misconduct of third persons." *Michael & Philip, Inc. v. Sierra*, 776 So.2d 294, 297 (Fla. 4th DCA 2000). As the court noted in *Boynton v. Burglass*, 590 So.2d 446, 448 (Fla. 3d DCA 1991), "Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third party." *K.M. ex rel. D.M. v. Publix Super Markets, Inc.,* 895 So. 2d 1114, 1117 (Fla. 4th DCA 2005). Florida recognizes the special relationship exception to the general rule of non-liability for third-party misconduct. The existence of a special relationship, however, may give rise to a duty to control the conduct of third persons so as to prevent them from harming others. *Id.* Florida has adopted the "special relationship" test set forth in the Restatement (Second) of Torts, Section 315, which states:

> § 315 General Principle
> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

- 3 -

Highly Confidential

CASE NO. 2016-CA-000167

Plaintiff has attempted to establish a duty incumbent on this Defendant based on the special relationship exception. Plaintiff, however, has cited to no facts to support his contention that Silver Springs owed a special duty to A.A. Plaintiff maintains the position that Silver Springs controlled or had the right to control local troops directly, or through its sponsoring organizations. Plaintiff more specifically defines Silver Springs' scope of responsibility: "As the chartering organization of Troop 448, Defendant [Silver Springs] was responsible for providing adequate facilities, supervision, and leadership for the troop." *Id.* at ¶ 38. The extent of Silver Springs' involvement with A.A. and Troop 448 was limited to providing A.A. and the rest of Troop 448 with a facility to be used for troop meetings, a point that Plaintiff concedes. *Id.* at ¶ 39 ("The troop meetings were held in facilities owned or operated by Defendant Silver Springs Shores."). The Complaint is devoid of any allegations that alleged abuse of any kind took place in facilities owned or operated by Silver Springs.

Florida courts have made it clear that at the outset, litigants must state their pleadings with sufficient particularity for a defense to be prepared. *Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A.* Mere conclusions are insufficient. *Clark v. Boeing Co.*, 395 So.2d 1226 (Fla. 2d DCA 1981). Although Plaintiff concludes that there is a "special relationship," a review of the four corners of the Complaint does not establish any facts to support this conclusion. As such, Plaintiff's Complaint should be dismissed.

Additionally, a review of the applicable Florida law demonstrates that a special relationship has not been shown to exist in cases such as this. In *Concepcion By and Through Concepcion v. Archdiocese of Miami By and Through McCarthy*, 693 So. 2d 1103, 1103 (Fla. 3d DCA 1997), the court determined that as a matter of law, a school owed no duty to its students

- 4 -

Highly Confidential

CASE NO. 2016-CA-000167

during non-school hours when the students are not on the school's premises and not otherwise involved in school related or sponsored activities. Similarly, in *John Doe No. 77 v. Boy Scouts of America, Inc.*, 2015 WL 10000265 (Fla. 13th Cir. Ct. 2015), the court found that there was no legal duty owed by the Boy Scouts to prevent its volunteers from causing physical harm outside of their work for the Boy Scouts. In *John Doe No. 77*, a mother claimed that she trusted her neighbor, an unpaid volunteer assistant scout master for the Boy Scouts, because of his active involvement in the Boy Scouts. *Id.* The court granted final summary judgement for the Boy Scouts because there was "no special relationship" between the Boy Scouts and the assistant scout master or the Boy Scouts and the minor plaintiffs because the alleged abuse took place at a non-Boy Scout setting. *Id.* The facts and allegations in the case at bar are strikingly similar to the facts and allegations in *John Doe No. 77*. Here, A.A.'s alleged injuries did not occur in the course of a special relationship, but, rather, occurred in the Fout residence during sleepovers that were not associated in any way with this Defendant and which violated BSA policy.

The complaint must set out the elements of an action and the facts that support them so that the court and the defendant can clearly determine what is being alleged. *Barrett v. City of Margate*, 743 So. 2d 1160, 1162 (Fla. 4th DCA 1999). As such, it is insufficient to plead opinions, theories, legal conclusions, or argument. *Id.* at 1163. Specifically, mere legal conclusions inserted in a complaint are insufficient to state a cause of action unless substantiated by allegations of ultimate fact. *Doyle v. Flex*, 210 So. 2d 493, 494 (Fla. 4th DCA 1968). Counts I and IV of Plaintiff's Complaint, which allege negligence and breach of fiduciary duty, respectively, are founded in the theory that a special relationship existed between Silver Springs and A.A. As set forth above, no such relationship existed and Plaintiff's conclusory assertions,

- 5 -

Highly Confidential

CASE NO. 2016-CA-000167

which argue the contrary, are insufficient. As such, Plaintiff's Motion to Dismiss as to Counts I and IV of Plaintiff's Complaint should be granted.

**II.     Failure to Plead Facts Sufficient to Support a Claim for Vicarious Liability**

In Counts VII and VIII, Plaintiff alleges that Silver Springs is vicariously liable for the sexual battery by George Fout and the breach of fiduciary duty of Steve Fout, respectively. Plaintiff alleges that, at all relevant times, George Fout and Steve Fout were acting as agents on behalf of Silver Springs. The essential elements to establish actual agency are: (1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842 (Fla. 2003). Plaintiff's Amended Complaint is deficient with regard to this argument, as it does not allege any ultimate facts showing that a principal (someone in a supervisory role at Silver Springs) acknowledged that either George Fout or Steve Fout would act for Silver Springs; how and when either of the Fouts accepted that undertaking; nor the ways in which Silver Springs controlled the Fouts actions. Similarly, agency was not established through the doctrine of apparent agency. In order to determine the existence of apparent agency, it must be determined that (1) there was a representation by the principal; (2) the injured party relied on that representation; and (3) the injured party changed position in reliance upon the representation and suffered detriment. *Amstar Inc. Co. v. Cadet*, 862 So. 2d 736, 742 (Fla. 5th DCA 2003). Nowhere in Plaintiff's Complaint does Plaintiff allege that Silver Springs made a representation regarding the existence of an agency relationship between Silver Springs and either of the Fouts. Plaintiff's Complaint does not establish the existence of an agency relationship because it fails to allege any ultimate facts supporting that claim.

- 6 -

Highly Confidential

CASE NO. 2016-CA-000167

Even if this Court accepted the bald assertion that the Fouts were agents of Silver Springs, the alleged sexual abuse described in the Complaint would fall outside the scope of any agency relationship. "An employee's conduct is within the scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 357 (Fla. 3d DCA 2001).

Courts have previously held that a volunteer is not acting within the scope of agency at the time of an incident in which the volunteer was a perpetrator of sexual abuse. *See Special Olympics Fla., Inc. v. Showalter*, 6 So. 3d 662, 665 (Fla. 5th DCA 2009). "Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer." *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985). Unless it can be established that the abuse occurred in furtherance of the employer's business or principal's activities, the type of misconduct which is alleged in the subject Complaint is not within the scope of the purported agency relationship. *See Showalter*, 6. So. 3d at 665–66. In *L.M.*, *supra*, the court found that the Defendant church was not vicariously liable for the sexual molestation of a youth who was being counseled/ministered, noting that although the pastor may have had access to the girl though his position as the Church pastor, he was not engaging in authorized acts or serving the interests of the Church during the time he sexually abused the minor child. *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 358 (Fla. 3d DCA 2001).

"As a matter of common sense, having sexual relations with a counselee is not part of the job responsibilities of a minister." *Elders v. United Methodist Church*, 793 So. 2d 1038, 1041

- 7 -

Highly Confidential

CASE NO. 2016-CA-000167

(Fla. 3d DCA 2001). That rationale is equally applicable here, where Plaintiff is attempting to hold Silver Springs vicariously liable for the acts of George Fout and Steve Fout, an assistant scoutmaster and scoutmaster, respectively. The duties of the Fouts included leading troop meetings, training troop members in craft/survival skills, planning troop activities, and coordinating troop fundraising. Because the sexual abuse alleged by Plaintiff was driven by the personal motives of George Fout and not designed to further the interests of Silver Springs, Counts VII and VIII of the Complaint should be dismissed.

### III.  Plaintiff's Claims against Silver Springs are Time-Barred by the Statute of Limitations

Plaintiff's Complaint was filed with this Court on January 27, 2016. In the Complaint, Plaintiff asserted that the sexual abuse by George Fout began in or about 2004 and continued to occur until 2012. This Defendant moves to dismiss all claims against it as the claims are time-barred by the applicable Statute of Limitations.

There are no allegations that Plaintiff was sexually abused after 2012. Although Plaintiff alleges that sexual abuse occurred in 2012, he does not specify the dates of the abuse that occurred in 2012. All claims against Silver Springs are founded on negligence; Plaintiff does not assert any intentional tort claims against this Defendant. The statute of limitations for negligence actions is 4 years.  Fla. Stat. § 95.11.  Therefore, any and all of Plaintiff's claims that accrued before January 27, 2016, when the Complaint was filed, are time-barred.

Normally, a claim for injuries based on another party's negligent conduct must be filed within four years of the incident under the applicable statute of limitations. *Rubio v. Archdiocese of Miami, Inc.,* 114 So. 3d 279, 281 (Fla. 3d DCA 2013). In more than ten years since enacting section 95.11(7), the legislature has not extended the limitations period to causes of action other

- 8 -

Highly Confidential

CASE NO. 2016-CA-000167

than intentional torts.  *Cisko v. Diocese of Steubenville*, 123 So. 3d 83, 85 (Fla. 3d DCA 2013). Plaintiff's claims against Silver Springs are all premised on negligence and there are no allegations of Silver Springs committing any intentional torts. The running of the statute of limitations is an absolute defense in a negligence case such as this. *Rubio,* 114 So. 3d 279. In *Rubio*, the defendant church's Motion to Dismiss was granted, despite allegations that it knew that one of its priests was molesting the plaintiff, because there were no allegations that the church caused the plaintiff to wait to file suit. *Id*. As such, Plaintiff's claims related to any abuse that occurred prior to January 27, 2012 are time-barred by the four-year statute of limitations and should be dismissed with prejudice.

Plaintiff was diligent in tracking the language of Fla. Stat. § 95.11(9), which states: "An action related to an act constituting a violation of s. 794.011 involving a victim who was under the age of 16 at the time of the act may be commenced at any time." Section 794.011 is the criminal statute pertaining to acts constituting sexual battery. *See* Fla. Stat. § 794.011. Plaintiff contends that each act of sexual abuse alleged in the Complaint occurred prior to Plaintiff's sixteenth birthday.

As discussed in Sections I and II of this Memorandum, *supra*, Plaintiff does not allege that any sexual abuse took place at any premises owned or operated by Silver Springs. In fact, Plaintiff asserts that the abuse occurred in the Fout's personal residence **after** BSA activities. Because of the nature and location of the alleged sexual abuses, this Defendant has established that no special relationship existed between Silver Springs and Plaintiff at the time of the alleged abuses and, as such, no duty was breached by this Defendant. This Defendant has also established that it is not vicariously liable for the actions of George Fout or Steve Fout. In sum, this Defendant contends that Section 95.11(9) is inapplicable as to all Counts against this

- 9 -

BSA-PLAN_01422788

SA 1042

CASE NO. 2016-CA-000167

Defendant. The claims against Silver Springs are not "related to an act constituting a violation of Section 794.011." *See* Fla. Stat. § 95.11(9). Plaintiff must comply with the 4-year statute of limitations for any and all claims set forth against Silver Springs.

In any event, if this Court accepts the applicability of Section 95.11(9), Plaintiff's claims against Silver Springs are still time-barred. The statute states, in pertinent part, "[t]his subsection applies to any such action other than one which would have been time barred on or before July 1, 2010." Fla. Stat. § 95.11(9). Prior to the enactment of this subsection, all actions founded in negligence, regardless of whether the actions were related to crimes of sexual battery, were to comply with the necessary 4-year statute of limitations. Here, Plaintiff asserts that the sexual abuse began in or about 2004. *See* Pl.'s Compl. ¶ 46. All negligence actions related to sexual abuse incidents, where the incidents in question occurred on or before July 1, 2006, are time-barred by the statute of limitations, per the language of Section 95.11(9).   Here, Plaintiff concedes that abuse did, in fact, take place on or before July 1, 2006.

## IV.    Plaintiff's Claims for Prejudgment Interest Should be Stricken

In the *ad damnum* clause within Counts I, IV, VII, and VIII of the Complaint, Plaintiff demands the recovery of prejudgment interest. However, it is well established that Florida law provides that prejudgment interest is not a recoverable element of damages in a claim for unliquidated damages, such as is being sought in this matter. *Air Ambulance Professionals, Inc. v. Thin Air*, 809 So. 2d 28, 31 (Fla. 4th DCA 2002) ("Prejudgment interest is allowed on only liquidated claims, that is, sums which are certain, but which the defendant refuses to surrender.") The basis for this rule is that such damage claims are too speculative.  *Zorn v. Britton*, 162 So. 879 (Fla. 1935); *Parker v. Brinson Const. Co.*, 78 So. 2d 873 (Fla. 1955).

- 10 -

Highly Confidential

CASE NO. 2016-CA-000167

To the extent that the Plaintiff's Complaint includes requests for the award of prejudgment interest, this Defendant states that such claims should be stricken, as this is not a case which concerns a dispute regarding liquidated damages or other facts which would allow for recovery of prejudgment interest.

WHEREFORE, Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., respectfully requests that this Court enter an Order dismissing all allegations against it, specifically Counts I, IV, VII, and VIII of Plaintiff's Amended Complaint, for the reasons set forth herein, and additionally requests that this Court strike Plaintiff's various claims for prejudgment interest.

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, mtodd@forthepeople.com, mdyenson@forthepeople.com; Spencer H. Silverglate, Esquire, ssilverglate@cspalaw.com; mpedraza@cspalaw.com; Francisco Ramos, Jr., Esquire, framos@cspalaw.com; cdeleon@cspalaw.com; Shannon P. McKenna, smckenna@cspalaw.com, aford@cspalaw.com; on this 2nd day of January, 2019.

/s/ Richards H. Ford
Richards H. Ford, Esquire
Florida Bar No. 288391
Raychel A. Garcia, Esquire
Florida Bar No. 091096
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Silver Springs Shores Presbyterian Church, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

- 11 -

Highly Confidential

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,

       Plaintiff,

v.

THE BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, the
NORTH FLORIDA COUNCIL,
INC., BOYS SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, and
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,
a corporation authorized to do
business in Florida,

       Defendants.

_____/

CASE NO. 2016-CA-000167

### BSA AND COUNCIL'S MOTION TO DISMISS
### AMENDED COMPLAINT AND MEMORANDUM OF LAW

       Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc. ("Council"),

pursuant to Florida Rule of Civil Procedure 1.110(b), hereby move to dismiss the Amended

Complaint with prejudice for failure to state a cause of action.

### Introduction

       Plaintiff claims that he was sexually abused by George Fout ("Fout"). But Plaintiff does

not sue Fout. Instead, he sues entities unconnected to the alleged abuse: the national and local

Scouting organizations, respectively BSA and Council, and the chartered organization that

sponsored the Boy Scout Troop, Silver Spring Shores Presbyterian Church, Inc. ("Silver

Springs") (collectively "Defendants").

Highly Confidential

BSA-PLAN_01422791

SA 1045

CASE NO. 2016-CA-000167

Fout is about 10 years older than is Plaintiff. The two grew up on the same street a few houses apart. From 2004 until 2012, Plaintiff and Fout often played together at the home of Fout's parents. Plaintiff regularly spent weekend nights with Fout. Over these same years, Plaintiff, Fout, and their respective families were involved in Scouting and regularly took part in Scouting activities together. Fout's father (Steve Fout) was the volunteer Scoutmaster of Troop 448, the troop which Silver Springs sponsored and to which Plaintiff belonged. After turning 18, Fout became the Troop's Assistant Scoutmaster. For many of these years, Fout's mother and Plaintiff's great-aunt/adopted-sister/guardian also served as members of the Troop Committee with oversight for the Troop.

Fout was well-regarded in both the church and Scouting community. This changed in 2012 when Fout was arrested on child pornography charges. During the course of that investigation, Fout confessed to sexually abusing AA and others. Later that year, Fout was found guilty at trial of committing sexual battery and sexual molestation offenses against AA. *See Fout v. State*, 119 So. 3d 455 (Fla. 5th DCA 2013) (affirming sentence and conviction). Fout's arrest was a shock to the community. Before that time, no one—not Fout's parents, not AA's family, not any other members of the church or Scouting community— had any inkling about Fout's clandestine behavior.

These background facts will be borne out if the case progresses beyond the pleadings, but factual determinations are unnecessary to resolve this Motion. Taking the allegations of the Amended Complaint as true, it should be dismissed with prejudice because it fails to state a cause of action under any of its ten counts. The central issue is whether Defendants may be held liable for a volunteer assistant scoutmaster's alleged criminal acts committed solely in the confines of the volunteer's bedroom, during Plaintiff's visits and overnight sleepovers, unrelated

Highly Confidential

BSA-PLAN_01422792
SA 1046

CASE NO. 2016-CA-000167

to any Scouting activity and which were ***admittedly*** against Scouting rules. As a matter of law, Defendants may not be held liable for Fout's criminal acts unconnected to Scouting activity.

<div align="center">

**Discussion**

</div>

**I.      The Negligence Counts Must be Dismissed Because No Legal Duty Exists.**

Plaintiff alleges that Defendants had a legal duty to protect him from Fout's sexual abuse based on a "special relationship" arising from their care and custody of Plaintiff while he participated in Troop activities. (Amend. Comp. ¶¶ 67-69, 73-75, 81-83). No such duty exists here. There is no allegation that any Defendant knew or had notice of Fout's alleged wrongful conduct. All but one instance of alleged sexual misconduct (discussed below) ***admittedly*** took place ***outside*** of Scouting. (Amend. Comp. ¶¶ 54, 55, 70, 77, 84, 91, 98, 105, 117, 123, 129).

A negligence action must establish the four elements of duty, breach, proximate causation and damages. *Limones v. Sch. Dist. of Lee County*, 161 So. 3d 384 (Fla. 2015); *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003). The existence of a legal duty is a question of law for the court. *McCain*, 593 So. 2d at 503. Generally, a party does not have a duty to protect another absent a special relationship. *Limones*, 161 So. 3d at 390. A duty does not arise merely because harm is foreseeable. *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004).

As a matter of law, no special relationship exists when the harm arises from a personal relationship that is outside the context of the parties' legal relationship. *See KM. ex rel D.M. v. Publix Super Markets, Inc.*, 895 So. 2d 1114, 1117-18 (Fla. 4th DCA 2005). In *K.M.*, a grocery store employee asked a co-employee to babysit her child at the co-employee's home, during which the co-employee sexually abused the child. The court held that the grocery store owed no duty to the child because the incident arose from a personal relationship that was also outside the employment context. Similarly, in *Archbishop Coleman F. Carroll High School, Inc. v.*

<div align="center">

PAGE 3 OF 15
CLARKE SILVERGLATE P.A.
799 BRICKELL PLAZA, SUITE 900, MIAMI, FL 33131   PHONE: 305.377.0700   FAX: 305.377.3001   WWW.CSPALAW.COM

</div>

Highly Confidential

BSA-PLAN_01422793
**SA 1047**

CASE NO. 2016-CA-000167

*Maynoldi*, 30 So. 3d 533 (Fla. 3d DCA 2010), the court held that a school did not owe a duty to a student who was injured in an automobile accident after consuming alcohol at a private graduation party. No duty was owed because the accident took place off-campus, following an off-campus party that was not a school-sponsored event.

Here, as in *K.M.* and *Archbishop Coleman*, no special relationship arises because Fout's sexual misconduct ***admittedly*** took place during Plaintiff's ***personal*** visits and overnight sleepovers in a private bedroom in Fout's home. These visits and overnight sleepovers were unrelated to any Scouting activity and were ***admittedly*** against Scouting rules. Because Fout perpetrated the alleged sexual abuse ***outside*** of the Scouting relationship, no special relationship existed. Defendants thus had no legal duty to protect Plaintiff from Fout's sexual misconduct. *Id.*

As Plaintiff's Amended Complaint admits, BSA and Council's role is limited to offering a chartered organization the opportunity to host a Scouting program. BSA and the Council do not operate the day-to-day activities of the Scouting Program. Nor do they retain supervisory day-to-day control of the thousands of troops across the nation. Rather, day-to-day activities of the Scouting program are ***admittedly*** run at the ***local level*** by parents and volunteers. At best, this connection only sets forth an indirect, tangential relationship between Defendants and Plaintiff—a relationship which is insufficient to impose a legal duty on the Defendants. *K.M.*, 895 So. 2d at 1117-1118 (no special relationship exists outside the scope of the parties' relationships).

Plaintiff also seeks to establish a legal duty based on Fout's and his father's involvement in the Scouting program. But involvement in the Scouting program does not transmogrify into a right or ability to control the Fouts' ***non-Scouting*** related activities. *See Doe v. Boy Scouts of Am., Inc.*, 2016 WL 5848725, at *5 (Fla. 13th Jud. Cir. Hillsborough Cty) (finding BSA and Council did not have any legal duty to control the conduct of unpaid volunteers apart from their

Highly Confidential

BSA-PLAN_01422794
**SA 1048**

CASE NO. 2016-CA-000167

premises, events or activities) (citing *Publix Super Markets, Inc.*, 895 So. 2d at 1116), *affirmed on appeal by Doe by & through Doe's Mother & Father v. Boy Scouts of Am., Inc.*, 239 So. 3d 1234 (Fla. 2d DCA 2017); *Doe No. 77 v. Boy Scouts of Am., Inc.*, 2015 WL 10000265 at *4 (Fla. 13th Jud. Cir. Hillsborough Cty) (same), *affirmed on appeal bu Doe No. 77 v. Boy Scouts of Am., Inc.*, 232 So. 3d 346 (Fla. 2d DCA 2017). Neither does involvement in the Scouting program imbue a right or ability to control the private home of Fout's father or Fout's private bedroom.

Lacking any ability or right to control the Fouts' non-Scouting activities and the location of the incidents, there is no special relationship upon which a legal duty may be imposed on Defendants. *Id. See also K.M.*, 895 So. 2d at 1120 ("An employer does not owe a duty to persons who are injured by its employees while the employees are off duty, not then acting for the employer's benefit, not on the employer's premises, and not using the employer's equipment."). *Cf. Nova Southeastern v Gross*, 758 So. 2d 86, 89-90 (Fla. 2000) (finding duty on part of university for student's off-campus injuries because the incident took place at a school-related activity).

Not even a school (which has a direct relationship with its students, unlike BSA and Council who only have an indirect relationship) owes a duty to supervise its students all of the time. *Concepcion v. Archdiocese of Miami,* 693 So.2d 1103, 1105 (Fla. 3d DCA 1997). *See also Matallana v. Sch. Bd. of Miami-Dade Cty*, 838 So. 2d 1191, 1192 (Fla. 3d DCA 2003) (school did not owe duty to supervise students who engaged in fight off campus where one student shot and killed the other student even though school should have known the student had violent tendencies, previously threatened to harm the other student, and brought the gun to school).

Plaintiff further claims that Defendants had a duty to warn. But Plaintiff fails to allege (nor could he do so in good-faith) that Defendants knew or had notice of Fout's alleged sexual

Highly Confidential

BSA-PLAN_01422795
SA 1049

CASE NO. 2016-CA-000167

proclivities. Absent knowledge of the alleged ***wrongful conduct***, there is no duty to warn. *See T.W. v. Regal Trace, Ltd.*, 908 So. 2d 499, 505 (Fla. 4th DCA 2005) (by virtue of its special relationship with tenant, landlord had duty to warn tenant about past criminal activity on its premises); *Sunshine Birds & Supplies, Inc. v. U.S. Fidelity & Guar. Co.*, 696 So. 2d 907, 911 (Fla. 3d DCA 1997) (employers subject to potential liability because they failed to act when they had actual or constructive knowledge of their employees' past child molestations). Mere knowledge that ***unrelated*** persons have engaged in ***unrelated events*** is insufficient to impose a duty. *See Archbishop Coleman*, 30 So. 3d at 542 (holding mere knowledge of an off-campus event was insufficient to impose liability). As such, Plaintiff's allegations that Defendants knew or should have known that Plaintiff was visiting and spending the night at Fout's home are insufficient to impose any legal duty to warn.

Fout's knowledge of his ***own*** abusive acts and his father Steve Fout's ***alleged constructive knowledge*** of same are similarly insufficient to trigger a duty to warn. First, George and Steve Fout are not agents of BSA or Council. Second, "It is axiomatic that knowledge of the agent constitutes knowledge of the principal [only] as long as the agent received such knowledge while acting within the scope of his authority." *Brooks Tropicals, Inc. v. Acosta*, 959 So. 2d 288, 295 (Fla. 3d DCA 2007) (quoting *Bertram Yacht Yard, Inc. v. Florida Wire & Rigging Works, Inc.*, 177 So. 2d 365 (Fla. 3d DCA 1965)). Here, no duty can be imposed based on George Fout's knowledge of his own alleged abusive acts, which furthered only his own prurient interest and were unrelated to the Scouting program. *See Agriturf Mgmt., Inc. v. Roe*, 656 So. 2d 954, 955 (Fla. 2d DCA 1995); *First Bond & Mortgage Co. v. Yancey*, 139 So. 597, 600 (Fla. 1932). Similarly, no duty can be imposed based on Steve Fout's alleged constructive knowledge of his son's acts because only an agent's actual knowledge may be imputed to a principal. *Id*

Highly Confidential

CASE NO. 2016-CA-000167

Based on the foregoing, Plaintiff's negligence claims against the Defendants should be dismissed for failure to state a cause of action.

## II.     The Breach of Fiduciary Duty Claims Must be Dismissed Because No Fiduciary Duty Exists.

Counts V-VII allege breach of fiduciary duty claims. "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). To succeed on a fiduciary duty claim, one must first establish the existence of a fiduciary duty. *Crusselle v. Mong*, 59 So. 3d 1178, 1180 (Fla. 5th DCA 2011). "A fiduciary owes to its beneficiary the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts." *Cap.Bank v. MVB, Inc.*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994).

A fiduciary obligation may be express or implied. Express relationships are created by contract (principal/agent) or by legal proceedings (guardian/ward). *Maxwell v. First Union Bank*, 782 So. 2d 931, 933-934 (Fla. 4th DCA 2001). An implied fiduciary relationship requires that confidence is reposed on one side and superiority and influence are on the other or where one side undertakes an obligation to benefit a dependent party on the other. *See, respectively, The Florida Bar v. Adorno*, 60 So. 3d 1016, 1027-1028 (Fla. 2011); *Crusselle*, 59 So. 3d at 1181. Implied fiduciary obligations usually arise from well-recognized relationships of trust or confidentiality, including an attorney and client, a trustee and beneficiary, a physician and patient, a mental health professional and patient, and a corporate director and a corporation and its shareholders. *See, e.g., Gracey*, 837 So. 2d at 353-354 (psychotherapist/patient); *Doe v. Evans*, 814 So. 2d 370, 374-375 (Fla. 2002) (marital counselor/counselee); *Cohen v. Hattaway*, 595 So. 2d 105, 107 (Fla. 5th DCA) (directors and officers/corporation and shareholders).

Highly Confidential

CASE NO. 2016-CA-000167

To prove the existence of a fiduciary duty, a plaintiff must establish that a relationship existed in which the plaintiff put his trust in the defendant to protect the plaintiff's financial or property interests, secrets, confidence, or private information and that the defendant accepted that trust. Fla. Std. Jury Instruction 451.4. *See also In re Standard Jury Instructions in Civil Cases*, SC18-1672, 2018 WL 6696160 (Fla. Dec. 20, 2018) (authorizing publication and use of standard jury instructions on fiduciary duty).

Plaintiff has not pled, and cannot plead, either an express or an implied fiduciary relationship. The fiduciary duty allegations mirror the allegations in his negligence claims. In fact, Plaintiff claims that a fiduciary duty arises because of the (nonexistent) special relationship between Defendants and Plaintiff. (Amend. Comp. ¶¶ 89-90, 96-97, 103-104). Even assuming that such a special relationship exists (which it does not), a legal duty of care in the negligence sense does not in itself constitute a fiduciary obligation. More is needed: a plaintiff must plead *facts* establishing the existence of a *fiduciary* relationship. It is not enough to merely mimic the buzzwords of an "imposed confidence" and "fiduciary duty." (Amend Comp. ¶¶ 89-90, 96-97, 103-104).

The alleged misconduct must also arise out of the fiduciary relationship. *See Doe*, 814 So. 2d at 375. In *Doe*, the Florida Supreme Court found liability based on an implied fiduciary relationship that arose between a priest providing marital counseling and his counselee. In so doing, the Court "stress[ed] that the liability in this case rests on the assertion of an abuse of a marital counseling relationship through an inappropriate sexual relationship." *Doe*, 814 So. 2d at 375. In stark contrast to *Doe* (where the inappropriate conduct took place in connection with the marital counseling relationship), Fout's alleged abuse did not take place at any Scouting activity.

Highly Confidential

CASE NO. 2016-CA-000167

Rather, the alleged sexual misconduct arose from Plaintiff's personal visits and admittedly unsanctioned sleepovers at Fout's home.

No authority supports the imposition of a fiduciary obligation on an institutional defendant, such as Defendants, with a local troop member, such as Plaintiff. *See Roe v. Boy Scouts of Am., Corp.*, 2012 WL 3933184, at *7 (Conn. Super. Ct. Aug. 16, 2012), *aff'd sub nom., Roe No. 1 v. Boy Scouts of Am. Corp.*, 84 A.3d 443 (Conn. App. Ct. 2014). As the *Roe* court explained:

> There is no "unique degree of trust and confidence between the parties[,]" [citation omitted] who may not even know each other. Further, this case is not one involving matters such as fraud, self-dealing, conflict of interest, or dishonesty by the corporate defendants. Rather, it is a question of whether the corporate defendants had a duty of care to keep the plaintiff safe from criminal acts. It is, in short, a traditional negligence case. [Citation omitted].

*Id.*

Plaintiff's conclusory allegations that a fiduciary obligation exists do not state a cause of action for breach of fiduciary duty.

## III.    The Vicarious Liability Counts Must be Dismissed.

Counts VII-X set forth vicarious liability claims. Defendants are not liable for Fout's alleged criminal sexual batteries which, as a matter of law, fall outside the scope of any alleged agency. Responsibility for another party's tortious or criminal acts may be imputed only if (1) an agency relationship exists between the defendant and the party who acted wrongfully and (2) the party's wrongful actions fall within the scope of the agency. *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 467–68 (Fla. 2005).

Vicarious liability may not be imposed on a principal unless the agent was acting within the scope of the agency when the wrong was committed. *See Special Olympics Florida, Inc. v. Showalter*, 6 So. 3d 662, 665-666 (Fla. 5th DCA 2009). An agent's criminal acts, including

Highly Confidential

BSA-PLAN_01422799
**SA 1053**

CASE NO. 2016-CA-000167

sexual assaults and batteries, fall outside the scope of the agency as a matter of law. *Id.* (Special Olympics not vicariously liable for sexual molestation committed by volunteer); *see also Goss v. Human Services Associates, Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012) (granting motion to dismiss vicarious liability claims based on counselor's sexual assault of minor child at residential facility because the assault was not committed for any therapeutic purpose and it was not aided by the agency relationship); *Elders v. United Methodist Church*, 793 So. 2d 1038, 1041 (Fla. 3d DCA 2001) (church defendants were not vicariously liable for pastor's sexual abuse of counselee because as "a matter of common sense, having sexual relations with a counselee is not part of the job responsibilities of a minister."); *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 355 (Fla. 3d DCA 2001) (even though the pastor may have been counseling the minor, the assault was an independent, self-serving act for which the church could was not vicariously liable); *Mason v. Fla. Sheriffs' Self–Ins. Fund,* 699 So. 2d 268 (Fla. 5th DCA 1997) (officer's sexual assault not within course and scope even though the officer was on duty, in uniform, and serving warrant on the woman he raped); *Agriturf Mgmt., Inc. v. Rose*, 656 So.2d 954, 955 (Fla. 2d DCA 1995) (company president's sexual fondling of six-year old child not within the course and scope even though the touching occurred on the business's property during a time when the perpetrator was cleaning up, putting away equipment, and closing out the day's business).

Vicarious liability cannot be imposed on Defendants because Fout's alleged sexual assaults were outside the scope of any alleged agency relationship he may have had with Defendants.[1]  Similarly, vicarious liability cannot be imposed based on the alleged actions of Fout's father because they were not committed within the scope of his volunteer position as scoutmaster. The sexual misconduct took place at his private home during Plaintiff's visits or

---

[1] Defendants dispute that an agency relationship existed.

CLARKE SILVERGLATE P.A.
799 BRICKELL PLAZA, SUITE 900, MIAMI, FL 33131   PHONE: 305.377.0700   FAX: 305.377.3001   WWW.CSPALAW.COM

Highly Confidential

CASE NO. 2016-CA-000167

sleepovers, which were ***admittedly*** against Scouting rules. (Amend. Comp. ¶¶ 54, 55, 70, 77, 84, 91, 98, 105, 117, 123, 129). Additionally, a parent does not have any duty to control the conduct of an emancipated adult child living in the parent's home. *See Knight v. Merhige*, 133 So. 3d 1140 (Fla. 4th DCA 2014); *Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999).

Finally, even taking as true the fiction of the alleged agency relationships for purposes of this motion, no liability on the part of either Council or Silver Springs could possibly be imputed to BSA because, as demonstrated above, neither entity acted negligently or breached a fiduciary duty as matter of law. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995) ("[I]f the agent cannot be held liable, neither can the principal, because there is nothing to impute.").

**IV.    Plaintiff's New Allegation of a Single Incident at a 2009 Camp-Out Does Not Change the Analysis.**

In his Amended Complaint, Plaintiff newly pleads: "On or about July, 2009, A.A. was attending a scouting event sponsored by BSA, administrated by the BSA and on the BSA property. During that campout week, George fout approached A.A. in his bedroom. During this encounter George Fout touched A.A.'s penis. This was soon after George Fout's abuse had escalated to include penetration." (Amend. Comp. ¶ 51). This new allegation, which Plaintiff "recalled" only after receiving Defendants' motion to dismiss the initial Complaint, does not change the analysis.

**A.    The New Allegation Should be Stricken as a Sham Pleading and Fraud on the Court.**

This Court should give no credence to this new allegation. It was proffered only after Defendants' pointed out the glaring deficiency in Plaintiff's original Complaint—that Plaintiff failed to allege that the sexual abuse took place in connection with Scouting activities. It is also belied by Plaintiff's own allegations that ***all of the alleged abuse*** took place inside the home of his neighbor, George Fout, ***not*** in connection with a Scouting activity. More importantly, the new

Highly Confidential

BSA-PLAN_01422801
**SA 1055**

CASE NO. 2016-CA-000167

allegations are belied by Plaintiff's *own testimony* in George Fout's criminal proceeding (which

resulted in a conviction):

> Q.   Where did all of these events that we've talked about—what county were
>       you in when they happened?
>
> A.   Marion.
>
> Q.   Where were you at; whose house?
>
> A.   The Fouts'.
>
> Q.   Did anything happen at your house with you and George—
>
> A.   Yes.
>
> Q.   --Sexually?
>
> A.   Yes.
>
> Q.   Is that also in Marion County?
>
> A.   Yes.
>
> **Q.   Other than your house, George's house, were there any other
>       locations that things happened?**
>
> **A.   No.**

(AA's Test. at 63-64, *State of Fla. v. Fout*, Nov. 1, 2012, attached as Ex. A) (emphasis added).

Plaintiff's inclusion of this new allegation in an effort to avoid dismissal is a futile sham

pleading and a fraud on the Court. *See Destiny Const. Co. v. Martin K. Eby Const.*, 662 So. 2d

388, 390 (Fla. 5th DCA 1995) (sham pleadings are mere pretense, lack good faith, and are

without color in fact); *Wenwei Sun v. Aviles*, 53 So. 3d 1075, 1077-1078 (Fla. 5th DCA 2010)

(trial courts have inherent authority to dismiss an action when plaintiff perpetrates a fraud on the

court). As such, the Court should dismiss the entire lawsuit or at a minimum strike this new

allegation from the Amended Complaint.

**B.   Plaintiff's Claims Relating to the Alleged July 2009 Incident Are
      Time-Barred.**

Plaintiff's fraudulent claims related to the alleged July 2009 incident are also time-barred.

The statute of limitations for any action founded on negligence is four years from accrual of the

Highly Confidential

CASE NO. 2016-CA-000167

cause of action. Fla. Stat. 95.11(3)(a). *See Rubio v. Archdioceses of Miami, Inc.*, 114 So. 3d 279, 281 (Fla. 3d DCA 2013). Therefore, any claims that accrued before Jan. 27, 2012 (four years before the original Complaint was filed) are time-barred. The alleged July 2009 incident is time-barred because it accrued more than two years before Jan. 27, 2012.

The accrual of the July 2009 incident is not subject to tolling. Florida Statute Section 95.11(7) applies only to intentional torts; it does not apply to actions based in negligence. *Cisko v. Diocese of Steubenville*, 123 So. 3d 83, 85 (Fla. 3d DCA 2013) (tolling under Section 95.11(7) applies to intentional torts only). The July 2009 incident (touching Plaintiff's genitalia) does not fall under Section 95.11(9) either because it does not constitute a sexual battery under Section 794.011. A sexual battery is defined as the "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object[.]" A touching only constitutes a sexual battery when the touching is done by a sexual organ. *Gil v. State*, 586 So. 2d 471, 472 (Fla. 4th DCA 1991) (finding that union between defendant's fingers and victim's sexual organ does not constitute a sexual battery under Section 794.011). *See also Lakey v. State*, 113 So. 3d 90, 91 (Fla. 5th DCA 2013) (same); *Wallis v. State*, 548 So. 2d 808, 810 (Fla. 5th DCA 1989) (same).

Neither does Section 95.051(1)(i) (formerly Section 95.051(1)(h)) toll the July 2009 incident. Under Section 95.051(1)(i), the statute of limitations period is tolled during any period in which the child lacks a parent/guardian or the parent/guardian has an adverse interest to the minor. *See D.H. v. Adept Cmty. Services, Inc.*, 43 Fla. L. Weekly S533 (Fla. Nov. 1, 2018). Section 95.051(1)(i) is inapplicable here because there are no allegations that Plaintiff lacked such a parent or guardian at any relevant point in time. Even if this tolling provision applied, Plaintiff's claims relating to the July 2009 incident would still be time-barred because the

Highly Confidential

CASE NO. 2016-CA-000167

Plaintiff pled this claim in December 2019, almost two-and-a-half years beyond the seven-year repose period in Section 95.051(1)(i). *See R.R. v. New Life Cmty. Church of CMA, Inc.*, 248 So. 3d 232 (Fla. 5th DCA 2018).

For these reasons, even if the Court does not strike the July 2009 incident from the Amended Complaint, the incident cannot be used as a basis to impose a legal duty because any claims related to the incident are time-barred.

### V.    Plaintiff's Prejudgment Interest Claims Should Be Stricken.

In this personal injury case, Plaintiff demands recovery of prejudgment interest in all of his *ad damnum* clauses. Florida courts though have long-recognized that prejudgment interest is not a recoverable element of damages on personal injury claims. *Bosem v. Musa Holdings, Inc.*, 46 So. 3d 42, 46 (Fla. 2010); *Zorn v. Britton,* 120 Fla. 304, 162 So. 879 (1935). This is so because personal injury damages, including pain and suffering, are too speculative to liquidate before judgment. *Id.* at 45 & n.2. In accordance with this well-established law, the Court should strike Plaintiff's prejudgment interest claims.

### Conclusion

For the foregoing reasons, BSA and Council respectfully request that the Amended Complaint be dismissed with prejudice.

Respectfully submitted by,

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
Telephone: (305) 377-0700
Facsimile:  (305) 377-3001

By: /s/Spencer H. Silverglate
    Spencer H. Silverglate
    Florida Bar No. 769223
    ssilverglate@cspalaw.com

Highly Confidential

BSA-PLAN_01422804
**SA 1058**

CASE NO. 2016-CA-000167

mpedraza@cspalaw.com
Francisco Ramos, Jr.
Florida Bar No. 114766
framos@cspalaw.com
Shannon P. McKenna
Florida Bar No. 385158
smckenna@cspalaw.com
aford@cspalaw.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the

Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 11th day of January,

2019 to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
     Spencer H. Silverglate

Highly Confidential

BSA-PLAN_01422805
**SA 1059**

IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

CASE NO.  42-2012-CF-000621-A-Y

STATE OF FLORIDA,

      Plaintiff,

vs.                                    VOLUME I of II

GEORGE ROBERT FOUT,

      Defendant.

- - - - - - - - - - - - - - /

**ORIGINAL**

RECEIVED
2013 JAN 10  AM 10: 12
DAVID R. ELLSPERMANN
CLERK CIRCUIT COURT
MARION COUNTY, FL

*** TRANSCRIBED FROM ECR RECORDING ***

PROCEEDINGS:      Jury Trial

BEFORE:           HONORABLE BRIAN LAMBERT

TRANSCRIBED BY:   Frances L. Moehle

DATE AND TIME:    November 1, 2012, 10:09 a.m.

PLACE:            Marion County Courthouse
                  110 Northwest First Avenue
                  Ocala, Florida

EXHIBIT
_A_

Joy Hayes Court Reporting
(352) 726-4

Highly Confidential

BSA-PLAN_01422806

SA 1060

1    Q.   When you say, his room, who are we talking about?

2    A.   George.

3    Q.   Is this George's camera?

4    A.   Yes.

5    Q.   Is this the same camera that George used to take

6    pictures of you while you were naked?

7    A.   Yes.

8         MR. AVEN:  Your Honor, at this time the State would

9    move what's been marked as State's Exhibit B into

10   evidence as State's Exhibit 2.

11        THE COURT:  Any objection?

12        MR. POLAK:  No, Your Honor.

13        THE COURT:  Admitted without objection, State's

14   Exhibit Number 2.

15        MR. AVEN:  And, Your Honor, at this time the State

16   would request permission to publish.

17        THE COURT:  Permission granted.

18   BY MR. AVEN:

19   Q.   Where did all of these events that we've talked

20   about -- what county were you in when they happened?

21   A.   Marion.

22   Q.   Where were you at; whose house?

23   A.   The Fouts'.

24   Q.   Did anything happen at your house with you and

25   George --

Joy Hayes Court Reporting
(352) 726-4451

Highly Confidential

BSA-PLAN_01422807

SA 1061

1    A.    Yes.

2    Q.    -- sexually?

3    A.    Yes.

4    Q.    Is that also in Marion County?

5    A.    Yes.

6    Q.    Other than your house, George's house, were there

7    any other locations that things happened?

8    A.    No.

9    Q.    Why didn't you go to someone and tell them that

10    this was happening?

11    A.    'Cause he told me not to tell anyone, so I kept my

12    mouth shut.

13    Q.    Did George give you any gifts?

14    A.    Yes.

15    Q.    What gifts did George give you?

16    A.    Christmas presents.

17    Q.    Did he give you any -- did you give George any

18    gifts?

19    A.    Yes.

20    Q.    What presents did you give him?

21    A.    A shirt.

22    Q.    Prior to you speaking with law enforcement, what

23    was your relationship with George?

24    A.    A friend.

25    Q.    Was he your scout leader?

Highly Confidential

BSA-PLAN_01422808

SA 1062

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                           CASE NO. 2016-CA-000167

       Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

       Defendants.

_____/

## BSA AND COUNCIL'S REQUEST FOR ORAL ARGUMENT
## ON THEIR MOTION TO DISMISS AMENDED COMPLAINT

     Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc. ("Council"),

hereby request oral argument on their Motion to Dismiss the Amended Complaint.  Oral

argument will assist the Court in understanding the issues raised in the parties' briefs and provide

an opportunity for the Court to ask any questions relating thereto.  The estimated time for oral

argument is 30 minutes.

Highly Confidential

CASE NO. 2016-CA-000167

Respectfully submitted by,

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida  33131
Telephone:  (305) 377-0700
Facsimile:   (305) 377-3001

By: /s/Spencer H. Silverglate
        Spencer H. Silverglate
        Florida Bar No. 769223
        ssilverglate@cspalaw.com
        mpedraza@cspalaw.com
        Francisco Ramos, Jr.
        Florida Bar No. 114766
        framos@cspalaw.com
        cdeleon@cspalaw.com
        Shannon P. McKenna
        Florida Bar No. 385158
        smckenna@cspalaw.com
        aford@cspalaw.com

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the

Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 23rd day of January,

2019, to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
        Spencer H. Silverglate

447233

2

BSA-PLAN_01422810
SA 1064

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

       Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

       Defendants.

_____/

## MOTION FOR LEAVE TO RESPOND TO DEFENDANT SILVER SPRINGS SHORES PRESBYTERIAN CHURCH'S MOTION TO DISMISS; TO CONSOLIDATE PLAINTIFFS RESPONSE TO BOTH DEFENDANTS' MOTIONS AND FOR EXTENSION OF TIME TO RESPOND TO DEFENDANTS' MOTIONS

Plaintiff, A.A. ("Plaintiff"), by and through his undersigned counsel and pursuant to

Florida Rule of Civil Procedure 1.200(a), requests this Honorable Court for leave to respond to

the Motion to Dismiss (without prejudice) filed by Silver Springs Shores Presbyterian Church,

on January 2, 2018 (Silver Springs Motion); to consolidate its response to Silver Springs Motion

and Boy Scouts of America and North Florida Council, Inc.'s, Motion to Dismiss (with

prejudice) filed on January 11, 2019 ("BSA's Motion) and for an extension of time to respond to

both motions in a consolidated manner and otherwise states as follows:

Electronically Filed Marion Case #  16CA000167AX 01/23/2019 06:41:59 PM

Highly Confidential

BSA-PLAN_01422811

SA 1065

1.      Defendants' filed their respective Motions to Dismiss on January 2, 2019 and January 11, 2019.

2.      Pursuant to the Order rendered by the Court on August 28, 2018, the Plaintiff's Response to Defendant Silver Springs Shore's Presbyterian Church Inc.'s Motion to Dismiss was due to be filed and served on or before January 22, 2019, and Plaintiff's Response to Defendants' BSA and Council's Motion to Dismiss is due to be filed and served on or before January 31, 2019.

3.      <u>Leave to file a Response to Silver Springs Motion</u>.  Plaintiff's Counsel inadvertently failed to properly docket the response to Silver Spring's Motion to Dismiss, due yesterday, January 22, 2019.  The Plaintiff will oppose the Motion and requests the opportunity to file a response, notwithstanding the inadvertent mis-docketing, identified one (1) day after the due date.

4.      The mis-docketing was inadvertent and excusable and was identified one (1) day after the subject due date for the filing of the response, or of a motion for extension.  Among other issues, the impact to the practice of Plaintiff's Counsel resulting from the surgeries detailed below were the cause of the inadvertent mis-docketing.

5.      <u>Request for Extension of Time to File and Serve a Response to Both Motions</u>.  In addition, the Plaintiff respectfully requests additional time to file and serve Plaintiff's Response to both the Silver Springs Motion (response due January 22, 2019) and the BSA's Motion (Response due January 31, 2019) to extend to through on or before February 8, 2019.

Highly Confidential

BSA-PLAN_01422812

SA 1066

6.      As ground for the request for extension, Plaintiff's Counsel's schedule and practice have been impacted by four (4) extended surgeries in the past four (4) months, specifically:

a.  Surgery on September 7, 2018.   During an extended three (3) week commercial jury trial which ended on August 30, 2018, Plaintiff's Counsel tore his left bicep, which required surgery on Friday, September 7, 2018.  Counsel's tasks were impacted by a splint and limited time in the office, As a result, counsel's productivity was impacted substantially.

b.  Surgery on October 24, 2018.  The Plaintiff's Counsel was diagnosed with a post-operative complication at the incision site and underwent an extended multi-hour surgery to remove the complication and affected areas.

c.  Surgery on November 20, 2018.  Plaintiff's Counsel was required to undergo an addition multi-hour surgery to address the continuing complication at the incision site.

d.  Surgery on December 21, 2018.  Plaintiff's Counsel was required to undergo an addition extended multi-hour surgery (2.5 hours) to address the continuing complication at the incision site.

7.      These surgeries impacted the flow and scheduling of several matters for Plaintiff's counsel, which were delayed into January and February.  Indeed, the impact of these surgeries on Plaintiff's counsel's practice also serves as grounds for the inadvertent mis-docketing of the response to Silver Springs Motion.

8.      As a result of these impacts, Plaintiff respectfully requests additional time to respond to both pending Motions to Dismiss.

9.      Request to File Consolidated Response in the Interest of Judicial Economy. Further, the issues raised by Silver Spring and the BSA include several overlapping issues raised by both Defendants.  As with the response to the prior Motions to Dismiss, Plaintiff suggests that judicial economy may be served by filing a single consolidated reply, rather than to repeat issues in two separate responses.

3

Highly Confidential

10.     The Court's rules provide that the Plaintiff may respond to the Motions with two (2) separate fifteen (15) page memoranda. Plaintiff proposes responding with one (1) twenty-five (25) page memorandum.

11.     Plaintiff's counsel intends to discuss the requested relief herein and request agreement there to with opposing counsel, but is filing the motion at this time, in an abundance of caution relative to the delayed response to Silver Springs Motion

12.     The Plaintiff respectfully requests an extension of time to file and serve the consolidated response to both motions to through and including February 8, 2019.

13.     The undersigned certifies that this Motion is made in good faith and not for the purpose of delay.

**WHEREFORE,** Plaintiff, A.A., respectfully requests this Court enter an Order granting Plaintiff through and including February 8, 2019 to file and serve a consolidated response not to exceed twenty-five (25) pages to the Defendants' Motions to Dismiss and for such further relief as is just and equitable.

Dated: January 23, 2019.

        **MORGAN & MORGAN, P.A.**
        **Business Trial Group**

        _s/Paul L. SanGiovanni_
        **Paul L. SanGiovanni**
        Florida Bar No. 0513164
        20 North Orange Avenue, Suite 1600
        Orlando, Florida 32801
        Telephone:  (407)418-6041
        Facsimile:   (407)245-3394
        Primary E-mail:  PSangi@forthepeople.com
        Secondary E-mail MTodd@forthepeople.com
        _Attorneys for Plaintiff_

4

BSA-PLAN_01422814

SA 1068

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the January 23, 2019, I electronically filed the foregoing with the Clerk of the Court by using the Court's E-portal filing system, which will serve a notice of the electronic filing via e-mail to all counsel of record.

*s/Paul L. SanGiovanni*
**Paul L. SanGiovanni**



5

BSA-PLAN_01422815
**SA 1069**

### IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

A.A.,

       Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA NORTH
FLORIDA COUNCIL, INC., BOY SCOUTS
OF AMERICA, AND SILVER SPRINGS
SHORES PRESBYTERIAN CHURCH, INC.,

       Defendants.

_____/

Case No: 2016-CA-0167

### ORDER GRANTING MOTION FOR LEAVE TO RESPOND

**THIS CAUSE** came before the Court on Plaintiff's "Motion for Leave to Respond to Defendant Silver Springs Shores Presbyterian Church's Motion to Dismiss; to Consolidate Plaintiff's Response to both Defendants' Motions and for Extension of Time to Respond to Defendants' Motions," filed on January 23, 2019. The Court has considered said motion, reviewed the court file, and is otherwise duly advised in the premises.

It is therefore **ORDERED and ADJUDGED** as follows:

1.     Plaintiff's "Motion for Leave to Respond to Defendant Silver Springs Shores Presbyterian Church's Motion to Dismiss; to Consolidate Plaintiff's Response to both Defendants' Motions and for extension of time to Respond to Defendants' Motions" is **GRANTED**.

2.     Plaintiff shall have **twenty (20) days** from the date of this order to file a consolidated response to Defendants Boy Scouts of America and North Florida Council, Inc.'s Motion to Dismiss, filed on January 11, 2019, and Defendant Silver Springs Shores Presbyterian Church, Inc.'s Motion to Dismiss, filed on January 2, 2019. Plaintiff's consolidated response shall not exceed twenty-five (25) pages in length.

Highly Confidential

BSA-PLAN_01422816

**SA 1070**

3.      Defendants shall then have **five (5) days** in which to file a reply, should they so choose.

**IT IS SO ORDERED** in chambers, Marion County Judicial Center, Ocala, Florida, on this 30th day of January 2019.

_Edward L. Scott_

Edward L. Scott
Circuit Judge

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been furnished by the Florida Court's e-filing portal to the following this 30th day of January 2019.

Paul L. SanGiovanni, Esquire
Morgan & Morgan, P.A.
Counsel for Plaintiff

Spencer H. Silverglate, Esquire
Clarke Silverglate, P.A.
Counsel for Defendants/Boy Scouts of America and North Florida Council, Inc.

Richards H. Ford, Esquire
Wicker Smith O'Hara McCoy & Ford, P.A.
Counsel for Defendant/Silver Springs Shores Presbyterian Church, Inc.

_Becky Knipe_

Becky Knipe, Judicial Assistant

Highly Confidential

BSA-PLAN_01422817
**SA 1071**

81910-5/nmd/520669

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.,                                              CASE NO. 2016-CA-000167

     Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

     Defendant.

_____/

## NOTICE OF UNAVAILABILITY

     NOTICE IS HEREBY GIVEN that the undersigned will be absent from the jurisdiction

and unavailable during these dates:

- **July 15 through July 26, 2019**

- **October 31 through November 12, 2019**

     The undersigned respectfully requests that no Motions, hearings, mediations, depositions,

or trials be scheduled and/or set during these time periods.

     The filing and service of this Notice shall constitute a notice to all parties that the

undersigned will move forward for appropriate relief, including a motion to be excused or

continue, as appropriate.

Highly Confidential

CASE NO. 2016-CA-000167

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, mtodd@forthepeople.com, mdyenson@forthepeople.com; Spencer H. Silverglate, Esquire, ssilverglate@cspalaw.com; mpedraza@cspalaw.com; Francisco Ramos, Jr., Esquire, framos@cspalaw.com, cdeleon@cspalaw.com; Shannon P. McKenna, Esquire, smckenna@cspalaw.com, aford@cspalaw.com; on this 28th day of February, 2019.

/s/ Richards H. Ford
Richards H. Ford, Esquire
Florida Bar No. 288391
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Silver Springs Shores Presbyterian
Church, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

2

BSA-PLAN_01422819

SA 1073

Case 1:22-cv-01237-RGA   Document 73   Filed 12/07/22   Page 196 of 482 PageID #: 5056

Filing # 85734895 E-Filed 03/01/2019 03:35:22 PM   Case 5:20-cv-00069   Document 34-2   Filed 02/18/20   Page 280 of 805 PageID 457

IN THE CIRCUIT COURT OF THE 5TH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

## MOTION FOR LEAVE TO FILE CONSOLIDATED RESPONSE ON MARCH 1, 2019

    Plaintiff, A.A. ("Plaintiff"), by and through his undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.200(a), requests this Honorable Court for leave to file the consolidated response to the Motion to Dismiss (without prejudice) filed by Silver Springs Shores Presbyterian Church, on January 2, 2018 (Silver Springs Motion); and Boy Scouts of America and North Florida Council, Inc.'s, Motion to Dismiss (with prejudice) filed on January 11, 2019 ("BSA's Motion):

    1.    On January 30, 2019, this Court rendered its Order upon the Plaintiff's prior motion which requested leave to file a response and to consolidate the response and for an extension of the same due in large part to a series of surgeries.

BSA-PLAN_01422820

SA 1074

2.      The Court granted the motion, providing that the response shall be filed with the court within *twenty (20)* days from the Order, to wit, on February 19. 2019.

3.      The response date was inadvertently docketed to be due *thirty (30)* days from the date of the Order, to wit, on March 1, 2019.

4.      The mis-docketing was inadvertent and excusable and was identified on this date. Counsel's office calculated the due date using a software program to calculate the same.   It appears that a "3" was input when a "2" was intended and the result was not double checked against the Order.   In addition, among other issues, the impact to the practice of Plaintiff's Counsel resulting from the surgeries detailed in the prior motion were, at the time continuing to have an impact upon the practice of Plaintiff's Counsel.

5.      Counsel discovered the mis-docketing on this date and is filing this request immediately upon discovery.

6.      Plaintiff's counsel intends to discuss the requested relief herein and request agreement there to with opposing counsel, but is filing the motion at this time, in an abundance of caution given the passage of the deadline.

7.      The Plaintiff respectfully requests leave to file the consolidated response to the pending motions on March 1, 2019.

8.      The undersigned certifies that this Motion is made in good faith and not for the purpose of delay.

**WHEREFORE,** Plaintiff, A.A., respectfully requests this Court grant leave for the Plaintiff to file and serve a consolidated response and for such further relief as is just and equitable.

Dated: March 1, 2019.

2

**MORGAN & MORGAN, P.A.**
**Business Trial Group**

 *s/Paul L. SanGiovanni*
**Paul L. SanGiovanni**
Florida Bar No. 0513164
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone:  (407)418-6041
Facsimile:   (407)245-3394
Primary E-mail:  PSangi@forthepeople.com
Secondary E-mail MTodd@forthepeople.com
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the March 1, 2019, I electronically filed the foregoing with

the Clerk of the Court by using the Court's E-portal filing system, which will serve a notice of

the electronic filing via e-mail to all counsel of record.

*s/Paul L. SanGiovanni*
**Paul L. SanGiovanni**

Highly Confidential

BSA-PLAN_01422822
**SA 1076**

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR MARION
COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

### PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT

      Plaintiff, A.A. ("Plaintiff"), files this Response and Incorporated Memorandum of Law in

Opposition to the Motions to Dismiss the First Amended Complaint served by Defendants, THE

BOY SCOUTS OF AMERICA, (hereinafter referred to as the "BSA"), the NORTH FLORIDA

COUNCIL, INC., BOY SCOUTS OF AMERICA, (hereinafter referred to as the "NORTH

FLORIDA COUNCIL"), and the SILVER SPRINGS SHORES PRESBYTERIAN CHURCH,

INC., (hereinafter referred to as the "SILVER SPRINGS SHORES").  BSA, NORTH FLORIDA

COUNCIL and SILVER SPRINGS SHORES herein shall be collectively referred to as

"Defendants".[1]

### INTRODUCTION

      This action arises out the sexual abuse which George Fout, the Assistant Scoutmaster of

the BSA inflicted upon the Plaintiff, A.A., a minor, over the course of more than eight (8) years.

_____

[1] On January 30, 2019, the Court granted Plaintiff's motion to file a Consolidated response to the Defendant's  Motions to Dismiss First Amended Complaint.

Highly Confidential

BSA-PLAN_01422823

SA 1077

This abuse was known, or should have been known by the BSA's Scoutmaster, Steve Fout, the father of the perpetrator.  The abuse included the mental grooming,, mental manipulation and physical abuse itself suffered by A.A., and took place on the premises of BSA events and under the roof of the BSA Scoutmaster, Steve Fout.

During scouting events and meetings conducted by the BSA and the NORTH FLORIDA COUNCIL on the premises of SILVER SPRINGS SHORES, George Fout would groom A.A. and other scouts for the abuse, the grooming, itself constituting abuse.

A.A. would leave the BSA sanctioned events held at SILVER SPRINGS SHORES with the perpetrator, in violation of BSA policy, at least one (1) instance of abuse occurred during a BSA sanctioned camping event, and multiple events of this minor's abuse took place under the roof of the Scoutmaster Steve Fout, in the bedroom of his adult son and Assistant Scoutmaster, George Fout behind closed doors during overnight and weekend visits by the minor scout.  The abuse included including instances of sexual touching and multiple variations of sexual penetration upon the  minor by the BSA Assistant Scoutmaster.

Plaintiff, A.A., filed his complaint on January 27, 2016.  In response, the Defendants do not deny the abuse or the relationships between each of them, Steve Fout as their appointed Scoutmaster or George as their Assistant Scoutmaster.  Instead, they rely upon a shotgun shell of defenses, each one inappropriate at the pleading stage in this instance, to extract themselves from the harm and injury perpetrated upon this minor in their program and placed in their care.

## THE FIRST AMENDED COMPLAINT

The preliminary allegations of the First Amended Complaint summarize the complex Hierarchical organization of the BSA, including how the BSA performs it mission through Councils (like the NORTH FLORIDA COUNCIL) and through Troops administrated by a

Highly Confidential

BSA-PLAN_01422824

**SA 1078**

chartering organization (like SILVER SPRINGS SHORES).  See, Paragraphs 13 – 27 of the First

Amended Complaint (hereinafter referred to as "¶").

The Hierarchical organization of the BSA is complex and fact specific.  The allegations

in the First Amended Complaint were intended to summarize the relationship of the parties for

the purposes of notice pleading.

Among other allegations, the First Amended Complaint includes the following

allegations (emphasis added):

> 21.   This chartering system reveals BSA's consent to allow local chartering organizations to operate the scouting program on its behalf and the chartering organizations' consent to operate the local troops subject to BSA's control or right to control.   Accordingly, the chartering organizations are the agents of BSA.
>
> . . . . .
>
> 26.   The chartering system shows BSA's consent to allow local COUNCIL's to operate the scouting program on its behalf within a specific geographic region, and the local COUNCIL's consent to operate the scouting program subject to BSA's control or right to control.  Thus, the local COUNCIL's are agents of BSA.
>
> 27.   BSA cannot operate its scouting program without the consent and cooperation of the local COUNCIL's and chartering organizations. Conversely, the chartering organizations and local COUNCIL's cannot operate and supervise local scouting troops without the consent of BSA.
>
> . . . . . .
>
> 64.   At all relevant times, George Fout [the Scoutmaster for A.A.'s troop in whose home much of the abuse occurred] and Steve Fout [the assistant Scoutmaster and son of George Fout] were acting as the agents of Defendant BSA, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES by leading Boy Scouts of America Troop 448.

As to the specific, and unique, facts in this case, the First Amended Complaint alleges

that Steve Fout, was the Scoutmaster of A.A.'s Scout Troup 448.  ¶12.  George Fout, Steve's

son, was the Assistant Scoutmaster of the same Troop.  ¶11.  At all material times, George Fout,

<div align="center">3</div>

BSA-PLAN_01422825

SA 1079

the son, was under the direct supervision of Steve Fout, the father.  ¶45.  The First Amended Complaint asserts that George Fout often showered Plaintiff with special attention and groomed Plaintiff for sexual abuse by gaining A.A.'s trust and admiration.   ¶¶s 47 and 48.   The First Amended Complaint alleges that A.A. would leave the meetings "held on its premises" with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.  The First Amended Complaint alleges that the BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, knew or should have known that A.A. was spending time at the Fout's residence.  Id. The First Amended Complaint alleges that A.A. would "spend the night" at the Fout's home. ¶ 54.

Moreover, particularly unique to this case, the First Amended Complaint alleges that Steve Fout, the father, and the Scoutmaster for the BSA, knew or should have known that his son, the Assistant Scoutmaster, was abusing scouts under Steve Fout's own roof.  ¶115 - 117.  In the case of A.A., in particular, the First Amended Complaint asserts that this abuse, under Steve Fout's roof continued for eight (8) years. ¶¶ 49 – 54.

In addition, the First Amended Complaint summarized the history of pedophilia in scouting and in the BSA specifically (¶¶s 20 – 32) to generally describe the degree of notice that the BSA has of the substantial risk that the mission presents to youth, particularly at risk youth, and the consequent duties, including special and fiduciary duties arising therefrom to protect the children in their care.

Without limitation, the First Amended Complaint includes the allegation that "BSA has known for decades of the high degree of risk that adult Scoutmasters and volunteers may sexually abuse minor scout members." ¶ 28.

Having alleged agency among the Defendants, and notice to the principal and agents of the risk of exposure to pedophilia to youth in scouting, the First Amended Complaint alleges that

4

BSA-PLAN_01422826

SA 1080

the failure of the BSA and its agents to properly manage the risk, and otherwise protect the Plaintiff from the risk resulted in sexual abuse of the Plaintiff and resulting damages.

Specifically, the First Amended Complaint sounds in ten (10) Counts as follow:

Negligence Counts:

| | |
|---|---|
| Count I. | Negligence against Silver Springs Shores |
| Count II | Negligence of North Florida Council |
| Count III | Negligence of BSA |

Breach of Fiduciary Duty Counts:

| | |
|---|---|
| Count IV | Breach of Fiduciary Duty of Silver Springs Shores |
| Count V. | Breach of Fiduciary Duty of North Florida Council |
| Count VI | Breach of Fiduciary Duty of BSA |

Vicarious Liability Counts:

| | |
|---|---|
| Count VII | Vicarious Liability of Silver Springs, North Florida Council and BSA for Sexual Batter by George Fout [The Perpetrator if the sexual abuse against A.A.] |
| Count VIII | Vicarious Liability of Silver Springs, North Florida Council and BSA for Negligence and Breach of Fiduciary Duty by Steve Fout [Scoutmaster] |
| Count IX | Vicarious Liability of North Florida Council and BSA for Negligence and Breach of Fiduciary Duty of Silver Springs Shores |
| Count X | Vicarious Liability of BSA for Negligence and Breach of Fiduciary Duty of North Florida Council |

## SUMMARY OF THE LITIGATION

Subsequent to the filing of the Complaint, the parties stipulated to stay the case for 90 days on February 28, 2018, with a subsequent order rendered thereupon on March 12, 2018. The intent of the stay was to provide the parties with the opportunity to participate in confidential

5

BSA-PLAN_01422827

**SA 1081**

pre-litigation discovery and mediation.  Pursuant to the stipulation, the Plaintiff provided the Defendants with the confidential pre-suit discovery requests.  However, due to difficulties in securing documents from third parties and the Plaintiff's counsel's participation in a substantial trial, the statement of the Plaintiff and the mediation could not be scheduled within the 90 days.

In addition, the BSA and NORTH FLORIDA COUNCIL substituted counsel on July 2, 2018.  Defendants have advised the Plaintiff that they are no longer agreeable to participating in pre-litigation mediation at this time.

At the conclusion of the 90 day stay, the Defendants' filed their respective Motions to Dismiss the Complaint on August 2, 2018 and August 20, 2018.

In response to the Motions and the Plaintiff's Motion to Amend, the Court granted Plaintiff leave to file its First Amended Complaint.  The Plaintiff thereafter supplemented the First Amended Complaint with additional details of the relationship among the BSA, NORTH FLORIDA COUNCIL, SILVER SPRINGS SHORES and the Scoutmasters and troop leaders which were not incorporated into the First Amended Complaint are available which may supplement the current allegations of the First Amended Complaint.

Attached hereto as "Exhibit A" is a redlined comparison between the initial Complaint and the First Amended Complaint illustrating the revisions to the First Amended Complaint incorporated to address issues identified in the Motions to Dismiss.

Thereafter, the Defendants moved to dismiss the First Amended Complaint.  Though the subject pleading is the Plaintiffs First Amended Complaint, BSA and NORTH FLORIDA COUNCIL have moved to dismiss the Complaint "with prejudice."  Asserting that under no circumstances can Plaintiff allege facts against BSA and the NORTH FLORIDA COUNCIL which state a cause of action.  Plaintiff opposes the Motions in their entirety and asserts that the

6

BSA-PLAN_01422828

SA 1082

specific allegations of the First Amended Complaint and the inferences which may be drawn from them allege causes of action against the Defendants.

The Plaintiff respectfully requests that the Court deny the motions to dismiss. The First Amended Complaint includes sufficient allegations to put the Defendants on notice of the claims against them, satisfies the essential elements for each claim and provides sufficient grounds for the causes of action to proceed to discovery.

## THE MOTIONS TO DISMISS

The matters raised by the Defendants are not matters to be addressed at the pleading stage in this case. If one common theme can be gleaned from each of the cases cited, it is that the law in the area of duty, breach, limitations and the other defenses raised by the Defendants are highly fact specific and subject to, among other things, detailed factual development and credibility, far beyond what is required in an initial pleading. This is *particularly* true in the area of whether there is a *special relationship* between the Plaintiff and the Defendants, a central issue identified by the Defendants in their motion.

Indeed, most of the cases cited by the Defendants in support of their arguments are appeals from summary judgment or verdicts in the trial court.

At this stage, the Plaintiff respectfully requests the Court deny the Motions to Dismiss and permit the development of the facts essential to a legal determination, and the Plaintiff suggests a denial, of the defenses raised by the Defendants on their respective Motions to Dismiss.

Alternatively, as stated, A.A. respectfully requests that the Court grant the Plaintiff leave to further amend the First Amended Complaint to address the issues raised by the Defendants and to incorporate particular issues which may be identified by the Court during Oral Argument.

Highly Confidential

BSA-PLAN_01422829

**SA 1083**

**<u>Standard of Review for a Motion to Dismiss</u>**

In evaluating a motion to dismiss, the trial court determines whether a claim states a cause of action upon which relief can be granted based upon the factual allegations contained within the four corners of the complaint, drawing all inferences in favor of the pleader, and accepting all material allegations as true. *See, Sobi v. Fairfield Resorts, Inc.*, 846 So.2d 1204, 1204 (Fla. 5th DCA 2003); *Davis By & Through Davis v. Bell*, 705 So. 2d 108, 109 (Fla. 2d DCA 1998). Importantly, "a complaint which states a cause of action on <u>any</u> ground should not be dismissed for failure to state a cause of action." *Nicholson v. Kellin*, 481 So.2d 931, 936 (Fla. 5th DCA 1985) (emphasis in original).

Stated differently, a complaint should not be dismissed "unless the movant can establish beyond any doubt that the claimant could prove no set of facts whatsoever in support of his claim." *Morris v. Fla. Power & Light Co.*, 753 So.2d 153, 154 (Fla. 4th DCA 2000).

In this case, drawing all inferences in favor of the A.A., the Plaintiff has stated causes of action against each Defendant.  The Defendants should be required to answer the First Amended Complaint and the matter should advance.

**<u>ARGUMENT</u>**

The consolidated arguments of the Defendants generally address the issue of whether the First Amended Complaint sufficiently alleges a "duty" upon which liability may be asserted; with other ancillary issues also addressed.

**<u>THE DUTY OF THE DEFENDANTS TOWARD THEIR SCOUTS</u>**

In summary, the Defendants argue that there is not alleged in the First Amended Complaint, <u>and cannot be alleged between these parties</u>, that the BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES have any duties toward individual scouts, including any general or fiduciary duty to warn or protect them from serial sexual abuse by one

8

BSA-PLAN_01422830

**SA 1084**

of its Assistant Scoutmasters when those activities occur under the roof of the Scoutmaster or during scouting activities.[2]

At first blush, that is a remarkable argument to be made by an national youth organization which specifically undertakes as its purpose "to provide, <u>through chartered organizations</u>, a program for boys, young men, and young women designed to encourage them to be faithful in their religious duties, build desirable qualities of character, train and involve them in the responsibilities of participating citizenship, and develop in them personal fitness" and represents that "all programs will be directed toward helping to develop the full potential of each member." The Purpose of the BSA. www.scouting.org/commissioners/bsa-mission/ (October 8, 2018).

Moreover, on its face, as a matter of law, it is not consistent with the law or with the allegations of the First Amended Complaint.

### The Defendants had a general duty to act with reasonable care.
### The Defendants had constructive knowledge of George Fout's abuse of A.A.

The Florida Supreme Court has spoken on issues of general duty toward others, when an organization has undertaken an obligation or action.

Specifically, in *Nova Southeastern University vs. Gross*, 758 So 2d 86 (Fla., 2000), a university student was injured during an off-campus, school related activity. She was assigned to an internship in a dangerous location and was sexually assaulted at the location.

---

[2] Throughout its brief, the BSA erroneously argues that are no allegations in the First Amended Complaint that the inappropriate activities of George Fout occurred during scouting activities. That is not correct. The First Amended Complaint, indeed, the initial First Amended Complaint clearly references that A.A. would leave scouting activities with the Fouts, against Boy Scout regulations. In addition, it can be inferred through the First Amended Complaint that Fout identified and groomed A.A. for the sexual abuse during scouting activities. Further, the First Amended Complaint alleges that the abuse occurred under circumstances by which the <u>Scoutmaster, not the perpetrator</u>, was aware of the abuse occurring under his own roof. In addition, ¶ 51 specifically alleges that a sexually abusive act occurred during a scouting camp out.

9

There, as here, the University attempted to use the argument that the absence of a "special relationship" between the adult student and the University was a shield from liability for its neglect.

The Supreme Court rejected the defense.  Finding that a "special relationship" existed in that case, the Court went further holding that "fundamental principles of tort law" would also support liability in that case.  Quoting *Union Park Chappel vs. Hutt*, 670 So 2d. 64 (Fla, 1996), the Court stated:

> It is clearly established that one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care. *See Slemp v. City of North Miami,* 545 So.2d 256 (Fla.1989) (holding that even if city had no general duty to protect property owners from flooding due to natural causes, once city has undertaken to provide such protection, it assumes the responsibility to do so with reasonable care); *Banfield v. Addington,* 104 Fla. 661, 667, 140 So. 893, 896 (1932) (holding that one who undertakes to act is under an implied legal duty to act with reasonable care to ensure that the person or property of others will not be injured as a result of the undertaking); *Kowkabany v. Home Depot, Inc.,* 606 So.2d 716, 721 (Fla. 1st DCA 1992) (holding that by undertaking to safely load landscaping timbers into vehicle, defendant owed duty of reasonable care to bicyclist who was struck by timbers protruding from vehicle window); *Garrison Retirement Home v. Hancock,* 484 So.2d 1257, 1262 (Fla. 4th DCA 1985) (holding that retirement home that assumed and undertook care and supervision of retirement home resident owed duty to third party to exercise reasonable care in supervision of resident's activities). As this Court recognized over sixty years ago in *Banfield v. Addington,* "[i]n every situation where a man undertakes to act, ... he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured."
>
> *Id.; see also Pate v. Threlkel,* 661 So.2d 278, 280 (Fla.1995)("A duty is thus established when the acts of a defendant in a particular case create a foreseeable zone of risk."). We find this fundamental principle of tort law is equally applicable in this case. There is no reason why a university may act without regard to the consequences of its actions while every other legal entity is charged with acting as a reasonably prudent person would in like or similar circumstances.

*Nova* at 89.  See also, *Shurben vs. Dollar Rent-A-Car*, 676 So 2d 467 (Fla. 3rd DCA, 1996).

10

BSA-PLAN_01422832

SA 1086

Similarly, as here, without the finding of any "special relationship", the BSA, NORTH FLORIDA COUNCIL, SILVER SPRINGS SHORES and Steve Fout, as their agent, each undertook to conduct a scouting program and solicited youth to participate.  Simply put, having undertaken to act, each Defendant individually, and collectively as agents for the other, had a duty to act as a reasonably prudent person would act in like or similar circumstances.

In their replies to the Plaintiff's response to the Motions to Dismiss the initial Complaint, the Defendants distinguish the *Nova* decision on its facts.  However, the Plaintiffs do not cite *Nova* exclusively for its facts, but rather, for the general proposition that the determination of whether there is a duty between the Plaintiff and the Defendants, including whether that duty arises out of a special relationship, is exceptionally fact and situation specific.  At the least, having described facts, inferences from which may be drawn that the duty or a relationship exists, the Plaintiff should be provided with the opportunity to develop the necessary facts which may be determinative in this particular circumstance.

Clearly, the First Amended Complaint alleges that each Defendant failed to so act.  Repeated throughout the First Amended Complaint are the allegations at Paragraph 70, revised for each respective Defendant, and Steve Fout, that:

> 70    Defendant SILVER SPRINGS SHORES breached the duty it owed A.A., by acts or omissions which included, without limitation:
>
> a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed. These included, without limitation that Defendant SILVER SPRINGS SHORES knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with  Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

11

BSA-PLAN_01422833

SA 1087

b)   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

The First Amended Complaint further includes allegations that the Defendants, through their agents acted unreasonably.  The First Amended Complaint alleges that Steve Fout, the Scoutmaster of Boy Scout Troop 448, was an agent of SILVER SPRINGS SHORES, which is an agent of NORTH FLORIDA COUNCIL and the BSA.  ¶64.  The First Amended Complaint alleges that Steve Fout, as the Scoutmaster of Boy Scout Troop 448, knew or should have known of the abuse of a scout in his Boy Scout Troop.  ¶117(a).  The First Amended Complaint alleges that Steve Fout allowed the abuse to continue nevertheless.

Even without the "special" or "fiduciary" relationship discussed, below, this knowledge of a known danger creates in the principals the duty to protect the youth and liability in the principals for the failure to do so.

This duty, alleged together with breach, causation and damages support each negligence claim against the BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES as alleged in Counts I, II and III.  The Motions to dismiss these counts should be denied and the matter should proceed to a jury's determination of the scope of the agency, degree of knowledge of the agent and the breach of the principals' related duties.

## Special Relationship
### The Sexual Abuse of George Fout was known to an agent of the Defendants

In addition, the First Amended Complaint alleges a "special relationship" between the Defendants, and each of them and A.A.  ¶ 67 (SILVER SPRINGS), 74 (NORTH FLORIDA

12

BSA-PLAN_01422834

SA 1088

COUNCIL) and 82 (BSA)  When there is such a "special relationship", the institution not only has a duty to warn and protect against known dangers, but also has a duty to warn and protect against reasonably foreseeable dangers.

That there can be such a relationship between and institutional party and an individual member is well recognized.  See, *Nova*, supra, *Gross vs. Family Service Agency, Inc.* 716 So 2d 337 (Fla 4th DCA, 1998)

A review of the cases results in the conclusion that each case is particularly fact specific. There are no cases directly on point in the state of Florida, other than to generally state the principal that under certain "special relationships" the liability asserted by A.A., in this case can be imposed on institutional parties, such as the Defendants.

The First Amended Complaint includes several well recognized bases for the formation of the special relationship, including, that the abuse occurred while Plaintiff was in the care and custody of Defendants. (¶ 61) and that the Defendants were substituting for Plaintiff's parents and George and Steve Fout were acting as agents of Defendants (in loco parentis). (¶¶ 63, 64, 65).

Further, institutional organizations, such as churches, are routinely held to have a "special relationship" toward minors who are sexually abused.  For example, in *C.J.C vs Corporation of the Catholic Bishop of Yakima*, 985 P.2d 262, (Wash. 1999), en banc, the Supreme Court of Washington considered the claims of sexual abuse victims molested as children by a deacon. The claims were dismissed on summary judgment.  On appeal, the Supreme Court reversed and remanded the case, finding that there existed disputed issues of fact whether a "special relationship" existed between the Catholic Church, as an institutional entity, and the children, even though the acts of the Deacon were criminal and even though they occurred off of church property.

13

The extended opinion of the Court, included the following:

> In particular, we find the conjunction of four factors present in the case before us decisive to finding the existence of a duty is not foreclosed as a matter of law: (1) the special relationship between the Church and deacon Wilson; (2) the special relationship between the Church and the plaintiffs; (3) the alleged knowledge of the risk of harm possessed by the Church; and (4) the alleged causal connection between Wilson's position in the Church and the resulting harm. Under these circumstances, we simply do not agree with the Church that its duty to take protective action was arbitrarily relieved at the church door. Where a protective special relationship exists, a principal is not free to ignore the risk posed by its agents, place such agents into association with vulnerable persons it would otherwise be required to protect, and then escape liability simply because the harm was accomplished off premises or after-hours. Under these facts, the focus is not on where or when the harm occurred, but on whether the Church or its individual officials negligently caused the harm by placing its agent into association with the plaintiffs when the risk was, or should have been, known.

> This approach is consistent with our cases recognizing a duty to prevent intentionally inflicted harm where the defendant is in a special relationship with either the tortfeasor or the victim, and where the defendant is or should be aware of the risk. [String citations omitted]

> Viewing the facts in the light most favorable to the plaintiffs, a jury could reasonably find Wilson's position in the Church was a causal factor in the resulting harm. Wilson was a prominent member of the Church, placed into positions of trust over children. This position not only brought him into close connection with the children of the congregation, it allegedly inspired confidence to place the plaintiffs into his care. In addition, there is evidence that Wilson baby-sat the victims in order that their father could travel on Church business and that the Church was aware of this arrangement. Given the Church's specific and superior knowledge of the facts, a jury could reasonably find the Church knew or should have known the children of its congregation, and specifically these particular plaintiffs, were exposed to an unreasonable risk of harm at the hands of Wilson.

> Our decision not to foreclose the imposition of a duty as a matter of law under these facts is supported by the strong public policy in favor of protecting children against acts of sexual abuse.

*Id.* at 726.

In general, the First Amended Complaint alleges generally, and it can be inferred that, in light of the history of pedophilia in the Boy Scouts, the risk of sexual abuse of its scouts was particularly great. ¶¶ 28 – 33. As a result, the BSA, the NORTH FLORIDA COUNCIL and

14

SILVER SPRINGS SHORES had a duty to warn and protect scouts in its care from sexual abuse by Scoutmasters and other volunteers including Assistant Scoutmasters.

Notably, this case also dismisses the Defendants' argument that the occurrence of some of the sexual abuse off premises of scouting activities – though under the roof of the Troop Scoutmaster – is relevant to the existence of the duty.  Notably, the Defendants argument in this regard is inapplicable as the First Amended Complaint specifically alleges that the grooming of A.A. and at least one instance of abuse occurred on the premises of SILVER SPRINGS SHORES and during a BSA, NORTH FLORIDA COUNCIL scouting activity specifically.

In this case, specifically, Steve Fout, as a Scoutmaster and agent of the Defendants knew or should have known that his Assistant Scoutmaster was sexually abusing his scouts and should have taken action to prevent George Fout's exposure to his scouts, to A.A. and to further abuse. Instead,  he allowed it to continue.

In light of the highly fact specific nature of a finding of a "special relationship", it is also notable to consider the procedural posture of the cases cited by the Defendants. Specifically, in addition to each being factually distinguishable from the instant case, particularly with respect to Steve Fout's involvement, in most of the cases substantively relied upon by Defendants in their motions, the Plaintiff was provided with the opportunity to factually discover, develop and establish its allegations, either in opposition to a motion for summary judgment or to a jury.

- *Archbishop Coleman F. Carroll High School Inc. v. Maynoldi*, 30 So. 3d 533 (Fla. 2d DCA 2010)-Appeal from a <u>jury verdict</u> against school and diocese;

- *Roe v. Boy Scouts of America Corp.* 2012 WL 3933184- Appeal from a motion for <u>summary judgment</u>;

- *Special Olympics Florida, Inc. v. Showalter*, 6 So.3d 662 (Fla. 5th DCA 2009)- Appeal from a <u>jury verdict</u>;

- *Goss v. Human Services Associates, Inc.,* 79 So.3d 127 (Fla. 5th DCA 2012)- Appeal form a <u>summary judgment</u>;

15

Highly Confidential

BSA-PLAN_01422837

SA 1091

- *Iglesia Cristina La Casa Del Senor, Inc. v. L.M.*, 783 So.2d 353 (Fla. 3d DCA 2001)- Appeal from a jury verdict;

- *Conception By and Through Concepcion v. Archdiocese of Miami By and Through McCarthy*, 693 So.2d 1103 (Fla. 3d DCA 1997)- Appeal from a summary judgment;

- *John Doe No. 77 v. Boy Scouts of America, Inc.*, 2015 WL 10000265 (Fla. 13th Cir. Ct. 2015)- Appeal from a summary judgment.

In summary, A.A. has sufficiently alleged the necessary elements to assert a duty of general negligence and a duty arising out of a "special relationship", such as would impose liability upon the Defendant for a breach of ordinary care, or a duty to protect or warn. The Motions to Dismiss on these grounds should be denied. To the extent that this Court would be inclined to dismiss the current First Amended Complaint, the Plaintiff respectfully requests leave to amend the First Amended Complaint.

### Fiduciary Duty
### The Sexual Abuse of George Fout was known to an agent of the Defendants

Similar to a "special relationship", a fiduciary duty extends "to every possible case .in which there is confidence reposed on one side and the resulting superiority and influence on the other. ..The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. (citations omitted)." *Quinn v. Phipps*, 93 Fla. 805, 113 So. 419, 421 (1927)

Said another way, "The law implies a fiduciary relationship "based on the circumstances surrounding [a] transaction and the relationship of the parties." *Maxwell v. First United Bank,* 782 So.2d 931, 933 (Fla. 4th DCA 2001). An implied fiduciary relationship will lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party. *Id.* at 934. " *Masztal vs. City of Miami*, 971 So 2d 803 (Fla 3rd DCA, 2007)

16

BSA-PLAN_01422838

SA 1092

On point in Florida is the case of *Doe v. Evans*, 814 So.2d 370 (Fla. 2002). In *Doe*, the Florida Supreme Court found liability based on an implied fiduciary relationship that arose between a priest providing martial counseling and his counselee. The *Doe* Court "stressed that the liability in this case rests on the assertion of an abuse of a marital counseling relationship through an inappropriate sexual relationship." *Id* at 375. Similarly, Fout's sexual misconduct arose out of the relationship between Fout as the Assistant Scoutmaster for Plaintiff's Troop and Fout's involvement with the Defendant's organization.  As alleged in the First Amended Complaint, it is through this Assistant Scoutmaster and Boy Scouts Troop Member relationship, that Fout was able to select and groom Plaintiff for sexual abuse and battery. *See* ¶¶ 46-49). Through this relationship, Plaintiff would leave Boy Scout Troop meetings and activities with George Fout in order for Fout to continue with his abuse upon Plaintiff.

Simply put, the Plaintiff has alleged specifically this type of relationship between the Defendant, and Steve Fout, and A.A.

Defendants cite to a Connecticut case for their authority to not impose a fiduciary obligation on an institutional defendant. *Roe v. Boy Scouts of Am., Corp.*, 2012 WL 3933184. Not only was *Roe* decided on a motion for summary judgment, not at the motion to dismiss phase, but the facts that allowed for the court to not hold the Boy Scouts of America liable for the sexual abuse and battery that occurred on Boy Scout trips, was the fact that the abuser was the victim's stepfather. This is clearly not the case for Plaintiff. Unlike *Roe*, Plaintiff only knew his abuser because of the Defendants, and had no familial relationship with the abuser.

In summary, A.A. has sufficiently alleged the necessary elements to assert a fiduciary duty against the Defendants and each of them, such as would impose liability upon the Defendant for a breach of ordinary care, or a duty to protect or warn. The Motions to Dismiss on these grounds should be denied.  To the extent that this Court would be inclined to dismiss the

17

current First Amended Complaint, the Plaintiff respectfully requests leave to amend the First Amended Complaint.

<div align="center">**Vicarious Liability of Agents and Volunteers**
**The Sexual Abuse of George Fout was known to an agent of the Defendants**</div>

Vicarious liability is founded upon imputed liability for the defendant for another party's tortious acts. *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So.2d 459, 467 (Fla. 2005). Liability is imputed when (1) an agency relationship exists between the defendant and the party who acted wrongfully and (2) the wrongful actions by the third party fall within the scope of agency. Generally, sexual assault and batteries by employees are held to be outside the scope of an employee's employment, and therefore insufficient to impose vicarious liability on the employer. *See Nazareth v. Herndon Ambulance Serv., Inc.,* 467 So.2d 1076, 1078 (Fla. 5th DCA 1985).

However, an exception exists where the tortfeasor was assisted in accomplishing the tort by virtue of the relationship. *See id.*; compare *Hennagan v. Dep't of High Saf. & Motor Veh.*, 467 So.2d 748 (Fla. 1st DCA 1985), with *Argriturf Mgmt., Inc. v. Roe*, 656 So.2d 954 (Fla. 2d DCA 1995). In *Hennagan*, the court was asked to determine whether the allegations in the First Amended Complaint were sufficient to survive a motion to dismiss. 467 So.2d at 749. The court found that the allegations in the First Amended Complaint were sufficient because it could not be said, as a matter of law, that the allegations did not support a finding that the tortfeasor was assisted in accomplishing the tort by virtue of the employer/employee relationship he had with his employer.

As alleged in the First Amended Complaint, at all relevant times, George Fout, as Assistant Scoutmaster, was acting as agent for Defendants by implementing and maintain a scouting program at the local level with the consent an oversight of Defendants. (¶¶ 109, 115, 121, 127).

<div align="center">18</div>

Also alleged in the First Amended Complaint, at all relevant times, Steve Fout, as Scoutmaster, was acting as agent for Defendants by implementing and maintain a scouting program at the local level with the consent an oversight of Defendants. (¶¶ 109, 115, 121, 127). Steve Fout is alleged to have actual or constructive knowledge of the activities and abuse of George Fout. This knowledge and the liability arising from that knowledge are imputed upon the Defendants in the described Hierarchy.

Based upon the factual allegations contained within the four corners of the First Amended Complaint, drawing all inferences in favor of the Plaintiff, and accepting all material allegations as true, the First Amended Complaint states a cause of action upon which relief can be granted. Defendant's motion to dismiss should be denied. *See, Sobi v. Fairfield Resorts, Inc.*, 846 So.2d 1204, 1204 (Fla. 5th DCA 2003); *Davis By & Through Davis v. Bell*, 705 So. 2d 108, 109 (Fla. 2d DCA 1998). Defendant's motion to dismiss should be denied.

## OTHER ISSUES RAISED IN THE MOTION TO DISMISS

### The Statute of Limitations

Defendants raise the argument in the Motion to Dismiss that the First Amended Complaint is barred by the applicable four year statute of limitations. Plaintiff initially filed his Complaint with this Court on January 27, 2016. In the First Amended Complaint, Plaintiff asserted that George Fout committed sexual abuse upon Plaintiff beginning in or about 2004 and continued to occur until 2012. (¶¶ 49, 52).

The statute of limitations is an affirmative defense. Florida law is clear that an affirmative defense may not be considered on motion to dismiss a First Amended Complaint unless on the face of the First Amended Complaint there are allegations which demonstrate the existence of an affirmative defense. *Frank v. Campbell Prop. Mgmt., Inc.*, 351 So.2d 364 (Fla. 4th DCA 1977) (citation omitted); *see also* Fla. R. Civ. P. 1.110 (d). If there is additional

Highly Confidential

BSA-PLAN_01422841

**SA 1095**

information required to support a fatal defense, the recourse would be a motion for summary judgment or trial. *Minor v. Brunetti*, 43 So.3d 178, 179 (Fla. 3d DCA 2010)(holding that the "issue would be better addressed on a summary judgment motion or at trial, not on a motion to dismiss," where the trial court went beyond the four corners of the First Amended Complaint in granting a motion to dismiss).

Again, in the area of sexual abuse, the defense of the statute of limitation is *extremely fact specific* and *highly subject* to the applicable specific circumstances. For that matter alone, it is not subject to resolution on a motion to dismiss.

Substantively, the Defendant asserts that the statute of limitations would have commenced to run upon the *first* act of sexual misconduct perpetrated by George Fout.

That is actually the *opposite* of the law in Florida. George Fout's sexual abuse of A.A. is alleged throughout the First Amended Complaint to be continuing, and was continuing in fact. In a continuing tort, the statute of limitations runs from the time of the *last* tortious act. *DEI Quarry vs. Gateway Estates*, 249 So 3d 1287 (Fla 1st DCA, 2018),  See also, *Clements vs. Sheffield* 626 So 2d 272 (1993). Also, in applicable is Section 95.11(9), which permits an action involving a minor under the age of 16, to commence the action *at any time*.

The Defendants' Motions to Dismiss on this ground should be denied.  If the Court is inclined to grant the motion on this ground, the Plaintiff further asserts its motion to ament to incorporate specific facts as to the statute of limitations.  Notably, however, a Plaintiff is not required to anticipate and plead against affirmative defenses in the Complaint. See, *Williams vs. City of Jacksonville*, 191 So 3d 925 (Fla 1st DCA, 2016).

Based upon the factual allegations contained within the four corners of the First Amended Complaint, drawing all inferences in favor of the Plaintiff, and accepting all material allegations as true, the First Amended Complaint states a cause of action upon which relief can

Highly Confidential

BSA-PLAN_01422842

SA 1096

be granted and it not subject to dismissal on the ground of the statute of limitation.  Indeed, the allegations and all inferences support that the claims are not subject to dismissal.  The Defendants motion to dismiss should be denied.

### Knowledge of Steve Fout, Scoutmaster and Agent of the Defendants

Throughout the First Amended Complaint, Steve Fout, as the assigned Scoutmaster and an agent of the Defendants, is alleged to have knowledge of the sexual abuse of A.A. by his Assistant Scoutmaster.  This fact distinguishes this case from the each of the cases cited by the Defendants.

This notice to Steve Fout, as agent of the Defendants, is notice to the principals, BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

The First Amended Complaint alleges that A.A. would leave the meetings "held on its premises" with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.  ¶¶ 70(a), 77(a), 84(a), 91(a), 98(a), 105(a), 117(a), 123(a), and 129(a).

The First Amended Complaint alleges that A.A. would "spend the night" at the Fout's home.  ¶ 54.   The First Amended Complaint alleges that <u>Steve Fout, the father, and the Scoutmaster for the BSA, knew or should have known that his son, the Assistant Scoutmaster, was abusing scouts under Steve Fout's own roof</u>.  ¶115 - 117.  In the case of A.A., in particular, the First Amended Complaint asserts that this abuse, under Steve Fout's roof continued for eight (8) years. ¶¶ 49 – 52.

From these alleged facts, it is an easy inference <u>that the Scoutmaster of the Boy Scouts knows or should know abuse is occurring, or is likely to occur, when his adult son spends the night under his roof behind a closed door in his room with an 8 year old</u>.  When A.A. leaves the Scout meetings with the Fouts; and when the overnight activity continues for eight (8) years, as it

Highly Confidential

alleged in the First Amended Complaint, an inference is hardly required to reach the conclusion that Steve Fout, the father and the Scoutmaster of Troop 448 knew that his Assistant Scoutmaster was abusing the Boy Scout in his care.  It is also an easy inference that other leaders in the Scout Troop knew or should have known of George Fout's abuse.

### The BSA Policy

In addition, the BSA and the NORTH FLORIDA COUNCIL assert that the fact this activity falls outside of the applicable policy is determinative of the case.

In fact, the allegations would allow for an inference and a finding of liability on the grounds that the policy, in its drafting, implementation and application is insufficient for the danger about which the BSA knew and the danger that is posed and which they knew was posed by their organization.  The existence and breach of the BSA policy is not a ground upon which the First Amended Complaint may be dismissed, particularly when the insufficiency of the policy itself is a ground asserted for their liability.

### MOTIONS TO STRIKE

**Defendants' Motion to Strike Sham Pleading (Plaintiff's Response)** Defendants BSA and  NORTH FLORIDA COUNCIL moved to strike ¶ 51 of the Amended Complaint which asserts that:

> On or about July 2009, A.A. was attending a scouting event sponsored by BSA, administered by the BSA and on the BSA property. During that campout week, George Fout approached A.A. in his bedroom. During this encounter George Fout touched A.A.'s penis. This was soon after George Fout's abuse had escalated to include penetration.

At the time of the filing of Complaint, Plaintiff was not aware that the Defendants would assert a ground of dismissal based upon there being no specific assertion of abuse during a BSA event, particularly since grooming and other allegations inferring the same were included in the Complaint.

22

Highly Confidential

Defendant asserts that the pleading is a "sham" because it was added "only after the Defendants "pointed out the . . . deficiency in Plaintiff's original Complaint."

Complaints are routinely amended with additional and more specific facts. These facts are not shams. The Defendants' Motion should be denied.

**Plaintiff's Motion to Strike Introductory Paragraphs**. The "Introduction" paragraphs on Page 2 of the Motion to Dismiss filed by the Defendants BSA and NORTH FLORIDA COUNSEL contain pure narrative which is outside the four corners of the Amended Complaint and which asserts the Defendants' factual answer to the Complaint. A motion to dismiss may consider only the allegation within the complaint. See, *Sobi* and *Davis*, *supra*. In so doing, the Defendants risk answering the Complaint and waiving their right to move to dismiss. They cannot do both. The Plaintiff moves that the narrative on Page 2 of the Motion of BSA and the NORTH FLORIDA COUNCIL be stricken.

**Plaintiff's Motion to Strike Attachment to Motion to Dismiss.** In support of their Motion to Strike for Sham Pleading, the BSA and the NORTH FLORIDA COUNCIL attach an excerpt of a transcript of the Plaintiff's testimony given in the criminal prosecution of his BSA leader. The document attempts to bring facts outside of the four corners of the Amended Complaint and should be stricken. In addition, the document, on its face is an "unofficial document" with not request that the Court take judicial notice.

To the extent that the alleged testimony included is proffered to support the assertion that the Plaintiff's assertion that George Fout, his BSA leader did not commit an act of sexual abuse on a campout as asserted in ¶ 51, there are few explanations on its face which include:

Highly Confidential

BSA-PLAN_01422845

SA 1099

- Perhaps a minor child upon first coming to terms with the fact that he had been sexually abused by his BSA Leader in the home of his BSA Scoutmaster, and trying to manage the shame, shock and guilt associated with that trauma, may not have been in the frame of mind to articulate an accurate chronology and the specific geolocation of every act of abuse perpetrated upon him by his BSA Leader, or

- Noting that the minor child confirmed during the questioning that that question was asking about acts which were "sexual" (P64, L2 of the transcript), perhaps this minor child who had been anally and orally raped by his BSA Leader for eight (8) years under the roof of his BSA Scoutmaster, didn't think that "merely" having his penis touched on a campout was "sexual".

In either or any event, the Exhibit should be stricken from a motion which is directed to the four corners of the Complaint. Further, it does not support the pretext for which it is proffered. The Plaintiff respectfully requests that the Exhibit and the references to it be stricken.

**MOTION TO STRIKE PREJUDGMENT INTEREST**

The Plaintiff agrees that Prejudgment Interest is not an element of the damages which the Plaintiff may recover for the sexual abuse alleged and stipulates to its removal from the relief requested in each Count.

**ALTERNATIVE MOTION TO AMEND THE FIRST AMENDED COMPLAINT**

As stated, the Plaintiff's First Amended Complaint, including its specific assertions and inferences, states a cause of action against the Defendants and requires an Answer. The Defendants are on notice of the basis of their duties, the nature of the breaches of that duty and the injuries sustained. The issues raised in their respective motions are collectively and individually highly fact specific, particularly in the area of minor abuse by Hierarchal organizations, and must be resolved on their developed facts using the appropriate procedure vehicles available, including summary judgment or jury deliberation.

To the extent this Court is inclined to dismiss any of A.A.'s claims, the Plaintiff requests that it be without prejudice to allow for leave to amend under Florida Rule of Civil Procedure

Highly Confidential

BSA-PLAN_01422846

**SA 1100**

1.190(e). It is well established that a court's finding that a complaint fails to state a cause of action, by itself, is not a sufficient ground on which to base an order of dismissal with prejudice. *Bouldin v. Okaloosa County*, 580 So. 2d 205, 207 (Fla. 1st DCA 1991); *Drakeford v. Barnett Bank of Tampa*, 694 So. 2d 822, 824 (Fla. 2d DCA 1997). Instead, dismissal with prejudice should only be imposed when it conclusively appears from the face of the complaint that there is no possible way to amend to state a cause of action, or when the privilege to amend has been abused. *Obenschain v. Williams*, 750 So. 2d 771, 773 (Fla. 1st DCA 2000).

In other words, a court should not dismiss a complaint, or, in this case a *First* Amended Complaint, with prejudice if it is actionable on any ground. *Id.* Dismissal with prejudice is an abuse of discretion where the party may be able to allege additional facts to support its causes of action or support another cause of action under a different legal theory. *Id; Fla. Nat'l Org. of Women, Inc. v. State*, 832 So. 2d 911, 915 (Fla. 1st DCA 2002).

A.A has stated viable claims against the Defendants and the Motions should be denied. However, in the alternative, A.A. requests leave to amend in order to allege additional facts or a different legal theory of relief. *Obenschain*, 750 So. 2d at 773.

Clearly, the gravity of the abuse and the injury suffered by A.A., alone suggest that the Plaintiff be granted exceptional degree of leave to assert his causes of action and to seek relief.

### **REQUEST FOR ORAL ARGUMENT**

Pursuant to this Court's Motion Practice Procedure, Plaintiff respectfully request oral argument on this Motion to Dismiss. The estimated time required for argument is 1 hour.

Highly Confidential

BSA-PLAN_01422847

SA 1101

Dated: March 1, 2019

**MORGAN & MORGAN, P.A.**
**Business Trial Group**

*/s/Paul L. SanGiovanni*
Paul L. SanGiovanni, Esq.
FBN 0513164
20 N. Orange Avenue, Suite 1500
Orlando, FL 32801
Telephone:      (407)418-6041
Facsimile:      (407)245-3394
Primary email: PSangi@ForThePeople.com
Secondary email: MTodd@ForThePeople.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 1, 2019, I electronically filed the foregoing with the Clerk of the Courts by using the Florida Courts eFiling Portal which will send electronic notification to all counsel of record.

*/s/ Paul L. SanGiovanni*
Paul L. SanGiovanni

Highly Confidential

BSA-PLAN_01422848

**SA 1102**

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

       Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL,
INC., BOY SCOUTS OF
AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

       Defendants.

_____/

## COMPLAINT FOR DAMAGES

    Plaintiff, A.A, by and through his undersigned ~~council~~counsel, files this Complaint against Defendants, THE BOY SCOUTS OF AMERICA, a foreign corporation authorized to do business in Florida (hereinafter referred to as the "BSA"), the NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, a corporation authorized to do business in Florida (hereinafter referred to as the "NORTH FLORIDA COUNCIL"), and the SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., a corporation authorized to do business in Florida (hereinafter referred to as the "SILVER SPRINGS SHORES") and for good cause, states:

---

*Exhibit "A" to Plaintiff's Response to
Motion to Dismiss Amended Complaint*

*Redline of Amendments to Initial Complaint*

---

Highly Confidential

## INTRODUCTION

1.    **General Statement of Claims:** These claims relate to acts of sexual battery as described in Section 794.011, Florida Statutes suffered by the Plaintiff, A.A., while he was a participant in the programs operated by the Defendants. A.A. was the victim of these acts, and each of them occurred, prior to the age of sixteen (16).

2.    As more particularly described herein, the Plaintiff suffered the sexual battery described herein as a result of the neglect of the BSA and its agents to, among other things, exercise due care in the administration, management and operation of its scouting program, their breach of their fiduciary duties and their vicarious liability for the acts of their agents.

3.    **Jurisdiction and Venue:**    This is an action for damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorneys' fees.

4.    Venue is proper in Marion County, Florida because the events giving rise to this action occurred in Marion County, Florida. .

5.    **The Parties:**   A.A. is currently an adult residing in Marion County, Florida. The actions described herein occurred when A.A. was under sixteen (16) years  of age. The initials "A.A." are used to protect the identity of Plaintiff from public disclosure. The identity and further relevant details shall be disclosed to the Defendants off record and confidentially.

6.    At all relevant times, A.A. resided in Marion County, Florida.

7.    The BSA is a foreign corporation authorized to do business in the state of Florida. At all relevant times, BSA controlled or had the right to control  the NORTH

Highly Confidential

FLORIDA COUNCIL's and the sponsoring organizations, which implemented BSA's scouting program.

8.     The NORTH FLORIDA COUNCIL is a corporation authorized to do business in the State of Florida and is located in Duval County, Florida. At all relevant times, the NORTH FLORIDA COUNCIL was an agent of BSA, subject to BSA's control or right to control. As Defendant BSA's agent, the NORTH FLORIDA COUNCIL controlled or had the right to control local troops directly, or through their sponsoring organizations.

9.     SILVER SPRINGS SHORES is a corporation authorized to do business in the State of Florida and is located in Marion County, Florida. At all relevant times, the SILVER SPRINGS SHORES was an agent of BSA, subject to BSA's control or right to control. As Defendant BSA's agent, the SILVER SPRINGS SHORES controlled or had the right to control local troops directly, or through their sponsoring organizations.

10.     Upon information and belief, SILVER SPRINGS SHORES was the chartering organization for Troop 448, or such other Troop as A.A. was a member (herein collectively referred to as "Troop 448").

11.     George Fout was an Assistant Scoutmaster of Troop 448.

12.     Steve Fout, George Fout's father, was the Scoutmaster of Troop 448.

## STATEMENT OF FACTS

### Scouting is a Hierarchical System

13.     BSA is a large y o u t h -serving organization.—— who promotes, markets, and encourages parents to enroll their children in BSA. Enrollment in BSA requires parents to entrust their children's health and safety to BSA and requires children to engage in activities that expose them to adults and others. Much of BSA's activities include over-night outings,

BSA-PLAN_01422851

SA 1105

camping trips, and trips away from parents.

13.    BSA has established its presence through the use of a hierarchical system, whereby local COUNCIL's COUNCILS and

14.    chartering organizations implement and maintain BSA's program at a local level under BSA's guidance and control. BSA issues the Boy Scouts of America name, emblems, badges, markings, and youth programs to the COUNCILS and chartering organizations. BSA requires the local COUNCIL and troops within a local COUNCIL to strictly adhere to BSA's organizational charter and standards of leadership.

14.15. A local scouting troop cannot exist without the support of a chartering organization that has received a charter from BSA authorizing the chartering organization to implement and run BSA's scouting program.

15.16. BSA creates the bylaws, rules and regulations that every chartering organization must adhere to in implementing and running BSA's scouting program. Significantly, BSA's bylaws obligate a chartering organization to provide adequate facilities, supervision, and leadership for the troop in exchange for the granting of a charter to run a local scouting troop.

16.17. Under the BSA bylaws, each chartering organization is required to select at least three people over the age of 21 to serve as the Troop Committee. The Troop Committee then selects the Troop Scoutmaster. BSA must approve scout leaders, whether paid or volunteer, to serve in a local troop or council.

17.18. Together, the Troop Committee and the Scoutmaster are responsible for the general program and supervision of the troop.

18.19. Further, each chartering organization is required to appoint a representative

BSA-PLAN_01422852

SA 1106

other than the Scoutmaster or Assistant Scoutmaster to serve as its institutional representative on the local COUNCIL.

19.20.  A chartering organization must reapply to BSA every year for a renewed charter in order to continue to operate a local troop. BSA may revoke a chartering organization's charter at any time should the chartering organization be found to deviate from BSA's charter and bylaws.

20.21.  This chartering system reveals BSA's consent to allow local chartering organizations to operate the scouting program on its behalf and the chartering organizations' consent to operate the local troops subject to BSA's control or right to control.  Accordingly, the chartering organizations are the agents of BSA.

21.22.  BSA uses a similar structure in relation to its local COUNCIL's. BSA issues a charter to an approved local COUNCIL authorizing the local COUNCIL to administer the scouting program to the local scout troops within the region on behalf of BSA.

22.23.  The local COUNCIL's are subject to the same bylaws, rules and regulations as the chartering organizations. If a local COUNCIL deviates from the rules and regulations established by BSA, then the local COUNCIL may have its charter revoked.

23.24.  All local COUNCIL's must apply to BSA for renewal of their charters annually.

24.25.  It is the duty of the local COUNCIL to promote, support, and maintain the BSA scouting regime amongst all local troops within the local COUNCIL's area.

25.26.  Here too, theThe chartering system shows BSA's consent to allow local COUNCIL's to operate the scouting program on its behalf within a specific geographic region, and the local COUNCIL's consent to operate the scouting program subject to BSA's control or right to control.  Thus, the local COUNCIL's are agents of BSA.

Highly Confidential

26.———BSA cannot operate its scouting program without the consent and cooperation of the local COUNCIL's and chartering organizations.    Conversely, the

27.     chartering organizations and local COUNCIL's cannot operate and supervise local scouting troops without the consent of BSA.

## The History of Pedophilia in Scouting

27.28.  BSA has known for decades of the high degree of risk that adult Scoutmasters and volunteers may sexually abuse minor scout members.

28.29.  Since the early 1900s, BSA has maintained a system of "Ineligible Volunteer Files" to track incidents wherein adult Scoutmasters sexually abused scouts. The Ineligible Volunteer Files contain internal memoranda demonstrating BSA's awareness of the ongoing pedophilia within BSA, and demonstrated concerns about pedophiles within BSA harming their reputation and economic interests.

30.     These Ineligible Volunteer Files demonstrate BSA's vulnerabilities when it comes to pedophilia within BSA and includes pedophiles' techniques used to enter scouting, their techniques for grooming victims and more.

29.31.  In approximately 1972, BSA implemented a system requiring local COUNCIL's' scouting executives to complete and send in a form with any available supporting information about known or alleged sexual abuse committed by adult Scoutmasters in the executives' jurisdiction. Upon receipt of this information from the local COUNCIL, BSA created an Ineligible Volunteer File for the abuser and added it to BSA's database.

30.32.  By 1977, BSA was advising all sponsoring organizations to maintain "two deep leadership" for all scouting activities, wherein two adult Scoutmasters were required to be present at all times. Ostensibly, this precaution was implemented to help prevent sexual abuse

in scouting.

31.33.  Despite BSA's extensive and long-standing knowledge of the high degree of risk of pedophilia in scouting, BSA did not implement a sexual abuse-prevention education program until approximately 1988. This program, the Youth Protection Program, was BSA's first effort to educate scouts and their family members about the  risk of sexual abuse in scouting, a risk that continues today.

34.  BSA has overwhelming evidence that scouting has particular characteristics that make the organization vulnerable to pedophiles, including but limited to:

    a.  Joining BSA provides pedophiles access to boys alone and away from their families.

    b.  BSA repeatedly encourages young boys to strictly obey their scout leaders and masters, allowing pedophiles to groom their victims.

    c.  BSA encourages overnight stays, camping trips and other activities for scouts and scout leaders and masters to be alone together.

**George Fout's Sexual Battery of A.A.**

32.35.  A.A. is an adult male. At all relevant times, A.A. was a minor residing in Marion County, Florida and was under the age of sixteen (16).

33.36.  At all relevant times, A.A. was enrolled in the Boy Scouts of America scouting program.

34.37.  At all relevant times, A.A. was a member of Boy Scouts of America Troop 448 in Ocala, Florida. Troop 448 was chartered by Defendant SILVER SPRINGS SHORES.

35.38.  As the chartering organization of Troop 448, Defendant SILVER SPRINGS

BSA-PLAN_01422855

SA 1109

SHORES was responsible for providing adequate facilities, supervision, and leadership for the troop.

36.39.  The troop meetings were held in facilities owned or operated by Defendant SILVER SPRINGS SHORES.

37.40.  At all times material hereto, Steve Fout was installed as the Scoutmaster (a/k/a Troop Leader) for Troop 448.

38.41.  At all times material hereto, Steve Foot's son, George Fout, was an Assistant Scoutmaster (a/k/a Assistant Troop Leader) for Troop 448.

39.42.  Troop 448 was under the jurisdiction of Defendant NORTH FLORIDA COUNCIL.

40.43.  As the Scoutmaster of Troop 448, Steve Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members  to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

41.44.  As the Assistant Scoutmaster of Troop 448, George Fout assisted Steve Fout in these activities.

42.45.  At all times material hereto, Assistant Scoutmaster George Fout was under the direct supervision of Scoutmaster Steve Fout.

43.46.  In or about 2004, A.A. became a member of Troop 448.  It was through  his membership in Troop 448 that Plaintiff was introduced to his abuser, George Fout.

44.47.  George Fout often showered Plaintiff with special attention.

45.48.  George Fout groomed Plaintiff for sexual abuse by gaining Plaintiff's trust and admiration.

Highly Confidential

46.49.  In or about 2004, when A.A. was eight (8) years old, George Fout began to commit sexually battery upon A.A.

47.50.  Specifically, George Fout committed oral and anal sodomy and other acts of sexual battery constituting violations of Section 794.011, Florida Statutes upon A.A.

51.    On or about July 2009, A.A. was attending a scouting event sponsored by BSA, administrated by the BSA and on the BSA property. During that campout week, George Fout approached A.A. in his bedroom. During this encounter George Fout touched A.A.'s penis. This was soon after George Fout's abuse had escalated to include penetration.

48.52.  Each of these acts occurred prior to the Plaintiff's sixteenth (16th) birthday.

49.53.  Eventually, George Fout escalated the frequency of the sexual battery to the point where he was sexually abusing Plaintiff approximately once a month.

50.    The abuse continued until 2012, until just prior to A.A.'s sixteenth (16th) birthday.

51.54.  The locations of the sexual battery includedwould often take place at George Fout's home after scouting events, in which he resided with Steve Fout, his father and the Scoutmaster of Troop 448. Steve Fout was often present in the home during George Fout's sexual battery of A.A.

55.    WithoutAt times, A.A. would leave scouting events held on Defendants' premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of BSA policy.

52.    As the sexual battery would continue, without limitation, A.A. would spend the night at the home of Scoutmaster Steve Fout.  This is a clear violation of BSA policy.  During

BSA-PLAN_01422857
SA 1111

those occasions,

56.     A.A. would be abused by Assistant Scoutmaster George Fout. Steve Fout was
often in the home often when the incidents of sexual battery occurred.

57.     ~~These abuses~~At no time did BSA, NORTH FLORIDA COUNCIL, or SILVER
SPRINGS SHORES take steps to ensure the non-sleepover between volunteer leaders and
youth in BSA's policy was being implemented and followed by their scoutmasters or scout
leaders, and at no time did BSA, NORTH FLORIDA COUNCIL, or SILVER
SPRINGS SHORES take steps to ensure that no one-on-one contact between volunteer leaders
and youth were being followed according to BSA's polices.

58.     A.A. was repeatedly abused under circumstances where he was unable to
protect himself or was otherwise unable to avail himself of his legal guardians for their
ordinary source of protection or was otherwise relying entirely on BSA, NORTH FLORIDA
COUNCIL and SILVER SPRINGS SHORES, and its agents for his protection.

59.     A.A. and his family imposed confidence in BSA, NORTH FLORIDA
COUNCIL and SILVER SPRINGS SHORES through A.A.'s participation in Boy Scouts of
America Troop 448 that A.A. would, among other things, learn the values and characteristics
that Defendants promote through involvement with BSA, and ultimately would be safe from
harm in doing so.

60.     It is through A.A.'s involvement with BSA, NORTH FLORIDA COUNCIL
and SILVER SPRINGS SHORES, and George Fout's relationship with BSA, NORTH
FLORIDA COUNCIL and SILVER SPRINGS SHORES that A.A. was abused by George
Fout.

~~53.~~61.  BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES had a

BSA-PLAN_01422858

SA 1112

direct and special relationship with scouts who participated in its programs. A.A. was a child at the time of the abuse. The abuse began and often occurred when A.A. was placed in the care and custody of Defendants BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, with the resulting loss of control to protect himself.

62.   BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES had a direct and special relationship with adult scout leaders and masters they utilized to work with children, including A.A., whose family entrusted him to Defendants care.

54.63. Defendants BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, were substituting for A.A.'s parents when they had custody of A.Aduring the relevant times.

55.64. At all relevant times, George Fout and Steve Fout were acting as the agents of Defendant BSA, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES by leading Boy Scouts of America Troop 448.

56.65. At all relevant times, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES were serving as Defendant BSA's agents by implementing and maintaining BSA's scouting program on a local level.

## CAUSES OF ACTION

### Count I: Negligence of Defendant SILVER SPRINGS SHORES

57.66. Plaintiff incorporates Paragraphs 1 through 5664 above as fully set forth under this count and further alleges as follows:

58.67. Defendant SILVER SPRINGS SHORES had a special relationship with A.A. because Defendant SILVER SPRINGS SHORES had care and custody of A.A. while A.A. was participating in Troop 448 activities.

BSA-PLAN_01422859

SA 1113

A.A. because among other things, A.A. was a child at the time of the abuse, the abuse began and often occurred when A.A. was placed in the care and custody of Defendant SILVER SPRINGS SHORES, with the resulting loss of control to protect himself, and Defendant SILVER SPRINGS SHORES was substituting for A.A.'s parents during the relevant times.

59.68.  This special relationship between Defendant SILVER SPRINGS SHORES and A.A. gave rise to a right of protection for A.A.

60.69.  Based on the special protective relationship with A.A., Defendant SILVER SPRINGS SHORES had a duty to protect A.A. from reasonably foreseeable harm.

61.70.  Defendant SILVER SPRINGS SHORES breached the duty it owed A.A., by acts or omissions which included, without limitation:

a)   Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed. These included, without limitation that Defendant SILVER SPRINGS SHORES knew or should have known of the special relationship between the Fouts and A.A. and that A.A.  would leave the meetings held on its premises with  Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

62.71.  As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of

BSA-PLAN_01422860

them, prior to the age of sixteen (16).

63.   As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues   to

72.   experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count II: Negligence of Defendant NORTH FLORIDA COUNCIL

64.73.  Plaintiff incorporates Paragraphs 1 through 5664 above as fully set forth under this count and further alleges as follows:

65.74.  Defendant NORTH FLORIDA COUNCIL had a special relationship  with A.A. because Defendant NORTH FLORIDA COUNCIL had care and custody of A.A. while A.A. was participating in Troop 448 activities. among other things, A.A. was a child at the time of the abuse, the abuse began and often occurred when A.A. was placed in the care and custody of Defendant NORTH FLORIDA COUNCIL, with the resulting loss of control to protect himself, and Defendant NORTH FLORIDA COUNCIL was substituting for A.A.'s parents during the relevant times.

75.   This special relationship between Defendant NORTH FLORIDA COUNCIL and A.A. gave rise to a right of protection for A.A.

Highly Confidential

66.76.  Based on the special protective relationship with A.A., Defendant NORTH FLORIDA COUNCIL had a duty to protect A.A. from reasonably foreseeable harm.

67.77.  Defendant NORTH FLORIDA COUNCIL breached the duty it owed A.A., by acts or omissions which included, without limitation:

> a)————Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm  that

> a)      A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant NORTH FLORIDA COUNCIL knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant NORTH FLORIDA COUNCIL knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.
> special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

> b)      Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

> c)      Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters  and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

68.78.  As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL's negligent acts and omissions, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

69.79.  As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional,

psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, pre- judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count III – Negligence of Defendant BSA

~~70.~~80.  Plaintiff incorporates Paragraphs 1 through ~~56~~64 above as fully set forth under this count and further alleges as follows:

81.     Defendant BSA had a special relationship with A.A. because ~~Defendant BSA had care and custody of A.A. while A.A. was participating in Troop 448 activities.~~ among other things, A.A. was a child at the time of the abuse, the abuse began and often occurred when A.A. was placed in the care and custody of Defendant BSA, with the resulting loss of control to protect himself, and Defendant BSA was substituting for A.A.'s parents during the relevant times.

~~71.~~82.  This special relationship between Defendant BSA and A.A. gave rise to a right of protection for A.A.

~~72.~~83.  Based on the special protective relationship with A.A., Defendant BSA had a duty to protect A.A. from reasonably foreseeable harm.

~~73.~~84.  Defendant BSA breached the duty it owed A.A., by acts or omissions which included, without limitation:

a) Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that

a) A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant BSA knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant BSA knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b) Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c) Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

74.85. As a direct and proximate cause of Defendant BSA's negligent acts and omissions, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

75.86. As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so

Highly Confidential

triable.

**Count IV: Breach of Fiduciary Duty of Defendant SILVER SPRINGS SHORES**

76.87.  Plaintiff incorporates Paragraphs 1 through 5664 above as fully set forth under this count and further alleges as follows:

77.88.  At all relevant times, A.A. was a minor for whom Defendant SILVER SPRINGS SHORES was entrusted with caring.

89.    Upon information and belief, Defendant SILVER SPRINGS SHORES had a special relationship with A.A. because among other things, Defendant SILVER SPRINGS SHORES took charge of and/or exercised control over A.A. SPRINGS SHORES took charge of and/or exercised control over A.A.,  and A.A. and his family imposed confidence in SILVER SPRINGS SHORES through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things, learn the values and characteristics that SILVER SPRINGS SHORES promotes through involvement with BSA, and ultimately would be safe from harm in doing so.

78.90.  As a result of this relationship, at all relevant times, Defendant SILVER SPRINGS SHORES had a fiduciary duty toward A.A. that included the obligation to protect him from sexual battery and sexual predators.

79.91.  Defendant SILVER SPRINGS SHORES breached its fiduciary duty to protect A.A. by, among other things,

a)——Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm -that

a)    A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant SILVER SPRINGS SHORES knew or should have known of the special relationship between the Fouts and A.A. and that A.A.

BSA-PLAN_01422865

**SA 1119**

would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters  and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

92.   As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery

~~80.~~   constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

~~81.~~   As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive  and disabling emotional, <u>psychological and physiological damages and bodily injuries, and he continues to experience</u> <u>mental anguish, humiliation, and emotional and physical distress, all in an amount to be</u> <u>proven at trial.</u> ~~psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.~~

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

**Count V: Breach of Fiduciary Duty of Defendant NORTH FLORIDA COUNCIL**

82.93.   Plaintiff incorporates Paragraphs 1 through 5664 above as fully set forth under this count and further alleges as follows:

83.94.   At all relevant times, A.A. was a minor for whom Defendant NORTH FLORIDA COUNCIL was entrusted with caring.

84.95.   Upon information and belief, Defendant NORTH FLORIDA COUNCIL had a special relationship with A.A. because among other things, Defendant NORTH FLORIDA COUNCIL took chargecontrol of and/or exercised control over A.A., and A.A. and his family imposed confidence in NORTH FLORIDA COUNCIL through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things,

learn the values and characteristics that NORTH FLORIDA COUNCIL promotes through involvement with BSA, and ultimately would be safe from harm in doing so.

85.96.   As a result of this relationship, at all relevant times, Defendant NORTH FLORIDA COUNCIL had a fiduciary duty toward A.A. that included the obligation to protect him from sexual battery and sexual predators.

86.97.   Defendant NORTH FLORIDA COUNCIL breached its fiduciary duty to protect A.A. by, among other things,

a)        Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant NORTH FLORIDA COUNCIL knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant NORTH FLORIDA COUNCIL knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

BSA-PLAN_01422867

SA 1121

       b)a)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

       c)b)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

87.98.  As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL's breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

88.99.  As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, pre- judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## Count VI: Breach of Fiduciary Duty of Defendant BSA

BSA-PLAN_01422868

SA 1122

~~89.~~100. Plaintiff incorporates Paragraphs 1 through ~~56~~64 above as fully set forth under this count and further alleges as follows:

~~90.~~101. At all relevant times, A.A. was a minor for whom Defendant BSA was entrusted with caring.

~~91.~~102. Upon information and belief, Defendant BSA had a special relationship with A.A. because among other things, Defendant BSA took charge of and/or exercised control over A.A, and A.A. and his family imposed confidence in BSA through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things, learn the values and characteristics that BSA promotes through involvement with BSA, and ultimately would be safe from harm in doing so.

~~92.~~103. As a result of this relationship, at all relevant times, Defendant BSA had a fiduciary duty toward A.A. that included the obligation to protect him from sexual battery and sexual predators.

~~93.~~104. Defendant BSA breached its fiduciary duty to protect A.A. by, among other things,

a) Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm  that
a) A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant BSA knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant BSA knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b) Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c) Failing to otherwise oversee the appointment of Scoutmasters and

BSA-PLAN_01422869

SA 1123

Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

94.105. As a direct and proximate cause of Defendant BSA's breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

95.106. As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count VII: Vicarious Liability of Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for the Sexual Battery by George Fout**

96.107. Plaintiff incorporates Paragraphs 1 through 5664 above as fully set forth under this count and further alleges as follows:

97.108.    At all relevant times, George Fout, as Assistant Scoutmaster, was acting as agent for Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent

Highly Confidential

and oversight of Defendant BSA.

~~BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.~~

~~98.~~109. Accordingly, Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of George Fout.

~~99.~~110. George Fout's acts and omissions and breaches of fiduciary duties include, without limitation, committing acts of sexual battery upon A.A. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

111.    As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial, for which such damages, SILVER SPRINGS SHORES,

~~100.~~         NORTH FLORIDA COUNCIL and BSA are vicariously liable.

~~101.~~112.       WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count VIII: Vicarious Liability of Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for the Negligence and Breach of Fiduciary Duty of Steve Fout**

102.113.　Plaintiff incorporates Paragraphs 1 through 5664 above as fully set forth under this count and further alleges as follows:

103.114.　At all relevant times, Steve Fout, as Scoutmaster, was acting as agent for Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

104.115.　Accordingly, Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of Steve Fout.

105.116.　Steve Fout's acts and omissions and breaches of fiduciary duties include, without limitation,

　　a)――Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that

　　a)　　A.A. may be sexually abused by his son and Assistant Scoutmaster if proper precautions were not followed. Steve Fout knew that proper precautions and procedures were not followed. These included, without limitation, that Steve Fout knew or should have known of the special relationship between George Fout and A.A. and that A.A. would leave the meetings held on its premises to spend the evening at the Fout's residence, in violation of Boy Scout policy.

　　b)　　Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at his home, which allowed George Fout to isolate and sexually abuse A.A.

　　c)　　Failing to otherwise properly oversee the activities of Troop 448, its scouts, and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

106.117.　As a result of this negligence and breach of fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

Highly Confidential

107.118.    As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial, for which such damages, SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA are vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count IX: Vicarious Liability of Defendants NORTH FLORIDA COUNCIL and BSA for the Negligence and Breach of Fiduciary Duty of SILVER SPRINGS SHORES

108.119.    Plaintiff incorporates Paragraphs 1 through 5664 above as fully set forth under this count and further alleges as follows:

109.120.    At all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendants NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

110.121.    Accordingly, Defendants NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of SILVER SPRINGS SHORES.

111.122.    SILVER SPRINGS SHORES acts and omissions and breaches of

BSA-PLAN_01422873
SA 1127

fiduciary duties include, without limitation,

    a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that

    a)    A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant SILVER SPRINGS SHORES knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant SILVER SPRINGS SHORES knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

    b)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

112.123.    As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligence and breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

113.    As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional,

BSA-PLAN_01422874

SA 1128

124.    psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial for which NORTH FLORIDA COUNCIL and BSA are vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count X: Vicarious Liability of Defendant BSA for the Negligence and Breach of Fiduciary Duty of NORTH FLORIDA COUNCIL

114.125.    Plaintiff incorporates Paragraphs 1 through 5664 above as fully set forth under this count and further alleges as follows:

115.126.    At all relevant times, NORTH FLORIDA COUNCIL was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

116.127.    Accordingly, Defendant BSA is vicariously liable for the acts and omissions and breaches of fiduciary duties of NORTH FLORIDA COUNCIL.

117.128.    NORTH FLORIDA COUNCIL acts and omissions and breaches of fiduciary duties include, without limitation,

a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. may be sexually abused by his Assistant Scoutmaster if proper precautions were not followed. Upon information and belief, Defendant NORTH FLORIDA COUNCIL knew or should have known that proper precautions and procedures were not followed. These included, without limitation, that Defendant

BSA-PLAN_01422875

SA 1129

a)     NORTH FLORIDA COUNCIL knew or should have known of the special relationship between the Fouts and A.A. and that A.A. would leave the meetings held on its premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence, in violation of Boy Scout policy.

b)     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

~~118.~~129.     As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL's negligence and breach of its fiduciary duty, A.A. was the victim of acts of sexual battery constituting violations of Section 794.011, Florida Statutes. A.A. was the victim of these acts, and each of them, prior to the age of sixteen (16).

130.     As a result of this sexual battery, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an

~~119.~~     amount to be proven at trial for which BSA is vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

Dated: March 1, 2019.

**MORGAN & MORGAN, P.A.**
**Business Trial Group**

 *s/Paul L. SanGiovanni*
**Paul L. SanGiovanni**
Florida Bar No. 0513164
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407)418-6041
Facsimile:  (407)245-3394
Primary E-mail:  PSangi@forthepeople.com
Secondary E-mail MTodd@forthepeople.com
*Attorneys for Plaintiff*

BSA-PLAN_01422877

**SA 1131**

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                                  CASE NO. 2016-CA-000167

      Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

      Defendants.
_____/

## BSA AND NORTH FLORIDA COUNCIL'S *UNOPPOSED* MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

      Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc. ("North Florida Council"), submit this *unopposed* motion for an extension of time to file their reply to Plaintiff's Response and Incorporated Memorandum of Law in Opposition to Defendants' Motion to Dismiss First Amended Complaint, dated March 1, 2019.  In support, BSA and North Florida Council state the following:

      1.    BSA and North Florida Council filed their Motion to Dismiss Amended Complaint and Memorandum of Law on January 11, 2019.

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131  Phone: 305.377.0700  Fax: 305.377.3001  www.cspalaw.com

Highly Confidential

BSA-PLAN_01422878

SA 1132

CASE NO. 2016-CA-000167

2.      Pursuant to the Court's Order dated January 30, 2019, Plaintiff's response to the motion to dismiss ("Response") was due on February 19, 2019, with Defendants' reply due five days later.

3.      On March 1, 2019, after the deadline had expired, Plaintiff requested leave to file its Response *nunc pro tunc*.  Defendants agreed to the extension and requested 20 days from the Response date to file their reply.   Plaintiff agreed.

4.      Plaintiff filed its Response on March 1, 2019.  Defendants will need additional time to analyze and evaluate Plaintiff's response and to prepare their reply.

5.       Defendants respectfully request an extension through and including March 21, 2019 in which to file their reply to Plaintiff's Response.

6.      This motion is made in good faith and not for the purposes of delay.

7.      Plaintiff's Counsel agrees to the requested extension.

8.      No prejudice will result because the motion is unopposed.

Wherefore, BSA and North Florida Council respectfully request entry of the attached Agreed Order granting them the requested extension of time in which to file their Reply to Plaintiff's Response.

Highly Confidential

BSA-PLAN_01422879
SA 1133

CASE NO. 2016-CA-000167

Respectfully submitted by,

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida  33131
Telephone:  (305) 377-0700
Facsimile:   (305) 377-3001

By: /s/Spencer H. Silverglate
     Spencer H. Silverglate
     Florida Bar No. 769223
     ssilverglate@cspalaw.com
     mpedraza@cspalaw.com
     Francisco Ramos, Jr.
     Florida Bar No. 114766
     framos@cspalaw.com
     sdelosreyes@cspalaw.com
     Shannon P. McKenna
     Florida Bar No. 385158
     smckenna@cspalaw.com
     aford@cspalaw.com

## CERTIFICATE OF SERVICE

    WE HEREBY CERTIFY that a true and correct of the foregoing was served through the Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 4th day of March, 2019, to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
     Spencer H. Silverglate

Highly Confidential

BSA-PLAN_01422880

SA 1134

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                                      CASE NO. 2016-CA-000167

      Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

      Defendants.
_____/

**AGREED ORDER GRANTING BSA AND NORTH FLORIDA COUNCIL'S
UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLY
TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT**

THIS CAUSE having come before the Court upon Defendants', Boy Scouts of America

("BSA") and North Florida Council, Inc. ("North Florida Council"), Unopposed Motion for

Extension of Time to File Their Reply to Plaintiff's Response to Defendants' Motion to Dismiss

Amended Complaint dated March 4, 2019, and the Court having reviewed the Unopposed

Motion, having been advised of agreement by and between counsel for parties, and being

otherwise duly advised in the premises, it is hereby

1

BSA-PLAN_01422881
**SA 1135**

CASE NO. 2016-CA-000167

ORDERED AND ADJUDGED that BSA and Council's Motion is GRANTED.  BSA and Council shall file their reply to Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint on or before March 21, 2019.

DONE AND ORDERED in Chambers in Marion County, Florida this _____ day of March, 2019.

_____
EDWARD L. SCOTT
CIRCUIT JUDGE

cc:    Counsel for Plaintiff:
       Paul L. SanGiovanni,  psangi@forthepeople.com, mtodd@forthepeople.com

       Counsel for BSA and Council:
       Spencer H. Silverglate, ssilverglate@cspalaw.com, mpedraza@cspalaw.com
       Francisco Ramos, Jr., framos@cspalaw.com, sdelosreyes@cspalaw.com
       Shannon P. McKenna, smckenna@cspalaw.com, aford@cspalaw.com

       Counsel for Silver Springs Shores Presbyterian Church, Inc.:
       Rachel Garcia, rgarcia@wickersmith.com, ndurham@wickersmith.com

Case 5:20-cv-00069  Document 1-4  Filed 02/18/20   Page 343 of 805 PageID 520

81910-5/546440

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.,                                                    CASE NO. 2016-CA-000167

     Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

     Defendant.

_____/

### SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., submit

this unopposed motion for an extension of time to file their reply to Plaintiff's Response and

Incorporated Memorandum of Law in Opposition to Defendants' Motion to Dismiss First

Amended Complaint, dated March 1, 2019. In support, BSA and North Florida Council state the

following:

1.     Silver Springs Shores Presbyterian Church, Inc. filed its Motion to Dismiss

Plaintiff's Amended Complaint and Motion to Strike Prejudgment Interest on January 2, 2019.

Highly Confidential

BSA-PLAN_01422883

SA 1137

CASE NO. 2016-CA-000167

2.      Pursuant to the Court's Order dated January 30, 2019, Plaintiff's response to the motion to dismiss ("Response") was due on February 19, 2019, with Defendants' reply due five days later.

3.      On March 1, 2019, after the deadline had expired, Plaintiff requested leave to file its Response *nunc pro tunc*. Defendants agreed to the extension and requested 20 days from the Response date to file their reply. Plaintiff agreed.

4.      Plaintiff filed its Response on March 1, 2019. Defendants will need additional time to analyze and evaluate Plaintiff's response and to prepare their reply.

5.      Defendants respectfully request an extension through and including March 21, 2019 in which to file their reply to Plaintiff's Response.

6.      This motion is made in good faith and not for the purposes of delay.

7.      Plaintiff's Counsel agrees to the requested extension.

8.      No prejudice will result because the motion is unopposed.

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, mtodd@forthepeople.com, mdyenson@forthepeople.com; Spencer H. Silverglate, Esquire, ssilverglate@cspalaw.com; mpedraza@cspalaw.com; Francisco Ramos, Jr., Esquire, framos@cspalaw.com, cdeleon@cspalaw.com; Shannon P. McKenna, Esquire, smckenna@cspalaw.com, aford@cspalaw.com; on this 5th day of March, 2019.

/s/ Richards H. Ford
Richards H. Ford, Esquire
Florida Bar No. 288391
Raychel A. Garcia, Esquire
Florida Bar No. 091096
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Silver Springs Shores Presbyterian
Church, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

- 2 -

Highly Confidential

81910-5/546457

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.,                                               CASE NO. 2016-CA-000167

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

      Defendant.

_____/

### AGREED ORDER GRANTING AND SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT

      THIS CAUSE having come before the Court upon Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.S, Unopposed Motion for Extension of Time to File Their Reply to Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint dated March 4, 2019, and the Court having reviewed the Unopposed Motion, having been advised of agreement by and between counsel for parties, and being otherwise duly advised in the premises, it is hereby

      ORDERED AND ADJUDGED that Silver Springs Shores Presbyterian Church, Inc.'s Motion is GRANTED. Silver Springs Shores Presbyterian Church, Inc. shall file its reply to

Highly Confidential

CASE NO. 2016-CA-000167

Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint on or before March

21, 2019.

DONE AND ORDERED at Ocala, Marion County, Florida, this _____ day of

_____, 2019.

_____
Honorable Edward L. Scott

Copies Furnished to:

Paul L. SanGiovanni, Esquire
Morgan & Morgan, P.A.
Post Office Box 4979
Orlando, FL  32802-4979

Spencer H. Silverglate, Esquire
Clarke Silverglate Campbell Williams & Montgomery
799 Brickell Plaza, 9th Floor
Miami, FL 33131

Francisco Ramos, Jr., Esquire
Clark, Silverglate, Campbell, Williams & Montgomery
799 Brickell Plaza, Suite 900
Miami, FL 33131

Shannon P. McKenna, Esquire
Clarke Silvergate, PA
799 Brickell Plaza, Suite 900
Miami, FL  33131

Richards H. Ford
WICKER SMITH O'HARA McCOY & FORD, P.A.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801

2

Highly Confidential

81910-5/RAG/542687

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.,                                                CASE NO. 2016-CA-000167

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation authorized
to do business in Florida,

      Defendant.

_____/

## DEFENDANT'S, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

      Defendant, SILVER SPRINGS PRESBYTERIAN SHORES CHURCH, INC. ("Silver Springs"), by and through the undersigned counsel and pursuant to the applicable Florida Rules of Civil Procedure, hereby files this Reply to Plaintiff's Response in Opposition to Defendants' Motions to Dismiss Plaintiff's Amended Complaint, and in support thereof states as follows:

      1.     This is a negligence action arising out of the alleged sexual assault of A.A. by George Fout at various times between 2004 and 2012 at the residence of George Fout. *See* Pl.'s Amended Compl. ¶¶ 46–53.

      2.     Plaintiff argued that this Defendant, Silver Springs, had a special relationship with A.A., which purportedly gave rise to a duty for this Defendant to protect A.A. from reasonably foreseeable harm. Plaintiff asserts that this Defendant breached the aforementioned duty by failing to

Highly Confidential

BSA-PLAN_01422887

SA 1141

CASE NO. 2016-CA-000167

protect A.A. from the criminal acts of George Fout, which ultimately constituted negligence. *Id.* at ¶¶ 57–65.

3.      Plaintiff concludes that this Defendant breached its fiduciary duty to Plaintiff, and should be vicariously liable for the actions and omissions of George Fout and Steve Fout without providing a factual basis to support this improper legal conclusion. *Id.* at ¶¶ 93–99, 100–106, 107–111, 113 - 118.

4.      On August 20, 2018, Silver Springs filed a Motion to Dismiss stating Plaintiff had not alleged any facts that establish a duty on the part of Silver Springs nor had Plaintiff alleged any facts that establish vicarious liability on Silver Springs for the actions of either George Fout or Steve Fout.

5.      On October 8, 2018, Plaintiff filed a Response and Incorporated Memorandum of the Law in Opposition to Defendant's Motion to Dismiss (hereinafter referred to as the "Response").

6.      As provided in Silver Springs' Motion to Dismiss, there are no allegations in Plaintiff's Amended Complaint that the alleged abuse took place on this Defendant's premises, nor are there any allegations that the abuse took place during an event associated with this Defendant.

7.      In Plaintiff's Response, Plaintiff fails to point to any factual allegations within the four corners of the Complaint that would save the case from dismissal. Instead, Plaintiff stated twice that "if required, Plaintiff is able to supplement the allegations" by providing additional information to supplement the Complaint. *See* Pl.'s Resp. pp. 3 and Plaintiff has yet to supplement these allegations, however, the standard at the Motion to Dismiss stage is what is alleged in the Complaint.

8.      Plaintiff asserts that the matters raised by the Defendants are not matters to be addressed at the pleading stage. *See* Pl.'s Resp. pp. 7. However, Florida courts have made it clear that litigants must state their pleadings with sufficient particularity for a defense to be prepared.  Plaintiff

- 2 -

BSA-PLAN_01422888

SA 1142

CASE NO. 2016-CA-000167

has failed to provide facts to support the contention that Silver Springs owed a special duty to A.A. based on a special relationship and, as such, has failed to state their pleading with sufficient particularity.

9.      In Plaintiff's Response, Plaintiff cites to *Nova Southeastern University vs. Gross* to demonstrate that a special relationship between an institutional party and an individual member is well recognized. *Nova Southeastern University vs. Gross*, 758 So. 2d 86 (Fla. 2000)*; also see* Pl.'s Resp. pp. 13. Yet, in *Nova*, the university student was injured during a school related activity that was assigned to her by the university. Therefore, the facts in *Nova* that led to a finding of a special relationship are entirely different from the facts in the present matter. Here, the extent of Silver Springs' involvement with A.A. and Troop 448 was limited to providing A.A. and the rest of Troop 448 with a facility to be used for troop meetings, Silver Springs did not assign A.A. to any Troop or troop activity. Moreover, the Complaint fails to allege any facts that would establish the requisite special relationship.

10.     Plaintiff also cites to *C.J.C. v. Corp. of Catholic Bishop of Yakima* and states that churches are routinely held to have a "special relationship" toward minors who are sexually abused. *C.J.C. v. Corp. of Catholic Bishop of Yakima,* 985 P.2d 262 (Wash. 1999); Pl.'s Resp. pp. 13. Although the Court in *C.J.C.* did find a "special relationship" between the church and the children, the facts in *C.J.C* are significantly different that those alleged in the Complaint. In *C.J.C.*, the abuser was a deacon of the church. As a prominent member of the church, the Court stated a jury could reasonably find his position in the Church was a causal factor in the resulting harm. *Id.* Here, the Fouts were not leaders, employees, or even individuals holding positions in Silver Springs Shores Presbyterian Church, nor is this alleged in the Complaint. Their presence at the church was solely due to their position as scoutmaster and assistant scoutmaster, respectively. Therefore, Plaintiff's

- 3 -

Highly Confidential

CASE NO. 2016-CA-000167

argument that merely because Silver Springs is a church, they hold a special relationship with all children who are present on the church premises, even for reasons completely unrelated to the church itself, is unsound.

11.     In Plaintiff's Amended Complaint and Plaintiff's Response, Plaintiff alleges that the Defendants are vicariously liable for the sexual battery by George Fout and the breach of fiduciary duty of Steve Fout, respectively. Plaintiff further alleges that George Fout and Steve Fout were acting as agents on behalf of the Defendants. *See* Pl.'s Amended Compl. ¶¶ 109, 115, 121, 127; Pl.'s Resp. pp. 19. This Defendant, Silver Springs, is an entity that is separate and distinct from Defendant, BSA, and as such, Plaintiff's allegations should have been directed at each Defendant individually. Irrespective of this inaccuracy, Plaintiff's Amended Complaint and Response fails to allege any facts to establish an agency relationship between this specific Defendant, Silver Springs, and the Fouts. The Fouts were not members, employees, or even volunteers at the church. The Fouts were not acting on the church's behalf nor was the church authorized to accept or control any of their actions, as required to establish agency. Therefore, Silver Springs is not vicariously liable for the Fouts' actions.

12.     Additionally, the court in *Folwell v. Bernard By and Through Bernard*, 477 So.2d 1060, 1062 (Fla. 2d DCA 1985) discussed agency. (The Court concluded that "where vicarious liability is sought to be imposed upon one of two ostensibly interrelated entities through the ordinary principles of agency, the imposition of such liability is unwarranted in the absence of evidence revealing that one entity, the purported principal, dominates and controls the other.").

13.     Notably, "the existence of an agency relationship is a question of fact for the jury," *Orlando Executive Park, Inc. v. Robbins,* 433 So.2d 491 (Fla.1983); *Cleveland Compania, Etc. v. Logothetis,* 378 So.2d 1336 (Fla. 2d DCA 1980); *McCabe v. Howard,* 281 So.2d 362 (Fla. 2d DCA

- 4 -

Highly Confidential

BSA-PLAN_01422890

SA 1144

CASE NO. 2016-CA-000167

1973), "**unless the evidence is susceptible of only one interpretation**." *Jaar v. University of Miami,*

474 So.2d 239, 242 (Fla. 3d DCA 1985).

14.     Here, the Plaintiff has again failed to allege specific facts which indicate the presence

of an agency relationship.

15.     Therefore, at the very least, Plaintiff has failed to allege facts sufficient to hold this

specific Defendant, Silver Springs, liable under the theory of vicarious liability.

16.     As in *Folwell*, even if this Court chooses to acknowledge any alleged agreement,

whether memorialized or not, between the Defendants, Plaintiff has not alleged any facts sufficient to

show that Silver Springs exercised any degree of control over the Boy Scouts of America ("BSA"),

let alone domination of the BSA as a subordinate entity.

17.     The evidence and allegations are thus, "susceptible of only one interpretation," that

no agency relationship was created between Silver Springs and BSA. Dismissal of Plaintiff's

Amended Complaint is therefore, warranted.

18.     Overall, both Plaintiff's Amended Complaint and Plaintiff's Response fail to address

each Defendant's respective duties, relationships and wrongdoings individually. Instead, Plaintiff

joins all three Defendant's into one consolidated party and makes arguments against other

Defendants in their Response filed in Opposition to Silver Springs' Motion. For instance, in the

Response, Plaintiff refers to arguments made by Boy Scouts of America, a different Defendant, and

quotes the purpose of Boy Scouts of America to refute those arguments, even though such arguments

are irrelevant in Plaintiff's claims against this specific Defendant, Silver Springs.

19.     Finally, Plaintiff's claims are barred by the statute of limitations. Plaintiff's Amended

Complaint was filed with this Court on December 14, 2018. All claims against Silver Springs are

founded on negligence and the statute of limitations for negligence actions is 4 years.  Fla. Stat. §

- 5 -

Highly Confidential

CASE NO. 2016-CA-000167

95.11. Plaintiff alleges that sexual abuse occurred in 2012, but fails to provide specific dates or instances of the alleged abuse in neither Plaintiff's Complaint nor Plaintiff's Response.

20.     Plaintiff also asserts the statutes of limitations runs from the time of the last tortious act. *See DEI Quarry vs. Gateway Estates,* 249 So. 3d 1287 (Fla. 1st DCA 2018); *see also* Pl.'s Resp. pp. 20. Even if this is true, it is ineffective in providing support for Plaintiff's claims because Plaintiff has not alleged any specific instances of sexual abuse occurring in 2012.

WHEREFORE, Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., respectfully requests that this Court enter an Order dismissing all allegations contained in the Plaintiff's Amended Complaint against it, for the reasons set forth herein, and additionally requests that this Court strike Plaintiff's various claims for prejudgment interest.

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, mtodd@forthepeople.com, mdyenson@forthepeople.com; Spencer H. Silverglate, Esquire, ssilverglate@cspalaw.com; mpedraza@cspalaw.com; Francisco Ramos, Jr., Esquire, framos@cspalaw.com, cdeleon@cspalaw.com; Shannon P. McKenna, Esquire, smckenna@cspalaw.com, aford@cspalaw.com; on this 7th day of March, 2019.

/s/ Richards H. Ford
Richards H. Ford, Esquire
Florida Bar No. 288391
Raychel A. Garcia, Esquire
Florida Bar No. 091096
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Silver Springs Shores Presbyterian Church, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

- 6 -

Highly Confidential

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                             CASE NO. 2016-CA-000167

      Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

      Defendants.

_____/

**AGREED ORDER GRANTING BSA AND NORTH FLORIDA COUNCIL'S
UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLY
TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT**

THIS CAUSE having come before the Court upon Defendants', Boy Scouts of America

("BSA") and North Florida Council, Inc. ("North Florida Council"), Unopposed Motion for

Extension of Time to File Their Reply to Plaintiff's Response to Defendants' Motion to Dismiss

Amended Complaint dated March 4, 2019, and the Court having reviewed the Unopposed Motion,

having been advised of agreement by and between counsel for parties, and being otherwise duly

advised in the premises, it is hereby

1

Highly Confidential

BSA-PLAN_01422893

CASE NO. 2016-CA-000167

ORDERED AND ADJUDGED that BSA and Council's Motion is GRANTED.  BSA and

Council shall file their reply to Plaintiff's Response to Defendants' Motion to Dismiss Amended

Complaint on or before March 21, 2019.

DONE AND ORDERED in Chambers in Marion County, Florida this 11th day of March,

2019.

*Edward L. Scott*
_____
EDWARD L. SCOTT
CIRCUIT JUDGE


cc:     Counsel for Plaintiff:
        Paul L. SanGiovanni,  psangi@forthepeople.com, mtodd@forthepeople.com

        Counsel for BSA and Council:
        Spencer H. Silverglate, ssilverglate@cspalaw.com, mpedraza@cspalaw.com
        Francisco Ramos, Jr., framos@cspalaw.com, sdelosreyes@cspalaw.com
        Shannon P. McKenna, smckenna@cspalaw.com, aford@cspalaw.com

        Counsel for Silver Springs Shores Presbyterian Church, Inc.:
        Rachel Garcia, rgarcia@wickersmith.com, ndurham@wickersmith.com

Highly Confidential

81910-5/546457

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.,                                          CASE NO. 2016-CA-000167

     Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

     Defendant.

_____/

## AGREED ORDER GRANTING AND SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE THEIR REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT

     THIS CAUSE having come before the Court upon Defendant, SILVER SPRINGS

SHORES PRESBYTERIAN CHURCH, INC.S, Unopposed Motion for Extension of Time to

File Their Reply to Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint

dated March 4, 2019, and the Court having reviewed the Unopposed Motion, having been

advised of agreement by and between counsel for parties, and being otherwise duly advised in

the premises, it is hereby

     ORDERED AND ADJUDGED that Silver Springs Shores Presbyterian Church, Inc.'s

Motion is GRANTED. Silver Springs Shores Presbyterian Church, Inc. shall file its reply to

Highly Confidential

CASE NO. 2016-CA-000167

Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint on or before March 21, 2019

DONE AND ORDERED at Ocala, Marion County, Florida, this _11_ day of _March_, 2019.

_Edward L. Scott_
Honorable Edward L. Scott

Copies Furnished to:

Paul L. SanGiovanni, Esquire
Morgan & Morgan, P.A.
Post Office Box 4979
Orlando, FL  32802-4979

Spencer H. Silverglate, Esquire
Clarke Silverglate Campbell Williams & Montgomery
799 Brickell Plaza, 9th Floor
Miami, FL 33131

Francisco Ramos, Jr., Esquire
Clark, Silverglate, Campbell, Williams & Montgomery
799 Brickell Plaza, Suite 900
Miami, FL 33131

Shannon P. McKenna, Esquire
Clarke Silvergate, PA
799 Brickell Plaza, Suite 900
Miami, FL  33131

Richards H. Ford
WICKER SMITH O'HARA McCOY & FORD, P.A.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801

2

BSA-PLAN_01422896

SA 1150

IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF
AMERICA NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS
OF AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH,
INC.,

      Defendants.

_____/

## ORDER ON PLAINTIFF's *UNOPPOSED* MOTION LEAVE TO FILE CONSOLIDATED RESPONSE TO MOTION TO DISMISS AND ALTERNATIVELY MOTION FOR LEAVE TO AMEND

THIS CAUSE having come on before the Court on Defendant's Motion for

Leave to File Consolidated response on March 1, 2019 and the Court having been

advised of agreement by and between counsel for parties, it is hereby

ORDERED AND ADJUDGED that:

1.     Plaintiff's Motion for Leave to File is granted;

Highly Confidential

BSA-PLAN_01422897

SA 1151

2.      The Plaintiff's Response and Incorporated Memorandum of Law in

Opposition to Defendant's Motion to Dismiss First Amended Complaint, and its

Alternative Motion, is deemed timely filed.

3.      The Defendants are granted supplemental time to file and serve a

reply to the Response as provided by separate Orders.

DONE AND ORDERED in Chambers, in Marion County, Florida this 14th

day of March, 2019.

_Edward L. Scott_

EDWARD L. SCOTT

JUDGE OF THE CIRCUIT COURT

Copies furnished to:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail:  PSangi@forthepeople.com
**Counsel for Plaintiff**

Spencer H. Silverglate
Francisco Ramos, Jr.
Shannon P. McKenna
Clarke Silverglate, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
E-mail: ssilverglate@cspalaw.com
E-mail: framos@cspalaw.com
E-mail: smckenna@cspalaw.com
**Counsel for Defendants, Boy Scouts of America and North Florida Council,
Inc.**

Raychel Garcia
Wicker Smith O'Hara McCoy & Ford P.A.
390 North Orange Avenue, Suite 1000
Orlando, Florida 32801
E-mail: RGarcia@wickersmith.com
**Counsel for Defendant, Silver Springs Shores Presbyterian Church, Inc.**

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,

      Plaintiff,

v.

THE BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, the
NORTH FLORIDA COUNCIL,
INC., BOYS SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, and
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,
a corporation authorized to do
business in Florida,

      Defendants.

_____/

CASE NO. 2016-CA-000167

## BSA AND COUNCIL'S REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants, The Boy Scouts of America ("BSA") and North Florida Council, Inc. ("Council"), reply to Plaintiff's Response and Incorporated Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint and, in the Alternative, Motion for Leave to Amend First Amended Complaint ("Response").

### Introduction

Plaintiff argues that BSA and Council should be held liable for volunteer Assistant Scoutmaster George Fout's ("Fout") alleged sexual misconduct perpetrated solely in the confines of Fout's bedroom and unrelated to any Scouting activity. As demonstrated in BSA and Council's Motion to Dismiss Amended Complaint and Memorandum of Law ("Second Motion

Highly Confidential

to Dismiss"), Defendants—as a matter of law—are not responsible for a local volunteer's conduct unrelated to Scouting activities.

After BSA and Council highlighted this shortcoming in the original Complaint, Plaintiff filed his First Amended Complaint, asserting for the first time that: "On or about July 2009, A.A. was attending a Scouting event sponsored by BSA, administered by BSA and on BSA property. During that campout week George Fout approached A.A. in his bedroom. During this encounter George Fout touched A.A.'s penis." (Compl. ¶ 51). As demonstrated in the Second Motion to Dismiss, this new allegation is undermined by Plaintiff's *own testimony* in George Fout's criminal proceeding that the abuse occurred *only* in the confines of Fout's personal bedroom, unrelated to Scouting activity. (Trial Tr. vol. I, at 1, 63-64, *State of Fla. v. Fout*, No. 2012-621-CF-A-Y (Fla. 5th Cir. Ct. Nov. 1, 2012) (Exhibit A)). The new, inconsistent allegation should be disregarded as a sham pleading.

Even if Plaintiff were permitted to advance this new allegation, however, it would be time barred based on the face of the First Amended Complaint. Accordingly, the entire action is now ripe for dismissal with prejudice.

## Discussion

### A.   Plaintiff's New Allegation Should be Disregarded as Sham Pleading.

Plaintiff contends in his Response that the polar inconsistency between his prior sworn testimony in Fout's criminal trial and his allegations in this case cannot be brought to the Court's attention at this stage in the proceedings.[1] This is flat wrong. Extrinsic evidence *must* be considered when ruling on a defendant's motion to strike a complaint as a sham pleading. *See*

---

[1] Plaintiff also criticized BSA and Council for not seeking judicial notice of the official transcript of his testimony. Contemporaneously herewith BSA and Council file a Request for Judicial Notice, which requests that the Court judicially notice Exhibit A attached to the Second Motion to Dismiss and Exhibit A attached to the instant Reply.

Highly Confidential

BSA-PLAN_01422901
**SA 1155**

Fla. R. Civ. P. 1.150(a); *see also Reyes ex rel. Barcenas v. Roush*, 99 So. 3d 586, 590 (Fla. 2d DCA 2012) ("Rule 1.150(a) states that the trial court shall take evidence of the respective parties.") (internal citation omitted); *Miller v. Nelms*, 966 So. 2d 437, 440 (Fla. 2d DCA 2007) ("[W]e reject any notion that, absent a stipulation of the parties, the circuit court could rule on a motion to strike a complaint as a sham by merely examining the complaint.").

The Court's consideration of relevant facts outside the four corners of the First Amended Complaint is necessary to determine whether Plaintiff's new allegation constitutes a sham pleading and a fraud on the court. *See Furst v. Blackman*, 744 So. 2d 1222, 1224 (Fla. 4th DCA 1999) ("The court's power to strike a pleading as a sham or to dismiss a case where a fraud has been perpetrated on the court both derive from the same source, the court's 'inherent . . . authority . . . to prevent an abuse of its processes.'" (quoting *Rhea v. Hackney,* 117 Fla. 62, 72, 157 So. 190, 194 (1934))).

**B.    Plaintiff's New Allegation is Time Barred in Any Event.**

Even if the Court were to consider Plaintiff's new and only allegation of abuse during a Scouting event, it would be time barred.  Florida Statute section 95.11(9) provides an indefinite limitations period only for an action constituting *sexual battery* under Florida Statute section 794.011 on a victim under the age of 16.  Because Plaintiff's new allegation falls outside the statutory definition of "sexual battery," it is time barred and not subject to tolling.

**1.    The new allegation falls outside the statutory definition of "sexual battery."**

Plaintiff's new revelation of a purported one-and-only Scouting related incident of abuse, though convenient, falls squarely outside the statutory definition of "sexual battery" and is therefore time barred.  *See* § 794.011(1)(h) (defining sexual battery as "oral, anal, or vaginal

Highly Confidential

penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any object.").

In *Green v. State*, the Second District Court of Appeal deciphered section 794.011(1)(h) and articulated the four ways by which a sexual battery can be committed:

> The statute prohibits:
>
> (1) "Oral, anal, or vaginal penetration by the sexual organ of another." **Translation: *It is illegal for a man to place his penis inside the* mouth, anus, or *vagina of a victim.***
>
> (2) "Oral, anal, or vaginal union with the sexual organ of [the defendant]." **Translation: It is illegal for a man to touch the mouth, anus or vagina of the victim with his penis, and it is illegal for a woman to touch the mouth, anus or vagina of the victim with her "sexual organ."**
>
> (3) "Oral, anal, or vaginal union with the sexual organ of [the victim]." **Translation: It is illegal for a man to touch the sexual organ of the victim with his mouth or anus, and *it is illegal for a woman to touch the sexual organ of the victim with her* mouth, anus, or *vagina.***
>
> (4) "The anal or vaginal penetration of another by any other object." **Translation: It is illegal for a man or a woman to place any object inside the anus or vagina of the victim.**

765 So. 2d 910, 913 (Fla. 2d DCA 2000) (bold emphasis added; italics emphasis in original) (citing *Richards v. State*, 738 So. 2d 415 (Fla. 2d DCA 1999)).

The union of an individual's hand or finger with another's penis—as alleged in the First Amended Complaint—is not a "sexual battery" under section 794.011. *See Richards*, 738 So. 2d at 418 ("[I]t is clear that a defendant's finger is an 'other object,' which must penetrate and not merely have union with the relevant part."); *see also Watkins v. State*, 48 So. 3d 883, 884 (Fla. 1st DCA 2010) (explaining that section 794.011 "is not violated by proof of union with an object in the absence of penetration" and that Florida "[c]ase law has made it clear that evidence of

Highly Confidential

union ('on') cannot suffice to prove penetration ('in').");  *Wallis v. State*, 548 So. 2d 808, 810 (Fla. 5th DCA 1989) ("[T]he mere 'union' of the defendant's hand or finger "with" the victim's vagina does not violate [section 794.011].").

Because the new 2009 allegation does not qualify as "sexual battery" under section 794.011(1)(h), the incident does not enjoy the indefinite limitations period under section 95.11(9).

### 2.   The statute of limitations *can* be considered on a motion to dismiss.

Plaintiff's Response fails to address the point that the 2009 allegation does not meet the statutory definition of sexual battery. Instead, Plaintiff asserts that the statute of limitations cannot be considered on a motion to dismiss.  This is incorrect.  The statute of limitations can be considered on a motion to dismiss if its applicability is clear from the face of the complaint.  *See Green v. Palatka Daily News*, 108 So. 3d 739, 740 (Fla. 5th DCA 2013) (a court will dismiss a complaint based on the statute of limitations "if the applicability of the defense is clear from the face of the complaint").

Based on the face of the First Amended Complaint, the 2009 incident is time barred because, taking the allegation as true, it does not constitute a sexual battery as a matter of law.

### 3.   The "last tortious act" argument does not rescue the new allegation from being time barred.

Plaintiff claims that the relevant "statute of limitations runs from the time of the *last* tortious act" occurring in approximately 2012.  (Pl.'s Resp. at 19-20) (emphasis in original). However, the "last tortious act" analysis is limited to the 2009 incident because it is the ***first, last, and only*** tortious act allegedly connected to Scouting activity.  To be timely, that claim had to be brought by 2013. *See* § 95.11(3)(a) (providing a four-year statute of limitations for "[a]n action founded on negligence"); *see also Amato v. City of Miami Beach*, 208 So. 3d 235, 238

Highly Confidential

(Fla. 3d DCA 2016) ("A breach of fiduciary duty claim may be based on negligence or intentional conduct, but under either alternative, the statute of limitations is four years.") (citing section 95.11(3)). The lawsuit was not filed until 2016—three years too late.

**C.    Plaintiff's Remaining Claims Should be Dismissed Because They are Unconnected to Scouting Activity.**

Plaintiff's other arguments are equally meritless. Contrary to Plaintiff's assertion, the presence of a legal duty is a question of law which the court can decide on a motion to dismiss. *See Knight v. Merhige*, 133 So. 3d 1140, 1145 (Fla. 4th DCA 2014) (***motion to dismiss*** properly granted because "there is no duty to control the conduct of a third person to prevent [that person] from causing physical harm to another."). The rule is no different in the context of alleged sexual abuse. *See K.M. ex rel. D.M. v. Publix Super Markets, Inc.*, 895 So. 2d 1114, 1120 (Fla. 4th DCA 2005) (***motion to dismiss*** properly granted where grocery store owed no duty to employee's child who was sexually abused by co-employee who babysat the child at his home because the incident arose from a personal relationship outside the employment context).

Taking the allegations of the First Amended Complaint as true, Defendants owed Plaintiff no legal duty of protection grounded in a special relationship because the alleged sexual abuse (save the new, inconsistent, and time barred July 2009 camping allegation) was unrelated to Scouting activity. (Amend. Compl. ¶¶ 54, 55, 70, 77, 84, 91, 98, 105, 117, 123, 129). As a matter of law, BSA and Council are not liable for Fout's criminal acts unconnected to Scouting activities. *See, e.g., KM ex rel D.M.,* 895 So. 2d 1114 (Fla. 4th DCA 2005); *Archbishop Coleman F. Carroll High School, Inc. v. Maynoldi,* 30 So. 3d 533 (Fla. 3d DCA 2010) (holding that school owed no duty to student injured in car accident after consuming alcohol at private graduation party because accident took place off-campus after non-school sponsored event).

Highly Confidential

Plaintiff relies on the same distinguishable case law to assert that BSA and Council owed a general duty to act based on the purported existence of a "special relationship." For example, in support of his erroneous undertaker doctrine argument, Plaintiff again cites *Nova Southeastern University v Gross*, 758 So. 2d 86, 89-90 (Fla. 2000), to argue that liability should be imposed on BSA and Council for Fout's misconduct perpetrated in the confines of his own home and unrelated to Scouting activities. However, in *Nova Southeastern University*, the court held that liability could be imposed on a university for a student's off-campus injuries because the incident occurred ***at a school-related activity***. *Id.* at 89-90. In contrast, Plaintiff is unable to allege that ***any*** non-time barred abuse occurred in connection with a Scouting activity.

Plaintiff's reliance on *C.J.C. v. Corporation of the Catholic Bishop of Yakima,* 985 P.2d 262 (Wash. 1999), is similarly misplaced. In *C.J.C.,* unlike here and unlike *K.M.* and *Archibishop Coleman,* a church deacon babysat the victims so that their father could travel ***on church business.*** The church knew that the deacon was babysitting the victims off-site, and, most importantly, the church had prior warning of the deacon's alleged propensity to molest children. *Id.* at 275-77. Under these circumstances, none of which are present here, the court held that the church owed a duty to prevent harm. *Id.* at 276, 276 n.14.

Plaintiff again makes the eccentric argument that Defendants owed him a duty based on Fout's knowledge of his ***own*** abusive acts and his father Steve Fout's ***constructive knowledge*** of same. "It is axiomatic that knowledge of the agent constitutes knowledge of the principal [only] as long as the agent received such knowledge while acting within the scope of his authority." *Brooks Tropicals, Inc. v. Acosta,* 959 So. 2d 288, 295 (Fla. 3d DCA 2007) (quoting *Bertram Yacht Yard, Inc. v. Florida Wire & Rigging Works, Inc., 177* So. 2d 365 (Fla. 3d DCA 1965)). Here, no duty can be imposed based on George Fout's knowledge of his own alleged abusive

Highly Confidential

acts, which furthered only his own prurient interest and were unrelated to the Scouting program. *See Agriturf Mgmt., Inc. v. Roe,* 656 So. 2d 954, 955 (Fla. 2d DCA 1995); *First Bond & Mortgage Co. v. Yancey,* 139 So. 597, 600 (Fla. 1932). Similarly, no duty can be imposed based on Steve Fout's alleged constructive knowledge of his son's acts; only an agent's actual knowledge may be imputed to a principal. *Id.*

Also as a matter of law, no fiduciary duty existed between Plaintiff and Defendants. Unlike *Doe v. Evans,* 814 So. 2d 370 (Fla. 2002), on which Plaintiff relies, the instant case does not involve a marital counseling relationship or any other fiduciary relationship. And in stark contrast to *Doe*, where the inappropriate conduct took place in connection with the marital counseling relationship, Fout's alleged abuse did not take place at any Scouting activity. Rather, the alleged sexual misconduct arose from Plaintiff's personal visits and admittedly unsanctioned sleepovers at Fout's home.

Plaintiff's attempt to distinguish *Roe v. Boy Scouts of Am., Corp.,* 2012 WL 3933184, at *7 (Conn. Super. Ct. Aug. 16, 2012), *aff'd sub nom., Roe No. 1 v. Boy Scouts of Am. Corp.,* 84 A.3d 443 (Conn. App. Ct. 2014), is similarly unavailing. *Roe* held that a fiduciary relationship **does not exist** between BSA and Council, on the one hand, and an individual troop member, on the other. That the perpetrator in *Roe* was the victim's stepfather had no bearing on the court's decision. The absence of a familial relationship between Plaintiff and George Fout does not create a fiduciary duty.

Plaintiff also fails to distinguish the numerous cases regarding Defendants' lack of vicarious liability. The cases universally hold that a principal is not liable for the independent, criminal acts of an agent. *See Goss v. Human Services Associates, Inc.,* 79 So. 3d 127, 132 (Fla. 5th DCA 2012); *Special Olympics Florida, Inc.,* 6 So. 3d at 665-666 (Fla. 5th DCA 2009);

Highly Confidential

*Elders v. United Methodist Church,* 793 So. 2d 1038, 1041 (Fla. 3d DCA 2001); *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M,* 783 So. 2d 353, 355 (Fla. 3d DCA 2001); *Mason v. Fla. Sheriffs' Self—Ins. Fund,* 699 So. 2d 268 (Fla. 5th DCA 1997); *Agriturf Mgmt., Inc. v. Roe,* 656 So. 2d 954, 955 (Fla. 2d DCA 1995).

### Conclusion

Based on the foregoing reasons and those previously asserted, BSA and Council respectfully request that the Amended Complaint be dismissed with prejudice.

Respectfully submitted by,

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
Telephone: (305) 377-0700
Facsimile:  (305) 377-3001

By: /s/Spencer H. Silverglate
    Spencer H. Silverglate
    Florida Bar No. 769223
    ssilverglate@cspalaw.com
    mpedraza@cspalaw.com
    Francisco Ramos, Jr.
    Florida Bar No. 114766
    framos@cspalaw.com
    socd@cspalaw.com
    Shannon P. McKenna
    Florida Bar No. 385158
    smckenna@cspalaw.com
    aford@cspalaw.com

Highly Confidential

BSA-PLAN_01422908
SA 1162

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 21st day of March, 2019 to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
    Spencer H. Silverglate

449751

Highly Confidential

BSA-PLAN_01422909

**SA 1163**

IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

CASE NO.   42-2012-CF-000621-A-Y

STATE OF FLORIDA,

       Plaintiff,

vs.                       VOLUME I of II

GEORGE ROBERT FOUT,

       Defendant.
- - - - - - - - - - - - - - - /

ORIGINAL

RECEIVED
2013 JAN 10  AM 10: 12
DAVID R. ELLSPERMANN
CLERK CIRCUIT COURT
MARION COUNTY, FL

*** TRANSCRIBED FROM ECR RECORDING ***

PROCEEDINGS:    Jury Trial

BEFORE:        HONORABLE BRIAN LAMBERT

TRANSCRIBED BY:   Frances L. Moehle

DATE AND TIME:   November 1, 2012, 10:09 a.m.

PLACE:        Marion County Courthouse
                110 Northwest First Avenue
                Ocala, Florida

EXHIBIT
A

Joy Hayes Court Reporting
(352) 726-4

UNOFFICIAL DOCUMENT

Highly Confidential

1    Q.   When you say, his room, who are we talking about?

2    A.   George.

3    Q.   Is this George's camera?

4    A.   Yes.

5    Q.   Is this the same camera that George used to take

6    pictures of you while you were naked?

7    A.   Yes.

8         MR. AVEN:   Your Honor, at this time the State would

9    move what's been marked as State's Exhibit B into

10   evidence as State's Exhibit 2.

11        THE COURT:   Any objection?

12        MR. POLAK:   No, Your Honor.

13        THE COURT:   Admitted without objection, State's

14   Exhibit Number 2.

15        MR. AVEN:   And, Your Honor, at this time the State

16   would request permission to publish.

17        THE COURT:   Permission granted.

18   BY MR. AVEN:

19   Q.   Where did all of these events that we've talked

20   about -- what county were you in when they happened?

21   A.   Marion.

22   Q.   Where were you at; whose house?

23   A.   The Fouts'.

24   Q.   Did anything happen at your house with you and

25   George --

Highly Confidential

1    A.   Yes.

2    Q.   -- sexually?

3    A.   Yes.

4    Q.   Is that also in Marion County?

5    A.   Yes.

6    Q.   Other than your house, George's house, were there

7  any other locations that things happened?

8    A.   No.

9    Q.   Why didn't you go to someone and tell them that

10  this was happening?

11    A.   'Cause he told me not to tell anyone, so I kept my

12  mouth shut.

13    Q.   Did George give you any gifts?

14    A.   Yes.

15    Q.   What gifts did George give you?

16    A.   Christmas presents.

17    Q.   Did he give you any -- did you give George any

18  gifts?

19    A.   Yes.

20    Q.   What presents did you give him?

21    A.   A shirt.

22    Q.   Prior to you speaking with law enforcement, what

23  was your relationship with George?

24    A.   A friend.

25    Q.   Was he your scout leader?

Highly Confidential

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,

       Plaintiff,

v.

THE BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, the
NORTH FLORIDA COUNCIL,
INC., BOYS SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, and
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,
a corporation authorized to do
business in Florida,

       Defendants.

_____/

CASE NO. 2016-CA-000167

### BSA AND COUNCIL'S REQUEST FOR JUDICIAL NOTICE
### AND CONSIDERATION OF CERTAIN MATERIAL
### IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc. ("Council"), pursuant to sections 90.202-.204, Florida Statutes (2019), request this Court take judicial notice of the attached portion of Plaintiff's testimony in a prior criminal case in ruling on Defendants' Motion to Dismiss the Amended Complaint. (Trial Tr. vol. I, at 1, 63-64, *State of Fla. v. Fout*, No. 2012-621-CF-A-Y (Fla. 5th Cir. Ct. Nov. 1, 2012) (Exhibit A)).

Pursuant to section 90.202, a court may take judicial notice of "[r]ecords of any court of this state." § 90.202(6), Fla. Stat. (2019). *See Falls v. Nat'l Envtl. Products*, 665 So. 2d 320, 321 (Fla. 4th DCA 1995) ("[I]t is fitting and proper that a court should take judicial notice of other actions filed which bear a relationship to the case at bar.") (citation omitted); *see also Allstate*

1

Highly Confidential

*Ins. Co. v. Greyhound Rent-A-Car, Inc.*, 586 So. 2d 482, 483 (Fla. 4th DCA 1991) ("Judicial notice may be taken of all judicial records.") (citing § 90.202(6)).

Here, Defendants request this Court judicially notice the attached portion of the trial transcript from George Fout's criminal trial which took place in Marion County and which relates to the case at bar.  (Trial Tr. vol. I, at 1, 63-64, (Ex. A)).  The content of the transcript excerpt is "not subject to dispute" because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned."  § 90.202(12).  In addition to sections 90.202 and 90.203, this Court may also take judicial notice of a matter "upon its own motion" pursuant to section 90.204(1).  *See The Scripps Research Inst., Inc. v. The Scripps Research Inst.*, 916 So. 2d 988, 990 (Fla. 4th DCA 2005) ("Additionally, the court may take judicial notice of a matter on its own motion or may excuse the failure of a party requesting judicial notice to comply with the written notice provisions of section 90.203(1).") (internal citations omitted).

Based on the foregoing, Defendants respectfully request that the Court take judicial notice of the document specified above and consider the document in ruling on the Motion to Dismiss the Amended Complaint.

Dated: March 21, 2019

<div style="margin-left:40%">

Respectfully submitted by,

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
Telephone: (305) 377-0700
Facsimile:  (305) 377-3001

By: /s/Spencer H. Silverglate
    Spencer H. Silverglate
    Florida Bar No. 769223
    ssilverglate@cspalaw.com
    mpedraza@cspalaw.com
    Francisco Ramos, Jr.

</div>

<div style="text-align:center">

2
CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131  Phone: 305.377.0700  Fax: 305.377.3001  www.cspalaw.com

</div>

Highly Confidential

Florida Bar No. 114766
framos@cspalaw.com
Shannon P. McKenna
Florida Bar No. 385158
smckenna@cspalaw.com
aford@cspalaw.com

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the

Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 21st day of March,

2019 to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: <u>/s/Spencer H. Silverglate</u>
      Spencer H. Silverglate

448971

3
CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131   Phone: 305.377.0700   Fax: 305.377.3001   www.cspalaw.com

Highly Confidential

IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

CASE NO.   42-2012-CF-000621-A-Y

STATE OF FLORIDA,

      Plaintiff,

ORIGINAL

vs.                                        VOLUME I of II

GEORGE ROBERT FOUT,

      Defendant.

- - - - - - - - - - - - - - - - /

RECEIVED
2013 JAN 10  AM 10: 12
DAVID R. ELLSPERMANN
CLERK CIRCUIT COURT
MARION COUNTY, FL

*** TRANSCRIBED FROM ECR RECORDING ***

PROCEEDINGS:        Jury Trial

BEFORE:             HONORABLE BRIAN LAMBERT

TRANSCRIBED BY:     Frances L. Moehle

DATE AND TIME:      November 1, 2012, 10:09 a.m.

PLACE:              Marion County Courthouse
                    110 Northwest First Avenue
                    Ocala, Florida

EXHIBIT
A

Joy Hayes Court Reporting
(352) 726-4



Highly Confidential

1    Q.   When you say, his room, who are we talking about?

2    A.   George.

3    Q.   Is this George's camera?

4    A.   Yes.

5    Q.   Is this the same camera that George used to take

6    pictures of you while you were naked?

7    A.   Yes.

8        MR. AVEN:  Your Honor, at this time the State would

9    move what's been marked as State's Exhibit B into

10   evidence as State's Exhibit 2.

11       THE COURT:  Any objection?

12       MR. POLAK:  No, Your Honor.

13       THE COURT:  Admitted without objection, State's

14   Exhibit Number 2.

15       MR. AVEN:  And, Your Honor, at this time the State

16   would request permission to publish.

17       THE COURT:  Permission granted.

18   BY MR. AVEN:

19   Q.   Where did all of these events that we've talked

20   about -- what county were you in when they happened?

21   A.   Marion.

22   Q.   Where were you at; whose house?

23   A.   The Fouts'.

24   Q.   Did anything happen at your house with you and

25   George --

Highly Confidential

1   A.   Yes.

2   Q.   -- sexually?

3   A.   Yes.

4   Q.   Is that also in Marion County?

5   A.   Yes.

6   Q.   Other than your house, George's house, were there

7   any other locations that things happened?

8   A.   No.

9   Q.   Why didn't you go to someone and tell them that

10  this was happening?

11  A.   'Cause he told me not to tell anyone, so I kept my

12  mouth shut.

13  Q.   Did George give you any gifts?

14  A.   Yes.

15  Q.   What gifts did George give you?

16  A.   Christmas presents.

17  Q.   Did he give you any -- did you give George any

18  gifts?

19  A.   Yes.

20  Q.   What presents did you give him?

21  A.   A shirt.

22  Q.   Prior to you speaking with law enforcement, what

23  was your relationship with George?

24  A.   A friend.

25  Q.   Was he your scout leader?

Joy Hayes Court Reporting
(352) 726-4451

Highly Confidential

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,                                              CASE NO. 2016-CA-000167

     Plaintiff,

v.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOYS SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC., a corporation authorized
to do business in Florida,

     Defendants.

_____/

## NOTICE OF HEARING
(Specially Set for 1-Hour)

     YOU ARE HEREBY NOTIFIED that the above cause is set down for hearing before The

Honorable Edward L. Scott, located at the Marion County Judicial Center, 110 N.W. 1st Avenue,

Courtroom 2C, Ocala, Florida 34475, on **Wednesday, May 22, 2019, at 11:00 a.m.**, or as soon

thereafter as same may be heard on:

**BSA AND COUNCIL'S MOTION TO DISMISS
AMENDED COMPLAINT AND MEMORANDUM OF LAW**

**and**

**SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT AND
MOTION TO STRIKE PREJUDGMENT INTEREST**

     PLEASE BE GOVERNED ACCORDINGLY.

Page 1 of 3
CLARKE SILVERGLATE P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131  Phone: 305.377.0700  Fax: 305.377.3001  www.cspalaw.com

Highly Confidential

CASE NO. 2016-CA-000167

In accordance with the Americans with Disabilities Act of 1990, persons needing a special accommodation to participate in this proceeding should contact the Court ADA Coordinator no later than seven days prior to the proceeding.   Telephone (352) 401-6796 for assistance.

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900
Miami, Florida 33131
Telephone: (305) 377-0700
Facsimile: (305) 377-3001

By: /s/ *Francisco Ramos, Jr.*
      Spencer H. Silverglate
      Florida Bar No. 769223
      ssilverglate@cspalaw.com
      mpedraza@cspalaw.com
      Francisco Ramos, Jr.
      Florida Bar No. 114766
      framos@cspalaw.com
      acastro@cspalaw.com
      Shannon P. McKenna
      Florida Bar No. 385158
      smckenna@cspalaw.com

Highly Confidential

BSA-PLAN_01422920
SA 1174

CASE NO. 2016-CA-000167

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the

Florida E-Filing Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 16th day of

April, 2019, to all counsel of record.

Paul L. SanGiovanni
psangiovanni@forthepeople.com
mtodd@forthepeople.com
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
T: (407) 418-6041
F: (407) 245-3394
*Counsel for Plaintiff*

Richards H. Ford
rford@wickersmith.com
orlcrtpleadings@wickersmith.com
Raychel A. Garcia
rgarcia@wickersmith.com
ndurham@wickersmith.com
WICKER  SMITH  O'HARA  MCCOY  &
FORD, P.A.
390 N. Orange Ave., Suite 1000
Orlando, Florida 32801
T: (407) 843-3939
F: (407) 649-8118
*Counsel for Silver Springs Shores Presbyterian
Church, Inc.*

CLARKE SILVERGLATE, P.A.

By: */s/ Francisco Ramos, Jr.*
        Francisco Ramos, Jr.

Page 3 of 3
CLARKE SILVERGLATE P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131   Phone: 305.377.0700   Fax: 305.377.3001   www.cspalaw.com

Highly Confidential

BSA-PLAN_01422921
**SA 1175**

## IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

A.A.,

      Plaintiff,

Case No: 2016-CA-0167

vs.

THE BOY SCOUTS OF AMERICA NORTH
FLORIDA COUNCIL, INC., BOY SCOUTS
OF AMERICA, AND SILVER SPRINGS
SHORES PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

### ORDER ON DEFENDANT SILVER SPRING SHORES PRESBYTERIAN CHURCH, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND MOTION TO STRIKE PREJUDGMENT INTEREST
### AND
### ORDER ON DEFENDANTS BOY SCOUTS OF AMERICA AND NORTH FLORIDA COUNCIL, INC.'S MOTION TO DISMISS AMENDED COMPLAINT AND REQUEST FOR JUDICIAL NOTICE AND CONSIDERATION OF CERTAIN MATERIAL IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

**THIS CAUSE** came before the Court on Defendant Silver Springs Shores Presbyterian Church, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike Prejudgment Interest, filed on January 2, 2019, and Defendant Boy Scouts of America (hereinafter "BSA") and North Florida Council, Inc.'s (hereinafter "Council") Motion to Dismiss Amended Complaint and Memorandum of Law, filed on January 11, 2019. Plaintiff filed a Response on March 1, 2019. Defendant Silver Springs Shores Presbyterian Church, Inc.'s (hereinafter "Silver Springs Shores") filed a Reply on March 7, 2019. The Court considered the same, heard oral arguments, reviewed the court file, and being otherwise duly advised of the premises, finds as follows:

*Facts*

Plaintiff was a member Boy Scout, Steve Fout, was a volunteer Scoutmaster, and George Fout, was a volunteer Assistant Scoutmaster of BSA's Troop 448. Council, as an

Highly Confidential

BSA-PLAN_01422922

**SA 1176**

agent for BSA, has the right to control the local Boy Scouts of America troops directly. Plaintiff visited the home of Steve Fout, father of George Fout, multiple times over a several year time-span.   George Fout, lived with his father and sexually abused (hereinafter "Incidents") the Plaintiff during said visits.   It is unclear whether George Fout sexually abused Plaintiff at a BSA event or on BSA property.

### Defendant Silver Spring Shores' Presbyterian Church
### Motion to Dismiss Plaintiff's Amended Complaint

Silver Springs Shores Presbyterian Church (The Church), moves to dismiss Counts I – Negligence, IV – Breach of Fiduciary Duty, Counts VII – Vicarious Liability for Sexual Battery by George Fout, and VIII – Vicarious Liability for Negligence and Breach of Fiduciary Duty by Steve Fout, of Plaintiff's Amended Complaint for failure to establish that Silver Springs Shores (The Church) owed a duty to the Plaintiff and failure to establish vicarious liability, respectively.   Additionally, Silver Springs Shores asserts that the causes of actions are barred by the statute of limitations.

The Court will address the assertation that the causes of action are barred by the statute of limitations, albeit this is best sought as an affirmative defense.   Affirmative defenses should be raised by answer rather than by a motion to dismiss the complaint.  *Rigby v. Liles*, 505 So. 2d 598 (Fla. 1st DCA 1987).  "[O]nly in extraordinary circumstances where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the [defense] bars the action as a matter of law, should a motion to dismiss on this ground be granted."  *Id.* at 601.

Florida law establishes that "[a]n action founded on negligence" or "any actions not specifically provided for in these statutes" must commenced within four (4) years of the cause of action accrual. § 95.11, Fla. Stat. (2019).  Plaintiff's Amended Complaint alleges the abuse

began in or around 2004 while the Plaintiff was under the age of sixteen. The only other date Plaintiff's Amended Complaint references is an incident in 2009. However, Plaintiff's Response asserts the abuse took place between 2004 and 2012. The Court, in reviewing a motion to dismiss, is limited to the four corners of the complaint. *See Cazares v. Church of Scientology, of California, Inc.*, 444 So.2d 442 (Fla. 5th DCA 1983) (finding the law is clear that it is impermissible for a trial court to consider matters outside the four corners of the complaint in deciding a motion to dismiss). Therefore, the Court finds Plaintiff's Amended Complaint is time-barred under Florida Statute § 95.11.

Notwithstanding the aforementioned, the Count will address Silver Springs Shores arguments as to Counts I, IV, VII, and VIII of Plaintiff's Amended Complaint. In Count I, Plaintiff avers a cause of action for Negligence against Silver Springs Shores. Florida law establishes that,

> [t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless: (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relationship exists between the actor and the other which gives to the other a right to protection.

*Special Olympics Fla., Inc. v. Showalter*, 6 So. 3d 662 (Fla. 5th DCA 2009) (citing to Restatement (Second) of Torts §315 (1965)).

> Under the common law, there was no duty to prevent the misconduct of third persons. *Trianon Park Condominium Ass'n v. Hialeah*, 468 So.2d 912, 918 (Fla.1985). However, appellate courts have carved out three exceptions to this general proposition. Currently, the duty to protect strangers against the tortious conduct of another can arise if, at the time of the injury, the defendant is in actual or constructive control of:
>     1. the instrumentality;
>     2. the premises on which the tort was committed; or
>     3. the tort-feasor.

*Daly v. Denny's, Inc.*, 694 So. 2d 775 (Fla. 4th DCA 1997). Plaintiff's Amended Complaint does not state that the Incidents occurred on Silver Springs Shores' (The Church's) premises. Therefore, Plaintiff's Amended Complaint fails to reflect a special relationship or duty owed

Highly Confidential

by Silver Springs Shores (The Church) and, thus, fails to allege the elements of Negligence and a Breach of Fiduciary Duty.

Silver Springs Shores (The Church) moves to dismiss Counts VII – Vicarious Liability of Silver Springs, North Florida Council and BSA for Sexual Battery by George Fout and VIII – Vicarious Liability of Silver Springs, North Florida Council and BSA for Negligence and Breach of Fiduciary Duty by Steve Fout of Plaintiff's Amended Complaint because neither George Fout nor Steve Fout are agents of Silver Springs Shores (The Church). George Fout and Steve Fout are volunteers with BSA and Council and, thus, Plaintiff asserts they are agents of Silver Springs Shores. Plaintiff fails to establish that either George Fout or Steve Fout are actual or apparent agents of Silver Springs Shores (The Church) or that Silver Springs Shores presented or acknowledged that the Fouts were agents of Silver Springs Shores.

Based on the foregoing, the Court finds that Plaintiff's Amended Complaint is time-barred and fails to allege the elements of Negligence, Breach of Fiduciary Duty, or Vicarious Liability as to "The Church".

### Defendant Silver Spring Shores Presbyterian Church
### Motion to Strike Prejudgment Interest

With respect to Silver Springs Shores's Motion to Strike Prejudgment Interest, Plaintiff stipulates to the removal of his request for Prejudgment Interest relief in each Count.

### Defendants BSA and The North Florida Council's Motion to Dismiss Amended
### Complaint

Highly Confidential

BSA and Council move to dismiss Counts II – Negligence of North Florida Council; III – Negligence of BSA, V – Breach of Fiduciary Duty of North Florida Council; VI – Breach of Fiduciary Duty of BSA; Counts VII – Vicarious Liability of Silver Springs, North Florida Council and BSA for Sexual Battery by George Fout, VII– Vicarious Liability of Silver Springs (The Church), North Florida Council and BSA for Sexual Batter by George Fout, and Count VIII – Various Liability of Silver Springs (The Church), North Florida Council and BSA for Negligence and Breach of Fiduciary Duty by Steve Fout of Plaintiff's Amended Complaint because of a lack of a legal duty by BSA and Council and the causes of actions are barred by the statute of limitations.

Plaintiff contends that George Fout as a volunteer Scoutmaster and Steve Fout as a volunteer Assistant Scoutmaster of BSA and Council had a special relationship and, thus had a legal duty to protect Plaintiff.  BSA and Council counter that BSA and Council did not owe a duty to Plaintiff because the Incidents happened outside of BSA events and activities[1]. The Court finds that the BSA, Council, and the Fouts did have a special relationship because Plaintiff's Amended Complaint states that "[i]n or about 2009, AA., was attending a scouting event sponsored by BSA, administered by the BSA and on the BSA property." Therefore, the Court finds Plaintiff's Amended Complaint sufficiently alleges the elements of Negligence and Breach of Fiduciary Duty.

BSA and Council requests the Court to strike Plaintiff's New Allegation that an Incident between George Fout and Plaintiff occurred at a scouting event.  As stated above, the gaze of the trial court is limited to the four corners of the complaint, its allegations to be taken as true, when considering a motion to dismiss.  *See Gilbert v. Oil Conservationists, Inc.,*

---

[1] The Court adopted the same reasoning as utilized in Doe v. BSA, Inc., No. 11-CA-000858, 2016 WL 5848725 (Fla. August 12, 2016) (finding that BSA did not have the legal duty to control "the conduct of unpaid volunteers apart from their premises, events, or activities . . . ).

Highly Confidential

BSA-PLAN_01422926

**SA 1180**

460 So.2d 1027 (Fla. 4th DCA 1984). Therefore, the Court shall take Plaintiff's allegations in Plaintiff's Amended Complaint as true and the allegation shall not be stricken as a Sham Pleading or Fraud upon the Court.

However, BSA and Council assert that Plaintiff's Amended Complaint is time-barred by the statute of limitations. As stated above, an assertion of statute of limitation is an affirmative defense and should not be considered in deciding a motion to dismiss. *Pizzi v. Central Bank & Trust Co.*, 250 So.2d 895 (Fla. 1971). However, the Court will address BSA and Council's allegation that Plaintiff's Amended Complaint is time-barred under the statutes of limitations. Plaintiff's New Allegation is the premise in which a legal duty is acquired by BSA and Council and the New Allegation occurred in 2009, which is outside the statute of limitation for negligence under Florida Statute § 95.11(3). Notwithstanding the aforementioned determination that Plaintiff has sufficiently pled the elements of Negligence and Breach of Fiduciary Duty, Counts II, III, V, VI, VII, VIII, and X of Plaintiff's Amended Complaint are time-barred under Florida Statute § 95.11(3).

As to Count IX of Plaintiff's Amended Complaint, the Court finds that Plaintiff failed to establish a legal duty owed by Silver Springs Shores (The Church), as discussed above.

### *Plaintiff's Motion to Strike*

Plaintiff requests the Court strike BSA and Council's "Introduction" paragraphs on page 2 and attachment of BSA and Council's Motion to Dismiss. The Court finds the aforementioned "Introduction" and attachment are immaterial to a Motion to Dismiss and shall be stricken.

Based on the foregoing, it is

**ORDERED and ADJUDGED** as follows:

Highly Confidential

BSA-PLAN_01422927

SA 1181

1.    Defendant Silver Springs Shores Presbyterian Church, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED**.

2.    Defendant Silver Springs Shores Presbyterian Church, Inc.'s Motions to Strike Prejudgment Interest is **GRANTED**.

3.    Plaintiff's request for pre-judgment interest contained within all Counts of Plaintiff's Amended Complaint is **STRICKEN.**

4.    Defendants BSA and Council requests to strike the "New Allegation" of sexual abuse occurring on BSA'S property as a Sham Pleading or Fraud upon the Court is **DENIED**.

5.    Plaintiff's Motion to Strike is **GRANTED** with respect to BSA and Council's Motion to Dismiss "Introduction" paragraph on Page 2 and attachment.

6.    Defendants BSA and Council's Motion to Dismiss "Introduction" paragraphs on Page 2 and attachment are **STRICKEN**.

7.    Defendant Boy Scouts of America and North Florida Council, Inc.'s Request for Judicial Notice and Consideration of Certain Material in Support of their Motion to Dismiss the Amended Complaint is **DENIED**.

8.    Plaintiff's Alternative Motion to Amend the First Amended Complaint is **GRANTED**.

9.    Plaintiff shall have **twenty (20) days** from the date of this order to file a Second Amended Complaint. *Failure to file an amended complaint within the aforementioned timeframe, or within such extension as may be granted by the Court, may result in a final dismissal of the instant action without further notice of the Court.*

**IT IS SO ORDERED** in chambers, Marion County Judicial Center, Ocala, Florida, on this 17 day of July 2019.

*Edward L. Scott*

**Edward L. Scott**

Highly Confidential

BSA-PLAN_01422928

**SA 1182**

Circuit Judge


[Intentionally Left Blank]
### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been furnished by the Florida Court's e-filing portal to the following this 17 day of July 2019.

Paul L. SanGiovanni, Esquire
Morgan & Morgan, P.A.
Counsel for Plaintiff

Spencer H. Silverglate, Esquire
Clarke Silverglate, P.A.
Counsel for Defendants/Boy Scouts of America and North Florida Council, Inc.

Richards H. Ford, Esquire
Wicker Smith O'Hara McCoy & Ford, P.A.
Counsel for Defendant/Silver Springs Shores Presbyterian Church, Inc.

Becky Knipe, Judicial Assistant

Page 8 of 8

Highly Confidential

**IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT IN
AND FOR MARION COUNTY, FLORIDA**

A.A.,

       Plaintiff,

vs.

Case No: 2016-CA-0167

THE BOY SCOUTS OF AMERICA NORTH
FLORIDA COUNCIL, INC., BOY SCOUTS
OF AMERICA, AND SILVER SPRINGS
SHORES PRESBYTERIAN CHURCH, INC.,

       Defendants.

_____/

**AMENDED ORDER ON DEFENDANT SILVER SPRING SHORES PRESBYTERIAN
CHURCH, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
AND MOTION TO STRIKE PREJUDGMENT INTEREST
AND
AMENDED ORDER ON DEFENDANTS BOY SCOUTS OF AMERICA AND NORTH
FLORIDA COUNCIL, INC.'S MOTION TO DISMISS AMENDED COMPLAINT AND
REQUEST FOR JUDICIAL NOTICE AND CONSIDERATION OF CERTAIN
MATERIAL IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED
COMPLAINT**

      **THIS CAUSE** came before the Court on Defendant Silver Springs Shores

Presbyterian Church, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint and Motion to

Strike Prejudgment Interest, filed on January 2, 2019, and Defendant Boy Scouts of America

(hereinafter "BSA") and North Florida Council, Inc.'s (hereinafter "Council") Motion to

Dismiss Amended Complaint and Memorandum of Law, filed on January 11, 2019. Plaintiff

filed a Response on March 1, 2019. Defendant Silver Springs Shores Presbyterian Church,

Inc.'s (hereinafter "Silver Springs Shores") filed a Reply on March 7, 2019. The Court

considered the same, heard oral arguments, reviewed the court file, and being otherwise duly

advised of the premises, finds as follows:

*Facts*

Page 1 of 8

Highly Confidential

Plaintiff was a member Boy Scout, Steve Fout, was a volunteer Scoutmaster, and George Fout, was a volunteer Assistant Scoutmaster of BSA's Troop 448. Council, as an agent for BSA, has the right to control the local Boy Scouts of America troops directly. Plaintiff visited the home of Steve Fout, father of George Fout, multiple times over a several year time-span. George Fout, lived with his father and sexually abused (hereinafter "Incidents") the Plaintiff during said visits. It is unclear whether George Fout sexually abused Plaintiff at a BSA event or on BSA property.

### *Defendant Silver Spring Shores' Presbyterian Church Motion to Dismiss Plaintiff's Amended Complaint*

Silver Springs Shores Presbyterian Church (The Church), moves to dismiss Counts I – Negligence, IV – Breach of Fiduciary Duty, Counts VII – Vicarious Liability for Sexual Battery by George Fout, and VIII – Vicarious Liability for Negligence and Breach of Fiduciary Duty by Steve Fout, of Plaintiff's Amended Complaint for failure to establish that Silver Springs Shores (The Church) owed a duty to the Plaintiff and failure to establish vicarious liability, respectively. Additionally, Silver Springs Shores (The Church) asserts that the causes of actions are barred by the statute of limitations.

The Court will address the assertation that the causes of action are barred by the statute of limitations, albeit this is best sought as an affirmative defense. Affirmative defenses should be raised by answer rather than by a motion to dismiss the complaint. *Rigby v. Liles*, 505 So. 2d 598 (Fla. 1st DCA 1987). "[O]nly in extraordinary circumstances where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the [defense] bars the action as a matter of law, should a motion to dismiss on this ground be granted." *Id.* at 601.

Highly Confidential

BSA-PLAN_01422931

SA 1185

Florida law establishes that "[a]n action founded on negligence" or "any actions not specifically provided for in these statutes" must commenced within four (4) years of the cause of action accrual. § 95.11, Fla. Stat. (2019). Plaintiff's Amended Complaint alleges the abuse began in or around 2004 while the Plaintiff was under the age of sixteen. The only other date Plaintiff's Amended Complaint references is an incident in 2009. However, Plaintiff's Response asserts the abuse took place between 2004 and 2012. The Court, in reviewing a motion to dismiss, is limited to the four corners of the complaint. *See Cazares v. Church of Scientology, of California, Inc.*, 444 So.2d 442 (Fla. 5th DCA 1983) (finding the law is clear that it is impermissible for a trial court to consider matters outside the four corners of the complaint in deciding a motion to dismiss). Therefore, the Court finds Plaintiff's Amended Complaint is time-barred under Florida Statute § 95.11.

Notwithstanding the aforementioned, the Count will address Silver Springs Shores' (The Church's) arguments as to Counts I, IV, VII, and VIII of Plaintiff's Amended Complaint. In Count I, Plaintiff avers a cause of action for Negligence against Silver Springs Shores (The Church). Florida law establishes that,

> [t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another  unless: (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relationship exists between the actor and the other which gives to the other a right to protection.

*Special Olympics Fla., Inc. v. Showalter*, 6 So. 3d 662 (Fla. 5th DCA 2009) (citing to Restatement (Second) of Torts §315 (1965)).

> Under the common law, there was no duty to prevent the misconduct of third persons. *Trianon Park Condominium Ass'n v. Hialeah*, 468 So.2d 912, 918 (Fla.1985). However, appellate courts have carved out three exceptions to this general proposition. Currently, the duty to protect strangers against the tortious conduct of another can arise if, at the time of the injury, the defendant is in actual or constructive control of:
>     1. the instrumentality;
>     2. the premises on which the tort was committed; or

Page 3 of 8

Highly Confidential

BSA-PLAN_01422932

SA 1186

3. the tort-feasor.

*Daly v. Denny's, Inc.*, 694 So. 2d 775 (Fla. 4th DCA 1997).  Plaintiff's Amended Complaint does not state that the Incidents occurred on Silver Springs Shores' (The Church's) premises. Therefore, Plaintiff's Amended Complaint fails to reflect a special relationship or duty owed by Silver Springs Shores (The Church) and, thus, fails to allege the elements of Negligence and a Breach of Fiduciary Duty.

Silver Springs Shores (The Church) moves to dismiss Counts VII – Vicarious Liability of Silver Springs, North Florida Council and BSA for Sexual Battery by George Fout and VIII – Vicarious Liability of Silver Springs, North Florida Council and BSA for Negligence and Breach of Fiduciary Duty by Steve Fout of Plaintiff's Amended Complaint because neither George Fout nor Steve Fout are agents of Silver Springs Shores (The Church).  George Fout and Steve Fout, are volunteers with BSA and Council and, thus, Plaintiff asserts they are agents of Silver Springs Shores (The Church).  Plaintiff fails to establish that either George Fout or Steve Fout are actual or apparent agents of Silver Springs Shores (The Church) or that Silver Springs Shores (The Church) presented or acknowledged that the Fouts were agents of Silver Springs Shores (The Church).

Based on the foregoing, the Court finds that Plaintiff's Amended Complaint is time-barred and fails to allege the elements of Negligence, Breach of Fiduciary Duty, or Vicarious Liability as to Silver Springs Shores Presbyterian Church.

### Defendant Silver Spring Shores Presbyterian Church
### Motion to Strike Prejudgment Interest

With respect to Silver Springs Shores' (The Church's) Motion to Strike Prejudgment Interest, Plaintiff stipulates to the removal of his request for Prejudgment Interest relief in each Count.

Page 4 of 8

Highly Confidential

### *Defendants BSA and The North Florida Council's*
### *Motion to Dismiss Amended Complaint*

BSA and Council move to dismiss Counts II – Negligence of North Florida Council; III – Negligence of BSA, V – Breach of Fiduciary Duty of North Florida Council; VI – Breach of Fiduciary Duty of BSA; Counts VII – Vicarious Liability of Silver Springs (The Church), North Florida Council and BSA for Sexual Battery by George Fout, VII– Vicarious Liability of Silver Springs (The Church), North Florida Council and BSA for Sexual Battery by George Fout, and Count VIII – Various Liability of Silver Springs (The Church), North Florida Council and BSA for Negligence and Breach of Fiduciary Duty by Steve Fout of Plaintiff's Amended Complaint because of a lack of a legal duty by BSA and Council and the causes of actions are barred by the statute of limitations.

Plaintiff contends that George Fout as a volunteer Scoutmaster and Steve Fout as a volunteer Assistant Scoutmaster of BSA and Council had a special relationship and, thus had a legal duty to protect Plaintiff.  BSA and Council counter that BSA and Council did not owe a duty to Plaintiff, because the Incidents happened outside of BSA events and activities[1]. The Court finds that the BSA, Council, and the Fouts did have a special relationship because Plaintiff's Amended Complaint states that "[i]n or about 2009, AA., was attending a scouting event sponsored by BSA, administered by the BSA and on the BSA property."  Therefore, the Court finds Plaintiff's Amended Complaint sufficiently alleges the elements of Negligence and Breach of Fiduciary Duty.

---

[1] The Court adopted the same reasoning as utilized in *Doe v. BSA, Inc.*, No. 11-CA-000858, 2016 WL 5848725 (Fla. August 12, 2016) (finding that BSA did not have the legal duty to control "the conduct of unpaid volunteers apart from their premises, events, or activities . . . ).

Page 5 of 8

BSA and Council requests the Court to strike Plaintiff's New Allegation that an Incident between George Fout and Plaintiff occurred at a scouting event. As stated above, the gaze of the trial court is limited to the four corners of the complaint, its allegations to be taken as true, when considering a motion to dismiss. *See Gilbert v. Oil Conservationists, Inc.*, 460 So.2d 1027 (Fla. 4th DCA 1984). Therefore, the Court shall take Plaintiff's allegations in Plaintiff's Amended Complaint as true and the allegation shall not be stricken as a Sham Pleading or Fraud upon the Court.

However, BSA and Council assert that Plaintiff's Amended Complaint is time-barred by the statute of limitations. As stated above, an assertion of statute of limitation is an affirmative defense and should not be considered in deciding a motion to dismiss. *Pizzi v. Central Bank & Trust Co.*, 250 So.2d 895 (Fla. 1971). However, the Court will address BSA and Council's allegation that Plaintiff's Amended Complaint is time-barred under the statutes of limitations. Plaintiff's New Allegation is the premise in which a legal duty is acquired by BSA and Council and the New Allegation occurred in 2009, which is outside the statute of limitation for negligence under Florida Statute § 95.11(3). Notwithstanding the aforementioned determination that Plaintiff has sufficiently pled the elements of Negligence and Breach of Fiduciary Duty, Counts II, III, V, VI, VII, VIII, and X of Plaintiff's Amended Complaint are time-barred under Florida Statute § 95.11(3).

As to Count IX of Plaintiff's Amended Complaint, the Court finds that Plaintiff failed to establish a legal duty owed by Silver Springs Shores (The Church), as discussed above.

### *Plaintiff's Motion to Strike*

Plaintiff requests the Court strike BSA and Council's "Introduction" paragraphs on page 2 and attachment of BSA and Council's Motion to Dismiss. The Court finds the

Page 6 of 8

Highly Confidential

aforementioned "Introduction" and attachment are immaterial to a Motion to Dismiss and shall be stricken.

Based on the foregoing, it is

**ORDERED and ADJUDGED** as follows:

1.      Defendant Silver Springs Shores Presbyterian Church, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED**.

2.      Defendant Silver Springs Shores Presbyterian Church, Inc.'s Motions to Strike Prejudgment Interest is **GRANTED**.

3.       Plaintiff's request for pre-judgment interest contained within all Counts of Plaintiff's Amended Complaint is **STRICKEN.**

4.      Defendants BSA and Council requests to strike the "New Allegation" of sexual abuse occurring on BSA'S property as a Sham Pleading or Fraud upon the Court is **DENIED**.

5.      Plaintiff's Motion to Strike is **GRANTED** with respect to BSA and Council's Motion to Dismiss "Introduction" paragraph on Page 2 and attachment.

6.      Defendants BSA and Council's Motion to Dismiss "Introduction" paragraphs on Page 2 and attachment are **STRICKEN**.

7.      Defendant Boy Scouts of America and North Florida Council, Inc.'s Request for Judicial Notice and Consideration of Certain Material in Support of their Motion to Dismiss the Amended Complaint is **DENIED**.

8.      Plaintiff's Alternative Motion to Amend the First Amended Complaint is **GRANTED**.

9.      Plaintiff shall have **twenty (20) days** from the date of this order to file a Second Amended Complaint. *Failure to file an amended complaint within the aforementioned*

Page 7 of 8

BSA-PLAN_01422936
**SA 1190**

*timeframe, or within such extension as may be granted by the Court, may result in a final dismissal of the instant action without further notice of the Court.*

**IT IS SO ORDERED** in chambers, Marion County Judicial Center, Ocala, Florida, on this ____24____ day of July 2019.

**Edward L. Scott**
Circuit Judge

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been furnished by the Florida Court's e-filing portal to the following this ____ day of July 2019.

Paul L. SanGiovanni, Esquire
Morgan & Morgan, P.A.
Counsel for Plaintiff

Spencer H. Silverglate, Esquire
Clarke Silverglate, P.A.
Counsel for Defendants/Boy Scouts of America and North Florida Council, Inc.

Richards H. Ford, Esquire
Wicker Smith O'Hara McCoy & Ford, P.A.
Counsel for Defendant/Silver Springs Shores Presbyterian Church, Inc.

Becky Knipe, Judicial Assistant

Page 8 of 8

Highly Confidential

Case 1:22-cv-01237-RGA   Document 73   Filed 12/07/22   Page 314 of 482 PageID #: 5174

Filing # 93960706 E-Filed 08/09/2019 04:36:29 PM   Case 5:20-cv-00069 Document 14-2 Filed 02/18/20   Page 398 of 805 PageID 575

IN THE CIRCUIT COURT OF THE 5TH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA, AND
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

      Defendants.

_____/

## JOINT MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT AND RESPONSES

Plaintiff, A.A. ("Plaintiff"), and Defendants, THE BOY SCOUTS OF AMERICA NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, AND SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC. (collectively "Defendants), by and through their undersigned counsel, hereby jointly move for an extension of time to file the Second Amended Complaint and the response thereto, and for good cause, state:

1.    On July 24, 2019, this Court rendered its Amended Order upon several pending motions, including the Defendants' respective motions to dismiss.

2.    The Court granted the motions, with leave for the Plaintiff to file a Second Amended Complaint within twenty (20) days, to wit, on or before August 13, 2019.

BSA-PLAN_01422938

SA 1192

3.      The Florida Rules of Civil Procedure provide that the Defendants must serve responses to the Second Amended Complaint within ten (10) days thereafter.

4.      Given the parties' respective calendars, the complexity of issues addressed and other factors, the parties respectfully move the Court to extend the current deadlines to the following dates:

      a.   August 30, 2019 – Deadline for Plaintiff to file Second Amended Complaint.

      b.   September 26, 2019 – Deadline for Defendants to respond to Second Amended Complaint.

5.      The parties have stipulated to the respective relief requested and are agreed to the form of the proposed order attached as Exhibit "A".

6.      The undersigned counsel certify that this Motion is made in good faith and not for the purpose of delay.

**WHEREFORE,** the parties respectfully request this Court grant the extensions requested herein and render the attached proposed order.

| | |
|---|---|
| **MORGAN & MORGAN, P.A.**<br>**Business Trial Group** | **CLARKE SILVERGLATE, P.A.** |
| *s/Paul L. SanGiovanni*<br>**Paul L. SanGiovanni**<br>Florida Bar No. 0513164<br>20 North Orange Avenue, Suite 1600<br>Orlando, Florida 32801<br>Telephone:  (407)418-6041<br>Facsimile:  (407)245-3394<br>Primary E-mail:  PSangi@forthepeople.com<br>Second E-mail MTodd@forthepeople.com<br>*Attorneys for Plaintiff, A.A.* | *s/Spencer H. Silverglate*<br>**Spencer H. Silverglate**<br>Florida Bar No. 769223<br>ssilverglate@cspalaw.com<br>mpedraza@cspalaw.com<br><br>**Francisco Ramos, Jr.**<br>Florida Bar No. 114766<br>framos@scpalaw.com<br>cdeleon@cspalaw.com<br><br>799 Brickell Plaza 9th Floor<br>Phone: (305) 377-0700<br>Fax: (305) 377-3001<br>*Attorneys for Boy Scouts of American and*<br>*North Florida Council, Inc.* |

2

BSA-PLAN_01422939

**SA 1193**

**WICKER SMITH O'HARA MCCOY & FORD, P.A.**

*s/Raychel A. Garcia*
**Raychel A. Garcia**
Florida Bar No. 091096
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com
*Attorneys for Silver Springs Shores*
*Presbyterian Church, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the August 9, 2019, I electronically filed the foregoing with the Clerk of the Court by using the Court's E-portal filing system, which will serve a notice of the electronic filing via e-mail to all counsel of record.

*s/Paul L. SanGiovanni*
**Paul L. SanGiovanni**

3

BSA-PLAN_01422940

**SA 1194**

IN THE CIRCUIT COURT OF THE
5TH JUDICIAL CIRCUIT IN AND
FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF
AMERICA NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS
OF AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH,
INC.,

      Defendants.

_____/

**ORDER ON JOINT MOTION FOR EXTENSION OF TIME TO FILE
SECOND AMENDED COMPLAINT AND RESPONSE**

      THIS CAUSE having come on before the Court on the parties Joint Motion

for Extension of time to file Second Amended Complaint and Response, and this

Court having reviewed the same and been advised of agreement by and between

counsel for parties, it is hereby

      ORDERED AND ADJUDGED that:

      1.    The Joint Motion is **GRANTED.**

> *Exhibit "A" to Motion for Extension of Time*
> *Agreed Proposed Order*

Highly Confidential

2.      The applicable deadlines in this matter shall be extended as follows:

     a. August 30, 2019 – Deadline for Plaintiff to file Second Amended Complaint.

     b. September 26, 2019 – Deadline for Defendants to respond to Second Amended Complaint.

DONE AND ORDERED in Chambers, in Marion County, Florida this _____ day of August, 2019.

<div align="center">

NOT FOR RENDITION - SPECIMEN ORDER
EDWARD L. SCOTT
JUDGE OF THE CIRCUIT COURT

</div>

Copies furnished to:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail: PSangi@forthepeople.com
**Counsel for Plaintiff**

Spencer H. Silverglate
Francisco Ramos, Jr.
Shannon P. McKenna
Clarke Silverglate, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
E-mail: ssilverglate@cspalaw.com
E-mail: framos@cspalaw.com
E-mail: smckenna@cspalaw.com
**Counsel for Defendants, Boy Scouts of America and North Florida Council, Inc.**

Raychel Garcia
Wicker Smith O'Hara McCoy & Ford P.A.
390 North Orange Avenue, Suite 1000
Orlando, Florida 32801
E-mail: RGarcia@wickersmith.com
**Counsel for Defendant, Silver Springs Shores Presbyterian Church, Inc.**

Case 1:22-cv-01237-RGA   Document 73   Filed 12/07/22   Page 319 of 482 PageID #: 5179

Filing # 94067807 Case 5:20-cv-00069 Document 4-3 Filed 02/18/20   Page 403 of 805 PageID 580
E-Filed 08/13/2019 10:49:13 AM

IN THE CIRCUIT COURT OF THE
5TH JUDICIAL CIRCUIT IN AND
FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

      Plaintiff,

vs.

THE BOY SCOUTS OF
AMERICA NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS
OF AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH,
INC.,

      Defendants.

_____/

## ORDER ON JOINT MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT AND RESPONSE

      THIS CAUSE having come on before the Court on the parties Joint Motion for Extension of time to file Second Amended Complaint and Response, and this Court having reviewed the same and been advised of agreement by and between counsel for parties, it is hereby

      ORDERED AND ADJUDGED that:

      1.    The Joint Motion is **GRANTED.**

Highly Confidential

2.    The applicable deadlines in this matter shall be extended as follows:

    a.  August 30, 2019 – Deadline for Plaintiff to file Second Amended Complaint.

    b.  September 26, 2019 – Deadline for Defendants to respond to Second Amended Complaint.

DONE AND ORDERED in Chambers, in Marion County, Florida this _13_

day of August, 2019.

_____
EDWARD L. SCOTT
JUDGE OF THE CIRCUIT COURT

Copies furnished to:
Paul L. SanGiovanni
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
E-mail:  PSangi@forthepeople.com
**Counsel for Plaintiff**

Spencer H. Silverglate
Francisco Ramos, Jr.
Shannon P. McKenna
Clarke Silverglate, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
E-mail: ssilverglate@cspalaw.com
E-mail: framos@cspalaw.com
E-mail: smckenna@cspalaw.com
**Counsel for Defendants, Boy Scouts of America and North Florida Council, Inc.**

Raychel Garcia
Wicker Smith O'Hara McCoy & Ford P.A.
390 North Orange Avenue, Suite 1000
Orlando, Florida 32801
E-mail: RGarcia@wickersmith.com
**Counsel for Defendant, Silver Springs Shores Presbyterian Church, Inc.**

BSA-PLAN_01422944

**SA 1198**

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

        Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL,
INC., BOY SCOUTS OF
AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

        Defendants.

_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiff, A.A, by and through his undersigned counsel, files this Complaint against Defendants, THE BOY SCOUTS OF AMERICA, a foreign corporation authorized to do business in Florida (hereinafter referred to as the "BSA"), the NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, a corporation authorized to do business in Florida (hereinafter referred to as the "NORTH FLORIDA COUNCIL"), and the SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., a corporation authorized to do business in Florida (hereinafter referred to as the "SILVER SPRINGS SHORES") and for good cause, states:

## INTRODUCTION

1.    **General Statement of Claims:**  This Complaint is based on the childhood sexual abuse of Plaintiff, A.A. caused by the negligent, willful, wanton, reckless and tortious acts and omissions of BSA, NORTH FLORIDA COUNCIL, SILVER SPRINGS SHORES, Scoutmaster Steve Fout and other agents of the BSA, and George Fout, formerly an Assistant Scoutmaster.

Highly Confidential

2.      At all relevant times, George Fout was the agent of Defendant BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.  These claims relate to acts of sexual battery as described in Section 794.011, Florida Statutes suffered by the Plaintiff, A.A., while he was a participant in the programs operated by the Defendants, and each of them.

3.      As more particularly described herein, the Plaintiff suffered the sexual battery described herein as a result of the neglect of the BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES and their respective agents to, among other things, exercise due care in the administration, management and operation of its scouting program, their breach of their fiduciary duties and their vicarious liability for the acts of their agents.

4.      **Jurisdiction and Venue**:      This is an action for damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorneys' fees.

5.      Venue is proper in Marion County, Florida because the events giving rise to this action occurred in Marion County, Florida. .

6.      **The Parties:**      A.A. is currently an adult residing in Marion County, Florida. The initials "A.A." are used to protect the identity of Plaintiff from public disclosure. The identity and further relevant details shall be disclosed to the Defendants off record and confidentially.

7.      At all relevant times, A.A. resided in Marion County, Florida.

8.      A.A. was a member of the Boy Scouts of America Troup 448.

9.      Plaintiff met his abuser, George Fout, due to George Fout's role as the Assistant Scoutmaster of Troup 448.

2

10.    SILVER SPRINGS SHORES was the chartering organization for Troop 448, or such other Boy Scout Troop as A.A. was a member (herein collectively referred to as "Troop 448").

11.    The BSA is a foreign corporation authorized to do business in the state of Florida.

12.    At all relevant times, BSA controlled or had the right to control the NORTH FLORIDA COUNCIL and the sponsoring organizations, which implemented BSA's scouting program, including, without limitation, SILVER SPRINGS SHORES.

13.    The NORTH FLORIDA COUNCIL is a corporation authorized to do business in the State of Florida and is located in Duval County, Florida.

14.    At all relevant times, the NORTH FLORIDA COUNCIL was an agent of BSA, subject to BSA's control or right to control.

15.    As Defendant BSA's agent, the NORTH FLORIDA COUNCIL controlled or had the right to control local troops directly, or through their sponsoring organizations, including, without limitation, SILVER SPRINGS SHORES.

16.    SILVER SPRINGS SHORES is a corporation authorized to do business in the State of Florida and is located in Marion County, Florida. At all relevant times, SILVER SPRINGS SHORES was an agent of BSA and the COUNCIL, subject to their control or right to control.

17.    As Defendant BSA and NORTH FLORIDA COUNCIL' agent, SILVER SPRINGS SHORES controlled or had the right to control the programs and troops that it sponsored, including its Scoutmaster and Assistant Scoutmasters.

3

18.     The BSA, NORTH FLORIDA COUNCIL and SILVERS SPRINGS SHORES will be collectively referred to herein as the Boy Scout Defendants.  When so used, the term references each in their respective individual capacities.

19.     Steve Fout was the Scoutmaster and leader of Troop 448.

20.     George Fout was Steve's son and was an Assistant Scoutmaster of Troop 448.

### The BSA

21.     The BSA is a large youth-serving organization which promotes, markets, and encourages parents to enroll their children in the BSA. Enrollment in the BSA requires parents to entrust their children's health and safety to the BSA and requires children to engage in activities that expose them to adults and others. Much of the BSA's activities include over-night outings, camping trips, and trips away from parents.

### The Hierarchy of the BSA and the BSA's Control Over Its Agent Scouting Organizations

22.     The BSA has established its presence through the use of a hierarchical system, whereby local Councils and chartering organizations implement and maintain the BSA's program at a local level under the BSA's guidance and control.

23.     Organizationally, the BSA is separately incorporated from local councils, but the BSA and the BSA's local councils comprise a tightly integrated, hierarchal organizational structure under the BSA's control at the top.

24.     The BSA issues the Boy Scouts of America name, emblems, badges, markings, and youth programs to the Councils and chartering organizations. The BSA requires the local

4

Highly Confidential

BSA-PLAN_01422948

**SA 1202**

Council and troops within a local Council to strictly adhere to the BSA's organizational charter and standards of leadership.

25.     For example, all members of scout troops chartered through a local council must be registered and pay dues to the BSA. The BSA oversees and controls all professional staffing of local councils. Local councils may not employ any professional scouts who are not drawn from a BSA approved candidate list that the BSA compiled and maintained. Local councils are not permitted to use any programs or materials that the BSA has not supplied or approved.

26.     Unless the BSA has selected and approved them, no adult scout leader, whether paid or volunteer, may serve in a local troop or council.

27.     The BSA asserts First Amendment associational rights to exclude Scoutmasters and volunteers who do not share their values or beliefs and anyone else it chooses from participating in scouting.  Indeed the BSA has *successfully* asserted these associational rights in trial, appellate and over their volunteer and are judicially estopped from asserting that they do not have control or a special relationship with their Scoutmasters and volunteers. *See*, for example, *Boy Scouts of American vs. Dale*, 530 U.S. 640 (2004).  The BSA is similarly judicially estopped from arguing that these Scoutleaders and volunteers are not their agents.

28.     The BSA provides a wide variety of management services to locals councils and troops, including insurance and risk management, marketing, education, training, scout camps, facilities, media relations, and human resources. Duplicate personnel files on local council employees are maintained at the local council and at the BSA's national headquarters.

29.     The BSA creates the bylaws, rules and regulations that every chartering organization must adhere to in implementing and running the BSA's scouting program. Significantly, the BSA's bylaws obligate a chartering organization to provide adequate facilities,

Highly Confidential

BSA-PLAN_01422949

SA 1203

supervision, and leadership for the troop in exchange for the granting of a charter to run a local scouting troop.

30.     A local scouting troop cannot exist without the support of a chartering organization that has received a charter from the BSA authorizing the chartering organization to implement and run the BSA's scouting program.

31.     Under the BSA bylaws, each chartering organization is required to select at least three people over the age of 21 to serve as the Troop Committee. The Troop Committee then selects the Troop Scoutmaster. The BSA must approve scout leaders, whether paid or volunteer, to serve in a local troop or council.

32.     Together, the Troop Committee and the Scoutmaster are responsible for the general program and supervision of the troop.

33.     Further, each chartering organization is required to appoint a representative other than the Scoutmaster or Assistant Scoutmaster to serve as its institutional representative on the local Council.

34.     A chartering organization must reapply to the BSA every year for a renewed charter in order to continue to operate a local troop. The BSA may revoke a chartering organization's charter at any time should the chartering organization be found to deviate from the BSA's charter and bylaws.

35.     This chartering system reveals the BSA's consent to allow local chartering organizations to operate the scouting program on its behalf and the chartering organizations' consent to operate the local troops subject to the BSA's control or right to control. Accordingly, the chartering organizations, such as SILVER SPRINGS SHORES, are the agents of the BSA.

6

BSA-PLAN_01422950

SA 1204

36.     The BSA uses a similar structure in relation to its local Councils, such as the NORTH FLORIDA COUNCIL. The BSA issues a charter to an approved local Council authorizing the local Council to administer the scouting program to the local scout troops within the region on behalf of the BSA.

37.     The local Councils are subject to the same bylaws, rules and regulations as the chartering organizations. If a local Council deviates from the rules and regulations established by the BSA, then the local Council may have its charter revoked.

38.     All local Councils must apply to the BSA for renewal of their charters annually.

39.     It is the duty of the local Council to promote, support, and maintain the BSA scouting regime amongst all local troops within the local Councils area.

40.     The chartering system shows the BSA's consent to allow local Councils to operate the scouting program on its behalf within a specific geographic region, and the local Councils consent to operate the scouting program subject to the BSA's control or right to control. Thus, the local Councils are agents of the BSA.

41.     The BSA cannot operate its scouting program without the consent and cooperation of the local Councils and chartering organizations.  Conversely, the chartering organizations and local Councils cannot operate and supervise local scouting troops without the consent of the BSA.

42.     At all relevant times, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES were serving as Defendant the BSA's agents by implementing and maintaining the BSA's scouting program on a local level.

7

Highly Confidential

BSA-PLAN_01422951

SA 1205

### The BSA, NORTH FLORIDA COUNCIL's and
### SILVER SPRINGS SHORES Special Relationship with A.A.

43.     The Boy Scout Defendants have a special relationship with A.A., for reasons which included, without limitation, the following:

a.     A.A. and his family imposed confidence in The Boy Scout Defendants through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things, learn the values and characteristics that Defendants promote through involvement with the BSA, and ultimately would be safe from harm in doing so;

b.     It is through A.A.'s involvement with The Boy Scout Defendants, and George Fout's relationship with The Boy Scout Defendants that A.A. was abused by George Fout;

c.     The Boy Scout Defendants had a direct and special relationship with scouts who participated in its programs. A.A. was a child at the time of the abuse. The abuse began and often occurred when A.A. was placed in the care and custody of Defendants The Boy Scout Defendants, with the resulting loss of control to protect himself;

d.     A.A. was a child at the time of the abuse. He was raped and molested at locations and under circumstances where he was unable to protect himself or was otherwise unable to avail himself of his legal guardian for their ordinary source of protection or were otherwise relying entirely on the Boy Scout Defendants and their agents, including Scoutmaster Steve Fout, for his protection, and

e.     The Boy Scout Defendants, were substituting for A.A.'s parents during the relevant times.

### BSA, NORTH FLORIDA COUNCIL's and SILVER SPRINGS SHORES Special
### Relationship with, and Constructive Control
### over Scoutmaster Steve Fout, and his Agency for them.

44.     At all relevant times, A.A. was enrolled in the Boy Scouts of America scouting program.

45.     At all relevant times, A.A. was a member of Boy Scouts of America Troop 448 in Ocala, Florida. Troop 448 was chartered by Defendant SILVER SPRINGS SHORES,

8

46.     Troop 448 was under the jurisdiction of Defendant NORTH FLORIDA COUNCIL.

47.     Each of SILVER SPRINGS SHORES and the NORTH FLORIDA COUNCIL were under the ultimate control and authority of the BSA.

48.     But for the BSA's consent, neither SILVER SPRINGS SHORES, nor the NORTH FLORIDA COUNCIL would have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

49.     As the chartering organization of Troop 448, Defendant SILVER SPRINGS SHORES was responsible for providing adequate facilities, supervision, and leadership for the troop, subject to the approval of the Council and the BSA and consistent with their direction and policies.

50.     The troop meetings were held in facilities owned or operated by Defendant SILVER SPRINGS SHORES.  Certain activities were held in facilities owned or operated by the Council and the BSA.

51.     At all times material hereto, the Boy Scout Defendants installed Steve Fout as the Scoutmaster (a/k/a Troop Leader) for Troop 448.

52.     As the Scoutmaster of Troop 448, Steve Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

53.     At all times relevant, Steve Fout was subject to the approval, direction, control and authority of the Boy Scout Defendants.

9

54.     Steve Fout had the specific authorization from the Boy Scout Defendants to wear the BSA badge and insignia and other indicia and brands of the BSA, to hold himself out as a leader for the BSA and to lead meeting and events on the premises of the BSA and Silver Springs Shores.

55.     In fact, Steve Fout did hold himself out as such, lead meetings and took the scouts, including A.A. on events, including overnight campouts, on the premises of the Boy Scout Defendants.

56.     Steve Fout's activities, and each of them, were specifically sanctioned by the Boy Scout Defendants.  At all times relevant, the Boy Scout Defendants had the control or the ability to control, Steve Fout's display of his the BSA badge and insignia and other indicia and brands of the BSA.

57.     But for the Boy Scout Defendants' consent, neither Steve Fout would have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

58.     The subject authorization was designed to instill, and did instill, trust and confidence in Steve Fout by the parents, guardians and scouts and further served to promote the BSA brand.

59.     But for Steve Fout's position with the Boy Scout Defendants, A.A. would not have been permitted to spend overnights at his home.  There is a causal connection between Steve Fout's position with the Boy Scout Defendants and A.A.'s abuse.

60.     A.A. and his guardians each perceived Steve Fout to be a representative of the BSA, the Council and Silver Springs Shores and to be a person whom they could entrust with A.A.

10

61.     At all times relevant hereto, Steve Fout was an Assistant Scoutmaster for Troop 448 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including A.A. in morality, patriotism and various life skills.

62.     At all times relevant hereto, Steve Fout served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

63.     Steve Fout had actual or apparent authority to act on behalf of the BSA, the Council and Silver Springs Shores, and each of them.

64.     As a result there was, at all relevant times, a special relationship and agency between Steve Fout and Boy Scout Defendants.

**BSA, NORTH FLORIDA COUNCIL's and SILVER SPRINGS SHORES**
**Special Relationship with, and Constructive Control over perpetrator and assistant**
**Scoutmaster, George Fout, and his Agency for them.**

65.     At all times material hereto, the Boy Scout Defendants installed George Fout, as an Assistant Scoutmaster (a/k/a Assistant Troop Leader) for Troop 448.  George Fout was Steve Fout's son.

66.     At all times material hereto, Assistant Scoutmaster George Fout was under the direct supervision of Scoutmaster Steve Fout.

67.     As the Assistant Scoutmaster of Troop 448, George Fout assisted Steve Fout in his activities.

68.     As the Assistant Scoutmaster of Troop 448, George Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members

Highly Confidential

BSA-PLAN_01422955

**SA 1209**

to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

69.     At all times relevant, George Fout was subject to the approval, direction, control and authority of The Boy Scout Defendants.

70.     George Fout had the specific authorization from the Boy Scout Defendants to wear the BSA badge and insignia and other indicia and brands of the BSA, to hold himself out as a leader for the BSA and to lead meeting and events on the premises of the BSA and Silver Springs Shores.

71.     In fact, George Fout did hold himself out as such, lead meetings and took the scouts, including A.A. on events, including overnight campouts, on the premises of the Boy Scout Defendants.

72.     George Fout's activities, and each of them, were specifically sanctioned by the Boy Scout Defendants.  At all times relevant, Boy Scout Defendants had the control or the ability to control, George Fout's display of his the BSA badge and insignia and other indicia and brands of the BSA.

73.     But for the Boy Scout Defendants consent, George Fout would not have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

74.     The subject authorization was designed to instill, and did instill, trust and confidence in George Fout by the parents, guardians and scouts and further served to promote the BSA brand.

Highly Confidential

BSA-PLAN_01422956

SA 1210

75.     But for George Fout's position with the Boy Scout Defendants, A.A. would not have been permitted to spend overnights at his home.  There is a causal connection between Steve Fout's position with the Boy Scout Defendants and A.A.'s abuse.

76.     A.A. and his guardians each perceived George Fout to be a representative of the Boy Scout Defendants and to be a person whom they could entrust with A.A.

77.     At all times relevant hereto, Steve Fout was an Assistant Scoutmaster for Troop 448 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including A.A. in morality, patriotism and various life skills.

78.     At all times relevant hereto, Steve Fout served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

79.     George Fout had actual or apparent authority to act on behalf of the Boy Scout Defendants, and each of them.

80.     As a result there was, at all relevant times, a special relationship and agency between George Fout and The Boy Scout Defendants.

13

Highly Confidential

### George Fout's Grooming and Preparation of A.A. and
### Three (3) Other Scouts from Troop 448 for Abuse.

81.     Perpetrators of sexual abuse against children often "groom" the victim for the abuse.   This grooming is a process of mental, emotional, psychological and physical manipulation by which the perpetrator prepares a child, significant others, and the environment for the abuse of the child.   Specific goals include gaining access to the child, gaining the child's compliance, and maintaining the child's secrecy to avoid disclosure. This process serves to strengthen the offender's abusive pattern, as it may be used as a means of justifying or denying their actions.

82.     The grooming process consists of a series of stages.   These include the stages of selecting a vulnerable victim, gaining access to the child, developing trust, and desensitizing the victim to touch.

83.     As to the first stage, when selecting a victim, offenders often target children based on family situations, such as those living in single family households as often in these cases children may have less adult supervision or the custodial parent may rely upon others to help with childcare responsibilities.

84.     This pattern of grooming and its specific stages are discernable to supervising adults, including Scoutmasters, particularly if they are properly trained to recognize the behavior. This "grooming" results in its own resulting psychological and emotional abuse and damage, separate from the impending physical sexual abuse.

85.     George Fout engaged in exactly these stages of grooming A.A. prior to and during his abuse of A.A.   George Fout often showered Plaintiff with special attention and otherwise engaged in the grooming process described.

14

BSA-PLAN_01422958

SA 1212

86.     A.A. met the profile of a particularly vulnerable child, as he was being raised by a single non-parent adult with no strong male role model.

87.     At the time that George Fout grooming A.A., he was simultaneously grooming at least three (3) other child scouts in Troop 448 for sexual abuse, for a total of four (4) scouts in a single troop undergoing grooming for impending sexual abuse.

88.     As a result of George Fout's grooming of A.A., it was foreseeable that George Fout would ultimately consummate the grooming in its goal of sexual abuse.

89.     Indeed, ultimately, George Fout's grooming of each of these four (4) scouts did result in them suffering his continuous and ongoing sexual abuse.

90.     This grooming frequently occurred on the premises of SILVER SPRINGS SHORES and during events sponsored by the BSA.

91.     Upon information and belief, Troop 448 Scoutmasters knew or should have known that George Fout was grooming A.A. for abuse and that abuse of A.A. was foreseeable, impending and ongoing.

92.     In addition, it is a reasonable inference that, while George Fout was grooming four (4) scouts under their care, adult supervisors of Troop 448, including Steve Fout, observed actions and behavior by George Fout by which they knew or should have known that George Fout was grooming the scouts, including A.A. for abuse and that abuse of A.A. was foreseeable, impending and ongoing.

93.     Further, if the Boy Scout Defendants had properly trained adult leaders and Scoutmasters to identify grooming behavior, they would have identified George Fout as being actively engaged in grooming four (4) child scouts in their troop and would have been trained to

15

warn A.A. and his parents of the impending abuse and prevent the abuse and the resulting injuries and damage.

### George Fout's Abuse of A.A. was Foreseeable and Immanent.

94.     George Fout's sexual abuse of A.A. was foreseeable, as the Boy Scout Defendants each had actual and constructive notice of George Fout's grooming of A.A., and actual and constructive notice of the impending and immanent and actual abuse of A.A. and the abuse, in fact, of A.A.

95.     This notice included, without limitation:

   a.     That George Fout would engage in a pattern of grooming of A.A. in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

   b.     That George Fout would engage in a pattern of grooming of three (3) other scouts. in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

   c.     Upon information and belief and upon reasonable inference, the adult troop leaders should have known that George Fout engaging in grooming of four (4) minor scouts in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

   d.     On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on the BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, providing notice to The Boy Scout Defendants of grooming, sexual abuse, and the ongoing process of grooming, including that George Fout's propensity to engage in sexual abuse is foreseeable and immanent;

   e.     At times, A.A, would leave scouting events held on Defendants' premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of the BSA policy;

16

     f.     Adult scout leaders of Troop 448 knew or should have known that A.A. and other scouts of Troop 448 would visit the home of George Fout and would often spend the night in the bedroom of George Fout, in violation of BSA policy;

     g.     Steve Fout, as agent for the BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES was personally present over the course of many years as George Fout, his adult son, took four (4) minor child scouts to his room, each on a series of separate occasions, for hours of "game play" and overnight sleep-overs behind closed doors;

     h.     Steve Fout should have known or was willfully ignorant of the fact that his son was abusing minor children under his roof;

     i.     Steve Fout, as a troop leader and an agent for the BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES knew, should have known or was willfully ignorant that George Fout was actively abusing or posed a threat of sexual abuse to minor scouts under his care.

96.     During all relevant times hereto, George Fout was conducting himself in such a manner and fashion that the Boy Scout Defendants knew or should have known that George Fout had a propensity to commit and engage in sexual misconduct.

97.     If the Boy Scout Defendants had properly and adequately supervised the conduct and the activities of George Fout, they would have known or should have known of the misconduct of George Fout, so as to prevent the sexual abuse and infliction of emotional distress on A.A.

98.     Had the Boy Scout Defendants not acted in such a careless, negligent, and/or reckless manner, they would have known and/or should have known of the conduct of George Fout, as described herein, and of his propensity to engage in such activities, such that the Boy Scout Defendants could and/or should have prevented the sexual abuse and the infliction of physical and emotional distress on A.A.

99.     As agents for the Boy Scout Defendants, actual or constructive knowledge to Steve Fout and to adult troop leaders that George Fout posed a risk to the scouts and had a

Highly Confidential

propensity to engage in the grooming and sexual abuse is imputed to the BSA, the NORTH FLORIDA COUNSEL, jointly and severally.

### The BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES Had Constructive Control of the Premises upon which George Fout's Behavior Provided Notice of the Impending Abuse.

100.    On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at the BSA administrated event on the BSA property.

101.    George Fout's grooming and resulting psychological and emotional damage relating to A.A.'s sexual abuse often occurred on property owned and controlled by the BSA and Silver Shores and during events sanctioned and administrated by the Boy Scout Defendants.

102.    Similarly, on multiple and continuing occasions, notice of George Fout's propensity to commit abuse, including without limitation, his grooming of A.A. and at least four (4) other scouts occurred on property owned and controlled by Boy Scout Defendants and during events sanctioned and administrated by the BSA, the Council and Silver Shores.

### George Fout's Abuse of A.A.

103.    A.A. was introduced to his abuser, George Fout through his membership in the BSA Troop 448.

104.    At all times material hereto, George Fout was an adult.  At all times material hereto, A.A. was a minor.

105.    At all times relevant hereto, for the purpose of furthering his duties as an Assistant Scoutmaster, George Fout sought and gained the then minor A.A.'s trust, friendship, admiration and obedience. As a result, A.A. was conditioned to comply with George Fout's direction and to look to him as an authority figure.

18

BSA-PLAN_01422962

SA 1216

106.    At all relevant times hereto, using the power, authority and trust of his position as an Assistant Scoutmaster, and availing himself of the Boy Scout Defendants' representations to parents and scouts that tire BSA was a moral and safe place for young boys, George Fout groomed, enticed, induced, directed, coerced and forced A.A. to engage in deviant sexual acts with him.

107.    As the foreseeable extension of the grooming process, George Fout committed a sexual abuse, sexual touching, penetration, oral and anal sodomy and other acts of sexual battery constituting violations of Section 794.011, Florida Statutes, upon A.A.

108.    Eventually, George Fout escalated the frequency of the sexual battery to the point where he was sexually abusing A.A. approximately once a month.

109.    At all times relevant hereto, George Fout utilized physical, emotional and spiritual force and persuasion to impose his moral will upon the then minor A.A. in order to commit grievous, unspeakable acts of sexual abuse upon the person of then minor A.A. all of which acts constitute flagrant abuse of the symbolism, power and authority of his position as an Assistant Scoutmaster.

110.    The grooming and other notice of George Fout's propensity for abuse would frequently occur on the premises of SILVER SPRINGS SHORES and during sanctioned the BSA events on the BSA property.

111.    The sexual battery would often take place at George Fout's home after scouting events, in which he resided with Steve Fout, his father and the Scoutmaster of Troop 448. Steve Fout was often present in the home during George Fout's sexual battery of A.A.

19

BSA-PLAN_01422963

SA 1217

112.    At times, A.A. would leave scouting events held on Defendants' premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of the BSA policy.

113.    As the sexual battery would continue, without limitation, A.A. would spend the night at the home of Scoutmaster Steve Fout.  This is a clear violation of the BSA policy. During those occasions, A.A. would be abused by Assistant Scoutmaster George Fout. Steve Fout was often in the home often when the incidents of sexual battery occurred.

114.    At no time did the BSA, NORTH FLORIDA COUNCIL, or SILVER SPRINGS SHORES take steps to ensure the non-sleepover between volunteer leaders and youth in the BSA's policy was being implemented and followed by their scoutmasters or scout leaders, and at no time did the BSA, NORTH FLORIDA COUNCIL, or SILVER SPRINGS SHORES take steps to ensure that no one-on-one contact between volunteer leaders and youth were being followed according to the BSA's polices.

115.    A.A. was repeatedly abused under circumstances where he was unable to protect himself or was otherwise unable to avail himself of his legal guardians for their ordinary source of protection or was otherwise relying entirely on The Boy Scout Defendants, and its agents for his protection.

### The BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES Had Actual or Constructive Control of the Premises upon which Sexual Abuse and related Grooming was committed.

116.    On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at a the BSA administrated event on the BSA property.

117.    George Fout's grooming and resulting psychological and emotional damage relating to A.A.'s sexual abuse often occurred on property owned and controlled by the BSA and

20

BSA-PLAN_01422964

SA 1218

Silver Shores and during events sanctioned and administrated by the BSA, the Council and Silver Shores.

118.    Similarly, on multiple and continuing occasions, notice of George Fout's propensity to commit abuse, including without limitation, his grooming of A.A. and at least three (3) other scouts occurred on property owned and controlled by the BSA and Silver Shores and during events sanctioned and administrated by the BSA, the Council and Silver Shores.

## The BSA's History of Pedophilia

119.    The BSA has known for decades of the high degree of risk that adult Scoutmasters and volunteers may sexually abuse minor scout members.

120.    Since the early 1900s, the BSA has maintained a system of "Ineligible Volunteer Files" to track incidents wherein adult Scoutmasters sexually abused scouts. The Ineligible Volunteer Files contain internal memoranda demonstrating the BSA's awareness of the ongoing pedophilia within the BSA, and demonstrated concerns about pedophiles within the BSA harming their reputation and economic interests.

121.    These Ineligible Volunteer Files demonstrate the BSA's vulnerabilities when it comes to pedophilia within the BSA and includes pedophiles' techniques used to enter scouting, their techniques for grooming victims and more.

122.    In approximately 1972, the BSA implemented a system requiring local Council's scouting executives to complete and send in a form with any available supporting information about known or alleged sexual abuse committed by adult Scoutmasters in the executives' jurisdiction. Upon receipt of this information from the local Council, the BSA created an Ineligible Volunteer File for the abuser and added it to the BSA's database.

21

123.    By 1977, the BSA was advising all sponsoring organizations to maintain "two deep leadership" for all scouting activities, wherein two adult Scoutmasters were required to be present at all times. Ostensibly, this precaution was implemented to help prevent sexual abuse in scouting.

124.    Despite the BSA's extensive and long-standing knowledge of the high degree of risk of pedophilia in scouting, the BSA did not implement a sexual abuse-prevention education program until approximately 1988. This program, the Youth Protection Program, was the BSA's first effort to educate scouts and their family members about the risk of sexual abuse in scouting, a risk that continues today.

125.    The BSA has overwhelming evidence that scouting has particular characteristics that make the organization vulnerable to pedophiles, including but limited to:

    a.    Joining the BSA provides pedophiles access to boys alone and away from their families in secluded settings like camp-outs and overnight hikes;

    b.    The BSA repeatedly encourages young boys to strictly obey their scout leaders and masters, allowing pedophiles to groom their victims;

    c.    The BSA encourages overnight stays, camping trips and other activities for scouts and scout leaders and masters to be alone together;

    d.    Scouting provides opportunities for a pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him;

    e.    A pedophile scout leader can, depending on the pedophile's preferred victim age, volunteer for and be sure to have access only to boys of a certain age;

    f.    The BSA conditions boys to the concept of strict obedience to the scout leader and a bonding mechanism that pedophiles crave;

    g.    The BSA promotes the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a pedophile's efforts to keep his victims silent and compliant;

22

BSA-PLAN_01422966

SA 1220

h.      The BSA conducted no criminal background checks on its volunteers;

i.       The BSA did not prohibit adults from sleeping in tents with boys overnight;

j.       The BSA did not prohibit adult leaders from spending time alone with individual scouts; i. The BSA did not prohibit adult scout leaders from having contact with scouts outside of authorized scouting activities;

k.      For decades, the BSA re-admitted pedophiles it had previously removed for child abuse after a period of the BSA "probation," thereby exposing unsuspecting children to sexual abuse;

l.       The BSA had a practice of not reporting scout abuse incidents to law enforcement;

m.     The BSA had a pattern of reaching an accommodation with a pedophile, in which the pedophile would resign from scouting and the BSA would agree not to report the child sexual abuse to civil authorities;

n.      The BSA refused requests to share its list of known abusers with other youth organizations, knowing that pedophiles it had ejected often joined other youth-serving organizations;

o.      The BSA refused to produce its I.V. files to its review board and scout safety consultants, who were endeavoring to develop and implement meaningful safeguards and barriers to pedophile infiltration;

p.      The BSA refused to fingerprint, photograph or perform background checks on its adult volunteers, allowing removed pedophiles using an alias to sneak back in to scouting through another troop;

q.      The BSA refused to utilize widely accepted organizational best practices that would establish reasonable barriers to intrusion by pedophiles;

r.       The BSA refused to educate local councils, staff, and troop leaders regarding the true risks posed by pedophiles to scouts; and

s.       The BSA refused to effectively monitor local councils and troops to ensure that appropriate safeguards were being used in the selection and retention of adult scout leaders.

Highly Confidential

BSA-PLAN_01422967

**SA 1221**

126.    The BSA's internal records, known as the "Ineligible Volunteer" files (hereinafter "the I.V. files"), are a unique repository of documents the BSA secretly began amassing shortly after the BSA's founding in 1910.

127.    The I.V. files reveal that the BSA, far from being safe and wholesome, has long attracted and been a sanctuary for pedophiles.

128.    The I.V. files contain internal memoranda demonstrating the BSA's awareness and concern about the threat that pedophiles in the BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community.

129.    The IV Files contain internal memoranda demonstrating BSA's awareness and concern about the threat that pedophiles in BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community. See Exhibit "A" (The Ernst Memorandum evidencing the BSA and the local council's ongoing conspiracy to suppress from the public its certain knowledge of its pedophile infiltration problem), BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that have successfully infiltrated scouting. The I.V. files highlight BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles' patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

130.    The BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that had successfully infiltrated scouting. The I.V. files highlight the BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles

24

BSA-PLAN_01422968

SA 1222

patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

131.    The overwhelming evidence the I.V. files present shows that for a century the BSA has known of the BSA's distinctive characteristics that render scouts particularly prone to pedophiles' abuse.

132.    By 1935, the BSA had accumulated approximately 2,000 files on pedophiles that had successfully infiltrated or attempted to infiltrate its program.

133.    In the 1970s, the BSA recognized the potential liabilities represented by possessing and maintaining the I.V. files. By 2005, the BSA's secret cache of files on pedophiles exceeded 20,000.

134.    Over the course of two years in the early 1970s, three the BSA executives reviewed and permanently destroyed thousands of I.V. files

135.    The BSA executives kept no retention logs showing which or how many of the files the BSA destroyed. The BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save.

136.    Approximately 6,000 files survived the BSA's file-purge and are in the BSA's possession. Approximately 1900 of those files are now in the public domain.

137.    The files demonstrate that the BSA opened a new I.V. file on a pedophile every other day for fifty years.

138.    The I.V. files demonstrate that the BSA had overwhelming evidence (1) that scouting attracts pedophiles at an alarming rate and (2) of scouting's distinctive characteristics that make it attractive to pedophiles:

25

BSA-PLAN_01422969

SA 1223

139.    Between 1987 and 2005, the BSA settled sixty-one lawsuits in which the BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders. Since 1987, the BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by the BSA to prevent the abuse's facts and circumstances from becoming public.

140.    As between the Boy Scout Defendants and A.A., the Boy Scout Defendants had superior knowledge of the risk of sexual abuse to A.A. by participating in the BSA program, yet failed to warn or otherwise advise A.A. or his guardians of their superior knowledge.

### Negligence of The Boy Scout Defendants – Failure of Policy and Training.

141.    BSA and its agents knew from long experience based on information contained in its Ineligible Volunteer Files that pedophiles had for nearly a century been exploiting vulnerabilities within it organization to gain access to and sexually abuse boys.

142.    BSA and its agents had certain knowledge that pedophiles like George Fout could exploit BSA's vulnerabilities. BSA knew that failure to adopt and implement certain policies and practices to protect scouts would cause scouts, including A.A, to be at heightened risk of pedophilic grooming and sexual abuse.

143.    The BSA's failure to adopt and effectively implement policies and practices to protect scouts in its custody and control included, without limitation:

144.    Permitting fathers to act as Scoutmasters, in a supervisory position over their adult sons, as Assistant Scoutmasters, effectively eliminating certain protections afforded by a two-deep policy;

Highly Confidential

BSA-PLAN_01422970

**SA 1224**

145.    Failing to educate scouts and other adult scout leaders about the grooming behaviors they knew that pedophile scout leaders engaged so that that scouts could recognize, resist, and report the inappropriate behaviors;

146.    Failing to monitor or evaluate scout staff to prevent them from using its program and facilities to gain access, groom, and sexually abuse scouts;

147.    Further, to the extent that the BSA undertook to adopt any such policies, they were insufficient for the foreseeable risk presented and were not properly implemented or enforced.

**Negligence of The Boy Scout Defendants – Failure to Protect A.A. from foreseeable abuse by George Fout.**

148.    The Boy Scout Defendants, each having a special relationship with A.A. and over Steve Fout and George Fout.

149.    The actual or constructive knowledge that The Boy Scout Defendants and Steve Fout possessed of George Fout's grooming of A.A. and other scouts in Troop 448 rendered the abuse of A.A. not only foreseeable, but highly likely.

150.    In addition, the access that George Fout had to vulnerable children like A.A., the potential to take advantage of the special relationship with potential victims and the failures of BSA policy which George Fout used to gain access, groom, and to sexually abuse A.A., were precisely the same foreseeable vulnerabilities that BSA had documented in tens of thousands of ineligible volunteer files it had been keeping for nearly a century.

Highly Confidential

BSA-PLAN_01422971

**SA 1225**

## ACTIONS AGAINST SILVER SPRINGS SHORES

### Count I: Negligence of Defendant SILVER SPRINGS SHORES

151.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

152.    Defendant, SILVER SPRINGS SHORES undertook to promote and provide a scouting program for children and minor boys.

153.    Having undertaken this activity, SILVER SPRINGS SHORES had duty to act with reasonable care and to take precautions so that persons may not be injured.

154.    In addition, Defendant SILVER SPRINGS SHORES had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

155.    This special relationship between Defendant SILVER SPRINGS SHORES and A.A. gave rise to a right of protection for A.A.

156.    Based on the special protective relationship with A.A., Defendant SILVER SPRINGS SHORES had a duty to protect A.A. from reasonably foreseeable harm.

157.    In addition, Defendant, SILVER SPRINGS SHORES had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives SILVER SPRINGS SHORES a duty to control the actions of George Fout.

158.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of SILVER SPRINGS SHORES.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

Highly Confidential

BSA-PLAN_01422972

SA 1226

159.     The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to SILVER SPRINGS SHORES that sexual abuse is not only foreseeable, but likely.

160.     SILVER SPRINGS SHORES and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

161.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by SILVER SPRINGS SHORES.

162.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

163.     Defendant SILVER SPRINGS SHORES breached the duty it owed A.A., by acts or omissions which included, without limitation:

    a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

Highly Confidential

BSA-PLAN_01422973

SA 1227

    d.    Failing to advise or warn A.A. or his guardian of the history of pedophilia in the BSA and to affirmatively educate A.A. and guardian to identify and avoid abuse.

    e.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

164.    As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

165.    Further, as a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

166.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

BSA-PLAN_01422974

SA 1228

## Count II: Breach of Fiduciary Duty of Defendant SILVER SPRINGS SHORES

167.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

168.     As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and SILVER SPRINGS SHORES, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in SILVER SPRINGS SHORES and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

169.     As a result, SILVER SPRINGS SHORES owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

170.     In addition, Defendant, SILVER SPRINGS SHORES had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives SILVER SPRINGS SHORES a duty to control the actions of George Fout.

171.     George Fout engaged in a process of grooming of A.A. and three other scouts under the care of SILVER SPRINGS SHORES.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

172.     The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to SILVER SPRINGS SHORES that sexual abuse is not only foreseeable, but likely.

173.     SILVER SPRINGS SHORES and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

31

BSA-PLAN_01422975

SA 1229

174.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by SILVER SPRINGS SHORES.

175.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

176.     Defendant SILVER SPRINGS SHORES breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

    a.     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

    d.     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

177.     As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

178.     Further, as a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional,

Highly Confidential

BSA-PLAN_01422976

SA 1230

psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

179.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## ACTIONS AGAINST NORTH FLORIDA COUNCIL

### Count III: Negligence of Defendant NORTH FLORIDA COUNCIL

180.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

181.    Defendant, NORTH FLORIDA COUNCIL undertook to promote and provide a scouting program for children and minor boys

182.    Having undertaken this activity, NORTH FLORIDA COUNCIL had duty to act with reasonable care and to take precautions so that persons may not be injured.

183.    In addition, Defendant NORTH FLORIDA COUNCIL had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

Highly Confidential

BSA-PLAN_01422977

SA 1231

184.     This special relationship between Defendant NORTH FLORIDA COUNCIL and A.A. gave rise to a right of protection for A.A.

185.     Based on the special protective relationship with A.A., Defendant NORTH FLORIDA COUNCIL had a duty to protect A.A. from reasonably foreseeable harm.

186.     In addition, Defendant, NORTH FLORIDA COUNCIL had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives NORTH FLORIDA COUNCIL a duty to control the actions of George Fout.

187.     George Fout engaged in a process of grooming of A.A. and three other scouts under the care of NORTH FLORIDA COUNCIL.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

188.     The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to NORTH FLORIDA COUNCIL that sexual abuse is not only foreseeable, but likely.

189.     NORTH FLORIDA COUNCIL and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

190.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by NORTH FLORIDA COUNCIL.

191.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by The Boy Scout Defendants.

34

BSA-PLAN_01422978

SA 1232

192.     Defendant, NORTH FLORIDA COUNCIL breached the duty it owed A.A., by acts or omissions which included, without limitation:

a.     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

b.     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c.     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

d.     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

193.     As a direct and proximate cause of Defendant, NORTH FLORIDA COUNCIL's negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

194.     Further, as a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

195.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and

35

BSA-PLAN_01422979

SA 1233

bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count IV: Breach of Fiduciary Duty of Defendant NORTH FLORIDA COUNCIL

196.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

197.    As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and NORTH FLORIDA COUNCIL, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in NORTH FLORIDA COUNCIL and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

198.    As a result, NORTH FLORIDA COUNCIL owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

199.    In addition, Defendant, NORTH FLORIDA COUNCIL had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives NORTH FLORIDA COUNCIL a duty to control the actions of George Fout.

200.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of NORTH FLORIDA COUNCIL.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

36

BSA-PLAN_01422980

SA 1234

201.     The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to NORTH FLORIDA COUNCIL that sexual abuse is not only foreseeable, but likely.

202.     NORTH FLORIDA COUNCIL and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

203.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by NORTH FLORIDA COUNCIL.

204.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

205.     Defendant NORTH FLORIDA COUNCIL breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

    a.     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

37

BSA-PLAN_01422981

SA 1235

    d.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

206.    As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

207.    Further, as a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

208.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## ACTIONS AGAINST BSA

### Count V: Negligence of Defendant BSA

209.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

Highly Confidential

BSA-PLAN_01422982

SA 1236

210.   Defendant, BSA undertook to promote and provide a scouting program for children and minor boys.

211.   Having undertaken this activity, BSA had duty to act with reasonable care and to take precautions so that persons may not be injured.

212.   Defendant BSA had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

213.   This special relationship between Defendant BSA and A.A. gave rise to a right of protection for A.A.

214.   Based on the special protective relationship with A.A., Defendant BSA had a duty to protect A.A. from reasonably foreseeable harm.

215.   In addition, Defendant, BSA had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives BSA a duty to control the actions of George Fout.

216.   George Fout engaged in a process of grooming of A.A. and three other scouts under the care of BSA.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

217.   The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to BSA that sexual abuse is not only foreseeable, but likely.

218.   BSA and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

39

219.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by BSA.

220.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

221.     Defendant BSA breached the duty it owed A.A., by acts or omissions which included, without limitation:

a.     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

b.     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c.     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

d.     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

222.     As a direct and proximate cause of Defendant BSA' negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

223.     Further, as a direct and proximate cause of Defendant BSA' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical

40

BSA-PLAN_01422984

SA 1238

manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

224.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count VI: Breach of Fiduciary Duty of Defendant BSA

225.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

226.     As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and BSA, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in BSA and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

227.     As a result, BSA owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

228.     In addition, Defendant, BSA had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives BSA a duty to control the actions of George Fout.

41

Highly Confidential

229.     George Fout engaged in a process of grooming of A.A. and three other scouts under the care of BSA.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

230.     The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to BSA that sexual abuse is not only foreseeable, but likely.

231.     BSA and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

232.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by BSA.

233.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

234.     Defendant BSA breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

   a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

   b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

   c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise

42

Highly Confidential

BSA-PLAN_01422986

SA 1240

conduct the activities of the Troop pursuant to the required and due standards of care.

d.   Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

235.   As a direct and proximate cause of Defendant BSA' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

236.   Further, as a direct and proximate cause of Defendant BSA' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

237.   As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Highly Confidential

BSA-PLAN_01422987

SA 1241

**VICARIOUS LIABILITY COUNTS**

**Count VII: Vicarious Liability of Defendants SILVER SPRINGS SHORES,
NORTH FLORIDA COUNCIL and BSA
for the Sexual Battery by George Fout**

238.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

239.    At all relevant times, George Fout, as Assistant Scoutmaster, was acting as agent for the Boy Scout Defendants by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

240.    Accordingly, the Boy Scout Defendants are vicariously liable for the acts and omissions and breaches of fiduciary duties of George Fout.

241.    George Fout's acts and omissions and breaches of fiduciary duties include, without limitation, committing acts of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93 and performing sexual battery upon A.A.

242.    As a result of acts, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial, for which such damages, the Boy Scout Defendants are vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court

Highly Confidential

BSA-PLAN_01422988

SA 1242

deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

<u>**Count VIII: Vicarious Liability of Defendants SILVER SPRINGS SHORES,
NORTH FLORIDA COUNCIL and BSA
for the Negligence and Breach of Fiduciary Duty of Steve Fout**</u>

243.   Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

244.   At all relevant times, Steve Fout, as Scoutmaster, was acting as agent for Defendants the Boy Scout Defendants by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

245.   Accordingly, Boy Scout Defendants are vicariously liable for the acts and omissions and breaches of fiduciary duties of Steve Fout.

246.   Steve Fout's acts and omissions and breaches of fiduciary duties include, without limitation,

a)   Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

b)   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

c)   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

d)   Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

45

BSA-PLAN_01422989

SA 1243

e)   Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

247.   As a direct and proximate cause of Steve Fout's negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

248.   Further, as a direct and proximate cause of Defendant Steve Fout's negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

249.   As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count IX: Vicarious Liability of Defendants NORTH FLORIDA COUNCIL and BSA for the Negligence and Breach of Fiduciary Duty of SILVER SPRINGS SHORES**

250.   Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

46

BSA-PLAN_01422990

SA 1244

251.    At all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendants NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

252.    Accordingly, Defendants NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of SILVER SPRINGS SHORES.

253.    SILVER SPRINGS SHORES acts and omissions and breaches of fiduciary duties include, without limitation,

    f)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    g)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    h)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

    i)    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

    j)    Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

254.    As a direct and proximate cause of SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

47

Highly Confidential

BSA-PLAN_01422991

SA 1245

255.     Further, as a direct and proximate cause of SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

256.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count X: Vicarious Liability of Defendant BSA for the Negligence and Breach of Fiduciary Duty of NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES**

257.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

258.     At all relevant times, NORTH FLORIDA COUNCIL was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

259.     In addition, at all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

48

Highly Confidential

260.     Accordingly, Defendant BSA is vicariously liable for the acts and omissions and breaches of fiduciary duties of NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

261.     NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES acts and omissions and breaches of fiduciary duties include, without limitation,

k)  Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

l)  Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

m)  Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

n)  Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

o)  Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

262.     As a direct and proximate cause of NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

263.     Further, as a direct and proximate cause of NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES negligent acts and omissions and breach of fiduciary duty,

49

Highly Confidential

BSA-PLAN_01422993

SA 1247

A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

264.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count XI Fraud, Misrepresentation and Fraudulent Concealment

265.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

266.    Congress founded BSA in the United States in 1910.

267.    Throughout its history, the BSA has consistently held itself out to the public as a "moral and safe" environment for boys to participate in healthy outdoor activities and to be given proper guidance and instruction. Millions of parents and scouts have placed then- trust in the BSA.

268.    Since 1910, hundreds of millions of parents have entrusted their sons to BSA's care, guidance and instruction. Since its inception, BSA aggressively marketed the wholesomeness and safety of its programs to the American Public.

50

Highly Confidential

BSA-PLAN_01422994

SA 1248

269.    The BSA engages in affirmative commercial efforts which sophisticatedly use powerful American symbols and modern advertising techniques to sell a national belief that the BSA could best mold the proper expression of American boyhood.

270.    The BSA promotes itself as a vehicle for boys to be instructed in good citizenship patriotism, and efficient social organization. Its brand consistently promotes an image of providing a safe environment in which they can develop "patriotism, self-reliance and kindred virtues." For example, a copy of "BSA Mission" is attached as Exhibit "B".

271.    Paradoxically, the BSA promotes the wholesomeness of its program while knowing that since the 1940s, it has been secretly removing Scoutmasters for child sexual abuse at an alarming rate, which in the 1970s reached an average of one every three days. Its own records demonstrate that it has long known that scouting attracts pedophiles in large numbers and that scouts, far from being safe, are at the heightened risk of sexual abuse by child molesters

272.    The BSA fraudulently concealed from Congress, scouts, their parents and the American taxpayer BSA's certain knowledge that pedophiles had been infiltrating BSA in large numbers for many years, as more particularly described in Paragraphs 119 - 140

273.    The BSA, pursuant to its Congressional Charter in 1916, later codified by 36 U.S.C. Chapter 309 is required to file an annual report to Congress.

274.    The BSA fraudulently concealed the said information from A.A and his guardian. BSA also misrepresented to scouts, their parents and the American taxpayer that the scouts were safe in scouting programs when, in fact, scouts were at an unreasonably heightened risk of sexual abuse by adult scout leaders, BSA made said misrepresentations to A.A and his guardian.

51

BSA-PLAN_01422995

SA 1249

275.    BSA's internal records known as the "Ineligible Volunteer" files (hereinafter referred to as "The IV Files") are a unique repository of documents BSA secretly began amassing shortly after its founding in 1910.

276.    Between 1987 and 2005, BSA settled sixty-one lawsuits in which BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders.

277.    Since 1987, BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by BSA to prevent the facts and circumstances of the abuse from becoming public.

278.    BSA continues to make false and misleading public statements regarding the risks of sexual abuse in scouting; continues to minimize and downplay the harm of sexual abuse to children in scouting; fails to reach out to provide support and assistance to boys it knows were sexually abused by adult scout leaders; and continues to deny the truth about its historical knowledge of the nature and extent of sexual abuse of scouts by adult scout leaders.

279.    BSA failed to establish reasonable safeguards to prevent pedophiles from entering its programs.

280.    A.A. and his guardians trusted the BSA and reasonably relied upon the BSA's representations that it presented a moral and safe place for boys.

281.    BSA deliberately withheld information from Congress in its annual report from scouts and their parents, including A.A and his guardian.

282.    It withheld information about the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA was aware; and the methods pedophiles had been using to gain access to scouts, to groom them for abuse, and to keep them silent. BSA's

52

timely communication of this information would have enabled scouts, including A.A., to protect himself from sexual abuse by pedophiles in scouting. It would have enabled Congress to perform its constitutional oversight function over a congressionally-chartered, tax-payer funded and tax-exempt youth organization which brings unscreened, unvetted adults into contact with tens of millions of children annually.

283.    BSA had a financial incentive to withhold facts and information about predatory and pedophilic Scoutmasters and/or Assistant Scoutmasters.

284.    Since 1910, BSA has derived millions of dollars per year licensing the rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise to affiliated scouting organizations throughout the United States and abroad (See 36 U.S.C, § 30905). BSA has realized income from these federally-protected assets by marketing them to parents and their children, including A.A.

285.    BSA's marketing includes encouraging parents to enroll their children in BSA. Enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to BSA. This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others. This system includes overnight outings, camping events, and trips away from parents. The system is reward based, obligating the child to purchase emblems, badges, and other Scouting paraphernalia, which in turn creates profit for the federally charted organization.

286.    In addition to being federally created, federally chartered, and endowed by Congress with exclusive economic rights, BSA is funded by the federal government, private donations, membership dues, corporate sponsors, and special events

Highly Confidential

BSA-PLAN_01422997

**SA 1251**

287.    BSA is the 18th largest nonprofit in the United States, with income exceeding $780 million dollars a year.

288.    Upon information and belief, the Boy Scout Defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by Scoutmasters and Assistant Scoutmasters and prevent disclosure, prosecution and civil litigation including, but not limited to:

  a.    Failure to report incidents of abuse to law enforcement or child protection agencies;

  b.    Concealment of abuse they had substantiated and failure to seek out and redress the injuries its Scoutmasters and leaders had caused; and

  c.    Failure to advise local scouting agencies of the rampant problem of sexual abuse of scouts by Scoutmasters and leaders and that BSA's system of "Ineligible Volunteer Files" was ineffective at curbing the problem.

289.    Based on these actions, the Boy Scout Defendants engaged in fraudulent concealment and are estopped from asserting the defense of statute of limitations and/or laches.

290.    A.A. alleges that had the BSA notified A.A., his guardian, civil authorities, or the scouting public of the pervasiveness of sexual abuse by the BSA's adult scout leaders, A.A. would either not have joined the BSA or not been allowed by his guardian to join the BSA.

291.    Alternately, if the BSA had educated A.A. and his guardian of the nature of risks of abuse by adult scout leaders, that he would have taken steps to protect himself from the grooming and sexual abuse to which his adult scout leader subjected him.

292.    BSA had notified or educated A.A. and his guardian of the nature of risks of abuse by adult scout leaders, he would not have, and would not have been permitted continuous sleep-overs at the home of Steve Fout in the bedroom of George Fout.

54

Highly Confidential

BSA-PLAN_01422998

SA 1252

293.    The above described conduct of the Boy Scout Defendants was willful and outrageous, was committed in reckless disregard of the probability of causing A.A.'s severe emotional distress, mental anguish, humiliation, and psychological, spiritual, and physical injury and illness of A.A.

294.    Additionally, in doing the acts as described herein, the Boy Scout Defendants were guilty of fraud, oppression, or malice.  As a direct and proximate result of the practice of deceit, deception, concealment and fraud by the Boy Scout Defendants and George Fout, A.A. was victimized by George Fout and sustained the profound injuries, losses and damages as set forth therein

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Dated: August 30, 2019.

MORGAN & MORGAN, P.A.
Business Trial Group

*s/Paul L. SanGiovanni*
**Paul L. SanGiovanni, Attorney at Law**
Florida Bar No. 0513164
**Cari Whitmire, Attorney at Law**
Florida Bar Number 1015584
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone:  (407)418-6041
Facsimile:  (407)245-3394
Primary E-mail:  PSangi@forthepeople.com
Primary E-mail:  CWhitmire@forthepeople.com
Secondary E-mail: MTodd@forthepeople.com

55

1972



**BOY SCOUTS OF AMERICA**
North Brunswick · New Jersey 08902 · 201 249-6000

INTRAORGANIZATION COMMUNICATION

December 4, 1972

PERSONAL AND CONFIDENTIAL

TO ALL SCOUT EXECUTIVES:

SUBJECT:  Maintaining Standards of Leadership

The attached information on Maintaining the Standards of Leadership of the
Boy Scouts of America has been carefully developed as a guideline for
Scout Executives.

This is the first time such information has been printed, and because of
the misunderstandings which could develop if it were widely distributed,
we suggest that after you have read it, you file it with other policy
statements without making photocopies or sharing it beyond the top
management of your council.

If you have any questions, please do not hesitate to write or call us.

Sincerely,

Paul Ernst

Paul I. Ernst, Executive
Registration and Subscription

cm
cc:  Regional Directors
     Management Staff
Attachment

BSA 02205

**Exhibit "A" to Second Amended Complaint**

e ID: 190800135

MAINTAINING STANDARDS OF LEADERSHIP

Since its inception, the BSA has maintained its right to set standards of leadership in the areas of age, citizenship, sex, education, morals and emotional stability. This position is set forth in the Bylaws:

> Article II, Section 2, Clause 3 "No person shall be approved as a leader unless, in the judgment of Boy Scouts of America, he possesses the moral, educational, and emotional qualities deemed necessary for leadership and satisfies such other leadership qualifications as it may from time to time require."

> Other supporting Articles are listed in Appendex A.

The local council and the National Council must approve all applications (Bylaws Article XVIII, Section I, Clause 3).

These standards were developed solely to protect the youth of America and their enforcement in no way infringes on the rights of any individuals, nor is refusal of registration to be construed as persecution or defamation of character. All leaders register for a limited term (usually one year) and reregistration at the end of that period is also subject to approval (Bylaws, Article XV, Section 4).

When a registered leader commits an act or conducts himself in a manner that would seem to cause him to be unfit as a leader or an associate of boys, the Scout Executive should take the following steps:

1) Inform the Registration and Subscription Executive at the National Office of the general nature of the allegations.

2) Secure hard evidence about the situation (signed statements by principals, police reports, court records, newspaper clippings, etc.).

3) Submit evidence and the confidential record sheet to Registration and Subscription.

4) Upon notification from Registration, write a letter to the individual (Appendix B) and hand deliver it along with a volunteer.

5) After the letter has been read, verbally tell the person the reasons for refusal to register. Make no accusations -- say we have evidence to convince us that your --(financial affairs) (moral life) (lack of leadership ability) do not meet the standards for leadership in the BSA. Indicate that the BSA is not sharing this information with anyone and only wish him to stop all Scouting activity.

   After this visit, write down the main parts of the conversation, who was present and the date, and mail this to Registration and Subscription.

BSA 02206

Case ID: 190800135

-2-

6) If the individual persists, the following review steps are
   to be taken as required:

   A) Initial Step -- The president of the local council will
      appoint three volunteers to act as a committee to review
      the case.

   B) (If Step A does not resolve matter) -- The Regional
      President will appoint a review committee if the person
      is not satisfied with the council's decision.

   C) (If Step B does not resolve matter) -- The President of
      the BSA will appoint a review committee if the individual
      is not satisfied with the Region's decision.

When a Scout Executive receives a confidential inquiry from Registration and
Subscription about a person attempting to register, he should take the
following steps:

1) Secure as rapidly as possible the necessary answers on the
   questionnaire and return to Registration and Subscription.

2) If it is not the same person, the registration certificate will
   be sent to the council.

3) If it is the same person, Registration and Subscription will write
   to the Scout Executive, indicating that the BSA is unwilling to
   register that person because information we have indicates that
   he fails to meet our standards of leadership. If the individual
   questions the statement the Scout Executive may ask him if he
   has ever been in Scouting in the past and been refused membership.

   If the answer is yes, the Scout Executive may say the reasons
   remain the same.

   If the answer is no, and the individual insists there has been a
   mistake, the Scout Executive should instruct him to send a complete
   statement covering his adult years, including address and dates
   lived there, occupations and dates, and names of spouse and children
   to the Registration and Subscription Executive.

In certain cases, an individual who failed to meet the standards of leadership
in the past wishes to register and the circumstances are changed sufficiently
that the BSA is willing to accept the registration on a trial basis. The Scout
Executive will be notified in this situation, and requested to keep a close
watch on the individual for one year and then give a brief report to
Registration and Subscription.

All cases are reviewed periodically in reference to the seriousness of the
offense and the passage of time, and when the standards of leadership seem
to be satisfactorily met, cases are cancelled.

BSA 02207

Case ID: 190800135

Highly Confidential

BSA-PLAN_01423002
SA 1256

-3-

Many times an individual comes to a council seeking registration with the BSA and something unusual causes concern that further checking should be done before registration is completed.

When you find yourself in this situation, we ask that you write or phone directly to Registration and Subscription, asking that we check for any information that might be on file concerning the individual in question. This will immediately help you in your relationships with the individual and give you information as to whether registration should be completed before you do a lot of unnecessary work and make any commitments which could prove embarrassing.

dw-11/15/72

BSA 02208

Case ID: 190800135

Highly Confidential

BSA-PLAN_01423003

**SA 1257**

-4-

Appendix A

Article III, Section 2, Clause 1
Article X, Section 5, Clause 1
Article XII, Section 2
Article XII, Section 3
Article XII, Section 4
Article XV, Section 2, Clause 2, 3, 4, 6, 7
Article XVI, Section 6, Clause 4
Article XVIII, Section 2, Clause 1
Article XVIII, Section 3, Clause 2
Article XVIII, Section 4, Clause 1 - 7
Article XVIII, Section 5, Clause 1 - 2
Article XVIII, Section 7, Clause 1 - 2
Article XVIII, Section 9, 10, 11, 12

dw-11/27/72

BSA 02209

Case ID: 190800135

Highly Confidential

BSA-PLAN_01423004

SA 1258

-5-

Appendix - B

Dear

After a review of your past history with the Boy Scouts, it has been decided not to accept your registration. Registration with the Boy Scouts of America is not automatically granted to everyone. It is a privilege and we reserve the right to refuse registration whenever there is any reason for concern related to the person's association with members or leaders of the Boy Scouts of America.

We, therefore, at this time desire to have you sever your relationship with the Boy Scouts of America. We are making no accusations and will not release this information to anyone, so our action in no way will affect your standing in the community.

Very truly yours,

Scout Executive

dw

BSA 02210

Case ID: 190800135

Highly Confidential

BSA-PLAN_01423005

SA 1259

# The BSA Mission

## MISSION STATEMENT AND PURPOSE

*The mission of the Boy Scouts of America is to prepare young people to make ethical and moral choices over their lifetimes by instilling in them the values of the Scout Oath and Law.*

## SCOUT OATH

*On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight.*

## SCOUT LAW

*A Scout is*

- Trustworthy
- Loyal
- Helpful
- Friendly
- Courteous
- Kind
- Obedient
- Cheerful
- Thrifty
- Brave
- Clean
- Reverent

## Purpose of the BSA

The purpose of this corporation shall be to promote, through organization, and cooperation with other agencies, the ability of boys to do things for themselves and others, to train them in Scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues, using the methods which are now in common use by Boy Scouts.

—Federal Charter, sec. 3.

One of the goals of the Boy Scouts of America is to provide, through chartered organizations, a program for boys, young men, and young women designed to encourage them to be faithful in their religious duties, build desirable qualities of character, train and involve them in the responsibilities of participating citizenship, and develop in them personal fitness.

> *Exhibit "B to Second Amended Complaint*

Highly Confidential

BSA-PLAN_01423006
**SA 1260**

Special emphasis will be placed in assisting the home, religious groups, and schools in achieving success in the development of abiding values in the lives of young people.

All programs will be directed toward helping to develop the full potential of each member.

## The Council's Purpose

The purpose of the council is to guide and support its districts for the achievement of the movement's purpose. (A successful district meets Quality District requirements.) The end result of effective district support is continued growth in membership, with those members receiving a quality program.

## The Function of the Districts

All districts are responsible for carrying out functions in four areas:

1. Membership
2. Finance
3. Program
4. Camp promotion
5. Training
6. Activities and civic service
7. Advancement and recognition
8. Unit service (commissioner service)

The order in which the functions are listed is not meant to suggest the order of their importance, but the natural interrelationship and flow of the functions. The movement cannot achieve its purpose without first organizing units and enrolling members. The district cannot support its units without the funds to do it. Unit programs are supported by the district through its program functions and unit service. All four functions are equally important and necessary. If one suffers from lack of attention, all the work of the district suffers.

The functions of the district include

- Extending opportunities for youth to join a pack, troop, team, or crew
- Helping existing units provide a quality program for their youth
- Marshaling the resources of the territory in terms of volunteers and money

Its specific duties are selling the use of Scouting and providing the essential services. The district committee sells the use of the program to community organizations and helps to organize new units. It provides those things essential to successful Scouting that the chartered organization cannot easily provide, including

- Guidance in the selection of unit leadership
- Training for unit personnel in the techniques of good program
- Interunit activities that stimulate good unit program through participation and competition
- Promotion of the BSA camping and outdoor program
- Promotion of the BSA advancement program by providing merit badge counselors and coaching unit committees on advancement procedures
- Giving guidance to units through effective commissioner service

The district serves as a vehicle by which Scouting services and programs are carried to the chartered organization and units. It serves as a sounding board for chartered organization and unit needs and thus enables the consideration of those needs as the council program is planned. It also participates in determining the council budget and fund-raising for the financing of its program.

Filing # 95894464 E-Filed 09/18/2019 11:36:25 AM

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,

       Plaintiff,

v.

THE BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, the
NORTH FLORIDA COUNCIL,
INC., BOYS SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, and
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,
a corporation authorized to do
business in Florida,

       Defendants.

CASE NO. 2016-CA-000167

_____/

### DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION
### OF TIME TO RESPOND TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants, Boy Scouts of America ("BSA"), North Florida Council, Inc. ("North Florida Council"), and Silver Springs Shores Presbyterian Church, Inc. ("Silver Springs") (collectively, "Defendants"), submit this *unopposed* motion for an extension of time to respond to Plaintiff's Second Amended Complaint for Damages filed on August 30, 2019. In support, Defendants state the following:

1.      On July 24, 2019, this Court entered its Amended Order on Defendant Silver Spring Shores Presbyterian Church, Inc's Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike Prejudgment Interest and Amended Order on Defendants Boy Scouts of America and North Florida Council, Inc's Motion to Dismiss Amended Complaint and Request

BSA-PLAN_01423009

**SA 1263**

CASE NO. 2016-CA-000167

for Judicial Notice and Consideration of Certain Material in Support of their Motion to Dismiss the Amended Complaint ("Omnibus Dismissal Order").

2.      On August 30, 2019, Plaintiff filed his eleven-count Second Amended Complaint.

3.      Given the complexity of the issues and the respective calendars for BSA, North Florida Council, and Silver Springs, Defendants respectfully move the Court to extend the deadline for Defendants to respond to the Second Amended Complaint through Wednesday, October 16, 2019.

4.      This motion is made in good faith and not for purposes of delay.

5.      Plaintiff's counsel does not oppose the requested extension, and no party will be prejudiced by the instant motion.

WHEREFORE, Defendants respectfully request entry of the attached Agreed Order granting them the requested extension of time until Wednesday, October 16, 2019 to respond to Plaintiff's Second Amended Complaint.

Highly Confidential

BSA-PLAN_01423010

**SA 1264**

CASE NO. 2016-CA-000167

Respectfully submitted by,

| CLARKE SILVERGLATE, P.A. | WICKER SMITH O'HARA MCCOY & FORD, P.A. |
|---|---|
| 799 Brickell Plaza, 9th Floor | |
| Miami, Florida 33131 | 390 N. Orange Ave., Suite 1000 |
| Telephone: (305) 377-0700 | Orlando, FL 32801 |
| Facsimile: (305) 377-3001 | Phone: (407) 843-3939 |
| | Fax: (407) 649-8118 |
| By: /s/Spencer H. Silverglate | |
|     Spencer H. Silverglate | By: /s/Raychel A. Garcia |
|     Florida Bar No. 769223 |     Raychel A. Garcia |
|     ssilverglate@cspalaw.com |     Florida Bar No. 091096 |
|     mpedraza@cspalaw.com |     ORLcrtpleadings@wickersmith.com |
|     Francisco Ramos, Jr. |     *Attorneys for Silver Springs Shores* |
|     Florida Bar No. 114766 |     *Presbyterian Church, Inc.* |
|     framos@cspalaw.com | |
|     acastro@cspalaw.com | |
|     Shannon P. McKenna | |
|     Florida Bar No. 385158 | |
|     smckenna@cspalaw.com | |
|     khickson@cspalaw.com | |
|     *Attorneys for Boy Scouts of America* | |
|     *And North Florida Council, Inc.* | |

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 18th day of September, 2019 to all counsel of record.

CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
    Spencer H. Silverglate

Highly Confidential

BSA-PLAN_01423011

SA 1265

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,

      Plaintiff,

v.

THE BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, the
NORTH FLORIDA COUNCIL,
INC., BOYS SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, and
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,
a corporation authorized to do
business in Florida,

      Defendants.

_____/

CASE NO. 2016-CA-000167

**AGREED ORDER GRANTING DEFENDANTS'
UNOPPOSED MOTION FOR EXTENSION OF TIME
TO RESPOND TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

THIS CAUSE having come before the Court upon Defendants' Unopposed Motion for

Extension of Time to Respond to Plaintiff's Second Amended Complaint dated September [__],

2019, and the Court having reviewed the Unopposed Motion, having been advised of agreement

by and between counsel for parties, and being otherwise duly advise in the premises, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion is GRANTED.  Defendants

BSA, North Florida Council, and Silver Springs shall file their response to Plaintiffs Second

Amended Complaint on or before October 16, 2019.

Highly Confidential

BSA-PLAN_01423012

**SA 1266**

DONE AND ORDERED in Chambers in Marion County, Florida this 24 day of September, 2019.

_Edward L. Scott_
_____
EDWARD L. SCOTT
CIRCUIT JUDGE

cc:    <u>Counsel for Plaintiff:</u>
Paul L. SanGiovanni, psangi@forthepeople.com, mtodd@forthepeople.com

<u>Counsel for BSA and North Florida Council:</u>
Spencer H. Silverglate, ssilverglate@cspalaw.com,
mpedraza@cspalaw.com Francisco Ramos, Jr., framos@cspalaw.com,
acastro@cspalaw.com Shannon P. McKenna, smckenna@cspalaw.com,
khickson@cspalaw.com

<u>Counsel for Silver Springs Shores Presbyterian Church, Inc.:</u>
Rachel Garcia, rgarcia@wickersmith.com, ndurham@wickersmith.com

Highly Confidential

BSA-PLAN_01423013

**SA 1267**

81910-5

IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND FOR
MARION COUNTY, FLORIDA

A.A.,                                          CIRCUIT CIVIL DIVISION

      Plaintiff,                          CASE NO. 2016-CA-000167

vs.

THE BOY SCOUTS OF AMERICA, a
corporation authorized to do business in
Florida, the NORTH FLORIDA
COUNCIL, INC., BOY SCOUTS OF
AMERICA, a corporation authorized to
do business in Florida, and SILVER
SPRINGS SHORES PRESBYTERIAN
CHURCH, INC, a corporation
authorized to do business in Florida,

      Defendant.

_____/

### DEFENDANT'S, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC. ("Silver Springs"), by and through the undersigned counsel and pursuant to the applicable Florida Rules of Civil Procedure, hereby files this Motion to Dismiss Plaintiff's Second Amended Complaint and Motion to Strike Prejudgment Interest, and in support thereof states as follows:

1.      On March 9, 2016, Plaintiff filed his original Complaint in this matter.

2.      Soon after, this Defendant indicated intention to file a Motion to Dismiss Plaintiff's Original Complaint. However, this Defendant agreed with Plaintiff to withhold filing its Motion to Dismiss in exchange for Plaintiff counsel's agreement to amend the original complaint.

3.      As such, on December 14, 2018, Plaintiff filed an Amended Complaint.

Highly Confidential

BSA-PLAN_01423014

SA 1268

CASE NO. 2016-CA-000167

4.      On August 20, 2018, this Defendant filed its Motion to Dismiss and Motion to Strike Prejudgment Interest.

5.      On July 24, 2019, this honorable court granted this Defendant's Motion to Dismiss Plaintiff's Amended Complaint without prejudice.

6.      On August 30, 2019, Plaintiff filed a Second Amended Complaint.

7.      Plaintiff asserts a negligence action arising out of the alleged sexual battery of A.A. by George Fout at various unknown times in the private bedroom of George Fout. ***See Plaintiff's Second Amended Complaint at Paragraph 107, a copy of which is attached hereto as Exhibit A***.

8.      Plaintiff claims that this Defendant was negligent for failing to prevent A.A. from participating in sleepovers with BSA volunteers.

9.      Plaintiff goes on to allege that Defendant breached its duties to A.A., to whom the Second Amended Complaint alleges Defendant had a special relationship. Plaintiff also alleges that Defendant is vicariously liable for the actions of George Fout and Steve Fout.

10.     There are no allegations to support any of Plaintiff's claims contained in Plaintiff's Second Amended Complaint.

11.     As such, this Defendant now moves to dismiss all counts of Plaintiff's Second Amended Complaint on the following grounds:

   a.   Counts I and II should be dismissed because Plaintiff has failed to sufficiently allege a special relationship existed between this Defendant and A.A.

   b.   Alleging a "special relationship" between this Defendant and A.A. is a legal conclusion, which is not supported by any of the facts alleged by Plaintiff.

- 2 -

BSA-PLAN_01423015

SA 1269

CASE NO. 2016-CA-000167

Moreover, Plaintiff fails to allege that a special relationship existed at the time of the sexual abuse as Plaintiff does not provide any dates to indicate when the abuse occurred.

c.   Plaintiff fails to satisfy Florida's pleading requirements.

d.   Counts VII and VIII of Plaintiff's Amended Complaint should be dismissed because Plaintiff has not alleged any facts that establish vicarious liability on Silver Springs for the actions of either George Fout or Steve Fout.

e.   Defendant moves to dismiss Count XI because it fails Florida's Pleading requirements pursuant to Florida Rule of Civil Procedure 1.120.

f.   Plaintiff's claims against this Defendant are time-barred by the statute of limitations.

g.   Plaintiff improperly commingles counts and defendants.

12.   Dismissal with prejudice is appropriate at this time because Plaintiff has had three opportunities to sufficiently allege viable causes of action against this Defendant, and has failed each time.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**I.   Plaintiff Fails To Plead Facts Sufficient To Support A Single Viable Cause Of Action Against or Duty Attributable to Silver Springs**

Plaintiffs' Second Amended Complaint should be dismissed in its entirety because it fails to state a single viable cause of action against Silver Springs.   Florida is a fact pleading jurisdiction.   Horowitz v. Laske, 855 So.2d 169 (Fla. 5th DCA 2003).   In order to state a cause of action, Florida Rule of Civil Procedure 1.110(b)(2) requires that a pleading contain "a short

- 3 -

BSA-PLAN_01423016

**SA 1270**

CASE NO. 2016-CA-000167

and plain statement of the ultimate facts showing that the pleader is entitled to relief." Florida's pleading rules force counsel to recognize the elements of their causes of action and determine whether they have, or can develop, the facts necessary to support them, which avoids a great deal of wasted expense to the litigants and unnecessary judicial effort. Continental Banking Co. v. Vincent, 634 So.2d 242, 244 (Fla. 5th DCA 1994). Moreover, at the outset, litigants must state their pleadings with sufficient particularity for a defense to be prepared. Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561 (Fla.1988). Mere conclusions are insufficient. Clark v. Boeing Co., 295 So.2d 1225 (Fla. 2d DCA 1981).

Plaintiffs' Second Amended Complaint does not contain a short and plain statement of the ultimate facts showing that Plaintiffs are entitled to relief nor does it allege facts that can support each element of Plaintiffs' causes of action with sufficient particularity to enable Silver Springs to prepare its response.

Counts I and IV of Plaintiff's Complaint should be dismissed because they fail to establish a duty owed to A.A. by Silver Springs for the actions of George Fout and Steve Fout. The general rule in Florida is that a party has no legal duty to "prevent the misconduct of third persons." Michael & Philip, Inc. v. Sierra, 776 So.2d 294, 297 (Fla. 4th DCA 2000). As the court noted in Boynton v. Burglass, 590 So.2d 446, 448 (Fla. 3d DCA 1991), "Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third party." K.M. ex rel. D.M. v. Publix Super Markets, Inc., 895 So. 2d 1114, 1117 (Fla. 4th DCA 2005). Florida recognizes the special relationship exception to the general rule of non-liability for third-party misconduct. The existence of a special relationship, however, may give rise to a duty to control the conduct of third persons so as to prevent them from harming others. Id.

- 4 -

Highly Confidential

CASE NO. 2016-CA-000167

Florida has adopted the "special relationship" test set forth in the Restatement (Second) of Torts,

Section 315, which states:

> § 315 General Principle
> There is no duty so to control the conduct of a third person as to prevent him
> from causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which imposes
> a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the
> other a right to protection.

Plaintiff has attempted to establish a duty on this Defendant based on the special

relationship exception. Plaintiff, however, has cited to no facts to support his contention that

Silver Springs owed a special duty to A.A. Plaintiff maintains the position that Silver Springs

controlled or had the right to control local troops directly, or through its sponsoring

organizations. However, Plaintiff's Second Amended Complaint is deficient of any dates to

establish when or how a special relationship arose. Further, it does not identify the parties to

which the special relationship arose to indicate whether § 315 subsection (a) or (b) is applicable.

Consequently, Plaintiff's Second Amended Complaint fails to provide sufficient information and

ultimate facts to allow this Defendant to prepare a defense, thus warranting dismissal for failing

to satisfy Florida's pleading requirements as discussed in more detail below.

## II.   Plaintiff's Second Amended Complaint Fails to meet Florida's Pleading Requirements

Plaintiffs' Second Amended Complaint is filled with nothing more than vague and

conclusory allegations.   More specifically, Plaintiffs' Second Amended Complaint is

insufficiently pled in the following ways:

- 5 -

BSA-PLAN_01423018

SA 1272

CASE NO. 2016-CA-000167

First, "for the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter." *Fla. R. Civ. P.* 1.120(f). Nowhere in Plaintiff's Second Amended Complaint does Plaintiff identify a time-period for when the subject abuse occurred.

Moreover, Plaintiff fails to allege that a special relationship existed at the time of the sexual abuse because of the fact that Plaintiff does not provide any dates to indicate when the subject abuse occurred. Without greater information, Silver Springs cannot conceivably owe a duty to A.A. or be liable for the alleged incidents of sexual abuse. Consequently, Plaintiff's Second Amended Complaint fails to satisfy Florida requirements for pleading special matters and should be dismissed in its entirety.

**III.    Plaintiff fails to Plead Facts Sufficient to Support a Claim for Vicarious Liability – Actual Agency**

In Counts VII and VIII, Plaintiff alleges that Silver Springs is vicariously liable for the sexual battery by George Fout and the breach of fiduciary duty of Steve Fout, respectively. Plaintiff alleges that, at all relevant times, George Fout and Steve Fout were acting as agents on behalf of Silver Springs. The essential elements to establish actual agency are: (1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent. Villazon v. Prudential Health Care Plan, Inc., 843 So. 2d 842 (Fla. 2003). Plaintiff's Second Amended Complaint is deficient with regard to this argument as it does not allege any ultimate facts showing that a principal (someone in a supervisory role at Silver Springs) acknowledged that

- 6 -

Highly Confidential

CASE NO. 2016-CA-000167

either George Fout or Steve Fout would act for Silver Springs; how and when either of the Fouts accepted that undertaking; nor the ways in which Silver Springs controlled the Fouts actions.

**IV.** **Plaintiff fails to Plead Facts Sufficient to Support a Claim for Vicarious Liability – Apparent Agency**

Similarly, agency was not established through the doctrine of apparent agency. In order to determine the existence of apparent agency, it must be determined that (1) there was a representation by the principal; (2) the injured party relied on that representation; and (3) the injured party changed position in reliance upon the representation and suffered detriment. Amstar Inc. Co. v. Cadet, 862 So. 2d 736, 742 (Fla. 5th DCA 2003). Nowhere in Plaintiff's Complaint does Plaintiff allege that Silver Springs made a representation regarding the existence of an agency relationship between Silver Springs and either of the Fouts. Plaintiff's Complaint does not establish the existence of an agency relationship because it fails to allege any ultimate facts supporting that claim. Additionally, "the injured party *did not* change position in reliance upon any representations" because the information concerning the history of sexual abuse in the Boy Scouts was equally available to the Plaintiff. Even, taking Plaintiff's assertions as true, Plaintiff was not prevented from learning any information about sexual abuse in the Boy Scouts, and therefore, did not change position in reliance upon a representation from any of the "Boy Scout Defendants."

Even if this Court accepted the bold assertions that the Fouts were agents of Silver Springs, ("Silver Springs" - included in the term "Boy Scout Defendants" scattered throughout Plaintiff's Second Amended Complaint) the alleged sexual abuse described in the Complaint would fall outside the scope of any agency relationship. "An employee's conduct is within the

- 7 -

Highly Confidential

CASE NO. 2016-CA-000167

scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." Iglesia Cristiana La Casa Del Senor, Inc. v. L.M., 783 So. 2d 353, 357 (Fla. 3d DCA 2001).

Courts have previously held that a volunteer is not acting within the scope of agency at the time of an incident in which the volunteer was a perpetrator of sexual abuse. See Special Olympics Fla., Inc. v. Showalter, 6 So. 3d 662, 665 (Fla. 5th DCA 2009). "Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer." Nazareth v. Herndon Ambulance Serv., Inc., 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985). Unless it can be established that the abuse occurred in furtherance of the employer's business or principal's activities, the type of misconduct which is alleged in the subject Complaint is not within the scope of the purported agency relationship. See Showalter, 6. So. 3d at 665–66. In L.M., supra, the court found that the Defendant church was not vicariously liable for the sexual molestation of a youth who was being counseled/ministered, noting that although the pastor may have had access to the girl through his position as the Church pastor, he was not engaging in authorized acts or serving the interests of the Church during the time he sexually abused the minor child. Iglesia Cristiana La Casa Del Senor, Inc. v. L.M., 783 So. 2d 353, 358 (Fla. 3d DCA 2001).

"As a matter of common sense, having sexual relations with a counselee is not part of the job responsibilities of a minister." Elders v. United Methodist Church, 793 So. 2d 1038, 1041 (Fla. 3d DCA 2001).

- 8 -

Highly Confidential

CASE NO. 2016-CA-000167

That rationale is equally applicable here, where Plaintiff is attempting to hold Silver Springs vicariously liable for the acts of George Fout and Steve Fout, an assistant scoutmaster and scoutmaster, respectively. The duties of the Fouts included leading troop meetings, training troop members in craft/survival skills, planning troop activities, and coordinating troop fundraising. Because the sexual abuse alleged by Plaintiff was driven by the personal motives of George Fout and not designed to further the interests of Silver Springs, Counts VII and VIII of the Complaint should be dismissed.

### V.    Plaintiff Does Not State a Claim for Fraud/Fraudulent Concealment

Plaintiff fails to plead how Silver Springs concealed its knowledge of George Fout's propensities.   Plaintiffs' Second Amended Complaint is replete with conclusory and unsubstantiated allegations that Silver Springs fraudulently concealed its knowledge of George's propensities, which Silver Springs vehemently denies, yet Plaintiff provides no details as to what Silver Springs allegedly did to conceal its knowledge of George's propensities.   Allegations of fraud presume that Silver Springs committed an intentional bad act, which is more than a mere failure to disclose.   Plaintiff cannot simply allege that fraudulent concealment occurred, in an attempt to overcome the statute of limitations, without having any factual basis for doing so.

Florida Rule of Civil Procedure 1.120(b) states that fraud is a special matter that must be pled with particularity.   Additionally, Florida Courts have reiterated this requirement and held that allegations of fraud must specifically identify the misrepresentations or omissions of fact, as well as, the time, place, and manner in which they were made.   Blue Supply Corp. v. Novos Electro Mech., Inc., 990 So.2d 1157, 1159-60 (Fla. 3d DCA 2008); See also Hembd v. Dauria,

- 9 -

Highly Confidential

CASE NO. 2016-CA-000167

859 So.2d 1238, 1240 (Fla. 4th DCA 2003) (fraud must not be "flung into [a] case willy-nilly" by stating "legal conclusions."). In fraudulent concealment cases, the plaintiff must show (1) successful concealment of the cause of action; (2) fraudulent means to achieve that concealment and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim. *See* Berisford v. Jack Eckerd Corp., 667 So. 2d 809, 811-12 (Fla. 4th DCA 1995).

The Eleventh Circuit has explained that "fraudulent concealment requires the defendants to engage in the willful concealment of the cause of action using fraudulent means to achieve that concealment." Raie v. Cheminova, Inc., 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (citing Berisford, 667 So. 2d at 811)

"Fraudulent concealment goes beyond mere non-disclosure, and must constitute active and willful concealment." Licul v. Volkswagen Group of Am., Inc., No. 13-61686-CIV, 2013 WL 6328734, at * 6 (S.D. Fla. Dec. 5, 2013); *see also* Nardone v. Reynolds, 333 So. 2d 25, 39 (Fla. 1976), ("generally the fraud must be of such a nature as to constitute active concealment to prevent inquiry or elude investigation or to mislead a person who could claim a cause of action"); Vargas By and Through Vargas v. Glades General Hosp., 566 So. 2d 282, 285 (Fla. 4th DCA 1990).

Here, Paragraphs 265-287 of Plaintiff's Second Amended Complaint discuss how Defendant BSA has affirmatively withheld information related to instances of child sexual abuse from Congress and parents of Boy Scouts. **See Plaintiff's Second Amended Complaint at Paragraphs 265-287**. The Complaint goes on to allege that BSA's marketing campaign has affirmatively misrepresented the Boy Scout environment and the nature of each scouts'

- 10 -

BSA-PLAN_01423023
**SA 1277**

CASE NO. 2016-CA-000167

enrollment. *Id*. However, nowhere in Paragraphs 265-287 does Plaintiff mention Defendant, Silver Springs. The first mention of Defendant, Silver Springs occurs in Paragraph 288 and its' subparts whereby Plaintiff alleges the "Boy Scout Defendants":

    a.  "Failure to report incidents of abuse to law enforcement or child protection agencies;

    b.  Concealment of abuse they had substantiated and failure to seek out and redress the injuries its Scoutmasters and leaders had caused; and

    c.  Failure to advise local scouting agencies of the rampant problem of sexual abuse of scouts by Scoutmasters and leaders and that BSA's system of "Ineligible Volunteer Files" was ineffective at curbing the problem."

As you can see, nowhere in Paragraph 288 does Plaintiff allege "active and willful concealment" on the part of Silver Springs. Moreover, neither Paragraph 288, nor its subparts, allege that Silver Springs *actively concealed* information "to prevent inquiry or elude investigation or to mislead a person who could claim a cause of action." *See* Vargas at 285 (Fla. 4th DCA 1990).

Later, in Paragraph 293, Plaintiff alleges "the above described conduct of the 'Boy Scout Defendants' was willful and outrageous, was committed in reckless disregard of the probability of causing A.A.'s severe emotional distress, mental anguish, humiliation, and psychological, spiritual, and physical injury and illness of A.A." However, Plaintiff asserts no facts in Count XI to substantiate a claim of active and willful concealment against Silver Springs. As a result, Plaintiff's Second Amended Complaint fails to state a cause of action for Fraud against this Defendant, and therefore, should be dismissed.

**VI.**   **Comingling Of Counts**

- 11 -

BSA-PLAN_01423024

**SA 1278**

CASE NO. 2016-CA-000167

Plaintiff's Second Amended Complaint should be dismissed in its entirety because it improperly comingles counts and defendants.  Florida Rule of Civil Procedure 1.110(f) states that each claim "shall be stated in a separate count." See also K.R. Exchange Services, Inc. v. Fuerst, Humphrey, Ittleman, PL, 48 So.3d 889 (Fla. 3d DCA 1020) ("A party should plead each distinct claim in a separate count rather than plead the various claims against all of the defendants together."); Pratus v. City of Naples 807 So.2d 795 (Fla. 2d DCA 2002) ("...each claim should be plead in a separate count instead of lumping all defendants together.") Throughout numerous counts, Plaintiff impermissibly pleads counts that lump multiple Defendants together in one count as opposed to correctly pleading each count against each Defendant separately. Notably, Counts VII, VIII, and XI commingle multiple Defendants into the same count making it indiscernible which paragraphs contained in each count apply to Silver Springs. As such, Plaintiff's Second Amended Complaint fails Florida's pleading requirements should be dismissed in its entirety.

Moreover, to the extent that Silver Springs is being sued vicariously for the acts of George or Steve Fout, which is unclear from the four corners of Plaintiff's Second Amended Complaint, then Plaintiff's Second Amended Complaint should also be dismissed because claims for vicarious liability must be specifically plead as separate and distinct counts. Goldschmidt v. Holman, 571 So.2d 433 (Fla. 1990).

**VII.    Plaintiff's Claims against Silver Springs are Time-Barred by the Statute of Limitations**

- 12 -

Highly Confidential

CASE NO. 2016-CA-000167

Plaintiffs have attempted to avoid the statute of limitation by arguing delayed discovery and fraudulent concealment by Defendants. However, these arguments fail. The delayed discovery doctrine does not apply to negligence causes of action arising out of sexual abuse. Cisko v. Diocese of Steubenville, 123 So.3d 83 (Fla. 3d DCA 2013.  Additionally, concealment of knowledge of other instances of alleged abuse does not avoid the statute of limitations in negligence claims arising from sexual abuse.  Rubio v. Archdiocese of Miami, Inc., 114 So.3d 279 (Fla. 3d DCA 2013); John Doe No. 23 v. Archdiocese of Miami, Inc..  Furthermore, as explained in great detail above, Plaintiffs have not pled facts sufficient to support a claim for delayed discovery or fraudulent concealment.

Normally, a claim for injuries based on another party's negligent conduct must be filed within four years of the incident under the applicable statute of limitations. Rubio v. Archdiocese of Miami, Inc., 114 So. 3d 279, 281 (Fla. 3d DCA 2013). In more than ten years since enacting section 95.11(7), the legislature has not extended the limitations period to causes of action other than intentional torts.  Cisko v. Diocese of Steubenville, 123 So. 3d 83, 85 (Fla. 3d DCA 2013). Plaintiff's claims against Silver Springs are all premised on negligence and there are no allegations of Silver Springs committing any intentional torts. The running of the statute of limitations is an absolute defense in a negligence case such as this. Rubio, 114 So. 3d 279. In Rubio, the defendant church's Motion to Dismiss was granted, despite allegations that it knew that one of its priests was molesting the plaintiff, because there were no allegations that the church caused the plaintiff to wait to file suit. Id. As such, Plaintiff's claims related to any abuse that occurred prior to January 27, 2012 are time-barred by the four-year statute of limitations and should be dismissed with prejudice.

- 13 -

Highly Confidential

CASE NO. 2016-CA-000167

This Defendant has also established that it is not vicariously liable for the actions of George Fout or Steve Fout. In sum, this Defendant contends that Section 95.11(9) is inapplicable as to all Counts against this Defendant. Specifically, Section 95.11(9) states, "an action related to an act constituting a violation of section 794.011 involving a victim who was under the age of 16 at the time of the act may be commenced at any time. This subsection applies to any such action other than one which would have been time barred on or before July 1, 2010." Here, Plaintiff does not allege anywhere in the Second Amended Complaint that Silver Springs "committed an act constituting a violation of section 794.011." Further, it is impossible for an organization to commit an act of sexual abuse thereby making section 95.11(9) inapplicable to Silver Springs. Consequently, the claims against Silver Springs are not "related to an act constituting a violation of Section 794.011." *See* Fla. Stat. § 95.11(9). Plaintiff must comply with the 4-year statute of limitations for any and all claims set forth against Silver Springs.

Regardless, if this Court accepts the applicability of Section 95.11(9), Plaintiff's claims against Silver Springs are still time-barred. The statute states, in pertinent part, "[t]his subsection applies to any such action other than one which would have been time barred on or before July 1, 2010." Fla. Stat. § 95.11(9). Prior to the enactment of this subsection, all actions founded in negligence, regardless of whether the actions were related to crimes of sexual battery, were to comply with the necessary 4-year statute of limitations.

Here, Plaintiff asserts that the sexual abuse began in or about 2004. ***See* Plaintiff's Original Complaint at Paragraph 46. See also, Plaintiff's Amended Complaint at Paragraph 49.** All negligence actions related to sexual abuse incidents, where the incidents in question occurred on or before July 1, 2006, are time-barred by the statute of limitations, per the

- 14 -

BSA-PLAN_01423027

SA 1281

CASE NO. 2016-CA-000167

language of Section 95.11(9).  Here, Plaintiff concedes that the abuse did, in fact, take place on or before July 1, 2006.

## VIII.   Dismissal With Prejudice Is Appropriate Where Plaintiff Has Had Three Opportunities To Properly Plead A Cause Of Action

"Although there is no magical number of amendments which are allowed, dismissal of a complaint that is before the court on a third attempt at proper pleading is generally not an abuse of discretion." Barrett v. City of Margate, 743 So.2d 1160, 1162 (Fla. 4th DCA 1999) (The court affirmed dismissal with prejudice where trial court provided the Plaintiff with reasonable opportunities to cure the deficiencies in their pleadings).

Here, Plaintiff has had three opportunities to properly plead a cause of action against Silver Springs, and has failed to do so. Plaintiff's Second Amended Complaint should be dismissed with prejudice as any further grant of leave to amend would be futile.

WHEREFORE, Defendant, SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., respectfully requests that this Court enter an Order dismissing all allegations against it, specifically Counts I, II, VII, VIII, and XI of Plaintiff's Second Amended Complaint, for the reasons set forth herein, and additionally requests that this Court strike Plaintiff's various claims for prejudgment interest.

WE HEREBY CERTIFY that a copy hereof has been electronically served via Florida ePortal to: Paul L. SanGiovanni, Esquire, psangi@forthepeople.com, mtodd@forthepeople.com; Spencer H. Silverglate, Esquire, ssilverglate@cspalaw.com; mpedraza@cspalaw.com; Francisco

Highly Confidential

BSA-PLAN_01423028

SA 1282

CASE NO. 2016-CA-000167

Ramos, Jr., Esquire, framos@cspalaw.com; Shannon P. McKenna, Esquire,

smckenna@cspalaw.com; on this 26th day of September 2019.

/s/ Raychel A. Garcia
Raychel A. Garcia, Esquire
Florida Bar No. 091096
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Silver Springs Shores Presbyterian
Church, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

- 16 -

BSA-PLAN_01423029
SA 1283

Case 1:22-cv-01237-RGA    Document 73    Filed 12/07/22    Page 406 of 482 PageID #: 5266

Filing # 95073805 E-Filed 08/30/2019 06:55:17 PM
Case 5:20-cv-00069    Document 1-4    Filed 02/18/20    Page 490 of 805 PageID 667

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016-CA-000167

A.A.,

       Plaintiff,

vs.

THE BOY SCOUTS OF AMERICA
NORTH FLORIDA COUNCIL,
INC., BOY SCOUTS OF
AMERICA, AND SILVER
SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,

       Defendants.

_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiff, A.A, by and through his undersigned counsel, files this Complaint against Defendants, THE BOY SCOUTS OF AMERICA, a foreign corporation authorized to do business in Florida (hereinafter referred to as the "BSA"), the NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, a corporation authorized to do business in Florida (hereinafter referred to as the "NORTH FLORIDA COUNCIL"), and the SILVER SPRINGS SHORES PRESBYTERIAN CHURCH, INC., a corporation authorized to do business in Florida (hereinafter referred to as the "SILVER SPRINGS SHORES") and for good cause, states:

## INTRODUCTION

1.   **General Statement of Claims:**  This Complaint is based on the childhood sexual abuse of Plaintiff, A.A. caused by the negligent, willful, wanton, reckless and tortious acts and omissions of BSA, NORTH FLORIDA COUNCIL, SILVER SPRINGS SHORES, Scoutmaster Steve Fout and other agents of the BSA, and George Fout, formerly an Assistant Scoutmaster.



EXHIBIT
A

2.      At all relevant times, George Fout was the agent of Defendant BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.  These claims relate to acts of sexual battery as described in Section 794.011, Florida Statutes suffered by the Plaintiff, A.A., while he was a participant in the programs operated by the Defendants, and each of them.

3.      As more particularly described herein, the Plaintiff suffered the sexual battery described herein as a result of the neglect of the BSA, the NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES and their respective agents to, among other things, exercise due care in the administration, management and operation of its scouting program, their breach of their fiduciary duties and their vicarious liability for the acts of their agents.

4.      **Jurisdiction and Venue**:      This is an action for damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorneys' fees.

5.      Venue is proper in Marion County, Florida because the events giving rise to this action occurred in Marion County, Florida. .

6.      **The Parties:**      A.A. is currently an adult residing in Marion County, Florida. The initials "A.A." are used to protect the identity of Plaintiff from public disclosure. The identity and further relevant details shall be disclosed to the Defendants off record and confidentially.

7.      At all relevant times, A.A. resided in Marion County, Florida.

8.      A.A. was a member of the Boy Scouts of America Troup 448.

9.      Plaintiff met his abuser, George Fout, due to George Fout's role as the Assistant Scoutmaster of Troup 448.

2

BSA-PLAN_01423031

SA 1285

10.    SILVER SPRINGS SHORES was the chartering organization for Troop 448, or such other Boy Scout Troop as A.A. was a member (herein collectively referred to as "Troop 448").

11.    The BSA is a foreign corporation authorized to do business in the state of Florida.

12.    At all relevant times, BSA controlled or had the right to control the NORTH FLORIDA COUNCIL and the sponsoring organizations, which implemented BSA's scouting program, including, without limitation, SILVER SPRINGS SHORES.

13.    The NORTH FLORIDA COUNCIL is a corporation authorized to do business in the State of Florida and is located in Duval County, Florida.

14.    At all relevant times, the NORTH FLORIDA COUNCIL was an agent of BSA, subject to BSA's control or right to control.

15.    As Defendant BSA's agent, the NORTH FLORIDA COUNCIL controlled or had the right to control local troops directly, or through their sponsoring organizations, including, without limitation, SILVER SPRINGS SHORES.

16.    SILVER SPRINGS SHORES is a corporation authorized to do business in the State of Florida and is located in Marion County, Florida. At all relevant times, SILVER SPRINGS SHORES was an agent of BSA and the COUNCIL, subject to their control or right to control.

17.    As Defendant BSA and NORTH FLORIDA COUNCIL' agent, SILVER SPRINGS SHORES controlled or had the right to control the programs and troops that it sponsored, including its Scoutmaster and Assistant Scoutmasters.

Highly Confidential

BSA-PLAN_01423032

SA 1286

18.     The BSA, NORTH FLORIDA COUNCIL and SILVERS SPRINGS SHORES will be collectively referred to herein as the Boy Scout Defendants.  When so used, the term references each in their respective individual capacities.

19.     Steve Fout was the Scoutmaster and leader of Troop 448.

20.     George Fout was Steve's son and was an Assistant Scoutmaster of Troop 448.

**The BSA**

21.     The BSA is a large youth-serving organization which promotes, markets, and encourages parents to enroll their children in the BSA. Enrollment in the BSA requires parents to entrust their children's health and safety to the BSA and requires children to engage in activities that expose them to adults and others. Much of the BSA's activities include over-night outings, camping trips, and trips away from parents.

**The Hierarchy of the BSA and the BSA's Control Over Its Agent Scouting Organizations**

22.     The BSA has established its presence through the use of a hierarchical system, whereby local Councils and chartering organizations implement and maintain the BSA's program at a local level under the BSA's guidance and control.

23.     Organizationally, the BSA is separately incorporated from local councils, but the BSA and the BSA's local councils comprise a tightly integrated, hierarchal organizational structure under the BSA's control at the top.

24.     The BSA issues the Boy Scouts of America name, emblems, badges, markings, and youth programs to the Councils and chartering organizations. The BSA requires the local

4

Council and troops within a local Council to strictly adhere to the BSA's organizational charter and standards of leadership.

25.     For example, all members of scout troops chartered through a local council must be registered and pay dues to the BSA. The BSA oversees and controls all professional staffing of local councils. Local councils may not employ any professional scouts who are not drawn from a BSA approved candidate list that the BSA compiled and maintained. Local councils are not permitted to use any programs or materials that the BSA has not supplied or approved.

26.     Unless the BSA has selected and approved them, no adult scout leader, whether paid or volunteer, may serve in a local troop or council.

27.     The BSA asserts First Amendment associational rights to exclude Scoutmasters and volunteers who do not share their values or beliefs and anyone else it chooses from participating in scouting.  Indeed the BSA has *successfully* asserted these associational rights in trial, appellate and over their volunteer and are judicially estopped from asserting that they do not have control or a special relationship with their Scoutmasters and volunteers. *See*, for example, *Boy Scouts of American vs. Dale*, 530 U.S. 640 (2004).  The BSA is similarly judicially estopped from arguing that these Scoutleaders and volunteers are not their agents.

28.     The BSA provides a wide variety of management services to locals councils and troops, including insurance and risk management, marketing, education, training, scout camps, facilities, media relations, and human resources. Duplicate personnel files on local council employees are maintained at the local council and at the BSA's national headquarters.

29.     The BSA creates the bylaws, rules and regulations that every chartering organization must adhere to in implementing and running the BSA's scouting program. Significantly, the BSA's bylaws obligate a chartering organization to provide adequate facilities,

Highly Confidential

BSA-PLAN_01423034

SA 1288

supervision, and leadership for the troop in exchange for the granting of a charter to run a local scouting troop.

30.      A local scouting troop cannot exist without the support of a chartering organization that has received a charter from the BSA authorizing the chartering organization to implement and run the BSA's scouting program.

31.      Under the BSA bylaws, each chartering organization is required to select at least three people over the age of 21 to serve as the Troop Committee. The Troop Committee then selects the Troop Scoutmaster. The BSA must approve scout leaders, whether paid or volunteer, to serve in a local troop or council.

32.      Together, the Troop Committee and the Scoutmaster are responsible for the general program and supervision of the troop.

33.      Further, each chartering organization is required to appoint a representative other than the Scoutmaster or Assistant Scoutmaster to serve as its institutional representative on the local Council.

34.      A chartering organization must reapply to the BSA every year for a renewed charter in order to continue to operate a local troop. The BSA may revoke a chartering organization's charter at any time should the chartering organization be found to deviate from the BSA's charter and bylaws.

35.      This chartering system reveals the BSA's consent to allow local chartering organizations to operate the scouting program on its behalf and the chartering organizations' consent to operate the local troops subject to the BSA's control or right to control. Accordingly, the chartering organizations, such as SILVER SPRINGS SHORES, are the agents of the BSA.

Highly Confidential

BSA-PLAN_01423035

**SA 1289**

36.    The BSA uses a similar structure in relation to its local Councils, such as the NORTH FLORIDA COUNCIL. The BSA issues a charter to an approved local Council authorizing the local Council to administer the scouting program to the local scout troops within the region on behalf of the BSA.

37.    The local Councils are subject to the same bylaws, rules and regulations as the chartering organizations. If a local Council deviates from the rules and regulations established by the BSA, then the local Council may have its charter revoked.

38.    All local Councils must apply to the BSA for renewal of their charters annually.

39.    It is the duty of the local Council to promote, support, and maintain the BSA scouting regime amongst all local troops within the local Councils area.

40.    The chartering system shows the BSA's consent to allow local Councils to operate the scouting program on its behalf within a specific geographic region, and the local Councils consent to operate the scouting program subject to the BSA's control or right to control. Thus, the local Councils are agents of the BSA.

41.    The BSA cannot operate its scouting program without the consent and cooperation of the local Councils and chartering organizations.  Conversely, the chartering organizations and local Councils cannot operate and supervise local scouting troops without the consent of the BSA.

42.    At all relevant times, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES were serving as Defendant the BSA's agents by implementing and maintaining the BSA's scouting program on a local level.

Highly Confidential

BSA-PLAN_01423036

SA 1290

### The BSA, NORTH FLORIDA COUNCIL's and
### SILVER SPRINGS SHORES Special Relationship with A.A.

43.     The Boy Scout Defendants have a special relationship with A.A., for reasons which included, without limitation, the following:

a.      A.A. and his family imposed confidence in The Boy Scout Defendants through A.A.'s participation in Boy Scouts of America Troop 448 that A.A. would, among other things, learn the values and characteristics that Defendants promote through involvement with the BSA, and ultimately would be safe from harm in doing so;

b.      It is through A.A.'s involvement with The Boy Scout Defendants, and George Fout's relationship with The Boy Scout Defendants that A.A. was abused by George Fout;

c.      The Boy Scout Defendants had a direct and special relationship with scouts who participated in its programs. A.A. was a child at the time of the abuse. The abuse began and often occurred when A.A. was placed in the care and custody of Defendants The Boy Scout Defendants, with the resulting loss of control to protect himself;

d.      A.A. was a child at the time of the abuse. He was raped and molested at locations and under circumstances where he was unable to protect himself or was otherwise unable to avail himself of his legal guardian for their ordinary source of protection or were otherwise relying entirely on the Boy Scout Defendants and their agents, including Scoutmaster Steve Fout, for his protection, and

e.      The Boy Scout Defendants, were substituting for A.A.'s parents during the relevant times.

### BSA, NORTH FLORIDA COUNCIL's and SILVER SPRINGS SHORES Special
### Relationship with, and Constructive Control
### over Scoutmaster Steve Fout, and his Agency for them.

44.     At all relevant times, A.A. was enrolled in the Boy Scouts of America scouting program.

45.     At all relevant times, A.A. was a member of Boy Scouts of America Troop 448 in Ocala, Florida. Troop 448 was chartered by Defendant SILVER SPRINGS SHORES,

8

BSA-PLAN_01423037

SA 1291

46.     Troop 448 was under the jurisdiction of Defendant NORTH FLORIDA COUNCIL.

47.     Each of SILVER SPRINGS SHORES and the NORTH FLORIDA COUNCIL were under the ultimate control and authority of the BSA.

48.     But for the BSA's consent, neither SILVER SPRINGS SHORES, nor the NORTH FLORIDA COUNCIL would have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

49.     As the chartering organization of Troop 448, Defendant SILVER SPRINGS SHORES was responsible for providing adequate facilities, supervision, and leadership for the troop, subject to the approval of the Council and the BSA and consistent with their direction and policies.

50.     The troop meetings were held in facilities owned or operated by Defendant SILVER SPRINGS SHORES.  Certain activities were held in facilities owned or operated by the Council and the BSA.

51.     At all times material hereto, the Boy Scout Defendants installed Steve Fout as the Scoutmaster (a/k/a Troop Leader) for Troop 448.

52.     As the Scoutmaster of Troop 448, Steve Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

53.     At all times relevant, Steve Fout was subject to the approval, direction, control and authority of the Boy Scout Defendants.

9

BSA-PLAN_01423038

SA 1292

54.     Steve Fout had the specific authorization from the Boy Scout Defendants to wear the BSA badge and insignia and other indicia and brands of the BSA, to hold himself out as a leader for the BSA and to lead meeting and events on the premises of the BSA and Silver Springs Shores.

55.     In fact, Steve Fout did hold himself out as such, lead meetings and took the scouts, including A.A. on events, including overnight campouts, on the premises of the Boy Scout Defendants.

56.     Steve Fout's activities, and each of them, were specifically sanctioned by the Boy Scout Defendants.  At all times relevant, the Boy Scout Defendants had the control or the ability to control, Steve Fout's display of his the BSA badge and insignia and other indicia and brands of the BSA.

57.     But for the Boy Scout Defendants' consent, neither Steve Fout would have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

58.     The subject authorization was designed to instill, and did instill, trust and confidence in Steve Fout by the parents, guardians and scouts and further served to promote the BSA brand.

59.     But for Steve Fout's position with the Boy Scout Defendants, A.A. would not have been permitted to spend overnights at his home.  There is a causal connection between Steve Fout's position with the Boy Scout Defendants and A.A.'s abuse.

60.     A.A. and his guardians each perceived Steve Fout to be a representative of the BSA, the Council and Silver Springs Shores and to be a person whom they could entrust with A.A.

10

61.     At all times relevant hereto, Steve Fout was an Assistant Scoutmaster for Troop 448 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including A.A. in morality, patriotism and various life skills.

62.     At all times relevant hereto, Steve Fout served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

63.     Steve Fout had actual or apparent authority to act on behalf of the BSA, the Council and Silver Springs Shores, and each of them.

64.     As a result there was, at all relevant times, a special relationship and agency between Steve Fout and Boy Scout Defendants.

**BSA, NORTH FLORIDA COUNCIL's and SILVER SPRINGS SHORES
Special Relationship with, and Constructive Control over perpetrator and assistant
Scoutmaster, George Fout, and his Agency for them.**

65.     At all times material hereto, the Boy Scout Defendants installed George Fout, as an Assistant Scoutmaster (a/k/a Assistant Troop Leader) for Troop 448.  George Fout was Steve Fout's son.

66.     At all times material hereto, Assistant Scoutmaster George Fout was under the direct supervision of Scoutmaster Steve Fout.

67.     As the Assistant Scoutmaster of Troop 448, George Fout assisted Steve Fout in his activities.

68.     As the Assistant Scoutmaster of Troop 448, George Fout led troop meetings, trained troop members in scout craft and survival skills, helped and encouraged troop members

11

BSA-PLAN_01423040

**SA 1294**

to earn merit badges, planned and led troop activities, coordinated troop fundraising and oversaw the Troop activities.

69.     At all times relevant, George Fout was subject to the approval, direction, control and authority of The Boy Scout Defendants.

70.     George Fout had the specific authorization from the Boy Scout Defendants to wear the BSA badge and insignia and other indicia and brands of the BSA, to hold himself out as a leader for the BSA and to lead meeting and events on the premises of the BSA and Silver Springs Shores.

71.     In fact, George Fout did hold himself out as such, lead meetings and took the scouts, including A.A. on events, including overnight campouts, on the premises of the Boy Scout Defendants.

72.     George Fout's activities, and each of them, were specifically sanctioned by the Boy Scout Defendants.  At all times relevant, Boy Scout Defendants had the control or the ability to control, George Fout's display of his the BSA badge and insignia and other indicia and brands of the BSA.

73.     But for the Boy Scout Defendants consent, George Fout would not have authorization to carry out activities in the name of the BSA, including conducting the activities of Troop 448.

74.     The subject authorization was designed to instill, and did instill, trust and confidence in George Fout by the parents, guardians and scouts and further served to promote the BSA brand.

Highly Confidential

BSA-PLAN_01423041

SA 1295

75.     But for George Fout's position with the Boy Scout Defendants, A.A. would not have been permitted to spend overnights at his home.  There is a causal connection between Steve Fout's position with the Boy Scout Defendants and A.A.'s abuse.

76.     A.A. and his guardians each perceived George Fout to be a representative of the Boy Scout Defendants and to be a person whom they could entrust with A.A.

77.     At all times relevant hereto, Steve Fout was an Assistant Scoutmaster for Troop 448 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including A.A. in morality, patriotism and various life skills.

78.     At all times relevant hereto, Steve Fout served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

79.     George Fout had actual or apparent authority to act on behalf of the Boy Scout Defendants, and each of them.

80.     As a result there was, at all relevant times, a special relationship and agency between George Fout and The Boy Scout Defendants.

13

BSA-PLAN_01423042

SA 1296

### George Fout's Grooming and Preparation of A.A. and
### Three (3) Other Scouts from Troop 448 for Abuse.

81.     Perpetrators of sexual abuse against children often "groom" the victim for the abuse.   This grooming is a process of mental, emotional, psychological and physical manipulation by which the perpetrator prepares a child, significant others, and the environment for the abuse of the child.  Specific goals include gaining access to the child, gaining the child's compliance, and maintaining the child's secrecy to avoid disclosure. This process serves to strengthen the offender's abusive pattern, as it may be used as a means of justifying or denying their actions.

82.     The grooming process consists of a series of stages.  These include the stages of selecting a vulnerable victim, gaining access to the child, developing trust, and desensitizing the victim to touch.

83.     As to the first stage, when selecting a victim, offenders often target children based on family situations, such as those living in single family households as often in these cases children may have less adult supervision or the custodial parent may rely upon others to help with childcare responsibilities.

84.     This pattern of grooming and its specific stages are discernable to supervising adults, including Scoutmasters, particularly if they are properly trained to recognize the behavior. This "grooming" results in its own resulting psychological and emotional abuse and damage, separate from the impending physical sexual abuse.

85.     George Fout engaged in exactly these stages of grooming A.A. prior to and during his abuse of A.A.  George Fout often showered Plaintiff with special attention and otherwise engaged in the grooming process described.

Highly Confidential                                                     BSA-PLAN_01423043
SA 1297

86.     A.A. met the profile of a particularly vulnerable child, as he was being raised by a single non-parent adult with no strong male role model.

87.     At the time that George Fout grooming A.A., he was simultaneously grooming at least three (3) other child scouts in Troop 448 for sexual abuse, for a total of four (4) scouts in a single troop undergoing grooming for impending sexual abuse.

88.     As a result of George Fout's grooming of A.A., it was foreseeable that George Fout would ultimately consummate the grooming in its goal of sexual abuse.

89.     Indeed, ultimately, George Fout's grooming of each of these four (4) scouts did result in them suffering his continuous and ongoing sexual abuse.

90.     This grooming frequently occurred on the premises of SILVER SPRINGS SHORES and during events sponsored by the BSA.

91.     Upon information and belief, Troop 448 Scoutmasters knew or should have known that George Fout was grooming A.A. for abuse and that abuse of A.A. was foreseeable, impending and ongoing.

92.     In addition, it is a reasonable inference that, while George Fout was grooming four (4) scouts under their care, adult supervisors of Troop 448, including Steve Fout, observed actions and behavior by George Fout by which they knew or should have known that George Fout was grooming the scouts, including A.A. for abuse and that abuse of A.A. was foreseeable, impending and ongoing.

93.     Further, if the Boy Scout Defendants had properly trained adult leaders and Scoutmasters to identify grooming behavior, they would have identified George Fout as being actively engaged in grooming four (4) child scouts in their troop and would have been trained to

15

BSA-PLAN_01423044

SA 1298

warn A.A. and his parents of the impending abuse and prevent the abuse and the resulting injuries and damage.

### George Fout's Abuse of A.A. was Foreseeable and Immanent.

94.     George Fout's sexual abuse of A.A. was foreseeable, as the Boy Scout Defendants each had actual and constructive notice of George Fout's grooming of A.A., and actual and constructive notice of the impending and immanent and actual abuse of A.A. and the abuse, in fact, of A.A.

95.     This notice included, without limitation:

a.     That George Fout would engage in a pattern of grooming of A.A. in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

b.     That George Fout would engage in a pattern of grooming of three (3) other scouts. in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

c.     Upon information and belief and upon reasonable inference, the adult troop leaders should have known that George Fout engaging in grooming of four (4) minor scouts in their presence and on the premises of Silver Springs Shores and at events sanctioned and managed by the BSA and the NORTH FLORIDA COUNCIL;

d.     On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on the BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES, providing notice to The Boy Scout Defendants of grooming, sexual abuse, and the ongoing process of grooming, including that George Fout's propensity to engage in sexual abuse is foreseeable and immanent;

e.     At times, A.A, would leave scouting events held on Defendants' premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of the BSA policy;

16

    f.      Adult scout leaders of Troop 448 knew or should have known that A.A. and other scouts of Troop 448 would visit the home of George Fout and would often spend the night in the bedroom of George Fout, in violation of BSA policy;

    g.      Steve Fout, as agent for the BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES was personally present over the course of many years as George Fout, his adult son, took four (4) minor child scouts to his room, each on a series of separate occasions, for hours of "game play" and overnight sleep-overs behind closed doors;

    h.      Steve Fout should have known or was willfully ignorant of the fact that his son was abusing minor children under his roof;

    i.      Steve Fout, as a troop leader and an agent for the BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES knew, should have known or was willfully ignorant that George Fout was actively abusing or posed a threat of sexual abuse to minor scouts under his care.

96.    During all relevant times hereto, George Fout was conducting himself in such a manner and fashion that the Boy Scout Defendants knew or should have known that George Fout had a propensity to commit and engage in sexual misconduct.

97.    If the Boy Scout Defendants had properly and adequately supervised the conduct and the activities of George Fout, they would have known or should have known of the misconduct of George Fout, so as to prevent the sexual abuse and infliction of emotional distress on A.A.

98.    Had the Boy Scout Defendants not acted in such a careless, negligent, and/or reckless manner, they would have known and/or should have known of the conduct of George Fout, as described herein, and of his propensity to engage in such activities, such that the Boy Scout Defendants could and/or should have prevented the sexual abuse and the infliction of physical and emotional distress on A.A.

99.    As agents for the Boy Scout Defendants, actual or constructive knowledge to Steve Fout and to adult troop leaders that George Fout posed a risk to the scouts and had a

17

BSA-PLAN_01423046

SA 1300

propensity to engage in the grooming and sexual abuse is imputed to the BSA, the NORTH FLORIDA COUNSEL, jointly and severally.

### The BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES Had Constructive Control of the Premises upon which George Fout's Behavior Provided Notice of the Impending Abuse.

100.    On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at the BSA administrated event on the BSA property.

101.    George Fout's grooming and resulting psychological and emotional damage relating to A.A.'s sexual abuse often occurred on property owned and controlled by the BSA and Silver Shores and during events sanctioned and administrated by the Boy Scout Defendants.

102.    Similarly, on multiple and continuing occasions, notice of George Fout's propensity to commit abuse, including without limitation, his grooming of A.A. and at least four (4) other scouts occurred on property owned and controlled by Boy Scout Defendants and during events sanctioned and administrated by the BSA, the Council and Silver Shores.

### George Fout's Abuse of A.A.

103.    A.A. was introduced to his abuser, George Fout through his membership in the BSA Troop 448.

104.    At all times material hereto, George Fout was an adult.  At all times material hereto, A.A. was a minor.

105.    At all times relevant hereto, for the purpose of furthering his duties as an Assistant Scoutmaster, George Fout sought and gained the then minor A.A.'s trust, friendship, admiration and obedience. As a result, A.A. was conditioned to comply with George Fout's direction and to look to him as an authority figure.

18

106.   At all relevant times hereto, using the power, authority and trust of his position as an Assistant Scoutmaster, and availing himself of the Boy Scout Defendants' representations to parents and scouts that tire BSA was a moral and safe place for young boys, George Fout groomed, enticed, induced, directed, coerced and forced A.A. to engage in deviant sexual acts with him.

107.   As the foreseeable extension of the grooming process, George Fout committed a sexual abuse, sexual touching, penetration, oral and anal sodomy and other acts of sexual battery constituting violations of Section 794.011, Florida Statutes, upon A.A.

108.   Eventually, George Fout escalated the frequency of the sexual battery to the point where he was sexually abusing A.A. approximately once a month.

109.   At all times relevant hereto, George Fout utilized physical, emotional and spiritual force and persuasion to impose his moral will upon the then minor A.A. in order to commit grievous, unspeakable acts of sexual abuse upon the person of then minor A.A. all of which acts constitute flagrant abuse of the symbolism, power and authority of his position as an Assistant Scoutmaster.

110.   The grooming and other notice of George Fout's propensity for abuse would frequently occur on the premises of SILVER SPRINGS SHORES and during sanctioned the BSA events on the BSA property.

111.   The sexual battery would often take place at George Fout's home after scouting events, in which he resided with Steve Fout, his father and the Scoutmaster of Troop 448. Steve Fout was often present in the home during George Fout's sexual battery of A.A.

19

BSA-PLAN_01423048

SA 1302

112.    At times, A.A. would leave scouting events held on Defendants' premises with Scoutmaster Steve Fout and Assistant Scoutmaster George Fout to spend time at the Fout's residence in violation of the BSA policy.

113.    As the sexual battery would continue, without limitation, A.A. would spend the night at the home of Scoutmaster Steve Fout.  This is a clear violation of the BSA policy. During those occasions, A.A. would be abused by Assistant Scoutmaster George Fout. Steve Fout was often in the home often when the incidents of sexual battery occurred.

114.    At no time did the BSA, NORTH FLORIDA COUNCIL, or SILVER SPRINGS SHORES take steps to ensure the non-sleepover between volunteer leaders and youth in the BSA's policy was being implemented and followed by their scoutmasters or scout leaders, and at no time did the BSA, NORTH FLORIDA COUNCIL, or SILVER SPRINGS SHORES take steps to ensure that no one-on-one contact between volunteer leaders and youth were being followed according to the BSA's polices.

115.    A.A. was repeatedly abused under circumstances where he was unable to protect himself or was otherwise unable to avail himself of his legal guardians for their ordinary source of protection or was otherwise relying entirely on The Boy Scout Defendants, and its agents for his protection.

### The BSA, the NORTH FLORIDA COUNSEL and SILVER SPRINGS SHORES Had Actual or Constructive Control of the Premises upon which Sexual Abuse and related Grooming was committed.

116.    On at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at a the BSA administrated event on the BSA property.

117.    George Fout's grooming and resulting psychological and emotional damage relating to A.A.'s sexual abuse often occurred on property owned and controlled by the BSA and

20

BSA-PLAN_01423049

SA 1303

Silver Shores and during events sanctioned and administered by the BSA, the Council and Silver Shores.

118.    Similarly, on multiple and continuing occasions, notice of George Fout's propensity to commit abuse, including without limitation, his grooming of A.A. and at least three (3) other scouts occurred on property owned and controlled by the BSA and Silver Shores and during events sanctioned and administered by the BSA, the Council and Silver Shores.

### The BSA's History of Pedophilia

119.    The BSA has known for decades of the high degree of risk that adult Scoutmasters and volunteers may sexually abuse minor scout members.

120.    Since the early 1900s, the BSA has maintained a system of "Ineligible Volunteer Files" to track incidents wherein adult Scoutmasters sexually abused scouts. The Ineligible Volunteer Files contain internal memoranda demonstrating the BSA's awareness of the ongoing pedophilia within the BSA, and demonstrated concerns about pedophiles within the BSA harming their reputation and economic interests.

121.    These Ineligible Volunteer Files demonstrate the BSA's vulnerabilities when it comes to pedophilia within the BSA and includes pedophiles' techniques used to enter scouting, their techniques for grooming victims and more.

122.    In approximately 1972, the BSA implemented a system requiring local Council's scouting executives to complete and send in a form with any available supporting information about known or alleged sexual abuse committed by adult Scoutmasters in the executives' jurisdiction. Upon receipt of this information from the local Council, the BSA created an Ineligible Volunteer File for the abuser and added it to the BSA's database.

21

BSA-PLAN_01423050

SA 1304

123.    By 1977, the BSA was advising all sponsoring organizations to maintain "two deep leadership" for all scouting activities, wherein two adult Scoutmasters were required to be present at all times. Ostensibly, this precaution was implemented to help prevent sexual abuse in scouting.

124.    Despite the BSA's extensive and long-standing knowledge of the high degree of risk of pedophilia in scouting, the BSA did not implement a sexual abuse-prevention education program until approximately 1988. This program, the Youth Protection Program, was the BSA's first effort to educate scouts and their family members about the risk of sexual abuse in scouting, a risk that continues today.

125.    The BSA has overwhelming evidence that scouting has particular characteristics that make the organization vulnerable to pedophiles, including but limited to:

   a.    Joining the BSA provides pedophiles access to boys alone and away from their families in secluded settings like camp-outs and overnight hikes;

   b.    The BSA repeatedly encourages young boys to strictly obey their scout leaders and masters, allowing pedophiles to groom their victims;

   c.    The BSA encourages overnight stays, camping trips and other activities for scouts and scout leaders and masters to be alone together;

   d.    Scouting provides opportunities for a pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him;

   e.    A pedophile scout leader can, depending on the pedophile's preferred victim age, volunteer for and be sure to have access only to boys of a certain age;

   f.    The BSA conditions boys to the concept of strict obedience to the scout leader and a bonding mechanism that pedophiles crave;

   g.    The BSA promotes the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a pedophile's efforts to keep his victims silent and compliant;

22

Highly Confidential

BSA-PLAN_01423051

SA 1305

h.      The BSA conducted no criminal background checks on its volunteers;

i.      The BSA did not prohibit adults from sleeping in tents with boys overnight;

j.      The BSA did not prohibit adult leaders from spending time alone with individual scouts; i. The BSA did not prohibit adult scout leaders from having contact with scouts outside of authorized scouting activities;

k.      For decades, the BSA re-admitted pedophiles it had previously removed for child abuse after a period of the BSA "probation," thereby exposing unsuspecting children to sexual abuse;

l.      The BSA had a practice of not reporting scout abuse incidents to law enforcement;

m.      The BSA had a pattern of reaching an accommodation with a pedophile, in which the pedophile would resign from scouting and the BSA would agree not to report the child sexual abuse to civil authorities;

n.      The BSA refused requests to share its list of known abusers with other youth organizations, knowing that pedophiles it had ejected often joined other youth-serving organizations;

o.      The BSA refused to produce its I.V. files to its review board and scout safety consultants, who were endeavoring to develop and implement meaningful safeguards and barriers to pedophile infiltration;

p.      The BSA refused to fingerprint, photograph or perform background checks on its adult volunteers, allowing removed pedophiles using an alias to sneak back in to scouting through another troop;

q.      The BSA refused to utilize widely accepted organizational best practices that would establish reasonable barriers to intrusion by pedophiles;

r.      The BSA refused to educate local councils, staff, and troop leaders regarding the true risks posed by pedophiles to scouts; and

s.      The BSA refused to effectively monitor local councils and troops to ensure that appropriate safeguards were being used in the selection and retention of adult scout leaders.

Highly Confidential

BSA-PLAN_01423052

**SA 1306**

126.    The BSA's internal records, known as the "Ineligible Volunteer" files (hereinafter "the I.V. files"), are a unique repository of documents the BSA secretly began amassing shortly after the BSA's founding in 1910.

127.    The I.V. files reveal that the BSA, far from being safe and wholesome, has long attracted and been a sanctuary for pedophiles.

128.    The I.V. files contain internal memoranda demonstrating the BSA's awareness and concern about the threat that pedophiles in the BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community.

129.    The IV Files contain internal memoranda demonstrating BSA's awareness and concern about the threat that pedophiles in BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community. See Exhibit "A" (The Ernst Memorandum evidencing the BSA and the local council's ongoing conspiracy to suppress from the public its certain knowledge of its pedophile infiltration problem), BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that have successfully infiltrated scouting. The I.V. files highlight BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles' patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

130.    The BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that had successfully infiltrated scouting. The I.V. files highlight the BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles

24

BSA-PLAN_01423053

SA 1307

patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

131.    The overwhelming evidence the I.V. files present shows that for a century the BSA has known of the BSA's distinctive characteristics that render scouts particularly prone to pedophiles' abuse.

132.    By 1935, the BSA had accumulated approximately 2,000 files on pedophiles that had successfully infiltrated or attempted to infiltrate its program.

133.    In the 1970s, the BSA recognized the potential liabilities represented by possessing and maintaining the I.V. files. By 2005, the BSA's secret cache of files on pedophiles exceeded 20,000.

134.    Over the course of two years in the early 1970s, three the BSA executives reviewed and permanently destroyed thousands of I.V. files

135.    The BSA executives kept no retention logs showing which or how many of the files the BSA destroyed. The BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save.

136.    Approximately 6,000 files survived the BSA's file-purge and are in the BSA's possession. Approximately 1900 of those files are now in the public domain.

137.    The files demonstrate that the BSA opened a new I.V. file on a pedophile every other day for fifty years.

138.    The I.V. files demonstrate that the BSA had overwhelming evidence (1) that scouting attracts pedophiles at an alarming rate and (2) of scouting's distinctive characteristics that make it attractive to pedophiles:

25

139.    Between 1987 and 2005, the BSA settled sixty-one lawsuits in which the BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders. Since 1987, the BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by the BSA to prevent the abuse's facts and circumstances from becoming public.

140.    As between the Boy Scout Defendants and A.A., the Boy Scout Defendants had superior knowledge of the risk of sexual abuse to A.A. by participating in the BSA program, yet failed to warn or otherwise advise A.A. or his guardians of their superior knowledge.

### Negligence of The Boy Scout Defendants – Failure of Policy and Training.

141.    BSA and its agents knew from long experience based on information contained in its Ineligible Volunteer Files that pedophiles had for nearly a century been exploiting vulnerabilities within it organization to gain access to and sexually abuse boys.

142.    BSA and its agents had certain knowledge that pedophiles like George Fout could exploit BSA's vulnerabilities. BSA knew that failure to adopt and implement certain policies and practices to protect scouts would cause scouts, including A.A, to be at heightened risk of pedophilic grooming and sexual abuse.

143.    The BSA's failure to adopt and effectively implement policies and practices to protect scouts in its custody and control included, without limitation:

144.    Permitting fathers to act as Scoutmasters, in a supervisory position over their adult sons, as Assistant Scoutmasters, effectively eliminating certain protections afforded by a two-deep policy;

Highly Confidential

BSA-PLAN_01423055

**SA 1309**

145.    Failing to educate scouts and other adult scout leaders about the grooming behaviors they knew that pedophile scout leaders engaged so that that scouts could recognize, resist, and report the inappropriate behaviors;

146.    Failing to monitor or evaluate scout staff to prevent them from using its program and facilities to gain access, groom, and sexually abuse scouts;

147.    Further, to the extent that the BSA undertook to adopt any such policies, they were insufficient for the foreseeable risk presented and were not properly implemented or enforced.

## Negligence of The Boy Scout Defendants – Failure to Protect A.A. from foreseeable abuse by George Fout.

148.    The Boy Scout Defendants, each having a special relationship with A.A. and over Steve Fout and George Fout.

149.    The actual or constructive knowledge that The Boy Scout Defendants and Steve Fout possessed of George Fout's grooming of A.A. and other scouts in Troop 448 rendered the abuse of A.A. not only foreseeable, but highly likely.

150.    In addition, the access that George Fout had to vulnerable children like A.A., the potential to take advantage of the special relationship with potential victims and the failures of BSA policy which George Fout used to gain access to, groom, and to sexually abuse A.A., were precisely the same foreseeable vulnerabilities that BSA had documented in tens of thousands of ineligible volunteer files it had been keeping for nearly a century.

Highly Confidential

BSA-PLAN_01423056

SA 1310

## ACTIONS AGAINST SILVER SPRINGS SHORES

### Count I: Negligence of Defendant SILVER SPRINGS SHORES

151.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

152.    Defendant, SILVER SPRINGS SHORES undertook to promote and provide a scouting program for children and minor boys.

153.    Having undertaken this activity, SILVER SPRINGS SHORES had duty to act with reasonable care and to take precautions so that persons may not be injured.

154.    In addition, Defendant SILVER SPRINGS SHORES had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

155.    This special relationship between Defendant SILVER SPRINGS SHORES and A.A. gave rise to a right of protection for A.A.

156.    Based on the special protective relationship with A.A., Defendant SILVER SPRINGS SHORES had a duty to protect A.A. from reasonably foreseeable harm.

157.    In addition, Defendant, SILVER SPRINGS SHORES had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives SILVER SPRINGS SHORES a duty to control the actions of George Fout.

158.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of SILVER SPRINGS SHORES.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

28

BSA-PLAN_01423057

SA 1311

159.     The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to SILVER SPRINGS SHORES that sexual abuse is not only foreseeable, but likely.

160.     SILVER SPRINGS SHORES and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

161.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by SILVER SPRINGS SHORES.

162.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

163.     Defendant SILVER SPRINGS SHORES breached the duty it owed A.A., by acts or omissions which included, without limitation:

    a.     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

29

    d.    Failing to advise or warn A.A. or his guardian of the history of pedophilia in the BSA and to affirmatively educate A.A. and guardian to identify and avoid abuse.

    e.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

164.    As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

165.    Further, as a direct and proximate cause of Defendant SILVER SPRINGS SHORES' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

166.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

30

BSA-PLAN_01423059

SA 1313

### Count II: Breach of Fiduciary Duty of Defendant SILVER SPRINGS SHORES

167.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

168.    As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and SILVER SPRINGS SHORES, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in SILVER SPRINGS SHORES and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

169.    As a result, SILVER SPRINGS SHORES owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

170.    In addition, Defendant, SILVER SPRINGS SHORES had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives SILVER SPRINGS SHORES a duty to control the actions of George Fout.

171.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of SILVER SPRINGS SHORES.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

172.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to SILVER SPRINGS SHORES that sexual abuse is not only foreseeable, but likely.

173.    SILVER SPRINGS SHORES and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

Highly Confidential

BSA-PLAN_01423060

SA 1314

174.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by SILVER SPRINGS SHORES.

175.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

176.     Defendant SILVER SPRINGS SHORES breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

    a.     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

    d.     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

177.     As a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

178.     Further, as a direct and proximate cause of Defendant SILVER SPRINGS SHORES' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional,

32

BSA-PLAN_01423061

SA 1315

psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

179.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

<u>**ACTIONS AGAINST NORTH FLORIDA COUNCIL**</u>

<u>**Count III: Negligence of Defendant NORTH FLORIDA COUNCIL**</u>

180.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

181.     Defendant, NORTH FLORIDA COUNCIL undertook to promote and provide a scouting program for children and minor boys

182.     Having undertaken this activity, NORTH FLORIDA COUNCIL had duty to act with reasonable care and to take precautions so that persons may not be injured.

183.     In addition, Defendant NORTH FLORIDA COUNCIL had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

33

BSA-PLAN_01423062

SA 1316

184.    This special relationship between Defendant NORTH FLORIDA COUNCIL and A.A. gave rise to a right of protection for A.A.

185.    Based on the special protective relationship with A.A., Defendant NORTH FLORIDA COUNCIL had a duty to protect A.A. from reasonably foreseeable harm.

186.    In addition, Defendant, NORTH FLORIDA COUNCIL had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives NORTH FLORIDA COUNCIL a duty to control the actions of George Fout.

187.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of NORTH FLORIDA COUNCIL.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

188.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to NORTH FLORIDA COUNCIL that sexual abuse is not only foreseeable, but likely.

189.    NORTH FLORIDA COUNCIL and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

190.    George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by NORTH FLORIDA COUNCIL.

191.    In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by The Boy Scout Defendants.

34

BSA-PLAN_01423063

SA 1317

192.     Defendant, NORTH FLORIDA COUNCIL breached the duty it owed A.A., by acts or omissions which included, without limitation:

   a.   Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

   b.   Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

   c.   Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

   d.   Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

193.     As a direct and proximate cause of Defendant, NORTH FLORIDA COUNCIL's negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

194.     Further, as a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

195.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and

35

bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count IV: Breach of Fiduciary Duty of Defendant NORTH FLORIDA COUNCIL

196.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

197.    As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and NORTH FLORIDA COUNCIL, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in NORTH FLORIDA COUNCIL and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

198.    As a result, NORTH FLORIDA COUNCIL owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

199.    In addition, Defendant, NORTH FLORIDA COUNCIL had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives NORTH FLORIDA COUNCIL a duty to control the actions of George Fout.

200.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of NORTH FLORIDA COUNCIL.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

36

BSA-PLAN_01423065

SA 1319

201.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to NORTH FLORIDA COUNCIL that sexual abuse is not only foreseeable, but likely.

202.    NORTH FLORIDA COUNCIL and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

203.    George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by NORTH FLORIDA COUNCIL.

204.    In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

205.    Defendant NORTH FLORIDA COUNCIL breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

    a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

    b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

    c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

Highly Confidential

BSA-PLAN_01423066

SA 1320

     d.     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

206.     As a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

207.     Further, as a direct and proximate cause of Defendant NORTH FLORIDA COUNCIL' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

208.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant NORTH FLORIDA COUNCIL for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## ACTIONS AGAINST BSA

### Count V: Negligence of Defendant BSA

209.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

38

BSA-PLAN_01423067

SA 1321

210.    Defendant, BSA undertook to promote and provide a scouting program for children and minor boys.

211.    Having undertaken this activity, BSA had duty to act with reasonable care and to take precautions so that persons may not be injured.

212.    Defendant BSA had a special relationship with A.A., as more particularly alleged in Paragraphs 43 (a) - (e) above.

213.    This special relationship between Defendant BSA and A.A. gave rise to a right of protection for A.A.

214.    Based on the special protective relationship with A.A., Defendant BSA had a duty to protect A.A. from reasonably foreseeable harm.

215.    In addition, Defendant, BSA had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives BSA a duty to control the actions of George Fout.

216.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of BSA.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

217.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to BSA that sexual abuse is not only foreseeable, but likely.

218.    BSA and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

39

Highly Confidential

BSA-PLAN_01423068

SA 1322

219.     George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by BSA.

220.     In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

221.     Defendant BSA breached the duty it owed A.A., by acts or omissions which included, without limitation:

> a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.
>
> b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.
>
> c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.
>
> d.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

222.     As a direct and proximate cause of Defendant BSA' negligent acts and omissions, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

223.     Further, as a direct and proximate cause of Defendant BSA' negligent acts and omissions, A.A. was the victim of a process of mental, emotional, psychological and physical

Highly Confidential

BSA-PLAN_01423069

SA 1323

manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

224.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

## Count VI: Breach of Fiduciary Duty of Defendant BSA

225.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

226.    As a result of the relationship described in Paragraphs 43 (a) - (e) above, A.A. and BSA, and as a result of the moral, social, personal and legal relations and obligations arising therefrom, A.A. reposed in BSA and SILVERS SPRINGS SHORES accepted the trust and confidence of A.A.

227.    As a result, BSA owed A.A. a fiduciary duty, including, without limitation, a duty to protect A.A. from foreseeable harm.

228.    In addition, Defendant, BSA had a special relationship with George Fout as more particularly described in Paragraphs 65 - 80 which gives BSA a duty to control the actions of George Fout.

41

229.    George Fout engaged in a process of grooming of A.A. and three other scouts under the care of BSA.  Grooming is a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93

230.    The grooming which George Fout inflicted upon A.A. is both an injury in and of itself and is notice to BSA that sexual abuse is not only foreseeable, but likely.

231.    BSA and its agents has actual or constructive notice of the behavior of George Fout, as more particularly described in Paragraphs 94 - 99, such that the sexual abuse of A.A was not only foreseeable, but likely.

232.    George Fout's grooming and notice of grooming and other behavior giving rise to the described notice occurred on the premises actually or constructively controlled by BSA.

233.    In addition, on at least one occasion, George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on BSA property which was administrated by the BSA NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

234.    Defendant BSA breached the fiduciary duty it owed A.A., by acts or omissions which included, without limitation:

   a.    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

   b.    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

   c.    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise

42

BSA-PLAN_01423071

SA 1325

conduct the activities of the Troop pursuant to the required and due standards of care.

    d.    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

235.    As a direct and proximate cause of Defendant BSA' breach of its fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

236.    Further, as a direct and proximate cause of Defendant BSA' breach of its fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

237.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

43

BSA-PLAN_01423072

SA 1326

## VICARIOUS LIABILITY COUNTS

### Count VII: Vicarious Liability of Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for the Sexual Battery by George Fout

238.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

239.    At all relevant times, George Fout, as Assistant Scoutmaster, was acting as agent for the Boy Scout Defendants by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

240.    Accordingly, the Boy Scout Defendants are vicariously liable for the acts and omissions and breaches of fiduciary duties of George Fout.

241.    George Fout's acts and omissions and breaches of fiduciary duties include, without limitation, committing acts of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93 and performing sexual battery upon A.A.

242.    As a result of acts, A.A. suffered at the time of the abuse and continuing up to the present day permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial, for which such damages, the Boy Scout Defendants are vicariously liable.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court

Highly Confidential

deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count VIII: Vicarious Liability of Defendants SILVER SPRINGS SHORES, NORTH FLORIDA COUNCIL and BSA for the Negligence and Breach of Fiduciary Duty of Steve Fout

243.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

244.    At all relevant times, Steve Fout, as Scoutmaster, was acting as agent for Defendants the Boy Scout Defendants by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

245.    Accordingly, Boy Scout Defendants are vicariously liable for the acts and omissions and breaches of fiduciary duties of Steve Fout.

246.    Steve Fout's acts and omissions and breaches of fiduciary duties include, without limitation,

  a)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

  b)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

  c)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

  d)    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

45

BSA-PLAN_01423074

SA 1328

     e)     Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

247.     As a direct and proximate cause of Steve Fout's negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

248.     Further, as a direct and proximate cause of Defendant Steve Fout's negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

249.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

**Count IX: Vicarious Liability of Defendants NORTH FLORIDA COUNCIL and BSA for the Negligence and Breach of Fiduciary Duty of
SILVER SPRINGS SHORES**

250.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

46

BSA-PLAN_01423075
SA 1329

251.    At all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendants NORTH FLORIDA COUNCIL and BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

252.    Accordingly, Defendants NORTH FLORIDA COUNCIL and BSA are vicariously liable for the acts and omissions and breaches of fiduciary duties of SILVER SPRINGS SHORES.

253.    SILVER SPRINGS SHORES acts and omissions and breaches of fiduciary duties include, without limitation,

f)    Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

g)    Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

h)    Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

i)    Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

j)    Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

254.    As a direct and proximate cause of SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

47

BSA-PLAN_01423076

SA 1330

255.     Further, as a direct and proximate cause of SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

256.     As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendants NORTH FLORIDA COUNCIL and BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count X: Vicarious Liability of Defendant BSA for the Negligence and Breach of Fiduciary Duty of NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES

257.     Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

258.     At all relevant times, NORTH FLORIDA COUNCIL was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

259.     In addition, at all relevant times, SILVER SPRINGS SHORES was acting as agent for Defendant BSA by implementing and maintaining a scouting program at the local level with the consent and oversight of Defendant BSA.

48

BSA-PLAN_01423077

SA 1331

260.     Accordingly, Defendant BSA is vicariously liable for the acts and omissions and breaches of fiduciary duties of NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES.

261.     NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES acts and omissions and breaches of fiduciary duties include, without limitation,

k)     Failing to protect A.A. from reasonably foreseeable harm, including, without limitation, the reasonably foreseeable harm that A.A. would be sexually abused by George Fout, and other negligence more particularly described in Paragraphs 103 - 115.

l)     Allowing George Fout to have unsupervised contact with A.A. during Troop 448 scouting activities and spend time at the home of Steve Fout and George Fout, which allowed George Fout to isolate and sexually abuse A.A.

m)     Failing to otherwise oversee the appointment of Scoutmasters and Assistant Scoutmasters, otherwise properly oversee the activities of Troop 448, its scouts, Scoutmasters and Assistant Scoutmasters and otherwise conduct the activities of the Troop pursuant to the required and due standards of care.

n)     Failing to implement proper training and policies to identify and prevent the sexual abuse of scouts as more particularly alleged in Paragraphs 141 - 147.

o)     Facilitating contact between George Fout and A.A., such that sexual abuse and other acts could be perpetrated upon A.A.

262.     As a direct and proximate cause of NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES' negligent acts and omissions and breach of fiduciary duty, A.A. was the victim of acts of sexual battery, including acts constituting violations of Section 794.011, Florida Statutes.

263.     Further, as a direct and proximate cause of NORTH FLORIDA COUNSEL's and SILVER SPRINGS SHORES negligent acts and omissions and breach of fiduciary duty,

49

Highly Confidential

A.A. was the victim of a process of mental, emotional, psychological and physical manipulation generally described as grooming and more particularly described in Paragraphs 81 - 93.

264.    As a result of the grooming of George Fout and as a result of the related sexual battery perpetrated on A.A. by George Fout, A.A. has suffered and continues to suffer permanent, progressive and disabling emotional, psychological and physiological damages and bodily injuries, and he continues to experience mental anguish, humiliation, and emotional and physical distress, all in an amount to be proven at trial.

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

### Count XI Fraud, Misrepresentation and Fraudulent Concealment

265.    Plaintiff incorporates Paragraphs 1 through 150 above as fully set forth under this count and further alleges as follows:

266.    Congress founded BSA in the United States in 1910.

267.    Throughout its history, the BSA has consistently held itself out to the public as a "moral and safe" environment for boys to participate in healthy outdoor activities and to be given proper guidance and instruction. Millions of parents and scouts have placed then- trust in the BSA.

268.    Since 1910, hundreds of millions of parents have entrusted their sons to BSA's care, guidance and instruction. Since its inception, BSA aggressively marketed the wholesomeness and safety of its programs to the American Public.

Highly Confidential

269.    The BSA engages in affirmative commercial efforts which sophisticatedly use powerful American symbols and modern advertising techniques to sell a national belief that the BSA could best mold the proper expression of American boyhood.

270.    The BSA promotes itself as a vehicle for boys to be instructed in good citizenship patriotism, and efficient social organization. Its brand consistently promotes an image of providing a safe environment in which they can develop "patriotism, self-reliance and kindred virtues." For example, a copy of "BSA Mission" is attached as Exhibit "B".

271.    Paradoxically, the BSA promotes the wholesomeness of its program while knowing that since the 1940s, it has been secretly removing Scoutmasters for child sexual abuse at an alarming rate, which in the 1970s reached an average of one every three days. Its own records demonstrate that it has long known that scouting attracts pedophiles in large numbers and that scouts, far from being safe, are at the heightened risk of sexual abuse by child molesters

272.    The BSA fraudulently concealed from Congress, scouts, their parents and the American taxpayer BSA's certain knowledge that pedophiles had been infiltrating BSA in large numbers for many years, as more particularly described in Paragraphs 119 - 140

273.    The BSA, pursuant to its Congressional Charter in 1916, later codified by 36 U.S.C. Chapter 309 is required to file an annual report to Congress.

274.    The BSA fraudulently concealed the said information from A.A and his guardian. BSA also misrepresented to scouts, their parents and the American taxpayer that the scouts were safe in scouting programs when, in fact, scouts were at an unreasonably heightened risk of sexual abuse by adult scout leaders, BSA made said misrepresentations to A.A and his guardian.

51

BSA-PLAN_01423080

SA 1334

275.    BSA's internal records known as the "Ineligible Volunteer" files (hereinafter referred to as "The IV Files") are a unique repository of documents BSA secretly began amassing shortly after its founding in 1910.

276.    Between 1987 and 2005, BSA settled sixty-one lawsuits in which BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders.

277.    Since 1987, BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by BSA to prevent the facts and circumstances of the abuse from becoming public.

278.    BSA continues to make false and misleading public statements regarding the risks of sexual abuse in scouting; continues to minimize and downplay the harm of sexual abuse to children in scouting; fails to reach out to provide support and assistance to boys it knows were sexually abused by adult scout leaders; and continues to deny the truth about its historical knowledge of the nature and extent of sexual abuse of scouts by adult scout leaders.

279.    BSA failed to establish reasonable safeguards to prevent pedophiles from entering its programs.

280.    A.A. and his guardians trusted the BSA and reasonably relied upon the BSA's representations that it presented a moral and safe place for boys.

281.    BSA deliberately withheld information from Congress in its annual report from scouts and their parents, including A.A and his guardian.

282.    It withheld information about the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA was aware; and the methods pedophiles had been using to gain access to scouts, to groom them for abuse, and to keep them silent. BSA's

52

BSA-PLAN_01423081

SA 1335

timely communication of this information would have enabled scouts, including A.A., to protect himself from sexual abuse by pedophiles in scouting. It would have enabled Congress to perform its constitutional oversight function over a congressionally-chartered, tax-payer funded and tax-exempt youth organization which brings unscreened, unvetted adults into contact with tens of millions of children annually.

283.    BSA had a financial incentive to withhold facts and information about predatory and pedophilic Scoutmasters and/or Assistant Scoutmasters.

284.    Since 1910, BSA has derived millions of dollars per year licensing the rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise to affiliated scouting organizations throughout the United States and abroad (See 36 U.S.C, § 30905). BSA has realized income from these federally-protected assets by marketing them to parents and their children, including A.A.

285.    BSA's marketing includes encouraging parents to enroll their children in BSA. Enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to BSA. This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others. This system includes overnight outings, camping events, and trips away from parents. The system is reward based, obligating the child to purchase emblems, badges, and other Scouting paraphernalia, which in turn creates profit for the federally charted organization.

286.    In addition to being federally created, federally chartered, and endowed by Congress with exclusive economic rights, BSA is funded by the federal government, private donations, membership dues, corporate sponsors, and special events

Highly Confidential

BSA-PLAN_01423082

**SA 1336**

287.    BSA is the 18th largest nonprofit in the United States, with income exceeding $780 million dollars a year.

288.    Upon information and belief, the Boy Scout Defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by Scoutmasters and Assistant Scoutmasters and prevent disclosure, prosecution and civil litigation including, but not limited to:

      a.     Failure to report incidents of abuse to law enforcement or child protection agencies;

      b.     Concealment of abuse they had substantiated and failure to seek out and redress the injuries its Scoutmasters and leaders had caused; and

      c.     Failure to advise local scouting agencies of the rampant problem of sexual abuse of scouts by Scoutmasters and leaders and that BSA's system of "Ineligible Volunteer Files" was ineffective at curbing the problem.

289.    Based on these actions, the Boy Scout Defendants engaged in fraudulent concealment and are estopped from asserting the defense of statute of limitations and/or laches.

290.    A.A. alleges that had the BSA notified A.A., his guardian, civil authorities, or the scouting public of the pervasiveness of sexual abuse by the BSA's adult scout leaders, A.A. would either not have joined the BSA or not been allowed by his guardian to join the BSA.

291.    Alternately, if the BSA had educated A.A. and his guardian of the nature of risks of abuse by adult scout leaders, that he would have taken steps to protect himself from the grooming and sexual abuse to which his adult scout leader subjected him.

292.    BSA had notified or educated A.A. and his guardian of the nature of risks of abuse by adult scout leaders, he would not have, and would not have been permitted continuous sleep-overs at the home of Steve Fout in the bedroom of George Fout.

54

Highly Confidential

BSA-PLAN_01423083

SA 1337

293.   The above described conduct of the Boy Scout Defendants was willful and outrageous, was committed in reckless disregard of the probability of causing A.A.'s severe emotional distress, mental anguish, humiliation, and psychological, spiritual, and physical injury and illness of A.A.

294.   Additionally, in doing the acts as described herein, the Boy Scout Defendants were guilty of fraud, oppression, or malice.  As a direct and proximate result of the practice of deceit, deception, concealment and fraud by the Boy Scout Defendants and George Fout, A.A. was victimized by George Fout and sustained the profound injuries, losses and damages as set forth therein

WHEREFORE, the Plaintiff, A.A., seeks judgment against Defendant BSA, NORTH FLORIDA COUNCIL and SILVER SPRINGS SHORES for A.A.'s compensatory damages, plus costs of suit, post-judgment interest, and such other and further relief as this Court deems just and proper. A.A. reserves the right to amend this Complaint to assert punitive damages. A.A. further requests trial by jury of all issues so triable.

Dated: August 30, 2019.

MORGAN & MORGAN, P.A.
Business Trial Group

s/Paul L. SanGiovanni
Paul L. SanGiovanni, Attorney at Law
Florida Bar No. 0513164
Cari Whitmire, Attorney at Law
Florida Bar Number 1015584
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone:  (407)418-6041
Facsimile:  (407)245-3394
Primary E-mail:  PSangi@forthepeople.com
Primary E-mail:  CWhitmire@forthepeople.com
Secondary E-mail: MTodd@forthepeople.com

Highly Confidential

BSA-PLAN_01423084
SA 1338

1972



### BOY SCOUTS OF AMERICA
North Brunswick · New Jersey 08902 · 201 249-6000

INTRAORGANIZATION COMMUNICATION

December 4, 1972

PERSONAL AND CONFIDENTIAL

TO ALL SCOUT EXECUTIVES:

SUBJECT:  Maintaining Standards of Leadership

The attached information on Maintaining the Standards of Leadership of the
Boy Scouts of America has been carefully developed as a guideline for
Scout Executives.

This is the first time such information has been printed, and because of
the misunderstandings which could develop if it were widely distributed,
we suggest that after you have read it, you file it with other policy
statements without making photocopies or sharing it beyond the top
management of your council.

If you have any questions, please do not hesitate to write or call us.

Sincerely,

Paul Ernst

Paul I. Ernst, Executive
Registration and Subscription

cm
cc:  Regional Directors
     Management Staff
Attachment

BSA 02205

**Exhibit "A" to Second Amended Complaint**

e ID: 190800135

### MAINTAINING STANDARDS OF LEADERSHIP

Since its inception, the BSA has maintained its right to set standards of
leadership in the areas of age, citizenship, sex, education, morals and
emotional stability.  This position is set forth in the Bylaws:

> Article II, Section 2, Clause 3 "No person shall be approved
> as a leader unless, in the judgment of Boy Scouts of America,
> he possesses the moral, educational, and emotional qualities
> deemed necessary for leadership and satisfies such other
> leadership qualifications as it may from time to time require."

> Other supporting Articles are listed in Appendex A.

The local council and the National Council must approve all applications
(Bylaws Article XVIII, Section I, Clause 3).

These standards were developed solely to protect the youth of America and
their enforcement in no way infringes on the rights of any individuals, nor
is refusal of registration to be construed as persecution or defamation of
character.  All leaders register for a limited term (usually one year) and
reregistration at the end of that period is also subject to approval
(Bylaws, Article XV, Section 4).

When a registered leader commits an act or conducts himself in a manner that
would seem to cause him to be unfit as a leader or an associate of boys, the
Scout Executive should take the following steps:

1) Inform the Registration and Subscription Executive at the
   National Office of the general nature of the allegations.

2) Secure hard evidence about the situation (signed statements by
   principals, police reports, court records, newspaper clippings,
   etc.).

3) Submit evidence and the confidential record sheet to Registration
   and Subscription.

4) Upon notification from Registration, write a letter to the
   individual (Appendix B) and hand deliver it along with a volunteer.

5) After the letter has been read, verbally tell the person the reasons
   for refusal to register.  Make no accusations -- say we have
   evidence to convince us that your --(financial affairs)  (moral life)
   (lack of leadership ability) do not meet the standards for leadership
   in the BSA.  Indicate that the BSA is not sharing this information
   with anyone and only wish him to stop all Scouting activity.

   After this visit, write down the main parts of the conversation,
   who was present and the date, and mail this to Registration and
   Subscription.

BSA 02206

Case ID: 190800135

BSA-PLAN_01423086
SA 1340

–2–

6) If the individual persists, the following review steps are
   to be taken as required:

A) Initial Step  --  The president of the local council will
   appoint three volunteers to act as a committee to review
   the case.

B) (If Step A does not resolve matter)  --  The Regional
   President will appoint a review committee if the person
   is not satisfied with the council's decision.

C) (If Step B does not resolve matter)  --  The President of
   the BSA will appoint a review committee if the individual
   is not satisfied with the Region's decision.

When a Scout Executive receives a confidential inquiry from Registration and
Subscription about a person attempting to register, he should take the
following steps:

1) Secure as rapidly as possible the necessary answers on the
   questionnaire and return to Registration and Subscription.

2) If it is not the same person, the registration certificate will
   be sent to the council.

3) If it is the same person, Registration and Subscription will write
   to the Scout Executive, indicating that the BSA is unwilling to
   register that person because information we have indicates that
   he fails to meet our standards of leadership.  If the individual
   questions the statement the Scout Executive may ask him if he
   has ever been in Scouting  in the past and been refused membership.

   If the answer is yes, the Scout Executive may say the reasons
   remain the same.

   If the answer is no, and the individual insists there has been a
   mistake, the Scout Executive should instruct him to send a complete
   statement covering his adult years, including address and dates
   lived there, occupations and dates, and names of spouse and children
   to the Registration and Subscription Executive.

In certain cases, an individual who failed to meet the standards of leadership
in the past wishes to register and the circumstances are changed sufficiently
that the BSA is willing to accept the registration on a trial basis.  The Scout
Executive will be notified in this situation, and requested to keep a close
watch on the individual for one year and then give a brief report to
Registration and Subscription.

All cases are reviewed periodically in reference to the seriousness of the
offense and the passage of time, and when the standards of leadership seem
to be satisfactorily met, cases are cancelled.

BSA 02207

Case ID: 190800135

BSA-PLAN_01423087
SA 1341

-3-

Many times an individual comes to a council seeking registration with the BSA and something unusual causes concern that further checking should be done before registration is completed.

When you find yourself in this situation, we ask that you write or phone directly to Registration and Subscription, asking that we check for any information that might be on file concerning the individual in question. This will immediately help you in your relationships with the individual and give you information as to whether registration should be completed before you do a lot of unnecessary work and make any commitments which could prove embarrassing.

dw-11/15/72

BSA 02208

Case ID: 190800135

Highly Confidential

BSA-PLAN_01423088

**SA 1342**

-4-

Appendix A


Article III, Section 2, Clause 1
Article X, Section 5, Clause 1
Article XII, Section 2
Article XII, Section 3
Article XII, Section 4
Article XV, Section 2, Clause 2, 3, 4, 6, 7
Article XVI, Section 6, Clause 4
Article XVIII, Section 2, Clause 1
Article XVIII, Section 3, Clause 2
Article XVIII, Section 4, Clause 1 - 7
Article XVIII, Section 5, Clause 1 - 2
Article XVIII, Section 7, Clause 1 - 2
Article XVIII, Section 9, 10, 11, 12


dw-11/27/72

BSA 02209

Case ID: 190800135

Highly Confidential

BSA-PLAN_01423089

SA 1343

-5-


Appendix - B



Dear

After a review of your past history with the Boy Scouts, it has been
decided not to accept your registration.  Registration with the Boy
Scouts of America is not automatically granted to everyone.  It is a
privilege and we reserve the right to refuse registration whenever
there is any reason for concern related to the person's association
with members or leaders of the Boy Scouts of America.

We, therefore, at this time desire to have you sever your relationship
with the Boy Scouts of America.  We are making no accusations and will
not release this information to anyone, so our action in no way will
affect your standing in the community.

                    Very truly yours,



                    Scout Executive


dw







                                        BSA 02210


                                        Case ID: 190800135


Highly Confidential                                    BSA-PLAN_01423090

                                                        SA 1344

# The BSA Mission

## MISSION STATEMENT AND PURPOSE

*The mission of the Boy Scouts of America is to prepare young people to make ethical and moral choices over their lifetimes by instilling in them the values of the Scout Oath and Law.*

## SCOUT OATH

*On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight.*

## SCOUT LAW

*A Scout is*

- Trustworthy
- Loyal
- Helpful
- Friendly
- Courteous
- Kind
- Obedient
- Cheerful
- Thrifty
- Brave
- Clean
- Reverent

## Purpose of the BSA

The purpose of this corporation shall be to promote, through organization, and cooperation with other agencies, the ability of boys to do things for themselves and others, to train them in Scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues, using the methods which are now in common use by Boy Scouts.

—Federal Charter, sec. 3.

One of the goals of the Boy Scouts of America is to provide, through chartered organizations, a program for boys, young men, and young women designed to encourage them to be faithful in their religious duties, build desirable qualities of character, train and involve them in the responsibilities of participating citizenship, and develop in them personal fitness.

---

*Exhibit "B to Second Amended Complaint*

Special emphasis will be placed in assisting the home, religious groups, and schools in achieving success in the development of abiding values in the lives of young people.

All programs will be directed toward helping to develop the full potential of each member.

## The Council's Purpose

The purpose of the council is to guide and support its districts for the achievement of the movement's purpose. (A successful district meets Quality District requirements.) The end result of effective district support is continued growth in membership, with those members receiving a quality program.

## The Function of the Districts

All districts are responsible for carrying out functions in four areas:

1. Membership
2. Finance
3. Program
4. Camp promotion
5. Training
6. Activities and civic service
7. Advancement and recognition
8. Unit service (commissioner service)

The order in which the functions are listed is not meant to suggest the order of their importance, but the natural interrelationship and flow of the functions. The movement cannot achieve its purpose without first organizing units and enrolling members. The district cannot support its units without the funds to do it. Unit programs are supported by the district through its program functions and unit service. All four functions are equally important and necessary. If one suffers from lack of attention, all the work of the district suffers.

The functions of the district include

- Extending opportunities for youth to join a pack, troop, team, or crew
- Helping existing units provide a quality program for their youth
- Marshaling the resources of the territory in terms of volunteers and money

BSA-PLAN_01423092

SA 1346

Its specific duties are selling the use of Scouting and providing the essential services. The district committee sells the use of the program to community organizations and helps to organize new units. It provides those things essential to successful Scouting that the chartered organization cannot easily provide, including

- Guidance in the selection of unit leadership
- Training for unit personnel in the techniques of good program
- Interunit activities that stimulate good unit program through participation and competition
- Promotion of the BSA camping and outdoor program
- Promotion of the BSA advancement program by providing merit badge counselors and coaching unit committees on advancement procedures
- Giving guidance to units through effective commissioner service

The district serves as a vehicle by which Scouting services and programs are carried to the chartered organization and units. It serves as a sounding board for chartered organization and unit needs and thus enables the consideration of those needs as the council program is planned. It also participates in determining the council budget and fund-raising for the financing of its program.

Highly Confidential

Case 5:20-cv-00069   Document 4-4   Filed 02/18/20   Page 554 of 805 PageID 731

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,

     Plaintiff,

v.

THE BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, the
NORTH FLORIDA COUNCIL,
INC., BOYS SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, and
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,
a corporation authorized to do
business in Florida,

     Defendants.

_____/

CASE NO. 2016-CA-000167

### BSA AND COUNCIL'S UNOPPOSED MOTION FOR EXTENSION
### OF TIME TO RESPOND TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc. ("Council") (collectively, "Defendants"), submit this *unopposed* motion for an extension of time to respond to Plaintiff's Second Amended Complaint for Damages filed on August 30, 2019.  In support, Defendants state the following:

1.    On July 24, 2019, this Court entered its Amended Order on Defendant Silver Spring Shores Presbyterian Church, Inc's Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike Prejudgment Interest and Amended Order on Defendants Boy Scouts of America and North Florida Council, Inc's Motion to Dismiss Amended Complaint and Request for Judicial Notice and Consideration of Certain Material in Support of their Motion to Dismiss the Amended Complaint ("Omnibus Dismissal Order").

Highly Confidential

CASE NO. 2016-CA-000167

2.      On August 30, 2019, Plaintiff filed his eleven-count Second Amended Complaint.

3.      On September 18, 2019, this Court granted Defendants' unopposed motion for extension of time to respond to the Second Amended Complaint through Wednesday, October 16, 2019.

4.      Given the complexity of the issues and an unexpected family emergency, Plaintiff's counsel agreed to Defendants' request for an additional extension until October 25, 2019 for Defendants to respond to the Second Amended Complaint.

5.      Accordingly, Defendants respectfully move the Court to extend the deadline for Defendants to respond to the Second Amended Complaint through Friday, October 25, 2019.

6.      This motion is made in good faith and not for purposes of delay.

7.      Plaintiff's counsel does not oppose the requested extension, and no party will be prejudiced by the instant motion.

WHEREFORE, Defendants respectfully request entry of the attached Agreed Order granting them the requested extension of time until Friday, October 25, 2019 to respond to Plaintiff's Second Amended Complaint.

Highly Confidential

BSA-PLAN_01423095

**SA 1349**

CASE NO. 2016-CA-000167

Respectfully submitted by,

CLARKE SILVERGLATE, P.A.

799 Brickell Plaza, 9th Floor
Miami, Florida 33131
Telephone:  (305) 377-0700
Facsimile:  (305) 377-3001

By: /s/Spencer H. Silverglate
        Spencer H. Silverglate
        Florida Bar No. 769223
        ssilverglate@cspalaw.com
        mpedraza@cspalaw.com
        Francisco Ramos, Jr.
        Florida Bar No. 114766
        framos@cspalaw.com
        acastro@cspalaw.com
        Shannon P. McKenna
        Florida Bar No. 385158
        smckenna@cspalaw.com
        socd@cspalaw.com
        *Attorneys for Boy Scouts of America*
        *And North Florida Council, Inc.*


**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct of the foregoing was served through the

Florida E-Portal by e-mail, pursuant to Fla. R. Jud. Admin. 2.516, on this 16th day of October,

2019 to all counsel of record.


CLARKE SILVERGLATE, P.A.

By: /s/Spencer H. Silverglate
        Spencer H. Silverglate


Page **3** of **3**

Highly Confidential

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

A.A.,

       Plaintiff,

v.

THE BOY SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, the
NORTH FLORIDA COUNCIL,
INC., BOYS SCOUTS OF
AMERICA, a corporation authorized
to do business in Florida, and
SILVER SPRINGS SHORES
PRESBYTERIAN CHURCH, INC.,
a corporation authorized to do
business in Florida,

Defendants.

CASE NO. 2016-CA-000167

_____/

### BSA AND COUNCIL'S MOTION TO DISMISS
### PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants, Boy Scouts of America ("BSA") and North Florida Council, Inc.

("Council"), pursuant to Florida Rule of Civil Procedure 1.110(b), hereby move to dismiss the

Second Amended Complaint with prejudice for failure to state a cause of action.

#### Introduction

Plaintiff claims that neighbor and family friend George Fout ("Fout") sexually abused

him during sleepovers at Fout's parents' house. But, as in the first two iterations of his Second

Amended Complaint, Plaintiff does not sue Fout. Instead, he sues entities unconnected to the

alleged abuse: the national and local Scouting organizations, respectively BSA and Council, and

Page **1** of **17**
CLARKE SILVERGLATE, P.A.
799 Brickell Plaza • Suite 900 • Miami, FL 33131 • Phone 305.377.0700 • Fax 305.377.3001 • www.cspalaw.com

the chartered organization that sponsored the Boy Scout Troop, Silver Spring Shores Presbyterian Church, Inc. ("Silver Springs") (collectively "Defendants").

As demonstrated in BSA and Council's previous two motions to dismiss, Defendants—as a matter of law—are not responsible for a local volunteer's conduct unrelated to Scouting activities. Moreover, Plaintiff fails to allege that a special relationship existed at the time of the sexual abuse. Indeed, the Second Amended Complaint provides no dates to indicate when the alleged abuse occurred. Accordingly, the entire action is now ripe for dismissal with prejudice.

### Discussion

### I.   Plaintiff's allegations fall outside the statutory definition of "sexual battery."

First and foremost, Plaintiff previously testified that Fout never touched him in any Scouting activity. Rather, he originally testified that all abuse occurred on non-Scouting sleepovers at Fout's parents' house. Faced with Defendants' prior motion to dismiss, Plaintiff changed his testimony and now claims one incident of touching occurred on a camping trip.

Under Count VII, Plaintiff asserts that BSA and Council are vicariously liable for the sexual battery committed by George Fout. (Second Amend. Compl. ¶¶ 238-42). The Second Amended Complaint, like the First Amended Complaint, fails to assert any allegation of "sexual battery" in connection with Scouting activity to withstand a motion to dismiss. Plaintiff's only (and just recently asserted) allegation of sexual abuse connected to Scouting activity—that "George Fout touched A.A.'s penis while he was alone in a tent with A.A. at an event on the BSA property" administered by BSA and Council—falls outside the statutory definition of "sexual battery" under section 95.11(9). (Second Amed. Compl. ¶¶ 95, 100). Accordingly, Count VII should be dismissed.

Highly Confidential

Plaintiff's purported one-and-only Scouting related incident of abuse, though convenient, falls squarely outside the statutory definition of "sexual battery." *See* § 794.011(1)(h) (defining sexual battery as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any object.").

In *Green v. State*, the Second District Court of Appeal deciphered section 794.011(1)(h) and articulated the four ways by which a sexual battery can be committed:

> The statute prohibits:
>
> (1) "Oral, anal, or vaginal penetration by the sexual organ of another." **Translation:** ***It is illegal for a man to place his penis inside the*** **mouth, anus, or** ***vagina of a victim.***
>
> (2) "Oral, anal, or vaginal union with the sexual organ of [the defendant]." **Translation: It is illegal for a man to touch the mouth, anus or vagina of the victim with his penis, and it is illegal for a woman to touch the mouth, anus or vagina of the victim with her "sexual organ."**
>
> (3) "Oral, anal, or vaginal union with the sexual organ of [the victim]." **Translation: It is illegal for a man to touch the sexual organ of the victim with his mouth or anus, and *it is illegal for a woman to touch the sexual organ of the victim with her* mouth, anus, or *vagina.***
>
> (4) "The anal or vaginal penetration of another by any other object." **Translation: It is illegal for a man or a woman to place any object inside the anus or vagina of the victim.**

765 So. 2d 910, 913 (Fla. 2d DCA 2000) (bold emphasis added; italics emphasis in original) (citing *Richards v. State*, 738 So. 2d 415 (Fla. 2d DCA 1999)).

The union of an individual's hand or finger with another's penis—as alleged in the Second Amended Complaint—is not a "sexual battery" as defined under section 794.011. *See Richards*, 738 So. 2d at 418 ("[I]t is clear that a defendant's finger is an 'other object,' which must penetrate and not merely have union with the relevant part."); *see also Watkins v. State*, 48

Highly Confidential

So. 3d 883, 884 (Fla. 1st DCA 2010) (explaining that section 794.011 "is not violated by proof of union with an object in the absence of penetration" and that Florida "[c]ase law has made it clear that evidence of union ('on') cannot suffice to prove penetration ('in')."); *Wallis v. State*, 548 So. 2d 808, 810 (Fla. 5th DCA 1989) ("[T]he mere 'union' of the defendant's hand or finger "with" the victim's vagina does not violate [section 794.011].").

Because the newly asserted camping-related allegation does not qualify as "sexual battery" under section 794.011(1)(h), Count VII should be dismissed.

**II.     Plaintiff's negligence claims must be dismissed because no legally sufficient "special relationship" existed between Defendants and Plaintiff.**

Plaintiff alleges that BSA and Council had a legal duty to protect him from Fout's sexual abuse based on a "special relationship" arising from their care and custody of Plaintiff while he participated in Troop activities.  (Second Amend. Compl. ¶ 43).  There is no allegation that any Defendant knew or had actual notice of Fout's alleged wrongful conduct.   All but one instance of alleged sexual misconduct (discussed above) **admittedly** took place **outside** of Scouting. (Second Amend. Compl. ¶¶ 103-14).  A negligence action must establish the four elements of duty, breach, proximate causation and damages. *Limones v. Sch. Dist. Of Lee County*, 161 So. 3d 384 (Fla. 2015); *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003). The existence of a legal duty is a question of law for the court. *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992). Generally, a party does not have a duty to protect another absent a special relationship. *Limones*, 161 So. 3d at 390. A duty does not arise merely because harm is foreseeable. *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004).

The presence of a legal duty is a question of law which the court can decide on a motion to dismiss.  *See Knight v. Merhige*, 133 So. 3d 1140, 1145 (Fla. 4th DCA 2014) (**motion to**

Highly Confidential

*dismiss* properly granted because "there is no duty to control the conduct of a third person to prevent [that person] from causing physical harm to another."). The rule is no different in the context of alleged sexual abuse and, as a matter of law, no special relationship exists when the harm arises from a personal relationship that is outside the context of the parties' legal relationship. *See KM. ex rel D.M. v. Publix Super Markets, Inc*., 895 So. 2d 1114, 1117-18 (Fla. 4th DCA 2005) (***motion to dismiss*** properly granted where grocery store owed no duty to employee's child who was sexually abused by co-employee who babysat the child at his home because the incident arose from a personal relationship outside the employment context).

In *K.M.*, a grocery store employee asked a co-employee to babysit her child at the co-employee's home, during which the co-employee sexually abused the child. The court held that the grocery store owed no duty to the child because the incident arose from a personal relationship that was also outside the employment context. Similarly, in *Archbishop Coleman F. Carroll High School, Inc. v. Maynoldi*, 30 So. 3d 533 (Fla. 3d DCA 2010), the court held that a school did not owe a duty to a student who was injured in an automobile accident after consuming alcohol at a private graduation party. No duty was owed because the accident took place off-campus, following an off-campus party that was not a school-sponsored event.

Here, as in *K.M.* and *Archbishop Coleman*, no special relationship arises because Fout's sexual misconduct ***admittedly*** took place during Plaintiff's ***personal*** visits and overnight sleepovers in a private bedroom in Fout's home. These visits and overnight sleepovers were unrelated to any Scouting activity and were ***admittedly*** against Scouting rules. Because Fout perpetrated the alleged sexual abuse ***outside*** of the Scouting relationship, no special relationship existed. Defendants thus had no legal duty to protect Plaintiff from Fout's sexual misconduct. *Id.*

Highly Confidential

BSA-PLAN_01423101
**SA 1355**

BSA and the Council do not operate the day-to-day activities of the Scouting Program. Nor do they retain supervisory day-to-day control of the thousands of troops across the nation. Rather, day-to-day activities of the Scouting program are *admittedly* run at the *local level* by parents and volunteers.   At best, this connection only sets forth an indirect, tangential relationship between Defendants and Plaintiff—a relationship insufficient to impose a legal duty on the Defendants.  *See K.M.*, 895 So. 2d at 1117-1118 (no special relationship exists outside the scope of the parties' relationships).

Plaintiff also raises the peculiar argument that Defendants owed him a duty based on Fout's knowledge of his *own* abusive acts and his father Steve Fout's *constructive knowledge* of same.  "It is axiomatic that knowledge of the agent constitutes knowledge of the principal [only] as long as the agent received such knowledge while acting within the scope of his authority." *Brooks Tropicals, Inc. v. Acosta,* 959 So. 2d 288, 295 (Fla. 3d DCA 2007) (quoting *Bertram Yacht Yard, Inc. v. Florida Wire & Rigging Works, Inc., 177* So. 2d 365 (Fla. 3d DCA 1965)). Here, no duty can be imposed based on George Fout's knowledge of his own alleged abusive acts, which furthered only his own prurient interest and were unrelated to the Scouting program. *See Agriturf Mgmt., Inc. v. Roe,* 656 So. 2d 954, 955 (Fla. 2d DCA 1995); *First Bond & Mortgage Co. v. Yancey,* 139 So. 597, 600 (Fla. 1932).  Similarly, no duty can be imposed based on Steve Fout's alleged constructive knowledge of his son's acts; only an agent's actual knowledge may be imputed to a principal.  *Id.*

Lacking any ability or right to control the Fouts' non-Scouting activities and the location of the incidents, there is no special relationship upon which a legal duty may be imposed on Defendants.  *Id. See also K.M.*, 895 So. 2d at 1120 ("An employer does not owe a duty to persons who are injured by its employees while the employees are off duty, not then acting for

Page **6** of **17**
CLARKE SILVERGLATE, P.A.
799 Brickell Plaza • Suite 900 • Miami, FL 33131 • Phone 305.377.0700 • Fax 305.377.3001 • www.cspalaw.com

the employer's benefit, not on the employer's premises, and not using the employer's equipment."). *Cf. Nova Southeastern v Gross*, 758 So. 2d 86, 89-90 (Fla. 2000) (finding duty on part of university for student's off-campus injuries because the incident took place at a school-related activity).

Not even a school (which has a direct relationship with its students, unlike BSA and Council who only have an indirect relationship) owes a duty to supervise its students all of the time. *See Concepcion v. Archdiocese of Miami,* 693 So.2d 1103, 1105 (Fla. 3d DCA 1997); *see also Matallana v. Sch. Bd. of Miami-Dade Cty*, 838 So. 2d 1191, 1192 (Fla. 3d DCA 2003) (school did not owe duty to supervise students who engaged in fight off campus where one student shot and killed the other student even though school should have known the student had violent tendencies, previously threatened to harm the other student, and brought the gun to school).

Plaintiff further claims that Defendants had a duty to warn. But Plaintiff fails to allege (nor could he do so in good-faith) that Defendants knew or had notice of Fout's alleged sexual proclivities. Absent knowledge of the alleged ***wrongful conduct***, there is no duty to warn. *See T.W. v. Regal Trace, Ltd.*, 908 So. 2d 499, 505 (Fla. 4th DCA 2005) (by virtue of its special relationship with tenant, landlord had duty to warn tenant about past criminal activity on its premises); *see also Sunshine Birds & Supplies, Inc. v. U.S. Fidelity & Guar. Co.*, 696 So. 2d 907, 911 (Fla. 3d DCA 1997) (employers subject to potential liability because they failed to act when they had actual or constructive knowledge of their employees' past child molestations). Mere knowledge that ***unrelated*** persons have engaged in ***unrelated events*** is insufficient to impose a duty. *See Archbishop Coleman*, 30 So. 3d at 542 (holding mere knowledge of an off-campus event was insufficient to impose liability). As such, Plaintiff's allegations that Defendants knew

Highly Confidential

or should have known that Plaintiff was visiting and spending the night at Fout's home are insufficient to impose any legal duty to warn.

Accordingly, Plaintiff's negligence claims against BSA and Council under Counts III and V should be dismissed.

### III.   The breach of fiduciary claims must also be dismissed because no legal fiduciary relationship existed between Defendants and Plaintiff.

Counts IV and VI allege breach of fiduciary duty claims against BSA and Council based on the mistaken belief that a special relationship existed between Defendants and Plaintiff. "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). To succeed on a fiduciary duty claim, one must first establish the existence of a fiduciary duty. *See Crusselle v. Mong*, 59 So. 3d 1178, 1180 (Fla. 5th DCA 2011). "A fiduciary owes to its beneficiary the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts." *Cap.Bank v. MVB, Inc.*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994).

A fiduciary obligation may be express or implied. Express relationships are created by contract (principal/agent) or by legal proceedings (guardian/ward). *Maxwell v. First Union Bank*, 782 So. 2d 931, 933-934 (Fla. 4th DCA 2001). An implied fiduciary relationship requires that confidence is reposed on one side and superiority and influence are on the other or where one side undertakes an obligation to benefit a dependent party on the other. *See, respectively, The Florida Bar v. Adorno*, 60 So. 3d 1016, 1027-28 (Fla. 2011); *see also Crusselle*, 59 So. 3d at 1181. Implied fiduciary obligations usually arise from well-recognized relationships of trust

Highly Confidential

or confidentiality, including an attorney and client, a trustee and beneficiary, a physician and patient, a mental health professional and patient, and a corporate director and a corporation and its shareholders.  *See, e.g., Gracey*, 837 So. 2d at 353-354 (psychotherapist/patient); *Doe v. Evans*, 814 So. 2d 370, 374-375 (Fla. 2002) (marital counseler/counselee); *Cohen v. Hattaway*, 595 So. 2d 105, 107 (Fla. 5th DCA) (directors and officers/corporation and shareholders).

To prove the existence of a fiduciary duty, a plaintiff must establish that a relationship existed in which the plaintiff put his trust in the defendant to protect the plaintiff's financial or property interests, secrets, confidence, or private information and that the defendant accepted that trust. *See* Fla. Std. Jury Instruction 451.4; s*ee also In re Standard Jury Instructions in Civil Cases*, SC18-1672, 2018 WL 6696160 (Fla. Dec. 20, 2018) (authorizing publication and use of standard jury instructions on fiduciary duty).

Plaintiff has not pled, and cannot plead, either an express or an implied fiduciary relationship.  The fiduciary duty allegations mirror the allegations in his negligence claims.  In fact, Plaintiff claims that a fiduciary duty arises because of the (nonexistent) special relationship between Defendants and Plaintiff.  (*See* Second Amend. Compl. ¶¶ 196-208, 225-37).  Even assuming that such a special relationship exists (which it does not), a legal duty of care in the negligence sense does not in itself constitute a fiduciary obligation.  More is needed: a plaintiff must plead ***facts*** establishing the existence of a ***fiduciary*** relationship.  It is not enough to merely mimic the buzzwords of an "imposed confidence" and "fiduciary duty."  (Second Amend. Compl. ¶¶ 196-208, 225-37).

The alleged misconduct must also arise out of the fiduciary relationship.  *See Doe*, 814 So. 2d at 375.  In *Doe*, the Florida Supreme Court found liability based on an implied fiduciary relationship that arose between a priest providing marital counseling and his counselee. In so

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza • Suite 900 • Miami, FL 33131 • Phone 305.377.0700 • Fax 305.377.3001 • www.cspalaw.com

Highly Confidential

doing, the Court "stress[ed] that the liability in this case rests on the assertion of an abuse of a marital counseling relationship through an inappropriate sexual relationship." *Doe*, 814 So. 2d at 375. In stark contrast to *Doe* (where the inappropriate conduct took place in connection with the marital counseling relationship), Fout's alleged abuse did not take place at any Scouting activity.

Rather, the alleged sexual misconduct arose from Plaintiff's personal visits and admittedly unsanctioned sleepovers at Fout's home. Indeed, no authority supports the imposition of a fiduciary obligation on an institutional defendant, such as Defendants, with a local troop member, such as Plaintiff. *See Roe v. Boy Scouts of Am., Corp.*, 2012 WL 3933184, at *7 (Conn. Super. Ct. Aug. 16, 2012), *aff'd sub nom.*, *Roe No. 1 v. Boy Scouts of Am. Corp.*, 84 A.3d 443 (Conn. App. Ct. 2014). As the *Roe* court explained:

> There is no "unique degree of trust and confidence between the parties[,]" [citation omitted] who may not even know each other. Further, this case is not one involving matters such as fraud, self-dealing, conflict of interest, or dishonesty by the corporate defendants. Rather, it is a question of whether the corporate defendants had a duty of care to keep the plaintiff safe from criminal acts. It is, in short, a traditional negligence case. [Citation omitted].

*Id*.

Plaintiff's conclusory allegations that a fiduciary obligation exists do not state a cause of action for breach of fiduciary duty.

### IV.    The vicarious liability claims against BSA and Council must be dismissed.

Counts VII-X set forth vicarious liability claims. (Second Amend. Compl. ¶¶ 238-64). Defendants are not liable for Fout's alleged criminal sexual batteries which, as a matter of law, fall outside the scope of any alleged agency. Responsibility for another party's tortious or criminal acts may be imputed only if (1) an agency relationship exists between the defendant and the party who acted wrongfully and (2) the party's wrongful actions fall within the scope of the

Highly Confidential

BSA-PLAN_01423106
**SA 1360**