# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## NOTICE OF FILING OF EXHIBITS I-2, I-3, I-4 AND J-2
## TO DEBTORS' THIRD MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION

**PLEASE TAKE NOTICE** that, on February 15, 2022, Boy Scouts of America and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), filed the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (the "Third Modified Fifth Amended Plan" or the "Plan") with the United States Bankruptcy Court for the District of Delaware.[2]

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 1** is the executed version of the Century and Chubb Companies Insurance Settlement (the "Century and Chubb Companies Insurance Settlement Agreement"). The Century and Chubb Companies Insurance Settlement Agreement is Exhibit I-2 to the Third Modified Fifth Amended Plan.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 2** is the executed version of the Zurich Insurance Settlement Agreement (the "Zurich Insurance Settlement Agreement"). The Zurich Insurance Settlement Agreement is Exhibit I-3 to the Third Modified Fifth Amended Plan.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 3** is the executed version of the Clarendon Insurance Settlement Agreement (the "Clarendon Insurance Settlement Agreement"). The Clarendon Insurance Settlement Agreement is Exhibit I-4 to the Third Modified Fifth Amended Plan.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 4** is the executed version of the United Methodist Ad Hoc Committee Settlement Agreement (the "United Methodist

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Settlement Agreement"). The United Methodist Settlement Agreement is Exhibit J-2 to the Third Modified Fifth Amended Plan.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are filing a revised plan of reorganization, executed Settlement Agreements, and related documents. Although the supporting parties believe that the Plan and Plan Documents, as filed, reflect the comments of the numerous supporting parties and are consistent with the TCC Term Sheet filed with the Eleventh Mediator's Report [D.I. 8772], in an abundance of caution, all supporting parties have reserved the right to comment further on the Plan and Plan Documents to the extent there may be clarifications, corrections or other needed modifications that become apparent after further review.

*[Remainder of page intentionally left blank]*

FCRA00527

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Dated:  February 15, 2022
      Wilmington, Delaware

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
      aremming@morrisnichols.com
      ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (*admitted pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com
      laura.baccash@whitecase.com
      blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS
IN POSSESSION

FCRA00528

**EXHIBIT 1**

**Century and Chubb Companies Insurance Settlement Agreement**

FCRA00529

*EXECUTION VERSION*

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") dated February 14, 2022 is entered into between and among Century and the Chubb Companies (both as defined below and collectively, the "Settling Insurers"), Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (collectively, "BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"), the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[1] and the Future Claimants' Representative (the "FCR" and, collectively with the Settling Insurers, the Debtors, the AHCLC, and the Coalition, the "Parties").[2]  The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by this Agreement.

WHEREAS, on February 18, 2020, the Debtors commenced proceedings under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

WHEREAS, the Settling Insurers have allegedly issued insurance policies covering or allegedly covering Claims and Causes of Action for Abuse involving Scouting that occurred prior to the Petition Date;

WHEREAS, the Parties wish to resolve disputes concerning such policies;

WHEREAS, subject to the terms and conditions set forth herein, the Settling Insurers will pay the Settlement Amount in exchange for the injunctions, releases and other protections described below;

WHEREAS, among other things, the settlement provides for the channeling and release of all Abuse Claims against the Settling Insurers (and against their insureds under policies issued by the Settling Insurers that may cover such Claims) in exchange for the Settlement Payment;

WHEREAS, on December 12, 2021 (the "Term Sheet Effective Date"), the Parties executed a term sheet in the form attached hereto as Exhibit C (the "Term Sheet"), setting forth the basic terms of their settlement; and

WHEREAS, on December 18, 2021, the Debtors filed their Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832] (as it may subsequently be amended from time to time, the "Plan" or "Amended Plan"), as amended to reflect the terms of the Term Sheet.

Capitalized terms not defined in this Agreement shall have the definitions ascribed to such terms in the Plan, which shall be consistent with the terms of this Agreement.

---

[1]  For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Agreement.

[2]  Notwithstanding anything to the contrary in this Agreement, the obligations and undertakings of the AHCLC in connection with this Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

1. **Agreement Effective Date**. This Agreement shall be binding on the Parties, subject to Bankruptcy Court approval, as necessary, and Sections 29, 30 and 31 below, when the last of the Parties to execute this Agreement has executed this Agreement.

2. **Release Effective Date**. Notwithstanding anything else herein to the contrary, none of the releases set forth herein shall be effective unless and until the Settlement Amount set forth herein is released from the Escrow Account to the Trust as provided in the Plan (the "Release Effective Date"), provided that (a) the release of the Pre-Petition Century/Chubb Claims shall be effective upon the making of the Initial Payment and (b) for the avoidance of doubt, the Trust may not receive, use or retain any portion of the Additional Payment or Net Income unless the Release Effective Date has occurred or occurs simultaneously therewith.

3. **Settlement Amount**. In consideration of the releases, injunctions, and other consideration provided for herein, the Settling Insurers shall pay in cash $800,000,000 (the "Settlement Amount"), free and clear of all liens, claims, or interests, to the Settlement Trust for Abuse Claims to be created under the Plan (the "Settlement Trust" or "Trust"). No most-favored nation or similar provision will reduce the Settlement Amount to be paid by the Settling Insurers based on any settlements that BSA may enter into with other insurers. The Settling Insurers shall be entitled to allocate the Settlement Amount among the Settling Insurers' Policies issued to BSA and the Local Councils for all purposes, in their sole discretion, provided, however, that (i) such allocation shall not bind the Trust and (ii) the Settling Insurers will not allocate the Settlement Amount to any other insurance policy issued directly to a Chartered Organization by the Settling Insurers. The foregoing allocation of the Settlement Amount will not affect the extent and scope of the releases provided herein, including Sections 8 and 9 hereof.

4. **Payment and Release of the Settlement Amount and Escrow Arrangements**.

a) Within seven days of receiving notice of the entry of the Confirmation Order by the Bankruptcy Court, the Settling Insurers shall pay $200,000,000 into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties, with $100,000,000 to be deposited by the Settling Insurers into the Escrow Account every sixty (60) calendar days thereafter until the total balance of the Settlement Amount of $800,000,000 has been deposited into the Escrow Account, *provided*, *however*, that the full amount of the Settlement Amount shall have been deposited into the Escrow Account within five (5) calendar days after entry of the Affirmation Order by the District Court to the extent not previously deposited. Subject to the foregoing and for the avoidance of doubt, any net balance of the Settlement Amount not previously deposited shall be paid into the Escrow Account as soon as reasonably practicable after the date all conditions to the effectiveness of the Plan have been satisfied including the entry of the foregoing orders (the "Plan Effective Date").

b) All payments held in the Escrow Account (the "Escrowed Payments") and all income earned thereon minus (i) the fees of the escrow agent, and (ii) all taxes that are payable and other costs of the Escrow Account, which amounts in (i) and (ii) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income"), shall remain in the Escrow Account until the dates provided herein for the release thereof. On the Initial Payment Date, the amount of $50,000,000 of the Settlement

Amount (the "Initial Payment") shall be released from the Escrow Account to the Trust. The remaining $750,000,000 balance of the Settlement Amount (the "Additional Payment") and the Net Income shall remain in the Escrow Account until the Confirmation Order shall become a Final Order (as defined in the Plan), and the other conditions precedent to the occurrence of the Release Date have occurred, on which date the Additional Payment, plus any Net Income, shall be released from the Escrow Account to the Trust; *provided, however,* that, at their election and in their sole discretion as long as the conditions to the Initial Payment Date remain satisfied (or have been waived pursuant to a writing signed by each Party), the Settling Insurers may authorize the release of all or a portion of the Additional Payment (and any Net Income) from the Escrow Account to the Trust at any time before the Confirmation Order becomes a Final Order. The Release Date shall not occur until the Additional Payment and the Net Income have been released to the Trust.

c) The Trust will have investment discretion with respect to the Escrowed Payments and the Net Income while they are in the Escrow Account, subject to the Parties' agreement on investment guidelines to be provided in writing to the Escrow Agent under which the Escrowed Payments may be invested by the Trust; *provided, however*, that the Trust will bear all risks associated with any such investment of the Escrowed Payments and that no loss or failure to achieve desired investment returns on the Escrowed Payments while they are in the Escrow Account shall require the Settling Insurers to increase the Settlement Amount they are paying or have paid (or increase the amount of BSA's contribution to the Trust); *provided further, however*, that the Debtors, Reorganized BSA, the Local Councils and Chartered Organizations shall have no liability or obligations to the Settling Insurers or the Trust, the Trust shall have no liability or obligations to the Settling Insurers, and the Settling Insurers shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or failure to achieve desired investment returns on the Escrowed Payments while they are in the Escrow Account.

d) Notwithstanding anything to the contrary herein, the Escrowed Payments and any amounts in the Escrow Account, including the Net Income, shall be promptly (and no later than seven (7) Business Days after the date of such written demand, unless otherwise agreed to by the Parties) released to the Settling Insurers upon their written demand if any of the following occur: (i) the District Court does not enter the Affirmation Order within 360 days after the entry of the Confirmation Order by the Bankruptcy Court or the District Court declines to enter the Affirmation Order (whether or not such denial constitutes a reversal or remand); (ii) the Plan is at any time withdrawn; (iii) the Plan otherwise ceases to conform to the Term Sheet or this Agreement; (iv) there is a Reversal; (v) the Chapter 11 Cases have been converted or dismissed, (vi) the Parties agree to such release in writing; or (vii) an order of the Bankruptcy Court or District Court so provides.

5. **Protections to be Afforded to the Settling Insurers**.

a) Effective as of the Release Date, the Settling Insurers will be designated as Protected Parties for all purposes under the Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections. As set forth herein, the Settling Insurers shall be granted such releases, injunctions, and protections as are

necessary to deliver finality with respect to all known and unknown insurance policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from or in connection with Abuse Claims, which policies and claim years shall include those identified on Exhibits A and B hereto for all purposes with respect to any and all policy and claim years whether before or after 1976, all such known and unknown policies subject only to the limitations stated in this Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (with respect to Westchester) (collectively the "Settling Insurers' Policies"), and any other known or unknown insurance policy issued by any of the Settling Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, settlements entered into, omissions or positions taken in connection with any Abuse Claims and/or the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date related to any Abuse Claims and/or policy issued by any of the Settling Insurers concerning the Debtors or Scouting, including the Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise. Notwithstanding anything to the contrary herein, the BSA, Local Councils, Participating Chartered Organizations and Contributing Chartered Organizations are not releasing or enjoining any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies), other than the right to seek coverage for and/or to pursue any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, settlements entered into, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise, and (ii) Post-Petition Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, settlements entered into, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise.

b) To preserve and promote the settlements contemplated by and provided herein and in the Plan, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (i) the sole recourse of any holder of an Abuse Claim against a Settling Insurer on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Settling Insurer or any property or interest in property of any Settling Insurer, (ii) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited

**FCRA00533**

Protected Party or any property or interest in property of any Limited Protected Party, (iii) the sole recourse of any holder of an Abuse Claim against a Limited Protected Party if such Abuse Claim is covered under any insurance policy issued by any Settling Insurer, shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party, (iv) the sole recourse of any holder of an Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization on account of such Opt-Out Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Opt-Out Chartered Organization Abuse Claim against any Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization. For the avoidance of doubt, the sole recourse for any holder of an Abuse Claim covered by any insurance policy issued by a Settling Insurer shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Plan Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, or any Abuse Claim against the Limited Protected Parties if such Abuse Claim is covered under any insurance policy issued by any Settling Insurer, or any Opt-Out Chartered Organization Abuse Claim against the Opt-Out Chartered Organizations, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim, or from any Limited Protected Party with respect to any such Abuse Claim if such Abuse Claim is covered under any insurance policy issued by any Settling Insurer, or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, or from any Opt-Out Chartered Organization with respect to any Opt-Out Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

i) commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

iii) creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, Limited Protected

**FCRA00534**

Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

iv) asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization; or

v) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim, or Opt-Out Chartered Organization Abuse Claim.

c) The Plan and the Confirmation Order shall provide for a channeling injunction substantially on the terms set forth in clause (b) above (the "Channeling Injunction") and a full release of the Settling Insurers with respect to all Claims or Causes of Action related to, arising from or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the insurance policies issued by the Settling Insurers subject to the limitations stated in this Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (with respect to Westchester). All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Plan Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Plan and this Agreement shall be continuously enjoined pending their release. The Settling Insurers shall be Protected Parties under the Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.M of the Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

d) Solely for purposes of administering the releases and channeling injunctions provided in this Agreement (including as discussed in Sections 7, 8, 9, 10, 11, and 13 of this Agreement) the Plan, and the Confirmation Order, and not for any other purpose, any liability insurance policy (other than an automobile policy or director's and officer's policy) that was issued by the Settling Insurers shall be automatically deemed to "cover" or provide "coverage" for an Abuse Claim against a Chartered Organization if (i) such policy includes the Chartered Organization, by name or by referring to Chartered Organizations categorically as chartered organizations, charters, sponsoring organizations, or sponsors as insureds or additional insureds, (ii) such policy was in effect when the alleged Abuse underlying such Abuse Claim allegedly took place, and (iii) such policy does not specifically exclude all abuse or molestation, regardless of state of mind; provided,

however, that nothing in the preceding portions of this Section 5(d) shall be offered or interpreted as an admission by the Settling Insurers of any fact or issue for any purpose, and shall not be cited as a basis to impose liability on, or increase the liability of, any Settling Insurer under any circumstance or any insurance policy.  For the avoidance of doubt, nothing herein prevents a Settling Insurance Company or its insureds from seeking to establish that other insurance policies cover Abuse Claims for purposes of the Channeling Injunction and Releases.  Furthermore, this Section 5(d) does not limit the assignment of the Claims and Causes of Action set forth in Section 27 of this Agreement.

e) Nothing in this Agreement will release claims for reinsurance under reinsurance contracts or claims under retrocessional contracts among the Settling Insurers and other insurance companies and the Parties agree to modify the injunction provisions in the Plan to state that such claims will not be enjoined.

6. **Sale of Settling Insurers' Policies**.[3]  Prior to the Plan Effective Date and subject to the limitations in this Section 6 (with respect to Westchester), the Local Councils and the Settling Insurers shall consent to and provide for the assignment of the Local Council Insurance Policies issued by the Settling Insurers, which include those identified on Exhibit B hereto (the "Settling Insurers' Local Council Policies"), to the Debtors' Estates.  The Confirmation Order and the Plan shall provide that (a) on the Plan Effective Date and subject to the limitations in this Section 6 (with respect to Westchester), the BSA Insurance Policies issued by the Settling Insurers, which include those identified on Exhibit A hereto (the "BSA Settling Insurers' Policies"), and the Settling Insurers Local Council Policies shall be sold by Debtors to the Settling Insurers free and clear of all liens, claims, encumbrances, interests and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Chartered Organizations, and their respective Representatives, creditors and interest holders in the Settling Insurers' Policies pursuant to sections 363, 1123 and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the assignment by the Local Councils and the Sale shall exclude any Post-Petition Policies and Non-Abuse Insurance Policies; (c) the Sale represents a sound exercise of Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Plan, (e) the Sale constitutes a purchase by the Settling Insurers in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording the Settling Insurers all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including any person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting-related Abuse, shall have any right to be paid from the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust and/or the holders of Direct Abuse Claims, *provided*, *however*, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with Trust Agreement and the Trust Distribution Procedures.  Any excess liability policies issued from March 1, 2013 to February 28, 2019, to the BSA by Westchester Fire Insurance Company and Westchester

---

[3] The rights and protections provided to the Settling Insurers in this Section 6 shall be no less than those provided to any other Settling Insurance Company with respect to its policies, including the free and clear protections under Bankruptcy Code Section 363(f).  To the extent that another Settling Insurance Company receives greater rights and protections concerning its policies purchased under Bankruptcy Code Section 363 (including the definitions of the terms interests, persons and entities) the Settling Insurers shall automatically be provided the same.

Surplus Lines shall be included in the Sale and shall be excluded from the definition of "Specified Insurance Policies" in the Plan. The excess liability insurance policy issued to the BSA by Westchester Surplus Insurance Company on March 1, 2019 shall not be included in the Sale; *provided* that (a) the Settling Insurers will receive a release with respect to this policy for any claims that arise in whole or in part from pre-Petition events, including Abuse Claims that arise in whole or in part from Abuse that pre-dates the Petition Date, and (b) the post-petition period of this policy shall be treated as a Post-Petition Policy. Although the Parties do not believe that the Sale would constitute a violation of the automatic stay applicable to any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more BSA Settling Insurers' Policies, to the extent the Bankruptcy Court (or any other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

7. **Trust Bound by Agreement**. Upon the Plan Effective Date, the Trust shall be bound by all terms of this Agreement. Upon the Release Date, the Trust shall release the Settling Insurers from all Causes of Action and Claims that the Trust holds relating to the Settling Insurers' Policies and other policies issued by the Settling Insurers covering Abuse Claims, provide the other releases contained in this Agreement (including a release relating to Abuse Claims) and otherwise perform as required by this Agreement.

8. **Release by the Settling Insurers**. Upon the Release Date, subject to the limitations below and those set forth in Section 15, the Settling Insurers and their Representatives shall release the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition and the Trust and each of their respective Representatives (in their capacities as such) from all Causes of Action and Claims related to, arising from or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Settling Insurers' Policies); (b) any other insurance policy issued by the Settling Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Action definition in the Plan including extra-contractual claims related to the Settling Insurers' Policies, including the Debtors' performance of their obligations thereunder whether for defense, settlement of claims or otherwise, (d) the Chapter 11 Cases and related proceedings, including the Plan and any prior plans, any Claims that were or could have been asserted by the Settling Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against the Settling Insurers, in the Chapter 11 Cases or any actions, settlements entered into, omissions or positions taken in the Chapter 11 Cases and related proceedings; (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any insurance policy issued by the Settling Insurers), and (f) any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date related to any policy issued by the Settling Insurers concerning the Debtors or Scouting, including the Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise. Nothing shall preclude the Settling Insurers from enforcing the terms of this Agreement. Furthermore, nothing in this Agreement or the Plan shall constitute a release of any Claim by the Settling Insurers or their Representatives or any rights related to or Claims concerning (i) to the extent provided for in Section 6, the excess liability insurance policy issued to the BSA by Westchester Surplus Insurance Company on March

FCRA00537

1, 2019, (ii) Non-Abuse Insurance Policies, (iii) reinsurance and retrocessional contracts, (iv) Sidley Austin LLP, or (v) the Post-Petition Policies. The releases in this Section 8 shall be subject to and limited by Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (as applicable to Westchester), and shall not include any insurance policies for which the Settling Insurers become responsible or acquire on or after the Term Sheet Effective Date. The Parties expressly acknowledge that there may be changes in the law and/or that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims or Causes of Action released in this Section 8. Nevertheless, the Parties hereby agree that the releases set forth in this Section 8 shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

9. **Release of the Settling Insurers**. Upon the Release Date, subject to the limitations below and those set forth in Section 15, the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the Limited Protected Parties (including Participating Chartered Organizations), other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust and all such Persons' or Entities' Representatives (the "Releasing Parties") shall automatically, without further action on the part of any Person or Entity, release Settling Insurers and each of their respective Representatives (in their capacities as such) from all Causes of Action and Claims related to, arising from or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Settling Insurers' Policies); (b) any other insurance policy issued by the Settling Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; (c) the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the Settling Insurers' Policies and the Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise; (d) the Chapter 11 Cases and related proceedings, including the Plan and any prior plans, any Claims that were or could have been asserted by the Settling Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against the Settling Insurers, in the Chapter 11 Cases, or any actions, settlements entered into, omissions or positions taken in the Chapter 11 Cases and related proceedings; (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any insurance policy issued by the Settling Insurers); and (f) any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date related to any policy issued by the Settling Insurers concerning the Debtors or Scouting, including the Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise. If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Settling Insurers in this Agreement or the Plan, the Settling Insurers shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties. The release of the Settling Insurers shall not affect claims against other insurance companies, subject to the limitation that the Settling Insurers shall not assert claims against other Settling Insurance Companies. Nothing shall preclude the Releasing Parties from enforcing the terms of this Agreement and the Plan. For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders,

FCRA00538

members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and, (2) to the extent of any party's right, power and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Settling Insurers' Policies or any policy of insurance issued to or for the benefit of such releasing Party related to Abuse Claims.[4]  The releases in this Section 9 shall be subject to and limited by Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies), Section 6 (as applicable to Westchester), and shall not include any insurance policies for which the Settling Insurers become responsible or acquire on or after the Term Sheet Effective Date.  The Parties expressly acknowledge that there may be changes in the law and/or that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims or Causes of Action released in this Section 9.  Nevertheless, the Parties hereby agree that the releases set forth in this Section 9 shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

10. **Participating Chartered Organizations**.  Under the Plan and as a condition to the Plan Effective Date (waiver of which shall require the prior written consent of, among others, the Settling Insurers), in order to obtain the benefit of (1) the Settling Insurer Policy Injunction, and (2) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to provide, or be deemed to provide, the following assignment of their insurance rights (the "Participating Chartered Organization Insurance Assignment"): any and all of the Participating Chartered Organizations' rights, titles, privileges, interests, claims, demands or entitlements, as of the Plan Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to (a) the Abuse Insurance Policies issued by the Settling Insurers (including the Settling Insurers' Policies) and any other Abuse Insurance Policies covering Abuse Claims alleging Abuse to have first occurred on or after January 1, 1976, (b) any other insurance policies issued by a Settling Insurance Company that cover Abuse Claims but only with respect to such coverage for Abuse Claims, (c) the Insurance Settlement Agreements (including this Agreement) and claims thereunder and proceeds thereof, (d) the types of claims listed in the Insurance Actions definition in the Plan (including with respect to the insurance policies issued by the Settling Insurers), (e) the Insurance Action Recoveries (including with respect to the Settling Insurers' Policies), and (f) the Participating Chartered Organization Insurance Actions.  In addition, in order to obtain the benefit of (i) the Settling Insurer Policy Injunction, and (ii) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to make, or be deemed to make, the following contribution to the Trust ("Participating Chartered Organization Settlement Contribution"):  (A) the Participating Chartered Organization Insurance Assignment; (B) to the extent of any rights, claims or interests not assigned to the Trust pursuant to the Participating Chartered Organization Insurance Assignment, the waiver and complete release of (I) each of the Participating Chartered Organization's rights, titles, privileges, interests, claims, demands or entitlements under the Settling Insurers' Policies and any other insurance policy issued

---

[4] For purposes of clarity, the releases in this Section 9 do not include personal insurance policies issued directly to individuals who are releasing parties or to directors and officers liability policies issued in connection with their affiliations with entities other than BSA, the Local Councils or any Chartered Organization.

FCRA00539

by the Settling Insurers with respect to Claims or Causes of Action involving Abuse Claims concerning such coverage for Abuse Claims; (II) any Claim held by the Participating Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from, in whole or part, directly, indirectly, or derivatively (including through any insurance policy issued by the Settling Insurers), alleged Abuse Claims that occurred prior to the Petition Date against the Settlement Trust, the Debtors, Reorganized BSA, the Local Councils, any Contributing Chartered Organization or the Settling Insurers; and (III) any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Participating Chartered Organization, including any Indirect Abuse Claims, without any further notice or action, order, or approval of the Bankruptcy Court, which Claims shall be expunged from the Claims Register, and the agreement of each Participating Chartered Organization not to (y) file or assert any Claim or Claims against the Trust, the Debtors, or Reorganized BSA arising from any act or omission of the Debtors, the Local Councils, any Contributing Chartered Organization, or any Participating Chartered Organization on or prior to the Confirmation Date; and (z) file or assert any rights or interests in any property transferred to the Trust under the Plan, including the proceeds of any settlements paid by an Settling Insurance Company; and (C) the assignment to the Trust of any and all Perpetrator Indemnification Claims held by the Participating Chartered Organizations. Other than the TCJC and the United Methodist Entities, no Chartered Organization may become a Contributing Chartered Organization without making a contribution in form and substance equivalent to the Participating Chartered Organization Settlement Contribution and agreeing to be bound by the terms and conditions of this Agreement.

11. **Protections Afforded to Insureds and Co-Insureds**.  On the Release Date, all Abuse Claims against insureds and co-insureds covered under insurance policies issued by the Settling Insurers shall be channeled and enjoined under the Settling Insurer Policy Injunction and released.  Pending the occurrence of the Release Date, all such Abuse Claims shall be enjoined pursuant to the Post-Confirmation Interim Injunction, as provided herein.

12. **Bankrupt Chartered Organizations**.  The BSA shall use its best efforts to work with the Roman Catholic Ad Hoc Committee and the Chartered Organizations that are debtors in bankruptcy (the eight bankrupt entities identified on Exhibit K to the Plan, which may be amended to the extent that additional Chartered Organizations file for bankruptcy protection prior to entry of the Confirmation Order, each a "Bankrupt Chartered Organization") to obtain written consent for such Bankrupt Chartered Organizations to consent to the terms of this Agreement.  To the extent that a Bankrupt Chartered Organization does not agree to provide written consent to the terms of this Agreement, such Bankrupt Chartered Organization shall automatically be deemed to be an Opt-Out Chartered Organization for all purposes hereunder.  The Parties will use reasonable efforts to jointly resolve such non-consent, which may, upon the consent of the Parties, include excluding such Bankrupt Chartered Organization from the protections and benefits otherwise provided herein, provided that the failure to obtain such consent as it applies to the applicable Bankrupt Chartered Organization shall not be deemed a breach of this Agreement by any Party or a failure to satisfy a condition to the effectiveness of the Plan. The Parties consent to the foregoing provisions covering the Settling Insurers to apply to any other Settling Insurance Company.  The Settling Insurers reserve all rights and defenses they have under policies issued to Bankrupt Chartered Organizations that do not consent to the terms of this Agreement.

FCRA00540

13. **Opt-Out Chartered Organizations**.

a) Opt-Out Chartered Organizations by definition are not Participating Chartered Organizations, Limited Protected Parties, or Contributing Chartered Organizations. The term "Opt-Out Chartered Organization," on the one hand, and the terms Participating Chartered Organizations, Limited Protected Parties and Contributing Chartered Organizations, on the other hand, are mutually exclusive.

b) Under the Plan and as a condition to the Plan Effective Date (waiver of which shall require the prior written consent of, among others, the Settling Insurers), on the Release Date any Opt-Out Chartered Organization shall receive the benefit of the Settling Insurer Policy Injunction and the release of all Abuse Claims that are covered under insurance policies issued by the Settling Insurers.

c) For the avoidance of doubt, nothing herein or in the Plan shall require an Opt-Out Chartered Organization to provide an assignment or release with respect to its rights under insurance policies issued directly to such organization, including those set forth in Sections 9 and 10 hereof. The rights of the Opt-Out Chartered Organizations provided under insurance policies issued directly to such organization are preserved, provided that the Settling Insurers and the Opt-Out Chartered Organizations may enforce and rely upon the channeling and release of Abuse Claims against an Opt-Out Chartered Organization as set forth in Section 11 hereof for all purposes. All rights and defenses of the Settling Insurers under insurance policies issued directly to an Opt-Out Chartered Organization are preserved. The foregoing provision will be added to the Plan, including the channeling injunction.

d) If, however, a Chartered Organization that is an Opt-Out Chartered Organization wants to become a Contributing Chartered Organization, (i) a financial contribution must be made by or on behalf of such Opt-Out Chartered Organization, (ii) such Chartered Organization must agree to provide the assignments and releases set forth in Sections 9 and 10 hereof, and (iii) if and to the extent required by BSA, such Chartered Organization must agree to cooperate with the Child Protection Committee.

e) By definition, the Settling Insurers' Policies (including those set forth on Exhibits A and B) were issued directly to the BSA and the Local Councils and were not issued directly to the Chartered Organizations.

14. **Post-Confirmation Interim Injunction**. The Plan and Confirmation Order shall provide that all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date (the "Post-Confirmation Interim Injunction"), shall remain in full force and effect until the Release Date, any final injunctions are issued, or upon a Reversal or other condition that results in the return of the Escrowed Payments to the Settling Insurers. To the extent not otherwise in place, the Plan shall provide that pending the occurrence of the Release Date and thereafter, any Claim that would be released or subject to the Channeling Injunction upon the occurrence of conditions set forth herein (including the occurrence of the Release Date) shall be stayed and enjoined pending satisfaction of such

conditions. Such injunction shall permit the filing, but not the prosecution, of the Abuse Claims against such Chartered Organizations.

15. **Abuse Claims Under Policies Issued to Chartered Organizations**. The release by the Participating Chartered Organizations and Contributing Chartered Organizations of the Settling Insurers from all the Claims and Causes of Action set forth in Section 9 of this Agreement[5] (and corresponding rights of the Settling Insurers) are subject to the following:

a) Such Chartered Organizations are not barred from seeking defense and indemnification for claims that are not Abuse Claims under insurance policies issued by the Settling Insurers directly to such Chartered Organizations, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

b) Such Chartered Organizations are not barred from seeking defense and indemnification for that portion of Mixed Claims unrelated to Scouting under such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-Confirmation Interim Injunction and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations.

c) Such Chartered Organizations are not barred from seeking defense and indemnification under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

d) To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

e) To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, the Settling Insurers shall have no further obligations with respect to such claim.

f) The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or the Settling Insurers to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

g) The Settling Insurers reserve all rights under their policies with respect to any Claim that is not an Abuse Claim (including the non-Scouting component of any Mixed Claim), none of which are waived or released hereunder.

---

[5] As set forth in Section 13(e), the insurance policies issued directly to the BSA and Local Councils were, by definition, not issued to the Chartered Organizations and are not subject to this provision.

16. **Contributing Chartered Organizations.** No Chartered Organization shall be a Contributing Chartered Organization unless it agrees to provide the assignments and releases set forth in Sections 9 and 10 of this Agreement.

17. **Reserved.**

18. **Reserved.**

19. **Finality**. Subject to the other terms of this Agreement, and so long as this Agreement remains in full force and effect and/or is not terminated, the Parties agree that (a) the Settlement Amount is the total amount that the Settling Insurers will be obligated to pay under the Settling Insurers' Policies, and (b) the Confirmation Order shall provide that on and after the Release Date and payment of the Settlement Amount (and subject to the limitations in Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (as applicable to Westchester), the Settling Insurers shall be released from and shall not be obligated to make any additional payments to any Person (including, but not limited to, the BSA, the Local Councils, any Chartered Organization and any entity actually or allegedly covered under insurance policies issued by the Settling Insurers) for Abuse Claims, including those relating to or arising out of the Settling Insurers' Policies and the other Claims and Causes of Action released hereunder, subject to the limitations in Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (as applicable to Westchester).

20. **Judgment Reduction and Contribution**.

a) The Settling Insurers will not assert or file a Claim, and will dismiss without prejudice (if permitted to do so under applicable law) any pending Claims, seeking contribution, indemnity, and/or defense against another Entity in order to recover any portion of the Settlement Amount to be paid by the Settling Insurers under this Agreement. The Settlement Amount shall not be subject to any Claims for deductions, setoffs, or charge-backs by the Settling Insurers of any kind, including Claims involving recoupment of deductibles, contribution, self-insured retentions, additional premiums, or retrospective or reinstatement premiums. For the avoidance of doubt, the Settling Insurers shall maintain (i) an unfettered right to advise their reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against their reinsurers and retrocessionaires in their capacities as such, (ii) all rights with respect to any Claim that is not an Abuse Claim (including the non-Scouting component of a Mixed Claim) related to their policies as provided in Section 15 hereof, and (iii) claims against Opt-Out Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement and provide the releases and assignments set forth in Sections 9 and 10 hereof.

b) In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from the Settling Insurers as a result of a Cause of Action for contribution, subrogation, indemnification or other similar Cause of Action against the Settling Insurers for the Settling Insurers' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim, or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce or limit its judgment or Cause of Action against, or settlement with, such

other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification or other similar Cause of Action against the Settling Insurers. To ensure that such a reduction is accomplished, the Settling Insurers shall be entitled to rely upon or assert this paragraph as a defense to any action against them for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction described in this paragraph to protect the Settling Insurers from any liability for the judgment or Cause of Action.

c) To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar Cause of Action against the Settling Insurers for the Settling Insurers' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim, or for any Cause of Action released in this Agreement, nothing herein shall preclude the Settling Insurers from asserting any defense to such claim, or from filing, asserting, or continuing to pursue a Claim seeking contribution, indemnity, or defense from that other insurer, provided that, (i) Settling Insurers will provide timely notice thereof to the Trust, (ii) Settling Insurers shall obtain the consent of the Trust, which shall not be unreasonably withheld, to settle any such Claims and Causes of Action assigned pursuant to Section 27 of this Agreement, and (iii) to the extent that the Settling Insurers recover from that other insurer, the proceeds of such recovery shall be paid by the Settling Insurers per the instruction of the Trust or, if no Trust has been formed, the Debtors, after the Settling Insurers are reimbursed from such proceeds for reasonable fees and costs they incurred after the date the Confirmation Order becomes Final Order in defending the Claim asserted against the Settling Insurers or prosecuting their Claim against that other insurer. For the avoidance of doubt, the Settling Insurers shall maintain (i) an unfettered right to advise their reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against their reinsurers and retrocessionaires in their capacities as such, (ii) all rights with respect to the non-Scouting component of any Mixed Claims related to their policies as provided in Section 15 hereof, and (iii) claims against Opt-Out Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement and provide the releases and assignments set forth in Sections 9 and 10 hereof.

21. **Findings and Orders**.

a) The Plan and the Confirmation Order shall state that the Findings and Orders and Trust Distribution Procedures are not binding on the Settling Insurers to the extent that the Settlement Amount is released to the Trust, provided that the Settling Insurers may rely on all such Findings and Orders as they see fit or deem necessary in their sole discretion. The Plan and Confirmation Order shall further provide that the Settling Insurers' agreement to settle does not indicate the Settling Insurers' support for or acceptance of the Trust Distribution Procedures or any findings and orders made in connection with them in any other proceeding, which procedures, findings and order shall not be applicable to the Settling Insurers. Without limiting the generality of the foregoing and fully to the extent provided herein, the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.l, Article IX.A.3.w, Article IX.A.3.x, Article IX.A.3.y, Article IX.A.3.z, and Article IX.A.3.aa of the Plan shall not be binding on the Settling Insurers. The Settling Insurers' agreement herein not to object to entry of such findings and determinations in the

Confirmation Order does not indicate the Settling Insurers' support for such findings and determinations, and no party shall argue that the Settling Insurers agreed to or acquiesced in such findings and determinations in any proceeding. Rather, the Settling Insurers are designated as a Settling Insurance Company and Protected Party under the Plan, and as a result, the Settling Insurers take no position on such findings and determinations or on the Trust Distribution Procedures.

b)   The Confirmation Order and all other orders issued by any appellate court that exercises jurisdiction over such orders, if any, shall approve the terms and provisions of this Agreement. For the avoidance of doubt, nothing herein shall cause any Settling Insurer to be liable for any policy issued by or any obligation of any nature or kind owed by another Settling Insurer (including any Settling Insurers' Policy issued by such other Settling Insurer), person or entity other than itself.

c)   Notwithstanding anything to the contrary herein, nothing will require the Settling Insurers to take any position that would impair their ability to pursue objections to any plan in the event that this Agreement is terminated under Section 29 or 30. Subject to the foregoing, the Settling Insurers and the Debtors will (i) take reasonable positions in court supporting the settlement provided herein and the Plan provisions that effectuate this Agreement; (ii) take reasonable positions in court supporting approval of such terms through the Confirmation Order and (iii) will not assist any party in its opposition to the foregoing.

22.   **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with this Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the Plan, *provided that* the Settling Insurers shall be included as a releasee in any form of release attached to the Trust Distribution Procedures to the broadest extent that BSA, any Local Council or any other Protected Parties are released, which release shall be consistent with this Agreement. The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Claims related to, arising from or in connection with Abuse Claims who receive payment from the Trust to release any Claim related to, arising from or in connection with Abuse Claims against (a) the Settling Insurers and (b) any insured or co-insured under the Settling Insurers' Policies or other policies issued by the Settling Insurers covering or allegedly covering Claims or Causes of Action for Abuse Claims. The Settling Insurers shall not object to the Trust Distribution Procedures but may add a statement in the Plan that the Settling Insurers are Settling Insurance Companies and, as a result, take no position on the Trust Distribution Procedures. The Settling Insurers shall not object to the selection of the Settlement Trustee. The Settling Insurers shall not participate in or interfere with the administration of the Trust and shall have no responsibility or liability whatsoever in connection with the administration of the Trust.

23.   **Objections to Plan for Settling Insurers**. The Settling Insurers shall not object to the Plan, the Solicitation Procedures, or the Settlement Trust Agreement, the Trust Distribution Procedures, the selection of the Settlement Trustee or any other document or instrument that comprises the Plan (and, upon execution of this Agreement, shall withdraw any pending objection), so long as the Settling Insurers are included as a Protected Party in the Plan and the Plan is consistent with the terms of this Agreement.

24. **Voting**.  As long as the Plan includes the execution and delivery of this Agreement as a condition to entry of the Confirmation Order and the Affirmation Order and the occurrence of the Plan Effective Date, the Settling Insurers agree to (a) timely vote their Indirect Abuse Claim and any other Claims held by them or their affiliates to accept the Plan and not change or revoke their votes and (b) not "opt out" of the third-party releases contained in the Plan, so long as the Settling Insurers are included as a Protected Party in the Plan, and the Plan is otherwise consistent with the terms of this Agreement.  For the avoidance of doubt, the foregoing vote shall not affect any objection or other position of the Settling Insurers in the event of a termination under Section 29 or 30 or the failure of any condition contained herein.

25. **Discovery**.  Upon the execution of the Term Sheet, the Parties have adjourned without date their pending discovery requests against and motions to compel discovery against each other, including the Settling Insurers' pending discovery requests and motions to compel directed at any holder of an Abuse Claim, representatives of such holders, funders, vendors utilized by representatives of such holders, BSA, the AHCLC, the Local Councils, the Coalition (including law firms and attorneys associated therewith), and the FCR, as applicable; and upon execution of this Agreement such discovery, motions to compel and objections shall be withdrawn. So long as this Agreement has not been terminated, (i) the Settling Insurers, on the one hand, and (ii) the Debtors, Coalition, FCR, AHCLC, and Joining State Court Counsel and their clients on the other hand, shall not seek or direct any additional discovery or objections at each other and, subject to the terms of Section 23 above, the Settling Insurers shall not assert objection(s) in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases.  The Settling Insurers shall cooperate and comply with information requests from the BSA, the Coalition, and the FCR on policy impairment and historical claims handling to the extent such information is not protected from disclosure and is reasonably necessary in support of the confirmation of the Plan and consistent with this Agreement; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to Mediator Gallagher, and the Parties agree to be bound by the Mediator's decision regarding such dispute. The extension granted the Settling Insurers to file or join expert reports shall have been preserved and stayed upon execution of the Term Sheet.

26. **Public Statements**.  The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding this Agreement, including press releases, court filings and in-court statements.  The Settling Insurers shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that the Settling Insurers may make statements to protect their rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and their representatives concerning the Settling Insurers.

27. **Assignment**.

a) The Parties will not assign, transfer, or sell (i) this Agreement or any of their rights, benefits, or obligations hereunder without the prior written consent of all other Parties, which consent shall not be unreasonably withheld, or (ii) except as set forth below, any Cause of Action or Claim related to the Abuse Insurance Policies or in connection with the matters otherwise released against the Settling Insurers pursuant to this Agreement. The Parties agree that they will not assist any other person in the establishment of a

Claim or Cause of Action against the Settling Insurers relating to the Abuse Insurance Policies or the matters released pursuant to this Agreement.

b) Upon the Release Date, Settling Insurers shall assign to the Settlement Trust all Claims and Causes of Action for contribution, subrogation, indemnification and similar claims and theories of liability arising from or in connection with (i) Abuse Insurance Policies (which shall include all Settling Insurers' Policies) and (ii) any other insurance policy issued by the Settling Insurers covering Claims or Causes of Action for Abuse Claims against any (1) any Non-Settling Insurance Company, and (2) any non-settling insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any contracts, binders, certificates, or insurance policies currently or previously in effect at any time on or before the Petition Date that covers, allegedly covers, or potentially covers Abuse Claims, including the Scouting-related portions of Mixed Claims, that relate to or arise out of Abuse Claims, including the Scouting-related portions of Mixed Claims.

c) The assignment in Section 27(b) shall not preclude the Settling Insurers from pursuing Claims and Causes of Action (1) relating to non-Scouting Claims and the non-Scouting-related portions of Mixed Claims, (2) against their reinsurers and retrocessionaires in their capacities as such, (3) relating to Post-Petition Policies and Non-Abuse Insurance Policies, and (4) against Opt-Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement and provide the releases and assignments set forth in Sections 9 and 10 hereof. Section 8 of this Agreement shall not impair the Settlement Trust's Claims and Causes of Action against (i) any Non-Settling Insurance Company, (ii) any non-settling insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any contracts, binders, certificates, or insurance policies currently or previously in effect at any time on or before the Petition Date that covers, allegedly covers, or potentially covers Abuse Claims, including the Scouting-related portions of Mixed Claims, or (iii) any Entity, other than a Limited Protected Party (to the extent of its protected party status) or Protected Party, that allegedly is liable for Abuse Claims, including the Scouting-related portions of Mixed Claims.

d) To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar Claim against the Settling Insurers that relate to or arise out of Abuse Claims, including the Scouting-related portions of Mixed Claims, nothing herein shall preclude the Settling Insurers from asserting any defense to such claim, or from filing, asserting, or continuing to pursue a Claim seeking contribution, indemnity, or defense from that other insurer, provided that, (1) the Settling Insurers will provide timely notice thereof to the Trust, (2) Settling Insurers shall obtain the consent of the Trust, which shall not be unreasonably withheld, to settle any such Claims and Causes of Action assigned pursuant to this Section 27, and (3) to the extent that the Settling Insurers recover from that other insurer, the proceeds of such recovery shall be paid by the Settling Insurers per the instruction of the Trust or, if no Trust has been formed, the Debtors, after the Settling Insurers are reimbursed from such proceeds for reasonable fees and costs they

FCRA00547

incurred after the date the Confirmation Order becomes a Final Order in defending the Claim asserted against the Settling Insurers or prosecuting their Claim against that other insurer.

e) Nothing in the foregoing will prohibit the Parties or any Protected Party from transferring and assigning to the Trust all rights under this Agreement, or from assisting the Trust in pursuing any Claim arising out of or under same against anyone other than the Settling Insurers.

28. **Governing Law**.  This Agreement shall be governed by Delaware law.

29. **Termination Event by the Debtors, the Coalition and the FCR**.  Subject to the provisions of Section 31, the Debtors, the Coalition, or the FCR may terminate this Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Plan under section 1126 of the Bankruptcy Code and as a result the Plan is withdrawn.  Subject to the foregoing sentence and Section 30, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Agreement and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Agreement, including the provisions constituting the approval of all of the terms and conditions hereof and (b) defend this Agreement.

30. **Fiduciary Out by the Debtors and the FCR**.  Notwithstanding anything else in this Agreement to the contrary, no term or condition of this Agreement shall require the Debtors or the FCR to take or refrain from taking any action that it determines would be inconsistent with its fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Agreement, this Agreement may be terminated (subject to the provisions of Section 31) at any time prior to the entry of a Final Order confirming the Plan as to that party, *provided, however,* that the Debtors and the FCR each understands that the Tort Claimants' Committee is not a party to this Agreement and that the Tort Claimants' Committee and claimants represented by various plaintiff firms may object to this Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Agreement is consistent with their fiduciary duties as of the effective date of this Agreement, *provided, further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata,* collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate this Agreement, such termination shall be with respect to the FCR only and not otherwise affect this Agreement or the other Parties' rights and obligations thereunder. For the avoidance of doubt, the failure to obtain entry of the Confirmation Order and approval of the settlement provided herein under Bankruptcy Rule 9019 shall constitute grounds for termination of this Agreement in accordance with the provisions of this Section 30.

FCRA00548

31. **Effect of Termination or Failure of Conditions to Occur**.  In the case of any termination described in Section 29 or 30 above by the Debtors or any other situation where this Agreement does not proceed (including as a result of the failure of any condition thereto to occur or failure to obtain entry of the Confirmation Order despite reasonable best efforts), then:  (a) absent the consent of the Settling Insurers, the Settling Insurers shall be (i) afforded an opportunity to interpose all objections to any plan that does not afford them the protections and rights provided hereunder, notwithstanding any prior deadlines, law of the case or any determination made in the intervening period after execution of this Agreement, (ii) afforded adequate additional time and relief from any deadline to prepare and present such objections, including any expert reports and additional discovery, and (iii) able to assert any and all positions in opposition to such plan and hearing schedule, none of which are waived or affected hereby; and (b) the Settling Insurers, the Coalition, the FCR, and State Court Counsel shall have no further obligations hereunder.  For the avoidance of doubt, the Bankruptcy Court's approval of this Agreement under, among other things, Bankruptcy Rule 9019, and settlement provided herein shall be a condition to the entry of the Confirmation Order, entry of the Affirmation Order and the Plan Effective Date, which condition may only be waived with the consent of each of the Parties.

32. **Effect of Reversal of Confirmation Order Following the Effective Date**.  In the event that the Confirmation Order is reversed or vacated on appeal following the Plan Effective Date, such that the Release Date does not occur (a "Reversal"), the Parties and State Court Counsel agree that if the Initial Payment has been made, the Settling Insurers shall be entitled to a credit equal to fifty percent (50%) of such payment to be applied in exchange for release of the Pre-Petition Century/Chubb Claims and the remaining fifty percent (50%) of such payment to be applied against any other liability the Settling Insurers may have under or associated with any insurance policies issued to BSA or any Local Council (the "Credit"); *provided, however,* that any and all funds held in the Escrow Account (or, if there is a loss as a result of investment of the Escrowed Payments, then the funds remaining in the Escrow Account) shall be released from the Escrow Account to the Settling Insurers promptly following the Reversal (or any exercise of the termination right described in Section 29 or 30 above or other condition permitting release of such funds provided herein).  The provisions of this Section 32 shall survive any Reversal, any exercise of any termination right described in Section 29 or 30 above, and any termination of this Agreement.  Nothing in this Section or elsewhere in this Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

33. **Other Settlements**.  To the extent that the Debtors or any other Person formed to assume the Debtors' liability for Abuse Claims, including the Settlement Trust, has settled or hereafter settles Claims arising out of Claims alleging Abuse Claims with any other Insurance Company, Chartered Organization or other Person, the Debtors or other Person formed to assume the Debtors' liability for Abuse Claims and Claims alleging Abuse Claims, shall obtain a waiver of that other Insurance Company, Chartered Organization or other Person's Claims against the Settling Insurers based upon, arising out of or in any way attributable to such Claims and/or their settlement and they shall further provide the releases set forth in Section 9 (and the assignment and releases in Sections 9 and 10 in the

case of a Chartered Organization).  Such waiver may be accomplished by an assignment of such Claims to the Settlement Trust, whereupon such Claims will be released.

34. **State Court Counsel**.  Each State Court Counsel represents and warrants that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

35. **Plan**.  The Debtors shall ensure that the Plan is consistent with this Agreement.  The protections given to the Settling Insurers, and to their respective Affiliates and Representatives, as Protected Parties shall not be less than those afforded to any other Protected Parties under (i) the Plan (other than the limited indemnity provided to the Local Councils under Article IV.M of the Plan) or (ii) any other plan unless this Agreement has been validly terminated under Section 29 or 30 prior to the filing of such plan subject to Section 31(i)-(iii) hereof.  The Plan shall provide that the execution and delivery of this Agreement is a condition to entry of the Confirmation Order and the occurrence of the Plan Effective Date.  The inclusion of this Agreement in the Plan shall not be waivable as a condition to entry of the Confirmation Order or the occurrence of the Plan Effective Date absent the prior written consent of the Settling Insurers.

36. **Settlement of Pre-Petition Century/Chubb Claims**.  The Debtors currently assert certain Claims and Causes of Action against one or more of the Settling Insurers for payment of defense and indemnity costs allegedly owed as of the Petition Date (together with any and all Claims and Causes of Action that were or could have been asserted as of the Petition Date based upon the related or similar facts and circumstances, whether known or unknown, collectively, the "Pre-Petition Century/Chubb Claims").  Without limiting the generality and scope of the releases provided in the Plan and this Agreement, the settlement provided herein shall constitute a full release of the Pre-Petition Century/Chubb Claims.  Upon the release of the Initial Payment, the Pre-Petition Century/Chubb Claims shall be irrevocably released against the Settling Insurers even in the case of a Reversal of the Confirmation Order.  The resolution of the Pre-Petition Century/Chubb Claims is a severable agreement in the case of a Reversal and will be approved by both the Confirmation Order and through a separate order (the "Pre-Petition Century/Chubb Claims Order"), which shall survive independently in the case of a Reversal affecting the Confirmation Order.

37. **Appeal**.  In consideration of the execution of this Agreement, the Settling Insurers and the Debtors have jointly moved to stay the appeal of the bar date order pending the Confirmation Order becoming a Final Order, which is captioned as follows: *Century Indemnity Company v. Boy Scouts of America and Delaware BSA, LLC*, Case No. 21-1792 (3d Cir.), on appeal to the United States Court of Appeals for the Third Circuit from the United States District Court for the District of Delaware, Case No. 20-00774.  To the extent that the court terminates a stay that is granted, the parties shall voluntarily dismiss the appeal but include in the stipulation of dismissal a binding agreement that the appeal is interlocutory.

38. **Medicare Reporting**. To the extent the payment of claims by the Trust triggers reporting to Medicare under 42 U.S.C § 1395y, *et seq*., commonly referred to as the Medicare, Medicaid, and SCHIP Extension Act of 2007, and any related rules, regulations, or guidance issued in connection therewith or relating thereto (collectively, "MMSEA"), the Parties agree that the Trust is the Responsible Reporting Entity ("RRE") and the Settling Insurers are not subject to any reporting requirements or obligations under MMSEA.

39. **Waivers.** The Parties acknowledge that they have been advised by their respective legal counsel with respect to the substance of this Agreement, including, without limitation, the releases set forth herein, and expressly waive all protections under any state or common law similar to those provided in Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties further acknowledge and agree that the release of unknown claims was separately negotiated and material to this Agreement.

40. **Letter of Credit**. BSA is the applicant under that certain letter of credit No. CTCS-158221 in the current amount of $3,812,060.00, issued by JPM to ACE American Insurance Company ("ACE") on February 28, 2018 (the "LC"), which is currently set to expire on February 28, 2023 (the "Expiration Date"). If the Plan Effective Date has not occurred by thirty (30) calendar days before the Expiration Date, the Debtors shall take all actions necessary to cause JPM to further extend the expiration of the LC until a date that is at least thirty (30) calendar days after the Plan Effective Date, confirmation of which further extension shall be provided to ACE on or before twenty (20) calendar days before the Expiration Date. In the event that the LC remains undrawn as of the Plan Effective Date, then within ten (10) business days of the Plan Effective Date, ACE shall return the LC to JPM. In the event that ACE draws all or any amount of the LC before the Plan Effective Date, then ACE shall remit any proceeds of the LC to the Reorganized BSA within ten (10) business days of the Plan Effective Date, and if any portion of the LC remains undrawn, then within ten (10) business days of the Plan Effective Date, ACE shall return the LC to JPM. For the avoidance of doubt, nothing herein alters or otherwise modifies ACE's ability to draw on the LC in accordance with its terms and the terms of the insurance contracts to which the LC relates.

41. **Agreement to Comply with Tort Claimants' Committee Disclosure Requirements.**

a) Century will provide to the Tort Claimants' Committee and the Coalition the quarterly financial statement due to be filed with the Pennsylvania Insurance Department on March 1 (anticipated filing February 24), which will account for Century's share of the $800 million payment contemplated by this Agreement.

**FCRA00551**

b) Century will provide the Pennsylvania Insurance Department with this Agreement and Plan of Reorganization in advance of an anticipated meeting with the Pennsylvania Insurance Department following the filing of the financial statement and offer to answer any questions the Pennsylvania Insurance Department may have about this Agreement.

c) The Debtors will provide notice of the confirmation hearing, along with the Plan and operative exhibits, including this Agreement, on the regulators responsible for oversight of Century, including but not limited to the Department of Insurance for the State of Pennsylvania and its Commissioner. Such notice shall be sent to Commissioner Jessica Altman, Pennsylvania Insurance Department, 1326 Strawberry Square, Harrisburg, PA. 17120.

d) The Debtors will serve notice of entry of the Confirmation Order, notice of entry of the Affirmation Order, and notice of the Effective Date on the same parties in subsection (c) of this Section served with notice of the Confirmation Hearing.

42. **Representations and Warranties**.

a) Each Party and State Court Counsel represents and warrants that it has taken all necessary corporate and legal action required to duly approve the making and performance of this Agreement and, subject only to Section 1 of this Agreement with respect to certain obligations under this Agreement, that no further action on their part is necessary to make any obligation of any Party or State Court Counsel under this Agreement binding and legally enforceable.

b) Each Party and State Court Counsel represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law, any of its respective articles of incorporation or by-laws, or any contract or agreement by which it is bound.

c) Each Party represents and warrants that it is the owner of the rights and Claims to be compromised and released by it under this Agreement and it has not assigned or transferred to any Entity any Claim or other matter to be compromised and released herein. Furthermore, the Debtors represent and warrant that they have not assigned or transferred any right, title, or Interest under the Settling Insurers' Policies.

d) Each Party and State Court Counsel represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations with the assistance and supervision of the court-appointed mediator, and with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate, and good-faith compromise of disputed Claims, disputed liabilities and disputed issues.

e) Each Party and State Court Counsel represents and warrants that it has read this Agreement in its entirety, that it fully understands all of the Agreement's terms and the consequences thereof, and that the person signing this Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

f) Each Party and State Court Counsel represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable.

g) The Settling Insurers and BSA have each conducted a reasonable, good faith search of their respective records and have located no evidence of any BSA Insurance Policies issued by the Settling Insurers other than those identified on Exhibit A hereto or any Local Council Insurance Policies issued by the Settling Insurers other than those identified on Exhibit B hereto, and that based on such searches, neither Party believes that any additional policies or secondary evidence of such policies exists.

43. **Bankruptcy Notices**. If not already performed, in addition to any other service that may be required, the Debtors shall serve by mail notice of the Plan and the Confirmation Hearing in the manner specified in the Disclosure Statement Order. In addition, the Debtors published notice of the Confirmation Hearing in *The New York Times*, *The Wall Street Journal*, *USA Today*, and in certain other print publications and via online advertising. The Debtors have also served by mail the Plan Supplement Notice, which shall provide notice of this Agreement and the subject matter thereof (in form and substance reasonably acceptable to the Settling Insurers), on all Entities that have requested notice in the Bankruptcy Case under Bankruptcy Rule 2002 and on all holders of Claims entitled to vote on the Plan (and any additional parties identified by the Settling Insurers). The Debtors may, in their discretion, and the Settling Insurers may require the Debtors to, further provide actual and publication notice of this Agreement and the subject matter thereof in connection with providing notice of the Plan Effective Date on parties in interest or otherwise.

44. **No Admissions and Non-Admissibility of this Agreement**. Nothing contained in this Agreement, or in any negotiations, discussions, mediation proceedings, correspondence or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be deemed to be an admission on the part of the Parties or State Court Counsel with respect to any matter or any factual or legal issue of any kind.

45. **Binding Effect of Agreement.** All terms and provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties and the State Court Counsel and their respective successors and assigns, including the Settlement Trust.

46. **Dispute Resolution**. If any dispute should arise concerning the terms, meaning, or implementation of this Agreement, the Parties and State Court Counsel agree to use their best efforts to reach a prompt resolution of such dispute. If the Parties and State Court Counsel are unable to reach an agreement, they shall proceed to mediation before Timothy V.P. Gallagher. Any Party or State Court Counsel may initiate litigation in the Bankruptcy Court to the extent the Bankruptcy Court has subject-matter jurisdiction, or to the extent it does not, in any other appropriate forum, but no Party or State Court Counsel may initiate litigation until forty-five (45) calendar days after a mediation has commenced. All of the Parties and State Court Counsel consent to personal jurisdiction in any federal court (including the Bankruptcy Court) or state court in the State of Delaware for purposes of

resolving any dispute concerning the terms, meaning, or implementation of this Agreement.

**47. Construction of Agreement.**

a) The Parties and State Court Counsel represent and acknowledge that they have participated in the preparation and drafting of this Agreement and have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties or State Court Counsel later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party or State Court Counsel on the basis that one Party or State Court Counsel drafted the language of this Agreement or played a greater role in the drafting of the language.

b) The headings of this Agreement are asserted for convenience and are not part of the provisions hereof and shall have no force or effect.

**48. Miscellaneous.**

a) This Agreement sets forth the entire agreement between the Parties and State Court Counsel as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or oral.

b) All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the Parties and State Court Counsel at the addresses set forth in Exhibit D hereto, or to such other persons or addresses as the Parties or State Court Counsel may designate in writing from time to time.

c) This Agreement may be amended only by a writing signed by or on behalf of each Party and, if after the Effective Date, the Settling Insurers and the Settlement Trust.

d) Each Party may sign an e-mail or PDF copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

**49. Definitions**: The capitalized terms used in this Agreement shall have the respective meanings set forth below. To the extent any defined terms is incorporated from the Plan, such term shall be in all respects, in form and substance, acceptable to the Parties.

"**Abuse**" has the meaning ascribed to it in the Amended Plan.

"**Abuse Claim**" means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, respondeat

**FCRA00554**

superior, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such) or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based thereon. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Chartered Organization Abuse Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations. For the avoidance of doubt, (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is related to Scouting (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, TCJC, or their respective Representatives (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.

"**Abuse Insurance Policies**" has the meaning ascribed to it in the Amended Plan and shall include the Settling Insurers' Policies.

"**Additional Payment**" has the meaning ascribed to it in section 4(b) of this Agreement.

"**Affirmation Order**" shall have the meaning set forth in the Amended Plan and shall be in all respects, in form and substance acceptable to the Parties.

"**Agreement**" has the meaning ascribed to it in the opening section of this Agreement.

"**AHCLC**" has the meaning ascribed to it in the opening section of this Agreement.

"**Bankrupt Chartered Organization**" has the meaning ascribed to it in section 12 of this Agreement.

"**Bankruptcy Code**" has the meaning ascribed to it in the Amended Plan.

"**Bankruptcy Court**" has the meaning ascribed to it in the Amended Plan.

"**Bankruptcy Rules**" has the meaning ascribed to it in the Amended Plan.

"**BSA**" has the meaning ascribed to it in the opening section of this Agreement.

"**BSA Insurance Policies**" has the meaning ascribed to it in the Amended Plan and shall include the BSA Settling Insurers' Policies.

"**BSA Settling Insurers' Policies**" has the meaning ascribed to it in section 6 of this Agreement.

"**Causes of Action**" has the meaning ascribed to it in the Amended Plan.

"**Century**" means: (a) Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America; (b) Century Indemnity Company as successor to CIGNA Specialty Insurance Company f/k/a California Union Insurance Company; (c) Insurance Company of North America; and (d) and each of their past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, predecessors, successors and assigns, each in their capacity as such; provided that the term "Century" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, settlements entered into, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Post-Petition Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, settlements entered into, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise.

"**Channeling Injunction**" has the meaning ascribed to it in section 5(c) of this Agreement.

"**Chapter 11 Cases**" has the meaning ascribed to it in the Amended Plan.

"**Chartered Organizations**" has the meaning ascribed to it in the Amended Plan.

"**Child Protection Committee**" has the meaning ascribed to it in the Amended Plan.

"**Chubb Companies**" means: (a) Westchester Fire Insurance Company; (b) Westchester Surplus Lines Insurance Company; (c) Industrial Insurance Company of Hawaii; (d) Chubb Custom Insurance Company; (e) Federal Insurance Company; (f) Pacific Indemnity Company; (g) Texas Pacific Indemnity Company; (h) U.S. Fire Insurance Company, to the extent policies were assumed by or novated to Westchester Fire Insurance Company; (i) International Insurance Company to the extent policies were assumed by or novated to Westchester Fire Insurance Company; (j) Industrial Indemnity Company; (k) Pacific Employers Insurance Company; (l) The North River Insurance Company, but only to the extent policies were assumed by or novated to Westchester Fire Insurance Company prior to the Effective Date; (m) Aetna Insurance Company; (n) American Foreign Insurance Association; (o) Chubb Atlantic Indemnity Ltd.; (p) INA Insurance Company of Illinois; and (q) each of their past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, predecessors, successors and assigns, each in their capacity as such provided that the term "Chubb" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies), except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, settlements entered into, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Post-Petition Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, settlements entered into, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise.

"**Claim**" has the meaning ascribed to it in the Amended Plan.

"**Coalition**" has the meaning ascribed to it in the opening section of this Agreement.

"**Confirmation**" has the meaning ascribed to it in the Amended Plan.

"**Confirmation Date**" has the meaning ascribed to it in the Amended Plan.

"**Confirmation Hearing**" has the meaning ascribed to it in the Amended Plan.

FCRA00557

"**Confirmation Order**" shall have the meaning set forth in the Plan and be in form and substance acceptable to the Parties confirming and approving the Plan including each and every term of this Agreement and the settlement provided herein.

"**Contributing Chartered Organizations**" has the meaning ascribed to it in the Amended Plan.

"**Credit**" has the meaning ascribed to it in section 32 of this Agreement.

"**D&O Liability Insurance Policies**" has the meaning ascribed to it in the Amended Plan.

"**Debtors**" has the meaning ascribed to it in the opening section of this Agreement.

"**Direct Abuse Claims**" has the meaning ascribed to it in the Amended Plan.

"**Discharge**" has the meaning ascribed to it in the Amended Plan.

"**Disclosure Statement Order**" has the meaning ascribed to it in the Amended Plan.

"**District Court**" has the meaning ascribed to it in the Amended Plan.

"**Escrow Account**" has the meaning ascribed to it in section 4(a) of this Agreement.

"**Escrow Payments**" means payments into the Escrow Account.

"**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

"**Estates**" has the meaning ascribed to it in the Amended Plan.

"**FCR**" has the meaning ascribed to it in the opening section of this Agreement.

"**Final Order**" has the meaning ascribed to it in the Amended Plan.

"**Full Post-1975 Injunction**" means the channeling injunction applicable to Abuse Claims alleging first Abuse on or after January 1, 1976.

"**Future Claimants' Representative**" has the meaning ascribed to it in the opening section of the Agreement.

"**Indirect Abuse Claims**" has the meaning ascribed to it in the Amended Plan.

"**Initial Payment**" has the meaning ascribed to it in section 4(b) of this Agreement.

"**Initial Payment Date**" means the earliest date on which all of the following conditions precedent have occurred, provided, however, that any of the following conditions precedent may be waived pursuant to a writing signed by each Party:

1.      Each Party has executed this Agreement;
2.      The Settling Insurers have received a fully executed Local Council Joinder on behalf of each Local Council;
3.      The Bankruptcy Court has entered the Confirmation Order which has been affirmed by the District Court through the Affirmation Order, both in form and substance acceptable to the Settling Insurers, the Debtors, the Coalition, and the FCR as it pertains to this Agreement, which shall serve as the order approving this Agreement and shall include all necessary and appropriate findings and conclusions in relation thereto;
4.      The Confirmation Order provides for a release and channeling injunction for the benefit of the Protected Parties (including the Settling Insurers), the Local Councils, the Contributing Chartered Organizations, the Opt-Out Chartered Organizations, the Participating Chartered Organizations and their respective Representatives (in their capacities as such) consistent with this Agreement;
5.      The BSA has provided written notice to the Settling Insurers that the Plan Effective Date has occurred; and
6.      The Confirmation Order is effective and not stayed or otherwise subject to an injunction.

"**Insurance Actions**" has the meaning ascribed to it in the Amended Plan.

"**Insurance Action Recoveries**" has the meaning ascribed to it in the Amended Plan.

"**Insurance Company**" shall have the meaning ascribed to it in the Amended Plan and shall include the Settling Insurers.

"**Insurance Policies**" has the meaning ascribed to it in the Amended Plan and shall include the Settling Insurers' Policies.

"**Insurance Settlement Agreement**" has the meaning ascribed to it in the Amended Plan and shall include this Agreement.

"**JPM**" has the meaning ascribed to it in the Amended Plan.

"**JPM Facilities**" has the meaning ascribed to it in section 18 of this Agreement.

"**LC Overage**" has the meaning ascribed to it in section 18 of this Agreement.

"**Limited Protected Party**" has the meaning ascribed to it in the Amended Plan.

"**Local Council Insurance Policies**" has the meaning ascribed in the Plan and shall include the Settling Insurers' Local Council Policies.

"**Local Council Joinder**" means that certain joinder to this Agreement executed by the Local Councils active as of the Effective Date, listed on Exhibit G to the Plan.

"**Local Councils**" has the meaning ascribed to it in the Amended Plan.

FCRA00559

"**Mediators**" has the meaning ascribed to it in the Amended Plan.

"**Mixed Claim**" means a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting ("Non-Scouting Abuse"). A claim shall not be treated as a Mixed Claim unless and until Scouting-related Abuse allegations have been asserted through a Proof of Claim, complaint, sworn discovery or testimony (including by affidavit).

"**MMSEA**" has the meaning ascribed to it in section 38 of this Agreement.

"**Net Income**" has the meaning ascribed to it in section 4(b) of this Agreement.

"**Non-Abuse Insurance Policies**" has the meaning ascribed to it in the Amended Plan. For the avoidance of doubt, the term "Abuse Claim" as used in the definition of "Non-Abuse Insurance Policies" in the Amended Plan, shall have the meaning given to such term in this Agreement for the purposes of this Agreement.

"**Non-Scouting Abuse**" has the meaning ascribed to it in the definition of "Mixed Claim" of this Agreement.

"**Non-Settling Insurance Company**" has the meaning ascribed to it in the Amended Plan.

"**Opt-Out Chartered Organization Abuse Claim**" has the meaning ascribed to it in the Amended Plan.

"**Opt-Out Chartered Organization**" (as defined in the Plan) means a Chartered Organization that is not a Contributing Chartered Organization or a Participating Chartered Organization because such Chartered Organization has (a) objected to confirmation of the Plan or (b) informed Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment.

"**Participating Chartered Organization**" has the meaning ascribed to it in the Amended Plan.

"**Participating Chartered Organization Insurance Action**" has the meaning ascribed to it in the Amended Plan.

"**Participating Chartered Organization Insurance Assignment**" has the meaning ascribed to it in section 10 of this Agreement.

"**Participating Chartered Organization Settlement Contribution**" has the meaning ascribed to it in section 10 of this Agreement.

"**Parties**" has the meaning ascribed to it in the opening section of this Agreement.

"**Perpetrator**" has the meaning ascribed to it in the Amended Plan.

"**Perpetrator Indemnification Claims**" has the meaning ascribed to it in the Amended Plan.

"**Person**" has the meaning set forth in the Amended Plan.

"**Plan Effective Date**" or "**Effective Date**" has the meaning ascribed to "Plan Effective Date" in section 4(a) of this Agreement.

"**Post-1975 Chartered Organization Abuse Claim**" has the meaning ascribed to it in the Amended Plan.

"**Post-Confirmation Interim Injunction**" has the meaning ascribed to it in section 14 of this Agreement.

"**Post-Petition Policies**" means insurance policies issued by the Settling Insurers to the Debtors or the Local Councils and effective on or after the Petition Date, but only to the extent of coverage for Claims and Causes of Action arising from acts or events that first took place after the Petition Date. For the avoidance of doubt, Post-Petition Policies expressly exclude the right to seek coverage for Abuse Claims, including any settlements incorporated into the Plan or settlements entered into by the Trust.

"**Pre-Petition Century/Chubb Claims**" has the meaning ascribed to it in section 36 of this Agreement.

"**Pre-Petition Century/Chubb Claims Order**" has the meaning ascribed to it in section 36 of this Agreement.

"**Protected Parties**" has the meaning ascribed to it in the Amended Plan.

"**Related Non-Debtor Entities**" has the meaning ascribed to it in the Amended Plan.

"**Release Date**" shall mean the earliest date on which all of the following conditions precedent have occurred, provided however, that any of the following conditions precedent may be waived pursuant to a writing signed by each Party:
1. Each Party has executed this Agreement;
2. The Settling Insurers have received a fully executed Local Council Joinder on behalf of each Local Council;
3. The Bankruptcy Court has entered the Confirmation Order which has been affirmed by the District Court through the Affirmation Order, both in form and substance acceptable to the Settling Insurers, the Debtors, the Coalition, and the FCR as it pertains to this Agreement, which shall serve as the order approving this Agreement and shall include all necessary and appropriate findings and conclusions in relation thereto;

4.  The Confirmation Order provides for a release and channeling injunction for the benefit of the Protected Parties (including the Settling Insurers), the Local Councils, the Contributing Chartered Organizations, the Opt-Out Chartered Organizations, the Participating Chartered Organizations and their respective Representatives (in their capacities as such) consistent with this Agreement;

5.  The BSA has provided written notice to the Settling Insurers that the Plan Effective Date has occurred; and

6.  The Confirmation Order is a Final Order.

"**Releasing Parties**" has the meaning ascribed to it in section 9 of this Agreement.

"**Reorganized BSA**" has the meaning ascribed to it in the Amended Plan.

"**Representatives**" has the meaning ascribed to it in the Amended Plan.

"**Reversal**" has the meaning ascribed to it in section 32 of this Agreement.

"**RRE**" has the meaning ascribed to it in section 38 of this Agreement.

"**Sale**" has the meaning ascribed to it in section 6 of this Agreement.

"**Scouting**" has the meaning ascribed to it in the Amended Plan.

"**Settlement Amount**" has the meaning ascribed to it in section 3 of this Agreement.

"**Settlement Trust**" or "**Trust**" has the meaning ascribed to it in section 3 of this Agreement.

"**Settlement Trust Agreement**" has the meaning ascribed to it in the Amended Plan.

"**Settlement Trust Documents**" has the meaning ascribed to it in the Amended Plan.

"**Settlement Trustee**" has the meaning ascribed to it in the Amended Plan.

"**Settling Insurance Companies**" has the meaning ascribed to it in the Amended Plan.

"**Settling Insurers' Local Council Policies**" has the meaning ascribed to it in section 6 of this Agreement.

"**Settling Insurer Policy Injunction**" means the Channeling Injunction applicable to Abuse Claims covered under any insurance policy issued by the Settling Insurers.

"**Settling Insurers**" has the meaning ascribed to it in the opening section of this Agreement.

"**Settling Insurers' Policies**" has the meaning ascribed to it in section 5(a) of this Agreement.

"**State Court Counsel**" has the meaning ascribed to it in the opening section of this Agreement.

"**TCJC**" means The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, including any affiliates or personnel.

"**Term Sheet Effective Date**" has the meaning ascribed to it in the opening section of this Agreement.

"**Tort Claimants' Committee**" has the meaning ascribed to it in the Amended Plan.

"**Trust Agreement**" has the meaning ascribed to it in the Amended Plan.

"**Trust Distribution Procedures**" has the meaning ascribed to it in the Amended Plan.

"**United Methodist Entities**" means each and every (i) United Methodist local church, federated, or union church, including any Federated Church or Union Church that includes a historically United Methodist Church congregation, that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, regardless of whether such local, union, or federated church is or was a Chartered Organization at any time; (ii) church currently federated or yoked, and which current federated or yoked church includes a current or former United Methodist Church congregation that sponsored, promoted, hosted or provided any support in connection with Scouting activities; (iii) other United Methodist related or affiliated organizations that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, including any social service organization, ministry, camping ministry, camp facility, camp, retreat, or other facilities in the nature of a camp or retreat; (iv) any camp, retreat, or other facility in the nature of a camp or retreat that is not United Methodist related or affiliated, but otherwise promoted, hosted, or provided any support in connection with Scouting Activities for an entity described in (i), (ii) or (iii); (v) all organizations affiliated or related to (i), (ii), (iii) or (iv) including, but not limited to, the United Methodist ad hoc committee, each district, annual conference, and jurisdictional conference of The United Methodist Church, the general, annual conference, district, local church agencies of The United Methodist Church, the Council of Bishops of The United Methodist Church, and the non-jural bodies commonly referred to as "The United Methodist Church," the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

By: _Roger C. Mosby_

Name: Roger C. Mosby

Title: President and CEO

Date: February 14, 2022

**Century Indemnity Company**

By: _____

Name: _____

Title: _____

Date: _____

**Westchester Fire Insurance Company**

By: _____

Name: _____

Title: _____

Date: _____

**Federal Insurance Company**

By: _____

Name: _____

Title: _____

Date: _____

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

By: _____

Name: _____

Title: _____

Date: _____

**Century Indemnity Company**

By: _____

Name: _Robert M. Onrod_

Title: _President, Century Indemnity_

Date: _2/14/22_

**Westchester Fire Insurance Company**

By: _____

Name: _____

Title: _____

Date: _____

**Federal Insurance Company**

By: _____

Name: _____

Title: _____

Date: _____

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**                        **Century Indemnity Company**

By: _____            By: _____

Name: _____            Name: _____

Title: _____           Title: _____

Date: _____           Date: _____


**Westchester Fire Insurance Company**      **Federal Insurance Company**

By: _____            By: _____

Name: Christopher J Celentano             Name: Christopher J Celentano

Title: SVP, Coverage & Complex Claims     Title: SVP, Coverage & Complex Claims

Date: February 14, 2022                   Date: February 14, 2022

FCRA00566

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____ as Counsel to the FCR

Dated: 2/15/22

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _Eric Goodman_

Dated: _2 – 14 – 2022_

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _*Richard Mason, its chair*_

Dated: _2/14/22_

FCRA00569

## Schedule 1

### State Court Counsel

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway, Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St., Ste. 900 Houston, TX 77056 | 1026 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com) 909 Texas St., Ste. 1801 Houston, TX 770022 | 690 |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East, Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW, Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd., Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St., Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Damon J. Baldone PLC | Attn: Damon J. Baldone<br>(damon@baldonelaw.com)<br>162 New Orleans Blvd.<br>Houma, LA 70364 | 471 |
| Cutter Law, P.C. | Attn: Brooks Cutter<br>(bcutter@cutterlaw.com)<br>4179 Piedmont Ave., 3rd Fl.<br>Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke<br>(rgp@pahlkelawgroup.com)<br>2425 Circle Dr., Ste. 200<br>Scottsbluff, NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter<br>(tporter@portermalouf.com)<br>825 Ridgewood Rd.<br>Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr.<br>(will@moodyrrlaw.com)<br>500 Crawford St., Ste. 200<br>Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson<br>(cstephenson@levinlaw.com)<br>316 South Baylen St.<br>Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli<br>(jcappelli@bernllp.com)<br>60 East 42nd St., Ste. 950<br>New York, NY 10165 | 5893 |

FCRA00572

**Exhibit A**

**BSA Settling Insurers' Policies**

FCRA00573

**Known and Alleged BSA Insurance Policies Issued by Century
or a Chubb Company, as defined in the Term Sheet**

Exhibit A

| Writing Company | Policy No. | Policy Start | Policy End |
|---|---|---|---|
| Insurance Company of North America | CGL 19 18 36 | 1/1/1962 | 1/1/1963 |
| Insurance Company of North America | CGL 20 46 80 | 1/1/1963 | 1/1/1964 |
| Insurance Company of North America | CGL 21 29 22 | 1/1/1964 | 1/1/1965 |
| Insurance Company of North America | CGL 23 24 70 | 1/1/1965 | 1/1/1966 |
| Insurance Company of North America | CGL 24 88 96 | 1/1/1966 | 1/1/1967 |
| Insurance Company of North America | GLP11200 | 1/1/1967 | 1/1/1968 |
| Insurance Company of North America | GLP15 12 11 | 1/1/1968 | 1/1/1969 |
| Insurance Company of North America | GLP 16 09 81 | 1/1/1969 | 1/1/1970 |
| Insurance Company of North America | XBC43198 | 3/26/1969 | 1/1/1970 |
| Insurance Company of North America | BLB 51323 | 1/1/1970 | 1/1/1972 |
| Insurance Company of North America | XBC 77302 | 1/1/1970 | 1/1/1971 |
| Insurance Company of North America | XBC85370 | 1/1/1971 | 5/3/1971 |
| Insurance Company of North America | GLP 70 64 52 | 1/1/1978 | 1/1/1980 |
| Insurance Company of North America | XBC 151748 | 1/1/1979 | 1/1/1980 |
| Insurance Company of North America | GLP 70 64 52 | 1/1/1980 | 1/1/1981 |
| Insurance Company of North America | ISL1353 | 1/1/1981 | 1/1/1982 |
| Insurance Company of North America | ISL1364 | 1/1/1982 | 1/1/1983 |
| Insurance Company of North America | XCP 144961 | 11/17/1982 | 11/16/1984 |
| Insurance Company of North America | ISL G0 28 34 57-1 | 1/1/1983 | 1/1/1984 |
| Insurance Company of North America | XCP144965 | 1/1/1983 | 1/1/1984 |
| Insurance Company of North America | XCP 144966 | 1/1/1983 | 1/1/1984 |
| Insurance Company of North America | XCP 145365 | 1/1/1984 | 1/1/1985 |
| Insurance Company of North America | XCP 145366 | 1/1/1984 | 1/1/1985 |
| Insurance Company of North America | ISL G0 29 31 72 2 | 1/1/1984 | 1/1/1985 |
| Insurance Company of North America | ISL G0 29 31 72 2 | 12/31/1984 | 3/1/1986 |
| Insurance Company of North America | XCP 144232 | 1/1/1985 | 3/1/1986 |
| International Insurance Company | 522 048501 | 1/1/1985 | 3/1/1986 |
| Federal Insurance Company | (86) 7928-83-37 | 1/1/1985 | 3/1/1986 |
| Insurance Company of North America | ISG GO 293149-7 | 1/1/1986 | 3/1/1986 |
| Insurance Company of North America | ISL G0 293184-9 | 3/1/1986 | 3/1/1987 |
| U.S. Fire Insurance Company | 523 425440 7 | 3/1/1986 | 3/1/1987 |
| Pacific Employers Ins. Company | XCC 001154 | 4/1/1986 | 3/1/1987 |
| Chubb Custom Insurance Company | 7931-00-02 | 6/3/1986 | 3/1/1987 |
| Insurance Company of North America | ISL G0 997957 8 | 3/1/1987 | 3/1/1988 |
| Insurance Company of North America | ISG GO 81 65 36-1 | 3/1/1987 | 3/1/1988 |
| U.S. Fire Insurance Company | 522 065060 1 | 3/1/1987 | 3/1/1988 |
| Insurance Company of North America | XCP-GO-816538-5 | 3/1/1987 | 3/1/1988 |
| Insurance Company of North America | HDO-G1-136741-0 | 3/1/1988 | 3/1/1990 |
| U.S. Fire Insurance Company | 531-200-352-6 | 3/1/1988 | 3/1/1989 |
| Insurance Company of North America | CAO G1 135164-5 | 3/1/1988 | 3/1/1990 |
| Insurance Company of North America | XCPG1-135165-7 | 3/1/1988 | 3/1/1989 |
| Federal Insurance Company | (89) 7907-8617 | 3/1/1988 | 3/1/1989 |

| Writing Company | Policy No. | Policy Start | Policy End |
|---|---|---|---|
| U.S. Fire Insurance Company | 531-201-602-7 | 3/1/1989 | 3/1/1990 |
| Federal Insurance Company | (90)7907 86 17 | 3/1/1989 | 3/1/1990 |
| Insurance Company of North America | HDO-G1-075409-4 | 3/1/1990 | 3/1/1991 |
| Insurance Company of North America | CAO G1 075410-0 | 3/1/1990 | 3/1/1991 |
| International Insurance Company | 531-202912-2 | 3/1/1990 | 3/1/1991 |
| Industrial Insurance Company of Hawaii | JE 910 7188 | 3/1/1990 | 3/1/1991 |
| Federal Insurance Company | (91)7907 86 17 | 3/1/1990 | 3/1/1991 |
| Federal Insurance Company | (91)7929-52-34 | 10/19/1990 | 3/1/1991 |
| Insurance Company of North America | HDO G1 07 54 47-1 | 3/1/1991 | 3/1/1992 |
| Insurance Company of North America | CAO G1 075448-3 | 3/1/1991 | 3/1/1992 |
| Industrial Indemnity | JE9108935 | 3/1/1991 | 3/1/1992 |
| International Insurance Company | 531-204182-1 | 3/1/1991 | 3/1/1992 |
| Federal Insurance Company | (92) 7907 86 17 | 3/1/1991 | 3/1/1992 |
| Insurance Company of North America | HDO G1 549654-A | 3/1/1992 | 3/1/1993 |
| Insurance Company of North America | CAO-G1-549655-1 | 3/1/1992 | 3/1/1993 |
| International Insurance Company | 531-205301-7 | 3/1/1992 | 3/1/1993 |
| California Union Insurance Company | ZCX 02 00 25 | 3/1/1992 | 3/1/1993 |
| Federal Insurance Company | (93) 7907-86-17 | 3/1/1992 | 3/1/1993 |
| Insurance Company of North America | HDO G1 549727-0 | 3/1/1993 | 3/1/1994 |
| Insurance Company of North America | CAO-G1-5497701 | 3/1/1993 | 3/1/1994 |
| Federal Insurance Company | (94) 7907-86-17 | 3/1/1993 | 3/1/1994 |
| Insurance Company of North America | HDO G1 549769-5 | 3/1/1994 | 3/1/1995 |
| Insurance Company of North America | CAO G1 549770-1 | 3/1/1994 | 3/1/1995 |
| Texas Pacific Indemnity Company | (95) 7907-86-17 | 3/1/1994 | 3/1/1995 |
| Indemnity Insurance Company of North America | HDO G1 54 98 13 4 | 3/1/1995 | 3/1/1996 |
| Indemnity Insurance Company of North America | CAO G1 549814 6 | 3/1/1995 | 3/1/1996 |
| Texas Pacific Indemnity Company | (96) 7907-86-17 | 3/1/1995 | 3/1/1996 |
| Texas Pacific Indemnity Company | (97) 7907-86-17 CAS | 3/1/1996 | 3/1/1997 |
| Texas Pacific Indemnity Company | (98) 7907-86-17 CAS | 3/1/1997 | 3/1/1998 |
| Texas Pacific Indemnity Company | (99) 7907-86-17 | 3/1/1998 | 3/1/1999 |
| Texas Pacific Indemnity Company | 7907-86-17 | 3/1/1999 | 3/1/2001 |
| Westchester Fire Insurance Company | HXS-648016 | 3/1/2001 | 3/1/2002 |
| Federal Insurance Company | 7907-86-17 | 3/1/2001 | 3/1/2002 |
| Westchester Fire Insurance Company | MES-676215 | 3/1/2002 | 3/1/2003 |
| Federal Insurance Company | 7907-86-17 DAL | 3/1/2002 | 3/1/2003 |
| Westchester Fire Insurance Company | HXS-648125 | 3/1/2002 | 3/1/2003 |
| Westchester Fire Insurance Company | HXS-744263 | 3/1/2003 | 3/1/2004 |
| Westchester Fire Insurance Company | HXW-776138 | 3/1/2004 | 3/1/2005 |
| Westchester Fire Insurance Company | G24114673001 | 3/1/2010 | 3/1/2011 |
| Westchester Fire Insurance Company | G24114673002 | 3/1/2011 | 3/1/2012 |
| Westchester Fire Insurance Company | G24114673003 | 3/1/2012 | 3/1/2013 |
| Westchester Fire Insurance Company | G24114673004 | 3/1/2013 | 3/1/2014 |

FCRA00575

| Writing Company | Policy No. | Policy Start | Policy End |
|---|---|---|---|
| Westchester Fire Insurance Company | G24114673 005 | 3/1/2014 | 3/1/2015 |
| Westchester Surplus Lines Insurance Company | G71497094001 | 3/1/2019 | 3/1/2020 |

National Policy List: *This schedule identifies the liability insurance policies issued by the Settling Insurers to the Boy Scouts of America (BSA) for which policy contractual documents (in whole or in part) were found by the Settling Insurers. BSA has alleged that additional liability insurance policies were issued to BSA by the Settling Insurers, as reflected in the spreadsheet entitled "BSA National Council Policies_20210127," produced by BSA in the Data Room, Index No. 7.2.6 (bearing production number ABC000109385), and in the Disclosure Statement. That spreadsheet and the documents produced into the data room are incorporated herein by reference as part of this exhibit.*

**Exhibit B**

**Settling Insurers' Local Council Policies**

FCRA00577

**Exhibit B**

## Known and Alleged Local Council Insurance Policies Issued by Century or a Chubb Company, as defined in the Term Sheet

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 25103 | 6/1/1967 | 6/1/1972 | Abraham Lincoln: Abraham Lincoln |
| Insurance Company of North America | SBL 52409 | 2/23/1971 | 2/23/1972 | Alabama-Florida: Alabama-Florida 1963- |
| Insurance Company of North America | SBL 46909 | 3/1/1968 | 3/1/1971 | Allegheny Highlands: Elk Lick 1947-1973 |
| Insurance Company of North America | SBL 46929 | 3/1/1970 | 3/1/1971 | Aloha: Kilauea 1922-1972 |
| Insurance Company of North America | SBL 51410 | 3/1/1971 | 3/1/1972 | Aloha: Kilauea 1922-1972 |
| Insurance Company of North America | SBL 4 69 28 | 3/23/1968 | 3/23/1971 | Aloha: Maui County 1915-2019 |
| Insurance Company of North America | SBL 51515 | 3/23/1971 | 3/23/1972 | Aloha: Maui County 1915-2019 |
| Insurance Company of North America | SBL 41084 | 9/9/1965 | 9/9/1970 | Anthony Wayne Area: Anthony Wayne Area |
| Insurance Company of North America | XBC 116559 | 9/9/1975 | 1/1/1978 | Anthony Wayne Area: Anthony Wayne Area |
| Insurance Company of North America | SBL 46911 | 3/1/1968 | 3/1/1971 | Arbuckle Area: Arbuckle Area |
| Insurance Company of North America | SBL 5 14 15 | 3/1/1971 | 3/1/1972 | Arbuckle Area: Arbuckle Area |
| Insurance Company of North America | AGP 57 03 | 3/19/1966 | 3/19/1969 | Baden-Powell: Susquenango 1925-1998 |
| Insurance Company of North America | GLP 57 99 52 | 1/1/1975 | 5/14/1975 | Baden-Powell: Tioughnioga 1940-1975 |
| Insurance Company of North America | X OT 3 14 17 | 1/1/1975 | 5/14/1975 | Baden-Powell: Tioughnioga 1940-1975 |
| Insurance Company of North America | SBL 4 69 47 | 6/24/1968 | 6/24/1971 | Bay-Lakes: Badger 1926-1973 |
| Insurance Company of North America | SBL 51563 | 6/24/1971 | 6/24/1972 | Bay-Lakes: Badger 1926-1973 |
| Insurance Company of North America | SBL 4 53 79 | 2/10/1966 | 2/10/1967 | Bay-Lakes: Hiawathaland 1945-2012 |
| Insurance Company of North America | SBL-4-15-27 | 2/10/1967 | 2/10/1968 | Bay-Lakes: Hiawathaland 1945-2012 |
| Insurance Company of North America | SBL 4 15 46 | 2/10/1969 | 2/10/1970 | Bay-Lakes: Hiawathaland 1945-2012 |

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 41553 | 2/10/1970 | 2/10/1971 | Bay-Lakes: Hiawathaland 1945-2012 |
| Insurance Company of North America | SBL 4 15 61 | 2/10/1971 | 2/10/1972 | Bay-Lakes: Hiawathaland 1945-2012 |
| Insurance Company of North America | SBL 51311 | 1/1/1970 | 1/1/1973 | Bay-Lakes: Kettle Moraine 1935-1973 |
| Insurance Company of North America | SBL-4-15-29 | 7/1/1967 | 7/1/1968 | Bay-Lakes: Nicolet Area 1934-1973 |
| Insurance Company of North America | SBL 4 15 48 | 7/1/1969 | 7/1/1970 | Bay-Lakes: Nicolet Area 1934-1973 |
| Insurance Company of North America | SBL 4 15 55 | 7/1/1970 | 7/1/1971 | Bay-Lakes: Nicolet Area 1934-1973 |
| Insurance Company of North America | SBL 41567 | 7/1/1971 | 7/1/1972 | Bay-Lakes: Nicolet Area 1934-1973 |
| Insurance Company of North America | SBL 5 13 97 | 2/15/1971 | 2/15/1973 | Bay-Lakes: Valley 1925-1973 |
| Insurance Company of North America | SBL 5 04 23 | 5/25/1968 | 5/25/1971 | Bay-Lakes: Waumegesako 1940-1973 |
| Insurance Company of North America | SBL 5 15 42 | 5/25/1971 | 5/25/1972 | Bay-Lakes: Waumegesako 1940-1973 |
| Insurance Company of North America | SBL 44622 | 10/1/1967 | 10/1/1968 | Black Hills Area: Black Hills Area |
| Insurance Company of North America | SBL 44640 | 10/1/1968 | 10/1/1969 | Black Hills Area: Black Hills Area |
| Insurance Company of North America | SBL 44656 | 10/1/1969 | 10/1/1970 | Black Hills Area: Black Hills Area |
| Insurance Company of North America | SBL 44675 | 10/1/1970 | 10/1/1971 | Black Hills Area: Black Hills Area |
| Insurance Company of North America | GAL 21 17 76 | 10/1/1973 | 10/1/1974 | Black Hills Area: Black Hills Area |
| Insurance Company of North America | SBL 45386 | 6/1/1966 | 6/1/1969 | Black Warrior: Black Warrior |
| Insurance Company of North America | SBL 51185 | 6/1/1969 | 6/1/1972 | Black Warrior: Black Warrior |
| Insurance Company of North America | SBL 25062 | 3/13/1967 | 3/13/1968 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | SBL 48 903 | 3/13/1968 | 3/13/1969 | Blackhawk Area: Blackhawk Area 1971- |

FCRA00579

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 48909 | 3/13/1970 | 3/13/1971 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | GAL 21 08 60 | 3/13/1973 | 3/13/1974 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | GAL 21 10 26 | 3/13/1975 | 3/13/1976 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | XBC 11 31 12 | 3/13/1975 | 3/13/1976 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | GAL 21 10 48 | 3/13/1976 | 3/13/1977 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | GAL 21 09 06 | 3/13/1977 | 1/1/1978 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | LAB 1 72 22 | 4/1/1966 | 4/1/1969 | Blue Ridge Mountains: Piedmont Area 1932-1972 |
| Insurance Company of North America | LAB 2 21 33 | 4/1/1969 | 4/1/1972 | Blue Ridge Mountains: Piedmont Area 1932-1972 |
| Insurance Company of North America | SBL 50425 | 6/11/1968 | 6/11/1971 | Buckeye: Columbiana 1953-1991 |
| Insurance Company of North America | SBL 51560 | 6/11/1971 | 6/11/1972 | Buckeye: Columbiana 1953-1991 |
| Insurance Company of North America | SBL 5 04 29 | 7/23/1968 | 7/23/1971 | Buckskin: Appalachian 1946-1956 |
| Insurance Company of North America | SBL 51578 | 7/23/1971 | 12/4/1971 | Buckskin: Appalachian 1956-1986 |
| Insurance Company of North America | XBC 22636 | 4/10/1966 | 4/10/1969 | Buckskin: Buckskin 1949- |
| Insurance Company of North America | XBC 2 29 75 | 4/10/1969 | 4/10/1972 | Buckskin: Buckskin 1949- |
| Insurance Company of North America | GLP 65 21 69 | 1/1/1977 | 1/1/1978 | Buckskin: Central West Virginia 1941-1990 |
| Insurance Company of North America | SBL 4 32 79 | 5/29/1970 | 5/29/1971 | Buckskin: Chief Cornstalk 1954-1990 |
| Insurance Company of North America | SBL 5 04 05 | 6/1/1968 | 6/1/1971 | Buckskin: Kootaga Area 1933-1991 |
| Insurance Company of North America | SBL 5 15 75 | 6/1/1971 | 6/1/1972 | Buckskin: Kootaga Area 1933-1991 |
| Insurance Company of North America | SBL 4 69 50 | 4/1/1968 | 4/1/1969 | Buckskin: Tri-State Area 1935-2014 |
| Insurance Company of North America | SBL 43267 | 10/1/1968 | 10/1/1971 | Bucktail: Bucktail |

FCRA00580

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 45422 | 7/13/1969 | 7/13/1970 | Buffalo Trail: Buffalo Trail |
| Insurance Company of North America | SBL 51302 | 11/26/1969 | 11/26/1972 | Calcasieu Area: Calcasieu Area |
| Insurance Company of North America | SBL 4 59 02 | 5/17/1968 | 5/17/1971 | California Inland Empire: Arrowhead Area 1933-1972 |
| Insurance Company of North America | SBL 4 53 77 | 1/10/1966 | 1/9/1969 | California Inland Empire: Grayback 1952-1974 |
| Insurance Company of North America | SBL 50438 | 1/10/1969 | 1/10/1972 | California Inland Empire: Grayback 1952-1974 |
| Insurance Company of North America | AGP-2-10-34 | 10/21/1969 | 10/21/1970 | Cape Cod and Islands: Cape Cod 1925-1981 |
| Insurance Company of North America | SBL 5 04 26 | 8/5/1968 | 8/5/1971 | Central Minnesota: Central Minnesota |
| Insurance Company of North America | SBL 45397 | 3/17/1967 | 3/17/1970 | Cherokee Area: Cherokee Area |
| Insurance Company of North America | SBL 51195 | 7/5/1969 | 7/5/1972 | Cherokee Area: Cherokee Area |
| Insurance Company of North America | SBL 53213 | 3/11/1970 | 3/11/1971 | Chester County: Chester County |
| Insurance Company of North America | SBL 5 32 52 | 3/11/1971 | 3/11/1972 | Chester County: Chester County |
| Insurance Company of North America | SBL 5 04 15 | 8/1/1968 | 8/1/1971 | Chickasaw: Chickasaw 1916- |
| Insurance Company of North America | SBL 52766 | 8/1/1971 | 8/1/1972 | Chickasaw: Chickasaw 1916- |
| Insurance Company of North America | SBL 4 69 17 | 3/15/1968 | 3/15/1971 | Choctaw Area: Choctaw Area |
| Insurance Company of North America | SBL 4 54 34 | 7/1/1971 | 7/1/1972 | Circle Ten: Circle Ten 1913- |
| Insurance Company of North America | SBL 5 10 71 | 6/7/1969 | 6/7/1970 | Coastal Carolina: Coastal Carolina |
| Insurance Company of North America | SBL 5 36 40 | 6/7/1971 | 6/7/1972 | Coastal Carolina: Coastal Carolina |
| Insurance Company of North America | SBL 51393 | 7/1/1970 | 7/1/1972 | Coastal Georgia: Okefenokee Area 1926-2014 |

FCRA00581

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 69 37 | 4/15/1968 | 4/15/1971 | Connecticut Rivers: Eastern Connecticut 1929-1972 |
| Insurance Company of North America | SBL 5 14 99 | 4/15/1971 | 4/15/1972 | Connecticut Rivers: Eastern Connecticut 1929-1972 |
| Insurance Company of North America | SBL 5 14 99 | 10/1/1971 | 4/15/1972 | Connecticut Rivers: Indian Trails 1971-1992 |
| Aetna Insurance Company | CG 67 34 60 | 12/15/1982 | 12/15/1983 | Connecticut Rivers: Long Rivers 1972-1995 |
| Insurance Company of North America | SBL 46918 | 3/20/1968 | 3/20/1971 | Connecticut Rivers: Nathan Hale 1967-1972 |
| Insurance Company of North America | SBL 51411 | 3/20/1971 | 3/20/1972 | Connecticut Rivers: Nathan Hale 1967-1972 |
| Insurance Company of North America | SBL 5 04 09 | 5/1/1968 | 5/1/1971 | Connecticut Rivers: Pequot 1935-1971 |
| Insurance Company of North America | SBL 5 15 38 | 5/1/1971 | 10/1/1971 | Connecticut Rivers: Pequot 1935-1971 |
| Insurance Company of North America | SBL 51586 | 6/28/1971 | 6/28/1972 | Connecticut Rivers: Tunxis 1947-1972 |
| Insurance Company of North America | SBL 46908 | 3/5/1968 | 3/5/1971 | Connecticut Yankee: Alfred W. Dater 1939-1972 |
| Insurance Company of North America | SBL 5 13 98 | 3/5/1971 | 3/5/1972 | Connecticut Yankee: Alfred W. Dater 1939-1972 |
| Insurance Company of North America | SBL 5 04 10 | 5/14/1968 | 5/14/1971 | Connecticut Yankee: Central Connecticut 1929-1978 |
| Insurance Company of North America | SBL 51549 | 5/14/1971 | 5/14/1972 | Connecticut Yankee: Central Connecticut 1929-1978 |
| Insurance Company of North America | XBC 11 73 80 | 7/1/1975 | 2/13/1977 | Connecticut Yankee: Central Connecticut 1929-1978 |
| Insurance Company of North America | GLP 63 06 26 | 2/13/1976 | 2/13/1977 | Connecticut Yankee: Central Connecticut 1929-1978 |
| Insurance Company of North America | XBC 11 75 11 | 2/13/1977 | 2/13/1978 | Connecticut Yankee: Central Connecticut 1929-1978 |

FCRA00582

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 5 29 23 | 2/1/1971 | 2/1/1972 | Connecticut Yankee: Quinnipiac 1935-1998 |
| Insurance Company of North America | SBL 28082 | 3/1/1967 | 3/1/1968 | Coronado Area: Coronado Area |
| Insurance Company of North America | SBL 28088 | 3/1/1968 | 3/1/1969 | Coronado Area: Coronado Area |
| Insurance Company of North America | SBL 5 11 88 | 3/1/1969 | 3/1/1970 | Coronado Area: Coronado Area |
| Insurance Company of North America | SBL 5 08 57 | 3/1/1970 | 1/1/1973 | Coronado Area: Coronado Area |
| Insurance Company of North America | SBL 4 41 51 | 2/1/1968 | 2/1/1971 | Cradle of Liberty: Philadelphia 1914-1996 |
| Insurance Company of North America | SBL 5 11 77 | 2/1/1969 | 2/1/1972 | Cradle of Liberty: Philadelphia 1914-1996 |
| Insurance Company of North America | SBL-44-1-85 | 3/14/1968 | 3/14/1969 | Cradle of Liberty: Valley Forge 1936-1996 |
| Insurance Company of North America | XCP 10769 | 6/1/1975 | 6/1/1978 | Crossroads of America: Crossroads of America 1972- |
| Insurance Company of North America | SBL 5 15 56 | 6/1/1971 | 6/1/1972 | Crossroads of America: Delaware County 1924-1972 |
| Insurance Company of North America | SBL-4-67-60 | 6/9/1968 | 6/9/1969 | Crossroads of America: Kikthawenund Area 1935-1972 |
| Insurance Company of North America | SBL 46782 | 6/9/1970 | 6/9/1971 | Crossroads of America: Kikthawenund Area 1935-1972 |
| Insurance Company of North America | SBL 46772 | 4/11/1969 | 4/11/1971 | Crossroads of America: Wabash Valley 1931-2002 |
| Insurance Company of North America | SBL 46798 | 4/11/1971 | 4/11/1972 | Crossroads of America: Wabash Valley 1931-2002 |
| Insurance Company of North America | ALB 54057 | 4/11/1972 | 4/11/1973 | Crossroads of America: Wabash Valley 1931-2002 |
| Insurance Company of North America | GLP 42 18 47 | 4/11/1973 | 4/11/1974 | Crossroads of America: Wabash Valley 1931-2002 |

FCRA00583

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | GLP 59 24 34 | 4/11/1975 | 12/2/1975 | Crossroads of America: Wabash Valley 1931-2002 |
| Insurance Company of North America | GLP 59 24 34 | 12/2/1975 | 4/11/1976 | Crossroads of America: Wabash Valley 1931-2002 |
| Insurance Company of North America | SBL 4 67 34 | 6/1/1967 | 6/1/1968 | Crossroads of America: Whitewater Valley 1935-1972 |
| Insurance Company of North America | SBL-4-67-59 | 6/1/1968 | 6/1/1969 | Crossroads of America: Whitewater Valley 1935-1972 |
| Insurance Company of North America | SBL 46781 | 6/1/1970 | 6/1/1971 | Crossroads of America: Whitewater Valley 1935-1972 |
| Insurance Company of North America | SBL 51307 | 1/1/1970 | 1/1/1973 | Crossroads of the West: Cache Valley Area 1924-1993 |
| Insurance Company of North America | SBL 5 15 47 | 5/1/1971 | 5/1/1972 | Crossroads of the West: Jim Bridger 1946-1993 |
| Insurance Company of North America | SBL 5 04 27 | 7/11/1968 | 7/11/1971 | Crossroads of the West: Utah National Parks -2020 |
| Insurance Company of North America | SBL 4 53 74 | 1/1/1966 | 1/1/1969 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | AGP 54W935 | 12/15/1972 | 12/15/1976 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | XBC 86865 | 12/15/1972 | 12/15/1973 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | XBC 11 37 84 | 12/15/1974 | 12/15/1975 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | AGP D0 00 83 93 8 | 12/1/1976 | 12/1/1978 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | XBC 14 35 33 | 12/15/1976 | 12/15/1977 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | SBL 46921 | 3/5/1968 | 3/5/1971 | Denver Area: Western Colorado 1942-2019 |
| Insurance Company of North America | SBL 51399 | 3/5/1971 | 3/5/1972 | Denver Area: Western Colorado 1942-2019 |
| Insurance Company of North America | SBL 22920 | 7/1/1968 | 7/1/1971 | Dissolved: George Washington 1937-1999 |

FCRA00584

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 50402 | 6/10/1968 | 6/10/1971 | Dissolved: Middlesex 1929-1969 |
| Insurance Company of North America | SBL 5 15 27 | 6/10/1971 | 6/10/1972 | Dissolved: Middlesex 1929-1969 |
| Insurance Company of North America | SBL 50402 | 6/10/1968 | 6/10/1971 | Dissolved: Raritan 1927-1969 |
| Insurance Company of North America | SBL 50402 | 6/10/1968 | 6/10/1971 | Dissolved: Thomas A. Edison 1969-1999 |
| Insurance Company of North America | SBL 5 15 27 | 6/10/1971 | 6/10/1972 | Dissolved: Thomas A. Edison 1969-1999 |
| Insurance Company of North America | SBL 4 53 75 | 2/1/1966 | 2/1/1969 | Evangeline Area: Evangeline Area |
| Insurance Company of North America | AGP 15 39 33 | 4/19/1976 | 4/19/1977 | Five Rivers: Steuben Area 1931-1991 |
| Insurance Company of North America | SBL 48843 | 7/6/1971 | 7/5/1972 | Flint River: Flint River |
| Insurance Company of North America | SBL 50421 | 11/29/1968 | 11/29/1971 | French Creek: Custaloga 1969-1972 |
| Insurance Company of North America | SBL 50421 | 11/29/1968 | 11/29/1971 | French Creek: Mercer County 1927-1969 |
| Insurance Company of North America | SBL-4-32-87 | 6/25/1969 | 1/15/1970 | French Creek: Washington Trail 1944-1972 |
| Insurance Company of North America | SBL 4 32 98 | 1/15/1970 | 1/15/1972 | French Creek: Washington Trail 1944-1972 |
| Insurance Company of North America | SBL-4-46-14 | 6/1/1967 | 6/1/1968 | Gamehaven: Gamehaven |
| Insurance Company of North America | SBL-4-46-35 | 6/1/1968 | 6/1/1969 | Gamehaven: Gamehaven |
| Insurance Company of North America | SBL 4 46 49 | 6/1/1969 | 6/1/1970 | Gamehaven: Gamehaven |
| Insurance Company of North America | SBL 44671 | 6/1/1970 | 6/1/1971 | Gamehaven: Gamehaven |
| Insurance Company of North America | SBL 44689 | 6/1/1971 | 6/1/1972 | Gamehaven: Gamehaven |
| Insurance Company of North America | SBL 4 69 40 | 4/1/1968 | 4/1/1971 | Garden State: Southern New Jersey 1967-1990 |
| Insurance Company of North America | SBL 5 15 14 | 4/1/1971 | 4/1/1972 | Garden State: Southern New Jersey 1967-1990 |
| Insurance Company of North America | SBL 4 88 14 | 5/30/1968 | 5/30/1969 | Georgia-Carolina: Georgia-Carolina |

**FCRA00585**

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 15 49 | 7/10/1969 | 7/10/1970 | Glacier's Edge: Four Lakes 1928-2005 |
| Insurance Company of North America | SBL 4 15 56 | 7/10/1970 | 7/10/1971 | Glacier's Edge: Four Lakes 1928-2005 |
| Insurance Company of North America | SBL 45383 | 4/28/1966 | 4/28/1969 | Glacier's Edge: Sinnissippi 1966-2005 |
| Insurance Company of North America | SBL 50448 | 4/28/1969 | 4/28/1972 | Glacier's Edge: Sinnissippi 1966-2005 |
| Insurance Company of North America | SBL 5 11 80 | 3/2/1969 | 3/1/1972 | Golden Gate Area: Alameda -2020 |
| Insurance Company of North America | SBL 4 69 32 | 4/28/1968 | 4/28/1971 | Golden Gate Area: Silverado Area 1928-1992 |
| Insurance Company of North America | SBL 4 69 31 | 4/1/1968 | 4/1/1971 | Grand Canyon: Grand Canyon 1944-1993 |
| Insurance Company of North America | SBL 5 15 52 | 5/7/1971 | 5/7/1972 | Grand Columbia: Fort Simcoe Area 1954-1992 |
| Insurance Company of North America | SBL 4 69 48 | 6/1/1968 | 6/1/1971 | Grand Teton: Tendoy Area 1934-1993 |
| Insurance Company of North America | SBL 51558 | 6/1/1971 | 6/1/1972 | Grand Teton: Tendoy Area 1934-1993 |
| Insurance Company of North America | SBL 50432 | 12/1/1968 | 12/1/1971 | Grand Teton: Teton Peaks 1925-1993 |
| Insurance Company of North America | SBL 5 13 03 | 11/26/1969 | 1/1/1970 | Great Rivers: Great Rivers 1951- |
| Insurance Company of North America | SBL 4 69 16 | 3/11/1968 | 3/11/1971 | Great Trail: Mahoning Valley 1927-1993 |
| Insurance Company of North America | SBL 2 42 03 | 8/4/1969 | 8/4/1970 | Greater Alabama: Birmingham Area 1915-1996 |
| Insurance Company of North America | SBL 4 88 22 | 3/25/1969 | 3/25/1972 | Greater Alabama: Tennessee Valley 1934-1998 |
| Insurance Company of North America | SBL 45390 | 7/1/1966 | 4/1/1969 | Greater St. Louis Area: Cahokia Mound 1925-1991 |
| Insurance Company of North America | SBL 4 69 33 | 4/1/1968 | 4/1/1971 | Greater St. Louis Area: Okaw Valley 1965-2017 |
| Insurance Company of North America | SBL 5 15 16 | 4/1/1971 | 4/1/1972 | Greater St. Louis Area: Okaw Valley 1965-2017 |
| INA Insurance Company of Illinois | GLP 770115 | 1/1/1975 | 10/1/1975 | Greater St. Louis Area: Okaw Valley 1965-2017 |

FCRA00586

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | XBC 118599 | 1/1/1975 | 1/1/1976 | Greater St. Louis Area: Okaw Valley 1965-2017 |
| Insurance Company of North America | GLP 43 02 89 | 4/1/1975 | 4/1/1976 | Greater St. Louis Area: Saint Louis 1911-1995 |
| Insurance Company of North America | SBL 51306 | 1/1/1970 | 1/1/1973 | Greater St. Louis Area: Southeast Missouri 1930-1993 |
| Insurance Company of North America | SBL 5 11 90 | 6/1/1969 | 6/1/1972 | Greater Tampa Bay Area: Pinellas Area 1970-1978 |
| Insurance Company of North America | SBL 4 69 22 | 3/1/1968 | 3/1/1971 | Greater Wyoming: Central Wyoming 1918-2016 |
| Insurance Company of North America | SBL 5 15 17 | 3/1/1971 | 3/1/1972 | Greater Wyoming: Central Wyoming 1918-2016 |
| Insurance Company of North America | SBL 50441 | 1/25/1969 | 1/25/1972 | Greater Yosemite: Yosemite Area 1922-1998 |
| Insurance Company of North America | GLP 42 40 26 | 6/18/1974 | 9/11/1974 | Heart of America: Kansas City Area 1925-1974 |
| Insurance Company of North America | GLP 461031 | 5/27/1973 | 5/27/1976 | Heart of Virginia: Robert E. Lee 1953-2003 |
| Insurance Company of North America | GLP 64 71 57 | 5/27/1976 | 5/27/1977 | Heart of Virginia: Robert E. Lee 1953-2003 |
| Insurance Company of North America | SBL-4-67-26 | 2/27/1967 | 2/27/1968 | Hoosier Trails: White River Area 1927-1973 |
| Insurance Company of North America | SBL 46763 | 2/27/1969 | 2/27/1971 | Hoosier Trails: White River Area 1927-1973 |
| Insurance Company of North America | SBL 4 67 96 | 2/27/1971 | 2/27/1972 | Hoosier Trails: White River Area 1927-1973 |
| Insurance Company of North America | SBL 4 69 43 | 5/1/1968 | 5/1/1971 | Housatonic: Housatonic |
| Insurance Company of North America | SBL 51537 | 5/1/1971 | 5/1/1972 | Housatonic: Housatonic |
| Insurance Company of North America | GAL-40332 | 3/24/1968 | 3/24/1969 | Hudson Valley: Dutchess County 1919-1996 |
| Insurance Company of North America | GAL-8-46-50 | 3/24/1969 | 3/24/1970 | Hudson Valley: Dutchess County 1919-1996 |

FCRA00587

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | Unknown | 6/27/1973 | 1/1/1975 | Hudson Valley: Hudson-Delaware 1958-1996 |
| Insurance Company of North America | SBL 4 78 99 | 6/1/1967 | 5/31/1968 | Illowa: Illowa 1967- |
| Insurance Company of North America | SBL 52104 | 6/1/1969 | 6/1/1970 | Illowa: Illowa 1967- |
| Insurance Company of North America | SBL 52123 | 6/1/1970 | 6/1/1971 | Illowa: Illowa 1967- |
| Insurance Company of North America | GAL 12 73 95 | 6/1/1972 | 12/1/1972 | Illowa: Illowa 1967- |
| Insurance Company of North America | GAL 12 73 95 | 12/1/1972 | 6/1/1973 | Illowa: Illowa 1967- |
| Insurance Company of North America | XBC 10 19 73 | 12/1/1972 | 6/1/1973 | Illowa: Illowa 1967- |
| Insurance Company of North America | GAL 21 38 79 | 6/1/1973 | 6/1/1974 | Illowa: Illowa 1967- |
| Insurance Company of North America | XBC 10 21 77 | 6/1/1974 | 6/1/1975 | Illowa: Illowa 1967- |
| Insurance Company of North America | GAL 32 96 17 | 6/1/1975 | 6/1/1976 | Illowa: Illowa 1967- |
| Insurance Company of North America | GAL 34 36 68 | 6/1/1976 | 6/1/1977 | Illowa: Illowa 1967- |
| Insurance Company of North America | SBL 4 69 13 | 3/25/1968 | 3/25/1971 | Illowa: Prairie 1941-1993 |
| Insurance Company of North America | SBL 5 14 95 | 3/25/1971 | 3/25/1972 | Illowa: Prairie 1941-1993 |
| Insurance Company of North America | SBL-2-50-18 | 3/1/1966 | 3/1/1968 | Illowa: Sac-Fox 1959-1967 |
| Insurance Company of North America | SBL 50408 | 6/21/1968 | 6/21/1971 | Inland Northwest: Idaho Panhandle 1928-1992 |
| Insurance Company of North America | SBL 51572 | 6/21/1971 | 6/21/1972 | Inland Northwest: Idaho Panhandle 1928-1992 |
| Insurance Company of North America | XBC-24884 | 3/14/1968 | 3/14/1971 | Inland Northwest: Inland Empire 1931-1987 |
| Insurance Company of North America | XBC 8 89 86 | 6/10/1972 | 5/29/1973 | Inland Northwest: Inland Empire 1931-1987 |
| Insurance Company of North America | XBC 81983 | 11/1/1973 | 1/1/1976 | Iroquois Trail: Genesee 1925-1994 |

FCRA00588

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL-2-80-83 | 11/1/1967 | 11/1/1968 | Jayhawk Area: Jayhawk Area |
| Insurance Company of North America | SBL 28094 | 11/1/1968 | 11/1/1969 | Jayhawk Area: Jayhawk Area |
| Insurance Company of North America | SBL 50855 | 11/1/1969 | 11/1/1970 | Jayhawk Area: Jayhawk Area |
| Insurance Company of North America | SBL 50861 | 11/1/1970 | 11/1/1971 | Jayhawk Area: Jayhawk Area |
| Insurance Company of North America | SBL 50088 | 5/6/1971 | 5/6/1972 | Jersey Shore: Atlantic Area 1926-1992 |
| Insurance Company of North America | SBL 50087 | 5/11/1971 | 5/11/1972 | Jersey Shore: Ocean County 1940-1993 |
| Insurance Company of North America | SBL 5 04 14 | 7/15/1968 | 7/15/1971 | La Salle: Pioneer Trails 1935-1972 |
| Insurance Company of North America | SBL-4-67-66 | 12/29/1968 | 12/29/1969 | La Salle: Pioneer Trails 1935-1972 |
| Insurance Company of North America | SBL-4-67-50 | 2/26/1968 | 2/26/1969 | La Salle: Pottawattomie 1926-1972 |
| Insurance Company of North America | SBL 50451 | 2/26/1969 | 2/26/1972 | La Salle: Pottawattomie 1926-1972 |
| Insurance Company of North America | SBL 51942 | 6/28/1970 | 6/28/1973 | Lake Erie: Greater Cleveland -2017 |
| Insurance Company of North America | SBL-4-64-74 | 1/22/1968 | 1/22/1969 | Lake Erie: Johnny Appleseed Area 1926-1994 |
| Insurance Company of North America | SBL-5-19-01 | 1/22/1969 | 1/22/1970 | Lake Erie: Johnny Appleseed Area 1926-1994 |
| Insurance Company of North America | SBL 5 19 33 | 1/22/1970 | 1/22/1971 | Lake Erie: Johnny Appleseed Area 1926-1994 |
| Insurance Company of North America | SBL 5 19 58 | 1/22/1971 | 1/22/1972 | Lake Erie: Johnny Appleseed Area 1926-1994 |
| Insurance Company of North America | XUA 37 25 | 1/22/1971 | 1/22/1972 | Lake Erie: Johnny Appleseed Area 1926-1994 |
| Insurance Company of North America | SBL 51318 | 2/17/1970 | 2/17/1973 | Las Vegas Area: Boulder Dam Area 1944-2005 |
| Insurance Company of North America | SBL 43224 | 7/1/1967 | 1/1/1968 | Laurel Highlands: Allegheny 1921-1967 |

FCRA00589

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 32 55 | 1/1/1968 | 1/1/1969 | Laurel Highlands: Allegheny Trails 1967-1993 |
| Insurance Company of North America | SBL 43295 | 1/1/1970 | 1/1/1971 | Laurel Highlands: Allegheny Trails 1967-1993 |
| Insurance Company of North America | SBL 52313 | 1/1/1971 | 1/1/1972 | Laurel Highlands: Allegheny Trails 1967-1993 |
| Insurance Company of North America | GAL120157 | 1/1/1972 | 1/1/1973 | Laurel Highlands: Allegheny Trails 1967-1993 |
| Insurance Company of North America | GLP 40 87 78 | 1/1/1973 | 5/31/1973 | Laurel Highlands: Allegheny Trails 1967-1993 |
| Insurance Company of North America | SBL 4 69 20 | 3/1/1968 | 3/1/1971 | Laurel Highlands: Blair-Bedford 1929-1970 |
| Insurance Company of North America | SBL 51496 | 3/1/1971 | 3/1/1972 | Laurel Highlands: Blair-Bedford 1929-1970 |
| Insurance Company of North America | SBL 4 32 56 | 1/1/1968 | 1/1/1969 | Laurel Highlands: East Boroughs 1921-1973 |
| Insurance Company of North America | SBL 4 32 78 | 1/1/1969 | 1/1/1970 | Laurel Highlands: East Boroughs 1921-1973 |
| Insurance Company of North America | GAL 12 01 58 | 1/1/1972 | 1/1/1973 | Laurel Highlands: East Boroughs 1921-1973 |
| Insurance Company of North America | GLP 408779 | 1/1/1973 | 1/1/1974 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | XBC 8 63 64 | 1/1/1973 | 1/1/1974 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | GAL 20 60 95 | 1/1/1974 | 1/1/1975 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | XBC 110662 | 1/1/1974 | 1/1/1975 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | GAL 20 63 77 | 1/1/1975 | 1/1/1976 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | GAL 32 85 17 | 1/1/1976 | 1/1/1977 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | GAL 33 71 19 | 1/1/1977 | 1/1/1978 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | SBL-4-32-57 | 1/1/1968 | 1/1/1969 | Laurel Highlands: Monongahela Valley 1952-1971 |

FCRA00590

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | GAL 12 01 59 | 1/1/1972 | 1/1/1973 | Laurel Highlands: Mon-Yough 1971-1973 |
| Insurance Company of North America | SBL 45382 | 4/1/1966 | 6/15/1967 | Laurel Highlands: Nemacolin Trails 1964-1967 |
| Insurance Company of North America | SBL 5 15 22 | 2/16/1971 | 2/16/1972 | Laurel Highlands: Penn's Woods 1970-1992 |
| Insurance Company of North America | SBL 44476 | 3/1/1968 | 3/1/1969 | Lincoln Heritage: Audubon 1952-1994 |
| Insurance Company of North America | SBL 5 11 78 | 3/1/1969 | 3/1/1972 | Lincoln Heritage: Audubon 1952-1994 |
| Insurance Company of North America | SBL 44478 | 5/7/1968 | 5/7/1971 | Lincoln Heritage: Four Rivers 1940-1994 |
| Insurance Company of North America | SBL 5 04 28 | 11/19/1968 | 11/19/1971 | Lincoln Heritage: George Rogers Clark Area 1927-1993 |
| Insurance Company of North America | SBL 46936 | 4/1/1968 | 4/1/1971 | Long Beach Area: Long Beach Area |
| Insurance Company of North America | SBL 51508 | 4/1/1971 | 4/1/1972 | Long Beach Area: Long Beach Area |
| Insurance Company of North America | SBL 52108 | 11/12/1969 | 11/12/1970 | Longs Peak: Wyo-Braska 1936-1975 |
| Insurance Company of North America | SBL 52126 | 11/12/1970 | 11/12/1971 | Longs Peak: Wyo-Braska 1936-1975 |
| Insurance Company of North America | SBL 46901 | 1/14/1968 | 1/14/1971 | Los Padres: Santa Lucia Area 1939-1994 |
| Insurance Company of North America | SBL 5 13 94 | 1/14/1971 | 1/14/1973 | Los Padres: Santa Lucia Area 1939-1994 |
| Insurance Company of North America | SBL 3 12 49 | 4/27/1966 | 4/27/1972 | Louisiana Purchase: Ouachita Valley 1925-2003 |
| Insurance Company of North America | SBL 51181 | 4/10/1969 | 4/10/1972 | Marin: Marin |
| Insurance Company of North America | SBL 51194 | 7/1/1969 | 10/30/1969 | Mayflower: Squanto 1936-1969 |
| Insurance Company of North America | SBL 46919 | 3/29/1968 | 3/29/1971 | Michigan Crossroads: Blue Water 1939-2012 |
| Insurance Company of North America | SBL 51414 | 3/29/1971 | 3/29/1972 | Michigan Crossroads: Blue Water 1939-2012 |

FCRA00591

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 52003 | 5/1/1969 | 5/1/1970 | Michigan Crossroads: Chief Okemos 1932-2012 |
| Insurance Company of North America | SBL 52042 | 5/1/1970 | 5/1/1971 | Michigan Crossroads: Chief Okemos 1932-2012 |
| Insurance Company of North America | XPL 17689 | 5/1/1970 | 5/1/1971 | Michigan Crossroads: Chief Okemos 1932-2012 |
| Insurance Company of North America | SBL 52066 | 5/1/1971 | 5/1/1972 | Michigan Crossroads: Chief Okemos 1932-2012 |
| Insurance Company of North America | XPL 17748 | 5/1/1971 | 6/1/1972 | Michigan Crossroads: Chief Okemos 1932-2012 |
| Insurance Company of North America | SBL 4 24 72 | 6/1/1965 | 6/1/1968 | Michigan Crossroads: Clinton Valley 1937-2009 |
| Insurance Company of North America | SBL 52072 | 6/1/1971 | 6/1/1972 | Michigan Crossroads: Clinton Valley 1937-2009 |
| Insurance Company of North America | SBL-4-76-71 | 2/13/1967 | 2/13/1968 | Michigan Crossroads: Detroit Area -2009 |
| Insurance Company of North America | SBL 4 77 22 | 2/13/1968 | 2/13/1969 | Michigan Crossroads: Detroit Area -2009 |
| Insurance Company of North America | SBL 4 77 56 | 2/13/1969 | 2/13/1971 | Michigan Crossroads: Detroit Area -2009 |
| Insurance Company of North America | SBL 52065 | 2/13/1971 | 2/13/1972 | Michigan Crossroads: Detroit Area -2009 |
| Insurance Company of North America | SBL-4-24-73 | 5/20/1965 | 5/20/1968 | Michigan Crossroads: Grand Valley 1936-1975 |
| Insurance Company of North America | SBL-5-20-37 | 5/20/1970 | 5/20/1972 | Michigan Crossroads: Grand Valley 1936-1975 |
| Insurance Company of North America | GLP 43 22 35 | 1/1/1975 | 6/2/1975 | Michigan Crossroads: Grand Valley 1936-1975 |
| Insurance Company of North America | XBC 123702 | 1/1/1975 | 6/2/1975 | Michigan Crossroads: Grand Valley 1936-1975 |
| Insurance Company of North America | SBL 4 29 76 | 4/24/1965 | 4/24/1968 | Michigan Crossroads: Land O' Lakes 1937-1993 |

FCRA00592

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 69 30 | 4/24/1968 | 4/24/1971 | Michigan Crossroads: Land O' Lakes 1937-1993 |
| Insurance Company of North America | SBL 5 15 06 | 4/24/1971 | 4/23/1972 | Michigan Crossroads: Land O' Lakes 1937-1993 |
| Insurance Company of North America | SBL 52038 | 6/4/1970 | 6/3/1972 | Michigan Crossroads: Scenic Trails 1939-2012 |
| Insurance Company of North America | OBP 12 56 44 | 10/29/1972 | 1/1/1973 | Michigan Crossroads: Southwestern Michigan 1941-1973 |
| Insurance Company of North America | SBL 52007 | 6/12/1969 | 6/12/1970 | Michigan Crossroads: Tall Pine 1937-2012 |
| Insurance Company of North America | SBL 52046 | 6/12/1970 | 6/12/1971 | Michigan Crossroads: Tall Pine 1937-2012 |
| Insurance Company of North America | SBL 52012 | 7/27/1969 | 7/27/1970 | Michigan Crossroads: Timber Trails 1944-1975 |
| Insurance Company of North America | SBL 51315 | 3/1/1970 | 3/1/1972 | Michigan Crossroads: Wolverine 1925-1973 |
| Insurance Company of North America | SBL 52139 | 3/23/1971 | 3/23/1972 | Mid-America: Prairie Gold Area 1942-2000 |
| Insurance Company of North America | SBL 4 78 67 | 3/23/1967 | 3/22/1968 | Mid-America: Sergeant Floyd Area 1939-1972 |
| Insurance Company of North America | SBL 4 79 20 | 3/23/1968 | 3/23/1969 | Mid-America: Sergeant Floyd Area 1939-1972 |
| Insurance Company of North America | SBL 4 79 54 | 3/23/1969 | 3/23/1970 | Mid-America: Sergeant Floyd Area 1939-1972 |
| Insurance Company of North America | SBL 52117 | 3/23/1970 | 3/23/1971 | Mid-America: Sergeant Floyd Area 1939-1972 |
| Insurance Company of North America | SBL 52139 | 3/23/1971 | 3/23/1972 | Mid-America: Sergeant Floyd Area 1939-1972 |
| Insurance Company of North America | SBL 5 04 06 | 4/1/1968 | 4/1/1971 | Middle Tennessee: Middle Tennessee |
| Insurance Company of North America | SBL 4 53 76 | 1/24/1966 | 1/24/1969 | Mid-Iowa: Southern Iowa Area 1929-1970 |
| Insurance Company of North America | SBL 5 04 33 | 1/24/1969 | 5/1/1970 | Mid-Iowa: Southern Iowa Area 1929-1970 |
| Insurance Company of North America | SBL 4 85 34 | 5/1/1969 | 5/9/1969 | Minsi Trails: Lehigh County 1930-1969 |
| Insurance Company of North America | SBL-48567 | 1/1/1970 | 1/1/1973 | Minsi Trails: Minsi Trails 1968- |

FCRA00593

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | GLP 40 72 24 | 1/1/1973 | 1/1/1976 | Minsi Trails: Minsi Trails 1968- |
| Insurance Company of North America | SBL 5 04 24 | 6/20/1968 | 6/20/1971 | Mississippi Valley: Saukee Area 1935-1993 |
| Insurance Company of North America | SBL 5 15 61 | 6/20/1971 | 6/20/1972 | Mississippi Valley: Saukee Area 1935-1993 |
| Insurance Company of North America | SBL 4 69 46 | 6/1/1968 | 6/1/1971 | Mississippi Valley: Southeast Iowa 1929-1993 |
| Insurance Company of North America | SBL 5 15 59 | 6/1/1971 | 6/1/1972 | Mississippi Valley: Southeast Iowa 1929-1993 |
| Insurance Company of North America | SBL 51408 | 2/1/1971 | 2/1/1972 | Mobile Area: Mobile Area |
| Insurance Company of North America | SBL 46903 | 2/1/1968 | 2/1/1971 | Monmouth: Monmouth |
| Insurance Company of North America | SBL 51395 | 2/1/1971 | 2/1/1972 | Monmouth: Monmouth |
| Insurance Company of North America | GAL 11 68 75 | 2/1/1972 | 1/31/1973 | Montana: Western Montana 1924-1973 |
| Insurance Company of North America | SBL 50411 | 3/31/1968 | 3/31/1971 | Mountain West: Ore-Ida 1933-2020 |
| Insurance Company of North America | XBC 11 46 94 | 2/15/1974 | 2/1/1975 | Mountain West: Ore-Ida 1933-2020 |
| Insurance Company of North America | XBC 11 48 44 | 2/1/1975 | 2/1/1976 | Mountain West: Ore-Ida 1933-2020 |
| Insurance Company of North America | SBL 51184 | 6/4/1969 | 6/3/1972 | Mountaineer Area: Mountaineer Area |
| Insurance Company of North America | SBL-4-44-79 | 6/26/1968 | 6/26/1971 | Muskingum Valley: Muskingum Valley 1956- |
| Insurance Company of North America | SBL 25204 | 6/26/1971 | 2/1/1973 | Muskingum Valley: Muskingum Valley 1956- |
| Insurance Company of North America | SBL 5 13 14 | 3/1/1970 | 1/1/1973 | Narragansett: Annawon 1930-2016 |
| Insurance Company of North America | SBL 50614 | 11/1/1968 | 11/1/1971 | Narragansett: Cachalot 1935-1971 |
| Aetna Insurance Company | CPP 42 58 80 | 4/1/1982 | 4/1/1983 | National Capital Area: National Capital Area 1911- |
| Insurance Company of North America | ALB-4-84-03 | 10/20/1967 | 10/20/1970 | New Birth of Freedom: Keystone Area 1948-2010 |

FCRA00594

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 45384 | 4/8/1966 | 4/8/1969 | North Florida: North Florida |
| Insurance Company of North America | SBL 50444 | 4/8/1969 | 4/7/1972 | North Florida: North Florida |
| Insurance Company of North America | SBL-2-50-54 | 2/25/1967 | 2/25/1968 | Northeast Illinois: Evanston 1916-1969 |
| Insurance Company of North America | SBL-2-51-38 | 2/25/1968 | 6/12/1969 | Northeast Illinois: Evanston 1916-1969 |
| Insurance Company of North America | SBL 51814 | 6/12/1969 | 6/25/1970 | Northeast Illinois: Evanston-North Shore Area 1969-1971 |
| Insurance Company of North America | SBL 51833 | 6/25/1970 | 6/25/1971 | Northeast Illinois: Evanston-North Shore Area 1969-1971 |
| Insurance Company of North America | GAL 28017 | 6/25/1972 | 12/1/1972 | Northeast Illinois: Northeast Illinois 1971- |
| Insurance Company of North America | SBL 25 10 2 | 6/21/1967 | 6/21/1968 | Northeast Illinois: Oak Plain 1940-1971 |
| Insurance Company of North America | SBL 25 15 1 | 6/21/1968 | 6/21/1969 | Northeast Illinois: Oak Plain 1940-1971 |
| Insurance Company of North America | SBL 51808 | 6/21/1969 | 12/20/1972 | Northeast Illinois: Oak Plain 1940-1971 |
| Insurance Company of North America | SBL 4 69 34 | 4/1/1968 | 4/1/1970 | Northeastern Pennsylvania: Anthracite 1927-1970 |
| Insurance Company of North America | SBL 53071 | 3/30/1971 | 3/30/1974 | Northeastern Pennsylvania: Forest Lakes 1962-1990 |
| Insurance Company of North America | GLP 66 36 60 | 3/30/1977 | 1/1/1978 | Northeastern Pennsylvania: Forest Lakes 1962-1990 |
| Insurance Company of North America | SBL 51392 | 4/1/1970 | 4/1/1973 | Northeastern Pennsylvania: Penn Mountains 1970-1990 |
| Insurance Company of North America | SBL 4 53 72 | 1/1/1966 | 1/1/1969 | Northeastern Pennsylvania: Wyoming Valley 1925-1969 |
| Insurance Company of North America | SBL 50434 | 1/1/1969 | 4/1/1970 | Northeastern Pennsylvania: Wyoming Valley 1925-1969 |

FCRA00595

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL-4-46-37 | 7/1/1968 | 7/1/1969 | Northern Lights: Lake Agassiz 1933-1974 |
| Insurance Company of North America | SBL 4 46 52 | 7/1/1969 | 7/1/1970 | Northern Lights: Lake Agassiz 1933-1974 |
| Insurance Company of North America | SBL 4 46 90 | 7/1/1971 | 7/1/1972 | Northern Lights: Lake Agassiz 1933-1974 |
| Insurance Company of North America | GAL 13 57 61 | 7/1/1972 | 11/10/1972 | Northern Lights: Lake Agassiz 1933-1974 |
| Insurance Company of North America | SBL 4 46 78 | 1/17/1971 | 1/17/1972 | Northern Lights: Missouri Valley 1929-1974 |
| Insurance Company of North America | XBC 132519 | 1/1/1975 | 1/1/1976 | Northern Lights: Northern Lights 1974- |
| Insurance Company of North America | SBL-4-46-39 | 8/16/1968 | 8/16/1969 | Northern Lights: Red River Valley 1925-1974 |
| Insurance Company of North America | SBL 4 46 50 | 8/16/1969 | 8/16/1970 | Northern Lights: Red River Valley 1925-1974 |
| Insurance Company of North America | SBL 4 46 74 | 8/16/1970 | 8/16/1971 | Northern Lights: Red River Valley 1925-1974 |
| Insurance Company of North America | SBL 44688 | 8/16/1971 | 8/16/1972 | Northern Lights: Red River Valley 1925-1974 |
| Insurance Company of North America | SBL 45385 | 4/25/1966 | 4/25/1969 | Northern New Jersey: Aheka 1939-1972 |
| Insurance Company of North America | SBL 51182 | 4/25/1969 | 4/24/1972 | Northern New Jersey: Aheka 1939-1972 |
| Insurance Company of North America | SBL 4 69 45 | 4/1/1968 | 4/1/1971 | Northern New Jersey: Alexander Hamilton 1936-1968 |
| Insurance Company of North America | SBL 4 69 39 | 5/11/1968 | 5/11/1971 | Northern New Jersey: Alhtaha 1942-1972 |
| Insurance Company of North America | SBL 50420 | 11/1/1968 | 11/1/1971 | Northern New Jersey: Bayonne 1918-1993 |
| Insurance Company of North America | SBL 4 69 51 | 5/13/1968 | 5/13/1969 | Northern New Jersey: Hudson 1936-1968 |
| Insurance Company of North America | SBL 4 69 45 | 4/1/1968 | 4/1/1971 | Northern New Jersey: Hudson-Hamilton 1968-1993 |
| Insurance Company of North America | SBL 4 53 81 | 3/23/1966 | 3/23/1969 | Northern New Jersey: North Bergen County 1921-1969 |

FCRA00596

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 5 11 79 | 3/23/1969 | 3/23/1972 | Northern New Jersey: North Bergen County 1921-1969 |
| Insurance Company of North America | SBL 50403 | 6/14/1968 | 6/14/1971 | Northern New Jersey: Ridgewood and Glen Rock 1922-1997 |
| Insurance Company of North America | SBL 5 15 57 | 6/14/1971 | 6/14/1972 | Northern New Jersey: Ridgewood and Glen Rock 1922-1997 |
| Insurance Company of North America | SBL 4 69 44 | 5/13/1968 | 5/13/1971 | Northern New Jersey: Robert Treat 1933-1976 |
| Insurance Company of North America | SBL 5 15 44 | 5/13/1971 | 5/13/1972 | Northern New Jersey: Robert Treat 1933-1976 |
| Insurance Company of North America | SBL 45388 | 6/1/1966 | 6/1/1969 | Northern New Jersey: Tamarack 1935-1986 |
| Insurance Company of North America | SBL 5 11 86 | 6/1/1969 | 6/1/1972 | Northern New Jersey: Tamarack 1935-1986 |
| Insurance Company of North America | SBL 4 46 38 | 6/18/1968 | 6/18/1969 | Northern Star: Viking 1951-2005 |
| Insurance Company of North America | SBL 4 46 48 | 6/18/1969 | 6/18/1970 | Northern Star: Viking 1951-2005 |
| Insurance Company of North America | SBL 44669 | 6/18/1970 | 6/18/1971 | Northern Star: Viking 1951-2005 |
| Insurance Company of North America | SBL 4 88 35 | 7/29/1970 | 7/29/1971 | Northwest Georgia: Northwest Georgia |
| Insurance Company of North America | AGP D0 05 09 68 1 | 4/19/1977 | 1/9/1978 | Ohio River Valley: Fort Steuben Area 1929-1991 |
| Insurance Company of North America | SBL 43259 | 6/15/1968 | 6/15/1972 | Ohio River Valley: National Trail 1966-1991 |
| Insurance Company of North America | SBL 51056 | 6/9/1969 | 6/9/1970 | Old North State: Cherokee 1923-1994 |
| Insurance Company of North America | SBL 5 26 52 | 6/9/1970 | 6/9/1971 | Old North State: Cherokee 1923-1994 |
| Insurance Company of North America | SBL 5 10 55 | 4/24/1969 | 4/24/1970 | Old North State: General Greene 1947-1992 |
| Insurance Company of North America | SBL 52627 | 4/24/1970 | 4/24/1971 | Old North State: General Greene 1947-1992 |

FCRA00597

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 53619 | 4/24/1971 | 4/24/1972 | Old North State: General Greene 1947-1992 |
| Insurance Company of North America | SBL 5 11 92 | 5/29/1969 | 5/29/1972 | Old North State: Uwharrie 1923-1992 |
| Insurance Company of North America | SBL 4 59 03 | 12/1/1968 | 12/1/1971 | Orange County: North Orange 1965-1972 |
| Insurance Company of North America | SBL 51587 | 6/15/1971 | 6/15/1972 | Ozark Trails: Mo-Kan Area 1929-1994 |
| Insurance Company of North America | SBL 50443 | 2/16/1969 | 2/16/1972 | Pacific Harbors: Tumwater Area 1934-1993 |
| Insurance Company of North America | SBL 51197 | 10/1/1969 | 10/1/1972 | Pacific Harbors: Twin Harbors Area 1930-1993 |
| Insurance Company of North America | SBL 5 04 42 | 1/19/1969 | 1/19/1972 | Pacific Skyline: San Mateo County 1932-1994 |
| Insurance Company of North America | SBL 46904 | 2/18/1968 | 2/18/1971 | Pacific Skyline: Stanford Area 1940-1994 |
| Insurance Company of North America | SBL 51509 | 2/18/1971 | 2/18/1972 | Pacific Skyline: Stanford Area 1940-1994 |
| Insurance Company of North America | GAL 34 32 31 | 2/4/1977 | 1/1/1978 | Pacific Skyline: Stanford Area 1940-1994 |
| Insurance Company of North America | SBL 51087 | 7/1/1969 | 7/1/1970 | Palmetto: Palmetto |
| Insurance Company of North America | SBL 52670 | 7/1/1970 | 7/1/1971 | Palmetto: Palmetto |
| Insurance Company of North America | SBL 53661 | 7/1/1971 | 7/1/1972 | Palmetto: Palmetto |
| Insurance Company of North America | SBL-2-50-63 | 1/1/1967 | 1/1/1968 | Pathway to Adventure: Chicago Area 1930-2016 |
| Insurance Company of North America | SBL-2-51-31 | 1/1/1968 | 1/1/1969 | Pathway to Adventure: Chicago Area 1930-2016 |
| Insurance Company of North America | SBL 25162 | 1/1/1969 | 1/1/1970 | Pathway to Adventure: Chicago Area 1930-2016 |
| Insurance Company of North America | SBL 51835 | 1/1/1970 | 1/1/1971 | Pathway to Adventure: Chicago Area 1930-2016 |
| Insurance Company of North America | SBL 5 18 50 | 1/1/1971 | 1/1/1972 | Pathway to Adventure: Chicago Area 1930-2016 |

FCRA00598

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 52763 | 5/13/1971 | 5/13/1972 | Pathway to Adventure: Northwest Suburban 1926-2016 |
| Insurance Company of North America | SBL 2 50 73 | 4/2/1966 | 4/2/1968 | Pathway to Adventure: Thatcher Woods Area 1941-1993 |
| Insurance Company of North America | SBL 25148 | 4/2/1968 | 4/2/1969 | Pathway to Adventure: Thatcher Woods Area 1941-1993 |
| Insurance Company of North America | SBL 51801 | 4/2/1969 | 4/2/1970 | Pathway to Adventure: Thatcher Woods Area 1941-1993 |
| Insurance Company of North America | SBL 51825 | 4/2/1970 | 4/2/1971 | Pathway to Adventure: Thatcher Woods Area 1941-1993 |
| Insurance Company of North America | SBL 51856 | 4/2/1971 | 4/2/1972 | Pathway to Adventure: Thatcher Woods Area 1941-1993 |
| Insurance Company of North America | SBL 50419 | 10/1/1968 | 10/1/1971 | Pathway to Adventure: West Suburban 1918-1993 |
| Insurance Company of North America | SBL 21690 | 5/27/1971 | 5/27/1972 | Patriots' Path: Watchung Area 1926-1999 |
| Insurance Company of North America | SBL 5 04 07 | 7/1/1968 | 7/1/1971 | Pee Dee Area: Pee Dee Area |
| Insurance Company of North America | SBL 51579 | 7/1/1971 | 7/1/1972 | Pee Dee Area: Pee Dee Area |
| Insurance Company of North America | SBL 4 85 12 | 12/16/1968 | 12/16/1971 | Pennsylvania Dutch: Lancaster County 1924-1971 |
| Insurance Company of North America | XBC 9 67 55 | 11/28/1972 | 1/1/1975 | Pennsylvania Dutch: Lancaster-Lebanon 1971-1995 |
| Insurance Company of North America | XBC 11 69 81 | 1/1/1975 | 1/1/1976 | Pennsylvania Dutch: Lancaster-Lebanon 1971-1995 |
| Insurance Company of North America | SBL 4 84 45 | 4/26/1968 | 4/26/1969 | Pennsylvania Dutch: Lebanon County 1924-1971 |

FCRA00599

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 84 45 | 4/26/1969 | 4/26/1971 | Pennsylvania Dutch: Lebanon County 1924-1971 |
| Insurance Company of North America | SBL 5 30 73 | 4/26/1971 | 1/1/1975 | Pennsylvania Dutch: Lebanon County 1924-1971 |
| Insurance Company of North America | SBL 4 53 99 | 6/1/1967 | 6/1/1970 | Piedmont: Piedmont |
| Insurance Company of North America | SBL 51085 | 6/15/1969 | 6/15/1970 | Piedmont: Piedmont |
| Insurance Company of North America | SBL 5 13 90 | 6/1/1970 | 6/1/1972 | Piedmont: Piedmont |
| Insurance Company of North America | SBL 52676 | 6/15/1970 | 6/15/1971 | Piedmont: Piedmont |
| Insurance Company of North America | SBL 53638 | 6/15/1971 | 6/15/1972 | Piedmont: Piedmont |
| Insurance Company of North America | SBL 5 08 54 | 12/29/1969 | 12/29/1970 | Pony Express: Pony Express |
| Insurance Company of North America | SBL 5 08 62 | 12/29/1970 | 12/29/1971 | Pony Express: Pony Express |
| Insurance Company of North America | SBL 5 04 12 | 6/1/1968 | 6/1/1971 | Prairielands: Arrowhead 1933-1991 |
| Insurance Company of North America | SBL 51570 | 6/1/1971 | 6/1/1972 | Prairielands: Arrowhead 1933-1991 |
| Insurance Company of North America | SBL 4 69 41 | 5/27/1968 | 5/27/1971 | Quapaw Area: Ouachita Area 1925-2012 |
| Insurance Company of North America | SBL-2-80-81 | 6/1/1967 | 6/1/1968 | Quivira: Quivira 1918- |
| Insurance Company of North America | SBL 5 08 63 | 6/1/1971 | 5/31/1972 | Quivira: Quivira 1918- |
| Insurance Company of North America | SBL 5 15 50 | 5/28/1971 | 12/31/1971 | Quivira: Sekan Area 1930-1972 |
| Insurance Company of North America | SBL 46920 | 3/2/1968 | 3/2/1971 | Rainbow: Rainbow |
| Insurance Company of North America | SBL 51497 | 3/2/1971 | 3/2/1972 | Rainbow: Rainbow |
| Insurance Company of North America | SBL 51574 | 5/20/1971 | 5/20/1972 | Redwood Empire: Sonoma-Mendocino Area 1944-1992 |
| Insurance Company of North America | AGP-82-37 | 11/12/1966 | 11/12/1969 | Rip Van Winkle: Rip Van Winkle 1950- |

FCRA00600

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | AGP-82-72 | 11/12/1969 | 7/11/1972 | Rip Van Winkle: Rip Van Winkle 1950- |
| Insurance Company of North America | GAL 227276 | 1/1/1975 | 1/1/1976 | Rip Van Winkle: Rip Van Winkle 1950- |
| Insurance Company of North America | XBC 99313 | 1/1/1975 | 1/1/1976 | Rip Van Winkle: Rip Van Winkle 1950- |
| Insurance Company of North America | GAL 344145 | 1/1/1976 | 1/1/1977 | Rip Van Winkle: Rip Van Winkle 1950- |
| Insurance Company of North America | GAL 36 28 32 | 1/1/1977 | 1/1/1978 | Rip Van Winkle: Rip Van Winkle 1950- |
| Insurance Company of North America | SBL 41085 | 10/1/1965 | 10/1/1970 | Sagamore: Meshingomesia 1929-1973 |
| Insurance Company of North America | SBL 4 15 40 | 6/1/1968 | 6/1/1971 | Samoset: Samoset |
| Insurance Company of North America | SBL 4 15 64 | 6/1/1971 | 6/1/1972 | Samoset: Samoset |
| Insurance Company of North America | SBL 4 69 35 | 4/1/1968 | 4/1/1971 | San Diego-Imperial: Desert Trails 1959-1993 |
| Insurance Company of North America | SBL 50430 | 11/1/1968 | 11/1/1971 | Santa Fe Trail: Santa Fe Trail |
| Insurance Company of North America | GLP 32 23 19 | 5/17/1972 | 5/21/1972 | Seneca Waterways: Finger Lakes 1924-2009 |
| Insurance Company of North America | SBL 45380 | 3/1/1966 | 3/1/1969 | Sequoia: Mount Whitney Area 1929-1992 |
| Insurance Company of North America | SBL 50440 | 3/1/1969 | 3/1/1972 | Sequoia: Mount Whitney Area 1929-1992 |
| Insurance Company of North America | SBL 4 69 27 | 3/1/1968 | 3/1/1971 | Sequoia: Sequoia 1925- |
| Insurance Company of North America | SBL 5 15 10 | 3/1/1971 | 3/1/1972 | Sequoia: Sequoia 1925- |
| Insurance Company of North America | SBL 51193 | 6/11/1969 | 6/11/1972 | Sequoyah: Sequoyah |
| Insurance Company of North America | SBL 50413 | 7/1/1968 | 7/1/1971 | Simon Kenton: Chief Logan 1944-1994 |
| Insurance Company of North America | SBL 51585 | 7/1/1971 | 7/1/1972 | Simon Kenton: Chief Logan 1944-1994 |
| Insurance Company of North America | SBL 4 29 58 | 1/14/1965 | 1/14/1968 | Simon Kenton: Licking County 1922-1987 |

FCRA00601

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 46902 | 1/14/1968 | 6/28/1970 | Simon Kenton: Licking County 1922-1987 |
| Insurance Company of North America | SBL 4 53 93 | 11/1/1966 | 11/1/1967 | Sioux: Pheasant 1942-1978 |
| Insurance Company of North America | SBL 5 11 99 | 11/1/1969 | 11/1/1972 | Sioux: Pheasant 1942-1978 |
| Insurance Company of North America | AGP 14 41 08 | 1/1/1976 | 1/1/1978 | Sioux: Pheasant 1942-1978 |
| Insurance Company of North America | GLP-07-93-29 | 5/13/1967 | 5/13/1968 | Sioux: Sioux 1927- |
| Insurance Company of North America | GLP-14-72-39 | 5/13/1968 | 5/13/1969 | Sioux: Sioux 1927- |
| Insurance Company of North America | GLP 22 78 40 | 5/13/1969 | 5/13/1970 | Sioux: Sioux 1927- |
| Insurance Company of North America | GLP 22 79 77 | 5/13/1970 | 5/13/1971 | Sioux: Sioux 1927- |
| Insurance Company of North America | GLP 30 83 96 | 5/13/1971 | 5/12/1972 | Sioux: Sioux 1927- |
| Insurance Company of North America | GAL 21 16 51 | 1/1/1973 | 5/24/1973 | Sioux: Sioux 1927- |
| Insurance Company of North America | XBC 97586 | 1/1/1973 | 1/1/1974 | Sioux: Sioux 1927- |
| Insurance Company of North America | AGP 13 14 41 | 5/24/1973 | 1/1/1974 | Sioux: Sioux 1927- |
| Insurance Company of North America | AGP 13 14 75 | 1/1/1974 | 1/1/1978 | Sioux: Sioux 1927- |
| Insurance Company of North America | XBC 97752 | 1/1/1974 | 1/1/1976 | Sioux: Sioux 1927- |
| Insurance Company of North America | SBL 5 11 87 | 4/23/1969 | 4/23/1972 | South Georgia: Chehaw 1939-1984 |
| Insurance Company of North America | SBL 51305 | 1/1/1970 | 1/1/1973 | Southwest Florida: Southwest Florida 1966- |
| Insurance Company of North America | SBL 50422 | 11/17/1968 | 11/17/1971 | Southwest Florida: Sunny Land 1925-1995 |
| Insurance Company of North America | SBL 46915 | 3/6/1970 | 3/6/1971 | Spirit of Adventure: Lone Tree 1926-1993 |
| Insurance Company of North America | SBL 51409 | 3/6/1971 | 3/6/1972 | Spirit of Adventure: Lone Tree 1926-1993 |
| Insurance Company of North America | SBL 50418 | 6/10/1968 | 6/10/1971 | Spirit of Adventure: North Essex 1925-1993 |
| Insurance Company of North America | SBL 51562 | 6/10/1971 | 6/10/1972 | Spirit of Adventure: North Essex 1925-1993 |

FCRA00602

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | XBC-73765 | 6/1/1970 | 3/9/1972 | Suffolk County: Suffolk County |
| Insurance Company of North America | XBC 73765 | 3/9/1972 | 3/7/1973 | Suffolk County: Suffolk County |
| Insurance Company of North America | XBC 73765 | 3/7/1973 | 6/1/1973 | Suffolk County: Suffolk County |
| Insurance Company of North America | XBC 9 85 02 | 1/1/1972 | 10/18/1972 | Susquehanna: Susquehanna 1975- |
| Insurance Company of North America | XBC 9 85 02 | 10/18/1972 | 1/1/1975 | Susquehanna: Susquehanna 1975- |
| Insurance Company of North America | SBL 4 84 64 | 6/14/1968 | 6/14/1971 | Susquehanna: Susquehanna Valley Area 1927-1975 |
| Insurance Company of North America | SBL 53078 | 7/14/1971 | 2/22/1973 | Susquehanna: Susquehanna Valley Area 1927-1975 |
| Insurance Company of North America | GLP 411728 | 2/22/1973 | 2/22/1975 | Susquehanna: Susquehanna Valley Area 1927-1975 |
| Insurance Company of North America | XBC 9 68 34 | 2/22/1973 | 2/22/1975 | Susquehanna: Susquehanna Valley Area 1927-1975 |
| Insurance Company of North America | SBL-4-48-96 | 2/9/1967 | 2/9/1970 | Susquehanna: West Branch 1935-1975 |
| Insurance Company of North America | GLP 40 76 42 | 2/9/1973 | 3/26/1975 | Susquehanna: West Branch 1935-1975 |
| Insurance Company of North America | XBC 9 68 17 | 2/9/1973 | 2/9/1976 | Susquehanna: West Branch 1935-1975 |
| Insurance Company of North America | SBL 5 13 91 | 4/1/1970 | 4/1/1972 | Texas Southwest: Concho Valley 1926-2012 |
| Insurance Company of North America | SBL 5 14 98 | 2/15/1971 | 2/15/1972 | Texas Trails: Chisholm Trail 1926-2003 |
| Insurance Company of North America | SBL 45425 | 12/5/1969 | 12/5/1970 | Texas Trails: Comanche Trail 1932-2003 |
| Insurance Company of North America | XBC 41011 | 1/12/1967 | 1/12/1970 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | XBC 43053 | 1/12/1970 | 1/12/1973 | Theodore Roosevelt: Nassau County 1916-1997 |

FCRA00603

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | GLP 28 44 92 | 2/20/1971 | 2/20/1972 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | AGP 09 98 41 | 1/1/1972 | 1/1/1973 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | AGP 09 98 41 | 1/1/1973 | 1/1/1976 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | XBC 45540 | 1/12/1973 | 1/12/1976 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | XCP 12350 | 1/12/1976 | 3/1/1976 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | RWP-2-70-86 | 1/1/1967 | 1/1/1970 | Three Fires: Du Page Area 1928-1992 |
| Insurance Company of North America | SBL 5 11 76 | 4/29/1969 | 4/29/1972 | Three Fires: Du Page Area 1928-1992 |
| Insurance Company of North America | XPL 17137 | 4/29/1970 | 4/29/1972 | Three Fires: Du Page Area 1928-1992 |
| Insurance Company of North America | SBL-2-51-43 | 3/1/1968 | 3/1/1969 | Three Fires: Two Rivers 1968-1992 |
| Insurance Company of North America | SBL 51826 | 3/1/1970 | 3/1/1971 | Three Fires: Two Rivers 1968-1992 |
| Insurance Company of North America | SBL 5 18 58 | 3/1/1971 | 3/1/1972 | Three Fires: Two Rivers 1968-1992 |
| Insurance Company of North America | GAL 24 20 22 | 1/1/1975 | 1/1/1976 | Three Fires: Two Rivers 1968-1992 |
| Insurance Company of North America | GAL 23 79 42 | 1/1/1976 | 1/1/1977 | Three Fires: Two Rivers 1968-1992 |
| INA Insurance Company of Illinois | GAL 23 74 77 | 1/1/1977 | 1/1/1978 | Three Fires: Two Rivers 1968-1992 |
| Insurance Company of North America | SBL 41526 | 2/5/1967 | 2/5/1968 | Three Harbors: Kenosha 1961-1972 |
| Insurance Company of North America | SBL-4-15-31 | 10/1/1967 | 10/1/1968 | Three Harbors: Milwaukee County 1929-2011 |
| Insurance Company of North America | SBL 4 15 42 | 10/1/1968 | 10/1/1969 | Three Harbors: Milwaukee County 1929-2011 |

FCRA00604

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 15 50 | 10/1/1969 | 10/1/1970 | Three Harbors: Milwaukee County 1929-2011 |
| Insurance Company of North America | SBL 4 15 59 | 10/1/1970 | 10/1/1971 | Three Harbors: Milwaukee County 1929-2011 |
| Insurance Company of North America | SBL 5 11 91 | 6/15/1969 | 6/15/1972 | Three Harbors: Racine County 1927-1972 |
| Insurance Company of North America | GAL 21 23 07 | 1/1/1976 | 1/1/1977 | Three Harbors: Southeast Wisconsin 1972-2011 |
| Insurance Company of North America | ALB-4-17-88 | 1/1/1967 | 1/1/1970 | Tidewater: Tidewater |
| Insurance Company of North America | SBL 45391 | 11/1/1966 | 11/1/1969 | Tukabatchee Area: Tukabatchee Area |
| Insurance Company of North America | SBL 5 11 98 | 11/1/1969 | 11/1/1972 | Tukabatchee Area: Tukabatchee Area |
| Insurance Company of North America | SBL 45389 | 6/20/1966 | 6/20/1967 | Twin Valley: Cedar Valley Area 1937-1969 |
| Insurance Company of North America | SBL 44646 | 10/1/1968 | 10/1/1969 | Twin Valley: Twin Valley 1969- |
| Insurance Company of North America | SBL 4 46 54 | 10/1/1969 | 10/1/1970 | Twin Valley: Twin Valley 1969- |
| Insurance Company of North America | SBL 44673 | 10/1/1970 | 10/1/1971 | Twin Valley: Twin Valley 1969- |
| Insurance Company of North America | GAL 11 80 46 | 10/1/1971 | 10/1/1972 | Twin Valley: Twin Valley 1969- |
| Insurance Company of North America | GAL 13 61 40 | 10/1/1972 | 1/1/1973 | Twin Valley: Twin Valley 1969- |
| Insurance Company of North America | OLT 78 88 36 | 5/24/1966 | 5/24/1969 | Troop #2, Wynnewood Troop |
| Insurance Company of North America | GLP-4-20-49 | 1/26/1967 | 4/9/1969 | Troop #208 |
| Insurance Company of North America | GLP-4-20-28 | 3/28/1967 | 3/28/1968 | Troop #19 of Seaside Park |
| Insurance Company of North America | GLP-07-08-30 | 5/3/1967 | 5/3/1970 | St. Mary's Pack #151 |
| Insurance Company of North America | GLP 07 17 68 | 6/10/1967 | 6/10/1970 | Troop #36 |
| Insurance Company of North America | GLP-06-40-05 | 10/4/1967 | 8/7/1969 | Troop #28 |

FCRA00605

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | GLP-13-77-44 | 1/11/1968 | 1/11/1969 | Troop #70 |
| Insurance Company of North America | GLP-14-65-79 | 2/14/1968 | 2/14/1969 | Keepataw Trail Inc. (Troop 149) |
| Insurance Company of North America | GLP-13-44-76 | 2/16/1968 | 2/16/1971 | Troop #84 North Wales Scout Center |
| Insurance Company of North America | GLP-13-82-64 | 3/6/1968 | 3/6/1969 | Troop #50 Vineland Armory |
| Insurance Company of North America | GLP-13-78-83 | 3/30/1968 | 3/30/1969 | Troop #103 |
| Insurance Company of North America | GAL 15556 | 10/17/1968 | 10/17/1969 | Troop #121 of the Orange Mountain Council |
| Insurance Company of North America | GLP-18-01-66 | 12/21/1968 | 12/21/1969 | Troop #2 Booster Club |
| Insurance Company of North America | GLP-22-32-34 | 3/30/1969 | 3/30/1970 | Troop #103 |
| Insurance Company of North America | GLP-22-87-11 | 5/18/1969 | 5/19/1969 | Coaldale Boy Scouts of America |
| Insurance Company of North America | GLP-19-66-19 | 6/15/1969 | 6/16/1969 | Troop #8 and Village of Port Chester, NY |
| Insurance Company of North America | GLP-24-50-57 | 12/21/1969 | 12/21/1970 | Troop #2 Booster Club |
| Insurance Company of North America | GLP-25-10-46 | 3/30/1970 | 12/3/1970 | Troop #103 |
| Insurance Company of North America | GLP 25 19 91 | 6/10/1970 | 6/10/1973 | Troop #36 |
| Insurance Company of North America | GLP 59 12 04 | 2/20/1975 | 2/20/1978 | Troop #80 Nassau County Council |
| Insurance Company of North America | SBL 46938 | 5/23/1968 | 5/23/1971 | Ventura County: Ventura County |
| Insurance Company of North America | SBL 51453 | 5/23/1971 | 5/23/1972 | Ventura County: Ventura County |
| Insurance Company of North America | SBL 4 69 23 | 1/1/1968 | 1/1/1971 | Voyageurs Area: Headwaters Area 1929-1994 |
| Insurance Company of North America | SBL 5 13 96 | 1/1/1971 | 1/1/1973 | Voyageurs Area: Headwaters Area 1929-1994 |
| Insurance Company of North America | SBL-4-89-01 | 9/21/1967 | 9/21/1971 | W.D. Boyce: Starved Rock Area 1926-1973 |

FCRA00606

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 3 95 54 | 5/29/1969 | 5/29/1970 | West Tennessee Area: West Tennessee Area |
| Insurance Company of North America | XBC 27379 | 6/1/1969 | 6/1/1970 | Westchester-Putnam: Washington Irving 1951-1973 |
| Insurance Company of North America | XBC 27487 | 6/1/1970 | 6/1/1971 | Westchester-Putnam: Washington Irving 1951-1973 |
| Insurance Company of North America | SBL 5 14 06 | 7/1/1970 | 8/7/1972 | Western Los Angeles County: San Fernando Valley 1923-1972 |
| Insurance Company of North America | XCP 6616 | 7/1/1970 | 8/7/1972 | Western Los Angeles County: San Fernando Valley 1923-1972 |
| Insurance Company of North America | GLP-17-15-33 | 5/14/1968 | 5/14/1969 | Westmoreland-Fayette: Westmoreland-Fayette |
| Insurance Company of North America | GAL-2-42-19 | 4/6/1967 | 4/6/1968 | Winnebago: Winnebago 1937- |
| Insurance Company of North America | GAL-23819 | 4/6/1968 | 4/6/1969 | Winnebago: Winnebago 1937- |
| Insurance Company of North America | GAL 9 51 19 | 4/6/1969 | 4/6/1970 | Winnebago: Winnebago 1937- |
| Insurance Company of North America | GAL 96141 | 4/6/1970 | 4/6/1971 | Winnebago: Winnebago 1937- |
| Insurance Company of North America | SBL 52141 | 4/6/1971 | 11/1/1971 | Winnebago: Winnebago 1937- |
| Insurance Company of North America | SBL 51310 | 1/1/1970 | 1/1/1973 | Yocona Area: Yocona Area |

Local Council Policy List: *This schedule identifies the liability insurance policies issued by the Settling Insurers to Local Councils or Units of the Boy Scouts of America (BSA) for which policy contractual documents (in whole or in part) were found by the Settling Insurers. BSA has alleged that additional liability insurance policies were issued to Local Councils or Units of BSA by the Settling Insurers, as reflected in the spreadsheet entitled "Local Council Policy Listing_20210127," produced by BSA in the Data Room, Index No. 7.2.7 (bearing production number ABC000109020), and in the Disclosure Statement. That spreadsheet and the documents produced into the data room are incorporated herein by reference.*

FCRA00607

**Exhibit C**

**Term Sheet**

FCRA00608

### SETTLEMENT TERM SHEET

This term sheet ("Term Sheet") dated December 12, 2021 represents the basic terms of a settlement agreement between and among Century and the Chubb Companies (as defined below) (collectively, the "Settling Insurers"), Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (collectively, "BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"), the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[1] and the Future Claimants' Representative (the "FCR" and, collectively with the Settling Insurers, the Debtors, the AHCLC, and the Coalition, the "Parties").[2] The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by the Agreement (as defined below). The Parties will prepare a definitive written settlement agreement consistent with this Term Sheet that will include additional material terms (the "Agreement") which Agreement will be appended to and incorporated by reference in an amendment to the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 6443] (the "Plan" and as amended to include this Term Sheet and the Agreement, the "Amended Plan"), which Agreement and Amended Plan shall be fully consistent with this Term Sheet and otherwise in form and substance reasonably acceptable to the Parties.

WHEREAS, the Settling Insurers have allegedly issued insurance policies covering or allegedly covering Claims and Causes of Action for Abuse involving Scouting that occurred prior to the Petition Date;

WHEREAS, the Parties wish to resolve disputes concerning such policies;

WHEREAS, as provided herein and subject to the terms of the settlement, the Settling Insurers will pay the Settlement Amount in exchange for the injunctions, releases and other protections described below;

WHEREAS, among other things, the settlement provides for the channeling and release of all Abuse Claims against the Settling Insurers (and against their insureds under policies issued by the Settling Insurers that may cover such Claims) in exchange for the Settlement Payment.

Capitalized terms not defined in this Term Sheet shall have the definitions ascribed to such terms in the Amended Plan, as modified to be consistent with this Term Sheet.

1. **Term Sheet Effective Date**. This Term Sheet, and any definitive written Agreement prepared in connection with this Term Sheet, shall be binding on the Parties, subject to the Sections 29

---

[1] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

[2] Notwithstanding anything to the contrary in this Term Sheet, the obligations and undertakings of the AHCLC in connection with this Term Sheet or the Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

FCRA00609

and 30 below, when each of the Parties has executed this Term Sheet and/or any definitive written Agreement prepared in connection with this Term Sheet.

2. **Release Effective Date**.  Notwithstanding anything else herein to the contrary, none of the releases set forth herein shall be effective unless and until the Settlement Amount set forth herein is released from the Escrow Account (as defined below) to the Trust as provided in the Amended Plan (the "Release Effective Date"), provided that (a) the release of the Pre-Petition Century/Chubb Claims shall be effective upon the making of the Initial Payment and (b) for the avoidance of doubt, the Trust may not receive, use or retain any portion of the Additional Payment or Net Income (as hereinafter defined) unless the Release Effective Date has occurred or occurs simultaneously therewith.

3. **Settlement Amount**.  In consideration of the releases, injunctions, and other consideration provided for herein, the Settling Insurers shall pay in cash $800,000,000 (the "Settlement Amount") free and clear of all liens, claims, or interests to the Settlement Trust for Abuse Claims to be created under the Amended Plan (the "Settlement Trust" or "Trust").  There shall be no most-favored nation or similar provision that would reduce the Settlement Amount to be paid by Settling Insurers based on any settlements that BSA may enter into with other insurers. The Settling Insurers shall be entitled to allocate the Settlement Amount among the Settling Insurers' Policies issued to BSA and the Local Councils for all purposes, in their sole discretion, provided, however, that (i) such allocation shall not bind the Trust and (ii) the Settling Insurers will not allocate the Settlement Amount to any other insurance policy issued directly to a Chartered Organization by the Settling Insurers.  The foregoing allocation of the Settlement Amount will not affect the extent and scope of the releases provided herein, including Sections 8 and 9 hereof.

4. **Payment and Release of the Settlement Amount**.  Upon the entry of the Confirmation Order by the Bankruptcy Court, the Settling Insurers shall pay $200,000,000 into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties, with $100,000,000 to be deposited by the Settling Insurers into the Escrow Account every sixty (60) days thereafter until the total balance of the Settlement Amount of $800,000,000 has been deposited into the Escrow Account, *provided*, *however*, that the full amount of the Settlement Amount shall have been deposited into the Escrow Account within five (5) days after entry of the Affirmation Order by the District Court to the extent not previously deposited.  For the avoidance of doubt, any net balance of the Settlement Amount not previously deposited shall be paid into the Escrow Account as soon as reasonably practicable after the date all conditions to the effectiveness of the Amended Plan have been satisfied including the entry of the foregoing orders (the "Effective Date").  All payments held in the Escrow Account (the "Escrowed Payments") and all income earned thereon minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the dates provided herein.  On the Initial Payment Date, the amount of $50,000,000 of the Settlement Amount (the "Initial Payment") shall be released to the Trust. The remaining $750,000,000 balance of the Settlement Amount (the "Additional Payment") and the Net Income shall remain in the Escrow Account until the Confirmation Order shall become a Final Order (as defined in the Amended Plan), and the other conditions precedent to the occurrence of the Release Date have occurred, on which date the Additional Payment, plus any Net Income, shall be released from the Escrow Account to the Trust; *provided, however,* that, at their election and in their sole discretion as long as the conditions to the Initial Payment

**FCRA00610**

Date remain in effect, Settling Insurers may authorize the release of all or a portion of the Additional Payment (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes a Final Order. The Release Date shall not occur until the Additional Payment and the Net Income have been released to the Trust. The Trust will have investment discretion with respect to the Escrowed Payments while they are in the Escrow Account, subject to the Parties' agreement on investment guidelines to be provided to the Escrow Agent under which the Escrowed Payments may be invested by the Trust; *provided, however,* that the Trust will bear all risks associated with any such investment of the Escrowed Payments and that no loss or failure to achieve desired investment returns on the Escrowed Payments while they are in the Escrow Account shall require Settling Insurers to increase the Settlement Amount they are paying (or increase the amount of BSA's contribution to the Trust); *provided further, however,* that the Debtors, Reorganized BSA, the Local Councils and Chartered Organizations shall have no liability or obligations to Settling Insurers or the Trust, the Trust shall have no liability or obligations to Settling Insurers, and Settling Insurers shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or failure to achieve desired investment returns on the Escrowed Payments while they are in the Escrow Account. Notwithstanding anything to the contrary herein, the Escrowed Payments and any amounts in the Escrow Account including the Net Income shall be promptly released to the Settling Insurers upon their written demand if any of the following occur: (i) the District Court does not enter the Affirmation Order within 360 days of the entry of the Confirmation Order by the Bankruptcy Court or the District Court declines to enter the Affirmation Order (whether or not such denial constitutes a reversal or remand); (ii) the Amended Plan is at any time withdrawn; (iii) the Amended Plan otherwise ceases to conform to the Term Sheet or the Agreement; (iv) there is a Reversal; (v) the Cases have been converted or dismissed, (vi) the Parties agree to such release, or (vii) an order of the Bankruptcy Court or District Court so provides.

5. **Protections to be Afforded to the Settling Insurers**. Effective as of the Release Date, Settling Insurers are to be designated Protected Parties for all purposes under the Amended Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections. As set forth herein, the Settling Insurers shall be granted such releases, injunctions, protections as are necessary to deliver finality with respect to all known and unknown policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from or in connection with Abuse Claims, which shall include those identified on Exhibits A and B for all purposes any and all policy and claim years whether before or after 1976, all such known and unknown policies subject only to the limitations stated in this Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (with respect to Westchester), collectively the "Settling Insurers' Policies") and any other insurance policy issued by the Settling Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions or positions taken in connection with any Abuse Claims and/or the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date related to any Abuse Claims and/or policy issued by the Settling Insurers concerning the Debtors or Scouting, including the Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise. Notwithstanding anything to the contrary, the BSA, Local Councils, and Chartered Organizations are not releasing,

FCRA00611

enjoining, or protecting any rights under (i) Non-Abuse Insurance Policies[3] (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Post-Petition Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise. The Agreement, the Amended Plan, and the Confirmation Order shall provide for a channeling injunction and full release of the Settling Insurers with respect to all Claims or Causes of Action related to, arising from or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the insurance policies issued by the Settling Insurers subject to the limitations stated in this Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (with respect to Westchester). All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Amended Plan and the Agreement shall be continuously enjoined pending their release. The Settling Insurers shall be Protected Parties under the Amended Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.M of the Amended Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

6.  **Sale of Settling Insurers' Policies**. Prior to the Effective Date and subject to the limitations in this Section 6 (with respect to Westchester), the Local Councils and the Settling Insurers shall consent to and provide for the assignment of the Local Council Insurance Policies issued by Settling Insurers, which include those identified on Exhibit B (the "Settling Insurers Local Council Policies"), to the Debtors' Estates. The Confirmation Order and the Amended Plan shall provide that (a) on the Effective Date and subject to the limitations in this Section 6 (with respect to Westchester), the BSA Insurance Policies issued by Settling Insurers which include those identified on Exhibit A (the "BSA Settling Insurers' Policies"), and the Settling Insurers Local Council Policies shall be sold by Debtors to Settling Insurers free and clear of all liens, claims, encumbrances, interests and other rights of any nature, whether at law or in equity, of any entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, and their respective creditors and interest holders in the Settling Insurers' Policies pursuant to sections 363, 1123 and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the assignment by Local Councils and the Sale shall exclude the Post-Petition Policies and Non-Abuse Insurance Policies; (c) the Sale represents a sound exercise of Debtors' business

---

[3] The Plan definition will be expanded to include all such policies (e.g., Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies)) for Local Councils and Chartered Organizations. The Plan definition of Abuse Insurance Policies, BSA Insurance Policies, and Local Council Insurance Policies shall also be redefined to be consistent with this Term Sheet, subject to Hartford's consent, including that the aforementioned definitions shall only mean prepetition policies.

judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Amended Plan, (e) the Sale constitutes a purchase by the Settling Insurers in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording the Settling Insurers all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including any person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting related Abuse, shall have any right to be paid from the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust and/or the holders of Direct Abuse Claims, *provided*, *however*, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with Trust Agreement and the Trust Distribution Procedures. Any excess liability policies issued from March 1, 2013 to February 28, 2019, to the BSA by Westchester Fire Insurance Company and Westchester Surplus Lines shall be included in the Sale and shall be excluded from the definition of "Specified Insurance Policies" in the Amended Plan. The excess liability insurance policy issued to the BSA by Westchester Surplus Insurance Company on March 1, 2019 shall not be included in the Sale; provided that (a) the Settling Insurers will receive a release with respect to this policy for any claims that arise in whole or in part from pre-Petition events, including Abuse Claims that arise in whole or in part from Abuse that pre-dates the Petition Date, and (b) the post-petition date period of this policy shall be treated as a Post-Petition Policy. The Agreement will contain a representation that the Settling Insurers and BSA have each conducted a reasonable, good faith search of its respective records and that it has located no evidence of any BSA Insurance Policies issued by Settling Insurers other than the policies identified on Exhibit A or any Local Council Insurance Policies issued by Settling Insurers other than the policies identified on Exhibit B, and that based on such searches, neither Party believes that any additional policies or secondary evidence of such policies exists. Without limiting the foregoing, although the Parties do not believe that the Sale would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more BSA Settling Insurers' Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

7. **Trust Bound by Agreement**. Upon the Effective Date, the Trust shall be bound by all terms of this Term Sheet and the Agreement. Upon the Release Date, the Trust shall release Settling Insurers from all Causes of Action and Claims that the Trust holds relating to the Settling Insurers' Policies and other policies issued by the Settling Insurers covering Abuse Claims, provide the other releases contained in the Agreement and otherwise perform as required in the Agreement.

8. **Release by Settling Insurers**. Upon the Release Date, subject to the limitations below, Settling Insurers and their Representatives shall release the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition and the Trust from all Causes of Action and Claims related to, arising from or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Settling Insurers' Policies); (b) any other insurance policy issued by the Settling Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan including extra-contractual claims related to the Settling Insurers' Policies,

including the Debtors' performance of their obligations thereunder whether for defense, settlement of claims or otherwise, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Settling Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Settling Insurers, in the Debtors' Chapter 11 Cases, any actions, omissions or positions taken in the Debtors' Chapter 11 Cases and related proceedings; (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any insurance policy issued by the Settling Insurers), and (f) any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by the Settling Insurers concerning the Debtors or Scouting, including the Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise. Nothing shall preclude the Settling Insurers from enforcing the terms of the Agreement. Furthermore, nothing in this Term Sheet, the Agreement or the Amended Plan shall constitute a release of any Claim by the Settling Insurers or their Representatives or any rights related to or Claims concerning (i) to the extent provided for in Section 6, the excess liability insurance policy issued to the BSA by Westchester Surplus Insurance Company on March 1, 2019, (ii) Non-Abuse Insurance Policies, (iii) reinsurance, (iv) Sidley Austin LLP or (v) the Post-Petition Policies. The releases in this Section 8 shall be subject to and limited by Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (as applicable to Westchester).

9. **Release of Settling Insurers**. Upon the Release Date, the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust and all such Persons' or Entities' Representatives (the "Releasing Parties") shall release Settling Insurers from all Causes of Action and Claims related to, arising from or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Settling Insurers' Policies); (b) any other insurance policy issued by the Settling Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the Settling Insurers' Policies and Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Settling Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Settling Insurers, in the Debtors' Chapter 11 Cases, any actions, omissions or positions taken in the Debtors' Chapter 11 Cases and related proceedings; (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any insurance policy issued by the Settling Insurers), and (f) any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by the Settling Insurers concerning the Debtors or Scouting, including the Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise. If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Settling Insurers in the Agreement or Amended Plan, then Settling Insurers shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties. The Agreement will provide that the release of Settling Insurers shall not affect claims against other insurance companies, subject to the

**FCRA00614**

limitation that the Settling Insurers shall not assert claims against other Settling Insurance Companies.  Nothing shall preclude the Releasing Parties from enforcing the terms of the Agreement and the Amended Plan.  For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and, (2) to the extent of any party's right, power and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Settling Insurers' Policies or any policy of insurance issued to or for the benefit of such releasing party related to Abuse Claims.[4]  The releases in this Section 9 shall be subject to and limited by Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies), Section 6 (as applicable to Westchester), and shall not include any insurance policies for which the Settling Insurers become responsible or acquire on or after the Term Sheet Effective Date.

10. **Participating Chartered Organizations**.  Under the Amended Plan and as a condition to the Effective Date (waiver of which shall require the prior written consent of, among others, the Settling Insurers), in order to obtain the benefit of (1) the Settling Insurer Policy Injunction, and (2) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to provide, or be deemed to provide, the following assignment of their insurance rights (the "Participating Organization Insurance Assignment"):  any and all of the Participating Chartered Organizations' rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to (a) the Abuse Insurance Policies (including the Settling Insurers' Policies), (b) any other insurance policies issued by a Settling Insurance Company that cover Abuse Claims with respect to such coverage for Abuse Claims, (c) the Insurance Settlement Agreements (including the Agreement) and claims thereunder and proceeds thereof, (d) the types of claims listed in the Insurance Actions definition in the Plan (including with respect to the insurance policies issued by the Settling Insurers), (e) the Insurance Action Recoveries (including with respect to the Settling Insurers' Policies), and (f) the Participating Chartered Organization Insurance Actions.  In addition, in order to obtain the benefit of (1) the Settling Insurer Policy Injunction, and (2) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to make, or be deemed to make, the following contribution to the Trust ("Participating Chartered Organization Settlement Contribution"): (a) the Participating Organization Insurance Assignment; (b) to the extent of any rights, claims or interests not assigned to the Trust pursuant to the Participating Chartered Organization Insurance Assignment, the waiver and complete release of (i) each of the Participating Chartered Organization's rights, titles, privileges, interests, claims, demands or entitlements under the Settling Insurers' Policies and any other insurance policy issued by the Settling Insurers with respect to Claims or Causes of Action involving Abuse Claims concerning such coverage for Abuse Claims; (ii) any Claim held by the Participating Contributing Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from, in whole or part, directly, indirectly, or derivatively (including through any insurance policy

---

[4] For purposes of clarity, the releases in this Section 9 do not include personal insurance policies issued directly to individuals who are releasing parties or to directors and officers liability policies issued in connection with their affiliations with entities other than BSA, the Local Councils or Chartered Organization.

issued by the Settling Insurers), alleged Abuse Claims that occurred prior to the Petition Date against the Settlement Trust, the Debtors, Reorganized BSA, the Local Councils, any Contributing Chartered Organization or Settling Insurers; (iii) any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Participating Chartered Organization, including any Indirect Abuse Claims, without any further notice or action, order, or approval of the Bankruptcy Court, which Claims shall be expunged from theClaims Register, and the agreement of each Participating Chartered Organization not to (a) file or assert any Claim or Claims against the Trust, the Debtors, or Reorganized BSA arising from any act or omission of the Debtors, the Local Councils, any Contributing Chartered Organization, or any Participating Chartered Organization on or prior to the Confirmation Date or (b) file or assert any rights or interests in any property transferred to the Trust under the Amended Plan, including the proceeds of any settlements paid by a Settling Insurance Company; and (c) the assignment to the Trust of any and all Perpetrator Indemnification Claims held by the Participating Chartered Organizations. Other than the TCJC, no Chartered Organization may become a Contributing Chartered Organization without making a contribution in form and substance equivalent to the Participating Chartered Organization Settlement Contribution and agreeing to be bound by the terms and conditions of this Term Sheet.

11. **Protections Afforded to Insureds and Co-Insureds**.  On the Release Date, all Abuse Claims against insureds and co-insureds covered under insurance policies issued by the Settling Insurers shall be channeled under the Settling Insurer Policy Injunction and released.  Pending the occurrence of the Release Date, all such Abuse Claims shall be enjoined pursuant to the Post-Petition Interim Injunction, as provided herein.

12. **Bankrupt Chartered Organizations**.  The BSA shall use best efforts to work with the Roman Catholic Ad Hoc Committee and the Chartered Organizations that are debtors in bankruptcy (the eight bankrupt entities identified on Exhibit K to the Amended Plan, which may be amended to the extent that additional Chartered Organizations file for bankruptcy protection prior to entry of the Confirmation Order, the "Bankrupt Chartered Organization") to obtain written consent for them to consent to the terms hereof and the Agreement.  To the extent that a Bankrupt Chartered Organization will not provide written consent to this Term Sheet and the Agreement, the Parties will use reasonable efforts to jointly resolve such non-consent, which may, upon the consent of the Parties, include excluding such Bankrupt Chartered Organization from the protections and benefits otherwise provided herein and in the Agreement, provided that the failure to obtain such consent as it applies to the applicable Bankrupt Chartered Organizations shall not be deemed a breach of the Agreement by any Party or a failure to satisfy a condition to the effectiveness of the Agreement or the Amended Plan.  The Parties consent to the foregoing provisions covering the Settling Insurers to apply to any other Settling Insurance Company.

13. **Opt-Out Chartered Organizations**.  Under the Amended Plan and as condition to the Effective Date (waiver of which shall require the prior written consent of, among others, the Settling Insurers), any Chartered Organization that is not a Contributing Chartered Organization and is not a Participating Chartered Organization (an "Opt-Out Chartered Organization") (*i.e*., a Chartered Organization that objects to the Amended Plan) shall receive the benefit of the Settling Insurer Policy Injunction and the release of all Abuse Claims that are covered under insurance policies issued by the Settling Insurers on the Release Date.  No Chartered Organization that is an Opt-Out Chartered Organization may become a Contributing Chartered Organization unless (a) a financial contribution is made by or on behalf of such Opt-

**FCRA00616**

Out Chartered Organization, (b) such Chartered Organization agrees to provide the assignments and releases set forth in Sections 9 and 10, and (c) if and to the extent required by BSA, it agrees to cooperate with Youth Protection.

14. **Post-Confirmation Interim Injunction**. The Plan and Confirmation Order shall provide that all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Release Date, any final injunctions are issued, or upon a Reversal or other condition that results in the return of the Escrowed Payments to the Settling Insurers. To the extent not otherwise in place, the Amended Plan shall provide that pending the occurrence of the Release Date and thereafter, any Claim that would be released or subject to a channeling injunction upon the occurrence of conditions set forth herein (including the occurrence of the Release Date) shall be stayed and enjoined pending satisfaction of such conditions. Such injunction shall permit the filing, but not the prosecution, of the Abuse Claims against such Chartered Organizations.

15. **Abuse Claims Under Policies Issued to Chartered Organizations**. The release by the Participating Chartered Organizations and Contributing Chartered Organizations of the right to seek coverage for Abuse Claims under insurance policies issued directly by Settling Insurers to such Chartered Organizations[5] does not include the following:

      (a) Such Chartered Organizations are not barred from tendering claims that are not Abuse Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies applies and to what extent;

      (b) Such Chartered Organizations are not barred from tendering Mixed Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-Confirmation Interim Injunction and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations;

      (c) Such Chartered Organizations may seek coverage and tender claims under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, subject to all parties' contractual rights;

      (d) To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, subject to all parties' contractual rights;

      (e) To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, the Settling Insurers shall have no further obligations with respect to such claim; and

---

[5] This does not include policies issued by the Settling Insurers to the BSA or the Local Councils.

FCRA00617

(f)    The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or the Settling Insurers to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

16. **Other Chartered Organization Settlement**.  The Other Chartered Organizations (as defined below) shall be treated as Contributing Chartered Organizations under the Amended Plan (*i.e.*, receive the full channeling injunction applicable to Abuse Claims) if on or before the Release Date (the "Other Chartered Organization Payment Date") the following contributions are made to the Trust:  (a)(1) the Supplemental LC Contribution (as defined below) has been deemed contributed to the Trust as provided in the Amended Plan; (2) the Settlement Amount is released to the Settlement Trust; and (b) for any Other Chartered Organization that is an Opt-Out Chartered Organization, a contribution equivalent in form and substance to the Participating Chartered Organization Settlement Contribution.  No Chartered Organization shall be a Contributing Chartered Organization unless it agrees to provide the assignments and releases set forth in Sections 9 and 10.[6]

17. **Supplemental LC Contribution**.  Pursuant to the Plan, the Local Councils have agreed to contribute to the Settlement Trust, among other things, the Cash Contribution, and the Property Contribution, which together, shall not be less than $500 million as well as the DST Note, in the principal amount of $100 million, issued by the DST on or as soon as practicable after the Effective Date.  Based upon the letters of intent with respect to the Cash and Property Contributions received from individual Local Councils to date, the commitment of Local Councils is approximately $519 million, in aggregate.  The AHCLC anticipates that the actual aggregate amount that Local Councils will contribute to the Settlement Trust on the Effective Date will be in excess of $500 million but less than $519 million due to differences in property valuations and, in certain limited instances, the potential inability of a particular Local Council to meet its full commitment amount.  The total aggregate amount of the Cash Contribution and the Property Contribution that exceeds $500 million shall hereafter be referred to as the "LC Overage."  Notwithstanding anything to the contrary in this paragraph, the LC Overage shall not be less than $15 million.  The LC Overage will be contributed to the Settlement Trust on the Effective Date as part of securing the Chartered Organization treatment below.  The DST Note, a part of the Local Council contribution to the Settlement Trust, will be increased from $100 million to an amount sufficient to ensure that the aggregate amount of the Supplemental LC Contribution of $40 million is achieved (the "DST Note Increase").  In no circumstance will the DST Note Increase be more than $25 million (for an aggregate amount of $125 million) and, to the extent that the LC Overage is more than $15 million, the DST Note increase may be less than $25 million (though not less than $21 million).  The LC Overage and the DST Note Increase (together, the "Supplemental LC Contribution") should provide an aggregate $40 million in additional consideration paid to the Settlement Trust.  For the avoidance of doubt, the foregoing contributions are not conditions to releases provided in favor of the Settling Insurers set forth herein, nor will the failure to make such contribution affect any rights or obligations of the Settling Insurers, and the failure to make such contribution will only result in Other Chartered Organizations not receiving the benefits set forth in Section 16.

18. **Settlement Growth Payment**.  The BSA has agreed to pay to the Settlement Trust an annual variable payment, commencing the year after the BSA Settlement Trust Note is paid in full and the BSA's total outstanding debt under the JP Morgan facilities or their replacement and

---

[6] The Debtors, AHCLC, FCR and the Coalition will agree on a mechanism for the Youth Protection cooperation with Other Chartered Organizations.

the Foundation Loan is less than $225 million in aggregate, based on growth in membership (the "Settlement Growth Payment") up to a cap of $100 million (the "Settlement Growth Payment Cap"), as part of securing the Chartered Organization treatment provided herein. The BSA shall not be required to fund the Settlement Growth Payment upon the earlier of (a) 2036 or (b) the payment of the Settlement Growth Payment Cap. It is expected that at the time the BSA Settlement Trust Note is paid in full, the BSA's total outstanding debt under the JP Morgan facilities or their replacement and the Foundation Loan will be less than $225 million. The Local Councils will reimburse the BSA for 25% of the amount paid to the Settlement Trust under this section, with the amount to be assessed by the BSA to the Local Councils based on their share of membership growth. The Settlement Growth Payment will be calculated as (a) 50% of $72 per paid youth member in Scouts BSA or Cubs Scouts at each year-end in excess of 1,500,000 members and (b) 50% of $45 per paid adult volunteer in Scouts BSA or Cubs Scouts at each year-end in excess of 500,000 volunteers. Calculation of the Settlement Growth Payment will be performed based on year-end membership numbers with a report on the calculations provided by the BSA to the Settlement Trust within 60 days of year-end and payment made within 90 days of year-end. Based on a 5.5% annual growth rate of BSA youth members and adult volunteers, the above Settlement Growth Payment will result in an additional $100 million being contributed to the Settlement Trust by the end of 2036. For the avoidance of doubt, the foregoing contributions are not conditions to releases provided in favor of the Settling Insurers set forth herein, nor will the failure to make such contribution affect any rights or obligations of the Settling Insurers, and the failure to make such contribution will only result in Other Chartered Organizations not receiving the benefits set forth in Section 16.

19. **Finality**. Subject to the other terms of this Term Sheet, and so long as this Term Sheet and the Agreement remain in full force and effect and/or are not terminated, the Parties agree that (a) the Settlement Amount is the total amount Settling Insurers will be obligated to pay under the Settling Insurers' Policies, and (b) the Confirmation Order shall provide that on and after the Release Date and payment of the Settlement Amount (and subject to the limitations in Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (as applicable to Westchester))), the Settling Insurers shall be released from and shall not be obligated to make any additional payments to any Person (including, but not limited to, the BSA, Local Councils, any Chartered Organization and any entity actually or allegedly covered under insurance policies issued by the Settling Insurers) for Abuse Claims, including those relating to or arising out of the Settling Insurers' Policies and the other Claims and Causes of Action released hereunder, subject to the limitations in Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (as applicable to Westchester).[7]

20. **Judgment Reduction**. In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Settling Insurers as a result of a Cause of Action for contribution, subrogation, indemnification or other similar Cause of Action against Settling Insurers for Settling Insurers' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim, or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification or other similar

---

[7] The Debtors, AHCLC, FCR, and Coalition have agreed to enter into a separate agreement which shall provide that any settlement with the Methodists and/or Catholics shall include mandatory fundraising efforts with a dollar for dollar reduction of the Settlement Growth Payment Cap and support Scouting and growth through 2036.

Cause of Action against Settling Insurers. To ensure that such a reduction is accomplished, Settling Insurers shall be entitled to assert this paragraph as a defense to any action against them for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Settling Insurers from any liability for the judgment or Cause of Action. To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar claim against the Settling Insurers, the Settling Insurers may assert any defense to such claim notwithstanding any of the releases contained herein.

21. **Findings and Orders**. The Amended Plan and the Confirmation Order shall state that the Findings and Orders and Trust Distribution Procedures are not binding on the Settling Insurers to the extent that the Settlement Amount is released to the Trust, provided that the Settling Insurers may rely on all such Findings and Orders. The Amended Plan and Confirmation Order shall further provide that the Settling Insurers' agreement to settle does not indicate the Settling Insurers' support for or acceptance of the Trust Distribution Procedures or any findings and orders made in connection with them in any proceeding, which procedures, findings and order shall not be applicable to the Settling Insurers. Without limiting the generality of the foregoing, the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.p, Article IX.A.3.r, Article IX.A.3.s and Article IX.A.3.t of the Amended Plan shall not be binding on the Settling Insurers to the extent that the transactions contemplated in the Agreement, including the release of the Settlement Amount to the Trust, are fully consummated. The Settling Insurers' agreement herein not to object to entry of such findings and determinations in the Confirmation Order does not indicate Settling Insurers' support for such findings and determinations, and no party shall argue that the Settling Insurers agreed to or acquiesced in such findings and determinations in any proceeding. Rather, the Settling Insurers are designated as a Settling Insurance Company and Protected Party under the Amended Plan, and as a result, the Settling Insurers take no position on such findings and determinations or on the Trust Distribution Procedures. The Confirmation Order and all other orders issued by any appellate court that exercises jurisdiction over such orders, if any, shall approve the terms and provisions of this Term Sheet and the Agreement. For the avoidance of doubt, nothing herein shall cause any Settling Insurer to be liable for any policy issued by or any obligation of any nature or kind owed by another Settling Insurer (including any Settling Insurers' Policy issued by such other Settling Insurer), person or entity other than itself. Notwithstanding anything to the contrary herein, nothing will require the Settling Insurers to take any position that would impair their ability to pursue objections to any plan in the event that the Agreement is terminated under Sections 29 or 30. Subject to the foregoing, the Settling Insurers and the Debtors will (i) take reasonable positions in court supporting the settlement provided herein and the Amended Plan provisions that effectuate the Term Sheet and the Agreement; (ii) take reasonable positions in court supporting approval of such terms through the Confirmation Order and (iii) will not assist any party in its opposition to the foregoing.

22. **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with the Term Sheet and the Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the Amended Plan, *provided that* Settling Insurers shall be included as a releasee in any form of release attached to the Trust Distribution Procedures to the broadest extent that BSA, any Local Council or any other Protected Parties are released, which release shall be consistent with this Term Sheet and the Agreement. The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Claims related to, arising from or in connection with Abuse Claims who receive payment from the Trust to release any Claim related to, arising from or in

FCRA00620

connection with Abuse Claims against (a) Settling Insurers and (b) any insured or co-insured under the Settling Insurers' Policies or other policies issued by the Settling Insurers covering or allegedly covering Claims or Causes of Action for Abuse Claims, solely to the extent of and scope of any remaining coverage rights (if any) thereunder. Settling Insurers shall not object to the Trust Distribution Procedures but may add a statement in the Amended Plan that Settling Insurers are Settling Insurance Companies and, as a result, take no position on the Trust Distribution Procedures. Settling Insurers shall not object to the selection of the Settlement Trustee. Settling Insurers shall not participate in or otherwise interfere with the administration of the Trust.

23. **Objections to Amended Plan for Settling Insurers**. Settling Insurers shall not object to the Amended Plan, the Solicitation Procedures, the Settlement Trust Agreement, the Trust Distribution Procedures, or the selection of the Settlement Trustee (and shall withdraw any pending objection) or any other document or instrument that comprises the Amended Plan, so long as Settling Insurers are included as a Protected Party in the Amended Plan and the Amended Plan is consistent with the terms of this Term Sheet and the Agreement.

24. **Voting**. As long as the Amended Plan includes this Term Sheet and the Agreement as a condition to entry of the Confirmation Order and the Affirmation Order and the occurrence of the Effective Date, Settling Insurers agree to (a) timely vote their Indirect Abuse Claim and any other Claims held by them or their affiliates to accept the Amended Plan and not change or revoke their votes and (b) not "opt out" of the third-party releases contained in the Amended Plan, so long as Settling Insurers are included as a Protected Party in the Amended Plan, and the Amended Plan is otherwise consistent with the terms of this Term Sheet and the Agreement. For the avoidance of doubt, the foregoing vote shall not affect any objection or other position of the Settling Insurers in the event of a termination under Sections 29 or 30 or the failure of any condition contained herein.

25. **Discovery**. Upon the execution of the Term Sheet, the Parties shall (a) adjourn without date their pending discovery requests against and motions to compel discovery against each other, including the Settling Insurers' pending discovery requests and motions to compel directed at any holder of an Abuse Claim, representatives of such holders, funders, vendors utilized by representatives of such holders, BSA, the AHCLC, the Local Councils, the Coalition (including law firms and attorneys associated therewith), and the FCR, as applicable, and (b) upon execution of the Agreement such discovery, motions to compel and objections shall be withdrawn. So long as the Agreement has not been terminated, the Parties shall not seek or direct any additional discovery or objections at each other and the Settling Insurers shall not assert objection(s) in the Chapter 11 Cases, or any proceedings related to the Chapter 11 Cases. Settling Insurers shall cooperate and comply with information requests from the BSA, the Coalition, and the FCR on policy impairment and historical claims handling to the extent such information is not protected from disclosure and is reasonably necessary in support of the confirmation of the Amended Plan and consistent with the Term Sheet and Agreement; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to Mediator Gallagher, and the Parties agree to be bound by the Mediator's decision regarding such dispute. The extension granted the Settling Insurers to file or join expert reports is preserved and stayed by execution of the Term Sheet.

26. **Public Statements**. The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding settlement, including press

releases, court filings and in-court statements. Settling Insurers shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Settling Insurers may make statements to protect their rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and their representatives concerning Settling Insurers.

27. **No Assignment**. The Parties represent and warrant that they will not assign, transfer, or sell, any Cause of Action or Claim related to the Abuse Insurance Policies or in connection with the matters otherwise released against Settling Insurers and that they will not assist any other person in the establishment of a Claim against Settling Insurers relating to the Abuse Insurance Policies or the matters released. Nothing in the foregoing will prohibit the Parties or any Protected Party from transferring and assigning to the Trust all rights under this Term Sheet or the Agreement, or from assisting the Trust in pursuing any Claim arising out of or under same against anyone other than the Settling Insurers.

28. **Governing Law**. This Term Sheet and the Agreement shall be governed by Delaware law.

29. **Termination Event by the Debtors, the Coalition and the FCR**. Subject to the provisions of Section 31, the Agreement shall contain a termination event that shall permit the Debtors, the Coalition, or the FCR to terminate the Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Amended Plan under section 1126 of the Bankruptcy Code and as a result the Amended Plan is withdrawn. Subject to the foregoing sentence and Section 30, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Term Sheet and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Term Sheet, including the provisions constituting the approval of all of the terms and conditions hereof, and the Agreement, and (b) defend this Term Sheet and the Agreement.

30. **Fiduciary Out by the Debtors and the FCR**. Notwithstanding anything else in this Term Sheet or the Agreement to the contrary, no term or condition of this Term Sheet or the Agreement shall require BSA or the FCR to take or refrain from taking any action that it determines would be inconsistent with its fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Term Sheet or the Agreement, the Term Sheet or Agreement may be terminated (subject to the provisions of Section 31) at any time prior to the entry of a Final Order confirming the Amended Plan as to that party, *provided*, *however*, that the Debtors and the FCR each understands that the TCC is not a party to this Term Sheet and that the TCC and claimants represented by various plaintiff firms may object to the Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Term Sheet and the Agreement is consistent with their fiduciary duties as of the effective date of the Term Sheet, *provided*, *further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate the Agreement, such

FCRA00622

termination shall be with respect to the FCR only and not otherwise affect the Agreement or the other Parties' rights and obligations thereunder.

31. **Effect of Termination or Failure of Conditions to Occur**.  In the case of any termination described in Sections 29 or 30 above by the Debtors or any other situation where the Agreement does not proceed (including as a result of the failure of any condition thereto to occur or failure to obtain entry of the Confirmation Order), absent the consent of the Settling Insurers, the Settling Insurers shall be (i) afforded an opportunity to interpose all objections to any plan that does not afford them the protections and rights provided hereunder, notwithstanding any prior deadlines, law of the case or any determination made in the intervening period after execution of this Term Sheet (ii) afforded adequate additional time and relief from any deadline to prepare and present such objections including any expert reports and additional discovery and (iii) able to assert any and all positions in opposition to such plan and hearing schedule, none of which are waived or affected hereby.  For the avoidance of doubt, the approval of the Agreement and settlement provided herein shall be a condition to the entry of the Confirmation Order, entry of the Affirmation Order and the Effective Date of the Amended Plan, which condition may only be waived with the consent of each of the Parties.

32. **Effect of Reversal of Confirmation Order Following the Effective Date**.  In the event that the Confirmation Order is reversed or vacated on appeal following the Effective Date, such that the Release Date does not occur (a "Reversal"), the Parties and State Court Counsel agree that if the Initial Payment has been made, Settling Insurers shall be entitled to a credit equal to fifty percent (50%) of such payment to be applied in exchange for release of the Pre-Petition Century/Chubb Claims (as hereinafter defined) and the remaining fifty percent (50%) of such payment to be applied against any other liability Settling Insurers may have under or associated with any insurance policies issued to BSA or any Local Council (the "Credit"); *provided, however,* that any and all funds held in the Escrow Account (or, if there is a loss as a result of investment of the Escrowed Payments, then the funds remaining in the Escrow Account) shall be released from the Escrow Account to Settling Insurers promptly following the Reversal (or any exercise of the termination right described in Section 29 or Section 30 above or other condition permitting release of such funds provided herein).  The provisions of this Section 32 shall survive any Reversal, any exercise of any termination right described in Section 29 or Section 30 above, and any termination of the Agreement.  Nothing in this Section or elsewhere in this Term Sheet or the Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

33. **Other Settlements**.  To the extent that the Debtors or any other Person formed to assume the Debtors' liability for Abuse Claims, including the Settlement Trust, has settled or hereafter settles Claims arising out of Claims alleging Abuse Claims with any other Insurance Company, Chartered Organization or other Person, the Debtors or other Person formed to assume the Debtors' liability for Abuse Claims and Claims alleging Abuse Claims, shall obtain a waiver of that other Insurance Company, Chartered Organization or other Person's Claims against the Settling Insurers based upon, arising out of or in any way attributable to such Claims and/or their settlement and they shall further provide the releases set forth in Section 9 (and the assignment and releases in Sections 9 and 10 in the case of a Chartered Organization).  Such

FCRA00623

waiver may be accomplished by an assignment of such Claims to the Settlement Trust, whereupon such Claims will be released.

34. **State Court Counsel**.  Each State Court Counsel represents and warrants to the Parties that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

35. **Plan**.  The Debtors shall modify the Plan to be consistent with this Term Sheet and the Agreement.  The protections given to the Settling Insurers, and to their respective Affiliates and Representatives, as Protected Parties shall not be less than that afforded to any other Protected Parties under (i) the Amended Plan (other than the limited indemnity provided to the Local Councils under Article IV.M of the Amended Plan) or (ii) any other plan unless the Agreement has been validly terminated under Sections 29 or 30 prior to the filing of such plan subject to Section 31(i)-(iii) hereof.  The Amended Plan shall be subject to the inclusion of the Agreement as a condition to entry of the Confirmation Order and the occurrence of the Effective Date.  The inclusion of the Agreement in the Amended Plan shall not be waivable as a condition to entry of the Confirmation Order or the occurrence of the Effective Date absent the prior written consent of the Settling Insurers.

36. **Settlement of Pre-Petition Century/Chubb Claims**.  The Debtors currently assert certain Claims and Causes of Action against one or more of the Settling Insurers for payment of defense and indemnity costs allegedly owed as of the Petition Date (together with any and all Claims and Causes of Action that were or could have been asserted as of the Petition Date based upon the related or similar facts and circumstances, whether known or unknown, collectively, the "Pre-Petition Century/Chubb Claims").  Without limiting the generality and scope of the releases provided in the Term Sheet, the Amended Plan and the Agreement, the settlement provided herein shall constitute a full release of the Pre-Petition Century/Chubb Claims.  Upon the release of the Initial Payment, the Pre-Petition Century/Chubb Claims shall be irrevocably released against the Settling Insurers even in the case of a Reversal of the Confirmation Order.  The resolution of the Pre-Petition Century/Chubb Claims is a severable agreement in the case of a Reversal and will be approved by both the Confirmation Order and through a separate order (the "Pre-Petition Century/Chubb Claims Order"), which shall survive independently in the case of a Reversal affecting the Confirmation Order.

37. **Appeal**:  Upon the execution of the Agreement, the Settling Insurers and the Debtors shall (a) promptly thereafter jointly move to stay the appeal of the bar date order pending the Confirmation Order becoming a Final Order, which is captioned as follows: *Century Indemnity Company v. Boy Scouts of America and Delaware BSA, LLC*, Case No. 21-1792 (3d Cir.), on appeal to the United States Court of Appeals for the Third Circuit from the United States District Court for the District of Delaware, Case No. 20- 00774 and/or (b) to the extent that the court either declines to grant a stay or terminates a stay that is granted, the parties shall voluntarily dismiss the appeal but include in the stipulation of dismissal a binding agreement that the appeal is interlocutory.

38. **Definitions**:

"**Abuse Claims**" means a liquidated or unliquidated Claim against a Protected Party (including, the Settling Insurers) that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including but not limited to vicarious liability, alter ego, respondeat superior, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, breach of any other theory based upon or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party or any other Person for whom any Protected Party is alleged to be responsible. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, and any Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations; provided that no Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party if such Claim is wholly unrelated to Scouting; provided, further however, that any Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, and each of their Representatives, is necessarily Scouting-related and shall be considered an Abuse Claim.[8]

"**Affirmation Order**" shall have the meaning set forth in the Amended Plan and shall be in all respects, in form and substance acceptable to the Parties.

"**Century**" as used in this Term Sheet means: (a) Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America; (b) Century Indemnity Company as successor to CIGNA Specialty Insurance Company f/k/a California Union Insurance Company; (c) Insurance Company of North America; and (d) and each of their past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, predecessors, successors and assigns, each in their capacity as such; provided that the term "Century" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies[9] (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions

---

[8] The Parties will confer with TCJC and Hartford regarding the proposed revisions to the definition of Abuse Claim.
[9] The Plan definition will be expanded to include all such policies (e.g., Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies)) for Local Councils and Chartered Organizations.

FCRA00625

occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Post-Petition Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise.

"**Chubb Companies**" as used in this Term Sheet means: (a) Westchester Fire Insurance Company; (b) Westchester Surplus Lines Insurance Company; (c) Industrial Insurance Company of Hawaii; (d) Chubb Custom Insurance Company; (e) Federal Insurance Company; (f) Pacific Indemnity Company; (g) Texas Pacific Indemnity Company; (h) U.S. Fire Insurance Company, to the extent policies were assumed by or novated to Westchester Fire Insurance Company; (i) International Insurance Company to the extent policies were assumed by or novated to Westchester Fire Insurance Company; (j) Industrial Indemnity Company; (k) Pacific Employers Insurance Company; (l) The North River Insurance Company; (m) Aetna Insurance Company; (n) American Foreign Insurance Association; (o) Chubb Atlantic Indemnity Ltd.; and (p) INA Insurance Company of Illinois; (q) and each of their past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, predecessors, successors and assigns, each in their capacity as such provided that the term "Chubb" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies[10] (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Post-Petition Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise

"**Confirmation Order**" shall have the meaning set forth in the Amended Plan and be in form and substance acceptable to the Parties confirming and approving the Amended Plan including each and every term of the Agreement and the settlement provided herein.

"**Full Post-1975 Injunction**" means the channeling injunction applicable to Abuse Claims alleging first Abuse on or after January 1, 1976.

---

[10] The Plan definition will be expanded to include all such policies (e.g., Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies)) for Local Councils and Chartered Organizations.

**FCRA00626**

"**Initial Payment Date**" as used in this Term Sheet shall mean the earliest date on which all of the following conditions precedent have occurred, provided, however, that any of the following conditions precedent may be waived pursuant to a writing signed by each Party:

1.    Each Party has executed the Agreement;
2.    Settling Insurers have received a fully executed Local Council Release on behalf of each Local Council;
3.    The Bankruptcy Court has entered the Confirmation Order which has been affirmed by the District Court through the Affirmation Order, both in form and substance acceptable to Settling Insurers, Debtors, Coalition, and FCR as it pertains to this Term Sheet and the Agreement, which shall serve as the order approving this Agreement and shall include all necessary and appropriate findings and conclusions in relation thereto;
4.    The Confirmation Order provides for a release and channeling injunction for the benefit of the Settling Insurers, the Local Councils, and the Contributing Chartered Organizations consistent with the Term Sheet and the Agreement;
6.    The BSA has provided written notice to Settling Insurers that the Effective Date has occurred; and
7.    The Confirmation Order is effective and not stayed or otherwise subject to an injunction.

"**Mixed Claim**" means an Abuse Claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting ("Non-Scouting Abuse"). A claim shall not be treated as a Mixed Claim unless and until Scouting Abuse allegations have been asserted in the proceeding through the Complaint, sworn discovery or testimony.

"**Post-Petition Policies**" means insurance policies issued by the Settling Insurers to the Debtors or the Local Councils and effective on or after the Petition Date covering Claims and Causes of Action first arising after the Petition Date.

"**Other Chartered Organizations**" shall mean all Chartered Organizations other than TCJC, United Methodist Entities, and Roman Catholic Entities.

"**Release Date**" shall mean the earliest date on which all of the following conditions precedent have occurred, provided however, that any of the following conditions precedent may be waived pursuant to a writing signed by each Party:

1.    Each Party has executed the Agreement;
2.    Settling Insurers have received a fully executed Local Council Release on behalf of each Local Council;
3.    The Bankruptcy Court has entered the Confirmation Order which has been affirmed by the District Court through the Affirmation Order, both in form and substance acceptable to Settling Insurers, Debtors, Coalition, and FCR as it pertains to this Term Sheet and the Agreement, which shall serve as the order approving this

Agreement and shall include all necessary and appropriate findings and conclusions in relation thereto;

4. The Confirmation Order provides for a release and channeling injunction for the benefit of the Settling Insurers, the Local Councils, and the Contributing Chartered Organizations consistent with the Term Sheet and the Agreement;

6. The BSA has provided written notice to Settling Insurers that the Effective Date has occurred; and

7. The Confirmation Order is a Final Order.

"**Roman Catholic Entities**" shall mean each and every (i) Roman Catholic parish, school, diocese, archdiocese, association of religious or lay Persons in the United States or its territories that sponsored, promoted, hosted, was involved with, or provided any support in connection with Scouting activities in any way, including as a social service organization, ministry, camping ministry, or by the use of a camp facility, camp, retreat, or other facilities in connection with Scouting activities, regardless of whether any of the foregoing entities is or was a Chartered Organization at any time or whether such facilities were owned or leased by any of such entities or a third party; (ii) all entities listed or eligible to be listed in the Official Catholic Directory since January 1910, (iii) all Representatives of the foregoing, including their attorneys and the RCAHC. However, no Perpetrator is or shall be a Roman Catholic Entity.

"**Settling Insurer Policy Injunction**" means the channeling injunction applicable to Abuse Claims covered under any insurance policy issued by Settling Insurers.

"**TCJC**" shall mean The Church of Jesus Christ of Latter-day Saints, a Utah corporation, including any affiliates or personnel.

"**United Methodist Entities**" shall mean each and every (i) United Methodist local church, federated, or union church, including any Federated Church or Union Church that includes a historically United Methodist Church congregation, that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, regardless of whether such local, union, or federated church is or was a Chartered Organization at any time; (ii) church currently federated or yoked, and which current federated or yoked church includes a current or former United Methodist Church congregation that sponsored, promoted, hosted or provided any support in connection with Scouting activities; (iii) other United Methodist related or affiliated organizations that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, including any social service organization, ministry, camping ministry, camp facility, camp, retreat, or other facilities in the nature of a camp or retreat; (iv) any camp, retreat, or other facility in the nature of a camp or retreat that is not United Methodist related or affiliated, but otherwise promoted, hosted, or provided any support in connection with Scouting Activities for an entity described in (i), (ii) or (iii); (v) all organizations affiliated or related to (i) (ii), (iii) or (iv) including, but not limited to, the UMAHC, each district, annual conference, and jurisdictional conference of The United Methodist Church, the general, annual conference, district, local church agencies of The United Methodist Church, the Council of Bishops of The United Methodist Church, and the non-jural bodies commonly referred to as "The United Methodist Church,"

**FCRA00628**

the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

Settling Insurers' obligations under this Term Sheet remain subject to final executive approval to be obtained within three (3) business days of execution of this Term Sheet by the last date indicated in the signature blocks below. Failure to secure such approval renders this Term Sheet void.

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                      **Century Indemnity Company**

By: _____      By: _____

Name: Roger C. Mosby                Name: _____

Title: President and CEO            Title: _____

Date: December 13, 2021             Date: _____


**Westchester Fire Insurance Company**      **Federal Insurance Company**

By: _____      By: _____

Name: _____     Name: _____

Title: _____    Title: _____

Date: _____     Date: _____

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

FCRA00629

the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

Settling Insurers' obligations under this Term Sheet remain subject to final executive approval to be obtained within three (3) business days of execution of this Term Sheet by the last date indicated in the signature blocks below. Failure to secure such approval renders this Term Sheet void.

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**

By: _____

Name: _____

Title: _____

Date: _____

**Century Indemnity Company**

By: _R A O_

Name: _Robert M. Omrod_

Title: _President_

Date: _12/12/2021_

**Westchester Fire Insurance Company**

By: _____

Name: _____

Title: _____

Date: _____

**Federal Insurance Company**

By: _____

Name: _____

Title: _____

Date: _____

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

FCRA00630

the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

Settling Insurers' obligations under this Term Sheet remain subject to final executive approval to be obtained within three (3) business days of execution of this Term Sheet by the last date indicated in the signature blocks below. Failure to secure such approval renders this Term Sheet void.

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                    **Century Indemnity Company**

By: _____            By: _____

Name: _____            Name: _____

Title: _____            Title: _____

Date: _____            Date: _____


**Westchester Fire Insurance Company**  **Federal Insurance Company**

By: _Megan C Watt_____          By: _Megan C Watt_____

Name: _Megan C. Watt_____          Name: _Megan C. Watt_____

Title: _EVP, NA, Complex Claims_        Title: _EVP, NA, Complex Claims_

Date: _12|12|21_____           Date: _12|12|21_____

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**FCRA00631**

the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

Settling Insurers' obligations under this Term Sheet remain subject to final executive approval to be obtained within three (3) business days of execution of this Term Sheet by the last date indicated in the signature blocks below. Failure to secure such approval renders this Term Sheet void.

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                          **Century Indemnity Company**

By: _____              By: _____

Name: _____              Name: _____

Title: _____              Title: _____

Date: _____              Date: _____


**Westchester Fire Insurance Company**       **Federal Insurance Company**

By: _____              By: _____

Name: _____              Name: _____

Title: _____              Title: _____

Date: _____              Date: _____

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: 12/12/21

**FCRA00632**

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

David J. Molton

Dated: December 13, 2021

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

FCRA00633

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _Richard Mason, as chair_

Dated: _12/12/21_

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: /s/ _Kenneth M. Rothweiler_

Name: _Kenneth M. Rothweiler_

Title: _Co-founder Partner_

Date: _12/12/2021_

**Slater Slater & Schulman LLP**

By: /s/ _____

Name: _____

Title: _____

Date: _____

**Andrews & Thornton**

By: /s/ _____

Name: _____

Title: _____

Date: _____

By: /s/ _____

Name: _____

Title: _____

Date: _____

**ASK LLP**

By: /s/ _____

Name: _____

Title: _____

Date: _____

By: /s/ _____

Name: _____

Title: _____

Date: _____

FCRA00635

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: /s/ _____

Name: _____

Title: _____

Date: _____
_____

**Slater Slater & Schulman LLP**

By: /s/ _Adam P Slater_

Name: _Adam P Slater_

Title: _Partner_

Date: _12/12/24_

**Andrews & Thornton**

By: /s/ _____

Name: _____

Title: _____

Date: _____

By: /s/ _____

Name: _____

Title: _____

Date: _____

**ASK LLP**

By: /s/ _____

Name: _____

Title: _____

Date: _____

By: /s/ _____

Name: _____

Title: _____

Date: _____

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____
_____

**Slater Slater & Schulman LLP**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____
_____

**Andrews & Thornton**

By: _/s/_ _____

Name: Anne Andrews

Title: _____

Date: _____

**ASK LLP**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

**FCRA00637**

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____
_____

**Slater Slater & Schulman LLP**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____
_____

**Andrews & Thornton**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

**ASK LLP**

By: _/s/_ _____

Name: _Joseph L. Steinfeld, Jr._

Title: _Managing Partner_

Date: _December 13, 2021_

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

**Schedule 1**

**State Court Counsel**

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway, Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St., Ste. 900 Houston, TX 77056 | 1026 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com) 909 Texas St., Ste. 1801 Houston, TX 770022 | 690 |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East, Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW, Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd., Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St., Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |

FCRA00640

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. Houma, LA 70364 | 471 |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave., 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff, NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St., Ste. 950 New York, NY 10165 | 5893 |

64158222 v30-WorkSiteUS-036293/0001

**Known and Alleged BSA Insurance Policies Issued by Century**

**or a Chubb Company, as defined in the Term Sheet**

| Writing Company | Policy No. | Policy Start | Policy End |
|---|---|---|---|
| Insurance Company of North America | CGL 19 18 36 | 1/1/1962 | 1/1/1963 |
| Insurance Company of North America | CGL 20 46 80 | 1/1/1963 | 1/1/1964 |
| Insurance Company of North America | CGL 21 29 22 | 1/1/1964 | 1/1/1965 |
| Insurance Company of North America | CGL 23 24 70 | 1/1/1965 | 1/1/1966 |
| Insurance Company of North America | CGL 24 88 96 | 1/1/1966 | 1/1/1967 |
| Insurance Company of North America | GLP11200 | 1/1/1967 | 1/1/1968 |
| Insurance Company of North America | GLP15 12 11 | 1/1/1968 | 1/1/1969 |
| Insurance Company of North America | GLP 16 09 81 | 1/1/1969 | 1/1/1970 |
| Insurance Company of North America | XBC43198 | 3/26/1969 | 1/1/1970 |
| Insurance Company of North America | BLB 51323 | 1/1/1970 | 1/1/1972 |
| Insurance Company of North America | XBC 77302 | 1/1/1970 | 1/1/1971 |
| Insurance Company of North America | XBC85370 | 1/1/1971 | 5/3/1971 |
| Insurance Company of North America | GLP 70 64 52 | 1/1/1978 | 1/1/1980 |
| Insurance Company of North America | XBC 151748 | 1/1/1979 | 1/1/1980 |
| Insurance Company of North America | GLP 70 64 52 | 1/1/1980 | 1/1/1981 |
| Insurance Company of North America | ISL1353 | 1/1/1981 | 1/1/1982 |
| Insurance Company of North America | ISL1364 | 1/1/1982 | 1/1/1983 |
| Insurance Company of North America | XCP 144961 | 11/17/1982 | 11/16/1984 |
| Insurance Company of North America | ISL G0 28 34 57-1 | 1/1/1983 | 1/1/1984 |
| Insurance Company of North America | XCP144965 | 1/1/1983 | 1/1/1984 |
| Insurance Company of North America | XCP 144966 | 1/1/1983 | 1/1/1984 |
| Insurance Company of North America | XCP 145365 | 1/1/1984 | 1/1/1985 |
| Insurance Company of North America | XCP 145366 | 1/1/1984 | 1/1/1985 |
| Insurance Company of North America | ISL G0 29 31 72 2 | 1/1/1984 | 1/1/1985 |
| Insurance Company of North America | ISL G0 29 31 72 2 | 12/31/1984 | 3/1/1986 |
| Insurance Company of North America | XCP 144232 | 1/1/1985 | 3/1/1986 |
| International Insurance Company | 522 048501 | 1/1/1985 | 3/1/1986 |
| Federal Insurance Company | (86) 7928-83-37 | 1/1/1985 | 3/1/1986 |
| Insurance Company of North America | ISG GO 293149-7 | 1/1/1986 | 3/1/1986 |
| Insurance Company of North America | ISL G0 293184-9 | 3/1/1986 | 3/1/1987 |
| U.S. Fire Insurance Company | 523 425440 7 | 3/1/1986 | 3/1/1987 |
| Pacific Employers Ins. Company | XCC 001154 | 4/1/1986 | 3/1/1987 |
| Chubb Custom Insurance Company | 7931-00-02 | 6/3/1986 | 3/1/1987 |
| Insurance Company of North America | ISL G0 997957 8 | 3/1/1987 | 3/1/1988 |
| Insurance Company of North America | ISG GO 81 65 36-1 | 3/1/1987 | 3/1/1988 |
| U.S. Fire Insurance Company | 522 065060 1 | 3/1/1987 | 3/1/1988 |
| Insurance Company of North America | XCP-GO-816538-5 | 3/1/1987 | 3/1/1988 |
| Insurance Company of North America | HDO-G1-136741-0 | 3/1/1988 | 3/1/1990 |
| U.S. Fire Insurance Company | 531-200-352-6 | 3/1/1988 | 3/1/1989 |
| Insurance Company of North America | CAO G1 135164-5 | 3/1/1988 | 3/1/1990 |
| Insurance Company of North America | XCPG1-135165-7 | 3/1/1988 | 3/1/1989 |
| Federal Insurance Company | (89) 7907-8617 | 3/1/1988 | 3/1/1989 |

| Writing Company | Policy No. | Policy Start | Policy End |
|---|---|---|---|
| U.S. Fire Insurance Company | 531-201-602-7 | 3/1/1989 | 3/1/1990 |
| Federal Insurance Company | (90)7907 86 17 | 3/1/1989 | 3/1/1990 |
| Insurance Company of North America | HDO-G1-075409-4 | 3/1/1990 | 3/1/1991 |
| Insurance Company of North America | CAO G1 075410-0 | 3/1/1990 | 3/1/1991 |
| International Insurance Company | 531-202912-2 | 3/1/1990 | 3/1/1991 |
| Industrial Insurance Company of Hawaii | JE 910 7188 | 3/1/1990 | 3/1/1991 |
| Federal Insurance Company | (91)7907 86 17 | 3/1/1990 | 3/1/1991 |
| Federal Insurance Company | (91)7929-52-34 | 10/19/1990 | 3/1/1991 |
| Insurance Company of North America | HDO G1 07 54 47-1 | 3/1/1991 | 3/1/1992 |
| Insurance Company of North America | CAO G1 075448-3 | 3/1/1991 | 3/1/1992 |
| Industrial Indemnity | JE9108935 | 3/1/1991 | 3/1/1992 |
| International Insurance Company | 531-204182-1 | 3/1/1991 | 3/1/1992 |
| Federal Insurance Company | (92) 7907 86 17 | 3/1/1991 | 3/1/1992 |
| Insurance Company of North America | HDO G1 549654-A | 3/1/1992 | 3/1/1993 |
| Insurance Company of North America | CAO-G1-549655-1 | 3/1/1992 | 3/1/1993 |
| International Insurance Company | 531-205301-7 | 3/1/1992 | 3/1/1993 |
| California Union Insurance Company | ZCX 02 00 25 | 3/1/1992 | 3/1/1993 |
| Federal Insurance Company | (93) 7907-86-17 | 3/1/1992 | 3/1/1993 |
| Insurance Company of North America | HDO G1 549727-0 | 3/1/1993 | 3/1/1994 |
| Insurance Company of North America | CAO-G1-5497701 | 3/1/1993 | 3/1/1994 |
| Federal Insurance Company | (94) 7907-86-17 | 3/1/1993 | 3/1/1994 |
| Insurance Company of North America | HDO G1 549769-5 | 3/1/1994 | 3/1/1995 |
| Insurance Company of North America | CAO G1 549770-1 | 3/1/1994 | 3/1/1995 |
| Texas Pacific Indemnity Company | (95) 7907-86-17 | 3/1/1994 | 3/1/1995 |
| Indemnity Insurance Company of North America | HDO G1 54 98 13 4 | 3/1/1995 | 3/1/1996 |
| Indemnity Insurance Company of North America | CAO G1 549814 6 | 3/1/1995 | 3/1/1996 |
| Texas Pacific Indemnity Company | (96) 7907-86-17 | 3/1/1995 | 3/1/1996 |
| Texas Pacific Indemnity Company | (97) 7907-86-17 CAS | 3/1/1996 | 3/1/1997 |
| Texas Pacific Indemnity Company | (98) 7907-86-17 CAS | 3/1/1997 | 3/1/1998 |
| Texas Pacific Indemnity Company | (99) 7907-86-17 | 3/1/1998 | 3/1/1999 |
| Texas Pacific Indemnity Company | 7907-86-17 | 3/1/1999 | 3/1/2001 |
| Westchester Fire Insurance Company | HXS-648016 | 3/1/2001 | 3/1/2002 |
| Federal Insurance Company | 7907-86-17 | 3/1/2001 | 3/1/2002 |
| Westchester Fire Insurance Company | MES-676215 | 3/1/2002 | 3/1/2003 |
| Federal Insurance Company | 7907-86-17 DAL | 3/1/2002 | 3/1/2003 |
| Westchester Fire Insurance Company | HXS-648125 | 3/1/2002 | 3/1/2003 |
| Westchester Fire Insurance Company | HXS-744263 | 3/1/2003 | 3/1/2004 |
| Westchester Fire Insurance Company | HXW-776138 | 3/1/2004 | 3/1/2005 |
| Westchester Fire Insurance Company | G24114673001 | 3/1/2010 | 3/1/2011 |
| Westchester Fire Insurance Company | G24114673002 | 3/1/2011 | 3/1/2012 |
| Westchester Fire Insurance Company | G24114673003 | 3/1/2012 | 3/1/2013 |
| Westchester Fire Insurance Company | G24114673004 | 3/1/2013 | 3/1/2014 |

| Writing Company | Policy No. | Policy Start | Policy End |
|---|---|---|---|
| Westchester Fire Insurance Company | G24114673 005 | 3/1/2014 | 3/1/2015 |
| Westchester Surplus Lines Insurance Company | G71497094001 | 3/1/2019 | 3/1/2020 |

National Policy List: *This schedule identifies the liability insurance policies issued by the Settling Insurers to the Boy Scouts of America (BSA) for which policy contractual documents (in whole or in part) were found by the Settling Insurers. BSA has alleged that additional liability insurance policies were issued to BSA by the Settling Insurers, as reflected in the spreadsheet entitled "BSA National Council Policies_20210127," produced by BSA in the Data Room, Index No. 7.2.6 (bearing production number ABC000109385), and in the Disclosure Statement. That spreadsheet and the documents produced into the data room are incorporated herein by reference as part of this exhibit.*

**Known and Alleged Local Council Insurance Policies Issued by Century or a Chubb Company, as defined in the Term Sheet**

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 25103 | 6/1/1967 | 6/1/1972 | Abraham Lincoln: Abraham Lincoln |
| Insurance Company of North America | SBL 52409 | 2/23/1971 | 2/23/1972 | Alabama-Florida: Alabama-Florida 1963- |
| Insurance Company of North America | SBL 46909 | 3/1/1968 | 3/1/1971 | Allegheny Highlands: Elk Lick 1947-1973 |
| Insurance Company of North America | SBL 46929 | 3/1/1970 | 3/1/1971 | Aloha: Kilauea 1922-1972 |
| Insurance Company of North America | SBL 51410 | 3/1/1971 | 3/1/1972 | Aloha: Kilauea 1922-1972 |
| Insurance Company of North America | SBL 4 69 28 | 3/23/1968 | 3/23/1971 | Aloha: Maui County 1915-2019 |
| Insurance Company of North America | SBL 51515 | 3/23/1971 | 3/23/1972 | Aloha: Maui County 1915-2019 |
| Insurance Company of North America | SBL 41084 | 9/9/1965 | 9/9/1970 | Anthony Wayne Area: Anthony Wayne Area |
| Insurance Company of North America | XBC 116559 | 9/9/1975 | 1/1/1978 | Anthony Wayne Area: Anthony Wayne Area |
| Insurance Company of North America | SBL 46911 | 3/1/1968 | 3/1/1971 | Arbuckle Area: Arbuckle Area |
| Insurance Company of North America | SBL 5 14 15 | 3/1/1971 | 3/1/1972 | Arbuckle Area: Arbuckle Area |
| Insurance Company of North America | AGP 57 03 | 3/19/1966 | 3/19/1969 | Baden-Powell: Susquenango 1925-1998 |
| Insurance Company of North America | GLP 57 99 52 | 1/1/1975 | 5/14/1975 | Baden-Powell: Tioughnioga 1940-1975 |
| Insurance Company of North America | X OT 3 14 17 | 1/1/1975 | 5/14/1975 | Baden-Powell: Tioughnioga 1940-1975 |
| Insurance Company of North America | SBL 4 69 47 | 6/24/1968 | 6/24/1971 | Bay-Lakes: Badger 1926-1973 |
| Insurance Company of North America | SBL 51563 | 6/24/1971 | 6/24/1972 | Bay-Lakes: Badger 1926-1973 |
| Insurance Company of North America | SBL 4 53 79 | 2/10/1966 | 2/10/1967 | Bay-Lakes: Hiawathaland 1945-2012 |
| Insurance Company of North America | SBL-4-15-27 | 2/10/1967 | 2/10/1968 | Bay-Lakes: Hiawathaland 1945-2012 |
| Insurance Company of North America | SBL 4 15 46 | 2/10/1969 | 2/10/1970 | Bay-Lakes: Hiawathaland 1945-2012 |

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 41553 | 2/10/1970 | 2/10/1971 | Bay-Lakes: Hiawathaland 1945-2012 |
| Insurance Company of North America | SBL 4 15 61 | 2/10/1971 | 2/10/1972 | Bay-Lakes: Hiawathaland 1945-2012 |
| Insurance Company of North America | SBL 51311 | 1/1/1970 | 1/1/1973 | Bay-Lakes: Kettle Moraine 1935-1973 |
| Insurance Company of North America | SBL-4-15-29 | 7/1/1967 | 7/1/1968 | Bay-Lakes: Nicolet Area 1934-1973 |
| Insurance Company of North America | SBL 4 15 48 | 7/1/1969 | 7/1/1970 | Bay-Lakes: Nicolet Area 1934-1973 |
| Insurance Company of North America | SBL 4 15 55 | 7/1/1970 | 7/1/1971 | Bay-Lakes: Nicolet Area 1934-1973 |
| Insurance Company of North America | SBL 41567 | 7/1/1971 | 7/1/1972 | Bay-Lakes: Nicolet Area 1934-1973 |
| Insurance Company of North America | SBL 5 13 97 | 2/15/1971 | 2/15/1973 | Bay-Lakes: Valley 1925-1973 |
| Insurance Company of North America | SBL 5 04 23 | 5/25/1968 | 5/25/1971 | Bay-Lakes: Waumegesako 1940-1973 |
| Insurance Company of North America | SBL 5 15 42 | 5/25/1971 | 5/25/1972 | Bay-Lakes: Waumegesako 1940-1973 |
| Insurance Company of North America | SBL 44622 | 10/1/1967 | 10/1/1968 | Black Hills Area: Black Hills Area |
| Insurance Company of North America | SBL 44640 | 10/1/1968 | 10/1/1969 | Black Hills Area: Black Hills Area |
| Insurance Company of North America | SBL 44656 | 10/1/1969 | 10/1/1970 | Black Hills Area: Black Hills Area |
| Insurance Company of North America | SBL 44675 | 10/1/1970 | 10/1/1971 | Black Hills Area: Black Hills Area |
| Insurance Company of North America | GAL 21 17 76 | 10/1/1973 | 10/1/1974 | Black Hills Area: Black Hills Area |
| Insurance Company of North America | SBL 45386 | 6/1/1966 | 6/1/1969 | Black Warrior: Black Warrior |
| Insurance Company of North America | SBL 51185 | 6/1/1969 | 6/1/1972 | Black Warrior: Black Warrior |
| Insurance Company of North America | SBL 25062 | 3/13/1967 | 3/13/1968 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | SBL 48 903 | 3/13/1968 | 3/13/1969 | Blackhawk Area: Blackhawk Area 1971- |

FCRA00646

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 48909 | 3/13/1970 | 3/13/1971 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | GAL 21 08 60 | 3/13/1973 | 3/13/1974 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | GAL 21 10 26 | 3/13/1975 | 3/13/1976 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | XBC 11 31 12 | 3/13/1975 | 3/13/1976 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | GAL 21 10 48 | 3/13/1976 | 3/13/1977 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | GAL 21 09 06 | 3/13/1977 | 1/1/1978 | Blackhawk Area: Blackhawk Area 1971- |
| Insurance Company of North America | LAB 1 72 22 | 4/1/1966 | 4/1/1969 | Blue Ridge Mountains: Piedmont Area 1932-1972 |
| Insurance Company of North America | LAB 2 21 33 | 4/1/1969 | 4/1/1972 | Blue Ridge Mountains: Piedmont Area 1932-1972 |
| Insurance Company of North America | SBL 50425 | 6/11/1968 | 6/11/1971 | Buckeye: Columbiana 1953-1991 |
| Insurance Company of North America | SBL 51560 | 6/11/1971 | 6/11/1972 | Buckeye: Columbiana 1953-1991 |
| Insurance Company of North America | SBL 5 04 29 | 7/23/1968 | 7/23/1971 | Buckskin: Appalachian 1946-1956 |
| Insurance Company of North America | SBL 51578 | 7/23/1971 | 12/4/1971 | Buckskin: Appalachian 1956-1986 |
| Insurance Company of North America | XBC 22636 | 4/10/1966 | 4/10/1969 | Buckskin: Buckskin 1949- |
| Insurance Company of North America | XBC 2 29 75 | 4/10/1969 | 4/10/1972 | Buckskin: Buckskin 1949- |
| Insurance Company of North America | GLP 65 21 69 | 1/1/1977 | 1/1/1978 | Buckskin: Central West Virginia 1941-1990 |
| Insurance Company of North America | SBL 4 32 79 | 5/29/1970 | 5/29/1971 | Buckskin: Chief Cornstalk 1954-1990 |
| Insurance Company of North America | SBL 5 04 05 | 6/1/1968 | 6/1/1971 | Buckskin: Kootaga Area 1933-1991 |
| Insurance Company of North America | SBL 5 15 75 | 6/1/1971 | 6/1/1972 | Buckskin: Kootaga Area 1933-1991 |
| Insurance Company of North America | SBL 4 69 50 | 4/1/1968 | 4/1/1969 | Buckskin: Tri-State Area 1935-2014 |
| Insurance Company of North America | SBL 43267 | 10/1/1968 | 10/1/1971 | Bucktail: Bucktail |

FCRA00647

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 45422 | 7/13/1969 | 7/13/1970 | Buffalo Trail: Buffalo Trail |
| Insurance Company of North America | SBL 51302 | 11/26/1969 | 11/26/1972 | Calcasieu Area: Calcasieu Area |
| Insurance Company of North America | SBL 4 59 02 | 5/17/1968 | 5/17/1971 | California Inland Empire: Arrowhead Area 1933-1972 |
| Insurance Company of North America | SBL 4 53 77 | 1/10/1966 | 1/9/1969 | California Inland Empire: Grayback 1952-1974 |
| Insurance Company of North America | SBL 50438 | 1/10/1969 | 1/10/1972 | California Inland Empire: Grayback 1952-1974 |
| Insurance Company of North America | AGP-2-10-34 | 10/21/1969 | 10/21/1970 | Cape Cod and Islands: Cape Cod 1925-1981 |
| Insurance Company of North America | SBL 5 04 26 | 8/5/1968 | 8/5/1971 | Central Minnesota: Central Minnesota |
| Insurance Company of North America | SBL 45397 | 3/17/1967 | 3/17/1970 | Cherokee Area: Cherokee Area |
| Insurance Company of North America | SBL 51195 | 7/5/1969 | 7/5/1972 | Cherokee Area: Cherokee Area |
| Insurance Company of North America | SBL 53213 | 3/11/1970 | 3/11/1971 | Chester County: Chester County |
| Insurance Company of North America | SBL 5 32 52 | 3/11/1971 | 3/11/1972 | Chester County: Chester County |
| Insurance Company of North America | SBL 5 04 15 | 8/1/1968 | 8/1/1971 | Chickasaw: Chickasaw 1916- |
| Insurance Company of North America | SBL 52766 | 8/1/1971 | 8/1/1972 | Chickasaw: Chickasaw 1916- |
| Insurance Company of North America | SBL 4 69 17 | 3/15/1968 | 3/15/1971 | Choctaw Area: Choctaw Area |
| Insurance Company of North America | SBL 4 54 34 | 7/1/1971 | 7/1/1972 | Circle Ten: Circle Ten 1913- |
| Insurance Company of North America | SBL 5 10 71 | 6/7/1969 | 6/7/1970 | Coastal Carolina: Coastal Carolina |
| Insurance Company of North America | SBL 5 36 40 | 6/7/1971 | 6/7/1972 | Coastal Carolina: Coastal Carolina |
| Insurance Company of North America | SBL 51393 | 7/1/1970 | 7/1/1972 | Coastal Georgia: Okefenokee Area 1926-2014 |

FCRA00648

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 69 37 | 4/15/1968 | 4/15/1971 | Connecticut Rivers: Eastern Connecticut 1929-1972 |
| Insurance Company of North America | SBL 5 14 99 | 4/15/1971 | 4/15/1972 | Connecticut Rivers: Eastern Connecticut 1929-1972 |
| Insurance Company of North America | SBL 5 14 99 | 10/1/1971 | 4/15/1972 | Connecticut Rivers: Indian Trails 1971-1992 |
| Aetna Insurance Company | CG 67 34 60 | 12/15/1982 | 12/15/1983 | Connecticut Rivers: Long Rivers 1972-1995 |
| Insurance Company of North America | SBL 46918 | 3/20/1968 | 3/20/1971 | Connecticut Rivers: Nathan Hale 1967-1972 |
| Insurance Company of North America | SBL 51411 | 3/20/1971 | 3/20/1972 | Connecticut Rivers: Nathan Hale 1967-1972 |
| Insurance Company of North America | SBL 5 04 09 | 5/1/1968 | 5/1/1971 | Connecticut Rivers: Pequot 1935-1971 |
| Insurance Company of North America | SBL 5 15 38 | 5/1/1971 | 10/1/1971 | Connecticut Rivers: Pequot 1935-1971 |
| Insurance Company of North America | SBL 51586 | 6/28/1971 | 6/28/1972 | Connecticut Rivers: Tunxis 1947-1972 |
| Insurance Company of North America | SBL 46908 | 3/5/1968 | 3/5/1971 | Connecticut Yankee: Alfred W. Dater 1939-1972 |
| Insurance Company of North America | SBL 5 13 98 | 3/5/1971 | 3/5/1972 | Connecticut Yankee: Alfred W. Dater 1939-1972 |
| Insurance Company of North America | SBL 5 04 10 | 5/14/1968 | 5/14/1971 | Connecticut Yankee: Central Connecticut 1929-1978 |
| Insurance Company of North America | SBL 51549 | 5/14/1971 | 5/14/1972 | Connecticut Yankee: Central Connecticut 1929-1978 |
| Insurance Company of North America | XBC 11 73 80 | 7/1/1975 | 2/13/1977 | Connecticut Yankee: Central Connecticut 1929-1978 |
| Insurance Company of North America | GLP 63 06 26 | 2/13/1976 | 2/13/1977 | Connecticut Yankee: Central Connecticut 1929-1978 |
| Insurance Company of North America | XBC 11 75 11 | 2/13/1977 | 2/13/1978 | Connecticut Yankee: Central Connecticut 1929-1978 |

FCRA00649

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 5 29 23 | 2/1/1971 | 2/1/1972 | Connecticut Yankee: Quinnipiac 1935-1998 |
| Insurance Company of North America | SBL 28082 | 3/1/1967 | 3/1/1968 | Coronado Area: Coronado Area |
| Insurance Company of North America | SBL 28088 | 3/1/1968 | 3/1/1969 | Coronado Area: Coronado Area |
| Insurance Company of North America | SBL 5 11 88 | 3/1/1969 | 3/1/1970 | Coronado Area: Coronado Area |
| Insurance Company of North America | SBL 5 08 57 | 3/1/1970 | 1/1/1973 | Coronado Area: Coronado Area |
| Insurance Company of North America | SBL 4 41 51 | 2/1/1968 | 2/1/1971 | Cradle of Liberty: Philadelphia 1914-1996 |
| Insurance Company of North America | SBL 5 11 77 | 2/1/1969 | 2/1/1972 | Cradle of Liberty: Philadelphia 1914-1996 |
| Insurance Company of North America | SBL-44-1-85 | 3/14/1968 | 3/14/1969 | Cradle of Liberty: Valley Forge 1936-1996 |
| Insurance Company of North America | XCP 10769 | 6/1/1975 | 6/1/1978 | Crossroads of America: Crossroads of America 1972- |
| Insurance Company of North America | SBL 5 15 56 | 6/1/1971 | 6/1/1972 | Crossroads of America: Delaware County 1924-1972 |
| Insurance Company of North America | SBL-4-67-60 | 6/9/1968 | 6/9/1969 | Crossroads of America: Kikthawenund Area 1935-1972 |
| Insurance Company of North America | SBL 46782 | 6/9/1970 | 6/9/1971 | Crossroads of America: Kikthawenund Area 1935-1972 |
| Insurance Company of North America | SBL 46772 | 4/11/1969 | 4/11/1971 | Crossroads of America: Wabash Valley 1931-2002 |
| Insurance Company of North America | SBL 46798 | 4/11/1971 | 4/11/1972 | Crossroads of America: Wabash Valley 1931-2002 |
| Insurance Company of North America | ALB 54057 | 4/11/1972 | 4/11/1973 | Crossroads of America: Wabash Valley 1931-2002 |
| Insurance Company of North America | GLP 42 18 47 | 4/11/1973 | 4/11/1974 | Crossroads of America: Wabash Valley 1931-2002 |

FCRA00650

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | GLP 59 24 34 | 4/11/1975 | 12/2/1975 | Crossroads of America: Wabash Valley 1931-2002 |
| Insurance Company of North America | GLP 59 24 34 | 12/2/1975 | 4/11/1976 | Crossroads of America: Wabash Valley 1931-2002 |
| Insurance Company of North America | SBL 4 67 34 | 6/1/1967 | 6/1/1968 | Crossroads of America: Whitewater Valley 1935-1972 |
| Insurance Company of North America | SBL-4-67-59 | 6/1/1968 | 6/1/1969 | Crossroads of America: Whitewater Valley 1935-1972 |
| Insurance Company of North America | SBL 46781 | 6/1/1970 | 6/1/1971 | Crossroads of America: Whitewater Valley 1935-1972 |
| Insurance Company of North America | SBL 51307 | 1/1/1970 | 1/1/1973 | Crossroads of the West: Cache Valley Area 1924-1993 |
| Insurance Company of North America | SBL 5 15 47 | 5/1/1971 | 5/1/1972 | Crossroads of the West: Jim Bridger 1946-1993 |
| Insurance Company of North America | SBL 5 04 27 | 7/11/1968 | 7/11/1971 | Crossroads of the West: Utah National Parks -2020 |
| Insurance Company of North America | SBL 4 53 74 | 1/1/1966 | 1/1/1969 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | AGP 54W935 | 12/15/1972 | 12/15/1976 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | XBC 86865 | 12/15/1972 | 12/15/1973 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | XBC 11 37 84 | 12/15/1974 | 12/15/1975 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | AGP D0 00 83 93 8 | 12/1/1976 | 12/1/1978 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | XBC 14 35 33 | 12/15/1976 | 12/15/1977 | Dan Beard: Dan Beard 1956- |
| Insurance Company of North America | SBL 46921 | 3/5/1968 | 3/5/1971 | Denver Area: Western Colorado 1942-2019 |
| Insurance Company of North America | SBL 51399 | 3/5/1971 | 3/5/1972 | Denver Area: Western Colorado 1942-2019 |
| Insurance Company of North America | SBL 22920 | 7/1/1968 | 7/1/1971 | Dissolved: George Washington 1937-1999 |

FCRA00651

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 50402 | 6/10/1968 | 6/10/1971 | Dissolved: Middlesex 1929-1969 |
| Insurance Company of North America | SBL 5 15 27 | 6/10/1971 | 6/10/1972 | Dissolved: Middlesex 1929-1969 |
| Insurance Company of North America | SBL 50402 | 6/10/1968 | 6/10/1971 | Dissolved: Raritan 1927-1969 |
| Insurance Company of North America | SBL 50402 | 6/10/1968 | 6/10/1971 | Dissolved: Thomas A. Edison 1969-1999 |
| Insurance Company of North America | SBL 5 15 27 | 6/10/1971 | 6/10/1972 | Dissolved: Thomas A. Edison 1969-1999 |
| Insurance Company of North America | SBL 4 53 75 | 2/1/1966 | 2/1/1969 | Evangeline Area: Evangeline Area |
| Insurance Company of North America | AGP 15 39 33 | 4/19/1976 | 4/19/1977 | Five Rivers: Steuben Area 1931-1991 |
| Insurance Company of North America | SBL 48843 | 7/6/1971 | 7/5/1972 | Flint River: Flint River |
| Insurance Company of North America | SBL 50421 | 11/29/1968 | 11/29/1971 | French Creek: Custaloga 1969-1972 |
| Insurance Company of North America | SBL 50421 | 11/29/1968 | 11/29/1971 | French Creek: Mercer County 1927-1969 |
| Insurance Company of North America | SBL-4-32-87 | 6/25/1969 | 1/15/1970 | French Creek: Washington Trail 1944-1972 |
| Insurance Company of North America | SBL 4 32 98 | 1/15/1970 | 1/15/1972 | French Creek: Washington Trail 1944-1972 |
| Insurance Company of North America | SBL-4-46-14 | 6/1/1967 | 6/1/1968 | Gamehaven: Gamehaven |
| Insurance Company of North America | SBL-4-46-35 | 6/1/1968 | 6/1/1969 | Gamehaven: Gamehaven |
| Insurance Company of North America | SBL 4 46 49 | 6/1/1969 | 6/1/1970 | Gamehaven: Gamehaven |
| Insurance Company of North America | SBL 44671 | 6/1/1970 | 6/1/1971 | Gamehaven: Gamehaven |
| Insurance Company of North America | SBL 44689 | 6/1/1971 | 6/1/1972 | Gamehaven: Gamehaven |
| Insurance Company of North America | SBL 4 69 40 | 4/1/1968 | 4/1/1971 | Garden State: Southern New Jersey 1967-1990 |
| Insurance Company of North America | SBL 5 15 14 | 4/1/1971 | 4/1/1972 | Garden State: Southern New Jersey 1967-1990 |
| Insurance Company of North America | SBL 4 88 14 | 5/30/1968 | 5/30/1969 | Georgia-Carolina: Georgia-Carolina |

FCRA00652

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 15 49 | 7/10/1969 | 7/10/1970 | Glacier's Edge: Four Lakes 1928-2005 |
| Insurance Company of North America | SBL 4 15 56 | 7/10/1970 | 7/10/1971 | Glacier's Edge: Four Lakes 1928-2005 |
| Insurance Company of North America | SBL 45383 | 4/28/1966 | 4/28/1969 | Glacier's Edge: Sinnissippi 1966-2005 |
| Insurance Company of North America | SBL 50448 | 4/28/1969 | 4/28/1972 | Glacier's Edge: Sinnissippi 1966-2005 |
| Insurance Company of North America | SBL 5 11 80 | 3/2/1969 | 3/1/1972 | Golden Gate Area: Alameda -2020 |
| Insurance Company of North America | SBL 4 69 32 | 4/28/1968 | 4/28/1971 | Golden Gate Area: Silverado Area 1928-1992 |
| Insurance Company of North America | SBL 4 69 31 | 4/1/1968 | 4/1/1971 | Grand Canyon: Grand Canyon 1944-1993 |
| Insurance Company of North America | SBL 5 15 52 | 5/7/1971 | 5/7/1972 | Grand Columbia: Fort Simcoe Area 1954-1992 |
| Insurance Company of North America | SBL 4 69 48 | 6/1/1968 | 6/1/1971 | Grand Teton: Tendoy Area 1934-1993 |
| Insurance Company of North America | SBL 51558 | 6/1/1971 | 6/1/1972 | Grand Teton: Tendoy Area 1934-1993 |
| Insurance Company of North America | SBL 50432 | 12/1/1968 | 12/1/1971 | Grand Teton: Teton Peaks 1925-1993 |
| Insurance Company of North America | SBL 5 13 03 | 11/26/1969 | 1/1/1970 | Great Rivers: Great Rivers 1951- |
| Insurance Company of North America | SBL 4 69 16 | 3/11/1968 | 3/11/1971 | Great Trail: Mahoning Valley 1927-1993 |
| Insurance Company of North America | SBL 2 42 03 | 8/4/1969 | 8/4/1970 | Greater Alabama: Birmingham Area 1915-1996 |
| Insurance Company of North America | SBL 4 88 22 | 3/25/1969 | 3/25/1972 | Greater Alabama: Tennessee Valley 1934-1998 |
| Insurance Company of North America | SBL 45390 | 7/1/1966 | 4/1/1969 | Greater St. Louis Area: Cahokia Mound 1925-1991 |
| Insurance Company of North America | SBL 4 69 33 | 4/1/1968 | 4/1/1971 | Greater St. Louis Area: Okaw Valley 1965-2017 |
| Insurance Company of North America | SBL 5 15 16 | 4/1/1971 | 4/1/1972 | Greater St. Louis Area: Okaw Valley 1965-2017 |
| INA Insurance Company of Illinois | GLP 770115 | 1/1/1975 | 10/1/1975 | Greater St. Louis Area: Okaw Valley 1965-2017 |

FCRA00653

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | XBC 118599 | 1/1/1975 | 1/1/1976 | Greater St. Louis Area: Okaw Valley 1965-2017 |
| Insurance Company of North America | GLP 43 02 89 | 4/1/1975 | 4/1/1976 | Greater St. Louis Area: Saint Louis 1911-1995 |
| Insurance Company of North America | SBL 51306 | 1/1/1970 | 1/1/1973 | Greater St. Louis Area: Southeast Missouri 1930-1993 |
| Insurance Company of North America | SBL 5 11 90 | 6/1/1969 | 6/1/1972 | Greater Tampa Bay Area: Pinellas Area 1970-1978 |
| Insurance Company of North America | SBL 4 69 22 | 3/1/1968 | 3/1/1971 | Greater Wyoming: Central Wyoming 1918-2016 |
| Insurance Company of North America | SBL 5 15 17 | 3/1/1971 | 3/1/1972 | Greater Wyoming: Central Wyoming 1918-2016 |
| Insurance Company of North America | SBL 50441 | 1/25/1969 | 1/25/1972 | Greater Yosemite: Yosemite Area 1922-1998 |
| Insurance Company of North America | GLP 42 40 26 | 6/18/1974 | 9/11/1974 | Heart of America: Kansas City Area 1925-1974 |
| Insurance Company of North America | GLP 461031 | 5/27/1973 | 5/27/1976 | Heart of Virginia: Robert E. Lee 1953-2003 |
| Insurance Company of North America | GLP 64 71 57 | 5/27/1976 | 5/27/1977 | Heart of Virginia: Robert E. Lee 1953-2003 |
| Insurance Company of North America | SBL-4-67-26 | 2/27/1967 | 2/27/1968 | Hoosier Trails: White River Area 1927-1973 |
| Insurance Company of North America | SBL 46763 | 2/27/1969 | 2/27/1971 | Hoosier Trails: White River Area 1927-1973 |
| Insurance Company of North America | SBL 4 67 96 | 2/27/1971 | 2/27/1972 | Hoosier Trails: White River Area 1927-1973 |
| Insurance Company of North America | SBL 4 69 43 | 5/1/1968 | 5/1/1971 | Housatonic: Housatonic |
| Insurance Company of North America | SBL 51537 | 5/1/1971 | 5/1/1972 | Housatonic: Housatonic |
| Insurance Company of North America | GAL-40332 | 3/24/1968 | 3/24/1969 | Hudson Valley: Dutchess County 1919-1996 |
| Insurance Company of North America | GAL-8-46-50 | 3/24/1969 | 3/24/1970 | Hudson Valley: Dutchess County 1919-1996 |

FCRA00654

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | Unknown | 6/27/1973 | 1/1/1975 | Hudson Valley: Hudson-Delaware 1958-1996 |
| Insurance Company of North America | SBL 4 78 99 | 6/1/1967 | 5/31/1968 | Illowa: Illowa 1967- |
| Insurance Company of North America | SBL 52104 | 6/1/1969 | 6/1/1970 | Illowa: Illowa 1967- |
| Insurance Company of North America | SBL 52123 | 6/1/1970 | 6/1/1971 | Illowa: Illowa 1967- |
| Insurance Company of North America | GAL 12 73 95 | 6/1/1972 | 12/1/1972 | Illowa: Illowa 1967- |
| Insurance Company of North America | GAL 12 73 95 | 12/1/1972 | 6/1/1973 | Illowa: Illowa 1967- |
| Insurance Company of North America | XBC 10 19 73 | 12/1/1972 | 6/1/1973 | Illowa: Illowa 1967- |
| Insurance Company of North America | GAL 21 38 79 | 6/1/1973 | 6/1/1974 | Illowa: Illowa 1967- |
| Insurance Company of North America | XBC 10 21 77 | 6/1/1974 | 6/1/1975 | Illowa: Illowa 1967- |
| Insurance Company of North America | GAL 32 96 17 | 6/1/1975 | 6/1/1976 | Illowa: Illowa 1967- |
| Insurance Company of North America | GAL 34 36 68 | 6/1/1976 | 6/1/1977 | Illowa: Illowa 1967- |
| Insurance Company of North America | SBL 4 69 13 | 3/25/1968 | 3/25/1971 | Illowa: Prairie 1941-1993 |
| Insurance Company of North America | SBL 5 14 95 | 3/25/1971 | 3/25/1972 | Illowa: Prairie 1941-1993 |
| Insurance Company of North America | SBL-2-50-18 | 3/1/1966 | 3/1/1968 | Illowa: Sac-Fox 1959-1967 |
| Insurance Company of North America | SBL 50408 | 6/21/1968 | 6/21/1971 | Inland Northwest: Idaho Panhandle 1928-1992 |
| Insurance Company of North America | SBL 51572 | 6/21/1971 | 6/21/1972 | Inland Northwest: Idaho Panhandle 1928-1992 |
| Insurance Company of North America | XBC-24884 | 3/14/1968 | 3/14/1971 | Inland Northwest: Inland Empire 1931-1987 |
| Insurance Company of North America | XBC 8 89 86 | 6/10/1972 | 5/29/1973 | Inland Northwest: Inland Empire 1931-1987 |
| Insurance Company of North America | XBC 81983 | 11/1/1973 | 1/1/1976 | Iroquois Trail: Genesee 1925-1994 |

FCRA00655

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL-2-80-83 | 11/1/1967 | 11/1/1968 | Jayhawk Area: Jayhawk Area |
| Insurance Company of North America | SBL 28094 | 11/1/1968 | 11/1/1969 | Jayhawk Area: Jayhawk Area |
| Insurance Company of North America | SBL 50855 | 11/1/1969 | 11/1/1970 | Jayhawk Area: Jayhawk Area |
| Insurance Company of North America | SBL 50861 | 11/1/1970 | 11/1/1971 | Jayhawk Area: Jayhawk Area |
| Insurance Company of North America | SBL 50088 | 5/6/1971 | 5/6/1972 | Jersey Shore: Atlantic Area 1926-1992 |
| Insurance Company of North America | SBL 50087 | 5/11/1971 | 5/11/1972 | Jersey Shore: Ocean County 1940-1993 |
| Insurance Company of North America | SBL 5 04 14 | 7/15/1968 | 7/15/1971 | La Salle: Pioneer Trails 1935-1972 |
| Insurance Company of North America | SBL-4-67-66 | 12/29/1968 | 12/29/1969 | La Salle: Pioneer Trails 1935-1972 |
| Insurance Company of North America | SBL-4-67-50 | 2/26/1968 | 2/26/1969 | La Salle: Pottawattomie 1926-1972 |
| Insurance Company of North America | SBL 50451 | 2/26/1969 | 2/26/1972 | La Salle: Pottawattomie 1926-1972 |
| Insurance Company of North America | SBL 51942 | 6/28/1970 | 6/28/1973 | Lake Erie: Greater Cleveland -2017 |
| Insurance Company of North America | SBL-4-64-74 | 1/22/1968 | 1/22/1969 | Lake Erie: Johnny Appleseed Area 1926-1994 |
| Insurance Company of North America | SBL-5-19-01 | 1/22/1969 | 1/22/1970 | Lake Erie: Johnny Appleseed Area 1926-1994 |
| Insurance Company of North America | SBL 5 19 33 | 1/22/1970 | 1/22/1971 | Lake Erie: Johnny Appleseed Area 1926-1994 |
| Insurance Company of North America | SBL 5 19 58 | 1/22/1971 | 1/22/1972 | Lake Erie: Johnny Appleseed Area 1926-1994 |
| Insurance Company of North America | XUA 37 25 | 1/22/1971 | 1/22/1972 | Lake Erie: Johnny Appleseed Area 1926-1994 |
| Insurance Company of North America | SBL 51318 | 2/17/1970 | 2/17/1973 | Las Vegas Area: Boulder Dam Area 1944-2005 |
| Insurance Company of North America | SBL 43224 | 7/1/1967 | 1/1/1968 | Laurel Highlands: Allegheny 1921-1967 |

FCRA00656

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 32 55 | 1/1/1968 | 1/1/1969 | Laurel Highlands: Allegheny Trails 1967-1993 |
| Insurance Company of North America | SBL 43295 | 1/1/1970 | 1/1/1971 | Laurel Highlands: Allegheny Trails 1967-1993 |
| Insurance Company of North America | SBL 52313 | 1/1/1971 | 1/1/1972 | Laurel Highlands: Allegheny Trails 1967-1993 |
| Insurance Company of North America | GAL120157 | 1/1/1972 | 1/1/1973 | Laurel Highlands: Allegheny Trails 1967-1993 |
| Insurance Company of North America | GLP 40 87 78 | 1/1/1973 | 5/31/1973 | Laurel Highlands: Allegheny Trails 1967-1993 |
| Insurance Company of North America | SBL 4 69 20 | 3/1/1968 | 3/1/1971 | Laurel Highlands: Blair-Bedford 1929-1970 |
| Insurance Company of North America | SBL 51496 | 3/1/1971 | 3/1/1972 | Laurel Highlands: Blair-Bedford 1929-1970 |
| Insurance Company of North America | SBL 4 32 56 | 1/1/1968 | 1/1/1969 | Laurel Highlands: East Boroughs 1921-1973 |
| Insurance Company of North America | SBL 4 32 78 | 1/1/1969 | 1/1/1970 | Laurel Highlands: East Boroughs 1921-1973 |
| Insurance Company of North America | GAL 12 01 58 | 1/1/1972 | 1/1/1973 | Laurel Highlands: East Boroughs 1921-1973 |
| Insurance Company of North America | GLP 408779 | 1/1/1973 | 1/1/1974 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | XBC 8 63 64 | 1/1/1973 | 1/1/1974 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | GAL 20 60 95 | 1/1/1974 | 1/1/1975 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | XBC 110662 | 1/1/1974 | 1/1/1975 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | GAL 20 63 77 | 1/1/1975 | 1/1/1976 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | GAL 32 85 17 | 1/1/1976 | 1/1/1977 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | GAL 33 71 19 | 1/1/1977 | 1/1/1978 | Laurel Highlands: East Valley Area 1973-1993 |
| Insurance Company of North America | SBL-4-32-57 | 1/1/1968 | 1/1/1969 | Laurel Highlands: Monongahela Valley 1952-1971 |

FCRA00657

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | GAL 12 01 59 | 1/1/1972 | 1/1/1973 | Laurel Highlands: Mon-Yough 1971-1973 |
| Insurance Company of North America | SBL 45382 | 4/1/1966 | 6/15/1967 | Laurel Highlands: Nemacolin Trails 1964-1967 |
| Insurance Company of North America | SBL 5 15 22 | 2/16/1971 | 2/16/1972 | Laurel Highlands: Penn's Woods 1970-1992 |
| Insurance Company of North America | SBL 44476 | 3/1/1968 | 3/1/1969 | Lincoln Heritage: Audubon 1952-1994 |
| Insurance Company of North America | SBL 5 11 78 | 3/1/1969 | 3/1/1972 | Lincoln Heritage: Audubon 1952-1994 |
| Insurance Company of North America | SBL 44478 | 5/7/1968 | 5/7/1971 | Lincoln Heritage: Four Rivers 1940-1994 |
| Insurance Company of North America | SBL 5 04 28 | 11/19/1968 | 11/19/1971 | Lincoln Heritage: George Rogers Clark Area 1927-1993 |
| Insurance Company of North America | SBL 46936 | 4/1/1968 | 4/1/1971 | Long Beach Area: Long Beach Area |
| Insurance Company of North America | SBL 51508 | 4/1/1971 | 4/1/1972 | Long Beach Area: Long Beach Area |
| Insurance Company of North America | SBL 52108 | 11/12/1969 | 11/12/1970 | Longs Peak: Wyo-Braska 1936-1975 |
| Insurance Company of North America | SBL 52126 | 11/12/1970 | 11/12/1971 | Longs Peak: Wyo-Braska 1936-1975 |
| Insurance Company of North America | SBL 46901 | 1/14/1968 | 1/14/1971 | Los Padres: Santa Lucia Area 1939-1994 |
| Insurance Company of North America | SBL 5 13 94 | 1/14/1971 | 1/14/1973 | Los Padres: Santa Lucia Area 1939-1994 |
| Insurance Company of North America | SBL 3 12 49 | 4/27/1966 | 4/27/1972 | Louisiana Purchase: Ouachita Valley 1925-2003 |
| Insurance Company of North America | SBL 51181 | 4/10/1969 | 4/10/1972 | Marin: Marin |
| Insurance Company of North America | SBL 51194 | 7/1/1969 | 10/30/1969 | Mayflower: Squanto 1936-1969 |
| Insurance Company of North America | SBL 46919 | 3/29/1968 | 3/29/1971 | Michigan Crossroads: Blue Water 1939-2012 |
| Insurance Company of North America | SBL 51414 | 3/29/1971 | 3/29/1972 | Michigan Crossroads: Blue Water 1939-2012 |

FCRA00658

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 52003 | 5/1/1969 | 5/1/1970 | Michigan Crossroads: Chief Okemos 1932-2012 |
| Insurance Company of North America | SBL 52042 | 5/1/1970 | 5/1/1971 | Michigan Crossroads: Chief Okemos 1932-2012 |
| Insurance Company of North America | XPL 17689 | 5/1/1970 | 5/1/1971 | Michigan Crossroads: Chief Okemos 1932-2012 |
| Insurance Company of North America | SBL 52066 | 5/1/1971 | 5/1/1972 | Michigan Crossroads: Chief Okemos 1932-2012 |
| Insurance Company of North America | XPL 17748 | 5/1/1971 | 6/1/1972 | Michigan Crossroads: Chief Okemos 1932-2012 |
| Insurance Company of North America | SBL 4 24 72 | 6/1/1965 | 6/1/1968 | Michigan Crossroads: Clinton Valley 1937-2009 |
| Insurance Company of North America | SBL 52072 | 6/1/1971 | 6/1/1972 | Michigan Crossroads: Clinton Valley 1937-2009 |
| Insurance Company of North America | SBL-4-76-71 | 2/13/1967 | 2/13/1968 | Michigan Crossroads: Detroit Area -2009 |
| Insurance Company of North America | SBL 4 77 22 | 2/13/1968 | 2/13/1969 | Michigan Crossroads: Detroit Area -2009 |
| Insurance Company of North America | SBL 4 77 56 | 2/13/1969 | 2/13/1971 | Michigan Crossroads: Detroit Area -2009 |
| Insurance Company of North America | SBL 52065 | 2/13/1971 | 2/13/1972 | Michigan Crossroads: Detroit Area -2009 |
| Insurance Company of North America | SBL-4-24-73 | 5/20/1965 | 5/20/1968 | Michigan Crossroads: Grand Valley 1936-1975 |
| Insurance Company of North America | SBL-5-20-37 | 5/20/1970 | 5/20/1972 | Michigan Crossroads: Grand Valley 1936-1975 |
| Insurance Company of North America | GLP 43 22 35 | 1/1/1975 | 6/2/1975 | Michigan Crossroads: Grand Valley 1936-1975 |
| Insurance Company of North America | XBC 123702 | 1/1/1975 | 6/2/1975 | Michigan Crossroads: Grand Valley 1936-1975 |
| Insurance Company of North America | SBL 4 29 76 | 4/24/1965 | 4/24/1968 | Michigan Crossroads: Land O' Lakes 1937-1993 |

FCRA00659

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 69 30 | 4/24/1968 | 4/24/1971 | Michigan Crossroads: Land O' Lakes 1937-1993 |
| Insurance Company of North America | SBL 5 15 06 | 4/24/1971 | 4/23/1972 | Michigan Crossroads: Land O' Lakes 1937-1993 |
| Insurance Company of North America | SBL 52038 | 6/4/1970 | 6/3/1972 | Michigan Crossroads: Scenic Trails 1939-2012 |
| Insurance Company of North America | OBP 12 56 44 | 10/29/1972 | 1/1/1973 | Michigan Crossroads: Southwestern Michigan 1941-1973 |
| Insurance Company of North America | SBL 52007 | 6/12/1969 | 6/12/1970 | Michigan Crossroads: Tall Pine 1937-2012 |
| Insurance Company of North America | SBL 52046 | 6/12/1970 | 6/12/1971 | Michigan Crossroads: Tall Pine 1937-2012 |
| Insurance Company of North America | SBL 52012 | 7/27/1969 | 7/27/1970 | Michigan Crossroads: Timber Trails 1944-1975 |
| Insurance Company of North America | SBL 51315 | 3/1/1970 | 3/1/1972 | Michigan Crossroads: Wolverine 1925-1973 |
| Insurance Company of North America | SBL 52139 | 3/23/1971 | 3/23/1972 | Mid-America: Prairie Gold Area 1942-2000 |
| Insurance Company of North America | SBL 4 78 67 | 3/23/1967 | 3/22/1968 | Mid-America: Sergeant Floyd Area 1939-1972 |
| Insurance Company of North America | SBL 4 79 20 | 3/23/1968 | 3/23/1969 | Mid-America: Sergeant Floyd Area 1939-1972 |
| Insurance Company of North America | SBL 4 79 54 | 3/23/1969 | 3/23/1970 | Mid-America: Sergeant Floyd Area 1939-1972 |
| Insurance Company of North America | SBL 52117 | 3/23/1970 | 3/23/1971 | Mid-America: Sergeant Floyd Area 1939-1972 |
| Insurance Company of North America | SBL 52139 | 3/23/1971 | 3/23/1972 | Mid-America: Sergeant Floyd Area 1939-1972 |
| Insurance Company of North America | SBL 5 04 06 | 4/1/1968 | 4/1/1971 | Middle Tennessee: Middle Tennessee |
| Insurance Company of North America | SBL 4 53 76 | 1/24/1966 | 1/24/1969 | Mid-Iowa: Southern Iowa Area 1929-1970 |
| Insurance Company of North America | SBL 5 04 33 | 1/24/1969 | 5/1/1970 | Mid-Iowa: Southern Iowa Area 1929-1970 |
| Insurance Company of North America | SBL 4 85 34 | 5/1/1969 | 5/9/1969 | Minsi Trails: Lehigh County 1930-1969 |
| Insurance Company of North America | SBL-48567 | 1/1/1970 | 1/1/1973 | Minsi Trails: Minsi Trails 1968- |

FCRA00660

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | GLP 40 72 24 | 1/1/1973 | 1/1/1976 | Minsi Trails: Minsi Trails 1968- |
| Insurance Company of North America | SBL 5 04 24 | 6/20/1968 | 6/20/1971 | Mississippi Valley: Saukee Area 1935-1993 |
| Insurance Company of North America | SBL 5 15 61 | 6/20/1971 | 6/20/1972 | Mississippi Valley: Saukee Area 1935-1993 |
| Insurance Company of North America | SBL 4 69 46 | 6/1/1968 | 6/1/1971 | Mississippi Valley: Southeast Iowa 1929-1993 |
| Insurance Company of North America | SBL 5 15 59 | 6/1/1971 | 6/1/1972 | Mississippi Valley: Southeast Iowa 1929-1993 |
| Insurance Company of North America | SBL 51408 | 2/1/1971 | 2/1/1972 | Mobile Area: Mobile Area |
| Insurance Company of North America | SBL 46903 | 2/1/1968 | 2/1/1971 | Monmouth: Monmouth |
| Insurance Company of North America | SBL 51395 | 2/1/1971 | 2/1/1972 | Monmouth: Monmouth |
| Insurance Company of North America | GAL 11 68 75 | 2/1/1972 | 1/31/1973 | Montana: Western Montana 1924-1973 |
| Insurance Company of North America | SBL 50411 | 3/31/1968 | 3/31/1971 | Mountain West: Ore-Ida 1933-2020 |
| Insurance Company of North America | XBC 11 46 94 | 2/15/1974 | 2/1/1975 | Mountain West: Ore-Ida 1933-2020 |
| Insurance Company of North America | XBC 11 48 44 | 2/1/1975 | 2/1/1976 | Mountain West: Ore-Ida 1933-2020 |
| Insurance Company of North America | SBL 51184 | 6/4/1969 | 6/3/1972 | Mountaineer Area: Mountaineer Area |
| Insurance Company of North America | SBL-4-44-79 | 6/26/1968 | 6/26/1971 | Muskingum Valley: Muskingum Valley 1956- |
| Insurance Company of North America | SBL 25204 | 6/26/1971 | 2/1/1973 | Muskingum Valley: Muskingum Valley 1956- |
| Insurance Company of North America | SBL 5 13 14 | 3/1/1970 | 1/1/1973 | Narragansett: Annawon 1930-2016 |
| Insurance Company of North America | SBL 50614 | 11/1/1968 | 11/1/1971 | Narragansett: Cachalot 1935-1971 |
| Aetna Insurance Company | CPP 42 58 80 | 4/1/1982 | 4/1/1983 | National Capital Area: National Capital Area 1911- |
| Insurance Company of North America | ALB-4-84-03 | 10/20/1967 | 10/20/1970 | New Birth of Freedom: Keystone Area 1948-2010 |

FCRA00661

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 45384 | 4/8/1966 | 4/8/1969 | North Florida: North Florida |
| Insurance Company of North America | SBL 50444 | 4/8/1969 | 4/7/1972 | North Florida: North Florida |
| Insurance Company of North America | SBL-2-50-54 | 2/25/1967 | 2/25/1968 | Northeast Illinois: Evanston 1916-1969 |
| Insurance Company of North America | SBL-2-51-38 | 2/25/1968 | 6/12/1969 | Northeast Illinois: Evanston 1916-1969 |
| Insurance Company of North America | SBL 51814 | 6/12/1969 | 6/25/1970 | Northeast Illinois: Evanston-North Shore Area 1969-1971 |
| Insurance Company of North America | SBL 51833 | 6/25/1970 | 6/25/1971 | Northeast Illinois: Evanston-North Shore Area 1969-1971 |
| Insurance Company of North America | GAL 28017 | 6/25/1972 | 12/1/1972 | Northeast Illinois: Northeast Illinois 1971- |
| Insurance Company of North America | SBL 25 10 2 | 6/21/1967 | 6/21/1968 | Northeast Illinois: Oak Plain 1940-1971 |
| Insurance Company of North America | SBL 25 15 1 | 6/21/1968 | 6/21/1969 | Northeast Illinois: Oak Plain 1940-1971 |
| Insurance Company of North America | SBL 51808 | 6/21/1969 | 12/20/1972 | Northeast Illinois: Oak Plain 1940-1971 |
| Insurance Company of North America | SBL 4 69 34 | 4/1/1968 | 4/1/1970 | Northeastern Pennsylvania: Anthracite 1927-1970 |
| Insurance Company of North America | SBL 53071 | 3/30/1971 | 3/30/1974 | Northeastern Pennsylvania: Forest Lakes 1962-1990 |
| Insurance Company of North America | GLP 66 36 60 | 3/30/1977 | 1/1/1978 | Northeastern Pennsylvania: Forest Lakes 1962-1990 |
| Insurance Company of North America | SBL 51392 | 4/1/1970 | 4/1/1973 | Northeastern Pennsylvania: Penn Mountains 1970-1990 |
| Insurance Company of North America | SBL 4 53 72 | 1/1/1966 | 1/1/1969 | Northeastern Pennsylvania: Wyoming Valley 1925-1969 |
| Insurance Company of North America | SBL 50434 | 1/1/1969 | 4/1/1970 | Northeastern Pennsylvania: Wyoming Valley 1925-1969 |

FCRA00662

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL-4-46-37 | 7/1/1968 | 7/1/1969 | Northern Lights: Lake Agassiz 1933-1974 |
| Insurance Company of North America | SBL 4 46 52 | 7/1/1969 | 7/1/1970 | Northern Lights: Lake Agassiz 1933-1974 |
| Insurance Company of North America | SBL 4 46 90 | 7/1/1971 | 7/1/1972 | Northern Lights: Lake Agassiz 1933-1974 |
| Insurance Company of North America | GAL 13 57 61 | 7/1/1972 | 11/10/1972 | Northern Lights: Lake Agassiz 1933-1974 |
| Insurance Company of North America | SBL 4 46 78 | 1/17/1971 | 1/17/1972 | Northern Lights: Missouri Valley 1929-1974 |
| Insurance Company of North America | XBC 132519 | 1/1/1975 | 1/1/1976 | Northern Lights: Northern Lights 1974- |
| Insurance Company of North America | SBL-4-46-39 | 8/16/1968 | 8/16/1969 | Northern Lights: Red River Valley 1925-1974 |
| Insurance Company of North America | SBL 4 46 50 | 8/16/1969 | 8/16/1970 | Northern Lights: Red River Valley 1925-1974 |
| Insurance Company of North America | SBL 4 46 74 | 8/16/1970 | 8/16/1971 | Northern Lights: Red River Valley 1925-1974 |
| Insurance Company of North America | SBL 44688 | 8/16/1971 | 8/16/1972 | Northern Lights: Red River Valley 1925-1974 |
| Insurance Company of North America | SBL 45385 | 4/25/1966 | 4/25/1969 | Northern New Jersey: Aheka 1939-1972 |
| Insurance Company of North America | SBL 51182 | 4/25/1969 | 4/24/1972 | Northern New Jersey: Aheka 1939-1972 |
| Insurance Company of North America | SBL 4 69 45 | 4/1/1968 | 4/1/1971 | Northern New Jersey: Alexander Hamilton 1936-1968 |
| Insurance Company of North America | SBL 4 69 39 | 5/11/1968 | 5/11/1971 | Northern New Jersey: Alhtaha 1942-1972 |
| Insurance Company of North America | SBL 50420 | 11/1/1968 | 11/1/1971 | Northern New Jersey: Bayonne 1918-1993 |
| Insurance Company of North America | SBL 4 69 51 | 5/13/1968 | 5/13/1969 | Northern New Jersey: Hudson 1936-1968 |
| Insurance Company of North America | SBL 4 69 45 | 4/1/1968 | 4/1/1971 | Northern New Jersey: Hudson-Hamilton 1968-1993 |
| Insurance Company of North America | SBL 4 53 81 | 3/23/1966 | 3/23/1969 | Northern New Jersey: North Bergen County 1921-1969 |

FCRA00663

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 5 11 79 | 3/23/1969 | 3/23/1972 | Northern New Jersey: North Bergen County 1921-1969 |
| Insurance Company of North America | SBL 50403 | 6/14/1968 | 6/14/1971 | Northern New Jersey: Ridgewood and Glen Rock 1922-1997 |
| Insurance Company of North America | SBL 5 15 57 | 6/14/1971 | 6/14/1972 | Northern New Jersey: Ridgewood and Glen Rock 1922-1997 |
| Insurance Company of North America | SBL 4 69 44 | 5/13/1968 | 5/13/1971 | Northern New Jersey: Robert Treat 1933-1976 |
| Insurance Company of North America | SBL 5 15 44 | 5/13/1971 | 5/13/1972 | Northern New Jersey: Robert Treat 1933-1976 |
| Insurance Company of North America | SBL 45388 | 6/1/1966 | 6/1/1969 | Northern New Jersey: Tamarack 1935-1986 |
| Insurance Company of North America | SBL 5 11 86 | 6/1/1969 | 6/1/1972 | Northern New Jersey: Tamarack 1935-1986 |
| Insurance Company of North America | SBL 4 46 38 | 6/18/1968 | 6/18/1969 | Northern Star: Viking 1951-2005 |
| Insurance Company of North America | SBL 4 46 48 | 6/18/1969 | 6/18/1970 | Northern Star: Viking 1951-2005 |
| Insurance Company of North America | SBL 44669 | 6/18/1970 | 6/18/1971 | Northern Star: Viking 1951-2005 |
| Insurance Company of North America | SBL 4 88 35 | 7/29/1970 | 7/29/1971 | Northwest Georgia: Northwest Georgia |
| Insurance Company of North America | AGP D0 05 09 68 1 | 4/19/1977 | 1/9/1978 | Ohio River Valley: Fort Steuben Area 1929-1991 |
| Insurance Company of North America | SBL 43259 | 6/15/1968 | 6/15/1972 | Ohio River Valley: National Trail 1966-1991 |
| Insurance Company of North America | SBL 51056 | 6/9/1969 | 6/9/1970 | Old North State: Cherokee 1923-1994 |
| Insurance Company of North America | SBL 5 26 52 | 6/9/1970 | 6/9/1971 | Old North State: Cherokee 1923-1994 |
| Insurance Company of North America | SBL 5 10 55 | 4/24/1969 | 4/24/1970 | Old North State: General Greene 1947-1992 |
| Insurance Company of North America | SBL 52627 | 4/24/1970 | 4/24/1971 | Old North State: General Greene 1947-1992 |

FCRA00664

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 53619 | 4/24/1971 | 4/24/1972 | Old North State: General Greene 1947-1992 |
| Insurance Company of North America | SBL 5 11 92 | 5/29/1969 | 5/29/1972 | Old North State: Uwharrie 1923-1992 |
| Insurance Company of North America | SBL 4 59 03 | 12/1/1968 | 12/1/1971 | Orange County: North Orange 1965-1972 |
| Insurance Company of North America | SBL 51587 | 6/15/1971 | 6/15/1972 | Ozark Trails: Mo-Kan Area 1929-1994 |
| Insurance Company of North America | SBL 50443 | 2/16/1969 | 2/16/1972 | Pacific Harbors: Tumwater Area 1934-1993 |
| Insurance Company of North America | SBL 51197 | 10/1/1969 | 10/1/1972 | Pacific Harbors: Twin Harbors Area 1930-1993 |
| Insurance Company of North America | SBL 5 04 42 | 1/19/1969 | 1/19/1972 | Pacific Skyline: San Mateo County 1932-1994 |
| Insurance Company of North America | SBL 46904 | 2/18/1968 | 2/18/1971 | Pacific Skyline: Stanford Area 1940-1994 |
| Insurance Company of North America | SBL 51509 | 2/18/1971 | 2/18/1972 | Pacific Skyline: Stanford Area 1940-1994 |
| Insurance Company of North America | GAL 34 32 31 | 2/4/1977 | 1/1/1978 | Pacific Skyline: Stanford Area 1940-1994 |
| Insurance Company of North America | SBL 51087 | 7/1/1969 | 7/1/1970 | Palmetto: Palmetto |
| Insurance Company of North America | SBL 52670 | 7/1/1970 | 7/1/1971 | Palmetto: Palmetto |
| Insurance Company of North America | SBL 53661 | 7/1/1971 | 7/1/1972 | Palmetto: Palmetto |
| Insurance Company of North America | SBL-2-50-63 | 1/1/1967 | 1/1/1968 | Pathway to Adventure: Chicago Area 1930-2016 |
| Insurance Company of North America | SBL-2-51-31 | 1/1/1968 | 1/1/1969 | Pathway to Adventure: Chicago Area 1930-2016 |
| Insurance Company of North America | SBL 25162 | 1/1/1969 | 1/1/1970 | Pathway to Adventure: Chicago Area 1930-2016 |
| Insurance Company of North America | SBL 51835 | 1/1/1970 | 1/1/1971 | Pathway to Adventure: Chicago Area 1930-2016 |
| Insurance Company of North America | SBL 5 18 50 | 1/1/1971 | 1/1/1972 | Pathway to Adventure: Chicago Area 1930-2016 |

FCRA00665

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 52763 | 5/13/1971 | 5/13/1972 | Pathway to Adventure: Northwest Suburban 1926-2016 |
| Insurance Company of North America | SBL 2 50 73 | 4/2/1966 | 4/2/1968 | Pathway to Adventure: Thatcher Woods Area 1941-1993 |
| Insurance Company of North America | SBL 25148 | 4/2/1968 | 4/2/1969 | Pathway to Adventure: Thatcher Woods Area 1941-1993 |
| Insurance Company of North America | SBL 51801 | 4/2/1969 | 4/2/1970 | Pathway to Adventure: Thatcher Woods Area 1941-1993 |
| Insurance Company of North America | SBL 51825 | 4/2/1970 | 4/2/1971 | Pathway to Adventure: Thatcher Woods Area 1941-1993 |
| Insurance Company of North America | SBL 51856 | 4/2/1971 | 4/2/1972 | Pathway to Adventure: Thatcher Woods Area 1941-1993 |
| Insurance Company of North America | SBL 50419 | 10/1/1968 | 10/1/1971 | Pathway to Adventure: West Suburban 1918-1993 |
| Insurance Company of North America | SBL 21690 | 5/27/1971 | 5/27/1972 | Patriots' Path: Watchung Area 1926-1999 |
| Insurance Company of North America | SBL 5 04 07 | 7/1/1968 | 7/1/1971 | Pee Dee Area: Pee Dee Area |
| Insurance Company of North America | SBL 51579 | 7/1/1971 | 7/1/1972 | Pee Dee Area: Pee Dee Area |
| Insurance Company of North America | SBL 4 85 12 | 12/16/1968 | 12/16/1971 | Pennsylvania Dutch: Lancaster County 1924-1971 |
| Insurance Company of North America | XBC 9 67 55 | 11/28/1972 | 1/1/1975 | Pennsylvania Dutch: Lancaster-Lebanon 1971-1995 |
| Insurance Company of North America | XBC 11 69 81 | 1/1/1975 | 1/1/1976 | Pennsylvania Dutch: Lancaster-Lebanon 1971-1995 |
| Insurance Company of North America | SBL 4 84 45 | 4/26/1968 | 4/26/1969 | Pennsylvania Dutch: Lebanon County 1924-1971 |

FCRA00666

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 84 45 | 4/26/1969 | 4/26/1971 | Pennsylvania Dutch: Lebanon County 1924-1971 |
| Insurance Company of North America | SBL 5 30 73 | 4/26/1971 | 1/1/1975 | Pennsylvania Dutch: Lebanon County 1924-1971 |
| Insurance Company of North America | SBL 4 53 99 | 6/1/1967 | 6/1/1970 | Piedmont: Piedmont |
| Insurance Company of North America | SBL 51085 | 6/15/1969 | 6/15/1970 | Piedmont: Piedmont |
| Insurance Company of North America | SBL 5 13 90 | 6/1/1970 | 6/1/1972 | Piedmont: Piedmont |
| Insurance Company of North America | SBL 52676 | 6/15/1970 | 6/15/1971 | Piedmont: Piedmont |
| Insurance Company of North America | SBL 53638 | 6/15/1971 | 6/15/1972 | Piedmont: Piedmont |
| Insurance Company of North America | SBL 5 08 54 | 12/29/1969 | 12/29/1970 | Pony Express: Pony Express |
| Insurance Company of North America | SBL 5 08 62 | 12/29/1970 | 12/29/1971 | Pony Express: Pony Express |
| Insurance Company of North America | SBL 5 04 12 | 6/1/1968 | 6/1/1971 | Prairielands: Arrowhead 1933-1991 |
| Insurance Company of North America | SBL 51570 | 6/1/1971 | 6/1/1972 | Prairielands: Arrowhead 1933-1991 |
| Insurance Company of North America | SBL 4 69 41 | 5/27/1968 | 5/27/1971 | Quapaw Area: Ouachita Area 1925-2012 |
| Insurance Company of North America | SBL-2-80-81 | 6/1/1967 | 6/1/1968 | Quivira: Quivira 1918- |
| Insurance Company of North America | SBL 5 08 63 | 6/1/1971 | 5/31/1972 | Quivira: Quivira 1918- |
| Insurance Company of North America | SBL 5 15 50 | 5/28/1971 | 12/31/1971 | Quivira: Sekan Area 1930-1972 |
| Insurance Company of North America | SBL 46920 | 3/2/1968 | 3/2/1971 | Rainbow: Rainbow |
| Insurance Company of North America | SBL 51497 | 3/2/1971 | 3/2/1972 | Rainbow: Rainbow |
| Insurance Company of North America | SBL 51574 | 5/20/1971 | 5/20/1972 | Redwood Empire: Sonoma-Mendocino Area 1944-1992 |
| Insurance Company of North America | AGP-82-37 | 11/12/1966 | 11/12/1969 | Rip Van Winkle: Rip Van Winkle 1950- |

FCRA00667

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | AGP-82-72 | 11/12/1969 | 7/11/1972 | Rip Van Winkle: Rip Van Winkle 1950- |
| Insurance Company of North America | GAL 227276 | 1/1/1975 | 1/1/1976 | Rip Van Winkle: Rip Van Winkle 1950- |
| Insurance Company of North America | XBC 99313 | 1/1/1975 | 1/1/1976 | Rip Van Winkle: Rip Van Winkle 1950- |
| Insurance Company of North America | GAL 344145 | 1/1/1976 | 1/1/1977 | Rip Van Winkle: Rip Van Winkle 1950- |
| Insurance Company of North America | GAL 36 28 32 | 1/1/1977 | 1/1/1978 | Rip Van Winkle: Rip Van Winkle 1950- |
| Insurance Company of North America | SBL 41085 | 10/1/1965 | 10/1/1970 | Sagamore: Meshingomesia 1929-1973 |
| Insurance Company of North America | SBL 4 15 40 | 6/1/1968 | 6/1/1971 | Samoset: Samoset |
| Insurance Company of North America | SBL 4 15 64 | 6/1/1971 | 6/1/1972 | Samoset: Samoset |
| Insurance Company of North America | SBL 4 69 35 | 4/1/1968 | 4/1/1971 | San Diego-Imperial: Desert Trails 1959-1993 |
| Insurance Company of North America | SBL 50430 | 11/1/1968 | 11/1/1971 | Santa Fe Trail: Santa Fe Trail |
| Insurance Company of North America | GLP 32 23 19 | 5/17/1972 | 5/21/1972 | Seneca Waterways: Finger Lakes 1924-2009 |
| Insurance Company of North America | SBL 45380 | 3/1/1966 | 3/1/1969 | Sequoia: Mount Whitney Area 1929-1992 |
| Insurance Company of North America | SBL 50440 | 3/1/1969 | 3/1/1972 | Sequoia: Mount Whitney Area 1929-1992 |
| Insurance Company of North America | SBL 4 69 27 | 3/1/1968 | 3/1/1971 | Sequoia: Sequoia 1925- |
| Insurance Company of North America | SBL 5 15 10 | 3/1/1971 | 3/1/1972 | Sequoia: Sequoia 1925- |
| Insurance Company of North America | SBL 51193 | 6/11/1969 | 6/11/1972 | Sequoyah: Sequoyah |
| Insurance Company of North America | SBL 50413 | 7/1/1968 | 7/1/1971 | Simon Kenton: Chief Logan 1944-1994 |
| Insurance Company of North America | SBL 51585 | 7/1/1971 | 7/1/1972 | Simon Kenton: Chief Logan 1944-1994 |
| Insurance Company of North America | SBL 4 29 58 | 1/14/1965 | 1/14/1968 | Simon Kenton: Licking County 1922-1987 |

FCRA00668

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 46902 | 1/14/1968 | 6/28/1970 | Simon Kenton: Licking County 1922-1987 |
| Insurance Company of North America | SBL 4 53 93 | 11/1/1966 | 11/1/1967 | Sioux: Pheasant 1942-1978 |
| Insurance Company of North America | SBL 5 11 99 | 11/1/1969 | 11/1/1972 | Sioux: Pheasant 1942-1978 |
| Insurance Company of North America | AGP 14 41 08 | 1/1/1976 | 1/1/1978 | Sioux: Pheasant 1942-1978 |
| Insurance Company of North America | GLP-07-93-29 | 5/13/1967 | 5/13/1968 | Sioux: Sioux 1927- |
| Insurance Company of North America | GLP-14-72-39 | 5/13/1968 | 5/13/1969 | Sioux: Sioux 1927- |
| Insurance Company of North America | GLP 22 78 40 | 5/13/1969 | 5/13/1970 | Sioux: Sioux 1927- |
| Insurance Company of North America | GLP 22 79 77 | 5/13/1970 | 5/13/1971 | Sioux: Sioux 1927- |
| Insurance Company of North America | GLP 30 83 96 | 5/13/1971 | 5/12/1972 | Sioux: Sioux 1927- |
| Insurance Company of North America | GAL 21 16 51 | 1/1/1973 | 5/24/1973 | Sioux: Sioux 1927- |
| Insurance Company of North America | XBC 97586 | 1/1/1973 | 1/1/1974 | Sioux: Sioux 1927- |
| Insurance Company of North America | AGP 13 14 41 | 5/24/1973 | 1/1/1974 | Sioux: Sioux 1927- |
| Insurance Company of North America | AGP 13 14 75 | 1/1/1974 | 1/1/1978 | Sioux: Sioux 1927- |
| Insurance Company of North America | XBC 97752 | 1/1/1974 | 1/1/1976 | Sioux: Sioux 1927- |
| Insurance Company of North America | SBL 5 11 87 | 4/23/1969 | 4/23/1972 | South Georgia: Chehaw 1939-1984 |
| Insurance Company of North America | SBL 51305 | 1/1/1970 | 1/1/1973 | Southwest Florida: Southwest Florida 1966- |
| Insurance Company of North America | SBL 50422 | 11/17/1968 | 11/17/1971 | Southwest Florida: Sunny Land 1925-1995 |
| Insurance Company of North America | SBL 46915 | 3/6/1970 | 3/6/1971 | Spirit of Adventure: Lone Tree 1926-1993 |
| Insurance Company of North America | SBL 51409 | 3/6/1971 | 3/6/1972 | Spirit of Adventure: Lone Tree 1926-1993 |
| Insurance Company of North America | SBL 50418 | 6/10/1968 | 6/10/1971 | Spirit of Adventure: North Essex 1925-1993 |
| Insurance Company of North America | SBL 51562 | 6/10/1971 | 6/10/1972 | Spirit of Adventure: North Essex 1925-1993 |

FCRA00669

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | XBC-73765 | 6/1/1970 | 3/9/1972 | Suffolk County: Suffolk County |
| Insurance Company of North America | XBC 73765 | 3/9/1972 | 3/7/1973 | Suffolk County: Suffolk County |
| Insurance Company of North America | XBC 73765 | 3/7/1973 | 6/1/1973 | Suffolk County: Suffolk County |
| Insurance Company of North America | XBC 9 85 02 | 1/1/1972 | 10/18/1972 | Susquehanna: Susquehanna 1975- |
| Insurance Company of North America | XBC 9 85 02 | 10/18/1972 | 1/1/1975 | Susquehanna: Susquehanna 1975- |
| Insurance Company of North America | SBL 4 84 64 | 6/14/1968 | 6/14/1971 | Susquehanna: Susquehanna Valley Area 1927-1975 |
| Insurance Company of North America | SBL 53078 | 7/14/1971 | 2/22/1973 | Susquehanna: Susquehanna Valley Area 1927-1975 |
| Insurance Company of North America | GLP 411728 | 2/22/1973 | 2/22/1975 | Susquehanna: Susquehanna Valley Area 1927-1975 |
| Insurance Company of North America | XBC 9 68 34 | 2/22/1973 | 2/22/1975 | Susquehanna: Susquehanna Valley Area 1927-1975 |
| Insurance Company of North America | SBL-4-48-96 | 2/9/1967 | 2/9/1970 | Susquehanna: West Branch 1935-1975 |
| Insurance Company of North America | GLP 40 76 42 | 2/9/1973 | 3/26/1975 | Susquehanna: West Branch 1935-1975 |
| Insurance Company of North America | XBC 9 68 17 | 2/9/1973 | 2/9/1976 | Susquehanna: West Branch 1935-1975 |
| Insurance Company of North America | SBL 5 13 91 | 4/1/1970 | 4/1/1972 | Texas Southwest: Concho Valley 1926-2012 |
| Insurance Company of North America | SBL 5 14 98 | 2/15/1971 | 2/15/1972 | Texas Trails: Chisholm Trail 1926-2003 |
| Insurance Company of North America | SBL 45425 | 12/5/1969 | 12/5/1970 | Texas Trails: Comanche Trail 1932-2003 |
| Insurance Company of North America | XBC 41011 | 1/12/1967 | 1/12/1970 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | XBC 43053 | 1/12/1970 | 1/12/1973 | Theodore Roosevelt: Nassau County 1916-1997 |

FCRA00670

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | GLP 28 44 92 | 2/20/1971 | 2/20/1972 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | AGP 09 98 41 | 1/1/1972 | 1/1/1973 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | AGP 09 98 41 | 1/1/1973 | 1/1/1976 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | XBC 45540 | 1/12/1973 | 1/12/1976 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | XCP 12350 | 1/12/1976 | 3/1/1976 | Theodore Roosevelt: Nassau County 1916-1997 |
| Insurance Company of North America | RWP-2-70-86 | 1/1/1967 | 1/1/1970 | Three Fires: Du Page Area 1928-1992 |
| Insurance Company of North America | SBL 5 11 76 | 4/29/1969 | 4/29/1972 | Three Fires: Du Page Area 1928-1992 |
| Insurance Company of North America | XPL 17137 | 4/29/1970 | 4/29/1972 | Three Fires: Du Page Area 1928-1992 |
| Insurance Company of North America | SBL-2-51-43 | 3/1/1968 | 3/1/1969 | Three Fires: Two Rivers 1968-1992 |
| Insurance Company of North America | SBL 51826 | 3/1/1970 | 3/1/1971 | Three Fires: Two Rivers 1968-1992 |
| Insurance Company of North America | SBL 5 18 58 | 3/1/1971 | 3/1/1972 | Three Fires: Two Rivers 1968-1992 |
| Insurance Company of North America | GAL 24 20 22 | 1/1/1975 | 1/1/1976 | Three Fires: Two Rivers 1968-1992 |
| Insurance Company of North America | GAL 23 79 42 | 1/1/1976 | 1/1/1977 | Three Fires: Two Rivers 1968-1992 |
| INA Insurance Company of Illinois | GAL 23 74 77 | 1/1/1977 | 1/1/1978 | Three Fires: Two Rivers 1968-1992 |
| Insurance Company of North America | SBL 41526 | 2/5/1967 | 2/5/1968 | Three Harbors: Kenosha 1961-1972 |
| Insurance Company of North America | SBL-4-15-31 | 10/1/1967 | 10/1/1968 | Three Harbors: Milwaukee County 1929-2011 |
| Insurance Company of North America | SBL 4 15 42 | 10/1/1968 | 10/1/1969 | Three Harbors: Milwaukee County 1929-2011 |

FCRA00671

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 4 15 50 | 10/1/1969 | 10/1/1970 | Three Harbors: Milwaukee County 1929-2011 |
| Insurance Company of North America | SBL 4 15 59 | 10/1/1970 | 10/1/1971 | Three Harbors: Milwaukee County 1929-2011 |
| Insurance Company of North America | SBL 5 11 91 | 6/15/1969 | 6/15/1972 | Three Harbors: Racine County 1927-1972 |
| Insurance Company of North America | GAL 21 23 07 | 1/1/1976 | 1/1/1977 | Three Harbors: Southeast Wisconsin 1972-2011 |
| Insurance Company of North America | ALB-4-17-88 | 1/1/1967 | 1/1/1970 | Tidewater: Tidewater |
| Insurance Company of North America | SBL 45391 | 11/1/1966 | 11/1/1969 | Tukabatchee Area: Tukabatchee Area |
| Insurance Company of North America | SBL 5 11 98 | 11/1/1969 | 11/1/1972 | Tukabatchee Area: Tukabatchee Area |
| Insurance Company of North America | SBL 45389 | 6/20/1966 | 6/20/1967 | Twin Valley: Cedar Valley Area 1937-1969 |
| Insurance Company of North America | SBL 44646 | 10/1/1968 | 10/1/1969 | Twin Valley: Twin Valley 1969- |
| Insurance Company of North America | SBL 4 46 54 | 10/1/1969 | 10/1/1970 | Twin Valley: Twin Valley 1969- |
| Insurance Company of North America | SBL 44673 | 10/1/1970 | 10/1/1971 | Twin Valley: Twin Valley 1969- |
| Insurance Company of North America | GAL 11 80 46 | 10/1/1971 | 10/1/1972 | Twin Valley: Twin Valley 1969- |
| Insurance Company of North America | GAL 13 61 40 | 10/1/1972 | 1/1/1973 | Twin Valley: Twin Valley 1969- |
| Insurance Company of North America | OLT 78 88 36 | 5/24/1966 | 5/24/1969 | Troop #2, Wynnewood Troop |
| Insurance Company of North America | GLP-4-20-49 | 1/26/1967 | 4/9/1969 | Troop #208 |
| Insurance Company of North America | GLP-4-20-28 | 3/28/1967 | 3/28/1968 | Troop #19 of Seaside Park |
| Insurance Company of North America | GLP-07-08-30 | 5/3/1967 | 5/3/1970 | St. Mary's Pack #151 |
| Insurance Company of North America | GLP 07 17 68 | 6/10/1967 | 6/10/1970 | Troop #36 |
| Insurance Company of North America | GLP-06-40-05 | 10/4/1967 | 8/7/1969 | Troop #28 |

FCRA00672

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | GLP-13-77-44 | 1/11/1968 | 1/11/1969 | Troop #70 |
| Insurance Company of North America | GLP-14-65-79 | 2/14/1968 | 2/14/1969 | Keepataw Trail Inc. (Troop 149) |
| Insurance Company of North America | GLP-13-44-76 | 2/16/1968 | 2/16/1971 | Troop #84 North Wales Scout Center |
| Insurance Company of North America | GLP-13-82-64 | 3/6/1968 | 3/6/1969 | Troop #50 Vineland Armory |
| Insurance Company of North America | GLP-13-78-83 | 3/30/1968 | 3/30/1969 | Troop #103 |
| Insurance Company of North America | GAL 15556 | 10/17/1968 | 10/17/1969 | Troop #121 of the Orange Mountain Council |
| Insurance Company of North America | GLP-18-01-66 | 12/21/1968 | 12/21/1969 | Troop #2 Booster Club |
| Insurance Company of North America | GLP-22-32-34 | 3/30/1969 | 3/30/1970 | Troop #103 |
| Insurance Company of North America | GLP-22-87-11 | 5/18/1969 | 5/19/1969 | Coaldale Boy Scouts of America |
| Insurance Company of North America | GLP-19-66-19 | 6/15/1969 | 6/16/1969 | Troop #8 and Village of Port Chester, NY |
| Insurance Company of North America | GLP-24-50-57 | 12/21/1969 | 12/21/1970 | Troop #2 Booster Club |
| Insurance Company of North America | GLP-25-10-46 | 3/30/1970 | 12/3/1970 | Troop #103 |
| Insurance Company of North America | GLP 25 19 91 | 6/10/1970 | 6/10/1973 | Troop #36 |
| Insurance Company of North America | GLP 59 12 04 | 2/20/1975 | 2/20/1978 | Troop #80 Nassau County Council |
| Insurance Company of North America | SBL 46938 | 5/23/1968 | 5/23/1971 | Ventura County: Ventura County |
| Insurance Company of North America | SBL 51453 | 5/23/1971 | 5/23/1972 | Ventura County: Ventura County |
| Insurance Company of North America | SBL 4 69 23 | 1/1/1968 | 1/1/1971 | Voyageurs Area: Headwaters Area 1929-1994 |
| Insurance Company of North America | SBL 5 13 96 | 1/1/1971 | 1/1/1973 | Voyageurs Area: Headwaters Area 1929-1994 |
| Insurance Company of North America | SBL-4-89-01 | 9/21/1967 | 9/21/1971 | W.D. Boyce: Starved Rock Area 1926-1973 |

FCRA00673

| Writing Company | Policy No. | Policy Start | Policy End | Local Council (Current:Named Insured) or Troop |
|---|---|---|---|---|
| Insurance Company of North America | SBL 3 95 54 | 5/29/1969 | 5/29/1970 | West Tennessee Area: West Tennessee Area |
| Insurance Company of North America | XBC 27379 | 6/1/1969 | 6/1/1970 | Westchester-Putnam: Washington Irving 1951-1973 |
| Insurance Company of North America | XBC 27487 | 6/1/1970 | 6/1/1971 | Westchester-Putnam: Washington Irving 1951-1973 |
| Insurance Company of North America | SBL 5 14 06 | 7/1/1970 | 8/7/1972 | Western Los Angeles County: San Fernando Valley 1923-1972 |
| Insurance Company of North America | XCP 6616 | 7/1/1970 | 8/7/1972 | Western Los Angeles County: San Fernando Valley 1923-1972 |
| Insurance Company of North America | GLP-17-15-33 | 5/14/1968 | 5/14/1969 | Westmoreland-Fayette: Westmoreland-Fayette |
| Insurance Company of North America | GAL-2-42-19 | 4/6/1967 | 4/6/1968 | Winnebago: Winnebago 1937- |
| Insurance Company of North America | GAL-23819 | 4/6/1968 | 4/6/1969 | Winnebago: Winnebago 1937- |
| Insurance Company of North America | GAL 9 51 19 | 4/6/1969 | 4/6/1970 | Winnebago: Winnebago 1937- |
| Insurance Company of North America | GAL 96141 | 4/6/1970 | 4/6/1971 | Winnebago: Winnebago 1937- |
| Insurance Company of North America | SBL 52141 | 4/6/1971 | 11/1/1971 | Winnebago: Winnebago 1937- |
| Insurance Company of North America | SBL 51310 | 1/1/1970 | 1/1/1973 | Yocona Area: Yocona Area |

Local Council Policy List: *This schedule identifies the liability insurance policies issued by the Settling Insurers to Local Councils or Units of the Boy Scouts of America (BSA) for which policy contractual documents (in whole or in part) were found by the Settling Insurers. BSA has alleged that additional liability insurance policies were issued to Local Councils or Units of BSA by the Settling Insurers, as reflected in the spreadsheet entitled "Local Council Policy Listing_20210127," produced by BSA in the Data Room, Index No. 7.2.7 (bearing production number ABC000109020), and in the Disclosure Statement. That spreadsheet and the documents produced into the data room are incorporated herein by reference.*

FCRA00674

**Exhibit D**

**Notice Addresses**

| For Century: | With a copy to: |
|---|---|
| John Dwyer , Esq.<br>General Counsel<br>Brandywine Group of Insurance  and<br>Reinsurance Companies<br>510 Walnut Street – WB11E<br>Philadelphia, PA  19106<br>215-640-1913<br>john.dwyer@brandywineholdings.com | Tancred Schiavoni<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036<br>(212) 326-2267<br>tschiavoni@omm.com |
| For Chubb Companies: | With a copy to: |
| Chris Celentano<br>CHUBB<br>10 Exchange Place, 13th Floor<br>Jersey City, NJ  07302<br>(201) 479-6398<br>Christopher.Celentano@Chubb.com | Mary Beth Forshaw<br>Simpson Thatcher Bartlett LLP<br>425 Lexington Avenue<br>New York, NY  10017<br>(212) 455-2846<br>mforshaw@stblaw.com |
| For the Debtors: | With a copy to: |
| Steven P. McGowan<br>General Counsel<br>Boy Scouts of America<br>1325 West Walnut Hill Lane<br>Irving, TX 75038<br>(972) 580-7847<br>steve.mcgowan@scouting.org | Jessica C. Lauria<br>White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>(212) 819-8200<br>jessica.lauria@whitecase.com<br><br>Michael C. Andolina<br>White & Case LLP<br>111 South Wacker Drive<br>Chicago, IL 60606<br>(312) 881-5400<br>mandolina@whitecase.com |
| For the Coalition: | |
| David J. Molton<br>Eric R. Goodman<br>Coalition of Abused Scouts for Justice<br>c/o Brown Rudnick LLP | |

FCRA00675

| | |
|---|---|
| Seven Times Square<br>New York, NY<br>(212) 209-4800<br>dmolton@brownrudnick.com<br>egoodman@brownrudnick.com | |
| <u>For the FCR:</u><br><br>James L. Patton<br>Robert S. Brady<br>Edwin J. Harron<br>c/o Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>jpatton@ycst.com<br>rbrady@ycst.com<br>eharron@ycst.com | |
| <u>For AHCLC:</u><br><br>Richard G. Mason<br>Joseph C. Celentino<br>Ad Hoc Committee of Local Councils<br>c/o Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, New York  10019<br>(212) 403-1000<br>RGMason@wlrk.com<br>JCCelentino@wlrk.com | |
| <u>For State Court Counsel:</u><br><br>See Schedule 1 hereto | |

## **EXHIBIT 2**

**Zurich Insurance Settlement Agreement**

FCRA00677

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release (this "<u>Agreement</u>"), dated February 14, 2022, is entered into between and among American Zurich Insurance Company, American Guarantee & Liability Insurance Company, and Steadfast Insurance Company (as defined herein and collectively, the "<u>Zurich Insurers</u>"), Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (as defined herein and collectively, "<u>BSA</u>" or the "<u>Debtors</u>"), the Ad Hoc Committee of Local Councils (the "<u>AHCLC</u>"), the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "<u>Coalition</u>"),[1] and the Future Claimants' Representative (the "<u>FCR</u>" and, collectively with Zurich Insurers, the Debtors, the AHCLC, and the Coalition, the "<u>Parties</u>").[2] The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "<u>State Court Counsel</u>"), agree to support the terms of, and be bound by, this Agreement.

WHEREAS, on February 18, 2020, the Debtors commenced proceedings under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

WHEREAS, the Zurich Insurers have allegedly issued insurance policies covering or allegedly covering Claims and Causes of Action for Abuse involving Scouting that occurred prior to the Petition Date;

WHEREAS, the Parties wish to resolve disputes concerning such policies;

WHEREAS, subject to the terms and conditions set forth herein, the Zurich Insurers will pay the Settlement Amount (as defined herein) in exchange for the injunctions, releases, and other protections described below;

WHEREAS, among other things, the settlement provides for the channeling and release of all Abuse Claims against the Zurich Insurers (and against their insureds under policies issued by the Zurich Insurers that may cover such Claims) in exchange for the Settlement Amount;

WHEREAS, on December 21, 2021 (the "<u>Term Sheet Effective Date</u>"), the Parties executed a term sheet in the form attached hereto as Exhibit B (the "<u>Term Sheet</u>"), setting forth the basic terms of their settlement; and

WHEREAS, the Debtors filed their Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (as it may subsequently be amended from time to time, the "<u>Plan</u>").

Capitalized terms not defined in this Agreement shall have the definitions ascribed to such terms in the Plan.

---

[1] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Agreement.

[2] Notwithstanding anything to the contrary in this Agreement, the obligations and undertakings of the AHCLC in connection with this Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at D.I. 5466-2.

**FCRA00678**

1. **Agreement Effective Date**. This Agreement shall be binding on the Parties, subject to Bankruptcy Court approval, as necessary, and Sections 27, 28, and 29 below, when the last of the Parties to execute this Agreement has executed this Agreement.

2. **Settlement Amount**. In consideration of the releases and other consideration provided for herein, the Zurich Insurers shall pay in cash Fifty-two million, five hundred thousand U.S. Dollars ($52,500,000.00) (the "Settlement Amount"), free and clear of all liens, claims, or interests, to the Settlement Trust for Abuse Claims to be created under the Plan (the "Settlement Trust" or "Trust"). No most-favored nation or similar provision will reduce the Settlement Amount to be paid by the Zurich Insurers based on any settlements that BSA may enter into with other insurers. Zurich Insurers shall be entitled to allocate the Settlement Amount in their sole discretion among any Zurich Insurer Policies, provided that (i) any such allocation shall not bind the Trust and (ii) Zurich Insurers and Zurich Affiliated Insurers will not allocate the Settlement Amount to any other insurance policy issued directly to a Chartered Organization by Zurich Insurers and Zurich Affiliated Insurers. The foregoing allocation of the Settlement Amount will not affect the extent and scope of the releases provided herein, including Sections 7 and 8 hereof.

3. **Payment and Release of the Settlement Amount**.

a) On, or as soon as reasonably practicable after the Plan Effective Date, the Zurich Insurers shall pay the Settlement Amount into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties.

b) The Settlement Amount (and all income earned thereon in the Escrow Account, minus (i) the fees of the escrow agent, and (ii) any taxes that are payable and other costs of the Escrow Account, which amounts in (i) and (ii) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the Confirmation Order becomes a Final Order, on which date the balance of the Escrow Account, which shall include any Net Income, shall be released from the Escrow Account to the Trust (the "Release Date"); *provided, however,* that, at its election, Zurich Insurers may authorize the payment of the Settlement Amount directly to the Trust on the Effective Date or may authorize the release of the Settlement Amount (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes a Final Order, in which event the date on which Zurich Insurers authorize the payment or release of the Settlement Amount to the Trust shall be the Release Date.

c) The Escrow Account shall be a simple interest-bearing account; the Settlement Amount shall not be invested in any manner that subjects the Settlement Amount to any risk of loss. The Debtors, Reorganized BSA, the Local Councils, and Chartered Organizations shall have no liability or obligations to Zurich Insurers or the Trust, the Trust shall have no liability or obligations to Zurich Insurers, and Zurich Insurers shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or reduction of the Settlement Amount while it is in the Escrow Account.

d) Notwithstanding anything to the contrary herein, the Settlement Amount and any amounts in the Escrow Account, including the Net Income, shall be promptly (and no later than

FCRA00679

seven (7) Business Days after the date of such written demand, unless otherwise agreed to by the Parties) released to Zurich Insurers upon their written demand if any of the following occur: (i) the District Court does not enter the Affirmation Order within 360 days after the entry of the Confirmation Order by the Bankruptcy Court or the District Court declines to enter the Affirmation Order (whether or not such denial constitutes a remand or a Reversal, as defined herein); (ii) the Plan is at any time withdrawn; (iii) the Plan otherwise ceases to conform to this Agreement; (iv) the Confirmation Order is reversed or vacated on appeal following the Effective Date such that the Release Date does not occur (a "Reversal"); (v) the Chapter 11 Cases have been converted or dismissed; (vi) the Parties agree to such release in writing; or (vii) an order of the Bankruptcy Court or District Court so provides. In such event, the Parties' rights and obligations under this Agreement shall be governed by Sections 26, 27, 28 and 29 herein.

4. **Protections to be Afforded to the Zurich Insurers and Zurich Affiliated Insurers.**

a) Effective as of the Release Date, Zurich Insurers and Zurich Affiliated Insurers are to be designated as Settling Insurance Companies and Protected Parties for all purposes under the Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections. As set forth herein, Zurich Insurers and Zurich Affiliated Insurers shall be granted such releases, injunctions, and protections as are necessary to deliver finality with respect to: all known and unknown insurance policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, which shall include those identified on Exhibit A and any and all policies issued on or after January 1, 1987 and any other insurance policy issued by any of the Zurich Insurers and Zurich Affiliated Insurers, including Zurich Insurer Policies, covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions, or positions taken in connection with any Abuse Claims and/or the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any Abuse Claims and/or policy issued by the Zurich Insurers or Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise. Notwithstanding anything to the contrary, the BSA, Local Councils, and Participating Chartered Organizations and Contributing Chartered Organizations are not releasing or enjoining any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) other than the right to seek coverage for and/or to pursue any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from, or connected with actions or omissions

3

occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise.

b) To preserve and promote the settlements contemplated by and provided herein and in the Plan, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (i) the sole recourse of any holder of an Abuse Claim against a Zurich Insurer or Zurich Affiliated Insurer on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Zurich Insurer or Zurich Affiliated Insurer or any property or interest in property of any Zurich Insurer or Zurich Affiliated Insurer, (ii) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party, (iii) the sole recourse of any holder of an Abuse Claim against a Limited Protected Party if such Abuse Claim is covered under any insurance policy issued by any Zurich Insurer or Zurich Affiliated Insurer, shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party, (iv) the sole recourse of any holder of an Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization on account of such Opt-Out Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Opt-Out Chartered Organization Abuse Claim against any Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization. For the avoidance of doubt, the sole recourse for any holder of an Abuse Claim covered by any insurance policy issued by a Zurich Insurer or Zurich Affiliated Insurer shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Plan Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, or any Abuse Claim against the Limited Protected Parties if such Abuse Claim is covered under any insurance policy issued by any Zurich Insurer or Zurich Affiliated Insurer, or any Opt-Out Chartered Organization Abuse Claim against the Opt-Out Chartered Organizations, or any of them, shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim, or from any Limited Protected Party with respect to any such Abuse Claim if such Abuse Claim is covered under any insurance policy issued by any Zurich Insurer or Zurich Affiliated Insurer, or from any Limited Protected Party with respect to

4

FCRA00681

any such Post-1975 Chartered Organization Abuse Claim, or from any Opt-Out Chartered Organization with respect to any Opt-Out Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

i) commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

iii) creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

iv) asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization; or

v) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim, Post-1975 Chartered Organization Abuse Claim, or Opt-Out Chartered Organization Abuse Claim.

c) The Plan and the Confirmation Order shall provide for a channeling injunction substantially on the terms set forth in clause (b) above (the "Channeling Injunction," as defined herein) and a full release of the Zurich Insurers and Zurich Affiliated Insurers with respect to all Claims or Causes of Action related to, arising from, or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the Zurich Insurer Policies subject to the limitations stated in this Section 4 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies). All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between

FCRA00682

the Plan Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Plan and this Agreement shall be continuously enjoined pending their release. The Zurich Insurers and Zurich Affiliated Insurers shall be Protected Parties under the Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.L of the Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases, or other protections provided thereto.

d) Solely for purposes of administering the releases and channeling injunctions provided in this Agreement, the Plan, and the Confirmation Order, and not for any other purpose, any liability insurance policies that were issued or may have been issued by the Zurich Insurers or Zurich Affiliated Insurers shall be automatically deemed to "cover" or provide "coverage" for an Abuse Claim against a Chartered Organization if (i) such policy includes the Chartered Organization as an insured or additional insured, including by referring categorically to chartered organizations, charters, sponsoring organizations, or sponsors as insureds or additional insureds, and (ii) such policy was in effect when the alleged Abuse underlying such Abuse Claim allegedly took place; provided, however, that nothing in the preceding portions of this Section 4(d) shall be offered or interpreted as an admission by the Zurich Insurers or Zurich Affiliated Insurers of any fact or issue for any purpose, and shall not be cited as a basis to impose liability on, or increase the liability of, any Zurich Insurer or Zurich Affiliated Insurer under any circumstance or any insurance policy. This Section 4(d) does not limit the assignment of the Claims and Causes of Action set forth in Section 23 of this Agreement.

e) Nothing in this Agreement will release claims for reinsurance under reinsurance contracts that the Zurich Insurers issued to other insurance companies, and the Parties agree to modify the injunction provisions in the Plan to state that such claims for reinsurance will not be enjoined.

5. **Sale of Zurich Insurer Policies**. Entry of the Confirmation Order shall be a condition precedent of this Agreement. The Confirmation Order shall provide that (a) on the Plan Effective Date and subject to the limitations set forth in this Section 5 of this Agreement, in exchange for the Settlement Amount, the Zurich Insurer Policies shall be sold by Debtors and the Debtors' Estates to Zurich Insurers free and clear of all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered Organizations, Chartered Organizations, and their respective Representatives, creditors and interest holders in the Zurich Insurer Policies, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the Sale shall exclude the Postpetition Insurance Policies and Non-Abuse Insurance Policies, (c) the Sale represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Plan, (e) the Confirmation Order shall designate Zurich Insurers as good faith purchasers and shall provide that the Sale constitutes a purchase by Zurich Insurers in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions

6

of section 363(m) applicable and affording Zurich Insurers all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including a person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting-related Abuse, shall have any right to or an interest in the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust for the benefit of the holders of Direct Abuse Claims, *provided, however*, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with the Trust Agreement and the Trust Distribution Procedures. Without limiting the foregoing, although the Parties do not believe that the Sale would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more Zurich Insurer Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

6. **Trust Bound by Agreement**. Upon the Effective Date, the Trust shall be bound by all terms of this Agreement. Upon the Release Date, the Trust shall release Zurich Insurers and Zurich Affiliated Insurers from all Causes of Action and Claims that the Trust holds relating to the Zurich Insurer Policies, provide the other releases contained in this Agreement, and otherwise perform as required by this Agreement.

7. **Release by Zurich Insurers and Zurich Affiliated Insurers**. Upon the Release Date, subject to the limitations below and those set forth in Section 14, Zurich Insurers and Zurich Affiliated Insurers and their Representatives shall automatically, without further action on the part of any Person or Entity, release the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Zurich Insurer Policies), (b) any other insurance policy issued by Zurich Insurers and Zurich Affiliated Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan, including extra-contractual claims relating to the Zurich Insurer Policies and including the Debtors' performance of their obligations thereunder, whether for defense, settlement of claims, or otherwise, (d) the Chapter 11 Cases and related proceedings, including the Plan and any prior plans, any Claims that were or could have been asserted by Zurich Insurers and Zurich Affiliated Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Zurich Insurers and Zurich Affiliated Insurers, in the Debtors' Chapter 11 Cases, or any actions, omissions, or positions taken in the Chapter 11 Cases and related proceedings; (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Zurich Insurer Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Zurich Insurers and Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder, whether for defense, settlement of claims, or otherwise. Nothing shall preclude Zurich Insurers and Zurich Affiliated Insurers from enforcing the terms of this Agreement. Furthermore, nothing in this Agreement or the Plan shall constitute a release of any Claim by Zurich Insurers or Zurich Affiliated Insurers or their

7

FCRA00684

Representatives or any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies, (ii) reinsurance, or (iii) Postpetition Insurance Policies, and shall not include any insurance policies for which the Zurich Insurers or Zurich Affiliated Insurers become responsible or acquire on or after the Term Sheet Effective Date. The Parties expressly acknowledge that there may be changes in the law and/or that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims or Causes of Action released in this Section 7. Nevertheless, the Parties hereby agree that the releases set forth in this Section 7 shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

8. **Release of Zurich Insurers and Zurich Affiliated Insurers**. Upon the Release Date, subject to the limitations below and those set forth in Section 14, the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, Limited Protected Parties (including Participating Chartered Organizations), other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and all such Persons' or Entities' Representatives (the "Releasing Parties") shall automatically, without further action on the part of any Person or Entity, release Zurich Insurers and Zurich Affiliated Insurers and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Zurich Insurer Policies), (b) any other insurance policy issued by Zurich Insurers or Zurich Affiliated Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan and other Claims relating to the Zurich Insurer Policies and including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder, whether for defense, settlement of claims, or otherwise, including extra-contractual claims relating to the Zurich Insurer Policies, (d) the Chapter 11 Cases and related proceedings, including the Plan and any prior plans, any Claims that were or could have been asserted by Zurich Insurers and Zurich Affiliated Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Zurich Insurers and Zurich Affiliated Insurers, in the Chapter 11 Cases, or any actions, omissions, or positions taken in the Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Zurich Insurer Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Zurich Insurers and Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder whether, for defense, settlement of claims, or otherwise. If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Zurich Insurers or Zurich Affiliated Insurers in this Agreement or the Plan, then Zurich Insurers and Zurich Affiliated Insurers shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties. The release of Zurich Insurers and Zurich Affiliated Insurers shall not affect claims against other insurance companies, subject to the limitation that Zurich Insurers and Zurich Affiliated Insurers shall not assert claims against other Settling Insurance Companies. Nothing shall preclude the Releasing Parties from enforcing the terms of this Agreement and the Plan. For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past,

8

FCRA00685

present, and future direct or indirect parents, subsidiaries, affiliates, and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors, and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and (2) to the extent of any party's right, power, and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Zurich Insurer Policies or any policy of insurance issued to or for the benefit of such releasing party related to Abuse Claims. The releases in this Section 8 shall be subject to and limited by Section 5 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies), and shall not include any insurance policies for which the Zurich Insurers or Zurich Affiliated Insurers become responsible or acquire on or after the Term Sheet Effective Date.[3] The Parties expressly acknowledge that there may be changes in the law and/or that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims or Causes of Action released in this Section 8. Nevertheless, the Parties hereby agree that the releases set forth in this Section 8 shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

9. **Participating Chartered Organizations**. Under the Plan and as a condition to the Plan Effective Date (waiver of which shall require the prior written consent of, among others, the Zurich Insurers), in order to obtain the benefit of (1) the Settling Insurer Policy Injunction and (2) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to provide, or be deemed to provide, the following assignment of their insurance rights (the "Participating Chartered Organization Insurance Assignment"): any and all of the Participating Chartered Organizations' rights, titles, privileges, interests, claims, demands, or entitlements, as of the Plan Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under, or attributable to (a) the Abuse Insurance Policies issued by the Zurich Insurers and any other Abuse Insurance Policies covering Abuse Claims alleging Abuse to have first occurred on or after January 1, 1976, (b) any other insurance policies issued by a Settling Insurance Company that cover Abuse Claims but only with respect to such coverage for Abuse Claims, (c) the Insurance Settlement Agreements (including this Agreement) and claims thereunder and proceeds thereof, (d) the types of claims listed in the Insurance Actions definition in the Plan (including with respect to the insurance policies issued by the Zurich Insurers), (e) the Insurance Action Recoveries (including with respect to the Zurich Insurer Policies), and (f) the Participating Chartered Organization Insurance Actions. In addition, in order to obtain the benefit of (i) the Settling Insurer Policy Injunction and (ii) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to make, or be deemed to make, the following contribution to the Trust ("Participating Chartered Organization Settlement Contribution"): (A) the Participating Chartered Organization Insurance Assignment; (B) to the extent of any rights, claims, or interests not assigned to the Trust

---

[3] For the avoidance of doubt, Zurich Insurers and Zurich Affiliated Insurers shall (a) receive the same releases and the same protections of the Channeling Injunction as Century Indemnity Company and Chubb Group Holdings, Inc. with respect to Chartered Organizations, including the release by the Participating Chartered Organizations and Contributing Chartered Organizations of coverage for Abuse Claims under insurance policies issued directly by Zurich Insurers and Zurich Affiliated Insurers to such Chartered Organizations, and (b) provide the same releases as Century Indemnity Company and Chubb Group Holdings, Inc. with respect to Chartered Organizations.

FCRA00686

pursuant to the Participating Chartered Organization Insurance Assignment, the waiver and complete release of (I) each of the Participating Chartered Organization's rights, titles, privileges, interests, claims, demands, or entitlements under the Zurich Insurer Policies and any other insurance policy issued by the Zurich Insurers with respect to Claims or Causes of Action involving Abuse Claims, concerning such coverage for Abuse Claims; (II) any Claim held by the Participating Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from, in whole or part, directly, indirectly, or derivatively (including through any insurance policy issued by the Zurich Insurers), alleged Abuse Claims that occurred prior to the Petition Date against the Settlement Trust, the Debtors, Reorganized BSA, the Local Councils, any Contributing Chartered Organization, or the Zurich Insurers; and (III) any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Participating Chartered Organization, including any Indirect Abuse Claims, without any further notice or action, order, or approval of the Bankruptcy Court, which Claims shall be expunged from the Claims Register, and the agreement of each Participating Chartered Organization not to (y) file or assert any Claim or Claims against the Trust, the Debtors, or Reorganized BSA arising from any act or omission of the Debtors, the Local Councils, any Contributing Chartered Organization, or any Participating Chartered Organization on or prior to the Confirmation Date and (z) file or assert any rights or interests in any property transferred to the Trust under the Plan, including the proceeds of any settlements paid by an Settling Insurance Company; and (C) the assignment to the Trust of any and all Perpetrator Indemnification Claims held by the Participating Chartered Organizations. Other than the TCJC and the United Methodist Entities, no Chartered Organization may become a Contributing Chartered Organization without making a contribution in form and substance equivalent to the Participating Chartered Organization Settlement Contribution and agreeing to be bound by the terms and conditions of this Agreement.

10. **Protections Afforded to Insureds and Co-Insureds**.  On the Release Date, all Abuse Claims against insureds and co-insureds covered under insurance policies issued by the Zurich Insurers or Zurich Affiliated Insurers, including the Zurich Insurer Policies, shall be channeled and enjoined under the Settling Insurer Policy Injunction and released. Pending the occurrence of the Release Date, all such Abuse Claims shall be enjoined pursuant to the Post-Confirmation Interim Injunction, as provided herein.

11. **Bankrupt Chartered Organizations**.  The BSA shall use its best efforts to work with the Roman Catholic Ad Hoc Committee and the Chartered Organizations that are debtors in bankruptcy (the eight bankrupt entities identified on Exhibit K to the Plan, which may be amended to the extent that additional Chartered Organizations file for bankruptcy protection prior to entry of the Confirmation Order, each a "Bankrupt Chartered Organization") to obtain written consent for such Bankrupt Chartered Organization to consent to the terms of this Agreement.  To the extent that a Bankrupt Chartered Organization does not agree to provide written consent to the terms of this Agreement, the Parties will use reasonable efforts to jointly resolve such non-consent, which may, upon the consent of the Parties, include excluding such Bankrupt Chartered Organization from the protections and benefits otherwise provided herein, provided that the failure to obtain such consent as it applies to the applicable Bankrupt Chartered Organizations shall not be deemed a breach of this Agreement by any Party or a failure to satisfy a condition to the effectiveness of the Plan.  The Zurich Insurers reserve all rights and defenses they have under policies issued to Bankrupt Chartered Organizations that do not consent to the terms of this Agreement.

10

FCRA00687

12. **Opt-Out Chartered Organizations**.

a) Opt-Out Chartered Organizations by definition are not Participating Chartered Organizations, Limited Protected Parties, or Contributing Chartered Organizations. The term "Opt-Out Chartered Organization," on the one hand, and the terms Participating Chartered Organizations, Limited Protected Parties, and Contributing Chartered Organizations, on the other hand, are mutually exclusive.

b) Under the Plan and as a condition to the Plan Effective Date (waiver of which shall require the prior written consent of, among others, the Zurich Insurers), on the Release Date, any Opt-Out Chartered Organization shall receive the benefit of the Settling Insurer Policy Injunction and the release of all Abuse Claims that are covered under insurance policies issued by Zurich Insurers and Zurich Affiliated Insurers, including the Zurich Insurer Policies.

c) For the avoidance of doubt, nothing herein or in the Plan shall require an Opt-Out Chartered Organization to provide an assignment or release with respect to its rights under insurance policies issued directly to such organization, including the releases set forth in Sections 7 and 8 hereof. The rights of the Opt-Out Chartered Organizations provided under insurance policies issued directly to such organization are preserved, provided that the Zurich Insurers, Zurich Affiliated Insurers, and the Opt-Out Chartered Organizations may enforce and rely upon the channeling and release of Abuse Claims against an Opt-Out Chartered Organization as set forth in Section 10 hereof for all purposes. All rights and defenses of the Zurich Insurers and Zurich Affiliated Insurers under insurance policies issued directly to an Opt-Out Chartered Organization are preserved. The foregoing provision will be added to the Plan, including the channeling injunction.

d) If, however, a Chartered Organization that is an Opt-Out Chartered Organization wants to become a Contributing Chartered Organization, (i) a financial contribution must be made by or on behalf of such Opt-Out Chartered Organization, (ii) such Opt-Out Chartered Organization must agree to provide the assignments and releases set forth in Sections 7 and 8, and (iii) if and to the extent required by BSA, such Chartered Organization must agree to cooperate with the Child Protection Committee.

e) By definition, the Zurich Policies (including those set forth on Exhibit A) were issued directly to the BSA and were not issued directly to the Chartered Organizations.

13. **Post-Confirmation Interim Injunction**. The Plan and Confirmation Order shall provide that all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date (the "Post-Confirmation Interim Injunction"), shall remain in full force and effect until the Release Date, any final injunctions are issued, or upon a Reversal or other condition that results in the return of the Escrowed Payments to the Zurich Insurers and Zurich Affiliated Insurers. To the extent not otherwise in place, the Plan shall provide that pending the occurrence of the Release Date and thereafter, any Claim that would be released or subject to a channeling injunction upon the occurrence of conditions set forth herein (including the occurrence of the Release Date) shall be stayed and enjoined pending

FCRA00688

satisfaction of such conditions. Such injunction shall permit the filing, but not the prosecution, of the Abuse Claims against such Chartered Organizations.

14. **Abuse Claims Under Policies Issued to Chartered Organizations**. Notwithstanding the release by the Participating Chartered Organizations and Contributing Chartered Organizations of the right to seek coverage for Abuse Claims under insurance policies issued directly by Zurich Insurers or Zurich Affiliated Insurers to such Chartered Organizations:[4]

(a) Such Chartered Organizations are not barred from seeking defense and indemnification for claims that are not Abuse Claims under insurance policies issued by the Zurich Insurers or Zurich Affiliated Insurers directly to such Chartered Organizations, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(b) Such Chartered Organizations are not barred from seeking defense and indemnification for that portion of Mixed Claims unrelated to Scouting under such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-Confirmation Interim Injunction and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations.

(c) Such Chartered Organizations are not barred from seeking defense and indemnification under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(d) To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(e) To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, Zurich Insurers and Zurich Affiliated Insurers shall have no further obligations with respect to such claim.

(f) The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or Zurich Insurers and Zurich Affiliated Insurers to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

(g) The Zurich Insurers and Zurich Affiliated Insurers reserve all rights under their policies with respect to any Claim that is not an Abuse Claim (including the non-

---

[4] This provision does not apply to policies issued by the Zurich Insurers or Zurich Affiliated Insurers to the BSA, including those set forth on Exhibit A.

FCRA00689

Scouting component of any Mixed Claim), none of which rights are waived or released hereunder.

15. **Contributing Chartered Organizations.** No Chartered Organization shall be a Contributing Chartered Organization unless it agrees to provide the assignments and releases set forth in Sections 7 and 8 of this Agreement.

16. **Finality**. Subject to the other terms of this Agreement, and so long as this Agreement remains in full force and effect and/or is not terminated, the Parties agree that (a) the Settlement Amount is the total amount that the Zurich Insurers and Zurich Affiliated Insurers will be obligated to pay under the Zurich Insurer Policies and (b) the Confirmation Order shall provide that on and after the Release Date and payment of the Settlement Amount (and subject to the limitations in Section 5 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies), the Zurich Insurers and Zurich Affiliated Insurers shall be released from and shall not be obligated to make any additional payments to any Person (including, but not limited to, the BSA, the Local Councils, any Chartered Organization, and any entity actually or allegedly covered under insurance policies issued by the Zurich Insurers or Zurich Affiliated Insurers) for Abuse Claims, including those relating to or arising out of the Zurich Insurer Policies and the other Claims and Causes of Action released hereunder, subject to the limitations in Section 5 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies).

17. **Judgment Reduction and Contribution**.

a) Zurich Insurers and Zurich Affiliated Insurers will not assert or file a Claim, and will dismiss without prejudice any pending Claims, seeking contribution, indemnity, and/or defense against another Entity in order to recover any portion of the Settlement Amount to be paid by Zurich Insurers under this Agreement. The Settlement Amount shall not be subject to any Claims for deductions, setoffs, or charge-backs by the Zurich Insurers or Zurich Affiliated Insurers of any kind, including Claims involving recoupment of deductibles, contribution, self-insured retentions, additional premiums, or retrospective or reinstatement premiums. For the avoidance of doubt, the Zurich Insurers and Zurich Affiliated Insurers shall maintain (i) an unfettered right to advise their reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against their reinsurers and retrocessionaires in their capacities as such, (ii) all rights with respect to any Claim that is not an Abuse Claim (including the non-Scouting component of a Mixed Claim) related to their policies as provided in Section 14 hereof, and (iii) claims against Bankrupt Chartered Organizations that do not consent to this Agreement and provide the releases and assignments set forth in Sections 7 and 8 hereof.

b) In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Zurich Insurers or Zurich Affiliated Insurers as a result of a Cause of Action for contribution, subrogation, indemnification, or other similar Cause of Action against Zurich Insurers or Zurich Affiliated Insurers for Zurich Insurers' or Zurich Affiliated Insurers' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Cause of Action released in this Agreement, the Trust shall voluntarily

FCRA00690

reduce or limit its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification, or other similar Cause of Action against Zurich Insurers or Zurich Affiliated Insurers. To ensure that such a reduction is accomplished, Zurich Insurers and Zurich Affiliated Insurers shall be entitled to rely upon or assert this paragraph as a defense to any action against them for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction described in this paragraph to protect Zurich Insurers and Zurich Affiliated Insurers from any liability for the judgment or Cause of Action.

c) To the extent any other insurer asserts a claim for contribution, subrogation, indemnification, or other similar Claim against the Zurich Insurers or Zurich Affiliated Insurers, nothing herein shall preclude the Zurich Insurers or Zurich Affiliated Insurers from asserting any defense to such claim, or from filing, asserting, or continuing to pursue a Claim seeking contribution, indemnity, or defense from that other insurer, provided that, (i) Zurich Insurers or Zurich Affiliated Insurers will provide timely notice to the Trust of the assertion of any Claims and Causes of Action assigned pursuant to Section 23 of this Agreement, (ii) Zurich Insurers or Zurich Affiliated Insurers shall obtain the consent of the Trust, which shall not be unreasonably withheld, to settle any such Claims and Causes of Action assigned pursuant to Section 23 of this Agreement, and (iii) to the extent that the Zurich Insurers or Zurich Affiliated Insurers recover from that other insurer, the proceeds of such recovery shall be paid by the Zurich Insurers or Zurich Affiliated Insurers per the instruction of the Trust or, if no Trust has been formed, the Debtors, after the Zurich Insurers or Zurich Affiliated Insurers are reimbursed from such proceeds for reasonable fees and costs they incurred after the date the Confirmation Order becomes a Final Order in defending the Claim asserted against the Zurich Insurers or Zurich Affiliated Insurers or prosecuting their Claim against that other insurer. For the avoidance of doubt, the Zurich Insurers and Zurich Affiliated Insurers shall maintain (i) an unfettered right to advise their reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against their reinsurers and retrocessionaires in their capacities as such, (ii) all rights with respect to the non-Scouting component of any Mixed Claims related to their policies as provided in Section 14 hereof, and (iii) claims against Opt-Out Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement.

18. **Findings and Orders**.

a) The Plan and the Confirmation Order shall state that the Findings and Orders and Trust Distribution Procedures of the Plan are not binding on Zurich Insurers or Zurich Affiliated Insurers to the extent that Zurich Insurers or Zurich Affiliated Insurers are Settling Insurance Companies and the transactions contemplated herein, including the payment of the Settlement Amount to the Trust, are fully consummated. The Plan and Confirmation Order shall further provide that Zurich Insurers' and Zurich Affiliated Insurers' agreement herein not to object to the entry of said Findings and Orders in the Confirmation Order does not indicate Zurich Insurers' or Zurich Affiliated Insurers' support for or acceptance of the Trust Distribution Procedures or any findings and orders made in connection with them in any proceeding, which Findings and Orders and Trust Distribution Procedures shall not be

FCRA00691

applicable to Zurich Insurers or Zurich Affiliated Insurers, and no party shall argue that Zurich Insurers or Zurich Affiliated Insurers agreed to or acquiesced in such Findings and Orders or Trust Distribution Procedures in any proceeding.

b) The Confirmation Order and all other orders issued by any appellate court that exercises jurisdiction over such orders, if any, shall approve the terms and provisions of this Agreement. For the avoidance of doubt, nothing herein shall cause any Zurich Insurer or Zurich Affiliated Insurer to be liable for any policy issued by or any obligation of any nature or kind owed by another Zurich Insurer or Zurich Affiliated Insurer (including any Zurich Insurer Policy issued by such other Zurich Insurer or Zurich Affiliated Insurer), person or entity other than itself.

c) Notwithstanding anything to the contrary herein, nothing will require the Zurich Insurers to take any position that would impair their ability to pursue objections to any plan in the event that this Agreement is terminated under Section 26 or 27. Subject to the foregoing, the Zurich Insurers and the Debtors will (i) take reasonable positions in court supporting the settlement provided herein and the Plan provisions that effectuate this Agreement, (ii) take reasonable positions in court supporting approval of such terms through the Confirmation Order, and (iii) will not assist any party in its opposition to the foregoing.

19. **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with this Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the Plan, *provided that* Zurich Insurers and Zurich Affiliated Insurers shall be included as releasees, with respect to any Zurich Insurer Policies issued on or after January 1, 1987, in any form of release attached to the Trust Distribution Procedures to the same extent as BSA, Local Councils, or any other Protected Parties are released. The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Abuse Claims who receive payment from the Trust to release any Abuse Claims against (a) the Zurich Insurers and Zurich Affiliated Insurers and (b) any insured or co-insured under the Zurich Insurer Policies or other policies issued by the Zurich Insurers or Zurich Affiliated Insurers covering or allegedly covering Claims or Causes of Action for Abuse Claims. The Zurich Insurers shall not object to the Trust Distribution Procedures but may add a statement in the Plan that the Zurich Insurers are Settling Insurance Companies and, as a result, take no position on the Trust Distribution Procedures. The Zurich Insurers shall not object to the selection of the Settlement Trustee. The Zurich Insurers shall not participate in or interfere with the administration of the Trust and shall have no responsibility or liability whatsoever in connection with the administration of the Trust.

20. **Objections to the Plan**. Zurich Insurers and Zurich Affiliated Insurers shall not object to the Plan, the Settlement Trust Agreement, the Trust Distribution Procedures, the selection of the Settlement Trustee, or any other document or instrument that comprises the Plan (and upon execution of this Agreement, shall withdraw any pending objections) so long as Zurich Insurers and Zurich Affiliated Insurers are included as Protected Parties in the Plan, and the Plan is consistent with the terms of this Agreement.

21. **Discovery**. Upon the execution of the Term Sheet, (i) Zurich Insurers and Zurich Affiliated Insurers on the one hand, and (ii) the Debtors, Coalition, FCR, AHCLC, and State Court Counsel on the other hand, adjourned without date their pending discovery requests

15

directed at each other and agreed not to seek additional discovery from each other, and (ii) Zurich Insurers and Zurich Affiliated Insurers withdrew any pending discovery requests directed at any holder of an Abuse Claim, representatives of such holders, and funders or vendors utilized by representatives of such holders. The Parties shall not seek or direct any additional discovery or objections at each other and the Zurich Insurers shall not assert objection(s) in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases, nor shall Zurich Insurers or Zurich Affiliated Insurers cooperate with any other insurer's or putative objector's discovery requests in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases. Notwithstanding the foregoing, Zurich Insurers and Zurich Affiliated Insurers shall cooperate and comply with any information requests, including prior BSA-related settlement and verdict information, from the BSA, the Coalition, and the FCR to the extent such information is not protected from disclosure and reasonably necessary in support of the confirmation of the Plan; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to the Court appointed mediator, and the Parties agree to be bound by such mediator's decision regarding such dispute.

22. **Public Statements**. The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding this Agreement, including press releases, court filings, and in-court statements. Zurich Insurers and Zurich Affiliated Insurers shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Zurich Insurers and Zurich Affiliated Insurers may make statements to protect their rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and their representatives concerning Zurich Insurers and Zurich Affiliated Insurers.

23. **Assignment**.

a) The Parties will not assign, transfer, or sell (i) this Agreement or any of their rights, benefits, or obligations hereunder without the prior written consent of all other Parties, which consent shall not be unreasonably withheld, or (ii) except as set forth below, any Cause of Action or Claim related to the Abuse Insurance Policies or in connection with the matters otherwise released against the Zurich Insurers or the Zurich Affiliated Insurers pursuant to this Agreement. The Parties agree that they will not assist any other person in the establishment of a Claim or Cause of Action against the Zurich Insurers or the Zurich Affiliated Insurers relating to the Abuse Insurance Policies or the matters released pursuant to this Agreement. Nothing in the foregoing will prohibit the Parties or any Protected Party from transferring and assigning to the Trust all rights under this Agreement, or from assisting the Trust in pursuing any Claim arising out of or under same against anyone other than the Zurich Insurers or Zurich Affiliated Insurers.

b) Upon the Release Date, Zurich Insurers and Zurich Affiliated Insurers shall assign to the Settlement Trust all Claims and Causes of Action for contribution, subrogation, indemnification, and similar claims and theories of liability arising from or in connection with (i) Abuse Insurance Policies (which shall include all Zurich Insurer Policies) and (ii) any other insurance policy issued by the Zurich Insurers, Zurich Affiliated Insurers, or other Settling Insurers covering Claims or Causes of Action for Abuse Claims against (1) any Non-Settling Insurance Company and (2) any non-settling insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty

16

FCRA00693

association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any contracts, binders, certificates, or insurance policies currently or previously in effect at any time on or before the Petition Date that covers, allegedly covers, or potentially covers Abuse Claims, including the Scouting-related portions of Mixed Claims.

c) The assignment in Section 23(b) shall not preclude Zurich or Zurich Affiliated Insurers from pursuing Claims and Causes of Action (1) relating to non-Scouting Claims and the non-Scouting-related portions of Mixed Claims, (2) against their reinsurers and retrocessionaires in their capacities as such, (3) relating to Postpetition Insurance Policies and Non-Abuse Insurance Policies, and (4) against Opt-Out Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement and do not provide the releases and assignments set forth in Sections 11 and 12 hereof. Section 7 of this Agreement shall not impair the Settlement Trust's Claims and Causes of Action against (i) any Non-Settling Insurance Company, (ii) any non-settling insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any contracts, binders, certificates, or insurance policies currently or previously in effect at any time on or before the Petition Date that covers, allegedly covers, or potentially covers Abuse Claims, including the Scouting-related portions of Mixed Claims, or (iii) any Entity, other than a Limited Protected Party (to the extent of its protected party status) or Protected Party, that allegedly is liable for Abuse Claims, including the Scouting-related portions of Mixed Claims.

d) To the extent any other insurer asserts a claim for contribution, subrogation, indemnification, or other similar Claim against the Zurich Insurers or Zurich Affiliated Insurers, nothing herein shall preclude the Zurich Insurers or Zurich Affiliated Insurers from asserting any defense to such claim, or from filing, asserting, or continuing to pursue a Claim seeking contribution, indemnity, or defense from that other insurer, provided that, (1) Zurich Insurers or Zurich Affiliated Insurers will provide timely notice to the Trust, (2) the Zurich Insurers or Zurich Affiliated Insurers shall obtain the consent of the Trust, which shall not be unreasonably withheld, to settle any such Claims and Causes of Action assigned pursuant to this Section 23, and (3) to the extent that the Zurich Insurers or Zurich Affiliated Insurers recover from that other insurer, the proceeds of such recovery shall be paid by the Zurich Insurers or Zurich Affiliated Insurers per the instruction of the Trust or, if no Trust has been formed, the Debtors, after the Zurich Insurers or Zurich Affiliated Insurers are reimbursed from such proceeds for reasonable fees and costs they incurred after the date the Confirmation Order becomes a Final Order in defending the Claim asserted against the Zurich Insurers or Zurich Affiliated Insurers or prosecuting their Claim against that other insurer.

e) Nothing in the foregoing will prohibit the Parties or any Protected Party from transferring and assigning to the Trust all rights under this Agreement, or from assisting the Trust in pursuing any Claim arising out of or under same against anyone other than the Zurich Insurers or Zurich Affiliated Insurers.

FCRA00694

24. **Governing Law**.  This Agreement shall be governed by Delaware law.

25. **Bankruptcy Proceedings.**

a)  The Parties agree to use their best reasonable efforts to effectuate this Agreement and to obtain entry of the Confirmation Order.

b)  If the Confirmation Order is not entered, or is entered but does not become a Final Order, all of the Parties' rights with respect to the Zurich Insurer Policies shall be preserved exactly as they existed before the authorized representatives of the Parties signed this Agreement.

26. **Termination Event by the Debtors, the Coalition, and the FCR**.  Subject to the provisions of Section 28, the Debtors, the Coalition, or the FCR may terminate this Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Plan under section 1126 of the Bankruptcy Code and as a result the Plan is withdrawn.  Subject to the foregoing sentence and Section 27, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Agreement and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Agreement, including the provisions constituting the approval of all of the terms and conditions hereof, and (b) defend this Agreement.

27. **Fiduciary Out by the Debtors and the FCR**.  Notwithstanding anything else in this Agreement to the contrary, no term or condition of this Agreement shall require Debtors or the FCR to take or refrain from taking any action that they determine would be inconsistent with their fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Agreement, this Agreement may be terminated at any time prior to the entry of a Final Order confirming the Plan as to that party (the "Fiduciary Out"), *provided, however,* that the Debtors and the FCR each understands that the Tort Claimants Committee is not a party to this Agreement and that the Tort Claimants Committee and claimants represented by various plaintiff firms may object to this Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Agreement is consistent with their fiduciary duties as of the effective date of this Agreement, *provided further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders, and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate this Agreement, such termination shall be with respect to the FCR only and not otherwise affect this Agreement or the other Parties' rights and obligations thereunder.

28. **Effect of Termination or Failure of Conditions to Occur**.  In the case of any termination described in Sections 26 or 27 above by the Debtors or any other situation where this

FCRA00695

Agreement does not proceed (including as a result of the failure of any condition thereto to occur or failure to obtain entry of the Confirmation Order), then (a) absent the consent of the Zurich Insurers, the Zurich Insurers shall be (i) afforded an opportunity to interpose all objections to any plan that does not afford them the protections and rights provided hereunder, notwithstanding any prior deadlines, law of the case, or any determination made in the intervening period after execution of this Agreement, (ii) afforded adequate additional time and relief from any deadline to prepare and present such objections including any expert reports and additional discovery, and (iii) able to assert any and all positions in opposition to such plan and hearing schedule, none of which are waived or affected hereby,; and (b) the Zurich Insurers and Zurich Affiliated Insurers, the Debtors, the Coalition, the FCR, and State Court Counsel shall have no further obligations hereunder. For the avoidance of doubt, the approval of this Agreement and settlement provided herein shall be a condition to the entry of the Confirmation Order, entry of the Affirmation Order, and the Effective Date of the Plan, which condition may only be waived with the consent of each of the Parties.

29. **Effect of Reversal, Exercise of Fiduciary Out, or Termination on Net Income in the Escrow Account.** In the event that the Release Date does not occur because of (a) a Reversal, (b) any exercise of a Fiduciary Out by the Debtors, or (c) any termination of this Agreement described in Section 26 hereof, the Parties and State Court Counsel agree that the Settlement Amount and all Net Income accrued thereon in the Escrow Account shall be released from the Escrow Account to Zurich Insurers promptly following the Reversal, exercise of a Fiduciary Out by the Debtors, or any termination of this Agreement as described in Section 26 hereof. The provisions of this Section 29 shall survive any Reversal, any exercise of any Fiduciary Out, and any termination of this Agreement. Nothing in this Section 29 or elsewhere in this Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

30. **State Court Counsel.** Each State Court Counsel represents and warrants that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

31. **Conditions.**

a) If the Bankruptcy Court, or any other court with jurisdiction, issues an order (a) dismissing the Chapter 11 Cases or converting them to cases under Chapter 7 or (b) confirming a plan that does not identify the Zurich Insurers and Zurich Affiliated Insurers as Protected Parties who are entitled to the benefit of the Channeling Injunction, the Agreement will be null and void, and the Settlement Amount and all Net Income accrued thereon in the Escrow Account shall promptly be released from the Escrow Account to Zurich Insurers.

b) As a condition precedent to this Agreement, the FCR (subject to Section 27 herein), the Coalition, and the AHCLC must consent to, and agree to be bound by, all of the terms of this Agreement.

FCRA00696

c) This Agreement shall bind the Settlement Trust to an agreement not to terminate the Channeling Injunction provided in the Plan, or any other injunction contained in the Plan, that bars or limits claims of any kind against Settling Insurance Companies.

32. **Plan**.  The Debtors shall ensure that the Plan is consistent with this Agreement.  Subject to all of the terms and conditions of the Plan and this Agreement, including the Zurich Insurers' payment of the Settlement Amount, the Zurich Insurers and the Zurich Affiliated Insurers shall be designated as Settling Insurance Companies and Protected Parties under the Plan, entitled to the protection of the Channeling Injunction.  The protections given to the Zurich Insurers and the Zurich Affiliated Insurers as Protected Parties shall not be less than those afforded to any other Protected Parties under (i) the Plan (other than the limited indemnity provided to the Local Councils under Article IV.L of the Plan) or (ii) any other plan, unless this Agreement has been validly terminated under Section 26 or 27 prior to the filing of such plan, subject to Section 28(i)-(iii) hereof.  The Plan shall provide that the execution and delivery of this Agreement is a condition to entry of the Confirmation Order and the occurrence of the Plan Effective Date.  The inclusion of this Agreement in the Plan shall not be waivable as a condition to entry of the Confirmation Order or the occurrence of the Plan Effective Date absent the prior written consent of the Zurich Insurers or Zurich Affiliated Insurers.

33. **Medicare Reporting**.  To the extent the payment of claims by the Trust triggers reporting to Medicare under 42 U.S.C. § 1395y, *et seq*., commonly referred to as the Medicare, Medicaid, and SCHIP Extension Act of 2007, and any related rules, regulations, or guidance issued in connection therewith or relating thereto  (collectively,   "MMSEA"), the Parties agree that the Trust is the Responsible Reporting Entity and the Zurich Insurers and the Zurich Affiliated Insurers are not subject to any reporting requirements or obligations under MMSEA.

34. **Waivers.**  The Parties acknowledge that they have been advised by their respective legal counsel with respect to the substance of this Agreement, including, without limitation, the releases set forth herein, and expressly waive all protections under any state or common law similar to those provided in section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties further acknowledge and agree that the release of unknown claims was separately negotiated and material to this Agreement.

FCRA00697

35. **Representations and Warranties**.

a) Each Party and State Court Counsel represents and warrants that it has taken all necessary corporate and legal action required to duly approve the making and performance of this Agreement and, subject only to Section 1 of this Agreement with respect to certain obligations under this Agreement, that no further action on their part is necessary to make any obligation of any Party or State Court Counsel under this Agreement binding and legally enforceable.

b) Each Party and State Court Counsel represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law, any of its respective articles of incorporation or by-laws, or any contract or agreement by which it is bound.

c) Each Party represents and warrants that it is the owner of the rights and Claims to be compromised and released by it under this Agreement and it has not assigned or transferred to any Entity any Claim or other matter to be compromised and released herein. Furthermore, the Debtors represent and warrant that they have not assigned or transferred any right, title, or Interest under the Zurich Insurers' Policies.

d) Each Party and State Court Counsel represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations with the assistance and supervision of the court-appointed mediator, and with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate, and good-faith compromise of disputed Claims, disputed liabilities, and disputed issues.

e) Each Party and State Court Counsel represents and warrants that it has read this Agreement in its entirety, that it fully understands all of the Agreement's terms and the consequences thereof, and that the person signing this Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

f) Each Party and State Court Counsel represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable.

g) The Zurich Insurers and BSA represent that (i) have each conducted a reasonable, good faith search of their respective records and they have located no evidence of any BSA Insurance Policies issued by Zurich Insurers or Zurich Affiliated Insurers after January 1, 1987 other than the policies identified on Exhibit A, and (ii) have no reason to believe that Zurich Insurers or Zurich Affiliated Insurers issued any Local Council Insurance Policies after January 1, 1987, and neither Party is aware of any additional policies. To the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A, such policy shall be treated as if such policy were included on Exhibit A.

21

FCRA00698

h) Zurich Insurers and Zurich Affiliated Insurers represent that they are no longer responsible for Abuse Insurance Policies issued by Zurich Insurers and Zurich Affiliated Insurers before January 1, 1987.

36. **Bankruptcy Notices**.  If not already performed, in addition to any other service that may be required, Debtors shall provide direct notice of this Agreement and the subject matter thereof to all parties in interest in the bankruptcy case (including all known claimants against Debtors), and appropriate broad notice by publication and otherwise, to ensure that the injunctions protecting the Zurich Insurers and the Zurich Affiliated Insurers against Abuse Claims shall be effective as against all persons who assert, have asserted, or may in the future assert, Abuse Claims.

37. **No Admissions and Non-Admissibility of this Agreement**.  Nothing contained in this Agreement, or in any negotiations, discussions, mediation proceedings, correspondence, or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be deemed to be an admission on the part of the Parties or State Court Counsel with respect to any matter or any factual or legal issue of any kind.

38. **Binding Effect of Agreement.**  All terms and provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties and the State Court Counsel and their respective successors and assigns, including the Settlement Trust.

39. **Dispute Resolution.**  If any dispute should arise concerning the terms, meaning, or implementation of this Agreement, the Parties and State Court Counsel agree to use their best efforts to reach a prompt resolution of such dispute.  If the Parties and State Court Counsel are unable to reach an agreement, they shall proceed to mediation before the Court appointed mediator.  Any Party or State Court Counsel may initiate litigation in the Bankruptcy Court to the extent the Bankruptcy Court has subject-matter jurisdiction, or to the extent it does not, in any other appropriate forum, but no Party or State Court Counsel may initiate litigation until forty-five (45) calendar days after a mediation has commenced. All of the Parties and State Court Counsel consent to personal jurisdiction in any federal court (including the Bankruptcy Court) or state court in the State of Delaware for purposes of resolving any dispute concerning the terms, meaning, or implementation of this Agreement.

40. **Construction of Agreement.**

a) The Parties and State Court Counsel represent and acknowledge that they have participated in the preparation and drafting of this Agreement and have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties or State Court Counsel later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party or State Court Counsel on the basis that one Party or State Court Counsel drafted the language of this Agreement or played a greater role in the drafting of the language.

FCRA00699

b) The headings of this Agreement are inserted for convenience and are not part of the provisions hereof and shall have no force or effect.

41. **Miscellaneous.**

a) This Agreement sets forth the entire agreement between the Parties and State Court Counsel as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or oral.

b) All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the Parties and State Court Counsel at the addresses set forth in <u>Exhibit C</u> hereto, or to such other persons or addresses as the Parties or State Court Counsel may designate in writing from time to time.

c) This Agreement may be amended only by a writing signed by or on behalf of each Party, and, if after the Effective Date, the Zurich Insurers and the Settlement Trust.

d) Each Party may sign an e-mail or PDF copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

42. **Definitions**: The capitalized terms used in this Agreement shall have the respective meanings set forth below.

"**Abuse**" has the meaning ascribed to it in the Plan.

"**Abuse Claims**" means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such) or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based

23

FCRA00700

thereon. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Chartered Organization Abuse Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations. For the avoidance of doubt, (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is related to Scouting (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, TCJC, or their respective Representatives (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.

"**Abuse Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Affirmation Order**" shall have the meaning set forth in the Plan and shall be in all respects, in form and substance acceptable to the Parties.

"**Agreement**" has the meaning ascribed to it in the opening section of this Agreement.

"**AHCLC**" has the meaning ascribed to it in the opening section of this Agreement.

"**Bankrupt Chartered Organization**" has the meaning ascribed to it in section 12 of this Agreement.

"**Bankruptcy Code**" has the meaning ascribed to it in the Plan.

"**Bankruptcy Court**" has the meaning ascribed to it in the Plan.

"**Bankruptcy Rules**" has the meaning ascribed to it in the Plan.

"**BSA**" has the meaning ascribed to it in the opening section of this Agreement.

"**BSA Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Business Day**" has the meaning ascribed to it in the Plan.

"**Channeling Injunction**" has the meaning ascribed to it in the Plan.

"**Chapter 11 Cases**" has the meaning ascribed to it in the Plan.

FCRA00701

"**Chartered Organizations**" has the meaning ascribed to it in the Plan.

"**Child Protection Committee**" has the meaning ascribed to it in the Plan.

"**Claim**" has the meaning ascribed to it in the Plan.

"**Coalition**" has the meaning ascribed to it in the opening section of this Agreement.

"**Confirmation**" has the meaning ascribed to it in the Plan.

"**Confirmation Date**" has the meaning ascribed to it in the Plan.

"**Confirmation Hearing**" has the meaning ascribed to it in the Plan.

"**Confirmation Order**" shall have the meaning set forth in the Plan and be in form and substance acceptable to the Parties confirming and approving the Plan including each and every term of this Agreement and the settlement provided herein.

"**Contributing Chartered Organizations**" has the meaning ascribed to it in the Plan.

"**D&O Liability Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Debtors**" has the meaning ascribed to it in the Plan.

"**Direct Abuse Claims**" has the meaning ascribed to it in the Plan.

"**Discharge**" has the meaning ascribed to it in the Plan.

"**District Court**" has the meaning ascribed to it in the Plan.

"**DST Note**" has the meaning ascribed to it in the Plan.

"**Escrow Account**" has the meaning ascribed to it in section 4(a) of this Agreement.

"**Entity**" has the meaning ascribed to it in the Plan.

"**Estates**" has the meaning ascribed to it in the Plan.

"**FCR**" has the meaning ascribed to it in the opening section of this Agreement.

"**Final Order**" has the meaning ascribed to it in the Plan.

"**Findings and Orders**" means the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.k, Article IX.A.3.r, Article IX.A.3.s, Article IX.A.3.t, Article

25

FCRA00702

IX.A.3.u, Article IX.A.3.v, and Article IX.A.3.aa of the Plan, as the same may be amended or modified from time to time.

"**Full Post-1975 Injunction**" means the channeling injunction applicable to Abuse Claims alleging first Abuse on or after January 1, 1976.

"**Future Claimants' Representative**" has the meaning ascribed to it in the Plan.

"**Indirect Abuse Claims**" has the meaning ascribed to it in the Plan.

"**Insurance Actions**" has the meaning ascribed to it in the Plan.

"**Insurance Action Recoveries**" has the meaning ascribed to it in the Plan.

"**Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Insurance Settlement Agreement**" has the meaning ascribed to it in the Plan.

"**Limited Protected Party**" has the meaning ascribed to it in the Plan.

"**Local Councils**" has the meaning ascribed to it in the Plan.

"**Mixed Claim**" means a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting.  A claim shall not be treated as a Mixed Claim unless and until Scouting-related Abuse allegations have been asserted through a Proof of Claim, the complaint, sworn discovery or testimony (including by affidavit).

"**MMSEA**" has the meaning ascribed to it in section 38 of this Agreement.

"**Net Income**" has the meaning ascribed to it in section 4(b) of this Agreement.

"**Non-Abuse Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Non-Scouting Abuse**" has the meaning ascribed to it in the definition of "Mixed Claim" of this Agreement.

"**Non-Settling Insurance Company**" has the meaning ascribed to it in the Plan.

"**Opt-Out Chartered Organization Abuse Claim**" has the meaning ascribed to it in the Plan.

"**Opt-Out Chartered Organization**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization**" has the meaning ascribed to it in the Plan.

FCRA00703

"**Participating Chartered Organization Insurance Action**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Insurance Assignment**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Settlement Contribution**" has the meaning ascribed to it in the Plan.

"**Parties**" has the meaning ascribed to it in the opening section of this Agreement.

"**Perpetrator**" has the meaning ascribed to it in the Plan.

"**Perpetrator Indemnification Claims**" has the meaning ascribed to it in the Plan.

"**Person**" has the meaning ascribed to it in the Plan.

"**Plan**" has the meaning ascribed to it in the recitals of this Agreement.

"**Plan Effective Date**" or "**Effective Date**" means the first Business Day on which the Plan becomes effective or is consummated in accordance with its terms.

"**Post-1975 Chartered Organization Abuse Claim**" has the meaning ascribed to it in the Plan.

"**Post-Confirmation Interim Injunction**" has the meaning ascribed to it in section 14 of this Agreement.

"**Postpetition Insurance Policies**" has the meaning ascribed to it in the Plan as such term applies to the Zurich Insurers and Zurich Affiliated Insurers.

"**Protected Parties**" has the meaning ascribed to it in the Plan.

"**Related Non-Debtor Entities**" has the meaning ascribed to it in the Plan.

"**Release Date**" shall have the meaning ascribed to it in Section 3(b) of this Agreement.

"**Releasing Parties**" has the meaning ascribed to it in Section 9 of this Agreement.

"**Reorganized BSA**" has the meaning ascribed to it in the Plan.

"**Representatives**" has the meaning ascribed to it in the Plan.

"**Reversal**" has the meaning ascribed to it in Section 4(d) of this Agreement.

"**Sale**" has the meaning ascribed to it in Section 6 of this Agreement.

FCRA00704

"**Scouting**" has the meaning ascribed to it in the Plan.

"**Settlement Amount**" has the meaning ascribed to it in Section 3 of this Agreement.

"**Settlement Trust**" or "**Trust**" has the meaning ascribed to it in Section 3 of this Agreement.

"**Settlement Trust Agreement**" has the meaning ascribed to it in the Plan.

"**Settlement Trust Documents**" has the meaning ascribed to it in the Plan.

"**Settlement Trustee**" has the meaning ascribed to it in the Plan.

"**Settling Insurance Companies**" has the meaning ascribed to it in the Plan.

"**Settling Insurer Local Council Policies**" has the meaning ascribed to it in section 6 of this Agreement.

"**Settling Insurer Policy Injunction**" means the Channeling Injunction applicable to Abuse Claims covered under any insurance policy issued by the Zurich Insurers and Zurich Affiliated Insurers.

"**State Court Counsel**" has the meaning ascribed to it in the opening section of this Agreement.

"**TCJC**" means The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, including any affiliates or personnel.

"**Term Sheet Effective Date**" has the meaning ascribed to it in the opening section of this Agreement.

"**Tort Claimants' Committee**" has the meaning ascribed to it in the Plan.

"**Trust Agreement**" has the meaning ascribed to it in the Plan.

"**Trust Distribution Procedures**" has the meaning ascribed to it in the Plan.

"**United Methodist Entities**" means each and every (i) United Methodist local church, federated, or union church, including any Federated Church or Union Church that includes a historically United Methodist Church congregation, that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, regardless of whether such local, union, or federated church is or was a Chartered Organization at any time; (ii) church currently federated or yoked, and which current federated or yoked church includes a current or former United Methodist Church congregation that sponsored, promoted, hosted or provided any support in connection with Scouting activities; (iii) other United Methodist

28

FCRA00705

related or affiliated organizations that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, including any social service organization, ministry, camping ministry, camp facility, camp, retreat, or other facilities in the nature of a camp or retreat; (iv) any camp, retreat, or other facility in the nature of a camp or retreat that is not United Methodist related or affiliated, but otherwise promoted, hosted, or provided any support in connection with Scouting Activities for an entity described in (i), (ii) or (iii); (v) all organizations affiliated or related to (i) (ii), (iii) or (iv) including, but not limited to, the United Methodist ad hoc committee, each district, annual conference, and jurisdictional conference of The United Methodist Church, the general, annual conference, district, local church agencies of The United Methodist Church, the Council of Bishops of The United Methodist Church, and the non-jural bodies commonly referred to as "The United Methodist Church," the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

"**Zurich Affiliated Insurers**" means all Zurich North America-affiliated underwriting companies and includes, without limitation, Zurich Insurers and Maryland Casualty Company, American General Fire & Casualty Company, and Zurich American Insurance Company, but only with respect to policies issued on or after January 1, 1987. A list of Zurich North America-affiliated underwriting companies is attached to the Zurich Insurance Settlement Agreement. Zurich Insurers, Zurich Affiliated Insurers, and their Representatives and Released Parties (as defined herein) shall not include such persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise.

"**Zurich Insurer Policies**" means the BSA Abuse Insurance Policies issued by Zurich Insurers, including those identified on Exhibit A.  For the avoidance of doubt, "Zurich Insurer Policies" shall not include policies issued before January 1, 1987 by Maryland Casualty Company, American General Fire & Casualty Company, and Zurich American Insurance Company.

"**Zurich Insurers**" means American Zurich Insurance Company, American Guarantee & Liability Insurance Company, and Steadfast Insurance Company; provided that the term

FCRA00706

"Zurich Insurers" shall not include such persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise.

[Remainder of page intentionally left blank]

FCRA00707

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

**AMERICAN ZURICH INSURANCE COMPANY**

By: _Roger C. Mosby_ (signature)

By: _____

Name: _Roger C. Mosby_

Name: _____

Title: _President and CEO_

Title: _____

Date: _February 14, 2022_

Date: _____

**AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY**

By: _____

Name: _____

Title: _____

Date: _____

**STEADFAST INSURANCE COMPANY**

By: _____

Name: _____

Title: _____

Date: _____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

31

FCRA00708

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

**AMERICAN ZURICH INSURANCE COMPANY**

By: _____

By: _____

Name: _____

Name: _____

Title: _____

Title: _____

Date: _____

Date: _____

Digitally signed by Robert Koscielniak
DN: cn=Robert Koscielniak, o=Zurich North America, ou=Latent & Environmental Claims, email=Robert.Koscielniak@zurichna.com, c=US
Date: 2022.02.14 16:33:42 -06'00'
Adobe Acrobat version: 2015.006.00000

**AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY**

By: _____

Name: _____

Title: _____

Date: _____

Digitally signed by Robert Koscielniak
DN: cn=Robert Koscielniak, o=Zurich North America, ou=Latent & Environmental Claims, email=Robert.Koscielniak@zurichna.com, c=US
Date: 2022.02.14 16:34:08 -06'00'
Adobe Acrobat version: 2015.006.00000

**STEADFAST INSURANCE COMPANY**

By: _____

Name: _____

Title: _____

Date: _____

Digitally signed by Robert Koscielniak
DN: cn=Robert Koscielniak, o=Zurich North America, ou=Latent & Environmental Claims, email=Robert.Koscielniak@zurichna.com, c=US
Date: 2022.02.14 16:34:31 -06'00'
Adobe Acrobat version: 2015.006.00000

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

FCRA00710

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: *[signature]*

Dated: 2-14-2022


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _Richard Mason, its chair_

Dated: _2/14/22_

**Schedule 1**

**State Court Counsel**

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway, Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |

| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St., Ste. 900 Houston, TX 77056 | 1026 |
|---|---|---|
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com) 909 Texas St., Ste. 1801 Houston, TX 770022 | 690 |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East, Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW, Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd., Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St., Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |

FCRA00714

| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |
|---|---|---|
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. Houma, LA 70364 | 471 |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave., 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff, NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St., Ste. 950 New York, NY 10165 | 5893 |

## Exhibit A

**Known and Alleged BSA Insurance Policies Issued by Zurich Insurers**

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| American Zurich Insurance Company | CEO 6371780-00 | March 1, 1989 - March 1, 1990 |
| American Zurich Insurance Company | AUO 3657270-00 | March 1, 1996 - March 1, 1997 |
| American Zurich Insurance Company | AUO 3657270-01 | March 1, 1997 - March 1, 1998 |
| American Zurich Insurance Company | EUO 3657270-02 | March 1, 1998 - March 1, 1999 |
| American Zurich Insurance Company | EUO 3657270-03 | March 1, 1999 - March 1, 2001 |
| American Guarantee & Liability Insurance Company | AEC 3657270-04 | March 1, 2001 - March 1, 2002 |
| American Guarantee & Liability Insurance Company | AEC 9278457-00 | March 1, 2001 - March 1, 2002 |
| American Guarantee & Liability Insurance Company | AEC 3657270-05 | March 1, 2002 - March 1, 2003 |
| American Guarantee & Liability Insurance Company | AEC 9278457-01 | March 1, 2002 - March 1, 2003 |
| American Guarantee & Liability Insurance Company | AEC 3657270-06 | March 1, 2003 - March 1, 2004 |
| American Guarantee & Liability Insurance Company | AEC 9278457-02 | March 1, 2003 - March 1, 2004 |
| American Guarantee & Liability Insurance Company | AEC 3657270-07 | March 1, 2004 - March 1, 2005 |
| American Guarantee & Liability Insurance Company | AEC 9278457-03 | March 1, 2004 - March 1, 2005 |
| American Guarantee & Liability Insurance Company | AEC 3657270-08 | March 1, 2005 - March 1, 2006 |
| Steadfast Insurance Company | AEC 3657270-09 | March 1, 2006 - March 1, 2007 |

**Settlement Term Sheet**

This term sheet ("Term Sheet") represents the basic terms of a settlement agreement between and among American Zurich Insurance Company, American Guarantee & Liability Insurance Company, and Steadfast Insurance Company (collectively, "Zurich Insurers"),[1] the Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession ("BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"),[2] the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[3] and the Future Claimants' Representative (the "FCR" and, collectively with Zurich Insurers, the Debtors, the AHCLC, and the Coalition, the "Parties"). This Term Sheet will be binding on the Parties. The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by the Agreement (as defined below). The Parties will prepare a definitive written settlement agreement, to be signed by the parties' respective authorized representatives, that will be consistent with this Term Sheet and will include additional material terms (the "Agreement"). The Agreement will be appended to and included in the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, filed at Dkt. 7832, subject to modification by the Debtors, the Coalition, and the FCR ("Amended Plan"). Capitalized terms not defined in this Term Sheet shall have the definitions ascribed to such terms in the Amended Plan and in the "Century Term Sheet" located at Dkt. No. 7745-1.

1.  **Settlement Amount**. In consideration of the releases and other consideration provided for herein, Zurich Insurers shall pay in cash Fifty-two million, five hundred thousand U.S. Dollars ($52,500,000.00) (the "Settlement Amount") to the trust for Abuse Claims to be created under the Amended Plan (the "Trust") as provided herein.

2.  **Payment and Release of the Settlement Amount**. On, or as soon as reasonably practicable after, the date all conditions to the effectiveness of the Amended Plan have been

---

[1] "Zurich Insurers" shall not include such persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to or, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise.

[2] Notwithstanding anything to the contrary in this Term Sheet, the obligations and undertakings of the AHCLC in connection with this Term Sheet or the Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

[3] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

satisfied (including the entry of orders, in form and substance reasonably acceptable to the Parties, of the Bankruptcy and District Courts confirming, or affirming confirmation of, the Amended Plan (collectively, the "Confirmation Order"), which Confirmation Order shall not be subject to any stay and shall be in full force and effect) and the Amended Plan has gone effective (the "Effective Date"), Zurich Insurers shall pay the Settlement Amount into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties. The Settlement Amount (and all income earned thereon in the Escrow Account, minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the Confirmation Order shall become final and no longer subject to any further appeal or petition for rehearing or certiorari ("Final and Non-Appealable"), on which date the balance of the Escrow Account, which shall include any Net Income, shall be released from the Escrow Account to the Trust (the "Release Date"); *provided, however,* that, at its election, Zurich Insurers may authorize the payment of the Settlement Amount directly to the Trust on the Effective Date or may authorize the release of the Settlement Amount (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes Final and Non-Appealable, in which event the date on which Zurich Insurers authorize the payment or release of the Settlement Amount to the Trust shall be the Release Date. The Escrow Account shall be a simple interest-bearing account; the Settlement Amount shall not be invested in any manner that subjects the Settlement Amount to any risk of loss. The Debtors, Reorganized BSA, the Local Councils, and Chartered Organizations shall have no liability or obligations to Zurich Insurers or the Trust, the Trust shall have no liability or obligations to Zurich Insurers, and Zurich Insurers shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or reduction of the Settlement Amount while it is in the Escrow Account.

3. **Sale of Zurich Insurer Policies**. Entry of the Confirmation Order shall be a condition precedent of the Agreement. The Confirmation Order shall provide that (a) on the Effective Date, and subject to the limitations set forth in this section of the Term Sheet, in exchange for the Settlement Amount, the BSA Insurance Policies issued after January 1, 1987 by Zurich Insurers and Zurich Affiliated Insurers,[4] which include, but are not limited to, those

---

[4] "Zurich Affiliated Insurers" means all Zurich North America-affiliated underwriting companies and includes, without limitation, Zurich Insurers and Maryland Casualty Company, American General Fire & Casualty Company, and Zurich American Insurance Company, but only with respect to policies issued on or after January 1, 1987. A list of Zurich North America-affiliated underwriting companies will be attached to the final settlement agreement. Zurich Insurers, Zurich Affiliated Insurers, and their Representatives and Released Parties (as defined herein) shall not include such persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual

FCRA00718

identified on Exhibit A (collectively, the "Zurich Insurer Policies"),[5] shall be sold by Debtors and the Debtors' Estates to Zurich Insurers free and clear of all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered Organizations, Chartered Organizations, and their respective creditors and interest holders in the Zurich Insurer Policies, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the Sale shall exclude the Postpetition Insurance Policies and Non-Abuse Insurance Policies, (c) the Sale represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Plan, (e) the Confirmation Order shall designate Zurich Insurers as good faith purchasers and shall provide that the Sale constitutes a purchase by Zurich Insurers in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording Zurich Insurers all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including a person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting related Abuse, shall have any right to or an interest in the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust for the benefit of the holders of Direct Abuse Claims, provided, however, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with Trust Agreement and the Trust Distribution Procedures. The Agreement will contain a representation that Zurich Insurers and BSA (a) have each conducted a reasonable, good faith search of their respective records and that they have located no evidence of any BSA Insurance Policies issued by Zurich Insurers or Zurich Affiliated Insurers after January 1, 1987 other than the policies identified on Exhibit A, and (b) have no reason to believe that Zurich Insurers or Zurich Affiliated Insurers issued any Local Council Insurance Policies after January 1, 1987, and that neither Party is aware of any additional policies. To the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A, such policy shall be treated as if such policy were included on Exhibit A. Zurich Insurers and Zurich Affiliated Insurers shall further represent that they are no longer responsible for Abuse Insurance Policies issued before January 1, 1987. Without limiting the foregoing, although the Parties do not believe that the Sale would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more Zurich Insurer Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

---

claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise.

[5] For the avoidance of doubt, "Zurich Insurer Policies" shall not include policies issued before January 1, 1987 by Maryland Casualty Company, American General Fire & Casualty Company, and Zurich American Insurance Company.

FCRA00719

4.    **Protections to be Afforded to the Zurich Insurers and Zurich Affiliated Insurers**. Effective as of the Release Date, Zurich Insurers and Zurich Affiliated Insurers are to be designated as Settling Insurance Companies and Protected Parties for all purposes under the Amended Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections. As set forth herein, Zurich Insurers and Zurich Affiliated Insurers shall be granted such releases, injunctions, protections as are necessary to deliver finality with respect to: all known and unknown policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, which shall include those identified on Exhibit A and any and all policies issued on or after January 1, 1987 and any other insurance policy issued by the Zurich Insurers and Zurich Affiliated Insurers, including Zurich Insurer Policies, covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions, or positions taken in connection with any Abuse Claims and/or the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any Abuse Claims and/or policy issued by the Zurich Insurers and Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise. Notwithstanding anything to the contrary, the BSA, Local Councils, and Chartered Organizations are not releasing, enjoining, or protecting any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise. The Agreement, the Amended Plan, and the Confirmation Order shall provide for a channeling injunction and full release of the Zurich Insurers and Zurich Affiliated Insurers with respect to all Claims or Causes of Action related to, arising from, or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the Zurich Insurer Policies subject to the limitations stated in this Section 4 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies). All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Amended Plan and the Agreement shall be continuously enjoined pending their release. The Zurich

4

FCRA00720

Insurers and Zurich Affiliated Insurers shall be Protected Parties under the Amended Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.M of the Amended Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

5.  **Release by Zurich Insurers and Zurich Affiliated Insurers**.  Upon the Release Date, subject to the limitations below, Zurich Insurers and Zurich Affiliated Insurers and their Representatives shall release the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, and the Trust and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Zurich Insurer Policies), (b) any other insurance policy issued by Zurich Insurers and Zurich Affiliated Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan, including extra-contractual claims relating to the Zurich Insurer Policies and including the Debtors' performance of their obligations thereunder, whether for defense, settlement of claims, or otherwise, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Zurich Insurers and Zurich Affiliated Insurers against the Debtors or by any of the Releasing Parties against Zurich Insurers and Zurich Affiliated Insurers, in the Debtors' Chapter 11 Cases, and any actions, omissions, or positions taken in the Debtors' Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Zurich Insurer Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Zurich Insurers and Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder, whether for defense, settlement of claims, or otherwise.  Nothing shall preclude Zurich Insurers and Zurich Affiliated Insurers from enforcing the terms of the Agreement.  Furthermore, nothing in this Term Sheet, the Agreement, or the Amended Plan shall constitute a release of any Claim by Zurich Insurers or Zurich Affiliated Insurers or their Representatives of any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies, (ii) reinsurance, or (iii) Postpetition Insurance Policies.

6.  **Release of Zurich Insurers and Zurich Affiliated Insurers**.  Upon the Release Date, the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and all such Persons' or Entities' Representatives (the "Releasing Parties") shall release Zurich Insurers and Zurich Affiliated Insurers and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Zurich Insurer Policies), (b) any other insurance policy issued by Zurich Insurers and Zurich Affiliated Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c)

5

the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the Zurich Insurer Policies and including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise, including extra-contractual claims relating to the Zurich Insurer Policies, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Zurich Insurers and Zurich Affiliated Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Zurich Insurers and Zurich Affiliated Insurers, in the Debtors' Chapter 11 Cases, and any actions, omissions or positions taken in the Debtors' Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Zurich Insurer Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Zurich Insurers and Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise. If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Zurich Insurers or Zurich Affiliated Insurers in the Agreement or Amended Plan, then Zurich Insurers and Zurich Affiliated Insurers shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties. The Agreement will provide that the release of Zurich Insurers and Zurich Affiliated Insurers shall not affect claims against other insurance companies, subject to the limitation that Zurich Insurers and Zurich Affiliated Insurers shall not assert claims against other Settling Insurance Companies. Nothing shall preclude the Releasing Parties from enforcing the terms of the Agreement and the Amended Plan. For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past, present, and future direct or indirect parents, subsidiaries, affiliates, and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors, and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and (2) to the extent of any party's right, power, and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Zurich Insurer Policies or any policy of insurance issued to or for the benefit of such releasing party related to Abuse Claims. The releases in this Section 6 shall be subject to and limited by Section 4 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies), and shall not include any insurance policies for which the Zurich Insurers or Zurich Affiliated Insurers become responsible or acquire on or after the Term Sheet Effective Date.[6]

7.  **Protections Afforded to Chartered Organizations**. On the Release Date, all Abuse Claims against insureds and co-insureds covered under insurance policies issued by the

---

[6] For the avoidance of doubt, the releases, protections, and limitations provided in this Term Sheet and the Agreement, including to Zurich Insurers and Zurich Affiliated Insurers, shall be no broader and no narrower than those provided in the Century Term Sheet to the "Settling Insurers" as defined in the Century Term Sheet.

FCRA00722

Zurich Insurers or Zurich Affiliated Insurers, including the Zurich Insurer Policies, shall be channeled under the Settling Insurer Policy Injunction and released. Pending the occurrence of the Release Date, all such Abuse Claims shall be enjoined pursuant to the Post-Petition Interim Injunction, as provided in the Century Term Sheet.

8.    **Trust Bound by Agreement**.  Upon the Effective Date, the Trust shall be bound by all terms of this Term Sheet and the Agreement.  Upon the Release Date, the Trust shall release Zurich Insurers and Zurich Affiliated Insurers from all Causes of Action and Claims that the Trust holds relating to the Zurich Insurer Policies, provide the other releases contained in the Agreement, and otherwise perform as required in the Agreement.

9.    **Chartered Organizations**.  The terms of the Century Term Sheet with respect to Chartered Organizations are incorporated herein.  Zurich Insurers and Zurich Affiliated Insurers shall (a) receive the same releases and the same protections of the channeling injunction as Century Indemnity Company with respect to Chartered Organizations, including the release by the Participating Chartered Organizations and Contributing Chartered Organizations for coverage for Abuse Claims under insurance policies issued directly by Zurich Insurers and Zurich Affiliated Insurers to such Chartered Organizations, and (b) provide the same releases as Century Indemnity Company with respect to Chartered Organizations.  The Agreement shall contain such provisions, including such provisions from the Century Term Sheet or the "Agreement" referred to in that term sheet, as are necessary and appropriate to accomplish the goals of the first sentence of this paragraph.

10.   **Judgment Reduction**.  In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Zurich Insurers as a result of a Cause of Action for contribution, subrogation, indemnification, or other similar Cause of Action against Zurich Insurers for Zurich Insurers' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification, or other similar Cause of Action against Zurich Insurers.  To ensure that such a reduction is accomplished, Zurich Insurers shall be entitled to assert this paragraph as a defense to any action against them for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Zurich Insurers from any liability for the judgment or Cause of Action.  To the extent any other insurer asserts a claim for contribution, subrogation, indemnification, or other similar claim against Zurich Insurers or Zurich Affiliated Insurers, Zurich Insurers or Zurich Affiliated Insurers may assert any defense to such claim notwithstanding any of the releases contained herein.

11.   **Findings and Orders**.  The Amended Plan and the Confirmation Order shall state that the Findings and Orders (as described in paragraph 21 of the Century Term Sheet) and Trust Distribution Procedures of the Plan are not binding on Zurich Insurers or Zurich Affiliated Insurers to the extent that Zurich Insurers or Zurich Affiliated Insurers are Settling Insurance Companies and the transactions contemplated herein, including the payment of the Settlement Amount to the Trust, are fully consummated.  The Amended Plan and

FCRA00723

Confirmation Order shall further provide that Zurich Insurers' and Zurich Affiliated Insurers' agreement herein not to object to the entry of said Findings and Orders in the Confirmation Order does not indicate Zurich Insurers' or Zurich Affiliated Insurers' support for or acceptance of the Trust Distribution Procedures or any findings and orders made in connection with them in any proceeding, which Findings and Orders and Trust Distribution Procedures shall not be applicable to Zurich Insurers or Zurich Affiliated Insurers, and no party shall argue that Zurich Insurers or Zurich Affiliated Insurers agreed to or acquiesced in such Findings, and Orders and Trust Distribution Procedures in any proceeding.

12. **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with this Term Sheet and the Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* dated September 29, 2021, filed at Dkt. 6443, *provided that* Zurich Insurers and Zurich Affiliated Insurers shall be included as releasees, with respect to any Zurich Insurer Policies issued on or after January 1, 1987, in any form of release attached to the Trust Distribution Procedures to the same extent as BSA, Local Councils, and Chartered Organizations are released. The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Abuse Claims who receive payment from the Trust to release any Abuse Claim against Zurich Insurers or Zurich Affiliated Insurers under the Zurich Insurer Policies. The Trust Distribution Procedures shall also provide that the Settlement Trustee shall require holders of Abuse Claims who receive payment from the Trust to release any such Abuse Claim against any insured, co-insured, or additional insured under the Zurich Insurer Policies to the extent of any remaining rights (if any) under the Zurich Insurer Policies. Zurich Insurers and Zurich Affiliated Insurers shall not object to the Trust Distribution Procedures but may add a statement in the Amended Plan that Zurich Insurers and Zurich Affiliated Insurers are Settling Insurance Companies and, as a result, take no position on the Trust Distribution Procedures. Zurich Insurers and Zurich Affiliated Insurers shall not object to the selection of the Settlement Trustee as provided in the Amended Plan and Settlement Trust Agreement. Zurich Insurers and Zurich Affiliated Insurers shall not participate in or otherwise interfere with the administration of the Trust.

13. **Objections to Plan**. Zurich Insurers and Zurich Affiliated Insurers shall not object to the Amended Plan, the Settlement Trust Agreement, or the Trust Distribution Procedures (and shall withdraw any pending objections) so long as Zurich Insurers and Zurich Affiliated Insurers are included as Protected Parties in the Amended Plan, and the Amended Plan is otherwise consistent with the terms of this Term Sheet and the Agreement.

14. **Discovery**. Upon the execution of the Term Sheet, all Parties shall as soon as practicable withdraw any pending discovery requests directed at each other and shall not seek additional discovery from each other. Zurich Insurers shall as soon as practicable withdraw any pending discovery requests directed at any holder of an Abuse Claim, representatives of such holders, funders, vendors utilized by representatives of such holders, the Coalition (including law firms and attorneys associated therewith), and the FCR. Zurich Insurers and Zurich Affiliated Insurers shall not seek or direct any additional discovery from such

8

FCRA00724

parties, the BSA, or the Local Councils, or any other party in interest in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases, nor shall Zurich Insurers and Zurich Affiliated Insurers cooperate with any other insurer's or putative objector's discovery requests in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases. Notwithstanding the foregoing, Zurich Insurers and Zurich Affiliated Insurers shall cooperate and comply with any information requests, including prior BSA-related settlement and verdict information, from the BSA, the Coalition, and the FCR to the extent such information is not protected from disclosure and reasonably necessary in support of the confirmation of the Amended Plan; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to Mediator Gallagher, and the Parties agree to be bound by the Mediator's decision regarding such dispute.

15. **Public Statements**. The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding settlement, including press releases, court filings, and in-court statements. Zurich Insurers and Zurich Affiliated Insurers shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Zurich Insurers and Zurich Affiliated Insurers may make statements to protect their rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and their representatives concerning Zurich Insurers and Zurich Affiliated Insurers.

16. **Termination Event by the Debtors, the Coalition, and the FCR**. Subject to the provisions of Section 18, the Agreement shall contain a termination event that shall permit the Debtors, the Coalition, or the FCR to terminate the Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Amended Plan under section 1126 of the Bankruptcy Code and as a result the Amended Plan is withdrawn. Subject to the foregoing sentence and Section 17, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Term Sheet and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Term Sheet, including the provisions constituting the approval of all of the terms and conditions hereof, and the Agreement, and (b) defend this Term Sheet and the Agreement.

17. **Fiduciary Out by the Debtors and the FCR**. Notwithstanding anything in this Term Sheet or the Agreement to the contrary, no term or condition of this Term Sheet or the Agreement shall require Debtors or the FCR to take or refrain from taking any action that it determines would be inconsistent with its fiduciary duties under applicable law, and, further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Term Sheet or the Agreement, the Term Sheet or Agreement may be terminated at any time prior to the entry of a Final Order confirming the Amended Plan as to that party, *provided, however,* that the Debtors and the FCR each understands that the TCC is not a party to this Term Sheet and that the TCC and claimants represented by various plaintiff firms may object to the Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Term Sheet and the Agreement is consistent with their fiduciary duties as of

FCRA00725

the effective date of the Term Sheet, *provided further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders, and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate the Agreement, such termination shall be with respect to the FCR only and not otherwise affect the Agreement or the other Parties' rights and obligations thereunder. Each of Debtors and the FCR believe that, as of the date hereof, entering into this Term Sheet is an appropriate exercise of its fiduciary duty.

18. **Effect of Termination or Failure of Conditions to Occur**. In the case of any termination described in Sections 16 or 17 above by the Debtors or any other situation where the Agreement does not proceed (including as a result of the failure of any condition thereto to occur or failure to obtain entry of the Confirmation Order), absent the consent of the Zurich Insurers, the Zurich Insurers shall be (i) afforded an opportunity to interpose all objections to any plan that does not afford them the protections and rights provided hereunder, notwithstanding any prior deadlines, law of the case, or any determination made in the intervening period after execution of this Term Sheet, (ii) afforded adequate additional time and relief from any deadline to prepare and present such objections including any expert reports and additional discovery, and (iii) able to assert any and all positions in opposition to such plan and hearing schedule, none of which are waived or affected hereby. For the avoidance of doubt, the approval of the Agreement and settlement provided herein shall be a condition to the entry of the Confirmation Order, entry of the Affirmation Order, and the Effective Date of the Amended Plan, which condition may only be waived with the consent of each of the Parties.

19. **Effect of Reversal of Confirmation Order Following the Effective Date.** In the event that the Confirmation Order is reversed or vacated on appeal following the Effective Date, such that the Release Date does not occur (a "Reversal"), the Parties and State Court Counsel agree that the Settlement Amount and all Net Income accrued thereon in the Escrow Account shall be released from the Escrow Account to Zurich Insurers promptly following the Reversal (or any exercise of a Fiduciary Out by BSA). The provisions of this Section 19 shall survive any Reversal, any exercise of any Fiduciary Out, and any termination of the Agreement. Nothing in this Section or elsewhere in this Term Sheet or the Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

20. **State Court Counsel**. Each State Court Counsel represents and warrants to the Parties that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

FCRA00726

21. **Contribution Claims.**

   a. Zurich Insurers and Zurich Affiliated Insurers will not assert or file a Claim, and will dismiss any pending Claims, seeking contribution, indemnity, and/or defense against another Entity in order to recover any portion of the Settlement Amount to be paid by Zurich Insurers under the Agreement or with respect to claims released under the Agreement.

   b. Notwithstanding the foregoing, Zurich Insurers shall maintain an unfettered right to advise their reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against their reinsurers and retrocessionaires in their capacities as such.

   c. To the extent that the Debtors, their Estates, or any assignee, successor, or any other Entity formed to assume the Debtors' liability for Abuse Claims, including the Settlement Trust, settles Claims arising out of claims released by the Agreement with any other Insurance Company or other Entity, the Debtors, their Estates, or any such assignee, successor, and/or other Entity, including the Settlement Trust, shall use its or their best efforts to obtain a waiver of that other Insurance Company's or Entity's Claims seeking contribution, indemnity, and/or defense costs from any Zurich Insurer or Zurich Affiliated Insurer based upon, arising out of, or in any way related to such Claims. Such waiver may be accomplished by an assignment of such Claims to the Settlement Trust, whereupon such Claims will be subject to the releases set forth in Section 5 herein.

22. **Conditions.**

   a. If the Bankruptcy Court, or any other court with jurisdiction, issues an order (a) dismissing Debtors' bankruptcy cases or converting them to cases under Chapter 7 or (b) confirming a plan that does not identify the Zurich Insurers as Protected Parties who are entitled to the benefit of the Channeling Injunction, the Agreement will be null and void.

   b. The Agreement will include as a condition precedent that the FCR (subject to Section 17 herein), the Coalition, and the AHCLC must consent to, and agree to be bound by, all of the terms of the Agreement.

   c. The Agreement shall bind the Settlement Trust to an agreement not to terminate the Channeling Injunction provided in the Plan, or any other injunction contained in the Plan, that bars or limits claims of any kind against Settling Insurance Companies.

23. **Bankruptcy Proceedings.**

   a. The Parties agree to use their best reasonable efforts to effectuate the Agreement and to obtain entry of the Confirmation Order.

FCRA00727

    b. If the Confirmation Order is not entered, or is entered but does not become a Final Order, all of the Parties' rights with respect to the Zurich Insurer Policies shall be preserved exactly as they existed before the authorized representatives of the Parties signed the Agreement.

24. **Bankruptcy Provisions.**

    a. <u>Channeling Injunction</u>. Subject to all of the terms and conditions of the Plan and the Agreement, including the Zurich Insurers' payment of the Settlement Amount, the Zurich Insurers and the Zurich Affiliated Insurers shall be designated as Settling Insurance Companies and Protected Parties under the Plan, entitled to the protection of the Channeling Injunction.

    b. <u>Notice</u>. In addition to providing direct notice to all parties in interest in the bankruptcy case (including all known claimants against Debtors), Debtors shall provide appropriate broad notice by publication and otherwise to ensure that the injunctions protecting the Zurich Insurers and the Zurich Affiliated Insurers against Abuse Claims shall be effective as against all persons who assert, have asserted, or may in the future assert, Abuse Claims.

    c. <u>Incorporation Of This Settlement Into A Further Amended Plan</u>. The Parties will discuss the extent to which any settlement between them must be incorporated into a further amended Plan.

25. **Abuse Claims Under Policies Issued to Chartered Organizations**. Notwithstanding the release by the Participating Chartered Organizations and Contributing Chartered Organizations of the right to seek coverage for Abuse Claims under insurance policies issued directly by Zurich Insurers or Zurich Affiliated Insurers to such Chartered Organizations:[7]

    (a) Such Chartered Organizations are not barred from tendering claims that are not Abuse Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent;

    (b) Such Chartered Organizations are not barred from tendering Mixed Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-Confirmation Interim Injunction (as set forth in Section 14 of the Century Term Sheet) and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations;

    (c) Such Chartered Organizations may seek coverage and tender claims under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, subject to all parties' contractual rights;

---

[7] This does not include policies issued by Zurich Insurers and Zurich Affiliated Insurers to the BSA or the Local Councils.

FCRA00728

(d) To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, subject to all parties' contractual rights;

(e) To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, Zurich Insurers and Zurich Affiliated Insurers shall have no further obligations with respect to such claim; and

(f) The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or Zurich Insurers and Zurich Affiliated Insurers to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

26.  **Other Terms.**

a.  Mutually agreeable terms for non-admission, no use, integration, no assignment, notice, and other standard terms.

b.  Zurich Insurers may allocate the Settlement Amount in their sole discretion among any Zurich Insurer Policies, provided that (i) any such allocation shall not bind the Trust and (ii) Zurich Insurers and Zurich Affiliated Insurers will not allocate the Settlement Amount to any insurance policy issued directly to a Chartered Organization by Zurich Insurers and Zurich Affiliated Insurers.

*[Remainder of Page Intentionally Left Blank]*

13

FCRA00729

*Execution version*

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                    **Zurich Insurers (as defined)**

By: _Roger C. Mosby_ (signature)       By: _____

Name: _Roger C. Mosby_                 Name: _____

Title: _President & CEO_               Title: _____

Date: _12-21-2021_                     Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

FCRA00730

*Execution version*

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                    **Zurich Insurers (as defined)**

By: _____    By: ___

Name: _____    Name: ___ *Robert Koscielniak*

Title: _____    Title: ___

Date: _____    Date: _____

Digitally signed by Robert
Koscielniak
DN: cn=Robert Koscielniak, o=Zurich
North America, ou=Latent &
Environmental Claims,
email=Robert.Koscielniak@zurichna.
com, c=US
Date: 2021.12.21 16:48:23 -06'00'
Adobe Acrobat version:
2015.006.00000


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**FCRA00731**

*Execution version*

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                                **Zurich Insurers (as defined)**

By: _____          By: _____

Name: _____          Name: _____

Title: _____          Title: _____

Date: _____          Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: 12 / 21 / 21


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

*Execution version*

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                                          **Zurich Insurers (as defined)**

By: _____                    By: _____

Name: _____              Name: _____

Title: _____                  Title: _____

Date: _____                 Date: _____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____
         David J. Molton

Dated: _December 22, 2021_

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                    **Zurich Insurers (as defined)**

By: _____          By: _____

Name: _____          Name: _____

Title: _____        Title: _____

Date: _____         Date: _____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____, its chair

Dated: 12/21/21

## Schedule 1

### State Court Counsel

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St. Ste. 900 Houston, TX 77056 | 1026 |
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com) 909 Texas St, Ste 1801 | 690 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Houston, TX 770022 | |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd. Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St. Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. | 471 |

FCRA00736

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
|  | Houma LA 70364 |  |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave. 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St. Ste. 950 New York, NY 10165 | 5893 |

FCRA00737

*Execution version*

## Exhibit A

### Known and Alleged BSA Insurance Policies Issued by Zurich Insurers

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| American Zurich Insurance Company | CEO 6371780-00 | March 1, 1989 - March 1, 1990 |
| American Zurich Insurance Company | AUO 3657270-00 | March 1, 1996 - March 1, 1997 |
| American Zurich Insurance Company | AUO 3657270-01 | March 1, 1997 - March 1, 1998 |
| American Zurich Insurance Company | EUO 3657270-02 | March 1, 1998 - March 1, 1999 |
| American Zurich Insurance Company | EUO 3657270-03 | March 1, 1999 - March 1, 2001 |
| American Guarantee & Liability Insurance Company | AEC 3657270-04 | March 1, 2001 - March 1, 2002 |
| American Guarantee & Liability Insurance Company | AEC 9278457-00 | March 1, 2001 - March 1, 2002 |
| American Guarantee & Liability Insurance Company | AEC 3657270-05 | March 1, 2002 - March 1, 2003 |
| American Guarantee & Liability Insurance Company | AEC 9278457-01 | March 1, 2002 - March 1, 2003 |
| American Guarantee & Liability Insurance Company | AEC 3657270-06 | March 1, 2003 - March 1, 2004 |
| American Guarantee & Liability Insurance Company | AEC 9278457-02 | March 1, 2003 - March 1, 2004 |
| American Guarantee & Liability Insurance Company | AEC 3657270-07 | March 1, 2004 - March 1, 2005 |
| American Guarantee & Liability Insurance Company | AEC 9278457-03 | March 1, 2004 - March 1, 2005 |
| American Guarantee & Liability Insurance Company | AEC 3657270-08 | March 1, 2005 - March 1, 2006 |
| Steadfast Insurance Company | AEC 3657270-09 | March 1, 2006 - March 1, 2007 |

**Exhibit C**

**Notice Addresses**

| For Zurich: | With a copy to: |
|---|---|
| Robert Koscielniak<br>Director, Latent & Environmental Claims<br>Zurich North America<br>1299 Zurich Way<br>Schaumburg, IL 60196-1056<br>robert.koscielniak@zurichna.com | Mark D. Plevin<br>Crowell & Moring LLP<br>3 Embarcardero Center<br>26th Floor<br>San Francisco, CA 94111<br>(415) 365-7446<br>mplevin@crowell.com |
| For the Debtors: | With a copy to: |
| Steven P. McGowan<br>General Counsel<br>Boy Scouts of America<br>1325 West Walnut Hill Lane<br>Irving, TX 75038<br>(972) 580-7847<br>steve.mcgowan@scouting.org | Jessica C. Lauria<br>White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>(212) 819-8200<br>jessica.lauria@whitecase.com<br><br>Michael C. Andolina<br>White & Case LLP<br>111 South Wacker Drive<br>Chicago, IL 60606<br>(312) 881-5400<br>mandolina@whitecase.com |
| For the Coalition: | |
| David J. Molton<br>Eric R. Goodman<br>Coalition of Abused Scouts for Justice<br>c/o Brown Rudnick LLP<br>Seven Times Square<br>New York, NY<br>(212) 209-4800<br>dmolton@brownrudnick.com<br>egoodman@brownrudnick.com | |

| For the FCR: | With a copy to: |
|---|---|
| James L. Patton<br>Robert S. Brady<br>Edwin J. Harron<br>c/o Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>jpatton@ycst.com<br>rbrady@ycst.com<br>eharron@ycst.com | Kami E. Quinn<br>Gilbert LLP<br>700 Pennsylvania Avenue SE<br>Suite 400<br>Washington, DC 20003<br>(202) 772-2336<br>quinnk@gilbertlegal.com |
| For AHCLC:<br><br>Richard G. Mason<br>Joseph C. Celentino<br>Ad Hoc Committee of Local Councils<br>c/o Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, New York 10019<br>(212) 403-1000<br>RGMason@wlrk.com<br>JCCelentino@wlrk.com | |
| For State Court Counsel:<br><br>See Schedule 1 hereto | |

FCRA00740

**Exhibit D**

**Current P&C underwriting companies**

Zurich American Insurance Company
American Guarantee and Liability Insurance Company
American Zurich Insurance Company
Colonial American Casualty and Surety Company
Empire Fire and Marine Insurance Company
Empire Indemnity Insurance Company
Fidelity and Deposit Company of Maryland
Steadfast Insurance Company
Universal Underwriters Insurance Company
Universal Underwriters of Texas Insurance Company
Zurich American Insurance Company of Illinois

**Sold, dissolved, merged underwriting companies**

Assurance Company of America
Maine Bonding and Casualty Company
Maryland Casualty Company
Maryland Insurance Company f/k/a American General Fire and Casualty Company
Maryland Lloyd's
National Standard Insurance Company
Northern Insurance Company of New York
Valiant Insurance Company
Zurich American Lloyds
Zurich Insurance Company (US Branch)

# **EXHIBIT 3**

**Clarendon Insurance Settlement Agreement**

FCRA00742

*EXECUTION VERSION*

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release (this "<u>Agreement</u>"), dated February 14, 2022, is entered into between and among Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company), River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St Katherine Insurance Company Limited), and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company (as defined herein and collectively, "<u>Clarendon</u>")), Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (as defined herein and collectively, "<u>BSA</u>" or the "<u>Debtors</u>"), the Ad Hoc Committee of Local Councils (the "<u>AHCLC</u>"),[1] the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "<u>Coalition</u>"),[2] and the Future Claimants' Representative (the "<u>FCR</u>" and, collectively with Clarendon, the Debtors, the AHCLC, and the Coalition, the "<u>Parties</u>"). The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "<u>State Court Counsel</u>") agree to support the terms of and be bound by this Agreement.

WHEREAS, on February 18, 2020, the Debtors commenced proceedings under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

WHEREAS, Clarendon has allegedly issued insurance policies covering or allegedly covering Claims and Causes of Action for Abuse involving Scouting that occurred prior to the Petition Date;

WHEREAS, the Parties wish to resolve disputes concerning such policies;

WHEREAS, subject to the terms and conditions set forth herein, Clarendon will pay the Settlement Amount (as defined herein) in exchange for the injunctions, releases and other protections described below;

WHEREAS, among other things, the settlement provides for the channeling and release of all Abuse Claims against Clarendon (and against their insureds under policies issued by Clarendon that may cover such Claims) in exchange for the Settlement Amount (as defined below);

WHEREAS, on December 18, 2021, the Debtors filed their Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832] (as it may subsequently be amended from time to time, the "<u>Plan</u>");

---

[1] Notwithstanding anything to the contrary in this Agreement, the obligations and undertakings of the AHCLC in connection with this Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

[2] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Agreement.

WHEREAS, on December 30, 2021 (the "Term Sheet Effective Date"), the Parties executed a term sheet in the form attached hereto as Exhibit C (the "Term Sheet"), setting forth the basic terms of their settlement; and

1. **Agreement Effective Date.** This Agreement shall be binding on the Parties, subject to Bankruptcy Court approval, as necessary, and Sections 25, 26, 27, 28, and 29 below, when the last of the Parties to execute this Agreement has executed this Agreement.

2. **Settlement Amount.** In consideration of the releases and other consideration provided for herein, Clarendon shall pay in cash Sixteen Million and Five-Hundred Thousand U.S. Dollars ($16,500,000) (the "Settlement Amount") to the trust for Abuse Claims to be created under the Plan (the "Settlement Trust" or "Trust") as provided herein. No most-favored nation or similar provision will reduce the Settlement Amount to be paid by Clarendon based on any settlements that BSA may enter into with other insurers.

3. **Payment and Release of the Settlement Amount.**

a) Clarendon shall pay Two Million, Eight Hundred and Seventy-One Thousand U.S. Dollars ($2,871,000) (17.4% of Settlement Amount) (the "Initial Payment") of the Settlement Amount to the Trust on, or as soon as reasonably practicable after, the Initial Payment Date and all conditions to the effectiveness of the Plan have been satisfied (including the entry of orders, in form and substance reasonably acceptable to the Parties, of the Bankruptcy and District Courts confirming, or affirming confirmation of, the Plan (collectively, the "Confirmation Order"), which Confirmation Order shall not be subject to any stay and shall be in full force and effect) and the Plan has gone effective (the "Plan Effective Date").

b) On, or as soon as reasonably practicable after, the Plan Effective Date, Clarendon shall pay the remaining 82.6% of the Settlement Amount (the "Additional Payment") into an escrow account (the "Escrow Account," and all payments held in such Escrow Account, the "Escrowed Payments"), to be administered by an independent escrow agent acceptable to the Parties (the "Escrow Agent"). The Additional Payment (and all income earned thereon minus (a) the fees of the Escrow Agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the Confirmation Order becomes a Final Order, on which date the Additional Payment, plus any Net Income, shall be released from the Escrow Account to the Trust on the Release Date); *provided, however,* that, at its election, Clarendon may authorize the payment of the Additional Payment directly to the Trust on the Plan Effective Date or may authorize the release of the Additional Payment (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes a Final Order, in which event the date on which Clarendon authorizes the payment or release of the Additional Payment to the Trust shall be the Release Date.

c) The Settlement Trust shall have investment discretion with respect to the Additional Payment while it is in the Escrow Account, subject to the investment protocols applicable under the term sheet located at Docket No. 6210-1; *provided, however,* that the Trust will bear all risks associated with any such investment of the Additional Payment and that no

2

loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account shall require Clarendon to increase the Settlement Amount it is paying (or increase the amount of BSA's contribution to the Trust); *provided further, however*, that the Debtors, Reorganized BSA, the Local Councils, and Chartered Organizations shall have no liability or obligations to Clarendon or the Trust, the Trust shall have no liability or obligations to Clarendon, and Clarendon shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account.

d) Notwithstanding anything to the contrary herein, the Additional Payment and any amounts in the Escrow Account, including the Net Income, shall be promptly (and no later than seven (7) Business Days after the date of such written demand unless otherwise agreed to by the Parties) released to Clarendon upon its written demand if any of the following occur: (i) the District Court does not enter the Affirmation Order within 360 days after the entry of the Confirmation Order by the Bankruptcy Court or the District Court declines to enter the Affirmation Order (whether or not such denial constitutes a remand or a Reversal, as defined herein); (ii) the Plan is at any time withdrawn; (iii) the Plan otherwise ceases to conform to this Agreement; (iv) the Confirmation Order is reversed or vacated on appeal following the Plan Effective Date such that the Release Date does not occur (a "Reversal"); (v) the Chapter 11 Cases have been converted or dismissed, (vi) the Parties agree to such release in writing; or (vii) an order of the Bankruptcy Court or District Court so provides. In such event, the Parties' rights and obligations under this Agreement shall be governed by Sections 28 and 29.

4. **Protections to be Afforded to Clarendon**.

a) Effective as of the Release Date, Clarendon will be designated as Protected Parties for all purposes under the Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections. As set forth herein, Clarendon shall be granted such releases, injunctions, and protections as are necessary to deliver finality with respect to all known and unknown insurance policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from or in connection with Abuse Claims, which shall include the Clarendon Policies (as defined below) and any other known or unknown insurance policy issued or allegedly issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions or positions taken in connection with any Abuse Claims and/or the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date related to any Abuse Claims and/or policy issued or allegedly issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise. Notwithstanding anything to the contrary herein, the BSA, Local Councils, and Chartered Organizations are not releasing or enjoining any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) other than the right to seek coverage for and/or to pursue any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-

3

contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise.

b) To preserve and promote the settlements contemplated by and provided herein and in the Plan, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (i) the sole recourse of any holder of an Abuse Claim against Clarendon on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against Clarendon or any property or interest in property of Clarendon, (ii) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim, shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against Clarendon or any Limited Protected Party or any property or interest in property of Clarendon or any Limited Protected Party, (iii) the sole recourse of any holder of an Abuse Claim against a Limited Protected Party if such Abuse Claim is covered under any insurance policy issued or allegedly issued by Clarendon, shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party, (iv) the sole recourse of any holder of an Opt-Out Abuse Claim against an Opt-Out Chartered Organization on account of such Opt-Out Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Opt-Out Abuse Claim against any Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization. For the avoidance of doubt, the sole recourse for any holder of an Abuse Claim covered by any insurance policy issued or allegedly issued by Clarendon shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Plan Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, or any Abuse Claim against the Limited Protected Parties if such Abuse Claim is covered under any insurance policy or allegedly issued by Clarendon, or any Opt-Out Abuse Claim against the Opt-Out Chartered Organizations, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or

recovery from any Protected Party with respect to any such Abuse Claim, or from any Limited Protected Party with respect to any such Abuse Claim if such Abuse Claim is covered under any insurance policy issued or allegedly issued by Clarendon, or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, or from any Opt-Out Chartered Organization with respect to any Opt-Out Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

i) commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

iii) creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

iv) asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization; or

v) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim, or Opt-Out Abuse Claim.

c) The Plan and the Confirmation Order shall provide for a channeling injunction substantially on the terms set forth in clause (b) above (the "Channeling Injunction") and a full release of Clarendon with respect to all Claims or Causes of Action related to, arising from or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions

5

definition in the Plan and other Claims related to the insurance policies issued by Clarendon subject to the limitations stated in this Section 4 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies). All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Plan Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Plan and this Agreement shall be continuously enjoined pending their release. Clarendon shall be a Protected Party under the Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.L of the Plan) or any other person or entity by virtue of its status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

d)  Solely for purposes of administering the releases and channeling injunctions provided in this Agreement, the Plan and the Confirmation Order, and not for any other purpose, any liability insurance policies that were issued or may have been issued by Clarendon shall be automatically deemed to "cover" or provide "coverage" for an Abuse Claim against a Chartered Organization if (i) such policy includes the Chartered Organization as an insured or additional insured, including by referring categorically to chartered organizations, charters, sponsoring organizations or sponsors as insureds or additional insureds, and (ii) such policy was in effect when the alleged Abuse underlying such Abuse Claim allegedly took place; provided however, that nothing in the preceding portion of this Section 4(d) shall be offered or interpreted as an admission by Clarendon of any fact or issue for any purpose, and shall not be cited as a basis to impose liability on, or increase the liability of, Clarendon under any circumstance or any insurance policy. This Section 4(d) does not limit the assignment of the Claims and Causes of Action set forth in Section 23 of this Agreement.

e)  Nothing in this Agreement will release claims for reinsurance under reinsurance contracts that Clarendon issued to other insurance companies and the Parties agree to modify the injunction provisions in the Plan to state that such claims for reinsurance will not be enjoined.

5.  **Sale of Clarendon Policies**. Prior to the Plan Effective Date, the Local Councils and Clarendon shall consent to and provide for the assignment of the Local Council Insurance Policies issued by Clarendon, which include those identified on Exhibit A hereto (the "Clarendon Local Council Policies"), to the Debtors' Estates. The Confirmation Order and Plan shall provide that (a) on the Plan Effective Date, and subject to the limitations below, in exchange for the Settlement Amount, the BSA Insurance Policies issued by Clarendon which include those identified on Exhibit B hereto (the "Clarendon BSA Policies" and with the Clarendon Local Council Policies, the "Clarendon Policies")[3] and the Clarendon Local Council Policies shall be sold by Debtors and the Debtors' Estates to Clarendon free and clear of all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered

---

[3] For the avoidance of doubt, "Clarendon Policies" shall not include policies issued on or after January 1, 1987 by Maryland Casualty Company, American General Fire & Casualty Company, Zurich American Insurance Company, and their respective affiliates.

Doc #  DC/27542496v1

FCRA00748

Organizations, Chartered Organizations, and their respective creditors and interest holders in the Clarendon Policies, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the assignment by the Local Councils and the Sale shall exclude any Postpetition Insurance Policies and Non-Abuse Insurance Policies, (c) the Sale represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Plan, (e) the Confirmation Order shall designate Clarendon as a good faith purchaser and shall provide that the Sale constitutes a purchase by Clarendon in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording Clarendon all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including any person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting-related Abuse, shall have any right to or an interest in the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust for the benefit of the holders of Direct Abuse Claims, *provided, however*, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with Settlement Trust Agreement and the Trust Distribution Procedures. Although the Parties do not believe that the Sale would constitute a violation of the automatic stay applicable to any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more Clarendon BSA Policies, to the extent the Bankruptcy Court (or any other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

6. **Trust Bound by Agreement**. Upon the Plan Effective Date, the Trust shall be bound by all terms of this Agreement. Upon the Release Date, the Trust shall release Clarendon from all Causes of Action and Claims that the Trust holds relating to the Clarendon Policies and other policies issued by Clarendon covering Abuse Claims, provide the other releases contained in this Agreement (including a release relating to Abuse Claims) and otherwise perform as required by this Agreement.

7. **Release by Clarendon**. Upon the Release Date, subject to the limitations below and those set forth in Section 14, Clarendon and its Representatives (as defined in the Plan) shall automatically, without further action on the party of any Person or Entity, release the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, and the Trust and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Clarendon Policies), (b) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Action definition in the Plan, including extra-contractual claims relating to the Clarendon Policies and including the Debtors' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise, (d) the Chapter 11 Cases and related proceedings, including the Plan and any prior plans, any Claims that were or could have been asserted by Clarendon against the Debtors or any of the Releasing Parties (to the same extent that such Released Parties have released such claims against Clarendon), or by the Debtors or any of the Releasing Parties against Clarendon, in the Chapter 11 Cases, and any actions, omissions, or positions

Doc #  DC/27542496v1

**FCRA00749**

taken in the Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Clarendon Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Plan Effective Date related to any policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder, whether for defense, settlement of claims, or otherwise. Nothing shall preclude Clarendon from enforcing the terms of this Agreement. Furthermore, nothing in this Agreement or the Plan shall constitute a release of any Claim by Clarendon or its Representatives of any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies, (ii) reinsurance, or (iii) Postpetition Insurance Policies. The releases in this Section 7 shall be subject to and limited by Section 5 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies), and shall not include any insurance policies for which Clarendon becomes responsible or acquires on or after the Term Sheet Effective Date. The Parties expressly acknowledge that there may be changes in the law and/or that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims or Causes of Action released in this Section 7. Nevertheless, the Parties hereby agree that the releases set forth in this Section 7 shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

8. **Release of Clarendon**. Upon the Release Date, subject to the limitations below and those set forth in Section 14, the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the Limited Protected Parties (including Participating Chartered Organizations), other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and all such Persons' or Entities' Representatives (the "Releasing Parties") shall automatically, without further action on the part of any Person or Entity, release Clarendon and its Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Clarendon Policies), (b) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise, including extra-contractual claims relating to the Clarendon Policies (d) the Chapter 11 Cases and related proceedings, including the Plan and any prior plans, any Claims that were or could have been asserted by Clarendon against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Clarendon, in the Chapter 11 Cases, and any actions, omissions or positions taken in the Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Clarendon Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Plan Effective Date related to any policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder, whether for defense, settlement of claims, or otherwise. If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Clarendon in this Agreement or Plan, then Clarendon shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties. The

8

release of Clarendon shall not affect claims against other insurance companies, subject to the limitation that Clarendon shall not assert claims (other than potential reinsurance claims) against other Settling Insurance Companies. Nothing shall preclude the Releasing Parties from enforcing the terms of this Agreement and the Plan. For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past, present, and future direct or indirect parents, subsidiaries, affiliates, and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors, and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and (2) to the extent of any party's right, power and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Clarendon Policies or any policy of insurance issued to or for the benefit of such releasing Party related to Abuse Claims.[4] The releases in this Section 8 shall be subject to and limited by Section 4 concerning, (i) Non-Abuse Insurance Policies or (ii) Postpetition Insurance Policies, and shall not include any insurance policies for which Clarendon becomes responsible or acquires on or after the Term Sheet Effective Date.[5] The Parties expressly acknowledge that there may be changes in the law and/or that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims or Causes of Action released in this Section 8. Nevertheless, the Parties hereby agree that the releases set forth in this Section 8 shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

9. **Participating Chartered Organizations**. Under the Plan and as a condition to the Plan Effective Date (waiver of which shall require the prior written consent of, among others, Clarendon), in order to obtain the benefit of (1) the Settling Insurer Policy Injunction, and (2) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to provide, or be deemed to provide, the following assignment of their insurance rights (the "Participating Chartered Organization Insurance Assignment"): any and all of the Participating Chartered Organizations' rights, titles, privileges, interests, claims, demands or entitlements, as of the Plan Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to (a) the Abuse Insurance Policies issued by Clarendon and any other Abuse Insurance Policies covering Abuse Claims alleging Abuse to have first occurred on or after January 1, 1976, (b) any other insurance policies issued by a Settling Insurance Company that cover Abuse Claims but only with respect to such coverage for Abuse Claims, (c) the Insurance Settlement Agreements (including this Agreement) and claims thereunder and proceeds thereof, (d) the types of claims listed in the Insurance Actions definition in the Plan (including with respect to the insurance policies issued by Clarendon), (e) the Insurance Action Recoveries

---

[4] For the purposes of clarity, the releases in this Section 8 do not include personal insurance policies issued directly to individuals who are releasing parties or to directors and officers liability policies issued in connection with their affiliations with entities other than BSA, the Local Councils or any Chartered Organizations.

[5] For the avoidance of doubt, Clarendon shall (a) receive the same releases and the same protections of the Channeling Injunction as Century Indemnity Company and Chubb Group Holdings, Inc. with respect to Chartered Organizations, including the release by the Participating Chartered Organizations and Contributing Chartered Organizations for coverage for Abuse Claims under insurance policies issued directly by Clarendon to such Chartered Organizations, and (b) provide the same releases as Century Indemnity Company and Chubb Group Holdings, Inc. with respect to Chartered Organizations.

FCRA00751

(including with respect to the Clarendon Policies), and (f) the Participating Chartered Organization Insurance Actions. In addition, in order to obtain the benefit of (i) the Settling Insurer Policy Injunction, and (ii) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to make, or be deemed to make, the following contribution to the Trust ("Participating Chartered Organization Settlement Contribution"): (A) the Participating Chartered Organization Insurance Assignment; (B) to the extent of any rights, claims or interests not assigned to the Trust pursuant to the Participating Chartered Organization Insurance Assignment, the waiver and complete release of (I) each of the Participating Chartered Organization's rights, titles, privileges, interests, claims, demands or entitlements under the Clarendon Policies and any other insurance policy issued or allegedly issued by Clarendon with respect to Claims or Causes of Action involving Abuse Claims concerning such coverage for Abuse Claims; (II) any Claim held by the Participating Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from, in whole or part, directly, indirectly, or derivatively (including through any insurance policy issued or allegedly issued by Clarendon), alleged Abuse Claims that occurred prior to the Petition Date against the Settlement Trust, the Debtors, Reorganized BSA, the Local Councils, any Contributing Chartered Organization or Clarendon; and (III) any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Participating Chartered Organization, including any Indirect Abuse Claims, without any further notice or action, order, or approval of the Bankruptcy Court, which Claims shall be expunged from the Claims Register, and the agreement of each Participating Chartered Organization not to (y) file or assert any Claim or Claims against the Trust, the Debtors, or Reorganized BSA arising from any act or omission of the Debtors, the Local Councils, any Contributing Chartered Organization, or any Participating Chartered Organization on or prior to the Confirmation Date; and (z) file or assert any rights or interests in any property transferred to the Trust under the Plan, including the proceeds of any settlements paid by an Settling Insurance Company; and (C) the assignment to the Trust of any and all Perpetrator Indemnification Claims held by the Participating Chartered Organizations. Other than the TCJC and the United Methodist Entities, no Chartered Organization may become a Contributing Chartered Organization without making a contribution in form and substance equivalent to the Participating Chartered Organization Settlement Contribution and agreeing to be bound by the terms and conditions of this Agreement.

10. **Protections Afforded to Insureds and Co-Insureds**. On the Release Date, all Abuse Claims against insureds and co-insureds covered under insurance policies issued by Clarendon shall be channeled and enjoined under the Settling Insurer Policy Injunction and released. Pending the occurrence of the Release Date, all such Abuse Claims shall be enjoined pursuant to the Post-Confirmation Interim Injunction, as provided herein.

11. **Bankrupt Chartered Organizations**. The BSA shall use its best efforts to work with the Roman Catholic ad hoc committee and the Chartered Organizations that are debtors in bankruptcy (the eight bankrupt entities identified on Exhibit K to the Plan, which may be amended to the extent that additional Chartered Organizations file for bankruptcy protection prior to entry of the Confirmation Order, each a "Bankrupt Chartered Organization") to obtain written consent for such Bankrupt Chartered Organization to consent to the terms this Agreement. To the extent that a Bankrupt Chartered Organization does not agree to provide written consent to the terms of this Agreement, the Parties will use reasonable efforts to jointly resolve such non-consent, which may, upon the consent of the Parties, include excluding such Bankrupt Chartered Organization from the protections

10

and benefits otherwise provided herein, provided that the failure to obtain such consent as it applies to the applicable Bankrupt Chartered Organizations shall not be deemed a breach of this Agreement by any Party or a failure to satisfy a condition to the effectiveness of the Plan. The Parties consent to the foregoing provisions covering Clarendon to apply to any other Settling Insurance Company. Clarendon reserves all rights and defenses they have under policies issued to Bankrupt Chartered Organizations that do not consent to the terms of this Agreement.

12. **Opt-Out Chartered Organizations**.

a) Opt-Out Chartered Organizations by definition are not Participating Chartered Organizations, Limited Protected Parties or Contributing Chartered Organizations. The term "Opt-Out Chartered Organization," on the one hand, and the terms Participating Chartered Organizations, Limited Protected Parties and Contributing Chartered Organizations, on the other hand, are mutually exclusive.

b) Under the Plan and as a condition to the Plan Effective Date (waiver of which shall require the prior written consent of, among others, Clarendon), any Opt-Out Chartered Organization shall receive the benefit of the Settling Insurer Policy Injunction and the release of all Abuse Claims that are covered under insurance policies issued by Clarendon.

c) For the avoidance of doubt, nothing herein or in the Plan shall require an Opt-Out Chartered Organization to provide an assignment or release with respect to its rights under insurance policies issued directly to such organization, including those set forth in Sections 8 and 9 hereof. The rights of the Opt-Out Chartered Organizations provided under insurance policies issued directly to such organization are preserved. Clarendon reserves all rights and defenses they have under such policies. Clarendon and the Opt-Out Chartered Organizations may enforce and rely upon the channeling and release of Abuse Claims against an Opt-Out Chartered Organization as provided in Section 10 hereof for all purposes. All rights and defenses of Clarendon under insurance policies issued directly to an Opt-Out Chartered Organization are preserved. The foregoing provision will be added to the Plan, including the channeling injunction.

d) If, however, a Chartered Organization that is an Opt-Out Chartered Organization wants to become a Contributing Chartered Organization, (i) a financial contribution must be made by or on behalf of such Opt-Out Chartered Organization, (ii) such Chartered Organization must agree to provide the assignments and releases set forth in Sections 8 and 9, and (iii) if and to the extent required by BSA, such Chartered Organization must agree to cooperate with the Child Protection Committee.

e) By definition, the Clarendon Policies (including those set forth on Exhibits A and B) were issued directly to the BSA and the Local Councils and were not issued directly to the Chartered Organizations.

13. **Post-Confirmation Interim Injunction**. The Plan and Confirmation Order shall provide that all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date (the "Post-Confirmation Interim Injunction"), shall remain in full force

11

and effect until the Release Date, any final injunctions are issued, or upon a Reversal or other condition that results in the return of the Escrowed Payments to Clarendon. To the extent not otherwise in place, the Plan shall provide that pending the occurrence of the Release Date and thereafter, any Claim that would be released or subject to the Channeling Injunction upon the occurrence of conditions set forth herein (including the occurrence of the Release Date) shall be stayed and enjoined pending satisfaction of such conditions. Such injunction shall permit the filing, but not the prosecution, of the Abuse Claims against such Chartered Organizations.

14. **Abuse Claims Under Policies Issued to Chartered Organizations**. The release by the Participating Chartered Organizations and Contributing Chartered Organizations of Clarendon from all the Claims and Causes of Action set forth in Section 8 of this Agreement[6] are subject to the following:

(a)     Such Chartered Organizations are not barred from seeking defense and indemnification for claims that are not Abuse Claims under insurance policies issued by Clarendon directly to such Chartered Organizations, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(b)     Such Chartered Organizations are not barred from seeking defense and indemnification for that portion of Mixed Claims unrelated to Scouting under such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-Confirmation Interim Injunction and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations.

(c)     Such Chartered Organizations are not barred from seeking defense and indemnification under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(d)     To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(e)     To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, Clarendon shall have no further obligations with respect to such claim.

(f)     The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or Clarendon to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

---

[6] The insurance policies issued directly to the BSA and Local Councils were, by definition, not issued to the Chartered Organizations and are not subject to this provision.

**FCRA00754**

(g)    Clarendon reserves all rights under their policies with respect to any Claim that is not an Abuse Claim (including the non-Scouting component of any Mixed Claim), none of which are waived or released hereunder.

15. **Contributing Chartered Organizations.**    No Chartered Organization shall be a Contributing Chartered Organization unless it agrees to provide the assignments and releases set forth in Sections 8 and 9 of this Agreement.

16. **Finality**.  Subject to the other terms of this Agreement, and so long as this Agreement remains in full force and effect and/or is not terminated, the Parties agree that (a) the Settlement Amount is the total amount that Clarendon will be obligated to pay under the Clarendon Policies, and (b) the Confirmation Order shall provide that on and after the Release Date and payment of the Settlement Amount, Clarendon shall be released from and shall not be obligated to make any additional payments to any Person (including, but not limited to, the BSA, the Local Councils, any Chartered Organization and any entity actually or allegedly covered under insurance policies issued by Clarendon) for Abuse Claims, including those relating to or arising out of the Clarendon Policies and the other Claims and Causes of Action released hereunder, subject to the limitations in Section 5 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies).

17. **Judgment Reduction and Contribution**.

a)  Clarendon will not assert or file a Claim, and will dismiss without prejudice any pending Claims, seeking contribution, indemnity, and/or defense against another Entity in order to recover any portion of the Settlement Amount to be paid by Clarendon under this Agreement or with respect to claims released under this Agreement.  Subject to Section 3(d) and the provisions related to termination, the Settlement Amount shall not be subject to any Claims for deductions, setoffs, or charge-backs by Clarendon of any kind, including Claims involving recoupment or deductibles, contribution, self-insured retentions, additional premiums, or retrospective or reinstatement premiums.  For the avoidance of doubt, Clarendon shall maintain (i) an unfettered right to advise its reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against its reinsurers and retrocessionaires in their capacities as such, (ii) all rights with respect to any Claim that is not an Abuse Claim (including the non-Scouting component of a Mixed Claim) related to their policies as provided in Section 14 hereof, and (iii) claims against Bankrupt Chartered Organizations that do not consent to this Agreement and provide the releases and assignments set forth in Sections 8 and 9 hereof.

b)  To the extent that the Debtors, their Estates, or any assignee, successor, or any other Entity formed to assume the Debtors' liability for Abuse Claims, including the Settlement Trust, has settled or hereafter settles Abuse Claims arising out of claims released by this Agreement with any other Insurance Company, Chartered Organization, Person, or other Entity, the Debtors, their Estates, or any such assignee, successor, and/or other Person or Entity, including the Settlement Trust, shall obtain a waiver of that other Insurance Company's, Chartered Organization's or other Person's or Entity's Claims against Clarendon based upon, arising out of or in any way attributable to such Abuse Claims, including Abuse Claims seeking contribution, indemnity, and/or defense costs from

13

**FCRA00755**

Clarendon based upon, arising out of, or in any way related to such Abuse Claims released by this Agreement. Such waiver may be accomplished by an assignment of such Abuse Claims to the Settlement Trust, whereupon such Abuse Claims will be subject to the releases set forth in Section 8 herein.

c) In the event that any other insurer or Person obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Clarendon as a result of a Cause of Action for contribution, subrogation, indemnification, or other similar Cause of Action against Clarendon for Clarendon's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce or limit its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification, or other similar Cause of Action against Clarendon. To ensure that such a reduction is accomplished, Clarendon shall be entitled to rely upon or assert this paragraph as a defense to any action against them for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction described in this paragraph to protect Clarendon from any liability for the judgment or Cause of Action. To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar claim against Clarendon, Clarendon may assert any defense to such claim notwithstanding any of the releases contained herein.

d) To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar Claim against Clarendon, nothing herein shall preclude Clarendon from asserting any defense to such claim, or from filing, asserting, or continuing to pursue a Claim seeking contribution, indemnity, or defense from that other insurer, provided that, (i) Clarendon will provide timely notice to the Trust of the assertion of any Claims and Causes of Action assigned pursuant to Section 23 of this Agreement, (ii) Clarendon shall obtain the consent of the Trust, which shall not be unreasonably withheld, to settle any such Claims and Causes of Action assigned pursuant to Section 23 of this Agreement,, and (iii) to the extent that Clarendon recovers from that other insurer, the proceeds of such recovery shall be paid by Clarendon per the instruction of the Trust or, if no Trust has been formed, the Debtors, after Clarendon is reimbursed from such proceeds for reasonable fees and costs they incurred after the date the Confirmation Order becomes a Final Order in defending the Claim asserted against Clarendon or prosecuting their Claim against that other insurer. For the avoidance of doubt, Clarendon shall maintain (i) an unfettered right to advise its reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against its reinsurers and retrocessionaires in their capacities as such, (ii) all rights with respect to the non-Scouting component of any Mixed Claims related to their policies as provided in Section 14 hereof, and (iii) claims against Opt-Out Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement.

14

18. **Findings and Orders**.

a) The Plan and the Confirmation Order shall state that the Findings and Orders are not binding on Clarendon to the extent that Clarendon is a Settling Insurance Company and the transactions contemplated herein, including the release of the Settlement Amount to the Trust, are fully consummated. The Plan and Confirmation Order shall further provide that Clarendon's agreement herein not to object to the entry of said Findings and Orders in the Confirmation Order does not indicate Clarendon's support for said Findings and Orders, and no party shall argue that Clarendon agreed to or acquiesced in such Findings and Orders in any proceeding.

b) The Confirmation Order and all other orders issued by any appellate court that exercises jurisdiction over such orders, if any, shall approve the terms and provisions of this Agreement.

c) Notwithstanding anything to the contrary herein, nothing will require Clarendon to take any position that would impair their ability to pursue objections to any plan in the event that this Agreement is terminated under Section 27 or 28. Subject to the foregoing, Clarendon and the Debtors will (i) take reasonable positions in court supporting the settlement provided herein and the Plan provisions that effectuate this Agreement; (ii) take reasonable positions in court supporting approval of such terms through the Confirmation Order and (iii) will not assist any party in its opposition to the foregoing.

19. **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with this Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the Plan, *provided* that Clarendon shall be included as a releasee in any form of release attached to the Trust Distribution Procedures to the same extent that BSA, Local Councils and other Protected Parties are released, which release shall be consistent with this Agreement. The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Abuse Claims who receive payment from the Trust to release any Abuse Claim against (a) Clarendon and (b) any insured or co-insured under the Clarendon Policies or other policies issued by Clarendon covering or allegedly covering Claims or Causes of Action for Abuse Claims, solely to the extent of and scope of any remaining coverage rights (if any) thereunder. Clarendon shall not object to the Trust Distribution Procedures but may add a statement in the Plan that Clarendon is a Settling Insurance Company and, as a result, takes no position on the Trust Distribution Procedures. Clarendon shall not object to the selection of the Settlement Trustee. Clarendon shall not participate in or interfere with the administration of the Trust and shall have no responsibility or liability whatsoever in connection with the administration of the Trust.

20. **Objections to the Plan**. Clarendon shall not object to the Plan, the Settlement Trust Agreement, the Trust Distribution Procedures or the selection of the Settlement Trustee (and shall withdraw any pending objections) or any other document or instrument that comprises the Plan so long as Clarendon is included as a Protected Party in the Plan and the Plan is consistent with the terms of this Agreement. For the avoidance of doubt, the foregoing agreement not to object shall include any objections with respect to any evidence proffered by the Debtors in connection with the confirmation and approval of the Plan, the

Doc # DC/27542496v1

**FCRA00757**

Settlement Trust Agreement, the Trust Distribution Procedures or the selection of the Settlement Trustee or any other document or instrument that comprises the Plan.

21. **Discovery**. So long as this Agreement has not been terminated, (i) Clarendon, on the one hand, and (ii) the Debtors, Coalition, FCR, AHCLC, and Joining State Court Counsel on the other hand, shall not seek or direct any discovery at each other in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases, nor shall Clarendon cooperate with any other insurer's or putative objector's discovery requests in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases; provided, however, that Clarendon shall comply with any requirements imposed by the rules of court and any judicial orders. Notwithstanding the foregoing, Clarendon shall cooperate and comply with any information requests, including prior BSA-related settlement and verdict information, from the BSA, the Coalition, and the FCR to the extent such information is not protected from disclosure and is reasonably necessary in support of the confirmation of the Plan; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to mediation, and the Parties agree to be bound by such mediator's decision regarding such dispute.

22. **Public Statements**. The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding this Agreement, including press releases, court filings and in-court statements. Clarendon shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Clarendon may make statements to protect its rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and its representatives concerning Clarendon.

23. **Assignment**.

a) The Parties will not assign, transfer, or sell (i) this Agreement or any of their rights, benefits, or obligations hereunder without the prior written consent of all other Parties which consent shall not be unreasonably withheld, or (ii) except as set forth below, any Cause of Action or Claim related to the Abuse Insurance Policies or in connection with the matters otherwise released against Clarendon pursuant to this Agreement. The Parties agree that they will not assist any other person in the establishment of a Claim or Cause of Action against Clarendon relating to the Abuse Insurance Policies or the matters released pursuant to this Agreement.

b) Upon the Release Date, Clarendon shall assign to the Settlement Trust all Claims and Causes of Action for contribution, subrogation, indemnification and similar claims and theories of liability arising from or in connection with (i) Abuse Insurance Policies (which shall include all Clarendon Policies) and (ii) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims. against (1) any Non-Settling Insurance Company, (2) any non-settling insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any contracts, binders, certificates, or insurance policies currently or previously in effect at any time on or before the Effective Date that covers, allegedly covers, or potentially covers Abuse Claims,

16

**FCRA00758**

including the Scouting-related portions of Mixed Claims, that relate to or arise out of Abuse Claims, including the Scouting-related portion of Mixed Claims.

c)   The assignment in Section 23(b) shall not preclude Clarendon from pursuing Claims and Causes of Action (1) relating to non-Scouting Claims and the non-Scouting-related portions of Mixed Claims, (2) against their reinsurers and retrocessionaires in their capacities as such), and (3) against Opt-Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement and provide the releases and assignments set forth in Sections 11 and 12 hereof.  Section 7 of this Agreement shall not impair the Settlement Trust's Claims and Causes of Action against (i) any Non-Settling Insurance Company, (ii) any non-settling insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any contracts, binders, certificates, or insurance policies currently or previously in effect at any time on or before the Petition Date that covers, allegedly covers, or potentially covers Abuse Claims, including the Scouting-related portions of Mixed Claims, or (iii) any Entity, other than a Limited Protected Party (to the extent of its protected party status) or Protected Party, that allegedly is liable for Abuse Claims, including the Scouting-related portions of Mixed Claims.

d)   To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar Claim against Clarendon, nothing herein shall preclude Clarendon from asserting any defense to such claim, or from filing, asserting, or continuing to pursue a Claim seeking contribution, indemnity, or defense from that other insurer, provided that, (1) Clarendon will provide timely notice to the Trust of the assertion of any Claims and Causes of Action assigned herein, (2) Clarendon shall obtain the consent of the Trust, which shall not be unreasonably withheld, to settle any such Claims and Causes of Action assigned pursuant to this Section 27, and (3) to the extent that Clarendon recover from that other insurer, the proceeds of such recovery shall be paid by Clarendon per the instruction of the Trust or, if no Trust has been formed, the Debtors, after Clarendon is reimbursed from such proceeds for reasonable fees and costs they incurred after the date the Confirmation Order becomes a Final Order in defending the Claim asserted against Clarendon or prosecuting their Claim against that other insurer.

e)   Nothing in the foregoing will prohibit the Parties or any Protected Party from transferring and assigning to the Trust all rights under this Agreement, or from assisting the Trust in pursuing any Claim arising out of or under same against anyone other than Clarendon.

24.  **Governing Law**.  This Agreement shall be governed by Delaware law.

25.  **Termination by Clarendon**.  Clarendon may terminate this Agreement if: (a) any Party breaches its obligations to Clarendon under this Agreement in any material respects; *provided* that such breach or failure remains uncured (to the extend curable) for a period of fifteen (15) business days following the applicable Party's receipt of notice thereof served in accordance with this Agreement; (b) the FCR exercises a Fiduciary Out (as defined herein); (c) the Coalition or FCR terminates this Agreement as to itself in

Doc #  DC/27542496v1

FCRA00759

accordance with Section 26 below; or (d) the Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832] is not modified to incorporate the terms of this Agreement or in Clarendon's reasonable judgment the definitions or provisions of that plan are materially altered to negatively impact Clarendon's rights and interests.

26. **Termination Event by the Debtors, the Coalition, and the FCR**.  Subject to the provisions of Section 28, the Debtors, the Coalition, or the FCR may terminate this Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Plan under section 1126 of the Bankruptcy Code and as a result the Plan is withdrawn.  Subject to the foregoing sentence and Section 27 hereof, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Agreement and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Agreement, including the provisions constituting the approval of all of the terms and conditions hereof, and (b) defend this Agreement.

27. **Fiduciary Out by the Debtors and the FCR**.  Notwithstanding anything else in this Agreement to the contrary, no term or condition of this Agreement shall require the Debtors or the FCR to take or refrain from taking any action that it determines would be inconsistent with its fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Agreement, this Agreement may be terminated at any time prior to the entry of a Final Order confirming the Plan as to that party (the "<u>Fiduciary Out</u>"), *provided, however,* that the Debtors and the FCR each understands that the TCC is not a party to this Agreement and that the TCC and claimants represented by various plaintiff firms may object to this Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Agreement is consistent with their fiduciary duties as of the effective date of this Agreement, *provided, further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate this Agreement, such termination shall be with respect to the FCR only and not otherwise affect this Agreement or the other Parties' rights and obligations hereunder.  Each of the Debtors and the FCR believe that, as of the date hereof, entering into this Agreement is an appropriate exercise of its fiduciary duty.

28. **Effect of Termination or Failure of Conditions to Occur**.  In the case of any termination described in Sections 26 or 27 above by the Debtors or any other situation where this Agreement does not proceed (including as a result of the failure of any condition thereto to occur or failure to obtain entry of the Confirmation Order), then (a) absent the consent of Clarendon, Clarendon shall be (i) afforded an opportunity to interpose all objections to any plan that does not afford them the protections and rights provided hereunder, notwithstanding any prior deadlines, law of the case, or any determination made in the intervening period after execution of this Agreement, (ii) afforded adequate additional time and relief from any deadline to prepare and present such objections including any expert

18

reports and additional discovery, and (iii) able to assert any and all positions in opposition to such plan and hearing schedule, none of which are waived or affected hereby; and (b) Clarendon, the Coalition, the FCR, and State Court Counsel shall have no further obligations hereunder. For the avoidance of doubt, the Bankruptcy Court's approval of this Agreement under, among other things, Bankruptcy Rule 9019, and settlement provided herein shall be a condition to the entry of the Confirmation Order, entry of the Affirmation Order, and the Plan Effective Date, which condition may only be waived with the consent of each of the Parties.

29. **Effect of Reversal of Confirmation Order Following the Plan Effective Date.** In the event of a Reversal, the Parties and State Court Counsel agree that Clarendon shall be entitled to a credit against any liability Clarendon may have under any Abuse Insurance Policies issued to BSA or any Local Council, which credit shall be equal to the amount of the Initial Payment plus, if Clarendon has authorized the payment or release of the Additional Payment to the Trust, the amount of the Additional Payment (the "Credit"); *provided, however,* that if Clarendon has not authorized the payment or release of the Additional Payment, then the Additional Payment and all Net Income accrued thereon in the Escrow Account (or, if there is a loss as a result of investment of the Additional Payment, then the funds remaining in the Escrow Account) shall be released from the Escrow Account to Clarendon promptly following the Reversal (or any exercise of a Fiduciary Out by BSA). The provisions of this Section 29 shall survive any Reversal, any exercise of any Fiduciary Out, and any termination of this Agreement. Nothing in this Section or elsewhere in this Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

30. **State Court Counsel**. Each State Court Counsel represents and warrants that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

31. **Plan**. The Debtors shall ensure that the Plan is consistent with this Agreement and the Plan shall be modified to incorporate this Agreement, to the extent it has not already been modified to do so. The protections given to Clarendon, and to their respective Affiliates and Representatives, as Protected Parties shall not be less than that afforded to any other Protected Parties under (i) the Plan (other than the limited indemnity provided to the Local Councils under Article IV.L of the Plan) or (ii) any other plan unless this Agreement has been validly terminated under Sections 25, 26, or 27 prior to the filing of such plan subject to Section 28 hereof. The Plan shall provide that the execution and delivery of this Agreement is a condition to entry of the Confirmation Order and the occurrence of the Plan Effective Date and this Agreement shall be appended to and included in the Plan and Confirmation Order and this Agreement shall be listed on Exhibit I to the Plan as an Insurance Settlement. The inclusion of this Agreement in the Plan shall not be waivable as a condition to entry of the Confirmation Order or the occurrence of the Plan Effective Date absent the prior written consent of Clarendon.

32. **Medicare Reporting**. To the extent the payment of claims by the Trust triggers reporting to Medicare under 42 U.S.C. § 1395y, *et seq*., commonly referred to as the Medicare, Medicaid, and SCHIP Extension Act of 2007, and any related rules, regulations, or

guidance issued in connection therewith or relating thereto (collectively, "MMSEA"), the Parties agree that the Trust is the Responsible Reporting Entity and Clarendon is not subject to any reporting requirements or obligations under MMSEA.

33. **Waivers.** The Parties acknowledge that they have been advised by their respective legal counsel with respect to the substance of this Agreement, including, without limitation, the releases set forth herein, and expressly waive all protections under any state or common law similar to those provided in Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties further acknowledge and agree that the release of unknown claims was separately negotiated and material to this Agreement.

34. **Representations and Warranties**.

a) Each Party and State Court Counsel represents and warrants that it has taken all necessary corporate and legal action required to duly approve the making and performance of this Agreement and, subject only to Section 1 of this Agreement with respect to certain obligations under this Agreement, that no further action on their part is necessary to make any obligation of any Party or State Court Counsel under this Agreement binding and legally enforceable.

b) Each Party and State Court Counsel represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law, any of its respective articles of incorporation or by-laws, or any contract or agreement by which it is bound.

c) Each Party represents and warrants that it is the owner of the rights and Claims to be compromised and released by it under this Agreement and it has not assigned or transferred to any Entity any Claim or other matter to be compromised and released herein. Furthermore, the Debtors represent and warrant that they have not assigned or transferred any right, title, or Interest under the Clarendon Policies.

d) Each Party and State Court Counsel represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations with the assistance and supervision of the court-appointed mediator, and with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate, and good-faith compromise of disputed Claims, disputed liabilities and disputed issues.

e) Each Party and State Court Counsel represents and warrants that it has read this Agreement in its entirety, that it fully understands all of this Agreement's terms and the consequences

20

thereof, and that the person signing this Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

f) Each Party and State Court Counsel represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable.

g) Clarendon and BSA have each conducted a reasonable, good faith search of its respective records and have located no evidence of any BSA Insurance Policies issued by Clarendon other than the policies identified on Exhibit B hereto or any Local Council Insurance Policies issued by Clarendon other than the policies identified on Exhibit A hereto. Based on such searches, neither Party believes that any additional policies or secondary evidence of such policies exists. To the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A or Exhibit B, such policy shall be treated as if such policy were included on Exhibit A or B, as applicable.

35. **Bankruptcy Notices**. If not already performed, in addition to any other service that may be required, the Debtors shall provide appropriate notice of this Agreement and the subject matter thereof to ensure that the injunctions protecting Clarendon against Abuse Claims shall be effective as against all persons who assert, have asserted, or may in the future assert, Abuse Claims.

36. **No Admissions and Non-Admissibility of this Agreement**. Nothing contained in this Agreement, or in any negotiations, discussions, mediation proceedings, correspondence or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be deemed to be an admission on the part of the Parties or State Court Counsel with respect to any matter or any factual or legal issue of any kind.

37. **Binding Effect of Agreement.** All terms and provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties and the State Court Counsel and their respective successors and assigns, including the Settlement Trust.

38. **Dispute Resolution**. If any dispute should arise concerning the terms, meaning, or implementation of this Agreement, the Parties and State Court Counsel agree to use their best efforts to reach a prompt resolution of such dispute. If the Parties and State Court Counsel are unable to reach an agreement, they shall proceed to mediation before Timothy V.P. Gallagher. Any Party or State Court Counsel may initiate litigation in the Bankruptcy Court to the extent the Bankruptcy Court has subject-matter jurisdiction, or to the extent it does not, in any other appropriate forum, but no Party or State Court Counsel may initiate litigation until forty-five (45) calendar days after a mediation has commenced. All of the Parties and State Court Counsel consent to personal jurisdiction in any federal court (including the Bankruptcy Court) or state court in the State of Delaware for purposes of

Doc # DC/27542496v1

FCRA00763

resolving any dispute concerning the terms, meaning, or implementation of this Agreement.

### 39. Construction of Agreement.

a) The Parties and State Court Counsel represent and acknowledge that they have participated in the preparation and drafting of this Agreement and have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties or State Court Counsel later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party or State Court Counsel on the basis that one Party or State Court Counsel drafted the language of this Agreement or played a greater role in the drafting of the language.

b) The headings of this Agreement are asserted for convenience and are not part of the provisions hereof and shall have no force or effect.

c) If any provision of this Agreement or application thereof is held to be invalid or unenforceable, the remainder of this Agreement shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties. Notwithstanding the foregoing, the provisions in this Agreement regarding Payment (Section 3), Sale (Section 5, Channeling Injunction and Other Protections (Section 4), and Releases (Section 7 and 8) and the definitions of the defined terms that appear in those provisions shall not be severable from this Agreement.

### Miscellaneous.

d) This Agreement sets forth the entire agreement between the Parties and State Court Counsel as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or oral.

e) All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the Parties and State Court Counsel at the addresses set forth in Exhibit D hereto, or to such other persons or addresses as the Parties or State Court Counsel may designate in writing from time to time.

f) This Agreement may be amended only by a writing signed by or on behalf of each Party, and, if after the Plan Effective Date, Clarendon and the Settlement Trust.

g) Each Party may sign an e-mail or PDF copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

### 40. Definitions: The capitalized terms used in this Agreement shall have the respective meanings set forth below. Capitalized terms not defined in this Agreement shall have the definitions ascribed to such terms in the Plan.

"**Abuse**" has the meaning ascribed to it in the Plan.

Doc # DC/27542496v1

**FCRA00764**

"**Abuse Claim**" means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such) or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based thereon. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Abuse Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations. For the avoidance of doubt, (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is related to Scouting (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, TCJC, or their respective Representatives (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.

"**Abuse Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Affirmation Order**" shall have the meaning set forth in the Plan and shall be in all respects, in form and substance acceptable to the Parties.

Doc # DC/27542496v1

FCRA00765

"**Agreement**" has the meaning ascribed to it in the opening section of this Agreement.

"**AHCLC**" has the meaning ascribed to it in the opening section of this Agreement.

"**Bankrupt Chartered Organization**" has the meaning ascribed to it in section 12 of this Agreement.

"**Bankruptcy Code**" has the meaning ascribed to it in the Plan.

"**Bankruptcy Court**" has the meaning ascribed to it in the Plan.

"**Bankruptcy Rules**" has the meaning ascribed to it in the Plan.

"**BSA**" has the meaning ascribed to it in the opening section of this Agreement.

"**BSA Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Business Day**" has the meaning ascribed to it in the Plan.

"**Channeling Injunction**" has the meaning ascribed to it in the Plan.

"**Chapter 11 Cases**" has the meaning ascribed to it in the Plan.

"**Chartered Organizations**" has the meaning ascribed to it in the Plan.

"**Child Protection Committee**" has the meaning ascribed to it in the Plan.

"**Claim**" has the meaning ascribed to it in the Plan.

"**Clarendon**" means Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company), River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St Katherine Insurance Company Limited) , and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company. "Clarendon" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-

FCRA00766

contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise.

"**Clarendon BSA Policies**" has the meaning ascribed to it in Section 5 of this Agreement.

"**Clarendon Local Council Policies**" has the meaning ascribed to it in Section 5 of this Agreement.

"**Clarendon Policies**" has the meaning ascribed to it in Section 5 of this Agreement.

"**Coalition**" has the meaning ascribed to it in the opening section of this Agreement.

"**Confirmation**" has the meaning ascribed to it in the Plan.

"**Confirmation Date**" has the meaning ascribed to it in the Plan.

"**Confirmation Hearing**" has the meaning ascribed to it in the Plan.

 "**Confirmation Order**" shall have the meaning set forth in the Plan and be in form and substance acceptable to the Parties confirming and approving the Plan including each and every term of this Agreement and the settlement provided herein.

"**Contributing Chartered Organizations**" has the meaning ascribed to it in the Plan.

"**D&O Liability Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Debtors**" has the meaning ascribed to it in the Plan.

"**Direct Abuse Claims**" has the meaning ascribed to it in the Plan.

"**Discharge**" has the meaning ascribed to it in the Plan.

"**District Court**" has the meaning ascribed to it in the Plan.

"**DST Note**" has the meaning ascribed to it in the Plan.

"**Escrow Account**" has the meaning ascribed to it in section 3(b) of this Agreement.

"**Entity**" has the meaning ascribed to it in the Plan.

"**Estates**" has the meaning ascribed to it in the Plan.

"**FCR**" has the meaning ascribed to it in the opening section of this Agreement.

"**Final Order**" has the meaning ascribed to it in the Plan.

Doc #  DC/27542496v1

FCRA00767

"**Findings and Orders**" means the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.l, Article IX.A.3.w, Article IX.A.3.x, Article IX.A.3.y, Article IX.A.3.z, and Article IX.A.3.aa of the Plan, as the same may be amended or modified from time to time.

"**Full Post-1975 Injunction**" means the Channeling Injunction applicable to Abuse Claims alleging first Abuse on or after January 1, 1976.

"**Future Claimants' Representative**" has the meaning ascribed to it in the Plan.

"**Indirect Abuse Claims**" has the meaning ascribed to it in the Plan.

 "**Initial Payment Date**" shall mean the earliest date on which all of the following conditions precedent have occurred, provided, however, that any of the following conditions precedent may be waived pursuant to a writing signed by each Party:

    1.    Each Party has executed the Agreement;

    2.    Clarendon has received a fully executed Local Council Joinder on behalf of each Local Council;

    3.    The Bankruptcy Court has entered the Confirmation Order which has been affirmed by the District Court through the Affirmation Order, both in form and substance acceptable to Clarendon, Debtors, Coalition, and FCR as it pertains to this Agreement, which shall serve as the order approving this Agreement and shall include all necessary and appropriate findings and conclusions in relation thereto;

    4.    The Confirmation Order provides for a release and channeling injunction for the benefit of the Clarendon, the Local Councils, and the Contributing Chartered Organizations consistent with this Agreement;

    6.    The BSA has provided written notice to Clarendon that the Effective Date has occurred; and

    7.    The Confirmation Order is effective and not stayed or otherwise subject to an injunction.

"**Insurance Actions**" has the meaning ascribed to it in the Plan.

"**Insurance Action Recoveries**" has the meaning ascribed to it in the Plan.

"**Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Insurance Settlement Agreement**" has the meaning ascribed to it in the Plan.

"**Limited Protected Party**" has the meaning ascribed to it in the Plan.

"**Local Councils**" has the meaning ascribed to it in the Plan.

"**Local Council Joinder**" means that certain joinder to this Agreement executed by the Local Councils active as of the Effective Date, listed on Exhibit G to the Plan.

Doc #  DC/27542496v1

**FCRA00768**

"**Mixed Claim**" means a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting. A claim shall not be treated as a Mixed Claim unless and until Scouting-related Abuse allegations have been asserted through a Proof of Claim, the complaint, sworn discovery or testimony (including an affidavit).

"**MMSEA**" has the meaning ascribed to it in section 32 of this Agreement.

"**Net Income**" has the meaning ascribed to it in section 3(b) of this Agreement.

"**Non-Abuse Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Non-Scouting Abuse**" has the meaning ascribed to it in the definition of "Mixed Claim" of this Agreement.

"**Non-Settling Insurance Company**" has the meaning ascribed to it in the Plan.

"**Opt-Out Abuse Claim**" has the meaning ascribed to it in the Plan.

"**Opt-Out Chartered Organization**" has the meaning ascribed to it in the Plan.

"**Other Chartered Organization Payment Date**" has the meaning ascribed to it in section 16 of this Agreement.

"**Other Chartered Organization**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Insurance Action**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Insurance Assignment**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Settlement Contribution**" has the meaning ascribed to it in the Plan.

"**Parties**" has the meaning ascribed to it in the opening section of this Agreement.

"**Perpetrator**" has the meaning ascribed to it in the Plan.

"**Perpetrator Indemnification Claims**" has the meaning ascribed to it in the Plan.

"**Person**" has the meaning ascribed to it in the Plan.

Doc # DC/27542496v1

FCRA00769

"**Plan**" has the meaning ascribed to it in the recitals of this Agreement.

"**Plan Effective Date**" or "**Effective Date**" means the first Business Day on which the Plan becomes effective or is consummated in accordance with its terms.

"**Post-1975 Chartered Organization Abuse Claim**" has the meaning ascribed to it in the Plan.

"**Post-Confirmation Interim Injunction**" has the meaning ascribed to it in section 13 of this Agreement.

"**Postpetition Insurance Policies**" has the meaning ascribed to it in the Plan as such term applies to Clarendon.

"**Protected Parties**" has the meaning ascribed to it in the Plan.

"**Related Non-Debtor Entities**" has the meaning ascribed to it in the Plan.

"**Release Date**" shall mean the earliest date on which all of the following conditions precedent have occurred, provided however, that any of the following conditions precedent may be waived pursuant to a writing signed by each Party:
1. Each Party has executed the Agreement;
2. Clarendon has received a fully executed Local Council Joinder on behalf of each Local Council;
3. The Bankruptcy Court has entered the Confirmation Order which has been affirmed by the District Court through the Affirmation Order, both in form and substance acceptable to Clarendon, Debtors, Coalition, and FCR as it pertains to this Agreement, which shall serve as the order approving this Agreement and shall include all necessary and appropriate findings and conclusions in relation thereto;
4. The Confirmation Order provides for a release and channeling injunction for the benefit of the Clarendon, the Local Councils, and the Contributing Chartered Organizations consistent with this Agreement;
6. The BSA has provided written notice to Clarendon that the Effective Date has occurred; and
7. The Confirmation Order is a Final Order.

"**Releasing Parties**" has the meaning ascribed to it in Section 8 of this Agreement.

"**Reorganized BSA**" has the meaning ascribed to it in the Plan.

"**Representatives**" has the meaning ascribed to it in the Plan.

"**Reversal**" has the meaning ascribed to it in Section 3(d) of this Agreement.

"**Sale**" has the meaning ascribed to it in Section 5 of this Agreement.

28

"**Scouting**" has the meaning ascribed to it in the Plan.

"**Settlement Amount**" has the meaning ascribed to it in Section 3 of this Agreement.

"**Settlement Trust**" or "**Trust**" has the meaning ascribed to it in Section 2 of this Agreement.

"**Settlement Trust Agreement**" has the meaning ascribed to it in the Plan.

"**Settlement Trust Documents**" has the meaning ascribed to it in the Plan.

"**Settlement Trustee**" has the meaning ascribed to it in the Plan.

"**Settling Insurance Companies**" has the meaning ascribed to it in the Plan.

"**Settling Insurer Policy Injunction**" means the Channeling Injunction applicable to Abuse Claims covered under any insurance policy issued by Clarendon.

"**State Court Counsel**" has the meaning ascribed to it in the opening section of this Agreement.

"**TCJC**" means The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, including any affiliates or personnel.

"**Term Sheet Effective Date**" has the meaning ascribed to it in the opening section of this Agreement.

"**Trust Agreement**" has the meaning ascribed to it in the Plan.

"**Trust Distribution Procedures**" has the meaning ascribed to it in the Plan.

"**United Methodist Entities**" means each and every (i) United Methodist local church, federated, or union church, including any Federated Church or Union Church that includes a historically United Methodist Church congregation, that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, regardless of whether such local, union, or federated church is or was a Chartered Organization at any time; (ii) church currently federated or yoked, and which current federated or yoked church includes a current or former United Methodist Church congregation that sponsored, promoted, hosted or provided any support in connection with Scouting activities; (iii) other United Methodist related or affiliated organizations that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, including any social service organization, ministry, camping ministry, camp facility, camp, retreat, or other facilities in the nature of a camp or retreat; (iv) any camp, retreat, or other facility in the nature of a camp or retreat that is not United Methodist related or affiliated, but otherwise promoted, hosted, or provided any support in connection with Scouting activities for an entity described in (i), (ii) or (iii); (v) all organizations affiliated or related to (i), (ii), (iii) or (iv) including, but

Doc # DC/27542496v1

**FCRA00771**

not limited to, the UMAHC, each district, annual conference, and jurisdictional conference of The United Methodist Church, the general, annual conference, district, local church agencies of The United Methodist Church, the Council of Bishops of The United Methodist Church, and the non-jural bodies commonly referred to as "The United Methodist Church," the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

[Remainder of page intentionally left blank]

Doc #  DC/27542496v1

FCRA00772

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

By: _____

Name: Roger C. Mosby

Title: President and CEO

Date: February 14, 2022

**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____

Title: _____

Date: _____

**River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St Katherine Insurance Company Limited), )**

By: _____

Name: _____

Title: _____

Date: _____

31

Doc # DC/27542496v1

FCRA00773

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

By: _____  .

Name: _____  .

Title: _____  .

Date: _____  .


**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name:     Robert Redpath

Title:     Senior Vice President

Date:     2/14/2022


**River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St Katherine Insurance Company Limited)**

By: _____

Name: _____

Title: _____

Date: _____

Doc # DC/27546620v1

**FCRA00774**

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

By: _____

Name: _____

Title: _____

Date: _____

**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____

Title: _____

Date: _____

**River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St Katherine Insurance Company Limited)**

By: _____

Name: Darren Truman

Title: Director

Date: 14th February 2022

31

FCRA00775

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: __James B. Dolan, Jr._____

Title: __Vice President - Sr. Litig. and Coverage Counsel__
__Enstar (US) Inc., authorized claims administrator for Zurich American Ins. Co.__

Date: __14 February 2022_____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

Doc #  DC/27546620v1

**FCRA00776**

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____

## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: 2/14/22

## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

*EXECUTION VERSION*

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____

## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _Eri Goodman_

Dated: _2-14-2022_

## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

Doc # DC/27542496v1

**FCRA00778**

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____


## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____


## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____


## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____ , its chair

Dated: _____

Doc #  DC/27542496v1

FCRA00779

## Exhibit A

**Known and Alleged Local Council Insurance Policies Issued by Clarendon**

The only Clarendon insurer alleged in the Local Council Insurance Schedule attached to the Amended Chapter 11 Plan of reorganization of BSA (the "BSA Schedule") to have issued a liability insurance policy or policies to a Local Council as the named insured is Zurich American Insurance Company, through its underwriting companies Maryland Casualty Company, Maryland American General Insurance Company, or Zurich Insurance Company. Clarendon has conducted a reasonable search and located certain relevant documentation relating to some of the alleged policies, as well as copies of certain policies which were not alleged on the BSA Schedule (collectively, for purposes of this Exhibit A, the "Located Policies"). The chart below lists the alleged policies that were included on the BSA Schedule and/or which were alleged in correspondence from certain Local Councils, the TCC, or KCIC (which was acting on behalf of BSA)(collectively, for purposes of this Exhibit A, the "Alleged Policies"). The footnotes/endnotes set forth the information in Clarendon's possession, custody or control as of the Effective Date regarding the Located Policies, as well as contradictory or complementary information that Clarendon has located regarding the Alleged Policies. Clarendon does not represent or warrant that any of the information regarding the Alleged Policies in the chart below is authentic or accurate. Clarendon does not concede that any of the documentation regarding or constituting the Alleged Policies and/or the Located Policies obligates Clarendon to provide insurance benefits to any Local Council, BSA or any other alleged insured for Abuse Claims or otherwise. Clarendon also does not concede that any of the Alleged Policies referenced below were issued, or are complete. The information summarized in the chart below regarding the Alleged Policies comes from various sources, nearly all of which are outside of Clarendon's control. As a result, the trustworthiness of the information cannot be known. The information contained within this Exhibit A does not necessarily represent the views of the Coalition, FCR, Tort Claimants' Committee, AHCLC, the Settlement Trust, or the Settlement Trustee, and does not bind those parties in any respect; provided, however, that all Parties agree, consistent with Section 34(g) of the Agreement, that to the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A, such policy shall be treated as if such policy were included on Exhibit A. Subject to the terms of this Settlement Agreement, the Parties (and the Settlement Trustee) do not waive and continue to reserve all rights under the Alleged Policies, the Located Policies, and at law.

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | 05-829567 (alleged; not located) | 1/1/1968 – 1/1/1969 | Unknown | Alamo Area (583): Alamo Area (583) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1970 – 1/1/1971[7] | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1971 – 1/1/1972[8] | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1972 – 1/1/1973[9] | Unknown | Atlanta Area (092): Atlanta Area (092) |

[7] Clarendon has not located any policies allegedly issued to the Atlanta Area Council with January 1 anniversary dates, and has not located any policies allegedly issued for the successive periods January 1, 1970 to January 1, 1975 as alleged on the BSA Schedule. Instead, Clarendon has located documentation constituting or regarding policy 31-540468, issued for the period November 1, 1970 to November 1, 1971, which states that it is a renewal of policy 31-261458, which has not been located. The documentation states that the named insured under policy 31-540648 is "Atlanta Area Council Boy Scouts of America," with an endorsement stating that the policy "applies to any of the following as an additional insured: any officer, employee, scout master, assistant scout master, committee man or district and council or any other volunteer for the operations of the Named Insured, while such person is acting within the scope of his duties as such." The documentation further provides that the policy limits for policy 31-540648 are $500,000 per person and per occurrence and $500,000 in the aggregate.

[8] Clarendon has located documentation constituting or relating to Maryland Casualty Company policy number 31-569552, with a policy period 11/1/1971 – 11/1/1972. The documentation states that the named insured under policy 31-569552 is "Atlanta Area Council Boy Scouts of America," with an endorsement stating that the policy "applies to any of the following as an additional insured: any officer, employee, scout master, assistant scout master, committee man or district and council or any other volunteer for the operations of the Named Insured, while such person is acting within the scope of his duties as such." The documentation further provides that the policy limits for policy 31-569552 are $500,000 per person and per occurrence and $500,000 in the aggregate.

[9] Clarendon has located documentation constituting or relating to Maryland Casualty Company policy number 31-622595, with a policy period 11/1/1972 – 11/1/1973. The documentation states that the named insured under policy 31-622595 is "Atlanta Area Council Boy Scouts of America," with an endorsement stating that the policy "applies to any of the following as an additional insured: any officer, employee, scout master, assistant scout master, committee man or district and council or any other volunteer for the operations of the Named Insured, while such person is acting within the scope of his duties as such." The documentation further provides that the policy limits for policy 31-622595 are $500,000 per person and per each occurrence and $500,000 in the aggregate combined single limit.

Doc #  DC/27542496v1

**FCRA00781**

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged, not located) | 1/1//1973 – 1/1/1974 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1974 – 1/1/1975 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | 3830-72-95[10] | 7/1/1975 – 7/1/1976 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |
| Maryland Casualty Company | 3830-72-95 | 7/1/1976 – 7/1/1977 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |
| Maryland Casualty Company | 3830-72-95 | 7/1/1977 – 7/1/1978 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |

---

[10] Clarendon has located documentation constituting or relating to Maryland Casualty Company policy number GL 38307295 issued to the Columbia Pacific Council (whose name later changed to Cascade Pacific Council), for the policy period 7/1/1975 – 7/1/1978, whose termination date was amended, by endorsement, to 1/1/1978. The policy number does not contain the hyphens used in three of the entries on the BSA Schedule. The documentation regarding policy GL 38307295 states that the "Insured" under policy GL 38307295 includes "[t]he sponsoring organizations, committeemen, scoutmasters, assistance scoutmasters … registered under the charter and by laws of the Boy Scouts of America, and such other persons who may participate in activities of a scouting nature, while acting within their capacity as such." The documentation contains a "Single Limit of Liability Endorsement" stating that the policy limits of policy GL 38307295 are $500,000 each occurrence and $500,000 in the aggregate. In addition to the entries regarding alleged Maryland Casualty Company policy 3830-72-95, the BSA Schedule contains three entries regarding an alleged Maryland Casualty Company policy number 36307295 issued to the Columbia Pacific Council for the successive periods 7/1/1975 – 7/1/1978. No such policies have been located by Clarendon.

Doc # DC/27542496v1

FCRA00782

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | 96-224611 (alleged; not located) | 1/1/1963 – 1/1/1964 | Unknown | Chickasaw (558): Chickasaw 1916- (558)[11] |
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1964 – 1/1/1965 | Unknown | Chickasaw (558): Chickasaw 1916- (558)[12] |
| Maryland Casualty Company | Unknown (alleged, not located) | 1/1/1965 – 8/1/1965 | Unknown | Chickasaw (558): Chickasaw 1916- (558)[13] |
| American General Fire & Casualty Company[14] | Unknown (alleged; not located) | 1/1/1975 – 1/1/1976 | Unknown | Circle Ten (571): Circle Ten 1913- (571) |

---

[11] In a schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Chickasaw Council, KCIC lists the limits for this alleged MCC policy as $300,000 "per person or per occurrence." Clarendon has not located any documentation constituting or regarding this Alleged Policy.

[12] In a schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Chickasaw Council, KCIC lists the limits for this alleged MCC policy as $500,000 "per person or per occurrence." Clarendon has not located any documentation constituting or regarding this Alleged Policy.

[13] This Alleged Policy is not included in the schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Chickasaw Council.

[14] Based on corporate research, Clarendon believes that "American General Fire & Casualty Company," which is listed on the BSA Schedule as the alleged issuer of a policy to the Circle Ten Local Council, is not an underwriting company of Zurich American Insurance Company. It appears possible that the listing on the BSA Schedule was intended to identify "Maryland American General Insurance Company," which was an underwriting company associated with Zurich American Insurance Company. The secondary evidence of this Alleged Policy that was provided to Zurich American Insurance Company by KCIC is comprised of the minutes of a February 7, 1975 meeting of the Netseo Trails Council, No. 580, attaching a listing of insurance policies approved for purchase at that meeting, including one described as "Council Liability $500,000 CSL", with the handwritten entry "Amer Gen" next to that typed line. KCIC affixed Bates numbers "CIRCLETEN BSA 00019 – 00021" to the secondary evidence produced

Doc # DC/27542496v1

FCRA00783

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1974 – 1/1/1975[15] | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[16] |
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1975 – 1/1/1976 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[17] |

to Zurich American Insurance Company. In an abundance of caution, without conceding that any such Alleged Policy was issued by an underwriting company affiliated with Zurich American Insurance Company, this Alleged Policy is included in this chart.

[15] Clarendon has not located any policies allegedly issued to the Mason-Dixon Council with January 1 anniversary dates, and has not located any policies allegedly issued for the successive periods January 1, 1974 to January 1, 1977 as alleged on the BSA Schedule and on the schedule labeled "Attachment 2" to the March 5, 2021 letter issued to Zurich American Insurance Company by KCIC on behalf of the Mason Dixon Council. Instead, Clarendon has located documentation constituting and/or relating to Maryland Casualty Company policy 41-210101 issued to the "Mason-Dixon Council, Boy Scouts of America, Inc." for the period 7/24/1971-7/24/1974. Policy 41-210101 states that it is a renewal of policy 41-156975, which has not been located. A change endorsement effective 10/25/1973 states that coverage under Section II of policy 41-210101 is extended to include "Boy or Girl Scout Councils – excluding camps – Code 0374-255." The documentation further provides that the policy limits for policy 41-210101 initially were $300,000 per occurrence and $300,00 in the aggregate; effective 2/4/1972, the limits were $500,000 per occurrence and $500,000 in the aggregate.

[16] In a schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Mason-Dixon Council, KCIC lists the limits for this alleged MCC policy as $2,500,000 "per person or per occurrence." By email dated May 27, 2021, KCIC provided Zurich American Insurance Company with alleged secondary evidence of the Alleged Policy, consisting of a charter renewal application for the year starting July 1, 1975, in which the Mason-Dixon Council entered "Maryland Casualty Companies" in response to Section VII, Question Q as being the insurer from which the Local Council had allegedly purchased broad form comprehensive general liability coverage of $2.5 million. Clarendon has not located any documentation constituting and/or relating to this Alleged Policy.

[17] In a schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Mason-Dixon Council, KCIC lists the limits for this alleged MCC policy as $2,500,000 "per person or per occurrence." By email dated May 27, 2021, KCIC provided Zurich American Insurance Company with alleged secondary evidence of the Alleged Policy, consisting of a charter renewal application for the year starting July 1, 1976,

Doc # DC/27542496v1

FCRA00784

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1976 – 1/1/1977[18] | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[19] |

---

in which the Local Council identified "The Maryland Casualty Companies" as the insurer with which it had the required minimum coverage of $2.5 million in comprehensive general liability insurance. Clarendon has not located any documentation constituting and/or relating to this Alleged Policy.

[18] Clarendon has located documentation constituting and/or relating to MCC policy GL-67387918 issued to "Mason-Dixon Council Boy Scouts of America, Inc." for the period 2/28/1976 to 2/28/1977. Policy GL-67387918 states on the declarations page that it is a renewal of policy number GL-68304148, which has not been located. An endorsement in policy GL-67387918 states that "National Council, Boy Scouts of America" is an insured under that policy. The documentation further provides that policy GL-67387918 has a combined single limit of $500,000 per occurrence, $500,000 aggregate.

[19] In a schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Mason-Dixon Council, KCIC lists the limits for this alleged Maryland Casualty Company policy as $2,500,000 "per person or per occurrence." KCIC subsequently provided Zurich American Insurance Company with alleged secondary evidence of the Alleged Policy, consisting of a charter renewal application for the year commencing July 1, 1977, in which the Local Council stated that with respect to the required $2.5 million broad form comprehensive general liability coverage, it had $500,000 with "The Maryland Casualty Co.," and the remaining $2 million with "National Council Package". Clarendon has not located any documentation constituting and/or relating to this Alleged Policy.

Doc # DC/27542496v1

FCRA00785

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged; not located)[20] | 7/24/1977 – 7/24/1978[21] | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[22] |
| Maryland Casualty Company | Unknown (alleged; not located) | 7/24/1978 – 7/24/1979 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[23] |

---

[20] Clarendon has located documentation constituting and/or relating to Maryland Casualty Company policy number GL-67408988 issued to "Mason-Dixon Council Boy Scouts of America, Inc." for the period 2/28/1977 to 2/28/1978. An endorsement in policy GL-67408988 states that "National Council, Boy Scouts of America" is an insured under that policy. The documentation further provides that policy GL-67408988 has a combined single limit of liability of $500,000 per occurrence, $500,000 aggregate.

[21] The BSA Schedule lists three separate Alleged Policies for the successive periods 7/24/1977 to 7/24/1980, while Attachment 2 to the March 5, 2021 KCIC letter lists a single Alleged Policy with a policy period of 7/24/1977 to 7/24/1980, with alleged limits of $500,000 "per person or per occurrence." Clarendon has located documentation constituting and/or relating to Maryland Casualty Company policy SM 17355398, with a policy period of 7/24/1977 – 7/24/1980 and limits of $500,000 per occurrence and aggregate, as having been issued to the Mason-Dixon Council. The declarations page of policy SM 17355398 states that it is a renewal of policy SM 36562377, which has not been located. The documentation demonstrates that policy number SM 17355398, which is a Special Multi-Peril policy, was cancelled effective January 1, 1978.

[22] Clarendon has located documentation constituting and/or relating to Maryland Casualty Company policy number GL 37433436 issued to "Mason-Dixon Council Boy Scouts of America, Inc." for the period 2/28/1978 – 2/28/1979. An endorsement in policy GL 37433436 states that "National Council, Boy Scouts of America" is an insured under that policy. The documentation further provides that policy GL 37433436 has a combined single limit of liability of $500,000 per occurrence, $500,000 aggregate. The documentation appears to demonstrate that the general liability coverage under policy GL 37433436 was cancelled effective 2/28/1978.

[23] *See supra* n.22.

Doc # DC/27542496v1

FCRA00786

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged; not located) | 7/24/1979 – 7/24/1980 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[24] |
| Maryland Casualty Company | 31-086767 (alleged; not located) | 7/7/1957 – 7/7/1958 | Unknown | Northeast Iowa (178): Northeast Iowa (178) |
| Maryland Casualty Company | Unknown (alleged; not located) | 7/1/1958 – 7/1/1959 | Unknown | Northeast Iowa (178): Northeast Iowa (178) |
| Maryland Casualty Company | Unknown[25] | 3/1/1977 – 1/1/1978 | Unknown | Washington Crossing (777): Bucks County 1927-2015 (777) |

---

[24] *See supra* n.22.

[25] Clarendon has located documentation constituting and/or relating to alleged Maryland Casualty Company policy number GL 47422951, for the period of 2/28/1977 – 1/1/1978, and with alleged combined single limits of $500,000 per person and per occurrence.  The documentation states that the named insured under policy GL 47422951 is "Bucks County Council Boy Scout [sic] of America," including under "Coverages A and B, all units of the Bucks County Boy Scouts Council, any executive officers, executive member of the council, troop committee members, directors, supervisors and leaders, whether volunteer or paid staff; chartered institutions; auxiliary organizations and members individually or collectively in respect of Liability arising out of the performance of their duties as such."

9

FCRA00787

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Zurich Insurance Company[26] | 80-39-959 (alleged; not located) | 7/16/1960 – 7/19/1961 | Unknown | Western Los Angeles County (051): San Fernando Valley 1923-1972 (050)[27][28] |

[26] Although the BSA Schedule lists "Zurich Insurance Company" as the alleged issuer of this Alleged Policy, Clarendon reserves all rights as to whether Zurich Insurance Company was an underwriting company of Zurich American Insurance Company as of the July, 1960 to July, 1961 time period at which the Alleged Policy was purportedly issued.

[27] Based on information set forth on the BSA Schedule and/or in a letter to Zurich American Insurance Company dated February 1, 2021 from the Three Rivers Council, there appear to be allegations that Maryland American General Insurance Company may have issued the following Alleged Policies to the Three Rivers Council: (1) alleged policy number CGA 682849 for policy period 11/18/1964 – 11/18/1965, with alleged policy limits of $100,000 per person; (2) policies with unknown numbers for the successive alleged policy periods of 11/18/65 – 11/18/68, and the alleged policy period 11/18/1968 – 3/16/69; 3) alleged policy number 31-480583 for policy period 3/16/1969 – 3/16/1970, with alleged policy limits of $250,000; (4) alleged policy number 31-818323 for policy period 3/16/1969 – 3/16/1970, with alleged policy limits of $100,000 (note that this alleged policy is also alleged to have been issued to Trinity-Neches Local Council—*see* fn. 28, infra); (6) alleged policy number 31-476201 for policy period 3/16/1971 – 3/16/1972, with alleged limits of $500,000; (7) alleged policy number 31-480583 for policy period 3/16/1972 – 6/25/1972, with alleged limits of $500,000; (8) alleged policy number 7186226 for policy period 6/25/1972 – 6/25/1973 with alleged limits of $500,000; and (9) alleged policy number 542TD5947 for policy period 1/10/1975 – 1/10/1976. Clarendon has not located any documentation concerning these Alleged Policies, other than documentation constituting and/or relating to the following Maryland American General Insurance Company policies issued to "Three Rivers Council – Boy Scouts of America, Inc.": (1) policy number 31-476201 for policy period 3/16/1971 – 3/16/1972, with policy limits of $100,000 per person and $300,000 per occurrence and in the aggregate; and (2) policy number 31-480583, for policy period 3/16/1972 – 3/16/1973, which was cancelled flat effective 3/16/1972, with alleged policy limits of $100,000 per person and $300,000 per occurrence and in the aggregate.

[28] Based on information set forth on the BSA Schedule there are allegations that Maryland American General Insurance Company may have issued the following Alleged Policies to the Trinity-Neches Local Council: (1) alleged policy number 31-818323, for policy period 3/16/1969 – 3/16/1970, with unknown alleged limits; and (2) alleged policy number 31-471819, for policy period 3/16/1970 – 3/16/1971, with alleged policy limits of $100,000 per occurrence. Clarendon has located documentation constituting and/or relating to a declarations page bearing Maryland American General Insurance Company policy number 31-471819 issued

Doc # DC/27542496v1

FCRA00788

## Exhibit B[29]

### Known and Alleged BSA Insurance Policies Issued by Clarendon

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| Clarendon America Insurance Company | XLX 39306224 | 3/1/2003 – 3/1/2004 |
| Clarendon America Insurance Company | XLX 00310351 | 3/1/2004 – 3/1/2005 |
| Clarendon America Insurance Company | XLX 00311014 | 3/1/2005 – 3/1/2006 |

Unionamerica Insurance Company Limited (St Katherine)
Policy No. L76-10-08-02 (151351/01/76)
Participation:  1.439640% (being 4.32% of 33.325%)
Period:  9/17/1976 – 9/17/1977

Unionamerica Insurance Company Limited (St Katherine)
Policy No. L76-10-08-02 (151352/01/76)
Participation:  5.771890% (being 17.32% of 33.325%)
Period:  9/17/1976 – 9/17/1977

Unionamerica Insurance Company Limited
Policy No. L76-10-08-02 (833938/01/76)
Participation:  3.808000%
Period:  9/17/1976 – 9/17/1977

Unionamerica Insurance Company Limited
Policy No. L76-10-08-02 (833939/01/76)
Participation:  3.808000%
Period:  9/17/1976 – 9/17/1977

---

to "Trinity-Neches Council, Boy Scouts of America 565 et al. (*See* End. No. 1)."  The declarations page states that policy 31-471819 is a renewal of policy 31-818323, with "3/16/69 – 70" handwritten above the typed policy number.  Clarendon has not located documentation constituting or relating to alleged policy 31-818323. The declarations page of policy 31-471819 lists limits of $100,000 each person, $300,000 each occurrence, and $300,000 aggregate.

[29] The information contained within this Exhibit B does not necessarily represent the views of the Coalition, FCR, Tort Claimants' Committee, AHCLC, the Settlement Trust, or the Settlement Trustee, and does not bind those parties in any respect; provided, however, that all Parties agree, consistent with Section 34(g) of the Agreement, that to the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit B, such policy shall be treated as if such policy were included on Exhibit B.  Subject to the terms of this Settlement Agreement, the Parties (and the Settlement Trustee) do not waive and continue to reserve all rights and defenses.

Doc #  DC/27542496v1

FCRA00789

Note that for the Unionamerica coverage, the percentages shown are Unionamerica's percentage participation in $5 million in aggregate limits, excess of $10 million in underlying insurance.  As regards Unionamerica, the sale referenced in Section 5 of the Agreement refers only to Unionamerica's participation in the policies listed above.

Doc #  DC/27542496v1

**FCRA00790**

<u>Exhibit C</u>

*Confidential Mediation Communication*
*Subject to Mediation Privilege*
*Protected Settlement Communication*

<u>Settlement Term Sheet</u>

This term sheet ("<u>Term Sheet</u>") represents the basic terms of a settlement agreement between and among Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company), River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited), and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company (collectively, "<u>Clarendon</u>"),[1] Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession ("<u>BSA</u>" or the "<u>Debtors</u>"), the Ad Hoc Committee of Local Councils (the "<u>AHCLC</u>"),[2] the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "<u>Coalition</u>"),[3] and the Future Claimants' Representative (the "<u>FCR</u>" and, collectively with Clarendon, the Debtors, the AHCLC, the Coalition, the "<u>Parties</u>"). The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "<u>State Court Counsel</u>") agree to support the terms of and be bound by the Agreement (as defined below). The Parties will prepare a definitive written settlement agreement consistent with this Term Sheet that will include additional material terms (the "<u>Agreement</u>"). The Agreement will be appended to and included in the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC,* subject to modification by the Debtors, the Coalition, and the FCR ("<u>Amended Plan</u>") located at Dkt. 7832 and the Confirmation Order (defined below). The Agreement and/or Term Sheet shall be listed on Exhibit I to the Amended Plan as an Insurance Settlement. Capitalized terms not defined in this Term Sheet shall have the definitions ascribed to such terms in the Amended Plan or the "<u>Century Term Sheet</u>" located at Dkt. No. 7745-1.

---

[1] The term "Clarendon" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise.

[2] Notwithstanding anything to the contrary in this Term Sheet, the obligations and undertakings of the AHCLC in connection with this Term Sheet or the Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

[3] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc # DC/25608067v1

**FCRA00791**

1. **Settlement Amount**. In consideration of the releases and other consideration provided for herein, Clarendon shall pay in cash Sixteen Million and Five-Hundred Thousand U.S. Dollars ($16,500,000) (the "Settlement Amount") to the trust for Abuse Claims to be created under the Amended Plan (the "Trust") as provided herein.

2. **Payment and Release of the Settlement Amount**. Clarendon shall pay Two Million, Eight Hundred and Seventy-One Thousand U.S. Dollars ($2,871,000)(17.4% of Settlement Amount) (the "Initial Payment") of the Settlement Amount to the Trust on, or as soon as reasonably practicable after, the date (the "Initial Payment Date") all conditions to the effectiveness of the Amended Plan have been satisfied (including the entry of orders, in form and substance reasonably acceptable to the Parties, of the Bankruptcy and District Courts confirming, or affirming confirmation of, the Amended Plan (collectively, the "Confirmation Order"), which Confirmation Order shall not be subject to any stay and shall be in full force and effect) and the Amended Plan has gone effective (the "Effective Date"). On, or as soon as reasonably practicable after, the Effective Date, Clarendon shall pay the remaining 82.6% of the Settlement Amount (the "Additional Payment") into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties. The Additional Payment (and all income earned thereon minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the Confirmation Order becomes a Final Order, on which date the Additional Payment, plus any Net Income, shall be released from the Escrow Account to the Trust (the "Release Date"); *provided, however,* that, at its election, Clarendon may authorize the payment of the Additional Payment directly to the Trust on the Effective Date or may authorize the release of the Additional Payment (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes Final and Non-Appealable, in which event the date on which Clarendon authorizes the payment or release of the Additional Payment to the Trust shall be the Release Date. The Settlement Trust shall have investment discretion with respect to the Additional Payment while it is in the Escrow Account, subject to the investment protocols applicable under the term sheet located at Docket No. 6210-1 [Hartford term sheet]; *provided, however,* that the Trust will bear all risks associated with any such investment of the Additional Payment and that no loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account shall require Clarendon to increase the Settlement Amount it is paying (or increase the amount of BSA's contribution to the Trust); *provided further, however*, that the Debtors, Reorganized BSA, the Local Councils, and Chartered Organizations shall have no liability or obligations to Clarendon or the Trust, the Trust shall have no liability or obligations to Clarendon, and Clarendon shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account.

3. **Protections to be Afforded to Clarendon**. Effective as of the Release Date, Clarendon is to be designated Protected Parties for all purposes under the Amended Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections. As set forth herein, Clarendon shall be granted such releases, injunctions,

2

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**

Doc # DC/25608067v1

**FCRA00792**

protections as are necessary to deliver finality with respect to all known and unknown policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from or in connection with Abuse Claims, which shall include the Clarendon Policies (as defined below) and any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions or positions taken in connection with any Abuse Claims and/or the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date related to any Abuse Claims and/or policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise. Notwithstanding anything to the contrary, the BSA, Local Councils, and Chartered Organizations are not releasing, enjoining, or protecting any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise. The Agreement, the Amended Plan, and the Confirmation Order shall provide for a channeling injunction and full release of Clarendon with respect to all Claims or Causes of Action related to, arising from or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Amended Plan and other Claims related to the insurance policies issued by Clarendon subject to the limitations stated in this Section 3 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies) and Section 4. All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Amended Plan and the Agreement shall be continuously enjoined pending their release. Clarendon shall be Protected Parties under the Amended Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.M of the Amended Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

4. **Sale of Clarendon Policies**. Prior to the Effective Date, the Local Councils and Clarendon shall consent to and provide for the assignment of the Local Council Insurance Policies issued by Clarendon, which include those identified on Exhibit A (the "<u>Clarendon Local Council Policies</u>"), to the Debtors' Estates. The Confirmation Order and Amended Plan shall provide

3

that (a) on the Effective Date, and subject to the limitations below, in exchange for the Settlement Amount, the BSA Insurance Policies issued by Clarendon which include those identified on Exhibit B (the "BSA Clarendon Policies" and with the Clarendon Local Council Policies, the "Clarendon Policies")[4] and the Clarendon Local Council Policies shall be sold by Debtors and the Debtors' Estates to Clarendon free and clear of all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered Organizations, Chartered Organizations, and their respective creditors and interest holders in the Clarendon Policies, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the assignment by Local Councils and the Sale shall exclude the Postpetition Insurance Policies and Non-Abuse Insurance Policies, (c) the Sale represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Amended Plan, (e) the Confirmation Order shall designate Clarendon as a good faith purchaser and shall provide that the Sale constitutes a purchase by Clarendon in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording Clarendon all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including a person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting-related Abuse, shall have any right to or an interest in the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust for the benefit of the holders of Direct Abuse Claims, *provided, however*, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with Trust Agreement and the Trust Distribution Procedures. The Agreement will contain a representation that Clarendon and BSA have each conducted a reasonable, good faith search of its respective records and that it has located no evidence of any BSA Insurance Policies issued by Clarendon other than the policies identified on Exhibit B or any Local Council Insurance Policies issued by Clarendon other than the policies identified on Exhibit A, and that based on such searches, neither Party believes that any additional policies or secondary evidence of such policies exists, and that to the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A or Exhibit B, such policy shall be treated as if such policy were included on Exhibit A or B, as applicable. Without limiting the foregoing, although the Parties do not believe that the Sale would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more BSA Clarendon Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

---

[4] For the avoidance of doubt, "Clarendon Policies" shall not include policies issued on or after January 1, 1987 by Maryland Casualty Company, American General Fire & Casualty Company, Zurich American Insurance Company, and their respective affiliates.

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

Doc # DC/25608067v1

FCRA00794

5. **Trust Bound by Agreement**. Upon the Effective Date, the Trust shall be bound by all terms of this Term Sheet and the Agreement. Upon the Release Date, the Trust shall release Clarendon from all Causes of Action and Claims that the Trust holds relating to the Clarendon Policies and other policies issued by Clarendon covering Abuse Claims, provide the other releases contained in the Agreement and otherwise perform as required in the Agreement.

6. **Release by Clarendon**. Upon the Release Date, subject to the limitations below, Clarendon and its Representatives (as defined in the Amended Plan) shall release the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, and the Trust and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Clarendon Policies), (b) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Amended Plan, including extra-contractual claims relating to the Clarendon Policies and including the Debtors' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Clarendon against the Debtors or by any of the Releasing Parties against Clarendon, in the Debtors' Chapter 11 Cases, and any actions, omissions, or positions taken in the Debtors' Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Clarendon Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder, whether for defense, settlement of claims, or otherwise. Nothing shall preclude Clarendon from enforcing the terms of the Agreement. Furthermore, nothing in this Term Sheet, the Agreement, or the Amended Plan shall constitute a release of any Claim by Clarendon or its Representatives of any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies, (ii) reinsurance, or (iii) Postpetition Insurance Policies.

7. **Release of Clarendon**. Upon the Release Date, the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and all such Persons' or Entities' Representatives (the "Releasing Parties") shall release Clarendon and its Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Clarendon Policies), (b) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Amended Plan and other Claims related to Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise, including extra-contractual claims relating to the Clarendon Policies (d) the Debtors' Chapter 11 Cases and related

5

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

Doc # DC/25608067v1

**FCRA00795**

proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Clarendon against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Clarendon, in the Debtors' Chapter 11 Cases, and any actions, omissions or positions taken in the Debtors' Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Clarendon Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder, whether for defense, settlement of claims, or otherwise.  If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Clarendon in the Agreement or Amended Plan, then Clarendon shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties.  The Agreement will provide that the release of Clarendon shall not affect claims against other insurance companies, subject to the limitation that Clarendon shall not assert claims (other than potential reinsurance claims) against other Settling Insurance Companies.  Nothing shall preclude the Releasing Parties from enforcing the terms of the Agreement and the Amended Plan.  For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past, present, and future direct or indirect parents, subsidiaries, affiliates, and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors, and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and (2) to the extent of any party's right, power and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Clarendon Policies or any policy of insurance issued to or for the benefit of such releasing party related to Abuse Claims.[5]  Nothing in this Term Sheet, the Agreement, or the Amended Plan shall constitute a release of any Claim by the Releasing Parties of any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies or (ii) Postpetition Insurance Policies, and shall not include any insurance policies for which Clarendon becomes responsible or acquire on or after the date the Term Sheet has been executed.[6]

8.  **Chartered Organizations**.  Clarendon shall (a) receive the same releases and the same protections of the channeling injunction as Century Indemnity Company with respect to Chartered Organizations and (b) provide the same releases as Century Indemnity Company with respect to Chartered Organizations, consistent with the Century Term Sheet, including the release by the Participating Chartered Organizations and Contributing Chartered

---

[5] For the purposes of clarity, the releases in this Section 7 do not include personal insurance policies issued directly to individuals who are releasing parties or to directors and officers liability policies issued in connection with their affiliations with entities other than BSA, the Local Councils or Chartered Organizations.

[6] The releases provided in this Term Sheet and the Agreement, including to Clarendon, shall be no broader and no narrower than those provided in the Century Term Sheet to the "Settling Insurers" as defined in the Century Term Sheet.

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

Doc # DC/25608067v1

**FCRA00796**

Organizations for coverage for Abuse Claims under insurance policies issued directly by Clarendon to such Chartered Organizations. Clarendon shall be entitled to all the rights and benefits of the Century Term Sheet as implemented in the Amended Plan.

9. **Finality**. Subject to the other terms of this Term Sheet, and so long as this Term Sheet and the Agreement remain in full force and effect and/or are not terminated, the Parties agree that (a) the Settlement Amount is the total amount Clarendon will be obligated to pay under the Clarendon Policies, and (b) the Confirmation Order shall provide that on and after the Release Date and payment of the Settlement Amount, Clarendon shall be released from and shall not be obligated to make any additional payments to any Person (including, but not limited to, the BSA, Local Councils, any Chartered Organization and any entity actually or allegedly covered under insurance policies issued by Clarendon) for Abuse Claims, including those relating to or arising out of the Clarendon Policies and the other Claims and Causes of Action released hereunder, subject to the limitations in Section 3 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies).

10. **Judgment Reduction**. In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Clarendon as a result of a Cause of Action for contribution, subrogation, indemnification or other similar Cause of Action against Clarendon for Clarendon's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification or other similar Cause of Action against Clarendon. To ensure that such a reduction is accomplished, Clarendon shall be entitled to assert this paragraph as a defense to any action against it for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Clarendon from any liability for the judgment or Cause of Action. To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar claim against Clarendon, Clarendon may assert any defense to such claim notwithstanding any of the releases contained herein.

11. **Findings and Orders**. The Amended Plan and the Confirmation Order shall state that the Findings and Orders are not binding on Clarendon to the extent that Clarendon is a Settling Insurance Company and the transactions contemplated herein, including the release of the Settlement Amount to the Trust, are fully consummated. The Amended Plan and Confirmation Order shall further provide that Clarendon's agreement herein not to object to the entry of said Findings and Orders in the Confirmation Order does not indicate Clarendon's support for said Findings and Orders, and no party shall argue that Clarendon agreed to or acquiesced in such Findings and Orders in any proceeding.

12. **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with this Term Sheet and the Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the *Modified Fifth Amended Chapter*

7

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

11 *Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* dated September 29, 2021, filed at Dkt. 6443, *provided* that Clarendon shall be included as a releasee, with respect to any Clarendon Policies, in any form of release attached to the Trust Distribution Procedures to the same extent that BSA, Local Councils and other Protected Parties are released, which release shall be consistent with the Century Term Sheet. The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Claims related to, arising from or in connection with Abuse Claims who receive payment from the Trust to release any Claim related to, arising from or in connection with Abuse Claims against (a) Clarendon and (b) any insured or co-insured, under the Clarendon Policies or other policies issued by Clarendon covering or allegedly covering Claims or Causes of Action for Abuse claims, solely to the extent of and scope of any remaining coverage rights (if any) thereunder. Clarendon shall not object to the Trust Distribution Procedures but may add a statement in the Amended Plan or the Disclosure Statement that Clarendon is a Settling Insurance Company and, as a result, takes no position on the Trust Distribution Procedures. Clarendon shall not object to the selection of the Settlement Trustee as provided in the Amended Plan and Settlement Trust Agreement. Clarendon shall not participate in or otherwise interfere with the administration of the Trust.

13. **Objections to and the Amended Plan**. Clarendon shall not object to the Amended Plan, the Settlement Trust Agreement, or the Trust Distribution Procedures (and shall withdraw any pending objections) so long as Clarendon is included as a Protected Party in the Amended Plan and the Amended Plan are otherwise consistent with the terms of this Term Sheet and the Agreement.

14. **Discovery**. Upon the execution of the Term Sheet, all Parties shall as soon as practicable withdraw any pending discovery requests directed at each other and shall not seek additional discovery from each other. Clarendon shall as soon as practicable withdraw any pending discovery requests directed at any holder of an Abuse Claim, representatives of such holders, funders, vendors utilized by representatives of such holders, the Coalition (including law firms and attorneys associated therewith), and the FCR. Clarendon shall not seek or direct any additional discovery from such parties, the BSA, or the Local Councils, or any other party in interest in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases. Notwithstanding the foregoing, Clarendon shall cooperate and comply with any information requests, including prior BSA-related settlement and verdict information, from the BSA, the Coalition, and the FCR to the extent such information is not protected from disclosure and reasonably necessary in support of the confirmation of the Amended Plan; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to one or both of Mediators Gallagher and Carey, and the Parties agree to be bound by the Mediator's/Mediators' decision regarding such dispute.

15. **Public Statements**. The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding settlement, including press releases, court filings and in-court statements. Clarendon shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Clarendon may

8

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**

make statements to protect its rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and its representatives concerning Clarendon.

16. **Termination by Clarendon**. The Agreement shall contain the same termination provisions as those set forth in the TCJC Settlement Agreement.

17. **Termination Event by the Debtors, the Coalition, and the FCR**. The Agreement shall contain a termination event that shall permit the Debtors, the Coalition, or the FCR to terminate the Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Amended Plan under section 1126 of the Bankruptcy Code and as a result the Amended Plan is withdrawn. Subject to the foregoing sentence, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Term Sheet and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Term Sheet, including the provisions constituting the approval of all of the terms and conditions hereof, and the Agreement, and (b) defend this Term Sheet and the Agreement.

18. **Fiduciary Out by the Debtors and the FCR**. Notwithstanding anything in this Term Sheet and Agreement to the contrary, no term or condition of this Term Sheet and Agreement shall require BSA or the FCR to take or refrain from taking any action that it determines in would be inconsistent with its fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Term Sheet or the Agreement, the Term Sheet or Agreement may be terminated at any time prior to the entry of a Final Order confirming the Amended Plan as to that party, *provided, however,* that the Debtors and the FCR each understands that the TCC is not a party to this Term Sheet and that the TCC and claimants represented by various plaintiff firms may object to the Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Term Sheet and the Agreement is consistent with their fiduciary duties as of the effective date of the Term Sheet, *provided, further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate the Agreement, such termination shall be with respect to the FCR only and not otherwise affect the Agreement or the other Parties' rights and obligations thereunder. Each of BSA and the FCR believe that, as of the date hereof, entering into this Term Sheet is an appropriate exercise of its fiduciary duty.

19. **Effect of Reversal of Confirmation Order Following the Effective Date.** In the event that the Confirmation Order is reversed or vacated on appeal following the Effective Date, such that the Release Date does not occur (a "Reversal"), the Parties and State Court Counsel agree that Clarendon shall be entitled to a credit against any liability Clarendon may have under any

9

Abuse Insurance Policies issued to BSA or any Local Council, which credit shall be equal to the amount of the Initial Payment plus, if Clarendon has authorized the payment or release of the Additional Payment to the Trust, the amount of the Additional Payment (the "Credit"); *provided, however,* that if Clarendon has not authorized the payment or release of the Additional Payment, then the Additional Payment and all Net Income accrued thereon in the Escrow Account (or, if there is a loss as a result of investment of the Additional Payment, then the funds remaining in the Escrow Account) shall be released from the Escrow Account to Clarendon promptly following the Reversal (or any exercise of a Fiduciary Out by BSA). The provisions of this Section 19 shall survive any Reversal, any exercise of any Fiduciary Out, and any termination of the Agreement. Nothing in this Section or elsewhere in this Term Sheet or the Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

20. **Other Settlements**. To the extent that the Debtors or any other Person formed to assume the Debtors' liability for Abuse Claims, including the Settlement Trust, has settled or hereafter settles Claims arising out of Claims alleging Abuse Claims with any other Insurance Company, Chartered Organization or other Person, the Debtors or other Person formed to assume the Debtors' liability for Abuse Claims and Claims alleging Abuse Claims, shall obtain a waiver of that other Insurance Company, Chartered Organization or other Person's Claims against Clarendon based upon, arising out of or in any way attributable to such Claims and/or their settlement and they shall further provide the releases set forth in Section 7 (and the assignment and releases in Sections 7 and 8 in the case of a Chartered Organization). Such waiver may be accomplished by an assignment of such Claims to the Settlement Trust, whereupon such Claims will be released.

21. **State Court Counsel**. Each State Court Counsel represents and warrants to the Parties that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

22. **Abuse Claims Under Policies Issued to Chartered Organizations**. The release by the Participating Chartered Organizations and Contributing Chartered Organizations of the right to seek coverage for Abuse Claims under insurance policies issued directly by Clarendon to such Chartered Organizations[7] does not include the following:

(a) Such Chartered Organizations are not barred from tendering claims that are not Abuse Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies applies and to what extent;

(b) Such Chartered Organizations are not barred from tendering Mixed Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-

---

[7] This does not include policies issued by Clarendon to the BSA or the Local Councils.

10

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

Doc # DC/25608067v1

FCRA00800

Confirmation Interim Injunction (as set forth in Section 14 of the Century Term Sheet) and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations;

(c) Such Chartered Organizations may seek coverage and tender claims under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, subject to all parties' contractual rights;

(d) To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Amended Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, subject to all parties' contractual rights;

(e) To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Amended Plan, Clarendon shall have no further obligations with respect to such claim; and

(f) The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or Clarendon to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

23. **Plan**.  The Plan has been amended to incorporate the Century Term Sheet, the material terms of which have been incorporated herein with respect to Settling Insurance Companies.  The protections given to Clarendon, and to their respective Affiliates and Representatives, as Protected Parties shall not be less than that afforded to any other Protected Parties under (i) the Amended Plan (other than the limited indemnity provided to the Local Councils under the Amended Plan) or (ii) any other plan unless the Agreement has been validly terminated prior to the filing of such plan.  The Amended Plan shall be subject to the inclusion of the Agreement as a condition to entry of the Confirmation Order and the occurrence of the Effective Date. The inclusion of the Agreement in the Amended Plan shall not be waivable as a condition to entry of the Confirmation Order or the occurrence of the Effective Date absent the prior written consent of Clarendon.

*[Remainder of Page Intentionally Left Blank]*

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**

Doc #  DC/25608067v1

**FCRA00801**

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**

By: _Roger C. Musby_

Name: _Roger C. Musby_

Title: _President & CEO_

Date: _12-29-2021_

**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____

Title: _____

Date: _____

**River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited)**

By: _____

Name: _____

Title: _____

Date: _____

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc #  DC/25608067v1

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**

By: _____                                                                    .

Name: _____                                                                    .

Title: _____                                                                    .

Date: _____                                                                    .


**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____Robert Redpath_____

Title: _____Senior Vice President_____

Date: _____12/29/2021_____


**River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited)**

By: _____

Name: _____

Title: _____

Date: _____


**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc #  DC/25608067v1

**FCRA00803**

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**

By: _____                                    .

Name: _____                                    .

Title: _____                                    .

Date: _____                                    .


**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____

Title: _____

Date: _____


**River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited)**

By: _____

Name:    Darren Truman

Title:    Director

Date:    29th December 2021

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc # DC/25608067v1

**FCRA00804**

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: James B. Dolan, Jr.

Title: Vice President – Sr. Litig. and Coverage Counsel
Enstar (US) Inc., authorized Claims Administrator for Zurich American Ins. Co.

Date: 29 December 2021


## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

Doc # DC/25608067v1

**FCRA00805**

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

2

FCRA00806

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____ 12/30/2021 _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**FCRA00807**

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

2

## Schedule 1

### State Court Counsel

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St. Ste. 900 Houston, TX 77056 | 1026 |
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com) 909 Texas St, Ste 1801 | 690 |

3

**FCRA00809**

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
|  | Houston, TX 770022 |  |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd. Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St. Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. | 471 |

4

FCRA00810

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Houma LA 70364 | |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave. 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St. Ste. 950 New York, NY 10165 | 5893 |

Doc # DC/25608067v1

FCRA00811

**Exhibit A**

**Known and Alleged Local Council Insurance Policies Issued by Clarendon**

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | 05-829567 | 1/1/1968 – 1/1/1969 | Unknown | Alamo Area (583): Alamo Area (583) |
| Maryland Casualty Company | Unknown | 1/1/1970 – 1/1/1971 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1971 – 1/1/1972 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1972 – 1/1/1973 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1//1973 – 1/1/1974 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1974 – 1/1/1975 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1974 – 1/1/1975 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | 3830-72-95 | 7/1/1975 – 7/1/1976 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc # DC/25608067v1

**FCRA00812**

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | 3830-72-95 | 7/1/1976 – 7/1/1977 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |
| Maryland Casualty Company | 3830-72-95 | 7/1/1977 – 7/1/1978 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |
| Maryland Casualty Company | 96-224611 | 1/1/1963 – 1/1/1964 | Unknown | Chickasaw (558): Chickasaw 1916- (558) |
| Maryland Casualty Company | Unknown | 1/1/1964 – 1/1/1965 | Unknown | Chickasaw (558): Chickasaw 1916- (558) |
| Maryland Casualty Company | Unknown | 1/1/1965 – 8/1/1965 | Unknown | Chickasaw (558): Chickasaw 1916- (558) |
| American General Fire & Casualty Company | Unknown | 1/1/1975 – 1/1/1976 | Unknown | Circle Ten (571): Circle Ten 1913- (571) |
| Maryland Casualty Company | Unknown | 1/1/1974 – 1/1/1975 | Unknown | Mason-Dixon (221): Mason-Dixon 1956- (221) |
| Maryland Casualty Company | Unknown | 1/1/1975 – 1/1/1976 | Unknown | Mason-Dixon (221): Mason-Dixon 1956- (221) |

Doc # DC/25608067v1

FCRA00813

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown | 1/1/1976 – 1/1/1977 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | Unknown | 7/24/1977 – 7/24/1978 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | Unknown | 7/24/1978 – 7/24/1979 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | Unknown | 7/24/1979 – 7/24/1980 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | 31-086767 | 7/7/1957 – 7/7/1958 | Unknown | Northeast Iowa (178): Northeast Iowa (178) |
| Maryland Casualty Company | Unknown | 7/1/1958 – 7/1/1959 | Unknown | Northeast Iowa (178): Northeast Iowa (178) |
| Maryland Casualty Company | Unknown | 3/1/1977 – 1/1/1978 | Unknown | Washington Crossing (777): Bucks County 1927-2015 (777) |
| Zurich Insurance Company | 80-39-959 | 7/16/1960 – 7/19/1961 | Unknown | Western Los Angeles County (051): San Fernando Valley 1923-1972 (050) |

3

FCRA00814

**Exhibit B**

**Known and Alleged BSA Insurance Policies Issued by Clarendon**

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| Clarendon America Insurance Company | XLX 39306224 | 3/1/2003 – 3/1/2004 |
| Clarendon America Insurance Company | XLX 00310351 | 3/1/2004 – 3/1/2005 |
| Clarendon America Insurance Company | XLX 00311014 | 3/1/2005 – 3/1/2006 |

UnionAmerica Insurance Company, Ltd.
Policy No. 151351/01/76
Participation: 1.439640%
Period: 9/17/1976 – 9/17/1977

UnionAmerica Insurance Company, Ltd.
Policy No. 151352/01/76
Participation: 5.771890%
Period: 9/17/1976 – 9/17/1977

UnionAmerica Insurance Company, Ltd.
Policy No. 833938/01/76
Participation: 3.808000%
Period: 9/17/1976 – 9/17/1977

UnionAmerica Insurance Company, Ltd.
Policy No. 833939/01/76
Participation: 3.808000%
Period: 9/17/1976 – 9/17/1977

Note that for the UnionAmerica coverage, the percentages shown are UnionAmerica's percentage participation in $5 million in aggregate limits, excess of $10 million in underlying insurance. As regards UnionAmerica, the sale referenced in section 3 of the term sheet refers only to Union America's participation in the policies listed above.

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc # DC/25608067v1

**Exhibit D**

**Notice Addresses**

| For Clarendon: | With a copy to: |
|---|---|
| Dawn Ballin<br>Senior Vice President and Head of Claims<br>Enstar (US) Inc.<br>Harborside 5<br>185 Hudson Street, Suite 2600<br>Jersey City, NJ 07311<br>(201) 743-7765<br>dawn.ballin@enstargroup.com | Harry Lee<br>Steptoe & Johnson LLP<br>1330 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>(202) 429-8112<br>hlee@steptoe.com |
| For the Debtors:<br><br>Steven P. McGowan<br>General Counsel<br>Boy Scouts of America<br>1325 West Walnut Hill Lane<br>Irving, TX 75038<br>(972) 580-7847<br>steve.mcgowan@scouting.org | With a copy to:<br><br>Jessica C. Lauria<br>White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>(212) 819-8200<br>jessica.lauria@whitecase.com<br><br>Michael C. Andolina<br>White & Case LLP<br>111 South Wacker Drive<br>Chicago, IL 60606<br>(312) 881-5400<br>mandolina@whitecase.com |
| For the Coalition:<br><br>David J. Molton<br>Eric R. Goodman<br>Coalition of Abused Scouts for Justice<br>c/o Brown Rudnick LLP<br>Seven Times Square<br>New York, NY<br>(212) 209-4800<br>dmolton@brownrudnick.com<br>egoodman@brownrudnick.com | |
| For the FCR:<br><br>James L. Patton | |

FCRA00816

| Robert S. Brady<br>Edwin J. Harron<br>c/o Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>jpatton@ycst.com<br>rbrady@ycst.com<br>eharron@ycst.com | |
|---|---|
| For AHCLC:<br><br>Richard G. Mason<br>Joseph C. Celentino<br>Ad Hoc Committee of Local Councils<br>c/o Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, New York  10019<br>(212) 403-1000<br>RGMason@wlrk.com<br>JCCelentino@wlrk.com | |
| For State Court Counsel:<br><br>See Schedule 1 hereto | |

Doc #  DC/27542496v1

FCRA00817

**EXHIBIT 4**

United Methodist Settlement Agreement

FCRA00818

*EXECUTION VERSION*

## ADDENDUM TO UNITED METHODIST TERM SHEET

This addendum to the Settlement Term Sheet (together with the Settlement Term Sheet, the "Agreement"), dated as of February 14, 2022 is entered into between and among the United Methodist Ad Hoc Committee (the "UMAHC"),[1] Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (collectively, "BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"), the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[2] and the Future Claimants' Representative (the "FCR" and, collectively with the UMAHC, the Debtors, the AHCLC, and the Coalition, the "Parties").[3] The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by this Agreement. This Agreement sets forth the entire agreement between the Parties as to its subject matter and shall be deemed effective and shall constitute the legal, valid, and binding obligation of each of the Parties upon the occurrence of the Effective Date.

WHEREAS, on December 18, 2021, the Debtors filed their Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832] (as it may subsequently be amended from time to time, the "Plan" or "Amended Plan");

WHEREAS, on December 21, 2021, the Parties executed the Settlement Term Sheet attached hereto as Exhibit A; and

WHEREAS, the Parties, having previously negotiated and entered into the Settlement Term Sheet, intend to execute this addendum to amend and supplement the Settlement Term Sheet.

In addition to all of the definitions, terms, and conditions contained in the Agreement, the Parties hereby agree as follows:

1. **Definitive Agreement.** The Agreement shall (i) constitute the definitive written settlement agreement between the Parties and (ii) be binding on the Parties, subject to Bankruptcy Court approval, when the last of the Parties has executed this addendum.

2. **Termination Event by Any Party.** Any of the Parties may terminate the Agreement if: (a) the entry by the Bankruptcy Court or District Court of a Final Order denying approval of this Agreement or the United Methodist Treatment or (b) the entry by the Bankruptcy

---

[1] The Parties recognize that The United Methodist Church is a connectional denomination and consistent with The United Methodist Church's *Book of Discipline*, neither the UMAHC nor any specific United Methodist Entity, other than the General Conference, may speak on behalf of The United Methodist Church. Accordingly, the UMAHC does not have the power to bind The United Methodist Church or any of its denominational units, including United Methodist Entities. For purposes of the United Methodist Treatment, the UMAHC, in connection with other offices within The United Methodist Church, shall use best efforts to persuade United Methodist Entities to commit to the terms of the Agreement including to commit to contribute to the United Methodist Settlement Amount.

[2] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Addendum.

[3] Notwithstanding anything to the contrary in the Agreement, the obligations and undertakings of the AHCLC in connection with the Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

FCRA00819

Court, before the Plan Effective Date, of a Final Order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code or dismissing the Bankruptcy Case.

3. **Termination Event by the UMAHC**. The UMAHC may terminate the Agreement if: (a) (a) any Party breaches its obligations to the UMAHC under the Agreement in any material respect; (b) the Debtors do not seek confirmation of the Plan that is consistent with the United Methodist Treatment set forth in the Agreement, or to have the Effective Date of such Plan occur; (c) the Bankruptcy Court confirms a plan of reorganization, enters a confirmation order, or there is an Affirmation Order that is inconsistent with the United Methodist Treatment set forth in the Agreement; or (d) the Debtors do not take all reasonable actions to defend confirmation of the Plan and the United Methodist Treatment against any appeals or other challenges; *provided* that such breach or failure remains uncured (to the extent curable) for a period of fifteen (15) business days following the applicable Party's receipt of notice thereof served in accordance with the Agreement; (b) the FCR exercises a Fiduciary Out; or (c) the Debtors, Coalition, or FCR terminates the Agreement in accordance with Section 4 below.

4. **Termination Event by the Debtors, the Coalition and the FCR**. Subject to the provisions of Section 6, the Debtors, the Coalition, or the FCR may terminate the Agreement if the UMAHC breaches its obligations to the Debtors, Coalition, or FCR, respectively, under the Agreement in any material respect and such breach remains uncured (to the extent curable) for fifteen (15) business days following the Party's receipt of notice thereof.

5. **Fiduciary Out by the Debtors and FCR**. Notwithstanding anything else in the Agreement to the contrary, no term or condition of the Agreement shall require the Debtors or the FCR to take or refrain from taking any action that it or they determine in good faith would be inconsistent with its or their respective fiduciary duties under applicable law (the right to take or refrain from taking any such action; <u>provided</u>, that if the FCR exercises its fiduciary right to terminate the Agreement, such termination shall be with respect to the FCR only and not otherwise affect the Agreement or the other Parties' rights and obligations thereunder and <u>provided</u>, <u>further</u> that if the Debtors exercise their fiduciary right to terminate the Agreement, the Agreement shall terminate automatically.

6. **Effect of Termination or Failure of Conditions to Occur**. In the event of any termination of the Agreement in accordance with Sections 2, 3, 4, or 5, each of the Parties (other than the remaining Parties to the Agreement, if any), shall, to the fullest extent possible, be restored to the position it was in (and shall have all the rights it had) before entering into the Agreement, including with respect to return of payments into the United Methodist Escrow Account to the United Methodist Entities in accordance with the Agreement, and shall be released from any prospective commitments, undertakings, and agreements under or related to the Agreement, other than obligations under the Agreement that by their terms expressly survive termination; *provided, however,* that termination of the Agreement shall not relieve any Party of any liability on account of any material breach hereof except that the United Methodist Entities are not financially liable to any Party as a result of termination of the Agreement.

2

7. **Amendment to Remove Fundraising Recommendation**. The Parties acknowledge and agree that the UMAHC is no longer committing to recommend the fundraising efforts more particularly described in Section 2.h of the Settlement Term Sheet and Section 2.h of the Settlement Term Sheet is hereby stricken and not a part of the Agreement.

8. **Authority**. The persons signing this addendum on behalf of the UMAHC represent that they have authority to enter into this addendum on behalf of the UMAHC.

9. **Voting**. As long as the United Methodist Entities are included as Protected Parties in the Plan, and the Plan is otherwise consistent with the terms of the Agreement and the United Methodist Treatment set forth in the Agreement, the UMAHC shall recommend to the United Methodist Entities that they (a) change the votes on their Class 9 – Indirect Abuse Claims and any other Claims held by them or their affiliates to accept the Plan and not otherwise change or revoke their votes and (b) not "opt out" of the third-party releases contained in the Plan.

10. **Governing Law**. The Agreement shall be governed by Delaware law.

11. **Construction of Agreement.** The Parties represent and acknowledge that they have participated in the preparation and drafting of the Agreement and have each given their approval to all of the language contained in the Agreement, and it is expressly agreed and acknowledged that if any of the Parties later asserts that there is an ambiguity in the language of the Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party on the basis that one Party drafted the language of the Agreement or played a greater role in the drafting of the language.

[Remainder of page intentionally left blank]

FCRA00821

*EXECUTION VERSION*

IN WITNESS WHEREOF, the Parties have duly executed the Agreement as of the last date indicated below.

**The United Methodist Ad Hoc Committee**     **BSA (as defined)**

By: _____     By: _____

Name: George K. Anding, Jr.        Name: _____

Title: Chairperson                 Title: _____

Date: 2-14-2022                    Date: _____

4

**FCRA00822**

IN WITNESS WHEREOF, the Parties have duly executed the Agreement as of the last date indicated below.

**The United Methodist Ad Hoc Committee**     **BSA (as defined)**

By: _____     By: _____

Name: _____     Name: Roger C. Mosby

Title: _____     Title: President and CEO

Date: _____     Date: February 14, 2022

4

FCRA00823

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement.

By: _____, Counsel to the FCR

Dated: 2/15/22

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Agreement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Agreement.

By: _____

Dated: _____

FCRA00824

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Agreement.

By: _Eri Goodman_

Dated: _2-14-2022_

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Agreement.

By: _____

Dated: _____

**FCRA00825**

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Agreement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Agreement.

By: _____

Dated: _____

FCRA00826

## Schedule 1
## State Court Counsel

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway, Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St., Ste. 900 Houston, TX 77056 | 1026 |

FCRA00827

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com) 909 Texas St., Ste. 1801 Houston, TX 770022 | 690 |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East, Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW, Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd., Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St., Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane | 64 |

FCRA00828

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Dallas, TX 75205 | |
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. Houma, LA 70364 | 471 |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave., 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff, NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St., Ste. 950 New York, NY 10165 | 5893 |

FCRA00829

**Exhibit A**

**THIS TERM SHEET DOES NOT PURPORT TO SUMMARIZE ALL OF THE TERMS, CONDITIONS, AND OTHER PROVISIONS WITH RESPECT TO THE SETTLEMENT DESCRIBED HEREIN, WHICH SHALL BE SUBJECT TO THE COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN. NOTHING CONTAINED IN THIS TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY AND NO BINDING OBLIGATIONS WILL BE CREATED BY THIS TERM SHEET UNLESS AND UNTIL BINDING DEFINITIVE DOCUMENTS ARE EXECUTED AND DELIVERED BY ALL APPLICABLE PARTIES AND THE EFFECTIVE DATE OF THE AMENDED PLAN HAS OCCURRED. THIS TERM SHEET IS SUBJECT IN ALL RESPECTS TO MEDIATION PRIVILEGE, FEDERAL RULE OF EVIDENCE 408, AND ANY STATE LAW EQUIVALENTS.**

**Settlement Term Sheet**

The United Methodist Ad Hoc Committee ("UMAHC"),[1] Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (collectively, "BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"), the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[2] and the Future Claimants' Representative (the "FCR" and, collectively with the UMAHC, Settling Insurers, the Debtors, the AHCLC,[3] and the Coalition, the "Parties") agree to the terms of treatment of Abuse Claims[4] against the United Methodist Entities in connection with the Chapter 11 Cases of the Debtors and the resolution of certain related disputes and other associated matters (the "United Methodist Treatment") as set forth herein, and as provided for in the terms and conditions of the Century Term Sheet,[5] as applicable. The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by the Agreement (as defined below). The Parties will prepare a definitive written settlement agreement consistent with this Term Sheet that will include additional material terms (the "Agreement") which Agreement will be appended to and included in the Second Modified Fifth Amended Chapter 11 Plan of

---

[1] The Parties recognize that The United Methodist Church is a connectional denomination and consistent with The United Methodist Church's *Book of Discipline*, neither the UMAHC nor any specific United Methodist Entity, other than the General Conference, may speak on behalf of The United Methodist Church. Accordingly, the UMAHC does not have the power to bind The United Methodist Church or any of its denominational units, including United Methodist Entities. For purposes of the United Methodist Treatment, the UMAHC, in connection with other offices within The United Methodist Church, shall use best efforts to persuade United Methodist Entities to commit to the terms of this Term Sheet including to commit to contribute to the United Methodist Settlement Amount.

[2] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

[3] Notwithstanding anything to the contrary in this Term Sheet the obligations and undertakings of the AHCLC in connection with this Term Sheet shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

[4] The term "Abuse Claims" is defined in the Amended Plan.

[5] Reference is made to the settlement term sheet the Debtors, the Ad Hoc Committee of Local Councils, the Future Claimants' Representative, the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee, and the Settling Insurers (as defined in the Century Term Sheet), executed on or about December 12, 2021 (the "Century Term Sheet").

FCRA00830

Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832] (the "Amended Plan"), which Agreement and Amended Plan shall be fully consistent with this Agreement and otherwise in form and substance reasonably acceptable to the Parties.  Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Amended Plan, as the same may be amended, modified, or supplemented from time to time in accordance with section 1127 of the Bankruptcy Code, as applicable.[6]

1.  The term "United Methodist Entities" shall mean each and every (i) United Methodist local church, federated, or union church, including any Federated Church or Union Church that includes a historically United Methodist Church congregation, that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, regardless of whether such local, union, or federated church is or was a Chartered Organization at any time; (ii) church currently federated or yoked, and which current federated or yoked church includes a current or former United Methodist Church congregation that sponsored, promoted, hosted, or provided any support in connection with Scouting activities; (iii) other United Methodist related or affiliated organizations that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, including any social service organization, ministry, camping ministry, camp facility, camp, retreat, or other facilities in the nature of a camp or retreat; (iv) any camp, retreat, or other facility in the nature of a camp or retreat that is not United Methodist related or affiliated, but otherwise promoted, hosted, or provided any support in connection with Scouting Activities for an entity described in (i), (ii) or (iii); (v) all organizations affiliated or related to (i) (ii),  (iii) or (iv), including, but not limited to, the UMAHC, each district, annual conference, and jurisdictional conference of The United Methodist Church, the general, annual conference, district, and local church agencies of The United Methodist Church, the Council of Bishops of The United Methodist Church, and the non-jural bodies commonly referred to as "The United Methodist Church," the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing.  However, no Perpetrator is or shall be a United Methodist Entity.

2.  The Amended Plan will provide for the channeling of Abuse Claims against the United Methodist Entities to the Settlement Trust. The United Methodist Entities shall be treated as Contributing Chartered Organizations and Protected Parties under the Amended Plan, provided that they shall be deemed to have made contributions and releases required of Participating Chartered Organizations as set forth in the Amended Plan.  In consideration of such treatment and the channeling of Abuse Claims against the United Methodist Entities under the Amended Plan, the UMAHC will:

   a.  will, or will recommend, to the United Methodist Entities that they, as applicable:

       i.  Collectively contribute $30 million in Cash (the "United Methodist Settlement Amount"), free and clear of any liens, claims, interests, or rights of any kind to the

---

[6] The *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (the "Plan" and as amended to include the United Methodist Treatment, the "Amended Plan") shall incorporate the United Methodist Treatment.

2

Settlement Trust on the terms set forth herein;

ii. Consent to the waiver and release of any claim against the Settling Insurance Companies for any portion of the United Methodist Settlement Amount to be paid to the Settlement Trust;

iii. Consent to the waiver, release, and expungement of any claims or causes of action against the Debtors filed by any United Methodist Entity;

iv. Act in accordance with Section 8 of this Term Sheet;

v. Consent to make a contribution to the Settlement Trust in form and substance equivalent to the Participating Chartered Organization Settlement Contribution (as such term is defined in the Amended Plan));

vi. vote to accept the Amended Plan (including changing any votes that have been cast); and

vii. cooperate with Youth Protections efforts, including, but not limited to:
   1. recommend participation as a member of the Survivors Working Group which currently includes Survivors, and representatives of the BSA and AHCLC;
   2. recommend and encourage that all United Methodist U.S. Congregations and Entities involved with youth programming review and follow all safe sanctuary/ministry safe policies and procedures and consider all recommendations from the Survivors Working Group regarding best practices for youth protection;
   3. recommend and encourage that all United Methodist Entities take any and all actions, with input from the Survivors Working Group to be necessary for enhancement of youth protection at United Methodist Entities engaged in Scouting;
   4. recommend and encourage that United Methodist News Service and U.S. Annual Conferences publish a series of articles about the BSA bankruptcy and the sexual abuse of young people in denominational resources (including on-line and in print), so as to reach the broadest possible audience among all U.S. United Methodist Entities;
   5. recommend and encourage all United Methodist Entities to provide each survivor who was a part of a United Methodist chartered Boy Scout Troop or Cub Pack to share their experience and suggestions and recommendations for the church with a United Methodist Leader. Leaders will be trained to listen, receive the survivors' experience and suggestions and recommendations for the church. These suggestions and recommendations will be shared with the United Methodist BSA

3

bankruptcy leadership team to review for incorporation in United Methodist practices and procedures to make Scouting and other ministries safe for young people; and

      6.  lead Annual Conferences in reviews of their and local church's child safety policies and update as appropriate.

b. Support the approval of the United Methodist Treatment and the making of findings of fact and conclusions of law reasonably necessary to achieve the United Methodist Treatment;

c. Withdraw all discovery served in connection with the Plan or Amended Plan;

d. Not object to the confirmation of the Amended Plan and the approval of the Plan Documents, including the making of all findings of fact and conclusions of law reasonably necessary to achieve the United Methodist Treatment;

e. Recommend to The Council of Bishops that it withdraw its letter concerning BSA;

f. Withdraw the expert report submitted in the chapter 11 cases on December 17, 2021, as to the United Methodist Entities;

g. Recommend that the General Commission on United Methodist Men (GCUMM) continue to: work with the BSA and the Local Councils to improve scouting, particularly in the area of scout safety, and grow scouting ministry; carry out its duties relating to scouting ministries as mandated by The United Methodist Book of Discipline and Book of Resolutions; and propose legislation and resolutions to the General Conference at least through the year 2036 to strengthen and grow partnerships through scouting ministries. Because of United Methodist polity, nothing in this statement shall bind a conference or local church; and

h. Recommend that the United Methodist BSA leadership team agree to lead in collaboration with the BSA and AHCLC a fundraising effort with a goal to raise an additional $100 million for the Settlement Trust from other Chartered Organizations (with any such fundraising to reduce the Settlement Growth Payment Cap (defined in the Century Term Sheet) dollar for dollar), provided that any failure to reach the $100 million goal shall not result in the denial of the benefits of the United Methodist Treatment, including the channeling injunctions and releases in the Plan and as set forth herein, for the benefit of all United Methodist Entities.

3. **Payment of the United Methodist Settlement Amount to Escrow Accounts for the Benefit of the Settlement Trust**. The UMAHC shall recommend that the United Methodist Entities pay the United Methodist Settlement Amount into an escrow account (the "United Methodist Escrow Account") to be administered by an independent escrow agent acceptable to the

FCRA00833

UMAHC and the Settlement Trust. Within 180 days of the Effective Date of the Amended Plan, and such Amended Plan and Confirmation Order is not stayed or otherwise subject to an injunction, at least $2 million (the "Initial Methodist Payment") shall be deposited into the United Methodist Escrow Account. The Initial Methodist Payment shall be fully refunded to the United Methodist Entities that paid such amounts if the Confirmation Order is overturned on appeal, or if the United Methodist Settlement Amount is otherwise refunded pursuant to the terms of this Term Sheet. On or before the third anniversary of the Effective Date, the United Methodist Entities, or other individuals or organizations on their behalf, shall make payments to the United Methodist Escrow Account so that the total amount of $27.5 million is paid to the Escrow Accounts for payment to the Settlement Trust. A total of $2.5 million of the United Methodist Settlement Amount shall be reserved and not paid to the United Methodist Escrow Account, but shall be available for any United Methodist Entity's legal fees, costs, and expenses associated with defending the post-confirmation interim injunction, the Channeling Injunction in connection with any Abuse Claim brought against a United Methodist Entity in violation of the terms of the Amended Plan and the Channeling Injunction provided therein (the "Reserved Amount"),[7] provided further that any portion of the Reserved Amount, to the extent not depleted by the date that is the six (6) year anniversary of the Effective Date of the Plan, shall be paid to the United Methodist Escrow Account and released to the Settlement Trust if the $27.5 million in funds has been released to the Settlement Trust as set forth herein. The Settlement Trust will be provided a semi-annual accounting of any distributions from the Reserved Amount. All income earned on any escrowed funds in the United Methodist Escrow Account minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the United Methodist Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the United Methodist Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the United Methodist Escrow Account until $27.5 million has been paid into the United Methodist Escrow Account and the Confirmation Order has become a Final Order (as defined in the Amended Plan), at which time the $27.5 million plus Net Income shall be released to the Settlement Trust; provided, however, that, at its election, the UMAHC may authorize the payment of the United Methodist Settlement Payment directly to the Settlement Trust on the Effective Date or may authorize the release of the United Methodist Settlement Payment from the United Methodist Escrow Account to the Settlement Trust at any time thereafter before the Confirmation Order becomes a Final Order. The Settlement Trust will have investment discretion with respect to the Methodist Settlement Payment while it is in the United Methodist Escrow Account, subject to the UMAHC or its Successor's reasonable approval of the investment protocol under which contributions to the United Methodist Settlement Amount may be invested by the Settlement Trust. No loss or failure to achieve desired investment returns on the United Methodist Settlement Amount in the United Methodist Escrow Account shall require the United Methodist Entities to increase the portion of the United Methodist Settlement Amount they are paying; provided further, however, that the Debtors, Reorganized BSA, the Local Councils and the Chartered

---

[7] For the avoidance of doubt, in no circumstances shall the Reserve Amount be used to pay any legal fees, costs, and expenses associated with defending the merits of any Abuse Claim. Nor shall the Settlement Trust be required to indemnify the United Methodists Entities for any legal fees, costs, and expenses associated with defending the merits of any Abuse Claim or any loss arising from such Abuse Claim. The Reserve Amount shall only be used to enforce and defend the post-confirmation interim injunction and the Channeling Injunction.

FCRA00834

Organizations shall have no liability or obligations to the United Methodist Entities, or the Settlement Trust, and the Settlement Trust shall have no liability or obligations to the United Methodist Entities, whatsoever for any loss or failure to achieve desired investment returns on the payments towards the United Methodist Settlement Amount while they are in the United Methodist Escrow Account. If the United Methodist Release Effective Date fails to occur for any reason, including without limitation because the United Methodist Entities fail to contribute the full amount of the United Methodist Settlement Payment (less the Reserved Amount as set forth herein) to the Settlement Trust or the United Methodist Escrow Account on or before the date that is the three (3) year anniversary of the Effective Date of the Plan, such that the United Methodist Entities are not Protected Parties, then any amounts held in the United Methodist Escrow Account or the Settlement Trust shall be returned to the United Methodists Entities that paid the monies into the United Methodist Escrow Account or the Settlement Trust. Should the Confirmation Order or Affirmation Order be overturned on appeal then any amounts held in the United Methodist Escrow Account or the Settlement Trust shall be returned to the United Methodists Entities that paid the monies into the United Methodist Escrow Account or the Settlement Trust. Should the Settling Insurers demand the return of their Settlement Payment, including without limitation as set forth in Sections 4 or 32 of the Century Term Sheet, and if such payments are returned to the Settling Insurers, then any payments towards the United Methodist Settlement Amount shall also be promptly released and returned to the United Methodist Entities that made any contribution to the United Methodist Settlement Amount in the amount of such contribution.

4. **Effective Date for Release and Channeling Injunction Protections With Respect To United Methodist Entities.** The releases for the benefit of the United Methodist Entities associated with being treated as Contributing Chartered Organizations and the benefits of the Channeling Injunction and any and all related releases under the Plan (not including the releases and protections provided to Participating Chartered Organizations) shall not be effective unless and until (i) the Effective Date of the Plan has occurred, and (ii) the full amount of the United Methodist Settlement Payment (less any payments from the Reserved Amount) has been paid or released to the Settlement Trust (whether from the United Methodist Escrow Account or otherwise) as provided herein (the "United Methodist Release Effective Date"). However, if (x) the Initial Methodist Payment is not timely paid as set forth herein, (y) $27.5 million is not contributed to the Escrow Account on or before the date that is the three (3) year anniversary of the Effective Date of the Plan, or (z) the Reserve Amount remaining after the payment of any United Methodist Entity's legal fees, costs, and expenses as set forth herein is not deposited in the United Methodist Escrow Account by the date that is six (6) years after the Effective Date, then the United Methodist Entities shall not be treated as Protected Parties as a result of this Term Sheet or the Agreement and the settlements set forth herein (the "United Methodist Release Termination Date"). The Settlement Trust shall give written notice of the occurrence of any termination event to the designated representative of the United Methodist Entities and ten (10) days to cure. The occurrence of the United Methodist Release Termination Date shall not deprive any United Methodist Entities of the benefits of being Participating Chartered Organizations under the Amended Plan; provided that they shall remain deemed to have given the Participating Chartered Organization Settlement Contribution under the Amended Plan. In particular, as a result of the United Methodist Entities providing the Participating Chartered Organization Settlement Contribution (as such

FCRA00835

term is defined in the Century Term Sheet), they shall have the benefit of all protections under the Amended Plan provided to Participating Chartered Organizations regardless of whether the United Methodist Settlement Payment is made or any failure to comply with any other terms of this Term Sheet or the Agreement.

5. **Post-Confirmation Interim Injunction**. The Plan and Confirmation Order shall provide that a post-confirmation interim injunction, as contemplated in Section 14 of the Century Term Sheet, shall remain in full force and effect for the benefit of the United Methodist Entities until the earlier to occur of (i) all Abuse Claims against the United Methodist Entities are subject to the Channeling Injunction or (ii) the United Methodist Release Termination Date.

6. **Releases**. The United Methodist Entities shall receive and give reciprocal releases, commensurate and consistent with those set forth in the Century Term Sheet. The Amended Plan will also include the releases in Article X.J.3 of the Amended Plan, the Amended Plan's Channeling Injunction provisions, and the terms of the Trust Distribution Procedures, each of which do not exclude gross negligence or willful misconduct. On the United Methodist Release Effective Date, (i) the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, other Protected Parties, Settling Insurance Companies, the FCR, the Coalition, the Settlement Trust, and all parties that accept the Plan, or do not accept the Plan and do not opt-out of releases, shall waive and release the United Methodist Entities from any and all Abuse Claims against the United Methodist Entities, and (ii) the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, other Protected Parties, Settling Insurance Companies, the FCR, the Coalition, and the Settlement Trust agree to not file or assert any Claim or Cause of Action against the United Methodist Entities from any act or omission of the United Methodist Entities on or prior to the Effective Date except in accordance with the Plan.

7. **United Methodist Entities to Enjoy Benefits of Protected Parties and Contributing Chartered Organizations**. Within two days of execution of this Term Sheet the UMAHC shall give the Debtors a list of the United Methodist Entities that shall be promptly added to the list of parties that may potentially become Contributing Chartered Organizations at https://omniagentsolutions.com/bsa-SAballotshttps://omniagentsolutions.com/bsa-SAballots (the "Potential Protected Party List"). As set forth herein, under the Amended Plan and Confirmation Order, and notwithstanding any contrary definitions or other provisions in the Amended Plan, the United Methodist Entities on the Potential Protected Party List and their Representatives[8] shall have the full benefit of (i) the Channeling Injunction, releases, and all other similar Plan protections to the same extent provided to any Protected Party, (ii) the post-confirmation interim injunction set forth in Section 14 of the Century Term Sheet for so long as is necessary to ensure that all Abuse Claims against any United Methodist Entities are stayed pending the occurrence of the date on which all such Abuse Claims are subject to the Channeling Injunction; and (iii) the right to seek coverage for claims under insurance policies issued directly by Settling Insurers as provided in Section 15 of the Century Term Sheet.

---

[8] The Parties believe that the term "Representatives" is broad and covers the United Methodist Entities and the Settlement Trust shall be prohibited from contending otherwise.

FCRA00836

8. **Century Term Sheet**. A prerequisite to the protections afforded to the United Methodists Entities is that UMAHC shall not object to the Century Term Sheet, the Century settlement, any provision thereof, or any additional settlements with Insurance Companies that include the same or similar terms or provisions, or take any action in support of any party that objects to the Century Term Sheet or the Amended Plan, the Century settlement, any provision thereof, or any additional settlements with Insurance Companies or other Chartered Organizations that include the same or similar terms or provisions. Any conflict between this Term Sheet and the Century Term Sheet shall be governed by the Century Term Sheet. Notwithstanding anything to the contrary herein, the UMAHC may object to any additional settlements with Insurance Companies or any other parties in interest that are contrary to the terms of this Term Sheet or any of the rights or benefits of the United Methodist Entities or Chartered Organizations set forth herein or in the Amended Plan.

9. **Fiduciary Out by the Debtors and FCR**. Notwithstanding anything else in this Term Sheet or the Century Term Sheet to the contrary, no term or condition of this Term Sheet shall require BSA or the FCR to take or refrain from taking any action that it determines would be inconsistent with its fiduciary duties under applicable law.

10. **Findings and Orders.** The Amended Plan and the Confirmation Order shall state that the Findings and Orders and Trust Distribution Procedures are not binding on the United Methodist Entities to the extent that the United Methodist Settlement Amount is released to the Trust, provided that the United Methodist Entities may rely on all such Findings and Orders. The Amended Plan and Confirmation Order shall further provide that the UMAHC's agreement to settle does not indicate the UMAHC's or United Methodist Entities' support for or acceptance of the Trust Distribution Procedures or any findings and orders made in connection with them in any proceeding, which procedures, findings and order shall not be applicable to the United Methodist Entities. Without limiting the generality of the foregoing, the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.p, Article IX.A.3.r, Article IX.A.3.s and Article IX.A.3.t of the Amended Plan shall not be binding on the United Methodist Entities to the extent that the transactions contemplated in the Agreement, including the release of the United Methodist Settlement Amount to the Trust, are fully consummated. The UMAHC's agreement herein to recommend that the United Methodist Entities not object to entry of such findings and determinations in the Confirmation Order does not indicate the UMAHC's or any United Methodist Entity's support for such findings and determinations, and no party shall argue that any United Methodist Entity agreed to or acquiesced in such findings and determinations in any proceeding. Rather, the United Methodist Entities are designated as a Contributing Chartered Organizations and Protected Parties under the Amended Plan, and as a result, the UMAHC and United Methodist Entities take no position on such findings and determinations or on the Trust Distribution Procedures. The Confirmation Order and all other orders issued by any appellate court that exercises jurisdiction over such orders, if any, shall approve the terms and provisions of this Term Sheet and the Agreement. Notwithstanding anything to the contrary herein, nothing will require the UMAHC or any United Methodist Entity to take any position that would impair their ability to pursue objections to any plan in the event that this Term Sheet or the Agreement is terminated. Subject to the foregoing, the UMAHC and the Debtors will (i) take reasonable positions in court supporting the settlement provided herein and the Amended Plan provisions that effectuate the Term Sheet and the

FCRA00837

Agreement; (ii) take reasonable positions in court supporting approval of such terms through the Confirmation Order and (iii) will not assist any party in its opposition to the foregoing.

11. **Trust Distribution Procedures**.  Subject to modification in a manner not inconsistent with the Term Sheet and the Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the Amended Plan, provided that the United Methodist Entities shall be included as a releasee in any form of release attached to the Trust Distribution Procedures to the broadest extent that BSA, any Local Council or any other Protected Parties are released, which release shall be consistent with this Term Sheet and the Agreement.  The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Claims related to, arising from or in connection with Abuse Claims who receive payment from the Trust to release any Claim related to, arising from or in connection with Abuse Claims against the United Methodist Entities.  The UMAHC shall not object to the Trust Distribution Procedures but may add a statement in the Amended Plan that the United Methodist Entities are Contributing Chartered Organizations and, as a result, take no position on the Trust Distribution Procedures.  The UMAHC shall not object to the selection of the Settlement Trustee.  The UMAHC shall not participate in or otherwise interfere with the administration of the Trust.

12. **Consent Rights; Conditions to Term Sheet and Agreement**.  The UMAHC will have good faith consent rights with respect to any modifications to the Amended Plan, the Settlement Trust Documents, and the Confirmation Order relating to the Channeling Injunction, releases by holders of Abuse Claims, and related definitional terms including, for the avoidance of doubt, "Abuse," "Abuse Claim," "Abuse Insurance Policy," "Chartered Organization," "Contributing Chartered Organizations," "Non-Abuse Insurance Policy," and "Protected Parties," but only to the extent that such modifications would adversely affect the United Methodist Entities.  The UMAHC's obligations under this Term Sheet are expressly conditioned upon the Amended Plan, as it may be amended by the Court or the Debtors, being confirmed and including the definition of "Abuse Claim" as currently set forth in the Amended Plan.

13. **Plan Support**.  So long as the United Methodist Entities, are included as Protected Parties, receive the benefits of the injunctions and releases described above and in the Century Term Sheet, and the Plan is otherwise consistent with the terms of this Term Sheet, the UMAHC will recommend to the United Methodist Entities that they should vote in favor of the Amended Plan  and not object to the confirmation of the Plan and the approval of the Plan Documents, including the making of all findings of fact and conclusions of law reasonably necessary to achieve the United Methodist Treatment.  The parties acknowledge and agree that the UMAHC does not control any United Methodist Entities, and an objection to the Plan by a party that may fit within the definition of United Methodist Entity shall not be deemed a breach or default under this Term Sheet and shall not impair the rights of any United Methodist Entities to the United Methodist Treatment provided herein; provided however, that the UMAHC shall work in good faith with the Debtors to encourage any such objecting party to immediately withdraw any objection to the Amended Plan or Plan Documents; provided further however, to the extent such objection is not withdrawn, such Entity shall receive the treatment under the Plan for Opt-Out Chartered Organizations.  In consideration of the compromises and settlements set forth

FCRA00838

herein, the parties to the Century Term Sheet will (i) support all United Methodist Entities becoming Protected Parties subject to the protection of the Channeling Injunction and the beneficiaries of all releases benefitting Contributing Chartered Organizations under the Amended Plan, (ii) support the Amended Plan and any modifications thereto as described herein, (iii) recommend to all holders of Abuse Claims entitled to vote on the Plan to vote to accept the Amended Plan as amended in accordance with this Term Sheet (provided, however, the AHCLC shall not be required to make any recommendations to holders of Claims, and shall not be bound by this subsection), and (iv) will recommend to all holders of Abuse Claims entitled to vote on the Plan to support the releases in favor of (x) Chartered Organizations, as set forth in the Amended Plan; and (y) all United Methodist Entities as defined herein.

14. **Definitive Documents**.  The Plan, the Confirmation Order, the Affirmation Order, the Plan Documents, the Plan Supplement, any motions or pleadings filed by the Debtors in the Chapter 11 Cases seeking approval or confirmation of the foregoing, and any exhibits, appendices, schedules, supplements, or additional documents contemplated by the foregoing (the "Definitive Documents") shall be consistent in all respects with this Term Sheet, and the provisions regarding implementation of the United Methodist Settlement in the Definitive Documents shall be in form and substance reasonably acceptable to the Parties.

15. **Public Statements**.  Parties to cooperate with each other to coordinate on timing and substance of public statements of settlement, including press releases, court filings and in-court statements.

16. **Authority**.  The persons signing this Term Sheet on behalf of the UMAHC represent that they have authority to enter into this Term Sheet on behalf of the UMAHC.  Each State Court Counsel represents and warrants to the Parties that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

17. **Counterpart Execution**.  This Term Sheet may be executed in one or more counter parts that, when exchanged and complied by email or other means shall constitute one single, effective summary of the parties' agreements.

*[Signature Pages Follow]*

FCRA00839

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**The United Methodist Ad Hoc Committee**     **BSA (as defined)**

By: _____             By: _____

Name: (George K. Anding, Jr.              Name: _____

Title: Chairperson                         Title: _____

Date: 12-20-2021                           Date: _____

*[Signature Page to Term Sheet]*

12

**FCRA00840**

18 = 184868-0904-5767.14880-0754-5863.34868-0904-5767.1

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**The United Methodist Ad Hoc Committee**      **BSA (as defined)**

By: _____                By: _____

Name: _____              Name: _Roger C. Mosby_

Title: _____             Title: _President & CEO_

Date: _____              Date: _12-20-2021_

Case 1:22-cv-01237-RGA Document 4-13 Filed 07/21/22 Page 317 of 327 PageID #: 8684

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _12/20/21_

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

*[Signature Page to Term Sheet]*

FCRA00842

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____
    David J. Molton

Dated: __December 21, 2021__

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

*[Signature Page to Term Sheet]*

FCRA00843

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____ *, its chair*

Dated: _____ 12/20/21 _____

*[Signature Page to Term Sheet]*

12

EXECUTION COPY

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

**Slater Slater & Schulman LLP**

By: /s/ _Keneth M. Rothweiler_

By: /s/ _____

Name: _Keneth M. Rothweiler_

Name: _____

Title: _Coalition member_

Title: _____

Date: _12/20/21_

Date: _____

**Andrews & Thornton**

**ASK LLP**

By: /s/ _____

By: /s/ _____

Name: _____

Name: _____

Title: _____

Title: _____

Date: _____

Date: _____

*[Signature Page to Term Sheet]*

13

FCRA00845

# STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

**Slater Slater & Schulman LLP**

By: _/s/_ _____

Name: _Alan P. Slater_

Title: _Partner_

Date: _12/20/21_

**Andrews & Thornton**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

**ASK LLP**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

*[Signature Page to Term Sheet]*

13

FCRA00846

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

**Slater Slater & Schulman LLP**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

**Andrews & Thornton**

By: _/s/_ _____

Name: Anne Andrews

Title: Managing Partner

Date: December 20, 2021

**ASK LLP**

By: _/s/_ _____

Name: _____

Title: _____

Date: _____

*[Signature Page to Term Sheet]*

13

FCRA00847

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: _/s/_

Name: _____

Title: _____

Date: _____

**Slater Slater & Schulman LLP**

By: _/s/_

Name: _____

Title: _____

Date: _____

**Andrews & Thornton**

By: _/s/_

Name: _____

Title: _____

Date: _____

**ASK LLP**

By: _/s/_

Name: Joseph L. Steinfeld, Jr.

Title: Managing Partner

Date: December 20, 2021

*[Signature Page to Term Sheet]*

13

## Schedule 1

## State Court Counsel

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway, Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |

FCRA00849

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St., Ste. 900 Houston, TX 77056 | 1026 |
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com) 909 Texas St., Ste. 1801 Houston, TX 770022 | 690 |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East, Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW, Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd., Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St., Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson | 175 |

FCRA00850

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| | (kevin@swensonshelley.com)<br>107 South 1470 East, Ste. 201<br>St. George, UT 84790 | |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen<br>(brookefcohenlaw@gmail.com)<br>Attn: Andrea Hirsch<br>(andrea@thehirschlawfirm.com)<br>4318 Glenwick Lane<br>Dallas, TX 75205 | 64 |
| Damon J. Baldone PLC | Attn: Damon J. Baldone<br>(damon@baldonelaw.com)<br>162 New Orleans Blvd.<br>Houma, LA 70364 | 471 |
| Cutter Law, P.C. | Attn: Brooks Cutter<br>(bcutter@cutterlaw.com)<br>4179 Piedmont Ave., 3rd Fl.<br>Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke<br>(rgp@pahlkelawgroup.com)<br>2425 Circle Dr., Ste. 200<br>Scottsbluff, NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter<br>(tporter@portermalouf.com)<br>825 Ridgewood Rd.<br>Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr.<br>(will@moodyrrlaw.com)<br>500 Crawford St., Ste. 200<br>Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson<br>(cstephenson@levinlaw.com)<br>316 South Baylen St. | 44 |

FCRA00851

EXECUTION COPY

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Pensacola, FL 32502 | |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli<br>(jcappelli@bernllp.com)<br>60 East 42nd St., Ste. 950<br>New York, NY 10165 | 5893 |

64322465 v2-WorkSiteUS-036293/0001

FCRA00852