# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| Boy Scouts of America and Delaware BSA, LLC,[1] | Bankruptcy Case No. 20-10343 (LSS) (Jointly Administered) |
|     Debtors. | |
| | Lead Case No. 22-cv-01237-RGA |
| National Union Fire Insurance Co. of Pittsburgh, PA, *et al.*, | Consolidated Case Nos. 22-cv-01238-RGA;  22-cv-01239-RGA;  22-cv-01240-RGA; 22-cv-01241-RGA; 22-cv-01242-RGA;  22-cv-01243-RGA; 22-cv-01244-RGA;  22-cv-01245-RGA;  22-cv-01246-RGA;  22-cv-01247-RGA; 22-cv-01249-RGA; 22-cv-01250-RGA;  22-cv-01251-RGA; 22-cv-01252-RGA;  22-cv-01258-RGA; 22-cv-01263-RGA |
|     Appellants. | |
|  v. | |
| Boy Scouts of America and Delaware BSA, LLC, *et al.*, | |
|     Appellees. | |

## BSA'S OPPOSITION TO THE CERTAIN INSURERS' MOTION TO SUPPLEMENT THE RECORD

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit

corporations that are appellees (together, the "Appellees" or "Debtors")[2] in the

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] References to the "BSA" herein shall be to Boy Scouts of America or to Boy Scouts of America and Delaware BSA, LLC jointly as the debtors and debtors in possession in the underlying chapter 11 cases (the "Chapter 11 Cases"), as the context requires.

above-captioned district court appeal, hereby file this opposition (the "<u>Opposition</u>")

to the *Motion of the Certain Insurers to Supplement the Record* [D.I. 123][3] (the

"<u>Motion</u>") filed by certain insurers (collectively, the "<u>Certain Insurers</u>").

## <u>PRELIMINARY STATEMENT</u>

1.      The Certain Insurers' Motion to supplement the appellate record with

materials that are not part of the trial record is frivolous. *One*, as a matter of law,

the Certain Insurers cannot challenge the bankruptcy court's findings of fact with

evidence that was not offered or considered by the bankruptcy court. *See infra* § A.1.

Moreover, contrary to the Certain Insurers' premise, the evidence at issue was

available long before the confirmation hearing, and either was not pursued in

discovery by the Certain Insurers, was pursued in discovery but not used at trial, or

was pursued in discovery and used at trial but failed to persuade the bankruptcy

court. *Id.* § A.2. Additionally, the material at issue is inadmissible hearsay.

*Id.* § A.3.

2.      *Two*, the evidence at issue does not support the Certain Insurers'

challenge to the bankruptcy court's findings of fact, which were based largely on

unrefuted evidence, including the contemporaneous record and the testimony of

---

[3]  References to "D.I." refer to filings in this appeal, references to "Bankr. D.I."
refer to filings in the bankruptcy court.

percipient witnesses.  Indeed, most of the materials at issue are completely irrelevant to the Certain Insurers' challenge to bankruptcy court's findings of fact.  *Id.* § B.

3.    *Three*, allowing the Certain Insurers to introduce incomplete and untested evidence that was not offered at trial would prejudice BSA and the other appellees, who would have introduced evidence refuting the Certain Insurers' mischaracterizations of the materials at issue, and would have designated other evidence for the appellate record.  *Id.* § C.

4.    *Four*, admitting evidence that was not part of the trial record, after briefing has been completed, would be unfair to appellees and not helpful to the Court.  The Certain Insurers should not be allowed to make arguments that were never in the record for the first time at oral argument.  *Id.* § D.

## **BACKGROUND**

5.    On July 29, 2022, the bankruptcy court issued an Opinion [D.I. 1-3] (the "Confirmation Opinion") concerning confirmation of the Debtors' Third Modified Fifth Amended Chapter 11 Plan of Reorganization.  The Debtors then made technical modifications to conform to the Confirmation Opinion and proposed the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) For Boy Scouts of America and Delaware BSA, LLC* [Bankr. D.I. 10296] (the "Plan").  On September 8, 2022, the bankruptcy court confirmed that Plan, entering the *Supplemental Findings of Fact and Conclusions of*

*Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 1-1] (the "<u>Confirmation Order</u>").

6.      On September 22, 2022, the Certain Insurers, claimants represented by Lujan & Wolff LLP, and claimants represented by Dumas & Vaughn LLC filed notices of appeal.[4]  On September 27, 2022 the Debtors, together with the Certain Insurers and other parties in interest, filed a joint motion for consolidation and to approve the stipulation regarding appeals [D.I. 3] (the "<u>Stipulation</u>") to establish procedures for the swift administration of the appeals.  The Stipulation required appellants to file their designation of the record within ten days following the last date on which an appellant filed its notice of appeal.  *See* D.I. 3, Ex. A.  The Debtors and additional appellees agreed to file counter-designations of the record on an expedited timeline within three days of the filing of the appellants' designation of the record.  *Id*.  On October 17, 2022, this Court entered an order granting the motion to approve the Stipulation (the "<u>Procedures Order</u>").  *See* D.I. 22.

7.      On October 3, 2022, pursuant to the Stipulation, the Certain Insurers filed their briefs and record designations (the "<u>Appellants' Designations</u>").  *See* D.I. 5.  On October 6, 2022, the Debtors designated additional items to be included in the

---

[4]   The appeals were procedurally consolidated on October 17, 2022.  *See* D.I. 22.

record on appeal (the "Appellees' Designations").  *See* D.I. 15.  On December 7, 2022, the Debtors filed the Debtors-Appellees' Consolidated Answering Brief (the "Debtors' Brief") based on the appellate record designated by the parties under the Stipulation and Procedures Order.  D.I. 66.

8.      On December 29, 2022, 112 days after the bankruptcy court entered the Confirmation Order, certain parties filed motions before the bankruptcy court seeking reimbursement of certain professional fees expended by certain advisors to Plan supporters representing, among others, approximately 75% of survivors based on their substantial contribution to the formulation of a Plan that was overwhelmingly accepted by a majority of creditors.  *See* Bankr. D.I. 10808 (the "Coalition Fee Request"); Bankr. D.I. 10809 (the "Pfau/Zalkin Fee Request"); Bankr. D.I. 10815 (the "RCAHC Fee Request" and, together with the Coalition Fee Request and the Pfau/Zalkin Fee Request, the "Fee Requests").

9.      The Confirmation Order explicitly contemplated the future filing of such Fee Requests, postponed the review and authorization of such requests to a separate hearing upon separate motion, and capped those reimbursements to the extent allowed in a subsequent order.  *See* Plan Art. V.T; Confirmation Order ¶ III.5. The Certain Insurers were given ample notice of the proposed timeline for these Fee Requests in an amended version of the Plan filed on February 15, 2022, well in advance of the confirmation hearing.  *See* Bankr. D.I. 8813, Art. V.T.  Neither the

5

Certain Insurers, nor any other party, objected to completing the confirmation trial prior to the filing and consideration of the Fee Requests, nor did any party indicate that the Fee Requests were necessary evidence for the record at trial or on appeal.

10.     On January 13, 2022, less than a month before oral argument is set to begin and well after briefing has concluded, the Certain Insurers filed this Motion to reopen the record on appeal to introduce more than three thousand pages of hearsay material that is not part of the trial record to challenge the bankruptcy court's findings of fact rejecting their baseless allegations that the Debtors did not propose the Plan in good faith. *See* Motion ¶ 7.

## ARGUMENT

### A.     The Certain Insurers May Not Include In The Appellate Record Material That Is Not Part Of The Trial Record

11.     The Certain Insurers argue they should be permitted to supplement the record to re-litigate good faith because the materials at issue were not available prior to the time for designating the record.  Regardless of whether the materials were previously available, they are not part of the trial record and, therefore, cannot be included in the appellate record.  Moreover, evidence of the matters that the Certain Insurers belatedly seek to introduce was available prior to the confirmation hearing, and either was not pursued in discovery by the Certain Insurers, was pursued in discovery but not used at trial, or was pursued in discovery and used at trial but failed

to persuade the bankruptcy court.  Additionally, the materials are hearsay and, therefore, would not have been admissible at trial.

      **1.    Evidence Outside Of The Trial Record Cannot Be Considered For The Merits Of The Appeal**

12.    None of the materials that are subject to the Certain Insurers' Motion were offered or introduced at trial.  It is beyond peradventure that a party cannot supplement an appellate record with material that is not part of the trial record.  *In re W.R. Grace & Co.*, No. 08-863, 2009 WL 636718, at *1–2 (D. Del. Mar. 11, 2009) ("[T]he Third Circuit has continued to refuse efforts to supplement an appellate record with material never presented at trial."); *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1165 (3d Cir. 1986) (holding that "[t]he only proper function of a court of appeals is to review the decision below on the basis of the record that was before the [lower] court."); *Falco v. Zimmer*, 767 F. App'x 288, 297 (3d Cir. 2019) ("We cannot consider material on appeal that is outside of the [] court record." (citations omitted)); *Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781, 784 n.4 (3d Cir. 1978) ("It is hornbook law that [the appellate] court generally cannot consider evidence which was not before the court below."); *Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 150 (3d Cir. 1973) ("Normally, the court [] will consider only the record and facts considered in the [lower] court."); *In re ATIF, Inc.*, No. 2:21-cv-050, 2022 WL 16552818, at *1 (M.D. Fla. Oct. 31, 2022) ("Rule 8009(e) should not

be used to present new evidence to the appellate court that the original court never considered." (internal quotations omitted)); *In re Salas*, No. 18-260, 2020 WL 32567, at *3 (D.D.C. Jan. 2, 2020) ("Rule 8009(e) is not meant to allow a party to supplement the record on appeal with new evidence that was not before the bankruptcy court."); *Robinson v. Sanctuary Record Grps., Ltd.*, 589 F. Supp. 2d 273, 275 (S.D.N.Y. 2008) (finding that documents not part of the official record when the court made a ruling  under review cannot be part of the record on the appeal); *In re Prudential Lines, Inc.*, No. 93-CIV-1481, 1994 WL 142017, at *2 (S.D.N.Y. Apr. 20, 1994) ("[The Court may] not consider on this appeal materials not before the bankruptcy judge at the time the challenged decisions were made.") (collecting cases).

13.    In denying a motion to supplement the appellate record, this Court has identified the "exceptional circumstances" that are required to supplement a record on appeal, and they do not include challenging a disputed issue.[5]  *In re WL Homes LLC*, 476 B.R. 830, 837 n.1 (D. Del. 2012) (exceptional circumstances include whether the materials "would establish beyond any doubt the proper resolution of the pending issue," whether remand would be contrary to the interest of justice and

---

[5]    For instance, courts may supplement a record where the material impacts whether the appeal is still valid.  *See, e.g.*, *Landy*, 486 F.2d at 151–52 (taking judicial notice of a party's complaint filed subsequent to an appeal to the extent it mooted certain issues subject to appeal).

the efficient use of the judicial resources, and whether the appeal is a habeas corpus action).

14.     The Certain Insurers do not cite or otherwise address the established blackletter law; nor do they cite any authority allowing a party to supplement an appellate record with materials that are not part of the trial record to challenge a trial court's findings of fact.  The Certain Insurers cite *Patel v. Hughes*, but that court, on its own initiative, took judicial notice of pleadings that established the finality of the bankruptcy case because it was "unclear if [the] matters [were] made a part of the record" due to the parties' failure to describe or index any documents.  2022 WL 3010526, at *1 n.2, n.4 (M.D. Tenn. July 28, 2022).  The court did not include material outside the motion record, much less to challenge a court's findings of fact.

15.     Otherwise, the Certain Insurers cite only *In re Indian Palms Associates*, but this case just confirms that the Certain Insurers cannot supplement the appellate record with material that was not part of the trial record in order to challenge the bankruptcy court's factual findings.  61 F.3d 197, 203–05 (3d Cir. 1995) (finding that the district court did not abuse its discretion in refusing to strike material timely included in the appellate record "for the sole purpose of determining whether [appellant] had waived an argument it sought to make in its motion for reconsideration").  The court in *In re Indian Palms* explicitly explained that material outside the trial record could not be admitted on the appeal to the extent it related to

the merits of the case, as the Certain Insurers seek to do here: "It is understood, for example, that the facts relating to the merits of the case will be decided on the basis of the evidence admitted into the *trial* record."  *Id.* at 205 (emphasis in original) (citation omitted).

16.    The Certain Insurers selectively quote "that the filing of documents in the case record provides competent evidence of certain facts—that…admissions were made" (Motion ¶ 16), but omit that the court explicitly stated that new evidence could not be added that related to the merits of the dispute, affirming the district court's decision "because the documents are not being used to determine disputed facts relating to the merits of the case and their use thus does not impose on a party's ability to meet the evidence against it."  *Indian Palms,* 61 F.3d at 205.

17.    The Certain Insurers' request that this Court take judicial notice of every statement made in more than three thousand pages of the Fee Requests, and also future submissions not even in existence, is deficient for the same reason.  *See* Motion ¶ 7.  Regardless of how authenticated, the Certain Insurers cannot include in the appellate record evidence that was not part of the trial record "relating to the merits to the case," such as a challenge to the bankruptcy court's findings of fact.  In short, judicial notice is a mechanism for timely introducing material in connection with the trial or other proceeding, not a mechanism for including in the appellate record materials that are outside the trial record.

10

18.     Additionally, the Fee Requests are not eligible for judicial notice. "Judicially noticed facts must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *In re W.R. Grace & Co.*, 2009 WL 636718, at *1.  The accuracy of each statement in the Fee Requests, particularly as incorrectly described and argued by the Certain Insurers, cannot be determined by resorting to sources whose accuracy cannot reasonably be questioned.  Indeed, if these matters were part of the trial record, they would have been subject to questioning and other evidence to ensure that they could not be misused to challenge the competent and irrefutable evidence of the trial witnesses and the contemporaneous record.

### 2.     The Evidence At Issue Was Available Prior To The Confirmation Trial

19.     Although the availability of the evidence is irrelevant, because nothing outside the trial record that relates to the merits of the appeal can be considered, the Certain Insurers' argument that the information at issue was not available before the Fee Requests were filed is incorrect.  *See* Motion ¶ 11.  Although some of the materials included in the Fee Requests themselves were not available prior to the confirmation trial, the events covered in the Fee Requests took place long before the confirmation trial and were available, and indeed known, to the Certain Insurers.

11

20.    The bankruptcy court afforded the Certain Insurers broad discovery, even allowing them to invade mediation privilege to pursue evidence of bad faith (*see* D.I. 1-3 at 213), and the Certain Insurers took substantial discovery about the matters raised in this Motion, including depositions of the very people that submitted declarations in the Fee Requests.   *See* Bankr. D.I 8858 (Certain Insurers' confirmation objection citing Kenneth Rothweiler Jan. 30, 2022 Deposition Transcript, Adam Slater Feb. 2, 2022 Deposition Transcript, Anne Andrews Dec. 21, 2021 Deposition Transcript, and James Patton Nov. 30, 2021 Deposition Transcript).   The Certain Insurers do not offer a single alleged fact that they seek to introduce that was not available or known to them prior to the confirmation trial.

a.  The Certain Insurers argue that the Fee Requests evidence the "claimant-driven process" in drafting the "RSA," the "post-1976 Chartered Organization proposal," and the "Century Term Sheet."  Motion ¶ 12.  Those matters each occurred many months before the confirmation trial, and the Certain Insurers had abundant opportunities to take discovery regarding the drafting process, as they did with the TDP.

b.  The Certain Insurers argue incorrectly that the survivors sought to "inflate" claim values and "bind insurers" to awards, but those alleged actions occurred months before the confirmation trial, and the Certain Insurers were aware of the matters they cite in the Fee Requests and had ample opportunity and did

12

take discovery as to them, including from those that negotiated and calculated the claim values. *See* Bankr. D.I. 8858 (citing depositions of Mr. Azer and Dr. Bates).

c.  The Certain Insurers argue that the BSA "acceded to further requests to prejudice non-settling insurers" including by agreeing to an independent review option ("IRO").  The IRO was finalized by February 2022, well before the confirmation hearing, and the Certain Insurers were aware that certain of the survivor representatives proposed the IRO.  *See* Bankr. D.I. 9563 247:13-19 (the Certain Insurers cross examining Jason Amala, confirming that the Pfau/Zalkin group drafted the IRO).  Indeed, the bankruptcy court found that the IRO's purpose was "not hidden" and the "TCC and the Pfau/Zalkin Claimants persuaded others that the Maximum Claim Value artificially capped claims and arguably let excess carriers off the hook for the very claim values that would trigger their policies."  D.I. 1-3 at Fn. 666.  And while the IRO was first proposed by certain of the survivor representatives, the Debtors were heavily involved in the negotiations, modifications and current form of the option.

d.  The Certain Insurers argue that BSA "acceded to [the survivors'] demand for a 'so-called Document Appendix'" allowing the claimants' discovery before submitting claims to the Settlement Trust to help complete the required forms.

13

Motion ¶ 15.   The Document Appendix[6] was adopted and disclosed in February 2022, well before the confirmation hearing and the Certain Insurers were aware that survivors had contributed to terms of the agreement.  *See* Bankr. D.I. 9309 ¶¶ 63-64 (Mr. Azer describing in his declaration that the Document Appendix was the result of arm's-length negotiations with the Coalition, among other parties).

21.     The Certain Insurers' failure to pursue or introduce available evidence does not provide grounds for introducing new evidence on appeal. *See, e.g., Burton v. Teleflex Inc.*, 707 F.3d 417, 436 (3d Cir. 2013) (denying motion to supplement record on appeal where movant "could have produced this information in the first instance to the [lower court]"); *GLeS, Inc. v. MK Real Estate Developer & Trade Co.*, 511 F. App'x 189, 193 (3d Cir. 2013) ("[W]e conclude that there is no reason to employ Rule 10(e) or any equitable power we may have to include the evidence identified in the [appellants'] motions [to supplement the record], because that evidence was either previously available or not material to their claims."); *Zell v. Jacoby-Bender, Inc.*, 542 F.2d 34, 38 (7th Cir. 1976) (refusing to take judicial notice of a party's retirement date because that fact could have been included in the record for the case); *Morgan Drexen, Inc. v. Consumer Fin. Protection Bureau*, 785 F.3d

---

[6]   As defined in the Plan.

684, 690 n.2 (D.C. Cir. 2015) ("[A]ppellants' request that the court take judicial notice of these documents comes too late; the plaintiff was on notice that the evidence was relevant to her case and could timely have submitted it to the [lower] court.").

### 3.   The Fee Requests Are Hearsay

22.    The Motion papers are also inadmissible hearsay.  *See* Fed. R. Evid. 802; *see also In re Indian Palms*, 61 F.3d at 205 ("a document cannot be put to a hearsay use for most purposes, and for this reason, a previously filed court document will generally not be competent evidence of the truth of the matters asserted therein").  Had the Certain Insurers wanted to introduce the material reflected in the Fee Requests, they would have needed to introduce it through a witness, and that witness would have then clarified that the Certain Insurers' characterization of the material is incorrect and disproven by contemporaneous records, as addressed below.

### B.   The Materials That The Certain Insurers Belatedly Seek To Use To Challenge The Bankruptcy Court's Findings Of Fact Do Not Support The Challenge

23.    The Certain Insurers' arguments that the untested evidence refutes the bankruptcy court's findings of fact also is incorrect.  Nothing in the Fee Requests refute any of the findings, much less proves that the bankruptcy court's factual findings are "completely devoid of a credible evidentiary basis or bear[] no rational

relationship to the supporting data." *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006) (quoting *Citicorp Venture Cap., Ltd. v. Comm. of Creditors*, 323 F.3d 228, 232 (3d Cir. 2003).  Indeed, the Certain Insurers simply repeat the conclusory and incorrect assertion that the "Fee Requests support the Certain Insurers' assertions," then include citations and parenthetical sentence fragments that do not do so.

a. The Certain Insurers argued at trial that the survivors dictated the claims process by drafting the trust distribution procedures ("TDP") and the Claims Matrix,[7] and the bankruptcy court rejected that contention based on the unrefuted, contemporaneous record, including early drafts of the TDP, the Claim Matrix, and the testimony of the percipient witnesses that drafted those documents.  *See* D.I. 1-3 at 213-17 (finding that "[t]he record developed at trial shows that Mr. Azer, Debtors' insurance counsel, penned the initial draft of the TDP," and holding that "[b]ased on this record, I cannot find that Debtors colluded with the Coalition or other plaintiff representatives to intentionally deprive insurers of their rights.  I cannot find that Debtors abdicated their responsibility to negotiate a plan or proceeded in bad faith…The Certain Insurers' arguments that Debtors colluded with the

---

[7]   As defined in the Plan.

Coalition, rather than negotiated with the Coalition, is wholly unsupported by the record.").

- In a sleight of hand, the Certain Insurers try to challenge the uncontroverted evidence that BSA drafted *the TDP and the Claims Matrix* by relying on the statements about the Coalition's work on the *RSA*, a document that is not even part of the confirmed Plan. Moreover, what the Coalition highlights is their work in identifying and addressing a "*Fuller-Austin* issue" that could have created new coverage defenses based on the bankruptcy, inadvertently destroying valuable estate insurance assets and providing a windfall to excess insurers by releasing them from their contractual obligations. *See* Coalition Fee Request ¶ 132.

- The Coalition's role in negotiating a "post-1976 Chartered Organization proposal" also has nothing to do with the bankruptcy court's finding that "[t]he record developed at trial shows that Mr. Azer, Debtors' insurance counsel, penned the initial draft of the TDP....Thereafter Mr. Azer never gave up the pen. Mr. Azer testified that Debtors had an interest in the TDP because they needed a confirmable plan and that they spent significant time negotiating

17

protections for the insurers' contractual rights."  D.I. 1-3 at 213-14. The fact that certain parts of the Plan were developed over time based on negotiations with the Plan supporters, including survivor representatives, is already in the trial record, was considered by the trial court, and is included in the record on appeal.  *E.g.*, Bankr. D.I. 8772 (the *Eleventh Mediator's Report* summarizing the BSA's negotiations and settlement with the TCC, the Future Claimants' Representative, the Coalition, the Ad Hoc Committee of Local Councils, and the Pfau/Zalkin claimants).  Likewise, the fact that "members of the Coalition represented the interests of the vast bulk of abuse claims, sufficient to deliver affirmative vote" (*i.e.*, the attorneys and survivors represented their interests in the case) does nothing to undermine the bankruptcy court's findings.

- The fact that the Coalition requested certain findings that the Certain Insurers consider prejudicial has nothing to do with the court's actual findings in the Confirmation Order.  This is particularly true because the bankruptcy court did not approve those findings and they were not proposed in the Plan on appeal.

18

b. The Certain Insurers' claim that the Fee Requests support their argument that the Plan "inflate[s]" claims and "bind[s] insurers to gain an advantage in coverage litigation" is wrong.  Motion ¶ 13.

- The statement that "as a result of the Coalition's hard work, survivors will receive enhanced compensation" does not suggest that claims were inflated.   Motion ¶ 13.   Rather, the language speaks to efforts to preserve valuable estate assets, for example by identifying and addressing a potential *Fuller-Austin* problem that could have resulted in inadvertent loss of a valuable insurance assets.  *See* Coalition Fee Request ¶ 132.  Preserving estate assets does not "inflate claims."

- Dr. Bates's unrebutted opinion was that the TDP will result in awards at lower average values, not inflated values.  D.I. 1-3 at 63-65.  The bankruptcy court also found that "[t]he Certain Insurers could have chosen to put on their expert to challenge the Base Matrix Value or otherwise clear up any confusion, but they did not.  This appears to be all optics."  D.I. 1-3 at 222.  The Fee Requests include no evidence that claim values are inflated.

- The fact that BSA agreed to support the Fee Requests, to the extent allowed in a subsequent order, is irrelevant to claim values under the

TDP or the Plan provisions providing that the insurers are not bound to pay awards. *See* D.I. 1-3 at 188 (bankruptcy court holding that insurers are not bound by awards under the Plan or TDP because it is up to "an insurance coverage court" to determine if any awards have relevance).

- The Coalition's statement that "'insurers would be hard pressed' to make arguments in coverage litigation" does not mean that Certain Insurers are bound by awards. The Coalition Fee Request speaks to issues of *res judicata* and collateral estoppel. *See* Coalition Fee Request ¶ 131. The bankruptcy court made no ruling on the application of *res judicata* or collateral estoppel to non-settling insurers, leaving that issue "for a future court to decide in the context of specific litigation." D.I. 1-3 at 187. Any speculation by the Coalition about what a future court may do is irrelevant.

c. The Certain Insurers' argument that the Fee Requests contradict the BSA's argument "that the IRO is intended merely to reflect 'prepetition settlement practices'" is incorrect. Mot. ¶ 14. The Certain Insurers cite the Coalition's statements that (i) their contribution to the estate included "conceiving, negotiating, and designing the [IRO]," (ii) "[t]he IRO created a mechanism to access excess insurance coverage that was otherwise at risk of being lost," and

20

(iii) that Pfau/Zalkin "'proposed an independent review process' in 'consultation with counsel for Coalition and the FCR.'" *Id*. Those statements do not speak to, much less contradict, BSA's statement that the IRO reflects "prepetition settlement practices." *Id*. The evidence is undisputed that the IRO is consistent with prepetition practices in that the BSA settled claims for amounts substantially in excess of $2.7 million, the cap under the TDP for survivors that do not exercise the IRO. *See* A.005957 (Mr. Griggs stating that "[t]he BSA did settle certain claims for more than $2.7 million"); A.012806 (some cases settled for more than $8,000,000 on average). The record is also irrefutable that, absent the IRO, excess insurers could be released from their prepetition obligations, providing an improper windfall to them. *See* D.I. 66 at 113; *see also* Bankr. D.I. 9454 at 98:14-99:1 (Bates) ("[The IRO] [b]asically remov[es]…a windfall that the excess insurers had obtained in the original draft of the [TDP].").

> [I]t was not hidden that the Independent Review Option was added to permit those claimants with high value claims to recover more than the Maximum Claim Value in the Claims Matrix. The TCC and the Pfau/Zalkin Claimants persuaded others that the Maximum Claim Value artificially capped claims and arguably let excess carriers off the hook for the very claim values that would trigger their policies. The addition of the Independent Review Option, however, does not increase an insurers' quantum of liability. A policy will attach, or it will not, based on the size of the claim and the terms of any and all relevant policies.

21

D.I. 1-3 at 288 n.666.   The Fee Requests offer nothing new in this regard.

d.  The Certain Insurers argue that BSA acceded to the survivors' requests for a "Document Appendix," which provides for discovery before a claim is submitted.   Motion ¶ 15.   The Document Appendix, however, provides a framework that is generally consistent with the BSA's prepetition practice for resolving Abuse Claims.   *See* A.005954-005957 (Mr. Griggs stating that the Document Appendix provides the Settlement Trustee with the same basic information the BSA would have had when investigating Abuse Claims and provides claimants with the same basic information they would typically receive in discovery).   Moreover, the Document Appendix "benefits survivors and insurers alike" by providing the "benefit of helping to substantiate claims and eliminate fraudulent or overstated claims, which inures to the benefit of all parties and bolsters the integrity of the TDP process."   Pfau/Zalkin Fee Request ¶ 30.   Regardless of Pfau/Zalkin's motives, nothing in the Fee Requests changes the terms and effects of the Document Appendix which the bankruptcy court considered and approved.   *See* D.I. 1-1 § III.21.

## C.   Certain Insurers' Request To Designate The Record Is Untimely, And Expanding Their Record Would Prejudice Appellees

24.   The Stipulation and Procedures Order provided for a mutually agreed-to timeline upon which BSA and other appellees relied.   Moreover, the Fee Requests

were specifically scheduled to be filed after the confirmation trial.  *See* Plan Art. V.T; Confirmation Order ¶ III.5.  The Certain Insurers had ample notice that such Fee Requests would be filed after confirmation, and raised no objection to such timing, so they cannot claim to be prejudiced when the Fee Requests were submitted consistent with the procedures contemplated in the Plan and Confirmation Order.

25.     The BSA would be prejudiced if the Certain Insurers were allowed to amend the record at the eleventh hour outside the agreed-upon procedures.  The BSA has identified hundreds of time entries from at least February 2021 to July 2021 that they would have included in the Appellees' Designations had they known about the Certain Insurers' intent to use the Plan supporters' time entries as evidence.  These extensive time entries demonstrate that, while certain Plan supporters made a "substantial contribution" to the BSA's restructuring efforts, those contributions were dwarfed by the BSA's own and earlier efforts, which involved spearheading the drafting and negotiating of the Plan—while never ceding control to any other party, exactly as the bankruptcy court correctly found.  *See* D.I. 1-3 at 213-35 (bankruptcy court summarizing the record to demonstrate that the BSA held the pen in drafting the TDP and overruling the Certain Insurers' other objections).

**D.**     **Allowing New Arguments And New Evidence After Briefing Has Been Completed Would Be Inappropriate And Unfair**

26.     Supplementing the appellate record at this stage also offers no value because briefing is complete.  Allowing the Certain Insurers to present new evidence and new arguments for the first time at oral argument would prejudice the BSA and the other appellees.

## CONCLUSION

For the foregoing reasons, the Debtors request that this Court deny the Certain Insurers' Motion to supplement the record on appeal with materials that were not part of the trial record.

24

Dated: January 27, 2023
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Derek C. Abbott*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:     dabbott@morrisnichols.com
               aremming@morrisnichols.com
               ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**

Jessica C. Lauria (admitted *pro hac vice*)
Glenn M. Kurtz (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:     jessica.lauria@whitecase.com
               gkurtz@whitecase.com

– and –

**WHITE & CASE LLP**

Michael C. Andolina
Matthew E. Linder
Laura E. Baccash
Blair M. Warner
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email:     mandolina@whitecase.com
               mlinder@whitecase.com
               laura.baccash@whitecase.com
               blair.warner@whitecase.com

*Attorneys for the Debtors-Appellees and Debtors in Possession, Boy Scouts of America and Delaware BSA LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. Bankr. P. 8015(h), the undersigned hereby certifies that this response complies with the type-volume limitation of Fed. R. Bankr. P. 8013(f)(3)(A).  Exclusive of the exempted portions specified in Fed. R. Bankr. P. 8015(g), the response contains 5,200 words.  The response has been prepared using Microsoft Word. The undersigned has relied upon the word count feature of this word processing software in preparing this certificate.


Dated: January 27, 2023                     */s/ Tori L. Remington*
                                            Tori L. Remington