## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:  BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case No. 20-10343 (LSS) (Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, et al.,<br>Appellants,<br><br>v.<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Appellees. | Case No. 22-cv-01237-RGA |

## EMERGENCY MOTION OF THE CERTAIN INSURERS
## FOR STAY PENDING APPEAL AND A TEMPORARY STAY
## <u>WHILE THE COURT RULES ON THE MOTION</u>

The Certain Insurers[1] move this Court for a stay pending appeal and for a temporary stay while the Court considers this motion.  Absent a stay, the automatic stay under Federal Rule of Bankruptcy Procedure 8025 will expire after April 11, 2023, at which point BSA may contend that further appeals by appellants are equitably moot, raising a substantial risk of irreparable harm.

This Court's March 28, 2023, opinion and order (the "Affirmance Order")

---

[1] Defined terms have the meanings set forth in the Certain Insurers' appellate briefs at D.I. 45 & 109.  References to "D.I." refer to filings in this appeal.  References to "Bankr. D.I." refer to filings in the bankruptcy court.  Munich Reinsurance America, Inc. does not join in this motion.

affirming the bankruptcy court's confirmation order present fundamental questions of bankruptcy law of vital importance that could have widespread impact in mass tort bankruptcies for years to come.  Some or all of the Certain Insurers and other appellants intend to appeal to the Third Circuit, and that appeal will raise significant questions on which the Certain Insurers have, at the very least, a "reasonable" chance of succeeding.  *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019).  Accordingly, the Certain Insurers move for entry of an order staying the effectiveness of the Affirmance Order and Confirmation Order (as defined in the Affirmance Order) and the occurrence of the plan's Effective Date pending final disposition of the Certain Insurers' appeal to the Third Circuit.  Absent a stay, BSA may argue it has substantially consummated the plan during appeals to the Third Circuit, risking that the Third Circuit may decline to decide a meritorious appeal over which it has jurisdiction based on the so-called "equitable mootness" doctrine.  Indeed, on March 30, 2023, BSA refused to stipulate even to a period of advance notice before causing the plan's Effective Date to occur, let alone to refrain from substantially consummating the plan on appeal.  Even if this Court is satisfied that it has correctly determined the issues, a reasonable possibility exists that the Third Circuit—which has repeatedly cautioned against the dangers posed by mass tort bankruptcies—may disagree on one or more issues the Certain Insurers or other appellants will raise on appeal.  Accordingly, the Court should grant a stay.

## BACKGROUND

1.     The Certain Insurers provided detailed factual background in their appellate briefing and incorporate those submissions by reference.  The Court's familiarity with the record is presumed.[2]

## ARGUMENT

2.     In considering a motion to stay pending appeal, the Court considers four factors:  "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *S.S. Body Armor*, 927 F.3d at 771 (quotation marks omitted).  The first two factors are "the most critical."  *Id.* at 772.  Here, all four factors weigh in favor of a stay.

## I.     THE CERTAIN INSURERS ARE LIKELY TO SUCCEED ON THE MERITS.

3.     To establish a likelihood of success on the merits, the Certain Insurers need not demonstrate that they will actually prevail on appeal, or even that the likelihood of prevailing is "more likely than not."  *Id.*  They need only show a "reasonable" chance of succeeding.  *Id*.  The Third Circuit exercises plenary review

---

[2] Given the Court's instruction not to submit papers that are available on public dockets, the Certain Insurers have not attached copies of the appeal papers or the challenged decisions and orders from the bankruptcy court and district court.  The Certain Insurers can provide copies of any such papers requested by the Court.

over this Court's appellate review of the Bankruptcy Court's decision. *In re Grossman's Inc.*, 607 F.3d 114, 119 (3d Cir. 2010).

4.      Without limiting the issues the Certain Insurers may address on appeal, the Certain Insurers have at least raised a substantial issue warranting review as to the plan's purported abrogation of the Certain Insurers' contracts. Courts "do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms." *In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989). "Whatever limitation[s] on the debtor's property [apply] outside of bankruptcy … appl[y] inside of bankruptcy as well." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) (quotation marks omitted). In this case, the plan fails to preserve and affirmatively recognize insurer rights, including the rights to investigate legal liability, to defend claims, to require the insured to cooperate with its insurers in the defense of claims, and to consent to any settlements. *See, e.g., In re Combustion Eng'g, Inc.*, 391 F.3d 190, 209, 216-18 (3d Cir. 2004) (adding provision to make clear that insurers' rights were not impaired).

5.      This Court *agreed* that the plan could not re-write insurance policies yet invited confusion by failing to specifically find that the "*cum onere* principle" applies to the Insurance Assignment and concluding that the plan's "protective language" preserves "the whole gamut of permissible contractual rights under state law except, for example, anti-assignment provisions that are not 'otherwise

4

available' under the Bankruptcy Code," and that "Insurers' rights and obligations are preserved 'subject to the Plan and Confirmation Order.'" (Opinion (D.I. 150) ("Op.") at 76-78. An assignment of insurance rights requires that contractual rights and obligations be preserved. *See, e.g.*, *In re Federal-Mogul Global Inc.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding in a *bankruptcy* appeal that the Bankruptcy Code preempted only anti-assignment rights in insurance policies under certain circumstances); *In re Am. Home Mortg. Holdings*, 402 B.R. 87, 98 (Bankr. D. Del. 2009). The Certain Insurers have a reasonable chance of success in an appeal to the Third Circuit that raises and seeks resolution of these important issues.

6.     The Certain Insurers also have a reasonable chance of success on appeal on the independent ground of good faith. Among other things, the Court found the Certain Insurers' argument that *LTL* requires *de novo* review of the good faith issue to be dubious and concluded that the bankruptcy court's "findings" on issues such as whether the plan inflates claim values or abrogates insurers' rights are "subject to a clear error standard of review," then effectively applied that standard. *See, e.g.*, Op. at 124. The Certain Insurers, however, are not challenging factual findings, and the Third Circuit has made clear that the ultimate issue of good faith is a legal question subject to *de novo* review. *See, e.g.*, *In re LTL Mgmt., LLC*, 58 F.4th 738, 753 (3d Cir. 2023). The Certain Insurers have a reasonable chance of prevailing in the Third Circuit on this issue, which the Circuit clarified only two months ago.

7.     To the extent this Court found "no support" for claims that certain aspects of the plan demonstrate lack of good faith (*see* Op. at 131), the Court focused its analysis on a lack of collusion or intent to prejudice insurers (*see, e.g.*, *id.* at 136-40), but neither "collusion" nor "intent" are required to reverse confirmation of this plan.  *See In re Am. Cap. Equip., LLC*, 688 F.3d 145, 157-58 (3d Cir. 2012); *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999).  And the Court's analysis does not give appropriate consideration to critical, undisputed facts adduced at trial, such as the fact that BSA proposed to make the preservation of insurers' contractual rights subject not only to applicable law, but also to the provisions of the plan and confirmation order (an attempt to abrogate insurers' rights and bind them in coverage litigation without insurer input), and the fact the Base Matrix Values remain inflated by nearly 90% for single abuser claims, which are the vast majority of claim present here, without the necessary reduction identified by BSA's expert.

8.     The Third Circuit has recognized that a mass tort bankruptcy plan can "distort ordinary incentives between insurer and insured, encouraging the debtor to collude with claimants and impose costs on the insurer."  *Federal-Mogul*, 684 F.3d at 380-81.  That Court has repeatedly expressed serious concerns regarding conduct that is akin to the conduct that took place here.  *See, e.g.*, *Am. Cap. Equip.*, 688 F.3d at 156-160 (affirming bankruptcy court's rejection of plan at disclosure statement hearing because plan was patently unconfirmable); *In re Global Indus. Techs.*, 645

F.3d 201, 213-15 (3d Cir. 2011) (reversing and remanding for consideration of good faith concerns). And the Third Circuit has made clear that the "fact that there is at least one valid purpose to the Plan is not dispositive as the Plan could fulfill one specific purpose of the Code and yet be inconsistent with other overarching principles, or with the requirement that objectives and purposes of the Code must be fairly achieved." *Am. Cap. Equip.*, 688 F.3d at 160 n.8.

9.     There is at least a reasonable possibility the Third Circuit may conclude that the plan was not proposed in a manner that will "fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *Id.* at 156-58. The Court should grant a stay to permit a full and fair review by the Circuit.

10.     Finally, the Certain Insurers have a reasonable chance of success in demonstrating, as the Liberty and Allianz insurers argued to this Court, that the plan contains an improper allowance process because it requires Class 9 claimants to demonstrate that their claims are not subject to disallowance, and an improper judgment reduction clause that fails to compensate the Certain Insurers as required when third party claims are channeled to a trust with all other claims to be paid in full under the plan.

## II.     THE CERTAIN INSURERS WILL BE IRREPARABLY HARMED IN THE ABSENCE OF A STAY.

11.     The Certain Insurers are likely to suffer "irreparable" harm without a stay because of the substantial risk that the plan will be promptly consummated and

their appeals will be dismissed as equitably moot.  *In re MTE Holdings, LLC*, 2021

WL 4203339, at *4 (D. Del. Sept. 15, 2021).[3]

12.     The plan provides that BSA may declare that the Effective Date of the

plan has occurred so long as, among other things, the Affirmance Order has been

entered, no court has entered a stay of the Effective Date pending an appeal, and

there is no request for a stay of the Effective Date, although this condition can be

waived.  *See* Plan, Art. IX.B.  Upon the Effective Date, certain actions take place.

For example, the Settlement Trust Assets—including cash consideration from

various Appellees and the Insurance Assignment—will automatically be transferred

to the Settlement Trust, and certain claims will be paid.

13.     In the Third Circuit, an analysis of equitable mootness proceeds in "two

analytical steps," with courts considering:   "(1) whether the plan has been

substantially consummated; and (2) if so, whether granting the relief requested in

---

[3] *See, e.g.*, *In re MD Helicopters, Inc.*, 641 B.R. 96, 109 (D. Del. 2022) (irreparable harm exists where "there is a substantial risk of mootness, in addition to potential economic harm"); *In re Los Angeles Dodgers LLC*, 465 B.R. 18, 36 (D. Del. 2011) ("[W]here the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied."); *In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (loss of appellate rights is the "quintessential form of" irreparable harm); *CW Capital Asset Mgmt. v. Burcam Capital II, LLC*, 2013 WL 3288092, at *7 (E.D.N.C. June 28, 2013) ("the loss of appellate rights alone constitutes irreparable harm"); *see also, e.g.*, *McDaniel v. Sanchez*, 448 U.S. 1318, 1322 (1980) (Powell, J., in chambers); *In re Roche*, 448 U.S. 1312, 1316 (1980) (Brennan, J., in chambers); *Wise v. Lipscomb*, 434 U.S. 1329, 1334 (1977) (Powell, J., in chambers); *In re Bart*, 82 S. Ct. 675, 675-76 (1962) (Warren, C.J., in chambers).

the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation." *In re Semcrude, L.P.*, 728 F.3d 314, 321 (3d Cir. 2013).

14.     Some courts have ruled that an appeal may be dismissed as "equitably moot" where appellants fail to request a stay. *See, e.g.*, *In re Genesis Health Ventures, Inc.*, 280 B.R. 339, 344 (D. Del. 2022); *see also, e.g.*, *In re Allied Nev. Gold Corp.*, 725 F. App'x 144, 150 (3d Cir. 2018) (requests for a stay are an "important consideration" for equitable mootness).

15.     To be clear, Certain Insurers do not concede that equitable mootness is doctrinally correct or would apply here, and judges in the Third Circuit—including now-Supreme Court Justice Alito—have expressed considerable criticism about the doctrine. *See, e.g.*, *In re Continental Airlines*, 91 F.3d 553, 568-70 (3d Cir. 1996) (*en banc*) (Alito, J., dissenting) (equitable mootness may be based on a misinterpretation of law); *In re One2One Comcc'ns, LLC*, 805 F.3d 428, 438-47 (3d Cir. 2015) (Krause, J., concurring) (equitable mootness is "adrift and in need of reconsideration by our Court" and should be "eliminat[ed], or at the very least, reform[ed]"); *see also, e.g.*, Pet. for Writ of Cert., *U.S. Bank N.A. v. Windstream Holdings, Inc.*, No. 22-926 (filed Mar. 15, 2023) ("The judge-made doctrine of 'equitable mootness' allows Article III courts to shirk their bankruptcy oversight duties as mandated by" the Supreme Court). But the very real risk that the equitable

mootness doctrine could be applied to strip the Certain Insurers of their appellate rights demonstrates the potential for serious irreparable harm that warrants a stay.

16.     To be sure, to the extent the Third Circuit continues to recognize the equitable mootness doctrine—and it should not—strong arguments exist that it would, among other things, still retain the ability to fashion relief with respect to the plan.  *See, e.g.*, *In re PWS Holding Corp.*, 228 F. 3d 224, 236-37 (3d Cir. 2000) (appellant sought "only alterations to the plan rather than an unraveling of the reorganization").  Accordingly, if the Certain Insurers' request for a stay is denied, they reserve the right to proceed with their appeal and to challenge any allegations of equitable mootness if and when such allegations are made.  Nevertheless, the Certain Insurers risk encountering application of the doctrine if this Court does not issue a stay, and a stay is thus critical to protect their appellate rights.

17.     The risk that BSA may seek to moot the appeals is imminent and concrete because BSA will attempt to substantially consummate its plan as soon as possible.  Even though this Court's order was a waivable condition to the plan's Effective Date, BSA agreed in the parties' joint stipulation to provide advance notice before attempting to consummate the plan on appeal so the Certain Insurers could seek a stay if necessary.  *See* D.I. 22 at 8.  When the Certain Insurers asked BSA to agree to a similar provision following this Court's ruling, BSA refused.

10

18.     Further, after oral argument, BSA refused to wait for this Court's ruling and instead sought an order from the bankruptcy court authorizing nearly $4 million for advance "preparatory work" on the trust to ensure "that the Effective Date occurs as swiftly as possible." Bankr. D.I. 11010 at 11-12.  Now, the TCC and Coalition have filed notice that they will hold a town hall on April 4, 2023, to discuss this Court's ruling and to introduce Judge Houser as the Settlement Trustee.  *See* Bankr. D.I. 11059.  There can be no doubt that the plan supporters will continue down this path absent a stay.

19.     Once the plan is substantially consummated, BSA may seek to dismiss appeals on the grounds that relief would "fatally scramble" the plan or "significantly harm third parties who have justifiably relied on plan confirmation." *Allied Nev. Gold Corp.*, 725 F. App'x at 149 (quotation marks omitted).  Although the Certain Insurers believe such arguments would be incorrect, a court may accept them, causing the Certain Insurers the quintessential irreparable harm of losing their ability to pursue significant appeals.

20.     In any event, because BSA's contractual rights in its insurance policies would be transferred immediately upon the Effective Date, the Certain Insurers would be independently harmed absent a stay because they would be subject to risks that run counter to the economic bargain in their contracts.  Regardless whether they

can "assert" defenses in coverage litigation, the plan, as confirmed, would leave them to defend against 82,000 claims under the current plan.

21.     Permitting the plan to go into effect despite this reality would create "enormous" costs and uncertainty for the insurers, "even if [they] never pay a single dollar of indemnity" and ultimately prevail in their appeals. *Global Indus. Techs.*, 645 F.3d at 213-214; *see, e.g.*, *L.A. Dodgers*, 465 B.R. at 35-36 (finding irreparable harm where party would have "less leverage than it contracted for").

## III.   THE BALANCE OF EQUITIES FAVORS A STAY.

22.     While denying a stay would substantially injure the Certain Insurers, issuing a stay would not cause material harm to other parties.  *See S.S. Body Armor I.*, 927 F.3d at 772 (courts balance the equities in granting a stay); *see also San Diegans for the Mt. Soledad Nat'l War Mem'l v. Paulson*, 548 U.S. 1301, 1303 (2006) (harm of slight delay is insufficient to deny stay pending appeal).

23.     A stay will not impair BSA's ability to consummate the plan if this Court's order is ultimately affirmed on appeal.  Contributions to the Settlement Trust are fixed, and the settlement agreements between the plan supporters remain in effect despite any stay.

24.     As for abuse claimants, including those who knowingly voted to support the plan, they may not receive payments for many months, or even years, regardless of a stay.  (*See, e.g.*, A. 2619-2620.)  As BSA concedes, in order "[f]or

the Settlement Trust to make any significant progress within *the weeks (if not months)* following the Effective Date," "[t]here is a great deal of preparatory work to be done," including reviewing documents, establishing bank accounts, retaining a trustee to hold funds, preparing for maintainance of records and communications with survivors, establishing a website for the trust and a claims portal, designing procedures to identify fraudulent claims, and engaging a claim processor and other professionals to serve the trust.  *See* Bankr. D.I. 11010 at 5-6, 12.  Even after these steps are taken, the TDPs will require the Settlement Trustee, except as to those who elected an expedited distribution, to exercise discretion on a claim-by-claim basis treating all claimants equitably in accordance with BSA's historical practices—a process that cannot be done immediately.

25.     Moreover, if this Court grants a stay, the Certain Insurers would be willing to join in a prompt briefing schedule so the appeals proceed efficiently. Indeed, the Certain Insurers joined with BSA and the claimants in this Court to stipulate to a briefing schedule on appeal from the confirmation order and proceeded expeditiously despite the extraordinary complexity of the case.  As a result, these appeals were fully briefed and decided *a mere six months* after they began.

26.     Because BSA will not suffer material harm from a brief stay, and confirmation of the plan "does not require any monetary payment" from Certain Insurers, there is no "need for a bond."  *L.A. Dodgers*, 465 B.R. at 38.

## IV.   THE PUBLIC INTEREST WEIGHS HEAVILY IN FAVOR OF A STAY.

27.    Finally, the public interest favors preserving the status quo because of the serious nature of the issues on appeal.  The Third Circuit will consider not only important, precedential issues of bankruptcy law, but also the future of the largest settlement trust for the resolution of sexual abuse claims in U.S. history.  All parties, as well as both the Bankruptcy Court and this Court, have acknowledged that this is an extraordinary case.  The plan provides the framework for establishing the largest abuse compensation fund in history, but it also presents a host of appellate issues that merit consideration by the Third Circuit.

28.    The public has a strong interest in "correct application of the law" (*In re Nw. Missouri Holdings, Inc.*, 2015 WL 3638000, at *3 (D. Del. June 11, 2015)), "especially where property rights are at stake" (*In re Revel AC, Inc.*, 802 F.3d 558, 573 (3d Cir. 2015)), and BSA is advancing arguments never before accepted in a mass tort bankruptcy case (*see S. S. Body Armor I*, 927 F.3d at 772 ("public interest … calls for gauging consequences beyond the immediate parties"); *L.A. Dodgers*, 465 B.R. at 37 (public "has an interest in seeing that parties oblige by their contractual obligations")).  Precedent from this case will affect numerous non-profit entities, companies, insurers, and mass tort claimants—and may become a template for policyholders in future cases.  (*See* A. 4203 (Amala).)

29.     Furthermore, the Third Circuit has repeatedly expressed a desire to safeguard the integrity of the bankruptcy process, especially in mass tort cases.  *See, e.g.*, *Global Indus. Techs.*, 645 F.3d at 214 ("[T]he integrity of the bankruptcy proceeding is called into question by nonfrivolous allegations of collusion between [the debtor] and the [claimants'] counsel in negotiating [the plan]."); *Am. Cap. Equip.*, 688 F.3d at 158 (plans that are collusive or raise concerning conflicts of interest do not comport with Bankruptcy Code); *Furness v. Lilienfield*, 35 B.R. 1006, 1011 (D. Md. 1983) ("good-faith requirement protects the jurisdictional integrity of the bankruptcy courts which sit in equity and therefore demand that a party seeking relief enter with clean hands").

30.     The public interest is particularly compelling here because consummation of BSA's plan would undermine justice for bona fide sexual abuse victims.  As experts on both sides testified, the plan would inflate the number and value of abuse claims for the benefit of certain claimants' attorneys, potentially diluting payments to holders of *valid* abuse claims.  (*See, e.g.*, A. 3435 (Conte) ("[T]he truly victimized claimant is put at a disadvantage by the way this has been handled. … [A]nd it makes me angry that people who are really deserving are going to end up being hurt by this whole process."); A.3696 (Treacy) ("I worry about those fraudulent cases preventing the real victims from getting the compensation that they

deserve.").)  The Third Circuit should be afforded a full and fair opportunity to review these issues.

31.     As noted, the Certain Insurers request a stay until the resolution of all appeals to the Third Circuit.  However, if the Court is not inclined to grant such relief, then pursuant to Federal Rule of Bankruptcy Procedure 8025, the Certain Insurers respectfully request a short further stay through April 27, 2023, to allow reasonable time for an emergency motion for stay pending appeal to be filed with and considered by the Third Circuit.  The Certain Insurers also respectfully request a temporary stay while the Court considers this motion.

**WHEREFORE**, the Certain Insurers respectfully request that the Court grant this motion for a stay of the Court's judgment affirming the bankruptcy court's ordering confirming the chapter 11 reorganization plan until such time as the Third Circuit can reach the merits of appeals and a temporary stay while the Court rules on this motion.  In the alternative, the Court should issue a short stay to allow reasonable time for an emergency motion to be filed with and considered by the Third Circuit.

Dated:      Wilmington, Delaware
            March 31, 2023

                                    Respectfully Submitted,
                                    /s/ Deirdre M. Richards

Theodore J. Boutrous Jr. (*pro hac vice*)      Deirdre M. Richards
Richard J. Doren (*pro hac vice*)              (DE Bar No. 4191)
Blaine H. Evanson (*pro hac vice*)             FINEMAN KREKSTEIN
GIBSON, DUNN & CRUTCHER LLP                    & HARRIS PC
333 South Grand Avenue                         1300 N. King Street
Los Angeles, California 90071                  Wilmington, DE 19801
tboutrous@gibsondunn.com                       Telephone: (302) 538-8331
rdoren@gibsondunn.com                          Facsimile: (302) 394-9228
bevanson@gibsondunn.com                        drichards@finemanlawfirm.com

Michael A. Rosenthal (*pro hac vice*)          Susan N.K. Gummow
Mitchell A. Karlan (*pro hac vice*)            (*pro hac vice*)
James Hallowell (*pro hac vice*)               FORAN GLENNON PALANDECH
Keith R. Martorana (*pro hac vice*)            PONZI & RUDLOFF P.C.
Seth M. Rokosky (*pro hac vice*)               222 N. LaSalle St., Suite 1400
GIBSON, DUNN & CRUTCHER LLP                    Chicago, Illinois 60601
200 Park Avenue                                sgummow@fgppr.com
New York, New York 10166
mrosenthal@gibsondunn.com
mkarlan@gibsondunn.com
jhallowell@gibsondunn.com
kmartorana@gibsondun.com
srokosky@gibsondunn.com

*Counsel for National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and the Insurance Company of the State of Pennsylvania*

/s/ Marcy J. McLaughlin Smith
David M. Fournier (DE Bar No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 404.885.3000
david.fournier@troutman.com
marcy.smith@troutman.com

-and-

Harris B. Winsberg (*pro hac vice*)
Matthew G. Roberts (*pro hac vice*)
PARKER, HUDSON, RAINER & DOBBS LLP
303 Peachtree Street NE
Suite 3600
Atlanta, GA  30308
Telephone: 404.420.4313
Facsimile: 404.522.8409
hwinsberg@phrd.com
mroberts@phrd.com

-and-

Margaret H. Warner (*pro hac vice*)
Ryan S. Smethurst (*pro hac vice*)
Alex M. Spisak (*pro hac vice*)
McDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone: 202.756.8228

/s/ Marcy J. McLaughlin Smith
David M. Fournier (DE Bar No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 302.777.6500
Facsimile: 302.421.8390
david.fournier@troutman.com
marcy.smith@troutman.com

-and-

Harris B. Winsberg (*pro hac vice*)
Matthew G. Roberts (*pro hac vice*)
PARKER, HUDSON, RAINER & DOBBS LLP
303 Peachtree Street NE
Suite 3600
Atlanta, GA  30308
Telephone: 404.420.4313
Facsimile: 404.522.8409
hwinsberg@phrd.com
mroberts@phrd.com

-and-

Todd C. Jacobs (*pro hac vice*)
John E. Bucheit (*pro hac vice*)
Paul J. Esker (*pro hac vice*)
BRADLEY RILEY JACOBS PC
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone: 312.281.0295
tjacobs@bradleyriley.com

18

Facsimile: 202.756.8087
mwarner@mwe.com
rsmethurst@mwe.com
aspisak@mwe.com

*Counsel for Allianz Global Risks US Insurance Company*

jbucheit@bradleyriley.com
pesker@bradleyriley.com

*Counsel for National Surety Corporation and Interstate Fire & Casualty Company*

/s/ Kathleen M. Miller
Kathleen M. Miller (No. 2898)
SMITH, KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
kmiller@skjlaw.com

Ronald P. Schiller (*pro hac vice*)
Matthew A. Hamermesh (*pro hac vice*)
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
T: (215) 568-6200
F: (215) 568-0300
E: rschiller@hangley.com
mhamermesh@hangley.com

*Counsel for Arch Insurance Company*

/s/ Paul Logan
Paul Logan (No. 3339)
POST & SCHELL, P.C.
300 Delaware Avenue, Suite 1380
Wilmington, DE  19801
Telephone:  (302) 251-8856
Email:  plogan@postschell.com

John C. Sullivan (*pro hac vice*)
Kathleen K. Kerns (*pro hac vice*)
POST & SCHELL, P.C.
Four Penn Center – 13th Floor
1600 John F. Kennedy Boulevard
Philadelphia, PA  19103
Telephone:  (215) 587-1000
jsullivan@postschell.com
kkerns@postschell.com

 -and-

George R. Calhoun (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue, N.W. Suite 650
Washington, DC  20006
Telephone:  (202) 840-8758
george@ifrahlaw.com

*Counsel for Argonaut Insurance Company and Colony Insurance Company*

/s/ Michael J. Joyce
Michael J. Joyce (No. 4563)
JOYCE, LLC
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 388-1944
Email:  mjoyce@mjlawoffices.com

-and-

Kevin Coughlin (*pro hac vice*)
Lorraine Armenti (*pro hac vice*)
Michael Hrinewski (*pro hac vice*)
COUGHLIN MIDLIGE &
GARLAND, LLP
350 Mount Kemble Avenue
PO Box 1917
Morristown, NJ 07962
Telephone:  (973) 267-0058
Facsimile:  973-267-6442
kcoughlin@cmg.law
larmenti@cmg.law
mhrinewski@cmg.law

-and-

Britton C. Lewis
John M. Flynn
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth Street
P.O. Box 540
Greensboro, NC  27401
Telephone:  (336) 478-1146
Facsimile:  (336) 478-1145
jmf@crlaw.com
bcl@crlaw.com

*Counsel for Arrowood
Indemnity Company*

/s/ Maria Aprile Sawczuk
Maria Aprile Sawczuk (DE #3320)
GOLDSTEIN & MCCLINTOCK
LLLP
501 Silverside Road
Wilmington, DE 19809
302-444-6710
marias@goldmclaw.com

-and-

Laura McNally (*pro hac vice*)
Emily Stone (*pro hac vice*)
LOEB & LOEB LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
312-464-3155
lmcnally@loeb.com
estone@loeb.com

*Counsel for The Continental Insurance
Company and Columbia Casualty
Company*

/s/ Brian A. Sullivan
Brian A. Sullivan (No. 2098)
WERB & SULLIVAN
LEGAL ARTS BUILDING
1225 N. King Street
Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-1100
Cell: (302) 757-9932
Facsimile: (302) 652-1111
Email: bsullivan@werbsullivan.com

John E.W. Baay II (*pro hac vice*)
GIEGER LABORDE &
LAPEROUOSE, LLC
701 Poydras Street
Suite 4800
New Orleans, LA 70139
Tel.: 504-561-0400
Fax: 504-561-1011
Email: jbaay@glllaw.com

-and-

William H. White Jr (*pro hac vice*)
KIERNAN TREBACH LLP
1233 20th Street, NW
8th Floor
Washington, DC 20036
Tel.: 202-712-7000
Fax: 202-712-7100
Email: wwhite@kiernantrebach.com

*Counsel for Gemini Insurance
Company*

/s/ Kathleen M. Miller
Kathleen M. Miller (DE Bar No. 2898)
SMITH, KATZENSTEIN & JENKINS
LLP
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Email: kmiller@skjlaw.com

-and-

Mary E. Borja (*pro hac vice*)
Gary P. Seligman (*pro hac vice*)
Ashley L. Criss (*pro hac vice*)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Email: mborja@wiley.law
gseligman@wiley.law
acriss@wiley.law

*Counsel for General Star Indemnity
Company*

21

/s/ Bruce W. McCullough
Bruce W. McCullough (No. 3112)
BODELL BOVÉ, LLC
1225 N. King Street, Suite 1000
Wilmington, Delaware 19801-3250
Telephone: (302) 655-6749
bmccullough@bodellbove.com

-and-

Bruce D. Celebrezze (*pro hac vice*)
CLYDE & CO US LLP
150 California Street | 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
bruce.celebrezze@clydeco.us



Konrad R. Krebs (*pro hac vice*)
CLYDE & CO US LLP
340 Mt. Kemble Avenue | Suite 300
Morristown, NJ 07960
Telephone: (973) 210-6700
Facsimile: (973) 210-6701
konrad.krebs@clydeco.us

-and-

David Christian (*pro hac vice*)
DAVID CHRISTIAN ATTORNEYS
LLC
105 W. Madison St., Suite 1400
Chicago, Illinois 60602
Telephone: (312) 282-5282
dchristian@dca.law

*Counsel for Great American Assurance*

/s/ Kathleen M. Miller
Kathleen M. Miller (No. 2898)
SMITH, KATZENSTEIN
& JENKINS LLP
1000 West Street, Suite 1501
P.O. Box 410
Wilmington, DE  19899 [Courier 19801]
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
kmiller@skjlaw.com

and

Lloyd A. Gura (*pro hac vice*)
Pamela J. Minetto (*pro hac vice*)
MOUND COTTON WOLLAN &
GREENGRASS LLP
One New York Plaza 44th Floor
New York, NY 10004
Tel: (212) 804-4282
lgura@moundcotton.com
pminetto@moundcotton.com

*Counsel for Indian Harbor Insurance
Company, on behalf of itself and as
successor in interest to Catlin Specialty
Insurance Company*

*Company, f/k/a Agricultural
Insurance Company; Great American
E&S Insurance Company, f/k/a
Agricultural Excess and Surplus
Insurance Company; and Great
American E&S Insurance Company*

/s/ R. Karl Hill
R. Karl Hill (DE Bar No. 2747)
SEITZ, VAN OGTROP & GREEN,
P.A.
222 Delaware Avenue
Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-0600
khill@svglaw.com

-and-

CHOATE, HALL & STEWART LLP
Douglas R. Gooding (*pro hac vice*)
Jonathan D. Marshall (*pro hac vice*)
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

-and-

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO PC
Kim V. Marrkand (*pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
kvmarrkand@mintz.com

/s/ Marla S. Benedek
Marla S. Benedek (No. 6638)
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
Telephone:  (302) 295-2024
Facsimile:  (302) 250-4498
mbenedek@cozen.com

*Counsel for Traders and Pacific
Insurance Company, Endurance
American Specialty Insurance
Company, and Endurance American
Insurance Company*

*Counsel for Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation*

/s/ Stephen M. Miller
Stephen M. Miller (No. 2610)
Carl N. Kunz, III (No. 3201)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6800
Facsimile:  (302) 571-1750
smiller@morrisjames.com
ckunz@morrisjames.com

-and-

Margaret M. Anderson (*pro hac vice*)
Ryan T. Schultz (*pro hac vice*)
Adam A. Hachikian (*pro hac vice*)
Kenneth M. Thomas (*pro hac vice*)
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 224-1200
Facsimile:  (312) 224-1201
panderson@foxswibel.com
rschultz@foxswibel.com
ahachikian@foxswibel.com
kthomas@foxswibel.com

*Counsel for Old Republic Insurance Company*

/s/ Louis J. Rizzo, Jr.
Louis J. Rizzo, Jr. (DE Bar No. 3374)
REGER RIZZO & DARNALL LLP
1521 Concord Pike Suite 305
Brandywine Plaza West
Wilmington DE  19803
Telephone: (302) 477-7100
Facsimile: (302) 652-3620
lrizzo@regerlaw.com

*Counsel for Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company*

## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8013(f).  A proportionally spaced typeface was used, as follows:

      Name of typeface:  Times New Roman
      Point size:  14
      Line spacing:  Double

The total number of words in the motion, excluding the items set forth in Federal Rule of Bankruptcy Procedure 8015(g), is 3,912.