**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re:* | Chapter 11 |
| Boy Scouts of America and Delaware BSA, LLC, | Case No. 20-10343 (LLS) |
| Debtors. | (Jointly Administered) |
| National Union Fire Insurance Co. of Pittsburgh, PA, *et al.*, | Case No. 22-cv-01237-RGA |
| Appellants.<br>v. | (Jointly Consolidated)[1] |
| Boy Scouts of America and Delaware BSA, LLC, | |
| Appellees. | |

**EMERGENCY MOTION OF THE DUMAS & VAUGHN CLAIMANTS**
**FOR STAY PENDING APPEAL AND A TEMPORARY STAY**
**WHILE THE COURT RULES ON THE MOTION**

1.      The Dumas & Vaughn Claimants ("D & V Claimants") move this Court for a stay pending appeal and for a temporary stay while the Court considers this motion.  Absent a stay, the automatic stay under FRBP Rule 8025 will expire after April 11, 2023.  Without extending the stay, BSA may argue that further appeals by appellants are equitably moot, which would greatly increase the risk of irreparable harm to D & V Claimants.

---

[1]  Case numbers 22-cv-01237, 22-cv-01238, 22-cv-01239, 22-cv-01240, 22-cv-01241, 22-cv-01242, 22-cv-01243, 22-cv-01244, 22-cv-01245, 22-cv-01246, 22-cv-01247, 22-cv-01249, 22-cv-01250, 22-cv-01251, 22-cv-01252, 22-cv-01258, and 22-cv-01263 have been jointly consolidated under 22-cv-01237.  The D & V Claimants' appeal is docketed at 22-cv-01249.

## INTRODUCTION

2.      Now that this court has issued its March 28, 2023, opinion and order (the "Affirmance Order") affirming the Bankruptcy Court's confirmation of the Plan, Bankruptcy Rule 8025(b) provides that the District Court may stay the Plan pending appeal to the Third Circuit.  This is the same authority that the Bankruptcy Court has under Bankruptcy Rule 8007(a).

3.      The appellants must ordinarily seek a stay pending appeal.  Otherwise, if the "settlement proceeds are distributed before resolution of" the appeal, "that appeal is 'all but assured' to become moot." *In re Body Armor I*, 927 F.3d 763, 770 (3d Cir. 2019) (quoting *In re Revel AC, Inc.*, 802 F.3d 558, 567 (3d Cir. 2015)).  Courts have dismissed appeals as equitably moot when the appellant's failure to obtain a stay pending appeal rendered the appellate court unable to fashion a remedy that would restore the interested parties to their former position. *See*, *e.g.*, *In re Allied Nev. Gold Corp.*, 725 F. App'x 144, 148 (3d Cir. 2018) (appeal from plan confirmation order dismissed as "equitably moot" when appellants sought to unscramble complex reorganization plan but "did not timely seek or obtain a stay."); *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143-45 (2d Cir. 2005) (appeal of plan confirmation order dismissed as equitably moot when appellants never sought stay pending appeal or expedited review; vacating the confirmation order would potentially unsettle substantially consummated plan).

4.     D & V Claimants and other appellants intend to appeal to the Third Circuit.  As discussed below, D & V Claimants have a "reasonable" chance of succeeding on appeal.  *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019).  Further, the appeals seek answers to unsettled legal questions of widespread public importance, particularly issues concerning third-party releases for nondebtors.  To avoid the risk of the Third Circuit will find the appeals "equitably moot" and decline to hear them for that reason, a stay is necessary.  Therefore, D & V Claimants move for entry of an order staying the effectiveness of the Affirmance Order and Confirmation Order (as defined in the Affirmance Order), and staying the Plan going into effect, pending final disposition of appeals to the Third Circuit.

**JOINDER**

5.     D & V Claimants join in the Emergency Motion of the Certain Insurers for Stay filed on March 31, 2023.  (D.I. 152.)  Rather than repeat every point and argument made by the Certain Insurers, D & V Claimants incorporate the brief and related supporting affidavit (D.I. 153) of the Certain Insurers in their entirety as if set forth herein.  Where necessary for clarity, D & V Claimants will spell out an argument or refer to specific pages of the Certain Insurers' brief or

affidavit.[2]  D & V Claimants also join in the Motion for Stay filed by the Lujan

Claimants concurrently with this Motion and incorporate the arguments of the

Lujan Claimants as if set forth in full.

## ARGUMENT

6.     Federal Rule of Bankruptcy Procedure 8025(b) provides, in relevant

part, that "the district court . . . may stay its judgment pending an appeal to the

court of appeals."  Rule 8025 is derived from the former Rule 8017.  *See*

Committee Notes on Rules (2014).  The standard is the same as for Rule 8007, the

rule governing a Bankruptcy Court's power to issue a stay pending an appeal to a

District Court.  The Third Circuit discussed that standard in *S.S. Body Armor I*,

*supra*, 927 F.3d at 771-72.  In ruling on a motion to stay, court assess four factors:

> (1) whether the stay applicant has made a strong showing
> that [it] is likely to succeed on the merits; (2) whether the
> applicant will be irreparably injured absent a stay; (3)
> whether issuance of the stay will substantially injure the
> other parties interested in the proceeding; and (4) where
> the public interest lies.

*Id.* (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).)  "Before issuing a stay,

it is ultimately necessary to balance the equities—to explore the relative harms to

---

[2]     References to "D.I." are to filings in this appeal.  Documents from the
bankruptcy court are referenced as "Bankr. D. I."  D & V Claimants have not
attached documents that are available on either of these public dockets, including
the appeal briefs, related materials, and challenged decisions from the district and
bankruptcy courts.

applicant and respondent, as well as the interests of the public at large." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (internal alteration and quotation marks omitted).  The balance of equities favors granting a stay here.

### A.    D & V Claimants have a Likelihood of Success on the Merits

7.    In considering this factor, courts need not find that the party appealing is going to be successful.  "Likelihood of success exists if there is 'a reasonable chance, or probability, of winning.'" *S.S. Body Armor I*, 927 F.3d at 772 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc)).  The appellant seeking a stay does not have to show that it is "more likely than not" to win the appeal, it is enough to show a "significantly better than negligible" chance of success.  *Id.* (quoting *In re Revel AC, Inc.*, 802 F.3d 558, 569 and 571 (3d Cir. 2015)).

8.    Without limiting the scope of their appeal, D & V Claimants have a strong likelihood – significantly better than negligible – of prevailing on their appeal on the third-party release and injunction issues.  The releases and channeling injunctions in this Plan force abuse claimants to release their independent, third-party claims against nondebtor, third-party Local Councils and Chartering Organizations.  The releases are broad enough to cover claims for fraud, willful misconduct, and punitive damages that would not be discharged if the third parties had filed their own bankruptcies.  (Bankr. D.I. 10316, *Plan*,

defining "Abuse Claim," and Channeling Injunction provision.)  The releases are so broad, they include claims that do not implicate any Boy Scout insurance policy or other assets, but are claims covered only by insurance policies that third-party Chartering Organizations bought themselves but were issued by Settling Insurers. (Bankruptcy Court *Opinion*, Bankr. D.I. 10136, at 55 ("Abuse Claims are channeled to the Settlement Trust to the extent that the Abuse Claim is covered by an insurance policy issued by a Settling Insurance Company," with no exception for policies purchased by Chartering Organization itself in which BSA or a Local Council holds no interest).)

9.    The Bankruptcy Court did not have jurisdiction to issue these third-party releases and injunctions.  The liability of one third-party nondebtor to another third-party nondebtor is not an issue that "arises under" or "arises in" a debtor's bankruptcy and is not part of a core proceeding.  The only possible basis for jurisdiction, "related to" jurisdiction, did not exist in this case because the only grounds for "related to" jurisdiction was shared insurance.  From 1976 on, the Boy Scouts included Local Councils and Chartering Organizations as named or additional insureds on insurance policies paid for by the Boy Scouts.  This shared insurance was not enough to give the Bankruptcy Court "related to" jurisdiction over abuse claimants' independent third-party claims against these nondebtor third parties because shared insurance in itself is not enough in the Third Circuit to

6

create "related to" jurisdiction. *In re Continental Airlines*, 203 F.3d 203, 217 (3d. Cir 2000) ("[E]ven assuming that the [shared insurance] proceeds are property of the estate, this by itself does not justify a permanent injunction of Plaintiff's actions against the insured non-debtor . . . as necessary for the reorganization."); *See also*, *Combustion Engineering*, 391 F3d 190, 233 (3d Cir. 2005) (court concluded it was "doubtful whether shared insurance would be sufficient grounds upon which to find related-to jurisdiction over independent claims against [nondebtors].").

10.    More important to the likelihood of success on appeal is the issue of whether the Bankruptcy Code even authorizes nonconsensual releases and injunctions of independent claims against nondebtor third parties.  This issue is far from settled in the Third Circuit, because the Third Circuit has never directly addressed the issue of statutory authority for third-party releases outside the context of asbestos litigation, which is expressly covered by section 524(g) of the Bankruptcy Code.  The Bankruptcy Code discharges only the debtor's liabilities upon plan confirmation.  11 U.S.C. §§ 524(a), 1141(d)(1)(A).  There is nothing in the Code that expressly authorizes third-party releases and injunctions.  The general provisions in §§ 105(a), 1123(a)(5), and 1123(b)(6), relied on by the Bankruptcy Court, do not give the court broad equitable powers that extend to granting nonconsensual third-party releases.  *See*, *Law v. Siegel*, 571 U.S. 415, 421

7

(2014) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code.)

11.     Finally, D & V Claimants have a reasonable chance of succeeding on their argument that, even if the court had jurisdiction and statutory authority, the third-party releases and injunctions in this case did not meet the standards used by courts in this circuit.  The Bankruptcy Court's factual findings regarding the factors considered in granting third-party releases are subject to review for clear error.  But the legal conclusion drawn from those facts – including the legal conclusions about whether each factor was met – were subject to plenary, or *de novo*, review.  For example, the issue of whether the Plan is fair to abuse claimants – meaning it provides them with reasonable consideration in exchange for their nonconsensual releases – and the related issue of whether it provides for payment in full are both legal conclusions drawn from facts and subject to *de novo* review. The District Court reviewed both conclusions under a clear error standard.  Which standard should apply is an issue for the Third Circuit to decide.

12.     As to the factors themselves, D & V Claimants have a reasonable chance to succeed on appeal on both the above examples.  Whether the abuse claimants will receive reasonable consideration in exchange for the third-party releases depends on how much money is in the Settlement Trust and the aggregate value of the abuse claims.  The only findings of the Bankruptcy Court were that

there would be approximately $2.6 billion in the Settlement Trust, not $7 billion. The Bankruptcy Court made no findings about whether the additional $400 million in unsettled "allocated" insurance and $4 billion in unsettled "unallocated" insurance would ever be in the Settlement Trust. The Bankruptcy Court made findings of fact that the $400 million and $4 billion amounts were accurate. The court made no findings of fact concerning whether those amounts would ever be contributed to the Settlement Trust. At most, the Bankruptcy Court found that the Settlement Trustee would have "a chance" "to negotiate with Non-Settling Insurance Companies with respect to $400 million in allocated insurance and $4 billion in unallocated insurance." (Bankruptcy Court *Opinion*, Bankr. D.I. 10136, at 154-55.) A chance to negotiate, subject to all the "insurance neutral" provisions and reserved coverage defenses the Bankruptcy Court also found in the Plan, is a far cry from a finding that any of the $400 million or $4 billion in unsettled insurance coverage will ever find its way to the Settlement Trust. D & V Claimants have a more than reasonable chance to succeed on their appellate argument that it was error to make any conclusion about "reasonable consideration" or "payment in full" based on the idea that there would be $7 billion in the Settlement Trust.

13.    Likewise, BSA's own expert Charles Bates testified that the Settlement Trustee would have to reduce the "matrix value" of the abuse claims by

an average of 90 percent.  He testified that most of this reduction would happen because, unlike pre-petition claims, the bankruptcy claims involved single-victim abusers, so the Trustee would reduce the "matrix value" of the claims accordingly. The problem with this testimony is that the Trust Distribution Procedures ("TDPs") in the Plan do not allow the Trustee to reduce the value of a claim if the abuser only had one victim.  The base "matrix value" presupposes a single-victim abuser. The TDPs allow the Trustee to increase the value of a claim if a perpetrator had more than one victim.  But the Trustee has no power or discretion to reduce the value of a claim below the base value if there is only one victim. There TDP gives the Trustee other grounds to reduce the value of claims, but Dr. Bates testified that single-victim abuser status was the primary reason the aggregate value of the claims would be between $2.4 to $3.6 billion.  D & V Claimants have a reasonable chance to prevail on this issue, which means they will be able to prevail on the issue of whether the Plan provides for "payment in full" and the third-party releases were even appropriate under factors considered by the Bankruptcy Court.

**B.     D & V Claimants will be Irreparably Harmed in the Absence of a Stay**

14.     The risk that the Third Circuit will dismiss the appeals on the grounds of equitable mootness is enough to find irreparable harm.  *In re MTE Holdings, LLC*, 2021 WL 4203339, at *4 (D. Del. Sept. 15, 2021); *In re MD Helicopters, Inc.*, 641 B.R. 96, 109 (D. Del. 2022) (irreparable harm exists where "there is a

substantial risk of mootness, in addition to potential economic harm"); *In re Los Angeles Dodgers LLC*, 465 B.R. 18, 36 (D. Del. 2011) ("[W]here the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied.").  Dismissal on equitable mootness grounds would deprive the Third Circuit of the opportunity to address third-party nondebtor releases, which are a current, major issue of public concern.

15.    In the absence of a stay, the Plan will go into effect, including automatic transfer of funds to the Settlement Trust and payment of certain claims. As Plan supporters have argued throughout, and the Bankruptcy Court stated, this case has been "extraordinary" and the plan is complex.  Once it is put into motion, it will become difficult to unwind.  While D & V Claimants do not believe that equitable mootness would prevent appellate review, the absence of a stay would make an equitable mootness argument stronger for Plan supporters.  That would be irreparably harmful to D & V Claimants.

16.    For a more fulsome discussion of the equitable mootness issue, *see* Certain Insurers' brief.  (D.I. 152, 7-11.)  D & V Claimants incorporate those arguments here as if set forth in full.

17.    Besides the risk of the Third Circuit being unable to fashion relief on appeal because of equitable mootness, D & V Claimants risk irreparable harm in the absence of a stay because the Plan will begin spending money.  Debtors

Case 1:22-cv-01237-RGA    Document 154    Filed 04/01/23    Page 12 of 17 PageID #: 16818


recently filed a motion in the Bankruptcy Court to spend $4 million in "preparatory work" on the Trust.  Bankr. D.I. 11010.  This motion shows that the Plan will require immediate spending from the Settlement Trust, as $4 million was just for advance work.  Even though the Trust will not immediately start paying claims to abuse claimants, it will immediately begin incurring large administrative expenses. It will not take long before the Settlement Trust is ready to pay at least those claimants who opted for the one-time payment of $3,500.  Approximately 7,000 claimants opted for this payment, which will take $24.5 million from the Settlement Trust.  If the Plan is ultimately reversed on appeal, money spent on unnecessary administrative expenses and early abuse claim payments will no longer be available to abuse survivors, including D & V Claimants.  This will cause them irreparable harm.

### C.    On Balance, a Stay Will Not Harm the Other Parties

18.    Courts compare this third factor with the second factor and look at how the equities balance.  *S.S. Body Armor I.*, 927 F.3d at 772.  While lack of a stay is likely to cause D & V Claimants irreparable harm by depriving them of their circuit appeal and potentially depleting the Settlement Trust of available funds, a stay would not harm Debtors or the other plan supporters.  The Plan has been on hold, with the consent of BSA and the other Plan supporters, since the Bankruptcy Court issued its Order on September 8, 2022.  An additional delay

during the Third Circuit appeal will not cause any harm, just as the delay during this appeal did not cause harm. As shown by the relative speed of this combined appeal – only six months from filing to decision – an appeal does not mean endless delay. And what delay is involved will not prevent the Plan from going into effect if the Plan is ultimately confirmed on appeal. If confirmed, nothing will change about the Plan and it can go into effect immediately.

19.    No bond is necessary for a stay in this case. The Plan does not require D & V Claimants to pay money to Debtors or anyone else. BSA will not suffer material harm from a brief stay. Under these circumstances, there is nothing for a bond to secure and there is "no need for a bond." *L.A. Dodgers*, 465 B.R. at 38.

### D.    The Public Interest Weighs Heavily in Favor of a Stay

20.    This fourth factor weighs very much in favor of a stay. As this Court recognized, this is an extraordinary case. It is the largest sex abuse bankruptcy in history, involving over 82,000 filed abuse claims and what was, historically, the nation's most respected youth serving organization. While trying to resolve decades of sexual abuse claims against it, the Boy Scouts also wanted to include claims against over 100,000 other entities that are not bankrupt, most of which are not contributing any money to the Settlement Trust for abuse survivors.

21.    Among other issues, these third-party releases and channeling injunctions deserve appellate review by the Third Circuit. Third-party releases for

nondebtors is a major issue of public concern right now.  The Second Circuit is

wrestling with the third-party releases right now in the *Purdue Pharma* appeal.

*See In re Purdue Pharma, L.P.*, 635 B.R. 26 (S.D.N.Y. 2021) (in which the District

Court overturned confirmation of a plan with broad third party releases).  The

Nondebtor Release Prohibition Act was introduced in the last session of Congress

to prohibit third-party releases such as those in this Plan.  Although it did not pass,

that the bill was introduced shows the great public interest in the issue of third-

party releases.  (https://www.congress.gov/bill/117th-congress/house-

bill/4777/text.)  Circuit courts are divided or undecided on whether to allow

nondebtor releases and channeling injunctions outside of asbestos cases.  This is an

issue in need of thorough circuit court review.

22.     The Third Circuit has never squarely addressed the issues of third-

party releases raised in these appeals.  While the Third Circuit has reviewed

nondebtor releases in non-asbestos cases, it did so without addressing the statutory

authority for such releases.  Likewise, the circuit has not analyzed the jurisdictional

basis for such releases.  These are issues that merit the Third Circuit's full and

robust review.  The need for this review is of particular concern to the public given

how many mass tort type bankruptcy cases are filed in the Third Circuit.  Clarity

from the Third Circuit will affect not only the parties in this case, but potentially

thousands of future mass tort litigants.  The circuit court should have the

opportunity to conduct this full review without being sidetracked by arguments about equitable mootness, which would arise in the absence of a stay.

### E.   Alternate Relief

23.     D & V Claimants move this court for a stay until the Third Circuit appeals are over.  For the reasons above, they believe a stay is necessary.  In the event this Court is unwilling to grant such a stay, D & V Claimants ask that the Court grant a temporary stay while it considers this Motion and a short, further stay through April 27, 2023.  A stay through April 27, 2023, will allow a reasonable time for the D & V Claimants and other appellants to seek an emergency stay from the Third Circuit under FRBP Rule 8025(d).

## CONCLUSION

24.     For the reasons discussed above and incorporated by reference, D & V Claimants ask that the Court grant their motion and issue a stay of this Court's Affirmance Order affirming the Bankruptcy Court's confirmation Order and Opinion until the Third Circuit has ruled on appeals in this matter.  D & V Claimants further ask this Court for a temporary stay while it considers this Motion.  Finally, if this Court is to deny the motion, D & V Claimants ask, in the alternative, that this Court issue a short stay until April 27, 2023 or as the Court deems reasonable, allowing reasonable time for D & V Claimants and other appellants to seek an emergency stay from the Third Circuit.

Dated:  April 1, 2023

GELLERT SCALI BUSENKELL &
BROWN LLC

/s/ *Charles J. Brown, III*
Charles J. Brown, III, Esquire (No. 3368)
1201 N. Orange St., 3rd Floor
Wilmington, DE 19801
Phone: (302) 425-5813
Email: cbrown@gsbblaw.com

- and -

DUMAS & VAUGHN, LLC

*/s/ Gilion C. Dumas*
Dumas & Vaughn, LLC, *pro hac vice*
3835 NE Hancock Street, Suite GLB
Portland, OR 97212
Telephone: (503) 616-5007
Email: gilion@dumasandvaughn.com

*Counsel to D & V Claimants*

## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8013(f).  A proportionally spaced typeface was used, as follows:

> Name of typeface: Times New Roman
> Point size:   14
> Line spacing:   Double

The total number of words in the motion, excluding the items set forth in Federal Rule of Bankruptcy Procedure 8015(g), is 3559.

Dated:  April 1, 2023

<div style="margin-left:40%">

GELLERT SCALI BUSENKELL & BROWN LLC

/s/ *Charles J. Brown, III*
Charles J. Brown, III, Esquire (No. 3368)
1201 N. Orange St., 3rd Floor
Wilmington, DE 19801
Phone: (302) 425-5813
Email: cbrown@gsbblaw.com

- and -

DUMAS & VAUGHN, LLC

/s/ *Gilion C. Dumas*
Dumas & Vaughn, LLC, *pro hac vice*
3835 NE Hancock Street, Suite GLB
Portland, OR 97212
Telephone: (503) 616-5007
Email: gilion@dumasandvaughn.com

*Counsel to D & V Claimants*

</div>