# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, <br><br> Debtors. <br><br> NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, et al., <br><br> Appellants, <br><br> v. <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, <br><br> Appellees. | Chapter 11 <br><br> Bankruptcy Case No. 20-10343 (LSS) <br> (Jointly Administered) <br><br><br> Case No. 22-cv-01237-RGA |

## EMERGENCY MOTION OF LUJAN CLAIMANTS FOR STAY PENDING APPEAL AND A TEMPORARY STAY WHILE THE COURT RULES ON THE MOTION; JOINDER

COME NOW Lujan Claimants[1] and move this Court for a stay pending appeal and for a temporary stay while the Court considers this motion. Absent a stay, the automatic stay under Federal Rule of Bankruptcy Procedure 8025 will expire after April 11, 2023, at which point Debtors may contend that further appeals by appellants are equitably moot, raising a substantial risk of irreparable harm. Lujan Claimants also join in the emergency motions for stay pending appeal filed by

---

[1] Defined terms have the meanings set forth in Lujan Claimants' appellate briefs at D.I. 40 & 113. "D.I." refers to filings in this appeal. "Bankr. D.I." refers to filings in the bankruptcy court.

Certain Insurers and Dumas & Vaughn Claimants.

This Court's March 28, 2023, opinion and order (the "Affirmance Order") affirming the bankruptcy court's confirmation order present fundamental questions of bankruptcy law of vital importance that could have widespread impact in mass tort bankruptcies for years to come. Lujan Claimants and some or all of the appellants intend to appeal to the Third Circuit, and that appeal will raise significant questions on which Lujan Claimants have, at the very least, a "reasonable" chance of succeeding. S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP, 927 F. 763, 772 (3d Cir. 2019). Accordingly, Lujan Claimants move for entry of an order staying the effectiveness of the Affirmance Order and Confirmation Order (as defined in the Affirmance Order) and the occurrence of the plan's Effective Date pending final disposition of Lujan Claimants' appeal to the Third Circuit. Absent a stay, Appellees may argue Debtors have substantially consummated the plan during appeals to the Third Circuit, risking that the Third Circuit may decline to decide a meritorious appeal over which it has jurisdiction based on the so-called "equitable mootness" doctrine. Indeed, on March 30, 2023, Debtors refused to stipulate even to a period of advance notice before causing the plan's Effective Date to occur, let alone to refrain from substantially consummating the plan on appeal. Even if this Court is satisfied that it has correctly determined the issues, a reasonable possibility exists that the Third Circuit—which has repeatedly cautioned against the dangers

posed by mass tort bankruptcies—may disagree on one or more issues the Certain Insurers or other appellants will raise on appeal. Accordingly, the Court should grant a stay.

## BACKGROUND

1. Lujan Claimants provided detailed factual background in their appellate briefing and incorporate those submissions by reference. The Court's familiarity with the record is presumed.[2]

## ARGUMENT

2. Lujan Claimants adopt and incorporate herein paragraph 2 of Certain Insurers' Emergency Motion.

### A. Lujan Claimants Are Likely to Succeed on the Merits.

3. To show a likelihood of success on the merits, Lujan Claimants need only show a "reasonable" chance of succeeding, and not actual or even "more likely than not" success. S.S. Body Armor, 927 F.3d at 772. The Third Circuit exercises plenary review over this Court's appellate review of the Bankruptcy Court's decision. In re Grossman's Inc., 607 F. 3d 114, 119 (3d Cir. 2010).

---

[2] In light of the Court's instruction not to submit documents that are available on public dockets, Lujan Claimants have not attached copies of the appeal documents or the challenged decisions and orders from the bankruptcy court and district court. Lujan Claimants will provide copies of such documents if desired by the Court.

3

4.      Lujan Claimants will raise numerous important issues on appeal, including but not limited to highly controversial nonconsensual third-party releases and injunctions.  The plan forces Survivors of child sexual abuse to release without their consent their direct claims against nondebtors and enjoins Survivors from prosecuting these claims.  An undisclosed number—but more than 100,000—of nondebtors will be effectively discharged from liability for scouting-related child sexual abuse without ever having to file for bankruptcy themselves.  Whether there is statutory authority for bankruptcy courts to approve nonconsensual third-party releases and injunctions has never been answered by the United States Supreme Court.  Similarly, the Third Circuit Court of Appeals, as well as the First, Second, Eighth, and D.C. Circuits, has never answered the question of whether such releases and injunctions are permitted under the Bankruptcy Code.  Circuit Courts of Appeal that have answered this question are starkly divided.  The Fifth, Ninth, and Tenth Circuits have held that the Code prohibits nonconsensual third-party releases and injunctions outside asbestos cases.  See In re Pac. Lumber Co., 584 F. 3d 229, 252 (5th Cir. 2009); In re Lowenschuss, 67 F. 3d 1394, 1401-02 (9th Cir. 1995); In re W. Real Estate Fund, 922 F. 2d 592, 600 (10th Cir. 1990).  In contrast, the Fourth, Sixth, Seventh, and Eleventh Circuits have concluded that the such releases and injunctions are authorized under the Code in appropriate, narrow circumstances.  See Nat'l Heritage Found., Inc. v. Highbourne Found., Inc., 760 F. 3d 344, 350 (4th Cir.

2014); In re Dow Corning Corp., 280 F. 3d 648, 657-58 (6th Cir. ); In re Airadigm Comm'ns, Inc., 519 F. 3d 640, 657 (7th Cir. 2008); In re Seaside Eng'g & Surveying, 780 F. 3d 1070, 1076-79 (11th Cir. 2015).  Given the conflict among the Circuits, there is a reasonable chance that Lujan Claimants will succeed on their argument that the bankruptcy court lacks statutory authority to approve the nonconsensual third-party releases and injunctions in the plan.

5.    Lujan Claimants have a reasonable chance of succeeding on their argument that there is no jurisdiction over Survivors' claims against nondebtors.  For instance, there is no identity of interest between Debtors, the local councils, chartered organizations, and Roman Catholic Entities.  BSA admits that BSA, the local councils, and chartered organizations do not control and are not agents of each other.  There was no evidence or finding of an identity of interest between Debtors and the Roman Catholic Entities who are not chartered organizations.  Debtors also failed to prove that there are binding indemnification contracts between Debtors and the local councils, and Debtors and chartered organizations.  The courts made no findings that BSA ever previously owned local council property which would automatically revert to BSA upon dissolution of a local council.

6.    There is also a reasonable chance of Lujan Claimants succeeding in proving that the nonconsensual third-party releases and injunctions fail to pass muster under hallmarks of sister circuits.  Survivors, including Lujan Claimants, will

not be paid in full under this historically low-dollar plan which may provide an average compensation of less than $30,000 per Survivor, without considering costly Trust fees and expenses.  Survivors' claims were valued without considering Survivors' claims against Roman Catholic Entities.  Further, the valuation by Dr. Brian Bates of the aggregate value of Survivors' claims included a 90% value reduction of single-victim claims even though the starting point for valuing claims under the TDP is single-victim perpetrator and that multiple victims is an aggravating factor that increases claim values.  There was also no evidence that Dr. Bates reached his values by running any Survivor claims through the TDP.

       7.      Lujan Claimants also have a reasonable chance of success on appeal regarding the applicability of the McCarran-Ferguson Act.  Although the bankruptcy court and this Court determined that the MFA does not apply because Guam's Direct Action Statute does not regulate the business of insurance, every other court that has considered whether a direct action statute regulates the business of insurance has found that they do.  See, e.g., Evans v. TIN, Inc., Civil Action Nos. 11-2067, 11-2068, 11-2069, 11-2182, 11-2348, 11-2351, 11-2417, 11-2949, 11-2985, 11-2987, 11-3018, 11-3021, 11-3048, 11-3049, 12-18, 11-3050, 2012 WL 2343162, at *10 (E.D. La. June 20, 2012) (assessing Louisiana Direct Action Statute virtually identical to Guam's); Wadsworth v. Allied Professionals Ins. Co., 748 F.3d 100, 109 (2d Cir. 2014) ("undoubtedly" regulates); Reis v. OOIDA Risk Retention Group,

Inc., 303 Ga. 659, 665-66 (2018) (applying same test as under MFA); see also Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd., 601 F. 3d 329, 335 n.13 (5th Cir. 2010) (Louisiana statute arguably regulates insurance and MFA may allow it to trump federal law).

8.  There is also a reasonable chance of success on appeal on the other arguments relating to the insurance settlements. For example, Lujan Claimants have a reasonable chance of succeeding in arguing that jurisdiction is lacking over nondebtors' interests in BSA insurance policies and nondebtors' separate insurance policies in which Debtors lack any interest. These nondebtor interests and separate policies cannot become part of Debtors' estates because they are to be acquired postpetition in exchange for the release and injunction of Survivors' claims, and not in exchange for any prepetition property of Debtors. Thus, these nondebtor interests and policies cannot be sold free and clear of Lujan Claimants' interests in these assets. Likewise, Lujan Claimants have a reasonable chance of showing that there is no jurisdiction over the 1976 and 1977 Hartford insurance policies for coverage of sexual abuse claims since, prepetition, BSA released its rights to coverage for such claims, and they cannot be sold free and clear of Lujan Claimants' interests. Also, as direct action claimants, Lujan Claimants have a reasonable chance of proving that they have an interest in insurance policies (including proceeds) sold under the plan that needs to be adequately protected and compensated but is not.

### B. Lujan Claimants Will Be Irreparably Harmed Without a Stay.

9. Paragraphs 11 (including footnote 3) through 21 of Certain Insurers' Emergency Motion are adopted and incorporated herein.

10. Lujan Claimants are likely to suffer "irreparable" harm without a stay because of the substantial risk that the plan will be promptly consummated and their appeals will be dismissed as equitably moot. In re MTE Holdings, LLC, 2021 WL 4203339, at *4 (D. Del. Sept. 15, 2021). Lujan Claimants do not concede that equitable mootness is a valid doctrine or that it should be applied to this appeal. But if stay is not granted and the plan goes into effect, Appellees may argue that Lujan Claimants' appeal is equitably moot and the Third Circuit may deny the appeal on this ground without addressing any of the very significant appellate issues raised.

11. If the plan goes into effect, Lujan Claimants' claims against nondebtor local councils, chartered organizations (at least two Lujan Claimants have claims that are not against the Archbishop of Agana, including one for post-1975 abuse), Roman Catholic Entities for post-1975 abuse, and insurers will be involuntarily released and enjoined. Further, funds from Settling Insurers policies in which Lujan Claimants have an interest will be transferred to the Trust and spent most likely on Trust fees and expenses and then disbursed to potentially more than 80,000 Survivors, including those who have no interest in the policies and/or whose claims are not covered under such policies. As Lujan Claimants have an interest in those

policies that, at the very least, should have been adequately protected and compensated, they will suffer irreparable harm when funds from these policies are consumed. Likewise, the contributions of the Aloha Council (against whom every Lujan Claimant has a claim) will be disbursed among tens of thousands of Survivors, including tens of thousands who have no claims against the Aloha Council, thus harming Lujan Claimants irreparably.

12. Lujan Claimants will also be irreparably harmed without a stay, as Debtors have provided a preview of how Trust funds will be spent. In their motion before the bankruptcy court to authorize spending of almost $4 million to prepare the Trust, Debtors, with the approval of the Trustee named under the plan, submitted a bloated budget featuring payment of handsome fees (including astonishing Trustee compensation at the rate of almost $2,000 per hour, and payment of over $650,000 for preparatory work like document review, opening accounts, and interviewing and hiring others to do Trust work) and expenses (including $200,000 to pay a consultant to educate on sexual abuse matters). Bankr. D.I. 11010 at 3-6, Ex. B at 2-4. The budget is contrary to the plan as it proposes spending almost $3 million of the PSZJ Contribution to pay fees and expenses while providing not a single dollar to a Survivor, despite the fact that the plan gives the Trustee the discretion to use the PSZJ Contribution to pay Survivors who have made positive contributions before, during, or after the bankruptcy case, benefiting survivors of childhood sexual abuse

and preventing abuse. Bankr. D.I. 10316 at Plan Ex. B at 14 (pdf p. 249). For example, of the Lujan Claimants, about 70 have prepetition lawsuits against BSA which gained media attention publicizing and spreading awareness of BSA's history of culpability for child sexual abuse. If the plan goes into effect and the PSZJ Contribution is spent on Trust fees and expenses, Lujan Claimants will suffer irreparable harm by not being compensated for their positive contributions. As no Survivor claims have been reviewed under the plan, there can be no proper exercise of discretion to decide not to use any of the nearly $3 million PSZJ Contribution to pay Survivors for their positive impact. Given the proposed misspending of the PSZJ Contribution, there is a real possibility that other Trust monies might be similarly misspent.

**C. The Balance of Equities Favors a Stay.**

13. Paragraphs 22 through 26 of Certain Insurers Emergency Motion are adopted and incorporated herein.

14. Granting a stay pending appeal would not cause material harm to other parties, while Lujan Claimants would be irreparably harmed in the absence of a stay.

15. Because Debtors will not suffer material harm from a brief stay, and confirmation of the plan "does not require any monetary payment" from Lujan Claimants, there is no "need for a bond." In re Los Angeles Dodgers LLC, 465 B.R. 18, 38 (D. Del. 2012).

### D. The Public Interest Weighs Heavily in Favor of a Stay.

16. Paragraphs 27-29 of Certain Insurers' Emergency Motion are adopted and incorporated herein.

17. The public has a compelling interest in ensuring that Survivors of child sexual abuse are treated fairly and that those entities responsible for their abuse be held to account. The plan would shield over 100,000 entities from child sexual abuse liability even though Survivors never agreed to their release and these entities never filed for bankruptcy protection themselves. The Third Circuit should resolve whether there is jurisdiction over Survivors' claims against nondebtors and whether the plan releases and injunctions are authorized by statute and fair.

18. The public also has a strong interest in preserving the supremacy of states and territories in regulating the business of insurance. Guam's Direct Action Statute was enacted to facilitate the compensation of those members of the public who are injured in Guam, by allowing them to directly sue insurers under policies that cover their injuries. The plan releases and enjoins direct action claims against insurers and the public deserves to know whether this is allowed by law.

19. Lujan Claimants request a stay until the resolution of all appeals to the Third Circuit. Should the Court not be inclined to grant such relief, then, pursuant to Federal Rule of Bankruptcy Procedure 8025, Lujan respectfully request a short further stay through April 27, 2023, to allow reasonable time for an emergency

motion for stay pending appeal to be filed with and considered by the Third Circuit. Lujan Claimants also respectfully request a temporary stay while the Court considers this motion.

Based on the foregoing, Lujan Claimants respectfully request that the Court grant this motion for a stay of the Court's judgment affirming the bankruptcy court's ordering confirming the chapter 11 reorganization plan until such time as the Third Circuit can reach the merits of appeals and a temporary stay while the Court rules on this motion. In the alternative, the Court should issue a short stay to allow reasonable time for an emergency motion to be filed with and considered by the Third Circuit.

Dated: Wilmington, Delaware
April 1, 2023

Respectfully Submitted,

/s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 North King Street, Suite 800
Wilmington, DE 19801
Phone: 302.654.0248
Email: Loizides@loizides.com

and

LUJAN & WOLFF LLP

 /s/ Delia Lujan Wolff
Delia Lujan Wolff
Suite 300, DNA Bldg.
238 Archbishop Flores St.
Hagatna, Guam 96910
Phone: (671) 477-8064/5
Facsimile: (671) 477-5297
Email:  dslwolff@lawguam.com

*Attorneys for Lujan Claimants*

## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8013(f).  A proportionally spaced typeface was used, as follows:

    Name of typeface:  Times New Roman
    Point size:  14
    Line spacing:  Double

The total number of words in the motion, excluding the items set forth in Federal Rule of Bankruptcy Procedure 8015(g), is 2830.