IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, <br><br> Debtors. | Chapter 11 <br><br> Bankruptcy Case No. 20-10343 (LLS) <br> (Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, et al., <br><br> Appellants, <br><br> v. <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, <br><br> Appellees. | Case No. 22-cv-01237-RGA |

**LUJAN CLAIMANTS' REPLY TO APPELLEES' OMNIBUS JOINT OPPOSITION TO MOTIONS FOR STAY PENDING APPEAL**

Lujan Claimants hereby submit their reply to Appellees' Omnibus Joint Opposition to Motions for Stay Pending Appeal [D.I. 164] ("Opposition") and join in the replies to the Opposition which were submitted by Certain Insurers [D.I. 174] and Dumas & Vaughn Claimants [D.I. 175]. In addition to the arguments raised in the replies by Certain Insurers and D&V Claimants, which are adopted by reference and incorporated herein, Lujan Claimants reply to the Opposition as follows:

1. Appellees have failed to disprove Lujan Claimants' strong likelihood of success on the merits, as they merely rehash segments of this Court's Opinion. As Lujan Claimants point out, to demonstrate this factor, they need only show that they have a

reasonable chance of succeeding, which does not require that they prove actual or even more likely than not success.

2. Appellees do not and cannot disagree that the Circuit Courts of Appeal have reached different conclusions or have not addressed the question on whether there is statutory authority for bankruptcy courts to approve nonconsensual third party releases and injunctions outside of the asbestos context. While the Third Circuit has considered whether third party releases and injunctions would meet the tests set forth by sister circuits (*Continental*) and whether bankruptcy courts as non-Article III courts have constitutional authority to approve them (*Millennium Lab*), the Third Circuit has never explicitly ruled on whether the Bankruptcy Code authorizes such releases and injunctions in non-asbestos cases. The Third Circuit has acknowledged, however, that "[t]he Bankruptcy Code does not explicitly authorize the release and permanent injunction of claims against non-debtors, except in [asbestos cases]." In re Continental Airlines, 203 F. 3d 203, 211 (3d Cir. 2000). It also cannot be disputed that the United States Supreme Court has never settled this issue. As the Bankruptcy Code does not expressly authorize nonconsensual third party releases and injunctions outside of asbestos cases, and there is a split of authority among Circuit Courts of Appeal, there is a reasonable chance that Lujan Claimants will succeed in arguing that the nonconsensual third party releases and injunctions in the plan are invalid.

3. Similarly, Lujan Claimants have a reasonable chance of succeeding on their argument that the plan violates the McCarran-Ferguson Act. Again, every other court that has applied the same test to determine whether a direct action statute regulates the business of insurance has found that the direct action statute does. There is a reasonable chance that higher courts will agree with Lujan Claimants that Guam's Direct Action Statute regulates the business of insurance in the same way as those direct action statutes analyzed in the other cases. Unlike the direct action statutes in New York and Georgia, but similar to Louisiana's, Guam's Direct Action Statute provides injured persons a right to directly sue insurers without first having to obtain a judgment against the insured and without having to also sue the insured. 22 GCA § 18305. Guam grants injured persons a rare prejudgment direct action right, which is only found in Louisiana, Wisconsin, Arkansas (as to nonprofits and government entities), and the other U.S. territories. It is not a second-class statute inferior to those in New York, Georgia, and Louisiana. Further, the bankruptcy court's analysis was driven by cases which did not address direct action statutes, so those cases are even less on point than the cases cited by Lujan Claimants which actually answer the question of whether direct action statutes regulate the business of insurance and apply either the MFA test or the same test as under the MFA. As Hartford acknowledged at oral argument, the issue of whether the MFA applies so that a direct action statute reverse preempts contrary Bankruptcy Code or plan provisions has never before been answered by

a court in any other case. There is a reasonable chance that a higher court will find that Guam's Direct Action Statute, like the other direct action statutes subject to the same test, regulates the business of insurance.

4.  Lujan Claimants have a reasonable chance of succeeding in proving that the plan and related orders violate the automatic stay arising from the Chapter 11 bankruptcy of the Archbishop of Agana. It is undisputed by all the parties—and acknowledged by the bankruptcy court—that the AOA's interest in BSA insurance policies is protected by the automatic stay. Yet, the Confirmation Order provides that the AOA and its creditors are enjoined from pursuing settling insurers policies. While this Court and the bankruptcy court concluded that Lujan Claimants lack standing to assert the stay violation, these legal conclusions were based on Ninth Circuit cases involving chapter 7 bankruptcies where a trustee controlled the estate. See Pecan Groves of Ariz., 951 F. 2d 242 (9th Cir. 1991); In re Barrett, 833 F. App'x 668, 670 (9th Cir. 2020). Those cases are distinguishable at least because the AOA's case is under chapter 11 and not 7 and the estate is not controlled by a trustee. In re Int'l Forex of Cal., Inc., 247 B.R. 284, 290-91 (Bankr. S.D. Cal. 2000). These points were not addressed by Appellees or this Court's Opinion.

5.  Appellees failed to refute Lujan Claimants' argument that there is no jurisdiction over nondebtors' separate insurance policies and in their interests in BSA insurance policies, and that they do not become estate property which is sold free and clear

4

of Lujan Claimants' interests. They conveniently ignore what is plain—that these nondebtor policies and interests cannot become part of Debtors' estates postpetition because they are acquired in exchange for the nonconsensual release and injunction of Survivors' claims, and not in exchange for any prepetition property of Debtors. The Opinion did not address this argument. There is a reasonable chance that Lujan Claimants will succeed on this issue.

6. Regarding irreparable harm, Appellees do not state that they will refrain from raising equitable mootness to defeat the appeals. Thus, there is a risk that, without a stay, Lujan Claimants' appeal will be mooted, even if Lujan Claimants would have succeeded on the merits. Notably, the doctrine of equitable mootness is unique to bankruptcy appeals.

7. Regardless of the payment in full issue (which Lujan Claimants strongly contest), Lujan Claimants will lose their day in court against non-bankrupt entities responsible for their abuse. They will lose not only monetary compensation, but also non-monetary relief against nondebtors Aloha Council and non-AOA chartered organizations and Roman Catholic Entities (for abuse that first occurred post-1975 and covered under settling insurers policies) to prevent child sexual abuse from happening again. This is a justice that has been denied for decades and which will be foreclosed if this plan goes into effect.

8. Appellees also do not dispute that Lujan Claimants will be irreparably harmed by the misspending of almost $3 million of the PSZJ Contribution, which is essentially earmarked for Survivors who made positive contributions, but which Debtors are currently moving the bankruptcy court to use to pay handsome Trust fees and expenses without considering a single Survivor claim or contribution. This is an improper exercise of discretion. Appellees do not disagree with Lujan Claimants that, given the proposed misspending of almost $3 million of the PSZJ Contribution, there is also a very real possibility that other Trust funds will be misspent without a stay.

9. Appellees exaggerate without proof that BSA will be irreparably harmed if a stay is granted. They claim that a stay will substantially harm BSA's operations, including the ability to recruit new members and secure donations. However, this is contrary to the fact (which they fail to reveal to the Court) that BSA has actually surpassed its recruitment goals despite remaining in bankruptcy. See https://blog.scoutingmagazine.org/2023/01/05/1-million-and-growing-bsa-membership-is-on-the-rise/ (the Official Site of Scouting Magazine reporting that BSA membership surpassed by 3% the goal of 1,025,000 members for 2022, achieving instead more than 1,042,000 members).

10. Also, prior to this Court's Opinion, the plan proponents could have waived conditions precedent to the effectiveness of the plan to try to make the plan go effective

earlier. But they did not, instead choosing to retain as a condition precedent this Court's affirmation of the Confirmation Order, which occurred six months after the Confirmation Order.

11. There is also no evidence that any of the contributors to the Trust will be unable or unwilling to provide their contributions if a stay is granted. Appellees point only to Century as being in a precarious financial condition, but its funds are safely held in escrow and so there is no threat that these funds will be unavailable if stay is granted.

12. Like D&V Claimants, Lujan Claimants desire that Survivors be fairly compensated as soon as possible. But the plan does not give fair compensation. An average of less than $30,000 per Survivor is not fair compensation. Further, a stay preserves each Survivor's valuable claims against nondebtors. A stay preserves the settling insurers policies, which provide non-aggregate coverage of several hundreds of thousands of dollars per occurrence or per person for most of the years when high numbers of Survivors were abused. Additionally, a stay does not prevent any Survivor from settling a child sexual abuse claim against a nondebtor. See, e.g., https://www.whas11.com/article/news/local/louisville-lmpd-explorer-sex-abuse-case-365-million-settlement-boy-scouts-of-america/417-4e3f52e4-8e4d-46ed-a6cf-052a6a581fcd (chartered organization Louisville Metro Department of Police settles 7

former youths' child sexual abuse claims for $3.65 million on November 1, 2021 (during preliminary injunction issued in connection with Debtors' bankruptcy case)).

13. Appellees do not disagree with the various public interests asserted by Lujan Claimants in their motion. They simply argue that stay should be denied since this is a mass tort bankruptcy and the Survivor-appellants are just a small percentage of the creditors. There is no authority that numerosity trumps all other public interests. The public has a right to full adjudication of the many important, novel issues raised in this appeal.

14. Regarding bond, Appellees argue that the Court should require a $6.9 billion bond. This amount is unsupported by the record. There is no evidence that any of the Trust contributions would be jeopardized by a stay. Appellees even omitted the Century contribution from the bond calculation since Century's contribution is in escrow. No evidence has been presented that any of the other settling insurers or contributing nondebtors may walk away from the plan settlements if a stay is granted. Also, Appellees wrongly include illusory contributions from the non-settling insurers and chartered organizations in the amount of over $4 billion. These contributions may never happen. Also, a stay does not diminish non-settling insurers policies or chartered organizations' separate assets in any way.

15. Also, the bond should not be required since the plan does not include any money judgment against Lujan Claimants. Lujan Claimants are 75 individuals who suffered the trauma of child sexual abuse. It cannot be disputed that they cannot afford a $6.9 billion bond or even a bond in the millions. Bond should not be required in this extraordinary case.

In conclusion, Lujan Claimants respectfully ask that the Court grant the relief requested in their emergency motion.

Dated: Wilmington, Delaware               Respectfully Submitted,

April 7, 2023                             /s/ Christopher D. Loizides
                                          Christopher D. Loizides (No. 3968)
                                          LOIZIDES, P.A.
                                          1225 North King Street, Suite 800
                                          Wilmington, DE 19801
                                          Phone: 302.654.0248
                                          Email: loizides@loizides.com

                                          and

                                          LUJAN & WOLFF LLP

                                          /s/ Delia Lujan Wolff
                                          Delia Lujan Wolff
                                          Suite 300, DNA Bldg.
                                          238 Archbishop Flores St.
                                          Hagatna, Guam 96910
                                          Phone: (671) 477-8064/5
                                          Facsimile: (671) 477-5297
                                          Email: dslwolff@lawguam.com

*Attorneys for Lujan Claimants*

## CERTIFICATION OF COMPLIANCE UNDER FED. R. BANKR. P. 8015(h)

Undersigned counsel hereby certifies that the reply herein contains 1,839 words and hence complies with the type-volume limitation of Fed. R. Bankr. P. 8013(f)(3)(C), which limits replies to 2,600 words.

April 7, 2023

/s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 North King Street, Suite 800
Wilmington, DE 19801
Phone: 302.654.0248
Email: loizides@loizides.com