IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, <br><br> Debtors. <br><br> NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, et al., <br><br><br> Appellants, <br><br> v. <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, <br><br> Appellees. | Chapter 11 <br><br> Bankruptcy Case No. 20-10343 (LSS) <br><br> (Jointly Administered) <br><br><br><br> Case No. 22-cv-01237-RGA |

### RENEWED EMERGENCY MOTION OF LUJAN CLAIMANTS FOR STAY PENDING APPEAL AND MOTION TO STAY APPEALS

COME NOW Lujan Claimants and renew their motion to stay further implementation of Debtors' plan of reorganization and move to stay these appeals.

## INTRODUCTION

Lujan Claimants previously moved for stay pending appeal, which was denied. Circumstances have since changed, leading Lujan Claimants to now renew their motion to stay implementation of Debtors' reorganization plan and to request stay of the appeals. Accordingly, Lujan Claimants renewed their motion for stay pending appeal before the Third Circuit, (Wolff Decl. Ex. 1), which was ordered

"denied without prejudice to filing renewed stay motions in the district court," (id. Ex. 2).

A stay is requested in light of the United States Supreme Court's grant of a writ of certiorari and stay pending appeal on August 10, 2023, in <u>Harrington v. Purdue Pharma L.P.</u>, No. 23A87, in which the highest court of the country will resolve a major issue raised in the appeals by Lujan Claimants and Dumas & Vaughn Claimants, i.e., whether the Bankruptcy Code authorizes a court to approve, as part of a plan of reorganization under Chapter 11 of the Bankruptcy Code, a release that extinguishes claims held by nondebtors against nondebtor third parties, without the claimants' consent.  <u>Purdue</u> will be heard by the Supreme Court in the December term.  <u>Id.</u>  As Circuit Courts of Appeal addressing this highly controversial issue have long been split, the Supreme Court has decided that it needs to finally resolve the matter.

A stay of the plan would conserve funds which would otherwise be spent implementing a plan that may be invalidated should the Supreme Court rule against nonconsensual third party releases.  A stay is also appropriate given the current status of the Settlement Trust, which has paid no Survivors, has failed to timely provide Survivors access to documents to support their claims and to be able to decide whether to elect the Independent Review Option, has only yesterday submitted to the bankruptcy court proposed fraud prevention procedures for court approval,

2

Bankr. D.I. 11443, and has only yesterday produced a questionnaire and claims processing portal for the more than 70,000 Survivors who did not elect the Expedited Distribution. Lujan Claimants assume that no claims can be paid until after the bankruptcy court's approval of the Settlement Trust's proposed fraud prevention measures, to which Survivors have until September 15, 2023, to object, and the bankruptcy court will hear oral argument on September 26, 2023. Denial of a stay would irreparably harm Lujan Claimants should Debtors succeed in arguing equitable mootness, another highly controversial doctrine also without statutory foundation, which would deprive Lujan Claimants of appellate review even on issues where they would succeed on the merits. Allowing the plan to go forward would also result in the Trust payment of $3,500 to each of the 7,381 Survivors who elected the Expedited Distribution, which, ironically, would exceed the $2,581.47 average payout to Survivors who did not elect the Expedited Distribution and who would be subjected to a more rigorous claims review process, in the event the Supreme Court rules against nonconsensual third party releases.[1] Payments should be stopped and the status quo preserved.

    A stay of the appeal before the Third Circuit, including briefing, hearing, and deciding the appeal, would also conserve the parties' and judiciary resources, as

---

[1] $3,500 x 7,381 = $25,833,500. $219,000,000 BSA contribution - $25,833,500 = $193,166,500 / 74,828 Survivors who did not elect Expedited Distribution = $2,581.47.

Purdue may be decided while this appeal is pending before the Third Circuit and the decision would resolve a major issue on appeal.  A stay is also appropriate since, even without a stay, the appeals will not be fully briefed or heard for months.  Upon Debtors' motion on August 14, 2023, Dist. Ct. D.I. 84, Appellees were granted a 28-day extension of their brief deadline, Dist. Ct. D.I. 86; consequently, their briefs are due October 10, 2023, id., and Appellants' reply briefs are due October 31, 2023, FRAP 31(a)(1).  Thus, any oral argument before the Third Circuit on these appeals would likely occur around the same time or after the Supreme Court hears Purdue in the December term.  Rather than decide this highly controversial issue concurrently with Purdue, the appeals should be stayed to allow the legality of nonconsensual nondebtor releases to be conclusively determined by the Supreme Court, which would clarify the Third Circuit's final disposition of the appeals.

Given the impending October 2023 deadlines for Survivors to submit questionnaires and to make elections on the Independent Review Option and pay $20,000 each for such Option, Lujan Claimants request that the Court set an expedited briefing schedule on this motion.

In support of this motion, Lujan Claimants incorporate by reference as if set forth in full their original Emergency Motion for Stay Pending Appeal, their Reply, and their Opening Brief filed with the Third Circuit.  (Wolff Decl. Ex. 3.)

Lujan Claimants also join in and incorporate by reference as if set forth in full

4

the renewed motion of Dumas & Vaughn Claimants for stay of the bankruptcy plan and motion to stay appeal.

## ARGUMENT

On a motion to stay pending appeal, four factors are considered: "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP, 927 F.3d 763, 771 (3d Cir. 2019). The first two factors are "the most critical." Id. at 772.

**A. Lujan Claimants Are Likely to Succeed on the Merits.**

Lujan Claimants refer to their arguments in their Opening Brief, original Emergency Motion for Stay Pending Appeal, and Reply in support of the emergency motion. In addition, the fact that the Supreme Court in Purdue did not simply deny certiorari and allow the Second Circuit's grant of nonconsensual third party releases and injunctions to stand bodes well for Lujan Claimants' argument that the Bankruptcy Code does not authorize such releases and injunctions.

Also, on the issue of Debtors' automatic liability for indemnification of local councils and chartered organizations, a factor considered to determine whether there is subject matter jurisdiction over Survivors' claims against nondebtors, Debtors

5

themselves openly denied that they are liable for indemnification of chartered organizations, as they state in their court-approved and widely distributed Disclosure Statement to creditors:

> Certain Chartered Organizations have asserted contractual indemnity rights against the BSA for Scouting-related Abuse Claims. The Debtors dispute the validity of such purported indemnification Claims. While the Debtors do not believe any such valid indemnification Claims exist, any such purported indemnification Claims would be channeled to the Settlement Trust on the Effective Date.

(Wolff Decl. Ex. 4.)

Further, regarding whether Lujan Claimants have a reasonable chance of success on their argument that Guam's Direct Action Statute reverse preempts conflicting federal statutes and plan provisions pursuant to the McCarran-Ferguson Act, this Court previously acknowledged that its decision against Lujan Claimants on this issue "is not free from doubt" and that "Lujan Claimants have a better than negligible chance of being right on this issue." D.I. 193 ¶ 21.

### B. Lujan Claimants Will Be Irreparably Harmed Without a Stay.

Lujan Claimants are likely to suffer "irreparable" harm without a stay because of the substantial risk that the plan will be promptly consummated and their appeals will be dismissed as equitably moot. In re MTE Holdings, LLC, 2021 WL 4203339, at *4 (D. Del. Sept. 15, 2021). Irreparable harm exists where "there is a substantial risk of mootness, in addition to potential economic harm." In re MD Helicopters, Inc., 641 B.R. 96, 109 (D. Del. 2022). "[W]here the denial of a stay pending appeal

6

risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied." In re Los Angeles Dodgers LLC, 465 B.R. 18, 36 (D. Del. 2011); see also In re Country Squire Assocs. of Carle Place, L.P., 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (loss of appellate rights is the "quintessential form of" irreparable harm); CW Capital Asset Mgmt. v. Burcam Capital II, LLC, 2013 WL 3288092, at *7 (E.D.N.C. June 28, 2013) ("the loss of appellate rights alone constitutes irreparable harm").

Debtors will argue, albeit incorrectly, that this appeal is equitably moot. However, absent a stay, this argument becomes stronger since Expedited Distribution claimants will soon be paid by the Trust, as the Trust launched the claims processing portal for these 7,381 Survivors on August 4, 2023, https://www.scoutingsettlementtrust.com/s/, the Trust is "ready to process Expedited Distribution Abuse Claims," and the deadline to complete an Expedited Claims Questionnaire and to submit it to the Trust is October 3, 2023, (Wolff Decl. ¶ 2, Ex. 5).  Further, the Trust, just yesterday, after Lujan Claimants moved the Third Circuit for stay, announced that the Trust is now accepting non-expedited Trust Distribution Abuse Claims and that a claims processing portal has been established to facilitate the processing of claims, although there is currently no deadline to complete the Trust Claims Questionnaire.  (Wolff Decl. Ex. 6.)

Lujan Claimants will also be irreparably harmed as they will be forced to take action to preserve their claims to be compensated by the Trust, which may impact their present appeal. The one Lujan Claimant who elected the Expedited Distribution will be forced to participate in the claims process by submitting his questionnaire by October 3, 2023, even though he is now losing his claim against the Capuchin Franciscans[2]—a claim he retained prior to Debtors' settlement with the Roman Catholic Ad Hoc Committee during the confirmation hearing—yet receiving the same $3,500 consideration. The other 74 Lujan Claimants will be forced to decide by October 19, 2023, six months after the Effective Date, whether to elect and pay $20,000 each for the Independent Review Option which would allow them to be compensated beyond the maximum limits set by the Trust Distribution Procedures. A01037-1039. These choices will be made without the benefit of discovery which should be in the Document Appendix, A01040, but which is not, https://www.scoutingsettlementtrust.com/s/faq ("The Trust is in the process of developing a platform where your attorney can request documents or other information governed by the Document Appendix."). Also, in order to receive any payment, a Lujan Claimant will have to sign a release of his or her claims against protected parties including nondebtors, Bankr. D.I 10316 Ex. A at 9, 22, one of the

---

[2] These claims have value which was never analyzed by Debtors or Dr. Charles Bates, as one Lujan Claimant settled a scouting-related claim against the Capuchin Franciscans, a non-chartered organization Roman Catholic Entity, for $200,000.

main issues Lujan Claimants are appealing, and which the Supreme Court will resolve as to statutory authority. If a Lujan Claimant refuses to participate in the claims process in order to preserve his or her appeal, there is a risk that the appeal itself may become moot if the Lujan Claimant is not seeking payment on his or her claim. Also, if a Lujan Claimant does not participate in the claims process and then loses on appeal, he or she will receive no compensation from the Trust or through the TDP. Lujan Claimants should not be cornered into making these decisions which may negatively impact their appeal and/or their ability to receive compensation from the Trust or TDPs.

To be clear, Lujan Claimants do not concede that equitable mootness is doctrinally correct or would apply, and judges in the Third Circuit—including now-Supreme Court Justice Alito—have expressed considerable criticism about the doctrine. See, e.g., In re Continental Airlines, 91 F.3d 553, 568-70 (3d Cir. 1996) (en banc) (Alito, J., dissenting) (equitable mootness may be based on a misinterpretation of law); In re One2One Comcc'ns, LLC, 805 F.3d 428, 438-47 (3d Cir. 2015) (Krause, J., concurring) (equitable mootness is "adrift and in need of reconsideration by our Court" and should be "eliminat[ed], or at the very least, reform[ed]"); Pet. for Writ of Cert., U.S. Bank N.A. v. Windstream Holdings, Inc., No. 22-926 (filed Mar. 15, 2023) ("The judge-made doctrine of 'equitable mootness' allows Article III courts to shirk their bankruptcy oversight duties as mandated by"

the Supreme Court). But the very real risk that the equitable mootness doctrine could be applied to strip Lujan Claimants of their appellate rights demonstrates the potential for serious irreparable harm that warrants a stay.

### C. Stay Will Not Substantially Injure Other Parties.

While denying a stay would substantially injure Lujan Claimants, issuing a stay would not cause material harm to other parties. S.S. Body Armor I., 927 F.3d at 772 (courts balance the equities in granting a stay); San Diegans for the Mt. Soledad Nat'l War Mem'l v. Paulson, 548 U.S. 1301, 1303 (2006) (harm of slight delay is insufficient to deny stay pending appeal).

A stay will not impair Debtors' ability to further consummate the plan if the district court's order is ultimately affirmed on appeal. Contributions to the Settlement Trust are fixed, and the settlement agreements between the plan supporters would remain in effect regardless of any stay.

Other Survivors would not be irreparably harmed because a stay would ensure that their claims against nondebtors are treated lawfully, in accordance with the Supreme Court's decision in Purdue. Also, the plan does not give fair compensation. An average of less than $30,000 per Survivor is not fair compensation. Further, a stay preserves each Survivor's valuable claims against nondebtors.

The Trust is also not ready to fully process and pay non-Expedited Distribution claims, as it has only yesterday made available a claims processing

portal and questionnaire, has only yesterday proposed fraud prevention procedures to which Survivors have until September 15, 2023, to object and the bankruptcy court must approve, and has not provided access to discovery in the Document Appendix. Survivors with these claims will not be harmed by the requested stay, since the Trust is not ready to process and pay their claims. A stay would instead be advantageous to Survivors, since they will not be forced to make a decision and make $20,000 payment each on the Independent Review Option without the discovery that should be in the Document Appendix but is not.

Additionally, regarding Survivors who elect the Expedited Distribution, there is no date set by the Trust for payment of their expedited claims. https://www.scoutingsettlementtrust.com/s/faq ("Currently there is no set payment date, but we anticipate paying these Abuse Claims first. We will update these FAQs with more information when it is available.").

**D. The Public Interest Weighs Heavily in Favor of a Stay.**

The public has a strong interest in "correct application of the law," In re Nw. Missouri Holdings, Inc., 2015 WL 3638000, at *3 (D. Del. June 11, 2015), "especially where property rights are at stake," In re Revel AC, Inc., 802 F.3d 558, 573 (3d Cir. 2015), and BSA is advancing arguments never before accepted in a mass tort bankruptcy case, S. S. Body Armor I, 927 F.3d at 772 ("public interest … calls for gauging consequences beyond the immediate parties"). The law to be set

11

forth by the Supreme Court should be correctly applied to Survivors' claims against nondebtors. Also, review of the appeal on the merits benefits not just the parties in this case but it also clarifies the law for others.

The public has a compelling interest in ensuring that Survivors of child sexual abuse are treated fairly and that those entities responsible for their abuse be held to account. The plan would shield over 100,000 entities from child sexual abuse liability even though Survivors never agreed to their release and these entities never filed for bankruptcy protection themselves. Survivors deserve to have their claims be treated in accordance with the Supreme Court's ultimate ruling in <u>Purdue</u>; they deserve a fair shake.

The public also has a strong interest in preserving the supremacy of states and territories in regulating the business of insurance. Guam's Direct Action Statute was enacted to facilitate the compensation of those members of the public who are injured in Guam, by allowing them to directly sue insurers under policies that cover their injuries. The plan releases and enjoins direct action claims against insurers and the public deserves to know whether this is allowed by law.

**E. No Bond is Required.**

Because other parties will not suffer substantial harm from the requested stay but would instead benefit from the Supreme Court's ruling, and confirmation of the plan "does not require any monetary payment" from Lujan Claimants, there is no

"need for a bond." In re Los Angeles Dodgers LLC, 465 B.R. at 38.  In fact, no bond was ever required by the Supreme Court for a stay in Purdue, even though the contributions for creditors exceed $6 billion in that case.

Based on the foregoing, Lujan Claimants respectfully request that the Court stay implementation of the bankruptcy plan and stay these appeals, pending the U.S. Supreme Court's review of the Purdue appeal.

| | |
|---|---|
| DATED:  August 18, 2023 | Respectfully submitted, |

/s/ Christopher D. Loizides
Christopher D. Loizides
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
Email: loizides@loizides.com

and

LUJAN & WOLFF LLP

/s/ Delia Lujan Wolff
Delia Lujan Wolff
Suite 300, DNA Bldg.
238 Archbishop Flores St.
Hagatna, Guam 96910
Phone: (671) 477-8064/5
Facsimile: (671) 477-5297
Email:  dslwolff@lawguam.com

*Attorneys for Lujan Claimants*