## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case No. 20-10343 (LSS) |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, et al.,<br><br>Appellants,<br><br>v.<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | (Jointly Administered)<br><br><br>Case No. 22-cv-01237-RGA |

## MOTION OF THE CERTAIN INSURERS
## FOR STAY OF FURTHER IMPLEMENTATION OF PLAN
## PENDING SUPREME COURT DECISION IN *PURDUE*

1.     The undersigned Certain Insurers[1] move this Court for a stay of further implementation of the Plan pending the Supreme Court's forthcoming resolution of *Harrington v. Purdue Pharma, L.P.*, Case No. 23-124 (2023) ("*Purdue*").  *Purdue* presents a critical question of bankruptcy law also implicated in this case—the permissibility of non-consensual releases to non-debtors—that may overturn Third Circuit precedent and determine whether the Plan that this Court affirmed on March 28, 2023 can move forward.

---

[1] Defined terms have the meanings set forth in the Certain Insurers' briefs before this Court at D.I. 45 & 109. References to "D.I." refer to filings in the District Court.

2.      Since the Plan was presented to this Court, the Supreme Court has called into question the authority of bankruptcy courts to grant non-consensual releases to non-debtors such as the Local Councils, Chartered Organizations, and Settling Insurers who received releases under the Plan.  On August 10, 2023, the Supreme Court granted certiorari to resolve a circuit split on non-consensual non-debtor releases.  *See* Certiorari Granted, *Purdue*, No. 23A87 (Aug. 10, 2023); *see also* D.I. 150 at 60.  The Plan in this action and the plan in *Purdue* are virtually identical in their architecture: both have created settlement trusts funded with contributions from debtors and non-debtors and both provide for non-consensual releases of non-debtors.

3.      The Supreme Court set an expedited briefing schedule in *Purdue*, with petitioner's brief due on September 20, 2023, respondents' briefs on October 20, 2023, and reply briefs due 30 days thereafter (or 10 days prior to argument).  The Supreme Court scheduled argument in *Purdue* for the December 2023 argument session and stayed implementation of the *Purdue* bankruptcy plan pending this expedited review, signaling "a fair prospect that the Court would reverse" the Second Circuit decision approving the release to the non-debtors.  *See Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring).  The Certain Insurers respectfully submit that this Court should follow suit and stay further

implementation of the Plan until the Supreme Court has had an opportunity to examine this critical issue.

4.      The standard for a stay pending appeal is readily met here.  Given recent developments in *Purdue* and the Supreme Court's stay of that bankruptcy plan, there is more than a reasonable chance that the Supreme Court will declare non-consensual non-debtor releases, such as those in the Plan, impermissible under the Bankruptcy Code.  Such a decision would undermine the foundation of the Confirmation Order and almost certainly result in termination or substantial modification of this Plan.

5.      Against this backdrop, the Trustee is moving rapidly ahead to implement the Plan in ways that directly implicate the non-debtor releases.  The Trustee has initiated the claims distribution process and opened the claim portal to 82,000 claimants, including for thousands of claims against the non-debtor Local Councils and Chartered Organizations—claims that in all likelihood will not be resolved under the current Plan if the Supreme Court strikes down non-debtor releases.  Pushing forward on claims distributions at this juncture harms all parties by wasting resources on implementing a Plan that may not survive the Supreme Court's decision in *Purdue*.

6.      The Certain Insurers take no position on the merits of the arguments in the *Purdue* appeal here.  The Supreme Court's consideration of the appeal is nevertheless plainly a significant development since this Court last considered and

denied the parties' motions to stay on April 11, 2023.  *See* D.I. 193.  As set forth in the motions recently filed by the Lujan Claimants (D.I. 222) and the Dumas & Vaughn Claimants (D.I. 223), the question presented in *Purdue* not only has the potential to invalidate a foundational principle of the Plan and Confirmation Order, but it will also have a profound impact on the issues presented on the appeal to the Third Circuit in this case.  The Certain Insurers move separately to inform this Court of the harms that the Certain Insurers are likely to suffer if implementation of the Plan continues during the pendency of *Purdue*.

7.    Since confirmation, the Trustee has sued around 90 non-settling insurers in the U.S. District Court for the Northern District of Texas under insurance policies issued not just to BSA, but also to the non-debtor Local Councils, arguing that their coverage defenses for abuse claims have been abrogated by the confirmed Plan.  Complaint, *Houser v. Allianz*, Case No. 23-01592 (N.D. Tex. July 17, 2023), ECF No. 1 (the "Coverage Complaint").  The non-debtor Local Councils assigned these policies to the Trust in exchange for broad releases.  If the releases provided to these non-debtors in the Plan are invalidated by the Supreme Court's decision in *Purdue*, the non-debtors would presumably seek to recapture their policies so they are protected from claims that otherwise would have been covered by the releases, and the Trustee will lack not only the ability to resolve the underlying abuse claims

through the BSA distribution process, but also the authority to pursue insurance recoveries for those abuse claims on behalf of the non-debtors.

8.     Before moving forward with implementation of the Plan, the reviewing courts and all parties involved in the Plan should have the benefit of the Supreme Court's impending decision, which will clarify the law on non-debtor releases in bankruptcy plans under Chapter 11 of the Bankruptcy Code.

## **BACKGROUND**[2]

9.     This case involves the Chapter 11 plan of the Boy Scouts of America ("BSA"), which provides in part for resolution of sexual abuse claims (the "Plan"). *See* D.I. 150 at 5.  "The Plan 'channels' to the Settlement Trust all Abuse Claims against BSA, the Related Non-Debtor Entities, the Local Councils, certain Chartered Organizations, and those covered by insurance policies issued by the Settling Insurance Companies and provides for coextensive nonconsensual releases of the channeled Abuse Claims[.]"  *Id.* at 5-6.  "The Channeling Injunction and Releases are the 'cornerstones of the Plan,' and are necessary to ensure an equitable process by which abuse Survivors' claims will be administered and paid" by the Trustee.  *Id.* at 6; *see id.* at 19.

---

[2] The Certain Insurers provided detailed factual background in their briefing before this Court and the Third Circuit and incorporate those submissions by reference.  Given the Court's instruction not to submit papers that are available on public dockets, the Certain Insurers have not attached copies of the appeal papers or the challenged decisions and orders from the bankruptcy court and this Court.  The Certain Insurers will provide copies of any such papers requested by the Court.

10.     On March 28, 2023, this Court affirmed confirmation of the Plan.  D.I. 150.  As relevant here, the Court concluded that the Plan's assignment of insurance rights does not impermissibly abrogate the insurers' contracts and that the Plan was proposed in good faith.  *See id.* at 75-79, 123-155.  Because an automatic stay under Federal Rule of Bankruptcy Procedure 8025 was set to expire on April 11, 2023, beginning on March 31, 2023, the Certain Insurers and other appellants filed emergency motions for a stay, arguing that their appeals raise significant questions and that, in the absence of a stay, BSA may argue it has substantially consummated the Plan during appeals to the Third Circuit, creating a substantial risk that the Third Circuit may decline to decide the merits of their appeals based on the "equitable mootness" doctrine.  *See* D.I. 152 at 2, 7-12.  Expedited briefing concluded on April 7, 2023.

11.     On April 11, 2023, this Court denied the stay motions, concluding among other things that "the Plan's clear language preserves all of the Insurers' rights and defenses under their policies. . . ."  D.I. 193 at 7.  After granting a temporary emergency stay, the Third Circuit also declined a stay pending appeal. *See, e.g.*, *In re Boy Scouts of America*, No. 23-1668 (3d Cir. Apr. 19, 2023), ECF No. 25.  The Plan became effective on April 19, 2023.  *See* Bankr. D.I. 11119.  The parties proceeded to merits briefing before the Third Circuit, with appellants filing

opening briefs on July 24, 2023, and BSA and the plan proponents proceeded to commence implementation of the Plan.

12.    On July 17, 2023, the Trustee, acting as assignee of BSA and the Local Councils, filed an action in federal court against the Certain Insurers seeking a declaration that the Certain Insurers' contractual rights are now abrogated by the confirmed Plan and that they are liable for full coverage for the Abuse Claims, subject only to applicable attachment points and limits of liability.  Coverage Compl. ¶¶ 119, 121, 124, 137.

13.    Then, on August 10, 2023, the Supreme Court agreed to hear an appeal in *Purdue* to resolve the question of whether the Bankruptcy Code authorizes a court to approve, as part of a plan of reorganization under Chapter 11 of the Bankruptcy Code, a release that extinguishes claims held by non-debtors against non-debtor third parties, without the claimants' consent.  In granting this review, the Supreme Court recalled and stayed the mandate of the Second Circuit that affirmed the confirmation of Purdue's bankruptcy plan.  Certiorari Granted, *Purdue*, No. 23A87 (Aug. 10, 2023).  The Supreme Court has indicated that it will hear argument in *Purdue* on an expedited timeframe during the December 2023 argument session.  *Id.*

## **ARGUMENT**

14.    The Court should stay further implementation of the Plan until the Supreme Court clarifies the governing law in *Purdue*.  In considering a motion to

stay or enjoin pending an appeal, the Court considers four factors: "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re S.S. Body Armor I, Inc.*, 927 F.3d 763, 771 (3d Cir. 2019) (alteration and quotation marks omitted).  The first two factors are "the most critical." *Id.* at 772 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  Here, all four factors weigh heavily in favor of a brief stay of Plan implementation.

## I.   THE CERTAIN INSURERS ARE LIKELY TO SUCCEED ON THE MERITS.

15.    It is now reasonably probable that the Supreme Court will invalidate the non-debtor releases that BSA has described as "essential to the success of the Plan," casting the future of the Plan in substantial doubt.  *See Purdue*, Case No. 23-124; D.I. 66 at 160.[3]  That the Supreme Court stayed the *Purdue* bankruptcy plan from moving forward when presented with the same issue strongly counsels in favor of this Court staying the Plan temporarily.  The Supreme Court's stay order in *Purdue* necessitated a finding that the appellants had "a ***fair prospect*** that the Court would reverse" confirmation of a plan releasing claims against non-debtors.  *Merrill*,

---

[3] The Certain Insurers take no position on the merits of the arguments in the *Purdue* appeal here, but reserve all rights arising from the resolution of that appeal by the Supreme Court.

142 S. Ct. at 880 (Kavanaugh, J., concurring) (emphasis added). A "fair prospect" that the *Purdue* appeal will succeed means a "reasonable chance" of success here as well, as this Plan is structured in the same manner as the plan under consideration in *Purdue*. *See In re S.S. Body Armor I*, 927 F.3d at 772 (movant need only demonstrate "a reasonable chance, or probability, of winning") (quotation omitted).

16.     In *Purdue*, the United States Solicitor General persuaded the Supreme Court that there is a fair prospect that non-debtor releases "cannot be reconciled with the Bankruptcy Code." *See* Application for Stay, *Purdue*, Case No. 23-124, Appl. No. 23A87, at 18 (July 28, 2023). The Solicitor General argues this contention is supported by the "basic structure" of the Bankruptcy Code and the fact that Section 524(g) is inapplicable in the *Purdue* case. *Id.* at 19. In seeking Supreme Court review, the Solicitor General cited this case as an example of how courts often authorize nonparty releases in mass tort bankruptcies. *See id.* at 16 (citing *In re Boy Scouts of Am. & Del. BSA LLC*, 650 B.R. 87, 135-43, 185 (D. Del. 2023)).

17.     The Trustee's recently filed lawsuit in the U.S. District Court for the Northern District of Texas confirms that resolution of the issues under consideration in *Purdue* will impact the Certain Insurers. *See* 3d Cir., Case No. 23-1668, ECF No. 67 at 3-4, 34. In its coverage lawsuit, the Trustee is purporting to act on behalf of the Local Councils to seek coverage under policies assigned by non-debtors, including the Local Councils, in exchange for releases. Coverage Compl. ¶¶ 1, 110.

Thus, the Supreme Court's stay of the *Purdue* bankruptcy plan to consider non-debtor releases indicates that there is a reasonable chance that the Trustee's pursuit of the Certain Insurers under policies purportedly assigned by the Local Councils will also fail.

18.     Against this backdrop, it is entirely possible that the Supreme Court in *Purdue* will substantially reshape the way in which mass torts are treated in bankruptcy proceedings, with direct implications for the Certain Insurers in this case. Accordingly, the Court should stay further implementation of the Plan until the Supreme Court issues its ruling.

## II.     THE CERTAIN INSURERS WILL BE IRREPARABLY HARMED IN THE ABSENCE OF A STAY.

19.     As shown above, absent a stay, the Certain Insurers are likely to suffer irreparable harm from further implementation of the Plan pending the Supreme Court's decision in *Purdue*.

20.     It is undisputed that the hallmark of the Plan is the channeling of all Abuse Claims to the Trust, which is funded in large measure by non-debtors in exchange for releases. *See* D.I. 150 at 5, 16-17 (describing that the Trust is estimated to contain at least $2.46 billion in non-contingent assets, including contributions from the Local Councils ($640 million) and Settling Insurers (more than $1.6 billion)). These non-contingent contributions are now subject to a major contingency. If the Supreme Court finds that non-debtor releases are not permitted

by the Bankruptcy Code, the releases provided to the non-debtors and the contributions made in exchange for those releases will need to be unwound. These contributions were the result of "nearly two years" of mediation (D.I. 150 at 5), and there is no telling what contributions, if any, non-debtors will make to the Trust if they are no longer able to receive releases following the Supreme Court's decision in *Purdue*.

21.     The Trustee is taking steps to administer the Trust and to begin paying out Claims. For example, on August 17, 2023, a week after the Supreme Court's grant of certiorari in *Purdue*, the Trustee announced that she would open the claims processing portal to the 82,000 Claimants. "Letter from the Settlement Trustee," Scouting Settlement Trust (Aug. 17, 2023), https://www.scoutingsettlementtrust.com/s. Doing so risks irreparable harm to all parties involved in the Plan because the amounts of the distributions made for Abuse Claims are premised on contributions to the Trust that are now seriously in doubt. If the Supreme Court finds that nonconsensual releases to non-debtors are not permissible, the claims distributions in a post-*Purdue* plan will be significantly different than what is in the current Plan. Even starting the claims distribution process could require significant legal and administrative costs to the Trust and other parties impacted by the bankruptcy—costs that will be wasted if the Plan needs to be restructured based on the Supreme Court's decision in *Purdue*. This Court should

11

stay further implementation of the Plan until the parties have certainty on the scope and amount of the contributions to the Trust from non-debtors.

22.    The Trustee's actions to effectuate the Plan and begin paying claims from the Trust, while simultaneously seeking payment from the Certain Insurers on the theory that Certain Insurers' coverage defenses have been abrogated, exacerbates the risk that BSA will argue, however incorrectly, that the appeals pending before the Third Circuit should be dismissed as equitably moot.  *See In re MTE Holdings, LLC*, 2021 WL 4203339, at *4 (D. Del. Sept. 15, 2021).  While the Certain Insurers expressly deny that the equitable mootness doctrine could apply here, they should not have to risk losing the full and fair consideration of the significant issues presented on appeal to the Third Circuit when the future of the Plan is in doubt. Staying further implementation of the Plan mitigates this risk and ensures that the Plan will be considered on its merits and in accordance with applicable precedent based on the forthcoming decision from the Supreme Court.

## III.    THE BALANCE OF EQUITIES FAVORS A STAY.

23.    While denying a stay of further implementation of the Plan would significantly and irreparably harm the Certain Insurers and the other movants, issuing the stay would not cause substantial harm to other parties.  *See S.S. In re Body Armor I*, 927 F.3d at 772 (courts balance the equities in granting a stay). The Trustee has already made progress in setting up the Trust.  If a stay is granted but

ultimately dissolved, the Trustee can resume her work.   Any delay should be relatively short because the Supreme Court has indicated that it will hear argument in *Purdue* in the December argument session.   *See San Diegans for the Mt. Soledad Nat'l War Mem'l v. Paulson,* 548 U.S. 1301, 1303 (2006) (slight delay insufficient to deny stay pending appeal).

## IV.   THE PUBLIC INTEREST WEIGHS HEAVILY IN FAVOR OF A STAY.

24.   Finally, the public interest favors entry of the requested stay by allowing for efficient resolution of the serious issues at stake in not one, but two appeals.   The Supreme Court's decision in *Purdue* implicates weighty questions regarding fundamental interpretation of the Bankruptcy Code and the permissibility of nonparty releases that are regularly incorporated into mass tort bankruptcy proceedings, including this one.   Given that the public has a strong interest in "correct application of the law" (*In re Nw. Missouri Holdings, Inc.*, 2015 WL 3638000, at *3 (D. Del. June 11, 2015)), "especially where property rights are at stake" (*In re Revel AC, Inc.*, 802 F.3d 558, 573 (3d Cir. 2015)), the public has an interest in a short stay so that a BSA plan can be implemented pursuant to the correct governing legal standards.

25.   Continuing to implement the Plan risks a "one step forward, two steps back" approach that could impose inefficiencies on the process by wasting time and resources of the parties and the judiciary.   Proceeding expeditiously with

implementation of the Plan would be inconsistent with one of the primary aims of the Bankruptcy Code, which is to preserve the interests of creditors and other stakeholders by maximizing return on debts in an orderly, efficient, and equitable fashion.  *Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 493 (3d Cir. 1997).  Instead, a stay facilitates this aim by ensuring that the Plan is not premised on non-debtor releases that may be struck down by the Supreme Court. Thus, the requested relief furthers the public's interest in preserving and maximizing resources until *Purdue* provides a clear path forward in applying the correct governing law to BSA's bankruptcy.

## CONCLUSION

26.     For the foregoing reasons, the Court should stay any further implementation of the Plan until the Supreme Court's decision in *Purdue* is issued.

Dated:        Wilmington, Delaware
              August 25, 2023

                                           Respectfully Submitted,


Theodore J. Boutrous Jr. (*pro hac vice*)      /s/ Deirdre M. Richards
Richard J. Doren (*pro hac vice*)              Deirdre M. Richards
Blaine H. Evanson (*pro hac vice*)             (DE Bar No. 4191)
GIBSON, DUNN & CRUTCHER LLP                    FINEMAN KREKSTEIN
333 South Grand Avenue                         & HARRIS PC
Los Angeles, California 90071                  1300 N. King Street
tboutrous@gibsondunn.com                       Wilmington, DE 19801
rdoren@gibsondunn.com                          Telephone: (302) 538-8331
bevanson@gibsondunn.com                        Facsimile: (302) 394-9228
                                               drichards@finemanlawfirm.com

Michael A. Rosenthal (*pro hac vice*)
Mitchell A. Karlan (*pro hac vice*)            Susan N.K. Gummow
James Hallowell (*pro hac vice*)                (*pro hac vice*)
Keith R. Martorana (*pro hac vice*)            FORAN GLENNON PALANDECH
Seth M. Rokosky (*pro hac vice*)               PONZI & RUDLOFF P.C.
GIBSON, DUNN & CRUTCHER LLP                    222 N. LaSalle St., Suite 1400
200 Park Avenue                                Chicago, Illinois 60601
New York, New York 10166                       sgummow@fgppr.com
mrosenthal@gibsondunn.com
mkarlan@gibsondunn.com
jhallowell@gibsondunn.com
kmartorana@gibsondun.com
srokosky@gibsondunn.com


*Counsel for National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and the Insurance Company of the State of Pennsylvania*

Joseph T. Baio (*pro hac vice*)
Christopher J. St. Jeanos (*pro hac vice*)
Charles D. Cording (*pro hac vice*)
Patricia O. Haynes (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000

*Additional Counsel for National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and the Insurance Company of the State of Pennsylvania*

| | |
|---|---|
| /s/ Marcy J. McLaughlin Smith | /s/ Marcy J. McLaughlin Smith |
| David M. Fournier (DE Bar No. 2812) | David M. Fournier (DE Bar No. 2812) |
| Marcy J. McLaughlin Smith (DE No. 6184) | Marcy J. McLaughlin Smith (DE No. 6184) |
| TROUTMAN PEPPER HAMILTON SANDERS LLP | TROUTMAN PEPPER HAMILTON SANDERS LLP |
| Hercules Plaza, Suite 5100 | Hercules Plaza, Suite 5100 |
| 1313 N. Market Street | 1313 N. Market Street |
| P.O. Box 1709 | P.O. Box 1709 |
| Wilmington, DE 19899-1709 | Wilmington, DE 19899-1709 |
| Telephone: 302.777.6500 | Telephone: 302.777.6500 |
| Facsimile: 302.421.8390 | Facsimile: 302.421.8390 |
| david.fournier@troutman.com | david.fournier@troutman.com |
| marcy.smith@troutman.com | marcy.smith@troutman.com |
| | |
| -and- | -and- |
| | |
| Harris B. Winsberg (*pro hac vice*) | Harris B. Winsberg (*pro hac vice*) |
| Matthew G. Roberts (*pro hac vice*) | Matthew G. Roberts (*pro hac vice*) |
| PARKER, HUDSON, RAINER & DOBBS LLP | PARKER, HUDSON, RAINER & DOBBS LLP |
| 303 Peachtree Street NE | 303 Peachtree Street NE |
| Suite 3600 | Suite 3600 |
| Atlanta, GA 30308 | Atlanta, GA 30308 |
| Telephone: 404.420.4313 | Telephone: 404.420.4313 |
| Facsimile: 404.522.8409 | Facsimile: 404.522.8409 |
| hwinsberg@phrd.com | hwinsberg@phrd.com |
| mroberts@phrd.com | mroberts@phrd.com |
| | |
| -and- | -and- |
| | |
| Margaret H. Warner (*pro hac vice*) | Todd C. Jacobs (*pro hac vice*) |
| Ryan S. Smethurst (*pro hac vice*) | John E. Bucheit (*pro hac vice*) |
| Alex M. Spisak (*pro hac vice*) | PARKER, HUDSON, RAINER & DOBBS LLP |
| McDERMOTT WILL & EMERY LLP | Two N. Riverside Plaza |
| The McDermott Building | Suite 1850 |
| 500 North Capitol Street, NW | Chicago, IL 60606 |
| Washington, DC 20001-1531 | Telephone: 312.447.3306 |
| Telephone: 202.756.8228 | tjacobs@phrd.com |

Facsimile: 202.756.8087
mwarner@mwe.com
rsmethurst@mwe.com
aspisak@mwe.com

*Counsel for Allianz Global Risks US Insurance Company*

jbucheit@phrd.com

*Counsel for National Surety Corporation and Interstate Fire & Casualty Company*

/s/ Kathleen M. Miller

Kathleen M. Miller (No. 2898)
SMITH, KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
kmiller@skjlaw.com

Ronald P. Schiller (*pro hac vice*)
Matthew A. Hamermesh *(pro hac vice)*
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
T: (215) 568-6200
F: (215) 568-0300
E: rschiller@hangley.com
mhamermesh@hangley.com

*Counsel for Arch Insurance Company*

/s/ Paul Logan

Paul Logan (No. 3339)
POST & SCHELL, P.C.
300 Delaware Avenue, Suite 1380
Wilmington, DE 19801
Telephone: (302) 251-8856
Email: plogan@postschell.com

John C. Sullivan (*pro hac vice*)
Kathleen K. Kerns (*pro hac vice*)
POST & SCHELL, P.C.
Four Penn Center – 13th Floor
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103
Telephone: (215) 587-1000
jsullivan@postschell.com
kkerns@postschell.com

-and-

George R. Calhoun (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue, N.W. Suite 650
Washington, DC 20006
Telephone: (202) 840-8758
george@ifrahlaw.com

*Counsel for Argonaut Insurance Company and Colony Insurance Company*

| /s/ Michael J. Joyce | /s/ Maria Aprile Sawczuk |
|---|---|
| Michael J. Joyce (No. 4563) | Maria Aprile Sawczuk (DE #3320) |
| JOYCE, LLC | GOLDSTEIN & MCCLINTOCK |
| 1225 King Street, Suite 800 | LLLP |
| Wilmington, DE 19801 | 501 Silverside Road |
| Telephone: (302) 388-1944 | Wilmington, DE 19809 |
| Email: mjoyce@mjlawoffices.com | 302-444-6710 |
| | marias@goldmclaw.com |

-and-

-and-

Kevin Coughlin (pro hac vice)
Lorraine Armenti (pro hac vice)
Michael Hrinewski (pro hac vice)
COUGHLIN MIDLIGE &
GARLAND, LLP
350 Mount Kemble Avenue
PO Box 1917
Morristown, NJ 07962
Telephone: (973) 267-0058
Facsimile: 973-267-6442
kcoughlin@cmg.law
larmenti@cmg.law
mhrinewski@cmg.law

Laura McNally (pro hac vice)
Emily Stone (pro hac vice)
LOEB & LOEB LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
312-464-3155
lmcnally@loeb.com
estone@loeb.com

*Counsel for The Continental Insurance Company and Columbia Casualty Company*

-and-
Britton C. Lewis
John M. Flynn
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth Street
P.O. Box 540
Greensboro, NC 27401
Telephone: (336) 478-1146
Facsimile: (336) 478-1145
jmf@crlaw.com
bcl@crlaw.com

*Counsel for Arrowood Indemnity Company*

/s/ Brian A. Sullivan

/s/ Brian A. Sullivan
Brian A. Sullivan (No. 2098)
WERB & SULLIVAN
LEGAL ARTS BUILDING
1225 N. King Street
Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-1100
Cell: (302) 757-9932
Facsimile: (302) 652-1111
Email: bsullivan@werbsullivan.com

John E.W. Baay II (pro hac vice)
GIEGER LABORDE &
LAPEROUOSE, LLC
701 Poydras Street
Suite 4800
New Orleans, LA 70139
Tel.: 504-561-0400
Fax: 504-561-1011
Email: jbaay@glllaw.com

-and-

William H. White Jr (pro hac vice)
KIERNAN TREBACH LLP
1233 20th Street, NW
8th Floor
Washington, DC 20036
Tel.: 202-712-7000
Fax: 202-712-7100
Email: wwhite@kiernantrebach.com

*Counsel for Gemini Insurance
Company*

/s/ Kathleen M. Miller

Kathleen M. Miller (DE Bar No. 2898)
SMITH, KATZENSTEIN & JENKINS
LLP
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Email: kmiller@skjlaw.com

-and-

Mary E. Borja (pro hac vice)
Gary P. Seligman (pro hac vice)
Ashley L. Criss (pro hac vice)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Email: mborja@wiley.law
gseligman@wiley.law
acriss@wiley.law

*Counsel for General Star Indemnity
Company*

/s/ Bruce W. McCullough

Bruce W. McCullough (No. 3112)
BODELL BOVÉ, LLC
1225 N. King Street, Suite 1000
Wilmington, Delaware 19801-3250
Telephone: (302) 655-6749
bmccullough@bodellbove.com

-and-

Bruce D. Celebrezze (pro hac vice)
CLYDE & CO US LLP
150 California Street | 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
bruce.celebrezze@clydeco.us

Konrad R. Krebs (pro hac vice)
CLYDE & CO US LLP
340 Mt. Kemble Avenue | Suite 300
Morristown, NJ 07960
Telephone: (973) 210-6700
Facsimile: (973) 210-6701
konrad.krebs@clydeco.us

-and-

David Christian (pro hac vice)
DAVID CHRISTIAN ATTORNEYS
LLC
105 W. Madison St., Suite 1400
Chicago, Illinois 60602
Telephone: (312) 282-5282
dchristian@dca.law

*Counsel for Great American Assurance
Company, f/k/a Agricultural
Insurance Company; Great American
E&S Insurance Company, f/k/a*

/s/ Kathleen M. Miller

Kathleen M. Miller (DE Bar No. 2898)
SMITH, KATZENSTEIN &
JENKINS LLP
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Email: kmiller@skjlaw.com

-and-

Lloyd A. Gura (pro hac vice)
Pamela J. Minetto (pro hac vice)
MOUND COTTON WOLLAN &
GREENGRASS LLP
One New York Plaza 44th Floor
New York, NY 10004
Tel: (212) 804-4282
lgura@moundcotton.com
pminetto@moundcotton.com

*Counsel for Indian Harbor Insurance
Company, on behalf of itself and as
successor in interest to Catlin Specialty
Insurance Company*

*Agricultural Excess and Surplus*
*Insurance Company; and Great*
*American E&S Insurance Company*

/s/ R. Karl Hill
R. Karl Hill (DE Bar No. 2747)
SEITZ, VAN OGTROP & GREEN,
P.A.
222 Delaware Avenue
Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-0600
khill@svglaw.com

-and-

CHOATE, HALL & STEWART LLP
Douglas R. Gooding (*pro hac vice*)
Jonathan D. Marshall (*pro hac vice*)
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

-and-

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO PC
Kim V. Marrkand (*pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
kvmarrkand@mintz.com

*Counsel for Liberty Mutual
Insurance Company, The Ohio
Casualty Insurance Company,
Liberty Insurance Underwriters, Inc.
and Liberty Surplus Insurance
Corporation*

/s/ Marla S. Benedek
Marla S. Benedek (No. 6638)
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2024
Facsimile: (302) 250-4498
mbenedek@cozen.com

*Counsel for Traders and Pacific
Insurance Company, Endurance
American Specialty Insurance
Company, and Endurance American
Insurance Company*

23

/s/ Stephen M. Miller

Stephen M. Miller (DE Bar No. 2610)
Carl N. Kunz, III (DE Bar No. 3201)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
smiller@morrisjames.com
ckunz@morrisjames.com

-and-

Margaret M. Anderson (pro hac vice)
Ryan T. Schultz (pro hac vice)
Adam A. Hachikian (pro hac vice)
Kenneth M. Thomas (pro hac vice)
FOX SWIBEL LEVIN & CARROLL
LLP
200 W. Madison Street, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 224-1200
Facsimile: (312) 224-1201
panderson@foxswibel.com
rschultz@foxswibel.com
ahachikian@foxswibel.com
kthomas@foxswibel.com

*Counsel for Old Republic Insurance
Company*

/s/ Louis J. Rizzo, Jr.

Louis J. Rizzo, Jr. (DE Bar No. 3374)
REGER RIZZO & DARNALL LLP
1521 Concord Pike Suite 305
Brandywine Plaza West
Wilmington DE 19803
Telephone: (302) 477-7100
Facsimile: (302) 652-3620
lrizzo@regerlaw.com

*Counsel for Travelers Casualty and
Surety Company, Inc. (f/k/a Aetna
Casualty & Surety Company), St. Paul
Surplus Lines Insurance Company and
Gulf Insurance Company*

## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8013(f). A proportionally spaced typeface was used, as follows:

> Name of typeface: Times New Roman
> Point size: 14
> Line spacing: Double

The total number of words in the motion, excluding the items set forth in Federal Rule of Bankruptcy Procedure 8015(g), is 3,188.