IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* <br><br> Boy Scouts of America and Delaware BSA, LLC, <br><br>         Debtors. | Chapter 11 <br><br> Case No. 20-10343 (LLS) <br><br> (Jointly Administered) |
| National Union Fire Insurance Co. of Pittsburgh, PA, *et al.*, <br>         Appellants. <br> v. <br><br> Boy Scouts of America and Delaware BSA, LLC, <br><br>         Appellees. | Case No. 22-cv-01237-RGA <br><br> (Jointly Consolidated)[1] |

**DUMAS & VAUGHN CLAIMANTS REPLY IN SUPPORT OF THEIR EMERGENCY RENEWED MOTION FOR STAY OF BANKRUPTCY PLAN AND MOTION TO STAY APPEAL**

INTRODUCTION

Since this Court denied a stay in April, there have been significant developments that justify a stay now.  First, the Supreme Court will

---

[1] Case numbers 22-cv-01237, 22-cv-01238, 22-cv-01239, 22-cv-01240, 22-cv-01241, 22-cv-01242, 22-cv-01243, 22-cv-01244, 22-cv-01245, 22-cv-01246, 22-cv-01247, 22-cv-01249, 22-cv-01250, 22-cv-01251, 22-cv-01252, 22-cv-01258, and 22-cv-01263 have been jointly consolidated under 22-cv-01237.  The D & V Claimants' appeal is docketed at 22-cv-01249.

1

decide the exact issue of the legality of nonconsensual third-party releases in *Harrington v. Purdue Pharma, L.P.*, Case No. 23-124 (2023). Whether the BSA plan is legal depends on what the Supreme Court rules. Second, now that the plan has "gone effective," an equitable mootness argument grows stronger every day. Implementation is still in initial stages and no money will be paid to abuse claimants until after October 3, the deadline for expedited claims. The time to stay further implementation is now.

    Contrary to the vehement and varied protestations of plan supporters, D&V Claimants are not asking this Court to nullify or unwind BSA's plan of reorganization. It is for the Third Circuit to rule on the merits of Appellants' third-party release arguments and Appellees' mootness arguments. The only issue presented is whether this Court should preserve the status quo by temporarily staying further implementation until the Supreme Court rules on the exact issue in *Purdue*.

    BSA, this Court, and the Third Circuit have an obligation to ensure the plan is lawful. Legality is more questionable now that the Supreme Court will rule on nonconsensual third-party releases. Lower

courts routinely and properly stay cases when relevant rulings from higher courts are forthcoming. Staying further implementation of BSA's reorganization plan is the right thing to do.

A stay now, before the bankruptcy is closed (see Code §350), the Settlement Trust fully funded, and any money disbursed to abuse claimants, guarantees that the court can fashion relief if this plan is overturned or modified following *Purdue*. By opposing this stay, plan supporters show they want to limit available relief by rushing implementation until it becomes too difficult to unwind the plan. That is exactly the weaponization of equitable mootness this Court should reject. See *Nordhoff Investments v. Zenith Electronics,* 258 F.3d 180, 192 (3d Cir. 2001) (Alito, J., concurring) ("equitable mootness doctrines can easily be used as a weapon to prevent any appellate review of bankruptcy court orders."); Adam Levitin, *Purdue's Poison Pill,* 100 Tex. L. Rev. 1079, 1127 (2022) ("debtors have weaponized the doctrine, taking care that plans go effective – and money starts changing hands – as soon possible after confirmation.").

Instead of cutting off Appellants' right to appellate review by limiting possible relief, the right thing is to stay further implementation

until the Supreme Court rules on the legality of nonconsensual third-party releases.

## RELEVANT FACTS

Following denial of a stay prior to circuit appeals, BSA immediately announced the plan was effective on April 19, 2023. However, a key condition precedent to going effective was production of discovery documents pursuant to the Document Appendix. Dumas Decl., D.I. 224, Ex. 3 (plan), pp. 4-5 ("The Settlement Trust shall afford access for Direct Abuse Claimants to ... documents obtained by the Settlement Trust pursuant to the Document Appendix."); *Id.* at Ex. 6 (Document Appendix), ¶¶ 1-2 (BSA and third parties must produce discovery documents "on or before the Effective Date" and "as a condition to the Effective Date.").

Only on August 16 did the Settlement Trustee announce the Document Appendix documents were ready. *Id.* at Ex. 2. Because the Effective Date was conditioned on document production, the April 19 "effective date" was not valid. This Court should treat August 16 as the true effective date.

The Supreme Court granted certiorari in *Purdue* on August 10. On August 14, D&V Claimants notified plan supporters they would renew their motion for stay. They filed their motion with the Third Circuit on August 16, before the Trustee produced access to documents. Declaration of Gilion Dumas ("Reply Decl."), filed herewith, ¶2. The Trustee produced discovery documents, thereby finally making the plan effective, and otherwise continued implementing the plan, knowing the Supreme Court took *Purdue* and Appellants sought a stay.

Since April, plan proponents have rushed to implement the plan knowing discovery documents had not been provided as mandated, Appellants opposed efforts to establish equitable mootness, and there is a risk the plan will be overturned or modified. Any expense or trouble caused by staying further implementation are problems they caused.

The chances of the plan being modified on appeal are now much higher because the Supreme Court will rule on the issue of nonconsensual third-party releases in *Purdue*. There is "a fair prospect that the Court would reverse" the circuit decision in *Purdue* approving such releases. See *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring). That the Supreme Court granted

5

certiorari when the request was presented in the Trustee's motion for a stay, and only nine business days after the motion was filed, shows the Court is keenly interested in reviewing the legality of nonconsensual third-party releases. Given the Supreme Court's alacrity in taking the *Purdue* case, there is a "fair prospect" this plan will be modified.

The only thing that could derail full and fair appellate review is if the Third Circuit dismisses the appeals as moot. The only way to level the playing field for objecting abuse claimants is to stay further implementation until the Third Circuit rules on the appeal in light of the upcoming ruling in *Purdue.*

## ARGUMENT

This Court has the power to enter a stay after a plan goes effective. Nothing in FRAP Rule 8 limits the court to stays requests before an appeal is filed. The rule governs any "Stay or Injunction Pending Appeal," so applies to any stay while the appeal is pending. Opponents cite no authority for limiting the Court's stay power. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Texaco, Inc.*

6

*v. Borda*, 383 F.2d 607, 608 (3rd Cir. 1967) (quoting *Landis v. North American Co.*, 299 U.S. 248 (1936).).

Plan supporters recognize that equitable mootness is an issue for the Third Circuit. Nonetheless, they want this Court to conclude that a stay is impossible because the plan supposedly went effective in April, making appeals equitably moot. Century/Chubb insurers go further and want this Court to find the appeals are "statutorily" moot under §363(m), even though relief is possible without affecting the sale of BSA insurance.

Mootness is for the Third Circuit to decide. The standard for a stay requires only that Appellants have a "reasonable" chance of succeeding on appeal. *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019). That standard does not change merely because a plan "went effective," especially when the effective date under the terms of the plan was August 16 (when discovery documents were produced), after this motion was filed in the Third Circuit. Because the Supreme Court will rule on nonconsensual third-party releases, there is a "fair prospect" D&V Claimants will

7

succeed on appeal. 142 S. Ct. at 880. That "fair prospect" is at least a "reasonable" chance of success.

*Purdue* is directly on point. The Supreme Court certified the issue of whether there is legal or constitutional authority for nonconsensual third-party releases – the exact issue in this appeal. It does not matter that this plan went effective (whether on April 19 or August 16). The plan has not been substantially consummated.[2] The case is pending before the bankruptcy court, which continues to decide matters, and will not close until the plan is "fully administered." Code §350. BSA has not "exited bankruptcy."

Likewise, D&V Claimant have a reasonable chance to win on the mootness issue. They moved for a stay before their circuit appeal but were denied. The Settlement Trust is not fully funded (only $629.9 million of the $2.46 billion) and abuse claimants have not been paid. BSA Response, pp. 10, 13-14. Whether they will be "paid in full" is a disputed issue on appeal, not a settled issue that can be used to deny a stay. The "sale" of insurance back to Century/Chubb is not final and

---

[2] Equitable mootness cases discuss "substantial consummation," not effective dates. See *In re Continental Airlines*, 91 F.3d 553, 560 (3rd Cir. 1987) (discussing "substantial consummation").

8

Relief is possible regardless of the sale. Finally, BSA has not "exited bankruptcy" as the bankruptcy case is not closed.

There is nothing "equitable" about denying an appeal without reaching the merits when relief is possible; Appellants made a good faith effort to get a stay; and Appellees proceeded with implementation knowing the appeal was active, Appellants tried to get a stay, and the plan may be reversed after *Purdue*.

### A. Equitable Mootness

There is no statutory or constitutional basis for equitable mootness. The Supreme Court has not recognized the doctrine as legitimate. Traditional mootness comes from the constitutional "case and controversy" principle that courts should not hear cases when they cannot grant *any* form of effective relief. See *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("a case 'becomes moot' only when it is impossible for a court to grant any effectual relief whatever to the prevailing party... As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."). Equitable mootness dismisses appeals even when relief is possible.

While the Third Circuit has recognized equitable mootness, judges have criticized the doctrine. Then-judge Alito questioned equitable mootness in cases involving nonconsensual third-party releases. *In re Continental Airlines*, 91 F.3d 553, 567-83 (3d Cir. 1996; dissent). More recently, judge Krause described equitable mootness as "abdication" by the federal courts of their duty to exercise jurisdiction. *In re One2One Commc'ns, LLC*, 805 F.3d 428, 440 (3d Cir. 2015) (Krause, J., concurring). See also *Zenith Electronics*, 258 F.3d at 192 (Alito, J., concurring) ("equitable mootness doctrines can easily be used as a weapon to prevent any appellate review").

When considering equitable mootness, the Third Circuit looks to whether a plan has been "substantially consummated" and, if so, whether the appeal will "fatally scramble" the plan and/or significantly harm third parties who *justifiably* relied on confirmation. *One2One*, 805 F.3d at 434-35. Mootness will be up to the Third Circuit to decide, but Appellants have a more than reasonable chance to succeed on this issue under these considerations.

First, the plan has not been substantially consummated because the Settlement Trust is not fully funded and no abuse claimants will be

paid until at least October 3, the deadline for expedited claims. Debtors have paid only claims of commercial and other non-abuse creditors. BSA Response, pp. 13-14 ("the BSA has satisfied more than 600 *non-abuse* claims, paying more than $5.2 million" and listing commercial claims paid; emphasis added).

Second, relief would not fatally scramble the plan. The Third Circuit will decide what relief is possible. In an analogous case, the Ninth Circuit held that appeals were not equitably moot because relief was possible, even though appellants were denied a stay, the plan had gone effective, the debtor had merged with another company, and the Settlement Trust had started paying claims. *In re Thorpe Insulation*, 677 F.3d 869 (9th Cir. 2012). That plan involved channeling injunctions and third-party releases allowed in asbestos cases under §524(g). The court found that "equitable remedies are extremely broad" so "the bankruptcy court should be able to find a remedy that is appropriate." *Id.* at 883. The court listed additional settlement fund money from Appellees as a possible remedy. *Id.* The same relief could apply in this case. Another possibility would be to provide objecting abuse claimants the right to opt out of the third-party releases.

Finally, no third party justifiably relied on confirmation. BSA and Settling Insurers were parties in the bankruptcy and plan supporters, not third parties. The Settlement Trustee is the successor in interest to BSA for sex abuse claims and, by standing in the shoes of BSA, is not a third party. None of these parties *justifiably* relied on plan confirmation when they acted knowing required discovery documents were not produced, Appellants contested equitable mootness, Appellants tried to get a stay, and the plan could be modified on appeal.

Based on this, the Court should find that Appellants have a reasonable chance of succeeding on the issue of equitable mootness and grant the stay.

### B. Statutory Mootness

This appeal is not "statutorily moot" because Century/Chubb's buy back is not final and is contingent on the outcome of the appeal.

Statutory mootness under §363(m) is not automatic. *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 143 S. Ct. 927 (2023) (statutory mootness rules are not jurisdictional but only provide a "caveated constraint" on possible remedies). An appeal is not moot if effective relief is possible without invalidating the sale. See *In re ICL*

12

*Holding Co., Inc.*, 802 F.3d 547, 554 (3d Cir. 2015). Here, the sale is not so entwined with the plan that relief is impossible. If necessary, the court could fashion relief that does not affect the sale.

More important, the sale is contingent on the outcome of the appeal so is not final and 363(m) mootness does not apply. See Bankr. D.I. 8901-1, p. 21 Century/Chubb Settlement Agreement (sale contingent on appeal). Century/Chubb paid the Initial Payment of $50 million as settlement for BSA's pre-petition indemnity and contribution claims. *Id.*, pp. 3-4. Resolution of these claims "is a severable agreement in the case of a Reversal." *Id.*, p. 22. The remaining $750 million goes to escrow, not to be released until appeals are exhausted and a "Final Order" entered. *Id.*, p. 3-4; Plan, Bankr. DI 10316-1, p. 30 (defining "Final Order" as the order entered after appeals are exhausted). If the plan is reversed, Century/Chubb will get its money back.

D&V Claimants have a more than reasonable chance of overcoming statutory mootness arguments on appeal.

/ / /

/ / /

13

### C. Bond

As argued in D&V Claimants' opening brief, a bond is not required and would kill their appeal. Bonds are required to "secure a judgment" and D&V Claimants are not judgement debtors. There is no authority for requiring a bond to safeguard against hypothetical and speculative losses such as those described by plan supporters. Whatever expenses the Trust may incur as a result of a stay will be caused by the Trust prematurely and intentionally pushing the plan forward in the face of pending appeals. D&V Claimants should not bear the cost of risks plan supporters brought on themselves.

D&V Claimants cannot afford any bond. As explained in their motion, D&V Claimants are individuals and abuse survivors. They do not have the financial ability to pay for a bond. As plan proponents recognize, most are over 60; two are dead; most are retired, disabled, or otherwise not working; of those that work, almost all have marginal to mediocre jobs; none have the financial assets to post a bond. Reply Decl., ¶3.

The Supreme Court granted a stay in *Purdue* without requiring a bond. Yes, the Appellant in *Purdue* is the US Trustee, who is not

14

required to post a bond. But this shows that enormous and complicated restructuring plans can be reviewed on appeal without a bond.

## JOINDER

D&V Claimants join the arguments made by other moving parties and incorporate those arguments as if set forth in full.

## CONCLUSION

For the reasons above, in D&V Claimants' opening brief, and in materials filed by moving parties, D&V Claimants ask that this Court grant their Motion and stay the plan and appeal until after the Supreme Court rules in *Purdue*. They respectfully ask for a ruling from this Court before the October 3 deadline for expedited claims.

Dated: September 15, 2023     **DUMAS & VAUGHN, LLC**
*/s/ Gilion C. Dumas*
Dumas & Vaughn, LLC
3835 NE Hancock Street, Suite GLB
Portland, OR 97212
Telephone: (503) 616-5007
Email: gilion@dumasandvaughn.com

- and -
**GELLERT SCALI BUSENKELL & BROWN LLC**
*/s/ Charles J. Brown, III*
Charles J. Brown, III, Esquire
1201 N. Orange St., 3rd Floor
Wilmington, DE 19801

15

Phone: (302) 425-5813
Email: cbrown@gsbblaw.com

*Counsel to D&V Claimants*

## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8013(f). A proportionally spaced typeface was used, as follows:

    Name of typeface: Century
    Point size: 14
    Line spacing: Double

The total number of words in this brief, excluding the items set forth in Federal Rule of Bankruptcy Procedure 8015(g), is 2,599.

Dated: September 15, 2023

**DUMAS & VAUGHN, LLC**
*/s/ Gilion C. Dumas*
Dumas & Vaughn, LLC
3835 NE Hancock Street, Suite GLB
Portland, OR 97212
Telephone: (503) 616-5007
Email: gilion@dumasandvaughn.com

-and-

**GELLERT SCALI BUSENKELL & BROWN LLC**
/s/ *Charles J. Brown, III*
Charles J. Brown, III, Esquire
1201 N. Orange St., 3rd Floor
Wilmington, DE 19801
Phone: (302) 425-5813
Email: cbrown@gsbblaw.com

*Counsel to D&V Claimants*

## CERTIFICATE OF SERVICE

I, Charles J. Brown, III, hereby certify that on September 15, 2023, I caused a copy of the forgoing **DUMAS & VAUGHN CLAIMANTS REPLY IN SUPPORT OF THEIR EMERGENCY RENEWED MOTION FOR STAY OF BANKRUPTCY PLAN AND MOTION TO STAY APPEAL**, to be served on all registered users of the Court's Case Management/Electronic Case File ("CM/ECF") in this case via CM/ECF.

DATED: September 15, 2023

GELLERT SCALI BUSENKELL & BROWN LLC

/s/ *Charles J. Brown, III*
Charles J. Brown, III, Esquire (No. 3368)
1201 N. Orange St., 3rd Floor
Wilmington, DE 19801
Phone: (302) 425-5813
Email: cbrown@gsbblaw.com

*Counsel for D&V Claimants*